```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                           17 CR 548 (PAC)

JOSHUA ADAM SCHULTE,

                Defendant.

------------------------------x
                                      New York, N.Y.
                                      November 8, 2017
                                      11:30 a.m.

Before:

              HON. PAUL A. CROTTY,

                                      DISTRICT Judge

                    APPEARANCES

JOON H. KIM
     Acting United States Attorney for the
     Southern District of New York
SHANE STANSBURY
     Assistant United States Attorney

THE LAW OFFICES OF KENNETH F. SMITH
     Attorney for Defendant Schulte
KENNETH F. SMITH
```

1              (Case called)
2              MR. STANSBURY:  Good morning, your Honor.
3              Shane Stansbury, for the government.
4              With me at counsel table is Special Agent Rick
5     Avancheck from the FBI.
6              THE COURT:  OK.  Mr. Stansbury, thank you.
7              MR. SMITH:  For Mr. Schulte, Kenneth Smith and Taylor
8     Koss, K-O-S-S.
9              THE COURT:  Mr. Schulte, how are you?
10             THE DEFENDANT:  Doing better.
11             THE COURT:  OK.  All right.  Mr. Stansbury, you want
12    bring me up to date.
13             MR. STANSBURY:  Sure.  So, your Honor, the bulk of the
14    work that's been going on obviously has been the production of
15    discovery and we have completed all that we can complete to
16    date.  The government has.  There are a couple of outstanding
17    items and I'll just provide some context for you before I
18    explain those.
19             As your Honor is aware from our prior conference,
20    there's a substantial amount of electronic evidence.  And part
21    of the challenge is to get that evidence to the defense in a
22    way that they are able to review it in an efficient way.  And
23    the way that we proposed was for them to provide us with hard
24    drives that we could load the discovery onto.
25             On October 30 we were provided with three separate

1    hard drives consisting of four terabytes each.  I just handed
2    the defense one of those hard drives which has most, I would
3    say most of the electronic evidence that we had seized pursuant
4    to search warrants.  And there's on itemized list of what's on
5    it with the discovery.
6              What remains is we're still awaiting two things from
7    the defense and one is a laptop computer on which we would be
8    able to load the child pornography images and the desktop hard
9    drive that contains those images so that they could review it
10   in a secure space.
11             We've also offered to them previously the ability to
12   come to our space or the FBI space to just view it on our
13   machines.  They're aware of the options that we've given them.
14   But to make things easier we've also offered this alternative
15   of the laptop.  So we're awaiting for that.
16             THE COURT:  When you say you awaiting for a laptop,
17   what does that mean?
18             MR. STANSBURY:  In other words, the child pornography
19   images are on a desktop server they're is right now only
20   viewable in the FBI space which we've offered to the defense to
21   come look at and obviously, those images can't leave that
22   space.  To make it more convenient for the defense we have
23   offered them the option of -- and this has been done in other
24   cases -- of giving us a clean laptop computer in which we can
25   load the images and the desktop contents onto that laptop, keep

1    it in a secure space so they can come and view it in a way that

2    is more convenient to them and their expert can take control of

3    that laptop and do with it what he or she may.

4            So as soon as they obviously provide that, we can set

5    that up but the doors have been open to them just to come to

6    the FBI space in any event to come review the images.

7            THE COURT:  When do you anticipate this is going to be

8    completed?

9            MR. STANSBURY:  That's completely up to the defense

10   because we have not gotten the computer.

11           And then the second item is there's some additional

12   electronic data that cannot fit on the hard drives that we have

13   so the defense has told that they are going to provide us some

14   additional space and additional hard drive on which that can be

15   loaded.

16           I will say that that second piece is completely

17   unrelated to the child pornography.  It's not stuff that we

18   would be introducing in our case in chief.  So that's less

19   relevant but I did want to flag that for your Honor.

20           THE COURT:  OK.  Mr. Smith.

21           MR. SMITH:  Yes, judge.  I certainly go along with

22   much of what Mr. Stansbury said.  I want to also add, judge,

23   that there's a security clearance component to this case.  That

24   is, defense counsels have been given security clearance

25   applications.  Some of us have completed ours and submitted

1    them to the government.  We are in the process of having that
2    clearance issued so that we're able to receive and inspect much
3    of the discovery material that is at issue in this case or at
4    least some of it, judge.
5             We, as Mr. Stansbury said, have provided a lot of
6    storage space in the form of hard drives to the government.  We
7    are in the process of getting the laptop, as well as an
8    enormous server that the government has requested, judge, to
9    them.
10            More importantly or equally importantly we're still if
11   the process of retaining an expert that's going to help us go
12   through that information and evaluate it, et cetera.
13            In terms of the two options that Mr. Stansbury
14   mentioned --
15            THE COURT:  Mr. Smith, I don't want to interrupt you
16   but what's the nature of the expertise?
17            MR. SMITH:  I'm sorry, judge?
18            THE COURT:  On the computers or child pornography?
19            MR. SMITH:  No.  Computers, judge, or computer
20   forensics.  Much of what the government has said is that these
21   materials were uncovered from numerous layers of secure
22   servers, et cetera.  There's a lot of technical information and
23   stuff that frankly is just beyond the -- of the defense team,
24   judge.  I want to revisit this in a minute but just to sort
25   summarize where I am or where we are with the discovery,

1   there's a lot, judge.  It's, I believe the government has told
2   us that there's more data in this case than in any other like
3   case that they have prosecuted.  So we're -- I would say
4   although the government has been extremely forthright with us
5   in providing stuff, we're still the tip of the iceberg, judge,
6   in terms of getting and certainly going through the discovery.
7           So I wanted to flag this for your Honor and suggest
8   that a long adjournment will give us a chance to make some
9   headway with respect to the defense of the case.
10          THE COURT:  Mr. Smith, tell me what the problem, if
11  there is a problem, with security clearance.
12          MR. SMITH:  No problem, judge, other than it's a time
13  consuming process.  The application is almost 200 pages, very
14  sensitive information that you need to check and look-up.  And
15  it just takes some time.  After the application is submitted to
16  the government I believe there's just a process.  I don't know
17  whether it takes months or weeks but --
18          THE COURT:  Mr. Stansbury, can you enlighten us?
19  First of all, what does he need security clearance for?
20          MR. STANSBURY:  Let me just clarify that part first.
21  We proposed this just in an abundance of caution given the
22  defendant's former employer and the fact that -- and I meant to
23  flag this before.  I apologize now for not.  There's a small
24  body of documents that were found in the defendant's residence
25  that were taken from his former employer that might implicate

1    some classified issues.  We have been in the process of having

2    those reviewed and I think we're going to be in a position to

3    produce those in the next probably few days.  But we wanted to

4    just make sure that we were acting out of an abundance of

5    caution in case any SEPA issues come about in the case.  I

6    don't expect them too at this point but we wanted to do that

7    out of an abundance of caution.

8             THE COURT:  Are these documents relevant at all?

9             MR. STANSBURY:  They are a not relevant to the child

10   pornography but they are relevant to the nature of his

11   employment and they, I can't say whether or not they would be

12   introduced at a trial at this point but we are producing them

13   that out of an abundance of caution and I am talking about a

14   very small handful of documents.  But I don't think that this

15   should hold up anything because, A, the security clearance

16   process, we have been working closely with the defense to try

17   to expedite that for them.

18            THE COURT:  This a problem you can cabin and put

19   aside?

20            MR. STANSBURY:  Exactly.

21            THE COURT:  Is that right, Mr. Smith?

22            MR. SMITH:  I believe so, judge.

23            THE COURT:  Now, Mr. Stansbury, you've talked about a

24   laptop and a desktop servicer?

25            MR. STANSBURY:  Yes.  The laptop I mentioned was the

1  laptop that we requested from the defense to load the desktop
2  materials onto.
3              THE COURT:  Mr. Smith, what about that?
4              MR. SMITH:  I'm sorry, judge?
5              THE COURT:  The laptop that the government is
6  requesting so they can load the material onto it so --
7              MR. SMITH:  We're in the process of getting them a
8  laptop, judge, that's suitable.
9              THE COURT:  What takes time in that?
10             MR. KOSS:  Apologies to the Court.
11             What had happened is as you may recall the last time
12 we were here we were joined by Alex Spiro.
13             THE COURT:  He has since withdrawn.
14             MR. KOSS:  There have been some confusion, let's say,
15 with regards to whether or not the Brafman firm with was going
16 to be maintaining a role in this case or not.  We have had
17 several meetings with them.  We have now been told that they
18 are going to maintain a role but they have yet to file a notice
19 of appearance with the Court.  I have been in constant contact
20 with AUSA LaRoche updating him on this and it unfortunately has
21 caused some delay.  It will not hinder us moving forward.  We
22 are going to be able to get the laptop.
23             There were a couple of options.  We were weighing
24 which way to move forward in terms of viewing the child
25 pornography stuff.  Now we have decided ultimately that this

1   route, via the laptop, is the preferred route.  So now we are
2   going to get that to him in a timely fashion
3            THE COURT:  What is the timely fashion?
4            MR. KOSS:  I can't imagine it would take longer than
5   the next two weeks.
6            In addition, to that, again, there is also a much
7   larger hard drive that's needed.  I don't know if the whole
8   thing is still needed or -- originally told me they needed a
9   standalone 15 terabyte hard drive for server.  That may no
10  longer be the case if they're able to put some of that on the
11  other hard drive we produced to them.  But that was originally
12  one of his three requests to me, I believe a 12 or a 15
13  terabyte hard drive.  So we need to also get that to them as
14  well.  We can do that in the near future
15           THE COURT:  Near future, Mr. Koss?
16           MR. KOSS:  In the next two weeks.  And just so you
17  know, they have been good with providing us stuff.  It is a ton
18  of stuff.  And each individual subpoena return comes with
19  spreadsheets that are hundreds and hundreds of pages long and
20  it's going to take a while to sift through some of the stuff.
21  It is a lot of stuff.
22           THE COURT:  How much time do you need, Mr. Smith?
23           MR. SMITH:  Well, judge, at this point since much of
24  it I haven't looked at, what I was going to propose was to come
25  back after the holidays for a status conference and update.  I

1    do believe that we're going to be requesting motions in this
2    case and submitting motions.  At this point I think it was
3    premature to say anything more than that.  I do anticipate that
4    we will be submitting motions and --
5            THE COURT:  When you say "after the holidays", you
6    mean next year?
7            MR. SMITH:  Yes, judge.
8            THE COURT:  I don't like to go that long.  I'll go to
9    sometime in the middle of December.
10           COURTROOM DEPUTY:  December 14 at 3:30 p.m.
11           THE COURT:  Yes.  We'll measure progress then.
12           I understand your point, Mr. Smith, and I think the
13   conference after that maybe we can meet again in 2018 and we
14   will then set a motion schedule and back it up with a trial
15   date.
16           Anything else to take up today, Mr. Stansbury?
17           MR. STANSBURY:  Your Honor, we just ask that the Court
18   exclude time until December 14, given that the defense is still
19   reviewing discovery in contemplation of motions.
20           MR. SMITH:  No objection, your Honor.
21           THE COURT:  The time between now and December 14 will
22   be excluded for the reasons stated.  Those interests outweigh
23   the interests of the defendant and the public in a speedy
24   trial.
25           Mr. Koss, when you get the laptop ready and you've

1   made some of the decisions about what kind of hardware you are
2   going to provide, would you let me know that you've done that?
3            MR. KOSS:  Absolutely, judge.
4            THE COURT:  Thank you.
5            Anything else to take up?
6            MR. STANSBURY:  Not from our side, your Honor.
7            MR. SMITH:  Defense has a couple of minor requests.
8            THE COURT:  Oh, I'm sorry.  I thought we were
9   finished, but go ahead.
10           MR. SMITH:  I wanted to request of your Honor that my
11  client be given some limited computer access, judge, and just
12  to expand on that a little bit, I want to tell you why I'm
13  asking, why I think that your Honor, respectfully, should grant
14  this application.  We're asking because it's going to assist in
15  communicating with my client a great deal.
16           As it is now, judge, my client as you know he is
17  incarcerated at home.  He has a lot of time to reflect and
18  think and assist in the case.  However, every time he
19  communicates with me he's writing notes on legal pads in long
20  hand and sending those to me.  So it makes that very difficult
21  to, even a very brief communication like an update or a
22  question turns into -- you know it's very difficult, judge.
23  It's a very difficult to communicate with Josh without the
24  ability to say "send me an e-mail", a quick e-mail exchange.
25           Judge, as you know -- well, as has been put forth in

1    this case, Mr. Schulte is in possession of some unique computer
2    skills.  He is an ace at computers.  And given that, as you
3    know, we are requiring expert guidance in this case in the
4    field of computer forensic storage, et cetera, the ability to
5    communicate with Josh and to be able to have him use the
6    computer and to help us with that would go a tremendous way
7    toward assisting in his own defense, judge.
8           Now, in terms of other reasons why I think your Honor
9    should grant that application, to go back, judge, the basis why
10   the government asked that Josh be prohibited from using a
11   computer was that he was a danger.  The basis was the danger
12   that he poses to society I guess, based on the nature of the
13   offenses, the nature of the allegations and it was put forth
14   that his very computer expertise itself was a reason that he
15   shouldn't have any access.
16          Judge, at the presentment and later when we stood
17   before your Honor and took up the bail subject again with
18   co-counsel, the government's stated reason as I said for really
19   all their applications was the basis that josh was a danger to
20   society.
21          Now, it wasn't clear to us at the time, judge, but
22   it's since become clear based on our read of some of the
23   discovery materials, particularly, the search warrant
24   applications.  There were a number of search warrant
25   applications in this case, judge, from March through May that

 we are aware of, there could be others and it's become clear to us at this moment and it wasn't when we were before your Honor before and it wasn't when we were before Judge Pitman.  It's clear that the government discovered the alleged child pornography several months before any official action was taken with respect to Mr. Schulte.

 To state it more plainly, they knew about the alleged child pornography allegedly in Mr. Schulte's possession for several months during which time they allowed Mr. Schulte to remain at large.  They allowed Mr. Schulte to travel out of state to Colorado, Texas, and California.  And apparently judge, after months of that when it suited the government's purpose, they arrested him and then came before your Honor and said you know he's a danger.  And some of the reasons that they gave, your Honor, one of them was the government said we executed a warrant at his house.  We seized the commuter and all the electronics.  That was in March.  Later the government says, when we go back in to arrest him in June -- sorry -- in August, he has another computer that he has replaced.  He's purchased another computer.  The government suggests to your Honor that that means he's a danger.  He can't be trusted somehow.

 Well, judge, what did they do with that computer, the computer that they discovered when they arrested Mr. Schulte in his apartment?  Absolutely, nothing.  They didn't seize it.

1   They didn't look inside it. they could have sequestered it,
2   gotten another search warrant.  And if I believe what they've
3   represented to the Court is true that is if he is such a danger
4   he can't have any access to the computer at all, surely, I
5   think they would have seized that computer.  They would have
6   behaved a little bit differently.  So the basis that they're
7   offering the Court, I don't believe it's supported by the
8   actual record in this case.
9            Just to put it plainly, judge, they let Mr. Schulte
10  remain at large from April through August when by the paperwork
11  that we have they believed in April that he was in possession
12  of the materials for which he is now charged.
13           So, judge, I think for those reasons I think that --
14  well, I missed the most important part.  What I'm asking is for
15  limited computer access for Mr. Schulte.  When I say limited
16  I'm, talking about monitored computer access through Pretrial
17  Services.  Just so you know, judge, I've already spoken to
18  Mr. Moscado at Pretrial Services.  He confirms for me that
19  there exists software that they can use at Pretrial that would
20  monitor Mr. Schulte's computer use.
21           It would, for example, Mr. Schulte would be granted
22  access to a particular small universe of sites and he would be
23  allowed to use these sites on the Internet.  If he exceeded the
24  boundaries of the limited access that we're requesting,
25  obviously, Pretrial would know and not only would he use the

1   limited computer access, he would be in violation of your
2   Honor's conditions and it would be a lot worse.
3              So my colleague's reminded me that Mr. Moscato at
4   Pretrial also indicated that with the monitoring ability that
5   they have they're able to monitor and be aware of if
6   Mr. Schulte were to insert any kind of removable drive or
7   anything into the machine, they would know that.
8              Now, judge, again, when we stood before your Honor and
9   when we stood before Judge Pitman, when one of the government
10  arguments was, look, he can't have access to a computer.  He is
11  so good at computers, if he has any access it'll ruin the case
12  or he'll change something or do something.  Judge, they're the
13  possession of what they recovered.  There's no way that anyone
14  from the outside can contact that.
15             So for the reasons, judge, that it will vastly help
16  the communication between attorneys and client, for the reason
17  that my client possesses specialized knowledge that we need in
18  this case in terms of assisting in his own defense because
19  Pretrial --
20             THE COURT:  He needs to have access to a computer so
21  he can assist in his own defense?
22             MR. SMITH:  I'm saying that it would --
23             THE COURT:  It may make it easier for --
24             MR. SMITH:  Yes, judge.
25             Pretrial does have the capacity to monitor it.  In

1    terms of a position, I want to be clear, judge, I asked
2    Pretrial what their position was.  Mr. Moscato told me, listen,
3    I'm going to defer to the Court.  I'm not taking a position
4              THE COURT:  I haven't talked to Mr. Moscato.  Nobody
5    from Pretrial Services called me.  This is all new to me.  So
6    I'm going to deny your application.  You are asking me to
7    reconsider the order that I granted in admitting Mr. Schulte to
8    bail.  And you may want to make a notion for reconsideration
9    but I'd suggest you do it on papers rather than bringing up at
10   the end of a conference giving the government and Pretrial
11   Services an opportunity to submit their own views to the Court.
12             So I'm denying it without prejudice.
13             Anything else?
14             MR. SMITH:  No, your Honor.
15             THE COURT:  Thank you very much.
16                            (Adjourned)
17
18
19
20
21
22
23
24
25