```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA

            v.                       17 CR 548 (PAC)

JOSHUA ADAM SCHULTE,
                                     Conference
                 Defendant.

------------------------------x
                                     New York, N.Y.
                                     May 21, 2018
                                     2:00 p.m.

Before:

        HON. PAUL A. CROTTY

                                     District Judge




         APPEARANCES


GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
MATTHEW J. LAROCHE
SIDHARDHA KAMARAJU
     Assistant United States Attorneys


FEDERAL DEFENDERS OF NEW YORK, INC.
     Attorneys for Defendant
BY:  SABRINA SHROFF
```

1         (Case called)

2         THE COURT:  Good afternoon.  Mr. Laroche?

3         MR. LAROCHE:  Thank you, your Honor.

4         We are here at the government's request.  As the Court is aware, on May 15th the government alerted the Court to a violation, a potential breach of the protective order.  As the Court is aware, in September of 2017 the Court entered the protective order in this case.  The basis for entering that protective order was to cover materials that, if disseminated to third parties, could jeopardize the safety of others, impede ongoing evaluations and potentially jeopardize national security.

13        The terms of the protective order included that anything marked pursuant to it could not be disclosed to anyone not connected to the defense, including the information or identities or other information within materials marked pursuant to the protective order.  Also, the defendant could not keep copies of those materials pursuant to the protective order.

20        In connection with our disclosure obligations, the government has produced various search warrants and search warrant affidavits that were executed in connection with this case.  It became published in several news articles on May 15th that various reporters had apparently obtained copies of those materials, of the search warrant materials, which was obviously

1  concerning to the government.

2  Since that time the government has obtained some of
3  the defendant's prison calls.  On certain of those calls it is
4  clear that the defendant is discussing both the search warrant
5  affidavits and the materials and information that is included
6  within them.  In the government's view that is a clear breach
7  of the protective order.  It is unacceptable, particularly
8  unacceptable given that this defendant has a pattern of
9  violating the Court's orders.

10  As the Court is aware, while he was on bail, he had
11  strict conditions that included not using computers unless
12  expressly authorized to do so.  Nevertheless, while he was on
13  bail he at least caused others to use Tor on his behalf in
14  violation of his bail conditions.

15  Now, coupled with this apparent breach of the protect-
16  ive order by the defendant, it is particularly concerning to
17  the government.  We are simply requesting that the Court
18  reiterate to the defendant the terms of the protective order
19  and that this type of conduct is unacceptable from the
20  government's view.

21  THE COURT:  Is it clear, Mr. Laroche, whether or not
22  the search warrants were in fact turned over to the press?

23  MR. LAROCHE:  There are two articles, your Honor, in
24  which the press has indicated that they had copies and reviewed
25  copies of the warrants.  With respect to the prison calls, it

1  certainly appears, based on the discussions, that they had
2  copies or at least had been told the information within the
3  search warrants.  Again, pursuant to the protective order,
4  disclosing information within those search warrants to folks
5  who are not involved in the defense of this action would be a
6  breach of the protective order.
7            THE COURT:  Ms. Shroff.
8            MS. SHROFF:  Your Honor, I'm loath to get into -- I
9  don't really know if Mr. Laroche is saying that the documents
10 were given to the press by my client.  There seems to be no
11 indication that he was the one providing the documents.  I do
12 not know the scope of how he was informed about the protective
13 order, if he signed something about the protective order.
14           THE COURT:  You have seen the protective order,
15 haven't you?
16           MS. SHROFF:  I certainly have.
17           THE COURT:  You certainly have?
18           MS. SHROFF:  Right, I certainly have.  Your Honor,
19 when I first heard about it --
20           THE COURT:  It starts out, "Whereas, in the interests
21 of expediting the discovery, the defendant, by his attorneys,
22 consents to the entry of this order."  It says here that Mr.
23 Schulte has consented to the order.
24           MS. SHROFF:  I have no doubt that that is what the
25 protective order said.  But I told the government the moment I

1  heard about this quote-unquote breach that I was not his
2  counsel prior to a certain date, I did not know the scope of
3  the explanation provided to him.
4             Honestly, your Honor, regardless of all of that, I
5  told the government that if they wished me to reiterate
6  something to the client, I would.  I am also happy to have the
7  Court reiterate whatever the Court deems appropriate.  Short of
8  that, I'm not really clear --
9             THE COURT:  Mr. Laroche, what do you want?  You just
10 want me to reiterate the impact of the order, isn't that
11 correct?  It's scope and how it applies?
12            MR. LAROCHE:  That's correct, your Honor.  One other
13 quick point.  On one of the calls the defendant actually says
14 in discussions with who we believe was a reporter that: I know
15 that these search warrant affidavits have a protective order on
16 them.  He was clearly aware of the order itself.  We think that
17 conduct and that type of statement acknowledging that one was
18 in place --
19            THE COURT:  Other than bringing the order to Mr.
20 Schulte's attention again, you are not asking for any further
21 sanctions?
22            MR. LAROCHE:  At this point we are not, your Honor.
23            THE COURT:  You don't object to that, do you, Ms.
24 Shroff?  I don't see how you can.
25            MS. SHROFF:  Not at all, your Honor.  In fact, just to

1   make sure in case his prior counsel did not provide Mr. Schulte
2   with a copy of the protective order, I will assure the Court
3   that I will.  All that would need to be remedied would be
4   remedied.  Finally, your Honor, if I'm wrong, the government
5   can correct me, but I don't think my office was assigned at the
6   time that this alleged conduct took place.
7            THE COURT:  No, you weren't assigned until December.
8   This took place in September.  But it is part of the court
9   file.
10           MS. SHROFF:  May I have one second, your Honor?
11           THE COURT:  Yes.
12           (Counsel conferred)
13           MS. SHROFF:  I have no objection to the Court
14  reiterating the confines of the protective order.  If it makes
15  the government feel any better, I'm happy to supplement that
16  and move forward.
17           THE COURT:  It is not a question of making the
18  government feel better.  It is a question of complying with the
19  court order.  We are not into feeling better here.  We are into
20  giving reasonable enforcement to the Court's order.
21           MS. SHROFF:  Your Honor, I understand.
22           I checked to see where there was a place for prior
23  counsel to have the client sign the protective order.  I don't
24  need to add further to whether or not I did what I was required
25  to do.  But going forward I'm certainly more than willing to

1   make sure that he receives the order, and I can confront to the
2   government --
3            THE COURT:  Does anybody have an extra copy of the
4   order?
5            MR. LAROCHE:  Yes, your Honor.
6            THE COURT:  This is a protective order dated September
7   18, 2017.  I am going to give it to Mr. Gonzalez, who will give
8   it to you, Ms. Shroff.  There is no doubt about it that that is
9   the order.  I am directing you to call that to your client's
10  attention.  I think you should warn him that the Court is
11  willing to enforce the order.  He signed it on consent.
12           It contains various provisions, including that the
13  material marked "USG Confidential" shall be used by the
14  defendant and his counsel only for purposes of this action.  It
15  is not to be disseminated to third parties, which apparently it
16  was disseminated to third parties.
17           If you want to vary the terms of the protective order,
18  your relief is not to do it on your own, Mr. Schulte, but to
19  have your lawyer come into court and explain why there should
20  be a modification of the order.  It provides for that in the
21  order itself.  That is the only means and method for disclosing
22  information or using information that is subject to the
23  protective order.
24           I take it, Mr. Laroche, that the affidavits in support
25  of the search warrant were designated as "USG Confidential"?

1    MR. LAROCHE:  Yes, your Honor.

2    MS. SHROFF:  Your Honor, I will certainly do as
3    directed by the Court.  Perhaps I will go one step further and
4    discuss with the government the possibility of having Mr.
5    Schulte sign, because the protective order itself as of now is
6    only signed by his prior counsel.  I'm happy to take that step
7    and move forward.

8    THE COURT:  All right.  That's a positive step.  When
9    will you do that?

10   MS. SHROFF:  I could go to the jail tomorrow and do
11   it.  I could go tomorrow evening.

12   THE COURT:  Mr. Schulte, do you understand?  Yes?

13   THE DEFENDANT:  I do now.

14   THE COURT:  Anything else, Mr. Laroche?

15   MR. LAROCHE:  No, thank you, your Honor.

16   THE COURT:  Ms. Shroff?

17   MS. SHROFF:  No, thank you, your Honor.

18   THE COURT:  Thank you.  Thank you, Mr. Schulte.

19   (Adjourned)