```
     I96HCorC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                              18 Cr. 356 (RWS)

5    GEOFFREY CORTES,

6                                              Conference
                    Defendant.
7
     ------------------------------x
8
                                               New York, N.Y.
9                                              September 6, 2018
                                               11:48 a.m.
10

11   Before:

12                      HON. ROBERT W. SWEET,

13                                             District Judge

14                            APPEARANCES

15   GEOFFREY S. BERMAN
          United States Attorney for the
16        Southern District of New York
     TIMOTHY CAPOZZI
17        Assistant United States Attorney

18   DAVID E. PATTON
          Federal Defenders of New York, Inc.
19        Attorney for the Defendant
     SABRINA SHROFF
20
     ALSO PRESENT:  CARLOS RAMIREZ, PSO
21

22

23

24

25
```

1           (Case called)
2           THE DEPUTY CLERK:  Government, are you ready?
3           MR. CAPOZZI:  Good morning, your Honor.  Timothy
4    Capozzi.
5           THE DEPUTY CLERK:  Defendant, are you ready?
6           MS. SHROFF:  Good morning, your Honor.  How are you?
7           THE COURT:  I'm fine.  Where are you?
8           MS. SHROFF:  I was -- my mother wasn't well, so I went
9    home to see her in India, but I'm back now.
10          THE COURT:  Wow, well, best wishes for your mother.  I
11   hope that takes care of itself.
12          I don't understand what the situation is.  Government,
13   I take it, wants a warrant, and I guess we've got to issue one,
14   don't you think?
15          MS. SHROFF:  Well, your Honor, I told the government I
16   got a phone call from his -- actually, I called my client's
17   father.
18          THE COURT:  You all sit down.
19          MS. SHROFF:  And my client apparently did reach out to
20   his father.  I think he panicked when he was told he's going to
21   be remanded, which was unfortunate that we didn't have time to
22   kind of talk him through the issues.  Look, if the Court wants
23   to issue a warrant because that's the fastest way to find him,
24   I actually don't have an objection.
25          THE COURT:  Yes.

1        MS. SHROFF:  Because I think the faster we find him,
2    the better for the client.
3        THE COURT:  Yes.
4        MS. SHROFF:  And my client has a severe addiction that
5    I'm trying to help him with.
6        THE COURT:  Sure.
7        MS. SHROFF:  So in this unusual circumstance, I think
8    I would not oppose a warrant, and then I can --
9        THE COURT:  It doesn't -- forgive me, it doesn't
10   matter.  I would issue the warrant under any circumstance.  So
11   you can object, but I understand what you're telling me.  It's
12   a tough situation, obviously, with this fellow.  So I will
13   sign -- I'll issue the warrant, and I hope we find him.  And if
14   we find him, in the meantime you can perhaps figure out some
15   way of dealing with it that will -- that we could amend the
16   conditions, etc., etc.
17       MS. SHROFF:  We have a drug -- I'm going to tell
18   Mr. Ramirez the BASICS program in New York works.  We reached
19   out to them.  Hope maybe that will work, but I appreciate the
20   Court giving us that opportunity.
21       THE COURT:  Sure.  Thank you.
22       MR. RAMIREZ:  Your Honor.  May I?
23       THE COURT:  Yes.
24       MR. RAMIREZ:  In the event your Honor is present the
25   day that they pick him up, would the Court want to hear the

I96HCorC

 matter or would they defer to magistrate's court?  If you're here, could we call chambers to see if you want to hear it?

THE COURT:  Sure, yes.  I think that would be the most expeditious.

MR. RAMIREZ:  I do too, but we always defer to the Court.  Sometimes they refer it down.

THE COURT:  No, no, I think under these circumstances I have some degree of familiarity with it, so I'd be perfectly pleased to take it if we can find him.

MR. RAMIREZ:  OK.  That's good to know.

MS. SHROFF:  We're going to work on it, your Honor.

THE COURT:  Ms. Shroff, do you think any chance that you could -- that you might be able to locate him before the authorities do?

MS. SHROFF:  We're working on it, your Honor.  I'm going to send out my office's investigator to see if we can find him at his father's house or other places that he could likely frequent.  We're going to work on it right now.

THE COURT:  If you do, I mean, obviously, I think part of this is the problem of his concern about the process and marshals are -- by the way, who would execute the warrant?  The marshals?

MR. CAPOZZI:  I believe it would be the marshals, your Honor.

THE COURT:  So that would be a little upsetting.  If

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   you can get him, if you can get him, here's another -- OK.  I
2   think I should sign the warrant, but if you can get him, don't
3   you think the best thing under those circumstances would be for
4   him to voluntarily appear here and we could have a hearing and
5   you could -- let me ask the government this.
6           If she can locate him, would it be all right for her
7   to advise you that she has him and that we would have a
8   hearing, and we could not execute the warrant?
9           MR. CAPOZZI:  Your Honor, I think once --
10          THE COURT:  Once the warrant --
11          MR. CAPOZZI:  I think once the warrant is signed, the
12  marshals would plan on executing that warrant.  Now, if it
13  were --
14          THE COURT:  Suppose Ms. Shroff could get him and get a
15  date, let's just say hypothetically, 3 o'clock tomorrow
16  afternoon.  Could we then make a date for the marshals to meet
17  him here at 3 o'clock and execute the warrant then?
18          MR. CAPOZZI:  Well, I'll let Mr. Ramirez speak if he
19  has anything to add.  I think that -- first of all, I think the
20  government's position is that a warrant should be signed right
21  now.  Holding that aside, if the Court were inclined to set a
22  report time, so, for example, if Ms. Shroff was able to speak
23  with him and he said, I could be here at 3 p.m. today, we would
24  certainly want it to be today as opposed to tomorrow, but if
25  that were possible and the Court were amenable to that, then I

1  would expect that we would return at 3 p.m.  And if he did not
2  return at 3 p.m., then you would sign the warrant.  So the
3  marshals would not be involved until the warrant is actually
4  signed.
5          THE COURT:  What do you think?  That might be a better
6  solution.  Your view, Ms. Shroff, what do you think?
7          MS. SHROFF:  Your Honor, we're going to do all we can
8  to get him here.  Once I physically have the client with me,
9  then I can tell the government and the marshals that I have
10 him.  And if they want to pick him up at my office, that's
11 fine, or I can just walk him over.  Once he's walked over, what
12 can the marshal do?  I mean --
13         MR. RAMIREZ:  Your Honor, may I?
14         THE COURT:  Just let me ask, you may not know, but
15 what do you think?  Do you think you'll be successful?
16         MS. SHROFF:  I don't know.  That's just the honest
17 truth.  Maybe what I can do is I can let you know by, like,
18 5 o'clock tonight if I've had any luck at the father's house.
19 I can do that.
20         THE COURT:  Why don't we do this:  Why don't we hold
21 the issuance of the warrant until tomorrow morning, and I'll
22 sign it tomorrow morning if they haven't been able to find him.
23 I mean if Ms. Shroff can't get him.  How's that?
24         MR. RAMIREZ:  Your Honor could do that, of course.  I
25 was just going to say, and I'm not trying to be difficult with

1   anyone, but we've done this before in court where the Court has
2   signed the warrant just so in case it takes weeks or months.
3   But in the event that the defendant is found by defense
4   counsel, defense counsel can bring him to the courthouse here,
5   if same day and time, and you vacate the warrant.  The marshals
6   never get their hands on it, per se.  But you can stay a
7   warrant too.  It's your call, assuming, I guess, you're here
8   till -- you'll be available tomorrow if there's a hearing
9   tomorrow?
10           THE COURT:  Well, yes, I'll be here.
11           MR. RAMIREZ:  You could do -- if you want to stay the
12  warrant, you could do that, and you could also issue the
13  warrant and he can always surrender to Sabrina's office, the
14  Federal Defenders' office.  And they can notify everybody, and
15  we can all come to court, and you could vacate the warrant if
16  the marshals don't pick him up.
17           THE COURT:  What's the defense recommendation?
18           MS. SHROFF:  Your Honor, I'm literally texting my
19  investigator to see if she'll go this afternoon, but I think to
20  wait until tomorrow morning might help.  I can try and find
21  him, but it's not that long.  I mean, it's 12 o'clock now.
22           THE COURT: Yes.  OK.  Why don't we do that.  I'll
23  sign the warrant tomorrow morning, and that will give
24  Ms. Shroff an opportunity to see if it can work out.  And if it
25  can't, then it can't.

I96HCorC

1           MR. RAMIREZ:  OK.
2           MS. SHROFF:  Thank you, your Honor.
3           THE COURT:  I think, is that all right with the
4  government?
5           MR. CAPOZZI:  Your Honor, I think it would be
6  appropriate to sign the warrant now.  I understand the
7  rationale for waiting.
8           THE COURT:  Practically speaking, let me just ask you,
9  if I sign the warrant now, what's going to happen?
10          MR. CAPOZZI:  Your Honor, my understanding is that the
11 warrant will get stamped with the seal of the court, and then
12 it will be delivered to the marshals, and that a marshal will
13 be assigned to the matter.  Practically speaking.
14          THE COURT:  Nothing will happen.
15          MR. CAPOZZI:  -- I suspect that --
16          THE COURT:  Nothing will happen till tomorrow.
17          MR. CAPOZZI:  Nothing will happen before tomorrow, and
18 it would still be the case that our best hope of having the
19 defendant appear in court tomorrow would be if Ms. Shroff's
20 efforts are successful.
21          THE COURT:  Yes, I think the easiest thing, all told,
22 I'll sign the --
23          MR. RAMIREZ:  Warrant tomorrow?
24          THE COURT:  I'll issue the warrant with the
25 understanding that we will have a hearing, hopefully we can

have a hearing, either this afternoon -- unfortunately, I'll be leaving around 3:30, so probably not happen this afternoon. But if she finds him, you can tell him that -- you can handle that.

OK. I'll sign it. I think that's probably right. I'll sign it.

MR. CAPOZZI: Your Honor, here's the warrant.

(Recess)

MR. CAPOZZI: Good afternoon. Timothy Capozzi, for the United States.

THE DEPUTY CLERK: Defendant, are you ready?

MS. SHROFF: We are. Good afternoon. For defendant Cortes, Federal Defenders of New York by Sabrina Shroff. Also present is my client to my immediately left, and to his immediately left is Angel Bosques, a social worker in our office.

Thank you for seeing us, Judge.

THE COURT: Yes. Why don't you all sit down.

Have you had a chance to work out any solution to this problem?

MS. SHROFF: Your Honor, we have a program. It's called BASICS program in New York. My social worker confirmed with the program that if we get Mr. Cortes to the program this afternoon, they will admit him. I am hopeful that that is acceptable to pretrial and the government, but I don't know.

1       MR. RAMIREZ:  Your Honor, first off, Pretrial
2   Services.  Forgive my appearance.  I was actually going back to
3   the field as I got a phone call that he had come to our office.
4   So I just wanted you to know that he actually came to the
5   office today.
6       THE COURT:  Yes.
7       MR. RAMIREZ:  And then I called everybody to see if we
8   can get here.
9       THE COURT:  Sure.
10      MR. RAMIREZ:  We have no problem with BASICS if he can
11  get in today as we're hearing, assuming someone will take him
12  from the Federal Defenders' office.  And I guess it's an
13  inpatient program for a substantial amount of time?  I don't
14  know.  I'm asking.
15      MR. BOSQUES:  Yeah.  Yes, your Honor.
16      MR. RAMIREZ:  Because the last bail conditions that
17  Judge Parker had set was at least six months of inpatient.  He
18  does need treatment, and apparently he felt he wasn't getting
19  it.
20      THE COURT:  Correct me if I'm wrong, the only
21  modification of the bail condition should be the designation of
22  this institution?
23      MR. RAMIREZ:  Yes.  We can do that, and it can be that
24  simple.
25      THE COURT:  Anything further from the government or

1  defense?

2              MS. SHROFF:  Not from us, your Honor.

3              THE COURT:  We'll vacate the warrant.

4              MR. RAMIREZ:  Yes, that we need ordered.

5              THE COURT:  Vacate the warrant, and we'll make the

6  substitution in the bail conditions.  Otherwise, as before.

7  Clear?

8              MR. CAPOZZI:  So just to be clear, he would need to be

9  at that program today and would be spending the evening there

10 today?

11             MR. BOSQUES:  That is correct.  I will escort him

12 myself to the program.

13             MR. CAPOZZI:  Your Honor, I think the government

14 opposed before Judge Parker his placement in the program on the

15 basis that the defendant presented a risk of flight and a

16 dangerousness to the community.  Those arguments that the

17 government presented at that time are only enhanced at this

18 point based on the fact of what happened today.  Obviously, the

19 defendant did self-report after he left the van.  At the same

20 time, he jumped out of the van.

21             Your Honor, if the Court is inclined to simply make

22 that substitution, I think it merits warning the defendant that

23 he has been given several opportunities, and at some point

24 there is an end to opportunities and remand will be

25 appropriate.

Case 1:17-cr-00548-PAC Document 64 Filed 10/04/18 Page 12 of 14      12
I96HCorC

1           THE COURT:  I think the point's well-taken.
2           Mr. Cortes, you've shown good judgment and bad
3    judgment.  Bad judgment was getting out of the van.  The good
4    judgment was coming in.  So you have the capacity to understand
5    and deal with this problem effectively, and I'll credit you for
6    that.  And I will make the substitution that has been proposed,
7    but I think the government's point is also well-taken.  You've
8    got to be careful.  You've got to be sure that you use good
9    judgment, not the bad judgment, because if you do, the
10   consequences can be difficult for you, which is not to say that
11   you don't have a tough problem.  I understand that.  I think
12   everybody understands that, and I think if you work at it, you
13   got a shot at doing what you probably can do in life, be a very
14   useful citizen.  So good luck.  You made it this time, but be
15   sure you don't take this kind of chance again.
16          Anything further?
17          MR. RAMIREZ:  Your Honor, yes.  It's my understanding
18   that you have a conference scheduled for the 17th of September.
19   If that is so, would the defendant's appearance be waived if
20   you do carry it out, because he's going to really need to stay
21   at this program now that he just started this program?
22          THE COURT:  Sure.
23          MS. SHROFF:  Your Honor, I'm going to seek an
24   adjournment in writing, and I'll update the Court as to his
25   progress and the fact that he's there so that it's all a matter

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

I96HCorC

1    of record, and that will take care of that.
2            THE COURT:  OK.
3            MS. SHROFF:  Thank you very much, your Honor.
4            THE COURT:  OK.  Good luck.  Thank you all.
5            (Recess)
6            MS. SHROFF:  Your Honor, the marshals insist on taking
7    Mr. Cortes.
8            THE MARSHAL:  Call operations, Paul Brunhuber, we were
9    told to take him in custody.
10           THE COURT:  OK.  The warrant has been vacated.  End of
11   story.  No warrant.  OK?
12           MR. RAMIREZ:  If he were to go to the marshals now,
13   that would stop him from getting into this program.  That
14   process would take a while.
15           THE COURT:  So there is no warrant.
16           MR. RAMIREZ:  If they have a problem with that, they
17   could always take it up with the judge.
18           THE DEFENDANT:  Thank you, your Honor.
19           MS. SHROFF:  You want me to call?  I'll call.
20           MR. RAMIREZ:  I think if the judge says something.
21           THE COURT:  Have you got the original warrant?
22   Where's the original?
23           MR. CAPOZZI:  It's with the marshals, your Honor.
24           THE COURT:  Get me a copy.
25           Mr. Marshal, let me ask you, you've got your job.  I

I96HCorC

1  understand that, and that's appropriate.  I will give you a
2  copy of the warrant with a notation, vacated.
3            I have the original warrant, and I will endorse it --
4  Ms. Shroff, I think this will do it -- this warrant is vacated,
5  the defendant having appeared voluntarily.  I think that ought
6  to clear it up.
7            MS. SHROFF:  Thank you.
8            THE COURT:  You bet.
9            (Adjourned)