

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 2, 2019

Via ECF
The Honorable Paul A. Crotty
United States District Judge
Southern District of New York
United State Courthouse
500 Pearl Street, Courtroom 14C
New York, New York 10007

   Re:    *United States* v. *Joshua Adam Schulte*, S2 17 Cr. 548 (PAC)

Dear Judge Crotty:

   The Government writes in response to the defendant's letter, filed March 26, 2019, in which the defendant asks the Court to determine that certain search warrant materials (collectively, the "Search Warrant Materials") produced in discovery should not be treated as "Confidential" pursuant to the protective order entered by the Court on September 18, 2017 (the "Protective Order"). Contrary to the defendant's contention, even today, dissemination of the Search Warrant Materials to third parties "could, among other things, jeopardize the safety of others and national security, and impede ongoing investigations," and thus the Search Warrant Materials are properly designated as protected materials under the Protective Order. *See* Protective Order p.1. The defendant's request should be denied.

## Background

   As the Court is aware, on September 6, 2017, the Government filed its first indictment (the "Indictment") against the defendant charging him with several child pornography offenses. On June 18, 2018, the Government filed a superseding indictment (the "First Superseding Indictment") against the defendant, which added charges related to (1) illegally gathering and transmitting classified information while employed at a United States intelligence agency (the "U.S. Intelligence Agency"); (2) computer fraud and abuse while employed at the U.S. Intelligence Agency; and (3) making false statements during and obstructing a federal investigation. On October 31, 2018, the Government filed a second superseding indictment (the "Second Superseding Indictment") against the defendant, which added charges for the illegal transmission and attempt to transmit classified information while detained at the Metropolitan Correctional Center (the "MCC") and contempt of Court for violating the Protective Order by transmitting some of the Search Warrant Materials to a member of the media.

   During the course of the investigation that led to the Indictment and the First Superseding Indictment, the Federal Bureau of Investigation (the "FBI") executed six search warrants. These warrants and the underlying applications comprise the Search Warrant Materials. Each of these applications discusses or incorporates by reference discussion of, among other things, specific

The Honorable Paul A. Crotty, U.S.D.J.
April 2, 2019
Page 2

details about particular computer systems used by the U.S. Intelligence Agency.[1]  As a result, prior to producing the Search Warrant Materials to the defense, the Government sought, and obtained with the consent of the defendant, the Protective Order.  The Protective Order specified, among other things, that material designated as "Confidential" by the Government could be disseminated only to members of the defense team, not third parties, and, if included in public filings, would be filed under seal.  *See* Protective Order ¶¶ 3 & 7.  The Protective Order also provided that if the defense felt that it needed to disseminate protected material in a manner that was otherwise prohibited by the Protective Order to prepare a defense, the defense could seek authorization from the Court.  *See id.* ¶ 5.  The Government then produced the Search Warrant Materials to the defendant, designating them as "Confidential," and thus protected them from dissemination to third parties.  Notably, the Government has designated only a small portion of its discovery, including the Search Warrant Materials, as "Confidential" pursuant to the Protective Order.

In May 2018, the Government alerted the Court that the defendant apparently had provided some of the Search Warrant Materials to members of the media, in violation of the Protective Order.  In response, the Court held a conference on May 21, 2018, at which it explained the provisions of the Protective Order to the defendant, and confirmed that the defendant understood the terms of the Protective Order.  At the May 21 conference, the defendant confirmed that he understood the provisions of the Protective Order, and the defense did not raise any objection to the Court about the designation of the Search Warrant Materials as "Confidential."  *See* May 21, 2018 Tr.  After the May 21 conference, defense counsel asked the Government, however, whether the Government would be willing to allow the defendant to access the Search Warrant Materials in his cell at the MCC, rather than only in the area at the MCC designated for reviewing discovery.  To facilitate the defense's preparation, the Government consented to the defense's request.

In October 2018, the Government learned that – despite the Court's admonition at the May 21 conference – the defendant had improperly disclosed some of the Search Warrant Materials and classified information to third parties.  The Government discovered the defendant's violation of the Protective Order through, among other things, the execution of several search warrants (the "MCC Search Warrants") related to social media and email accounts the defendant illicitly accessed and used from the MCC.  That investigation resulted in the additional charges in the Second Superseding Indictment.  After filing the Second Superseding Indictment, the Government produced the MCC Search Warrants and the underlying applications (the "MCC Search Warrant Materials") to the defense.  Because the MCC Search Warrant Materials, unlike the Search Warrant Materials, did not disclose sensitive information (about the U.S. Intelligence Agency's computer systems, for example) the Government did not designate the MCC Search Warrant Materials as "Confidential" under the Protective Order.

### Discussion

The defendant's request that the Court no longer protect the Search Warrant Materials from third-party dissemination is meritless based on both the law and the record before the Court.  Initially, regardless of the characterizations in his March 26 letter, the defendant has already admitted that there is good cause to find that the Protective Order is necessary to protect ongoing

---

[1] For the Court's convenience, the Government can provide the Search Warrant Materials to the Court for *in camera* review.

The Honorable Paul A. Crotty, U.S.D.J.
April 2, 2019
Page 3

investigations, the safety of others, and national security when he consented to the entry of the Protective Order.  Having already agreed to this conclusion, the defendant is not entitled to simply cast that stipulation aside and re-litigate that issue.  *See PPX Enters., Inc.* v. *Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir. 1984) ("Under federal law, stipulations . . . are generally binding on the parties and the Court.  Having agreed on a set of facts, the parties (who adopted the stipulation), and this Court, must be bound by them; we are not free to pick and choose at will." (internal citations omitted)); *United States ex rel. Reilly* v. *New England Teamsters & Trucking Industry Pension Fund*, 737 F.2d 1274, 1278 (2d Cir. 1984) ("A party to a stipulation is not entitled to withdraw from the agreement unilaterally."); *United States* v. *Eisen*, 1991 WL 180400, at *8 (E.D.N.Y. 1991) (citing *PPX Enterprises* to bind defendant to fact stipulation into which he had entered during criminal trial).

Given the defendant's agreement to the Protective Order, the only remaining question is whether the Search Warrant Materials continue to be properly designated under the Protective Order as "Confidential."  They unquestionably are.  The Search Warrant Materials discuss, among other things, the way that the U.S. Intelligence Agency maintained a classified computer system that was integral to the Agency's intelligence-gathering mission.  Broadly disseminating that information would permit a host of potentially hostile actors to glean valuable intelligence about the way the U.S. Intelligence Agency maintained its computer systems or its security protocols, which would harm national security.  *Cf. United States* v. *Yousef,* 327 F.3d 56, 168 (2d Cir. 2003) (approving of protective order concerning confidential informant's statements because, among other things, disclosure would reveal how the Government responded to terrorist threats).

The defendant's abbreviated argument for de-designating the Search Warrant Materials is speculative, conclusory, and misguided.  *First*, the defendant claims that the "time for investigation is long gone."  (Def. Let. at 1).  The defendant is neither in a position to judge nor the arbiter of when it is appropriate for the Government to end its investigation into one of the largest-ever illegal disclosures of classified information.  Simply put, while details are not appropriate for discussion in a public letter, the Government confirms that its investigation is not done and can supply the Court with additional information on an *ex parte* basis if the Court wishes.  *Second,* the defendant summarily claims that the Search Warrant Materials "do not contain any classified materials or any materials that would remotely impact this nation's security." (*Id.* at 2).  Initially, the fact that the information in the Search Warrant Materials is not classified does not mean that it is not sensitive and that unregulated disclosure of this information could not harm the country's security. *See United States* v. *Lindh*, 198 F. Supp. 2d 739, 742 (E.D. Va. 2002) (noting that courts have granted "protective orders regarding unclassified, but sensitive material vital to national security" (internal quotation marks omitted)).  And the information in the Search Warrant Materials very clearly goes to the national security interests of the country – among other things, it describes the way that a U.S. Intelligence Agency maintained one of its sensitive computer systems.  Allowing that information to be distributed broadly, and in a manner that is not necessary for the defense, increases the likelihood that that information will fall into the hands of those who wish to thwart the U.S. Intelligence Agency's function and who could use the information in the Search Warrant Materials to do so.  Those harms are real and significant, and the defendant's attempt to brush them aside is based on self-serving speculation.[2]

---

[2] Furthermore, the fact that some of the information contained in the Search Warrant Materials may become public at a trial one day is of no moment to the discovery process now, particularly given that any protected material in the parties' filings must be maintained under seal.  *See*

The Honorable Paul A. Crotty, U.S.D.J.
April 2, 2019
Page 4

Furthermore, the Government also submits that to the extent the defense's motion can be construed to constitute a request to modify or disregard a provision of the Protective Order with respect to the Search Warrant Materials, that motion should be denied, because – in addition to the weighty national security interest described above – the defense has not articulated why disclosing the Search Warrant Materials is "necessary for the purpose of preparing the defense of this case." *See id.* ¶ 5. The Protective Order permits the defense to disclose the Search Warrant Materials to members of the defense team, even counsel without security clearances, and the Government had already agreed to allow the defendant access to the Search Warrant Materials beyond the typical discovery access allowed by the MCC. And if there is some other individual that the defense feels could contribute to the preparation of the defense and requires access to the Search Warrant Materials to do so, the defense has a simple option – ask the Court for permission. The defense has not articulated any reason why it needs to disclose the Search Warrant Materials to third parties uninvolved in this case in order to defend against the charges in the Second Superseding Indictment.

Unable to articulate any way in which the protected status of the Search Warrant Materials prejudices the preparation of his defense, the defendant argues instead that the Search Warrant Materials should not be protected because of the public's right to court records. In particular, the defendant relies on *United States* v. *Cohen*, __ F. Supp. 3d ___, 2019 WL 472577 (S.D.N.Y. 2019), which dealt with a press request to unseal investigatory materials, including search warrant applications, involved in the prosecution of Michael Cohen. *Cohen* has no applicability here. To start, *Cohen* is not a national security case, nor does it involve any information concerning computer systems used by a U.S. intelligence agency. Moreover, unlike in *Cohen*, there has been no request here by a media organization or other interested third-party to unseal the Search Warrant Materials. Instead, Schulte – who has all of the Search Warrant Materials – is seeking the unfettered ability to disclose discovery materials that he received from the Government to anyone he wants. To the extent that he already has the ability to disclose the Search Warrant Materials to his defense team and to seek to disclose them to others with the Court's permission, no basis exists to allow Schulte such free rein – particularly given his past violations of the Protective Order. But regardless of who is requesting the de-designation of the Search Warrant Materials under the Protective Order, the fact remains that those materials contain sensitive information about the U.S. Intelligence Agency, the broad dissemination of which would harm the national security of the United States.

For the foregoing reasons, the Government respectfully submits that the Court should deny the defendant's request. If the defendant wishes to disclose the Search Warrant Materials in a manner that is inconsistent with the Protective Order, he should confer with the Government, or, if he does not wish to disclose information to the Government, then he should seek relief from the Court. With respect to the defendant's request that the Government re-review its "Confidential" designations for other discovery, the Government is mindful of the need for such assessments, is not aware of any material that is presently designated as "Confidential" improperly, and believes

---

Protective Order ¶ 7. The disclosure of this information at trial will be subject to the Court's discretion, fully informed about the parties' need for the information and the potential national security consequences, and not simply the discretion of a defendant who is not privy to the full scope of these considerations and who has already shown a disregard for the Court's directives.

The Honorable Paul A. Crotty, U.S.D.J.
April 2, 2019
Page 5

that the best course is for the defendant to identify materials that he does not believe continue to require protection and to confer with the Government about those materials specifically.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____
Sidhardha Kamaraju / Matthew Laroche
Assistant United States Attorneys
Tel.: 212-637-6523/2420

Cc:  Defense Counsel (via ECF)