**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

August 6, 2019

By ECF
Hon. Paul A. Crotty
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

Re: United States v. Joshua Schulte, 17 Cr. 548 (PAC)

Hon. Judge Crotty,

On August 2, 2019, the government through walled counsel filed a single-spaced three-page letter "response" to the defense's pending discovery motion dated July 18, 2019.

Walled counsel's response does not contain a single substantive sentence. Instead, walled counsel took two weeks to tell the Court:

1. The discovery request is somehow mooted by the Court's July 22, 2019 ruling. (It is not.)

2. The motion for discovery is not "tailored" and therefore Mr. Schulte should make yet another request.

3. That the motion for discovery to given to the litigation team at the USAO as it does not disclose any defense strategy.

This reply by walled counsel disregards the Court's directive. During the July 25, 2019 appearance, the Court specifically *rejected* the argument (by Mr. Kamaraju) that the response should be filed by the litigation team. The Court ruled:

"I tell you what I am willing to do is take the response from the wall team and consider it, and depending upon whether it answers the questions that I have, because

The Honorable Paul A. Crotty                                    August 6, 2019
United States District Judge                                    Page 2
Southern District of New York

Re:      <u>United States v. Joshua Schulte</u>, 17 Cr. 548 (PAC)

frankly, and with respect to your (defense) expert's affidavit, I don't fully understand the
grasp of the intricacies of the defense that he is raising." The Court went on to say, "On
August 2, the date for the response, I'll take the response from the wall team." Exhibit A,
Transcript of July 25, 2019 proceeding. Despite the Court's directive, walled counsel has
(after two full weeks) not provided a substantive response. The Court should sanction
walled counsel by granting the defense's July 18, 2019 discovery motion, or,
alternatively, order walled counsel, again, to substantively respond to the defense's
motion for discovery.


                                        Respectfully submitted,

                                        /s/
                                        Sabrina Shroff & Edward Zas
                                        Counsel for Joshua Schulte


cc: All counsel

*Exhibit A*

J7PsSCHc

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        17 CR 548 (PAC)

5   JOSHUA ADAM SCHULTE,

6              Defendant.

7   ------------------------------x

8                                       New York, N.Y.
                                        July 25, 2019
9                                       3:00 p.m.

10
    Before:
11
                        HON. PAUL A. CROTTY,
12
                                        District Judge
13

14                           APPEARANCES

15  GEOFFREY S. BERMAN
         United States Attorney for the
16       Southern District of New York
    BY:  MATTHEW LaROCHE
17       SIDHARDHA KAMARAJU
         Assistant United States Attorneys
18
    FEDERAL DEFENDERS OF NEW YORK
19       Attorneys for Defendant
    BY:  SABRINA P. SHROFF
20       EDWARD ZAS

21  ALSO PRESENT:
    Dan Hartenstine, CSO Officer
22

23

24

25

J7PsSCHc

1          (Case called)

2          MR. KAMARAJU:  Good afternoon, your Honor.

3          Sid Kamaraju and Matthew Laroche on behalf of the

4    government.

5          THE COURT:  Good afternoon.

6          MR. ZAS:  Good afternoon, your Honor.  Edward Zas for

7    Joshua Schulte.  I think Ms. Shroff may have just stepped out

8    for a second.

9          THE COURT:  OK.  We'll wait for her.

10         Ms. Shroff.

11         MS. SHROFF:  Sorry about that, Judge.  I just had to

12   pick up the classified bag.

13         THE COURT:  All right.  Thanks.

14         Are you returning the bag?

15         MS. SHROFF:  I returned yours.  This is the one that I

16   may have to use today.

17         THE COURT:  OK.  I should advise everyone that I've

18   signed an order severing Counts 1 through 11 from Counts 12

19   through 15.  I'll want that on the court record today.

20         This preserves the government's right to any issues

21   involving these issues from one trial to another will be

22   addressed in motions in limine prior to that trial.  That is

23   with regard to Counts 12 through 15.

24         A question I have in light of the fact that the

25   National Defense Information counts are going to be severed

J7PsSCHc

1    from the child pornography counts, what does that do, if

2    anything, to the motions to suppress?

3            MR. KAMARAJU:  Your Honor, it certainly does not

4    impact at least two of the motions to suppress.

5            One of the motions to suppress is based on an initial

6    covert search warrant that targeted espionage offenses, but

7    still sought to search the defendant's home.

8            THE COURT:  Right.

9            MR. KAMARAJU:  The other one is various search

10   warrants related to searches done at the MCC.

11           Both of those include evidence that pertains

12   specifically to the espionage.

13           THE COURT:  Wasn't there a search warrant dealing with

14   the child pornography?

15           MR. KAMARAJU:  There is, your Honor.

16           THE COURT:  My question is addressed to that.

17           MR. KAMARAJU:  Yes, your Honor.

18           I don't believe that the severance actually impacts

19   the need to resolve that motion at this time.

20           THE COURT:  The need to?

21           MR. KAMARAJU:  I'm sorry, your Honor?

22           THE COURT:  I didn't hear what you said.

23           MR. KAMARAJU:  I don't believe that the fact that the

24   court has severed the trial resolve would need to address this

25   motion at this time.

J7PsSCHc

1          The government still intends to respond to that motion

2     with all of its other responses.

3          THE COURT:  All right.  Ms. Shroff?

4          MS. SHROFF:  That's right, your Honor.  I don't think

5     the severance impacts the motions.

6          THE COURT:  All right.  Do you have anything else you

7     want to bring up, Ms. Shroff?

8          MS. SHROFF:  Your Honor, I would like to discuss the

9     CIPA motion, but I don't have a need to discuss anything more

10    on the topic that the court just raised.

11         THE COURT:  OK.  How about the government?

12         MR. KAMARAJU:  Nothing further from the government on

13    that.

14         THE COURT:  What do you want to bring up in the CIPA

15    motion?

16         MS. SHROFF:  Should I do it now, your Honor?

17         Your Honor, as the court is aware, there were two CIPA

18    motions filed.  I understand Mr. Hartenstine is concerned.  I'm

19    just going to talk very generally because we are not in a

20    closed classified setting.

21         THE COURT:  Thank you.

22         MS. SHROFF:  I'll keep my eye on you.

23         MR. HARTENSTINE:  Thank you, Ms. Shroff.

24         MS. SHROFF:  So the government filed its CIPA 4.  The

25    defense had filed its CIPA 4.  It is our position that the

1    opinion and order issued by the court does not take into

2    account the specifics of our CIPA 4, which is the defense

3    CIPA 4, and we simply ask the court, most respectfully, to take

4    a look at the expert affidavit attached to the defense's CIPA 4

5    and either confirm or correct the defense that there are

6    additional matters on which the court needs to rule.

7            MR. KAMARAJU:  So, your Honor, we're aware of the

8    motion to compel that Ms. Shroff is referring to.  The trial

9    team, however, has not seen it.  Ms. Shroff gave it to our wall

10   AUSA recently, and she stated that there is defense theory in

11   there, and that is why she didn't want us to look at it.

12           We are not in a position specifically to respond to

13   all of the arguments that are made in that motion.  I will say

14   that, at least based on our understanding of what her motion to

15   compel seeks, we believe it is subsumed in your Honor's order.

16   We believe you already addressed it and the need for it.

17           Our wall assistant is prepared to submit a response to

18   it.  We anticipated doing that by August 2.

19           THE COURT:  Frankly, I think it would be better,

20   because with regard to CIPA Section 4, there really isn't a

21   CIPA Section 4 application.  It is more like a preliminary to

22   CIPA Section 5.  You don't have the information.  You're

23   seeking information.

24           MS. SHROFF:  I'm seeking the information.

25           THE COURT:  Rather than saying you have certain

1      information, you want a protective order.  I thought CIPA 4 was

2      not the right avenue for your application.  Your application is

3      perfectly appropriate.  I thought it was a preliminary to

4      Section 5.  You want certain information that is helpful to the

5      defense, which is in the possession of the government.

6              Frankly, it would be far more helpful to me if we

7      treated this as a discovery motion and I could find out exactly

8      what it is the government has produced and why, in your view,

9      Ms. Shroff, that the production that they have made today is

10     inadequate for the purposes that you intend.

11             I'm not a computer expert, so I think it would be

12     helpful if I could find out exactly what has been produced and

13     why you believe that that production is not adequate for the

14     purposes intended.

15             MS. SHROFF:  So, your Honor, most respectfully, I

16     could respectfully ask the court now to treat my CIPA 4 request

17     as a discovery motion, if you want.  I can retitle it and serve

18     it ex parte on the government again.

19             THE COURT:  It wouldn't be ex parte.

20             MS. SHROFF:  Why is it ex parte?

21             THE COURT:  It would not be ex parte if you serve it

22     on the government.

23             MS. SHROFF:  No, to their wall team.  I'm sorry.

24             I would give it back again to their wall team, not the

25     trial team.

1          It is not ex parte, you're correct.  I would serve it

2     on their wall AUSA.

3          THE COURT:  But the wall team could not file a

4     response.

5          MS. SHROFF:  They could.  The wall team is planning to

6     file a response at this point.  It is only ex parte against the

7     litigation team.

8          The reason we did not share it with Mr. Kamaraju and

9     Mr. Laroche is because it sets out not just from the lawyers'

10    point of view, but also from an expert's point of view the

11    theory of defense.  We tried to be as specific for the court

12    through our expert as to why we need --

13         THE COURT:  But the very nature of your request is you

14    don't know what more the government has.

15         MS. SHROFF:  We do.  They have it.  They just won't

16    give it to us.  I know for sure they have it.

17         I think the government, if the government doesn't have

18    it, then the government can simply respond in a one-liner and

19    say, I don't have it.

20         But I'm quite certain the government has it.  I'm

21    quite certain the government's expert has it.  In fact, I'm

22    quite certain the government's expert has made great use of it,

23    and I don't see why Mr. Schulte, who is the defendant in this

24    case facing decades, should not have it.

25         I preface this here, again, because this litigation

1    team has been told that we are not even insisting that

2    Mr. Schulte himself have access.  We have offered to limit the

3    access to either counsel or go even further and limit the

4    access to just the expert.  We have even offered that the CIA

5    need not give it to us.  We would go to the CIA or the expert

6    would go to the CIA to review the forensics.

7          We have made every concession we can so that the

8    number of people viewing the forensic in question would be

9    reduced to one -- the expert.  Yet the government pushes back.

10   So the court can wait until their wall AUSA responds, and then

11   we can put in a reply, and then we can come back and have an

12   argument before this court in a closed classified session.

13   That is fine with me.

14         But the production the government has made in response

15   to the court's opinion and order today does not contain the

16   forensic discovery that we have been seeking.

17         THE COURT:  All right.

18         MR. KAMARAJU:  I would just like two points about

19   that, your Honor.

20         THE COURT:  Yes.

21         MR. KAMARAJU:  First of all, I think your Honor has

22   hit on something, which is the issue that they are trying to

23   litigate through a discovery motion is to compel the government

24   to produce additional material.

25         THE COURT:  Right.

1          MR. KAMARAJU:  That is traditionally a motion that is

2     made to the litigation team.

3          Now, in this circumstance, Ms. Shroff has represented

4     that there are parts of her motion that touch on the theory of

5     the defense.  So what we would ask is that the trial team be

6     allowed to view a redacted version of this filing so that we

7     can address some of the questions your Honor has raised, such

8     as what have we produced and why do we think what we produced

9     is sufficient.

10          A lot of what we believe Ms. Shroff is talking about

11     has already been addressed in our Section 4 motion, where we

12     have laid out precisely why we withheld it.  So I think trying

13     to do this entirely ex parte in a discovery motion --

14          THE COURT:  Ex parte is not going to work.  I want to

15     make that very clear.  There has to be some kind of

16     modification to that process so I can inform myself and make a

17     decision based on the facts, the law, and the merits.

18          MR. KAMARAJU:  That is what we would ask, your Honor.

19     We would ask for a redacted version, and then we would ask for

20     the opportunity to respond to it.

21          THE COURT:  Yes.

22          MS. SHROFF:  Your Honor, when we said that the

23     government inserting a wall team into this case made life

24     inefficient, the government protested and said that the wall

25     lawyer was perfectly capable of functioning fully in this case.

1          Their wall lawyer has our motion.  That wall lawyer is

2     an AUSA just like them, well versed in the case, because she is

3     functioning as their wall lawyer in this case, and I'm sure she

4     is fully capable of writing a response to a basic discovery

5     motion.

6          At the very least, she should write a response.  I

7     know it is a she because, you know, we have met her.  She's

8     been in court before.

9          So I don't understand.  On the one hand, the

10    government has said that their walled person is appropriate,

11    but suddenly that walled person is now incapable of responding

12    to a discovery motion.

13         So in the first instance, I think that the walled

14    prosecutor should be able to answer a simple discovery request,

15    and I already told this to Mr. Kamaraju.  We have tried to give

16    the litigation section of this team a redacted version.

17         If the court thinks, in its wisdom, that the court can

18    point us to the portions that would be fine redacted and the

19    court believes, after reviewing especially the expert

20    affidavit, that it should be shared with the litigation team,

21    we will, of course, reconsider because we are determined to be

22    reasonable here.

23         I told that to Mr. Kamaraju as well.

24         THE COURT:  Rather than me suggesting redaction, why

25    don't you suggest the redaction?

1              MS. SHROFF:  I tried.  We tried.

2              THE COURT:  Try again.

3              MS. SHROFF:  We can.  It is not going to give them

4     much, but I'm happy to give them what would be a redacted

5     version.  I can assure the court that they will only come back

6     and say this is too redacted.

7              But I also would just point one last thing out.  The

8     government filed a CIPA 4.  We didn't get to read it.  We're

9     just --

10             THE COURT:  What you characterize as your CIPA 4 is

11    not a CIPA 4.  I mean, the title, it's misapplying, because you

12    don't have any confidential information.  Indeed, that is your

13    complaint.  You want the confidential information.  This is

14    like a discovery demand.

15             MS. SHROFF:  Well, it is a demand for discovery that

16    is classified within the purview of an agency that won't

17    release it.  Maybe it is a CIPA 5, but I could file it as a

18    CIPA 5, and I would still be in the same position.

19             THE COURT:  The label is not important.

20             MS. SHROFF:  Right.

21             THE COURT:  The fact that you keep on saying it is a

22    CIPA 4, you don't have any confidential information that you

23    want to shield from production, you want confidential

24    information.

25             MS. SHROFF:  Well, if the title is immaterial, then

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    call it a discovery motion, but I don't think that makes it any

2    more available to them.  If it lays out the entire defense

3    theory, certainly it should not be given to the litigation

4    team.  But they have a walled AUSA, and the walled AUSA should

5    be able to write a response.

6            MR. KAMARAJU:  Your Honor, I think one issue is

7    practical, which is Ms. Shroff has alluded to an expert

8    declaration that sets out sort of the reason why what we

9    provided so far is not sufficient.

10           I can assure you that our wall AUSA is also not a

11   computer person.  So forcing her to respond without being able

12   to consult an expert or show that declaration to an expert who

13   is versed in the case is essentially impossible to rebut their

14   argument.  They submitted an expert declaration, but are saying

15   no other expert can weigh in on it.

16           Second, even in a universe where this material were

17   produced, hypothetically, it will be produced in a classified

18   format.  At some point, to the extent their expert wanted to

19   use any of this for purposes of trial, they would have to

20   identify the Section 5.  They would have to explain its

21   relevance in response to a government motion.  So they would

22   have to lay out all of the information that they are now

23   claiming should be submitted to your Honor ex parte.

24           So all we are saying is, in order to actually address

25   the issue, we should deal with this in a way that the

1    government can weigh in and let the court know exactly what we

2    produced in our arguments, and defense can respond to those.

3            Your Honor is absolutely right, labels are immaterial,

4    but the reason why it is important not to call it a Section 4

5    is the Section 4 specifically provides for it being ex parte.

6    There is no other discovery motion rule that specifically

7    provides for an ex parte motion.

8            So that is all we're saying.  We are not saying we

9    want to see all their theory of defense, but we do think, to

10   the extent expert analysis is being applied to suggest why it

11   is relevant, it is very difficult for us to respond to that

12   without seeing it.

13           THE COURT:  When is the response, Ms. Shroff?

14           MS. SHROFF:  I'm sorry.  Ask me again.

15           THE COURT:  When is the response due?

16           MS. SHROFF:  The government asked for, I think,

17   August 4.

18           THE COURT:  That's a Sunday.  August 2.

19           MR. KAMARAJU:  We intended to submit a response at the

20   same time as all of our other motions, motion responses.

21           Having not seen it, your Honor, if there is additional

22   work, we may ask for a couple more days, but that is where it

23   is now.

24           MS. SHROFF:  Your Honor, I'm sorry.  I still fail to

25   understand what this litigation team is saying.

1          This litigation team is essentially saying that they

2     have a lawyer who is walled on this case who is working with

3     the CIA, who is talking to the CIA, and yet can't respond to a

4     discovery motion and only these two lawyers can respond.  That

5     is basically their argument.

6          THE COURT:  I don't think that is what they are

7     saying.

8          I'll tell you what I'm willing to do is take the

9     response from the wall team and consider it, and depending upon

10    whether it answers the questions that I have, because, frankly,

11    with respect to your expert affidavit, I don't fully understand

12    the grasp of the intricacies of the defense that he is raising.

13         It may well be that you have to supplement the

14    expert's affidavit with more detail as to what it is that he is

15    lacking because of the government's position on producing

16    documents.

17         MS. SHROFF:  Your Honor, I want to inform the court of

18    two additional facts.

19         The defense expert met with the FBI expert in an

20    effort to explain, so we did make a good faith attempt to --

21         THE COURT:  Nobody is questioning anybody's good

22    faith, Ms. Shroff.

23         MS. SHROFF:  The government, by saying they can't

24    respond at all or they are in the dark, is not really true.

25    Their FBI person does know what it is that we want, and we just

1   went one step further to tell the court what we would do with

2   that information once we got it.  That is the point I was

3   trying to make to the court.

4           The second thing is this.  Mr. Kamaraju says that I

5   would be forced anyway to then make a Section 5 motion to show

6   relevance, etc.  Well, maybe not.  Maybe if I got the

7   forensics, I would be able to say, hey, I think the government

8   is completely wrong, Mr. Schulte is completely innocent, and

9   you should go back and relook at your charging decisions

10  because of X, Y, and Z in the forensics.

11          On the flip side, I could look at the forensics and

12  say to my client, you know, maybe this isn't the strongest

13  case.  Maybe we shouldn't be going to trial.  Not all discovery

14  is asked for or relevant because it is only going to be used at

15  trial.  We asked for discovery because it is proper Rule 16

16  information that the defendant should have that would tell him

17  about the charges and help him make proper decisions in the

18  most serious or the most benign of cases.

19          So that is the reason for the request as well.

20          THE COURT:  All right.  On August 2, the date for the

21  response, I'll take the response from the wall team, the

22  government's response to your application, which I'm going to

23  treat as a motion for discovery, Ms. Shroff.

24          Depending upon what the response is, I'm reserving my

25  right to ask for more information from you and from the

 1    government.  Not on an ex parte basis, but on the way a normal
 2    discovery motion would be handled.
 3            MS. SHROFF:  Your Honor, also, Mr. Zas reminds me
 4    that, of course, we would make the expert available to the
 5    court and the walled AUSA and they can bring their expert,
 6    should they want.  I mean --
 7            THE COURT:  We may end up doing that.  I would like to
 8    get the papers first.
 9            MS. SHROFF:  Also, if the government thinks --
10            THE COURT:  We're talking about next Friday.
11            MS. SHROFF:  Right.
12            But I'm also suggesting that the government could also
13    give me their expert disclosure early, and then we would all
14    be, in fairness, on the same page.  They could give me their
15    expert disclosure now so then I could give them my expert
16    disclosure.
17            THE COURT:  I already ruled on that.
18            MS. SHROFF:  Right.
19            I am just saying that is also another way to even out
20    the playing field for both sides.
21            THE COURT:  I think we're going to do what I
22    suggested.
23            MS. SHROFF:  Of course, your Honor.
24            THE COURT:  Anything else to take up today,
25    Mr. Kamaraju, Mr. Laroche?

J7PsSCHc

| | |
|---|---|
| 1 | MR. KAMARAJU:  Your Honor, since you also mentioned |
| 2 | the severance motion before, I guess we want to know if your |
| 3 | Honor had a view as to the order of the trials. |
| 4 | We understand defense counsel, I believe, would |
| 5 | propose that the espionage trial would go first.  The |
| 6 | government doesn't object to that if that is what the court was |
| 7 | thinking. |
| 8 | THE COURT:  I would just assume the espionage trial |
| 9 | would go first.  It is the most serious charge. |
| 10 | MR. KAMARAJU:  We just wanted to confirm and make |
| 11 | sure. |
| 12 | THE COURT:  All right.  Ms. Shroff, do you disagree? |
| 13 | MS. SHROFF:  I do not, your Honor.  I seldom disagree |
| 14 | with the court. |
| 15 | THE COURT:  I seldom agree with the government.  So |
| 16 | the espionage trial will go first. |
| 17 | That is scheduled for when, David, November? |
| 18 | MS. SHROFF:  November 4, your Honor. |
| 19 | THE COURT:  November 4. |
| 20 | MR. KAMARAJU:  Nothing else from the government, your |
| 21 | Honor. |
| 22 | THE COURT:  Ms. Shroff? |
| 23 | MS. SHROFF:  No.  Thank you, your Honor. |
| 24 | THE COURT:  Thank you very much. |
| 25 | The order will be entered today on the severance. |

J7PsSCHc

1                    (Adjourned)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25