UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA          :          17 Cr. 548 (PAC)
                                  :
     -v.-                         :
                                  :
JOSHUA ADAM SCHULTE,              :
                                  :
          Defendant.              :
-----------------------------------------------------------X

## Reply Memorandum of Law in Further Support of
## Joshua Adam Schulte's Motion to Suppress Evidence Seized
## from the Metropolitan Correctional Center

        Federal Defenders of New York, Inc.
        Counsel for Defendant Joshua Adam Schulte
        52 Duane Street, 10th Floor
        New York, New York 10007
        Tel.: (212) 417-8713

        Sabrina P. Shroff
        Allegra Glashausser
        Edward S. Zas
          *Of Counsel*

TO:   GEOFFREY S. BERMAN, ESQ.
      United States Attorney
      Southern District of New York
      One St. Andrew's Plaza
      New York, New York 10007
      Attn:  Matthew Laroche and Sidhardha Kamaraju
           Assistant United States Attorneys

# **Table of Contents**

Argument .................................................................................................................................. 1

    A.  FBI agents flagrantly disregarded the terms of MCC search warrant
        by seizing and reviewing notebooks clearly marked privileged .......................... 3

    B.  The use of the wall team is not evidence of good faith ....................................... 7

    C.  The search of the handwritten notebooks was not urgent. .............................. 10

    D.  Appropriate remedy ............................................................................................. 11

    E.  Because there are disputed facts, an evidentiary hearing is necessary ............. 12

Conclusion ............................................................................................................................. 13

Mr. Schulte submits this reply in response to the government's opposition to his motion to suppress evidence seized pursuant to the MCC search warrants, filed on June 18, 2019.

## Argument

### The evidence seized from the MCC should be suppressed, or at a minimum, a hearing should be ordered.

As explained in Mr. Schulte's opening memorandum of law (Dkt. 98, "MCC Br."), the Court should order the wholesale suppression of all evidence and documents seized from his former cell at the MCC because the FBI, in executing the MCC search warrant, conducted an impermissibly broad search in flagrant disregard of the scope of the warrant, and conducted the search in bad faith by reviewing Mr. Schulte's notebooks and writings that were clearly marked as protected by the attorney-client privilege. Evidence and materials uncovered pursuant to subsequent search warrants, which relied on documents and information obtained from the MCC search, should also be suppressed as fruits of the poisonous tree. MCC Br. 18-19. At a minimum, the Court should order a hearing to determine whether the FBI's execution of the MCC search went beyond permissible bounds such that wholesale suppression of all evidence seized should be granted. *See, e.g.*, *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 309 (S.D.N.Y. 2018) (ordering evidentiary hearing to determine whether agents executed search in bad faith and in flagrant disregard of the warrant); *United States v. Debbi*, 244 F. Supp. 2d 235, 238 (S.D.N.Y. 2003) (same).

1

In its opposition, the government does not deny that the FBI agents seized notebooks and documents that on its face appeared to contain privileged information. Dkt. 120, at 60 ("Gov. Res."). The government also does not deny that FBI agents reviewed those very notebooks and documents during the execution of the MCC search warrant. *Id.* It argues, however, that this should not matter because ultimately "the Notebooks did have relevant information," *id.* at 69, and the agents did not notice that the notebooks were marked Attorney-Client Privileged in all caps and "would testify that they do not recall seeing [ ] notations on the covers of the Notebooks before they began to review them." Gov. Res. 60, n. 14. The government asserts that, overall, the FBI "acted cautiously by, among other things, seeking authorization" for a wall team, <u>after</u> the agents realized that they had reviewed privileged information. *Id.* at 59. The government fails to point to any other actions that support this claim of "caution," nor does it explain how agents acting "cautiously" could have missed the clear markings of privilege on and inside the notebooks. The Court should reject the government's specious arguments and order suppression of all evidence seized from the MCC.

Alternatively, because the government's opposition raises various factual disputes, including facts that it asserts without citation to the record or an affidavit, the Court should order a hearing. *See Pinto-Thomaz*, 352 F. Supp. 3d at 309, n.11 (noting Government's "representations as to how law enforcement agents conducted

the searches" were "made unaccompanied by any sworn affidavits by the agents concerned" and cannot be considered as evidence).

A.   FBI agents flagrantly disregarded the terms of MCC search warrant by seizing and reviewing notebooks clearly marked privileged.

Under the terms of the MCC search warrant, the government should never have searched Mr. Schulte's notebooks, which were clearly labeled attorney-client privileged. MCC Br. 8-18. While the government argues that it should be afforded some latitude in executing search warrants, and cannot be faulted for a limited review of "innocuous" documents during the search, Gov. Res. 63, 68, it also acknowledges its obligation to "protect against the disclosure of attorney-client material during the execution of a search warrant" by using the "'common procedure' of designating a filter or wall team," *id.* at 64. *See also Andresen v. Maryland*, 427 U.S. 463, 482 n.11 (1976) (explaining that agents "must take care to assure that they . . . minimize[ ] unwarranted intrusions upon privacy"). Documents clearly labeled attorney-client privilege can hardly be called "innocuous" documents, and the strong public interest in protecting privileged documents from unauthorized disclosure cannot tolerate the government's "innocent" examination of such documents in executing a search warrant. *See, e.g.*, *United States v. Kaplan*, No. 02 CR. 883 (DAB), 2003 WL 22880914, at *11 (S.D.N.Y. Dec. 5, 2003) (noting the fact that "FBI case agent was given access to review materials from seized files even before it was determined whether or not the crime-fraud exception applied," "raises serious concerns about the admissibility of

3

information gained in the investigation . . . and eviscerates any claim that an 'ethical wall team' within the Government effectively screens the prosecution team from privileged materials").

The government's citation to a number of cases relating to the warrant "particularity requirement," Gov. Res. 63-64 (citing *inter alia*, *Andresen* 427 U.S. at 482; *United States v. Riley*, 906 F.2d 841, 844-45 (2d Cir. 1990) (finding warrant sufficiently particular); *United States v. Alexander*, No. 92 CR. 220 (SWK), 1993 WL 97407, at *7 (S.D.N.Y. Apr. 1, 1993)), have no bearing on the appropriate procedures for searching and seizing clearly-marked privileged materials and thus are unavailing. Moreover, the cases cited by the government that relate to search and seizure of privileged materials do not support their position. The government suggests that Mr. Schulte's case is like *United States v. Lumiere*, No. 16 CR. 483, 2016 WL 7188149, at *6 (S.D.N.Y. Nov. 29, 2016), arguing that the agents here simply did not realize the notebooks were privileged. Gov. Res. 63-64. In *Lumiere*, however the searches occurred before the defendant was charged with a crime and "the Government completed its review of the seized devices before being alerted to the fact that they might contain significant numbers of privileged documents." 2016 WL 7188149, at *6; *see also United States v. Patel*, No. 16-CR-798 (KBF), 2017 WL 3394607, at *7 (S.D.N.Y. Aug. 8, 2017) (government had no reason to know about privileged materials in advance of search).

The same is not true here. As a preliminary matter, the agents here should have been on clear notice that Mr. Schulte's cell would very likely contain privileged

4

documents. In any pretrial defendant's cell at the MCC, there is likely to be discovery materials, questions from the pretrial client about his case and discovery, notes about important portions of discovery to bring to counsel's attention, and written communications from the lawyer to the client. Here, in addition to that common-sense notice, the government concedes that Mr. Schulte had also written on the cover of each notebook "Attorney-Client Privileged," in all caps, similar to that shown below:



Schulte Ex. E, at 1-2 (blue notebook); Ex. D, at 1-2 (red notebook); *see also* Gov. Res. 60 ("The cover of each of the Notebooks was labeled with the words 'ATTORNEY-CLIENT PRIVILEGE.'").

    The government's claim that the agents were acting "cautiously" is in clear tension with their claim that the agents did <u>not</u> notice the all caps writing on the cover

5

and the first page of the notebooks.[1] The government cannot have it both ways—either the agents were careful and saw, but disregarded, the clear privilege markings on the notebooks before reviewing them, or they were so careless in their search that they did not even bother to ascertain whether the notebooks were within the scope of the search warrant before reviewing them.

Similarly, the government asserts that the agents' initial review was a "cursory examination" of the hundreds of pages of handwritten notes, but states that through this cursory examination, the agents were able to identify information that "appeared to be potentially classified." Gov. Res. 60. This is surprising given that the portions the government states are classified are short and interspersed with much non-classified material, especially considering that the "cursory examination" did not alert the agents to the all caps privilege markings on the notebooks' covers and the first page.

The government's reliance on these types of contradictory factual assertions, unsupported by an affidavit from any of the agents involved, raises precisely the type of factual dispute that requires an evidentiary hearing to resolve.

---

[1] Oddly, given that the government asserted that the agents did not see the labels on the notebooks, the government also says that the agents were not "required to take [Mr.] Schulte's notation at face value." Gov. Res. 68.

6

B. <u>The use of the wall team is not evidence of good faith</u>

In light of the unmistakable markings on Mr. Schulte's notebooks and his status as a pretrial detainee, the government was clearly on notice that the seized materials likely contained a significant amount of privileged communications, yet the agents proceeded to search and review the documents anyway. The fact that the government subsequently secured a wall team—without seeking any input from defense counsel—cannot inoculate this flagrant and reckless error. The government's repeated assertion that its eventual "use of a wall team is evidence of the Government's good faith," Gov. Res. 65, 69, rings hollow and should be rejected.[2]

The cases cited by the government suggesting that the use of a wall team indicates good faith, Gov. Res. 65, 69, are materially different from the circumstances here, as the government in those cases proactively took steps to implement a wall or filter review process as soon as it had notice that the documents contained potentially privileged information. *See, e.g.*, *Sec. & Exch. Comm'n v. Lek Sec. Corp.*, No. 17-CV-1789 (DLC), 2018 WL 417596, at *1-*2 (S.D.N.Y. Jan. 16, 2018) (providing search terms to screen for potentially privileged material in the first instance); *United States v. Triumph Capital Grp., Inc.*, 211 F.R.D. 31, 65 (D. Conn. 2002) (parties had "agreed-upon

---

[2] Notably, many of the cases cited by the government "approv[ing]" wall teams are from the same District Court judge. *See* Gov. Res. 63-65 (citing *United States v. Winters*, No. 06 CR. 54 (SWK), 2006 WL 2789864, at *2 (S.D.N.Y. Sept. 27, 2006); *Alexander*, No. 92 CR. 220 (SWK), 1993 WL 97407, at *7; *United States v. Milan-Colon*, No. 91 CR. 685 (SWK), 1992 WL 236218, at *28 (S.D.N.Y. Sept. 8, 1992)). These cases were never cited by the circuit.

7

screening procedures [which] provided greater protection to the defendants because all of the material that was to be searched was first disclosed to counsel for review and assertion of a privilege claim."). For example, in *Patel*, the government obtained emails in connection with certain email accounts pursuant to warrants issued to Google and Microsoft. 2017 WL 3394607, at *1. Prior to reviewing the emails, the government had no reason to know that the email accounts would contain communications protected by the attorney-client privilege. Once the government was notified that certain emails likely contained privileged information, a wall team was set up to review the emails for privilege. *Id.* at *7. Under these circumstances, the court found that the government's conduct did not amount to "bad faith or flagrant disregard of the warrant's limits that would justify the wholesale suppression of evidence." *Id.*

As discussed above, the agents here who executed the MCC search were on notice that Mr. Schulte's documents and notebooks likely contained privileged information, yet they proceeded to review the documents for "relevant" evidence. Gov. Res. 68-69. Only after the agents identified numerous pages of interest in the notebooks (as specified in the Wall Review affidavit), did they seek authorization for a wall team to review and redact the seized materials for privilege. The government's procedure of "search first, screen for privilege after," is manifestly not a good faith effort to conduct a search within the scope of the MCC search warrant.

The wall team here also did not complete its job, leaving privileged information unredacted for the prosecution team to see. *See* MCC Br. 16. The government

8

complains that Mr. Schulte "musters few examples" of the government's failure to fully redacted privileged material.[3] Gov. Res. 71. This is simply incorrect. Mr. Schulte's motion details numerous examples of the government's bad faith attempt to review and redact privilege material, concluding that only seven out of 59 pages in the Blue notebook would have remained unredacted had the government completed its review properly. MCC Br. 16 (wall team left unredacted information about sentencing guidelines calculations, pointing to particular information in the discovery review, draft letters to the court, and notes about problems with discovery review).

The government also attempts to diminish the importance of the privileged information it did see, saying that the agents may have read Mr. Schulte's thoughts on severance but that the "government [ ] consented" to the severance motion, and that the government may have learned about Mr. Schulte's thoughts about a plea offer, but they have not made a plea offer. Gov. Res. 73. Privilege is meant to protect the free flow of information between attorney and client for the public good. The rupture of that privilege causes more harm than the government's flippant response acknowledges. The government's knowledge of Mr. Schulte's thoughts about a plea may well have informed their decision to not make an offer thus far. But in addition, Mr. Schulte's ability to communicate openly with counsel without fear of government

---

[3] The government also faults the defense for not "claw[ing] back" unredacted privileged information from the government and calls the failure to do so "gamesmanship." Gov. Res. 71. This is simply incorrect. The defense requested that the government return the notebooks immediately after learning that the government had seized them.

9

intrusion was shattered. In short, the harm and prejudice from the government's wholly inappropriate search and review too is an issue to address at a hearing.

C.     The search of the handwritten notebooks was not urgent.

The government also asserts that there was an "urgency [to] the search" because they knew Mr. Schulte was using cellphones and it was "imperative" to determine what he had disclosed so they could "mitigate the damage." Gov. Res. 69. According to the government, the fact that they sought a wall team to review the seized materials "despite the urgency" "bolsters their good faith." *Id.* This argument again rings hollow with respect to the hard copy, handwritten notebooks. The notebooks were sitting in a secured area in the MCC completely separated from Mr. Schulte. The words were not simply going to jump out of the notebooks and be disseminated into the world. The agents' "duty to protect from disclosure sensitive information that could compromise national security" was not truly at issue when searching through hundreds of pages of handwritten notes to which Mr. Schulte no longer had access. Gov. Res. 71. In any event, the agents had a duty to refrain from violating Mr. Schulte's right to confidential communications between him and his attorneys. Any urgency with respect to investigating additional disclosures could easily have been accommodated by a prompt review of the seized notebooks through an appropriate privilege review procedure.

Indeed, the affidavit submitted in support of the MCC search warrant only supports this conclusion. The most recent information it relies on for probable cause

10

was related to the alleged use of cell phones, which had occurred "[f]or the past several months." Ex. B to MCC Br., at JAS_021106 (MCC search warrant affidavit, at 10). Similarly, a screenshot from a cell phone included in the affidavit is dated September 1, 2018, over a month before the warrant application was submitted. *Id.* at JAS_021113 (MCC search warrant affidavit, at 17). Based on the timeline established in the warrant application, the government's investigation and search was not conducted with such urgency that it could not have notified the court and defense counsel of the seizure of privilege materials prior to the agents' search and examination.

D.   <u>Appropriate remedy</u>

Suppression of the evidence seized from the MCC and from the subsequent warrants[4] is appropriate here because the government acted in bad faith and in flagrant disregard of the scope of the October 2nd MCC search warrant. The government states that the "Fourth Amendment is not violated because the officers executing the warrant must exercise some minimal judgment as to whether a particular document falls within the described category." *Riley*, 906 F.2d at 845. But not even minimal judgment is required to determine that these documents and notebooks—bearing clear markings, in all capital letters, of attorney-client privilege—

---

[4] The government does not appear to dispute that if wholesale suppression of the MCC notebooks is warranted, the evidence seized pursuant to the subsequent search warrants also should be suppressed. Gov. Res. 72.

11

cannot be reviewed in the first instance by members of law enforcement that are part of the prosecution team. Put simply, the Fourth Amendment is violated when the government acts with reckless disregard to preserving Mr. Schulte's attorney-client privilege. MCC Br. 6-8.

E.  Because there are disputed facts, an evidentiary hearing is necessary.

The government's response asserts many "relevant" facts, which do not appear in the discovery and are not supported by an affidavit. Gov. Res. 59-63. It claims that, if there was a hearing, the agents would testify that they did not notice any of the notations clearly suggesting that the information was attorney-client privileged and confidential. Gov. Res. 60, n. 14. The government further asserts that the post-it notes inside the notebooks were placed there by the wall team, not the original agents who executed the search. Gov. Res. 70 & n.16. It claims that the wall team over-redacted material, redacting information that was not privileged. *Id.* And it states that the original agents only performed a "cursory review of the Notebooks" and did not perform a "penetrating analysis of [Mr.] Schulte's privileged materials" as they did not have time to "dissect" it in one day. Gov. Res. 70. These are all factual issues unsupported by evidence in the record and that must be resolved at a hearing. *See, e.g.*, *Pinto-Thomaz*, 352 F. Supp. 3d at 309; *Lumiere*, 2016 WL 7188149, at *1 (full evidentiary hearing conducted); *United States v. Marquez*, 367 F. Supp. 2d 600, 603 (S.D.N.Y. 2005) (finding a suppression hearing necessary because "the Government failed to submit any supporting affidavit from persons with personal knowledge of the

12

facts"). Mr. Schulte respectfully requests that the Court order a hearing to elicit evidence on these disputed issues of fact.

## Conclusion

For all of the reasons described above, the Court should grant Mr. Schulte's motion to suppress all evidence seized from the MCC and subsequent warrants that relied upon the materials seized from the MCC, or at a minimum, order an evidentiary hearing to determine the extent to which the government's search went beyond the scope of the search warrant and violated Mr. Schulte's attorney-client privilege.

Dated:      New York, New York
            August 29, 2019

                                      Respectfully submitted,

                                      Federal Defenders of New York

                                      /s/ Sabrina P. Shroff
                              By: _____
                                      Sabrina P. Shroff
                                      Allegra Glashausser
                                      Edward S. Zas

                                      Assistant Federal Defenders
                                      52 Duane Street, 10th Floor
                                      New York, New York 10007
                                      Tel.: (212) 417-8713