# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

September 12, 2019

**By ECF**

Hon. Paul A. Crotty
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

Re: *United States v. Joshua Adam Schulte*, 17 Cr. 548 (PAC)

Hon. Judge Crotty:

Counsel for Joshua Adam Schulte respectfully submits this reply in response to the government's letter in opposition, dated August 30, 2019. (ECF No. 131 ("Govt. Opp.").) Despite the government's heated and lengthy response to Mr. Schulte's conflict letter, the government all but concedes that there is an ethical conflict that precludes the Federal Defenders from representing Mr. Schulte at a trial on the MCC Counts (counts four and eleven). In essence, the parties do not dispute the existence of a serious ethical conflict, and merely disagree on the proper remedy to address that conflict. Contrary to the government's position, the government is not entitled to additional information regarding the favorable testimony of Mr. Larsen and Ms. Shroff on the MCC Counts, and the very real ethical conflict raised in defense counsel's initial letter (ECF No. 128) should be resolved through appointment of new counsel on the MCC Counts and severance from the WikiLeaks Counts.

## A. Mr. Larsen's and Ms. Shroff's expected testimony is privileged and protected from disclosure.

The government's request for details of Mr. Larsen's and Ms. Shroff's expected testimony should be denied, as the substance of that testimony is protected by the attorney-client privilege, a privilege that "belongs solely to the client and may only be waived by him." *In re von Bulow*, 828 F.2d 94, 100 (2d Cir. 1987). "An attorney may not waive the privilege without his client's consent." *Id.*; *see also United States v. Juarez*, 573 F.2d 267, 276 (5th Cir. 1978) (noting "the bedrock principle that the attorney-client privilege is the client's and his alone").

Hon. Paul A. Crotty                                                                    Page 2
United States District Judge                                          September 12, 2019


As described in Mr. Schulte's opening conflict letter, the expected testimony
concerns communications among Mr. Schulte, Mr. Larsen, and Ms. Shroff to discuss the
facts and strategy of his case. (Conflict Letter at 2.) No other persons were present. All of
these communications thus fall squarely within the scope of the attorney-client privilege
and are protected from discovery unless and until Mr. Schulte waives the privilege by
disclosing the substance of the communication at trial. *See, e.g.*, *In re Cnty. of Erie*, 473
F.3d 413, 418-19 (2d Cir. 2007) ("attorney-client privilege protects confidential
communications between client and counsel made for the purpose of obtaining or
providing legal assistance"); *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 828 F.
Supp. 2d 698, 712 (S.D.N.Y. 2011) (denying government's request for six-weeks'
advanced notice of any advice-of-counsel defense). Furthermore, Mr. Schulte does not
consent to waiving the privilege at this time, and has taken no actions to impliedly waive
the privilege or consent to disclosure of privileged communications. Thus, the
government has no basis for obtaining further details of this expected testimony at this
juncture.

### B.   This Office's ethical conflict is real and must be resolved.

For all its protests of delay, the government does not truly contest the existence
and seriousness of this Office's ethical conflict with respect to the MCC Counts.[1] (Govt.
Opp. 10-11.) Indeed, the government spends the bulk of its response arguing against
severance of the MCC Counts (*id.* at 7-10), while at the same time admitting that it
cannot address Mr. Schulte's primary reason for requesting separate counsel and trial on
the MCC Counts (*id.* at 10 n.6). For the reasons described below, appointment of new
counsel for the MCC Counts is the most appropriate remedy to resolve defense counsel's
conflict, and severance is separately warranted under Federal Rule of Criminal Procedure
14(a). In the alternative, the Court should appoint *Curcio* counsel to advise Mr. Schulte
on this conflict issue, and if needed, hold a *Curcio* hearing to determine whether Mr.
Schulte is willing to waive any portion of his right to favorable testimony and conflict-
free counsel.[2] *See United States v. Kliti*, 156 F.3d 150, 156 (2d Cir. 1998) (If the
attorney's "conflict is so severe that no rational defendant would waive it, the court must
disqualify the attorney. . . . If it is a lesser conflict, the court must conduct a *Curcio*

---

[1] Additionally, despite the government's rhetoric otherwise, it fails to clearly articulate any serious
prejudice caused by the timing—months before trial—of defense counsel's disclosure of this ethical
conflict, except to say that severance and appointment of new counsel "would likely further complicate this
case and lead to substantial delays." However, this complication was in part brought on by the government,
which chose to join the MCC Counts with the WikiLeaks Counts in the same indictment.

[2] That said, the Court would not need to resolve this conflict if it grants Mr. Schulte's pending motion to
suppress all evidence seized from the Metropolitan Correctional Center. (ECF Nos. 97, 98.)

Hon. Paul A. Crotty                                                                      Page 3
United States District Judge                                          September 12, 2019

hearing to determine whether the defendant will knowingly and intelligently waive his right to conflict-free representation."); *United States v. Curcio*, 680 F.2d 881, 890 (2d Cir. 1982).

> **i.     Appointment of new counsel for the MCC Counts and severance from the WikiLeaks Counts is most appropriate.**

Assigning new counsel for Mr. Schulte on the MCC Counts and severing those counts from the WikiLeaks trial represents the best solution to this ethical conflict as it: (i) respects Mr. Schulte's constitutional right to testify on his own behalf on the WikiLeaks Counts, and call witnesses and present a full defense against the MCC Counts, (ii) avoids delaying trial of the WikiLeaks Counts, and (iii) addresses the substantial prejudice that would result if the MCC Counts were tried together with the remaining WikiLeaks Counts. Moreover, contrary to the government's claim, evidence on the MCC Counts is not admissible at trial on the WikiLeaks Counts, and should be excluded as unduly prejudicial under Rule 403.

As discussed in our initial letter, appointing new counsel for Mr. Schulte on the MCC Counts would address Rule 3.7(a)'s bar against advocates serving as witnesses, while avoiding significant hardship for Mr. Schulte and delaying trial of the WikiLeaks Counts. The government agrees that appointment of new counsel on all counts is highly undesirable and likely "would delay this case indefinitely." (Govt. Opp. 12 n.9.)[3] The government's alternative "options" of having only Mr. Larsen testify or entering into a stipulation cannot be squared with Mr. Schulte's constitutional "right to call witnesses in order to present a meaningful defense" at trial. *Washington v. Schriver*, 255 F.3d 45, 56 (2d Cir. 2001). "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). Mr. Schulte has a "fundamental constitutional right" to call both Mr. Larsen and Ms. Shroff to testify in his defense. *Schriver*, 255 F.3d at 56. In short, the government's proposed solutions are untenable, either as a practical matter or because they raise serious constitutional concerns, and must be rejected.

---

[3] The government strangely argues elsewhere that severance and appointment of new counsel on the MCC Counts "would neither prevent trial delay nor resolve the ethical issue" because of "the interconnectedness of the MCC Counts and the CIA Counts, as well as the child pornography and copyright counts." (Govt. Opp. 9.) First, the government has agreed to sever the child pornography and copyright counts from the NDI counts, and thus those charges can have no impact on the trial schedule for the NDI counts. Second, as discussed below, the MCC Counts and WikiLeaks Counts are based on distinct conduct from different time periods, and the evidence for each set of charges is distinct, such that severance of the MCC Counts will not substantially impact the timing of the WikiLeaks trial (in fact such a severance will make for a cleaner trial for the jurors and a fairer trial for Mr. Schulte).

Hon. Paul A. Crotty                                                                    Page 4
United States District Judge                                      September 12, 2019

> **ii.     Severance is also warranted under Federal Rule 14(a) to avoid the
> substantial prejudice of a combined trial of the MCC and WikiLeaks
> Counts.**

The government is also wrong that severance of the MCC counts is inappropriate under Federal Rule 14(a). The Court should "order separate trials or grant a severance under Rule 14 if it appears that the defendant is prejudiced by the joinder." *United States v. Werner*, 620 F.2d 922, 928 (2d Cir. 1980); Fed. R. Crim. P. 14(a) (allowing for "separate trials of counts" or "any other relief that justice requires" where "the joinder of offenses . . . appears to prejudice a defendant or the government"). Here, joinder of the MCC Counts with the WikiLeaks Counts will result in substantial prejudice to Mr. Schulte as (i) the jury will necessarily learn that Mr. Schulte was detained while awaiting trial on the WikiLeaks Counts, (ii) he will be forced to choose between testifying on all counts or none at all, and (iii) the "similar" nature of the MCC and WikiLeaks Counts will lead to juror confusion and unfair prejudice.

> **a.     Unfair prejudice will result from jury knowledge of pretrial
> detention.**

Courts have consistently recognized the prejudicial effect of a defendant's pretrial detention, and normally go to great lengths to prevent the jury from learning that fact, including by making sure defendants are dressed in civilian court attire, preventing the jury from seeing them in handcuffs or shackles, and allowing defendants to be seated at the defense table before the jury enters the courtroom. *See, e.g.*, *Estelle v. Williams*, 425 U.S. 501, 503 (1976) ("courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt" and finding it unconstitutional to "compel an accused to stand trial before a jury while dressed in identifiable prison clothes"); *Deck v. Missouri*, 544 U.S. 622, 629 (2005) (due process similarly "prohibit[s] the use of physical restraints visible to the jury" absent a specific state interest); *United States v. Haynes*, 729 F.3d 178, 189 (2d Cir. 2013) (finding "clear error and a violation of the defendant's constitutional right to due process of law to have required the defendant [who had no prior criminal history] to stand trial in shackles without a specific finding of necessity on the record"); *United States v. Deandrade*, 600 F.3d 115, 118 (2d Cir. 2010) (noting that a "constant reminder" or "extended comment" on the accused's pretrial detention would be impermissible).

Allowing the government to present evidence of Mr. Schulte's alleged misconduct at MCC during the WikiLeaks trial would necessarily lead the jury to learn of Mr. Schulte's pretrial detention. That jury would also learn a significant amount of inflammatory information about the circumstances of that detention, including potentially viewing pictures of Mr. Schulte in his prison garb, learning about the restrictions of his

Hon. Paul A. Crotty                                                      Page 5
United States District Judge                              September 12, 2019

activities while he has been incarcerated, and hearing about his failed attempts to secure release from incarceration.[4] None of this information about Mr. Schulte's detention or the progress of his defense would be admissible in a trial of the WikiLeaks Counts alone. In essence, the evidence on the MCC Counts would serve as a constant reminder of Mr. Schulte's pretrial incarceration. Just as forcing Mr. Schulte to appear in prison clothing would violate his constitutional right to a fair trial, so too would allowing the government to present evidence of his pretrial detention—and alleged misconduct while in prison— during the trial of the WikiLeaks Counts.

### b.  Mr. Schulte's right to testify at trial will be substantially prejudiced.

A joint trial of the MCC Counts and WikiLeaks Counts would further prejudice Mr. Schulte by forcing him to choose between not testifying at all, thus significantly prejudicing his defense against the WikiLeaks Counts, and testifying to everything, which would subject him to potentially damaging cross-examination on the MCC Counts. Prejudice arising from "'when an accused wishes to testify on one but not the other of two joined offenses which are clearly distinct in time, place and evidence'" further justifies severance. *See United States v. Sampson*, 385 F.3d 183, 191 (2d Cir. 2004) (quoting *Cross v. United States*, 335 F.2d 987, 989 (D.C. Cir. 1964)).

At a trial on the WikiLeaks Counts, Mr. Schulte intends to provide critical testimony in support of his defense that he did not leak classified information. Specifically, Mr. Schulte plans to testify about the facts and circumstances surrounding his employment at the CIA, including the nature of his job, the various projects he worked on, and the reasons for his conduct with respect to specific CIA technical projects and systems. Mr. Schulte would also explain the reasons the government has incorrectly identified him as one of the few possible individuals who could have extracted classified information from CIA backup systems during the time period in question. In contrast, Mr. Schulte does not plan to testify with regards to the MCC Counts.  A defendant has a right to testify or not to testify at trial, but if he chooses to testify, he cannot selectively invoke the right to remain silent on cross-examination. *Jenkins v. Anderson*, 447 U.S. 231, 237 n.3, 238 (1980). This very dilemma substantially prejudices Mr. Schulte's constitutional right to remain silent, and separately calls for the severance of the MCC Counts from the WikiLeaks Counts.

---

[4] The presentation of evidence about the contempt-of-court count will likely also reveal information about the progress of Mr. Schulte's defense to the WikiLeaks charges.

Hon. Paul A. Crotty                                                               Page 6
United States District Judge                                      September 12, 2019

### c. Similarities between the WikiLeaks Counts and MCC Counts would lead to juror confusion and unfair prejudice.

Here, Mr. Schulte is charged with the same offense—illegal transmission of national defense information under 18 U.S.C. § 793(e)—for both WikiLeaks-related conduct (count three) and MCC-related conduct (count four). (ECF No. 68 at 3-4.) Trying the charges simultaneously raises a serious risk that the jury will view the evidence cumulatively and convict on the improper basis that Mr. Schulte is a "bad person" who does not or cannot follow rules. *See, e.g., United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012) (evidence inadmissible where it would inevitably lead jury to conclude that defendant has "a propensity to engage in wrongful, criminal or otherwise unusual behavior that would attract the attention of the police"). For example, the jury is likely to incorrectly infer that, if Mr. Schulte violated prison rules and disclosed protected information while incarcerated at the MCC, he likely also violated the law by disclosing classified information to WikiLeaks. *See, e.g., United States v. Alverado*, No. 92-CR-728 (LMM), 1994 WL 669968, at *3 (S.D.N.Y. Nov. 30, 1994) ("The danger of prejudicial joinder . . . is greater with respect to charges that are similar in character.") (internal quotations omitted); *see also United States v. Halper*, 590 F.2d 422, 430 (2d Cir. 1978).

Failing to sever "similar character" offenses, such as the WikiLeaks Counts and MCC Counts, thus raises the precise risks of unfair prejudice, confusion of the issues, and cumulative use of evidence that Rule 14 is intended to address. *See United States v. Ezeobi*, No. 10-CR-669 (DLC), 2011 WL 3625662, at *2 (S.D.N.Y. Aug. 17, 2011) ("The danger that Rule 14 authorizes a district judge to cure is not merely that the jury will think worse of a defendant charged with two crimes rather than one, but that the jury will use the evidence cumulatively."); *Werner*, 620 F.2d at 929 (acknowledging risk that multiple charges in a single trial may cause juror confusion and lead the jury to infer a criminal disposition and cumulate the evidence against the accused).

Moreover, in light of the complexity of the WikiLeaks charges and the large number of WikiLeaks-related counts, there is an increased risk that the jury will view the evidence cumulatively and be unable to consider the evidence on the MCC Counts and the WikiLeaks Counts separately. For example, in *United States v. Harris*, the Court severed one fraud count relating to the defendant's personal loan application from the remaining 22 counts on a corporate loan fraud scheme, where the "conduct is of 'similar character' only in the sense that each involved fraud and had the objective of persuading a bank to lend its money," while "the risk to the defendant of unfair prejudice, through confusion of the issues or cumulative use of evidence by the jury, is heightened." 805 F. Supp. 166, 182 (S.D.N.Y. 1992). Likewise, here, the WikiLeaks charges and the MCC charges are "similar" only in the broad sense that Mr. Schulte is accused of violating rules and impermissibly sharing protected information with third parties. The underlying

Hon. Paul A. Crotty                                                          Page 7
United States District Judge                                    September 12, 2019

purposes and methods for sharing that information are drastically different, and
combining these two sets of charges in a single trial would likely generate juror confusion
and overwhelmingly unfair prejudice, such that severance is warranted under Rule 14(a).

> **iii.     Evidence on the MCC Counts is distinct and not admissible at the
>             WikiLeaks trial.**

The government wrongly contends that evidence of Mr. Schulte's prison conduct,
including evidence seized from the MCC, would be admissible at the WikiLeaks trial.
(Govt. Opp. 9.) Contrary to the government's contention, the MCC Counts and
WikiLeaks Counts are not connected by any common scheme, and there is minimal
factual overlap between them. First, the timing of the counts is different: the MCC
Counts are exclusively based on conduct occurring during and after December 2017,
while Mr. Schulte was at the MCC; the WikiLeaks Counts are based on alleged conduct
occurring in 2016 and early 2017, before Mr. Schulte was incarcerated. The apparent
objective of the alleged conduct is also different: the context and purpose of Mr.
Schulte's alleged conduct at the MCC—to share information with his attorneys and
expose what he believed was his wrongful arrest and prosecution—differs sharply from
the presumed objective of the WikiLeaks Counts. *See United States v. Oaks*, 285 F. Supp.
3d 876, 880 (D. Md. 2018) (finding no common scheme between the obstruction of
justice count and wire fraud counts because the defendant's "scheme to commit bribery
and his scheme to obstruct justice are two distinct efforts that lack a shared objective").

Critically, the government fails to identify the specific documents seized from the
MCC that allegedly constitute "direct evidence" on the WikiLeaks counts (Govt. Opp. 9),
and the defense is not aware of any such documents.[5]

Evidence on the MCC Counts is also not admissible in the WikiLeaks trial under
Rules 404(b) and 403. Federal Rule of Evidence 404(b) prohibits evidence of other
crimes or bad acts as character or propensity evidence. Moreover, where the defendant
relies on a defense of mistaken identity—that he did not commit the crime at all—
"evidence of other acts is not admissible for the purpose of proving intent." *United States
v. Ortiz*, 857 F.2d 900, 904 (2d Cir. 1988).

Here, Mr. Schulte intends to assert the defense of mistaken identity with regards
to the WikiLeaks charges, and there is nothing to suggest that the alleged misconduct at
the MCC could be relevant to show modus operandi, motive, opportunity, preparation or
for any other legitimate purpose. In these circumstances, evidence of any alleged

---

[5] On September 10, 2019, defense counsel asked the government to identify the specific documents that the
government relies upon, but we have not yet received any response.

Hon. Paul A. Crotty                                                          Page 8
United States District Judge                                    September 12, 2019

misconduct at the MCC would serve no legitimate purpose at trial of the WikiLeaks
Counts and should be barred under Rule 404(b). *See Sampson*, 385 F.3d at 192 (holding
that joinder substantially prejudiced the defendant in part because it allowed what
otherwise would have been impermissible 404(b) propensity evidence); *United States v.
Krug*, 198 F. Supp. 3d 235, 251 (W.D.N.Y. 2016) ("A defendant may be substantially
prejudiced . . . if 'evidence that the jury should not consider' as to certain counts were
nonetheless admitted in a joint trial," because "the jury might improperly use that
evidence to infer a defendant's guilt as to counts on which the evidence is
inadmissible.").

     Furthermore, even if evidence of Mr. Schulte's conduct at the MCC were
admissible under Rule 404(b), that evidence should be excluded under Rule 403, as its
probative value would be substantially outweighed by the risk of unfair prejudice and
juror confusion for the reasons stated above. *See Harris*, 805 F. Supp. at 184 (severing
single fraud count from other fraud counts because even if evidence of single fraud count
were admissible under 404(b), "the Rule 403 balance tips against the government in
seeking to offer" that evidence at trial of the remaining fraud counts).

*    *    *

     For the foregoing reasons, we request that the Court relieve Federal Defenders on
the MCC Counts only, and sever and appoint new counsel for Mr. Schulte on counts four
and eleven, or in the alternative, appoint *Curcio* counsel to advise Mr. Schulte on the
conflict issue raised in this letter motion.

     Thank you for considering this request.

                     Respectfully submitted,

                     /s/ Sabrina Shroff/Edward S. Zas
                     Assistant Federal Defenders