UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

UNITED STATES OF AMERICA        :

            -v-         :

JOSHUA ADAM SCHULTE,            :

           Defendant.          :

-----------------------------------------------------------X

S-2 17 Cr. 548 (PAC)

MEMORANDUM & ORDER

      HONORABLE PAUL A. CROTTY, United States District Judge:

      On August 26, 2019, Defendant wrote claiming that a purported ethical issue had arisen (Dkt. 128), in that two attorneys from the Federal Defenders—Matthew Larsen and Sabrina Shroff—had "favorable, relevant, and admissible testimony" as to counts four and eleven of the superseding second indictment ("MCC Counts").[1] The purported ethical issue raised by the Defendant concerns the advocate-witness rule, which generally bars trial attorneys from being a witness in the same proceeding. *See* N.Y. R. Prof'l Conduct § 3.7(a). The Defendant's proposed solution to this dilemma is to sever counts four and eleven and have the Court appoint new counsel on the MCC Counts for yet a third trial. In the alternative, the Defendant requests that the Court appoint *Curcio* counsel for Schulte. (*See* Def. Reply, Dkt. 139.)

      On August 30, 2019, the Government filed its opposition to severance and separate trials of the MCC Counts; and to the appointment of new counsel to conduct the trial on the MCC Counts. The Government suggests instead that Matthew Larsen could potentially provide testimony since he is not a member of the trial team and thus, the advocate-witness rule would

---

[1] Count Four charges Schulte with transmission or attempted transmission of classified information. Count Eleven charges Schulte with Contempt of Court.

not be implicated. The Government opposes severance and calls for more disclosure of the details of the purported testimony of the Federal Defenders. (*See* Gov't Opp'n, Dkt. 131.) Both parties appear to agree that complete disqualification of the Federal Defenders would result in delay and prejudice to Schulte. (Def. Mot. at 4; Gov't Opp'n at 9.)

The Court DENIES the Defendant's motion for severance and the Defendant's request for a *Curcio* hearing.

## BACKGROUND

According to the Defendant, an ethical issue may arise if the Government seeks to introduce excerpts of Schulte's writings in his notebooks, found at MCC, as evidence of his specific intent to violate the law. (Def. Mot. at 2.) To prove count four at trial ("MCC Leak Count") for transmission or attempted transmission of classified information, the government will have to show, *among other elements*, that the defendant acted willfully (i.e., intentionally and purposely with the intent to do something the law forbids) and that the defendant had reason to believe that the information could be used to harm the United States or to the advantage of any foreign nation. 18 U.S.C. § 793(e); *United States v. Hitselberger*, 991 F. Supp. 2d 101, 107 (D.D.C. 2013).[2] Counsel for the Defendant speculates that the Government will seek to introduce writings in Schulte's notebook in support of the MCC Leak Count. In order to rebut what the Government may do, Schulte claims it is necessary to call both Matthew Larsen and Sabrina Shroff to present favorable testimony bearing on his state of mind.[3] (Def. Mot. at 2.)

---

[2] *See* Gov't Opp'n at 5 (explaining that count four ("MCC Leak Count") is based on Schulte's transmission and attempted transmission of classified national defense information from the MCC).

[3] The Defendant has filed the information concerning counsel's advice under seal and thus, the advice of counsel is not revealed in this opinion.

The Defendant requests that the MCC Leak Count and Contempt of Court Count be severed. But writing down his thoughts on classified information is not the crime he is charged with, but rather it is the transmission of such information. There is more than one way to prove that. If the Government's proof comes in one way or another, it may well be that the purported testimony by the Federal Defenders would not be necessary. The situation does not call for a second severance and would require three separate trials.

## DISCUSSION

### I. Severance and Defense Counsel's Conflict

"A defendant seeking severance must show that the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials." *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998). The denial of a motion to sever is reviewed "only for abuse of discretion and will not be overturned unless the defendant demonstrated that the failure to sever caused him substantial prejudice in the form of a miscarriage of justice." *United States v. Page*, 657 F.3d 126, 129 (2d Cir. 2011) (internal quotations omitted). That the counts at issue are "sufficiently logically linked" and would require much of the same evidence weighs against severance. *Id.*[4]

The Defendant argues that the advocate-witness rule is a conflict requiring severance. The Court begins by assessing whether there is in fact a conflict requiring disqualification of the Federal Defenders. The Court notes that the crime charged is transmission, which the

---

[4] There is a logical link between the Wikileaks counts and the MCC Counts—the latter involves attempts to vindicate the former charges, or according to the Government allegedly furthered the goals of the former. Here, severance of the Wikileaks counts and MCC Counts would involve the same evidence presented to two different juries and would cause unnecessary duplication and inefficiency as well as the danger of inconsistent results. *See e.g., Page*, 657 F.3d at 129.

3

Government may be able to prove without any reference to the contents of Schulte's notebook. But since the Government relied on information found in the notebook in obtaining a superseding indictment to add the MCC Leak Count and appears to continue to rely on documents found in Schulte's cell to support the MCC Leak Count, the Court will assess the potential conflict. (*See* Gov't Opp'n at 5.) Further, the Court notes that the Government continues to assert that Schulte's notebook and conduct in prison may be used for other purposes under Rule 404(b) such as consciousness of guilt, motive, intent, absence of mistake.[5] (*See* Gov't Opp'n at 9.)

Even assuming the need for testimony as to Schulte's state of mind arises, the advocate-witness conflict can be avoided because Mr. Larsen is not on Schulte's trial team and could testify as to Schulte's state of mind. As the Defendant concedes, it was Mr. Larsen who provided the advice at issue and the Defendant has not identified any additional testimony that only trial counsel (Ms. Shroff) possess. (Def. Mot. at 2.) *See United States v. Jones*, 900 F.2d 512, 520 (2d Cir. 1990) (An agreement to limit inquiry to avoid the problem of counsel as an unsworn witness may be appropriate in some circumstances). Under Rule 3.7(a) of the New York Rules of Professional Conduct cited by the Defendant, "[a] lawyer shall not act as an advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact." Subsection (b) is broader, as it addresses imputation: "A lawyer may not act as an advocate before a tribunal in a matter if ... another lawyer in the lawyer's firm is likely to be called as a witness on a significant issue *other than on behalf of the client*, and it is

---

[5] The Court takes no position on whether the evidence would be properly used for such purposes. Rather, the Court recognizes that such arguments support the Defendant's contention that the attorney's favorable testimony on behalf of Schulte may be relevant.

4

apparent that the *testimony may be prejudicial to the client*." *See* N.Y. R. Prof'l Conduct § 3.7(b)(1) (emphasis added).

The Defendant does not give any reason why Mr. Larsen of the Federal Defenders cannot provide the relevant testimony.[6] Mr. Larsen is the attorney who provided the advice at issue and he is not trial counsel; thus, his testimony would not implicate the advocate-witness rule. *See Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 283 (2d Cir. 2004) ("The advocate-witness rule applies, first and foremost, where the attorney representing the client *before a jury* seeks to serve as a fact witness *in that very proceeding*."). Further, Ms. Shroff would not be disqualified under Rule 3.7(b) because another lawyer in her organization could be called to provide testimony that is favorable and *on behalf of her client*. *See Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009) (explaining 3.7(b) applies to disqualify where another lawyer in the lawyer's firm is likely to be called on a significant issue other than on behalf of the client and it is apparent that the testimony may be prejudicial to the client). Accordingly, it is not the case that counsel for Schulte is faced with proceeding at trial without evidence of the favorable testimony or even with a limitation that would prohibit the attorney who provided the advice (Mr. Larsen) from testifying. In other words, the Defendant would not be required to forgo the favorable testimony.[7] Under these circumstances, the Court does not

---

[6] Nor is it the case that Schulte is prohibited from testifying as to the advice he received.

[7] Perhaps recognizing that under these circumstances counsel is not disqualified by Rule 3.7, the Defendant asserts that calling only Mr. Larsen would infringe on Schulte's constitutional "right to present witnesses." (Def. Reply at 3.) The cases cited by the Defendant involve the wholesale exclusion of testimony, which would not be the case here. And the Court does not find that omitting Ms. Shroff's duplicative testimony would create reasonable doubt that would not otherwise exist.

5

find that the Defendant has demonstrated that "the failure to sever would cause him substantial prejudice in the form of a miscarriage of justice." *Page*, 657 F.3d at 129.

In his reply brief, Schulte does not rebut the Government's arguments but instead returns to the more typical arguments for severance such as the prejudice of pretrial detention and juror confusion, which might arise if the MCC Counts are tried with the Wikileaks counts. (Def. Reply at 4.) There are also pictures of Schulte in prison garb which might be introduced in connection with Count Four. Neither of these concerns mandate the severance Schulte seeks. *See United States v. Gracesqui*, No. 10-cr-74 (PKC), 2015 WL 5231168, at *5 (S.D.N.Y Sept. 8, 2015) (holding generalized claims of prejudice or jury confusion is insufficient to succeed in a motion to sever); *United States v. Deandrade*, 600 F.3d 115, 119 (2d Cir. 2010) ("brief and fleeting comment on the defendant's incarceration during trial, without more, does not impair the presumption of innocence"). Nor does Schulte's "mere unexplicated assertion of the desire to testify on only [] [the Wikileaks] count[s]" require severance. *United States v. Sampson*, 385 F.3d 183, 191 (2d Cir. 2010) ("[N]o need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and the strong need to refrain from testifying on the other.") *quoting Baker v. United States*, 401 F.2d 958 (D.C. Cir. 1968).[8] The motion for severance is denied.

---

[8] The Government also raises generic concerns in support of its opposition to severance; including, that the Defendant's second motion for severance is untimely and should be deemed waived. (Gov't Opp'n at 7-8.) The Government argues that there is no excuse for Schulte's failure to seek severance of the MCC Counts by the pretrial deadline because the Government had already provided all the necessary information at that time. (*Id.*) The Court determines that the August 26 motion is untimely and constitutes an additional reason to deny Schulte's motion. *See* Fed. R. Crim P. 12(c)(3) ("If a party does not meet the deadline for making a Rule 12(b)(3) motion [severance of charges], the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause."). But the Court need not decide whether the motion to sever was waived because the Court has determined that the Defendant cannot show

6

## II. *Curcio* Hearing

The Defendant has asked in the alternative that the Court appoint *Curcio* counsel to advise Schulte on the conflict issue, and if needed, hold a *Curcio* hearing. (Def. Reply at 2.) "A *Curcio* hearing is required whenever a defendant would forgo important testimony by his attorney because of his attorney's continued representation of him." *United States v. Kliti*, 156 F.3d 150, 156 (2d Cir. 1998). The request is denied. It is far from clear that the scenario projected by Schulte will occur. Furthermore, it is not clear what the precise testimony will be so it cannot be established—at least in the record as it exists now—what Schulte is giving up. At a bare minimum it will be necessary for the Defendant to disclose the likely testimony before the Court can consider the *Curcio* request.

### CONCLUSION

For the foregoing reasons, the Court DENIES the Defendant's motion for severance and the Defendant's request for *Curcio* counsel. The Clerk of the Court is directed to terminate Docket 128.

Dated: New York, New York
September 24, 2019

SO ORDERED

*/s/ Paul A. Crotty*

PAUL A. CROTTY
United States District Judge

---

that "the failure to sever would cause him substantial prejudice in the form of a miscarriage of justice." *Page*, 657 F.3d at 129.

7