**Federal Defenders**
**OF NEW YORK, INC.**

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director
and Attorney-in-Chief*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

BY ECF (with redactions)
BY HAND (ex parte, without redactions)

October 10, 2019

Hon. Paul A. Crotty
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

Re: *United States v. Joshua Adam Schulte*, No. 17 Cr. 548 (PAC)

Dear Judge Crotty:

We have reviewed the Court's Memorandum and Order, filed on September 26, 2019 (Dkt. No. 147) ("Ruling"), denying Mr. Schulte's motion to sever counts four and eleven ("MCC Counts") or, in the alternative, to appoint *Curcio* counsel to advise Mr. Schulte with respect to the potential testimony of attorneys Matthew B. Larsen and Sabrina P. Shroff. In light of the Ruling, Federal Defenders of New York, Inc. ("Federal Defenders" or "FDNY") has determined, reluctantly, that we cannot continue to represent Mr. Schulte effectively. *See United States v. Kliti*, 156 F.3d 150, 152 (2d Cir. 1998) (holding that the "failure to conduct a *Curcio* hearing, after learning that defendant's counsel was a witness to a statement that tended to exculpate [defendant], violated [defendant's] Sixth Amendment right to effective assistance of counsel"); *State ex rel. Neb. State Bar Ass'n v. Neumeister*, 449 N.W.2d 17, 22 (Neb. 1989) (per curiam) (lawyer suspended for not withdrawing as counsel pursuant to advocate-witness rule; trial court's failure to disqualify attorney "will not exonerate him from discipline where it is found that his conduct is in violation of disciplinary rules").

Accordingly, we respectfully request that the Court relieve Federal Defenders and appoint new counsel for Mr. Schulte pursuant to the Criminal Justice Act. While we recognize that granting this request will delay Mr. Schulte's trial and thereby cause him substantial hardship by prolonging his pretrial

confinement—a result both sides have sought to avoid—denying the request will imperil his constitutional rights to the effective assistance of conflict-free counsel, to present a complete defense, and to receive a fair trial, which must take precedence.

Alternatively, if the Court declines to relieve Federal Defenders, we renew our request that *Curcio* counsel be appointed to consult with Mr. Schulte. *See United States v. Perry*, 30 F. Supp. 3d 514, 542–43 & nn.12–13, 551 n.21, 554 (E.D. Va. 2014) (noting that counsel's disqualification would likely cause "extreme hardship" to defendant, but directing defendant to consult with "independent counsel … to ensure that the best strategic course is to proceed without defense counsel's testimony").[1]

## FACTS

### A.   The Advocate-Witness Problem

As discussed in our letter to the Court of August 26, 2019 (Dkt. No. 128), two FDNY attorneys—Mr. Larsen, who is not a member of Mr. Schulte's trial team, and Ms. Shroff, who leads that team—have important and admissible testimony to offer in Mr. Schulte's defense. Our August 26 letter provided only a brief description of this expected testimony. But a more detailed description is appropriate in light of the Court's Ruling.

While Mr. Larsen's and Ms. Shroff's testimony would overlap in certain respects, it would not be merely cumulative.



---

[1] This letter is being filed ex parte to avoid disclosing to the prosecutors the favorable defense testimony discussed herein, which reveals not only defense strategy but also the substance of privileged attorney-client communications. A redacted version of this letter is being filed on the public docket and served on the prosecutors.



An independent lawyer could reasonably conclude that Ms. Shroff would be a more persuasive witness at trial than Mr. Larsen, or vice versa, or that both witnesses are essential to presenting the full picture of what occurred to the jury.[2]

### B.    The Government's Position

In response to our August 26 letter, the government agreed that Ms. Shroff may not serve at trial as both an advocate and a witness. It proposed two alternative courses of action: (1) "the evidence can be introduced in an alternate form"—such as a testimonial stipulation or live testimony from Mr. Larsen alone—"that does not require [Ms. Shroff] to testify or (2) the Court can appoint Schulte new trial counsel for all of the counts against him." Gov't Letter to the Court, Aug. 30, 2019, at 11 (Dkt. No. 131). Notably, the government never suggested that it would not seek to introduce any portions of the MCC notebooks.

### C.    The Court's September 26 Ruling

The Court declined to grant severance or appoint *Curcio* counsel. First, the Court stated that the defense was "speculat[ing]" that the government at trial will seek to introduce writings in Mr. Schulte's notebooks "to support the MCC Leak Count." Ruling at 2. If it doesn't, the Court opined, "it may well be that the purported testimony by the Federal Defenders would not be necessary." *Id.* at 3.

---

[2] Whether the testimony is presented through Mr. Larsen, Ms. Shroff, or both, it would not be hearsay because the advice that was given to Mr. Schulte is not being offered for its truth, but rather "as circumstantial evidence of the defendant's state of mind." *United States v. Scully*, 877 F.3d 464, 474 (2d Cir. 2017); *see* Fed. R. Evid. 801(c) (defining "hearsay" as an out-of-court statement offered "to prove the truth of the matter asserted in the statement").

The Court next ruled that, even if attorney testimony becomes necessary, "the advocate-witness conflict can be avoided because Mr. Larsen is not on Schulte's trial team and could testify as to Schulte's state of mind." *Id.* at 4. The Court found that the defense "has not identified any additional testimony that only [Ms. Shroff] possess[es]." *Id.* The Court concluded that allowing the jury to hear Ms. Shroff's "duplicative testimony" would not "create reasonable doubt that would not otherwise exist." *Id.* at 5 n.7.

The Court further ruled that *Curcio* counsel was not necessary at this time because Mr. Schulte was not being required to "forgo important testimony" in order to keep Ms. Shroff as his counsel. *Id.* at 7. Instead, the Court said, he could simply introduce the relevant testimony, if necessary, from Mr. Larsen alone. *Id.* at 5.

## ARGUMENT

**Because of the advocate-witness rule, Federal Defenders cannot continue to represent Mr. Schulte effectively in accordance with our obligations as assigned counsel.**

A.   **Ms. Shroff is likely to be an important witness at Mr. Schulte's trial.**

The Court found that, depending on the government's proof at trial, Ms. Shroff's testimony may not be "necessary." Ruling at 2-3. That conclusion is highly debatable, beside the point, and, respectfully, not for the Court to decide.

First, the government has already made clear to defense counsel, if not to the Court, that it intends to rely at trial on the MCC notebooks to prove, *inter alia*, that Mr. Schulte illegally attempted to transmit national defense information from the MCC, i.e., that he intended to transmit the information and took a "substantial step" towards doing so. *See, e.g., United States v. Gagliardi*, 506 F.3d 140, 150 (2d Cir. 2007) (reciting elements of federal criminal attempt). Indeed, the government is likely to assert that his writings not only demonstrate his culpable intent, but themselves constitute a "substantial step" towards committing the alleged crime.

Second, given the likely importance of the notebooks at trial, an independent lawyer could reasonably conclude that Ms. Shroff's testimony is necessary because, without it, Mr. Larsen's testimony will be uncorroborated, less persuasive, or incomplete.

In any event, the Court's opinion about the necessity of Ms. Shroff's testimony does not resolve the advocate-witness dilemma. Rule 3.7 generally

requires disqualification whenever a lawyer is "*likely* to be a witness on a significant issue of fact." N.Y. Rules of Professional Conduct, Rule 3.7(a) (emphasis added). The Second Circuit has held that the "test" is "whether the attorney's testimony could be significantly useful to his client. If so, he should be disqualified regardless of whether he will actually be called." *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989).[3]

Ms. Shroff's testimony "could be significantly useful" to Mr. Schulte, and would not merely be "cumulative" of Mr. Larsen's testimony. "Evidence is only cumulative 'when it adds very little to the probative force of the other evidence in the case so that if it were admitted its contribution to the determination of truth would be out-weighed by its contribution to the length of trial.'" *United States v. Fulcher*, 250 F.3d 244, 250 (4th Cir. 2001) (quoting *United States v. Kizeart*, 102 F.3d 320, 325 (7th Cir. 1996)). Thus, "[n]ot all evidence that is duplicative is therefore cumulative, and evidence should not be excluded on this ground merely because it overlaps with other evidence." 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 4:15 (4th ed. June 2019 update); *cf. Arizona v. Fulminante*, 499 U.S. 279, 299 (1991) (deeming one confession not "cumulative," despite some overlapping details, where "the jury might have believed that the two confessions reinforced and corroborated each other").

Here, Ms. Shroff's testimony would reinforce, corroborate, and augment Mr. Larsen's, without consuming substantial additional trial time. But if only Mr. Larsen is allowed to testify to the advice given, his testimony might be far less powerful. *See Federal Evidence, supra,* § 4:15 ("[A] single witness on an important point might not be persuasive, while two, three, or five witnesses might be."). Thus, Ms. Shroff's testimony is not "needlessly … cumulative" under Fed. R. Evid. 403. *See United States v. Scully*, 877 F.3d 464, 475 (2d Cir. 2017) (improper exclusion of testimony of second attorney regarding advice of counsel required a new trial; testimony was not "cumulative" because it "might well have bolstered [the defendant's] case in the eyes of the jury … particularly where the case revolved around what [the defendant] told his attorneys and what they told him").[4]

---

[3] Though *Lamborn* was interpreting Disciplinary Rule 5-102(A) of the American Bar Association's Code of Professional Responsibility, that rule is "substantially the same" as the current Rule 3.7(a) of the New York Rules of Professional Conduct. *Ramchair v. Conway*, 601 F.3d 66, 74 n.6 (2d Cir. 2010) (citing *Gabayzadeh v. Taylor*, 639 F. Supp. 2d 298, 303 (E.D.N.Y. 2009) (differences "largely stylistic")).

[4] This Court declined to find that Ms. Shroff's testimony would "create reasonable doubt that would not otherwise exist." Ruling at 5 n.7. But that is the constitutional standard for "materiality" when evidence is withheld in violation

Further, even if the testimony of both lawyers could be deemed "needlessly … cumulative," Fed. R. Evid. 403, such that the Court could properly limit the defense to calling only one lawyer-witness, the choice of which witness to call belongs exclusively to defense counsel, not the Court, the government, or even the defendant himself. *See, e.g., United States v. Chapman*, 593 F.3d 365, 369 (4th Cir. 2010) ("[W]hich witnesses to call is a classic tactical decision left to counsel"); *Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008) ("[T]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney."). And the need for counsel to make that choice underscores that the advocate-witness conflict is operative: because Ms. Shroff is both lead trial counsel and one of the potential fact witnesses on an important subject, she cannot objectively assess whether she or Mr. Larsen would make the most effective witness. For example, if Ms. Shroff decided to call Mr. Larsen as a trial witness, instead of testifying herself, it could create the appearance that she was more interested in remaining as counsel than in serving Mr. Schulte's best interests by testifying. *See MacArthur v. Bank of New York*, 524 F. Supp. 1205, 1208 (S.D.N.Y. 1981) (discussing the "potential conflict of interest with which an attorney may be faced in this situation: attorneys anxious to participate in the litigation might fail to step aside as counsel and testify even if their testimony could help the client; other attorneys might fail to step aside because the client insists on their continued representation").

Rule 3.7 requires "an advocate-witness to withdraw from the representation in which he or she is acting as trial counsel; the advocate-witness rule does not provide a basis for the exclusion of otherwise admissible evidence." *Samad Bros., Inc. v. Bokara Rug Co. Inc.*, No. 09 Civ. 5843 (JFK) (KNF), 2012 WL 1604849, at *4 (S.D.N.Y. May 8, 2012) (citing *Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 283 (2d Cir. 2004)). Here, however, the Court appears prepared to exclude Ms. Shroff's "otherwise admissible evidence," rather than relieving FDNY so that she may testify. That course risks injecting constitutional error into the trial by denying Mr. Schulte his rights to conflict-free counsel, to present a complete defense, and to receive a fair trial.

---

of *Brady v. Maryland*, 373 U.S. 83 (1963). *See United States v. Agurs*, 427 U.S. 97, 112 (1976). The applicable standard here is merely whether Ms. Shroff's testimony "could be significantly useful" to Mr. Schulte. *Lamborn*, 873 F.2d at 531.

B. **Even if Ms. Shroff does not take the stand, the jury is likely to learn that she was present when the legal advice was given, thereby implicating the concerns underlying the advocate-witness rule.**

Even if Ms. Shroff does not testify, the jury is likely to learn, through Mr. Larsen's or Mr. Schulte's testimony, that she was present (and did not disagree) when Mr. Larsen provided the advice in question. But if the jury learns of Ms. Shroff's presence, she would effectively become an unsworn advocate-witness. As such, the jury might well interpret her questions or summation as testimony concerning her own version of what Mr. Larsen said to Mr. Schulte, and why. The Second Circuit has "condemned" this situation, *United States v. Kwang Fu Peng*, 766 F.2d 82, 86 (2d Cir. 1985): "Since as an unsworn witness [defense counsel] would not be subject to cross-examination or explicit impeachment, the interest sought to be protected by the [advocate-witness rule] would be even more seriously eroded than if [defense counsel] appeared as a sworn witness." *Id.* (quoting *United States v. Cunningham*, 672 F.2d 1064, 1075 (2d Cir. 1982)). *See also Ciak v. United States*, 59 F.3d 296, 304–05 (2d Cir. 1995) ("Standing alone, becoming an unsworn witness is a basis for disqualification of an attorney."), *abrogated on other grounds*, *Mickens v. Taylor*, 535 U.S. 162, 170 n.3 (2002).

This problem cannot be solved by precluding Mr. Larsen or Mr. Schulte from revealing that Ms. Shroff was present when the advice was given. Such a "solution" would raise serious constitutional problems of its own. Instructing witnesses not to mention that Ms. Shroff was present (and tacitly agreed with Mr. Larsen's advice) would distort the truth of what occurred—there were three witnesses to the advice given (including Ms. Shroff, as lead counsel), not just two. Keeping that fact from the jury could thereby make Mr. Larsen's or Mr. Schulte's testimony less credible and powerful in the jury's eyes.

C. **There is no viable alternative to relieving Federal Defenders.**

Both sides, recognizing the constraints posed by the advocate-witness rule, but seeking to avoid unnecessary delay, have previously proposed alternatives to relieving Federal Defenders as counsel on all counts. Defense counsel, for example, proposed severing the MCC Counts and assigning new counsel for those counts only. Alternatively, defense counsel asked the Court to assign *Curcio* counsel to advise Mr. Schulte with respect to the potential testimony of Ms. Shroff and Mr. Larsen. The Court has rejected those options. *See* Ruling at 2, 7.

The government suggested that a stipulation might resolve the problems presented by the advocate-witness rule. But accepting a stipulation in lieu of

live testimony would deprive Mr. Schulte of the opportunity for "evidentiary richness and narrative integrity in presenting [his] case." *Old Chief v. United States*, 519 U.S. 172, 183 (1997). As a consequence, the decision whether to enter into a stipulation needs to be made by independent, conflict-free trial counsel, in consultation with Mr. Schulte and the government, not by Federal Defenders.

The government has also acknowledged that, if Mr. Schulte decides to reject a stipulation, and insists that both Ms. Shroff and Mr. Larsen testify in his defense, the Court should relieve Federal Defenders as counsel on all counts. *See* Gov't Letter to the Court, Aug. 30, 2019, at 11 (Dkt. No. 131). The Court should do so now in an abundance of caution. Otherwise, it might have to relieve counsel closer to (or, worse, in the midst of) trial, which would only cause additional delays and inconvenience to everyone involved.[5]

## CONCLUSION

For these reasons, the Court should relieve Federal Defenders as counsel to Mr. Schulte on all counts and appoint new counsel to represent him. Alternatively, the Court should appoint independent counsel for the limited purpose of advising him regarding the advocate-witness problem.

Respectfully submitted,

_____/s/_____
Edward S. Zas/Sabrina P. Shroff

---

[5] Relieving Federal Defenders would be unnecessary if the Court grants Mr. Schulte's pending motion to suppress the notebooks seized from his cell at the MCC, or if the government voluntarily agrees not to use the notebooks at trial.