J9I3SCHC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                           17 CR 548 (PAC)

5    JOSHUA ADAM SCHULTE,

6              Defendant.

7    ------------------------------x

8                                          New York, N.Y.
                                           September 18, 2019
9                                          11:20 a.m.

10

11   Before:

12                  HON. PAUL A. CROTTY,

                                           District Judge
13

14                       APPEARANCES

15   GEOFFREY S. BERMAN
          United States Attorney for the
16        Southern District of New York
     MATTHEW LAROCHE
17   DAVID W. DENTON, JR.
          Assistant United States Attorneys
18

     FEDERAL DEFENDERS OF NEW YORK
19        Attorneys for Defendant
     SABRINA P. SHROFF
20   EDWARD S. ZAS

21

22

23

24

25

J9I3SCHC

1          THE DEPUTY CLERK:  Your Honor, in the matter of Docket

2     No. 17 Cr. 548, United States of America v. Joshua Schulte.

3     Counsel for the government, please state your appearance.

4          MR. LAROCHE:  Good morning, your Honor.  Matt Laroche

5     and David Denton for the government.

6          THE COURT:  Mr. Denton, Mr. Laroche.

7          MR. ZAS:  Edward Zas, Federal Defenders of New York,

8     with Sabrina Shroff for Joshua Schulte.

9          THE COURT:  I thought what we would do this morning is

10    go through a number of pending matters, just to make sure I

11    have all the materials you want me to consider in resolving

12    these disputes, and then I'll open it up to any further matters

13    that you want to raise.

14          Topic number one deals with the schedule.  I have a

15    submission from the government and from Mr. Schulte.  Is there

16    anything else you want to add to my consideration of the

17    schedule, proposed schedule by the government and with the

18    comments by Mr. Schulte before I reach a decision?

19          MR. LAROCHE:  Your Honor, the only note from the

20    government is the Section 5 deadline.  Obviously, the

21    government does not have access to the Section 5 notice which

22    is an issue with respect to our Section 6 deadline, which is

23    coming up on October 4.

24          I think to the extent government is going to get that,

25    that is the prosecution team is going to get the Section 5

1    notice today or tomorrow, we would be able to report back to

2    the Court and tell the Court whether we can still maintain the

3    Section 6 deadline.  Without having the Section 5 notice from

4    the defense, I am simply can't say whether or not we can meet

5    that deadline today.

6              THE COURT:  Mr. Zas?

7              MS. SHROFF:  Your Honor.

8              THE COURT:  Ms. Shroff.

9              MS. SHROFF:  Good morning, your Honor.  Your Honor,

10   our Section 5 notice is ready.  We had asked the Court to the

11   consider allowing us to serve the Section 5 notice on the wall

12   team as opposed to the trial team.

13             THE COURT:  Yes.

14             MS. SHROFF:  I did bring a copy of the Section 5

15   notice for the Court to see, if the Court would like, just so

16   the Court has an idea of the detail and the information we

17   would be providing in it.

18             THE COURT:  If there is a problem, it's with producing

19   it to the wall team rather than producing it to the trial team.

20             MS. SHROFF:  I understand.  I wanted to make sure if

21   your Honor wanted to check that we had stayed on schedule and

22   were not trying to delay it by asking for it to be produced to

23   the wall team.

24             We've argued why we wanted to produce it to the wall

25   team, and I understand the government's arguments, but the

1    statute simply says "to government counsel."  So I don't think

2    the CIPA statute requires me to produce it to the trial team.

3              In this particular case, and I note that this is a

4    case -- and I think I've tried to ask the CISO this and

5    everybody else I could possibly ask about, I have never quite

6    seen a case much like this one, where giving the CIPA notice to

7    the trial team would essentially not just set out what and how

8    the defense plans to respond to the government's case in chief,

9    but it literally, any defense that we have thought of, any

10   defense that -- especially a forensic defense -- we would

11   literally be handing it to the government now.  They would be

12   able --

13             THE COURT:  You have to hand it to them eventually

14   anyway, don't you?

15             MS. SHROFF:  Well, yes.  Or maybe not.  I don't see

16   why I would even.  I could hand it in to them on my case in

17   chief through my expert.  I mean, the forensic response, right,

18   it is -- it is two fold.  It is a forensic and a factual

19   response.

20             This is literally telling the government not just what

21   my defenses are now, it also means that as I, as I adjust my

22   defense, which every defense lawyer would do as a trial

23   proceeds, I am in the position of having to tell opposing

24   counsel this is how I have changed my theory or my thought

25   process, and you feel free to take a look at everything I'm

1    planning to put into evidence when trial opens.

2              THE COURT:  I think --

3              MS. SHROFF:  Look, I'm going to abide by the Court's

4    ruling, obviously.

5              THE COURT:  I'm sure you will.

6              MS. SHROFF:  I'm trying to explain to the Court why

7    this is not the same case as any of the other cases they've

8    cited, including Lee or Hashmi or any terrorism case.  They've

9    all made the similar argument, and courts have ruled against

10   them, that is true, but the reasoning behind that is very

11   different than the reasons here.  In those cases, those

12   documents were maybe a quarter of the case.

13             THE COURT:  Okay.  So I'll resolve the CIPA Section 5

14   notice and work that into the schedule.

15             MS. SHROFF:  That's fine, your Honor.  Would the Court

16   like a copy?

17             THE COURT:  A copy of?

18             MS. SHROFF:  Our CIPA 5 notice.

19             THE COURT:  Do I have a copy?

20             MS. SHROFF:  No, would you like it?  I have it here.

21   I could hand it up to you.

22             THE COURT:  Sure.

23             MR. LAROCHE:  Your Honor, may I just briefly respond

24   to some of those points.

25             The position of providing the Section 5 notice to the

J9I3SCHC

1    wall team is without any basis in the statute.

2              THE COURT:  It won't do any good.

3              MR. LAROCHE:  That's right, your Honor.

4              THE COURT:  I understand that.  I think I have the

5    argument.

6              MR. LAROCHE:  Understood, your Honor.

7              THE COURT:  Thank you, Ms. Shroff.

8         The next matter I'm going to take up deals with

9    Ms. Shroff's letter of August 29 and the government's response

10   of September 13.  This deals with the consensual audio

11   recordings which are 74 in number.

12        Anything you want to add to that?  This is the one

13   where in between August 29 and September 13, the government

14   made clear or the government clarified that a lot of these

15   materials, these recording materials had in fact been

16   declassified.  Anything you want to add?

17             MS. SHROFF:  Well, your Honor, just so the record is

18   complete, I did put in a reply to their --

19             THE COURT:  Yes.

20             MS. SHROFF:  I'm sure you have it.

21             THE COURT:  Your reply of September 17.

22             MS. SHROFF:  Right, your Honor.  I don't need to add

23   to that.

24             THE COURT:  All right.

25             MS. SHROFF:  Unless the Court has questions for me.

J9I3SCHC

1          THE COURT:  I don't have any questions.

2          MS. SHROFF:  Okay.

3          THE COURT:  I just want to make sure the record is

4  complete before I rule.

5          Work stations.  Again, this is Mr. Schulte's letter of

6  August 26, the government's response of September 9.  And after

7  the August 26 letter, the government made a certain amount of

8  production.

9          Anything you want to add to that, Mr. Laroche or

10 Ms. Shroff?

11         MR. LAROCHE:  No, your Honor.

12         MS. SHROFF:  Your Honor, could I just have a second to

13 confer with Mr. Zas just one minute?

14         THE COURT:  Sure.

15         (Counsel conferring)

16         MS. SHROFF:  Your Honor, I'm happy to explain to the

17 Court why we need a visit to Mr. Schulte's work station if the

18 Court wants.  If you don't --

19         THE COURT:  I'd like that, yes.  Why do you need a

20 visit to the work station?

21         MS. SHROFF:  Well, I don't think I've ever tried a

22 case without visiting what is, quote unquote, the scene of the

23 crime.

24         THE COURT:  Right.

25         MS. SHROFF:  So right there, I would never do that.

J9I3SCHC

1    And I would be quite upset if a defense lawyer actually tried a

2    case without going to the scene of the crime, and I think this

3    Court would be too.  That's the number one objection.

4              THE COURT:  Right.

5              MS. SHROFF:  The second objection, and look, I don't

6    think this is any secret that I'm telling the government,

7    they've been to the work station.  They've actually visited the

8    place.  They've looked at the physical layout.  Why?  Because

9    it's relevant.  If it's relevant for them, it's relevant for

10   the defendant.  If they visited it, the relevance is obvious

11   why they went.  They know.

12             And frankly, I do not see the difference between

13   Mr. Denton and Mr. Laroche and Mr. Zas and myself.  We're all

14   four lawyers, I'm assuming relatively we all went to the same

15   kind of law school, graduated, have clearance, and abide by the

16   rules.  So if they can get in, I don't see why we can't cannot

17   get in, if they want to push the case that involves the CIA.

18             THE COURT:  Let me ask them.  Mr. Laroche or

19   Mr. Denton, why can't Ms. Shroff and Mr. Zas visit the scene of

20   the crime?

21             MR. LAROCHE:  Your Honor, the scene of the crime was

22   three years ago in 2016.  That scene is not there anymore.

23   We've provided them pictures as close in time as we can to the

24   actual events, which were pictures taken in March of 2017.  The

25   scene of the crime --

J9I3SCHC

```
1            THE COURT:  Have you been there?

2            MR. LAROCHE:  I've been there, your Honor.  Yes,

3    that's correct.

4            THE COURT:  Why did you go?

5            MR. LAROCHE:  Your Honor, I mean that is the location

6    where these events occurred.  But there's --

7            THE COURT:  If they --

8            MR. LAROCHE:  There is no relevance to going to a

9    place where his work station is not there anymore.  It hasn't

10   been there since he left in November of 2016.

11           THE COURT:  But you went there, didn't you?

12           MR. LAROCHE:  I did go there.

13           THE COURT:  Why did you go there?  You had a purpose

14   in going there.

15           MR. LAROCHE:  There was forensic material there that

16   we were reviewing there.  There is people we were interviewing

17   there.

18           But the fact of the location of his desk that might

19   have been there several years ago is simply not relevant.

20           THE COURT:  What are the terrible consequences that

21   might occur if Ms. Shroff did get access to the site?

22           MR. LAROCHE:  Your Honor, it's a classified location

23   where individuals are doing classified work.  We have provided

24   pictures of the location.  We think that is sufficient.  That's

25   our position.
```

1          THE COURT:  I understand about the people doing the

2     work and they'd have to stop doing the work.  Why couldn't they

3     visit at night or on the weekend?

4          MR. LAROCHE:  We don't believe it's relevant.  We

5     don't believe they have to go.  That's our position, your

6     Honor.

7          THE COURT:  Okay.  Anything else on this issue?

8          MS. SHROFF:  Your Honor, just two points.  I don't

9     think photographs are enough, and I think I've made that point

10    already.  I don't think the fact that it's no longer the same

11    as 2016 changes anything.

12          And finally, I think that we have gone through so much

13    trouble getting cleared lawyers on this case, that the fact

14    that there is top secret or secret or daily work being done, I

15    hardly think that Mr. Zas and I are going to go peering into

16    people's computers, and I don't think there is any reason why

17    we should not be allowed to visit the site.  Thank you, your

18    Honor.

19          THE COURT:  The next one deals with the 302s.  This is

20    your letter, Ms. Shroff, of August 8.

21          MS. SHROFF:  Your Honor, I don't have much to add.  If

22    the Court has any questions, I'm happy to answer them.

23          THE COURT:  Okay.  I didn't get a response from the

24    government.

25          MR. LAROCHE:  Your Honor, this issue has come up

1    persistently in this case.  The 302s are in classified

2    discovery because they contain classified information.

3            Now, at the outset of the case, we went through a

4    comprehensive review of the 302s, and we produced a substantial

5    number of them in unclassified discovery.  It is not the

6    government's role to produce them in an unclassified format

7    now, if there is still classified information within those

8    302s.  So we don't think there is a basis to seek any relief

9    here.

10           They're appropriately marked as classified, and that's

11   our position.

12           THE COURT:  All right.

13           MS. SHROFF:  Your Honor, I just want the Court to know

14   that in these productions of 302s, and regardless of the ones

15   that are produced to us in an unclassified format, which there

16   are numerous ones.  For almost 80 percent of the documents, the

17   only classified information is the person's name.  There are

18   302s after 302s after 302s with just the person's name as

19   classified.  We have literally pulled out some and shown to the

20   CISO, there are some that we have noted on our CIPA 5 notice

21   section.  And if the Court wanted a sampling in a closed

22   courtroom of how voluminous the 302s are, and how many of them

23   are simply thrown in as classified, we would be happy to do

24   that with the law clerk.

25           THE COURT:  How many of the 302s are you going to use?

1        MS. SHROFF:  I think we've noticed at least 200 for

2  the Court or for the government on our notice.  And there

3  are --

4        THE COURT:  Your CIPA 5 notice?

5        MS. SHROFF:  Yes, your Honor.  They gave us a witness

6  list I think of -- Mr. Laroche can correct me if I'm wrong.

7  Were there about 20 people on the list, sir?

8        MR. LAROCHE:  That's correct.

9        MS. SHROFF:  Right.

10        THE COURT:  20.

11        MS. SHROFF:  Right.  I think it's 24, but I'm not

12  really sure.  I think they gave us notice of 24 possible

13  witnesses.  So right there is a ton of 302s right there.

14        THE COURT:  What are you seeking, declassification?

15        MS. SHROFF:  Yes.  I mean, there are documents that we

16  would use to refresh people's recollection.  Those are the

17  documents we would use to cross, and those are documents that

18  one would use at a trial.

19        They want to have an open trial.  This is an Article

20  III court.  We are going to have an open trial, so we'd like to

21  use those documents.

22        MR. LAROCHE:  Judge, 302s aren't admissible in a

23  trial.  If there is information within the 302s that Ms. Shroff

24  thinks she is going to disclose during the trial, then she

25  notices it in Section 5.  But the 302 itself is not evidence.

1    If she wants to refresh someone's recollection with a 302, she

2    doesn't need it declassified.  She can show it to them.

3             This is a non-issue.  If there is information within

4    the 302s which she thinks she wants to use at trial, which is

5    still classified, there is a remedy for that.  It's the Section

6    5 notice.

7             MS. SHROFF:  So let's play this out.  Every time I

8    have a witness on the stand whose recollection I want to go and

9    refresh with the 302, I show it to him, and then I can't say to

10   him, hey, read this out loud.  Isn't that what one does with a

11   302?

12            MR. LAROCHE:  No.

13            THE COURT:  I don't think that's the way to refresh

14   recollection.

15            MS. SHROFF:  It is once he says that -- your Honor, it

16   is a 302.  I cannot even remember a trial in which I have not

17   used a 302 to refresh a witness's recollection, or used it

18   myself sitting here to guide my cross or to guide my direct.

19            What is the point of a 302, exactly, in a criminal

20   case?  It is information that a witness gave to law enforcement

21   that has been memorialized.  It's memorialized for a purpose.

22   The purpose is so that we know what the witness said to law

23   enforcement.

24            THE COURT:  At a point in time.

25            MS. SHROFF:  At a point in time.  That's right.  And

J9I3SCHC

1   as trial proceeds, we will get only more and more 302s.  The

2   Southern District of New York gives us 302s literally at the

3   table the morning before the cross-examination.  Is the

4   government going to give us their recent 302s in classified

5   format, and then we should sit here and give them a CIPA 5

6   notice?

7           There is nothing classified about these 302s other

8   than the individual's name.  They can give each individual a

9   name.  Employee A, B, C, D, E, F, G.  We've offered that

10  compromise.

11          THE COURT:  What about that?

12          MR. LAROCHE:  This doesn't change the basic facts of

13  what she's asking for.  There is no basis to order the

14  government --

15          THE COURT:  Is it true the only thing that's

16  confidential is the name of the individual?

17          MR. LAROCHE:  No, Judge.  That is not my understanding

18  of why these are in classified discovery.  Ms. Shroff will not

19  know every piece of information that may or may not be

20  classified.  She does not know if just the name itself is

21  classified.

22          I will say in her August letter, she identified 20 of

23  what she said was 1,500 302s which she thinks is improperly

24  classified.  That's less than 1 percent of the 302s in this

25  case.

J9I3SCHC

1            Again, the remedy for Ms. Shroff is if there is

2    classified information within the 302s that she thinks she's

3    going to disclose at trial, like any other attorney that's

4    dealing with classified information, she notices it in Section

5    5.

6            MS. SHROFF:  I gave you a sampling.  If I sat there

7    and gave you every 302, I'm afraid the Court would never leave

8    their chambers, and I certainly would die in the SCIF.  I gave

9    a sampling, which is what I did so the Court had an idea of

10   what it is.

11           One other thing.  Mr. Laroche is completely wrong that

12   I don't know what is classified.  If I don't know what's

13   classified, then somebody somewhere has not done their job.  I

14   point to the CISOs here because I could be walking around

15   leaking all kinds of information.

16           The CISOs gave us a list of exactly what is and is not

17   classified.  They provided a guide to us.  I believe

18   Mr. Laroche is the one who e-mailed the guide to me.  We do

19   know what is classified and not classified.  That's what we

20   checked the documents against.

21           MR. LAROCHE:  Your Honor, there is a broader issue

22   here.  What is the purpose of going through this to declassify

23   all 302s for Ms. Shroff at this point in the litigation.  There

24   does not seem to me to be a legitimate purpose to do this.  She

25   has the Section 5 mechanism to determine whether she wants to

1    introduce specific classified information from those 302s.  She

2    can do that, and she will be prepared for trial.

3            But if the purpose of doing this exercise is to get

4    all of the 302s in an unclassified format so uncleared counsel

5    can review them, that's inappropriate.

6            THE COURT:  Okay.  You've told me that before.

7            MS. SHROFF:  Your Honor, I just want to make sure that

8    it's clear, right.

9            THE COURT:  It is clear.  I understand your dispute.

10   I understand what you've said, I understand what Mr. Laroche is

11   saying.  I understood it before when you said it.

12           MS. SHROFF:  It is not just for convenience.  It is

13   literally, they have an army; we have four.  This has been

14   going on for almost over a year.  The CIA could have just done

15   this correctly in the first place.

16           THE COURT:  All right.

17           The motion for severance.  This is the letters of

18   August 26, the government's letter of August 30, and the

19   Federal Defenders' letter of September 12.  Anything you want

20   to add to that?

21           MR. LAROCHE:  There is still a threshold problem here.

22   The government does not agree there is a conflict because

23   defense refuses to provide the information necessary.  So

24   severance or determining whether evidence should be excluded at

25   certain trials is completely premature until Mr. Schulte waives

J9I3SCHC

1    the privilege concerning this specific information, and

2    discloses it to the government.  The fact that Mr. Schulte

3    still refuses to do so suggests that he's not sure yet whether

4    he wants to introduce this information at a trial.

5            And if those are the circumstances, then ordering

6    severance -- and it's two things, your Honor.  They are asking

7    for severance, and they are asking for a major evidentiary

8    ruling, which is to essentially preclude us from introducing

9    any evidence related to the prison conduct at a trial related

10   to the WikiLeaks counts.

11           If he wants those two things to be considered -- and

12   we'd argue the severance has been long waived -- then he should

13   waive the privilege, we should understand what the conflict is,

14   and the parties should propose a method to deal with it.  But

15   until that happens, all the discussion of severance is

16   premature.

17           THE COURT:  Mr. Zas.

18           MR. ZAS:  Your Honor, I find it striking that the

19   government now says severance is premature when their whole

20   letter is about how late it is.

21           In any event, we've disclosed to the Court that two of

22   our lawyers, Ms. Shroff and Mr. Larson, have important,

23   favorable, and admissible testimony to give with respect to

24   Count Four, one of the MCC counts regarding the notebooks.  The

25   government doesn't need to know the precise details of that

J9I3SCHC

1    testimony at this point, and we can't divulge it to the

2    government unless Mr. Schulte himself decides to waive the

3    privilege.  He hasn't decided that.  We've just told you and

4    the government that we are in a conflicted position, because we

5    can't have our lawyers be both advocates and the witnesses.

6            We've proposed a solution that we think is the fairest

7    and most appropriate solution, which is just to bifurcate --

8            THE COURT:  Have three trials.

9            MR. ZAS:  It would be three, yes.  I know it is

10   unusual.

11           THE COURT:  Oh, it is.  That's putting it mildly.

12           MR. ZAS:  Well, three is unusual, your Honor.  But

13   we've gone back and forth to try to figure out what the best

14   solution is.  We think the MCC trial, as we propose it, would

15   be two counts.  It is not enormously complicated.  It is

16   probably a day of evidence.  It's discreet on what happened at

17   MCC.  And we think in order for him to present his best

18   defense, he needs to have new counsel on those counts.

19           THE COURT:  All right.  Do you want to supplement your

20   letters in any way, Mr. Zas?  That's really what I'm asking.  I

21   think I understand the issue.  You raised it on August 26.

22           MR. ZAS:  I wanted to underscore a point I do think

23   Mr. Laroche got correct, which is in many ways, all of this

24   hinges on a very big and kind of complicated evidentiary

25   question, which is does the MCC evidence come in on the NDI or

J9I3SCHC

1    the CIA trial.  Government says it does, and therefore

2    severance would not solve the conflict we have.  But we

3    disagree with that.  Because the MCC evidence, if we put

4    ourselves in the shoes of the jury, once the jury hears

5    evidence about alleged cell phones that were improperly

6    smuggled in and used, the government has produced photographs

7    of Mr. Schulte in prison with a cell phone.  No matter what

8    instruction they get, they are going to say this guy can't

9    follow rules, he has a bad character, and they are going to

10   work backwards and probably convict him of the big count, the

11   WikiLeaks count.  That is a fundamentally unfair burden to

12   impose on Mr. Schulte.

13           If the government can prove that he leaked this

14   information to WikiLeaks and they convince a jury beyond a

15   reasonable doubt that he did it, it should be because they have

16   evidence that he did it.  Not because later in time, almost two

17   years later, he allegedly didn't follow the rules at MCC.

18   That's a huge danger, which is why we don't think that the MCC

19   evidence is admissible at the NDI trial.

20           So we think our solution of severance on two counts,

21   appointment of new counsel, would best solve the problem, and

22   also would not cause a tremendous new delay, because on our

23   view, we can stay on as counsel on the bulk of the counts, we

24   can proceed with a January date that you proposed, and that

25   would solve it.

J9I3SCHC

1          I understand, most defendants get one trial.  We are

2     asking for three.  But, the circumstances are very unusual.

3     We're not usually in a position where we are key witnesses or

4     some of our lawyers are key witnesses on a major issue on a

5     count.

6          So, unless the Court has any further questions, that's

7     our position and our recommendation.

8          THE COURT:  Mr. Laroche, why is the evidence of the

9     MCC admissible in the document trial?

10         MR. LAROCHE:  I don't think it is a close call, your

11    Honor.  There is direct evidence from the MCC that he committed

12    the WikiLeaks counts, including things he wrote down which show

13    that he knows exactly what WikiLeaks got from the person who

14    leaked the information -- him -- but was not disclosed

15    publicly.  The only person who would know that would be someone

16    who actually did it, and that is him.  That is very powerful

17    evidence that he committed the crime.

18         And then there is a whole bunch of consciousness of

19    guilt which is admissible in the WikiLeaks trial, including

20    things like Mr. Schulte preparing to disclose an article he

21    wrote, which was purportedly authored by an FBI agent who is

22    admitting he planted evidence on Mr. Schulte to frame him for

23    the WikiLeaks count.  There is preparations to disclose

24    information to reporters to try to defend himself on the

25    WikiLeaks count.

J9I3SCHC

1        These counts are entirely interconnected, and the

2   evidence from the prison is clearly admissible for a variety of

3   bases, both as direct evidence and consciousness of guilt.

4        So to suggest that these things are just two events

5   that happened somewhere in time that have nothing to do with

6   each other, they plainly do.

7        Appointing new counsel is not going to prevent a delay

8   of the trial.  New counsel is going to have to be cleared, they

9   are going to have to get up to speed on both the evidence of

10   the MCC counts and the WikiLeaks counts, because they are so

11   interconnected.  So even the solution they're proposing isn't

12   going to prevent trial delay.

13        The only reason there would be trial delay is because

14   the defense sat on this for a year.  They didn't do anything

15   with it.  They knew about this since the initial superseding

16   indictment, and they did nothing.  And now they are asking the

17   Court to make two huge decisions without full briefing, after

18   they've already waived it, because they brought the first

19   severance motion or they proposed that they be tried together.

20   And now they are saying to you, well, there's prejudice here.

21        I'd submit to the Court that this should not be

22   considered at all until, at a minimum, they disclose what this

23   actual purportedly favorable information is.

24        THE COURT:  All right.

25        MR. ZAS:  Your Honor, may I just respond briefly.

J9I3SCHC

1    Government has now said that there is direct evidence in these

2    notebooks of Mr. Schulte's guilt with respect to the WikiLeaks

3    count.  We've asked them in writing to identify what evidence,

4    what specific evidence in the notebooks they are talking about,

5    they haven't responded.

6            Could Mr. Laroche please give us a Bates cite or a

7    quotation so we can address that?  We have no idea what they

8    are talking about.

9            MR. LAROCHE:  We have, I mean, your Honor, I'm sorry.

10   We have at every step of this case told them what our case is.

11   We've met with them for an attorney proffer, we've given them a

12   bill of particulars, we gave them a month before their Section

13   5 notice all of the classified information that we are

14   intending to present as exhibits.  We didn't have to do any of

15   that.

16           We are happy to do this as well.  But I will say that

17   this is -- the information that I just referred to is not the

18   only direct information from the MCC counts that relates to the

19   WikiLeaks counts.  So, that's not going to solve the issue.

20           THE COURT:  Right.

21           MR. ZAS:  Your Honor, may I, not to respond.  There is

22   one point I left out which is if the Court does decline to

23   sever, and is contemplating one of the alternative solutions to

24   this serious problem, such as either a stipulation or some

25   other mechanism to work it out, that I think would require -- I

1    don't think the government disputes this -- Mr. Schulte has to

2    make some of those decisions himself, and we can't really

3    advise him because we're conflicted.  We are the fact

4    witnesses.

5         So, if the Court is not going to sever, we'd ask that

6    the Court appoint Mr. Schulte Curcio counsel so counsel can

7    advise him on whether, for example, he should insist on calling

8    both Ms. Shroff and Mr. Larson or whether there is something

9    else he should do.  We don't feel like we are in a position

10   where we can advise him on that.

11        THE COURT:  Thank you.  That takes care of the motion

12   for severance.  And the schedule CIPA Section 5 matter.  I

13   think that is everything I wanted to hear from the parties on.

14        Mr. Laroche, is there anything you want to bring up?

15        MR. LAROCHE:  No, thank you, your Honor.

16        THE COURT:  Mr. Zas or Ms. Shroff?

17        MS. SHROFF:  No, your Honor.  Thank you.

18        THE COURT:  All right.  I think I am going to try to

19   get the scheduling order out with the CIPA Section 5, get that

20   out today or tomorrow, and then we'll proceed from there.

21   We'll proceed then in accordance with the terms of the

22   scheduling order which I'm going to adopt.

23        I'm going to adjourn the trial to -- is it January 13?

24        MR. LAROCHE:  Yes, your Honor.

25        THE COURT:  Do you want me to exclude time through

J9I3SCHC

1    January 13?

2               MR. LAROCHE:  Yes, your Honor.

3               THE COURT:  Any objection?

4               MS. SHROFF:  No, your Honor.

5               THE COURT:  The time to January 13, the trial, will be

6    excluded.

7               Anything else to do today?

8               MR. LAROCHE:  No, your Honor.

9               MS. SHROFF:  Nothing from us.  Thank you.

10              THE COURT:  Thank you very much.

11              (Adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25