*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 15, 2019

<u>Via ECF</u>
The Honorable Paul A. Crotty
United States District Judge
Southern District of New York
United State Courthouse
500 Pearl Street, Courtroom 14C
New York, New York 10007

      Re:    *United States* v. *Joshua Adam Schulte*, S2 17 Cr. 548 (PAC)

Dear Judge Crotty:

      The Government writes in response to the letter submitted by the defense on October 11, 2019 (the "October 11 Letter"), in which the Federal Defenders of New York (the "Federal Defenders") seek to be relieved as counsel for the defendant, or, in the alternative, ask the Court to conduct a *Curcio* hearing. For the reasons set forth below, the Government respectfully submits that the Court should deny the Federal Defenders' request to be relieved as counsel and, if the Court deems it necessary, appoint conflict-free counsel to advise the defendant about the specific evidence at issue.

      As the Court is aware, on August 26, 2019, the Federal Defenders submitted a letter (the "August 26 Letter") in which they argued that the counts in the superseding indictment (the "MCC Counts") pertaining to the defendant's transmission and attempted transmission of classified information and material protected by the Court's Protective Order from the Metropolitan Correctional Center (the "MCC") should be severed. The basis for the severance request was that two of Schulte's attorneys, Matthew Larsen, Esq., and Sabrina Shroff, Esq., purportedly had testimony that was relevant and favorable to the defendant concerning the MCC Counts. The Federal Defenders did not disclose that proposed testimony to the Government, but included some description of it for the Court in the August 26 Letter. After the Government objected to severance, on September 26, 2019, the Court denied the severance motion in a written order (the "September 26 Order"), finding that: (1) there was no conflict issue because Mr. Larsen was the attorney who gave the purported advice and, because he was not a member of the trial team, he was available to testify, *see* Sept. 26 Order at pp. 4-5; (2) traditional principles governing severance did not support the defense request, *see id*. p. 6; and (3) a *Curcio* hearing was not necessary at that point because such a hearing was only required if Schulte was forgoing testimony and, here, "it is not clear what the precise testimony will be so it cannot be established—at least in the record as it exists now—what Schulte is giving up," *see id*. p. 7.

The Honorable Paul A. Crotty, U.S.D.J.
October 15, 2019
Page 2

Although the Federal Defenders appear to have offered more detail about the proffered testimony (which has been redacted so that the Government cannot see it) in the October 11 Letter, the situation appears not to have fundamentally changed—it is still entirely unclear why new counsel is an appropriate solution. Motions to disqualify counsel under the witness-advocate rule are "disfavored because of their interference with a defendant's right to choose his own counsel and their 'strong potential for abuse.'" *United States v. Locascio*, 357 F. Supp. 2d 536, 553 (E.D.N.Y. 2004) (quoting *Paramount Comm. Inc. v. Donaghy*, 858 F. Supp. 391, 394 (S.D.N.Y. 1994); *see also Murray v. Metropolitan Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009) (noting that the witness-advocate rule "lends itself to opportunistic abuse" and, thus, motions to disqualify based on that rule "are subject to strict scrutiny").

In order to succeed on such a motion, the movant must show both "the necessity of the testimony as well as a substantial likelihood of prejudice to the defendant." *Locascio*, 357 F. Supp. 2d at 554; *see also Parkins v. St. John*, No. 01 Civ. 11660 (RCC), 2004 WL 1620897, at *6 (S.D.N.Y. July 19, 2004). Necessity is determined by consideration of factors such as "the significance of the matters, the weight of the testimony, and the availability of other evidence." *Locascio*, 357 F. Supp. 2d at 254 (citing *Paramount*, 858 F. Supp. at 394; *Sec. Ins. Co. of Hartford v. Mendon Leasing Corp.*, 2002 WL 31387484 at *2 (S.D.N.Y. Oct. 22, 2002)). Prejudice, on the other hand, means testimony that is "sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989); *see also Murray*, 583 F.3d at 178. Moreover, the movant "bears the burden of demonstrating specifically how and as to what issues in the case prejudice may occur and that the likelihood of prejudice occurring is substantial." *Murray*, 583 F.3d at 178.

The Federal Defenders motion to disqualify themselves fails at both the necessity and prejudice prongs. As an initial matter, to the extent defense counsel suggests there is any ambiguity in the Government's intention at trial concerning evidence from the MCC, the Government intends to introduce portions of the defendant's prison notebooks, which contain, among other things, (i) admissions by the defendant relating to his disclosure of classified information to WikiLeaks (such as the identification of information provided to WikiLeaks that has not yet been disclosed by WikiLeaks); (ii) admissions by Schulte with respect to his plan to disseminate additional classified information illegally from the MCC (such as his declaration of a so-called "information war" and notations of plans to, for example, schedule postings on various social media accounts he created from jail); (iii) false exculpatory statements; (iv) evidence connecting Schulte to contraband cellphones and electronic communications accounts (such as notations to install encrypted messaging applications on contraband cellphones or to delete "suspicious emails" from covert accounts used by Schulte while at the MCC); and (v) writings prepared for public dissemination that include classified information (such as draft tweets written by the defendant as one of his alleged former CIA colleagues who claimed to be able to exonerate the defendant and who recounted information about CIA activities to "authenticate" the author).

If the defendant's attorneys have testimony that supposedly mitigates the impact of this evidence, this testimony would not be prejudicial to the defendant and could be introduced through Mr. Larsen. As the Court noted in the September 26 Order, "Mr. Larsen is the attorney who

provided the advice, and he is not trial counsel; thus, his testimony would not implicate the advocate-witness rule." *See id.* p. 5; *see also Murray*, 583 F.3d at 178 (stating that none of the attorney witnesses were properly considered trial counsel for purposes of Rule 3.7(a) where three of the lawyers called to testify at trial were "transactional lawyers who are not and will not be trial advocates; the fourth, a litigator, is a member of the trial team, but will not act as an advocate before the jury"); *United States v. Regan*, 897 F. Supp. 748, 757 (S.D.N.Y. 1995) ("Third, Assistant United States Attorney Gardephe is not participating in the trial of this case and he is available to testify even if his testimony were to be relevant."). Indeed, the "availability of other witnesses is essentially fatal to the 'necessity' prong of the disqualification inquiry." *John Wiley & Sons, Inc. v. Book Dog Books*, LLC, 126 F. Supp. 3d 413, 423 (S.D.N.Y. 2015); *Finkel v. Frattarelli Bros., Inc.*, 740 F. Supp. 2d 368, 373 (E.D.N.Y. 2010) ("Where counsel's testimony would be merely cumulative of testimony provided by others, disqualification is not appropriate."); *Solow v. Conseco, Inc.*, No. 06 Civ. 5988 (THK), 2007 WL 1599151, at *4 (S.D.N.Y. June 4, 2007) ("The rule requires that a lawyer's testimony be necessary, not simply that it be the best evidence, and to that end, courts deem a lawyer's testimony necessary only if there [are] no other witnesses to the circumstances at issue.") (internal quotation marks omitted); *Shabbir v. Pak. Int'l Airlines*, 443 F. Supp. 2d 299, 308 (E.D.N.Y. 2005) ("[A] lawyer who could provide only cumulative testimony may act as trial counsel."); *Kubin v. Miller*, 801 F. Supp. 1101, 1113 (S.D.N.Y. 1992) ("[A]n attorney whose testimony would merely corroborate the testimony of others may not be subject to disqualification.").

In the October 11 Letter, the Federal Defenders argue that this avenue is insufficient to protect the defendant's rights because (1) Ms. Shroff may have testimony that does not overlap with Mr. Larsen's testimony and (2) even if Ms. Shroff's testimony was cumulative of Mr. Larsen's testimony and thus subject to exclusion by the Court, Schulte's defense team has the exclusive right to choose between Mr. Larsen and Ms. Shroff. *See* Oct. 11 Ltr. pp. 4-5. First, the Government cannot address whether Ms. Shroff's testimony is cumulative because it has not been disclosed to the Government. The defendant's failure to waive the attorney-client privilege and disclose this information strongly suggests that he is not yet sure whether he will introduce this purportedly favorable evidence at trial. Because the "witness-advocate rule is concerned with preventing potential taint *at trial*," *Ross v. Blister*, No. 09 Civ. 8666 (HB), 2009 WL 4907062, at *3 (S.D.N.Y. Dec. 21, 2009), the defendant's refusal to waive the privilege is another basis to deny the Federal Defenders disqualification motion, *see, e.g.*, *Prout v. Vladeck*, 316 F. Supp. 3d 784 (S.D.N.Y. 2018) (stating that "numerous courts have found that motions to disqualify counsel are premature" where "it is not yet clear the extent to which an attorney's testimony might be necessary or prejudicial"); *Ross*, 2009 WL 4907062, at *3 (same); *Gormin v. Hubregsen*, No. 08 Civ. 7674 (PGG), 2009 WL 508269, at *3 (S.D.N.Y. Feb. 27, 2009) ("The reality is that at this stage of the litigation, it is impossible to determine how significant [defendant's counsel] might be as a witness or whether he is likely even to be called as a witness; whether his testimony would likely hurt or help his client; or whether his testimony would or would not be cumulative of other witnesses. Based on such a record, courts in this District commonly deny disqualification motions."); *Rosefield v. Orentreich*, No. 98 Civ. 2721 (TPG), 1998 WL 567750, at *5-6 (S.D.N.Y. Sept. 4, 1998) (denying motion to disqualify where it was not clear that counsel would be called to testify; "too much remains unknown").

The Honorable Paul A. Crotty, U.S.D.J.
October 15, 2019
Page 4

But even taking at face value the Federal Defenders' contention that Ms. Shroff's testimony would "reinforce, corroborate, and augment Mr. Larsen's," *see id*. p. 5, the defendant could still get the benefit of that testimony without putting Ms. Shroff on the witness stand. For example, as the Government noted before, the Government is willing to discuss entering into a testimonial stipulation to alleviate any conflict issue—such a stipulation would similarly serve to corroborate Mr. Larsen's testimony (and indeed may do so more strongly than Ms. Shroff's in-person testimony because the Government would thus not have an opportunity to cross examine Ms. Shroff). *See*, *e.g.*, *United States v. Cook*, 373 F. App'x 91, 92 (2d Cir. 2010) ("As to whether withdrawal was warranted by a risk that counsel would be required to testify, there was no such risk: The statement at issue was inadmissible hearsay, the government's offered stipulation would have mooted any need for the testimony, and the victim (whose statement ambiguously presented the issue) intended to testify in a way that would have fully negated any need for the lawyer's testimony."). Moreover, the defendant, of course, is free to testify about the advice he received from both Mr. Larsen and Ms. Shroff. *See United States v. Scully*, 877 F.3d 464, 474-75 (2d Cir. 2017) (vacating conviction when district court precluded defendant from testifying as to advice provided by second attorney).[1] Thus, even accepting the Federal Defenders' position that Ms. Shroff has testimony that is not cumulative of Mr. Larsen's testimony, there is still no reason why Schulte cannot present that testimony in another form.

As a result, when scrutinized, the defense's claim collapses to the dubious assertion that Schulte's constitutional rights would be impaired unless he has the unencumbered ability to call Ms. Shroff as an in-person witness, rather than presenting that evidence through Mr. Larsen alone or through Mr. Larsen and some combination of a testimonial stipulation and the defendant's testimony. Even accepting that view of Ms. Shroff's proposed testimony, relieving the Federal Defenders and delaying an important national security trial that has already been pending for more than a year is not the appropriate course—rather, put bluntly, the appropriate course is to relieve Ms. Shroff so that she can be a witness and let the remaining attorneys from the Federal Defenders conduct the trial as scheduled, bolstered by whatever additional resources the Federal Defenders and the Court believe are necessary. The Federal Defenders claim that Ms. Shroff may have a perceived conflict in that regard because if she ultimately does not take the stand, it may appear as if she sacrificed Schulte's trial rights so that she could remain as trial counsel. *See* Oct. 11 Ltr. p. 6 ("For example, if Ms. Shroff decided to call Mr. Larsen as a trial witness, instead of testifying herself, it could create the appearance that she was more interested in remaining as counsel than in serving Mr. Schulte's best interests by testifying."). The defense does not explain, however, why Ms. Shroff has to be the one making that decision at all—the Federal Defenders have two other attorneys assigned to the matter, who presumably could also assess the advisability of Ms. Shroff's testimony. Whether Ms. Shroff is "lead trial counsel" or not, that does not mean that another attorney cannot make decisions with respect to aspects of the trial. *See United States v.*

---

[1] The defense cites *Scully* for the proposition that the Second Circuit determined it to be error for the district court to have excluded testimony from the second attorney. *See* Oct. 11 Ltr. p. 5. In *Scully*, however, the issue on appeal was whether the defendant could testify to the advice given by the second attorney rather than call the second attorney to testify. *See* 877 F.3d at 474 ("Nor was it appropriate to require that Scully call [the second attorney] as a witness in order to ensure the reliability of Scully's testimony.").

The Honorable Paul A. Crotty, U.S.D.J.
October 15, 2019
Page 5

*Zarrab*, 15 Cr. 867 (RMB), Dkt. #197 p. 5 n.4 (S.D.N.Y.) (noting that the defendant was not deprived of any constitutional right when the defendant had additional conflict-free attorneys to counsel him).[2]

      Finally, the Federal Defenders argue that they cannot make the decision with respect to whether Ms. Shroff's testimony could be presented in an alternative form because of the alleged conflict. *See* Oct. 11 Ltr. p. 8. The defense does not address why this is the case, nor the Court's (correct) conclusion that Rule 3.7 does not apply where the proffered testimony is for the benefit of the client. Sept. 26 Order p. 5 (citing and quoting *Murray*, 583 F.3d at 178); *see also Lamborn*, 873 F.2d at 531 (to satisfy the prejudice prong the testimony must be "sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony."). But to avoid even the suggestion of a potential issue, the Government does not object to the Court appointing conflict-free, cleared counsel to advise Schulte about this issue. That attorney would be able to advise Schulte as to the wisdom of pursuing this line of testimony at all, including the fact that by calling his attorneys as witnesses, Schulte would waive attorney-client privilege, and may open the door to the Government being able to offer additional evidence of his conduct at the MCC. *See In re Cnty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) ("Courts have found waiver [of the attorney-client privilege] by implication when a client testifies concerning portions of the attorney-client communication, when a client places the attorney-client relationship directly at issue, and when a client asserts reliance on an attorney's advice as an element of a claim or defense."). Given that it is extremely unlikely that anything Mr. Larsen or Ms. Shroff said to Schulte could justify his declaration of and prosecution for an "information war" against the United States, his creation of false evidence, or his use of contraband cellphones and electronic communications accounts, it may well be that these consequences outweigh the value of this testimony. On the other hand, if conflict-free counsel determines that this testimony is that valuable and that only Ms. Shroff's in-person testimony will do, then the Court can relieve Ms. Shroff, and the Federal Defenders, perhaps with the aid of the appointed conflict-free counsel, can conduct the trial on the current schedule.

---

[2] The Federal Defenders also claim that because there will be references to Ms. Shroff in Mr. Larsen's testimony, that would inappropriately make Ms. Shroff an unsworn witness. As an initial matter, there is no need for Mr. Larsen to refer to Ms. Shroff by name. But even if the Federal Defenders believe that Mr. Larsen must do so, the issue would be alleviated if Ms. Shroff's testimony was entered through a stipulation or if she was disqualified and simply testified. Either way, the potential that Ms. Shroff may become an unsworn witness is not a basis to relieve the Federal Defenders entirely.

The Honorable Paul A. Crotty, U.S.D.J.
October 15, 2019
Page 6

      For these reasons, the Government respectfully requests that the Court deny the Federal Defenders' motion to be relieved as counsel and, if the Court deems it necessary, appoint conflict-free counsel to advise Schulte about Mr. Larsen's and Ms. Shroff's proffered testimony.

                                      Respectfully submitted,
                                      GEOFFREY S. BERMAN
                                      United States Attorney

By:           /s/                
     David W. Denton, Jr. / Sidhardha Kamaraju / Matthew Laroche
     Assistant United States Attorneys
     Tel.: 212-637-2744 / 6523 / 2420

Cc: Defense Counsel (via ECF)
     Daniel Hartenstine, Court Information Security Officer (via Email)