USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/18/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

UNITED STATES OF AMERICA             :

          -v-                                    :

JOSHUA ADAM SCHULTE,                 :

          Defendant.                   :

------------------------------------------------------X

S-2  17 Cr. 548 (PAC)

OPINION & ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

Defendant Joshua Schulte moves to suppress all document evidence seized from his cell at the Metropolitan Correctional Center ("MCC") as well as all evidence recovered from subsequent warrants that relied upon the writings seized. (Dkt. 97.) The Defendant urges that suppression is warranted under the Fourth Amendment, the Sixth Amendment, and the doctrine of attorney-client privilege. (Def. Opening Mot. at 1, Dkt. 98.) Further, the Defendant argues that the initial searches were conducted in bad faith and that the Government's solution of implementing a wall team to conduct a privilege review of Defendant's documents was inadequate. (*Id.* at 14.)

The Government opposes the motion to suppress and to wholesale suppression of the seized documents. (Gov't Opp'n, Dkt. 120.) Even if privileged material was seized, the Government argues, the appropriate remedy is suppression of the privileged material, not blanket suppression. (Gov't Opp'n at 66.) Further, the Government contends that the use of the wall team to review for potential privilege was appropriate, and that it does not intend to introduce any of the purportedly privileged documents identified by the Defendant. (*Id.* at 64-65, 72.)

The Court DENIES the Defendant's motion to suppress the evidence seized from MCC.

## BACKGROUND

Defendant Joshua Schulte has been incarcerated in MCC since December 14, 2017. Between October 2, 2018 and October 26, 2018, the Government obtained multiple warrants to search for evidence related to offenses allegedly committed by Schulte during his detention in MCC. The first warrant ("MCC Search Warrant") authorized law enforcement to search for "[a]ny and all notes, documents, records, correspondence, or materials, in any format and medium . . . pertaining to the unauthorized retention, gathering, and transmission of classified documents or materials, and the unauthorized removal and retention of classified documents or materials" (Def. Ex. A, MCC Search Warrant, Attach. A III. A ¶ 6.) The warrant also authorized the seizure of evidence pertaining to contraband cell phones. (*Id.*)

On October 3, 2018, the FBI searched the MCC premises. During that search, government agents seized two notebooks labeled "ATTORNEY CLIENT PRIVILEGE" on the cover and "ATTORNEY CLIENT CONFIDENTIAL" or "ATTORNEY CLIENT PRIVILEGE" on the inside covers. The notebooks appeared to contain handwritten text possibly written by Schulte. During that review, the agents identified some writings appearing to be potentially classified and others which appeared to pertain to Schulte's defense. (Def. Ex. B, Wall Review Aff. ¶ 3.) The agents stopped the review and consulted with the Government. In 24 hours, the agents obtained a second warrant, which authorized law enforcement agents (i.e., wall team) who were not a part of the prosecution team to review the notebooks, segregate out materials deemed privileged, and provide materials deemed non-privileged to the prosecution team. (Def. Ex. C, Wall Review Warrant, Attach. A, III. B ¶¶ 1-2.) The review of the notebooks was to be expedited and had to be completed within 48 hours. (*Id.* ¶ 3.) The wall team redacted a significant portion of the two notebooks. (*See* Def. Exs. D & E.)

2

The MCC search revealed documents including articles discussing Schulte's case, a document containing an email account for ("John Smith") identified on one of the contraband cellphones and a password for that account, and a draft document purportedly authored by the FBI claiming Schulte was not responsible for the leak. (Def. Ex. B, Wall Review Aff. ¶ 3.) Based in part on these findings, the Government applied for additional search warrants including the Proton Mail Warrant, the Discovery Laptop Warrant, and the Social Media Warrant. (*See* Def. Exs. G, H, J.)

## **DISCUSSION**

### I. **Execution of the Search Warrant & Attorney-Client Privilege**

The Government had probable cause to execute the search warrant and the Defendant does not challenge that. Rather, the Defendant argues that two notebooks seized from Schulte's cell should be suppressed because they exceeded the scope of the search warrant and because the notebooks were labelled "attorney-client privilege."[1]

#### A. **Legal Standard**

As an initial matter, "[a] search must be limited to the terms of the warrant." *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 394 n. 7 (1971). The executing officers have discretion "to determine the details of how best to proceed with the

---

[1] Pretrial detainees, like Schulte, retain Fourth Amendment protections sufficient to challenge searches performed "at the instigation of non-prison officials for non-institutional security-related reasons." *United States v. Cohen*, 796 F.2d 20, 23 (2d Cir. 1986). But just because pretrial detainees "retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). "The fact of confinement as well as the legitimate goals and policies of the penal institution limits these retained constitutional rights." *Id.* at 546. Accordingly, although pretrial detainees may have some residual privacy interests that are protected by the Fourth Amendment courts must weigh those interests against the requirements of preservation of institutional security and order. *United States v. Willoughby*, 860 F.2d 15, 21 (2d Cir. 1988).

3

performance of a search authorized by a warrant." *Dalia v. United States*, 441 U.S. 238, 257 (1979). It is expected that some innocuous documents will be examined during the course of executing a search warrant as law enforcement seeks to determine whether those papers are properly subject to seizure. *Andresen v. Maryland*, 427 U.S. 463, 482 n.11 (1976). Further, "the Fourth Amendment is not violated because the officers executing the warrant must exercise some minimal judgment as to whether a particular document falls within the described category." *United States v. Riley*, 906 F.2d 841, 845 (2d Cir. 1990). "The Government's review need only be reasonable, not perfect, and law enforcement is given significant latitude in determining how to execute a warrant." *United States v. Lumiere*, No. 16 CR. 483, 2016 WL 7188149, at *6 (S.D.N.Y. Nov. 29, 2016).

"To the extent that the files obtained here were privileged, the remedy is suppression and return of the documents in question, not invalidation of the search." *Nat'l City Trading Corp. v. United States*, 635 F.2d 1020, 1026 (2d Cir. 1980). Even if law enforcement seizes privileged material alongside responsive information, the "general remedy for violation of the attorney-client privilege is to suppress introduction of the privileged information at trial,' not to order wholesale suppression." *United States v. Patel*, No. 16-CR-798 (KBF), 2017 WL 3394607, at *6 (S.D.N.Y. Aug. 8, 2017) (quoting *Lumiere*, 2016 WL 7188149, at *6). The party invoking the attorney-client privilege, has the burden of showing each and every element of the privilege. *United States v. Rivera*, 837 F. Supp. 565, 567 (S.D.N.Y. 1993). Because "[o]nly confidential communications are protected by the attorney-client privilege[,] .... any information given to an attorney with the expectation that it would be turned over to a third party would not be protected by the privilege." *Id.* at 569. Additionally, otherwise privileged materials "are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or

4

fraudulent conduct." *Id.* at 568 (quoting *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1038 (2d Cir.1984)).

### B. Analysis

The terms of the warrant here included the following description to be seized: "[a]ny and all notes, documents, records, correspondence, or materials, in any format and medium . . . pertaining to the unauthorized retention, gathering, and transmission of classified documents or materials, and the unauthorized removal and retention of classified documents or materials[.]" (Def. Ex. A, MCC Search Warrant, Attach. A III. A ¶ 6.)  Thus, to the extent the notebooks found in Schulte's cell contained relevant evidence they are undoubtedly in the scope of the warrant. *See Bivens*, 403 U.S. at 394 n.7; *see also United States v. Hunter*, 13 F. Supp. 2d 574, 583 (D. Vt. 1998) (explaining that document searches present the problem of "the intermingling of relevant and irrelevant material").

The Defendant cites no authority for the proposition that notebooks self-labelled as "attorney-client privilege" are categorically immunized from cursory review during a search pursuant to a warrant. *See e.g.*, *United States v. Regan*, 706 F. Supp. 1102, 1117 n. 20 (S.D.N.Y. 1989) (holding agent did not exceed scope of warrant by listening to audio cassettes to determine whether they fell into a category authorized by warrant); *United States v. Triumph Capital Grp., Inc.*, 211 F.R.D. 31, 62–63 (D. Conn. 2002) (agents are "not required to assume that document and file names and suffixes accurately described their contents, and [the agents] acted reasonably in manually reviewing documents and files to ascertain their relevance").  Nor does the Defendant cite any authority for the proposition that materials can become privileged by the simple expedient of labelling them as such. *See Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings, Inc.*, No. 11 CIV. 6189 DLC, 2014 WL 1327952, at *3 (S.D.N.Y. Apr. 3, 2014)

5

("Although the document… bears a footer marking it as privileged, there is an insufficient basis to conclude that it is privileged. It does not identify itself as prepared by counsel or to obtain advice from counsel."). Documents marked privileged can and often do present the challenge of intermingled relevant and irrelevant (or nonprivileged) material—as they do here. The notebooks at issue contained evidence that related to Schulte's illegal transmission of classified information, such as an email account for ("John Smith") identified on one of the contraband cellphones and a password for that account.

The fact that some pages in the notebooks may have contained intermingled irrelevant or privileged information does not invalidate the search, but instead means those portions of the notebook may not be used against the defendant. *See United States v. Giovanelli*, 747 F. Supp. 891, 894 (S.D.N.Y. 1989) (denying blanket suppression where a notebook seized contained relevant evidence even though it purportedly implicated attorney-client privilege). While it may be preferable that the agents had noticed the privilege labels on the notebooks and consulted the prosecution team immediately before conducting any review, it does not follow in these circumstances—where agents conducted a cursory review to determine relevance—that the search is invalid, and all evidence must be suppressed. *See United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988) ("the drastic remedy of the suppression of *all* evidence seized is not justified unless those executing the warrant acted "in flagrant disregard" of the warrant's terms.").

## II.     Good Faith and Wall Team Procedure

Further, contrary to the Defendant's argument, the steps taken the day of the initial search do not show bad faith. The agents conducting the search alerted the prosecution team the day of the search that they identified certain documents that may be privileged, and the prosecution

6

team obtained a second warrant the very same day implementing the wall team procedure to facilitate review of any potentially privileged materials and the return of the materials within 48 hours. *See Patel*, 2017 WL 3394607, at *7 (holding that the Government's use of a wall team to review privileged materials did not evidence bad faith justifying wholesale suppression). The warrant here did not require the Government to segregate privileged documents or to appoint a special master instead of a wall team.[2] Although the use of the wall team may not be the method preferred by the Defendant, it does not evidence the sort of bad faith, or flagrant disregard of the warrant's limits that would justify wholesale suppression. *See Lumiere*, 2016 WL 7188149, at *6 (finding no bad faith and holding "after-the-fact notice of potentially privileged documents did not render the Government's earlier search unreasonable").

### III. Request for Hearing

The Defendant asks in the alternative for a hearing. No hearing is required in these circumstances, nor does the Court find a hearing would be helpful.[3] Defendant has failed to demonstrate that any documents are in fact privileged.[4] In any event, it is not possible at this

---

[2] Given the classified and highly sensitive nature of this case it is unlikely that appointing a special master to review documents would have worked or could have been implemented quickly enough to be a feasible solution here, even if that is the preferable procedure. *See* Def. Mot. at 14 (citing cases where courts disapprove of the Government's use of a wall team to protect attorney-client privilege). The Court also notes that defense counsel in this case has elsewhere sought to use the wall team for a very similar purpose—where it wished to avoid revealing defense strategy to the Government trial team.

[3] Contrary to Defendant's suggestion, there is no need to hold a hearing. *See* Def. Reply at 12 (suggesting the agents can testify to as to the fact that they did not notice notations suggesting the information was privileged). The Court has determined that given the circumstances, including the undisputed fact that the Government sought a second warrant the same day of the search to implement a procedure to "minimize unwarranted intrusion" that the Government has not acted in bad faith or "in flagrant disregard" of the warrant's terms. *See Matias*, 836 F.2d at 747.

[4] The party asserting the attorney-client privilege bears the burden of establishing its essential elements. *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). A party invoking the

7

juncture to determine the applicability of the privilege, as the Court does not know what documents will be introduced, and the parties have not briefed the issue on a document-by-document basis. *See United States v. Feng Ling Liu*, No. 12 CR. 934 RA, 2014 WL 101672, at *11 (S.D.N.Y. Jan. 10, 2014). Significantly, the Government appears to agree in briefing that it will not be seeking to introduce any documents that the Defendant identifies as privileged. (*See* Gov't Opp'n at 72.) Thus, it is not clear that there is any dispute over documents that will be introduced. As the case progresses, if the Government intends to or seeks to introduce privileged documents at trial, then the Defendant can move to suppress any allegedly privileged documents. *See United States v. Schwimmer*, 892 F.2d 237, 244-45 (2d Cir. 1989).

## CONCLUSION

For the foregoing reasons, the Court DENIES the Defendant's motion to suppress the MCC evidence. The Clerk of the Court is directed to terminate Docket 98.

Dated: New York, New York
October 12, 2019

SO ORDERED

PAUL A. CROTTY
United States District Judge

---

attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice. *Id.*

8