*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 6, 2019

Via ECF
The Honorable Paul A. Crotty
United States District Judge
Southern District of New York
United State Courthouse
500 Pearl Street, Courtroom 14C
New York, New York 10007

Re:   *United States* v. *Joshua Adam Schulte*, S2 17 Cr. 548 (PAC)

Dear Judge Crotty:

We respectfully submit this response to the defendant's letter, dated November 4, 2019 (the "November 4 Defense Letter"), concerning the defendant's attempted service of 50 trial subpoenas on the Central Intelligence Agency (the "CIA")'s wall attorney. As an initial matter, the defendant had no basis to serve the trial subpoenas through the wall attorney in the first place and, in doing so, has once again attempted to twist the wall process to gain an advantage to which he is not entitled under the law—the right to construct a defense in secret, without any notice to the Government. Moreover, it is axiomatic that a recipient of a trial subpoena—whether an individual or, as in this case, an organization—is not prohibited from disclosing that subpoena to anyone he pleases, including the Government. The defendant, nevertheless, attempts to frame this issue as a breach of the wall in this case. He bases this contorted argument on a misleading recounting of the record and plainly false allegations, including baseless claims that attorneys have violated their ethical obligations. The defendant's requested relief should be denied. In addition, Schulte should be admonished to refrain from interacting with or serving documents on walled-off personnel from the CIA and the Government except for the purpose of seeking to interview current CIA employees.

I.   **Background**

On August 16, 2018, the Court entered a protective order to govern the use of classified information in this case (the "CIPA Protective Order") pursuant to Section 3 of the Classified Information Procedures Act ("CIPA"). The CIPA Protective Order sets forth various provisions for how classified information will be maintained and used by the parties. One of those provisions (the "Wall Provision") creates a limited wall procedure that applies only to defense requests to interview current CIA employees. Specifically, Paragraph 25 of the CIPA Protective Order states that "[t]he employment and/or affiliation of certain individuals with a U.S. Intelligence Agency

The Honorable Paul A. Crotty, U.S.D.J.
November 6, 2019
Page 2

and/or their responsibilities at the U.S. Intelligence Agency may constitute classified or highly sensitive facts" and thus creates procedures for the defense to follow when seeking to arrange interviews of current CIA employees. Those procedures require (1) the defense to submit the name of the employee to the Classified Information Security Officer (the "CISO"); (2) the CISO to relay that name to a CIA employee who is walled off from the prosecution team (the "CIA Wall Attorney"); (3) the CIA Wall Attorney to communicate with the CIA employee whom the defense wishes to interview; and (4) in the event that employee chooses to speak with the defense, the CISO and the CIA Wall Attorney to facilitate that conversation. *See* CIPA Protective Order ¶ 25(a)-(c). Pursuant to the CIPA Protective Order, the CIA designated an attorney in its Office of the General Counsel ("OGC") as the CIA Wall Attorney.

The Wall Provision thus creates a specific and narrow role for the CIA Wall Attorney: to coordinate defense requests to interview current CIA attorneys. The Wall Provision does not permit, or in any way contemplate, the service of subpoenas on the CIA Wall Attorney. It does not allow the defense to make discovery requests to the CIA without the prosecution team knowing. It does not permit the defense to litigate aspects of the trial—such as which classified information could be used and how it could be used at trial—through the wall, as opposed to with the prosecution team. In short, the Wall Provision does not create an independent channel for the defense to conduct a parallel litigation that keeps the prosecution team in the dark until trial. .

These limitations are entirely consistent with the manner in which criminal prosecutions are typically conducted. While a criminal defendant certainly possesses the right to craft and prepare a meaningful defense, he is not entitled to prepare that defense in total secrecy. *See Williams v. Florida*, 399 U.S. 78, 85 (1970) ("Nothing in the Fifth Amendment privilege entitles a defendant as a matter of constitutional right to await the end of the State's case before announcing the nature of his defense, any more than it entitles him to await the jury's verdict on the State's case-in-chief before deciding whether or not to take the stand himself."). Nothing in Rule 17 authorizes the issuance of a non-disclosure order to the recipient of a subpoena or entitles the defendant to enjoin a witness's employer from discussing with the prosecution team (or with anyone) the fact that an employee has been subpoenaed.

Nonetheless, Schulte has repeatedly attempted to manipulate the Wall Provision to enable him to litigate this case and prepare his defense in secret. For example, rather than go through the prosecution team, Schulte invoked the Wall Provision to demand discovery from the CIA and keep those requests from the Government. In response to the Government's position in discovery that it would not turn over certain forensic evidence (which was ultimately approved by the Court), Schulte filed a motion to compel that discovery on the Wall Attorney, claiming that only the CIA Wall Attorney and a wall prosecutor (the "Wall AUSA") were permitted to see and respond to Schulte's motion. Recently, Schulte withheld his CIPA Section 5 notice from the prosecution team for weeks after the service deadline based on his meritless claim that he should be allowed to serve it only on the Wall AUSA, to preserve the secrecy around his defense. Schulte refused to provide his Section 5 notice to the Government in the face of overwhelming legal precedent— including Second Circuit case law—rejecting his argument. *See* Dkt. 142 (ordering defendant to serve Section 5 notice on the prosecution team, noting that "[t]here is no basis for the request and production to the wall team would be both ineffective and inefficient"); *see also, e.g.*, *United States*

*v. Wilson*, 750 F.2d 7, 9 (2d Cir. 1984) ("We see no constitutional infirmity in the pretrial notification requirements of Section 5."); *United States v. Hashmi*, 621 F. Supp. 2d 76, 81 (S.D.N.Y. 2008) ("CIPA Section 5's pretrial notification requirement likewise does not infringe on a defendant's privilege against self-incrimination."); *United States v. Bin Laden*, No. 98 CR. 1023 LBS, 2001 WL 66393, at *5–6 (S.D.N.Y. Jan. 25, 2001) (noting that courts have held that "CIPA does not require that a defendant reveal his or her trial strategy, but only mandates that the defendant identify whatever classified information he plans to use.").

## II. The Trial Subpoenas

The November 4 Defense Letter reflects yet another attempt by the defense to manipulate the Wall Provision in a manner not authorized by the law or contemplated by the CIPA Protective Order. Schulte has issued trial subpoenas (the "Trial Subpoenas") to the CIA Wall Attorney for the testimony of 50 CIA witnesses and insisted that the Government cannot learn about those subpoenas until trial. Apart from having no basis in law, Schulte's recitation of the factual record in the November 4 Defense Letter is woefully inaccurate. On October 31, 2019, Schulte, through the CISO, transmitted the Trial Subpoenas to the CIA Wall Attorney. The CIA Wall Attorney—correctly believing that the Trial Subpoenas were not a wall matter—alerted an OGC supervisory attorney that the defense had sent the Trial Subpoenas. Based on consultation with the supervisory attorney, the CIA Wall Attorney took the position that the CIA did not believe that it was appropriate for the defense to serve trial subpoenas through the wall—indeed, the Government is not aware of any case in which the defense has ever attempted to serve subpoenas on the agency in this way. The CIA supervisory attorney also reported the fact that the defense had served the Trial Subpoenas through the wall to the prosecution team. The CIA did not provide the Trial Subpoenas to the prosecution team at the time or any time since.

Instead, the prosecution team notified defense counsel that the Government did not believe that the defense could serve the Trial Subpoenas through the wall and that, absent a Court order, the CIA planned to provide the Trial Subpoenas to the Government on November 5, 2019. The Government noted in its email that it needed the identity of the subpoenaed witnesses so that "among other things, we can determine whether there is duplication with the Government's witnesses or testimony that we believe should be precluded." The Government never "demand[ed]" the Trial Subpoenas from the defendant or claimed that the defense was obligated to notify the Government when the defense issued a subpoena. *See* Def. Nov. 4, 2019 Ltr. at 2. Rather, the Government informed the defense that it could not invoke the Wall Provision to prevent the CIA from disclosing the Trial Subpoenas to the Government. The defense acknowledged that it did not have authorization from the Court to submit the Trial Subpoenas through the wall, but nevertheless objected to the CIA providing the Trial Subpoenas to the Government.

There is simply no basis for the defense's objection. The Wall Provision does not create any substantive rights for Schulte with respect to trial subpoenas—by its terms, it applies only to defense attempts to interview current CIA witnesses. Nor does the law prohibit the recipient of a trial subpoena from disclosing that subpoena to the parties to the prosecution. *See, e.g.*, *Doe v. Ashcroft*, 334 F. Supp. 2d 471, 486 (S.D.N.Y. 2004) (noting that even grand jury "secrecy rules make no mention of a subpoena recipient or a witness, both of whom are ordinarily free to disclose

The Honorable Paul A. Crotty, U.S.D.J.
November 6, 2019
Page 4

to anyone the fact that a subpoena was issued or the contents of any information supplied"), v*acated on other grounds sub nom. Doe v. Gonzales*, 449 F.3d 415 (2d Cir. 2006). And the defense cites no rule, statute, precedent, or privilege that would be derogated by the Government learning of the existence of its subpoenas. Indeed, CIA regulations require that "[w]henever a demand for production is made upon an employee, an employee shall immediately notify [OGC], which shall follow the procedures set forth in this section." 32 C.F.R. § 1905.4.

      The defense's lawless position is particularly untenable in in a case like this, where CIPA requires that the defense disclose to the Government any testimony that could reveal classified information well in advance of trial. *See* 18 U.S.C. App. 3 § 5. Delaying notification to the Government would delay the Court's adjudication of the complicated issues surrounding the use classified information at trial. Moreover, given that the defense is purportedly seeking the testimony of 50 CIA witnesses[1]—dozens more than the Government intends to call in its case-in-chief—it is reasonable to assume that the Government may object to the defense calling at least some of these employees as witnesses. The law is clear that "[t]he prosecution has standing to quash a defendant's subpoena based 'upon its interest in preventing undue lengthening of the trial, undue harassment of its witness, and prejudicial over-emphasis on [the witness's] credibility.'" *United States v. Giampa*, No. S 92 CR. 437 (PKL), 1992 WL 296440, at *1 (S.D.N.Y. Oct. 7, 1992) (quoting *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982)); *see also, e.g., United States v. Santistevan*, 2012 WL 2875949, at *1 (D. Colo. July 12, 2012) (granting in part Government motion to quash subpoena for testimony from federal employees, noting that "a subpoena ad testificandum survives scrutiny if the party serving it can show that the testimony sought is both relevant and material" (quoting *Stern v. U.S. Dist. Ct.*, 214 F.3d 4, 17 (1st Cir. 2000)); *United States v. Manghis*, 2010 WL 349583, at *1 (D. Mass. Jan. 22, 2010) (granting Government motion to quash subpoena for testimony from federal employees, holding that it is "self-evident that Manghis should not be allowed to compel the appearance of a witness whose testimony would be irrelevant"). And even if the Government had no objection to certain CIA employees testifying, the Government would likely seek protections for those witnesses to ensure they are not put in danger because of their testimony. But if the defense's request were granted, the Government would not have an opportunity to do any of those things pre-trial. The defendant's request for an order prohibiting the CIA from disclosing the Trial Subpoenas to the prosecution team should be denied.

      Similarly, the defendant's second request—that the CIA Wall Attorney be compelled to describe to the Court and the defense alleged instances in which the CIA Wall Attorney breached the wall—is based wholly on the unfounded speculation that attorneys with the CIA and the Government would deliberately violate their ethical obligations to invade the defendant's

---

[1] Against the backdrop of Schulte's Section 5 notice related to his testimony, there is reason to believe that Schulte's subpoenaing of so many CIA witnesses is not about eliciting relevant testimony at trial, but rather about coercing the CIA into forgoing this prosecution by threatening to compel dozens of its employees to testify.

The Honorable Paul A. Crotty, U.S.D.J.
November 6, 2019
Page 5

privilege.[2]  To be clear, the prosecution team has never solicited any information from the CISO or the CIA Wall Attorney that the defense submitted through the wall without receiving authorization from the Court and the CISO, and the CIA Wall Attorney has never provided any information to the prosecution team that was properly submitted through the wall.  Nor does the instant situation represent a breach of the wall.  Upon receiving the Trial Subpoenas, the CIA alerted the Government to the fact and number of the subpoenas, and the Government, rather than receive copies of the Trial Subpoenas then, gave notice to the defense that the CIA would be providing the subpoenas to the prosecution team.  There is, simply put, no evidence of any breach of the wall and the defense's speculation to the contrary is unwarranted and inappropriate.  Thus, the Government respectfully requests that the Court direct the defendant to only use the wall procedures in this case for the purpose that was intended—contacting current CIA employees to attempt to arrange an interview.

    Respectfully submitted,

    GEOFFREY S. BERMAN
    United States Attorney

By: _____/s/_____
    David W. Denton, Jr. / Sidhardha Kamaraju / Matthew Laroche
    Assistant United States Attorneys
    Tel.: 212-637-2744 / 6523 / 2420

Cc:  Defense Counsel (via ECF)
     Daniel Hartenstine, Court Information Security Officer (via Email)

---

[2] Included in the defense's baseless claims is the defense's insinuation that CIA employees are refusing to speak to the defense due to actions by the Government and/or the CIA.  To be clear, both the Government and the CIA have never sought to dissuade any CIA employee from speaking with the defense, and have consistently advised all witnesses that it is entirely their choice whether to speak with the defense (or, for that matter, the Government).