Jbdnschc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                         17 Cr. 548 (PAC)

JOSHUA ADAM SCHULTE,

           Defendant.           Conference

------------------------------x

                                New York, N.Y.
                                November 13, 2019
                                11:15 a.m.

Before:

                  HON. PAUL A. CROTTY,

                                District Judge

                    APPEARANCES

GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
BY:  MATTHEW LAROCHE
     SIDHARDHA KAMARAJU
     DAVID W. DENTON, JR.
     Assistant United States Attorneys

FEDERAL DEFENDERS OF NEW YORK INC.
     Attorneys for Defendant
BY:  SABRINA P. SHROFF
     EDWARD S. ZAS
         and
JAMES BRANDEN
     Attorney for Defendant

Also Present:
SEAN MAHER, On-Duty CJA Counsel

Jbdnschc

1              (Case called)

2              THE DEPUTY CLERK:  Counsel for the government, please

3     state your appearance.

4              MR. LAROCHE:  Good morning, your Honor.  Matt Laroche,

5     Sid Kamaraju, and David Denton, for the government.

6              MR. KAMARAJU:  Good morning, your Honor.

7              MR. DENTON:  Good morning, your Honor.

8              MS. SHROFF:  Good morning, your Honor.  For Mr.

9     Schulte, Sabrina Shroff, Edward Zas and James Branden, also

10    present at counsel table Achal Fernando, who is a paralegal in

11    our office.

12             THE COURT:  Mr. Schulte, how are you this morning.

13             I have a number of items I want to go over.  Is there

14    anything you want to take up first, Ms. Shroff or Mr. Laroche?

15             MS. SHROFF:  Your Honor, we are happy to go with the

16    Court's chosen order.  That's fine.

17             THE COURT:  Mr. Laroche?

18             MR. LAROCHE:  We agree, your Honor.

19             THE COURT:  Let's take up the matter of the Curcio

20    hearing.  Is the on-duty CJA lawyer present today?

21             MR. MAHER:  Good morning, your Honor.  Sean Maher.

22             THE COURT:  Mr. Maher, have you seen the Curcio order?

23             MR. MAHER:  I have reviewed your order, your Honor.

24             THE COURT:  I am going to appoint you as Curcio

25    counsel to give independent counsel to Mr. Schulte.  I have an

Jbdnschc

1    order to that effect.  How long do you need to prepare and meet

2    with Mr. Schulte?

3              MR. MAHER:  It is a little difficult for me to answer

4    that, your Honor.

5              THE COURT:  Why don't you take a week, and if you need

6    more time you will let me know.

7              MR. MAHER:  Very well.

8              MS. SHROFF:  Your Honor?

9              THE COURT:  Yes.

10             MS. SHROFF:  May I, with the Court's permission, give

11   Mr. Maher a copy of the briefing on the Curcio matter?

12             THE COURT:  Yes.

13             MS. SHROFF:  None of it was classified.  I just wanted

14   to make sure that I am going to give a copy to the CSO, who is

15   present in court as well.

16             THE COURT:  These are on the record, aren't they?

17   Aren't these public?

18             MS. SHROFF:  Your Honor, we had given the Court an

19   unredacted version.  It is not classified at all.  It is just

20   unredacted.  We have redacted some of the information from the

21   government's view.  So I am going to give Mr. Maher the

22   unredacted version.

23             THE COURT:  All right.

24             MS. SHROFF:  Just for the record.

25             THE COURT:  Mr. Laroche, any objection?

Jbdnschc

1              MR. LAROCHE:  No, your Honor.

2              THE COURT:  You are giving a copy to the CSO?

3              MS. SHROFF:  Yes, your Honor.  Just so the record is

4     complete, Mr. Hartenstein wanted me to do that, so I have done

5     it now.

6              THE COURT:  All right.  Today is the 13th.

7              Mr. Maher, can you let us know what your position is

8     by the 20th?  If you need more time you can take more time, but

9     the 20th will give us a week

10             MR. MAHER:  Will do.

11             THE COURT:  All right.

12             I have received a motion challenging the

13    constitutionality of the Espionage Act, and the defendant moves

14    to dismiss Counts One through Four and Six.  This was filed on

15    November 5.

16             Is there a schedule for the government's response?

17             MR. LAROCHE:  There is not, your Honor.

18             We would propose December 13 for a response.

19             THE COURT:  And a time for reply, Ms. Shroff?

20             MS. SHROFF:  Your Honor, a week later.

21             THE COURT:  The 20th?

22             MS. SHROFF:  That's fine, your Honor.

23             THE COURT:  OK.

24             With respect to the motion to dismiss, Counts One

25    through Four and Six, we have in hand the motion.  The response

Jbdnschc

1    will be due December 13 and the reply on December 20.

2            Could the parties please brief me on the expert

3    discovery issue.  We have defendant's motion of October 28 and

4    the government response on November 5, in which the government

5    suggested that it was would produce some additional

6    information.  So I would like to get an update from the parties

7    as to whether or not more information has been produced and

8    whether there is still a dispute, and, if so, what it is.

9            MR. LAROCHE:  Your Honor, in our letter in response we

10   have made certain discovery available that's been requested.

11   That discovery is available for review on a computer at a

12   facility that we can speak with defense about.  We have not

13   heard anything since we made that proposal.

14           THE COURT:  Ms. Shroff?

15           MS. SHROFF:  Your Honor, I think I advised, I thought

16   I had advised the government, but our expert unfortunately is

17   unavailable to go to the facility that they have designated.

18           THE COURT:  Ever?

19           MS. SHROFF:  No, this month.  I'm sorry.  I should

20   have been more precise.  He unable to travel this month.  He

21   only has one day a week available.  For whatever his personal

22   issues are, he is not able to be available past 5 p.m.  So he

23   is unable to go to their facility out of state in November.

24           THE COURT:  What do you propose?

25           MS. SHROFF:  I am supposed to meet with him again

Jbdnschc

1    tomorrow, the expert and hopefully try and figure out a date in

2    early December.  But beyond that I think that our letter to the

3    Court requesting the additional discovery still stands.

4              The production that the government has offered now to

5    give remains insufficient, at least according to our expert's

6    review, and it comes much after our objection to their expert

7    report.

8              It seems to me, and I am not clear about this because

9    I haven't spoken to my expert, that they have given us only

10   what is sufficient to allow them to introduce their expert's

11   testimony into evidence.

12             For almost a year now we have been asking for much

13   more.  The government has refused to give us anything more, and

14   it seems to be -- and I honestly I cannot explain the

15   technology in an open courtroom to the Court -- but whatever

16   concession the government is now making seems tailored to

17   ensure that we are not able to object to their expert's

18   testimony.  It does not seem to be at all responsive to what

19   Mr. Schulte's ask was so that he could prepare a full defense.

20             Again, I am literally repeating for the Court what my

21   expert has said.

22             THE COURT:  Right.

23             MS. SHROFF:  His review is not fully complete, and he

24   is not here today.

25             THE COURT:  Right.  But the report is that, whatever

Jbdnschc

1    the government has agreed to, it's not satisfactory from your

2    standpoint.  You are standing on your initial request?

3              MS. SHROFF:  Right, on our initial request, and I can

4    give the Court the dates of the several times we have written

5    on the same topic to the Court.

6              THE COURT:  Mr. Laroche?

7              MR. LAROCHE:  Our response is essentially everything

8    they've wanted in their request but for one thing, which is

9    full-on access to one of the servers.  We have set forth the

10   basis why we don't think that is appropriate.  Their request as

11   to the entire server was not specific.  It is just that we want

12   access to the entire server.  Otherwise we have essentially I

13   believe provided exactly what they've wanted.

14             For example, they've asked for certain backup files.

15   We are providing those files.  They have asked directly for

16   other files that we are providing on the laptop that is

17   available at the agency.  I think before their expert has

18   actually looked at those files this is far premature to say

19   that it is insufficient.

20             THE COURT:  This is set forth in your response,

21   Mr. Laroche, of November 5?

22             MR. LAROCHE:  That's correct, your Honor.

23             THE COURT:  To Ms. Shroff's letter of October 28, is

24   that correct?

25             MR. LAROCHE:  Yes, your Honor.

Jbdnschc

1              THE COURT:  OK.

2              Ms. Shroff?

3              MS. SHROFF:  Your Honor, could you just give me one

4    second.  I am a little worried about pulling out a classified

5    document.  I just need one second.

6              I think we disagree with what Mr. Laroche is saying.

7    I am happy to write to the Court as to why the minuscule

8    disclosure by the government now remains insufficient.  I think

9    we have really detailed this in the three letters we submitted

10   to the Court, August 26, October 15, and then again on October

11   28.

12             THE COURT:  August 26 and what?

13             MS. SHROFF:  October 15.

14             THE COURT:  October 15.

15             MS. SHROFF:  And then October 28.

16             THE COURT:  October 28.

17             All right.  You are seeing your expert when?

18             MS. SHROFF:  Tomorrow.

19             THE COURT:  Why don't you update me tomorrow.

20             MS. SHROFF:  I can.

21             THE COURT:  All right.

22             What about the issue of the subpoenas to certain

23   individuals?

24             MR. LAROCHE:  Yes, your Honor.

25             So, our understanding, what we know at this point on

Jbdnschc

1    the prosecution team side is the defense has attempted to serve

2    50 trial subpoenas through the wall at the agency.  We believe

3    that that's an entirely inappropriate use of the wall.  We also

4    believe that the agencies, should they choose to, can share

5    those subpoenas with us.  We've held off -- we have told the

6    agency not to give those subpoenas to us because of the

7    litigation relating to that delivery, and we've set forth our

8    position in the papers.

9              THE COURT:  That's in your papers of November 6?

10             MR. LAROCHE:  Yes, your Honor.

11             THE COURT:  Do we have your reply, Ms. Shroff?

12             MS. SHROFF:  You do, your Honor.  I am genuinely

13   curious whether the government can point to any law, common

14   law, statutory law, any kind of law that tells me that I am

15   required to tell them two months ahead of trial who I choose to

16   and who I choose not to subpoena in any given case.  Where

17   literally there are at least 50 if not more witnesses that

18   Mr. Schulte would legitimately be able to call, there's no

19   reason for them not to be able to call them just because they

20   happen to be employed by the CIA.

21             Why is the government entitled to know who I am going

22   to subpoena?  In any other given case, if I were going to go

23   subpoena somebody -- let's say I subpoena Goldman Sachs.

24   Goldman Sachs has lawyers.  If they don't have lawyers they can

25   go buy some, as can the CIA.

Jbdnschc

1          The CIA has a walled lawyer who I'm assuming knows how

2     to move to quash.  If they don't know how to move to quash,

3     there is a DOJ lawyer who I am assuming also knows how to

4     quash.

5          But to say to a defendant who's facing a trial, Hey,

6     you can't subpoena anyone first of all, and if you go through

7     the wall, we're going to call it inappropriate -- why I do not

8     know, because that is precisely the reason a wall lawyer was

9     put into place, so that the trial team would not know the

10    defense's trial strategy.  What is inappropriate about using

11    the wall lawyer?  It is a lawyer.

12          THE COURT:  Mr. Laroche.

13          MR. LAROCHE:  That misstates our position, your Honor.

14    Our position is not that the defense is required to tell us who

15    they subpoena.  Our position is that if someone is subpoenaed,

16    for example, to take the example of Goldman Sachs, if someone

17    from Goldman Sachs is subpoenaed, it is up to that person

18    whether or not they want to tell the government that they were

19    subpoenaed.

20          The wall process has absolutely nothing to do with

21    trial subpoenas.  It has to do with when the defense wants to

22    contact a witness for an interview.  That is the extent of the

23    wall process set forth in the protective order.

24          THE COURT:  What should Ms. Shroff do?

25          MR. LAROCHE:  She could serve the subpoenas, and if

Jbdnschc

1    the agency wants to let us know they have been subpoenaed and

2    served with 50 trial subpoenas, the agency can tell us, which

3    is what happens in any other case.

4           MS. SHROFF:  In any other case, I could go to the

5    Goldman Sachs employee, knock on their door, and say, "Hey, I

6    am counsel for Mr. Schulte.  You want to talk on me?"

7           They won't let us do it.  It is ridiculous for the

8    government to say that we actually have that option.  We are

9    not able to --

10          THE COURT:  Mr. Laroche, what about Ms. Shroff's

11   point?  Can she serve the subpoenas on the one or two or three

12   or four however many employees she wants to, individuals she

13   wants to talk to?

14          MS. SHROFF:  They won't let us talk to any one of

15   them.

16          THE COURT:  OK.

17          Mr. Laroche?

18          MR. LAROCHE:  I mean, there's nothing preventing her

19   from trying to do that, but then agency regulations would

20   require that employee to tell the office, to tell their

21   litigation folks that they have been subpoenaed.  So then we

22   are in the same spot anyway; that is, litigation could say,

23   "Hey, we have employees that have been subpoenaed.  We're

24   letting you know."

25          That's where we are at.

Jbdnschc

1            MS. SHROFF:  Your Honor, I want to be very clear.

2            THE COURT:  What is the problem with their letting you

3    know?

4            MS. SHROFF:  No, no.  What Mr. Laroche is saying is

5    factually inaccurate.  We have been told by the CSO

6    specifically -- the protective order speaks to this -- we are

7    prohibited from talking to any CIA employee directly in any

8    way, shape or form.

9            What the CIA regulations are, are wholly different.

10   We are required by the CSO to tell the CSO the witnesses we

11   would like to speak with.  It is only the CIA that is allowed

12   to even ask them.  We were not even allowed to ask them whether

13   or not they wanted to speak to us in the first place.

14           So, unlike the Goldman Sachs employee, whom I might be

15   able to go up to and say, you know, "This should be an even

16   playing field, why don't you talk to us as much as you talk to

17   the government," we're prohibited from doing that.

18           If we are not prohibited, then Dan Hartenstein has

19   very much misinformed us, which I do not think would ever be

20   the case, just to be clear.  So this is how the process has

21   worked.

22           We've told the CIA those are the individuals we would

23   like to speak to.  The CIA notified those individuals.  They

24   told them of our request.  We didn't even know what the request

25   says.  We don't know what the follow-up questions were other

Jbdnschc

1    than in the most generic sense.  We don't know how many of

2    those individuals hemmed and hawed and could have been cajoled

3    or talked into talking to us.  We have no idea.  Literally this

4    is all happening behind the CIA wall, their secrecy.

5          The government has none of these problems because they

6    have interviewed every one of them.  They just tell the CIA who

7    they want to talk to and the CIA walks their employee into a

8    SCIF in D.C. and they are allowed to sit and talk to them.

9          Out of all of the witnesses that we've asked to speak

10   to -- and I think there were over 60 -- according to the CIA,

11   one responded.  This would never happen in an ordinary criminal

12   case where my investigator or our trial team would be able to

13   go and talk to them directly.

14         So it's really unfair to say, one, I can go talk to

15   them, two, the mechanism in place has been put in place by the

16   CIA and the U.S. Attorney's Office and, three, even after all

17   of these hurdles I should still tell them two months ahead of

18   time who I am going to subpoena.

19         THE COURT:  All right.  I will have an answer for you

20   to that one shortly.

21         We are going to get together on November 20 for the

22   CIPA 6(a) hearing; is that correct?

23         MR. LAROCHE:  That's correct.

24         MS. SHROFF:  Yes, your Honor.

25         THE COURT:  How much time should I allocate for that?

Jbdnschc

1              MR. LAROCHE:  I think it's at least a full day, your

2     Honor.

3              THE COURT:  What time are we starting, David?

4              THE DEPUTY CLERK:  10 a.m.

5              THE COURT:  All right.

6              Those are the big briefing books that I have?

7              MR. LAROCHE:  Yes, your Honor.

8              THE COURT:  Are we going to go through them document

9     by document?

10             MR. LAROCHE:  We have set forth the categories of

11    documents that are at issue.  I think our proposal would be to

12    go through each category, your Honor.

13             THE COURT:  Ms. Shroff?

14             MS. SHROFF:  Your Honor, the government's CIPA notice

15    has confabulated both the relevance and the substitution.  We

16    have provided the Court with a binder.  They've skipped a step

17    so to speak.

18             I did reach out to the government and say that there

19    is a group of documents for which we could come to an

20    agreement.  There are certain documents -- and I won't go into

21    what in an open courtroom obviously -- but there are certain

22    relevance issues that I think both sides would agree on and

23    perhaps even agree on the substitution.  So maybe you could

24    whittle it down.

25             But, as I understand it, under CIPA Section 6(a) and

Jbdnschc

6(b) to the extent there is a disagreement, the rulings would

have to be document by document.  At least that's what I

understand it to be.  But I don't anticipate us having a lot of

disagreement.  I reached out to them.

THE COURT:  It could be a misimpression.

MS. SHROFF:  It is up to them.

THE COURT:  Anything you can agree on, of course,

would be very helpful and productive.  If you can't agree, then

I will have to rule.

MS. SHROFF:  OK.

THE COURT:  We will start at 10 o'clock, David?

THE DEPUTY CLERK:  Yes.

THE COURT:  OK.  Anything else you want to take up

today?

MR. LAROCHE:  Not from the government, your Honor.

THE COURT:  Ms. Shroff?

MS. SHROFF:  No, your Honor.

THE COURT:  And that hearing on Wednesday, the 20th,

will be in camera?

MR. LAROCHE:  Yes, your Honor.

MS. SHROFF:  Yes, your Honor.

THE COURT:  All right.  If there's nothing else, I

will see you on Wednesday of next week.  Thank you very much.

MR. LAROCHE:  Thank you, your Honor.

(Adjourned)