Jbdnschc

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
3    UNITED STATES OF AMERICA,
4              v.                              17 Cr. 548 (PAC)
5    JOSHUA ADAM SCHULTE,
6              Defendant.                      Conference
7    ------------------------------x
8                                              New York, N.Y.
                                               November 13, 2019
9                                              11:15 a.m.

10   Before:
11
                        HON. PAUL A. CROTTY,
12
                                               District Judge
13
                            APPEARANCES
14
     GEOFFREY S. BERMAN
15        United States Attorney for the
          Southern District of New York
16   BY:  MATTHEW LAROCHE
          SIDHARDHA KAMARAJU
17        DAVID W. DENTON, JR.
          Assistant United States Attorneys
18
     FEDERAL DEFENDERS OF NEW YORK INC.
19        Attorneys for Defendant
     BY:  SABRINA P. SHROFF
20        EDWARD S. ZAS
             and
21   JAMES BRANDEN
          Attorney for Defendant
22
     Also Present:
23   SEAN MAHER, On-Duty CJA Counsel
24
25

Jbdnschc

1         (Case called)
2         THE DEPUTY CLERK:  Counsel for the government, please
3  state your appearance.
4         MR. LAROCHE:  Good morning, your Honor.  Matt Laroche,
5  Sid Kamaraju, and David Denton, for the government.
6         MR. KAMARAJU:  Good morning, your Honor.
7         MR. DENTON:  Good morning, your Honor.
8         MS. SHROFF:  Good morning, your Honor.  For Mr.
9  Schulte, Sabrina Shroff, Edward Zas and James Branden, also
10 present at counsel table Achal Fernando, who is a paralegal in
11 our office.
12        THE COURT:  Mr. Schulte, how are you this morning.
13        I have a number of items I want to go over.  Is there
14 anything you want to take up first, Ms. Shroff or Mr. Laroche?
15        MS. SHROFF:  Your Honor, we are happy to go with the
16 Court's chosen order.  That's fine.
17        THE COURT:  Mr. Laroche?
18        MR. LAROCHE:  We agree, your Honor.
19        THE COURT:  Let's take up the matter of the Curcio
20 hearing.  Is the on-duty CJA lawyer present today?
21        MR. MAHER:  Good morning, your Honor.  Sean Maher.
22        THE COURT:  Mr. Maher, have you seen the Curcio order?
23        MR. MAHER:  I have reviewed your order, your Honor.
24        THE COURT:  I am going to appoint you as Curcio
25 counsel to give independent counsel to Mr. Schulte.  I have an

Jbdnschc

order to that effect.  How long do you need to prepare and meet with Mr. Schulte?

MR. MAHER:  It is a little difficult for me to answer that, your Honor.

THE COURT:  Why don't you take a week, and if you need more time you will let me know.

MR. MAHER:  Very well.

MS. SHROFF:  Your Honor?

THE COURT:  Yes.

MS. SHROFF:  May I, with the Court's permission, give Mr. Maher a copy of the briefing on the Curcio matter?

THE COURT:  Yes.

MS. SHROFF:  None of it was classified.  I just wanted to make sure that I am going to give a copy to the CSO, who is present in court as well.

THE COURT:  These are on the record, aren't they?  Aren't these public?

MS. SHROFF:  Your Honor, we had given the Court an unredacted version.  It is not classified at all.  It is just unredacted.  We have redacted some of the information from the government's view.  So I am going to give Mr. Maher the unredacted version.

THE COURT:  All right.

MS. SHROFF:  Just for the record.

THE COURT:  Mr. Laroche, any objection?

1           MR. LAROCHE:  No, your Honor.
2           THE COURT:  You are giving a copy to the CSO?
3           MS. SHROFF:  Yes, your Honor.  Just so the record is
4    complete, Mr. Hartenstein wanted me to do that, so I have done
5    it now.
6           THE COURT:  All right.  Today is the 13th.
7           Mr. Maher, can you let us know what your position is
8    by the 20th?  If you need more time you can take more time, but
9    the 20th will give us a week
10          MR. MAHER:  Will do.
11          THE COURT:  All right.
12          I have received a motion challenging the
13   constitutionality of the Espionage Act, and the defendant moves
14   to dismiss Counts One through Four and Six.  This was filed on
15   November 5.
16          Is there a schedule for the government's response?
17          MR. LAROCHE:  There is not, your Honor.
18          We would propose December 13 for a response.
19          THE COURT:  And a time for reply, Ms. Shroff?
20          MS. SHROFF:  Your Honor, a week later.
21          THE COURT:  The 20th?
22          MS. SHROFF:  That's fine, your Honor.
23          THE COURT:  OK.
24          With respect to the motion to dismiss, Counts One
25   through Four and Six, we have in hand the motion.  The response

1    will be due December 13 and the reply on December 20.

2              Could the parties please brief me on the expert

3    discovery issue.  We have defendant's motion of October 28 and

4    the government response on November 5, in which the government

5    suggested that it was would produce some additional

6    information.  So I would like to get an update from the parties

7    as to whether or not more information has been produced and

8    whether there is still a dispute, and, if so, what it is.

9              MR. LAROCHE:  Your Honor, in our letter in response we

10   have made certain discovery available that's been requested.

11   That discovery is available for review on a computer at a

12   facility that we can speak with defense about.  We have not

13   heard anything since we made that proposal.

14             THE COURT:  Ms. Shroff?

15             MS. SHROFF:  Your Honor, I think I advised, I thought

16   I had advised the government, but our expert unfortunately is

17   unavailable to go to the facility that they have designated.

18             THE COURT:  Ever?

19             MS. SHROFF:  No, this month.  I'm sorry.  I should

20   have been more precise.  He unable to travel this month.  He

21   only has one day a week available.  For whatever his personal

22   issues are, he is not able to be available past 5 p.m.  So he

23   is unable to go to their facility out of state in November.

24             THE COURT:  What do you propose?

25             MS. SHROFF:  I am supposed to meet with him again

1   tomorrow, the expert and hopefully try and figure out a date in
2   early December.  But beyond that I think that our letter to the
3   Court requesting the additional discovery still stands.
4               The production that the government has offered now to
5   give remains insufficient, at least according to our expert's
6   review, and it comes much after our objection to their expert
7   report.
8               It seems to me, and I am not clear about this because
9   I haven't spoken to my expert, that they have given us only
10  what is sufficient to allow them to introduce their expert's
11  testimony into evidence.
12              For almost a year now we have been asking for much
13  more.  The government has refused to give us anything more, and
14  it seems to be -- and I honestly I cannot explain the
15  technology in an open courtroom to the Court -- but whatever
16  concession the government is now making seems tailored to
17  ensure that we are not able to object to their expert's
18  testimony.  It does not seem to be at all responsive to what
19  Mr. Schulte's ask was so that he could prepare a full defense.
20              Again, I am literally repeating for the Court what my
21  expert has said.
22              THE COURT:  Right.
23              MS. SHROFF:  His review is not fully complete, and he
24  is not here today.
25              THE COURT:  Right.  But the report is that, whatever

the government has agreed to, it's not satisfactory from your standpoint.  You are standing on your initial request?

MS. SHROFF:  Right, on our initial request, and I can give the Court the dates of the several times we have written on the same topic to the Court.

THE COURT:  Mr. Laroche?

MR. LAROCHE:  Our response is essentially everything they've wanted in their request but for one thing, which is full-on access to one of the servers.  We have set forth the basis why we don't think that is appropriate.  Their request as to the entire server was not specific.  It is just that we want access to the entire server.  Otherwise we have essentially I believe provided exactly what they've wanted.

For example, they've asked for certain backup files. We are providing those files.  They have asked directly for other files that we are providing on the laptop that is available at the agency.  I think before their expert has actually looked at those files this is far premature to say that it is insufficient.

THE COURT:  This is set forth in your response, Mr. Laroche, of November 5?

MR. LAROCHE:  That's correct, your Honor.

THE COURT:  To Ms. Shroff's letter of October 28, is that correct?

MR. LAROCHE:  Yes, your Honor.

1      THE COURT:  OK.
2      Ms. Shroff?
3      MS. SHROFF:  Your Honor, could you just give me one
4  second.  I am a little worried about pulling out a classified
5  document.  I just need one second.
6      I think we disagree with what Mr. Laroche is saying.
7  I am happy to write to the Court as to why the minuscule
8  disclosure by the government now remains insufficient.  I think
9  we have really detailed this in the three letters we submitted
10 to the Court, August 26, October 15, and then again on October
11 28.
12     THE COURT:  August 26 and what?
13     MS. SHROFF:   October 15.
14     THE COURT:  October 15.
15     MS. SHROFF:  And then October 28.
16     THE COURT:  October 28.
17     All right.  You are seeing your expert when?
18     MS. SHROFF:  Tomorrow.
19     THE COURT:  Why don't you update me tomorrow.
20     MS. SHROFF:  I can.
21     THE COURT:  All right.
22     What about the issue of the subpoenas to certain
23 individuals?
24     MR. LAROCHE:  Yes, your Honor.
25     So, our understanding, what we know at this point on

the prosecution team side is the defense has attempted to serve 50 trial subpoenas through the wall at the agency. We believe that that's an entirely inappropriate use of the wall. We also believe that the agencies, should they choose to, can share those subpoenas with us. We've held off -- we have told the agency not to give those subpoenas to us because of the litigation relating to that delivery, and we've set forth our position in the papers.

THE COURT: That's in your papers of November 6?

MR. LAROCHE: Yes, your Honor.

THE COURT: Do we have your reply, Ms. Shroff?

MS. SHROFF: You do, your Honor. I am genuinely curious whether the government can point to any law, common law, statutory law, any kind of law that tells me that I am required to tell them two months ahead of trial who I choose to and who I choose not to subpoena in any given case. Where literally there are at least 50 if not more witnesses that Mr. Schulte would legitimately be able to call, there's no reason for them not to be able to call them just because they happen to be employed by the CIA.

Why is the government entitled to know who I am going to subpoena? In any other given case, if I were going to go subpoena somebody -- let's say I subpoena Goldman Sachs. Goldman Sachs has lawyers. If they don't have lawyers they can go buy some, as can the CIA.

        The CIA has a walled lawyer who I'm assuming knows how to move to quash.  If they don't know how to move to quash, there is a DOJ lawyer who I am assuming also knows how to quash.

        But to say to a defendant who's facing a trial, Hey, you can't subpoena anyone first of all, and if you go through the wall, we're going to call it inappropriate -- why I do not know, because that is precisely the reason a wall lawyer was put into place, so that the trial team would not know the defense's trial strategy.  What is inappropriate about using the wall lawyer?  It is a lawyer.

        THE COURT:  Mr. Laroche.

        MR. LAROCHE:  That misstates our position, your Honor.  Our position is not that the defense is required to tell us who they subpoena.  Our position is that if someone is subpoenaed, for example, to take the example of Goldman Sachs, if someone from Goldman Sachs is subpoenaed, it is up to that person whether or not they want to tell the government that they were subpoenaed.

        The wall process has absolutely nothing to do with trial subpoenas.  It has to do with when the defense wants to contact a witness for an interview.  That is the extent of the wall process set forth in the protective order.

        THE COURT:  What should Ms. Shroff do?

        MR. LAROCHE:  She could serve the subpoenas, and if

1    the agency wants to let us know they have been subpoenaed and
2    served with 50 trial subpoenas, the agency can tell us, which
3    is what happens in any other case.
4              MS. SHROFF:  In any other case, I could go to the
5    Goldman Sachs employee, knock on their door, and say, "Hey, I
6    am counsel for Mr. Schulte.  You want to talk on me?"
7              They won't let us do it.  It is ridiculous for the
8    government to say that we actually have that option.  We are
9    not able to --
10             THE COURT:  Mr. Laroche, what about Ms. Shroff's
11   point?  Can she serve the subpoenas on the one or two or three
12   or four however many employees she wants to, individuals she
13   wants to talk to?
14             MS. SHROFF:  They won't let us talk to any one of
15   them.
16             THE COURT:  OK.
17             Mr. Laroche?
18             MR. LAROCHE:  I mean, there's nothing preventing her
19   from trying to do that, but then agency regulations would
20   require that employee to tell the office, to tell their
21   litigation folks that they have been subpoenaed.  So then we
22   are in the same spot anyway; that is, litigation could say,
23   "Hey, we have employees that have been subpoenaed.  We're
24   letting you know."
25             That's where we are at.

1            MS. SHROFF:  Your Honor, I want to be very clear.

2            THE COURT:  What is the problem with their letting you
3    know?

4            MS. SHROFF:  No, no.  What Mr. Laroche is saying is
5    factually inaccurate.  We have been told by the CSO
6    specifically -- the protective order speaks to this -- we are
7    prohibited from talking to any CIA employee directly in any
8    way, shape or form.

9            What the CIA regulations are, are wholly different.
10   We are required by the CSO to tell the CSO the witnesses we
11   would like to speak with.  It is only the CIA that is allowed
12   to even ask them.  We were not even allowed to ask them whether
13   or not they wanted to speak to us in the first place.

14           So, unlike the Goldman Sachs employee, whom I might be
15   able to go up to and say, you know, "This should be an even
16   playing field, why don't you talk to us as much as you talk to
17   the government," we're prohibited from doing that.

18           If we are not prohibited, then Dan Hartenstein has
19   very much misinformed us, which I do not think would ever be
20   the case, just to be clear.  So this is how the process has
21   worked.

22           We've told the CIA those are the individuals we would
23   like to speak to.  The CIA notified those individuals.  They
24   told them of our request.  We didn't even know what the request
25   says.  We don't know what the follow-up questions were other

than in the most generic sense. We don't know how many of those individuals hemmed and hawed and could have been cajoled or talked into talking to us. We have no idea. Literally this is all happening behind the CIA wall, their secrecy.

The government has none of these problems because they have interviewed every one of them. They just tell the CIA who they want to talk to and the CIA walks their employee into a SCIF in D.C. and they are allowed to sit and talk to them.

Out of all of the witnesses that we've asked to speak to -- and I think there were over 60 -- according to the CIA, one responded. This would never happen in an ordinary criminal case where my investigator or our trial team would be able to go and talk to them directly.

So it's really unfair to say, one, I can go talk to them, two, the mechanism in place has been put in place by the CIA and the U.S. Attorney's Office and, three, even after all of these hurdles I should still tell them two months ahead of time who I am going to subpoena.

THE COURT: All right. I will have an answer for you to that one shortly.

We are going to get together on November 20 for the CIPA 6(a) hearing; is that correct?

MR. LAROCHE: That's correct.

MS. SHROFF: Yes, your Honor.

THE COURT: How much time should I allocate for that?

1     MR. LAROCHE:  I think it's at least a full day, your
2    Honor.
3          THE COURT:  What time are we starting, David?
4          THE DEPUTY CLERK:  10 a.m.
5          THE COURT:  All right.
6          Those are the big briefing books that I have?
7          MR. LAROCHE:  Yes, your Honor.
8          THE COURT:  Are we going to go through them document
9    by document?
10          MR. LAROCHE:  We have set forth the categories of
11   documents that are at issue.  I think our proposal would be to
12   go through each category, your Honor.
13          THE COURT:  Ms. Shroff?
14          MS. SHROFF:  Your Honor, the government's CIPA notice
15   has confabulated both the relevance and the substitution.  We
16   have provided the Court with a binder.  They've skipped a step
17   so to speak.
18          I did reach out to the government and say that there
19   is a group of documents for which we could come to an
20   agreement.  There are certain documents -- and I won't go into
21   what in an open courtroom obviously -- but there are certain
22   relevance issues that I think both sides would agree on and
23   perhaps even agree on the substitution.  So maybe you could
24   whittle it down.
25          But, as I understand it, under CIPA Section 6(a) and

1    6(b) to the extent there is a disagreement, the rulings would
2    have to be document by document.  At least that's what I
3    understand it to be.  But I don't anticipate us having a lot of
4    disagreement.  I reached out to them.
5             THE COURT:  It could be a misimpression.
6             MS. SHROFF:  It is up to them.
7             THE COURT:  Anything you can agree on, of course,
8    would be very helpful and productive.  If you can't agree, then
9    I will have to rule.
10            MS. SHROFF:  OK.
11            THE COURT:  We will start at 10 o'clock, David?
12            THE DEPUTY CLERK:  Yes.
13            THE COURT:  OK.  Anything else you want to take up
14   today?
15            MR. LAROCHE:  Not from the government, your Honor.
16            THE COURT:  Ms. Shroff?
17            MS. SHROFF:  No, your Honor.
18            THE COURT:  And that hearing on Wednesday, the 20th,
19   will be in camera?
20            MR. LAROCHE:  Yes, your Honor.
21            MS. SHROFF:  Yes, your Honor.
22            THE COURT:  All right.  If there's nothing else, I
23   will see you on Wednesday of next week.  Thank you very much.
24            MR. LAROCHE:  Thank you, your Honor.
25            (Adjourned)