UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JOSHUA ADAM SCHULTE,

Defendant.

S2 17 Cr. 548 (PAC)

**THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE
DEFENDANT'S MOTION FOR LEAVE TO FILE AN UNTIMELY MOTION TO
DISMISS COUNTS ONE, TWO, THREE, FOUR, AND SIX OF THE SUPERSEDING
INDICTMENT**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007

David W. Denton, Jr.
Sidhardha Kamaraju
Matthew Laroche
Assistant United States Attorneys
    *Of Counsel*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 3

   I. The Defendant Has Not Established Good Cause for His Untimely Filing ........................... 3

     A. Applicable Law ............................................................................................................ 3

     B. Discussion .................................................................................................................... 5

   II. The Defendant Is Not Prejudiced Because His Motion Is Substantively Meritless .............. 5

     A. Applicable Law ............................................................................................................ 6

       1. Overbreadth ............................................................................................................ 6

       2. Vagueness ............................................................................................................. 11

     B. Discussion .................................................................................................................. 13

       1. Section 793 Is Neither Overbroad Nor Vague ......................................................... 13

       2. Section 641 Is Neither Overbroad Nor Vague ......................................................... 25

   III. Schulte's Counsel Was Not Ineffective for Failing to Timely File the Motion ................ 26

CONCLUSION ..................................................................................................................... 28

i

# TABLE OF AUTHORITIES

## CASES

*C.M. Executive Gallery Corp. v. Rols Capital Co.*, 1996 WL 30457 (S.D.N.Y. 1996) ................ 4

*Al Bahlul v. United States*, 767 F.3d 1 (D.C. Cir. 2014) ................................................... 3

*Alfano v. United States*, 555 F.2d 1128 (2d Cir. 1977) ..................................................... 27

*Bartnicki v. Vopper*, 532 U.S. 514 (2001) ...................................................................... 9

*Boehner v. McDermott*, 484 F.3d 573 (D.C. Cir. 2007) ............................................... 7, 8

*Branzburg v. Hayes*, 408 U.S. 665 (1972) ...................................................................... 9

*Brown v. United States*, 311 F.3d 875 (8th Cir. 2002) .................................................... 27

*Carnrite v. Granada Hospital Group, Inc.*, 175 F.R.D. 439 (W.D.N.Y. 1997) ........................... 5

*Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991) ................................................. 8, 9, 14

*Cook v. United States*, 2006 WL 3333068 (S.D.N.Y. Nov. 15, 2006) ........................................ 27

*United States v. Dedeyan*, 584 F.2d 36 (1978) .............................................................. 19

*El-Masri v. United States*, 479 F.3d 296 (4th Cir. 2007) .................................................. 23

*Frohwerk v. United States*, 249 U.S. 204 (1919) .............................................................. 7

*Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949) .................................................. 7

*Gorin v. United States*, 312 U.S. 19 (1941) .................................................... 16, 18, 21

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) .......................................................... 12

*Haig v. Agee*, 453 U.S. 280 (1981) ............................................................... 7, 13, 14

*Hamling v. United States*, 418 U.S. 87 (1974) ............................................................... 18

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982) .................................. 11

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ............................................. 12, 24

*Indiviglio v. United States*, 612 F.2d 624 (2d Cir. 1979) ................................................... 4

*Jameson v. Coughlin*, 22 F.3d 427 (2d Cir. 1994) ........................................................... 27

*Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984) ........... 15

*New York v. Ferber*, 458 U.S. 747 (1982) ...................................................... 6, 9, 25

*Rice v. Paladin Enter.*, 128 F.3d 233 (4th Cir. 1997) ................................................. 7, 11

*United States v. Rosen*, 445 F. Supp. 2d 602 (E.D. Va. 2006). ........................................ 10, 20

*Screws v. United States*, 325 U.S. 91 (1945) ............................................................. 13, 17

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) ......................................................... 8

*Skilling v. United States*, 561 U.S. 358 (2010) .................................................................... 12, 20

*Snepp v. United States*, 444 U.S. 507 (1980) ......................................................................... 8, 14

*Thompson v. United States*, 2011 WL 2462576 (S.D.N.Y. June 20, 2011) ................................. 27

*United States v. Abu Jihaad*, No. 07 Cr. 57 (MRK) (D. Conn. 2008) ......................................... 22

*United States v. Abu-Jihaad*, 630 F.3d 102 (2d Cir. 2010) ....................................................... 19

*United States v. Aguilar*, 515 U.S. 593 (1995) ............................................................................ 7

*United States v. Augustine*, 742 F.3d 1258 (10th Cir. 2014) ..................................................... 4, 5

*United States v. Boyce*, 594 F.2d 1246 (9th Cir. 1979) .............................................................. 18

*United States v. Calimlim*, 538 F.3d 706 (7th Cir. 2008) ........................................................... 17

*United States v. Chappell*, 691 F.3d 388 (4th Cir. 2012) ...................................................... 10, 15

*United States v. Curcio*, 712 F.2d 1532 (2d Cir. 1983) ............................................................. 13

*United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304 (1936) ............................................. 16

*United States v. Drake*, 818 F. Supp. 2d 909 (D. Md. 2011) ............................................ 10, 15, 19

*United States v. Forrester*, 60 F.3d 52 (2d Cir. 1995) .................................................................. 4

*United States v. Girard*, 601 F.2d 69 (2d Cir. 1979) ............................................................. 25, 26

*United States v. Hale,* No. 19 Cr. 59 (LO) (E.D. Va. Nov. 27, 2019) ......................................... 19

*United States v. Heine*, 151 F.2d 813 (2d Cir. 1945) (L. Hand, J.) ....................................... 19, 21

*United States v. Hitselberger*, 991 F. Supp. 2d 101 (D.D.C. 2013) ...................................... 16, 19

*United States v. Howard*, 998 F.2d 42 (2d Cir. 1993) ............................................................... 4, 5

*United States v. Jones*, 677 F. Supp. 238 (S.D.N.Y. 1988) ........................................................ 25

*United States v. Kim*, 808 F. Supp. 2d 44 (D.D.C. 2011) .......................................................... 9, 19

*United States v. Kiriakou*, 2012 WL 3263854 (E.D. Va. Aug. 8, 2012) .......................... 19, 20, 23

*United States v. Kirsh*, 54 F.3d 1062 (2d Cir. 1995) ................................................................. 26

*United States v. Lambert*, 446 F. Supp. 890 (S.D.N.Y. 1978) ................................................... 26

*United States v. Lanier*, 520 U.S. 259 (1997) ........................................................................... 13

*United States v. Marchetti*, 466 F.2d 1309 (4th Cir. 1972) ....................................................... 15

*United States v. McAusland*, 979 F.2d 970 (4th Cir. 1992) ....................................................... 25

*United States v. Morison*, 844 F.2d 1057 (4th Cir. 1988) ................................................... passim

*United States v. Morris*, 917 F.3d 818 (4th Cir. 2019) ............................................................. 27

*United States v. Onyekaba*, 2011 WL 7473475 (N.D. Ga.2011) ................................................ 26

iii

*United States v. Reid*, 2014 WL 1338811 (W.D.N.Y. Mar. 28, 2014) ........................................ 26

*United States v. Rodgers*, 755 F.2d 533 (7th Cir. 1985) .............................................................. 18

*United States v. Saunders*, 828 F.3d 198 (4th Cir. 2016) ............................................................ 12

*United States v. Snepp*, 897 F.2d 138 n.2 (4th Cir. 1990) ........................................................... 23

*United States v. Sterling*, No. 10 Cr. 485 (LMB) (E.D. Va. 2015) ............................................. 22

*United States v. Stevens*, 559 U.S. 460 (2010) ............................................................................. 7

*United States v. Tagg*, 886 F.3d 579 (6th Cir. 2018) ................................................................... 10

*United States v. Truong Dinh Hung*, 629 F.2d 908 (4th Cir. 1980) ....................................... 10, 18

*United States v. Valencia*, 394 F.3d 352 (5th Cir. 2004) ............................................................ 17

*United States v. Walden*, 625 F.3d 961 (6th Cir. 2010) ................................................................. 4

*United States v. Williams*, 553 U.S. 285 (2008) .................................................................. passim

*United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003) .......................................................... 2, 3, 4, 5

*Virginia v. Hicks*, 539 U.S. 113 (2003) .......................................................................................... 9

*Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562 (1977) ..................................................... 8

*Zemel v. Rusk*, 381 U.S. 1 (1965) ............................................................................................. 9, 15

## STATUTES

18 U.S.C. § 793 ..................................................................................................................... passim

18 U.S.C. § 641 ..................................................................................................................... passim

## RULES

Fed. R. Crim. P. 12 .................................................................................................................. 3, 4, 5

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to defendant Joshua Adam Schulte's motion for leave to file an untimely motion to dismiss Counts One, Two, Three, and Four, which charge violations of 18 U.S.C. § 793, and Count Six, which charges a violation of 18 U.S.C. § 641, of the second superseding indictment, S2 17 Cr. 548 (PAC) (the "Indictment" or "Ind."). For the reasons set forth below, the motion should be denied.

As the defendant's acknowledges, the Court set the deadline for the filing of pretrial motions, with the consent of defense counsel, as June 17, 2019, which was later extended to July 1, 2019. (Dkt. Entry for Apr. 10, 2019; Dkt. 104).[1] Nevertheless, the defendant filed the instant motion on November 5, 2019—over a year after the Indictment was filed, four and a half months after the motions deadline, and after the Court had already resolved the motions the defendant did in fact file in a timely fashion.[2] The defendant offers no meritorious basis for his failure to file the instant motion to dismiss in a timely fashion, relying solely on the claimed inadvertence of his attorneys in neglecting to recognize the claims set forth in his motion. Even setting aside the dubious proposition that Schulte's attorneys would have simply overlooked issues that they now portray as ones of enormous constitutional import, this alleged oversight is also no basis for an

---

[1] The defendant erroneously identifies the latter date as July 7, 2019. *Compare* Mot. ¶ 3, *with* Dkt. 104.

[2] Defense counsel filed a motion to suppress evidence related to the defendant's incarceration at the MCC and a motion to sever Counts Twelve through Fifteen on June 18, 2019. Although these motions were untimely, the Government did not object, and consented to defense counsel's request to file additional motions by July 1, 2019, which the Court granted. (Dkt. 104). Defense counsel ultimately filed an additional motion to suppress on July 3, 2019. The Government consented to the defendant's motion for severance, and the Court denied the defendant's motions to suppress in orders dated October 18 and October 31, 2019 (Dkt. 159, 168).

untimely filing.   The Second Circuit has squarely held that attorney inadvertence does not constitute good cause for an untimely filing under Federal Rule of Criminal Procedure 12, *United States v. Yousef*, 327 F.3d 56, 125 (2d Cir. 2003), and so binding precedent forecloses consideration of his claims.

Regardless, Schulte's motion fails on the merits.   Every single court—including the Supreme Court—to consider the constitutional challenges to 18 U.S.C. §§ 793 and 641 raised in the defendant's motion has rejected them.   *See infra* pp. 18-20 (collecting cases).   The defendant attempts to sidestep this clear precedent by warning of potential prosecutions of the media for doing nothing more than attempting to inform the public.   Schulte's argument boils down to the contention that because classified national defense information can be newsworthy, it cannot be criminal to steal it and disclose it, because sometimes the recipients of those disclosures will be reporters.   But that is not what this case is about.   The defendant is being prosecuted for abusing the trust of the Central Intelligence Agency ("CIA"), where he worked on some of the nation's most sensitive cyber-intelligence tools, by stealing the very same sensitive classified national defense information that he and his colleagues worked on (the "Classified Information"), and delivering that information to the organization WikiLeaks so it would be disclosed to the world. He did so, with the intent or reason to believe that the Classified Information would be used to the injury of the United States or to the advantage of a foreign nation, out of spite for perceived slights from co-workers and managers.   The Espionage Act and the statute criminalizing theft of government property plainly reach this conduct, and they do so in a way that does not infringe on the First Amendment.

2

Finally, because Schulte's motion to dismiss is without merit, his suggestion that his counsel was ineffective is also not a basis for relief.  It is black-letter law that counsel cannot be ineffective for failing to raise a meritless argument.  Given that every court to have considered the issue has rejected the very arguments Schulte raises here, his attorneys were not ineffective for failing to bring a meritless motion earlier.  Schulte's motion should be denied.

## ARGUMENT[3]

### I.   THE DEFENDANT HAS NOT ESTABLISHED GOOD CAUSE FOR HIS UNTIMELY FILING

#### A.   Applicable Law

Federal Rule of Criminal Procedure 12(b)(3)(B)(v) requires a defendant to make a motion to dismiss an indictment for "failure to state an offense" "by pretrial motion."  *See also Al Bahlul v. United States*, 767 F.3d 1, 79 (D.C. Cir. 2014) ("It is settled that a claim that the indictment fails to state an offense under Rule 12(b)(3)(B) includes a claim that the statute creating the offense is unconstitutional.").  Where, as here, "a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely" and waived absent a showing of "good cause."  Fed. R. Crim. P. 12(c)(3); *see also Yousef*, 327 F.3d at 125 (finding waiver where the defendant had "ample opportunity to raise and develop" a suppression motion in the district court, but "has not provided, much less established, any reasonable excuse for his failure to [do] so").  "[A] district court may grant relief from the waiver upon a showing of: (1) cause for the defendant's non-compliance, and (2) actual prejudice arising from the waiver."  *United States v. Howard*, 998 F.2d 42, 52 (2d Cir.

---

[3] Background on the defendant's conduct that gave rise to the charges in the Indictment is described in detail in the Government's Motions *in Limine*, Dkt. 195, at pages 4 through 21, and is incorporated by reference.

1993) (internal citation omitted); *see also United States v. Walden*, 625 F.3d 961, 966 (6th Cir. 2010) ("Rule 12 only allows courts to grant relief from the waiver for 'good cause'—not simply in the 'interests of justice.'")

"A strategic decision by counsel not to pursue a claim, inadvertence of one's attorney, and an attorney's failure to timely consult with his client are all insufficient to establish 'cause'" under Rule 12. *Yousef*, 327 F.3d at 125. The analysis does not differ based on which of these reasons purports to explain why a motion was not timely filed: "[I]t is irrelevant whether counsel's failure . . . is characterized either as a matter of sheer inadvertence or as one of professional judgment that a motion on such grounds would have been unsuccessful, because neither is sufficient to constitute 'cause' within the meaning of Rule 12." *Indiviglio v. United States*, 612 F.2d 624, 631 (2d Cir. 1979); *see also United States v. Forrester*, 60 F.3d 52, 59 (2d Cir. 1995) ("Inadvertence by counsel, however, does not constitute cause."); *United States v. Augustine*, 742 F.3d 1258, 1266 (10th Cir. 2014) ("[W]e expressly hold that counsel's inadvertent failure to raise a suppression argument before the district court does not in itself constitute good cause warranting relief from a Rule 12(e) waiver.").

The Second Circuit's binding rule that attorney inadvertence does not constitute "good cause" under Rule 12 comports with the purposes of the rule. "[J]udicial efficiency is impaired if such deadlines are ignored with impunity." *R.C.M. Executive Gallery Corp. v. Rols Capital Co.*, 1996 WL 30457, *2 (S.D.N.Y. 1996). "[I]f good cause warranting relief from waiver existed every time a defendant's attorney inadvertently failed to raise a[n] . . . argument," it would "expand[] the good-cause exception such that it swallows the waiver rule articulated in Fed. R. Crim. P. 12(e)." *Augustine*, 742 F.3d at 1266; *see also Carnrite v. Granada Hospital Group, Inc.*, 175 F.R.D. 439,

4

448 (W.D.N.Y. 1997) ("Strict enforcement of the good cause requirement . . . may seem like unnecessarily strong medicine. But if the courts do not take seriously their own scheduling orders who will?").

### B.   Discussion

There is no question that the instant motion is untimely.  Schulte's only articulated basis for a finding of "good cause" to excuse that untimeliness is that counsel "simply and inexcusably overlooked" the possibility of a motion to dismiss on constitutional grounds.  (Dkt. 169-1, at ¶ 5).  If true, this is precisely the sort of "inadvertence" that the Second Circuit has explicitly held cannot constitute "good cause" under Rule 12.  *Yousef*, 327 F.3d at 125.  Indeed, Schulte himself acknowledges as much.  (Dkt. 169-1, at ¶ 5  n.1).  Despite this binding precedent on point, Schulte points to cases from the Fifth and Sixth Circuits appearing to hold to the contrary.  These non-binding authorities contain unreasoned conclusions that are unpersuasive.  As the Tenth Circuit noted in *Augustine*, 742 F.3d at 1266, if an attorney's inadvertence constituted "good cause," Rule 12(c)(3) would be a dead letter, and the Court's deadlines would be capable of evasion at will by any attorney's claim that he simply did not think of the motion until well past the deadline.  Such is precisely the nature of Schulte's attorneys' claim here, and it is one the Second Circuit has explicitly rejected.  Accordingly, the Court must reject Schulte's motion.

## II.   THE DEFENDANT IS NOT PREJUDICED BECAUSE HIS MOTION IS SUBSTANTIVELY MERITLESS

Even if the defendant could show good cause for his untimely filing, the Court must also determine whether the defendant would be prejudiced by the Court's refusal to consider it.  *See Howard*, 998 F.2d at 52 (court may only "grant relief from the waiver upon a showing of . . . actual

prejudice arising from the waiver").  As set forth below, Schulte's proposed motion is meritless.[4] Not only has applicable precedent and persuasive authority conclusively rejected many of his arguments, his remaining contentions are little more than academic musings—and he relies only on similar scholarly cogitations for support.  Because his motion, if considered, should and would be denied on the merits, he cannot show prejudice from the Court's enforcement of the "[c]onsequences" set forth in Rule 12(c)(3).

### A.  Applicable Law

#### 1.  Overbreadth

Recognizing the importance of protecting the vital interests in free speech and a free press guaranteed by the First Amendment, the Supreme Court has developed the doctrine of "overbreadth" to ensure protected speech is not chilled.  The overbreadth doctrine permits a court to declare that "a statute is facially invalid if it prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008).  Unlike void-for-vagueness challenges, *see infra* Part II(A)(2), the First Amendment overbreadth doctrine "is one of the few exceptions to" the principle that "a person to whom application of a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court."  *New York v. Ferber*, 458 U.S. 747, 767-68 (1982).

While courts are rightly concerned with statutes that are so overbroad as potentially to limit *protected* speech, courts have nevertheless recognized that speech does not merely qualify as protected just because it is speech.  "Speech integral to criminal conduct" is one of the "few limited

---

[4] If the Court does permit the untimely filing, the defendant's motion should also be denied on the merits for the reasons set forth in this Part.

areas" in which First Amendment jurisprudence "historic[ally] and traditional[ly]" has "permitted restrictions upon the content of speech." *United States v. Stevens*, 559 U.S. 460, 468 (2010). And the Supreme Court has long rejected the notion that the First Amendment immunizes such speech. *See Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949) ("But it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed."); *Frohwerk v. United States*, 249 U.S. 204, 206 (1919) ("[T]he First Amendment while prohibiting legislation against free speech as such cannot have been, and obviously was not, intended to give immunity for every possible use of language."); *Rice v. Paladin Enter.*, 128 F.3d 233, 244 (4th Cir. 1997) ("Were the First Amendment to bar or to limit government regulation of . . . speech brigaded with action, the government would be powerless to protect the public from countless of even the most pernicious criminal acts and civil wrongs."); *accord Haig v. Agee*, 453 U.S. 280, 308-09 (1981) (holding that defendant's "repeated disclosures of intelligence operations and names of intelligence personnel" are "clearly not protected by the Constitution").

As the *en banc* D.C. Circuit has thus observed, "[t]here are many federal provisions that forbid individuals from disclosing information they have lawfully obtained," including § 793, and "[t]he validity of these provisions has long been assumed" based on the above-described bedrock First Amendment principles. *Boehner v. McDermott*, 484 F.3d 573, 578 (D.C. Cir. 2007). The Supreme Court has repeatedly sustained civil liability and criminal penalties on the disclosure of information, even if the individual who unlawfully disclosed the information obtained it lawfully. *See, e.g.*, *United States v. Aguilar*, 515 U.S. 593, 606 (1995) (First Amendment not a bar to

conviction of federal judge under 18 U.S.C. § 2232(c) for disclosing information about wiretap he had learned from federal judge who had authorized wiretap); *Cohen v. Cowles Media Co.*, 501 U.S. 663, 670-71 (1991) (First Amendment not a defense to breach of contract brought by individual who provided information to newspaper under promise of confidentiality but whose identity was divulged by newspaper); *Snepp v. United States*, 444 U.S. 507, 509-10 (1980) (First Amendment not a bar to enforcement of reasonable confidentiality restrictions on former CIA employees); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984) (First Amendment does not permit civil litigants to disseminate, in advance of trial, information acquired through pretrial discovery); *Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 575-79 (1977) (First Amendment does not shield television station from civil liability for filming and broadcasting a performance without permission even though performance occurred in a public setting).  This is particularly true when individuals have a duty not to misappropriate that information.  *See Boehner*, 484 F.3d at 579 ("[T]hose who accept positions of trust involving a duty not to disclose information they lawfully acquire while performing their responsibilities have no First Amendment right to disclose that information."); *United States v. Morison*, 844 F.2d 1057, 1069-70 (4th Cir. 1988) (rejecting constitutional challenges to Section 793 and observing that it is "beyond controversy that a recreant intelligence department employee who had abstracted from the government files secret intelligence information and had wilfully transmitted or given it to one 'not entitled to receive it' . . . is not entitled to invoke the First Amendment as a shield to immunize his act of thievery" because "[t]o permit the thief thus to misuse the Amendment would be to

prostitute the salutary purposes of the First Amendment"); *United States v. Kim*, 808 F. Supp. 2d 44, 57 (D.D.C. 2011) (same).[5]

Even where a criminal statute potentially reaches protected speech, it only runs afoul of the doctrine if its "overbreadth [is] substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292. The Supreme Court has cautioned, however, against the overzealous application of the doctrine:

> The scope of the First Amendment overbreadth doctrine, like most exceptions to established principles, must be carefully tied to the circumstances in which facial invalidation of a statute is truly warranted. Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment, we have recognized that the overbreadth doctrine is strong medicine and have employed it with hesitation, and then only as a last resort.

*Ferber*, 458 U.S. at 769. Accordingly, "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Williams*, 553 U.S. at 303. Rather, the challenging party bears the burden to prove substantial overbreadth "from the text of [the law] and from actual fact." *Virginia v. Hicks*, 539 U.S. 113, 122 (2003) (emphasis added).

---

[5] Similarly, there is a "well-established line of decisions holding that generally applicable laws do not offend the First Amendment simply because their enforcement . . . has incidental effects on [the press's] ability to gather and report the news." *Cohen*, 501 U.S. at 669; *see also Bartnicki v. Vopper*, 532 U.S. 514, 532 n.19 (2001) (observing that the First Amendment does not "confer[] a license on either the reporter or his news sources to violate criminal laws"); *Branzburg v. Hayes*, 408 U.S. 665, 691 (1972) ("Although stealing documents or private wiretapping could provide newsworthy information, neither reporter nor source is immune from conviction for such conduct, whatever the impact on the flow of news."); *Zemel v. Rusk*, 381 U.S. 1, 17 (1965) (observing that the First Amendment "right to speak and publish does not carry with it the unrestrained right to gather information").

In order to assess the "legitimate sweeps" of the charged statutes, it is first necessary to understand what conduct they criminalize. *Williams*, 553 U.S. at 293 ("[I]t is impossible to determine whether a statute reaches too far without first knowing what the statute covers."). The conduct prohibited by the statutes, as charged in this case, criminalize (a) theft and disclosure of our nation's secrets, *i.e.*, national defense information, by those who act willfully or with the requisite purpose and intent or reason to believe, and (b) the theft of government property valued at more than $1,000. These statutes are narrowly and sensibly tailored to punish only those who act with the requisite state of mind. *See Morison*, 844 F.2d at 1073 ("We find no basis in this case for the invalidation of the statutes for either vagueness or overbreadth or for voiding the defendant's conviction under 793(d) and (e)."); *United States v. Truong Dinh Hung*, 629 F.2d 908, 919 (4th Cir. 1980) (upholding § 793(e) against an overbreadth challenge in light of willfulness requirement); *United States v. Drake*, 818 F. Supp. 2d 909, 921 (D. Md. 2011) (adopting *Morison*'s holding that § 793(e) is not overbroad); *United States v. Rosen*, 445 F. Supp. 2d 602, 643 (E.D. Va. 2006) (rejecting overbreadth challenges to §§ 793(d) and (e)).

The presence of a scienter requirement defeats any overbreadth challenge. "[T]he Supreme Court has made it clear that a strict mens rea is a key factor in policing overbreadth and ensuring that [the] 'unwitting' . . . are not punished for protected speech." *United States v. Tagg*, 886 F.3d 579, 589 (6th Cir. 2018); *see also Williams*, 553 U.S. at 294 (declining to find a statute criminalizing the pandering or solicitation of child pornography was overbroad, in part, because it "include[d] a scienter requirement"); *United States v. Chappell*, 691 F.3d 388, 399 (4th Cir. 2012) (finding that a "mens rea requirement [can] . . . properly limit[] the scope of [a] statute and thereby undercut[] [a defendant's] claim of substantial overbreadth"). Here, the statutes' requirements of

purposeful and intentional (Section 793(b)), willful (Section 793(d) and (e)), or knowing (Section 641) conduct place upon the government high scienter burdens.  This is particularly true in the context of a statute like Section 793 that is not a "pure speech" provision but rather "one which [is] in the shadow of the First Amendment." *Morison*, 844 F.2d at 1073.  The First Amendment simply is "no bar to the imposition of civil (or criminal) liability for speech acts which the plaintiff (or the prosecution) can establish were undertaken with specific, if not criminal, intent." *Rice*, 128 F.3d at 248; *see also* T.S. Ellis III, *National Security Trials: A Judge's Perspective*, 99 Va. L. Rev. 1607, 1625 (2013) ("[N]either journalists nor anyone else has a First Amendment right to receive unauthorized disclosures of [national defense information] or to make unauthorized disclosures of [national defense information] to foreign governments, sympathetic journalists, or indeed anyone.").

### 2.  Vagueness

The doctrine that a statute may be so vague as to be unconstitutionally void is a component of the Fifth Amendment right to due process.  *Williams*, 553 U.S. at 304.  A statute is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id.*

In challenging a statute on vagueness grounds, a defendant is limited to an as-applied challenge—*i.e.*, an assertion that a statute is impermissibly vague as applied to his conduct—if he has engaged in "some conduct that is clearly proscribed" by the statute at issue. *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982).  The "shadow of the First Amendment," *Morison*, 844 F.2d at 1073, does not change this requirement that vagueness

challenges be made "as applied" to the particular defendant.  As the Supreme Court has cautioned, it impermissibly renders "the doctrines [of overbreadth and vagueness] . . . substantially redundant" to consider a vagueness challenge by reference to whether the law could apply to a substantial amount of protected expression.  *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010).  Accordingly, the Supreme Court has stated:

> [T]he rule that "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others" . . . makes no exception for conduct in the form of speech. Thus, even to the extent a heightened vagueness standard applies, a plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim under the Due Process Clause of the Fifth Amendment for lack of notice. And he certainly cannot do so based on the speech of others. Such a plaintiff may have a valid overbreadth claim under the First Amendment, but our precedents make clear that a Fifth Amendment vagueness challenge does not turn on whether a law applies to a substantial amount of protected expression.

*Id.* at 20 (quoting *Hoffman Estates*, 455 U.S. at 495) (internal citations omitted).

In analyzing a vagueness challenge, courts must not expect statutes to provide "[p]erfect clarity and precise guidance."  *Williams*, 553 U.S. at 304; *United States v. Saunders*, 828 F.3d 198, 207 (4th Cir. 2016) ("[A] statute need not spell out every possible factual scenario with 'celestial precision' to avoid being struck down on vagueness grounds.").  This is because, "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972).  Close cases are to be "addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt."  *Williams*, 553 U.S. at 306.

The law requires courts "to construe, not condemn, Congress' enactments" whenever possible.  *Skilling v. United States*, 561 U.S. 358, 403 (2010).  If an appropriate limitation can

confine a statute's scope to plainly prohibited conduct, it will not be condemned as vague.  *See id.*
at 405 ("It has long been our practice, however, before striking a federal statute as impermissibly
vague, to consider whether the prescription is amenable to a limiting construction.").  Indeed,
where a statute has previously been construed to be amenable to such a construction, the defendant
cannot claim unconstitutional vagueness simply because the construction is derived from
precedent.  Because "[t]he life of the law has not been logic; it has been experience," Oliver
Wendell Holmes, *The Common Law*, 1 (1881), fair notice of a criminal statute exists where "the
accused is charged with violating a right which has been made specific either by the express terms
of the Constitution or laws of the United States *or by decisions interpreting them*."  *United States
v. Lanier*, 520 U.S. 259, 267 (1997) (emphasis added).

As with an overbreadth challenge, a statute's scienter requirement precludes a finding of
vagueness.  "The requirement that the act must be willful or purposeful . . . relieve[s] the statute
of the objection that it punishes without warning an offense of which the accused was unaware."
*Screws v. United States*, 325 U.S. 91, 102 (1945); *see also United States v. Curcio*, 712 F.2d 1532,
1543 (2d Cir. 1983) (noting established doctrine that "scienter argument may save a statute which
might otherwise have to be condemned for vagueness").

### B.  Discussion

#### 1.  Section 793 Is Neither Overbroad Nor Vague

The provisions of Section 793 plainly have a highly important legitimate sweep that is
tailored to protect one of the highest interests of the United States.  "It is obvious and unarguable
that no governmental interest is more compelling than the security of the Nation."  *Haig*, 453 U.S.
at 307 (internal quotation marks omitted).  Accordingly, "[t]he Government has a compelling

interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service," *Snepp*, 444 U.S. at 509, n.3, and the Supreme Court has expressly recognized that "[m]easures to protect the secrecy of our Government's foreign intelligence operations plainly serve these interests." *Haig*, 453 U.S. at 307.

In furtherance of these not only legitimate, but indeed critical, interests, the provisions of Section 793 charged in this case focus specifically on illicit activity that is harmful to the national security of the United States, and which a defendant undertakes with a culpable mental state. Section 793(b) prohibits copying, taking, making, or obtaining (or attempting to do so) certain types of materials "connected with the national defense," and only when the defendant did so with "the purpose of obtaining information respecting the national defense with intent or reason to believe that the information is to be used to the injury of the United States, or to the advantage of any foreign nation." 18 U.S.C. §§ 793(a), (b). Sections 793(d) and (e) require the Government to prove that a defendant "willfully" retained or disclosed to an unauthorized recipient national defense information. Where, as here, the defendant is charged with the unauthorized disclosure of intangible "information relating to the national defense"—rather than documents or other materials relating to the national defense—the Government must further prove that the defendant acted with "reason to believe [the information] could be used to the injury of the United States [or] to the advantage of a foreign nation." Ind. ¶¶ 2-4; 18 U.S.C. §§ 793(d), (e).

Here, the defendant does not claim that his own First Amendment rights are violated, but rather alleges only that enforcement of the Espionage Act would have "incidental effects on [the press's] ability to gather and report the news." *Cohen*, 501 U.S. at 669. When compared with the

plainly justified legitimate sweep of these statutes, however, the defendant has failed to carry his burden of proving there are a substantial number of unconstitutional applications of the statutes. Schulte provides no "actual fact[s]" in support of his overbreadth arguments, merely hypotheticals in a bulleted, underanalyzed list, which is fatal to his claim. *Cf. Chappell*, 691 F.3d at 396 ("The statute's legitimate sweep is considerable, and it is difficult to show a 'substantial' number of unconstitutional applications when appellant does not point to even one, at least not to one that actually took place."). Even if his examples were better developed, they do not suffice to show overbreadth. The "mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984).

The defendant's claim that the prohibition on the theft and transmission of classified information limits the ability of the press to report on newsworthy information simply misses the point. The First Amendment is not a license for government employees entrusted with national defense information—and who are trained in the importance of keeping such information closely held, the impact of unauthorized disclosure of such information on national security, and the legal consequences of violating their duty to protect such information—to break the law in the interest of breaking the news. The First Amendment "right to speak and publish does not carry with it the unrestrained right to gather information." *Zemel*, 381 U.S. at 17. Moreover, the charged statutes do not curtail the First Amendment rights of people, like the defendant, who have been granted access to classified information. Such individuals still can publically criticize the government or report allegations of waste, fraud, and abuse. *See United States v. Marchetti*, 466 F.2d 1309, 1317 (4th Cir. 1972); *Drake*, 818 F. Supp. 2d at 920. They just cannot disclose classified documents or

information (which they have sworn not to disclose as a condition of gaining access to it) in the process of exercising those rights, which is a reasonable limitation given the nation's critical interest in protecting information related to our national defense.  S*ee, e.g.*, *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 320 (1936) ("Secrecy in respect of information gathered by [agents of the Government] may be highly necessary, and the premature disclosure of it productive of harmful results.").

The defendant's vagueness challenge is no more availing.  "[T]he Supreme Court has found the phrase 'relating to the national defense' to be sufficiently definite 'to apprise the public of prohibited activities' and to be 'consonant with due process.'" *United States v. Hitselberger*, 991 F. Supp. 2d 101, 105-06 (D.D.C. 2013) (quoting *Gorin v. United States*, 312 U.S. 19, 28 (1941)).  "Relating to the national defense" is not an abstruse term—the use of the words 'national defense' has given them, as here employed, a well understood connotation," referring to "a generic concept of broad connotations, referring to the military and naval establishments and the related activities of national preparedness."  *Gorin*, 312 U.S. at 28.  Moreover, the statute's use of the phrase does not confer unnecessarily broad discretion on law enforcement.  "The question of the connection of the information with national defense is a question of fact to be determined by the jury."  *Id.* at 32.  As such, the statutes fall squarely within the Supreme Court's admonition that concerns like those raised by the defendant should be "addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt."  *Williams*, 553 U.S. at 306.

As noted above, the charged provisions of the Espionage Act at issue in this case expressly include scienter requirements—the purpose and intent or reason to believe provisions of Section 793(b) and the willfulness requirement of Section 793(d) and (e)—which are fatal to an

overbreadth or vagueness challenge.  The defendant acknowledges as much, but simply avers that the statutory requirement of willfulness is insufficient, because willfulness is susceptible of different interpretations.  He ignores, however, the broad volume of caselaw holding that precisely such a requirement precludes the challenges he brings.  It has been black-letter law for decades that "[t]he requirement that the act must be willful or purposeful . . . relieve[s] the statute of the objection that it punishes without warning an offense of which the accused was unaware."  *Screws*, 325 U.S. at 102.  And the defendant must have acted "with intent or reason to believe that the information is to be used to the injury of the United States, or to the advantage of any foreign nation," in the case of Section 793(b), and with reason to believe (*i.e.*, knowledge, whether actual or constructive) that it could be so used in the case of Sections 793(d) and (e).  The defendant's objection to the adequacy of these scienter requirements is only that they do not require the defendant to have a malicious motive, merely knowledge that his actions could result in harm to the United States.  But he cites no law whatsoever for the propositions either that the First Amendment requires proof of an evil motive or that the statutorily mandated proof of scienter under the Espionage Act is insufficient to defeat his challenges to vagueness and overbreadth.  On the contrary, a *mens rea* requirement even of "knowing" conduct has routinely been recognized as ample to preclude a challenge to a statute's overbreadth.  *See, e.g.*, *United States v. Calimlim*, 538 F.3d 706, 710 (7th Cir. 2008) (rejecting overbreadth challenge to statute making it a crime "knowingly [to] provide[ ] or obtain[ ] the labor or services of a person" through various forms of threats); *United States v. Valencia*, 394 F.3d 352, 355 (5th Cir. 2004) (rejecting overbreadth challenge to statute making it a crime "knowingly to deliver or cause to be delivered for transmission through the mails or interstate commerce by telegraph, telephone, wireless, or other

17

means of communication false or misleading or knowingly inaccurate reports concerning crop or market information"); *United States v. Rodgers*, 755 F.2d 533, 542 (7th Cir. 1985) (rejecting overbreadth challenge to statute making it a crime to "knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of" certain narcotics crimes). Indeed, in the obscenity context—an area frequently the subject of overbreadth litigation—the Supreme Court has long rejected defendants' efforts to require a heightened standard of scienter, concluding that "[i]t is constitutionally sufficient that the prosecution show that a defendant had knowledge of the contents of the materials he distributed, and that he knew the character and nature of the materials." *Hamling v. United States*, 418 U.S. 87, 123 (1974). In short, Section 793 is not unconstitutionally vague due to the absence of a malicious-motive requirement. The types of scienter required by the statute are the same as, or greater than, others that have been approved in numerous analogous circumstances, and are sufficient to defeat the defendant's overbreadth and vagueness claims.

Applying these familiar principles, every court to have considered the constitutionality of Section 793's various provisions has rejected the same claims of overbreadth, vagueness, or both that the defendant advances here. *See Morison*, 844 F.2d at 1073 ("[W]e find no basis in this case for the invalidation of the statutes for either vagueness or overbreadth or for voiding the defendant's conviction under 793(d) and (e)."); *Truong Dinh Hung*, 629 F.2d at 918 (rejecting vagueness and overbreadth challenges to Section 793(e)); *United States v. Boyce*, 594 F.2d 1246, 1252 (9th Cir. 1979) ("Boyce's First Amendment attack on sections 793 and 794 as unconstitutionally vague is also foreclosed by [the Supreme Court's holding in] *Gorin*, which held that the predecessor statute to sections 793 and 794, which are indistinguishable for this purpose,

was constitutionally sufficient."); *United States v. Dedeyan*, 584 F.2d 36, 39 (1978) (rejecting vagueness and overbreadth challenges to Section 793(f)); *United States v. Hale,* No. 19 Cr. 59 (LO), Dkt. 97, at 11-14 (E.D. Va. Nov. 27, 2019) ("[B]oth § 793(c) and § 798 survive the defendant's vagueness challenge because each contains a scienter requirement, definite terms, and the defendant had actual notice," and also denying overbreadth challenge); *Hitselberger*, 991 F. Supp. 2d at 106 (rejecting vagueness challenges to Section 793(e)); *United States v. Kiriakou*, 2012 WL 3263854, at *8 (E.D. Va. Aug. 8, 2012) (rejecting vagueness and overbreadth challenges to Sections 793(d) and (e)); *Drake*, 818 F. Supp. 2d at 919 (finding both that "the various terms Defendant has taken issue with in Section 793(e) are not unconstitutionally vague" and citing "the clear precedent in this circuit that Section 793(e) is neither unconstitutionally vague nor overbroad"); *Kim*, 808 F. Supp. 2d at 57 (finding that "[t]he Court is not persuaded that § 793(d) is so vague as to permit arbitrary enforcement" and that the "Defendant's First Amendment challenge lacks merit").

When the Second Circuit has had occasion to consider prosecutions under Section 793, the Court has never questioned the statute's constitutionality, even in the face of claims, such as Schulte's, that certain terms in the statute may not admit easy definition.  *See, e.g.*, *United States v. Abu-Jihaad*, 630 F.3d 102, 135 (2d Cir. 2010) (rejecting sufficiency challenge to element of "national defense information" because "there can be no question that this information related to the national defense"); *United States v. Heine*, 151 F.2d 813, 815 (2d Cir. 1945) (L. Hand, J.) (affirming conviction and concluding that "[t]he section as enacted necessarily implies that there are some kinds of information 'relating to the national defense' which must not be given to a

friendly power, not even to an ally, no matter how innocent, or even commendable, the purpose of the sender may be").

       In rejecting the same arguments the defendant advances here, courts have uniformly noted that limiting instructions can serve to cure any potential overbreadth or vagueness concerns with the Espionage Act.  As the Fourth Circuit explained in *Morison*, the statute

> was reasonably narrowed by the district court in its instructions to confine national defense to matters under the statute which "directly or may reasonably be connected with the defense of the United States," the disclosure of which "would be potentially damaging to the United States or might be useful to an enemy of the United States" and which had been "closely held" by the government and was "not available to the general public." This narrowing of the definition of "national defense" information or material removed any legitimate overbreadth objection to the term.

844 F.2d at 1076; *see also Kiriakou*, 2012 WL 3263854, at \*6 ("Using the analysis articulated in *Rosen*, to satisfy the element of 'information relating to the national defense,' the Government must prove '(i) that the information is closely held by the government and (ii) that the information is the type of information that, if disclosed, could harm the United States.'" (quoting *Rosen*, 445 F. Supp. 2d at 622)).

       The defendant does not attempt to distinguish these cases—nor could he, as they squarely reject his precise arguments.  Instead, he urges this Court to split with every other court to have ever considered the constitutionality of the Espionage Act, based solely on the defendant's assertion that the reliance of these courts on limiting constructions of Section 793 is impermissible because the limitations are "judicially engrafted."  (Mot. at 22).  At the outset, the defendant's contention that a judicial limitation is impermissible has no basis whatsoever.  On the contrary, the Supreme Court has expressly instructed courts to adopt limiting constructions rather than

invalidate statutes on the grounds of vagueness or overbreadth.  *See Skilling*, 561 U.S. at 403.

Moreover, Schulte's claim ignores that these limitations are rooted in the statutory text.  For

example, Section 793(b) imports the intent requirement of 793(a) that the defendant have acted

"with intent or reason to believe that the information is to be used to the injury of the United States,

or to the advantage of any foreign nation."  Similarly, because the defendant in this case is charged

with the transmission of "information," Sections 793(d) and (e) require him to have transmitted

"information the possessor has reason to believe could be used to the injury of the United States

or to the advantage of any foreign nation."  Far from being abstract additions, the requirement that

the Government prove Schulte had reason to believe the information he was disclosing would or

could be damaging to the United States is an element derived plainly from statutory text.

The same statutory language also supports the requirement that the information be "closely

held."  As the Supreme Court recognized, "[w]here there is no occasion for secrecy, as with reports

relating to national defense, published by authority of Congress or the military departments, there

can, of course, in all likelihood be no reasonable intent to give an advantage to a foreign

government."  *Gorin*, 312 U.S. at 28 (emphasis added).  The Second Circuit has also expounded

on this requirement, noting that "the 'advantage' intended by the section" does not apply "when

the information has once been made public, and has thus become available in one way or another

to any foreign government."  *Heine*, 151 F.2d at 817.  In short, the requirement that information

be closely held in order to serve as the basis for a prosecution under Section 793 is also directly

derived from the statutory text and the elements the Government must prove.

The defendant's secondary complaint is that, even with these limitations, the statute

nevertheless still criminalizes the prosecution of the theft and dissemination of a large quantity of

national defense information, and seeks to blame this on the Intelligence Community, asserting

that "intelligence agencies do not release much information to the public," and claiming without

basis that "it is now widely recognized that the government classifies many documents for which

there is no occasion for secrecy." (Mot. at 22-23). This argument is meritless. First, it ignores

the way the requirements work together. It is not enough for the Government to prove that the

information is "closely held," which might be susceptible to the argument Schulte advances that

the Government's decisions about secrecy are not flawless. Rather, as the offenses are charged in

this case, the Government must also prove that the information is directly and reasonably

connected with the national defense. These terms do not require any deference to the executive,

as the defendant suggests—rather well-accepted instructions to the jury on Section 793, which the

Government has proposed here as well, inform the jury that "the mere fact that information is

classified does not automatically mean that the information qualifies as 'national defense

information.' Whether the information is connected with the national defense is a question of fact

that you, the jury, must determine." (Gov't Proposed RTC No. 35, adapted from the charges of

the Hon. Leonie M. Brinkema in *United States v. Sterling*, No. 10 Cr. 485 (LMB) (E.D. Va. 2015)

and the Hon. Mark. R. Kravitz in *United States v. Abu Jihaad*, No. 07 Cr. 57 (MRK) (D. Conn.

2008)). In short, even if Schulte is correct that some information is classified for which there is

no basis for secrecy, the Government must prove more than the fact of classification, but must also

prove the connection of the information to the national defense.

Second, Schulte's argument ignores the simple factual reality that the system of

classification is one way in which the Government treats information as "closely held." Who has

access to what national defense information is controlled through that system, defined by

Executive Orders and relevant regulations, and is relevant factual information to the jury's determination whether the information is closely held.  Here too, the jury should not be instructed that, as a matter of law, classification determines whether information is closely held, but rather that "[i]n determining whether material has been closely held, you may consider whether it has been classified by appropriate authorities and whether it remained classified on the dates pertinent to the Indictment."  *Id.*

The defendant's argument ultimately boils down to a contention that some national defense information that is in fact closely held should not be restricted and that no penalty should be applied to a government employee who, after being entrusted with the nation's secrets, decides that he will steal and disclose that information.  But "perceived failures of the classification system" are irrelevant "to the constitutional analysis." *Kiriakou*, 2012 WL 3263854, at *6.  "Courts must avoid second-guessing the CIA's decision to classify information because they have only a limited knowledge of foreign intelligence matters." *United States v. Snepp*, 897 F.2d 138, 141 n.2 (4th Cir. 1990).  Rather,  "[t]he executive branch's expertise in predicting the potential consequences of intelligence disclosures is particularly important given the sophisticated nature of modern intelligence analysis, in which the significance of one item of information may frequently depend upon knowledge of many other items of information, and what may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context." *El-Masri v. United States*, 479 F.3d 296, 305 (4th Cir. 2007) (citation and quotations omitted).

Finally, although the defendant purports to challenge the vagueness of the statute "as applied to" him, (Mot. at  17), he never actually makes an as-applied challenge.  On the contrary,

he appears to acknowledge that the Espionage Act may constitutionally be applied to him.  (*See id.* at 19 ("Even if Mr. Schulte, as a government employee entrusted with sensitive information, had fair notice that his own alleged conduct was prohibited, the statute is still so vague and standardless that it authorizes—and may even encourage—arbitrary and discriminatory enforcement.")).  This alone is fatal to his claim.  As the Supreme Court has made clear, even in the First Amendment context, "a plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim under the Due Process Clause of the Fifth Amendment for lack of notice.  And he certainly cannot do so based on the speech of others."  *Holder*, 561 U.S. at 20.  The defendant in this case was a CIA officer entrusted not only with the nation's secrets, but also with derivative authority to classify information to determine what would be kept secret.  He was a developer of cyber-tools who not only worked on his own projects, but also served as a systems administrator for the repository of some of the CIA's most sensitive computer code.  Despite all of his sensitive intelligence work, he instead betrayed the oath he took, stole the products of his colleagues' labor, and sent it to WikiLeaks knowing not only that it would be published, but also that by publishing it, the largest trove of national security information ever leaked would become known to our adversaries.  Under these circumstances, it is hardly surprising that the defendant does little more than mouth the words "as-applied," as even the scantest scrutiny of the claim that the Espionage Act is unconstitutional as applied to him on these facts reveals that it is simply frivolous.

In sum, the defendant has not made a sufficient showing either that provisions of Section 793 at issue reach a substantial amount of constitutionally protected activity or that they are impermissibly vague.  If there are applications of the charged statutes that infringe upon First

Amendment rights, then they can be remedied through the appropriate limiting instructions that the Government has proposed. But, the legitimate reach of the statutes "dwarfs its arguably impermissible applications," and the number of hypothetical inappropriate applications amount to, at most, no more than "a tiny fraction of the [instances] within the statute's reach." *Ferber*, 458 U.S. at 773. No court has ever agreed with the arguments Schulte advances, and this Court should join every other court to consider the question in rejecting the defendant's challenge.

### 2. Section 641 Is Neither Overbroad Nor Vague

Schulte raises similar overbreadth and vagueness challenges to Section 641, focusing on the provision that criminalizes the conversion of any "thing of value of the United States," which has been construed by courts to cover the disclosure of Government information. This argument is without merit.

The Second Circuit and every other court to have considered the issue has determined that Section 641 provides the requisite notice and clarity where the disclosure at issue was affirmatively prohibited by statute, regulation, policy, or longstanding agency practice. *See United States v. Girard*, 601 F.2d 69, 71 (2d Cir. 1979) ("The District Judge also rejected appellants' constitutional challenge to section 641 based upon alleged vagueness and overbreadth, and again we agree with his ruling."); *United States v. McAusland*, 979 F.2d 970, 973-74 (4th Cir. 1992) (citing published regulations prohibiting disclosure of the subject information and "legends restricting disclosure" on some of the documents that were disclosed); *United States v. Jones*, 677 F. Supp. 238, 240 (S.D.N.Y. 1988) ("Given the government's long standing practice of maintaining the confidentiality of information relevant to on-going criminal investigations, and given the government's obvious interest in maintaining such confidentiality, the defendant could reasonably

know the proscribed nature of his alleged actions."). As these courts have recognized, restricting disclosure of Government information has First Amendment implications. *See, e.g.*, *id.*; *United States v. Lambert*, 446 F. Supp. 890, 898-900 (S.D.N.Y. 1978). But that does not prevent regulation of such disclosures, which is obviously necessary to promote and safeguard government missions and interests—including protecting national security. Section 641 thus has a "plainly legitimate sweep" as applied to government information, *Girard*, 601 F.2d at 72, and the requirement of a valid, clear prohibition on the disclosure at issue disposes of any First Amendment challenge. Accordingly, Schulte's challenge to Section 641 fails.

## III.   SCHULTE'S COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO TIMELY FILE THE MOTION

The defendant attempts to evade the requirement of "good cause" under Rule 12(c)(3) by suggesting that his attorneys may have been ineffective in failing to file the proposed motion to dismiss. (*See* Dkt. 149-1 n.1).[6] Neither Schulte nor his attorneys have explicitly contended that their performance was "deficient"—they have merely raised the specter of a collateral attack based on their failure to file the instant motion, apparently hoping that the mere prospect of future litigation will encourage the Court to ignore binding precedent prohibiting consideration of his belated filing. (*See* Dkt. 169-1 ¶ 7). Because Schulte's motion is unsupported by any precedent and substantively meritless, *see supra* Part II, however, his counsel was not ineffective for failing

---

[6] Not only is Schulte's claim of ineffectiveness meritless, it is also procedurally improper. *See, e.g.*, *United States v. Reid*, 2014 WL 1338811, at *3 (W.D.N.Y. Mar. 28, 2014) ("[I]neffective assistance claims raised for the purpose of showing 'good cause' under Rule 12(e) are not ripe for review and are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255 so that the parties can develop an adequate record on the issue." (quoting *United States v. Onyekaba*, 2011 WL 7473475, *4 n. 8 (N.D. Ga.2011), *adopted* 2012 WL 763115 (N.D. Ga.2012) (citing cases), *aff'd*, 567 F. App'x 708 (11th Cir. 2014)).

to timely file the motion.  *See United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) ("[T]he failure to make a meritless argument does not rise to the level of ineffective assistance."); *Jameson v. Coughlin*, 22 F.3d 427, 429 (2d Cir. 1994) (holding counsel not ineffective for failing to raise an argument when "[a]t that time, all United States Courts of Appeals who had considered the issue had rejected the argument"); *Alfano v. United States*, 555 F.2d 1128, 1131 (2d Cir. 1977) ("[T]he failure of counsel to raise [an] issue" was not constitutionally ineffective where it presented a question "of first impression in our circuit [that] had not been decided," and a panel in another circuit "had reached a contrary result."); *Thompson v. United States*, 2011 WL 2462576, at *3 (S.D.N.Y. June 20, 2011) ("Counsel is not constitutionally ineffective for failing to . . . present an argument of first impression."); *Cook v. United States*, 2006 WL 3333068, at *14 (S.D.N.Y. Nov. 15, 2006) (failure to file a motion constitutes ineffectiveness only when the argument "was so obviously meritorious that the failure to raise it fell below an objective standard of reasonableness"); *see also United States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019) ("A lawyer does not perform deficiently by failing to raise novel arguments that are unsupported by then-existing precedent."); *Brown v. United States*, 311 F.3d 875, 878 (8th Cir. 2002) ("[C]ounsel's decision not to raise an issue unsupported by then-existing precedent did not constitute ineffective assistance.").

## <u>CONCLUSION</u>

For the foregoing reasons, the Government respectfully submits that the Court should deny

the defendant's motion as both untimely and meritless.

Dated:  New York, New York
        December 20, 2019

                                        Respectfully Submitted,

                                        GEOFFREY S. BERMAN
                                        United States Attorney for the
                                        Southern District of New York

                                By:     _____/s/_____
                                        David W. Denton, Jr.
                                        Sidhardha Kamaraju
                                        Matthew Laroche
                                        Assistant United States Attorneys
                                        212-637-2744/6523/2420

Cc:     Defense Counsel
        (Via ECF)