# Federal Defenders
## OF NEW YORK, INC.

Appeals Bureau
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392
www.federaldefendersny.org

David E. Patton
*Executive Director
and Attorney-in-Chief*

Appeals Bureau
Barry D. Leiwant
*Attorney-in-Charge*

January 2, 2020

**BY ECF (with redaction to protected privileged communications)**
**BY HAND (without redactions)**

Hon. Paul A. Crotty
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *United States v. Schulte*, S2 17 Cr. 548 (PAC)

Dear Judge Crotty:

Following the *Curcio* hearing on December 18, 2019, we again reviewed our ethical responsibilities with respect to our representation of Mr. Schulte. In addition to conducting relevant legal research, we consulted Professor Bruce Green, a former federal prosecutor and currently the Louis Stein Chair at Fordham Law School, where he directs the Louis Stein Center for Law and Ethics.

We have concluded that Sabrina P. Shroff and the Federal Defenders of New York, Inc. (including Assistant Federal Defenders Matthew B. Larsen, Edward S. Zas, and Allegra M. Glashausser), are laboring under an actual conflict of interest and that, under Rule 1.7 of the New York Rules of Professional Conduct,[1] and the relevant case law, we cannot ethically continue

---

[1] Rule 1.7 provides in relevant part that "a lawyer shall not represent a client if a reasonable lawyer would conclude that … there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests."

to represent Mr. Schulte. Accordingly, for this reason and those previously raised, we respectfully ask the Court to reconsider its December 18 ruling denying our request to be relieved as counsel.[2]

### The Actual Conflict of Interest

"A defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel." *United States v. Blau*, 159 F.3d 68, 74 (2d Cir. 1998); *see also Wood v. Georgia*, 450 U.S. 261, 271 (1981) ("Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest."); *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir. 2000); *United States v. Rogers*, 209 F.3d 139, 143 (2d Cir. 2000); *United States v. Levy*, 25 F.3d 146, 152 (2d Cir. 1994).

"An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *United States v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002) (internal quotation marks and citation omitted). "Where an attorney labors under an actual conflict of interest, the public interest 'in ensuring that criminal trials are conducted within the ethical standards of the profession and that the legal proceedings appear fair to all who observe them' trumps a defendant's right to counsel of the defendant's choice and requires disqualification of the attorney." *United States v. Scala*, 432 F. Supp. 2d 403, 405 (S.D.N.Y. 2006) (Kaplan, J.) (quoting *Wheat v. United States*, 486 U.S. 153, 160 (1988)), *aff'd*, 266 F. App'x 41 (2d Cir. 2008). "In other words, the conflict is not waivable by the defendant." *Id.*

Here, the advice given to Mr. Schulte regarding the MCC notebooks (*see* Dkt. Nos. 128, 150, 157, 218, 220) creates an actual conflict of interest. Counsel's advice evidently led Mr. Schulte to believe that what he wrote down in his notebooks had a legitimate purpose relating to the lawyer-client relationship and would be protected from compelled disclosure by the attorney-client or work-product privileges. If this Court determines that the writings are not, in fact, protected by these privileges, counsel's advice was not only legally erroneous, but arguably caused Mr. Schulte to create documents that, according to the government, are evidence of criminality. A disinterested observer could reasonably conclude that providing this advice was incompetent representation or worse—causing a client to engage in criminal conduct. *See* 18 U.S.C. § 2. Thus, the lawyers who gave and countenanced this advice, and their law offices, have a professional and reputational interest (if not a penal interest) in

---

[2] We do not believe the conflict requires the disqualification of appointed CJA co-counsel, James Branden, Esq.

avoiding public and judicial scrutiny of their advice, or, if it is put in issue in judicial proceedings, in defending it, characterizing it as favorably to themselves as possible, and minimizing its significance. *See, e.g., United States v. Fulton*, 5 F.3d 605, 608, 611 (2d Cir. 1993) (when an attorney is alleged to have engaged in wrongful conduct "sufficiently related to the charged crimes" of the defendant, the attorney needs to be concerned not only with the interests of the defendant but also with the attorney's own personal reputation, and more than that, the potential that he himself might be accused of a crime"); *see also id.* at 609 ("It is well-settled in this circuit that an actual conflict of interest exists when an attorney engages in wrongful conduct related to the charge for which the client is on trial.") (citation omitted). Whether the lawyers actually engaged in any misconduct is beside the point. The existence of an actual conflict "does not turn on whether [allegations of attorney wrongdoing] are true or false, or with or without some foundation." *Fulton*, 5 F.3d at 610. "However viewed, the allegations present an actual conflict." *Id.*³

In contrast to his attorneys' interests, Mr. Schulte likely has a strong interest in having the flawed advice not only aired at trial, but emphasized. For example, an independent and disinterested lawyer might seek to offer the legal advice into evidence at trial to support an argument that Mr. Schulte never intended to transmit his prison notebooks publicly, but was only following the advice of his counsel in ███████████████████████████████████████.

Moreover, the lawyers who had a role in providing the legal advice cannot make a disinterested decision whether to seek to offer their advice into evidence, either through Mr. Schulte's testimony or that of his lawyers. Further, if the lawyers were to offer this evidence, the lawyers' self-interest would adversely

---

³ *See also Triana v. United States*, 205 F.3d 36, 42 (2d Cir. 2000) ("It is well-settled that the right to counsel is violated per see where the attorney was implicated in the defendant's crime") (internal quotation marks omitted); *United States v. Levy*, 25 F.3d 146, 156 (2d Cir. 1994) ("Many courts have found an actual conflict of interest when a defendant's lawyer faces possible criminal charges or significant disciplinary consequences as a result of questionable behavior related to his representation of the defendant.") (collecting cases); *United States v. Arrington*, 867 F.2d 122, 129 (2d Cir. 1989) (conflict not waivable where principal government witness would testify that defense counsel obstructively sought to dissuade him from testifying; "counsel has been placed in the position of having to worry about allegations of his own misconduct" and "[w]hat could be more of a conflict than a concern over getting oneself into trouble with criminal law enforcement authorities?") (internal quotation marks omitted).

affect their strategic decisions about how to present the relevant testimony and how to argue its significance in summation.

These concerns are not merely theoretical. With the trial fast approaching, Mr. Schulte needs to decide, *inter alia*, whether to waive the attorney-client privilege with respect to the legal advice he received regarding the MCC notebooks, whether (and how) to present that legal advice at trial, and whether to seek to suppress the notebooks on the ground that the legal advice constituted ineffective assistance of counsel (*see* Dkt. No. 220). Given counsel's conflict of interest, we cannot provide disinterested advice on any of these crucial subjects.

In summary, because counsel's interests and Mr. Schulte's interests diverge, an actual conflict of interest exists. We do not believe the conflict is waivable under the relevant Rules of Professional Conduct and case law. *See, e.g., Schwarz*, 283 F.3d at 81, 96–97 (holding actual conflict to be non-waivable and reversing conviction without requiring a showing of prejudice). And even if this conflict could be waived, Mr. Schulte has already advised *Curcio* counsel and the Court that he does not wish to waive it.

Under these circumstances, we regrettably submit that counsel cannot continue to represent Mr. Schulte. We recognize, of course, that the Court wants this matter to proceed to trial as soon as possible. Our conflict, however, which we first raised (citing the advocate-witness rule) in August 2019, is too serious to ignore. As the Second Circuit has warned, "[t]he dynamics of litigation are far too subtle, the attorney's role in that process is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case." *United States v. Oberoi*, 331 F.3d 44, 51 (2d Cir. 2003) (quoting *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973)). Here, for the reasons we have discussed above and in our prior submissions, the Court should resolve any remaining doubt in favor of disqualification, reconsider its December 18 ruling, and enter an order relieving Ms. Shroff and Federal Defenders as counsel.

Respectfully submitted,

/s/
Edward S. Zas

/s/
Sabrina P. Shroff

cc: All Counsel of Record (by ECF)