*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 6, 2020

<u>Via ECF</u>
The Honorable Paul A. Crotty
United States District Judge
Southern District of New York
United State Courthouse
500 Pearl Street, Courtroom 14C
New York, New York 10007

Re:   *United States* v. *Joshua Adam Schulte*, S2 17 Cr. 548 (PAC)

Dear Judge Crotty:

The Government writes in response to the defense's letter dated January 3, 2020, in which the defense asserts that they should be able to keep secret from the Government and the public information that they have argued entitles the defendant to cause substantial disruption to his trial on significant national security charges, the majority of which have been pending for approximately a year and a half.  They seek to do exactly what the law prohibits: to use the advice of his attorneys as a sword to demand a trial on his terms—first through severance, and now through disqualification—based on purported testimony that the defendant incorrectly claims will exonerate him, and use his privilege as a shield to deny the Government the ability to respond on the facts and the public the right to know why he has not been brought to answer for his crimes. The defendant has already waived his privilege over these communications by seeking affirmative relief from the Court in reliance on his counsel's advice and also giving notice that he intends to rely on that advice at trial.

Generally, "[c]ourts have found waiver by implication when a client testifies concerning portions of the attorney-client communication, . . . when a client places the attorney-client relationship directly at issue, . . . and when a client asserts reliance on an attorney's advice as an element of a claim or defense."  *In re Cty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008); *see id.* (describing the "assertion of an 'advice-of-counsel' defense . . . as a 'quintessential example' of an implied waiver of the privilege").  Critically, where, as here, a defendant intends to rely on the advice of his counsel to defend himself, he is required to give notice of his intention to the Government and to disclose the substance of that purported advice *before trial*.  *See*, *e.g.*, *United States v. Scali*, No. 16 Cr. 466 (NSR), 2018 WL 461441, at *8 (S.D.N.Y. Jan. 18, 2018) (when defendant asserts an advice of counsel defense, "[d]efendant should have made pertinent disclosures during discovery, absent special considerations"); *United States v. Wells Fargo Bank N.A.*, No. 12 Civ. 7527 (JMF), 2015 WL 3999074, at *1 (S.D.N.Y. June 30, 2015) (in civil fraud case, noting "where a party asserting an advice-of-counsel defense is the holder of the relevant privilege, the opposing party need not move to compel; instead, the burden is on the party who intends to rely at trial on a good faith defense to make a full disclosure during discovery and the

The Honorable Paul A. Crotty, U.S.D.J.
January 6, 2020
Page 2

failure to do so constitutes a waiver of that defense") (quotations omitted); *Arista Records LLC v. Lime Grp. LLC*, No. 06 Civ. 5936 (KMW), 2011 WL 1642434, at *2 (S.D.N.Y. Apr. 20, 2011) ("[A] party who intends to rely at trial on the advice of counsel must make a full disclosure during discovery; failure to do so constitutes a waiver of the advice-of-counsel defense.") (citations omitted).

The rationale for requiring waiver and disclosure pretrial is "the notion of fairness." *In re Cty. of Erie*, 546 F.3d at 228. "'Whether fairness requires disclosure has been decided . . . on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted.'" *Id.* (quoting *In re Grand Jury Proceedings*, 219 F.3d 175, 183 (2d Cir. 2000)). Given that the defendant has indicated that he is reserving his right to call Ms. Shroff and Mr. Larsen of the Federal Defenders to testify about advice they purportedly gave him, he has plainly indicated his desire to assert his reliance on their advice to defend himself and fairness requires him to disclose the substance of that advice now. *In re Cty. of Erie*, 546 F.3d at 228 (stating that fairness requires disclosure "when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion"). Moreover, the specific context of this case—the defendant's attempt to use the advice of his counsel to force their disqualification and a significant adjournment—reinforces that fairness dictates disclosure immediately and not at some unspecified time determined by the defense.

The defendant does not challenge that the assertion of an advice-of-counsel defense results in an implied waiver of the attorney-client privilege (*see* Dkt. 232 at 2-3), but claims that, in this case, he should not be required to produce unredacted versions of the Testimony Letters because (i) the Testimony Letters did not assert that the defendant had actually decided to call his attorneys as witnesses yet and the letters were only submitted for the limited purpose of alerting the Court to the alleged conflict issues; and (ii) it would be unfair to require him to disclose the substance of his counsel's testimony to the Government in advance of trial. These arguments are meritless as a matter of law, fact, and logic.

*First*, the defense's arguments regarding the Testimony Letters and their impact on the defendant's privilege are misplaced. The issue is not whether the inclusion of the substance of counsel's anticipated testimony in those letters resulted in a waiver of the defendant's privilege. The issue, rather, is that the defendant's desire to rely on his counsel's advice to defend himself is itself an implied waiver of his privilege. *See In re Cty. of Erie*, 546 F.3d at 228.[1] Thus, the fact that the Testimony Letters were redacted or were submitted *ex parte* initially is entirely irrelevant. Due to the defendant's implied waiver based on the manner in which he plans to use the advice at trial, and because the substance of the advice at issue is relevant to the disposition of pretrial issues before the Court (including but not limited to the withdrawal request), there is no basis to continue to withhold the redacted information in the letters from the Government.

---

[1] Relatedly, the defense spends considerable time arguing that the defendant did not expressly waive his privilege at the *Curcio* Hearing. (*See* Dkt. 232 at 5-6). That argument misses the mark too. The Government is not relying on an express waiver theory. The defendant impliedly waived his privilege by asserting that he may rely on his counsel's testimony at trial in the first place. *See In re Cty. of Erie*, 546 F.3d at 228.

The Honorable Paul A. Crotty, U.S.D.J.
January 6, 2020
Page 3

Moreover, the assertion in the Disqualification Letters that the defendant has not made a final decision as to whether to call Ms. Shroff or Mr. Larsen as witnesses yet, and that, as a result, there is no waiver is equally meritless. (*See* Dkt. 232 at 5-7). The defense is seeking disqualification and other relief based on the advice *right now*, and as a result the Government is entitled to know the advice at issue—*right now*—so that it can fully address the request in the context of these complicated proceedings. Even in the absence of the disqualification motion and related conflict issues, the potential for an advice-of-counsel defense has resulted in an implied waiver and triggered disclosure obligations for Federal Defenders. Despite the fact that a defendant can ultimately change his mind and forgo his counsel's testimony, courts nevertheless require notice of an advice-of-counsel defense and related disclosures even when a party has simply signaled their intention to call counsel as a witness. *See, e.g.*, *Scali*, 2018 WL 461441, at *8 (finding that when defendant stated in pleadings that he "intends" to demonstrate his innocence by showing that he followed counsel's advice triggered defendant's disclosure obligations and collecting cases); *United States v. Hatfield*, No. 06 Cr. 550 (JS), 2010 WL 183522, at *13 (E.D.N.Y. Jan. 8, 2010) (directing defense counsel to disclose both "whether they intend to rely on an advice of counsel defense" and "all documents concerning their intended advice of counsel defense"); *Rubin/Chambers, Dunhill*, 828 F. Supp. 2d at 711 (requiring notification to the Government of advice-of-counsel defense sufficiently before pre-trial conference to permit litigation over disputes). To adopt the defendant's contrary position—that pretrial disclosure is not required until the defendant makes a "final decision" whether or not to rely on the advice of counsel—would eviscerate advice-of-counsel pretrial disclosure requirements because defendants could always state they have not yet made a final decision whether or not to rely on counsel's advice. Such an approach is contrary to principles of fairness adopted by the Second Circuit, *see In re Cty. of Erie*, 546 F.3d at 228, and would be entirely unworkable because the Government would be unable to litigate the admissibility of evidence related to an advice-of-counsel defense until trial had already commenced (a particularly relevant issue here, where the admissibility of the evidence may affect the existence and/or scope of any potential conflict of interest).

In this case, despite defense counsel's attempts to manicure carefully the defendant's responses to the Court during the *Curcio* Hearing, the record is clear that, at this point, the defendant intends to rely on testimony related to legal advice at trial. On multiple occasions, the defense has sought extraordinary relief from this Court based on counsel's anticipated testimony. In the August Testimony Letter, the defense belatedly sought to sever the counts related to the defendant's conduct in prison because, "[t]o defend against the government's allegations, Mr. Schulte *would call* two of his attorneys—Matthew B. Larsen and Sabrina P. Shroff—to present favorable testimony bearing on his state of mind." (*See* Dkt. 128 at 2 (emphasis added)). In the October Testimony Letter, the defense argued that Ms. Shroff's testimony required her disqualification based on, among other things, New York Rule of Professional Conduct, Rule 3.7(a), which applies when an attorney is "likely" to be a witness at a trial involving her client. (*See* Dkt. 150 at 4-5). In the December Testimony Letter, *Curcio* counsel, although asserting that the defendant should not be required to waive his privilege, indicated the defendant wanted the "ability" to call both Ms. Shroff and Mr. Larsen and characterized them as "necessary fact witnesses." (*See* Dkt. 218 at 1-2). Days later, at the *Curcio* Hearing, the Court indicated that it

The Honorable Paul A. Crotty, U.S.D.J.
January 6, 2020
Page 4

believed that the defendant did have to waive his privilege now, but would allow defense counsel to brief the issue.  (*See* 12/18/19 Tr. at 40-41).

The defendant's conduct here is a far cry from the cases upon which he relies to argue there has been no waiver.  In *Erie*, the Second Circuit found that there was no waiver of the privilege because "any legal advice rendered by the [relevant attorneys] is irrelevant to any defense so far raised by Petitioners."  546 F.3d at 229; *see also Perius v. Abbott Lab.*, No. 07 Civ. 1251, 2008 WL 3889942, at *7 (N.D. Ill. Aug. 20, 2008) ("Abbott has not asserted reliance on advice of counsel as a defense or otherwise formally inserted privileged communications as part of the case").  In *Nitinol Medical Technologies, Inc. v. AGA Medical Corp.*, the defendant attempted to revisit its prior assertion of an advice-of-counsel defense in an interrogatory response, which caused the court to direct the defendant to confirm whether it was asserting such a defense within seven days.  *See* 135 F. Supp. 2d 212, 215 (D. Mass Oct. 26, 2000).  In *Fabick Inc. v. FABCO Equipment Inc.*, the plaintiff expressly disclaimed any reliance on an advice-of-counsel defense when the issue was raised.  *See* No. 16 Civ. 172, 2017 WL 4466620, at *2 (W.D. Wisc. Oct. 5, 2017); *see also United States v. Afremov*, No. 06 Cr. 196, 2007 WL 2475972, at *4 (D. Minn. Aug. 27, 2007) (same).  In *Potts v. S-Box, L.L.C.*, the court declined to find an assertion of an advice-of-counsel defense based on a few references to consultation with an attorney during a deposition, as opposed to, as in this case, an avowed desire to call an attorney as a witness at trial.  *See* No. 09 Civ. 35, 2010 WL 4683884, at *2 (D. Conn. Nov. 10, 2010); *see also Fuji Photo Film Co., Ltd. v. Benun*, No. 08 Civ. 1927, 2008 WL 5084572, at *5 (D.N.J. Dec. 1, 2008), *aff'd sub nom. In re Benun*, 328 F. App'x 659 (Fed. Cir. 2009) (advice-of-counsel defense was not asserted based on "glancing references [in a deposition] to the part that attorneys have played in [defendant's] efforts to comply with the law").  In *United States v. Lacour*, the court found that the motion to compel disclosure was "impermissibly vague," that the privilege "ha[d] yet to be formally asserted," and that an advice-of-counsel defense had not been "formally tendered" based on "certain statements" made by defense counsel at pre-trial hearings, not, as here, multiple letters and sworn statements made by the defendant to the Court.  *See* No. 08 Cr. 118, 2008 WL 5191596, at *1 (M.D. Fla. Dec. 10, 2008).

At bottom, the defense's resistance to disclosing the substance of the legal advice at issue is based on the flawed assertion—repeated at other times during this prosecution[2]—that until and unless a defendant finally presents a defense case or theory to the jury, the defendant has no obligation to provide the Government any information about his defense.  "Nothing in the Fifth Amendment privilege entitles a defendant as a matter of constitutional right to await the end of the State's case before announcing the nature of his defense, any more than it entitles him to await the jury's verdict on the State's case-in-chief before deciding whether or not to take the stand himself."  *Williams v. Florida*, 399 U.S. 78, 85 (1970).  That general proposition is particularly true in this

---

[2] As the Court knows, the defendant withheld his notice pursuant to Section 5 of the Classified Information Procedures Act from the Government until well beyond the Court-imposed deadline based on an entirely baseless argument that the notice unconstitutionally required him to disclose his defense theory to the Government before trial, an argument rejected by the Second Circuit more than thirty years ago.  *See United States v. Wilson*, 750 F.2d 7, 9 (2d Cir. 1984) ("We see no constitutional infirmity in the pretrial notification requirements of Section 5.").

The Honorable Paul A. Crotty, U.S.D.J.
January 6, 2020
Page 5

case, where the defendant seeks pretrial relief on the basis of legal advice he seeks to shield from the Government.

*Second*, contrary to the defense's claim, given the defendant's waiver of his privilege, there is nothing unfair about requiring him to disclose the redacted information in the Testimony Letters to the Government prior to trial while he is seeking relief based on the redacted information. Based on the extent of the redactions in the Testimony Letters, the submissions hardly provide a "roadmap" for the defense case. They consist of several lines of text rather than an in-depth discussion of these witnesses' anticipated testimony. The defendant's objection essentially collapses to a complaint about the timing of the disclosure. This objection, however, is without merit. At this point, all that the Court has directed the defendant to provide the Government is the summary descriptions of the substance of this testimony in the Testimony Letters. Thus, unlike in *United States v. Serrano*, No. 16 Cr. 169 (WHP) (S.D.N.Y.), a case upon which the defendant relies, the Court has not ordered (nor has the Government sought) the production of witness statements pursuant to Federal Rule of Criminal Procedure 26.2 or all of the privileged material that may be subject to the waiver. That there may need to be additional litigation regarding the scope of the waiver is yet another reason counseling in favor of requiring disclosure at this point. *See In re Grand Jury Proceedings*, 219 F.3d at 183 n.4 (a "client's offer of his own or the attorney's testimony as to a specific communication to the attorney is a waiver as to all other communications to the attorney on the same matter") (citation and quotation marks omitted). But all that is subject to production at present is the defense's limited summary of the testimony that will, for example, give the Government the opportunity to determine whether it has any objections to the testimony that bear on how to address the conflict issue raised by the defense. Given that trial is four weeks away, there is nothing unfair about giving the Government the chance to evaluate this testimony now.

The defendant's attempt to conjure the specter of constitutional error is similarly unavailing. That argument is based principally on one out-of-district case, *United States v. Wilkerson*, 388 F. Supp. 3d 969 (E.D. Tenn. 2019), that is at odds with this District's precedent and governing constitutional principles. In *Wilkerson*, the Government sought to compel advance notice of any advice-of-counsel defense and production of communications upon which the defendant intended to rely. *See* 388 F. Supp. 3d at 971. Unlike here, the basis for the requested disclosures in *Wilkerson* was limited to the fact that "the Government learn[ed] that some of the Defendants had previously 'met with counsel regarding the scheme' and that some have 'stated to others' that they had 'cleared' the alleged scheme 'through their attorneys.'" *Id.* The court concluded that, based on constitutional principles, the defendant could not be compelled to provide the Government this information before the end of the Government's case-in-chief. *See id.* at 975. Initially, *Wilkerson*'s conclusion is squarely at odds with cases in this District that have imposed such obligations on a defendant seeking to rely on an advice-of-counsel defense.[3] *See, e.g., Scali*, 2018 WL 461441, at *8 (finding that when defendant stated in pleadings that he "intends" to

---

[3] Another case that the defendant cites, *United States v. Espy*, which found that there was no legal authority to require a defendant to give pre-trial disclosure of an advice-of-counsel defense, *see* 96 Cr. 198, 1996 WL 560354, at *1 (E.D. La. Oct. 2, 1996), is similarly in direct contradiction to precedent in this District that does require such notice.

The Honorable Paul A. Crotty, U.S.D.J.
January 6, 2020
Page 6

demonstrate his innocence by showing that he followed counsel's advice triggered defendant's disclosure obligations and collecting cases); *Rubin/Chambers, Dunhill*, 828 F. Supp. 2d at 711 (requiring notification to the Government of advice-of-counsel defense sufficiently before pre-trial conference to permit litigation over disputes). Moreover, defense counsel in *Wilkerson* was not seeking to withdraw from the case based on the advice as part of an effort to impose substantial, dilatory delay in the proceedings.

Equally important, however, *Wilkerson*'s constitutional analysis is flawed for several reasons. First, while *Wilkerson* cites to a dissenting opinion in *Williams*, *see* 388 F. Supp. 3d at 972, the court failed to address (or even mention) the Supreme Court's holding in that case that a defendant had no constitutional right to withhold notice of an anticipated defense, which is precisely the issue here. *See Williams*, 399 U.S. at 85 ("Nothing in the Fifth Amendment privilege entitles a defendant as a matter of constitutional right to await the end of the State's case before announcing the nature of his defense, any more than it entitles him to await the jury's verdict on the State's case-in-chief before deciding whether or not to take the stand himself."). Second, while *Wilkerson* and the defendant are correct that ultimately, the defendant can wait until the Government rests to decide what, if any, defense he wishes to advance to the jury, that does not mean that when he has reason to believe that he may offer a certain defense before trial, he should be free to seek pretrial relief based on the evidence underlying that defense while retaining his ability to ambush the Government at trial. A criminal prosecution is not "a poker game in which players enjoy an absolute right always to conceal their cards until played." *See id*. at 82. Third, while *Wilkerson* correctly notes that constitutional principles of fairness require that the state have reciprocal discovery obligations when a defendant is forced to give pre-trial notice of a defense, *see* 388 F. Supp. 3d at 973, the reason for that requirement is to prevent the Government from compelling disclosure from the defendant and then ambushing the defendant with rebuttal evidence, *see Wardius v. Oregon*, 412 U.S. 470, 475-76 (1973) ("It is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State"). That danger is not present here. In addition to extensive, detailed pretrial disclosures regarding the evidence and the prosecution theory, the Government has also described to trial and *Curcio* counsel the evidence that the Government would rely upon to rebut the defendant's advice-of-counsel claim, and has no objection to detailing these specific exhibits for the defense before trial.[4] Put simply, regardless of the dubious validity of *Wilkerson*'s concerns generally, those issues are inapplicable to this case, where the defendant has declared a much firmer interest in presenting legal advice at trial and is currently seeking pretrial relief related to the advice in question.

*Finally*, the defendant's attempted use of his privilege to shield his counsel's purported advice from the Government is fundamentally unfair to the administration of justice. Since August

---

[4] For example, the Government has described to the defense how, if the defendant offered his counsel's testimony, the Government would likely rely on recorded prison calls in which the defendant criticized defense counsel's advice, including, for example, calls in which the defendant stated that he would "go around" Ms. Shroff to disclose information to the media, despite her objections to this strategy.

2019, the defendant has tried to use his attorneys' purported testimony to secure dramatic relief, including demanding three trials; disqualifying his counsel who have represented him for nearly two years; and delaying trial involving the largest leak of classified information in the history of the Central Intelligence Agency (the "CIA") for months or even a year from the current trial date. If the defendant's strategy works, trial in this case would likely not begin until more than two years after the original national security charges in this case were filed, more than three and a half years from the WikiLeaks disclosure that began this investigation, and more than four years from when the Government alleges the defendant stole and transmitted to WikiLeaks the national defense information at issue in this case.

The defendant has claimed that he is willing to remain in prison for this extended period of time—even though he is, according to him, innocent of these charges and the victim of a campaign to frame him conducted by the U.S. Attorney's Office, the Federal Bureau of Investigation, and the CIA—because Ms. Shroff and Mr. Larsen are "necessary" witnesses who would provide testimony that would help to exonerate him. The defendant has further stated, under oath, that he knows that relying on these witnesses' testimony would lead to a potentially broad waiver of his attorney-client privilege. But despite acquiescing to even longer detention under special administrative measures, regardless of his purported innocence and the waiver of his privilege, all for the opportunity to present Ms. Shroff's and Mr. Larsen's testimony at trial, the defendant still maintains that his decision as to whether he will call either of these attorneys as witnesses remains so amorphous and theoretical that he should not be required to provide the Government even the most meager information about the substance of this purported testimony just weeks before the current trial date. The defendant's obstinate refusal to even describe the testimony to the Government suggests that his desire is less about proving his innocence through this evidence, and more about securing the trial adjournment that he has otherwise been unable to obtain. The Government respectfully submits that the Court should put an end to the defendant's gamesmanship with respect to this issue once and for all. *See United States v. Blizerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes.") (citation omitted).

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: /s/
David W. Denton, Jr.
Sidhardha Kamaraju
Matthew Laroche
Assistant United States Attorneys
Tel.: 212-637-2744 / 6523 / 2420

Cc: Defense Counsel (via ECF)