**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 9, 2020

Via ECF
The Honorable Paul A. Crotty
United States District Judge
Southern District of New York
United State Courthouse
500 Pearl Street, Courtroom 14C
New York, New York 10007

>   Re:   *United States v. Joshua Adam Schulte*, S2 17 Cr. 548 (PAC)

Dear Judge Crotty:

The Government writes in response to defense counsel's letter, dated January 2, 2020 (the "January 2 Disqualification Letter"), the defendant's letter, dated January 2, 2020 (the "Schulte Letter"), and the letter submitted by James Branden, Esq. in response to the Schulte Letter on January 7, 2020 (the "Branden Letter"). These submissions are the defense's latest effort to delay a trial on significant national security charges, the majority of which have been pending for approximately a year and a half, based on purported testimony that the defendant incorrectly claims will exonerate him but which he nevertheless refuses to disclose to the Government and the public. Having failed to convince the Court—which had the benefit of examining and questioning defense counsel and the defendant about the purported testimony—that the proper course is to disqualify Sabrina Shroff, Esq. and the Federal Defenders of New York (the "Federal Defenders"), the defense now raises (for the first time) the specter of an actual conflict, going so far as to claim that Ms. Shroff and Matthew Larsen, Esq. from Federal Defenders may have aided and abetted the defendant's criminal conduct. Meanwhile, in the Schulte and Branden Letters, the defense again asserts the already rejected claim that they cannot be sufficiently prepared by the third trial date of February 3, 2020, adding now the gloss that the defendant claims that he has lost faith in Mr. Branden.

While the Government still does not know the precise testimony that gave rise initially to the purported conflict issue (and thus may modify its position), based on the information the Government has received as of now, two things appear clear. First, Ms. Shroff and the Federal Defenders providing legal advice to the defendant does not rise to the level of a criminal offense that warrants disqualifying them from the case. Second, Mr. Branden has more than enough time to prepare himself for trial as additional counsel to Ms. Shroff and the Federal Defenders and certainly more than enough time to prepare for the parts of the trial that are specific to the prison notebooks (the "Prison Notebooks") that purportedly cause a conflict for Ms. Shroff and the Federal Defenders. The defense submissions are transparent attempts to frighten the Court into adjourning a trial that the defendant and his counsel seem determined to delay, conjuring one far-fetched argument after another. The Government respectfully requests that the Court bring this

The Honorable Paul A. Crotty, U.S.D.J.
January 9, 2020
Page 2

gamesmanship to an end and enforce its prior ruling that there would be no further adjournments of the trial date.

## I.    Background

The timeline of the defendant's serial requests to delay the trial, described below, is a useful backdrop to evaluate the defense's instant request.  In particular, the timeline shows how, each time the Court has rejected the defense's attempts to adjourn the trial, the defense has invented a new reason purportedly requiring delay.  That pattern, the Government submits, warrants skepticism when considering the latest attempt to adjourn the trial.

- October 31, 2018: The Second Superseding Indictment containing Count Four, relating to the defendant's MCC conduct, was returned.

- November 1, 2018: Search warrants for the Prison Notebooks, among other things—which specifically addressed the review of potentially privileged material and thus highlighted the issue now being addressed—were produced to defense counsel the following day.

- June 18, 2019:  The defendant moved to suppress the Prison Notebooks, among other things, on the ground that searching the notebooks violated the defendant's attorney-client privilege.  The motion to suppress did not address in any way the purported ethical or conflict issues related to the notebooks.

- August 26, 2019: Counsel filed a letter (the "August 26 Letter") asserting for the first time that an ethical issue had arisen because attorneys at Federal Defenders had "favorable, relevant, and admissible testimony to provide in the defendant's defense to count four of the Second Superseding Indictment."  (Dkt. 128 at 1). Counsel did not assert that the advice at issue gave rise to any divergence of interests between the defendant and his counsel, but only requested a severance to avoid the potential ethical implications of the advocate-witness prohibition of Rule 3.7.

- September 12, 2019: In response to the Government's opposition to a severance, defense counsel did not identify any divergence of interest with the defendant, but merely again cited to the provisions of Rule 3.7.

- September 26, 2019: The Court denied the motion for severance, noting that "it is not the case that counsel for Schulte is faced with proceeding at trial without evidence of the favorable testimony or even with a limitation that would prohibit the attorney who provided the advice (Mr. Larsen) from testifying.  In other words, the Defendant would not be required to forgo the favorable testimony."  (Dkt. 147 at 5).

The Honorable Paul A. Crotty, U.S.D.J.
January 9, 2020
Page 3

- o October 10, 2019 (the "October 10 Letter"): The Federal Defenders requested to be relieved in full, or, in the alternative, for the Court to hold a *Curcio* hearing.  As with their previous submissions, at no point did the Federal Defenders suggest that their interests were in any way divergent from that of the defendant, but again referred only to the purported "advocate-witness problem."  (Dkt. 150 at 8).

- o October 16, 2019: In reply to the Government's opposition, the Federal Defenders did not suggest any divergence of interests with the defendant, but rather asserted that "Ms. Shroff's testimony 'could be significantly useful' to Mr. Schulte."  (Dkt. 157 at 2).

- o October 25, 2019: The Federal Defenders requested that James Branden, Esq., be appointed as "additional counsel" in light of the "imminent" start for trial, which at that time was scheduled to begin on January 13, 2020.  In their request, the Federal Defenders stated that Mr. Branden had advised the Federal Defenders that he was "able and willing to accept this appointment."  (Dkt. 164 at 1).

- o October 28, 2019: The Court granted the Federal Defenders' request to appoint Mr. Branden, in part based on his availability for trial.  (Dkt. 166 at 1).

- o November 6, 2019: The Court indicated that it would appoint independent counsel to advise the defendant about "1. The advocate-witness rule and what specific testimony Schulte would be required to forgo as well as what testimony would be presented 2. The advisability of agreeing to a testimonial stipulation to corroborate Mr. Larsen's in-person testimony 3. Whether Schulte should pursue this testimony at all, any potential waiver of attorney client privilege, and the potential that such testimony may open the door to further evidence of Schulte's MCC conduct 4. The benefits and risks of altered trial strategy and the appointment of new counsel." (Dkt. 177 at 3-4).

- o November 13, 2019: The Court appointed Sean Maher, Esq. as *Curcio* counsel for the defendant.  (Dkt. 181).

- o November 27, 2019: Mr. Branden requested a six-month adjournment of the trial date, arguing that the trial was more complex than he had originally anticipated. Mr. Branden stated in his letter that he "was prepared to devote a significant amount of my time to preparing for a January 13, 2020 trial date." (Dkt. 202 at 1).

- o December 3, 2019: Ms. Shroff and the Federal Defenders[1] requested an additional adjournment of the trial based on an alleged shift in the Government's theory of its case.

---

[1] Prior to the December 3 submission, Ms. Shroff had left the Federal Defenders, but was still counsel for the defendant.

The Honorable Paul A. Crotty, U.S.D.J.
January 9, 2020
Page 4

- o <u>December 9, 2019</u>: The Court denied Mr. Branden's request for a six-month adjournment, noting that the Court had appointed Mr. Branden in reliance on his availability for trial, and the fact that "there ha[ve] been no changes in circumstances since Mr. Branden was appointed." (Dkt. 212 at 2). In response to Ms. Shroff and the Federal Defenders' adjournment request, the Court adjourned the trial by three weeks, until February 3, 2020. (*See id*.). The Court stated that there would be no further adjournments of the trial. (*See id*.).

- o <u>December 13, 2019 (the "December 13 Letter," and together with the August 26 and October 10 Letters, the "Testimony Letters")</u>: The Federal Defenders informed the Court that they had determined that the advice they gave to the defendant regarding the Prison Notebooks may have constituted ineffective assistance of counsel. Although the Federal Defenders took the position that they could not "evaluate or pursue these potential claims of ineffective assistance" (Dkt. 220 at 3), they did not assert that even this new allegation gave rise to an actual conflict.

- o <u>December 18, 2019</u>: The Court held a *Curcio* hearing (the "*Curcio* Hearing"). At the hearing, the defendant confirmed his understanding that the purpose of the proceeding was to address a "potential conflict" arising from the advice given to him by the Federal Defenders. (12/18/19 Tr. at 21). At no point during the hearing did Ms. Shroff, the Federal Defenders, Mr. Maher, or the defendant indicate any belief that the defendant's interests diverged from those of his attorneys, but instead relied solely on the claim that the advocate-witness rule precluded the continued participation of the current trial team. At the *Curcio* Hearing, the Court ruled that the advocate-witness rule did not require the disqualification of Ms. Shroff or the Federal Defenders.

- o <u>January 2, 2020</u>: Ms. Shroff and the Federal Defenders filed the January 2 Disqualification Letter, claiming, for the first time, that Ms. Shroff and Mr. Larsen may face criminal exposure for their conduct and that their interests may diverge from the defendant's interests.

- o <u>January 2, 2020</u>: The defendant—despite not having raised any such concerns at the *Curcio* Hearing—submitted the Schulte Letter to the Court, in which the defendant claimed that he had only seen Mr. Branden twice and that the defendant has "no relationship or confidence in his ability to assist in my defense at trial next month." The defendant asked that the Court to appoint the defendant a new attorney.

- o <u>January 3, 2019</u>: Ms. Shroff and the Federal Defenders filed a letter claiming that the defendant has not waived his attorney-client privilege and that thus, the Government should not receive unredacted versions of the Testimony Letters, in which defense counsel set forth the purported testimony in a description that the Court confirmed at the *Curcio* Hearing was complete and accurate. (12/18/19 Tr. at 3-4).

The Honorable Paul A. Crotty, U.S.D.J.
January 9, 2020
Page 5

- o January 3, 2019: Mr. Maher joined in Ms. Shroff and the Federal Defenders' disqualification request in the January 2 Disqualification Letter.

- o January 7, 2019: Mr. Branden submitted a response to the Schulte Letter, in which Mr. Branden confirmed the defendant's factual representations in the Schulte Letter and stated that Mr. Branden would not oppose being replaced as counsel—notwithstanding his prior representations to the Court regarding his availability to prepare for and participate in the trial as counsel appointed pursuant to the Criminal Justice Act.

## II.     Trial Should Proceed on February 3 with Current Defense Counsel

The defendant is represented currently by *five* attorneys: three cleared trial attorneys, Ms. Shroff, Mr. Zas, and Mr. Branden, at least one uncleared trial attorney, Allegra Glashausser, Esq. (also of the Federal Defenders), and cleared *Curcio* counsel, Mr. Maher.  Three of those attorneys, Ms. Shroff, Mr. Zas, and Ms. Glaushausser, have represented the defendant since the first superseding indictment in this case, which first charged the defendant with national security crimes in June 2018.  One of the defendant's attorneys—Mr. Branden—was appointed in October 2019 specifically so that trial could proceed on the then-scheduled start date of January 13.  Mr. Maher was appointed in December 2019 for the express purpose of advising the defendant as to whether to pursue the testimony from his counsel that is the basis for the purported conflict at issue.

The defense now asks the Court to relieve all of these attorneys—save Mr. Maher—based on (i) the alleged ethical inability of Ms. Shroff and the Federal Defenders (who have a full knowledge of the facts of this case) to address at trial the exceedingly narrow set of evidence related to the Prison Notebooks,[2] and (ii) the purported difficulty Mr. Branden (who has been working on this case now for four months and has no conflict) is having preparing for trial after representing to the Court that he was prepared to do so.  This drastic remedy could only be warranted if the Court ignores an obvious fact and practical reality—neither Ms. Shroff, the Federal Defenders, nor Mr. Branden are being called upon to try this case by themselves and, in every trial, counsel are called upon to focus on different aspects of the case.  Here, there is no obstacle to Ms. Shroff and the Federal Defenders dealing with the overwhelming majority of the evidence at trial, as they have now been preparing to do for more than a year and a half.  Similarly, Mr. Branden has more than enough time to prepare to handle the aspects of the case that purportedly create a conflict for Ms. Shroff and the Federal Defenders, and can even consult Mr. Maher should Mr. Branden need assistance.  This solution—allowing each defense attorney to handle the parts of the trial that they are unquestionably capable of handling while supplementing the efforts of other members of the large defense team on other issues where appropriate—has been routinely adopted by courts and both effectively protects the defendant's rights and avoids the extreme result of appointing a new defense team and delaying trial even more.

---

[2] As noted above, the defendant has not disclosed the precise nature of the anticipated legal-advice testimony to the Government, and thus, the Government's position once the Government is able to review the Testimony Letters could change.

The Honorable Paul A. Crotty, U.S.D.J.
January 9, 2020
Page 6

Instead of simply apportioning trial preparation in a reasonable fashion, the defense has manufactured one purported issue after another to try to stave off trial. First, Ms. Shroff and the Federal Defenders argued that the Court should sever the MCC counts or otherwise preclude the Government from relying on the Prison Notebooks because Ms. Shroff and Mr. Larsen allegedly have testimony that helped to exculpate his writings in the Prison Notebooks. After that approach failed, the Federal Defenders argued that they should be disqualified from the case altogether because of the same advocate-witness issue. And after that approach also failed, they have now taken a different and more extreme tack, arguing in the January 2 Disqualification Letter that Ms. Shroff and the Federal Defenders, incredibly, may have committed a crime by rendering the advice in question, and thus, have divergent interests from the defendant. Similarly, when Mr. Branden's first attempt to adjourn the trial failed, he and the defendant doubled down, arguing that—even though trial is a month away—Mr. Branden is unprepared because he has not met often enough with the defendant or learned all of the facts of the case. The Government respectfully submits that the Court should end these dilatory tactics once and for all, admonish defense counsel that the Court meant what it said when it stated that there would be no further adjournments, and deny the request to disqualify Ms. Shroff and the Federal Defenders and to replace Mr. Branden with new counsel.

### A.      The Court Should Not Disqualify Ms. Shroff and the Federal Defenders

In their January 2 Disqualification Letter, the Federal Defenders and Ms. Shroff assert—for the first time—that they have an "actual conflict" of interest arising from their purported "professional and reputational interest (if not penal interest) in avoiding public and judicial scrutiny of their advice" to the defendant regarding the Prison Notebooks. (Ltr. at 2-3). The letter suggests further that the advice may in fact have involved the defendant's attorneys in his criminal conduct, citing the aiding-and-abetting statute, 18 U.S.C. § 2, and a number of cases involving conflicts arising from an attorney's participation in the offenses charged against a client. (*Id.*). And despite regularly characterizing Mr. Larsen's testimony as favorable to the defendant and in spite of the presumption that Mr. Larsen, as an officer of the Court, would testify truthfully, the defendant's counsel now try to invent a conflict by suggesting that they may have an interest in "defending [their advice], characterizing it as favorably to themselves as possible, and minimizing its significance." (*Id.* at 3). The Government remains unable to address in full the merits of these claims because the defendant has refused to disclose the underlying advice to the Government. However, the letter's general description of the conduct at issue does not suggest that it gives rise to an actual conflict requiring disqualification of any of the defendant's current counsel.

Initially, defense counsel's attempt to manufacture an actual conflict by claiming that these lawyers may themselves face criminal exposure is entirely unsupported by the case law that they cite. An actual conflict arises when defense counsel is directly implicated in criminal conduct. Thus, for example, in *United States v. Fulton*, the principal case on which the defendant's lawyers rely, an actual conflict arose because a cooperating witness "told the government that lead trial counsel received a portion of a shipment of heroin that [the witness] brought into the United States, and also that he had information that lead trial counsel was involved in heroin trafficking on his own." 5 F.3d 605, 610 (2d Cir. 1993). Similarly, in *United States v. Levy*, defense counsel was under investigation for aiding the flight from prosecution of his client's codefendant and nephew,

The Honorable Paul A. Crotty, U.S.D.J.
January 9, 2020
Page 7

whom the client had an interest in portraying as the responsible party for the charged crimes.  25 F.3d 146, 156-57 (2d Cir. 1994).  Finally, in *United States v. Arrington*, the court disqualified defense counsel after determining that a Government witness would testify that defense counsel threatened him if he testified against counsel's client or others.  867 F.2d 122, 124-25 (2d Cir. 1989).

Here, by contrast, there is nothing the Government is presently aware of to suggest that the defendant's counsel was involved in the crimes charged in the Indictment.  As described by the defendant's counsel thus far, Ms. Shroff and Mr. Larsen provided the defendant with advice that "led Mr. Schulte to believe that what he wrote down in his notebooks had a legitimate purpose relating to the lawyer-client relationship and would be protected from compelled disclosure by the attorney-client or work-product privileges."  (Dkt. 231 at 2).  None of the public portions of defense counsel's filings suggests that they advised him, for example, to attempt "to communicate, deliver, [or] transmit" classified information as charged in Count Four, or to willfully and knowingly disobey an order of the Court as charged in Count Eleven.  On the contrary, whether the advice was legally correct or not, it appears that the defendant's counsel was attempting to advise him on the *confidentiality* of the Prison Notebooks, not on their *disclosure*.  Indeed, in prison calls with third parties, the defendant stated that his attorneys affirmatively told him *not* to disclose information to the media—advice that the defendant clearly and repeatedly rejected.  In addition, unlike the cases cited by the defendant, the Government does not currently expect to argue or elicit testimony at trial that the defendant's counsel was complicit in any crime, much less the specific crimes charged in this case.  Even the limited information made available to the Government thus far appears to suggest that defense counsel's conduct is far removed from that at issue in the cases he cites.

Stripping this hyperbolic assertion from the defense submissions, counsel have not established that the Court should shift from its original conclusion that there is no conflict requiring Court action in the first place in light of the number of attorneys available to Schulte.  The defendant does not have an absolute right to present testimony from Ms. Shroff, as the Court has found previously, because such testimony would be duplicative of other evidence.  The Federal Defenders have previously conceded that Ms. Shroff could offer only "duplicative testimony" (Dkt. 147 at 5), and that "[t]he proposed testimony that both Mr. Larsen and Ms. Shroff intend to provide may simply be cumulative."  (Dkt. 177 at 3).  The Court therefore noted that, "[a]s the Defendant concedes, it was Mr. Larsen who provided the advice at issue and the Defendant has not identified any additional testimony that only trial counsel (Ms. Shroff) possess."  (Dkt. 147 at 4; *see also* 12/18/19 Tr. at 3-4, 17 (confirming that defense counsel provided Court with a complete account of the purported advice)).  At a minimum, Mr. Branden, who is also trial counsel, and Mr. Maher, who is *Curcio* counsel, are able to advise the defendant as to whether he should call Mr. Larsen to testify at trial and what arguments to make regarding Mr. Larsen's testimony, and these lawyers can render that advice without any personal interest clouding their judgment.  If the defendant does choose to call Mr. Larsen, then there is no reason to believe that there will be any divergence between the interests of Mr. Branden and the defendant, because defense counsel and the defendant have uniformly described Mr. Larsen's testimony as favorable to the defendant and Mr. Larsen—as an officer of the Court—presumably would testify truthfully.  Finally, even assuming that there was some reason that Mr. Larsen would alter his testimony in a way that was

The Honorable Paul A. Crotty, U.S.D.J.
January 9, 2020
Page 8

harmful to the defendant, there is no reason to believe that his conflict-free trial counsel could not vigorously examine Mr. Larsen to protect the defendant's interests or argue the import of Mr. Larsen's testimony to the jury in the light most favorable to the defendant.

Under the current circumstances, because the defendant is represented by Mr. Branden and Mr. Maher, who are not connected in any way to the advice or conduct at issue (*see* Dkt. 231 at 2 n.2 (noting that conflict does not affect Mr. Branden)), no actual conflict has arisen. "'[A]n actual conflict of interest' mean[s] precisely a conflict *that affected counsel's performance*—as opposed to a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002) (emphasis in original). "[T]he standard applicable to conflict of interest claims . . . must require some objective basis for the claim; it is not enough in determining the existence of an actual conflict of interest merely to assess the attorney's state of mind." *Strouse v. Leonardo*, 928 F.2d 548, 553 (2d Cir. 1991). There is no objective basis for a claim of actual conflict here.

Moreover, the Court has already implemented measures, which can be augmented in the future if necessary, to ensure Schulte's defense is not impaired should he choose to offer testimony from Mr. Larsen. "District courts have been given broad discretion to fashion remedies to avoid conflicts of interest." *United States v. Messino*, 181 F.3d 826, 830 (7th Cir. 1999). A recognized remedy to some conflicts is to have an unconflicted member of the defense team handle the issue that could give rise to divided loyalties from other members of the team. *See, e.g.*, *United States v. Kiley*, No. 11 Cr. 228 (MJD/JJK), 2011 WL 6122287, at *7 (D. Minn. Nov. 10, 2011) ("This Court notes that Mr. Mahmoud could assign any cross-examination of [his former client] to his co-counsel . . . in order to avoid any actual conflict of interest that may arise that would cause adverse consequences to Defendant Kiley."); *United States v. Carter*, No. 08 Cr. 11 (RL), 2008 WL 3992253, at *6 (N.D. Ind. Aug. 27, 2008) (directing that a "substitute attorney" conduct any direct or cross-examination of former client of defense counsel, noting that "[c]ross-examination by a back-up counsel who is not a party to the former client's confidences can be an available remedy to [such a conflict]"); *United States v. Poulsen*, No. 06 Cr. 129, 2006 WL 2619852, at *12 (S.D. Ohio Sept. 12, 2006) ("[A]ny conflict resulting from [counsel's] cross-examination of [his law partner] may be overcome by having [unconflicted co-counsel] conduct the cross-examination."); *United States v. Speed Joyeros, S.A.*, 204 F. Supp. 2d 412, 445 (E.D.N.Y. 2002) ("The court attempted to mitigate the conflict problem [arising from potential forfeiture of funds that could be used to pay attorney] by appointing additional counsel, pursuant to the Criminal Justice Act. Appointed counsel is not subject to the same potential conflict since compensation comes from the government, not from the defendant's seized assets.").

Although the independent counsel solution has not always been used, this case is markedly different from those where it has been rejected, such as where the conflict issue would "permeate the entire trial," *United States v. Locascio*, 357 F. Supp. 2d 536, 557 (E.D.N.Y. 2004), or pertains to cross-examination of someone "that in the Government's view . . . is a critical witness," *United States v. Lock*, No. 07 Cr. 204, 2008 WL 1777221, at *3-4 (E.D. Wis. Apr. 15, 2008). Here, the testimony is of at most limited relevance to one of eleven counts for which the defendant will presently stand trial. The purported advice was given more than two years after the defendant stole classified information from the CIA that is the core of this case, and the testimony apparently pertains only to general advice given to the defendant related to the Prison Notebooks. *Cf. Poulsen,*

The Honorable Paul A. Crotty, U.S.D.J.
January 9, 2020
Page 9

2006 WL 2619852, at *12 (distinguishing *Locascio* and approving use of independent counsel to remedy conflict where "in this case, Mr. Haller's testimony, though certainly helpful in shedding light on the Fresenius litigation, is likely not the lynchpin of this sixty-count case").  Indeed, defense counsel acknowledged as much in their original proposal to address the issue, which was simply a severance of the MCC-related counts.  (*See generally* Dkt. 128).

Thus, to the extent any conflict exists at all, it is potential, only, and the prospects of it developing into an actual conflict are remote at best.  Defendant and defense counsel have an interest in portraying Mr. Larsen's advice as reasonable and reliable—both to advance the defendant's defense and, in the case of Ms. Shroff, Mr. Larsen, and the other Federal Defenders, also as a matter of professional reputation.  Furthermore, because the only conceivable purpose for offering testimony related to Mr. Larsen's advice to the defendant would be for the impact of the purported advice on the defendant's state of mind, the accuracy of the advice and defense counsel's legal acumen in offering it are not relevant to any issue at trial.  Even assuming that Ms. Shroff and the Federal Defenders were interested in minimizing some aspect of their as-of-yet undisclosed advice, that still would not present an issue because of the appointment of Mr. Branden.  Mr. Branden has no personal interest in minimizing the advice given by Mr. Larsen—in fact, presumably, Mr. Branden's desire to prevail at trial would cause him to seek to maximize the benefits of Mr. Larsen's testimony for the defendant.  Moreover, obviously the defendant would have an incentive in ensuring that Mr. Branden is well aware of all of the favorable aspects of Mr. Larsen's advice and brings them out at trial.  As noted above, in lieu of the drastic remedy of disqualification and a lengthy adjournment of the trial, the Court has the much more reasonable alternative of relying on Mr. Branden and the defendant to protect the defendant's interests.

Finally, the Government respectfully submits that the Court should approach the defendant's continued attempts to secure the withdrawal of his attorneys with great skepticism.  The Second Circuit has warned "that disqualification motions are often interposed for tactical reasons.  And even when made in the best of faith, such motions inevitably cause delay." *Bd. of Ed. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (internal citations omitted).  While this concern usually arises where opposing counsel seeks to have his adversary removed, here it is the defendant who is abusing vague claims of potential conflict in an effort to secure a tactical advantage of delaying his trial even further as part of a patently obvious graymail campaign.  Unlike situations where a conflict arises from a lawyer's prior representation of a potential witness, where the circumstances giving rise to the conflict would be unknown to the defendant, any relevant effect legal advice had on the defendant's state of mind was obviously known to him.  He was the recipient of the advice, he was the one charged in Count Four, and the Government is aware of no fact relevant to the determination of this issue that would not have been known to the defendant at the same time that it was known to defense counsel.  Not only has he failed to raise the issue promptly, but his rationale for seeking new attorneys has shifted as the Court has rejected each proffered claim.

The Honorable Paul A. Crotty, U.S.D.J.
January 9, 2020
Page 10

> **B.      Mr. Branden Should Continue to Represent the Defendant and Trial Should Proceed on February 3**

Similarly, there is no reason to replace Mr. Branden with new counsel and delay trial.  In March 2018, Ms. Shroff and the Federal Defenders were appointed to represent the defendant in the third change-of-counsel proceeding in this case.  Over the nearly two years that these attorneys have represented the defendant, they have, among other things, reviewed tens of thousands of pages of both classified and unclassified discovery; retained experts; litigated numerous discovery issues; filed substantial motions, including multiple motions to suppress evidence (including the Prison Notebooks) and a motion to dismiss national security charges in the second superseding indictment; identified hundreds of exhibits and subpoenaed dozens of potential trial witnesses; and participated in numerous hearings concerning the use of classified information pursuant to Section 6 of the Classified Information Procedures Act (the "Section 6 Hearings").  Ms. Shroff and the Federal Defenders did all of this, with the exception of participating in the Section 6 Hearings and filing of the motion to dismiss, before Mr. Branden was appointed.

That was the backdrop when, at Ms. Shroff and the Federal Defenders' request, the Court appointed Mr. Branden as "additional" counsel, or, in other words, counsel to help Ms. Shroff and the Federal Defenders meet the then-January trial date.  Since Mr. Branden's appointment, Ms. Shroff and the Federal Defenders have continued to prepare for trial—in fact, these attorneys have met with the defendant in a secure facility multiple times each week to develop their trial defense.  That preparation has allowed Ms. Shroff and the Federal Defenders to make particularized objections in the Section 6 Hearings and articulate specific defense theories.  Mr. Branden's participation in these hearings has been, at best, minimal.  Simply put, even after Mr. Branden was appointed, it is Ms. Shroff and the Federal Defenders who are leading the defense, not Mr. Branden.

Ms. Shroff and the Federal Defenders have identified *one* category of the Government's evidence that purportedly creates a conflict for them—the Prison Notebooks.  With respect to all of the other evidence in the case, Ms. Shroff and the Federal Defenders have not identified any obstacle to these lawyers responding to it.  Thus, the *only* aspect of the trial that—according to the conflict positions taken by the defense—Mr. Branden may need to take the lead on is the issue of the Prison Notebooks.  Mr. Branden has more than enough time to prepare himself for the task. Trial is approximately a month away.  The defense, including Mr. Branden, has received from the Government, among other things, (i) search warrant affidavits that describe, in detail, the Government's investigation of the defendant's conduct while in prison; (ii) a bill of particulars and CIPA Section 10 notice that specifically describes the national defense information in the Prison Notebooks that the Government intends to rely on; and (iii) FBI reports and attorney notes of all of the witness interviews done in this case.  For at least months, if not longer, there has been no mystery about the Government's case related to the defendant's conduct in prison.  Far from it. Moreover, to the extent Mr. Branden needs more information, he has substantial resources to lean on—he has access to Ms. Shroff and the Federal Defenders, attorneys with nearly two years' experience dealing with these issues, and to Mr. Maher, an attorney who has been specifically appointed to consider and protect the defendant's interests concerning the Prison Notebooks.  With these resources, it is simply not plausible that Mr. Branden, a seasoned member of the bar whose

The Honorable Paul A. Crotty, U.S.D.J.
January 9, 2020
Page 11

skill and professionalism earned him appointment to the Criminal Justice Act panel, cannot be prepared in time to conduct the portion of the trial that relates to the Prison Notebooks. Indeed, Mr. Branden cannot simply shrug his shoulders, as he has done in his most recent letter, and seek to shift responsibility to a new attorney to handle the issue.

In the Schulte and Branden Letters, the defendant and Mr. Branden appear to agree on two reasons why Mr. Branden should be relieved, neither of which is persuasive. *First*, they claim that because Mr. Branden has only been able to meet personally with the defendant on two occasions, that warrants replacement of Mr. Branden. "'Communication issues' between the defendant and defense counsel do not warrant changing counsel and delaying trial" because the right to effective counsel "does not . . . guarantee a 'meaningful relationship' between the defendant and his counsel." *United States v. John Doe #1*, 272 F.3d 116, 122 (2d Cir. 2001) (quoting *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983)). Absent a "total lack of communication"—which neither Mr. Branden or the defendant specifically allege—there is no reason to substitute counsel. *John Doe #1*, 272 F.3d at 124. *Second*, the defendant relies on his subjective view that Mr. Branden is not prepared for trial—while the trial is still over three weeks away. However, the quality of an attorney's conduct is not "determined solely according to the subjective standard of what the defendant perceives." *McKee v. Harris*, 649 F.2d 927, 932 (2d Cir. 1981). While the defendant might prefer that Mr. Branden had met with him more at this point, the fact is that Mr. Branden only has to shoulder one narrow element of the case, and has approximately a month to prepare for that part of trial.

\* \* \*

The Honorable Paul A. Crotty, U.S.D.J.
January 9, 2020
Page 12

The Court must guard scrupulously the defendant's right to a fair trial and adequate representation by his attorneys.  But the Court must also guard the public's and the victim's interests against the defendant's gamesmanship.   Trial in this matter has been repeatedly adjourned, from April 2019 to November 2019, then to January 2020, and finally to February 3, 2020.  Not only is this a case in which "the public is the loser when a criminal trial is not prosecuted expeditiously, as suggested by the aphorism, 'justice delayed is justice denied,'" *United States v. Gambino*, 59 F.3d 353, 360 (2d Cir. 1995), but the continued delay works substantial hardship on the victim of the defendant's crimes.  The CIA is engaged in critical work protecting the national security of the United States, and is also devoting significant resources in support of this prosecution, including by making several of its officers—individuals tasked with carrying out the Agency's mission—available as witnesses.  Much like the defendant's announced intentions to disclose a wide range of irrelevant classified information at trial, his current efforts to delay this trial are merely another attempt by the defendant to amplify the cost to national security of his prosecution in an effort to secure a favorable resolution.  The defendant has been ably represented by counsel throughout this litigation, including for the last several months by independent counsel who can ensure that any potential conflicts do not result in any "actual lapse in representation," as would be required to show an actual conflict.  *Cuyler v. Sullivan*, 446 U.S. 335, 349 (1980).  This is sufficient to satisfy the Sixth Amendment's guarantee, and the Court should reject the defendant's continued strategic machinations.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____

David W. Denton, Jr.
Sidhardha Kamaraju
Matthew Laroche
Assistant United States Attorneys
Tel.: 212-637-2744 / 6523 / 2420

Cc:  Defense Counsel (via ECF)