JCi5schC1                         Curcio Hearing

 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x

 3  UNITED STATES OF AMERICA,                 New York, N.Y.

 4              v.                            17 Cr. 548 (PAC)

 5  JOSHUA ADAM SCHULTE,

 6              Defendant.

 7  ------------------------------x

 8                                           December 18, 2019
                                             3:40 p.m.
 9

10  Before:

11                    HON. PAUL A. CROTTY,

12                                           District Judge

13

14                    APPEARANCES

15  GEOFFREY S. BERMAN
         United States Attorney for the
16       Southern District of New York
    BY:  DAVID W. DENTON, JR.
17       SIDHARDHA KAMARAJU
         MATTHEW J. LAROCHE
18       Assistant United States Attorneys

19  FEDERAL DEFENDERS OF NEW YORK
         Attorneys for Defendant
20  BY:  SABRINA P. SHROFF
    BY:  EDWARD S. ZAS
21

22  LAW OFFICES OF JAMES M. BRANDEN
         Attorney for Defendant
    BY:  JAMES M. BRANDEN
23

24  THE LAW OFFICES OF SEAN M MAHER, PPLC
         Curcio Counsel for Defendant
    BY:  SEAN M. MAHER
25

JCi5schC                          Curcio Hearing

1          (Case called)

2          THE DEPUTY CLERK:  Counsel for the government.  Please

3  state your appearance.

4          MR. DENTON:  Good afternoon, your Honor.  David

5  Denton, Matt Laroche, and Sid Kamaraju for the government.

6          MR. KAMARAJU:  Good afternoon, your Honor.

7          MR. LAROCHE:  Good afternoon.

8          MR. MAHER:  Good afternoon, your Honor.  Sean Maher,

9  Curcio counsel for Mr. Schulte.

10          THE COURT:  Mr. Maher.

11          MR. ZAS:  Good afternoon, your Honor.  Edward Zas,

12  Federal Defenders of New York with Sabrina Shroff.

13          MR. BRANDEN:  Jim Branden also present, Judge.  Good

14  to see you.

15          THE COURT:  Thank you for coming, Mr. Branden.

16          Before we start, I want to start with you, Mr. Maher.

17  In your letter of December the 3rd in which you report on your

18  work on the Curcio order, you conclude with the information

19  available to Mr. Schulte at this stage of the ongoing

20  litigation.  Mr. Schulte wishes to retain his Sixth Amendment

21  rights to present a defense and to call witnesses on his behalf

22  including Mr. Larsen and Ms. Shroff.

23          MR. MAHER:  Correct.

24          THE COURT:  Is that accurate?

25          MR. MAHER:  It is.

JCi5schC                        Curcio Hearing

1          THE COURT:  Let me ask Mr. Schulte, do you want to

2    have Mr. Larsen and Ms. Shroff called as witnesses to testify

3    on your behalf?

4          MR. ZAS:  Yes.

5          THE COURT:  Please, be seated.

6          Ms. Shroff, I have got letters from you dated August

7    26th and October the 10th, I believe -- yes, I am correct,

8    August 26 of 2019 and October 10 of 2019, in which you describe

9    your conversation with you and Mr. Larsen with Mr. Schulte.

10         Are these accurate descriptions of what you told

11   Mr. Schulte?

12         MS. SHROFF:  Yes, your Honor.

13         THE COURT:  Is there anything else?

14         MR. MAHER:  May we have just a moment, your Honor?

15         THE COURT:  Yes.

16         MR. MAHER:  Thank you.

17         (Counsel conferring)

18         MR. ZAS:  Your Honor, just to clarify your last

19   question --

20         THE COURT:  Yes.

21         MR. ZAS:  -- are you asking Ms. Shroff if there is

22   anything to add to that piece of testimony?  Is that your

23   question?

24         THE COURT:  Is there anything else, in addition to

25   what is set forth in the letters of August 26th and October --

1          MR. BRANDEN:  10, Judge.

2          THE COURT:  Yes, October the 10th; in which he sets

3   forth what the conversation that Mr. Larsen and she had with

4   Mr. Schulte, is there anything in addition to that?

5          MR. ZAS:  In terms of content of that testimony there

6   is not, but I believe there is one additional issue we would

7   like to apprise your Honor of.  Unfortunately it is privileged

8   so we would prefer not to tell the government at this point

9   what it is, but we think your Honor should know.

10          THE COURT:  Why don't you tell me at the side bar.

11          MR. ZAS:  Very good.

12          (Pages 5-16 are SEALED and EX PARTE by order of the

13   Court)

14

15

16

17

18

19

20

21

22

23

24

25

JCi5schC3                        Curcio Hearing

1          (In open court)

2          THE COURT:  To go back to the letters of August 26 and

3    October 10th, we have established that the two letters set

4    forth the advice that was given to Mr. Schulte in the summer of

5    2019.  We have also established that the letters recount all

6    the advice that was given to Mr. Schulte, there was no other

7    advice that was tendered at the time.

8          Do I have that correct; Mr. Maher?  Ms. Shroff?

9          MR. MAHER:  Are you asking me to comment on the

10   letters that the Federal Defenders filed earlier?

11         THE COURT:  Yes.

12         MR. MAHER:  That appears to be a fair characterization

13   for those two specific documents, yes.

14         THE COURT:  Ms. Shroff, do you agree?  You didn't hold

15   anything back, did you?

16         MS. SHROFF:  I didn't hold anything back, your Honor

17   but if somebody were to sit and discuss those dates with me,

18   for example, I have not gone back --

19         THE COURT:  Don't worry about the dates.  I am

20   concerned with what you said.

21         MS. SHROFF:  I don't think I held anything back.

22         THE COURT:  All right.

23         MS. SHROFF:  But, memories are refreshed.  I don't

24   think I held anything back.

25         THE COURT:  Pursuant to the order of setting up a

JCi5schC3                    Curcio Hearing

1    Curcio hearing, I want to ask Mr. Schulte some questions.  I
2    prefer he take the questions under oath, Mr. Maher.
3              Any objection?
4              MR. MAHER:  Just a moment, Judge?
5              (Defendant and counsel conferring)
6              MR. MAHER:  Your Honor, before we start, I would just
7    like to raise a concern.  I don't know the questions that your
8    Honor is going to pose.  The questions that your Honor is going
9    to pose --
10             THE COURT:  Pretty standard Curcio questions.  You
11   won't be surprised.
12             MR. MAHER:  I understand, though this has been
13   anything but a standard Curcio proceeding from what I have
14   seen.
15             THE COURT:  Yes.
16             MR. MAHER:  My concern is at this point I don't
17   believe that Mr. Schulte has waived privilege at any point, and
18   I want to ensure that he is not at this point waiving
19   privilege.  And so, Mr. Schulte is prepared to answer questions
20   under oath but we ask for time to be able to hear each
21   question, obviously, and raise an objection if we feel it is
22   something that is asking to waive a privilege.
23             THE COURT:  All right.
24             MR. MAHER:  Thank you.
25             THE COURT:  Would you swear in Mr. Schulte, please?

JCi5schC3                        Curcio Hearing

1            THE DEPUTY CLERK:  Please right.

2            (Defendant sworn)

3            THE COURT:  Please sit down, Mr. Schulte.  Make

4    yourself comfortable.

5            You are a college graduate, aren't you?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Are you under the care of physician or

8    psychiatrist or any mental or emotional condition?

9            THE DEFENDANT:  No.

10           MS. SHROFF:  Your Honor, I'm sorry.  Could I have a

11   minute?

12           MR. MAHER:  Hold on.  Sorry, Judge.

13           (Defendant and counsel conferring)

14           MR. MAHER:  Judge, may we have a side bar, please,

15   with your Honor?

16           THE COURT:  Come up right here.

17           MR. MAHER:  Thank you.

18           (Page 20 is SEALED and EX PARTE by order of the Court)

19

20

21

22

23

24

25

1           THE COURT:  Let me withdraw the last question and ask,

2     Mr. Schulte, is there anything interfering with your ability to

3     understand what is happening here today?

4           You can tay seated.

5           MR. MAHER:  Okay.  Thank you, your Honor.

6           THE DEFENDANT:  Can you repeat the question?

7           THE COURT:  Okay.  Is there anything interfering with

8     your ability to understand what is happening here today?

9           THE DEFENDANT:  No.

10          THE COURT:  And, Ms. Shroff is your counsel?

11          THE DEFENDANT:  Yes.

12          THE COURT:  How long has she represented you?

13          THE DEFENDANT:  For over a year.

14          THE COURT:  Are you satisfied with her services so

15    far?

16          (Defendant and counsel conferring)

17          MR. MAHER:  Your Honor, at this point I would ask that

18    your Honor withdraw that question.  I don't think it is

19    necessary for the purposes of this hearing.

20          THE COURT:  Mr. Schulte, can you tell us what your

21    understanding is of today's hearing?

22          THE DEFENDANT:  It's about potential conflict.

23          THE COURT:  And the potential conflict is what?

24          THE DEFENDANT:  Is a conflict of advice given to

25    counsel.

JCi5schC5                    Curcio Hearing

1           THE COURT:  I have appointed Mr. Maher to provide you

2     with independent advice about the issues at this hearing.  Have

3     you had an adequate opportunity to consult with Mr. Maher?

4           THE DEFENDANT:  Yes.

5           THE COURT:  How many meetings did you have and how

6     long did those meetings take?

7           MR. MAHER:  Your Honor, again I'm going to ask if you

8     would consider withdrawing that question.  I think the

9     pertinent part is whether he feels he has had adequate time and

10    he is prepared to go forward.

11          THE COURT:  I would like to get the number of meetings

12    and the length of time.

13          MR. MAHER:  My concern is that Mr. Schulte has been

14    under SAMs in solitary confinement for a number of months now

15    and his ability to remember dates, lengths of time, might be

16    inaccurate.  He doesn't have notes in front of him so I would

17    not want this to be a basis for, for instance, a perjury

18    prosecution because he is unable to recall these types of

19    details.

20          THE COURT:  You have been counsel for two months.  How

21    many meetings could you have had in two months?

22          Mr. Schulte, could you tell me how many meetings you

23    had and what the approximate length of time is?

24          THE DEFENDANT:  I don't recall that exact information.

25    I know we have met several times at the SCIF and several times

1     in the prison to discuss these issues ranging minutes to hours.

2                THE COURT:  But you believe -- I asked you before, you

3     believe you have had an adequate opportunity to discuss the

4     purpose of today's meeting with Mr. Maher?

5                THE DEFENDANT:  I do.

6                THE COURT:  Yes?

7                THE DEFENDANT:  Yes.

8                THE COURT:  Now, did Mr. Maher inform you that the

9     Court -- has informed the Court that you may wish to call two

10    attorneys, Matthew Larsen and Ms. Sabrina Shroff to testify as

11    witnesses for you at the trial.  I am going to explain to you

12    certain consequences that would result from your deciding to

13    call an attorney as a witness.

14                Under most circumstances, the law protects your

15    communications with your lawyers from being disclosed to anyone

16    else unless you choose to disclose it.  This is what is known

17    as the attorney-client privilege.

18                You understand this, don't you?

19                THE DEFENDANT:  Yes.

20                THE COURT:  Do you understand that certain decisions

21    you make, however, will result in a waiver of that

22    attorney-client privilege and the government would be entitled

23    to know about some of your communications with your attorneys?

24                THE DEFENDANT:  Yes.

25                THE COURT:  Do you understand that if you call an

1   attorney to testify about advice that they gave you, this is

2   one of those instances that would result in a waiver of at

3   least some aspects of your attorney-client privilege?

4           THE DEFENDANT:  Yes.

5           THE COURT:  Do you understand that if you call an

6   attorney to testify about communications between you and the

7   attorney, you would be waiving your attorney-client privilege

8   as to any communication or information concerning the same

9   subject matter and not just the communications that you want

10  the attorney to testify about?

11          MR. MAHER:  Your Honor, may I interject?

12          This question seems to be based on language from one

13  case.  I don't know if it is necessarily the controlling law on

14  this issue as far as the scope of the waiver so I just want to

15  be, again, very careful that in no way is Mr. Schulte waiving

16  privilege here today.

17          THE COURT:  Well, I believe that the question doesn't

18  elicit that answer or that concern.  What I am saying is, in

19  this question, I am trying to find out from Mr. Schulte whether

20  he appreciates the fact that if he has an attorney testify he

21  can't just -- he can't limit the attorney to testify only about

22  the things that Mr. Schulte suggests, he has to testify about

23  everything.

24          (Defendant and counsel conferring)

25          THE DEFENDANT:  Everything on the subject matter;

JCi5schC5                         Curcio Hearing

1    that's right.

2              THE COURT:  Everything on the subject matter, yes.

3              THE DEFENDANT:  Right.

4              THE COURT:  If you want the attorney to testify on

5    your behalf he is subject to cross-examination.  In

6    cross-examination you would be subject to cross-examination on

7    what else you may have discussed with Ms. Shroff.

8              (Defendant and counsel conferring)

9              MR. MAHER:  Sorry to interject, your Honor.  Could we

10   have that last question one more time, please?

11             THE COURT:  Okay.

12             If you call an attorney, Mr. Schulte, to testify about

13   communications between you and the attorney, you would be

14   waiving your attorney-client privilege as to any communication

15   or information concerning the same subject matter, and not just

16   the communication that you want the attorney to testify about.

17             (Defendant and counsel conferring)

18             THE DEFENDANT:  Yes.

19             THE COURT:  Do you understand that it will be up to

20   the Court to determine what communications or information may

21   be disclosed because of your waiver of the attorney-client

22   privilege?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Do you understand that if you decide today

25   that you wish to call an attorney to testify, I will find that

1    you have waived the attorney-client privilege with the attorney

2    and will require you and your lawyers disclose communications

3    and information concerning the same subject matter of the

4    testimony before trial in this case?

5            MR. MAHER:  Your Honor, I am objecting to this

6    question and I believe we are putting the cart before the

7    horse.

8            In my letter I asked the Court to have a bifurcated

9    process, one determining disqualification; two, that after that

10   disqualification issue is decided, to leave the actual decision

11   of whether Mr. Schulte is going to call an attorney or former

12   attorney as a witness to trial, or at least much closer to

13   trial.  Right now I'm not aware of any cases that give the

14   government the ability right now to pierce privilege to have

15   this information either in the letters that the Federal

16   Defenders have provided *ex parte*, or for Mr. Schulte right now

17   to say that he is waiving privilege today, at minimum now, six

18   to seven weeks before a scheduled trial date.  There is nothing

19   in the federal rules that require that or that permit that,

20   particularly when you look at his constitutional rights and the

21   ethical rights that he has to confidentiality.

22           So, I am asking your Honor to please defer that

23   question for now.

24           THE COURT:  This matter first came up when the trial

25   was scheduled for January 13th and it is an issue that affects

JCi5schC5                    Curcio Hearing

1   a lot of issues and it affects the conduct of the trial, the

2   pretrial activities.  So, I am not going to -- I am going to

3   overrule your objection, Mr. Maher, and pose the question

4   again.

5          If you wish to call an attorney to testify who will

6   find that you have waived the attorney-client privilege with

7   that attorney, it will require you and your lawyers to disclose

8   communications and information concerning the subject matter of

9   the testimony before trial in this case.

10          (Defendant and counsel conferring)

11          THE DEFENDANT:  Judge I am not prepared to waive any

12   privilege today and I retain the Sixth Amendment right to that

13   privilege.

14          THE COURT:  Mr. Schulte, are you going to make a

15   choice to have Ms. Shroff and Mr. Larsen testify on your

16   behalf?

17          (Defendant and counsel conferring)

18          THE DEFENDANT:  I reserve the right to call them both

19   but I have not made any decision yet.  It is up to the trial

20   team to make that determination.

21          THE COURT:  When are you prepared to make that

22   decision?

23          (Defendant and counsel conferring)

24          MR. MAHER:  Your Honor, I am objecting to this

25   question along the lines that I raised in my December 13th

JCi5schC5                    Curcio Hearing

1   letter that I believe for Mr. Schulte -- let me take a half

2   step back.

3            I believe we are in a situation right now where

4   Mr. Schulte is being placed in the position where he has to

5   choose between potentially exculpatory evidence or retaining

6   counsel.  That is exactly the choice that he is not supposed to

7   have to make at this point.  I believe that the decision to

8   actually decide to call an attorney or former attorney at trial

9   has to be done with conflict-free counsel who are fully up to

10  speed at or close to the time of trial when the trial landscape

11  is much more available than it is now.  There is no way any

12  human being right now could say, sitting in Mr. Schulte's

13  position as a defendant or as his attorney, to say I know for

14  sure I'm calling an attorney at this point.  We have not seen

15  the government's case at trial yet.  And, my concern also is

16  that, again, you are asking Mr. Schulte to effectively waive

17  privilege weeks before trial when there is no authority for

18  that.

19           THE COURT:  I do that against the background of the

20  August 26 and October 10 letters in which lawyers for

21  Mr. Schulte asked for a Curcio hearing.  The subject matter of

22  the Curcio hearing was whether or not conflict-free counsel --

23  which happens to be you, Mr. Maher -- could so advise him.

24           MR. MAHER:  Right.  And there is a big difference, I

25  submit, your Honor, which I explained in my letter, between

1    Curcio counsel assisting Mr. Schulte and understanding the

2    potential benefits and detriments right now of that testimony

3    versus making the actual decision at trial to call those

4    attorneys and to potentially have to give over discovery, none

5    of which is the point which we have agreed to at this point,

6    your Honor.

7              THE COURT:  What have you been doing with production

8    of documents?

9              MR. MAHER:  That is different.  There is no

10   obligation -- my understanding, under the federal rules or

11   federal statutes, that the defense has to provide anything

12   related to this subject matter to the government at this stage.

13   There is zero rule.

14             THE COURT:  At what stage does Mr. Schulte have to

15   make disclosure?

16             MR. MAHER:  The general rule, depending on whether the

17   defense opted into Rule 16 or not, would be to turn over any

18   written statements that are the subject matter of the testimony

19   after the witness has testified.  But, that has been changed

20   and that can be different depending on order of the Court.

21             THE COURT:  Right.

22             MR. MAHER:  But I'm not aware of any time --

23             THE COURT:  The government has already produced

24   information.

25             MR. MAHER:  That's different.  That's different than

1    defense having to disclose, particularly, attorney-client

2    privilege information weeks before trial.  Totally different

3    scenarios, your Honor.

4              THE COURT:  And what would happen in the circumstances

5    that Mr. Schulte does this, makes his announcement a week

6    before trial and then we find out that the testifying lawyer

7    cannot appear as an advocate and we adjourn the case?  Is that

8    what we do?

9              MR. MAHER:  No.  Absolutely not.  That's what I am

10   saying, your Honor.

11             Right now your Honor has enough, more than sufficient

12   evidence and facts and information before it to find that there

13   is a conflict that is a conflict that rises to the level of

14   disqualification for these attorneys and that Mr. Schulte needs

15   new counsel appointed so that way there isn't some surprise a

16   week before trial or in the middle of trial that, oh, now I

17   want to call Ms. Shroff at trial, now I want to call

18   Mr. Larsen, or anybody else.  That doesn't happen if your Honor

19   takes the step now and issues the disqualification order.

20             THE COURT:  And if I don't want to issue the

21   disqualification order because there is no real conflict, both

22   Mr. Larsen and Mr. Schulte can testify about their conversation

23   and the counsel who is litigating the case doesn't have to

24   testify.

25             That would meet the requirements of the professional

1    regulations.

2             (Defendant and counsel conferring)

3             MR. MAHER:  I actually don't think that that's a

4    proper way for that to play out, your Honor.

5             THE COURT:  Why is it improper?

6             MR. ZAS:  Your Honor, if may?

7             MR. LAROCHE:  Yes.

8             MR. ZAS:  The choice at trial of who to call as a

9    defense witness belongs to trial counsel in consultation with

10   Mr. Schulte.  With respect, if you keep Ms. Shroff on as

11   counsel, in effect you are deciding that she can't testify and

12   you would force Mr. Schulte either to choose Mr. Larsen or

13   nobody.  We don't think that's the proper role of the Court.

14   Only trial counsel -- trial counsel -- is going to have to look

15   at all the subtleties of the trial, how strong is the

16   government's case, how strong is the defense, which witness if

17   any should we call, maybe both of them should be called.  It is

18   not appropriate for the Court to make that decision now just

19   for the sake of keeping the trial on schedule.  We think his

20   Sixth Amendment right to call witnesses in his defense is so

21   fundamental that that can only be made by a trial lawyer with

22   full information who is not subject to the conflict themselves.

23            THE COURT:  So you would disqualify Ms. Shroff?

24            MR. ZAS:  Yes.

25            THE COURT:  We would put in substitute counsel?

1              MR. ZAS:  I'm sorry?

2              THE COURT:  We would put in substitute counsel?

3              MR. ZAS:  Will I put in substitute counsel or will

4      someone else?  I sorry.  I couldn't hear you.

5              THE COURT:  We would have to appoint substitute

6      counsel.

7              MR. ZAS:  Yes.  That's right.

8              THE COURT:  And that would take how long?  Ms. Shroff

9      has been working on this for over to years.

10             MR. ZAS:  Yes; and I don't think it is all for not and

11     I think we have made progress so a new lawyer wouldn't take the

12     amount of time that Ms. Shroff has taken just to go through all

13     the --

14             THE COURT:  Six months to a year?

15             MR. ZAS:  I would suspect that that's right.

16             THE COURT:  And your client would remain in jail?

17             MR. ZAS:  He does understand that, your Honor; not

18     only in jail but in the strict SAMs conditions.

19             THE COURT:  Mr. Schulte, I am going to continue with

20     my inquiry of you just to make sure you understand what will

21     happen in the event one of your lawyers is called to testify so

22     that you understand some of the consequences of your decision,

23     if and when you make that decision.

24             If you call an attorney to testify, the attorney will

25     be subject to cross-examination by the government.

JCi5schC5                           Curcio Hearing

1              Do you understand?

2              THE DEFENDANT:  Yes.

3              THE COURT:  If you offer evidence during your case at

4     trial including the testimony of an attorney, the government is

5     entitled to offer evidence in rebuttal.

6              Do you understand that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  If you offer evidence during your case at

9     trial including the testimony of an attorney, that may open the

10    door to evidence from the government that would otherwise be

11    inadmissible in this case.

12             Do you understand?

13             THE DEFENDANT:  Yes.

14             THE COURT:  If you offer evidence that an attorney

15    gave you certain advice and that you believed that by following

16    that advice you were acting lawfully, do you understand that

17    the government would be entitled to offer other evidence of

18    other situations in which did you not follow the advice of your

19    attorneys including cross-examining defense witnesses?

20             (Defendant and counsel conferring)

21             THE DEFENDANT:  Could you repeat that?

22             THE COURT:  Yes.

23             If you offer evidence that an attorney gave you

24    certain advice and that you believed that by following that

25    advice you were acting lawfully, do you understand that the

JCi5schC5                    Curcio Hearing

1    government would be entitled to offer evidence of other

2    situations in which you did not follow the advice of your

3    attorneys, including by cross-examination of defense witnesses?

4                (Defendant and counsel conferring)

5                MR. MAHER:  Your Honor, I would ask your Honor if we

6    could amend that to the "government may be able to."  I don't

7    want this to be interpreted that there is a blanket waiver,

8    again on Mr. Schulte's behalf, of the scope of the government's

9    cross-examination because there might be litigation that could

10   limit what the government is seeking to elicit on cross.  I

11   think the concept has been brought already and Mr. Schulte has

12   acknowledged to your Honor.

13               THE COURT:  I will change the word "entitled" to "may

14   be permitted."

15               MR. MAHER:  Thank you.

16               THE DEFENDANT:  Yes.

17               THE COURT:  If you offer evidence that an attorney

18   gave you certain advice and that you believed that by following

19   that advice you were acting lawfully, do you understand that

20   the government would be entitled to offer other evidence that

21   you may have previously stated that you did not care whether

22   your actions were lawful?

23               MR. MAHER:  Again, I would ask your Honor to make the

24   statement same amendments; the government might be able to or

25   may be able to.

1          THE COURT:  May be allowed to offer evidence that you

2     have previously stated that you do not care whether your

3     actions are lawful.

4          THE DEFENDANT:  Yes.

5          THE COURT:  Now, I have just given you two or three

6     examples.  There are many other examples about lawyers and the

7     testimony and cross-examination.  Do you understand that it

8     didn't give you a complete catalogue?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Do you understand that Ms. Shroff is

11    ethically prohibited from representing you during the trial and

12    also testifying at trial as a witness, whether as a witness for

13    you or for the government.

14         Do you understand?

15         THE DEFENDANT:  Yes.

16         THE COURT:  If Ms. Shroff or Mr. Larsen testifies as a

17    witness at trial, their status as witnesses will limit the role

18    they can play in the proceeding.  In other words they won't be

19    able to appear advocates.

20         Do you understand?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Do you believe that Ms. Shroff and

23    Mr. Larsen's testimony would be helpful to you?

24              (Defendant and counsel conferring)

25         THE DEFENDANT:  Yes, I do.

JCi5schC5                        Curcio Hearing

1          THE COURT:  Do you understand that if you wish to

2    offer testimony from an attorney from the Federal Defenders of

3    New York, that would not mean that other lawyers in the Federal

4    Defenders of New York are disqualified from this case but only

5    that any lawyer from the Federal Defenders that you call as a

6    witness would not be able to stand up in court and make

7    arguments, question witnesses, or present evidence on your

8    behalf.

9          MR. MAHER:  Your Honor, I object.  This question isn't

10   legally correct and I don't think it is necessary for the

11   colloquy for today.

12         THE COURT:  Where is it incorrect?

13         MR. MAHER:  It's incorrect as laid out in the Federal

14   Defenders' December 16th, 2019 letter, I believe on page 3,

15   where they outlined that if there is ineffective assistance of

16   counsel --

17         THE COURT:  I'm talking about the lawyer's witness

18   under professional conduct rules.

19         MR. MAHER:  There are many subtleties to that.

20         THE COURT:  Yes.

21         MR. MAHER:  I would also point your Honor to the

22   discussion we just had at side bar at the beginning of this

23   proceeding as for reasons why, if Ms. Shroff or Mr. Larsen is

24   going to testify, the entire Federal Defenders office would

25   also have to be disqualified.

1          THE COURT:  That's not the law and that is not what

2     the rules of conduct say.  Indeed, what they say is the

3     non-testifying lawyer and the testifying lawyer may continue to

4     represent the client outside of the tribunal with the client's

5     informed consent in pretrial activities such as legal research,

6     fact gathering, preparation or argument of motions, and briefs

7     on issue of the law and may be consulted during the trial with

8     the lawyer serving as an advocate.

9          (Defendant and counsel conferring)

10         MR. MAHER:  Sorry, your Honor.  If we can have another

11    30 seconds?

12         (Defendant and counsel conferring)

13         MR. MAHER:  With the Court's indulgence, if your Honor

14    can please repeat the question one more time?

15         THE COURT:  Pam, will you read the question back,

16    please?

17         MR. MAHER:  Thank you.

18         (Record read)

19         MR. ZAS:  Your Honor, I'm sorry.  The difficulty we

20    are having is we think in there is a lot of law, and by having

21    Mr. Schulte answer we don't want to concede that it is a

22    correct statement of the law.  So, he understands what you are

23    saying but because he is not a lawyer and that was not our

24    understanding, I'm not sure that he is prepared to say that he

25    understands it to be a correct statement of the law.  But, he

1   does understand what the question is.

2              THE COURT:  All right.  Does he understand that that's

3   what I am going to rule?

4              (Defendant and counsel conferring)

5              THE DEFENDANT:  I understand that if that's what your

6   Honor is ruling that's what you are ruling.

7              THE COURT:  And, Mr. Schulte, do you understand that

8   if a new attorney is appointed, he or she will not be entitled

9   to revisit the rulings that have already been made in this

10  case?  We are not going backwards, the new lawyer will take the

11  case as he or she finds it.

12             (Defendant and counsel conferring)

13             THE DEFENDANT:  Your Honor, I'm not a lawyer so I

14  understand your question, but I can't make any decision whether

15  that's true or not.

16             THE COURT:  Okay.  I understand.  But, just so you

17  understand, if a new lawyer is appointed, we are not going to

18  go back and redo the Section 4 decisions or the 6(a) decisions

19  or the suppression issues.  They will take the law as they find

20  it and has already been determined by the Court.  I'm not going

21  to allow a new attorney to relitigate positions that have

22  already been established.

23             (Defendant and counsel conferring)

24             THE DEFENDANT:  Again, I understand the question but

25  that's something for the new trial team.  If they file things

1    it is up to the Court to make its rulings at that point.

2              THE COURT:  Just so you understand, my rulings are

3    going to be we are not going to go back and revisit issues that

4    have already been decided because we have a new attorney.

5              Do you understand that?

6              THE DEFENDANT:  If that's the Court's ruling.

7              THE COURT:  I am telling you that will be my court

8    ruling.

9              THE DEFENDANT:  Okay.  I understand what you are

10   saying.

11             THE COURT:  I know you are not a lawyer but I want to

12   call to your attention that under the Rules of Evidence, I have

13   the power to exclude evidence if its probative value is

14   substantially outweighed by the danger of one or more of the

15   following:  Unfair prejudice, confusing the issues, misleading

16   the jury, undue delay, wasting time, or needlessly presenting

17   cumulative evidence.

18             THE DEFENDANT:  Yes.

19             THE COURT:  And, with regard to cumulative evidence, I

20   want to tell you that if you want to call Mr. Larsen and

21   Ms. Shroff to testify on your behalf, it will be up to the

22   Court to determine whether the evidence they offer is

23   admissible at trial in this case.

24             THE DEFENDANT:  Yes.

25             THE COURT:  Now, you consulted with Mr. Maher.  Do you

JCi5schC5                    Curcio Hearing

1    want additional time to consult with Mr. Maher about any of the

2    proceedings that we are conducting now?

3           (Defendant and counsel conferring)

4           THE DEFENDANT:  No.  I don't need any more time.

5           THE COURT:  I am willing to appoint Mr. Maher for

6    future consultations if you wish that, Mr. Schulte.

7           THE DEFENDANT:  Okay.

8           THE COURT:  After considering all that I have said

9    today, Mr. Schulte, about the ways in which calling Mr. Larsen

10   and Ms. Shroff as witnesses could adversely affect your

11   defense, do you believe that it is in your best interest to

12   call Mr. Larsen or Ms. Shroff, or both, to testify about advice

13   they provided you as attorneys in this matter?

14          (Defendant and counsel conferring)

15          THE DEFENDANT:  At this time I want the ability to

16   call both.

17          THE COURT:  Do you understand that if you call both

18   you would be waiving the attorney-client privilege as I have

19   described it to you?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Are you knowingly and voluntarily waiving

22   your attorney-client privilege as to the subject matter of the

23   testimony of your attorneys?

24          THE DEFENDANT:  No.

25          THE COURT:  And you will do that when?  When you make

1    your decision?

2                (Defendant and counsel conferring)

3                MR. MAHER:  Again, your Honor, the same as what I

4    expressed earlier, that I don't believe now is the time that

5    Mr. Schulte has to make this election and further down the road

6    will be that time.  But, we are nowhere near there yet, your

7    Honor.

8                THE COURT:  Well, I disagree with you, Mr. Maher, but

9    I'm going to give you the opportunity to brief the topic.

10               MR. MAHER:  Thank you.

11               THE COURT:  Mr. Schulte, do you understand that by

12   calling an attorney to testify, the government may be entitled

13   to admit evidence to rebut the testimony which the government

14   might not otherwise be entitled to offer against you?

15               THE DEFENDANT:  Yes.

16               THE COURT:  Finally, if there is a post-conviction

17   argument on appeal or otherwise -- I won't ask you that

18   question.

19               Is there anything that I have asked you or said to you

20   that you wish to have explained further?

21               THE DEFENDANT:  No.

22               THE COURT:  Mr. Zas, do you have anything further?

23   Mr. Maher?

24               MR. MAHER:  I do not.

25               MR. ZAS:  One minute, your Honor, please?

1            (Defendant and counsel conferring)

2            MR. ZAS:  Your Honor, just one point of law.

3            We have all sort of proceeded under the assumption

4    that the decision of whether to waive the right to call lawyers

5    as witnesses at trial belongs to Mr. Schulte himself and there

6    is authority that, in fact, it may be a non-waivable conflict.

7    I just wanted to bring that authority to your attention.  I

8    think the leading case is *MacArthur v. Bank of New York*, 524

9    F.Supp. 1205, it is a Southern District case by the late Judge

10   Sofaer.

11           THE COURT:  He is not late.

12           MR. ZAS:  He is not late?  I stand corrected.

13           THE COURT:  Yes.  He is still with us.

14           MR. ZAS:  I apologize to the living Judge Sofaer and

15   to the Court.

16           But, I just wanted to bring that to your attention.

17   On page 1209 of that decision it just says, in relevant part,

18   nor may the client waive the Rule's protection -- referring to

19   the Advocate Witness Rule -- by promising not to call the

20   attorney as a witness.  The Court then goes on to explain why

21   that's the case.

22           But I just wanted to put that out because there is a

23   serious question as to whether even if Mr. Schulte wanted to

24   waive whether it is the kind of dilemma or conflict that he can

25   waive.

1          Other than that, I have nothing to add.

2          THE COURT:  The letters of August 26 and October 10

3    were written -- were they *ex parte* letters, Ms. Shroff?

4          MS. SHROFF:  They were, your Honor.  There was an

5    *ex parte* version and the on notice version.  There were two

6    different versions because there was no waiver.

7          THE COURT:  I'm going direct that the letters of

8    August 26, 2019 and October 10, 2019, plus the letter of

9    December 13, 2019, which refer to the legal advice given by

10   Federal Defenders, be produced to the government.

11         MS. SHROFF:  Your Honor, most respectfully I am not

12   able do that because Mr. Schulte hasn't waived privilege.

13         THE COURT:  You can brief the point.

14         MS. SHROFF:  And additionally, your Honor, it is our

15   position that he should be informed by totally independent

16   counsel --

17         THE COURT:  He has been informed by totally

18   independent counsel.  Mr. Maher is independent.

19         MS. SHROFF:  Mr. Maher, unfortunately, doesn't know

20   the case so somebody who knows the case needs to inform

21   Mr. Schulte, somebody totally outside of the Federal Defenders

22   who does not owe a duty of loyalty to Mr. Larsen, to the other

23   individuals we discussed at the side bar, or to me, or to the

24   office itself, because having anybody from the Federal

25   Defenders involved in this decision is, per se, a conflict,

1    because they have to worry about their own lawyers, their

2    institution, and then Mr. Schulte.  So, this decision should be

3    made by entirely separate counsel who is aware of the facts of

4    the case and can advise him.

5         THE COURT:  Okay.  I am directing you, if you don't

6    produce the materials that I ordered you to produce, I am going

7    to allow you to brief the point.  I believe that Mr. Schulte,

8    through his letters -- your letters of August 26, October 10,

9    and December 13, coupled with his testimony today, there has

10   been already a waiver of the attorney-client privilege and I

11   appointed Mr. Maher to advise Mr. Schulte.

12        I am not making any rulings today but I want to

13   resolve this issue because I think it has to be resolved.  If

14   there is going to be new counsel appointed, new counsel has to

15   be appointed sooner rather than later, otherwise the case will

16   be delayed further than it ought to be.

17        And so, I am directing you to produce the information.

18   If you don't produce the information I will take briefs on the

19   issue of why you can't take the position, or if you can take a

20   position what your position is.  I will take briefing from the

21   government as well.  But I think that there is -- I think it is

22   pretty clear reading between the lines what it is you have told

23   you advised Mr. Schulte and I don't see this as a Sixth

24   Amendment constitutional issue.  But, I could be wrong on that

25   but you will tell me if I am wrong.  But, in the meantime, what

1    is pending before the Court is a motion to disqualify counsel.

2    I think I am going to, for the reasons I have already

3    articulated, deny the motion to disqualify the Federal

4    Defenders.  This is the third application for similar relief

5    and I am denying it again.

6              Is there anything else to take up today, that we

7    should take up?

8              MR. ZAS:  Your Honor, I'm sorry.  Just to clarify your

9    ruling, is it deny the motion to disqualify Federal Defenders

10   and Ms. Shroff treated as one?  Or are you reserving on

11   Ms. Shroff?

12             THE COURT:  No.  I am denying the motion to disqualify

13   Federal Defenders and Ms. Shroff.

14             MR. ZAS:  Thank you.

15             MR. MAHER:  The briefing schedule, does your Honor

16   have a date?

17             THE COURT:  No.  I was going to ask what your wishes

18   were.  The holidays are coming up.  When can we get the

19   briefing in?

20             Mr. Denton?

21             MR. DENTON:  Your Honor, if they want to pick a date,

22   I think the government will be in position to respond a day or

23   two later.

24             MS. SHROFF:  Your Honor, could we just have one

25   second?

JCi5schC5                          Curcio Hearing

1          THE COURT:  Yes.

2          (Defendant and counsel conferring)

3          MR. ZAS:  Your Honor, I'm sorry.  Forgive us because

4    either it is late in the day or I am just stubborn.

5          The briefing your Honor wants is specifically on the

6    issue of whether there has already been a waiver of the

7    attorney-client privilege such that it is appropriate to order

8    us to disclose to the government the unredacted letters?  Is

9    that the issue?

10         THE COURT:  I want you to produce the unredacted

11   letters.  If you are not going to produce the unredacted

12   letters as Ms. Shroff suggests, I will accept your brief as to

13   why you don't have to produce it.  I believe that there has

14   been a waiver already.

15         MR. ZAS:  Yes.  We are working on the schedule because

16   we have our opposition to the motions *in limine* due on Monday

17   and then we are into Christmas week so just one second, your

18   Honor.

19         (Defendant and counsel conferring)

20         MR. ZAS:  Your Honor, would January 3rd be acceptable

21   to the Court?

22         THE COURT:  Friday, January 3rd?

23         MR. ZAS:  Yes, sir.

24         THE COURT:  Mr. Denton.

25         MR. DENTON:  We can get you something on Monday the

JCi5schC5                          Curcio Hearing

1      6th, your Honor.

2                  MR. ZAS:  Your Honor, can I ask you one clarifying

3      question?  I know you denied the motion to disqualify us.  We

4      don't want to belabor the point with any further requests but

5      is that a final determination or is that pending the briefing

6      we are about to submit on this privilege waiver?

7                  THE COURT:  It is a final decision.  I will revisit it

8      if you convince me otherwise.

9                  MR. ZAS:  Thank you, sir.

10                  THE COURT:  Now, what about continuing with the 6(c)

11     matter?

12                  MR. DENTON:  The government is available at the

13     Court's convenience, your Honor.

14                  THE COURT:  What is your availability, and

15     Mr. Schulte?  Are you available tomorrow or Friday?  Monday?

16                  MS. SHROFF:  Your Honor, tomorrow we have a SCIF day

17     with Mr. Schulte and you wanted us to go through the documents

18     that the government has now excised out and review all of them,

19     so it would be better for us if we came back Monday.

20                  THE COURT:  Monday.  What time?  Monday from 10:00 to

21     1:00.

22                  MS. SHROFF:  Sorry.  I am in the wrong year -- sure.

23                  THE COURT:  Monday the 23rd from 10:00 a.m. to 1:00

24     p.m.  I was confusing the 20th with the 23rd.  We can meet on

25     Monday from 9:30 in the morning until whenever we want to end

1    the session.  We will go until 3:00 or 4:00 on Monday.

2                MR. DENTON:  I think our hope, your Honor, is that we

3    don't have that much left.

4                THE COURT:  Right.

5                MR. DENTON:  Certainly the documents other than the

6    ones that we are going to take back and keep working on.  So if

7    your Honor has the time on Friday, we would be happy to do it

8    then but otherwise Monday is fine.

9                THE COURT:  I can do it on Friday.  I am limited; from

10   10:00 in the morning to 1:00 in the afternoon.

11               MR. DENTON:  I think that would probably be fine, your

12   Honor.

13               THE COURT:  Ms. Shroff?

14               MS. SHROFF:  Your Honor, do you think I could let you

15   know by 1:00 tomorrow?  Because I want to see how much I get

16   through with him in the SCIF.

17               THE COURT:  Yes, you can let me know, but I think

18   there is a lot of work that we can get done and there is a

19   number of issues that have been reserved on where Mr. Laroche

20   set he would meet and review his position.

21               MS. SHROFF:  I understand.  I will try and work

22   through the issues they raised with their exhibit list today

23   and hopefully Mr. Laroche will get back to us about Government

24   Exhibit 1 which seems to still be pending.

25               So, if we can resolve any portions of that and get

1    some work done in the SCIF then Friday would be fine.  I don't

2    want to belabor this.

3            THE COURT:  Well, let's start Friday from 10:00 to

4    1:00 and we have all day Monday as well, the 23rd.

5            MS. SHROFF:  Okay.

6            THE COURT:  Is that it for today?

7            MR. MAHER:  One last thing, your Honor, on my behalf.

8            THE COURT:  Yes.

9            MR. MAHER:  As your Honor brought up earlier,

10   Mr. Schulte has indicated he would like the ability to consult

11   with me I think continually or longer on this issue.  Is that

12   permissible, from the Court's perspective?

13           THE COURT:  Yes.  Not only is it permissible, it is

14   desirable.  So, if you want to submit a letter extending your

15   appointment under the CJA, I would be happy to so order it.

16           MR. MAHER:  Thank you.

17           THE COURT:  If there is nothing else, I will see you

18   on Friday.

19           MR. DENTON:  Thank you, your Honor.

20           MR. LAROCHE:  Thank you, your Honor.

21                             o0o

22

23

24

25