UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-13-2020

```
---------------------------------------------------------X
                                                         :
UNITED STATES OF AMERICA,                                :
                                                         :
        -against-                                        :
                                                         :
JOSHUA ADAM SCHULTE,                                     :
                                                         :
                       Defendant.                        :
                                                         :
---------------------------------------------------------X
```

S2 17 Cr. 548 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Defendant Joshua Schulte has been indicted for stealing national defense information from the Central Intelligence Agency ("CIA") and transmitting it to WikiLeaks. Schulte's trial is scheduled to begin on February 3, 2020. All parties have an interest in a timely trial. Most significantly, as both the defense and Government concede, delays of this trial impose a substantial hardship on Schulte who has been detained pretrial at Metropolitan Correctional Center ("MCC") for a significant period under special administrative measures. (Dkt. 128 at 4; Dkt 131 at 9.) "Although a great many accused persons seek to put off the confrontation as long as possible, the right to a prompt inquiry into criminal charges" and a prompt trial are fundamental. *Dickey v. Fla.*, 398 U.S. 30, 37–38 (1970); *Klopfer v. State of N.C.*, 386 U.S. 213, 223 (1967). Thus, notwithstanding recent defense motions[1] that appear to be calculated to "put off confrontation," the Court has an "affirmative obligation" to provide a prompt trial for Schulte. *See United States v. Black*, 918 F.3d 243, 253 (2d Cir. 2019) ("Pursuant to the Sixth

---

[1] *See* Def. Severance Mot., dated Aug. 26, 2019 (Dkt 128); Def. Disqualification Mot., dated Oct. 10, 2019 (Dkt. 150); Def. Adjournment Letter, dated Nov. 27, 2019 (Dkt. 202); Classified Def. Adjournment Letter, dated December 3, 2019; Def. Ineffective Assistance Letter, dated Dec. 13, 2019 (Dkt. 220); Maher Testimony Letter, dated Dec. 13, 2019 (Dkt. 218); Reconsideration of Disqualification Letter, dated Jan. 2, 2020 (Dkt. 231).

Amendment, the court and the government owe an affirmative obligation to criminal defendants and to the public to bring matters to trial promptly.").

At a hearing on December 18, 2019, the Court ruled determined that Schulte had waived the attorney-client privilege with respect to certain legal advice he received while at the MCC that he intends to introduce at trial as part of his defense. The Court provided the parties an opportunity to brief the issue. In a letter dated January 3, 2020, Schulte claims the attorney-client privilege has not been waived because he has not "announce[d] a final decision" as to whether to present his lawyer's testimony at trial. (*See* Dkt. 232.) Schulte, however, has repeatedly asserted reliance on his lawyer's advice (and testimony) for trial and retains his right to call his lawyers at trial. He has invoked the attorney-client privilege to justify a third severance of his upcoming trial and disqualification of his own attorneys and the entire office of the Federal Defenders of New York. (*See* Dkt. 128; Dkt. 150.) The Government contends that Schulte has waived his privilege over these communications by seeking affirmative relief from the Court in reliance on his counsel's advice and by giving notice that he intends to rely on counsel's advice at trial. (Dkt. 241 at 1.)

There is no doubt Schulte has impliedly waived the attorney-client privilege by relying on the advice of counsel for his defense and by affirmatively injecting the advice of counsel to persuade this Court to grant extraordinary pretrial relief. The Defendant is directed to disclose the attorney-advice that Schulte relies on to defend against the Government's allegations, which is set forth in the Defendant's letters dated August 26, 2019 (Dkt. 128) and October 10, 2019 (Dkt. 150).

## BACKGROUND

Defendant Joshua Schulte has been incarcerated in MCC since December 14, 2017. He was initially released on bail, but bail was revoked after this Court found that Schulte violated the terms of his release relating to unauthorized use of the Internet. The Second Circuit subsequently affirmed the Court's detention order. *United States v. Schulte*, 18-145, Order, Dkt. 34 (2d Cir. Mar. 6, 2018). While at MCC, Schulte violated the terms of his protective order and was charged with disclosing classified information using contraband cellphones in counts four and eleven of the superseding second indictment ("MCC Counts").[2] Schulte's alleged use of contraband cellphones and disclosure of classified information led to search of the MCC premises and the FBI recovered contraband cellphones and notebooks, which Schulte labeled "ATTORNEY CLIENT PRIVILEGE." The notebooks contained Schulte's handwritten notes.

The evidence in support of the MCC Counts includes, *inter alia*, evidence showing that Schulte used the contraband cellphones, evidence of emails Schulte sent to a reporter attaching a Protected Search Warrant and the Classified Search Warrant, evidence Schulte posted on Social Media Accounts where he claimed the FBI was seeking to frame him, and prison calls between Schulte and a member of the media. The Government learned of Schulte's misconduct through a confidential informant who provided the Government with photographs and video of Schulte using the contraband cellphones as well as images of screenshots of the contraband cellphones being used to transmit documents. The seized notebooks contain a list of Encrypted Email Accounts and the passwords, draft tweets including classified information, a note to "schedule tweets," and a to-do list that included "delete suspicious emails." Finally, the notebooks contain

---

[2] Count Four charges Schulte with transmission or attempted transmission of classified information in violation of 18 U.S.C. § 793(e). Count Eleven charges Schulte with Contempt of Court.

3

writings declaring an "information war" against the United States and a "Malware Article" that appear to be intended for public dissemination. The notebook is alleged to contain evidence of Schulte's knowledge of non-public CIA information possessed by Wikileaks.

On August 26, 2019, the defendant raised a purported ethical issue (i.e., the advocate-witness rule) concerning privileged advice provided to Schulte and contended that the issue required severing the MCC Counts. (Dkt. 128.) According to defense counsel, "two attorneys from the Federal Defender's office have favorable, relevant, and admissible testimony to provide in Mr. Schulte's defense to" the MCC Leak Count. (Dkt. 128 at 1.) Defense counsel submitted that to prove the MCC Leak Count, the Government would have to show, *inter alia*, that the defendant "acted willfully, i.e., voluntarily and intentionally, and with the specific intent to do something that the law forbids, namely with a bad purpose either to disobey or disregard the law." (*Id.* at 2.) Defense counsel urged that the Government would seek to introduce excerpts of Schulte's writings in his notebooks as evidence of his specific intent to violate the law." (*Id.*) "To *defend against* the [G]overnment's allegations," the defense stated to this Court that "Schulte *would call two of his attorneys*—Matthew B. Larsen and Sabrina S. Shroff to present favorable testimony bearing on his state of mind." (Dkt. 128 at 2) (emphasis added). Defense counsel did not explain why they waited almost one year to raise this purported ethical issue.[3]

On September 26, 2019, the Court denied the motion for severance based on the advocate-witness matter and the request for *Curcio* counsel. (Dkt. 147.) The Court held that the advocate-witness matter could be avoided because Mr. Larsen who provided the testimony at

---

[3] Defense counsel allegedly provided this advice over a year before raising the issue. And defense counsel has been on notice since at least December 2018 that the Government believed that the materials recovered from the MCC Warrants were relevant to not only the MCC Counts but also the WikiLeaks counts. Yet, defense counsel waited until August 26, 2019 to raise the purported ethical issue.

issue is not on Schulte's trial team and could testify as to Schulte's state of mind. The Court further noted that "the Defendant ha[d] not identified any additional testimony that only trial counsel (Ms. Shroff) possess." (Dkt. 147 at 4.) The Court further emphasized that Mr. Larsen's purported advice was undisputedly favorable to Schulte and would be provided to defend against the Government's allegations and thus, Ms. Shroff would not be disqualified under Rule 3.7(b).

On October 10, 2019, Schulte again placed the attorney-client privilege at issue. The Federal Defenders moved to disqualify themselves from representing Schulte, acknowledging that the request would delay Schulte's trial and cause him substantial hardship. (Dkt. 150 at 1-2.) Schulte asserted that Mr. Larsen and Ms. Shroff—"have important and admissible testimony to offer in Mr. Schulte's defense." (*Id.* at 2.) Defense counsel filed the October 10 Letter *ex parte* "to avoid disclosing to the prosecutors the favorable defense testimony discussed herein, which reveals not only defense strategy but also *the substance of privileged attorney-client communications*." (Dkt. 150 at n.1.) (emphasis added). In the October 10 Letter, counsel elaborated on the advice provided to Schulte and the purported favorable testimony of Larsen and Shroff. In arguing that Ms. Shroff was "likely to be an important witness at Schulte's trial," defense counsel urged that the Government had made clear that "it intends to rely at trial on [Schulte's writings in] the MCC notebooks to prove, *inter alia*, that Mr. Schulte illegally attempted to transmit national defense information from the MCC i.e., that he intended to transmit the information and took a substantial step towards doing so." (Dkt. 150 at 4.)

According to defense counsel, since "Ms. Shroff is both lead trial counsel and one of the potential fact witnesses on an important subject, she cannot objectively assess [the strategy decision of] whether she or Mr. Larsen would make the most effective witness" or whether "both witnesses are essential." (*See* Dkt. 150, at 3, 6.) Defense counsel further submitted that "an

independent lawyer could reasonably conclude that Ms. Shroff's testimony is necessary because, without it, Mr. Larsen's testimony will be uncorroborated." (*See id.* at 4.)  Defense counsel conceded that the relief sought (i.e., disqualification) would be unnecessary if the MCC notebooks were not used at trial. (Dkt. 150 at n.5.)  Alternatively, the Federal Defenders renewed their request to "appoint *Curcio* counsel to advise Schulte with respect to the potential testimony of" Larsen and Shroff.  (Dkt. 150, at 2.)  The Government did not oppose the request for *Curcio* counsel.   The Court appointed *Curcio* counsel, Sean Maher, to advise Schulte on, *inter alia*, the attorney-witness matter and the advisability of pursuing such testimony.

On December 13, 2020, defense counsel invoked the privilege again. (Dkt. 220.)  The so-called favorable testimony that Schulte intends to introduce through Mr. Larsen and Ms. Shroff is now potentially the basis for a pretrial ineffective assistance of counsel claim.

The Court reviewed extensive submissions on this matter from counsel and appointed counsel for the defendant.[4]  The Court then held a *Curcio* inquiry on December 18, 2019.  The Court questioned defense counsel about the purported advice at issue.  Of course, defense counsel does not take the position that they advised Schulte to sneak contraband cellphones into MCC, nor did they advise Schulte to share classified information with reporters, which is precisely what Schulte is charged with in the MCC Counts.  (*See* Hr'g Tr. Dec. 18, 2019, Dkt. 246 at 9:21-10:7.)

The Court confirmed with defense counsel that there was no additional testimony on the matter other than the testimony stated in the letters dated August 26 (Dkt. 128) and October 10

---

[4] *See* Def. Severance Mot., dated Aug. 26, 2019 (Dkt. 128); Gov. Opp'n, dated Aug. 30, 2019 (Dkt. 131); Def. Reply, dated Sept. 12, 2019 (Dkt. 139); Def. Disqualification Mot., dated Oct. 10, 2019 (Dkt. 150); Gov. Opp'n, dated Oct. 15, 2019 (Dkt. 154); Def. Reply, dated Oct. 16, 2019 (Dkt. 157); Def. Ineffective Assistance Letter, dated Dec. 13, 2019 (Dkt. 220); Maher Testimony Letter, dated Dec. 13, 2019 (Dkt. 218); Gov. Letter Dec. 18, 2019 Hearing (Dkt. 219); Reconsideration of Disqualification Letter, dated Jan. 2, 2020 (Dkt. 231).

(Dkt. 150)—counsel confirmed there was none. (*See* Hr'g Tr. Dec. 18, 2019, Dkt. 246 at 3:24-4:7; 17:2-24.) The Court then questioned Schulte to determine whether he had an adequate opportunity to consult with *Curcio* counsel, to ensure he understands the consequences of the decision (e.g., waiver of attorney-client privilege), and to determine whether he wishes to call Mr. Larsen and/or Ms. Shroff at trial. At the hearing, Schulte stated he wishes to retain his right to call both Mr. Larsen and Ms. Shroff at trial. (*See* Hr'g Tr. Dec. 18, 2019, Dkt. 246 at 3:1-4; 27:14-20.) The Court ruled that Mr. Schulte had waived the attorney-client privilege, (*see* id. at 5:12-14; 43:7-10) but gave Mr. Schulte another opportunity to brief the issue.

On January 2, 2020, defense counsel renewed the request for disqualification dropping the advocate-witness rule as the basis for disqualification. (Dkt. 231.) This time, defense counsel contends that the so-called favorable testimony is ineffective advice-of-counsel requiring disqualification. Defense counsel concedes CJA co-counsel, James Branden, has no conflict. (*Id.* at n.2.)

## DISCUSSION

### I.    Implied Waiver and Advice-of-Counsel Defense

The Second Circuit has recognized that courts have found implied waiver (1) "when a client testifies concerning portions of the attorney-client communication, ... [(2)] when a client places the attorney-client relationship directly at issue, ... and [(3)] when a client asserts reliance on an attorney's advice as an element of a claim or defense." *In re Cty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008). In all three circumstances, the privilege holder has made a conscious decision to inject as an issue the otherwise privileged communications. As the Second Circuit explained, the "key" to finding implied waiver in the third instance is "some showing by the

party arguing for waiver that the opposing party *relies* on the privileged communication as a claim or defense or as element of a claim or defense." *Id.* at 228.

Implied waiver is grounded in the "notion of fairness," and determinations of fairness must be decided on a case-by-case basis, in the specific context in which the privilege has been asserted. *Id.* at 229 (citing *In re Grand Jury Proceedings*, 219 F.3d 175, 183 (2d Cir. 2000)). In *Erie*, the Second Circuit concluded that a finding waiver is justified "when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion." *Id.* The thrust of that conclusion is that "the attorney-client privilege cannot at once be used as a shield and a sword." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991).

The parties agree that a defendant's reliance on advice of counsel[5] as a defense waives the attorney-client privilege. (Dkt. 232 at 3; Dkt. 241 at 1.) Schulte, however, claims that the privilege is not waived because he has not "announce[d] a final decision" as to whether to proceed with an advice-of counsel defense. (Dkt. 232 at 7.)[6] The defendant's position is belied by the record and specific context in which the privilege has been asserted in this case. The defendant has no fewer than five times relied on advice of counsel in seeking to persuade this Court to grant a variety of extraordinary measures including a third severance of his trial, the

---

[5] In criminal cases, the "thrust of [the advice-of-counsel defense] is that the defendant, on the basis of counsel's advice, believed his conduct to be lawful and thus could not be found to have had unlawful intent." *United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1194 (2d Cir. 1989). The issue may also arise where a defendant seeks to introduce evidence, or argue to the jury, that the advice of a lawyer tended to negate his *mens rea*. *See United States v. Scully*, 877 F.3d 464, 478 n.6 (2d Cir. 2017) ("Reliance on the advice of counsel, in cases where fraudulent intent is a required element for guilt, is a defense that tends to refute the government's proof of such intent.")

[6] To the extent Schulte's motion discusses express waiver it misses the point. The Government has not argued an express waiver theory.

disqualification of the entire Federal Defenders of New York, and an adjournment of trial based on an unprecedented pretrial claim of ineffective assistance of counsel.

There can be no dispute that Schulte's letters rely on advice of counsel for his defense. Contrary to the defense's disingenuous suggestion (*see* Dkt. 232 at 6), Schulte has repeatedly stated to this Court that his lawyers "would testify" as to the advice of counsel at trial on the element of scienter. *See* Def. Severance Mot., Dkt. 128, at 2 ("To *defend against* the [G]overnment's allegations, Mr. Schulte *would call two of his attorneys*—Matthew B. Larsen and Sabrina S. Shroff to present favorable testimony bearing on his state of mind.") *id.* ("At trial on the MCC Counts, Mr. Larsen and Ms. Shroff would testify about this advice to Mr. Schulte"); *id.* at 3 (describing Larsen and Shroff as "key witnesses" on the issue of "Schulte's scienter with respect to count four"); Def. Disqualification Mot., Dkt. 150 at 4 (arguing that "Ms. Shroff's testimony is necessary because, without it, Mr. Larsen's testimony [at trial] will be uncorroborated."). Before the *Curcio* inquiry, Schulte again confirmed to this Court that he is relying on advice of counsel for his defense. *See* Maher Testimony Letter, dated Dec. 13, 2019, Dkt. 218 at 1 ("Mr. Schulte wants to have the ability to call both Ms. Shroff and Mr. Larsen at trial as fact witnesses in his defense."). When asked at the December 18, 2019 hearing, Schulte again invoked his right to call his lawyers to testify on his behalf at trial.[7] This series of submissions and statements to the Court are sufficient to show that Schulte "*relies* on privileged communications as an element of a claim or defense." *In re Cty. of Erie*, 546 F.3d at 228.

---

[7]     The Court: Let me ask Mr. Schulte, do you want to have Mr. Larsen and Ms. Shroff called as witnesses to testify on your behalf?

The Defendant: Yes

Hr'g Tr. Dec. 18, 2019, Dkt. 246 at 3:1-4.

The specific context of this issue is critical to the Court's decision. *See id.* at 229 ("Underlying any determination that a privilege should be forfeited is the notion of unfairness" that results when a party attempts to use the attorney client privilege as both a sword and a shield). The Court is troubled by defense counsel's numerous attempts to invoke privilege to alter the trial. *See Clark v. United States*, 289 U.S. 1, 15 (1933) ("The privilege takes flight if the relation is abused."). Defense counsel cannot now rewrite the record to avoid the result of their own actions.[8] At best, it is disingenuous for the defense to take the position now that Schulte has not relied on the advice of counsel as an element of his defense after requesting that the Court grant various forms of relief on the grounds that his lawyers are necessary trial witnesses with favorable testimony bearing on Schulte's state of mind.[9] In short, defense counsel seeks to use the privilege as a sword and shield—they seek to influence the Court to grant extraordinary relief while denying the Government the ability to respond. *See Bilzerian*, 926 F.2d at 1292 ("A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes.").

Defense counsel's position is untenable—seeking pretrial relief by asserting reliance on the advice-of-counsel as an element of the defense and by placing the attorney-client relationship directly at issue, and yet claiming that there is no implied waiver because there has been no formal announcement by the defendant. To adopt the defense's position would effectively read

---

[8] The Defense's argument that Schulte submitted privileged information to the Court *ex parte* for the limited purpose of determining whether counsel can ethically continue to represent a party is also meritless. The Court ruled in September that there was no ethical conflict because Mr. Larsen could testify and was not on Schulte's trial team. (Dkt. 247.) The defense then submitted a new motion in October seeking to disqualify the Federal Defenders, which it justified by claiming that Ms. Shroff had necessary testimony beyond Mr. Larsen's testimony concerning privileged advice for Schulte's defense.

[9] Nothing in this opinion prohibits Schulte from changing his mind and ultimately forgoing his counsel's testimony. He is also free to testify without getting into his state of mind.

10

out of the law two of the three bases for implied waiver recognized by the Second Circuit, leaving only "testifying concerning portions of the attorney-client communication" remaining as a basis for implied waiver.[10]  Under defense counsel's theory, a defendant could submit pleadings to the Court and state on the record they wish to call lawyers for an advice of counsel defense while maintaining that they have not made "a final decision" to avoid implied waiver. Here, fairness requires *pretrial* waiver because the defense is seeking significant *pretrial* relief— by asserting reliance on advice of counsel for Schulte's defense and by placing the attorney-client relationship at issue; the Government is unable to fully respond to pending motions, which need to be decided before trial.

District courts have "inherent authority to manage the course of its trials" and "their own affairs so as to achieve the orderly and expeditious disposition of cases." *See e.g.*, *Palmieri v. Defaria*, 88 F.3d 136, 140 (2d Cir. 1996) (internal citations omitted); *United States v. Perez*, No. 09 CR 1153 MEA, 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011).  "In our adversary system, *ex parte* motions are disfavored." *Ayestas v. Davis*, 138 S. Ct. 1080, 1091 (2018).  In the criminal context, "fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights." *United States v. Abuhamra*, 389 F.3d 309, 322–23 (2d Cir. 2004)

---

[10] Defendant offers a grab bag of out-of-district cases to support his arguments, none of which is persuasive.  In particular, the defendant relies on *United States v. Wilkerson*, 388 F. Supp. 3d 969, 974 (E.D. Tenn. 2019). *Wilkinson* is inapposite.  The defendant in *Wilkinson* had not asserted reliance on an advice of counsel defense in pleadings to the Court.  Instead, the Government's concerns and request for disclosure arose from the Government learning that some of the Defendants had previously "met with counsel regarding the scheme" and that some have "stated to others" that they had "cleared" the alleged scheme "through their attorneys. *Id.*  Significantly, there is no indication that the defendant in *Wilkinson* injected as an issue privileged-communications to obtain pretrial relief, such as a third severance of the trial or disqualification of the entire Federal Defenders office while denying the Government the opportunity to respond.

(quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 170 (1951) (Frankfurter, J., concurring)).

The defense has made several *ex parte* pretrial motions invoking the attorney-client privilege to persuade the Court to sever the trial a third time, to disqualify the entire Federal Defenders of New York—counsel on this case for nearly two years, and to adjourn this trial for up to a year.  And the Government has been denied the opportunity to respond, to object to the purported advice-of-counsel testimony, or to offer any evidence or proposals that could moot the issue completely.  (*See* Dkt. 241 at 5, n.4.)[11]  The result is that the Court is forced to make significant decisions without complete information that would cause substantial hardship to Mr. Schulte, burdensome trial delay, and potentially unnecessary interruption and needless expense of judicial resources.  The Court declines to do so.

Accordingly, the Court will in its discretion grant the Government's motion for disclosure of the waived advice-of-counsel defense materials.  By January 15, 2020, Defendant must disclose all *ex parte* letters concerning the purported testimony to the Government.[12]  *See e.g.*, *United States v. Scali*, No. 16-CR-466 (NSR), 2018 WL 461441, at *8 (S.D.N.Y. Jan. 18, 2018) (holding defendant asserted an advice-of-counsel defense in pleadings and requiring defendant to produce discovery relating to advice-of-counsel defense before trial); *United States v. Hatfield*, No. 06-CR-0550 (JS), 2010 WL 183522, at *13 (E.D.N.Y. Jan. 8, 2010) (ordering defendant to disclose whether they intend to rely on advice-of-counsel and to disclose all

---

[11] The Government suggests that the Defendant may be precluded from asserting an advice-of-counsel defense but does not make the argument forthright.  (Dkt. 131 n. 7; Dkt. 241 n.4.)  Fairness and judicial economy weigh in favor of addressing this issue before trial.

[12] These letters include Def. Severance Mot., dated Aug. 26, 2019 (Dkt 128); Def. Disqualification Mot., dated Oct. 10, 2019 (Dkt. 150); Def. Ineffective Assistance Letter, dated Dec. 13, 2019 (Dkt. 220); Maher Testimony Letter, dated Dec. 13, 2019 (Dkt. 218); Reconsideration of Disqualification Letter, dated Jan. 2, 2020 (Dkt. 231).

documents concerning their intended advice of counsel defense before trial).   Failure to provide

this discovery will preclude reliance on an advice-of-counsel defense at trial.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Government's motion for disclosure

concerning the advice-of-counsel defense.  By January 15, 2020, Defendant must disclose all *ex*

*parte* letters concerning the purported testimony to the Government.


Dated: New York, New York                       SO ORDERED
      January 13, 2020

                                      PAUL A. CROTTY
                                      United States District Judge