**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 28, 2020

<u>Via ECF</u>
The Honorable Paul A. Crotty
United States District Judge
Southern District of New York
United State Courthouse
500 Pearl Street, Courtroom 14C
New York, New York 10007

Re:    *United States v. Joshua Adam Schulte*, S2 17 Cr. 548 (PAC)

Dear Judge Crotty:

　　　The Government respectfully submits this letter in response to the defense's letter (the "Defense Letter"), dated January 28, 2020, in which they claim that the portions (the "Selections")[1] of the defendant's prison notebooks (the "MCC Notebooks") upon which the Government intends to rely at trial should not be admitted into evidence.  The Government is mindful of the Court's January 15, 2020 admonishments regarding the MCC Notebooks.  (Dkt. 252).  But the Selections need not establish crimes in and of themselves.    Rather, the Selections—subject to the modifications below—are admissible and not unduly prejudicial because they reflect the defendant's state of mind as to charged offenses and provide a roadmap of critical aspects of his criminal conduct, linking his intent to harm the United States to his actions and tying him inextricably to the Contraband Cellphones, Encrypted Email Accounts, and Social Media Accounts that he used to try to stage his information war.  The Selections therefore reflect conduct that is part of the basis for Count Four (the MCC Leak Charge) and Count 11 (the Contempt Charge), as well as evidence of motive and intent that is admissible as to all Counts.

　　　The defense begins by relying on what are, in essence, unpersuasive jury arguments seeking wholesale exclusion of the MCC Notebooks.[2]  For example, the defense seeks to preclude the MCC Notebooks in their entirety on the basis that, in their view, the Selections reflect feelings

---

[1] The Selections are described in detail in the Government's January 21, 2020 letter (the "January 21 Letter"), and the Government does not repeat them here, except to the extent necessary to address the defense's arguments with respect to any particular Selection.  In addition, the Government adopts all of the defined terms in the January 21 Letter in this submission as well.

[2] The defense also claims that there are references to defense counsel in the Selections.  Those references have been redacted in the versions of the MCC Notebooks that were provided to the trial team, and accordingly, the trial team neither has seen those references, nor does it intend to rely on them at trial.

The Honorable Paul A. Crotty, U.S.D.J.
January 28, 2020
Page 2

of anger that are natural for someone in the defendant's position.[3]  Regardless of how inmates in general feel about their confinement, the fact that this defendant was angry, and translated that anger into using contraband cellphones, encrypted email accounts, and social media accounts to conduct an "information war" is highly relevant to the crimes charged—it shows this defendant's motive to take all of these steps.  The Court has already ruled that "[e]vidence of Schulte's anger at the CIA . . . is proper under Rule 404(b) to show motive." (Dkt. No. 256 at 2).  Moreover, evidence of the defendant's communications with relatives regarding efforts to transmit classified information and discovery materials subject to the Court's protective order, and related evidence of the defendant's angry reaction to their reluctance to participate in those actions, helps to explain why the defendant decided to use contraband in the MCC to disclose this information on his own. This evidence is not unfairly prejudicial under Rule 403, particularly in light of similar evidence relating to contentious interactions between the defendant and members of the CIA before he left the agency.  Finally, this Court has already rejected the defendant's claim that evidence of his incarceration is improper.  (*See* Dkt. 256 at 3 ("The Defendant's incarceration is necessary background for the MCC Counts.")).  Accordingly, the Government has established that the Selections, as modified below, are admissible, and the defense arguments for preclusion should be rejected.

The defendant's particularized arguments regarding certain pages[4] are each without merit:

*Blue Notebook*

(1) Classified JAS_014099: The Government does not object to redacting the top and bottom portions of the page to which the defense objects.  To the extent the defense asserts that the top of the page reflects work product, the proposed redaction would resolve their objection.

(2) Classified JAS_014110: The defendant's anger at his family for not helping him disseminate his "articles" is relevant to the defendant's motive and to explain why he subsequently began to try to disseminate those "articles" himself.

---

[3] The defense also argues that the Government should be precluded from "using the phrase 'information war'" because the defendant only wrote it "once in a hardcopy notebook."  Put simply, once is enough with respect to the question of whether evidence of the defendant's own words is admissible against him at trial.

[4] As in the Government's submission dated January 21, 2020, because several of the pages in the MCC Notebooks upon which the Government intends to rely contain classified information, the Government has only described the unclassified portions.  The Government previously submitted copies of the actual pages identified in this letter to the Court for its review, in which privileged information identified by the wall team was fully redacted, and classified information was identified by red boxes where redactions would be applied to the pages for use at trial.  The Government is submitting additional copies with the redactions applied, including certain additional redactions discussed in this letter requested by the defense to which the Government does not object.

The Honorable Paul A. Crotty, U.S.D.J.
January 28, 2020
Page 3

(3) Classified JAS_014114: The Government has no objection to redacting the left portion of the page. The right portion of the page, however, describes the defendant's plan to draft new "articles," including articles that described purported biases of the CIA and FBI, which was part of his information war. The fact that the points that the defendant wished to make in these articles may have been consistent with his political viewpoint is irrelevant—the defendant's political ideology is no defense to engaging in a campaign to disseminate classified information.

(4) Classified JAS_014136: The Government does not believe that the information in this Selection is privileged, but will not seek to introduce it out of an abundance of caution.

*Red Notebook*

(5) Classified JAS_014263: This Selection includes the defendant's statement that he intended to cause harm to the United States by "look[ing] to breakup diplomatic relationships, close embassies, end U.S. occupation across the world and finally reverse U.S. jingoism" because "[i]f this is the way the U.S. govt treats one of its own, how you think they treat allies?" This statement shows the defendant's intent to harm the United States and thus that, at a minimum, he had reason to believe that his disclosures of classified information from the MCC could be used to harm the United States, which is the requisite *mens rea* for the offense charged in Count Four. The defendant does not meaningfully dispute that this statement could demonstrate the defendant's intent, but instead argues that another section on the page "suggests that the defendant was high" and thus, that this page may not be evidence of the defendant's true intent. "Where intent of the accused is an ingredient of the crime charged, its existence is a question of fact which must be submitted to the jury." *Morissette v. United States*, 342 U.S. 246, 274 (1952). The defendant is free to argue to the jury that he did not really mean the words that he wrote down because he was intoxicated, but he is not entitled to exclusion of evidence on that ground.[5]

(6) Classified JAS_014287: This Selection details the defendant's declaration of an "information war" and his identification of specific communications facilities he will use to carry out that war. Instead of arguing that this Selection is irrelevant or otherwise inadmissibile, the defendant once again offers an alternative explanation for his words, claiming that his "information war" was simply intended to air his grievances about his confinement. Again, the defendant can make this argument to the jury, but it is not a basis to preclude admission of the Selection, particularly given the defendant's drafting of articles (like the Malware Article) and fake tweets containing classified information and his secretive use of the Contraband Cellphones, Encrypted Email Accounts, and Social Media Accounts.

---

[5] The defendant again argues that the bottom of this page memorializes an attorney-client communication, but in the version available to the trial team, that section has already been redacted. Accordingly, the trial team has not seen the purported attorney-client communication, and does not seek to introduce it.

The Honorable Paul A. Crotty, U.S.D.J.
January 28, 2020
Page 4

(7) Classified JAS_014298:  In this Selection, the defendant again shows his anger with his family's reluctance to help him disseminate his articles, which demonstrates why he would take the drastic steps that he did to attempt to disseminate further classified information while incarcerated.  Moreover, the fact that the defendant references Signal and Proton Mail elsewhere (Def. Ltr. at 4) is not a basis to preclude such references in this Selection.  The defendant's references here to Signal and his intention to set up a "proton email acct" show that the defendant actually used these modes of communication, as opposed to merely setting them up, and helps to explain that when the defendant wrote something down in the MCC Notebooks, it was something he intended to act upon, such as when he wrote that he wanted to create a "protonmail email acct," and then subsequently did so.  The Government would thus argue that, similarly, when, for example, the defendant drafted the Malware Article or the Fake Classified Tweets, he did so for a specific purpose—to disseminate them as part of his information war—instead of as idle musings, which appears to be the defendant's anticipated defense.

(8) Classified JAS_014306: In this Selection, the defendant not only illustrates his anger with his family's inability to help him disseminate his articles—which, as explained above, is admissible motive evidence—but also specifically acknowledges that he used a Proton Mail account to begin communicating with the Reporter on August 22, 2018.  Given that one of the Encrypted Email Accounts indeed contains an email sent to the defendant on that date that concerned the defendant's articles, this Selection is powerful evidence proving that it was the defendant who was using that account.  And, because it was that account that sent the Network Structure Document to the Reporter, linking that Encrypted Email Account to the defendant is relevant and proper.

(9) Classified JAS_014319: The defense contends that there is no evidence that the defendant's articles 9 and 10 contained classified information, and that thus this Selection is irrelevant.   The Malware Article, however, does contain classified information, and, in this Selection, the defendant specifically identifies the Malware Article as his tenth article.  Accordingly, this Selection is relevant.  Moreover, the Selection also contains references to the defendant's plan to continue to communicate with the Reporter through deceptive means—namely, using his cousin's telephone number to text the Reporter—which demonstrates the defendant's intent.  Finally, with respect to the reference to "Anonymous," the defendant claimed in Signal chats to have been a member of Anonymous, and that the group was helping him to disseminate his articles.  That evidence is therefore relevant, given that it ties the defendant to the Signal account that he was using and Anonymous's connection to WikiLeaks.

(10) Classified JAS_014327:  Again, while the defendant claims that this Selection is cumulative because he has conceded that other portions of the MCC Notebooks that reference Signal should be admitted, he ignores the context that this Selection provides.  In this Selection, the defendant did not simply acknowledge that he used Signal.  Rather, he specifically wrote that he hoped that he could "setup Signal from my cell &

The Honorable Paul A. Crotty, U.S.D.J.
January 28, 2020
Page 5

msg [last name of the Reporter] to confirm anon's permission and get my fucking articles" and, in turn, did actually begin to communicate with the Reporter over Signal to try to convince the Reporter to send the defendant's articles to him.  This Selection not only ties the defendant to both the Signal account and the Encrypted Email Account, but also shows that the defendant's words in the notebooks are precursors to actual deeds.  Moreover, the defendant's note that he needed "to confirm my twitter" shows that the defendant intended to use the Twitter account that he created, particularly because the Encrypted Email Accounts that he identified as his in the MCC Notebooks contain evidence of him "confirming" that Twitter account shortly after the date of this Selection.

In sum, none of the Selections upon which the Government intends to rely at trial are privileged, nor does the introduction of any of the Selections, as modified above, unfairly prejudice the defendant.  The defendant chose to document his criminal conduct in prison writings—writings he used to coordinate and plan his efforts to disclose classified information from prison in an effort to harm the United States.  Precluding reliance on these key pieces of evidence would fundamentally change the trial evidence and prevent the Government from appropriately arguing that the defendant did indeed intend to disseminate classified material and that his intent was to harm the United States.  The Government respectfully submits that the Court should deny the defendant's motion to exclude the Selections and allow the Government to introduce them at trial.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____
David W. Denton, Jr.
Sidhardha Kamaraju
Matthew Laroche
Assistant United States Attorneys
Tel.: 212-637-2744 / 6523 / 2420

Cc:  Defense Counsel (via ECF)