**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 31, 2020

<u>Via ECF</u>
The Honorable Paul A. Crotty
United States District Judge
Southern District of New York
United State Courthouse
500 Pearl Street, Courtroom 14C
New York, New York 10007

    **Re:**    *United States v. Joshua Adam Schulte*, S2 17 Cr. 548 (PAC)

Dear Judge Crotty:

    The Government respectfully submits this letter in response to the defense's letter (the "Defense Letter"), dated January 28, 2020, asking the Court to preclude the use of a demonstrative exhibit (the "Demonstrative") during the testimony of Paul Rosenzweig, an expert on WikiLeaks. The Court has already ruled that Mr. Rosenzweig's testimony about how WikiLeaks operates and the damage and injury caused by its prior disclosures is admissible.  (Dkt. 256 at 4)

    The defendant mischaracterizes the inclusion of quotations in the Demonstrative to suggest that Mr. Rosenzweig's expert testimony is based "on a small selection of unreliable quotations to conclude what type of harm was caused to the United States from the release of information in other cases." (Defense Letter at 3).  Rather, the Government expects that Mr. Rosenzweig will testify that these are merely illustrative examples of the type of materials he has consulted in researching the practices of WikiLeaks and the effects of its releases.  The Government expects that Mr. Rosenzweig will explain that based on a study of these and other materials, he was able to draw conclusions about the effects of WikiLeaks disclosures.  Thus, Mr. Rosenzweig will not merely repeat what was said about the leak of diplomatic cables by WikiLeaks in 2010, but will in fact offer his expert analysis that a collection of concrete public reactions to the disclosures, such as the recall of ambassadors or the loss of valuable interlocutors in foreign governments, demonstrate that WikiLeaks' postings have had caused harm to the United States.  *Cf. Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 439 (E.D.N.Y. 2013) ("[R]ather than just cut and paste or summarize what others have said about Hamas, Levitt uses the information to opine that social welfare organizations affiliated with Hamas are crucial to its ability to carry out terrorist attacks.").  The fact that the Demonstrative includes particular examples in order to illustrate Mr. Rosenzweig's methodology does not transform his testimony into the impermissible recitation of hearsay.

    Moreover, the defendant's assertion that the representation of certain specific statements in the Demonstrative are merely inadmissible hearsay is simply incorrect.  The Government expects that Mr. Rosenzweig will testify that WikiLeaks acknowledges three official sources of

The Honorable Paul A. Crotty, U.S.D.J.
January 31, 2020
Page 2

statements on behalf of the organization: the WikiLeaks website, the verified WikiLeaks Twitter feed, and statements made by WikiLeaks' founder Julian Assange. As the Government indicated in moving *in limine* for the admission of Mr. Rosenzweig's testimony, the Government does not object to the Court instructing the jury that WikiLeaks' statements, including those of Assange, may not be considered for their truth, but only for the fact that they were made. "'If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, [then] the statement is not hearsay.'" *United States v. Cardascia*, 951 F.2d 474, 486 (2d Cir. 1991) (quoting Advisory Committee Note to Fed.R.Evid. 801(c)). Indeed, other than WikiLeaks' statements regarding the content of the Vault 7 leaks, the particular statements from WikiLeaks and Assange about which Mr. Rosenzweig will testify are not "statements" or "assertions" such that the rule against hearsay is even applicable. "Courts have generally held that imperatives are not hearsay because they are not assertions of fact. For example, the imperative 'tell the truth' does not expressly assert anything." 5 Weinstein's Federal Evidence § 801.11 (2019); *see also Flanagan v. Office of the Chief Judge*, 893 F.3d 372, 374-75 (7th Cir. 2018) ("Commands are not statements submitted for their truth and so are not hearsay."). Accordingly, statements such as WikiLeaks' admonition that leakers should "make sure there are no traces of the clean-up" (as reflected on page 19 of the Demonstrative) or Assange encouraging disclosures of classified information (as reflected on page 20 of the Demonstrative) are not statements of fact and are neither true nor false. They are simply instructions that WikiLeaks, through two of its three official sources, has conveyed to potential leakers, such as the defendant. And their relevance is patent, given that the defendant's conduct during and following his April 20, 2016 theft of classified information from the CIA directly tracks the specific "imperatives" communicated by WikiLeaks and Assange. Courts in this circuit have routinely recognized that expert testimony introducing such materials is permissible, *see, e.g.*, *United States v. Abu-Jihaad*, 553 F. Supp. 2d 121, 129 (D. Conn. 2008) (permitting expert witness to introduce copies of terrorist propaganda, noting that the evidence "is relevant to Mr. Abu–Jihaad's mens rea, as well as to the intentions and mindset of Azzam Publications, which posted these materials," even though "the Government does not have direct evidence that Mr. Abu–Jihaad reviewed each of the materials"), and the defendant has offered no reason for this Court to reach a different result.

Similarly, statements by public officials regarding the consequences of WikiLeaks' disclosures are also not hearsay. "Words . . . offered as circumstantial evidence of an actor's beliefs or thoughts do not constitute statements under the rule against hearsay. Thus, the rule against hearsay does not bar evidence introduced to show a party's viewpoint or attitudes, or the basis for his or her conclusions." 5 Weinstein's Federal Evidence § 801.11 (2019). Indeed, the only way in which WikiLeaks' adverse effect on public diplomacy could be proven is through the words of the actors responsible for conducting diplomacy. For example, the statement of then-Mexican President Felipe Calderon that WikiLeaks' publication of classified U.S. diplomatic cables caused "severe damage" to diplomatic relations is not relevant as a statement of historical fact, it is relevant as a reflection of the state of mind of a foreign leader with whom the U.S. had an important relationship. The same is true of the obverse reaction from Secretary Clinton, which will be supported by testimony from Mr. Rosenzweig that, following the WikiLeaks' disclosures, the United States did in fact recall its ambassador to Mexico as a result of Calderon's demand. In short, these statements simply are not hearsay, they are evidence of the beliefs and thoughts of foreign officials. In that respect, the defendant's contention that "politicians' statements during

The Honorable Paul A. Crotty, U.S.D.J.
January 31, 2020
Page 3

news interviews are often directed at other politicians" is correct (Defense Letter at 1); but when those statements are made by politicians serving as national leaders, reflect strong negativity towards the United States as a result of WikiLeaks disclosures, and are directed at political leaders of the United States, they are powerful evidence of the damaging consequences of WikiLeaks' actions. Far from being inadmissible hearsay, this goes directly to Mr. Rosenzweig's expert conclusions that WikiLeaks' disclosures have been harmful to the United States, which specifically addresses an element of the espionage charges in this case.

Moreover, the defendant's objection to the introduction of statements from respected news publications ignores that the Rules of Evidence expressly provide for the introduction of such material. Federal Rule of Evidence 803(18) expressly permits the recitation of "[a] statement contained in a . . . periodical . . . if . . . the statement is . . . relied on by the expert on direct examination; and . . . the publication is established as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice."

The defendant's specific objections to particular portions, to which the Government responds below, are equally unavailing. Nevertheless, in particular cases specified below, the Government is prepared to modify the Demonstrative in order to address certain of the defendant's objections:

- With respect to screen shots of portions of the WikiLeaks website (depicted on pages 1, 9-11, 13, and 16-19 of the Demonstrative), the Government expects that Mr. Rosenzweig will testify that the screen shots depict the website as it appears today. Page 1 reflects the current appearance of the WikiLeaks main webpage. For Pages 9-11, 13, and 16-19, the Government expects that Mr. Rosenzweig will testify that, based on his review of archived copies of the WikiLeaks' website, the only content of the screenshots that has changed since April 2016 (when the defendant stole the classified material later published by WikiLeaks) is the specific Tor address for WikiLeaks submissions and accompanying verifications shown on page 9. Thus, for example, the text shown in callout boxes on pages 11, 13, 17, and 19 accurately depicts the content of the website as it appeared both in April 2016 and at present.

- With respect to the inclusion of the WikiLeaks logo on the relevant pages of the Demonstrative, WikiLeaks is the subject of his testimony, and it is reasonable to include it as a header. To avoid any confusion, the Government will elicit from Mr. Rosenzweig that the Demonstrative as a whole was prepared as a demonstrative aid for his testimony and was not produced by WikiLeaks.

- The Government does not object to eliminating the quotation from WikiLeaks' "About" page depicted on page 2 of the Demonstrative. The remaining screenshots from WikiLeaks are not unfairly selective, but rather depict the relevant pages in their entirety before focusing on particular elements in order to improve the readability of small text for the jury.

The Honorable Paul A. Crotty, U.S.D.J.
January 31, 2020
Page 4

- Although the Government believes that the statement of Fred Kaplan, the 2013 Edward R. Murrow Press Fellow at the Council on Foreign Relations, (depicted on page 21 of the demonstrative) is relevant and appropriate, the Government does not object to omitting it.  Mr. Rosenzweig will testify about the widespread practices of traditional media organizations dealing with WikiLeaks based on his analysis of the particular disclosures identified in the Government's expert notice and referenced in the Court's order approving his testimony.

- Testimony about Anonymous is neither irrelevant nor unfairly prejudicial.  As the Government has previously noted, the defendant claimed, in Signal chats he sent while incarcerated, to have been a member of Anonymous, and that the group was helping him to disseminate his articles.  He further made reference to Anonymous in portions of the MCC Notebooks that the Court has also deemed admissible. Testimony about what Anonymous is and its affiliation with WikiLeaks (including serving as a source of leaked material) is therefore plainly relevant to the charged conduct.

In sum, the Demonstrative appropriately includes statements that are illustrative and non-hearsay, and the Government has no objection to the Court instructing the jury (as requested in the Government's motions *in limine*) that statements by WikiLeaks are not offered for their truth. Nevertheless, the Government is prepared to consent to certain modifications to the Demonstrative to accommodate the defendant's objections.  Subject to the alterations specified above, the Government respectfully submits that the Court should deny the defendant's motion to exclude use of the Demonstrative at trial.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____
David W. Denton, Jr.
Sidhardha Kamaraju
Matthew Laroche
Assistant United States Attorneys
Tel.: 212-637-2744 / 6523 / 2420

Cc:  Defense Counsel (via ECF)