UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

UNITED STATES OF AMERICA,

-*against*-

JOSHUA ADAM SCHULTE,

              *Defendant.*

------------------------------------------------------------X

S2 17 Cr. 548 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

    Defendant Joshua Schulte ("Defendant" or "Schulte") has been indicted for stealing national defense information from the Central Intelligence Agency ("CIA") and transmitting it to WikiLeaks. The instant decision concludes another chapter in the defense's unsuccessful attempts to rid the case of evidence on the MCC Counts. On January 2, 2020, defense counsel filed a motion for reconsideration of disqualification, raising for the first time an actual conflict under Rule 1.7 based on "incompetent representation," abandoning their prior position that it was the advocate-witness rule that required disqualification because the Defendant's lawyers had favorable and admissible testimony to present at trial. (Dkt. 231.) The Government opposes the motion urging that the Federal Defenders providing legal advice to the defendant does not rise to the level of a criminal offense that warrants disqualification, and that "defense submissions are transparent attempts to frighten the Court in adjourning a trial that the defendant and his counsel seem determined to delay." (Dkt. 244.)

    Courts—particularly in the disqualification context—are instructed to guard against the tactical use of disqualification motions and to preserve the integrity of the adversary process. The Court declines defense counsel's invitation to stretch disqualification to cover instances of

1

self-proclaimed "imperfect advice" provided before trial, where there is simply no allegation of wrongdoing or improper conduct at all. Manufactured hypothetical violations of different professional responsibility rules, without foundation in fact or law, do not meet the *heavy burden* required to demonstrate that disqualification is appropriate. The motion to reconsider disqualification is denied.

## BACKGROUND[1]

Defendant Joshua Schulte has been incarcerated in MCC since December 14, 2017. He was initially released on bail, but bail was revoked after this Court found that Schulte violated the terms of his release relating to unauthorized use of the Internet. The Second Circuit subsequently affirmed the Court's detention order. *United States v. Schulte*, 18-145, Order, Dkt. 34 (2d Cir. Mar. 6, 2018). While at MCC, Schulte allegedly violated the terms of his protective order and was charged with disclosing classified information using contraband cellphones in counts four and eleven of the superseding second indictment ("MCC Counts").[2] Schulte's alleged use of contraband cellphones and disclosure of classified information led to search of the MCC premises and the FBI recovered contraband cellphones and notebooks, which Schulte labeled "ATTORNEY CLIENT PRIVILEGE." The notebooks contained Schulte's handwritten notes.

The evidence in support of the MCC Counts includes, *inter alia*, evidence showing that Schulte used the contraband cellphones, evidence of emails Schulte sent to a reporter attaching a Protected Search Warrant and the Classified Search Warrant, evidence Schulte posted on Social

---

[1] The instant facts derive from this Court's prior order on waiver of attorney-client privilege. (*See* Dkt. 248.)

[2] Count Four charges Schulte with transmission or attempted transmission of classified information in violation of 18 U.S.C. § 793(e). Count Eleven charges Schulte with Contempt of Court.

2

Media Accounts where he claimed the FBI was seeking to frame him, and prison calls between Schulte and a member of the media. The Government learned of Schulte's misconduct through a confidential informant who provided the Government with photographs and video of Schulte using the contraband cellphones as well as images of screenshots of the contraband cellphones being used to transmit documents. The seized notebooks contain a list of Encrypted Email Accounts and the passwords, draft tweets including classified information, a note to "schedule tweets," and a to-do list that included "delete suspicious emails." Finally, the notebooks contain writings declaring an "information war" against the United States and a "Malware Article" that appear to be intended for public dissemination. The notebook is alleged to contain evidence of Schulte's knowledge of non-public CIA information possessed by Wikileaks.

Defense counsel has sought to rid the case of the MCC evidence in a variety of ways. On June 18, 2019, the defendant moved to suppress all document evidence seized from his cell at the Metropolitan Correctional Center ("MCC") as well as all evidence recovered from subsequent warrants that relied upon the writings seized. (Dkt. 97.) Defense counsel did not raise any purported violations of the rules of professional responsibility. The Court denied the motion to suppress the MCC evidence. (Dkt. 159.)

On August 26, 2019, the defendant raised a purported ethical issue (i.e., the advocate-witness rule) concerning privileged advice provided to Schulte and contended that the issue required severing the MCC Counts. (Dkt. 128.) According to defense counsel, "two attorneys from the Federal Defender's office have *favorable*, relevant, and admissible testimony to provide in Mr. Schulte's defense to" the MCC Leak Count. (Dkt. 128 at 1.) Defense counsel submitted that to prove the MCC Leak Count, the Government would have to show, *inter alia*, that the defendant "acted willfully, i.e., voluntarily and intentionally, and with the specific intent to do

3

something that the law forbids, namely with a bad purpose either to disobey or disregard the law." (*Id.* at 2.) Defense counsel urged that the Government would seek to introduce excerpts of Schulte's writings in his notebooks as evidence of his specific intent to violate the law." (*Id.*) "To *defend against* the [G]overnment's allegations," the defense stated to this Court that "Schulte *would call two of his attorneys*—Matthew B. Larsen and Sabrina S. Shroff to present favorable testimony bearing on his state of mind." (Dkt. 128 at 2) (emphasis added). Defense counsel did not explain why they waited almost one year to raise this purported ethical issue.[3]

On September 26, 2019, the Court denied the motion for severance based on the advocate-witness matter and the request for *Curcio* counsel. (Dkt. 147.) The Court held that the advocate-witness matter could be avoided because Mr. Larsen who provided the testimony at issue is not on Schulte's trial team and could testify as to Schulte's state of mind. The Court further noted that "the Defendant ha[d] not identified any additional testimony that only trial counsel (Ms. Shroff) possess." (Dkt. 147 at 4.) The Court further emphasized that Mr. Larsen's purported advice was undisputedly favorable to Schulte and would be provided to defend against the Government's allegations and thus, Ms. Shroff would not be disqualified under Rule 3.7(b).

Two weeks later, on October 10, 2019, the Federal Defenders of New York stated that it had determined that in light of the Court's ruling, it could no longer effectively represent the defendant and asked to be relieved as counsel. The Federal Defenders acknowledged that the request would delay Schulte's trial and cause him substantial hardship. (Dkt. 150 at 1-2.) Defense counsel asserted that Mr. Larsen and Ms. Shroff—"have important and admissible

---

[3] Defense counsel allegedly provided this advice over a year before raising the issue. And defense counsel has been on notice since at least December 2018 that the Government believed that the materials recovered from the MCC Warrants were relevant to not only the MCC Counts but also the WikiLeaks counts. Yet, defense counsel waited until August 26, 2019 to raise the purported ethical issue.

4

testimony to offer in Mr. Schulte's defense." (*Id.* at 2.)  In the October 10 Letter, counsel elaborated on the advice provided to Schulte and the purported favorable testimony of Larsen and Shroff.  Defense counsel filed the October 10 Letter *ex parte* "to avoid disclosing to the prosecutors the *favorable defense testimony* discussed herein, which reveals not only defense strategy but also *the substance of privileged attorney-client communications*." (Dkt. 150 at n.1.) (emphasis added).

According to defense counsel, since "Ms. Shroff is both lead trial counsel and one of the potential fact witnesses on an important subject, she cannot objectively assess [the strategy decision of] whether she or Mr. Larsen would make the most effective witness" or whether "both witnesses are essential." (*See* Dkt. 150, at 3, 6.)  Defense counsel further submitted that "an independent lawyer could reasonably conclude that Ms. Shroff's testimony is necessary because, without it, Mr. Larsen's testimony will be uncorroborated." (*See id.* at 4.)  Defense counsel conceded that the relief sought (i.e., disqualification) would be unnecessary if the MCC notebooks were not used at trial. (Dkt. 150 at n.5.)  Alternatively, the Federal Defenders renewed their request to "appoint *Curcio* counsel to advise Schulte with respect to the potential testimony of" Larsen and Shroff. (Dkt. 150, at 2.)  The Government did not oppose the request for *Curcio* counsel.

The Court appointed *Curcio* counsel, Sean Maher, to advise Schulte on, *inter alia*, the attorney-witness matter and the advisability of pursuing such testimony.  In granting the request for *Curcio* counsel the Court noted that, "[t]here is doubt whether an attorney's advice to keep a journal, as opposed to filing *pro se* applications, provides a defense to the MCC Counts.  Finally, it is far from clear whether simply because one attorney [Ms. Shroff] witnessed another attorney

[Mr. Larsen] give advice, that both attorneys must testify, or that the defendant would be at a disadvantage unless both attorneys testify." (Dkt. 177.)

On December 13, 2019, defense counsel wrote again. (Dkt. 220.) This time defense counsel claimed the so-called favorable testimony that Schulte intends to introduce through Mr. Larsen and Ms. Shroff is potentially the basis for a pretrial ineffective assistance of counsel claim.

The Court reviewed extensive submissions on this matter from counsel and appointed counsel for the defendant.[4] The Court then held a *Curcio* inquiry on December 18, 2019. The Court questioned defense counsel about the purported advice at issue. Significantly, defense counsel did not take the position that they advised Schulte to sneak contraband cellphones into MCC, nor did they advise Schulte to share classified information with reporters, which is precisely what Schulte is charged with in the MCC Counts. (*See* Hr'g Tr. Dec. 18, 2019, Dkt. 246 at 9:21-10:7.)

The Court confirmed with defense counsel that there was no additional testimony on the matter other than the testimony stated in the letters dated August 26 (Dkt. 128) and October 10 (Dkt. 150)—counsel confirmed there was none. (*See* Hr'g Tr. Dec. 18, 2019, Dkt. 246 at 3:24-4:7; 17:2-24.) The Court then questioned Schulte to determine whether he had an adequate opportunity to consult with *Curcio* counsel, to ensure he understands the consequences of the decision (e.g., waiver of attorney-client privilege), and to determine whether he wishes to call

---

[4] *See* Def. Severance Mot., dated Aug. 26, 2019 (Dkt. 128); Gov. Opp'n, dated Aug. 30, 2019 (Dkt. 131); Def. Reply, dated Sept. 12, 2019 (Dkt. 139); Def. Disqualification Mot., dated Oct. 10, 2019 (Dkt. 150); Gov. Opp'n, dated Oct. 15, 2019 (Dkt. 154); Def. Reply, dated Oct. 16, 2019 (Dkt. 157); Def. Ineffective Assistance Letter, dated Dec. 13, 2019 (Dkt. 220); Maher Testimony Letter, dated Dec. 13, 2019 (Dkt. 218); Gov. Letter Dec. 18, 2019 Hearing (Dkt. 219); Reconsideration of Disqualification Letter, dated Jan. 2, 2020 (Dkt. 231); Gov. Response Disqualification Letter, dated Jan. 9, 2020 (Dkt. 244).

6

Mr. Larsen and/or Ms. Shroff at trial. At the hearing, Schulte stated he wishes to retain his right to call both Mr. Larsen and Ms. Shroff at trial. (*See* Hr'g Tr. Dec. 18, 2019, Dkt. 246 at 3:1-4; 27:14-20.) The Court denied the Defendant's motion to disqualify Ms. Shroff and the Federal Defenders, (*see id.* at 45:1-5).

On January 2, 2020, defense counsel renewed the request for disqualification abandoning the advocate-witness rule as the basis for disqualification. (Dkt. 231.) Having failed to convince the Court that the proper course was disqualification—defense counsel tried a new tactic. They claimed disqualification was necessary, not under Rule 3.7, but rather under Rule 1.7 and that the so-called favorable testimony could be "incompetent representation" creating an actual conflict.[5] *Id.* at. 2. The motion for reconsideration is notable because of what it does not say. The motion suggests defense counsel consulted an ethics professor but does not identify what the ethics professor actually said. The motion does not even attempt to identify what *advice* is possibly "incompetent representation" or would justify counsel citing to a criminal aiding and abetting statute. Most significantly, the motion does not identify the purported "conflict" other than vaguely suggesting counsel and Defendant's interests diverge. Defense counsel suggests that the Defendant has an interest in having the "flawed" advice aired and emphasized at trial, but then speculates that somehow his lawyers have a "professional" "(if not penal)" interest in avoiding scrutiny of the advice. Defense counsel then cites to a case where a lead trial attorney was accused, by a Government witness during trial, of participating in heroin trafficking.

On January 13, 2020, the Court held that the Defendant impliedly waived the attorney-client privilege by relying on the advice of counsel for his defense and by affirmatively injecting the advice of counsel to persuade this Court to grant extraordinary pretrial relief. (Dkt. 248.)

---

[5] Defense counsel concedes CJA co-counsel, James Branden, has no conflict. (*Id.* at n.2.)

7

The Court directed defense counsel to turn over the unredacted *ex parte* letters to the Government two weeks before trial. The Court added that the failure to provide the discovery will preclude reliance on an advice-of-counsel defense at trial. Further, the Court noted, among other things, that the Government had suggested the Defendant may be precluded from raising an advice-of-counsel defense. (*See* Dkt. 248 at n.11.) Specifically, the Government offered that if the Defendant sought to introduce the advice of counsel, the Government would seek to introduce phone calls of the Defendant, from MCC, criticizing defense counsel's advice and stating that he would go around defense counsel to disclose information to the media.

On January 15, 2020, faced with the Government's evidence revealing that the Defendant rejected his lawyer's advice not to disclose information to the media on recorded phone calls, the Defendant wrote a letter stating that he disagreed with the Court's ruling and elected not to disclose the advice at issue. (*See* Dkt. 253.) Accordingly, the Court determined the Defendant would be precluded from raising the advice-of-counsel defense as per its January 13, 2020 Order. (*See* Dkt. 259.)

## DISCUSSION

### I. Motion for Disqualification

A motion to disqualify an attorney "to forestall violation of ethical principles is a matter committed to the sound discretion of the district court." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990). "The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.' " *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). Although courts look to state disciplinary rules which provide valuable guidance when considering motions for disqualification, a violation of

8

those rules may not warrant disqualification. *See id.* Instead, disqualification is warranted only if "an attorney's conduct tends to taint the underlying trial." *GSI Commerce Sols., Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010).

"Because courts must guard against the tactical use of motions to disqualify counsel, they are subject to fairly strict scrutiny." *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009) (citing *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989)). Courts are also wary of motions to disqualify because they inevitably cause delay and added expense. *See e.g., Evans v. Artek Sys. Corp.*, 715 F.2d 788, 792 (2d Cir. 1983); *Nyquist*, 590 F.2d at 1246 ("[C]ourts should be quite hesitant to disqualify an attorney[.]"). Disqualification motions therefore place a *heavy burden* on the *moving party* to demonstrate that disqualification is appropriate. *See e.g., Murray*, 583 F.3d at 178 (emphasis added).

An actual conflict of interest exists when an attorney engages in wrongful conduct related to the client's trial. *United States v. Jones*, 900 F.2d 512, 519 (2d Cir. 1990). "In such a situation, the fear of prompting a government investigation into the attorney's own wrongdoing would preclude an attorney from asserting a vigorous defense on behalf of his client." *Id.* Defendant seeks to stretch this rule to reach instances of purportedly "imperfect advice" provided before trial, where there is simply no allegation of wrongdoing or improper conduct at all.

Allegations must be supported by some credible evidence, disciplinary or criminal charges must be more than mere hypotheticals, such that the attorney has "reason to fear that vigorous advocacy on behalf of his client would expose him to criminal liability or any other sanction." *Waterhouse v. Rodriguez*, 848 F.2d 375, 383 (2d Cir.1988). Courts do not presume that advice is "incompetent representation." *See Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). Courts presume that defense counsel is competent—not the opposite. *Id.* Allegations of

9

wrongdoing alone, without foundation, cannot rise to the level of an actual conflict. *Jones*, 900 F.2d at 519. And without a doubt, self-proclaimed allegations of imperfect advice, without foundation, do not rise to the level of an actual conflict.

## II. Application

The Court takes seriously its obligation to prevent disqualification motions from being used for opportunistic abuse. The moving party—here, *defense counsel*—bears a *heavy burden* to demonstrate that disqualification is appropriate. The Court applies particularly strict scrutiny because of defense counsel's shifting narratives and prior repeated attempts to rid the case of the MCC evidence. *See e.g.*, *Nyquist*, 590 F.2d at 1246 (explaining that "disqualification motions are often interposed for tactical reasons.").

### A. Defendant Waived the Advice-of-Counsel Defense

At the outset, Schulte has elected to waive his advice-of-counsel defense; thus, the speculative theoretical issues that defense counsel raises are moot. (*See* Dkt. 231, at 3–4.) Defense counsel does not have to decide whether to offer their advice into evidence and there are no decisions to be made about how to present the testimony because Schulte has elected to forgo an advice of counsel defense.[6] Moreover, there is no risk that his lawyer's "self-interest" will "affect their strategic decisions" about how to present the testimony or argue the significance in summation because the advice-of-counsel defense is precluded—there will be no such testimony or argument in summation. The Defendant's decision to not disclose the advice, as required by the Court's order, and waive the defense renders the alleged conflict moot.

---

[6] Schulte had not one, but two other disinterested lawyers (Maher and Branden) to assist him with this decision. The Federal Defenders never had to make this decision at all.

10

## B. There is no wrongful conduct or actual conflict

The Court undertook its threshold obligation, investigating the facts and details of the attorneys' interests, to determine whether trial counsel has an actual conflict, potential conflict, or no conflict.[7] The Court concludes there is no conflict. Even if defense counsel's most recent rendition had merit (it does not), Schulte's interests and his counsel's interests do not and have not diverged.[8] The Court has reviewed the advice provided by Schulte's attorney[9] and it was neither "legally erroneous" nor was it "criminal conduct." Defense counsel did not advise Schulte to sneak contraband cellphones into MCC, nor did they advise Schulte to share classified information with reporters (or other third parties), which is precisely what Schulte is charged with in the MCC Counts.

Defense counsel cites to cases that are completely inapposite. In *United States v. Fulton*, the wrongful conduct leading to an actual conflict involved a defense attorney that was accused, by a Government witness during trial, of participating in heroin trafficking. 5 F.3d 605, 607–608 (2d Cir. 1993). In *United States v. Levy*, defense counsel was under investigation for aiding the

---

[7] The Court reviewed extensive submissions from both the parties and *Curcio* counsel and received additional information at the hearing on December 18, 2019. *See* Def. Severance Mot., dated Aug. 26, 2019 (Dkt. 128); Gov. Opp'n, dated Aug. 30, 2019 (Dkt. 131); Def. Reply, dated Sept. 12, 2019 (Dkt. 139); Def. Disqualification Mot., dated Oct. 10, 2019 (Dkt. 150); Gov. Opp'n, dated Oct. 15, 2019 (Dkt. 154); Def. Reply, dated Oct. 16, 2019 (Dkt. 157); Def. Ineffective Assistance Letter, dated Dec. 13, 2019 (Dkt. 220); Maher Testimony Letter, dated Dec. 13, 2019 (Dkt. 218); Gov. Letter Dec. 18, 2019 Hearing (Dkt. 219); Reconsideration of Disqualification Letter, dated Jan. 2, 2020 (Dkt. 231); Gov. Response Disqualification Letter, dated Jan. 9, 2020 (Dkt. 244).

[8] Even when defense counsel claimed conflict under the attorney-witness rule, a position which they have now abandoned—all agreed that the purported testimony was favorable, and that Schulte would call his lawyers to testify on his behalf. In other words, defense counsel did not—because they could not—suggest there was a divergence of interests. And the Court determined there was no such conflict. *See* Dkt. 147. And with respect to the latest, rendition of conflict, any assertion that Schulte's lawyers are seeking to "avoid judicial scrutiny of their advice" is belied by the record, which demonstrates the precise opposite—his lawyers have injected their advice in several submissions to persuade the Court that their advice must be aired at trial.

[9] *See* Def. Severance Mot., dated Aug. 26, 2019 (Dkt. 128); Def. Disqualification Mot., dated Oct. 10, 2019 (Dkt. 150).

11

flight from prosecution of his client's codefendant and nephew, whom the client had an interest in portraying as culpable for the charged crime. 25 F.3d 146, 156–57 (2d Cir. 1994). By contrast, defense counsel has not been "implicated in the crime"—they certainly have not been accused of leaking classified information to third-parties (or even of causing Schulte to leak classified information to third-parties). Nor do the Federal Defenders face criminal charges or a disciplinary action as a result of the advice Larsen purportedly gave to Schulte. *See Jones*, 900 F.2d at 519 (explaining that a lawyer's hysterics alluding to possible violations of the Model Code of Professional Responsibility, without foundation in fact or law, did not create an actual conflict). And as defense counsel surely knows, advice to keep a journal, as opposed to filing *pro se* motions, is not legally erroneous or incompetent representation.[10]

Accordingly, there is no conflict. And defense counsel's shifting positions, manufacturing hypothetical violations of different professional responsibility cannons, without foundation in fact or law, does not meet the *heavy burden* required to demonstrate that disqualification is appropriate. The Court declines to disqualify the entire Federal Defenders of New York—counsel on the case for nearly two years—based on self-proclaimed flawed advice, realized in hindsight, where there is simply no allegation of wrongdoing or improper conduct. The Court reiterates that the advice provided by Schulte's attorney was neither "legally erroneous" nor was it "criminal conduct." As instructed by the Second Circuit, this Court reaches its conclusion "only after a painstaking analysis of the facts." *Nyquist*, 590 F.2d at 1246. The Court has been evaluating and engaging with the parties on this issue for months and

---

[10] *See* Def. Mot. to Suppress (Dkt. 98) (citing "*United States v. Defonte*, 441 F.3d 92, 96 (2d Cir. 2006) (finding attorney-client privilege would apply to writings from a journal that had been taken from an inmate's cell at the MCC as long as those writings were an outline of what the inmate wished to, and ultimately did, discuss with counsel)).

the Court is convinced that Schulte's attorney's conduct does not "tend to taint the underlying trial." *Id.*

## CONCLUSION

For the foregoing reasons, the Court DENIES the Defendant's motion to reconsider disqualification of the Federal Defenders of New York.

Dated: New York, New York  
February 3, 2020

SO ORDERED

*Paul A. Crotty*  
PAUL A. CROTTY  
United States District Judge