K1O3SCHC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                         17 CR 548 (PAC)

JOSHUA ADAM SCHULTE,

           Defendant.

------------------------------x

                          New York, N.Y.
                          January 24, 2020
                          10:45 a.m.

Before:

              HON. PAUL A. CROTTY,

                          District Judge

                 APPEARANCES

GEOFFREY S. BERMAN
    United States Attorney for the
    Southern District of New York
MATTHEW LAROCHE
SIDHARDHA KAMARAJU
DAVID W. DENTON, JR.
    Assistant United States Attorneys

FEDERAL DEFENDERS OF NEW YORK
    Attorneys for Defendant
SABRINA P. SHROFF
EDWARD S. ZAS

K1O3SCHC

1              (In open court)

2              THE DEPUTY CLERK:  This is the matter of docket no. 17

3    CR 548, United States of America v. Joshua Schulte.

4              Counsel for the government, please state your

5    appearance.

6              MR. LAROCHE:  Good morning.  Matt Laroche, Sid

7    Kamaraju and David Denton for the government.  And with us at

8    counsel's table is Morgan Hurst, a paralegal at the U.S.

9    attorney's office.

10             THE COURT:  Good morning.

11             MS. SHROFF:  Good morning, your Honor.  For

12   Mr. Schulte, Sabrina Shroff and Edward Zas.  Also present at

13   counsel table is Achal Formando-Peiris, and of course

14   Mr. Schulte.

15             THE COURT:  Mr. Schulte, how are you.  All right.

16   We'll take up the issues I want to address in the final

17   pretrial conference, and any other matters you want to raise

18   we'll take up at the end of the pretrial conference.

19             With regard to the jury, how many alternates do the

20   parties suggest?

21             MR. LAROCHE:  Your Honor, two or four would be fine

22   for the government.

23             THE COURT:  Ms. Shroff?

24             MS. SHROFF:  We have no objection.

25             THE COURT:  Two or four?

K1O3SCHC

1          MS. SHROFF:  Either is fine.

2          THE COURT:  How long do you think the trial will be?

3          MR. LAROCHE:  We estimate about a month.

4          THE COURT:  Okay.  We're going to have four alternates

5   then.

6          The peremptory challenges will be as set forth in the

7   Federal Rules of Criminal Procedure.

8          Now, have we received voir dire from the government?

9          MR. LAROCHE:  Yes, your Honor.

10          THE COURT:  Ms. Shroff, have we got it from you?

11          MS. SHROFF:  Your Honor, the Court had asked us to

12   give you a jury questionnaire.  I apologize, I have been

13   behind.  I am going to try to get it to the Court by early

14   Monday.

15          THE COURT:  Okay.  Thank you.

16          Does either side want a preliminary questionnaire to

17   go to the jurors, the jury pool that's larger, so you'll be

18   dealing with kind of a prequalified class of jurors?

19          MR. LAROCHE:  The government is not requesting that,

20   your Honor.

21          MS. SHROFF:  Your Honor, I think there are several

22   issues in this case.  But, I don't know if it would make more

23   sense to raise them preliminarily or not.  I don't know what

24   the world's feeling is about sitting on a jury that's

25   classified information or --

K1O3SCHC

1          THE COURT:  We'll take that up later.

2          MS. SHROFF:  Okay.  Or the CIA or leaker or

3    whistleblower.  All of those issues seem to be hot topics

4    lately.

5          THE COURT:  All right.  I think I'll ask for 100

6    jurors and we'll make our selection from that jury array.

7          We have a public hearing that's scheduled for Monday

8    at 2 p.m.  Ms. Shroff, you want to file something as well for

9    the conference we are having on Monday, the 27th?

10          MS. SHROFF:  I don't think I should be the one filing

11    my own papers.  I know that sounds kind of odd, but since I

12    have no power to derivatively classify a document, I

13    unfortunately -- that's why I wrote to the Court and asked that

14    the government should be ordered to file our papers in a

15    properly unredacted form.  We do not believe they are

16    classified.  But far be it for me to end up making that

17    decision.

18          THE COURT:  Have you prepared the papers?

19          MS. SHROFF:  We filed them with the Court at the

20    government's insistence.  They were filed under seal.

21          THE COURT:  Mr. Hartenstine?

22          MR. HARTENSTINE:  Your Honor, I have discussed this

23    with the CIA.  I believe we can undertake a classification

24    review and provide a redacted version to the Court that would

25    state Ms. Shroff's position.

K1O3SCHC

1          THE COURT:  When?

2          MR. HARTENSTINE:  Well, difficult for me to say.  But,

3     well, I guess, yeah I would --

4          THE COURT:  We are having a hearing on Monday,

5     2 o'clock.

6          MR. HARTENSTINE:  Close of business today.  Would

7     close of business today work?

8          THE COURT:  Close of business today.  All right.

9          MS. SHROFF:  Your Honor, I just remind the Court, you

10    had issued an order, a memorandum and order.  I think that you

11    had ordered the classification review to be done, and that

12    order to be placed on the docket.  I don't think the CIA has

13    complied with the Court's directive yet.  So I remind the Court

14    that your ruling still remains sealed.

15         THE COURT:  All right.

16         MS. SHROFF:  Or classified.

17         MR. HARTENSTINE:  Your Honor, I'll work with the CIA

18    to resolve that issue.

19         THE COURT:  Thank you.  Now, with regard to the

20    demonstratives raised in the government's motion in limine,

21    have the parties worked out an agreement with respect to the

22    demonstratives?

23         MR. LAROCHE:  Not yet, your Honor.  What I was going

24    to propose today, it seems that the defense in their most

25    recent letter suggested they'd like to create their own videos.

K1O3SCHC

1   So I'd like to have an opportunity to confer with the defense

2   and see if we can come up with potential videos they'd like to

3   be created.  And we can do the same thing for them so they'd

4   have the same opportunity to potentially create something they

5   want to show the jury.

6          That would be our proposal at this point.  Otherwise I

7   think the videos themselves that we prepared a while ago I

8   think are properly admitted as demonstratives, and we want to

9   give them the opportunity to do the same thing.

10         THE COURT:  Ms. Shroff.

11         MS. SHROFF:  We are not going to work with the

12   prosecution to prepare exhibits for the trial.  If I was

13   Mr. Schulte, I would take deep umbrage at that.  We are going

14   to decline the offer.  We thank the government for making it.

15   Mr. Schulte is entitled to have access in the same manner the

16   United States has had access to all of the forensic information

17   in this case.

18         Despite their best efforts, this case is not about a

19   small fight or a big fight at the CIA.  The case is about

20   forensics.  Without giving him access to the two servers, he

21   simply cannot properly defend the accusation.  So we're not

22   going to be able to work out a compromise on this issue.

23         We have fully briefed the matter for the Court.  We

24   briefed the matter after speaking with the forensic expert, and

25   that is the defense's position, your Honor.

K1O3SCHC

1        THE COURT:  If it's fully briefed, we'll rule on it

2   then.

3        There comes a time when we are examining the jurors,

4   we ask them -- this is in a normal case -- we list the trial

5   witnesses and people whose names are going to be mentioned

6   during the trial, and we ask the jury if they know any of these

7   individuals.

8        How does the government propose to do this in light of

9   the number of CIA witnesses for both the government and for

10  Mr. Schulte?

11       MR. LAROCHE:  We still intend to provide a list to the

12  jurors hard copy so they can review it and see if they are

13  familiar with any of the names on the list.

14       THE COURT:  The real names?

15       MR. LAROCHE:  Yes, your Honor.

16       MS. SHROFF:  And then what?

17       MR. LAROCHE:  Then, your Honor, we can take it up at

18  sidebar if anyone says they know anyone.

19       MS. SHROFF:  And then what?

20       THE COURT:  "Then what," what do you mean?

21       MS. SHROFF:  Is that record kept from the press?  Is

22  that record kept from the public?  And then what happens when

23  that particular person testifies under a fake name?

24       THE COURT:  A pseudonym.

25       MS. SHROFF:  What's a pseudonym other than a -- I'm

K1O3SCHC

1    sorry, okay, let's go with pseudonym.  What happens then?  What

2    is the jury supposed to think?  They asked me if I knew --

3    let's just pick a name.  Pete Brush.  And I said yes or I said

4    no.  And then I never hear from Pete Brush during the trial?

5    What happens?  I'm a juror, I'm completely confused.  Unless

6    somebody is going to advise me that I am going to get a whole

7    list of names about which I am going to be asked, I'm never

8    going to see the names at a trial again.  But from that

9    particular process, the jurors should draw no inference that

10   this is a issue about classification, national defense

11   information, and just keep an open mind, and proceed to trial.

12             The defense objects.

13             THE COURT:  Mr. Laroche.

14             MR. LAROCHE:  We have no objection to that type of

15   instruction, your Honor.  Presumably, if someone knew someone

16   on that list of names, they wouldn't be a juror anyway.

17             THE COURT:  These are the real names then.

18             MR. LAROCHE:  That's correct, your Honor.

19             MS. SHROFF:  I was being sarcastic.  I'm sure

20   Mr. Laroche knows that.  I do not think any juror could

21   possibly get that kind of instruction and suddenly think, okay,

22   none of this is highly sensitive.  This is the first time I've

23   ever heard of a trial where the person whose names are given to

24   me in voir dire never ever testifies.

25             I was being sarcastic, and I'm sure Mr. Laroche knows

K1O3SCHC

1    this.

2              MR. LAROCHE:  We can just give them a list and say

3    this is a list of people who may or may not come up at trial.

4    That's it.  I think Ms. Shroff is making more out of this issue

5    than it is.

6              THE COURT:  But, really, say, for example, it's --

7    I'll use my own name.  I'm called as a juror.  I am a CIA

8    employee.  My real name is Paul Crotty, and I'll be identified

9    as Paul Crotty.  But thereafter when I testify, I won't be Paul

10   Crotty.  I'll be Thomas McMahon.

11             MR. LAROCHE:  I guess my point, your Honor --

12             THE COURT:  Does the juror know that?  How will that

13   be communicated to the jury?

14             MR. LAROCHE:  I don't think it has to be communicated.

15   The point of giving the names is to determine whether the

16   jurors know anyone who may potentially testify.  If they don't

17   know anyone who may potentially testify, then it's not going to

18   matter whether that person is testifying under another name.

19   They don't know their real names anyway.  At that point there

20   it is not going to be an issue with the jurors.

21             Our proposal will not be Paul Crotty, CIA employee.

22   They are not going to have that connection and be wondering why

23   didn't Paul Crotty CIA testify.  Because we can present the

24   list as people who may or may not come up in this trial, and

25   give the list.

K1O3SCHC

1          THE COURT:  The pseudonym wouldn't make any difference

2     because it's, as Ms. Shroff says, a fake name anyway.

3          MR. LAROCHE:  That's right.

4          MS. SHROFF:  Your Honor, what is the jury going to

5     think when it gets a list of witnesses, and let's just make it

6     easy, just say there are only five.  Five witnesses.  And they

7     never hear those people's names again.  So none of those --

8          THE COURT:  That happens quite frequently.

9          MS. SHROFF:  None of the five were called.  How does

10    it happen frequently?  The name is mentioned somewhere along

11    the way.

12         THE COURT:  You read a list of names to the jury, and

13    many times those names are not called as witnesses.

14         MS. SHROFF:  Right.  They may not be called as

15    witnesses, but they are certainly called into evidence.  Say

16    that you have four people in a conspiracy, and you have a

17    snitch against the fourth person.  That snitch may not be

18    called, but the snitch's name would come up in the testimony.

19         And we are not talking about a cooperating witness,

20    your Honor.  We are talking about employees.  We are talking

21    about a crime that happened in an office.  How are we going to

22    go through a trial about CIA employees, without ever worrying

23    about having to refer to the name of the employees.  There was

24    a meeting, was there not?  Yes.  How many people attended the

25    meeting?  Six.  Which six people attended the meeting?

K1O3SCHC

1          Are we going to have six pseudonyms?  Are those six

2     real names never going to come up in evidence at all again?

3     That never happens in a trial.  I agree with the Court, a

4     witness may not get called, but I have never seen a trial where

5     none of the names that are on the witness list ever appear in

6     the trial testimony.

7          THE COURT:  What am I going to say about the

8     indictment?  Am I going to say it involves Mr. Schulte who was

9     a CIA employee who is charged with stealing documents?

10         MR. LAROCHE:  Yes, your Honor.

11         THE COURT:  You are going to hear a lot of witnesses

12    from the CIA.

13         MR. LAROCHE:  Yes, your Honor.

14         THE COURT:  I assume that's what we'll tell them.

15         MR. LAROCHE:  Yes, your Honor.

16         MS. SHROFF:  I do just want to remind the Court that I

17    submitted a document which is called the contact card that

18    lists every individual's name.  It's publicly distributed at

19    the CIA.  Never marked classified.  And those names are the

20    ones that the government insists, even now, in an Article III

21    court, to keep from the public, the press, and the jury during

22    a trial.

23         THE COURT:  I am aware of that.

24         MS. SHROFF:  Thank you, your Honor.

25         THE COURT:  Now, there is a letter from Ms. Shroff of

K1O3SCHC

1   January 23 regarding the government's expert Mr. Leedom who is

2   going to be discussing application log files.  Ms. Shroff, you

3   want the corresponding metadata; is that right?

4              MS. SHROFF:  That is what our expert requested we

5   seek.

6              MR. LAROCHE:  We have it with us today, your Honor.

7   We will provide it today.  We have it with us.

8              THE COURT:  When am I going to get the 3500 material

9   from the government?

10             MR. LAROCHE:  Your Honor, we can give it to you now

11  electronically.  I think we can also get a hard copy to the

12  Court by midweek.  In that respect, I know Ms. Shroff has

13  raised some issues with printing, and we understand those

14  issues.  We are dealing with them ourselves.  I think we have a

15  solution on that where the government will be able to print

16  copies for everyone.  We think we'll be able to get that done

17  by midweek.  So the defense will also get copies that we will

18  provide.

19             We will also be able to do that for the exhibits.  So

20  as soon as the exhibits get into an unclassified form, our plan

21  is to also print for the defense two copies of the exhibits, so

22  they don't have to be burdened with printing them.  We can

23  handle that as well.

24             THE COURT:  All right.  You say midweek.  Will it be

25  rolling production?

K1O3SCHC

1        MR. LAROCHE:  We are largely complete with our 3500

2   except for interviews and meetings that are happening now.  So

3   that will be largely a complete production, your Honor.  It

4   will not have to be rolling, because most of it has been

5   produced already.  So I think to the extent we have to

6   supplement after that, they will be smaller productions.  We

7   can just add it --

8        THE COURT:  When can you produce that?

9        MR. LAROCHE:  We think we can get you the big

10  production by midweek, your Honor.

11        To be clear, we can give you the electronic production

12  today.  We have that ready.  If the Court wants hard copies,

13  which we are planning to do, we think we can get those all

14  printed by midweek.

15        THE COURT:  That's why I was asking about the rolling

16  production.  Do I have to wait until midweek to get anything?

17        MR. LAROCHE:  If you want electronic copy --

18        THE COURT:  I understand electronic.  But I function

19  in a hard copy world.

20        MR. LAROCHE:  Understood.  As do we.  Yes, midweek we

21  can give you the production.  If the Court would like a rolling

22  production, we can start trying get that out this weekend.

23        THE COURT:  Thank you.

24        MS. SHROFF:  I just wanted the Court to have a heads

25  up.  It is about 7,000 pages of classified --

K1O3SCHC

1          THE COURT:  I did the math.

2          MS. SHROFF:  Was I correct, your Honor?

3          THE COURT:  I added 5,000 and 1,000 and it rounded up

4    to about 7,000, yes.  And you have another 4 or 5,000 the other

5    day.

6          MS. SHROFF:  That was the unclassified.  The

7    unclassified is also a substantial amount.  But in fairness to

8    the government, we have had some of it for a while, and I think

9    I noted that clearly in my letter.  But we have a substantial

10   amount of new 3500 material, and I've written to you about

11   where we are in that process, your Honor.  Thank you.

12         THE COURT:  Now, with regard to the trial schedule for

13   the jury.  I propose Mondays through Thursday we work from 9 in

14   the morning until 2:30 in the afternoon.  And on Friday, from 9

15   to 12:30.

16         MS. SHROFF:  We can't do Fridays, your Honor.  Our

17   expert is not available.  He is a professor at Columbia, and

18   he's told us all along he is not available on Fridays.  And we

19   told the Court before we couldn't sit on Fridays.

20         THE COURT:  All right.  We'll meet on Monday through

21   Thursday from 9 to 3.  We'll take a 15-minute break around

22   10:30, 11 o'clock, and another break but maybe a little bit

23   longer around 1 o'clock.  But we'll work from 9 to 3, and

24   Fridays we'll be off.

25         Does the government have a proposal with respect to a

K1O3SCHC

1    glossary or a key that they are going to give --

2              MR. LAROCHE:  Yes, your Honor.

3              THE COURT:  -- to the Court?

4              And do you plan on giving it to the jury as well?

5              MR. LAROCHE:  Yes, your Honor.  No, we would not give

6    that to the jury.  It would only be necessary for the witnesses

7    who are testifying to be able to have a key in front of them,

8    so if there was someone who was testifying under a pseudonym

9    they could refer to it, so they don't refer to them by their

10   true name.  That would be our proposal, your Honor.

11             THE COURT:  What about the all the initials that you

12   see in the documents about the organization, the structure of

13   the CIA.  The CCI, the OSB, the NOD, the list just goes on and

14   on forever.  The acronyms.  Do you have a proposal there?

15             MR. LAROCHE:  We can do a glossary for that as well,

16   your Honor.

17             THE COURT:  All right.  I'll give you an update on

18   several motions that are pending before me.

19             With regard to the defense's motion to reconsider my

20   ruling on the expert Mr. Rosenzweig, I have an order that I

21   will enter when I get back upstairs.  But the application by

22   Mr. Schulte to reconsider the Rosenzweig decision is denied.

23             With regard to the government's letter of January 21,

24   dealing with the notebooks and the malware article.  I have

25   Ms. Shroff's letter of January 23, and while this is very

K1O3SCHC

1  tardy, I am going to grant Ms. Shroff's request that she be

2  allowed to file a response on the evidentiary questions raised

3  by the government's letter.  Ms. Shroff says that she wants

4  January 28.  I'm going to set Monday, January 27, at 2 o'clock,

5  and ask for the government's response to Ms. Shroff's letter of

6  January 27 at 2 o'clock by close of business on Tuesday, the

7  28th.

8          That takes care of the 18-page letter of January 21.

9          I have two letters from Mr. Schulte.  The first

10 letter, dated January 2, it was postmarked the 13th of January,

11 and then it was routed to the pro se office on January 17.  It

12 didn't arrive in chambers until January 19 or 20.  I have a

13 second letter from Mr. Schulte of January 21 starting out, "I

14 again write to the Court regarding Mr. Branden who was assigned

15 to my case on October 28."  And Mr. Schulte believes that

16 Mr. Branden has not been as diligent as he should have been and

17 he asks for a different lawyer.

18          I think giving Mr. Schulte a different lawyer now at

19 this particular stage wouldn't do much good.  We are on the eve

20 of trial.  I will talk to Mr. Branden and have him clear his

21 schedule so he can render assistance to Mr. Schulte and be of

22 aid and assistance to Ms. Shroff.  I'll do that today.

23          Ms. Shroff, could you tell me about your letter about

24 the Sometimes Chats, the letter of January 23?

25          MS. SHROFF:  Your Honor, the Sametime Chats?

K1O3SCHC

1            THE COURT:  Sametime Chats.

2            MS. SHROFF:  Your Honor, we have, and if I get it

3    wrong I'm sure the government will correct me.  I do not think

4    we've received the bulk of the Sametime Chats before.  If I'm

5    wrong -- am I wrong?

6            (Counsel conferring)

7            MS. SHROFF:  So for Mr. Schulte's Sametime Chat, we

8    had asked for Sametime Chats all the way from the time he was

9    first employed, and we were not given those.  We were given a

10   specific range closer to the time in the indictment.

11   Subsequently, during the 3500 production, we received some of

12   the Sametime Chats.

13           The way they are presented to us is they are cropped,

14   so we do not quite have full context for what has happened

15   moments before or moments after.  And the context in this

16   particular case is relevant.  So, for example, I think the

17   government has publicly in its motion in limine talked about

18   the memo of warning or the letter of warning.  The Sametime

19   Chats on those days, what was going on with management, how

20   they planned it, what they were doing, all of that is relevant

21   to us.  We don't have it.  They do.

22           THE COURT:  Mr. Laroche?

23           MR. LAROCHE:  I agree it's all relevant, your Honor.

24   We aimed to, and I believe we did, produce all of the relevant

25   communications related to that employee dispute, whether it be

K1O3SCHC

1   regarding e-mails that were sent between management about

2   Mr. Schulte or related to Sametime Chats.  We're also

3   continuing to meet with our witnesses and have asked them

4   whether there is anything additional related to that.  To the

5   extent it comes up, we will produce it.

6           THE COURT:  So in answer to Ms. Shroff, you say you've

7   produced the documents?

8           MR. LAROCHE:  Yes, your Honor.

9           MS. SHROFF:  You are going to get the 3500 material.

10  I leave it to chambers.  If the government's position is that

11  they've actually produced to us information in a way we can

12  actually use at trial, I invite the Court to take a look at it.

13          THE COURT:  All right.

14          MS. SHROFF:  In addition, the 3500 material that has

15  been presented to us for the FBI witnesses, which I think is

16  literally in the hundreds and hundreds of pages, all of these,

17  all of these e-mail exchanges are retyped.  Many of these

18  e-mail exchanges are retyped, and yet they are cropped for us.

19  They have this information.  There is nothing sensitive --

20          THE COURT:  What about the cropping, Mr. Laroche?

21          MR. LAROCHE:  I am not sure what she's referring to,

22  your Honor.

23          MS. SHROFF:  I'll tell you what I am referring to.

24          THE COURT:  It won't do any good to tell me.  What you

25  really ought to do is take it up with Mr. Laroche.  If you are

K1O3SCHC

1    not going to be satisfied with what Mr. Laroche says, then come

2    back.  We'll be together on Monday.

3              MS. SHROFF:  We have been dissatisfied with what

4    Mr. Laroche says.  We've asked them for this ad nauseam for

5    almost a year.  The same way we have asked for Mr. Schulte's

6    personnel file.  It is his personnel file.  They have his

7    personnel files.  I know they have it because I read it in -- I

8    think his name is Schlesinger's 3500.  That's the FBI agent.

9    They have it.  It's his personnel file.  Why wouldn't I get it?

10             THE COURT:  Did you get it?

11             MS. SHROFF:  No.

12             THE COURT:  I thought you just said you did get it.

13             MS. SHROFF:  I said why wouldn't I get it.  I have

14   asked them for it for more than a year.

15             I apologize for the frustration in my voice, your

16   Honor, but between not having a co-counsel that has reviewed

17   any 3500, any discovery, and a trial date a week away.

18             THE COURT:  Has the personnel file been produced,

19   Mr. Laroche?

20             MR. LAROCHE:  Yes, your Honor.

21             MS. SHROFF:  Mr. Schulte's personnel file -- if the

22   government believes they've produced to us a personnel file for

23   Mr. Schulte from the CIA, I ask the Court to tell them to give

24   us the Bates numbers, because we do not have that kind of a

25   personnel file that they are referring to.

K1O3SCHC

1          MR. LAROCHE:  We'll do that, and also re-provide the

2    letter that I believe also went to the Court regarding the

3    personnel file.

4          THE COURT:  All right.  On the defense's motion about

5    the task force report, I am going to grant that motion in part.

6    I've reviewed the report, and I am going to direct the

7    government to produce the following portions of the report.

8    This should have been disclosed in connection with the Section

9    4 order.

10         On page one of the task force report, redacted

11   paragraph 4 should be produced.  Page 4, redacted paragraph 3

12   should be produced.  Page 7, redacted paragraph 8 should be

13   produced.  Page 12, redacted recommendation A5 heading should

14   be produced.

15         I've read the redacted portions again, and I find that

16   it contains forward-looking statements and hypotheticals about

17   future harm, which may or may not have occurred, but is not

18   relevant information.

19         So with the exceptions that I've just noted on page 1,

20   4, 7, and 12, the application is denied.  It is granted as to

21   those four instances.

22         With regard to Ms. Shroff's letter of January 23, with

23   regard to the government's submission of January 21 regarding

24   the blue notebooks and the red notebooks and the malware, I've

25   already told you that I've given Ms. Shroff until Monday, the

K1O3SCHC

1   27th of January, at 2 p.m., to file a response, which she

2   requested.  That's about Rosenzweig.

3          We'll set Monday at 2 o'clock for a public hearing on

4   the -- I checked the docket sheet this morning, and the order

5   is entered on January 21.  The government was ordered to file a

6   public version of its proposal for courtroom closure, and that

7   letter was filed on January 23, it's docket no. 263.  Okay.

8          That takes care of what I want to take care of.  Is

9   there anything else you want to raise now, Mr. Laroche and

10  Ms. Shroff?

11         MR. LAROCHE:  Not from the government, your Honor.

12         THE COURT:  Mr. Zas.

13         MR. ZAS:  We had submitted a letter, I don't remember

14  the exact date, because there have been so many letters, but it

15  has to do with the names and addresses of CIA witnesses.

16         THE COURT:  Yes.

17         MR. ZAS:  We understand from CISO Hartenstine that we

18  are precluded -- we are not able to use the names or addresses

19  basically for any purpose.  We can't do a Google search of a

20  witness, we can't have an investigator go and investigate the

21  person.

22         And as we said in our letter, we think that denies us

23  two Constitutional rights.  One is the confrontation right, to

24  prepare for the cross-examination of these witnesses, and the

25  other is effective assistance because we have a duty to do a

K1O3SCHC

1    reasonable investigation.  Trial is a week from Monday.  We

2    don't see how we can do a reasonable investigation of witnesses

3    we can't investigate.

4              THE COURT:  What's the date of the letter?

5              MS. SHROFF:  I think it is January 21, your Honor.

6              THE COURT:  Is it January 17?

7              MR. ZAS:  I think so, your Honor.

8              THE COURT:  Is that the letter in which you cited to

9    Smith v. Illinois, 390 U.S.?

10             MR. ZAS:  That's exactly it, yes, sir.

11             THE COURT:  All right.  Mr. Laroche, what's the

12   government's position?

13             MR. LAROCHE:  Your Honor, the government understands,

14   we are not objecting to them conducting an investigation.  I

15   think what we would object to is connecting them to the agency

16   in order to conduct that investigation.

17             For example, if they wanted to search for someone's

18   name online, it would be the difference between putting their

19   name in alone, and putting their name in and trying to connect

20   them in that their search with the agency.

21             THE COURT:  You mean you can ask for Joe Smith, but

22   you can't ask for Joe Smith at the CIA?

23             MR. LAROCHE:  That's correct, your Honor.

24             THE COURT:  How do you know it is the Joe Smith at the

25   CIA?

K1O3SCHC

1            MR. LAROCHE:  They have a substantial amount of

2    information about these folks, your Honor.  So, they would know

3    if that is the right person that they are searching for based

4    on the wealth of information that they've been provided.

5            THE COURT:  Excuse me, how would they know?  Through

6    other information, you mean?

7            MR. LAROCHE:  That's right, your Honor.  They've been

8    provided substantial amount of information from these folks for

9    a very long time.  Witness interviews with the CIA were

10   produced in December 2018.  So they've had information about

11   these key witnesses for a very long time.  They know a lot

12   about them from that investigation.

13           To the extent they search for that in that way, they

14   should know who they are referring to.

15           MS. SHROFF:  There would be no way to search for those

16   individual -- you can't take their names out.  We are not

17   allowed to take the names out.  Even for an ex-CIA employee

18   that we contacted, the CISO reached out to us and told us to

19   stop.  So I don't know what Mr. Laroche is talking about.

20           If the CIA employee's name, for example, is Paul

21   Crotty, I'm not allowed to take the name Paul Crotty, go

22   outside to my computer that has e-mail -- I mean internet

23   access, and put in the name Paul Crotty, because the name,

24   according to the CISO to us, is classified, whether we put it

25   next to the CIA or not.

K1O3SCHC

1            And frankly, it is because they gave us these 302s,

2      and it is because the 302s are written in a particular way,

3      that we need to do the investigation.  And when we are not able

4      to do the investigation, we asked for personnel files of these

5      individuals, which again the government did not give to us.

6      Because perhaps their bad acts or their problems would be

7      reflected in the personnel file that would even somewhat make

8      up for the lack of basic investigation by us.

9            THE COURT:  Has the government responded to the letter

10     of January 17?

11           MR. LAROCHE:  No, your Honor.

12           THE COURT:  Can I get your response?

13           MR. LAROCHE:  Yes, your Honor.

14           THE COURT:  Can you give me a date?

15           MR. LAROCHE:  Monday, your Honor?

16           THE COURT:  All right.  Mr. Hartenstine, have you

17     worked with this, looked at this request?

18           MR. HARTENSTINE:  I have, your Honor.  And I think,

19     without knowing specifically what defense counsel sought about

20     these individuals, it was hard for me to give any other advice

21     than not to undertake social media or --

22           THE COURT:  Did you read the January 17 letter?

23           MR. HARTENSTINE:  I did, your Honor.

24           THE COURT:  Why can't you respond?  Why can't the CIA

25     respond to that?

K1O3SCHC

1          MR. HARTENSTINE:  I believe they can, your Honor.

2     They have not.  I can seek guidance from CIA on behalf of

3     defense counsel.

4          THE COURT:  All right.  I'll get the government's

5     response on Monday, Mr. Laroche?

6          MR. LAROCHE:  Yes, your Honor.  Your Honor, just to be

7     clear, we have spoken to the agency about this, and I think our

8     position is largely what I just said.  So it is not the

9     agency's fault for not responding earlier.  It's on us, and

10    we'll provide the response by Monday.

11         THE COURT:  Okay.  Anything else, Mr. Zas?

12         MS. SHROFF:  Your Honor, could we just have a minute

13    more?

14         THE COURT:  Yes.

15         MS. SHROFF:  Thank you.

16         (Pause)

17         (Counsel conferring)

18         MS. SHROFF:  Your Honor, I've conferred with the

19    government, and could we have a brief sidebar?

20         THE COURT:  Yes.

21         (Pages 26-29 sealed)

22         (Continued on next page)

23

24

25

K1O3SCHC

1              (In open court)

2              THE COURT:  Anything else?

3              MR. LAROCHE:  Not from the government, your Honor.

4              THE COURT:  Ms. Shroff, Mr. Zas?

5              MS. SHROFF:  No, your Honor.  Thank you.

6              THE COURT:  See you on Monday at 2 p.m.  Thank you

7    very much.

8              (Adjourned)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25