

**U.S. Department of Justice**
*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

February 12, 2020

**By Hand (CLASSIFIED SUBMISSION)**
**By ECF (Redacted)**
The Honorable Paul A. Crotty
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    <u>United States v. Joshua Adam Schulte</u>, S2 17 Cr. 548 (PAC)

Dear Judge Crotty:

    (U) The Government writes to request that the Court rule *in limine* on the admissibility of testimony from approximately 50 witnesses who the Government understands have received subpoenas from the defendant pursuant to Federal Rule of Criminal Procedure 17. The defendant proposes to call an extraordinary number of current and former employees of the Central Intelligence Agency ("CIA"), including, among others, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, the principal attorney for the CIA component where the defendant worked, and the former Director of the CIA. The Government understands the defendant's proposed witness list would also include at least ▓ covert CIA officers as well as a number of additional overt officers who would require some witness protections due to the sensitivity of their roles at CIA, consistent with the Court's orders regarding such safeguards. By contrast, the Government intends to call only nineteen witnesses *in total*, including only ten CIA employees or contractors. Because many of the defendant's proposed witnesses previously or currently work in particularly sensitive positions, including positions overseas, advance ruling on the admissibility of their testimony is necessary to avoid undue disruption of their critical intelligence work by making the complex arrangements necessary to, for example, repatriate covert officers for testimony. For the vast majority of witnesses the defendant has subpoenaed, it appears that (i) their testimony would not meet the minimum thresholds of personal knowledge and relevance required by Federal Rules of Evidence 401 and 602, and (ii) to the extent relevant and admissible, their testimony would be cumulative, confusing, or inflammatory, and should therefore be excluded under Rule 403. While the Government believes that the Court can and should preclude the testimony of some of these witnesses now (such as the three identified above and discussed further below), more information is necessary for the parties to address the complex evidentiary issues presented by the proposed defense witness testimony. Accordingly, the Government respectfully requests that the Court (i) preclude the defense from calling the three witnesses referenced above, and (ii) order the defendant

Hon. Paul A. Crotty
February 12, 2020
Page 2

to make an offer of proof as to the substance and basis for admissibility of the testimony from the remaining witnesses subject to subpoena, so the Court can rule on the admissibility of the proposed testimony.

I.     (U) Applicable Law

(U) The defendant's rights under the Sixth Amendment and Rule 17 to subpoena witnesses do not permit him to evade the generally applicable requirements of the Federal Rules of Evidence. "The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence. The Compulsory Process Clause provides him with an effective weapon, but it is a weapon that cannot be used irresponsibly." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). As the Supreme Court has observed:

> (U) [A] trial court may not ignore the fundamental character of the defendant's right to offer the testimony of witnesses in his favor. But the mere invocation of that right cannot automatically and invariably outweigh countervailing public interests. The integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process must also weigh in the balance.

(U) *Id.* at 413-15; *see also United States v. Holmes*, 44 F.3d 1150, 1157 (2d Cir. 1995) ("While '[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense,' this right does not preclude a judge from placing reasonable restrictions on the admission of evidence based on the concerns as to 'prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973), and *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

(U) The most fundamental requirement for the admissibility of evidence is its relevance to proving a "fact [that] is of consequence in determining the action." Fed. R. Evid. 401. "The question to be asked in determining the relevance of evidence is whether a reasonable person might believe the probability of the truth of the consequential fact to be different if that person knew of the proffered evidence." 2 Weinstein's Federal Evidence § 401.04 (2019). "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

(U) Even where a fact is relevant, it must be proven by competent testimony. "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter," Fed. R. Evid. 602, and "the party calling a witness has the burden of demonstrating that the witness is qualified to testify under Rule 602," Wright & Miller, 27 Fed. Prac. & Proc. Evid. §6027 (2d ed.). Indeed, "[t]he district court must ensure that the proponent establishes a proper foundation for any evidence before it is admitted, such that it can find that the witness has personal knowledge and is not testifying to inadmissible hearsay." *United States v. Robinson*, 206 Fed. Appx. 80, 83 (2d Cir. 2006) (internal citation omitted).

Hon. Paul A. Crotty
February 12, 2020
Page 3

(U) The requirement of personal knowledge also prohibits speculative testimony from witnesses. *See, e.g., United States v. Ortiz*, 962 F. Supp. 2d 565, 574 (S.D.N.Y. 2013) (A "witness has personal knowledge if he testified from 'general observation and knowledge, and not upon conjecture or hearsay.'" (quoting *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 764 (2d Cir. 1991))). Even where a witness has some personal knowledge, that cannot serve as a springboard into speculation about how other circumstances might come about. *See United States v. Gibson*, 636 F.2d 761, 764 (D.C. Cir. 1980) ("[W]e know of no case holding that a trial judge must permit a lay witness to use one set of observations as the foundation for an opinion about what he might have seen under different circumstances."). Although lay opinion testimony is permissible when properly grounded in the witness's personal knowledge, speculation as to the culpability of any particular individual or as to the manner in which a crime could hypothetically have been committed has universally been precluded. *See, e.g., United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005) (precluding testimony because "a 'lay opinion' as to a person's culpable role in a charged crime . . . is not presenting the jury with the unique insights of an eyewitness's personal perceptions"); 4 Weinstein's Federal Evidence § 701.03 (2019) ("[A]lthough qualified experts may properly testify in response to hypothetical questions, lay witnesses generally are not entitled to express opinions based on hypothetical questions.").

(U) Even potentially relevant testimony from a competent defense witness should be precluded if it fails the balancing test of Rule 403 by introducing "the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. In particular, where the purported relevance of testimony is based on the defendant's assertions that another person could have committed the charged offenses, the Second Circuit has admonished courts to "be sensitive to the special problems presented by 'alternative perpetrator' evidence." *Wade v. Mantello*, 333 F.3d 51, 61 (2d Cir. 2003) (quoting *United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir. 1998)). Before permitting the defendant to introduce evidence that someone else could have committed the crimes with which he is charged, the Court "must ensure that the defendant shows a 'sufficient . . . nexus between the crime charged and the asserted 'alternative perpetrator.'" *United States v. Hendricks*, 921 F.3d 320, 331 (2d Cir. 2019) (quoting *Wade*, 333 F.3d at 61-62); *see also Holmes v. South Carolina*, 547 U.S. 319, 327 (2006) (citing "rules regulating the admission of evidence proffered by criminal defendants to show that someone else committed the crime with which they are charged" as a paradigmatic example of the "familiar and unquestionably constitutional" limits on a defendant's right to present evidence). "It is not sufficient for a defendant merely to offer up unsupported speculation that another person may have done the crime. Such speculative blaming intensifies the grave risk of jury confusion." *McVeigh*, 153 F.3d at 1191 (precluding testimony that "would have forced the government to attempt to disprove the nebulous allegation that [another group] was involved in the bombing. This side trial would have led the jury astray, turning the focus away from whether McVeigh—the only person whose actions were on trial—bombed the Murrah Building").

(U) Finally, the Sixth Amendment does not entitle the defendant to the endless presentation of repetitive, cumulative evidence. Under Rule 403, "[t]he exclusion of evidence is generally

appropriate when the evidence merely repeats evidence already admitted." 2 Weinstein's Federal Evidence § 403.06 (2019). Although "the Sixth Amendment guarantees a defendant the right to have compulsory process for obtaining witnesses in his favor, at the same time a defendant . . . must show the witness would have provided favorable evidence which was neither cumulative nor irrelevant." *United States v. Desena*, 287 F.3d 170, 176 (2d Cir. 2002) (internal quotation marks and citations omitted); *see also United States v. Ginsberg*, 758 F.2d 823, 831 (2d Cir. 1985) (defendant must show that witness's testimony is "not merely cumulative to the testimony of available witnesses").

(U) With respect to each of these limitations, as the proponent of the testimony, the defendant "bear[s] the burden of demonstrating the admissibility" of the evidence. *United States v. Camacho*, 353 F. Supp. 2d 524, 535 (S.D.N.Y. 2005) (noting that "[t]his general principle applies to all questions of admissibility that arise under the Federal Rules of Evidence"). Before the Court can admit the disputed testimony, the defendant must demonstrate its admissibility by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) ("The preponderance standard ensures that before admitting evidence, the court will have found it more likely than not that the technical issues and policy concerns addressed by the Federal Rules of Evidence have been afforded due consideration."). To make such a showing as to the proposed testimony, the defendant should "inform[] the court of its substance by an offer of proof," Fed. R. Evid. 103, so the Court can "decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible," Fed. R. Evid. 104(a).

### II. (U) Discussion

The Government understands that the defendant has served at least 69 current or former CIA employees with subpoenas to testify in this case. This includes subpoenas for 23 individuals identified in a preliminary witness list the Government provided to the defense as a courtesy on August 16, 2019, which the Court authorized in an Order dated November 26, 2019 (Dkt. 200), and at least 46 additional subpoenas since then. That number reflects those recipients who have informed the CIA's Office of General Counsel of the latest subpoenas, as required by CIA regulations.[1] As referenced above, these include subpoenas for (1) Lisa ▬▬, a covert officer in the Computer Operations Group ("COG") ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬; (2) Erin ▬▬, the Chief Counsel for the Center for Cyber Intelligence ("CCI"); and (3) Michael Pompeo, the former Director of the CIA and current Secretary of State. As to these three individuals, the record is clear now that their testimony is inadmissible and should be precluded. For the remaining subpoenaed witnesses, the Government recognizes that some of them (such as those identified on the Government's preliminary witness list) may have relevant testimony to offer, although the Government expects that their testimony would, in many respects, be cumulative of testimony by the witnesses who are already being called at trial. For many of the

---

[1] (U) The Government does not know the precise number of subpoenas that the defendant has issued, because the Government is only aware of the subpoenas issued to individuals who have reported receiving them to the CIA's Office of General Counsel.

witnesses, however, it is unclear that they even have any relevant personal knowledge to which they could testify. Thus the Court should require the defendant to make an individualized proffer as to each witness's testimony so that the Court can determine whether they have firsthand knowledge of the proffered subject, whether the proffered testimony is relevant, whether the probative value of the proffered testimony meets the requirements of Rule 403, and whether the testimony of all of the numerous proposed defense witnesses (of whom the Government is aware) is necessary, or whether some number should be precluded as cumulative.

A. Lisa ▓▓▓



Lisa ▓▓▓ is a covert CIA officer working in COG.[2] ▓▓▓ In a letter to the Court dated November 19, 2019, the defendant set forth the purported relevance of Lisa's ▓▓▓ testimony. His proffer on its face demonstrates the inadmissibility of Lisa's ▓▓▓ testimony:

> Mr. Schulte and Lisa ▓▓▓ The jury should hear that Lisa ▓▓▓ was a high up CIA employee whose position according to the CIA was sensitive. That management never took her aside and warned her about Mr. Schulte ▓▓▓ ▓▓▓ is relevant.

Moreover, the remainder of the defendant's proffer demonstrates the irrelevance of any testimony from Lisa ▓▓▓. Whether or not CIA managers chose to "warn" Lisa ▓▓▓ about Mr. Schulte has no bearing on *his* conduct, for which *he* is on trial. Nor is there any relevance to the sensitivity of Lisa's ▓▓▓ position in a different group, which did not involve the use of DEVLAN, the Atlassian suite, or any other system at issue in this case. In addition, it would plainly be impermissible for the defendant to call Lisa ▓▓▓ to testify as to statements the defendant made to her, because it is axiomatic that "[w]hen the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." *United States v. Yousef*, 327 F.3d 56,

---

2 ▓▓▓

153 (2d Cir. 2003) (quoting *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982)). Accordingly, the Court should rule that [Lisa's] testimony is inadmissible.

B. (U) Erin [REDACTED]

Erin [REDACTED] is currently the Chief Counsel for CCI, the victim of the defendant's crimes. As such, her communications about matters related to this case are privileged and inadmissible. *See* Fed. R. Evid. 501, 502. The defendant further has failed to suggest any purported relevance to her testimony. In his September 9, 2019 notice (the "Section 5 Notice") pursuant to Section 5 of the Classified Information Procedures Act ("CIPA"), the defendant sought to introduce an FBI report of an interview of [Erin] by asserting that [Erin] "[t]ells the FBI that 'those who attended the off-site conference did not have access to the information that was leaked on WikiLeaks.' FBI does not ask to check or verify who was at work by asking for badge records." (Section 5 Notice at Row 104). The defendant omits that the report noted only that those individuals "did not have access to the information that was leaked on WikiLeaks *at the offsite*," which the defendant did not attend, and which ran only from March 8 to 10, 2016, more than a month before the Government alleges the defendant to have stolen the national defense information at issue in this case. Nor is this information relevant, as the defendant appears to have conceded when he chose not to elicit any information about this particular offsite meeting during the cross-examination of [REDACTED] (who testified under the trial pseudonym "Jeremy Weber"), who was specifically identified in the FBI report of [Erin's] statements as having attended it. To the extent this testimony is relevant, it should have been elicited from a witness with firsthand knowledge, rather than through an attorney who merely reported information regarding her understanding of the access of others to the FBI. Nor are the investigative steps taken by the FBI with regard to other individuals relevant to the jury's consideration of the defendant's conduct. As the Government has asked the Court to instruct the jury (and as is standard in this District), particular investigative measures are not required. *See, e.g.*, Jury Charge, *United States v. Campo Flores et al.*, S5 15 Cr. 765 (PAC) (S.D.N.Y. 2016). The defendant is free to argue to the jury that the fact that the Government has not introduced into evidence certain badge records for individuals other than the defendant on three days in March 2016 is somehow exculpatory (however implausible such an argument might be), but he is not entitled to a sideshow about who suggested what leads to the FBI, particularly when he proposes to do so through an attorney for the victim of the charged offenses. Accordingly, the Court should preclude the testimony of [Erin].

C. (U) **Secretary of State Michael Pompeo**

(U) Secretary Pompeo served as the Director of the CIA from January 23, 2017 until April 26, 2018. Sec. Pompeo had no role at the CIA at any time when the defendant was an employee there, and as a result has no relevant testimony to offer with respect to any of the defendant's actions at the CIA for which he is on trial. Although Sec. Pompeo was serving as Director of the CIA on March 7, 2017, when WikiLeaks began the public disclosure of the classified national defense information stolen by the defendant on April 20, 2016, the Government is unaware of any matter relevant to this case as to which Sec. Pompeo has personal knowledge. Sec. Pompeo was

Hon. Paul A. Crotty
February 12, 2020
Page 7

not a user of DEVLAN, a network administrator within the CIA more broadly, or an investigator involved in the first-hand review of evidence related to the defendant's theft. While Sec. Pompeo was undoubtedly kept informed about the consequences of the defendant's crimes and the CIA's response to secure its systems going forward, he—like virtually all similarly situated high-ranking government officials—received that information through briefings and summaries provided by others, which is quintessential inadmissible hearsay, rather than through first-hand knowledge of the facts.

▮ As with Lisa ▮ and Erin ▮, the Court should preclude Sec. Pompeo's testimony.

### D. (U) Remaining Witnesses

(U) As to the remaining witnesses the Government is aware of, the Court should order the defendant to make a proffer of each witness's anticipated testimony and the basis for its admissibility, consistent with Federal Rules of Evidence 103 and 104, sufficient to allow the Government to make specific objections and for the Court to rule as soon as possible. *See* 1 Weinstein's Federal Evidence § 103.22 (2019) ("In addition to making a sufficient offer of proof, the proponent of evidence must convince the trial court that the evidence is actually admissible. Counsel must be prepared to explain and substantiate the theory under which it is claimed that the evidence is admissible.").

(U) Testimony from the dozens of witnesses the defendant has subpoenaed would almost certainly result in "confusing the issues, misleading the jury, undue delay, wasting time, [and] needlessly presenting cumulative evidence." Fed. R. Evid. 403. For example, the defendant's Section 5 Notice discusses the FBI reports of these witnesses' statements, highlighting principally conjectures by these witnesses as to how the crime might have been committed and who might have committed it. The Second Circuit has warned that the Rules of Evidence do not permit precisely this sort of speculation. *See, e.g., Garcia*, 413 F.3d at 215; *Wade*, 333 F.3d at 61. Moreover, as evidenced by the defendant's inclusion of numerous witnesses with little or no direct involvement in the underlying circumstances at issue, the Court should give careful consideration to whether the testimony of such witnesses is actually based on the individual's personal knowledge of relevant facts.

▮ The Court should order the defendant to satisfy his obligation to demonstrate the admissibility of each individual's proposed testimony now. In order to arrange for testimony from an extraordinary number of witnesses serving in sensitive national security positions (including multiple witnesses currently serving overseas), the Government must follow unique procedures necessary to ensure CIA officers' safe transportation to, and participation in, this public trial. Delaying adjudication of the admissibility of each individual witness's testimony until the end of the Government's case would force the government to inflict upon dozens of serving officers the burden of being rapidly extracted from their sensitive positions only to have the Court potentially rule later that testimony from (at least some of) them is unnecessary, inadmissible, or both. Such a result would render the entire exercise unnecessary and needlessly harm national security.

Hon. Paul A. Crotty
February 12, 2020
Page 8

Accordingly, the Government respectfully requests that the Court preclude the testimony of Lisa ███, Erin ███, and Michael Pompeo, and that the Court order the defendant to make promptly an individualized showing as to why the testimony of the remaining witnesses he has subpoenaed is relevant and admissible.

          Respectfully submitted,

          GEOFFREY S. BERMAN
          United States Attorney

By: _____/s/_____
    David W. Denton Jr. / Sidhardha Kamaraju /
    Matthew Laroche
    Assistant United States Attorneys
    (212) 637-2744 / 6523 / 2420

Cc: Defense Counsel (by hand and ECF)