██████████



U.S. Department of Justice
*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 12, 2020

**By Hand (CLASSIFIED SUBMISSION – IN CAMERA)**

The Honorable Paul A. Crotty
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

    Re: <u>United States v. Joshua Adam Schulte</u>, S2 17 Cr. 548 (PAC)

Dear Judge Crotty:

  ███ The Government encloses a memorandum (the "Memorandum") prepared by the Counterintelligence Mission Center ("CIMC") of the Central Intelligence Agency ("CIA") requesting that Michael ███ be placed on paid administrative leave. The Memorandum describes the bases for CIMC's request. Although the Memorandum is unsigned, the request was approved on August 16, 2019 and Michael was notified that he would be placed on paid administrative leave on August 19, 2019.

  ████████ In particular, CIMC identified the following reasons for their request, none of which warrant disclosure of the Memorandum to the defendant:

- Michael's results during polygraph examinations ██████, after WikiLeaks began disclosing the DEVLAN information. *See* Memorandum at 2. This language refers to ███████████████████████████████████████████████████████████████

- Michael's relationship with the defendant. *See* Memorandum at 3.

- Michael's "close proximity to the theft of the data" and "activity on DEVLAN" that "suggests that Michael may have additional anomalies on the system at the time of the theft." *See* Memorandum at 2-3. The Government has consulted with the CIA and confirmed that this concern relates to Michael's presence in the CCI office at the time that the Government alleges the leaked DEVLAN information was stolen (which Michael testified about on direct) and took a snapshot (which

██████████

Hon. Paul A. Crotty
February 12, 2020
Page 2

▪ was introduced as GX 1255 today). The defense has been aware of these facts since at least December 2018, and does not need the Memorandum to explore them through cross-examination.

- "Recent inquiries" that "indicate that Michael is still withholding information concerning the circumstances of the theft." *See* Memorandum at 3. This language refers to CIMC's perception of Michael's interviews with the Government and the FBI, the notes of which have all been produced to the defense, including the August 16, 2019 meeting after which Michael retained counsel.

- Finally, the Memorandum also describes CIMC's perception of Michael's unwillingness to cooperate with a CIA security investigation into his physical altercation with the defendant, and in particular, Michael's refusal to answer questions about the fight during a CIA interview. *See* Memorandum at 2. The Government has produced to the defendant the underlying interview materials.

(U) The defense argued that the reason why they should review the Memorandum is because it could support an argument that the CIA retaliated against Michael for saying favorable things about the defendant. Nothing in the Memorandum supports that argument. To the extent the defense wants to cross-examine Michael more generally about the CIA placing him on administrative leave and the timeline of those events, the defense has all of the information it needs to do so. The defense has (for several months) all of the notes from Michael's interviews, and thus can elicit, and indeed has already begun to elicit, whatever favorable testimony the defense believes Michael can offer about those interviews. Furthermore, the defense also can elicit the fact that Michael was placed on administrative leave after those interviews. Thus, to the extent the defendant wishes to argue to the jury (incorrectly) that the CIA placed Michael on paid administrative relief to punish him for speaking positively about the defendant, he does not need the Memorandum or the information contained therein.

(U) Finally, while the defendant does not appear to intend to attack Michael credibility, even if he did, the defendant would not be entitled to the Memorandum. The materials that actually could be used to challenge Michael's credibility are already in the defendant's possession, including GX 1255 and all of the FBI 302s and interview notes. The only new information in the Memorandum is that Michael gave some ▮▮▮▮▮▮ answers in polygraph examinations that post-date the theft of the leaked DEVLAN information and CIMC's opinion of Michael's veracity. With respect to the polygraph, "[b]oth the United States Supreme Court and [the Second Circuit] have repeatedly upheld the exclusion of polygraph evidence because of its unreliability, its potential to confuse the issues and mislead the jury, and the danger of unfair prejudice posed by its admission." *United States* v. *Fraser*, 206 F. App'x 100, 101 (2d Cir. 2006) (citing *United States* v. *Scheffer*, 523 U.S. 303, 309 (1998); *United States* v. *Kwong*, 69 F.3d 663, 668 (2d Cir. 1995); *United States* v. *Rea*, 958 F.2d 1206, 1224 (2d Cir. 1992)). Furthermore, CIMC's opinion that Michael was not credible on specific occasions has (a) been disclosed to the defense already and (b) would be no more admissible than a law enforcement agent's testimony about the

Hon. Paul A. Crotty
February 12, 2020
Page 3

credibility of another witness, *see generally United States v. Forrester*, 60 F.3d 52, 63 (2d Cir. 1995) (agent testimony about credibility of another witness was inadmissible).

                              Respectfully submitted,

                              GEOFFREY S. BERMAN
                              United States Attorney

By: _____/s/_____
           David W. Denton Jr. / Sidhardha Kamaraju /
           Matthew Laroche
           Assistant United States Attorneys
           (212) 637-2744 / 6523 / 2420

Cc: Defense Counsel (by hand and ECF)