*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 26, 2020

**By ECF**

The Honorable Paul A. Crotty
United States District Judge
Southern District of New York
500 Pearl Street, Courtroom 14C
New York, New York 10007

    Re:    *United States v. Joshua Adam Schulte*, S2 17 Cr. 548 (PAC)

Dear Judge Crotty:

    The Government writes in response to the defendant's letter, dated February 26, 2020, seeking to introduce a Central Intelligence Agency ("CIA") memorandum requesting that the witness referred to as "Michael" be placed on administrative leave (the "CIA Memorandum"). The defendant's application continues to be premised on a mischaracterization of the CIA Memorandum as implicating Michael in the charged theft of classified CIA information and transmission of that information to WikiLeaks. As the Government noted in its opposition to the defendant's mistrial motion, the CIA Memorandum explicitly states that Michael was placed on leave because of concerns that he was not providing information about the *defendant*—not that Michael was a suspect in the theft. Moreover, and as reflected in interview notes the Government provided to the defense and the Court, the Government has confirmed with the official responsible for the CIA Memorandum's recommendation that the memorandum was not intended to suggest that it was Michael rather than the defendant who stole the Vault 7 Information. Contrary to the defendant's assertion, this is not merely the Government's "characterization" of the CIA Memorandum—it is expressly what the CIA Memorandum states. The CIA Memorandum is not admissible, and the Court should deny the defendant's application.

    **I.**    **Applicable Law**

    "A criminal defendant's right to present a full defense and to receive a fair trial does not entitle him to place before the jury evidence normally inadmissible." *United States v. Bifield*, 702 F.2d 342, 350 (2d Cir. 1983); *see also United States v. Albizu,* 107 F.3d 4 (2d Cir.1997) ("[A] defendant simply has no constitutional right to present a jury with legally insufficient evidence."); *United States v. Carr,* 543 F.2d 1042, 1051 (2d Cir. 1976) ("The accused as well as the Government must comply with the established rules of procedure and evidence in order to assure both a fair trial under the circumstances.").

The Honorable Paul A. Crotty, U.S.D.J.
February 26, 2020
Page 2

Even potentially relevant testimony or evidence should be precluded if it fails the balancing test of Rule 403 by introducing "the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403.  In particular, where the purported relevance of testimony is based on the defendant's assertions that another person could have committed the charged offenses, the Second Circuit has admonished courts to "be sensitive to the special problems presented by 'alternative perpetrator' evidence." *Wade v. Mantello,* 333 F.3d 51, 61 (2d Cir. 2003) (quoting *United States v. McVeigh,* 153 F.3d 1166, 1191 (10th Cir. 1998)).  Before permitting the defendant to introduce evidence that someone else could have committed the crimes with which the defendant is charged, the Court "must ensure that the defendant shows a 'sufficient . . . nexus between the crime charged and the asserted 'alternative perpetrator.'" *United States v. Hendricks,* 921 F.3d 320, 331 (2d Cir. 2019) (quoting *Wade,* 333 F.3d at 61-62). "It is not sufficient for a defendant merely to offer up unsupported speculation that another person may have done the crime.  Such speculative blaming intensifies the grave risk of jury confusion." *McVeigh,* 153 F.3d at 1191 (precluding testimony that "would have forced the government to attempt to disprove the nebulous allegation that [another group] was involved in the bombing.  This side trial would have led the jury astray, turning the focus away from whether McVeigh—the only person whose actions were on trial—bombed the Murrah Building."). Just last year, the Second Circuit in *United States v. Hendricks* affirmed the preclusion of evidence purportedly showing third-party culpability because the defendant's proffer was "insufficient to show the required nexus," noting that "[a]lthough the evidence [the defendant] cites might tend to show that [the third party] knew about the robbery, none of the evidence places [the third party] anywhere near the robbery scene or suggests that he was otherwise involved in the crime." 921 F.3d at 331.[1]

Enforcement of these rules in no way prejudices the defendant's right to make his case. On the contrary, in *Holmes v. South Carolina*, one of the cases on which the defendant principally relies, the Supreme Court has expressly recognized "rules regulating the admission of evidence proffered by criminal defendants to show that someone else committed the crime with which they are charged" as a paradigmatic example of the "familiar and unquestionably constitutional" limits on a defendant's right to present inadmissible evidence.  547 U.S. 319, 327 (2006).  Indeed,

---

[1] The defendant relies extensively on *Scrimo v. Lee*, 935 F.3d 103 (2d Cir. 2019), but that case is entirely inapposite.  There, the Second Circuit granted a *habeas* petition premised on the state court's refusal to allow evidence of drug dealing by a state witness, Kane, who was the only other person present with the defendant when the charged murder was committed, concluding that "[t]he probability that Kane killed Williams is at least in balance with the probability that Scrimo did it—with the telling facts that the fingerprints were Kane's, the DNA under the victim's fingernail pointed to Kane, and Kane had the far more plausible motive [that the murder resulted from a disputed drug deal] that surfaced at trial." *Id.* at 118.  Unlike in *Scrimo*, the defendant here has introduced no similar evidence showing that Michael had the ability or motive to commit the charged crime, *i.e.*, the "sufficient nexus" to show third-party culpability that the Second Circuit has uniformly required.  If anything, this case is more analogous to *Hendricks*.  Even crediting the defendant's interpretation of the CIA Memorandum, at most "the evidence [Schulte] cites might tend to show that [Michael] knew about the [reversion on DEVLAN], [but] none of the evidence places [Michael] anywhere near the [crime] scene or suggests that he was otherwise involved in the crime." 921 F.3d at 331.

The Honorable Paul A. Crotty, U.S.D.J.
February 26, 2020
Page 3

although the defendant notes the Supreme Court's citation in *Holmes* to 40A Am.Jur.2d, Homicide § 286, pp. 136–138, observing that "the accused may introduce any legal evidence tending to prove that another person may have committed the crime with which the defendant is charged," he omits the admonition that follows, that such evidence "may be excluded where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial." 547 U.S. at 327.

This is particularly true where, as here, the defendant does not seek to offer *actual evidence* of a third party's culpability, but rather merely the (misconstrued) opinions of another. Even accepting the defendant's misleading characterization of the CIA Memorandum's recommendation, it reflects merely opinion, and not evidence, of Michael's culpability. The law is clear that "a 'lay opinion' as to a person's culpable role in a charged crime . . . is not presenting the jury with the unique insights of an eyewitness's personal perceptions," and cannot be admitted into evidence. *United States v. Garcia,* 413 F.3d 201, 215 (2d Cir. 2005). "[I]n such circumstances, the investigatory results reviewed by the agent—if admissible—can only be presented to the jury for it to reach its own conclusion." *Id; see also United States v. Grinage*, 390 F.3d 746, 750 (2d Cir. 2004) (error to admit testimony that "not only [told the jury] what was in the evidence but [told] them what inferences to draw from it").

## II.   Discussion

The Court should preclude introduction of the CIA Memorandum because the defendant has failed to make the threshold showing of any "sufficient . . . nexus between the crime charged and the asserted 'alternative perpetrator.'" *Hendricks,* 921 F.3d at 331. The defendant has introduced no evidence that Michael could have accessed the March 3, 2016 backup from which the leaked information was stolen,[2] that Michael ever engaged in any improper conduct on DEVLAN, or that Michael had any motive to steal the information or send it to WikiLeaks. The only purported evidence of Michael's culpability on which the defendant relies is the CIA Memorandum itself. Yet the defendant consistently refuses to acknowledge that the CIA Memorandum's conclusions are not based on any assessment that Michael had any culpability in the theft, but rather were premised on "his relationship with Joshua Schulte, the individual charged with the theft of data." Merely repeating that the CIA Memorandum is evidence of third-party culpability does not make it so, and the defendant has introduced no other evidence to suggest Michael's responsibility—or even complicity—in the charged conduct that meets the threshold the Second Circuit has cautioned district courts to guard.

Moreover, precluding the defendant from introducing the CIA Memorandum does not preclude him from making any appropriate arguments about Michael's purported culpability based on actual admissible evidence at trial. In asserting the relevance of the CIA Memorandum, the defendant notes that it reflects "'[s]everal concerns' about Michael, the chief one being 'his proximity to the theft of the data,'" as well as both the fact that "Michael has been questioned no

---

[2] Despite his expert's purported conclusion that Michael did have such access, the defendant has declined to offer any evidence of that.

The Honorable Paul A. Crotty, U.S.D.J.
February 26, 2020
Page 4

fewer than eight times about the theft, over the span of nearly three years," and "his unexplained activities on the computer system from which the [Vault 7 Information was stolen]." (Dkt. 336 at 3). Actual evidence pertaining to each of these subjects has already been admitted, and the defendant is free to mine the record in service of his arguments.

For example, to the extent the defendant wishes to make arguments about Michael's "proximity to the theft," Michael's badge records for April 20, 2016 are already in evidence. (*See* GX 115). Similarly, the defendant has already elicited from multiple witnesses the fact that Michael had been questioned repeatedly about the theft, (*see* Tr. 1264-1300; 1309-1317 (cross-examination of Michael regarding meetings with the FBI and Department of Justice); Tr. 2334-37 (cross-examination of Special Agent Evanchec regarding meetings with Michael); including the fact that Michael was not fully forthcoming in his initial meetings and was placed on administrative leave following one of those meetings. Similarly, if the defendant wishes to make arguments about Michael's activities on DEVLAN, the screenshot Michael took of his DEVLAN workstation on April 20, 2016, is already in evidence, (*see* GX 1255), and the defendant has cross-examined witnesses about the screenshot (*see* Tr. 1298-1304; 1314-16 (cross-examination of Michael regarding the screenshot); Tr. 2336-37; 2359-61 (cross-examination of Special Agent Evanchec regarding Michael's screenshot). Not only does the defendant have this evidence at his disposal, but if he wishes to make other arguments regarding Michael's "activities on the computer system"—or even his hypothetical activities—the evidence is available for him to do so. (*See, e.g.*, Dkt. 331-1 (Affidavit of Steven Bellovin), at pp. 2-4 (citing GX 1202-5, 1207-10, and 1207-11 as supposedly supporting the conclusion that Michael had access to the Altabackups from which the information disclosed by WikiLeaks was stolen).

The defendant seeks to introduce the CIA Memorandum, rather than rely on actual evidence that has been admitted during trial, because the actual evidence contradicts his theory of Michael's culpability. As was demonstrated during the testimony of Special Agent Evanchec, the actual evidence does not support the defendant's theory about the meaning of Michael's "proximity to the theft." On the contrary, Michael's badge records—in evidence as GX 115—conclusively show that Michael was never on the floor of the CCI Office where the defendant's DEVLAN workstation was located during the time that the defendant's workstation was used to revert the Confluence system to restore the defendant's administrative access, steal the March 3, 2016 backup files, and delete log files. (*See* GX 1255 (Michael's screenshot); 1202-18 (log file from defendant's workstation sending command to revert to "bk 4-16-2016"); 107 at 3 (defendant's badge records for April 20, 2016); 115 (Michael's badge records for April 20, 2016); Tr. 2364-67 (redirect examination of Special Agent Evanchec comparing badge records of Michael and the defendant during time period of reversion)). Moreover, chat records show that it was the defendant, and not Michael, who was using his workstation during the time those activities were performed—because he was communicating *with Michael*, who was using his own workstation on a different floor. (*See* GX 719; 726 at 11).

The defendant incorrectly asserts that "[t]o exclude the Memo would deny Mr. Schulte his right to confront the witnesses against him and violate his constitutional right to present a complete defense." (Dkt. 336 at 4). The Court has already determined that the defendant may return Michael to the witness stand for continued cross-examination, and Michael can be confronted about any of

The Honorable Paul A. Crotty, U.S.D.J.
February 26, 2020
Page 5

the issues the defendant seeks to raise. Likewise, nothing has hindered the defendant's ability to confront other witnesses about Michael's activities, and he has done so throughout the trial. (*See, e.g.*, Tr. 363-64, 450-51 (cross-examination of Jeremy Weber regarding Michael); 1676-77, 1705 (cross-examination of Sean regarding Michael); Tr. 2334-37, 2359-61 (cross-examination of Special Agent Evanchec regarding Michael). Nor is the door closed to the defendant if he wishes to offer additional admissible evidence supposedly showing Michael's culpability. The defendant can call his expert to testify as to Michael's purported access on the DEVLAN system in an (unavailing) effort to show that they prove Michael's culpability. He can examine witnesses with personal knowledge about the relationship between Michael and the defendant or about Michael's activities that they may have observed.

What the defendant cannot do, however, is seek to substitute the CIA Memorandum's interpretation of the evidence—and what conclusions to draw from it—for actual presentation of evidence. The question of what inferences to draw from Michael's activity is for the jury alone, and introducing the CIA Memorandum's conclusions would usurp that inviolate role. Whether or not the CIA was concerned that "curtailing [Michael's] access to CIA spaces and data systems is necessary," or that his "lack of cooperation as a significant and untenable risk" reflects an inference to be drawn from the evidence about Michael's activities, not evidence of those activities itself.

It is equally impermissible for the defendant to introduce the CIA Memorandum for the purpose of asserting that the CIA has concluded that Michael is untrustworthy, and that the jury should therefore reject his testimony. "As a matter of law, the credibility of witnesses is exclusively for the determination by the jury, and witnesses may not opine as to the credibility of the testimony of other witnesses at the trial." *United States v. Truman*, 688 F.3d 129, 143 (2d Cir. 2012) (quoting *United States v. Forrester*, 60 F.3d 52, 63 (2d Cir. 1995)). Whether or not the CIA believes Michael is of no more relevance to the question of whether he has testified truthfully at this trial than whether the Government or the defense believes Michael's testimony.

Finally, whether or not a document such as the CIA Memorandum itself qualifies as a business record and is therefore subject to an exception to the rule against hearsay, the matters relayed therein must also be admissible. *See, e.g.*, *United States v. Cruz*, 894 F.2d 41, 44 (2d Cir. 1990) ("Regardless of the evidentiary rule invoked to assert the admissibility of the reports, the reports contain multiple hearsay and cannot be admitted under any exception to the hearsay rule. . . . Each hearsay statement within multiple hearsay statements must have a hearsay exception in order to be admissible."). Accordingly, even if the conclusions of the CIA Memorandum could be admissible, the appropriate way for the defendant to elicit those conclusions is from the witness who came to those conclusions, rather than the statements he wrote memorializing them.

To the extent the Court determines that the CIA Memorandum is admissible in the defendant's case, the Government intends to call as a rebuttal witness the official responsible for directing the preparation of the CIA Memorandum (a covert officer known by the pseudonym "Carter Hall," and previously identified to the defendant by his true name), and for recommending the endorsement of administrative leave to the Director of the Office of Security. The Government has already provided notes of its interview of Mr. Hall to the defendant and the Court, which make clear that Mr. Hall will explain that the recommendation that Michael be placed on administrative

The Honorable Paul A. Crotty, U.S.D.J.
February 26, 2020
Page 6

leave and the CIA Memorandum memorializing that recommendation were not based on, and do not support, a belief or inference that Michael was responsible for the theft of data from DEVLAN.

                              Respectfully submitted,

                              GEOFFREY S. BERMAN
                              United States Attorney

By:         /s/
                              David W. Denton, Jr.
                              Sidhardha Kamaraju
                              Matthew Laroche
                              Assistant United States Attorneys
                              Tel.: 212-637-2744 / 6523 / 2420

Cc: Defense Counsel (via ECF)