*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 28, 2020

**By ECF**

The Honorable Paul A. Crotty
United States District Judge
Southern District of New York
500 Pearl Street, Courtroom 14C
New York, New York 10007

      Re:    *United States v. Joshua Adam Schulte*, S2 17 Cr. 548 (PAC)

Dear Judge Crotty:

      The Government writes in response to two issues raised at the February 27, 2020 charge conference (the "Conference") and the defendant's February 27, 2020 letter (the "February 27 Letter") after the Conference raising additional issues with the Court's proposed jury charge.

      *First*, with respect to the defendant's requested "Adverse Inference Regarding Michael" instruction, there is no case law support (and the defendant cites none)[1] for the proposition that the jury should be instructed about untimely discovery productions. In any event, the defendant's proposed instruction is inappropriate because it misstates the law and the record. *See United States v. Bok*, 156 F.3d 157, 160 (2d Cir. 1998) ("A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law."); *United States v. Doyle*, 130 F.3d 523, 540 (2d Cir. 1997) ("A conviction will not be overturned for refusal to give a requested charge, however, unless that instruction is legally correct, represents a theory of defense with basis in the record that would lead to acquittal, and the theory is not effectively presented elsewhere in the charge."). Specifically, the defendant's proposed instruction attempts to cast the Government's disclosure regarding Michael's administrative leave status and the CIA Memorandum, which was admittedly and regrettably untimely but provided with sufficient time for the defense to make use of it effectively at trial, as a constitutional violation. Untimely discovery productions, however, only acquire a constitutional dimension when they result in prejudice to the defendant. *See United States v. Alston*, 899 F.3d 135, 147-48 (2d Cir. 2018), *cert.*

---

[1] Aside from law review articles, the only case to which the defendant cites is a decision rejecting a habeas challenge to a state conviction because the defendant had failed to establish that any favorable evidence had been suppressed, merely noting the fact that the New York state court had given an adverse inference instruction. *Rosario v. Smith*, 2009 WL 1787715, at *1 (S.D.N.Y. June 23, 2009). No instruction like that proposed by the defendant appears in *Modern Federal Jury Instructions* or in any pattern federal jury instructions, and the Government is aware of no federal criminal case approving such an instruction.

The Honorable Paul A. Crotty, U.S.D.J.
February 28, 2020
Page 2

*denied*, 139 S. Ct. 1282 (2019) ("The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."). Even to the extent the defendant could argue that any evidence had been "suppressed" (which he cannot, since he received all of it), the record is clear that the defendant has not been prejudiced and the Court has already taken steps to ensure that any delay did not result in a constitutional violation.

As the Government explained in its opposition to the defendant's mistrial motion, to the extent the defendant wants, or wanted, to pursue an "alternative perpetrator" theory with respect to Michael, he had all of the substantive evidence necessary to pursue that theory for months, if not more than a year before trial, including: (i) the screenshot (the "Screenshot") that Michael took of his computer screen during the reversion of the Confluence virtual machine on April 20, 2016, which showed that Michael was logged into VSphere; (ii) the fact that Michael had administrator access to the ESXi Server; (iii) the fact that Michael was in contact with the defendant during the time period of the defendant's reversion; (iv) the fact that Michael left the office with the defendant that night; (v) the fact that Michael and the defendant had had a physical altercation in which Michael struck the defendant; (vi) the fact that Michael did not tell the Federal Bureau of Investigation (the "FBI") about the Screenshot until he was confronted with the image; (vii) the fact that Michael declined to take a polygraph examination at the FBI's request and had trouble with Central Intelligence Agency ("CIA") polygraph examinations in the past; and (viii) the fact that in August 2019, the Government advised Michael to seek legal counsel. *See* Dkt. # 329 at 15-16. Accordingly, the information supporting a purported (and meritless) "alternative perpetrator" argument with respect to Michael was never "suppressed" and cannot form the basis of a constitutional violation. *See Alston*, 899 F.3d 135, 147–48 (first element of *Brady* violation is suppression of evidence).

Moreover, while the Government acknowledges that it should have notified the defense about Michael's administrative leave status and the memorandum seeking to place him on leave (the "CIA Memorandum") sooner, the Court has eliminated any prejudice that the defendant might have suffered from the timing of the Government's disclosure. On February 11, 2020 (the day before Michael took the stand), the Government notified the defense that the CIA placed Michael on administrative leave "on or about August 19, 2019 as a result of security concerns based on the CIA's assessment that he did not fully cooperate with the investigation into the leaks." The following day, in response to the Court's directive, the Government obtained the CIA Memorandum for the first time and provided it to the Court. On February 13, 2020, the Court directed the Government to produce the CIA Memorandum to the defense and suspended Michael's cross-examination. On February 18, 2020, the Court directed the Government to produce Michael's investigative file to the defense. Over the two weeks since the Government produced the CIA Memorandum, the defense has had numerous opportunities to present to the jury whatever helpful information they believe the CIA Memorandum contained, including by:

- Re-calling Michael to complete his cross-examination, which the defense chose not to do.

The Honorable Paul A. Crotty, U.S.D.J.
February 28, 2020
Page 3

- Introducing the CIA Memorandum into evidence as part of the defense case, which they did yesterday.

- Cross-examining Carter Hall, the CIA officer responsible for approving the CIA Memorandum, which they also did yesterday.[2]

Therefore, the defendant was not prejudiced for purposes of *Brady* or *Giglio* by the timing of the Government's production of the CIA Memorandum and the fact of Michael's administrative leave. He had the underlying information about Michael's activities on April 20, 2016 and his conduct during investigative interviews months before trial. He had access to the CIA Memorandum for weeks in order to prepare to cross- and/or re-cross-examine Michael and Mr. Hall. And he strategically availed himself of some of Court-ordered relief by offering the CIA Memorandum, cross-examining Mr. Hall, and declining to continue cross-examining Michael. *See United States v. Coppa*, 267 F.3d 132, 142 (2d Cir. 2001) ("Thus, we have never interpreted due process of law as requiring more than that *Brady* material must be disclosed in time for its effective use at trial."). Accordingly, because the defendant cannot establish a constitutional violation with respect to the Government's disclosures of the CIA Memorandum and the fact of Michael's administrative leave status, his "Adverse Inference" instruction is unsupported by the law and the facts, and thus, inappropriate. *See Bok*, 156 F.3d at 160; *Doyle*, 130 F.3d at 540.

Finally, the defendant's proposed instruction seeking to describe the weight that the jury should ascribe to Michael's administrative leave status is unnecessary. The Court already intends to instruct the jury as to how to assess witness credibility (including any biases the witness may have) and the testimony of CIA officers. (*See* Instr. II(C) & (E)). Thus, the defendant is well-equipped to argue that Michael's testimony should be scrutinized in light of his administrative leave status. *United States v. Jacobs*, 735 F. App'x 739, 741 (2d Cir. 2018) (affirming "district court's refusal to highlight [in jury instructions] the taxpayer witnesses' purported incentive to cooperate with the government" because "district court's charge combined with defense counsel's summation . . . fairly put the issue of the taxpayer witnesses' possible motivations to the jury for its consideration" (internal quotation marks omitted)). *Cf. United States v. Mundy*, 539 F.3d 154, 157 (2d Cir. 2008) ("In contemporary administration of justice, what conclusions should, or should not, be drawn from the evidence are generally left to counsel to argue."). "In the context of special credibility instructions," the Second Circuit has "held that '[d]istrict courts are under no obligation to give requested charges word for word and there is no talismanic formula for an instruction on [interested witness] testimony.'" *Jacobs*, 735 F. App'x at 741 (quoting *United States v. Prawl*, 168 F.3d 622, 626 (2d Cir. 1999)). Here, no special instruction regarding Michael is warranted in light of the relief already granted by the Court and because such an instruction would call undue attention to Michael's testimony, which the defense elected not to continue, relative to other witnesses.

---

[2] As the Court is aware, Hall confirmed unequivocally that the CIA did not and does not view Michael as an "alternative perpetrator" to the defendant, that the unexplained network activity described in the CIA Memorandum referred only to the Screenshot, and that it was the defendant who "reverted" the Confluence virtual machine on April 20, 2016. (*See* Tr. 2685, 2691, 2737).

The Honorable Paul A. Crotty, U.S.D.J.
February 28, 2020
Page 4

*Second*, the defense argues that the Court should not give a false exculpatory statements charge. While false exculpatory statements alone are not sufficient to convict a defendant, "it is axiomatic that exculpatory statements, when shown to be false, are circumstantial evidence of guilty consciousness and have independent probative force." *United States v. Parness*, 503 F.2d 430, 438 (2d Cir. 1974); *see also United States v. Gaskin*, 364 F.3d 438, 462 (2d Cir. 2004) (inference of criminal intent "was strengthened by [defendant's] post-arrest false exculpatory statement denying ownership or knowledge of the [cash]"); *United States v. Glenn*, 312 F.3d 58, 69 (2d Cir. 2002) (false exculpatory statements may amount to "circumstantial evidence of consciousness of guilt and may strengthen inferences supplied by other pieces of evidence"). Instructing the jury as to the "independent probative value" of false exculpatory statements is therefore appropriate under the law. *United States v. Strother*, 49 F.3d 869, 873-74 (2d Cir. 1995). There is an ample basis for such an instruction here—Special Agent Evanchec testified at length about the defendant's misrepresentations (such as, for example, his false denial that he retained the classified Office of Inspector General email that the FBI seized from his apartment (*see* Tr. 2179)), and independent evidence in the record establishes that those assertions were false. The defendant argues that the Court should use its discretion to decline to instruct the jury about false exculpatory statements, but fails to explain why the Court should not give the jury an instruction that is legally sound and entirely supported by the record. Moreover, failing to provide such an instruction would create a risk that some or all of the jurors use the already admitted evidence of the false exculpatory statements for an impermissible purpose rather than "circumstantial evidence of consciousness of guilt" under *Glenn*. Therefore, the Court should instruction the jury about the appropriate use of this evidence.

*Third*, with respect to the conscious avoidance portion of the instruction for Count Five, the Government submits that there is a sufficient factual basis for the charge because (i) the defendant has suggested to the jury that he was unaware in April 2016 that the CIA had revoked his access privileges relating to OSB Libraries, (ii) the defendant "was aware of a high probability of the disputed fact" (*i.e.*, the revocation of his privileges), and (iii) the defendant "deliberately avoided confirming that fact" in a meeting with Sean F. *United States v. Flores*, 945 F.3d 687, 715 (2d Cir. 2019) (internal quotation marks omitted); *see also United States v. Lange*, 834 F.3d 58, 78 (2d Cir. 2016) ("A factual predicate may be established where a defendant's involvement in the criminal offense may have been so overwhelmingly suspicious that the defendant's failure to question the suspicious circumstances establishes the defendant's purposeful contrivance to avoid guilty knowledge." (internal quotation marks and alteration omitted)). Specifically, in April 2016, in the wake of the defendant losing his privileges to the OSB Libraries and after failing to convince Jeremy Weber to restore those privileges, the defendant went to speak with Sean F., purportedly about the privileges issue. (*See generally* GX 1062). Sean F. testified, however, that the defendant did not raise the issue of his OSB Libraries privileges during that conversation. (*See* Tr. 1651-52). In other words, the jury could infer that the defendant was aware of a high probability that his privileges had been revoked, and that he deliberately avoided confirming the fact of the revocation during a conversation with Sean F.[3] That is precisely the situation in which a conscious avoidance jury charge is appropriate. *See United States v. Aina-Marshall*, 336 F.3d

---

[3] Of course, "the government need not choose between an 'actual knowledge' and a 'conscious avoidance' theory." *United States v. Ferguson*, 676 F.3d 260, 278 (2d Cir. 2011).

The Honorable Paul A. Crotty, U.S.D.J.
February 28, 2020
Page 5

167, 171 (2d Cir. 2003). Therefore, the Court should instruct the jury on conscious avoidance on Count Five with respect to the issue of the defendant's knowledge that the CIA had revoked his access privileges to OSB Libraries.

*Fourth*, with respect to what Count Nine, charging the defendant with making false statements to the FBI, as discussed at the Conference, the Government would propose adding to the Court's proposed Instruction III(PP) the following language derived from the bill of particulars provided to the defendant on or about April 29, 2019.

> The specific statements that the defendant is charged with making are:
>
> (1) On or about March 15, 2017, the defendant (i) denied having any involvement in leaking the classified information stolen from the Engineering Development Group; (ii) stated that he had not kept a copy of an email he sent to the Office of Inspector General that discussed purported security issues at the CIA; and (iii) denied having any classified materials in his apartment.
>
> (2) On or about March 20 and 21, 2017, the defendant (i) denied having any involvement in leaking the classified information stolen from the Engineering Development Group; (ii) denied ever taking information from the CIA and transferring it to an unclassified network; (iii) denied ever making CIA systems vulnerable to the theft of data; and (iv) denied housing information from the CIA on his home computer.
>
> (3) On or about June 29, 2017, the defendant (i) stated that he had never worked on Brutal Kangaroo outside of the CIA; and (ii) stated that he had never removed any classified information from the CIA and took it home.

*Fifth*, with respect to Counts Two and Three of the Indictment, the Government has decided that—while the Government continues to believe that both charges are legally applicable and supported by the evidence—the Government will forgo Count Two in order to avoid the risk of juror confusion raised by the Court at yesterday's conference. Attached is a revised Indictment reflecting those changes. Pursuant to the Court's instructions at the Conference, the remaining counts have also been renumbered so that the WikiLeaks-related counts as to which the defendant has waived venue are grouped together, followed by the remaining counts pertaining to the defendant's post-leak conduct.

The Honorable Paul A. Crotty, U.S.D.J.
February 28, 2020
Page 6

  Finally, the Government has also attached a proposed verdict form.

              Respectfully submitted,

              GEOFFREY S. BERMAN
              United States Attorney

          by: _____
              Matthew Laroche / Sidhardha Kamaraju / David W. Denton, Jr.
              Assistant United States Attorneys
              (212) 637-2420 / 6523 / 2744

Enclosures

cc: Defense Counsel (by ECF)

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - X
                                 :
 UNITED STATES OF AMERICA        :   SUPERSEDING INDICTMENT
                                 :
            - v. -               :   S2 17 Cr. 548 (PAC)
                                 :
 JOSHUA ADAM SCHULTE,            :
                                 :
            Defendant.           :
                                 :
- - - - - - - - - - - - - - - - X
```

## COUNT ONE
### (Illegal Gathering of National Defense Information)

The Grand Jury charges:

1. In or about 2016, in the Eastern District of Virginia and elsewhere, JOSHUA ADAM SCHULTE, the defendant, for the purpose of obtaining information respecting the national defense with intent or reason to believe that the information is to be used to the injury of the United States, or to the advantage of any foreign nation, copied, took, made, and obtained, a sketch, photograph, photographic negative, blueprint, plan, map, model, instrument, appliance, document, writing, or note connected with the national defense, to wit, SCHULTE took information (the "Classified Information") maintained by an intelligence agency of the United States (the "U.S. Intelligence Agency"), which concerned, among other things, the intelligence gathering capabilities of the U.S. Intelligence Agency and which had been determined by the United States Government pursuant to an

Executive Order or statute to require protection against unauthorized disclosure for reasons of national defense or foreign relations, for the purpose of providing it to, and causing it to be provided to, an organization that purports to publicly disseminate classified, sensitive, and confidential information ("Organization-1"), which posted the Classified Information on the Internet.

(Title 18, United States Code, Sections 793(b) and 2.)

## COUNT TWO
**(Illegal Transmission of Unlawfully Possessed National Defense Information)**

The Grand Jury further charges:

2. In or about 2016, in the Eastern District of Virginia and elsewhere, JOSHUA ADAM SCHULTE, the defendant, having unauthorized possession of, access to, and control over records containing information related to the national defense, which information the defendant had reason to believe could be used to the injury of the United States and to the advantage of a foreign nation, willfully retained the records and failed to deliver it to the officer or employee of the United States entitled to receive it, and willfully transmitted the same to a person not entitled to receive it, to wit, SCHULTE retained a portion of the Classified Information to which he did not have lawful access and caused it to be transmitted to Organization-1.

(Title 18, United States Code, Sections 793(e) and 2.)

## COUNT THREE
### (Unauthorized Access to a Computer To Obtain Classified Information)

The Grand Jury further charges:

3.   In or about 2016, JOSHUA ADAM SCHULTE, the defendant, in the Eastern District of Virginia and elsewhere, knowingly accessed a computer without authorization and exceeded authorized access and thereby obtained information that has been determined by the United States Government pursuant to an Executive order or statute to require protection against unauthorized disclosure for reasons of national defense or foreign relations, or any restricted data, as defined in paragraph y of section 11 of the Atomic Energy Act of 1954, with reason to believe that such information so obtained could be used to the injury of the United States or to the advantage of any foreign nation, willfully communicated, delivered, transmitted, and caused to be communicated, delivered, or transmitted, and attempted to communicate, deliver, transmit and caused to be communicated, delivered, or transmitted the same to any person not entitled to receive it, and willfully retained the same and failed to deliver it to the officer or employee of the United States entitled to receive it, to wit, SCHULTE exceeded his authorized access on a computer to obtain the Classified Information and caused the Classified Information to be transmitted to Organization-1, which posted the Classified

3

Information online.

(Title 18, United States Code, Sections 1030(a)(1) and 2.)

## COUNT FOUR
### (Theft of Government Property)

The Grand Jury further charges:

4.  In or about 2016, in the Eastern District of Virginia and elsewhere, JOSHUA ADAM SCHULTE, the defendant, did embezzle, steal, purloin, and knowingly convert to his use, vouchers, money and things of value of the United States, which exceeded the sum of $1,000, and did receive, conceal, and retain the same with intent to convert it to his own use and gain, knowing it to have been embezzled, stolen, purloined and converted, to wit, SCHULTE unlawfully obtained the Classified Information.

(Title 18, United States Code, Sections 641 and 2.)

## COUNT FIVE
### (Unauthorized Access of a Computer to Obtain Information from a Department or Agency of the United States)

The Grand Jury further charges:

5.  In or about 2016, in the Eastern District of Virginia and elsewhere, JOSHUA ADAM SCHULTE, the defendant, intentionally accessed a computer without authorization and exceeded authorized access and thereby obtained information from a department or agency of the United States, to wit, SCHULTE accessed a computer without authorization and in excess of his authorization obtained the Classified Information belonging to

the U.S. Intelligence Agency.

(Title 18, United States Code, Sections 1030(a)(2)(B) and 2.)

## COUNT SIX
### (Causing Transmission of a Harmful Computer Program, Information, Code, or Command)

The Grand Jury further charges:

6.  From at least in or about March 2016, up to and including at least in or about June 2016, in the Eastern District of Virginia and elsewhere, JOSHUA ADAM SCHULTE, the defendant, knowingly caused the transmission of a program, information, code, or command, and as a result of such conduct, intentionally caused damage without authorization, to a protected computer, to wit, SCHULTE altered a computer system operated by the U.S. Intelligence Agency for the purpose of granting himself access to the system, deleting records of his activities, and denying others access to the system.

(Title 18, United States Code, Sections 1030(a)(5)(A) and 2.)

## COUNT SEVEN
### (Illegal Transmission and Attempted Transmission of Unlawfully Possessed National Defense Information)

The Grand Jury further charges:

7.  From at least in or about December 2017, up to and including at least in or about October 2018, in the Southern District of New York and elsewhere, JOSHUA ADAM SCHULTE, the defendant, having unauthorized possession of, access to, and control over records containing information related to the

national defense, which information the defendant had reason to believe could be used to the injury of the United States and to the advantage of a foreign nation, willfully retained the records and failed to deliver it to the officer or employee of the United States entitled to receive it, and willfully communicated, delivered, and transmitted, and attempted to communicate, deliver, transmit and caused to be communicated, delivered, and transmitted the same to a person not entitled to receive it, to wit, SCHULTE retained portions of the Classified Information and other national defense information maintained by the U.S. Intelligence Agency to which he did not have lawful access and caused to be transmitted, transmitted, and attempted to transmit this information to third parties not entitled to receive it.

(Title 18, United States Code, Sections 793(e) and 2.)

## COUNT EIGHT
### (Making False Statements)

The Grand jury further charges:

8.   From at least in or about March 2017, up to and including at least in or about November 2017, in the Southern District of New York and elsewhere, JOSHUA ADAM SCHULTE, the defendant, in a matter within the jurisdiction of the executive branch of the government of the United States, knowingly and willfully falsified, concealed, and covered up by any trick,

scheme, and device a material fact and made materially false, fictitious, and fraudulent statements and representations, to wit, during an interview with, among others, representatives of the Federal Bureau of Investigation, SCHULTE made misrepresentations in connection with the criminal conduct charged in Counts One through Three and Counts Five through Eight of this Indictment.

(Title 18, United States Code, Section 1001.)

## COUNT NINE
### (Obstruction of Justice)

The Grand Jury further charges:

9.   From at least in or about March 2017, up to and including at least in or about November 2017, in the Southern District of New York and elsewhere, JOSHUA ADAM SCHULTE, the defendant, did corruptly obstruct, influence, and impede, and endeavored to obstruct, influence, and impede the due administration of justice in a federal grand jury in the Southern District of New York by making the material false statements charged in Count Nine of this Indictment.

(Title 18, United States Code, Section 1503.)

## COUNT TEN
### (Contempt of Court)

The Grand Jury further charges:

10.   From at least in or about April 2018, up to and including at least in or about October 2018, in the Southern

District of New York and elsewhere, JOSHUA ADAM SCHULTE, the defendant, did willfully and knowingly disobey and resist a lawful order of a Court of the United States, to wit, an order issued by the Honorable Paul A. Crotty, United States District Judge, on or about September 18, 2017, in the Southern District of New York in the case of *United States v. Joshua Adam Schulte*, 17 Cr. 548 (PAC), by communicating documents and information to others in violation of the aforementioned order.

(Title 18, United States Code, Sections 401(3) and 2.)

Form No. USA-33s-274 (Ed. 9-25-58)

---

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

JOSHUA ADAM SCHULTE,

                        Defendant.

---

SUPERSEDING INDICTMENT

S2 17 Cr. 548 (PAC)

GEOFFREY S. BERMAN
United States Attorney

*[signature]*
Foreperson

---

*10/31/2018.*
*Filed Superseding Indictment.*

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X
                                         :
 UNITED STATES OF AMERICA                :
                                         :
      - v. -                             :
                                         :  S2 17 Cr. 548 (PAC)
 JOSHUA ADAM SCHULTE,                    :
                                         :
                  Defendant.             :
                                         :
                                         :
- - - - - - - - - - - - - - - - - - - - X
```

**VERDICT FORM**

[Proceed to next page]

**COUNT ONE**:      **Illegal Gathering of National Defense Information**

1.   As to Count One, how do you find the defendant, JOSHUA ADAM SCHULTE, guilty or not guilty?

    GUILTY  _____                    NOT GUILTY  _____

**COUNT TWO**:      **Illegal Transmission of Unlawfully Possessed National Defense Information (WikiLeaks)**

2.   As to Count Two, how do you find the defendant, JOSHUA ADAM SCHULTE, guilty or not guilty?

    GUILTY  _____                    NOT GUILTY  _____

**COUNT THREE**:    **Unauthorized Access to a Computer to Obtain Classified Information**

3.   As to Count Three, how do you find the defendant, JOSHUA ADAM SCHULTE, guilty or not guilty?

    GUILTY  _____                    NOT GUILTY  _____

**COUNT FOUR**:     **Theft of Government Property**

4.   As to Count Four, how do you find the defendant, JOSHUA ADAM SCHULTE, guilty or not guilty?

    GUILTY  _____                    NOT GUILTY  _____

**COUNT FIVE**:     **Unauthorized Access to a Computer to Obtain Information from a Department or Agency of the United States**

5.   As to Count Five, how do you find the defendant, JOSHUA ADAM SCHULTE, guilty or not guilty?

    GUILTY  _____                    NOT GUILTY  _____

**COUNT SIX**:      **Causing Transmission of a Harmful Computer Program, Information, Code, or Command**

6.   As to Count Six, how do you find the defendant, JOSHUA ADAM SCHULTE, guilty or not guilty?

    GUILTY  _____                    NOT GUILTY  _____

**COUNT SEVEN**:   Illegal Transmission and Attempted Transmission of Unlawfully Possessed National Defense Information (MCC)

7. As to Count Seven, how do you find the defendant, JOSHUA ADAM SCHULTE, guilty or not guilty?

    GUILTY _____          NOT GUILTY _____

**COUNT EIGHT**:   Making False Statements

8. As to Count Eight, how do you find the defendant, JOSHUA ADAM SCHULTE, guilty or not guilty?

    GUILTY _____          NOT GUILTY _____

**COUNT NINE**:   Obstruction of Justice

9. As to Count Nine, how do you find the defendant, JOSHUA ADAM SCHULTE, guilty or not guilty?

    GUILTY _____          NOT GUILTY _____

**COUNT TEN**:   Contempt of Court

10. As to Count Ten, how do you find the defendant, JOSHUA ADAM SCHULTE, guilty or not guilty?

    GUILTY _____          NOT GUILTY _____

    **[Proceed to sign the verdict sheet.]**

Dated:    New York, New York
          March ___, 2020

                                        _____
                                        Signature of Foreperson


                                        _____
                                        Print name