K333SCHF – REDACTED

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                              S2 17 Cr. 548 (PAC)

5    JOSHUA ADAM SCHULTE,

6                   Defendant.                 Trial

7    ------------------------------x
                                               New York, N.Y.
8                                              March 3, 2020
                                               10:00 a.m.
9    Before:

10                       HON. PAUL A. CROTTY,
                                             District Judge
11                                          –and a jury–
                              APPEARANCES
12
     GEOFFREY S. BERMAN
13        United States Attorney for the
          Southern District of New York
14   BY:  MATTHEW J. LAROCHE
          SIDHARDHA KAMARAJU
15        DAVID W. DENTON JR.
          Assistant United States Attorneys
16
     SABRINA P. SHROFF
17        Attorney for Defendant
          –and–
18   DAVID E. PATTON
          Federal Defenders of New York, Inc.
19   BY:  EDWARD S. ZAS
          Assistant Federal Defender
20

21   Also Present:  Colleen Geier
                     Morgan Hurst, Paralegal Specialists
22                   Achal Fernando-Peiris, Paralegal
                     John Lee, Litigation Support
23                   Daniel Hartenstine CISO, Department of Justice

24

25

1           (Trial resumed; a note was received from the jury)

2           THE COURT:  We have a note from the jury, and we have

3    copies for you, and we'll show you the note in just a moment.

4    The note reads:  "Can we please have a summary list of the

5    exhibits?  Especially the ones used during the arguments/trial.

6    Thank you."

7           I'm giving the original to Mr. Gonzalez.  Please show

8    both parties the original.

9           (Pause)

10          (At 10:15 a.m. a note was received from the jury)

11          MS. SHROFF:  Good morning.

12          THE COURT:  Good morning.  We have a note from the

13   jury.

14          MS. SHROFF:  Okay.  Sorry, I was late.

15          THE COURT:  That's all right.  I think the note's on

16   your desk there.

17          MS. SHROFF:  Sorry?

18          THE COURT:  The note's there.

19          MS. SHROFF:  Okay.

20          (Defendant present)

21          THE COURT:  We have a second note from the jury,

22   received just minutes ago.  The message is:  "Can we please

23   have the transcript from David's testimony, particularly around

24   Exhibit 1209-8."

25          I've given copies of the note to both parties and show

K333SCHF                        Deliberations

```
 1   them the original as well.

 2               Any comments or suggestions on the second note?  "Can

 3   we please have the transcript of David's testimony, especially

 4   around Exhibit 1209-8."

 5               MR. LAROCHE:  We're going over it now, your Honor.

 6               THE COURT:  And the first request?

 7               MR. LAROCHE:  Your Honor, on the first request we

 8   propose giving them an exhibit list, and noting on that list

 9   what exhibits were published during trial.

10               THE COURT:  All right.

11               MS. SHROFF:  I'm sorry.  I missed that.  What was the

12   proposal?

13               MR. LAROCHE:  We propose giving them an exhibit list,

14   and noting on the exhibit list what was published during trial.

15               MS. SHROFF:  How are you going to note that?

16               MR. LAROCHE:  We've kept track, your Honor.

17               MS. SHROFF:  No, no, I mean, I know.  We all kept

18   track of them.  My question is how you're going to note that

19   for the jury?

20               MR. LAROCHE:  We'll simply create a column on the

21   exhibit list for "published."

22               THE COURT:  Does "published" mean received in

23   evidence?

24               MR. LAROCHE:  It means actually put on the screen,

25   your Honor.
```

K333SCHF                        Deliberations

1            THE COURT:  That means received in evidence, doesn't

2      it?

3            MS. SHROFF:  We would object to that.

4            MR. LAROCHE:  We would propose giving them a list of

5      all exhibits entered into evidence, and then having a column so

6      they know what was actually put on a screen so they can see.

7      It seems to be responsive for what they are asking for, which

8      is things that were discussed during argument or trial.

9            MS. SHROFF:  That's not what they are asking for.

10           THE COURT:  What are they asking for, Ms. Shroff?

11           MS. SHROFF:  They're asked for using during

12     argument/trial.  Not published, not shown.  Just used.

13           What the government is trying to do is trying to

14     highlight its slide show.  It's trying to highlight the Leedom

15     deck of the slide show.

16           THE COURT:  How does a list of exhibits --

17           MS. SHROFF:  The list of exhibits I don't mind.  What

18     was entered into evidence is fine, and they have a very

19     detailed list so if they have a further followup question.

20           THE COURT:  Is it in numerical order?

21           MR. LAROCHE:  Yes, your Honor.

22           THE COURT:  What's the problem with that?

23           MS. SHROFF:  That's fine.  I just don't want in any

24     way indicate which slides were actually shown on the TV screen,

25     because I think what the government is trying to do is

K333SCHF                    Deliberations

1   highlight the Leedom deck.

2               THE COURT:  I don't think the government is trying to

3   do anything.  I think the government is trying to respond to

4   the question from the jury.  The question, if the jury can be

5   satisfied by a list of exhibits in numerical order with an

6   indication of what was used in court.

7               MS. SHROFF:  We have no objection to that.

8               THE COURT:  All right.  Then that's what we'll do.

9               With regard to David's testimony, particularly Exhibit

10  1209-8, you're digging that out?

11              MS. SHROFF:  Can I just have one second?

12              THE COURT:  Yes.

13              MS. SHROFF:  Your Honor, I just want to make sure that

14  the jury is getting on the exhibit list all the exhibits that

15  were introduced at trial.  That's the proposal.  Not the

16  proposal the government is making, which is to just give them

17  the exhibits or highlight for the jury the exhibits that they

18  actually published on the screen.  The defense reads the note

19  as saying all of the exhibits used during trial, which is what

20  the note says.

21              THE COURT:  I view "used during trial" as received in

22  evidence.

23              MS. SHROFF:  That's what we are saying, yes.

24              THE COURT:  Mr. Laroche?

25              MR. LAROCHE:  That's fine, your Honor.

K333SCHF                    Deliberations

1          THE COURT:  Okay.  Do you have an example of the

2    exhibit list?

3          MR. KAMARAJU:  We're printing one up right now, your

4    Honor.

5          THE COURT:  Okay.

6          (Pause)

7          MR. LAROCHE:  Your Honor?

8          THE COURT:  Yes, Mr. Laroche.

9          MR. LAROCHE:  I believe the parties agree that there

10   was no 1209-8 that was discussed.  There was, however, a 1202-8

11   that was discussed during his testimony.

12         THE COURT:  Okay.  Is that right, Ms. Shroff?

13         MS. SHROFF:  I don't see any discussion in the trial

14   transcript of what, as I mentioned to the government, of

15   1209-8.

16         THE COURT:  We can ask them.

17         MS. SHROFF:  I think we should just reply -- actually,

18   may I just point out, your Honor, that on the note itself,

19   there is a spill.

20         THE COURT:  There's what?

21         MS. SHROFF:  A spill.

22         THE COURT:  A spill?

23         MS. SHROFF:  Yes.  The person's full name is written.

24   I don't know how they have it.

25         THE COURT:  As I recall it, when he was sworn in, he

K333SCHF                     Deliberations

1    was asked what his name was and he said his name.

2              MS. SHROFF:  That witness did not testify about

3    1209-8.  That's the response to the note.

4              THE COURT:  Okay.  Should we say there is a 1202 --

5              MS. SHROFF:  No.  We're not in the business of

6    guessing what a jury wants.

7              MR. LAROCHE:  I mean, they are asking for a transcript

8    of his testimony.  It's clear that they are talking about

9    1202-8.  That's what they want.

10             MS. SHROFF:  They'll send a note back.

11             MR. LAROCHE:  But to tell them he just simply didn't

12   testify about that might give them the misimpression that

13   they're just wrong about him testifying about an exhibit that

14   they clearly are interested in.

15             THE COURT:  They want the transcript from David's

16   testimony.  That's what they want.

17             MR. LAROCHE:  We have no objection of giving it to

18   them.

19             MS. SHROFF:  We have no objection to giving them the

20   entire testimony.  Right?

21             MR. ZAS:  I would propose just saying we couldn't find

22   a reference in his testimony to 1209-8, and let them either

23   come back and say we misspoke, we wanted this, or they can ask

24   for the whole testimony.

25             THE COURT:  It's not a guessing game.  We want to be

K333SCHF                      Deliberations

1    helpful to the jury.  They asked a question.  Part of the

2    question can be answered by giving them a copy of the

3    transcript, which --

4              MS. SHROFF:  Well --

5              THE COURT:  -- will contain the correct exhibit

6    number.  Then they can ask for that.  They have the exhibit in

7    the jury room anyway, don't they?

8              MR. KAMARAJU:  Yes, your Honor.

9              THE COURT:  So why don't we just give them the

10   transcript.

11             MR. ZAS:  That would be both direct and cross and

12   redirect?

13             THE COURT:  Yes.

14             MR. ZAS:  No objection.

15             THE COURT:  All right.  Mr. Laroche?

16             MR. LAROCHE:  Yes, your Honor.

17             THE COURT:  Okay.  With regard to the first note, the

18   summary list of the exhibits.

19             MR. LAROCHE:  Yes, your Honor.  We are preparing that

20   now.  We'll prepare the transcript as well.

21             THE COURT:  All right.  Should we call the jury in and

22   tell them that?

23             MR. LAROCHE:  Your Honor, just so the record is clear,

24   we plan to take out the objections on the transcript.

25             THE COURT:  Yes.

1            MS. SHROFF:  Only ones that were sustained, right?

2            THE COURT:  Only the ones that were sustained.

3            (Jury present.  Time noted 10:28 a.m.)

4            THE COURT:  We have your notes, the note that came in

5    at 9:50, "Can we please have a summary list of the exhibits."

6    We're preparing that list of the exhibits now and we'll give

7    that to you.  It make take -- how long do you think it will

8    take?

9            MR. LAROCHE:  10 minutes, 15 minutes, your Honor.

10            THE COURT:  Okay.  Ms. Shroff, do you want to say

11    something?

12            MS. SHROFF:  No, it's okay.

13            THE COURT:  So we'll have that list for you shortly.

14    And the second note, which came in at 10:10, "Can we please

15    have the transcript from David's testimony."  We're preparing

16    the transcript as well.  We'll send that in as soon as it's

17    available.

18            You can resume your deliberations now.  Thank you.

19            (Jury resumes deliberations.  Time noted 10:30 a.m.)

20            THE COURT:  The other alternative is every day there

21    is a daily summary in the transcript of the exhibits discussed

22    during the trial.  So, but a numerical listing is satisfactory

23    as well.  I'd like to see that before it's submitted to the

24    jury.

25            MR. LAROCHE:  Yes, your Honor.

K333SCH1                    Deliberations

1             THE COURT:  The transcript is direct, cross, redirect?

2             MR. LAROCHE:  Yes, your Honor.

3             THE COURT:  As Ms. Shroff points out, there is no

4    recross.

5             MS. SHROFF:  You wouldn't let me, your Honor.

6             THE COURT:  I know.  I'm old fashioned I guess.  Okay.

7    Thank you.

8             MR. LAROCHE:  Thank you, your Honor.

9             (Recess pending verdict)

10            (At 1 p.m., a note was received from the jury)

11            THE COURT:  We have notes from the jury which we've

12   given to the parties.  It comes on two sheets of paper.  I

13   think it is one note, because it asks questions 1 through 5 on

14   the first sheet, and 6 and 7 on the second sheet.

15            "Message:  What is included in Count Three?  We aren't

16   sure what the purview is -- articles, search warrants, tweets?

17   (2) In 2015, when DevLAN went down, was Schulte called to fix

18   the problem?  How did he fix it?  (3) Can you please reread

19   what was found on Schulte's home computer?  (4) Did GX 809

20   reference Schulte's taking a drug ("took my last piece")?  If

21   so, what was it?  Was it regular use?  (5) Is it confirmed that

22   Schulte's been diagnosed with Aspergers Syndrome?  (6) For

23   Count One, is Altabackups inclusive of Brutal Kangaroo?  Is it

24   inclusive of OSB libraries?  (7) Where were OSB libraries

25   housed/where did they live?"

K333SCH1                    Deliberations

1          We got these notes, the first one at 1 p.m. and the

2   second one at 1:04 p.m.

3          I'll call on the government first.  Mr. Laroche?

4          MR. LAROCHE:  Your Honor, I think just starting with

5   number three, "Can you please reread what was found on

6   Schulte's home computers."  There is a stipulation to this

7   effect that talks about the exhibits that came from his home

8   computers.  I think we could read that to them or refer them to

9   that exhibit.  There was also testimony about what was found on

10  his home computer from two people, Mr. Berger and Mr. Evanchec.

11         I think several of these, your Honor, I think there is

12  nothing to give them.  I think it asks their reliance on the

13  evidence.  For example, number two, "When DevLAN went down, was

14  Schulte called to fix the problem."  I don't believe there was

15  anything in the record related to that, other than an e-mail.

16  But I don't think that addresses that specific question.

17         THE COURT:  Ms. Shroff, do you want to speak?

18         MS. SHROFF:  I think there is testimony about that.

19  That he was at a conference and was called in to fix the system

20  because he was the only person who could fix the system, is

21  what I understand.  And I think also, about the Aspergers,

22  there was also testimony that Bonnie thought he had Aspergers.

23         THE COURT:  No.  I recall the testimony.  You asked

24  whether the failure to have eye contact was because he had

25  Aspergers Syndrome, and the person on the stand, it's in the

K333SCH1                    Deliberations

1    record, and you can answer that question.  The person said no.

2    So it was a pretty good example of --

3              MS. SHROFF:  Could I just have a minute.

4              THE COURT:  -- the questions not being evidence.  Yes.

5              MS. SHROFF:  Could I just have a minute to pull up the

6    question.

7              THE COURT:  Sure.

8              MS. SHROFF:  Okay.

9              (Pause)

10             MR. ZAS:  Your Honor, the only thing I'm finding now

11   is a transcript page 1777, 1777, this is the witness Bonnie on

12   cross-examination.  Starting on line 24.  The question is:

13   "Q.  Let's fast forward a little bit and ask you this.  Did

14   there come a time" --

15             I'm sorry.  Not Bonnie.  It's Karen.  I'm sorry.

16   "Did there come a time when you were talking to Bonnie and

17   Bonnie told you that perhaps he didn't make eye contact because

18   she thought he had Aspergers; do you recall that?

19   "A.  We had that conversation when we were trying to figure out

20   how to handle the situation.

21   "Q.  Right.  And it never occurred to you back then in October

22   of 2015 that that might be the reason for the no eye contact,

23   correct?

24   "A.  It was the first time --

25   "Q.  Just yes or no.

K333SCH1                          Deliberations

1    "A.  No, it had not occurred to me.

2    "Q.  And you never, ever asked anybody anything about the

3    failure to make eye contact, correct?

4    "A.  Correct."

5             THE COURT:  Okay.

6             MR. ZAS:  I think that's the excerpt.  I don't think

7    it answers the jury's question, which is, is it confirmed or

8    not.  So, I suppose our proposal is either to direct them to

9    this portion of the testimony or just say there's no evidence

10   in the record as to whether it's confirmed.

11            THE COURT:  Why not do the both?

12            MR. ZAS:  We would not object to that.

13            THE COURT:  Government?

14            MR. KAMARAJU:  That's fine for us, your Honor.

15            THE COURT:  Okay.  That takes care of five.

16            What about one, two, three, four, six and seven.

17            MR. KAMARAJU:  Your Honor, I think we're still digging

18   up whether there was anything with respect to the other ones.

19   I think two -- sorry.  I think one, the only thing we could

20   really do is direct them to the language of the indictment.

21   The language of the indictment charges that he disclosed

22   information during that time period in whatever form.

23            THE COURT:  I think they are asking what format was

24   the information in.

25            MR. KAMARAJU:  We --

K333SCH1                    Deliberations

1          THE COURT:  Articles, search warrant, tweets.

2          MR. KAMARAJU:  We've obviously identified for the

3    Court and the defense what those are.  We could read the parts

4    of the transcript that relate, for example, to the search

5    warrant and the tweets, which is where the government alleges

6    the classified information was contained in.

7          THE COURT:  Mr. Zas?

8          MR. ZAS:  Your Honor, I think the best way to proceed

9    here is to read them -- we have no objection to reading them

10   the charge, charge three, or to refer them back to your Honor's

11   instructions on Count Three.

12         But I think the risk of starting to select certain

13   portions of the evidence risks being under-inclusive, and also

14   perhaps being inaccurate.

15         MS. SHROFF:  The issue of him being called to fix the

16   system is at 1783.

17         MR. KAMARAJU:  We don't object to 1783 and 1784 going

18   back.

19         MS. SHROFF:  Then it's in Weber.

20         MR. KAMARAJU:  Where?

21         MS. SHROFF:  I'm looking, hold on.

22         Do you have the pages for the last piece?  It's 2485

23   and 2619-2620.

24         MR. ZAS:  Your Honor, our reading of the record as far

25   as question four goes, is that there is nothing specifically

K333SCH1                    Deliberations

1    stating whether the piece refers to a drug or something else.

2    So I think unless the government finds something else, it just

3    might be appropriate for to you say it's up to you, the jury,

4    to determine what Government Exhibit 809 means in light of that

5    document and all the other evidence.  Something like that.

6              MS. SHROFF:  Your Honor --

7              THE COURT:  Mr. Zas, could you repeat that, please.

8    It is up to you, the jury, to what?

9              MR. ZAS:  To determine the meaning of Government

10   Exhibit 809 based on that document and all the other evidence.

11

12             THE COURT:  Is that all right with the government?

13             MR. KAMARAJU:  I think that's fine, your Honor.

14             MS. SHROFF:  The testimony pages should go in, your

15   Honor.  Pages 2484 is where I ask Mr. Kamaraju to actually read

16   into evidence the fact that that language is actually on 809.

17   And then on 2619-2620 is where the testimony is about the last

18   piece.

19             MR. KAMARAJU:  It seems like we should either give

20   them that testimony or you should give them the instruction

21   that you were about to give them.

22             THE COURT:  I prefer to give them the testimony.

23             MR. KAMARAJU:  That's fine with the government, your

24   Honor.

25             THE COURT:  Ms. Shroff?

K333SCH1                        Deliberations

1            MS. SHROFF:  That's fine.  As long as it's --

2            THE COURT:  Give me the pages.  2484 and 2619?

3            MS. SHROFF:  No.  2484 to 2485, 2619 to 2620.

4            THE COURT:  What's the first one, 2484 to 2485?

5            MS. SHROFF:  Yes, your Honor.

6            THE COURT:  Okay.

7            MR. ZAS:  Just for clarification, did you decide to do

8    the transcript in lieu of any -- the first part we talked about

9    or are you going to do both?

10           THE COURT:  I prefer to give them the transcripts.

11           MR. ZAS:  That's fine.

12           THE COURT:  All right.  On number one, my notes

13   reflect we're going to tell them to reread the charge in Count

14   Three.

15           What are we doing on Count Two?  There's some pages of

16   transcript you wanted me to read or want them to read?

17           MS. SHROFF:  I gave the government the range.

18           MR. KAMARAJU:  I believe it was 1783 to 1784.

19           MS. SHROFF:  1785.

20           MR. KAMARAJU:  The government doesn't object to it.

21           MS. SHROFF:  I think, let me just look if you want.

22   We can just print that out and take a look if you need.

23           THE COURT:  1783 to 1785 takes care of Mr. Schulte's

24   work on -- Mr. Schulte is not here.

25           MS. SHROFF:  I'm sure Mr. Gonzalez will have him come

K333SCH1                      Deliberations

1   up before the jury is brought out.

2              THE COURT:  Is he in the building?

3              MS. SHROFF:  Yes, he's in the building, your Honor.

4              THE COURT:  Mr. Laroche and Mr. Kamaraju, what is the

5   response to number three?  You said there is an exhibit that

6   lists all this?

7              MR. LAROCHE:  There is a stipulation, your Honor, that

8   lists out what was recovered and entered into evidence from his

9   home computer.  It is 3003.

10             THE COURT:  Okay.

11             MS. SHROFF:  Your Honor, to the extent there's

12  testimony about his home computer that goes in, I think Special

13  Agent Schlessinger was also asked questions about the RAID file

14  in his home.

15             THE COURT:  Do you have a page reference?

16             MS. SHROFF:  I'm looking, your Honor.

17             THE COURT:  Are we just going with the stipulation of

18  GX 3003 or do we have testimony in response to inquiry number

19  three?

20             Number five I'm going to say there is no evidence of

21  record that Mr. Schulte has been diagnosed with Aspergers

22  Syndrome.  And then I have pages to refer to?

23             MR. KAMARAJU:  That's fine.

24             THE COURT:  From Karen's testimony?  Can you give me

25  that, Ms. Shroff.

K333SCH1                    Deliberations

1           MS. SHROFF:  I thought that was 1783 to 1785.

2           MR. LAROCHE:  I think it's 1777-78 is for the

3    Aspergers portion.

4           THE COURT:  1777-1778?

5           MR. LAROCHE:  Yes.

6           THE COURT:  What happened to 1783 through 1785?

7           MR. LAROCHE:  That is for number two.

8           THE COURT:  Okay.  All right.  Six and seven?

9           MR. LAROCHE:  We're identifying the testimony now,

10   your Honor.

11          THE COURT:  Thank you.

12          (Defendant present)

13          MR. LAROCHE:  Your Honor, just a point on number six.

14          THE COURT:  Yes.

15          MR. LAROCHE:  Ms. Shroff.

16          MS. SHROFF:  Yes.

17          MR. LAROCHE:  Sorry, just an alternative potential

18   reading of point six is that the jury is asking whether Count

19   Four is just about taking the Altabackups or if it also is

20   inclusive of conduct related to Brutal Kangaroo.  So conduct

21   that happened in May 2016, or the OSB libraries conduct that

22   happened in April 2016.

23          MS. SHROFF:  Then you have to reread them Count Four.

24          MR. LAROCHE:  I think that is a potential reading of

25   that question.  It's hard to know what they mean by "inclusive

K333SCH1                         Deliberations

1    of."  They specifically identify Count Four.

2              MR. ZAS:  Maybe question four it might be better to

3    ask them to be more specific.

4              MR. LAROCHE:  That's fine.  For question six.

5              MR. ZAS:  Question six, Count Four.

6              MR. LAROCHE:  Yes.

7              (Pause)

8              MR. ZAS:  We may have a solution on the home computer

9    question.  The jury seems to be interested when they ask can

10   you please reread what was found.  It sounds like maybe all

11   they want, which is the list, is contained in Government

12   Exhibit 3003.  I think the parties would propose that the Court

13   just tell the jury that Government Exhibit 3003 contains a list

14   of what was found on Mr. Schulte's home computers.

15             THE COURT:  I wonder about the utility of these

16   conferences because that's what my notes say.  I took the notes

17   10 minutes ago saying why don't we just refer to 3003.

18             MR. ZAS:  Sometimes it takes us longer to appreciate.

19             THE COURT:  Brilliant minds running on similar

20   channels.

21             MR. ZAS:  I appreciate your wisdom.  It might be

22   appropriate to say there is also testimony related to that, and

23   if you're interested in that, please let us know.  So they

24   don't feel like they are being ignored.

25             THE COURT:  Shunted aside.  Fine.

K333SCH1                       Deliberations

 1          MR. LAROCHE:  Your Honor, I think we have a proposal
 2     on seven, the last one.  We've identified testimony from
 3     Mr. Leedom from pages 974 to 980, and this is in response to
 4     "Where were OSB libraries housed/where did they live."  He
 5     testifies about Stash, which is where they lived, and audit
 6     logs from Stash.  I think that portion of the testimony is
 7     responsive because it identifies that is the location where
 8     they are.
 9          THE COURT:  We'll just refer to Mr. Leedom's testimony
10     at 974 through 980?
11          MR. LAROCHE:  Yes, your Honor.
12          THE COURT:  Going to review the seven answers now.
13          MR. LAROCHE:  Yes, your Honor.
14          THE COURT:  The responses to question one.  I'm going
15     to tell the jurors that the best advice we can tell them is to
16     reread the Court's instruction on Count Three.
17          On question two, whether Mr. Schulte was called to fix
18     the problems, we refer them to pages 1783 and 1785.
19          As to question three, about the home computer, I refer
20     them to GX 3003, and if you want more information, please let
21     us know.
22          On four, about taking my last piece, it is up to you,
23     the jury, to determine the meaning of this exhibit, based on
24     that document and all the other evidence.  It is up to you to
25     determine the meaning of 809, based on that document and all

K333SCH1                      Deliberations

1    the other evidence.

2              I have reference here to pages 2984-2985, and

3    2619-2620, do you want those page references in or out?

4              MR. KAMARAJU:  I guess your preference had been to

5    send those pages back instead of giving the instruction.  But

6    we're happy to give both.

7              THE COURT:  I guess I prefer the pages.

8              MR. LAROCHE:  That's fine.

9              MS. SHROFF:  Could you just reread the page numbers

10   you just cited?

11             THE COURT:  Yes.  2484-2485 and 2619-2620.

12             Number five.  There is no evidence of record that

13   Mr. Schulte has been diagnosed with Aspergers Syndrome.  In

14   reference to pages 1771 through 1778.

15             MR. LAROCHE:  I think it's 1777, your Honor.

16             THE COURT:  1777 through 1778.

17             MR. LAROCHE:  Thank you.

18             THE COURT:  And number six, we're going to ask them to

19   be more specific.

20             And on number seven, we're going to cite pages 974 and

21   980.

22             MR. LAROCHE:  Yes, your Honor.

23             THE COURT:  Any further comments from Mr. Schulte?

24             MR. ZAS:  May we have one second, your Honor.

25             THE COURT:  Sure.

K333SCH1                          Deliberations

1              MS. SHROFF:  Are we going to give them the pages?

2              THE COURT:  I thought we'd give them the pages.

3              MS. SHROFF:  That's fine.

4              THE COURT:  We all set?

5              MR. KAMARAJU:  From the government's perspective, yes.

6              MR. ZAS:  We're just checking to see whether anyone

7     else other than Mr. Leedom testified about where the OSB

8     libraries were housed.

9              Did Mr. Leonis or Mr. Weber ever talk about that?

10             MR. KAMARAJU:  I don't believe so.

11             MS. SHROFF:  I think 1778 comes in as part of the

12    Aspergers answer.  You have that, right?

13             THE COURT:  1777-1778.

14             It's been an hour now since the jury asked these

15    questions.

16             MS. SHROFF:  But that testimony that the government is

17    directing us to is removing OSB libraries access.  It does not

18    answer where was OSB libraries was housed or where did they

19    live.

20             MR. LAROCHE:  It talked about where they got audit

21    logs.  They got audit logs from Stash because it is a Stash

22    project.  That is responsive to the question, your Honor.

23             MS. SHROFF:  I don't think so.  That's not what the

24    question asked, so we don't agree.  That's all.

25             THE COURT:  You can always ask to be more specific

K333SCH1                         Deliberations

1   with regard to question seven.

2              MS. SHROFF:  Or you can just answer on Stash if you

3   want.  But I don't think you can give them this testimony.

4   This testimony is about a totally different topic.

5              MR. LAROCHE:  If Ms. Shroff would prefer just saying

6   it lives on Stash, that's fine with us.  That's what we are

7   trying to answer.

8              MS. SHROFF:  That's fine.

9              MR. LAROCHE:  It is a Stash project.

10             MS. SHROFF:  Lives on Stash is fine.

11             THE COURT:  What do we say in response to seven?  Are

12  we giving page references?

13             MS. SHROFF:  They live on Stash.

14             MR. ZAS:  I think what we are saying is the parties

15  agree it was housed on Stash or lived on Stash.  Rather than

16  giving them testimony that doesn't really respond to anything,

17  to just essentially just make this an agreed-upon answer.

18             MR. KAMARAJU:  Okay.

19             MR. LAROCHE:  That's fine.

20             THE COURT:  The parties agree with that, Mr. Zas, that

21  OSB libraries lives on Stash.

22             MR. ZAS:  Or was housed on Stash, either way.

23             THE COURT:  Call the jurors in.

24             (Jury present.  Time noted 2:12 p.m.)

25             THE COURT:  We have answers to your questions.

K333SCH1                    Deliberations

1              Question number one:  What is included in Count Three?

2      We aren't sure what the purview is -- articles, search warrant,

3      tweets?

4              The best I can do in response to question number one

5      is to instruct you to read my instructions to you on Count

6      Three of the indictment in my jury charge to you.

7              Question number two:  In 2015, when DevLAN went down,

8      was Mr. Schulte called to fix problems?  How did he fix it?

9              I refer you to pages 1783 through 1785, and we'll send

10     those into the jury room for your consideration.

11             Three:  Can you please reread what was found on

12     Schulte's home computers?

13             What was found on Mr. Schulte's home computers is in

14     stipulation GX 3003.  If you want more information, please let

15     us know.

16             Question number four:  Did GX 809 reference

17     Mr. Schulte's taking a drug ("took my last piece")?  If so,

18     what was it?  Was it regular use?

19             We refer you to pages 2484 to 2485, and 2619-2620.

20             Five:  Is it confirmed that Mr. Schulte has been

21     diagnosed with Aspergers Syndrome?

22             The answer is there is no record evidence received in

23     evidence that Mr. Schulte has been diagnosed with Aspergers

24     Syndrome.  I refer you to pages 1777 through 1778.

25             With regard to question six:  For Count Four, is

K333SCH2                          Deliberations

1    Altabackups inclusive of Brutal Kangaroo?  Is it inclusive of

2    OSB libraries?  We ask you there to be more specific with your

3    question, we don't understand it.

4            Question number seven:  Where were OSB libraries

5    housed/where did they live?

6            The parties agree that the answer to this, where the

7    OSB libraries was housed, was it was housed in Stash.

8            You can continue your deliberations.

9            (Jury continues deliberations.  Time noted 2:15 p.m.)

10           THE COURT:  For the record, these exhibits were marked

11   8 and 8A.  Court Exhibit 8 reflects questions 1 through 5, and

12   Court Exhibit 8A reflects questions 6 and 7.

13           The record will also reflect that Mr. Schulte was

14   present when the jury was in the room when I was reading the

15   instructions to the jury.  Thank you very much.

16           MS. SHROFF:  Thank you, your Honor.

17           (Recess pending verdict)

18           (At 3:03 p.m. a note was received from the jury)

19           THE COURT:  More notes from the jury.  We're giving

20   out copies now.

21           Court Exhibit 9:  "Can we please have simplified badge

22   times/formats for Schulte on 4/20/16 in a format similar to GX

23   115."

24           Note 10, Court Exhibit 10:  "in Exhibit GX 107, what

25   does lock/unlock computer mean in columns Source and Type?  Is

K333SCH2                     Deliberations

1    the computer locking itself?  What is someone unlocking?"

2              Mr. Gonzalez will show you the originals.

3              What do we want to say in response to the first note,

4    Court Exhibit 9?

5              MR. LAROCHE:  Your Honor, we could pull out of that

6    exhibit the April 20 entries.  There's not much more to do

7    other than that, I think, at this point.  It is an entry, it is

8    all his badge records for 2016, and we can pull out the

9    April 20 entries for them from that exhibit.

10             THE COURT:  Mr. Zas?

11             MR. ZAS:  No objection, your Honor.

12             THE COURT:  Okay.

13             MR. LAROCHE:  On the second exhibit, I don't think

14   there is anything in the record to point them to.  So I think

15   potentially, your Honor, it would be similar to the instruction

16   you were considering with the prison notebook, which is it is

17   up to you to determine based on the evidence before you and the

18   evidence in the record.

19             MS. SHROFF:  Wait.  What is GX 107?

20             MR. LAROCHE:  It includes badge records with the

21   computer unlock and locking.

22             MS. SHROFF:  Whose badge records?

23             MR. LAROCHE:  Mr. Schulte's.

24             MS. SHROFF:  Can you just look at Government Exhibit

25   105.  I think 115 is -- if you look at 105, 105 is that exhibit

1   in a format similar to 115.  So you don't have to pull anything

2   out.  Can you just take a look at 105.

3        MR. KAMARAJU:  Ms. Hurst is pulling it up for

4   everybody.

5        MS. SHROFF:  You can take a look now at 115.  So 115

6   is Michael's badge records, I think.  And 105 -- can we go back

7   to 105.  That's 107.  And that's 105.  So why don't you just

8   send them 105.  That's badge record in that format, which is

9   what they asked for.

10        MR. LAROCHE:  I think they are asking for simplified

11   badge records for 4/20 because 105, the numbers aren't in

12   chronological order in all cases.  So it's generally in

13   chronological, but if you go down to 4/20, there are some

14   entries that are not in that order based on how it was sorted.

15        MS. SHROFF:  This is the exhibit that they put in.  It

16   is the exhibit that is in the same format similar to Government

17   Exhibit 115.  It's exactly what they are asking for.

18        MR. LAROCHE:  Not exactly what they are asking for,

19   your Honor.

20        MS. SHROFF:  "Can we please have simplified badge

21   time/formats for Schulte on 4/20/16 in a format similar to GX

22   115."

23        MR. LAROCHE:  And --

24        MS. SHROFF:  That's similar -- I just want to finish.

25   So if you could just put the two things side by side, the two

K333SCH2                        Deliberations

1   documents.  115.

2              THE COURT:  Which is 115?

3              MS. SHROFF:  115 is on the left.  And then Schulte is

4   on the right.  That's the same exact format.

5              MR. LAROCHE:  It is not the same exact format, your

6   Honor.  Again, 115, which is on the left, is in chronological

7   order by times.  105 is generally in chronological order, but

8   some times are out of order.  So it seems like what they are

9   asking for is a format where it is in chronological order, for

10  the defendant, on April 20.  Our proposal would be to provide

11  that to them to be helpful.

12             MS. SHROFF:  It's right there.  Page 13 of 27.  4/20.

13  Badge column, badge column.  Date time column, date time

14  column.  Person, person.  Action, action.  Where, where.

15  Spindle, spindle.  Access granted, access denied.

16             MR. LAROCHE:  Again, your Honor --

17             THE COURT:  I suppose we could give them the entry for

18  Schulte on 4/20/16.

19             MS. SHROFF:  Exactly.

20             THE COURT:  Without anything else.

21             MR. LAROCHE:  That's fine, your Honor.  That was our

22  proposal.

23             MS. SHROFF:  No.

24             THE COURT:  Do you want to give me 415?

25             MS. SHROFF:  You are going to give them page 13 and

1    page 14 of 27?

2              MR. LAROCHE:  Your Honor, our proposal would be to

3    pull out from 13 and 14 the entries for 4/20, because there are

4    entries for other days on those pages.

5              MS. SHROFF:  They can read them as 4/20 or any other

6    dates.

7              THE COURT:  They asked about 4/20 though.

8              MS. SHROFF:  I'm giving them 4/20.  I'm asking the

9    Court just to give them -- could you just blow it up so the

10   judge can see that 4/20 is on page 13.  This is not the right

11   page.  Right.

12             So, this is the page that has 4/20.  And there it is.

13   You can't reorganize evidence.  That's the format.  You can't

14   just make a summary chart and give it to them because you want

15   to make a summary chart.

16             THE COURT:  What I'm suggesting is you give them this

17   chart with the 4/20 date on it, and that's the only chart you

18   give them.

19             MS. SHROFF:  That's page 13.  I agree.  You just print

20   out page 13 of 27 and give it to them.

21             MR. LAROCHE:  Your Honor, they have this already.

22             MS. SHROFF:  No, they have it as a 27 --

23             MR. LAROCHE:  Ms. Shroff.

24             MS. SHROFF:  Go ahead.

25             MR. LAROCHE:  They're asking for April 20, your Honor.

K333SCH2                         Deliberations

1   Our proposal is to provide them the entries for April 20.

2             MS. SHROFF:  No.

3             MR. LAROCHE:  Again.

4             MS. SHROFF:  I thought you were done.

5             THE COURT:  Ms. Shroff, you can't interrupt.

6             MR. LAROCHE:  Our proposal was to provide them the

7   entries just for April 20 on these pages.  They already have

8   this in evidence.  They are asking for something similar.

9   That's our proposal.

10            MS. SHROFF:  No.

11            MR. LAROCHE:  13 and 14.

12            MS. SHROFF:  I wish you would finish.

13            MR. LAROCHE:  13 and 14, that's our proposal, your

14   Honor.

15            MS. SHROFF:  You can give them page 13 of this

16   document, and on page 14 if there is anything about April 20,

17   give it to the jury.  But we are not going to agree to the

18   government making a different document and extracting data from

19   that.  That's not proper.

20            THE COURT:  They are not make a different document,

21   are they?

22            MS. SHROFF:  They are suggesting they highlight for

23   them what is April 20.  You can read what is April 20.  Right

24   now they may not be able to read it because they are looking at

25   it as a full 27-page document and in a different format.  We

1    don't know what exhibit they are looking at.

2              So this is in the format of 115, it answers the

3    question, and the government shouldn't be making a third

4    exhibit or highlighting this in any way.  That's not what the

5    note asked for.  Read the note.  "In a format similar to GX

6    115."

7              THE COURT:  All right.

8              MS. SHROFF:  This is --

9              THE COURT:  I'm going to adopt the government's

10   suggestion.  Tell me again what it is, Mr. Laroche.

11             MR. LAROCHE:  On pages 13 and 14, we would provide

12   them just the entries for April 20.

13             MS. SHROFF:  They are not even looking at this exhibit

14   yet.  They are looking at 107.  Right?  They haven't -- you

15   don't know what exhibit the jury is looking at.  So this is the

16   document that's responsive to April 20.  What's the problem

17   with printing this page and giving it to them?

18             THE COURT:  You have your objection.  What about --

19             MS. SHROFF:  I'm sorry, your Honor.  Can you tell me

20   how it's going to go into the jury?

21             THE COURT:  How is it going to go into the jury,

22   Mr. Laroche?

23             MR. LAROCHE:  We'll provide them pages 13 and 14 with

24   just the entry for April 20.

25             MS. SHROFF:  That's not proper.  They are redacting

1    information.

2                  THE COURT:  All right.  You have your objection.

3                  What about Exhibit 10?  Court Exhibit 10?  Locking and

4    unlocking computer.

5                  MR. LAROCHE:  We propose that you just simply tell

6    them that they have to rely on the exhibit.  There is nothing

7    else in the record related to that question.  They can draw

8    whatever inference they want.

9                  MS. SHROFF:  Your Honor, could you just go back,

10   please, to pages 13 and 14 for a minute.

11                 THE COURT:  They are on my screen.

12                 MS. SHROFF:  Could you take a look at 14.  How are

13   they planning to give this?  On 14 there's dates that go 4/21,

14   4/20, 4/21, 4/20.  Are they going to redact those lines?

15   That's not proper.

16                 MR. LAROCHE:  Yes, your Honor.  Yes, we would redact

17   them, and we can tell them that they also have the complete

18   exhibit.  But they have asked for April 20.

19                 THE COURT:  All right.  Call in the jury.

20                 (Jury present.  Time noted 3:33 p.m.)

21                 THE COURT:  I have your notes.  The first note is:

22   "Can we please have simplified badge times/formats for Schulte

23   on 4/20/16 in a format similar to GX 115."

24                 We're going to provide that information to you which

25   shows the dates and times for Mr. Schulte on 4/20/16.

1          With regard to the second note:  "In Exhibit GX 107,

2     what does lock/unlock computer mean in columns Source and Type?

3     Is the computer locking itself?  What is someone unlocking?"

4          I am afraid the record that we have does not answer

5     these questions.  So you'll have to rely on the document itself

6     and all the other evidence in the record.  Thank you.  You can

7     resume your deliberations.

8          (Jury resumes deliberations.  Time noted 3:35 p.m.)

9          THE COURT:  Thank you.

10          (Recess pending verdict)

11          (At 3:37 p.m. a note was received from the jury)

12          THE COURT:  We have another note from the jury.  The

13     note was contained in an envelope which is marked "For

14     Tomorrow."  The jury intends to go home at 4 o'clock.  But,

15     this is available for your inspection.  I'll just read this

16     note into the record.

17          "(1) Is there evidence that April 18 and 20 were the

18     only two times in 2016 that Schulte left the vault last?  (2)

19     What does mount the Altabackups mean?  (3) What does create

20     data store mean?  (4) When someone logs out of a virtual

21     machine, what happens to the log files from that session?"

22          I'd suggest the parties get together and see if they

23     can't format an answer to these questions.

24          MR. LAROCHE:  Yes, your Honor.

25          THE COURT:  And the answer to the questions may very

K333SCH3                        Deliberations

1    well be you can't answer the questions, and they have to rely

2    on the record as it exists, the trial record as it exists now.

3              So I'd suggest we get together at 9 o'clock tomorrow

4    morning, and if we have answers we'll call the jury in.  If we

5    don't have answers, we'll formulate the answers and then call

6    the jury in.

7              Anything else to take up tonight?

8              MR. LAROCHE:  No, your Honor.  Thank you.

9              THE COURT:  Thank you very much.

10             MS. SHROFF:  Your Honor.  We don't need anything.

11             THE COURT:  Okay.

12             MS. SHROFF:  Thank you.

13             (Adjourned until March 4, 2020, at 9 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25