K343SCHF

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        S2 17 Cr. 548 (PAC)

5   JOSHUA ADAM SCHULTE,

6              Defendant.                Trial

7   ------------------------------x
                                        New York, N.Y.
8                                       March 4, 2020
                                        9:20 a.m.
9   Before:

10                    HON. PAUL A. CROTTY,

                                        District Judge
11                                         -and a jury-
                          APPEARANCES
12
    GEOFFREY S. BERMAN
13       United States Attorney for the
         Southern District of New York
14  BY:  MATTHEW J. LAROCHE
         SIDHARDHA KAMARAJU
15       DAVID W. DENTON JR.
         Assistant United States Attorneys
16
    SABRINA P. SHROFF
17       Attorney for Defendant
         -and-
18  DAVID E. PATTON
         Federal Defenders of New York, Inc.
19  BY:  EDWARD S. ZAS
         Assistant Federal Defender
20       -and-
    JAMES M. BRANDEN
21

22  Also Present:  Colleen Geier
                   Morgan Hurst, Paralegal Specialists
23                 Achal Fernando-Peiris, Paralegal
                   John Lee, Litigation Support
24                 Daniel Hartenstine, CISO, Department of Justice

25

1           (Trial resumed; jury not present)

2           THE COURT:  We're still missing Juror No. 4.

3           What is the status of the request that we got at 3:45

4    last night, Court Exhibit 11?  That's the one with the four

5    questions.

6           MR. LAROCHE:  Yes, your Honor.  First, the one we

7    agree on, number four, the parties agree there is nothing

8    responsive to that in the record.

9           One, two, and three we just have slight variations

10   where we're at in terms of transcripts.  So I'll start with

11   one.  For one, this refers to a question about locking the

12   vault.

13          The parties agree on this one to refer to the jury to

14   look at Exhibit 105, which are the defendant's badge records

15   for 2016.  the parties also agree to refer to a portion of

16   Mr. Leedom's testimony.  But the government proposes slightly

17   more of that testimony than the defense.  We provided the two

18   differences to your Honor.

19          THE COURT:  The defense proposal is?

20          MR. LAROCHE:  We both refer to the same portion of

21   Mr. Leedom's testimony.  The defense cuts it off slightly

22   earlier than the government does.

23          So I believe at the end, Mr. Leedom is testifying

24   about the defendant's badge records, and what the arm lock

25   means.  And the government proposes including the information

1  on the second page where he's asked to explain the badge

2  records relating to the defendant.

3           MR. ZAS:  Judge, I can just explain the objection we

4  have.

5           THE COURT:  Okay, Mr. Zas.

6           MR. ZAS:  The question is about generally whether

7  there is evidence that these two dates were the only two times

8  in 2016 that Mr. Schulte left the vault last.  So we're in

9  agreement with the government about giving them the badge

10  records, and they'll see for themselves how many times it was.

11          Then we have this portion that just explains what it

12  means to arm and disarm the vault.

13          But then, when Mr. Laroche asked the question on page

14  1100 of the transcript, it starts to focus --

15          THE COURT:  Let me get to 1100.

16          MR. ZAS:  Yes, sorry.

17          THE COURT:  Okay.  I'm at 1100 for both.

18          MR. ZAS:  On 1100, we would end at line 4.

19          THE COURT:  Yes.

20          MR. ZAS:  Because then it goes on to focus on a

21  specific date and time that Mr. Schulte armed the vault.  And

22  we don't think -- that's not what the jury is asking.  There is

23  no reason to highlight the one specific time that the

24  government wants to focus on there.

25          THE COURT:  All right.  On one, is there evidence that

K343SCHF                    Deliberations

1    April 18 and 20 were the only two times in 2016 that Schulte

2    left the vault last.

3              We're going to give them Exhibit 105?

4              MR. ZAS:  That's correct.

5              THE COURT:  Which is the records, the badge records

6    for 2016.

7              MR. ZAS:  Yes.

8              THE COURT:  And then as for Mr. Leedom's testimony,

9    I'm going to, with respect to that, I'm going to allow from

10   1099:10, all the rest of the page to 25 to page 1100:1-4.

11             MR. ZAS:  Your Honor, we just have one objection to

12   what you've just said.  Just on page 1099, the reason we took

13   out lines 10 through 16 was just there seems to be an answer

14   that's really non-responsive about a VM folder and a different

15   file that was deleted.  And we just thought it's not responsive

16   and it just causes more confusion.

17             THE COURT:  It is the lead in to the badge records

18   explanation.  I assume that's --

19             MR. LAROCHE:  Yes, your Honor.

20             THE COURT:  -- that's why you want it.

21             MR. ZAS:  Okay.

22             MR. LAROCHE:  Yes, your Honor.

23             THE COURT:  It is a fuller response.

24             MR. ZAS:  We just have one more thought.

25             THE COURT:  Okay.

K343SCHF                    Deliberations

         MR. ZAS:  You recall that we're giving the jury also a

redacted portion of Government Exhibit 105.

         THE COURT:  Yes.

         MR. ZAS:  From yesterday that just shows April 20

entries.

         THE COURT:  Yes.

         MR. ZAS:  We asked the government, just so the jury is

not confused, to label that as GX 105 Redacted, which they've

done for us, but it is a very small sticker.  And we just want

to make sure the jury doesn't get confused.  So if your Honor

could explain to them that in response to their, I guess it was

the last note, we're giving them Government Exhibit 105 with

redactions, and we're also giving them this morning the

complete version of Government Exhibit 105, so they're not

confused.  Because they look identical from the stickers.

         THE COURT:  So, that really answers two questions.  It

answers the one question that they put to us yesterday, then it

answers question number one on court exhibit 11.

         MR. ZAS:  That's right.

         THE COURT:  All right.  What's this about the

Altabackups mean?

         MR. LAROCHE:  Yes, your Honor.  So the parties just

have different proposals in terms of transcript cites.  So I'll

give you the government's first, and we provided the excerpts

to you this morning.  We would propose Mr. Weber's testimony

K343SCHF                    Deliberations

1    from 254:15 through 256:15.  We would also propose Mr. Leedom's

2    testimony from 950:1 through 953:23.

3            The defense has agreed on Mr. Weber's testimony, but

4    to a smaller portion.  Only 254:20 to 255:1.

5            THE COURT:  Mr. Zas?

6            MS. SHROFF:  Can you just give us what you gave the

7    Court?

8            MR. ZAS:  Your Honor, as I read the question, question

9    two, especially because the jury has the word "mount" in

10   quotation marks, I think they're confused as to what the

11   meaning of that term is.  So we tried to focus on that

12   confusion.  And we think that our proposal, which starts on

13   page 254 of the transcript, starts with the question, "Are you

14   familiar with the term mount point?"

15           THE COURT:  Just a minute.  I only have one

16   defendant's proposal that deals with the first dispute.  I

17   don't have anything from you on two, three and four.

18           MR. LAROCHE:  Your Honor, I'll pass up the defense's

19   and ours so you have it for Mr. Weber.

20           THE COURT:  I've got number two before me now,

21   Mr. Zas.

22           MR. ZAS:  So our proposal is beginning on page 254, we

23   would give the jury, starting on line 20, with the question

24   that starts, "Are you familiar with the term 'mount point'?"

25   Then the answer there gives a succinct answer, and we would

1  stop it on line 1 of 255.  The remainder starts to get into

2  what the defendant allegedly did and where various points were

3  located.  And it becomes kind of a long colloquy that goes

4  beyond what the jury's asked for.

5          THE COURT:  Mr. Laroche.

6          MR. LAROCHE:  Your Honor, I think the question asks

7  specifically about mounting the Altabackups.  The defense's

8  proposal relates only to just mount points generally.  What

9  we've included relates specifically to mounting the

10  Altabackups, which we believe is directly responsive to what

11  they've asked for.  And it's only, at least with Mr. Weber, two

12  more pages.

13          And then we've also separately provided Mr. Leedom's

14  testimony relating to Altabackups and what the mount point on

15  the Altabackups means, which is specifically what they've

16  asked.  "What does mount the Altabackups mean."  Not just a

17  mount point generally.

18          THE COURT:  Looking at this, Mr. Zas, there is

19  continuing references in the government's proposal of Weber,

20  starting at page 5, about mount commands and mount points.

21  Mount point -- it seems to be so, now, this is Weber.  You say

22  there's other material as well, Mr. Laroche?

23          MR. LAROCHE:  Yes, your Honor.  I'll pass it up right

24  now.  This is Mr. Leedom.

25          MR. ZAS:  Your Honor, if you are inclined to go the

1    government's way on this point and put in the portion, the

2    additional portion they want from Mr. Weber's testimony, we

3    would have a separate request for some of the cross also to

4    make it complete.

5              THE COURT:  Yes.

6              MR. ZAS:  Should we give that to you now?

7              THE COURT:  Yes, please.

8              MR. LAROCHE:  We're fine with that.  We proposed that

9    last night.  So we are fine with that.

10             MS. SHROFF:  Mr. Gonzalez, can we borrow your hard

11   copy of 487?

12             THE DEPUTY CLERK:  What date is that?

13             MS. SHROFF:  The first witness.

14             (Pause)

15             THE COURT:  On request number one, we're going to give

16   Mr. Leedom's testimony starting on page 1099:10, going over to

17   page 1100:4.  That's the response to number one.

18             Number four, the response is there's nothing in the

19   record that enables us to respond to this inquiry.

20             Where are we on two?

21             MR. LAROCHE:  I believe we have agreement, your Honor.

22             THE COURT:  Okay.

23             MR. ZAS:  Sorry it took so long, Judge.

24             THE COURT:  That's all right.

25             MR. LAROCHE:  So, your Honor, we at least have

K343SCHF                        Deliberations

1    agreement as to Weber at this point.

2              THE COURT:  Okay.

3              MR. LAROCHE:  254:15.

4              THE COURT:  254:15.

5              MR. LAROCHE:  To 256:15.

6              THE COURT:  Okay.

7              MR. LAROCHE:  And we have cross for Weber, 485:9 to

8    487:24.  And then on redirect, your Honor, the parties agree

9    521:10 through 521:22.

10             THE COURT:  Okay.  Number three?

11             MR. LAROCHE:  Your Honor, we just have one more

12   suggestion on number two for Mr. Leedom.

13             THE COURT:  Okay.  Yes.

14             MR. LAROCHE:  Your Honor, on Mr. Leedom.

15             THE COURT:  Yes.

16             MR. LAROCHE:  We have a small portion that we agree

17   on.  950:17.

18             THE COURT:  Yes.

19             MR. LAROCHE:  Through 951:12.

20             THE COURT:  Any cross or redirect?  950:17 through

21   951:12; is that right?

22             MR. LAROCHE:  That's right, your Honor.  It is a very

23   limited portion.

24             THE COURT:  That takes care of two.  What about three?

25             MS. SHROFF:  No, no.

1          MR. ZAS:  Your Honor, we're just checking the cross to

2     see if there is anything that should be added just on that

3     portion you just referred to.

4          THE COURT:  All right.

5          MR. ZAS:  We have nothing to add on that question.

6          THE COURT:  Okay.

7          MR. LAROCHE:  On the third, your Honor, both parties

8     agree to portions of Mr. Leedom's testimony, just different

9     lengths of those portions.  So I'll give you the government's

10    first.

11         So 984:4 through 989:1 is the government's.  The

12    defense has 985:9 through 17.

13         The government reads this question, "What does create

14    data store mean" to refer to the discussion of a particular

15    exhibit that Mr. Leedom addressed and how it relates to the

16    backups.  So we included that full discussion, which relates to

17    what a data store is.

18         MR. ZAS:  Our position on this one is, this is one of

19    those rare instances where there is something very succinct and

20    very responsive to the question.  It is right on page 985, and

21    the question is:  "Let's start first with what is a NAS data

22    store."  And he answers it right there.  And everything else

23    goes off on other more confusing forensic stuff.  So we think

24    this one is just straight answer to the jury's question.

25         MR. LAROCHE:  Your Honor, we obviously disagree.  We

K343SCHF                      Deliberations

1    feel that the surrounding context is important to understanding

2    what it means to create a data store, so we have just proposed

3    additional language.

4            THE COURT:  I think the answer at 985:9-17, let's

5    start first what is a data store.  So I'll first explain a data

6    store is simply going down to line 17.

7            MR. LAROCHE:  Your Honor --

8            THE COURT:  I'm going to send that into the jury.

9            MR. LAROCHE:  Understood.  I think, and just our

10   thought process there was they asked specifically for create

11   data store.  Not what is a data store, which is why we included

12   more.

13           THE COURT:  All right.  The jury is here now.  While

14   we're waiting, we've got two more jury notes.  What I would

15   propose to do is to call in the jury and give them the

16   information we have now, so we are at least current as of

17   yesterday's request.  Then pick up the requests from this

18   morning.

19           MR. LAROCHE:  Yes, your Honor.

20           MR. ZAS:  Seems to be a very inquisitive jury, your

21   Honor.

22           THE COURT:  You can't satisfy them.

23           (Jury present.  Time noted 9:50 a.m.)

24           THE COURT:  Good morning.  This will bring us up to

25   date as to the questions as of close of business yesterday

K343SCHF                    Deliberations

afternoon.

So, Court Exhibit 9, which we got at 3 o'clock afternoon says:  "Can we please have simplified badge times/formats for Schulte on 4/20/16 in a format similar to GX 115."

We're going to send in an extract from Government Exhibit 105.  The extract consists of information on pages 13 and 14 of GX 105, and it's marked GX 105 Redacted, which is just the entries for Mr. Schulte.  That takes care of the request as of 3 o'clock.

We received a second request at 3:37, and your foreperson was kind enough to say "for tomorrow."  So, tomorrow is here.  "Is there evidence that April 18 and 20 were the only two times in 2016 that Schulte left the vault last?"

As to that we're going to provide you -- we're already providing you with Exhibit 105, which is in fact the records for the badge records for 2016.  So, you can check it yourself.  In addition, we are going to provide testimony from page 1099:10 through page 1100:4.

Question number two:  "What does mount the Altabackups mean?"

We're going to provide extracts from Mr. Weber's testimony on direct, pages 254:15 to 256:15, cross-examination on the same topic from page 485:9 through 487:24, and redirect from page 521:10 through 522:22.  And a portion of Mr. Leedom's

K343SCHF                    Deliberations

1   testimony from 950:7 to 951:12.

2               With regard to question number three:  "What does

3   create data store mean?"

4               We're going to provide you with an excerpt from

5   Mr. Leedom's testimony, page 985:9-17.

6               And four:  "When someone logs out of a virtual

7   machine, what happens to the log files from that session?"

8               The answer to that is there's no answer in the record.

9   You'll have to just rely on the transcript and the testimony

10  dealing with the virtual machines.  But there's no answer that

11  we can provide you.

12              That takes care of the jury notes as of last night.

13  We have two from this morning.  We're going to work on those

14  now, and you can return to your deliberations.  Thank you very

15  much.

16              (Jury resumes deliberations.  Time noted 9:54 a.m.)

17              THE COURT:  The jury note which came in at 9:30 this

18  morning says:  "Can we have a transcript of Michael Berger's

19  testimony.  Can we also have a transcript of Michael's

20  testimony."

21              MS. SHROFF:  Sure, why not.

22              MR. LAROCHE:  That's fine, your Honor.

23              THE COURT:  Okay.

24              MR. LAROCHE:  We'll prepare it the same way as we did

25  David's testimony with respect to objections.

K343SCHF                    Deliberations

1          THE COURT:  Okay.  The next note is -- actually, the

2     next note was the first note we received this morning at 9:16.

3     "All of us feel that Ms. Thompson," that's Juror No. 4, "is not

4     respecting the process.  She is late every day, and during

5     deliberations has not been participating in the group

6     discussions.  Rather she's been digging through the evidence on

7     her own.  Even when asked to redirect her attention, she

8     continues on her own path.  We're concerned about how this is

9     playing out within the group and her attitude towards the other

10    jurors."

11         I'll show you the originals.  Any suggestions?

12         MR. LAROCHE:  Your Honor, we'd request a little time

13    to discuss this internally and get back to chambers very soon

14    with a position.

15         MR. ZAS:  I think our request is similar.  I know

16    there is a Second Circuit case where the accusation was that a

17    juror refused to deliberate or something along those lines, so

18    that might shed some light on what's tolerable and what is not.

19         THE COURT:  Okay.  I have a modest proposal, and that

20    is to read them again my instructions, which talks about the

21    duty to cooperate with one another.  Of course I welcome

22    whatever suggestions you have.  But the jury charge which you

23    have at page 56 is your duty as jurors to consult with one

24    another and to deliberate with a view towards reaching an

25    agreement.  You have to decide the case for yourself.  It goes

1   on from there.

2              As an initial thing, that's what I would suggest.  But

3   I welcome your suggestions.

4              MR. LAROCHE:  We have no objection to doing that now.

5   I think we would still go back and look at the case law, but I

6   think that is a fine approach right now, your Honor.

7              THE COURT:  Why don't we wait.  How long is it going

8   to be?

9              MR. ZAS:  Not long.  I would suggest just waiting, let

10  us take a quick look at the case law and see, I mean, of course

11  the instruction is proper.  I'm just not sure it should be done

12  now.

13             THE COURT:  Fair enough.  How long do you want?

14             MR. ZAS:  No more than an hour, Judge.

15             THE COURT:  An hour, okay.

16             MR. LAROCHE:  That's fine.

17             THE COURT:  We'll get together at 11 o'clock then

18  unless there is another note in the meantime.

19             MR. KAMARAJU:  Thank you, your Honor.

20             (Recess pending verdict)

21             (Jury not present)

22             THE COURT:  Okay.  Have we sent in the testimony of

23  Mr. Berger and Mr. Michael?

24             MR. LAROCHE:  Yes, we have copies of their testimony

25  here ready, your Honor.

K343SCH2                    Deliberations

1          MS. SHROFF:  Well, actually, your Honor, we have an

2    issue with the -- on Mr. Berger's testimony.

3          THE COURT:  What's the issue?

4          MS. SHROFF:  So, your Honor, I think Mr. Berger was

5    about to be crossed on the issue of what was in the encrypted

6    folder on Mr. Schulte's drive at the house.  At the

7    government's -- I think, it wasn't me who did the cross.  So

8    I'm told that the government informed Mr. Branden that should

9    he cross on that point, information about the pornography that

10   was on the encrypted file would come out.  So Mr. Branden

11   didn't cross on that point.

12         Mr. Branden can speak to this issue.  It's not my

13   issue to deal with.  But, so, anyway --

14         MR. BRANDEN:  I can continue, Judge, if that's more

15   helpful.  Ms. Shroff has very stated this accurately.  So then,

16   a corrective measure between the government and the defense was

17   worked out so that I would ask Special Agent Evanchec --

18         MS. SHROFF:  That's not what happened.  Government

19   asked Evanchec.

20         MR. BRANDEN:  The government asked Evanchec and we

21   asked Evanchec on cross whether there was any NDI found in the

22   encrypted portion of the computer.

23         So I didn't ask those questions of Berger because I

24   was told that that would, in the government's view, open the

25   door.  So we would like to include those pages from Evanchec to

1    round out the Berger testimony that --

2           THE COURT:  We have a request from the jury for

3    Mr. Berger's testimony and Michael's testimony.  That's what we

4    have.  We don't have any request for somebody else's testimony.

5    So, I don't propose to respond to this question by giving them

6    something they didn't ask for.

7           So, I'd ask that the Berger testimony and the Michael

8    testimony be sent into the jury room.  David, send it in.

9           Court Exhibit 12.  Mr. Laroche?

10          MR. LAROCHE:  I believe the parties are in agreement

11   that we would adopt your Honor's proposal of rereading the

12   specific portions of the jury charge that relates to the

13   deliberations and working together.  We think that is a

14   sufficient remedy.

15          I think both parties have identified the same Second

16   Circuit cases, _Thomas_ and _Baker_, and we think that would be an

17   appropriate step at this point.

18          MR. ZAS:  Your Honor --

19          THE COURT:  Should I read it to them or just direct

20   them to -- they have the instructions in the jury room.

21          MR. ZAS:  Your Honor, I think we would leave it up to

22   your Honor's discretion.  Just one point.  I think there might

23   be a question of the timing of this instruction.  I don't think

24   any of us know for sure whether the juror referred to in the

25   note is even aware of the note.  So, our concern is we don't

K343SCH2                    Deliberations

1    want anyone to feel that they are being criticized or targeted

2    if she doesn't already know about the note.

3         So, the question is really do you do it now or do you

4    just sort of do it in a more maybe innocuous way at the end of

5    the day when you give them their instructions before going home

6    or when the next note comes.

7         It would be a little different from your normal

8    practice when you actually read them what they've asked and

9    respond.  We don't think that would be appropriate to actually

10   read it, because this juror may not know --

11             THE COURT:  Right.

12             MR. ZAS:  -- that they've advised you.

13             THE COURT:  What's your advice or recommendation with

14   regard to reading it to them or just citing it to them at page

15   59 or whatever the page is?

16             MR. ZAS:  Your Honor --

17             THE COURT:  One of the complaints is this juror's

18   supposedly always late.  I could certainly remind them we can't

19   start deliberation until everybody's here.

20             MR. ZAS:  Yes, we have no objection that.  I think

21   we're fine with you reading it.  But we prefer at maybe the

22   next note that comes out.

23             THE COURT:  Or at the end of the day.

24             MR. ZAS:  Or at the end of the day.

25             MR. LAROCHE:  That's fine.  We prefer you read it as

K343SCH3                         Deliberations

1    well, and we're fine on the timing as proposed.

2              THE COURT:  Do you want just the duty to deliberate?

3              MR. LAROCHE:  That's what we identified, your Honor,

4    starting on page 56 going to 57.

5              THE COURT:  All right.  Thank you very much.

6              MR. LAROCHE:  Thank you, your Honor.

7              (Recess pending verdict)

8              (At 11:15 a.m. a note was received from the jury)

9              THE COURT:  We have a note from the jurors, note we

10   marked as Court Exhibit 14.

11             "(1) Can we please have testimony from Richard

12   Evanchec.  (2) What testimonies covered GX 1305-8 and GX

13   1305-9.  Can we please have transcripts about that."

14             MR. KAMARAJU:  Your Honor, so we'll prepare Special

15   Agent Evanchec's testimony the same way and just search for all

16   the testimony about those two exhibits.

17             THE COURT:  Do you want me to call the jury to tell

18   them we'll comply with their note?

19             MR. KAMARAJU:  I think we should tell them we'll give

20   it to them.  It will also give your Honor an opportunity to

21   read the instruction.

22             THE COURT:  I'm going to do that at the end of the

23   day.

24             MS. SHROFF:  Your Honor, I'm sorry, I didn't hear what

25   the Court said.  But Mr. Schulte is not here.

1          THE COURT:  Okay, we'll wait for Mr. Schulte.

2          MS. SHROFF:  So, should we gather what they want on

3     the note and then bring them out?  It seems fairly

4     straightforward get Mr. Evanchec's testimony and do a quick

5     search for 1305-8 and 9.

6          THE COURT:  If we have Evanchec's testimony -- do we

7     have Evanchec's testimony here?

8          MS. SHROFF:  We just have to redact the objections.

9          THE COURT:  So we have work to do.

10         MS. SHROFF:  It won't be that long.  It seems,

11    Ms. Hurst seems to be quite rapid at it, so I don't think it

12    would be more than 15 or 20 minutes.

13         THE COURT:  All right.

14         MR. ZAS:  It looks like those exhibits are admitted

15    through a stipulation.  It seems like it comes through a

16    stipulation.  I'm not sure there is any testimony about it.

17         MR. LAROCHE:  Your Honor, part two, the testimony I

18    believe that covers that is Mr. Berger's, which they're

19    getting.

20         THE COURT:  Mr. Berger?

21         MR. LAROCHE:  Yes.  That was part of his presentation.

22    We'll confirm that, but we know for a fact it's in his

23    presentation.

24         THE COURT:  Okay.  Mr. Zas, you think there is a

25    stipulation that covers 1305-8 and 9?

1          MR. ZAS:  Based on our search it seems that's how it's

2     admitted into evidence.  We are just not sure if Mr. Berger

3     referred to those particular exhibits with his slides.  That's

4     what we are trying to figure out.

5          MR. KAMARAJU:  He did, your Honor.  Mr. Berger

6     testified about those particular exhibits, so they have that.

7     We'll confirm there is no other witness who talked about it.

8     Then I think that should be entirely responsive.

9          THE COURT:  Okay.

10         MR. KAMARAJU:  I'm just going to get Special Agent

11    Evanchec's testimony so we can have it for the jury.

12         THE COURT:  All right.  We're waiting for Mr. Schulte

13    now.

14         (Defendant present)

15         THE COURT:  Is it all right to call the jury in now,

16    Ms. Shroff?

17         MS. SHROFF:  If the Court wants, your Honor.  If you

18    don't want to wait for the Evanchec testimony, sure.  It's up

19    to you.

20         THE COURT:  I'll call them now and tell them we'll

21    give them the information they want so they get back to

22    deliberating.

23         MS. SHROFF:  Did the Court want to tell them you'll be

24    sending in Special Agent Evanchec's testimony and that, number

25    two, they already have the testimony of Mr. Berger?

K343SCH3                    Deliberations

1              THE COURT:  Exactly.

2              MS. SHROFF:  If there is anything more we can

3    supplement later, you don't need to hold them up if you don't

4    want.

5              THE COURT:  Bring them in.

6              (Jury present.  Time noted 11:36 a.m.)

7              THE COURT:  We have your note of quarter after 11.

8    "Can we please have the testimony from Richard Evanchec."

9    We're preparing that testimony now and we'll send the

10   transcript in.

11             Question number two:  "What testimonies covered GX

12   1305-8 and GX 1305-9.  Can we please have transcripts about

13   that."

14             The only testimony about these two exhibit was in

15   Mr. Berger's testimony.  You already have the Berger testimony.

16             So, that takes care of those requests.  You can resume

17   your deliberations.  Thank you.

18             (Jury resumes deliberations.  Time noted 11:38 a.m.)

19             MS. SHROFF:  Your Honor, is it the Court's policy not

20   to allow them outside during the day, the jurors?

21             THE COURT:  No.  I haven't said anything about it.

22             MS. SHROFF:  No, I didn't know.

23             THE COURT:  If they want to take a break, they can

24   take a break.

25             MS. SHROFF:  I don't know.  Some judges don't let them

K343SCH4                          Deliberations

1    leave, I didn't know.

2              THE COURT:  If they want to leave, they can leave.

3              MS. SHROFF:  I see, okay.  It was just a question.

4              THE COURT:  They used to go out for smokes.

5              MS. SHROFF:  What?

6              THE COURT:  They used to go out for smokes.

7              MS. SHROFF:  That's why I was asking what your rule

8    was.

9              THE COURT:  If you want to smoke, that's okay with me.

10             MS. SHROFF:  Okay.

11             THE COURT:  Thank you.

12             (Recess pending verdict)

13             (At 3:04 p.m. a note was received from the jury)

14             THE COURT:  Good afternoon.  We have a note from the

15   jury.  "One of the jurors has prior information of the

16   case/defendant that just surfaced.  Can we please have someone

17   evaluate whether that information impacts her bias?  It came up

18   during the course of deliberations and seems to be of relevance

19   to the evidence/lack of evidence."  Signed at 2:55 p.m.

20             This will be our note what, David?

21             THE DEPUTY CLERK:  15.

22             THE COURT:  Do the parties have any suggestions?

23             MR. KAMARAJU:  Sorry, your Honor.  We're just talking

24   it over.  It's a bit of a thorny one.  It's a little difficult

25   to evaluate without knowing which juror.  And, yeah, what

K343SCH4                    Deliberations

1  information, so we want to think about what the best way to

2  discern that --

3          MS. SHROFF:  We can't hear you.

4          MR. KAMARAJU:  We are trying to think of the best way

5  to elicit that information without intruding on deliberations.

6          MR. ZAS:  Our suggestion would be since it's fairly

7  late in the day, this might be another time when we can each go

8  back and do a little bit of research, canvass, maybe send the

9  jury home.  Because there are I think, as Mr. Kamaraju said,

10 there's delicate issues about getting into the substance of

11 their deliberations.  So I think maybe caution advises maybe

12 breaking and letting us figure out, maybe we'll give something

13 in writing if we find any good answers to this.

14         THE COURT:  All right.  Would it be helpful to know

15 what juror?  Or would that be a penetration of the

16 deliberations?

17         MR. KAMARAJU:  I think if the plan is to -- if we

18 adopt the plan to just send them home, your Honor, it may make

19 sense to come up with something comprehensive and address the

20 problem all at once.

21         MS. SHROFF:  Mr. Kamaraju, we cannot hear you so we

22 don't know what you said.

23         MR. KAMARAJU:  I apologize.

24         THE COURT:  He said essentially keep hands off, send

25 them home, and discuss and research the matter further so we

1    can take it up at 9 o'clock tomorrow morning.

2              MS. SHROFF:  That's what we think as well, your Honor.

3              MR. KAMARAJU:  Yes, your Honor.  I think that would be

4    our proposal at this point.

5              THE COURT:  So call the jurors in and send them home.

6              MR. KAMARAJU:  Yes.  And your Honor, if you want to

7    give them the instruction you mentioned before, but call them

8    back in the morning and let us at least figure out what the

9    best approach would be.

10             MR. ZAS:  I think we agree with that proposal.

11             THE COURT:  Okay.  This note may have overtaken --

12             MS. SHROFF:  Can we just have one minute to figure out

13   if this instruction should be given?

14             MR. ZAS:  I have a suggestion.  Since they are not

15   going to deliberate anyway anymore today, the Court could just

16   postpone, make that decision in the morning.  If they are going

17   to resume in the morning, the Court can then tell them to share

18   each other's views.

19             Our fear is any kind of instruction may cause whatever

20   this information in the new note is, we don't want that to be

21   further shared with the other jurors if it hasn't already been

22   aired.  So I think the safest course is just to stop for today.

23             MR. KAMARAJU:  That makes sense to us, your Honor.

24             THE COURT:  Call the jury in.

25             (Jury present.  Time noted 3:13 p.m.)

K343SCH4                    Deliberations

1          THE COURT:  We have your note which is sent at 2:55.

2     We got it at 3:05.

3          What we're going to ask you to do, because it's 3:15

4     and you go home at 4, we are going to ask you to suspend your

5     deliberations, take an early break, and go home.  We'll resume

6     tomorrow morning at 9 a.m.

7          We ask all of you be punctual so we can start our

8     deliberations as close as possible to 9 o'clock.  You all have

9     to be together to deliberate.  So, try to be here by 9 o'clock

10    and we'll have an answer to you for this question.

11         Thank you very much and safe home.

12         (Jury excused.  Time noted 3:14 p.m.)

13         THE COURT:  Thank you.  What time should we get

14    together tomorrow?

15         MR. LAROCHE:  Whenever is convenient for the Court,

16    your Honor.  We would be available whenever you want to start.

17         THE COURT:  We'll start a little bit before 9.

18         MR. LAROCHE:  Yes, your Honor.

19         MR. ZAS:  That's fine with the defense, your Honor.

20         MS. SHROFF:  What time did you want us, judge?

21         THE COURT:  8:30, 8:45.

22         MS. SHROFF:  If the MCC can bring Mr. Schulte, that

23    would be fine.

24         THE COURT:  Marshals?

25         THE MARSHAL:  I've been getting him here about 8:30

K343SCH4                         Deliberations

1      every morning.

2                  MS. SHROFF:  Whatever works for the Court is fine.

3      8:45?

4                  THE COURT:  8:45 then.

5                  MR. LAROCHE:  That's fine, your Honor.  Your Honor, we

6      might just suggest -- we don't know where tomorrow might go.

7      But it might make sense to notify potential alternates of the

8      need for them to come, so they might be available.  I am just

9      making that suggestion in terms of the notification.

10                 MS. SHROFF:  I don't think so, your Honor.  I think we

11     should see where this goes.  I don't know if there is any

12     contact between the alternates and the sitting jury.

13                 THE COURT:  We told them not to have any contact, but

14     we haven't had any contact with them.  So we don't know.

15                 MS. SHROFF:  I mean, I don't know.  It could be

16     nothing.  Maybe they remembered reading a newspaper.  Who

17     knows, I don't know.

18                 THE COURT:  We don't know.

19                 MS. SHROFF:  Right.

20                 THE COURT:  Make that part of the issues we're going

21     to discuss tomorrow.

22                 MS. SHROFF:  Thank you, your Honor.

23                 THE COURT:  We're not going to do anything tonight,

24     right?

25                 MS. SHROFF:  No, your Honor.

K343SCH5                      Deliberations

1             THE COURT:  Hope everybody has a nice evening.

2             MS. SHROFF:  You too, your Honor.

3             (At 3:21 p.m. a note was received from the jury)

4             THE COURT:  We have another note from the jury.  We

5       marked it as Court Exhibit 16.  It came in at 3:16 p.m.

6             "(1) What happened to Schulte's computers and

7       workstation after he went to Bloomberg (after November 10)?

8       (2) When and where was Rufus's SSH key found?  Was it found in

9       the home directory or was it found forensically?"

10            This came in an envelope marked "hopefully for

11      tomorrow."

12            MR. LAROCHE:  Your Honor, the answer to the first

13      question --

14            THE COURT:  The first one is the FBI has it.

15            MR. LAROCHE:  Yes, the most that is in the record is

16      the stipulation.

17            MS. SHROFF:  Well, I mean, what happened to Schulte's

18      computer -- work computer and workstation after he went to

19      Bloomberg, what does it say after -- no.

20            THE COURT:  After November 10.

21            MS. SHROFF:  So the answer is actually technically

22      different.  After November 10, it stayed at the CIA.  And it

23      was seized by the FBI during the course of the investigation.

24      But, what happened to it after November 10 is he left it intact

25      at the CIA.  That's the answer.

1          In fact, that's a part of the cross, that was the one

2     recross question for Mr. Leedom.  He left his workstation

3     intact, which is why they were able to see that he had deleted

4     no logs from the workstation.

5          THE COURT:  That he had done what?

6          MS. SHROFF:  Deleted no logs from the workstation.

7          MR. LAROCHE:  That's not responsive, your Honor.  What

8     they are asking for is where did the computer go after

9     November 10.  The only thing in the record is the stipulation

10    that says that it was seized by the FBI in March of 2017.

11         MS. SHROFF:  That would be an inaccurate answer, and I

12    think there is evidence in the record that his computer station

13    was kept intact at the CIA.  And it says after November 10.  So

14    that means they are not just asking after he went to Bloomberg.

15    In fact, they are asking after he went to Bloomberg,

16    parentheses, after November 10, which is his last day at the

17    CIA.

18         THE COURT:  We're not going to resolve this tonight.

19    I understand the debate.

20         Number two, Rufus's SSH key.

21         MR. LAROCHE:  There is testimony from Mr. Leedom about

22    where that was found, and we can pull that testimony.  "When"

23    there's nothing in the record.

24         MS. SHROFF:  We can try and get some answers for the

25    Court in preparation for 8:45 tomorrow.

1           THE COURT:  Could you repeat that, Ms. Shroff?

2           MS. SHROFF:  Sure.  I said just to make everybody's

3    life easier, we can certainly try and work out answers for

4    court and come prepared.

5           THE COURT:  The way you did last night.

6           MS. SHROFF:  Yes.  Hopefully better than that one.

7           THE COURT:  It worked out pretty well.

8           All right.  I'll see you at 8:45 tomorrow morning.

9    Have a good night.

10           (Adjourned until March 5, 2020 at 8:45 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25