K353SCHF

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        S2 17 Cr. 548 (PAC)

5   JOSHUA ADAM SCHULTE,

6              Defendant.               Trial

7   ------------------------------x
                                       New York, N.Y.
8                                      March 5, 2020
                                       8:45 a.m.
9   Before:

10                    HON. PAUL A. CROTTY,

                                       District Judge
11                                        -and a jury-
                        APPEARANCES
12
    GEOFFREY S. BERMAN
13       United States Attorney for the
         Southern District of New York
14   BY:  MATTHEW J. LAROCHE
         SIDHARDHA KAMARAJU
15       DAVID W. DENTON JR.
         Assistant United States Attorneys
16
    SABRINA P. SHROFF
17       Attorney for Defendant
         -and-
18   DAVID E. PATTON
         Federal Defenders of New York, Inc.
19   BY:  EDWARD S. ZAS
         Assistant Federal Defender
20       -and-
    JAMES M. BRANDEN
21

22   Also Present:  Colleen Geier
                    Morgan Hurst, Paralegal Specialists
23                  Achal Fernando-Peiris, Paralegal
                    John Lee, Litigation Support
24                  Daniel Hartenstine, CISO, Department of Justice

25

K353SCHF                          Deliberations

1                (Trial resumed; jury not present)

2                THE COURT:  Good morning.  Well, I have the

3       government's suggestion.  Mr. Zas, how about you?

4                MR. ZAS:  Good morning, your Honor.

5                THE COURT:  Good morning.

6                MR. ZAS:  I think we are not all that far apart.  I

7       think we are in agreement for the goal.  We agree with the

8       first point on the government's proposal.

9                THE COURT:  Yes.

10               MR. ZAS:  On the second point, rather than sending a

11      note into the jury and asking them to give you another note

12      that specifically identifies the juror, we thought that in a

13      way it kind of puts 11 of them reporting on one.  We thought it

14      might be less confrontational to just invite first the

15      foreperson of the jury to come back, preferably I think in the

16      robing room where it may be more informal, and ask her, since

17      she is the author of the note, to identify who the juror

18      they're referring to is.  And maybe it will give us a sense of

19      what we're dealing with before we have to take further steps.

20      If it's necessary after that, then we can proceed to the

21      particular juror and ask more questions.

22               We thought that would be a good starting point.  I

23      think it would be more awkward to have any juror by herself in

24      open court sitting in the jury box alone.  I think it will look

25      too much -- they're going to feel they are being scolded or

1   they are in trouble or they've done something wrong.

2           That would be our proposal.  In the robing room we

3   recognize it might be crowded, we propose to just limit it to

4   two lawyers from each side.  Mr. Schulte would waive whatever

5   right he would have to be present for the robing room.  And

6   that would be our proposal, just as an initial starting point.

7           THE COURT:  That makes a lot of sense, Mr. Laroche.

8   What do you think?

9           MR. LAROCHE:  That's fine, your Honor.  I think we

10  would like to limit what we ask the foreperson to just

11  identifying the person, and then we can go from there with that

12  specific person.

13          THE COURT:  I would intend to ask the foreperson, one

14  of the jurors has prior information of the case/defendant that

15  just surfaced, so I'd ask her who is the juror and what prior

16  information did he or she -- I guess it's she.

17          MR. LAROCHE:  That's right, your Honor.

18          THE COURT:  What information did she have.  I'd limit

19  myself to that.

20          MS. SHROFF:  That's fine.

21          MR. ZAS:  That's fine with us.

22          MR. LAROCHE:  That's fine, your Honor.

23          THE COURT:  Okay.  We'll call the forelady in.  She's

24  here already.

25          MR. LAROCHE:  Okay, your Honor.  Understood.

1          MR. ZAS:  We do think it would be appropriate to make

2     sure everyone understands they shouldn't be deliberating,

3     discussing the case while this is going on.

4          THE COURT:  Should we call them in for that purpose?

5          MR. LAROCHE:  Yes, your Honor.

6          THE COURT:  Don't they understand they all have to be

7     present before any of them can be deliberating?  We take the

8     foreperson out.

9          MR. ZAS:  They do understand, but I think 11 in them

10    in the room, it is a natural temptation they may start talking

11    about some of the evidence, which they've been doing for two

12    days.  It might be worth specifically reminding them at this

13    point not to discuss the case while we are resolving this.

14         THE COURT:  The reason I'm waiting now is there's

15    another note that came in.  This note starts out, "To elaborate

16    further on yesterday's note."

17         Do you have copies?

18         MS. SHROFF:  No.

19         THE COURT:  I'll read this into the record while we're

20    making copies for you.

21         "To elaborate further on yesterday's note about one of

22    the jurors:  During deliberations, we were discussing the

23    reformatting of Schulte's hard drive, and Sylvia said 'You

24    don't know what type of movies he may have had on there -- I

25    read' and at that point we all tried to cut her off.  She

K353SCHF                     Deliberations

1   continued that she had come across this case a bit in the news

2   prior to the trial starting.  She tried to continue, at which

3   point I sternly asked her to stop taking several --"

4              MR. ZAS:  I think that word is "talking," your Honor.

5              THE COURT:  Talking.  What's the next word, Mr. Zas?

6              MS. SHROFF:  "Several."

7              THE COURT:  "Talking several times until she did, at

8   which point we sent a note to the Court.

9              "Additionally, during one of our breaks she mentioned

10  that attorney used to look so different -- I looked them up,

11  that's no big deal."

12             MR. LAROCHE:  Your Honor, I think she has to be

13  excused.  She had information about the case, she's also

14  looking up the attorneys about the case.  Not sure there is

15  another option here but to excuse her.

16             MR. ZAS:  Your Honor, I think we are moving for a

17  mistrial at this point.  I think that the reference to what

18  kind of movies may have been on there raises too much of a

19  danger that there is an inference that it's what we all know

20  the government claims it is, namely child pornography.  And

21  that has now tainted the other jurors.

22             And there have been already a series of irregularities

23  that are the subject of our pending motion for a mistrial.  We

24  think there's too much of a danger that whether it was actually

25  specified or not.

K353SCHF                    Deliberations

            MR. LAROCHE:  Your Honor, the movies was brought up in
cross-examination by defense.  The fact that Mr. Schulte had a
movie service that he used was brought up in trial by them.
There's no indication here from this note that it relates
specifically to movies that they are referring to at all.  So
there is no basis for a mistrial, given that they specifically
brought up the movie point during cross-examination of the
trial.  So that is certainly not a step we need to take at this
point.

            I think the initial point to take we need to excuse
this juror, and then we need to figure out next steps.

            MR. ZAS:  If I may just to put it in context.
Remember yesterday they asked for two pieces of testimony, one
was from Agent Berger, and one was from Agent Evanchec.  And
you'll remember that there was an issue as to what folders,
backup folders, what those contained, what those referred,
which were in the encrypted folders.  And for the reasons we
explained yesterday, it was a bit of an artificial way that the
witnesses were examined.  No one actually said what did that
folder contain.  It was done in a more elliptical way to say
that those folders did not contain classified information.

            So, I think it is a reasonable inference that
something in the discussions the jurors were having triggered a
discussion, you don't know what kind of movies he had, with a
juror who says here has read news articles.  Every news article

K353SCHF                    Deliberations

1   has as the second or third paragraph a discussion of the child

2   pornography allegations.

3          I think there is much too much of a risk that the jury

4   is now aware or suspicious or suspecting that these contain

5   pornography.

6          There is no other reason anyone would be focused on

7   what kind of movies.  That's never come up.  The nature of the

8   movies, whether it's science fiction or romance, is not an

9   issue.  What troubles us is -- is too much of a risk that

10  they've surmised or they know or it's been inferred.  That --

11         THE COURT:  Should we ask her, Mr. Zas, if we are

12  going to excuse her, she we ask her?

13         MR. ZAS:  Your Honor, I think under the law the Court

14  is not permitted to ask what effect the information has.  But

15  the Court can certainly examine what --

16         THE COURT:  I would ask what the information is.  You

17  referred to movies, what kind of movies are you referring to?

18         MR. ZAS:  I think that would be appropriate to do.

19         MR. LAROCHE:  But also what was actually disclosed.

20  From this note, nothing has been disclosed about the types of

21  movies.

22         MR. ZAS:  Your Honor, if you look at the context,

23  seems to be a rush to cut her off.  And it's hard to see why

24  anyone is in such a rush to cut the person off just about the

25  nature of the movies.

K353SCHF                     Deliberations

1          MR. LAROCHE:  Because she said she read about the

2     case.  They're trying to cut her off because they know that's

3     not appropriate.  It was during the discussion about

4     reformatting the hard drive.  It wasn't about a discussion

5     about that specific encrypted file where the CP was.

6          They are asking to draw an inference because they want

7     the mistrial, but there is no inference here to be drawn at

8     this point based on this record.  So we should at a minimum ask

9     her.

10         THE COURT:  We are agreed we are going to excuse Juror

11    No. 5.  Is that correct?

12         MS. SHROFF:  No.

13         MR. LAROCHE:  We are requesting that, your Honor.

14         THE COURT:  Are you requesting that, Mr. Zas?

15         MR. ZAS:  We are not in agreement with that yet.  I

16    think -- I think the appropriate step here is to bring Juror 5

17    in the robing room.  And find out what information she thinks

18    she has.

19         THE COURT:  What information she had, what information

20    she announced in the jury room.

21         MR. ZAS:  Yes.  I think that's right.  I mean, it is

22    not automatically disqualifying that a juror may have read

23    something in the newspapers.

24         THE COURT:  I understand that.

25         MR. ZAS:  The question is does it either affect her or

1     has it affected the other jurors.  So I think before we get to

2     excusing anyone we should find out what -- from her --

3              THE COURT:  "From her" being Juror No. 5?

4              MR. ZAS:  Yes.  Then we can proceed to next steps.

5              MR. LAROCHE:  She's also researching the case, your

6     Honor.  She's looking up the attorneys.  It is clearly

7     inappropriate and in contravention of your instructions.  This

8     is the same juror that we had the issue with during trial.  She

9     should be excused.

10             MR. ZAS:  Don't we have to find out what she knows

11    before she's excused, if she has to be excused?

12             THE COURT:  I think so.  Is Juror No. 5 here, David?

13             THE DEPUTY CLERK:  I think so.

14             THE COURT:  Juror No. 5 is here.  I'm going to call

15    her into the robing room, and I think we can fit in three

16    attorneys from each side.

17             MS. SHROFF:  Did you say two or three attorneys, your

18    Honor?

19             THE COURT:  Three.

20             (Pages 3070-3088 sealed)

21             (Continued on next page)

22

23

24

25

K353SCHF                        Deliberations

1          (Recess)

2          (In open court; jury not present)

3          THE COURT:  You consulted with your client?

4          MR. ZAS:  We did, your Honor.  First I just wanted to

5   just make clear that in addition to objecting to the denial of

6   the mistrial, we also object to the excusal of Juror No. 5 for

7   the record.

8          THE COURT:  Yes.

9          MR. ZAS:  Having conferred, our preference is to move

10  forward with the remaining 11 jurors rather than have the Court

11  bring a new juror on and have deliberations have to resume,

12  have to start all over again.

13          MR. LAROCHE:  Your Honor, it is entirely within your

14  discretion which approach to take.  I think our view is that it

15  makes sense to bring back another juror for a variety of

16  reasons.  One is scheduling.  As we said in the robing room,

17  there might be reasons why additional jurors might not be able

18  to continue.  We also already have another issue potentially

19  with Juror 4 that came up yesterday.  So to proceed with 11

20  would risk a situation where we no longer have enough

21  individuals to come to a verdict.

22          So at this point we think it makes sense, given you

23  did in fact excuse the alternates, to bring one of them back.

24          THE COURT:  If we brought one of the alternates back,

25  they wouldn't be back before Monday at the earliest.  It's

1   within my discretion.

2          Now, what would happen in the scenario if we could

3   still call the alternates if we lost a juror after excusing

4   Juror No. 5.  Is that right?

5          MR. LAROCHE:  If we brought back one of the

6   alternates, your Honor, if we didn't --

7          THE COURT:  We just proceed with 11, and then life

8   being what it is, something happens to one of the 11.  They

9   have an appointment, they get sick.  We could call the

10  alternates at that time.  Is that correct?  I don't know if

11  that's the correct.

12         MR. LAROCHE:  Standing today, your Honor, I am not

13  sure that that is correct.  I know that Rule 24 contemplates

14  you going with 11 or coming back to 12.  I am not sure that the

15  rule contemplates going from 10 back to 11.

16         I say that not having done the research on that

17  specific issue.

18         THE COURT:  Mr. Zas, do you have a view?

19         MR. ZAS:  I'm sorry, your Honor.  I don't know any

20  more than Mr. Laroche on that one.

21         MR. LAROCHE:  And just to clarify, your Honor.  Is it

22  the alternate is not available until Monday because they are

23  prepared to deliberate --

24         THE COURT:  We haven't contacted them.

25         MR. LAROCHE:  Understood.

K353SCHF                    Deliberations

1           THE COURT:  I just assume that they are not hanging

2    around their telephones waiting for a call from the court.

3           MR. LAROCHE:  Understood.  But they could potentially,

4    if they could begin tomorrow or this afternoon if they are

5    available.

6           THE COURT:  What are the addresses?

7           THE DEPUTY CLERK:  One lives in Rye and the other one

8    lives in West Harrison.

9           THE COURT:  They both live in Westchester.  I think

10   I'm going to exercise my prerogatives under Rule -- is it Rule

11   23?

12          MR. LAROCHE:  I believe it's 23, your Honor, yes.

13          THE COURT:  After the jury has retired to deliberate,

14   the Court may permit a jury of 11 persons to return a verdict

15   even without a stipulation by the parties if the Court finds

16   good cause to excuse a juror.

17          All right.  I'm going to find good cause, in light of

18   the record that we've made and the notes from the jury, I'm

19   going to excuse Juror No. 5.  I am going to call her into open

20   court now and excuse her.  And then call the rest of the jury

21   in and tell them to resume their deliberations.

22          MR. LAROCHE:  Yes, your Honor.  And just for the

23   record, we obviously had the proceeding in the robing room to

24   encourage juror candor, and we request that transcript be made

25   available after there is either a verdict or the jury is

K353SCHF                     Deliberations

1    dismissed.

2            THE COURT:  And not before?

3            MR. LAROCHE:  Not before, your Honor.

4            THE COURT:  All right.

5            (Juror No. 5 present)

6            THE COURT:  We're going to excuse you now from jury

7    service with the thanks of the Court.  Thank you very much for

8    your service.

9            JUROR NO. 5:  Thank you so much.

10           THE COURT:  When you take your materials, leave your

11   book or notes that you took, leave those in the jury room.

12           JUROR NO. 5:  Thank you so much.

13           THE COURT:  Thank you.

14           (Juror No. 5 dismissed)

15           (Jury present.  Time noted 10:04 a.m.)

16           THE COURT:  As you can see, we've excused Juror No. 5.

17   You should not speculate as to the reasons why we did that.

18   But we're going to proceed now with a jury of 11.  So you can

19   continue your deliberations now and set your own schedule for

20   the deliberations.

21           Try to be on time so we can start the deliberations.

22   Yesterday you asked a question about whether or not you could

23   take a break.  And the answer to that is yes, you can take a

24   break any time you want.  But, when one person leaves, you have

25   to stop your deliberation.  All 11 of you have to be present

1    before you can deliberate.  So, if you take a break, wait until

2    the person returns, and try to show up on time at 9 o'clock in

3    the morning so you can start your deliberations.  But you can

4    resume your deliberations now.  Thank you very much.

5                (Jury resumes deliberations.  Time noted 10:06 a.m.)

6                THE COURT:  Anything else to take up?

7                MR. LAROCHE:  Your Honor, there was still the note

8    from last night when they left for the evening.

9                THE COURT:  Oh.

10               MR. LAROCHE:  I believe there are two questions on

11   that note.

12               THE COURT:  Okay.  This is Court Exhibit 16.  "What

13   happened to Schulte's computers and workstation after he went

14   to Bloomberg (after November 10)?  (2) When and where was

15   Rufus's SSH key found?  Was it found in the home directory or

16   was it found forensically?"

17               Do we have answers?

18               MR. LAROCHE:  Your Honor, we would propose for number

19   one, pointing them to the stipulation 3005 which talks about

20   the seizure by the FBI of the defendant's computer from CCI.

21               THE COURT:  What about Ms. Shroff's point about the

22   time period from November 10 to the time of the seizure?

23               MR. LAROCHE:  I don't believe there is anything in the

24   record, your Honor, that we are aware of.  So that would be our

25   proposal on number one.

1        On number two we would also point them to the same

2   stipulation, which would address where the key was found.  We'd

3   also point them to a very small portion of Mr. Leedom's

4   testimony where he discusses where that -- where the key was

5   found.

6            THE COURT:  Where is Mr. Leedom's testimony?

7            MR. LAROCHE:  Passing it up, your Honor.

8            THE COURT:  You're proposing page 999, lines 3 through

9   18?

10           MR. LAROCHE:  Yes, your Honor.

11           THE COURT:  And GX 305 for both questions one and two.

12           MR. LAROCHE:  3005, yes.

13           THE COURT:  3005.

14           MR. LAROCHE:  Yes, your Honor.

15           THE COURT:  Ms. Shroff?

16           MS. SHROFF:  So, your Honor, on the first point, I

17  don't think that it would properly answer, especially because

18  it says specifically, in parenthetical, "after November 10."

19  So I think Mr. Zas has a proposal.

20           MR. ZAS:  I think our proposal is very close to what

21  the government said.  There is a stipulation we can refer them

22  to showing the FBI seized the computer, I believe it's in March

23  of 2017.  And then, I would just say what Mr. Laroche said,

24  that there's no record evidence as to what happened to the

25  computers and workstation between November 10 and March of

K353SCHF                          Deliberations

1    2017.

2                MR. LAROCHE:  That's fine, your Honor.

3                MS. SHROFF:  Your Honor, on the --

4                THE COURT:  Just let me get my notes here.

5                MS. SHROFF:  Sure.

6                THE COURT:  In November of 2016 through March of 2017.

7    Okay.  Ms. Shroff?

8                MS. SHROFF:  I'm sorry, your Honor?  I was talking to

9    Mr. Zas.

10               THE COURT:  I thought you were going on to number two.

11               MS. SHROFF:  Yes, please.  On number two, the

12   defense's proposal is that we start at line 13, because that's

13   where the question isn't about anything other than the key.  So

14   it starts at line 13, and ends at 18.

15               The question is when and where was Rufus's SSH key

16   found.  And the answer is:  "The public key for Rufus's key,

17   also on the NetApp in the defendant's home folder.

18   "Q.  Where was this found?

19   "A.   On the NetApp server in the defendant's home directory."

20               So it should start at 13 and end at 18.

21               THE COURT:  Mr. Laroche?

22               MR. LAROCHE:  We included both parts of this because

23   there are two parts to the key.  There is a private part and a

24   public part.  So starting at line 3 is talking about the

25   private key.  And then continuing through to the end talks

1     about the public key.  So that's why we included it.

2              MS. SHROFF:  There's no relevant information about a

3     private key, and the question is where his SSH key is found.

4     And the first part of the question doesn't do anything.  It

5     talks about a private and public key, and nobody knows who

6     Rufus is and nobody knows where he works.  So, I am not really

7     sure what it adds to the question.  13 to 18 to us is

8     responsive.

9              THE COURT:  All right.  I'm going to include the

10    fuller response.  3 to 18.

11             There's also the request about one of the jurors not

12    going her own way.  We agreed that we would read pages 56

13    through 57 of the jury charge.  Do that now?

14             MR. LAROCHE:  Yes, your Honor.  That's fine.

15             MR. ZAS:  That's fine with us as well.

16             THE COURT:  Bring in the jury.

17             (Jury present.  Time noted 10:15 a.m.)

18             THE COURT:  There were two questions you asked

19    yesterday at about a quarter after 3.

20             Question number one is:  "What happened to Schulte's

21    computer and workstation after he went to Bloomberg (after

22    November 10)?  And (2) When and where was Rufus's SSH key

23    found?  Was it found in the home directory or was it found

24    forensically?"

25             The answer to question number one is there is a

1    stipulation, 3005, that the FBI seized Mr. Schulte's computer

2    and workstation in March of 2017.  There's no evidence of

3    record of what was doing with the machine during the period

4    from the time Mr. Schulte left in November of 2016 until the

5    FBI seized the workstation in March of 2017.

6              And with regard to question number two about Rufus's

7    SSH key, again, I refer you to GX 3005, and Mr. Leedom's

8    testimony that he gave on page 999, lines 3 through 18.  We'll

9    send that material in to you for your consideration.

10             Now, in light of the events of yesterday and today, I

11   want to remind you what my instructions were on Monday at pages

12   56 and 57.  And that it's you should consult with one another

13   and deliberate with a view towards reaching an agreement.  Each

14   of you has to decide the case for him or herself, but you

15   should do so only after an impartial discussion and

16   consideration of all the evidence in the case with your fellow

17   jurors.  And in the course of the deliberations, do not

18   hesitate to reexamine your own views and change an opinion if

19   you become convinced it is erroneous.  But do not surrender

20   your honest conviction as to weight or effect of evidence

21   solely because of the opinion of your fellow jurors.

22             Okay.  You can resume your deliberations.  Thank you

23   very much.

24             (Jury resumes deliberations.  Time noted 10:18 a.m.)

25             THE COURT:  I'm not aware of any other notes.

K353SCH2                    Deliberations

1              MR. LAROCHE:  No, your Honor.

2              THE COURT:  Anything else?

3              MR. LAROCHE:  No, your Honor.

4              THE COURT:  See you at the next note.

5              MR. LAROCHE:  Thank you.

6              (Recess pending verdict)

7              (At 11:45 a.m. a note was received from the jury)

8              THE COURT:  We got a note from the jury at 11:39.  "In

9    Count Eight, do we need to consider all three statements

10   included in the count (following "such as")?  Or are those

11   simply examples of statements?"

12             MR. LAROCHE:  Examples, your Honor.

13             MR. ZAS:  I couldn't hear that.

14             MR. LAROCHE:  I'm sorry.  I said examples.

15             THE COURT:  They're examples.

16             MR. ZAS:  We take a different view, your Honor.  We

17   think they have to find one of those statements, and they have

18   to be unanimous as to which one they find.

19             THE COURT:  The question was, do we have to consider

20   all three, and the answer is only one.

21             MR. ZAS:  Yes, but we would ask you to instruct them

22   they need to be unanimous on which one it is.

23             MR. LAROCHE:  That's fine, your Honor.

24             THE COURT:  While we were waiting, we got another note

25   from the jury, and so we'll take care of that.  It is being

K353SCH2                        Deliberations

1    copied now.

2               This note reads, "What testimonies or exhibits should

3    we consider for Count Nine?"

4               MR. LAROCHE:  Your Honor, I don't think we can tell

5    them.  I think we have to instruct them to rely on the record.

6    I don't think we can point them to any particular testimony or

7    exhibits.

8               THE COURT:  Mr. Zas?

9               MR. ZAS:  Your Honor, I think Mr. Laroche is basically

10   right, that all we can tell them to do is to review the record

11   and the exhibits.

12              THE COURT:  Rely on the record?

13              MR. ZAS:  Yes.

14              THE COURT:  Okay.

15              (Jury present.  Time noted 12:02 p.m.)

16              THE COURT:  We have your notes.  First note reads:

17   "In Count Eight, do we need to consider all three statements

18   included in the count (following "such as") or are those simply

19   examples of statements?"

20              You only need one statement, but you have to be

21   unanimous on what the statement is.

22              The second question, "What testimonies or exhibits

23   should we consider for Count Nine?"

24              On that you just have to consider the record.

25              You can resume your deliberations now.  Thank you

K353SCH3                    Deliberations

1              (Jury resumes deliberations.  Time noted 12:04 p.m.)

2              MS. SHROFF:  Your Honor, could we ask that somebody

3    turn the heat up?  They all look like they were freezing.  One

4    of the jurors had both a scarf and a shawl.  They all seemed to

5    be very cold.  Could somebody give them some heat?

6              THE COURT:  What's the condition in the -- Rick,

7    what's the condition in the jury room?

8              COURT SECURITY OFFICER:  I'll find out, your Honor.

9              Your Honor, the jury stated they are a little cold in

10   there.  If they could have the room raised about 5 degrees or

11   so.

12             THE COURT:  Okay.

13             COURT SECURITY OFFICER:  It would be more comfortable

14   for them.

15             THE COURT:  I'll talk to the steam engineer.  Thank

16   you.

17             (Recess pending verdict)

18             (At 2:23 p.m. a note was received from the jury)

19             THE COURT:  We have two more notes from the jury,

20   notes 20 and 21.  The Court Exhibit 20 is dated 2:12, and 21 is

21   dated 2:25.  I'll read them into the record.

22             Court Exhibit 20 says:  "Can you point us to

23   testimonies about who was investigated in addition to Schulte,

24   and the time frame that happened within?"

25             And 21 reads:  "Can you give us a better explanation

K353SCH3                    Deliberations

1    of how Schulte shared movies?  Were they uploaded to a website

2    or simply housed on his service for other people within the

3    network to view?  Also we would like our schedule to be 9 a.m.

4    to 3:30 tomorrow.  Please.  Thank you."

5              MR. ZAS:  Just to clarify, I think you may have

6    misread one of the questions, which was "Were they uploaded to

7    a website or simply posted on his server for other people

8    within the network to view."  Rather than "service."

9              THE COURT:  On the server.  Thank you, Mr. Zas.

10   "Simply housed on his server for other people within a network

11   to view."

12             MR. ZAS:  I think it's hosted rather than housed.

13             THE COURT:  I stand corrected.  Simply housed.

14             MS. SHROFF:  I think it says hosted, your Honor.

15   H-O-S-T-E-D.

16             THE COURT:  Hosted.  It's hosted, H-O-S-T-E-D.

17             MR. LAROCHE:  Your Honor, I think we can pull together

18   the relevant testimony for these.  For the --

19             THE COURT:  Is there relevant testimony for Court

20   Exhibit 20?

21             MS. SHROFF:  Your Honor, which -- I'm sorry.  Which

22   one is 20?

23             THE COURT:  I'm talking to Mr. Laroche.

24             MS. SHROFF:  I just don't know which one is 20.

25             THE COURT:  20 is the one that's dated 2:12.

K353SCH3                          Deliberations

1              MS. SHROFF:  Thanks.

2              MR. LAROCHE:  2:12, your Honor, I believe the relevant

3     testimony comes from Special Agent Evanchec and Mr. Leedom.

4     And we can pull that testimony together.

5              MR. ZAS:  We would just like an opportunity to just

6     check.  There may be other pieces of testimony about who was

7     investigated that are not maybe as specific as what Mr. Laroche

8     just said.

9              MR. LAROCHE:  That's fine.

10             THE COURT:  That's fine.  If you can find them.  What

11    about 21?

12             MR. LAROCHE:  21, your Honor, I think several

13    witnesses were asked on cross-examination about the sharing of

14    the movies, and we would want to collect that testimony and see

15    if any of it is responsive here.

16             THE COURT:  Mr. Zas?

17             MR. ZAS:  I'm sorry, your Honor.  I didn't hear a word

18    that was just said.

19             MR. LAROCHE:  Sorry.  I just said, I think at least

20    one or two witnesses were cross-examined regarding the movies

21    issue, and I think we would want to take some time, collect

22    that testimony, and see if it is responsive to this.

23             MR. ZAS:  No objection.  We're going to try to do the

24    same thing.

25             MS. SHROFF:  Your Honor, I think there was also some

1    testimony, I don't know how you would characterize Michael's

2    testimony, but he testified on that issue as well.  But that

3    will be on cross.

4              MR. ZAS:  I think we're going to take a look, but

5    we're recalling, for example, that Ms. Shroff cross-examined

6    Mr. Leedom about other suspects he looked at, and she was

7    asking can you give us a name, a specific person.  And he said,

8    well, we investigated system administrators.  There are things

9    like that that may be floating throughout the record.  So it

10   may take us a little time.

11             THE COURT:  Why don't I call the jury in and tell them

12   we are going to pull the transcript references, and we'll send

13   that in as soon as it's available.

14             MR. LAROCHE:  Yes, you Honor.

15             MR. ZAS:  On their proposed schedule I think we have

16   no objection.

17             THE COURT:  I don't see how you can.

18             (Jury present.  Time noted 2:45 p.m.)

19             THE COURT:  We have your notes about who else was

20   investigated in addition to Mr. Schulte and the time frame that

21   happened within.  We're pulling together the transcript

22   references and we'll have that for you shortly.  As soon as

23   it's available, we'll send it into the jury room.

24             The second request deals with a better explanation of

25   how Mr. Schulte shared his movies, and about hosting them on

K353SCH4                          Deliberations

1    his server for other people and so forth.  We're pulling

2    together the transcripts which answer that question as well.

3    As soon as they're available, we'll send them in.

4              "We note that we'd like our schedule to be 9 a.m. to

5    3:30 p.m. tomorrow," and that's fine with us.

6              You can resume your deliberations.  Thank you.

7              (Jury resumes deliberations.  Time noted 2:46 p.m.)

8              THE COURT:  Anything to take up?

9              MR. LAROCHE:  No, your Honor.

10             THE COURT:  Okay.

11             MR. ZAS:  No, thank you, your Honor.

12             THE COURT:  All right.  Thank you.

13             MR. LAROCHE:  Thank you.

14             (Recess pending verdict)

15             (At 3:30 p.m. a note was received from the jury)

16             THE DEPUTY CLERK:  We received a note today at 3:30,

17   it's Court Exhibit 22.  The note reads:  "Can we please leave

18   for the day while waiting for transcripts and resume

19   deliberations tomorrow?"  Court Exhibit 22.

20             The jury will be dismissed and deliberations will

21   resume tomorrow at 9 a.m.

22             (Adjourned until March 6, 2020, at 9 a.m.)

23

24

25