K36nshuf

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                          S2 17 Cr. 548 (PAC)

5   JOSHUA ADAM SCHULTE,

6              Defendant.                  Trial

7   ------------------------------x
                                           New York, N.Y.
8                                          March 6, 2020
                                           9:45 a.m.
9   Before:

10                      HON. PAUL A. CROTTY,

11                                        District Judge
                                          -and a jury-
                             APPEARANCES
12
    GEOFFREY S. BERMAN
13       United States Attorney for the
         Southern District of New York
14  BY:  MATTHEW J. LAROCHE
         SIDHARDHA KAMARAJU
15       DAVID W. DENTON JR.
         Assistant United States Attorneys
16
    SABRINA P. SHROFF
17       Attorney for Defendant
         -and-
18  DAVID E. PATTON
         Federal Defenders of New York, Inc.
19  BY:  EDWARD S. ZAS
         Assistant Federal Defender
20       -and-
    JAMES M. BRANDEN
21

22  Also Present:  Colleen Geier
                   Morgan Hurst, Paralegal Specialists
23                 Achal Fernando-Peiris, Paralegal
                   John Lee, Litigation Support
24                 Daniel Hartenstine, CISO, Department of Justice

25

K36nshuf

1            (Deliberations resumed)

2            (In open court; 9:46 a.m.)

3            (Defendant not present)

4            THE COURT:  How do you want to proceed in light of

5    Mr. Schulte' absence?

6            MS. SHROFF:  We would have to wait for Mr. Schulte.

7            MR. ZAS:  I don't think we have the authority to waive

8    his appearance without talking to him.

9            THE COURT:  All right.

10           THE COURT:  Can we start gathering some of the

11   transcripts that may be relevant.

12           MR. KAMARAJU:  Yes, your Honor.  That is what we were

13   about to suggest.  If we could use this time to look at the

14   transcript and see if there is anything.

15           MS. SHROFF:  Your Honor, actually, the note itself,

16   Mr. Schulte is not charged with any illegal act of removing

17   Chris' access.  There is no charge.  He's not charged with this

18   conduct in the indictment at all.  He's charged with adding

19   admin access for himself.  He's not charged with removing any

20   access for OSB or Chris.  So I think there is no testimony on

21   this point.

22           THE COURT:  All right.

23           MS. SHROFF:  Because the question is, is there

24   testimony about the legality or illegality of Schulte removing

25   Chris and OSB access.  The answer is no.

K36nshuf

1          MR. LAROCHE:  Your Honor, I believe that conduct is

2     covered by at least one of the 1030 charges, the removing of

3     accesses.  It was also identified in the bill of particulars.

4          MR. ZAS:  Mr. Laroche, what count was that under the

5     current indictment?

6          MR. LAROCHE:  I would have to look back at the bill of

7     particulars.  This is referring to Brutal Kangaroo and conduct

8     that was taken with respect to Brutal Kangaroo, and I know that

9     was identified in the bill of particulars.  We could pull that.

10          The only other testimony I think that would relate to

11     this would be just that conduct saying that he removed other

12     people's accesses from Brutal Kangaroo.

13          MS. SHROFF:  It was not part of their theory at trial.

14     It was not part of their opening.  It was not part of their

15     summation.  There was no argument at all that this conduct was

16     encompassed in the charges presented under this indictment at

17     all.  There is literally no testimony that Mr. Schulte did

18     anything illegal vis-a-vis Chris or OSB libraries removal of

19     access.  That was not the theory of prosecution.

20          THE COURT:  I guess we have to get out the indictment

21     and the bill of particulars.

22          MS. SHROFF:  Sure.

23          But I think if the Court could just take a look at the

24     theory of conviction, there's no mention at all in a five-week

25     trial of any illegal conduct by Mr. Schulte of removing Chris'

K36nshuf

1    access or removing anybody else's access.

2                THE COURT:  OK.

3                MR. LAROCHE:  We did present evidence on that, your

4    Honor.  There was a lot of testimony about this memo that he

5    received in May.  That is that conduct.  We presented forensic

6    testimony about it and Mr. Leedom's presentation about him

7    doing that conduct.  So there certainly was evidence of that

8    conduct throughout the trial.

9                MS. SHROFF:  Of course, there's evidence of the

10   conduct just as there's evidence of them shooting rubber bands

11   at each other at the CIA.  But that does not make that conduct

12   charged as legal or illegal.

13               The question from the jury is -- and it would be nice

14   if we could just focus on the very carefully written

15   question -- is there testimony about the legality or

16   illegality.  It's not talking about a prior bad act.  It's not

17   talking about a wrongful act.  This is whether or not the

18   conduct was legal or illegal, and there was no testimony about

19   it being legal or illegal.  It wasn't charged.  It's not part

20   of the charge.  It's not any part of the jury instruction.

21               THE COURT:  I guess we need the indictment Counts one

22   through Ten and the bill of particulars to see whether it is

23   charged or not.

24               MS. SHROFF:  And the jury charge, your Honor.

25               THE COURT:  And the jury charge as well.  Yes.

K36nshuf

1              MS. SHROFF:  Thank you.

2              THE COURT:  OK.

3              MS. SHROFF:  Could we have a break because our bill of

4     particulars, I think I have only a classified version so if I

5     could go down --

6              THE COURT:  I didn't hear the last part.

7              MS. SHROFF:  I said I think I have both a classified

8     and unclassified version of the bill of particulars in the

9     SCIF.  I could just go run up and get it.

10             THE COURT:  All right.

11             Do you want to get the papers, too?

12             MR. LAROCHE:  Yes, your Honor.

13             THE COURT:  OK.

14             MR. LAROCHE:  Thank you.

15             (Recess)

16             (In open court; 10:45 a.m.)

17             (Defendant present)

18             THE COURT:  Good morning.  Please be seated.

19             Mr. Schulte is here.

20             THE COURT:  We have two notes, 23 and 24.  We've

21     already read or discussed 23:  "Is there testimony about the

22     legality or illegality of Schulte removing Chris and OSB

23     access?  Looking for targeted transcripts similar in format to

24     what we received this morning.  Thank you."

25             Note 24, received 10:35 this morning:  "Can we please

K36nshuf

1  have the transcripts of Schulte's interviews with Leonard

2  Small."

3  THE COURT:  OK.  We have had about a half an hour

4  since we were together last.

5  Do the parties have suggestions for Note No. 23,

6  removal of access?

7  MR. LAROCHE:  The government's suggestion would be

8  that the Court instruct them that it is the jury's job to

9  determine whether conduct was illegal or not based on the jury

10  charge and the indictment itself and then to say to them to the

11  extent they are asking for testimony, factual testimony

12  concerning those acts or what happened, we can provide that to

13  them.

14  THE COURT:  Mr. Zas?

15  MR. ZAS:  Your Honor, our proposal is a little

16  different.  We think the answer here is a straightforward no,

17  because there is no testimony about the legality or illegality.

18  That would have been, had there been any such testimony, it

19  would have been in proffer, because really only Congress and

20  the Court can decide what conduct is illegal or legal.  I think

21  that is a fairly straightforward one.  We are afraid that the

22  jury is confused on this question and might think that they can

23  convict Mr. Schulte of one or more crimes if they accept that

24  he did remove Chris' access.  So we would actually ask your

25  Honor to give an instruction to make sure that that confusion

K36nshuf

1    is eliminated.  Something along the lines of this:  Ladies and

2    gentlemen, while you may consider evidence of Mr. Schulte's

3    alleged conduct relating to Chris, you may not convict

4    Mr. Schulte of any of the charges solely on the basis of that

5    alleged conduct.

6           THE COURT:  OK.

7           MR. LAROCHE:  Your Honor, that's just simply

8    incorrect.  Count Seven of the indictment specifically talks

9    about Schulte altering a computer system operated by the U.S.

10    intelligence agency for the purpose of denying others access to

11    the system.  The charge itself also says with respect to damage

12    that damage means any impairment to the integrity or

13    availability of a program.  That conduct was specifically

14    identified in the charge.  It was specifically identified in

15    the bill of particulars.  So that requested charge by the

16    defense is incorrect.

17           MR. ZAS:  Your Honor, if I may correct Mr. Laroche on

18    this.  We looked back at the bill of particulars.

19           THE COURT:  Which portion of the bill of particulars?

20           MR. ZAS:  Page 4.

21           THE COURT:  Yes.

22           MR. ZAS:  It's the last sort of series of bullet

23    points.

24           THE COURT:  Yes.  "In or about May and June 2016"?

25           MR. ZAS:  Yes.  That's the very final bullet point

K36nshuf

1   which talks about this.  If you go back to the introduction to

2   the bullets --

3           THE COURT:  Yes.

4           MR. ZAS:  -- it's talking there about Counts Five and

5   Six.

6           THE COURT:  Yes.

7           MR. ZAS:  That was the original indictment.

8           THE COURT:  Right.

9           MR. ZAS:  Those counts are now Counts Four and Five.

10          THE COURT:  Right.

11          MR. ZAS:  But the government is now trying to use it

12  to support Count Seven, so the bill of particulars doesn't tie

13  this Chris information to Count Seven.

14          There is a more fundamental point on this.  That is,

15  if you recall the testimony, there's testimony from Dave, and I

16  think also from Mr. Leedom that on May 26, Dave gives

17  Mr. Schulte administrative access back to Brutal Kangaroo, and

18  then half an hour later he removers Chris' access.  So I don't

19  think from a sufficiency point of view a jury could find beyond

20  a reasonable doubt that he either did not have authority to do

21  that or certainly that he knowingly did something improper.  He

22  had permission given to him by Dave, and the government says,

23  well, that was a mistake.  That may well be it was a mistake,

24  but he is someone who had either apparent or actual authority

25  to give him permission back.  So for that additional reason, it

K36nshuf

| 1 | would be improper to allow the jury to think that if they find |
|---|---|

that Mr. Schulte removed Chris' access on that day that that is

a basis for convicting him of any of these charges.

          THE COURT:  Right.

          Here's what I propose to do.  I am going to read to

the jury:  The government in Count Seven charges Mr. Schulte

with causing transmission of a harmful computer program,

information, code, or command.  We will provide with you

relevant portions of the transcripts.

          However, it is for you the jury to determine whether

the remove of Chris and OSB access constitutes an unauthorized

transmission of a program, information, code, or command to a

protected computer.  To constitute a violation of the statute,

you must also determine that the government has proved beyond a

reasonable doubt that the defendant caused the transmission of

a program, information, code, or command with the intent to

damage or deny services to a computer or computer system; that

the defendant thereby caused damage as defined on page 47 of my

instructions, and that the defendant's actions resulted in

damage to a computer system operated by the CIA.  You may also

refer to pages 44 through 47 of my jury instructions.

          MR. LAROCHE:  Yes, your Honor.

          MR. ZAS:  Your Honor, could I just ask you please to

read that back one more time.

          THE COURT:  Yes.

K36nshuf

1          THE COURT:  I will do it more slowly, too.

2          The government in Count Seven charges Mr. Schulte with

3     causing transmission of a harmful computer program,

4     information, code, or command.  We can provide you with the

5     relevant portions of the transcripts.

6          However, it is for you the jury to determine whether

7     the removal of Chris and OSB access constitutes an unauthorized

8     transmission of the program, information, code, or command to a

9     protected computer.  To constitute a violation of the statute,

10    you must also determine that the government has proved beyond a

11    reasonable doubt that the defendant caused the transmission of

12    the program, information, code, or command with the intent to

13    damage or deny service to a computer or computer system; that

14    the defendant thereby caused damage as defined on page 47 of my

15    instructions; and that the defendant's actions resulted in

16    damage to a computer system operated by the CIA.  You may also

17    refer to pages 44 through 47 of my jury instructions.

18         MR. ZAS:  Your Honor, we understand the ruling, but we

19    would object.  We don't think the jury should be permitted to

20    convict on the basis of removal of Chris's access.  That is not

21    a permissible basis to convict.

22         THE COURT:  The objection is noted.

23         Does the government have any objection?

24         MR. LAROCHE:  No, your Honor.

25         THE COURT:  All right.  That takes care of Note No.

K36nshuf

1    23.

2              Note No. 24 is the transcripts of Mr. Schulte's

3    interview with Leonard Small.  Now, as I recall it, that was

4    played from an audiotape.

5              MR. LAROCHE:  That's correct, your Honor.

6              THE COURT:  The audiotape is what's in evidence.

7              MR. LAROCHE:  That's correct.

8              THE COURT:  The transcripts that the jury read from

9    were aids to the jury.

10             MR. LAROCHE:  That's correct.

11             THE COURT:  What do you want to do about that,

12   Ms. Shroff?

13             MS. SHROFF:  That was only on the government's direct

14   case, your Honor.  We read in transcripts on the cross.  On

15   Mr. Small's cross we read in transcripts, and we crossed him on

16   other transcripts.  That should also go back to the jury.  I

17   think that's --

18             THE COURT:  The fundamental question is do we have to

19   call them in and listen to it.

20             MS. SHROFF:  I hope not.  I mean whatever they want.

21   It doesn't matter to me.  But I just want to make sure that

22   what goes in isn't just what Mr. Laroche alluded to, which is

23   the actual recordings, because the jury note would encompass

24   the cross which we read in --

25             THE COURT:  It always includes direct and cross.

K36nshuf

1              MS. SHROFF:  OK.

2              THE COURT:  I think we followed that procedure

3    throughout.

4              MR. LAROCHE:  Your Honor, the transcripts are not in

5    evidence.

6              THE COURT:  That's the problem.  The transcripts are

7    not in evidence.

8              MS. SHROFF:  I don't understand what the government is

9    saying.  Is the government saying that they want to send in a

10   computer with a recording of their direct?

11             MR. LAROCHE:  No.  What we're saying is, to the extent

12   they want the recordings for which they had transcripts, they

13   should listen to the recordings because the recordings are in

14   evidence.  They cannot have things that are not in evidence in

15   the jury room.

16             MS. SHROFF:  Right.  But we didn't play recordings.

17   We merely read the transcript into the record.  That is what I

18   am trying to figure out.  Is Mr. Laroche saying they don't get

19   that?

20             THE COURT:  I don't think so.

21             MR. LAROCHE:  They haven't asked for it, your Honor.

22             MS. SHROFF:  They have asked for it.  Of course

23   they've asked for it.

24             THE COURT:  On your cross-examination of Mr. Small,

25   what did you do Ms. Shroff?

K36nshuf

1          MS. SHROFF:  I read the transcript in.

2          THE COURT:  OK.

3          MS. SHROFF:  Instead of playing it bit by bit, because

4     of all of the classifications issues, we read the transcript

5     in.

6          THE COURT:  Of Mr. Small?

7          MS. SHROFF:  No, of the recordings between Mr. Small

8     and Mr. Schulte.

9          THE COURT:  OK.

10         MS. SHROFF:  What we did is, instead of actually

11    playing it clip by clip, because we didn't want to give the

12    government a heads-up for redirect, we simply read in portions

13    of the transcript.

14         MR. LAROCHE:  The defense did not read in portions of

15    the transcript.  They used portions of the transcript to ask

16    Mr. Small questions, and Mr. Small either said, yes, I remember

17    him saying that or no.  So the transcripts themselves are not

18    into evidence in that way, your Honor.  The only thing that is

19    into evidence with respect to those recordings is what the

20    government entered into evidence.

21         MS. SHROFF:  That's not true.

22         MR. LAROCHE:  The defense had an opportunity.  We

23    asked them numerous times to give us portions of the recordings

24    that they wanted to have introduced.  They did not take us up

25    on it.  So the only thing in evidence right now is the

K36nshuf

1    recordings themselves.

2         MS. SHROFF:  That's not correct.  Mr. Small was given

3    portions of the actual recordings and asked questions about

4    those recordings.  The fact that we didn't want to take

5    Mr. Denton up on his offer to clip and play certain portions is

6    up to us.

7         THE COURT:  Let's take this in simple steps.  All

8    right?  Step No. 1, the tapes made by the government were in

9    evidence.  The transcripts of those conversations were

10   distributed to the jury as an aid to their consideration so

11   they could listen to the tapes and understand what was said.

12        Now, as to that component of the request, are you

13   willing to send in the transcripts, which are not in evidence,

14   or do we have to play the tapes here in the courtroom?  Because

15   the tapes that were played in the courtroom during trial are in

16   evidence.

17        MR. ZAS:  Your Honor, I think what we would propose,

18   if the government is on board, is to give the jury both the

19   recordings and the transcript as an aid for them so they don't

20   have to keep playing it back and let the jury do what it will.

21        THE COURT:  Here in the courtroom, Mr. Zas?

22        MR. ZAS:  No, your Honor.  We would just give it to

23   them in the back.

24        MR. LAROCHE:  If it is limited to the recordings that

25   were entered into evidence and those transcripts relating to

K36nshuf

1    those recordings, we don't object to that approach.

2         MS. SHROFF:  Your Honor, we do want the testimony from

3    Mr. Small on cross also to go to the jury.  I am not following

4    why I can't get the cross in or why one part of the direct

5    would go in without the cross.

6         THE COURT:  Because in the note they say they want the

7    transcripts of Schulte's interviews with Leonard Small.

8         MS. SHROFF:  OK.  I would be just like five to ten

9    minutes to see what my cross is.

10        THE COURT:  You can have the five to ten minutes.

11        MS. SHROFF:  I just didn't want their direct to go in

12   without that time, your Honor.

13        THE COURT:  Nothing is going until in we all agree on

14   it.

15        MS. SHROFF:  All right.  Thank you, your Honor.

16        MR. ZAS:  Your Honor, can I just go back to the prior

17   note for one second?

18        THE COURT:  Yes.

19        MR. ZAS:  Is your Honor going to wait for another

20   request for some of those transcripts?  I wasn't sure if you

21   were saying you wanted us to give them transcripts about the

22   removal of Chris's privileges now, or you wanted to see what

23   they come back?

24        THE COURT:  No, I want you to give them the

25   transcripts relating to Count Seven and with Mr. Schulte

K36nshuf

1    causing transmission of a harmful computer program with regard

2    to Chris and OSB access.

3              MR. ZAS:  Understood.

4              MR. LAROCHE:  Yes, your Honor.

5              THE COURT:  OK.

6              THE COURT:  So, if there's no objection, I'm going to

7    call the jury in and give them the answers on this.

8              MR. LAROCHE:  No objection.

9              MR. ZAS:  No objection, your Honor.

10             THE COURT:  Did we get another note from the jury

11   while we were debating?

12             THE DEPUTY CLERK:  No.

13             MR. ZAS:  Your Honor, you might want to reiterate your

14   instruction, even though they're getting the transcripts, you

15   might want to tell them once again that it is the recording

16   that is in evidence and the transcripts are only an aid.

17             THE COURT:  Yes.  Just to be clear, we're going to

18   play the tapes here in the courtroom?

19             MR. ZAS:  Our proposal was to let the jury review them

20   in their deliberations.

21             THE COURT:  Mr. Laroche, do you care one way or the

22   other?

23             MR. LAROCHE:  I don't, your Honor.

24             THE COURT:  OK.

25             (The jury entered the courtroom at 11:00 a.m.)

K36nshuf

1          THE COURT:  Please be seated.

2          THE COURT:  We have a couple of jury notes.

3          The note that you sent in first thing this morning, at

4   9:31, it's Court Exhibit 23:  "Is there testimony about the

5   legality or illegality of Schulte removing Chris and OSB

6   access?  Looking for targeted transcripts similar in format to

7   what we received this morning.  Thank you."

8          Let me respond to Note No. 23.

9          The government in Count Seven charges Mr. Schulte with

10  causing transmission of a harmful computer program,

11  information, code, or command.  We can provide you with the

12  relevant portions of the transcripts, and will do that shortly

13  as soon as we gather them up.

14          I want to remind you that it is your duty to determine

15  whether the removal of Chris and OSB access constitutes an

16  unauthorized transmission of a program, information, code, or

17  command to a protected computer.  To constitute a violation of

18  the statute, you must also determine that the government has

19  proven beyond a reasonable doubt that the defendant caused the

20  transmission of the program, information, code, or command with

21  the intent to damage or deny service to a computer or computer

22  system; that the defendant thereby caused damage as defined on

23  page 47 of my instructions that I gave to you on Monday of this

24  week; and that the defendant's action resulted in damage to a

25  computer system operated by the CIA.  You may also refer to

K36nshuf

1        pages 44 through 47 of my jury instructions.

2                Now, with regard to Note 24, "Can we please have the

3        transcripts of Schulte's interviews with Leonard Small?" we'll

4        provide you with the tapes, and remember you had transcripts.

5        Those transcripts are not in evidence.  They are just aids

6        because the real evidence is contained on the tapes, the actual

7        voices of Mr. Small and Mr. Schulte.

8                There may be excerpts that we submit as well,

9        transcripts of the testimony that was given on

10       cross-examination.  If that's appropriate we will send that in

11       to you as well.  You may resume your deliberations.

12               Thank you very much.

13               (The jury left the courtroom at 11:03 a.m.)

14               THE COURT:  Please be seated.

15               All right.  With regard to Note 23 and Note 24 about

16       Leonard Small, if there's any dispute about the submissions

17       that Ms. Shroff wants to make, you'll let me know.  Otherwise,

18       you can send in the tapes and the transcript of that interview

19       between Mr. Small and Mr. Schulte.

20               The same goes for the note response to Chris and OSB

21       access.  If there's any dispute about the testimony, let me

22       know, but we should be able to resolve that promptly and get

23       these materials in to the jury room quickly.

24               MR. LAROCHE:  Yes, your Honor.

25               THE COURT:  Anything else?

K36nshuf

| | |
|---|---|
| 1 | MR. LAROCHE:  No, your Honor. |
| 2 | THE COURT:  Thank you. |
| 3 | (Recess pending verdict) |
| 4 | (In open court, 3:18 p.m.) |
| 5 | THE COURT:  I have a note from the jury.  This is note |
| 6 | 25.  "We are aligned on two counts; we are at an impasse on the |
| 7 | remaining counts.  Do you have any guidance for us on how to |
| 8 | move forward with deliberations?" |
| 9 | Have you given copies to the parties? |
| 10 | THE DEPUTY CLERK:  Yes. |
| 11 | MR. LAROCHE:  Your Honor, we are already at 3:30 |
| 12 | today, so I propose just sending them home for the day and we |
| 13 | can come back on Monday and consider whether a charge is |
| 14 | appropriate when they arrive on Monday morning. |
| 15 | MS. SHROFF:  Your Honor, may I just have a minute to |
| 16 | talk to Mr. Zas some more, and Mr. Schulte? |
| 17 | THE COURT:  Yes. |
| 18 | MS. SHROFF:  Your Honor, I think it is prudent to let |
| 19 | them go home.  They had said they wanted to stop on Friday at |
| 20 | 3:30.  We're fairly close.  We can figure out what we want to |
| 21 | do and see where we are on Monday morning. |
| 22 | THE COURT:  All right. |
| 23 | MS. SHROFF:  Your Honor, did the Court have an |
| 24 | inclination? |
| 25 | THE COURT:  No. |

K36nshuf

1          MS. SHROFF:  OK.

2          THE COURT:  Under Rule 31, I am not to have any

3     inclination.

4          MS. SHROFF:  Mr. Zas made me ask the question.

5          MR. ZAS:  She throws me under the bus now.

6          THE COURT:  Yes.

7          (The jury entered the courtroom at 3:20 p.m.)

8          THE COURT:  Please be seated.  We have your note

9     indicating that you have reached an agreement on two counts and

10    you are at an impasse on the remaining counts.  What we're

11    going to ask you to do is return on Monday and we'll have

12    further instructions for you at that time.  So, if you will

13    resume your deliberations on Monday at 9 o'clock, we will have

14    instructions for you then on how you should proceed.

15         In the meantime, I hope you take care of yourself with

16    the coronavirus.  Make sure you wash your hands and stay away

17    from crowds.  We will see you on Monday morning at 9 o'clock.

18    Thank you very much.  Have a nice weekend.

19         (The jury left the courtroom at 3:22 p.m.)

20         THE COURT:  Please be seated.

21         I will await your instructions and suggestions.  I

22    would suggest we get together on Monday morning around 8:30.

23         MR. LAROCHE:  Yes, your Honor.

24         THE COURT:  OK.

25         MS. SHROFF:  Yes, your Honor.

K36nshuf

1          THE COURT:  Now, we know that Juror No. 4,

2    Ms. Thompson, has an appointment with the housing court at 2:30

3    on Monday.

4          MS. SHROFF:  OK.

5          THE COURT:  I have to see what we can't do in terms of

6    adjourning that on her behalf.  Otherwise, she's going to have

7    to break around 2 o'clock to make her court appearance.

8          Anything else to take up?

9          MR. LAROCHE:  No, your Honor.  Thank you.

10         MS. SHROFF:  Your Honor, may I just have one second.

11   The marshal is trying to tell me something.  Could I just have

12   a minute.

13         THE COURT:  Yes.

14         MS. SHROFF:  Your Honor, the marshal informs me that

15   they may have a hard time getting Mr. Schulte here by 8:30.

16         Could we compromise on 8:45?

17         THE COURT:  Why don't we say 8:30, and the marshal

18   will do the best he can in the circumstances.  I know that

19   there is an awful lot of stress over at MCC now.

20         THE MARSHAL:  Yes, your Honor.

21         THE COURT:  You do the best you can.  If it's 8:30,

22   fine.  If it's not 8:30, that's fine, too.

23         THE MARSHAL:  Understood, your Honor.

24         THE COURT:  Maybe we can get together preliminarily

25   and discuss some matters as well.

K36nshuf

1          MS. SHROFF:  That's fine, your Honor.

2          THE COURT:  Thank you.

3          (Adjourned to Monday, March 9, at 8:30 a.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25