UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA            :

                                              S2 17 Cr. 548 (PAC)

     -v-                                                :

JOSHUA ADAM SCHULTE,

              *Defendant*.              :

------------------------------------------------------------X


# MOTION OF DEFENDANT JOSHUA ADAM SCHULTE FOR
# A JUDGMENT OF ACQUITTAL

Edward S. Zas
Federal Defenders of New York, Inc.
52 Duane Street, 10th Floor
New York, NY 10007
(212) 417-8742

Sabrina P. Shroff
233 Broadway
New York, NY 10007
(646) 763-1490

*Counsel for Joshua Adam Schulte*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .............................................................................................................................. 2

    The Court should enter a judgment of acquittal on Count Six because the general federal larceny statute, 18 U.S.C. § 641, does not apply to Mr. Schulte's alleged gathering and leaking of classified information ....................................................................... 2

    A.   Rule 29 requires acquittal if no rational jury could have properly convicted the defendant of the charged crime ................................................................. 2

    B.   Acquittal is required because no rational jury could have properly convicted Mr. Schulte of violating 18 U.S.C. § 641 ........................................................ 3

        1.   Section 641's text, context, and history do not support applying it to Mr. Schulte's alleged copying and disclosure of classified information. . 3

        2.   Section 641 should be construed narrowly to avoid serious constitutional problems ......................................................................... 7

        3.   The rule of lenity requires resolving any remaining statutory ambiguity in favor of Mr. Schulte. ............................................................................ 9

CONCLUSION ......................................................................................................................... 10

## TABLE OF AUTHORITIES

*Cleveland v. United States*,
  531 U.S. 12 (2000) ................................................................................................. 9

*Hughey v. United States*,
  495 U.S. 411 (1990) ............................................................................................. 10

*Jackson v. Virginia*,
  443 U.S 307 (1979) ............................................................................................... 2

*Moskal v. United States*,
  498 U.S. 103 (1990) ............................................................................................. 10

*Pierre v. Holder*,
  738 F.3d 39 (2d Cir. 2013) ..................................................................................... 8

*Rewis v. United States*,
  401 U.S. 808 (1971) ............................................................................................... 9

*United States v. Bass*,
  404 U.S. 336 (1971) ............................................................................................... 9

*United States v. Blaszczak*,
  947 F.3d 19 (2d Cir. 2019) ..................................................................................... 7

*United States v. Girard*,
  601 F.2d 69 (2d Cir. 1979) ................................................................................. 1, 7

*United States v. Granderson*,
  511 U.S. 39 (1994) ................................................................................................. 9

*United States v. Jin Fuey Moy*,
  241 U.S. 394 (1916) ............................................................................................... 8

*United States v. McAllister*,
  2014 WL 12634403 (D. Vt. Nov. 24, 2014) .......................................................... 2

*United States v. Santos*,
  553 U.S. 507 (2008) ............................................................................................... 9

*United States v. Tobias*,
  836 F.2d 449 (9th Cir. 1988) ................................................................................. 8

*United States v. Torres*,
  604 F.3d 58 (2d Cir. 2010) .................................................................................... 2

*United States v. Truong Dinh Hung*,
  629 F.2d 908 (4th Cir. 1980) ........................................................................ *passim*

*United States v. Vicenzi*,
   1988 WL 98634 (D. Mass. Feb. 16, 1988) ............................................................. 6

*United States v. Wiltberger*,
   18 U.S. (5 Wheat.) 76 (1820) ............................................................................. 9

**Statutes and Rules**

18 U.S.C. § 641 .................................................................................................... *passim*
18 U.S.C. § 793(a) ....................................................................................................... 4
18 U.S.C. § 793(b) ....................................................................................................... 4
18 U.S.C. § 793(c) ........................................................................................................ 4
18 U.S.C. § 794 ......................................................................................................... 3, 4
18 U.S.C. § 798 ......................................................................................................... 3, 4
18 U.S.C. § 798(a) ....................................................................................................... 4
50 U.S.C. § 783 ........................................................................................................... 4
50 U.S.C. § 783(b) ....................................................................................................... 5
50 U.S.C. § 783(c) ........................................................................................................ 5
Fed. R. Crim. P. 29(a) ............................................................................................. 1, 2
Fed. R. Crim. P. 29(b) ................................................................................................. 2
Fed. R. Crim. P. 29(c)(2) ............................................................................................. 2

**Other Authorities**

2A Sutherland, *Statutory Construction* § 57.06 (4th ed. 1973)................................. 5

Harold Edgar & Benno C. Schmidt, Jr.*, The Espionage Statutes and
   Publication of Defense Information*, 73 Colum. L. Rev. 929 (1973) ................... 6, 7

Jessica Lutkenhaus, Note, *Prosecuting Leakers the Easy Way: 18 U.S.C. § 641*,
   114 Colum. L. Rev. 1167 (2014) ............................................................................ 8

Subcommittee on Secrecy and Disclosure of the Senate Select Comm. on
   Intelligence, 95th Cong., 2d Sess., National Security Secrets and the
   Administration of Justice 17–19, 22 (Comm. Print 1978) ..................................... 7

## PRELIMINARY STATEMENT

Joshua Adam Schulte respectfully renews his motion, under Fed. R. Crim. P. 29(a)–(c), for a judgment of acquittal on all counts.[1] Here, without waiving his general motion for acquittal, he specifically focuses on Count Six of the Second Superseding Indictment, which charges him with violating the general federal larceny statute, 18 U.S.C. § 641.[2] The government's theory at trial was that Mr. Schulte violated § 641 by copying certain classified information contained in the so-called "altabackup" files and transmitting it to WikiLeaks. Acquittal is required because, even viewing the evidence most favorably to the government, § 641 does not cover this alleged conduct. Though most courts interpret § 641 to encompass the conversion of certain types of government information in certain circumstances, *see, e.g.*, *United States v. Girard*, 601 F.2d 69 (2d Cir. 1979) (affirming convictions for stealing and selling DEA records containing the identities of government informants), Congress has carefully and specifically regulated the unauthorized gathering and transmission of classified national security information in other statutes, but not in § 641. It would do violence to this finely calibrated statutory scheme to interpret § 641 broadly to cover this same subject matter. It would also raise grave constitutional problems under the First Amendment. Finally, to the

---

[1] Mr. Schulte made a general motion for a judgment of acquittal on all counts at the close of the government's case-in-chief and, again, at the close of all the evidence. The Court reserved decision and, without resolving the motion, declared a mistrial on the eight unresolved counts after the jury returned a guilty verdict on two counts.

[2] Count Six of the Second Superseding Indictment was renumbered for the jury as Count Five. We refer to it here by its original designation as Count Six.

extent the statute is ambiguous, it must be construed in Mr. Schulte's favor under the rule of lenity.

## ARGUMENT

**The Court should enter a judgment of acquittal on Count Six because the general federal larceny statute, 18 U.S.C. § 641, does not apply to Mr. Schulte's alleged gathering and leaking of classified information.**

A. **Rule 29 requires acquittal if no rational jury could have properly convicted the defendant of the charged crime.**

The Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Acquittal is required if, viewing the evidence in the light most favorable to the government, no rational juror could properly find all the essential elements of the crime beyond a reasonable doubt. *E.g.*, *Jackson v. Virginia*, 443 U.S 307, 319 (1979); *United States v. Torres*, 604 F.3d 58, 67 (2d Cir. 2010).

The jury's failure to return a verdict on Count Six does not affect the Court's power to enter a judgment of acquittal. Indeed, Rule 29(b) expressly permits the Court to enter an acquittal "after [the jury] is … discharged without having returned a verdict." Fed. R. Crim. P. 29(b). Similarly, Rule 29(c) provides: "If the jury has failed to return a verdict, the court may enter a judgment of acquittal." Fed. R. Crim. P. 29(c)(2). *See also United States v. McAllister*, 2014 WL 12634403, at *4 (D. Vt. Nov. 24, 2014) (court has power to grant judgment of acquittal for count on which mistrial was declared after jury was unable to reach verdict).

## B. Acquittal is required because no rational jury could have properly convicted Mr. Schulte of violating 18 U.S.C. § 641.

Section 641 provides in relevant part:

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof … [s]hall be fined under this title or imprisoned not more than ten years, or both; but if the value of such property in the aggregate, combining amounts from all the counts for which the defendant is convicted in a single case, does not exceed the sum of $1,000, he shall be fined under this title or imprisoned not more than one year, or both.

18 U.S.C. § 641.

As discussed below, though the statute is worded broadly to cover the theft of any "record, voucher, money, or thing of value" belonging to the United States, the statute, properly construed, does not apply to Mr. Schulte's alleged unauthorized copying and disclosure to WikiLeaks of classified national security information.

### 1. Section 641's text, context, and history do not support applying it to Mr. Schulte's alleged copying and disclosure of classified information.

Unlike other federal statutes, *see, e.g.*, 18 U.S.C. §§ 793, 794, 798, the statute at issue here, § 641, does not explicitly address the unauthorized copying or disclosure to the media of classified national security information. Construing § 641 expansively to cover such conduct would be improper. As Judge Harrison Lee Winter of the Fourth Circuit concluded in *United States v. Truong Dinh Hung*, 629 F.2d 908, 936 (4th Cir. 1980): "When the statutes addressed to the disclosure of classified information are examined, it becomes apparent that § 641 cannot, consistent with the congressional framework of criminal statutes explicitly directed

3

at classified information, be applied to punish the[] defendants for the unauthorized disclosure of classified information."

Judge Winter noted, first, that "Congress has legislated frequently and with precision with regard to the unauthorized disclosure of classified information, and it has chosen to punish only certain categories of disclosures and defendants." *Id*. For example, national defense information "is protected from disclosure by the espionage statutes, particularly 18 U.S.C. §§ 793(a), (b), (c) and § 794." *Id*. "But those statutes only penalize a defendant who acts 'with intent or reason to believe that (the information will be used) to the injury of the United States or to the advantage of a foreign nation.'" *Id*. (footnote omitted). Classified information is also guarded from unauthorized disclosure by 18 U.S.C. § 798—which "does not contain the strict intent requirement of the espionage statutes." *Id*. Rather, "it punishes anyone who acts 'knowingly and willfully.'" *Id*.; *see* 18 U.S.C. § 798(a). But § 798 "makes criminal the disclosure of only one class of classified information, classified information concerning cryptography and communications." *Id*. Similarly, 50 U.S.C. § 783 specifically prohibits government employees from disclosing classified information to agents or representatives of foreign governments under certain conditions.

Accordingly, as Judge Winter recognized, "[i]f § 641 were extended to penalize the unauthorized disclosure of classified information, it would greatly alter this meticulously woven fabric of criminal sanctions." 629 F.2d at 926. "Unlike the espionage statutes, § 641 does not contain a stringent intent requirement; it

penalizes whomever 'embezzles, steals, purloins, or knowingly converts.'" *Id.* "And, unlike § 798, § 641 would not penalize the disclosure of only a limited category of classified information. Rather, § 641 would outlaw the unauthorized disclosure of any 'thing of value,' that is, any classified information." *Id.* Finally, in contrast to 50 U.S.C. § 783(b) [now re-codified as amended at 50 U.S.C. § 783(c)], the penalties of § 641 would not be placed only on government employees who communicate classified information to foreign agents. . . ." *Id.* "Instead, § 641 would punish all persons; 'whoever' disclosed classified information without authority would be subject to criminal penalties." *Id.*

"Thus, if § 641 were extended to the unauthorized disclosure of classified information, it would sweep aside many of the limitations Congress has placed upon the imposition of criminal sanctions for the disclosure of classified information." 629 F.2d at 927. "Section 798 and 50 U.S.C. § 783(b) would be effectively subsumed under the broad language of § 641." *Id.* (footnote omitted). "In addition, any person who willfully disclosed any classified information without authority would be subject to criminal penalties, contrary to the evident intent of Congress expressed in the strict intent requirement inserted into the espionage statutes." *Id.* "It is axiomatic that statutes dealing with the same topic should be read *in pari materia* in order to further the overall legislative intent expressed in a series of statutes, *see* 2A Sutherland, *Statutory Construction* § 57.06 (4th ed. 1973), and that axiom is even more forceful in the sensitive area of classified information which has been the subject of frequent congressional concern." 629 F.2d at 927. "Because § 641 would

5

disturb the structure of criminal prohibitions Congress has erected to prevent some, and only some, disclosures of classified information, the general anti-theft statute should not be stretched to penalize the unauthorized disclosure of classified information." *Id.* (footnote omitted); *see also United States v. Vicenzi*, 1988 WL 98634, *7 (D. Mass. Feb. 16, 1988) ("When Congress has specifically balanced competing interests to criminalize the disclosure or unauthorized use of a specific category of information, there are strong arguments that § 641 does *not* apply.") (emphasis in original) (citing *Truong Dinh Hung*, 629 F.2d at 922–28 (op. of Winter, J.)).

This "conclusion is reinforced by the fact that Congress has repeatedly refused to enact a statute which would make criminal the mere unauthorized disclosure of classified information." 629 F.2d at 927. "The present espionage statutes were enacted largely in their present form in 1917 at the request of President Wilson. Although Congress agreed to statutes aimed at espionage, it specifically rejected the request of the President that it enact a criminal statute to punish the publication of defense information in violation of presidential regulations." *Id.* at 927–28. "Concern for public debate of defense issues and distrust of a war-time president's powers converged to defeat the proposal to criminalize the publication of classified information." *Id.* at 928 (citing Harold Edgar & Benno C. Schmidt, Jr., *The Espionage Statutes and Publication of Defense Information*, 73 Colum. L. Rev. 929, 940–41 (1973)). "Similar attempts were unsuccessful immediately after World War II, in the late 1950's, in the mid 1960's,

and in the 1970's. *Id.* (citing Subcommittee on Secrecy and Disclosure of the Senate Select Comm. on Intelligence, 95th Cong., 2d. Sess., National Security Secrets and the Administration of Justice 17–19, 22 (Comm. Print 1978) (footnote omitted)). "Thus, in the area of national security information, Congress has consciously refrained from making it a crime merely to disclose classified information without authority." *Id.*

Nothing in Second Circuit precedent is to the contrary. Though the Circuit has held that § 641 can apply to the "conversion" of certain types of government information under certain circumstances, *see, e.g.*, *United States v. Blaszczak*, 947 F.3d 19, 26 (2d Cir. 2019) (involving misappropriation of a government agency's confidential (but unclassified) information relating to its contemplated rules); *United States v. Girard*, 601 F.2d 69 (2d Cir. 1979) (involving the theft and sale of DEA records containing the identities of government informants), the Circuit does not appear to have decided whether the statute applies to the copying and disclosure to the media of classified national security information. As noted, that conduct is specifically regulated by other federal statutes—not by § 641.

**2. Section 641 should be construed narrowly to avoid serious constitutional problems.**

Further, construing § 641 broadly to cover the unauthorized obtaining and disclosure of classified information to (or by) news outlets (including publicly available online websites like WikiLeaks.org) would raise serious constitutional problems under the First Amendment. It would mean, for example, that the New York Times violates the statute every time it acquires and publishes national

7

security information "without authority." 18 U.S.C. § 641; *see generally* Jessica Lutkenhaus, Note, *Prosecuting Leakers the Easy Way: 18 U.S.C. § 641*, 114 Colum. L. Rev. 1167, 1169 (2014) (arguing that construing "thing of value" broadly to cover "all government information" serves as a restriction on information dissemination and brings § 641 into conflict with the guarantees of free speech and the press in the First Amendment."). The statute should be interpreted narrowly to avoid such constitutional difficulties. *See, e.g.*, *United States v. Jin Fuey Moy*, 241 U.S. 394, 401 (1916) ("A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score."). As the Second Circuit has recognized, "Under the canon of constitutional avoidance, where an otherwise acceptable construction of a statute would raise serious constitutional problems, a court should construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Pierre v. Holder*, 738 F.3d 39, 48 (2d Cir. 2013) (citation and internal quotation marks omitted). Here, with respect to § 641, nothing in the statute, its context, or its history suggests that Congress intended—much less "plainly" intended—for this general theft statute to criminalize the disclosure of classified information to or by the media. *See also United States v. Tobias*, 836 F.2d 449, 451 (9th Cir. 1988) (noting that construing § 641 narrowly "has the advantage of avoiding the first amendment problems which might be caused by applying the terms of section 641 to intangible goods—like classified information.") (citing *Truong Dinh Hung*, 629 F.2d at 924–28 (op. of Winter, J.)).

8

### 3. The rule of lenity requires resolving any remaining statutory ambiguity in favor of Mr. Schulte.

Finally, the rule of lenity favors Judge Winter's reading of § 641. The government's effort to apply the statute to Mr. Schulte's allegedly unauthorized copying of classified information and disclosure to WikiLeaks is, at best, highly doubtful, and in a criminal case, "where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant." *United States v. Bass*, 404 U.S. 336, 348 (1971); *accord Cleveland v. United States*, 531 U.S. 12, 25 (2000) ("[W]e have instructed that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'") (quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971)).

The Supreme Court has long recognized that the "rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Santos*, 553 U.S. 507, 514 (2008) (plurality opinion). "The rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals[.]" *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820). The rule of lenity means that once other legitimate tools of interpretation have been exhausted, and an ambiguity remains, the Court resolves the ambiguity in the defendant's favor. *See United States v. Granderson*, 511 U.S. 39, 54 (1994) ("[W]here text, structure, and history fail to establish that the Government's position is unambiguously correct[,] we apply the rule of lenity and resolve the ambiguity in [the defendant's] favor."). Thus, where "a reasonable doubt persists about a statute's

9

intended scope" the rule of lenity compels this Court to adopt the more lenient interpretation. *Moskal v. United States*, 498 U.S. 103, 108 (1990); *see Hughey v. United States*, 495 U.S. 411, 422 (1990) ("[P]rinciples of lenity … demand resolution of ambiguities in criminal statutes in favor of the defendant[.]").

In summary, even if the evidence allowed the jury to find beyond a reasonable doubt that Mr. Schulte "stole" or "purloined" classified information by copying it and disclosing it to WikiLeaks, that conduct is specifically regulated by other criminal statutes, not by § 641. Thus, the Court should enter a judgment of acquittal on Count Six.

## CONCLUSION

The Court should enter a judgment of acquittal on all counts, including Count Six of the Second Superseding Indictment.

Respectfully submitted,

_____/s/_____
Edward S. Zas
Federal Defenders of New York, Inc.
52 Duane Street, 10th Floor
New York, NY 10007
(212) 417-8742

_____/s/_____
Sabrina P. Shroff
 233 Broadway
New York, NY 10007
(646) 763-1490

*Counsel for Joshua Adam Schulte*