# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
Executive Director
and Attorney-in-Chief

Southern District of New York
Jennifer L. Brown
Attorney-in-Charge

July 28, 2020

**By ECF**

Honorable Paul A. Crotty
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:    *United States v. Joshua Adam Schulte*, 17 Cr. 548 (PAC)

Dear Judge Crotty:

Mr. Schulte respectfully renews—and incorporates herein by reference—his motion (*see* Dkt. 328, at 1–2, 3, 8–12; Dkt. 331, at 3–5; Dkt. 331-1 (Declaration of Steven M. Bellovin, Ph.D.) for an order directing the government to provide the defense with the full "mirror" images of the CIA's ESXi and FSO1 ("NetApp") Servers.[1]

In brief summary, at trial it became clear for the first time that the government had granted its outside forensic expert, Patrick Leedom, full access to these Servers, which, by his own admission, "very much informed [his] expert testimony." *See* Trial Transcript at 1159, 1187. Accordingly, given the Servers' acknowledged materiality, and the government's decision to provide the Servers to its own expert (despite their classified nature), there is no legal basis for the government to continue keeping those Servers from the defense. *See* Dkt. 328, at 8–12; Dkt. 331 at 3–5.

The government has argued that this Court previously ruled (before trial) that the defense was not entitled to the mirror images, and that there is no reason to revisit that ruling now. *See* CIPA § 4 Ruling (Dkt. 124, at 9–13). The government is wrong. First, the § 4 ruling provisionally denied a much broader request for a "complete forensic copy" of "DevLAN" and Mr. Schulte's workstation, not the current, more focused request for the mirror images of the ESXi and FS01 Servers. *See id.* at 10. Moreover, when the Court issued its § 4 ruling, it did not know that the government was making the Servers available, without restriction, to the government's testifying expert, and that he would rely on such access to form his

---

[1] The motion sought a mistrial or, alternatively, disclosure of the mirror images. *See* Dkt. 328, at 12. The mistrial  motion is now moot, but the disclosure request is not.

United States v. Joshua Schulte                                    July 28, 2020
Hon. Paul A. Crotty                                                  Page 2 of 3

opinions. And even without knowing this crucial fact, the Court "l[eft] open the possibility of ordering production of forensic data beyond what supports the Government's own theory of the case if Schulte submits a more tailored request and provides good reason for further forensic discovery in a motion to compel." *Id.* at 12. That "good reason" now exists: if the Court had known about Leedom's unfettered access to the Servers, we respectfuly submit that the Court would have been compelled to grant Dr. Bellovin the same access. *See, e.g.*, *United States v. Shrake*, 515 F.3d 743, 747 (7th Cir. 2008) (recognizing that "[a]ccess [to mirror images] provided to private experts retained by the prosecution must be provided to private experts retained by the defense"). Accordingly, the "law of the case" doctrine poses no bar to this Court reconsidering its prior decision and granting the relief we request. *See Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (noting that the "law of the case" doctrine is "not binding" and permits a court to revisit its prior rulings for "cogent" and "compelling" reasons," such as "the availability of new evidence" or the need to "prevent manifest injustice") (citing *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)). Indeed, allowing the government to provide material forensic information to its own outside expert, but to withhold that same information from the defense's cleared expert, under the guise of protecting "national security," would be fundamentally unfair and highly prejudicial. *See* Dkt. 328, at 9–12; Dkt. 331, at 3–5; Dkt. 331-1, at 1–5 (all discussing the specific ways the unequal access has prejudicied the defense).[2]

Finally, the jury's failure to reach a verdict on all but two of the counts against Mr. Schulte underscores the importance of the disclosure we request. Contrary to the government's position, its evidence is not nearly as strong as it pretends. Thus, if the defense were allowed the same access to the CIA Servers that the government has long enjoyed, the parties would stand on a more equal footing, and the retrial could well result in an acquittal.

In sum, under Rule 16, the Constitution, and principles of fundamental fairness, the Court should direct the government to produce the mirror images to the

---

[2] The Court based its § 4 ruling principally on an ex parte submission from the government, which, of course, the defense has never seen. And at trial the Court recognized, in connection with the witness "Michael," that the government failed to comply with its disclosure obligations under *Brady v. Maryland.* Given this history, and the jury's failure to reach a verdict on most couts at the first trial, the Court should review the government's ex parte submission anew to determine whether the government has a valid basis to continue keeping the mirror images from the defense.

United States v. Joshua Schulte                                July 28, 2020
Hon. Paul A. Crotty                                            Page 3 of 3

defense as soon as possible, subject to any appropriate protective order, so that the next trial can proceed on a level playing field without unnecessary delay.

Respectfully submitted,

/s/ Edward S. Zas, Sabrina P. Shroff, Deborah A. Colson

*Counsel for Joshua A. Schulte*


CC:   All Counsel of Record
         (via ECF)