K8HsSCHc

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          17 CR 548 (PAC)
                                           Telephone Conference
5    JOSHUA SCHULTE,

6              Defendant.

7    ------------------------------x

8                                          New York, N.Y.
                                           August 17, 2020
9                                          11:00 a.m.

10

11   Before:

                    HON. PAUL A. CROTTY,
12
                                           District Judge
13

14                       APPEARANCES

15   AUDREY STRAUSS
          Acting United States Attorney for the
16        Southern District of New York
     MATTHEW J. LaROCHE
17        Assistant United States Attorney

18   FEDERAL DEFENDERS OF NEW YORK
          Attorneys for Defendant
19   BY:  SABRINA P. SHROFF
          EDWARD S. ZAS
20
     COLSON LAW PLLC
21        Attorney for Defendant
     BY:  DEBORAH A. COLSON
22
     ALSO PRESENT:
23   DANIEL HARTENSTINE, CISO

24

25

K8HsSCHc

```
1              (The Court and all parties appearing telephonically)

2              THE DEPUTY CLERK:  Judge, I'll call out the case.

3              Counsel for the government, please state your

4     appearance.

5              MR. LAROCHE:  Good morning, your Honor.  Matt Laroche

6     for the government.

7              THE COURT:  Hello, Mr. Laroche.

8              MR. LAROCHE:  Hi, Judge.

9              THE DEPUTY CLERK:  For the defense.

10             MS. SCHROFF:  Good morning, your Honor.  For

11    Mr. Schulte, Mr. Edward Zas, Deborah Colson, and Sabrina

12    Shroff.

13             THE COURT:  Good morning to all.

14             All right.  We are proceeding here by video

15    conference, mostly audio conference, under Section 15002 of the

16    CARES Act and a standing order issued by Chief Judge McMahon

17    pursuant to the CARES Act.

18             I understand that Mr. Schulte is consenting to

19    participate in today's conference by video conference.  We have

20    a waiver from Ms. Shroff, is that correct?

21             MS. SCHROFF:  Your Honor, this is Sabrina Shroff.

22             That is correct, your Honor.  We had previously

23    discussed the standing order of the Chief Judge and the waiver

24    of Mr. Schulte.  We did not have a call with him this morning,

25    but he has indicated previously that he so consents, and I have
```

K8HsSCHc

1  noted that on the form and submitted it to the chambers, to

2  your chambers.

3          THE COURT:  All right.  Thank you very much.

4          First question I have deals with the grand jury

5  proceeding.  There was a hearing before Judge Failla on July 6

6  and we gave Mr. Schulte until August 3 to inform the court

7  whether he had any outstanding issues.  I never got a report as

8  of August 3.

9          Does Mr. Schulte have any objections or concerns with

10  regard to the grand jury?

11          MS. SCHROFF:  Your Honor, I informed the government we

12  are e-mailing -- I apologize for not writing to the court.  But

13  we are preserving the same objection that counsel for Mr. Balde

14  preserved before Judge Failla, and in the interest of moving

15  and being expedient, we maintain those objections but are

16  willing to follow along with the steps that are being taken in

17  United States v. Balde, which is the case pending before Judge

18  Failla.

19          THE COURT:  So, Ms. Shroff, I don't have to do

20  anything with regard to your objections?

21          MS. SCHROFF:  You do not have to do anything, your

22  Honor.  I do note for the court that this morning we received a

23  protective order from the government by e-mail.  Mr. Laroche

24  informed us that it is the same protective order Judge Failla

25  entered in United States v. Balde.  We have not had an

K8HsSCHc

1       opportunity to review it.

2               I do know that we have been in contact with counsel

3       for Mr. Balde.  There was litigation on that protective order.

4       By we, I mean the defense, did not prevail on certain of its

5       objections.  We would just like a week to see what those

6       objections were.  If we need to invoke the intervention of this

7       court, we will write and so inform.  And if not, we will

8       proceed with the same protective order that was entered over

9       the defense's objection in United States v. Balde.

10              THE COURT:  You will let me know by Monday, August 17,

11      is that correct?

12              MS. SCHROFF:  Your Honor, today is August 17.  So I

13      think a week from today would be fine.

14              THE COURT:  Excuse me.  A week from today.

15              MS. SCHROFF:  That's OK.

16              THE COURT:  The 24th.

17              MS. SCHROFF:  Sure.

18              THE COURT:  August 24.  All right.

19              On the last conference, the parties agreed to consider

20      a trial date.  I wonder what the status of that is, Mr. Laroche

21      or Ms. Shroff?

22              MR. LAROCHE:  Your Honor, from the government's

23      perspective, we are prepared, I think as we were last -- during

24      the last conference to set a trial date.  We, again, believe

25      that we could get the pretrial litigation done efficiently, and

K8HsSCHc

the government also believes that the next retrial would be

shorter because the government plans to be more efficient in

its presentation of evidence and cut down the total number of

witnesses for which it would like to call during that trial.

       We understood that one of the issues that was raised

by Ms. Shroff during the last conference was access to the

SCIF.  Based on some conversations we have had with the CISO,

we understand that there is a proposed solution to that.  I

don't know if Mr. Hartenstine is on this conference call, but

our understanding is that Mr. Hartenstine is working to create

another location that would be easier to produce Mr. Schulte to

and would also provide for separation between Ms. Shroff and

Mr. Schulte for purposes of maintaining as much social

distancing as possible in light of COVID.

       Our understanding is that it is underway and that it

would be something that could be complete hopefully in the near

term, which would allow Mr. Schulte to be produced on a more

regular basis.

       In addition, we understand that Mr. Schulte would

still have access to the original courthouse SCIF, although,

you know, obviously there are additional hurdles for getting

him there.  We think that between those two options, we are at

a point, at least from the government's perspective, where we

think we can set a trial date.  And we understand that the

courthouse is beginning to consider a basis for trials coming

K8HsSCHc

1    this fall, and we were hoping to be considered among those

2    groups, if at all possible.

3             MR. HARTENSTINE:   Your Honor, Dan Hartenstine,

4    Security Classification Security Officer.  I'm on the call and

5    available to speak to our options for a SCIF, if your Honor so

6    desires.

7             THE COURT:  Why don't you elaborate on the options

8    that you have been working on, Mr. Hartenstine.

9             MR. HARTENSTINE:  Sure, Judge.

10             So on Friday, there was approved funding for a

11   conversion of a United States Marshal's interview room into a

12   SCIF.  So the room is bifurcated by a mesh glass screen, which

13   would seem to alleviate some of the concerns regarding contact

14   between Ms. Shroff and Mr. Schulte or anyone else on the

15   defense team.

16             So counsel would work on one side of the room and the

17   defendant would work on the other side of the room, but they

18   would be able, using the screen, to share information, computer

19   screens and the like, and continue working on the case while

20   not directly in contact with each other, as they would be in

21   the SCIF, which is a small space and makes it difficult for

22   social distancing.

23             THE COURT:  What SCIF are you referring to; that's the

24   one that Mr. Schulte has had access to before?

25             MR. HARTENSTINE:  Correct.  The one that we used

K8HsSCHc

1       through pretrial in the first trial.

2                   THE COURT:  Where is the location of this new option

3       that you're talking about, Mr. Hartenstine?

4                   MR. HARTENSTINE:  It is located on the fourth floor of

5       the Moynihan Courthouse in marshal's prisoner interview space.

6                   THE COURT:  Ms. Shroff.

7                   MS. SCHROFF:  Well, thank you, your Honor.

8                   I have been in touch with the CISO and this is the

9       first time hearing of this.  I have no idea what that space

10      looks like.  I do not think anyone from my team, which includes

11      an expert that we still don't have, would be willing to enter

12      into a marshal space into which other individuals from the MCC

13      come in and leave.

14                  Additionally, I would just note for this court that

15      the last time that this was proposed, we declined to use the

16      SCIF because it is impossible to work with a client over a mesh

17      screen.

18                  I would like to just take a moment, your Honor, to

19      update this court.  Knowing that the government is pushing a

20      trial date on a defendant who is now convicted of two counts,

21      and knowing that, as Judge Furman put it, setting a trial date

22      in these times is pure fantasy, nevertheless, the defense has

23      taken steps to try and ensure that we honor what the court

24      wants us to do and reach out to the expert that we have.

25                  Our expert is over 80 years old.  He is not at all

K8HsSCHc

1   inclined to enter into the SCIF, let alone a SCIF where other

2   individuals from MCC are brought in.  he also declined -- and

3   the court is familiar with this expert, Dr. Bellovin -- he

4   declined to go to a SCIF right now.  He is a full-fledged

5   professor at Columbia and also has declined to teach in person

6   and is teaching remotely.

7           In light of that, your Honor, we asked -- and I would

8   prefer for this to be ex parte and not open to the public --

9   but I can certainly detail for the court but tell you generally

10   that we have -- we may be in a position where we may not be

11   able to use Dr. Bellovin at all, given his medical issues and

12   his age.  We have already started to try and find new experts

13   that can step in for Dr. Bellovin.

14          We've contacted two individuals, one of which we

15   highlighted for the CISO but we have not been able to come to

16   any real agreement with any of them.  We are unsure right now

17   if they are even the right expert.  Again, ex parte, I can

18   surely detail for you the steps we have taken to try and get an

19   expert.  So far, we have not been able to secure one, let alone

20   finding somebody with Dr. Bellovin's qualifications.  We have

21   the added issue of people's schedules because at least one of

22   them has a prior commitment.  One of them has a cost that is

23   quite exorbitant, and we are still working on trying to get an

24   expert in place.

25          Additionally, your Honor, Ms. Colson is brand new to

K8HsSCHc

1    this case.  She has not even met the client.  We have made

2    several attempts to have even, like, a video meeting as a team

3    with Mr. Schulte.  That has proven to be difficult and almost

4    impossible.

5         Finally, your Honor, I note this.  It is fine for the

6    government's to keep saying they are going to call fewer

7    witnesses, but it only puts the burden on us to call the

8    witnesses they are not calling.  At the last trial, we had

9    asked for several adjournments, which were denied.  We

10   proceeded to trial.  Since that trial, Mr. Schulte has a long

11   list of things and tasks that he expects his lawyers to

12   accomplish before a retrial.

13        Mr. Schulte is entitled to that.  Mr. Schulte is

14   entitled to prepare a defense that fits the new way the

15   government is going to charge and proceed to trial on this.

16   So, your Honor, we are trying.  We are really trying, but I do

17   not think we are in any position to set a trial date now.  I

18   hardly think this should be the test case to proceed to with a

19   trial in the fall.  This is not a one-week trial and a

20   possession case, which is what I understand judges want to try

21   and see how trials go.

22        We have been following the mechanics of how --

23        THE COURT:  You have been following what?

24        MS. SCHROFF:  We are following --

25        THE COURT:  Ms. Shroff, you've been following what?

K8HsSCHc

1     MS. SCHROFF:  We have been trying to follow the

2     mechanics by which, like, judges are being age to hold hearings

3     or hold any actual live testimony, and it is very difficult.

4     People are testifying through masks.  We can only communicate

5     with the client through a phone.  Only one lawyer is able to

6     sit at a desk.  All of these issues just raise issues of due

7     process for Mr. Schulte.

8     Mr. Schulte's consulted with his team.  He himself, a

9     man who has pushed trial all along, has asked us to tell the

10    court that he is in need of the time to properly prepare, to

11    properly get an expert, and to prepare for a new trial.  It is

12    a brand new trial, and the government concedes it is not going

13    to try it exactly the same way.

14    So we have a lot of work to do.  We are trying to get

15    it done.  We are not in a position right now to set a trial

16    date.

17    MR. ZAS:  Judge, can I chime in with one additional

18    thought?

19    THE COURT:  Yes, Mr. Zas.

20    MR. ZAS:  On Mr. Hartenstine's arrangement to have a

21    new or additional SCIF, I know the Federal Defenders retained

22    an epidemiologist to try to help us with any transition back to

23    normalcy at the office.  I think it is the same expert the

24    U.S. Attorney's office is using.

25    I was wondering if it would make sense to have our

K8HsSCHc

1    epidemiologist contact Mr. Hartenstine and maybe try to -- it

2    would help us all, I think, on the defense side, probably

3    everyone, if we had someone of an expert who could say that

4    this SCIF is safe, at least certain steps were taken.

5            I'm sorry.  Say it again, Judge.

6            THE COURT:  When you say "this SCIF," Mr. Zas, are you

7    referring to the one in the marshal's office or the one that

8    you used previously or both?

9            MR. ZAS:  Well, I think only one that we would have to

10   use.  It would help us both to comfort, you know, the lawyers

11   who all have families and children, of course, but also to

12   maybe persuade an expert that it is safe.

13           I think I am speaking now of the new and improved

14   SCIF, if you will, because the other SCIF really had no

15   ventilation at all.  It was a very cramped space to put people

16   in, especially in a pandemic.

17           So my proposal would be to have the epidemiologist

18   talk to Dan or the people who are working with Dan just to get

19   his input so he can say yes, this is safe if certain steps are

20   taken.  I think that might go a long way to giving people the

21   comfort that they would like.

22           MR. HARTENSTINE:  Your Honor, this is Dan Hartenstine.

23           I am more than happy to speak with an epidemiologist,

24   including the Federal Defenders' epidemiologist, regarding the

25   situation in either SCIF.

K8HsSCHc

1          THE COURT:  How long would that take, Mr. Hartenstine?

2          MR. HARTENSTINE:  Well, Judge, I haven't engaged in

3     the process yet, but in other cases -- so I'm not sure about

4     the length of time, but I could speak with him, you know,

5     certainly speak with him this week and get the process

6     underway.

7          THE COURT:  Why don't you do this.

8          MR. HARTENSTINE:  I will.

9          THE COURT:  Can you give us a report by next Monday?

10          MR. HARTENSTINE:  That sounds good, your Honor.

11          THE COURT:  You take a look at two SCIFs now, the one

12     that was used previously during the trial and this new proposal

13     in the -- although Ms. Shroff doesn't seem to like it very

14     much -- about the new one in the marshal's office.

15          MR. HARTENSTINE:  That sounds good, your Honor.

16     I'll do so.

17          MS. SCHROFF:  Your Honor, if I may?

18          THE COURT:  Yes.

19          MS. SCHROFF:  Honestly, I don't like it.  I really

20     don't like it, and I want the court to know that it creates a

21     personal burden for me.  My husband is immunosuppressant.  The

22     fact that my son, who is a teenager, has a job has meant my

23     husband had to rent another apartment for four weeks.

24          We all are struggling with very personal issues that I

25     feel like I shouldn't have to bring up in an open court room

K8HsSCHc

1    right now.  But we are not in a position to simply go along

2    with conditions without somebody telling us that it is safe.

3           Mr. Zas is over 50 years old, and we have a lot of

4    issues going on.  We need some clarity and certainty that we

5    are actually safe.  I don't think it is fair for the

6    government --

7           THE COURT:  That's the whole purpose.  That's the

8    whole purpose of the epidemiologist making this examination, to

9    find out what is not safe.

10          MS. SCHROFF:  I understand that, your Honor.  I'm just

11   pointing out to the court that we are trying our best, and

12   honestly, on the expert front, we have reached out nationwide

13   at this point.  It is not curtailed to even the East Coast.  We

14   have literally reached out nationwide.

15          THE COURT:  Well, we're talking about having an

16   epidemiologist examine at least two locations which might be

17   possible, have the potential for serving as SCIFs.

18          That seems to be a helpful undertaking at this stage.

19   We are trying to find out if they do meet the criteria, and if

20   they don't meet the criteria, what steps can be made, if any,

21   so that they do meet the criteria.  It seems to me we have to

22   start looking at what is possible.

23          Dan, look at those.  You'll consult with the

24   epidemiologist and report to us on next Monday, correct?

25          MR. HARTENSTINE:  Correct, your Honor.

K8HsSCHc

1          Ms. Shroff or Mr. Zas, if you wouldn't mind putting me

2     in touch with the epidemiologist, then I can start working on

3     that.

4          MR. ZAS:  Not a problem, Dan.

5          MR. HARTENSTINE:  Thank you, Ed.

6          THE COURT:  OK.  Ms. Shroff, it might involve the

7     difficulties that you raise.  In light of this all, I'm going

8     to ask you if you can set a trial date.  I know you don't want

9     to set a trial date, but what would be a reasonable trial date

10    to set?

11         MS. SCHROFF:  I honestly don't know, your Honor.  I

12    really don't know.  I told Judge Torres the same thing this

13    morning, and we have been telling every judge exactly the same

14    thing.  We don't know.

15         Look, you know, I'm happy to get on an ex parte call

16    with the court and talk about the experts that we reached out.

17    I think Mr. Hartenstine can also update the court.

18         I don't know.  I seem to have no expert that I can

19    start work with.  I have a brand new lawyer on the case who is

20    unable to get up to speed in the time now.

21         I ask the court, your Honor, maybe we can follow the

22    protocols that Judge Broderick has followed in Saipov, and I

23    think Mr. Laroche is on that case and, you know, see where we

24    are in another 30 days.  I don't think it is feasible in a case

25    like this to set a trial date that won't hold.  If you want to

K8HsSCHc

set a trial date, set a trial date.  I just don't think it will
hold.  There is too many unknowns.  I don't even know what is
going to happen in the fall.

Will there be a second wave?  Nobody knows.  I can't
go to Washington and come back without a 14 days' quarantine.
Washington, DC is now on the quarantine list.  Nothing I can do
about that.  Things seem to change week to week.

Look, honestly, it's not that I don't want to set a
trial date.  I just think that Judge Furman is right, setting a
trial date now is a fantasy trial date.  If you want to set a
trial date, set a trial date.  I just don't see how it can
hold.  It seems more prudent for everybody to think about the
facts that there are actual detailed difficulties and to come
back in another 30 days and update the court.

THE COURT:  Well, what is going to happen in 30 days
that is going to clarify the situation?

MS. SCHROFF:  For one thing, in 30 days we will know
what the epidemiologist and the CISO has in mind for a SCIF.
Next thing we'll know is how many of this trial team is even
willing to go into a SCIF, even depending on what the
epidemiologist said.  Apparently we're told that nobody can be
forced to go into a SCIF or in a courtroom.

THE COURT:  Just as nobody can be forced to sit on a
jury.

Excuse me.  Nobody can be forced to sit on a jury

K8HsSCHc

1    either, and we haven't impaneled any jurors.  That is going to

2    take place, the earliest, in October.

3              MS. SCHROFF:  Right.

4              THE COURT:  Tell me why.

5              MS. SCHROFF:  There is not even an impaneled grand

6    jury.  Even the last grand jury that indicted somebody, the

7    cases before Judge Abrams, I was told that five of the grand

8    jurors zoomed in.  They didn't even have a quorum in the last

9    grand jury, let alone a full-fledged jury.  We can't even get

10   a grand jury to sit right now.

11             That is what will happen in 30 days, and I actually

12   believe that once we have some kind of clear idea what is going

13   to happen with public schools, look, Governor Cuomo won't even

14   let me go into a restaurant to eat a meal.  If it is not safe

15   to go into a restaurant for an hour-long meal, why is it safe

16   for any one of us to go live or have jurors sit for a two-week

17   trial?

18             This is not a four-day trial, right?  Lean as the

19   government wants it to be, it is not a four-day trial.  It is

20   not a Monday through Friday case, like a felon in possession

21   case.  It is not.  That is the reality.

22             THE COURT:  All right.  Mr. Laroche, what do you want

23   to say?

24             MR. LAROCHE:  So, your Honor, there was a lot there.

25   I mean, I think, listen, we obviously have no objection to the

K8HsSCHc

epidemiologist.  We think that is a prudent step.

          To be clear, the government is not in any way
suggesting that those concerns are not reasonable on defense
counsel's side at all.  We are dealing with many of the same
issues on our side.

          I will say that I think, at some point, defense needs
to identify the things that they believe needs to happen for a
trial to go forward.  Perhaps that can be done, and we think
should be done, should have been done by now or should be done
in the next 30 days.

          Once we lay those things out for your Honor, we will
be able to determine whether the trial date that we think
should be set can hold and when it can happen.

          But just raising a myriad of issues on the call, many
of which have nothing to do, I don't think, with setting the
date itself, much of which, for example, like the Saipov case,
have really no similarity to the issues in this case are
helpful.

          So, you know, we don't have an objection to the
epidemiologist consulting with Mr. Hartenstine and we don't
have an objection to updating the court.  I think our
expectation is that the defense would be prepared by that
30-day time to identify the issues that they believe need to be
resolved so that we can address them in a more systemic
fashion.  But right now, just raising a whole host of issues,

K8HsSCHc

1  including, you know, who can go to dinner or not, I don't think

2  is helpful.

3        We would ask, you know, after Mr. Hartenstine has had

4  an opportunity to talk with the epidemiologist, defense updates

5  the court as to what things that it believes needs to happen to

6  set this date.

7        MS. SCHROFF:  Your Honor, may I address the court

8  briefly?

9        THE COURT:  Briefly.

10        MS. SCHROFF:  Thank you, your Honor.

11        I brought up who can go to dinner because it is the

12  closest analogy to a closed room, which is a SCIF.  I brought

13  up Saipov because it is the closest case, for Mr. Laroche is

14  also the prosecutor, and I believe it involves travel.  It

15  may --

16        THE COURT:  Nobody is questioning --

17        Ms. Shroff, nobody is questioning your arguments.  I

18  mean, I understand.

19        MS. SCHROFF:  Thank you, your Honor.

20        THE COURT:  I understand your position.  You made it

21  very clear.

22        What the government says is they think that they want

23  a trial date set as soon as possible after normal court

24  operations resume.  It is not entirely clear when normal court

25  operations are going to resume for all the reasons that you

1     cite and many more that haven't been cited.

2              But the hope is that criminal jury trials will start

3     again in October and if we get a jury assembled and to get

4     people willing to serve on those juries.  Because no judge I'm

5     aware of is going to tell somebody to sit in the courthouse

6     while this pandemic is going on, if any person has a reasonable

7     objection, who is sitting on a jury.

8              On the other hand, Ms. Shroff, I think you have to be

9     more specific than the general objections you have been

10    raising.  I'm going to give you 30 days until mid September to

11    list all the things that you think have to be accomplished

12    before a trial can go forward.

13             MS. SCHROFF:  Sure, your Honor.

14             Your Honor, may we brief some of those objections

15    ex parte?  Because I do not want to have to share my expert

16    issues with the government at this point.

17             Just so the court is aware, just because Mr. Laroche

18    isn't aware of our conversations with Mr. Hartenstine about the

19    potential experts does not mean that we haven't worked on them

20    since the last appearance we had earlier this -- two months

21    ago.

22             We have apprised Mr. Hartenstine of the issues, we

23    have apprised Mr. Hartenstine of names and, again, if the court

24    wants to have an ex parte appearance with us, we are happy to

25    update the court that way, or in writing, in 30 days.

K8HsSCHc

1              MR. HARTENSTINE:  Your Honor, Dan Hartenstine.

2              If I might quickly.  Ms. Shroff is absolutely correct.

3     We have been in touch regularly throughout the pandemic since

4     the last trial.  I'm assisting her with her expert issues,

5     which do exist, and, you know, I certainly have concerns about

6     Ms. Shroff, anyone's level of comfort, you know.

7              But just to clarify, my role would really be to

8     explain the layout of the room, get any information to the

9     epidemiologist necessary, and then let him make his assessment

10    in a neutral capacity and go from there.

11             So I wouldn't be making a determination about, you

12    know, the potential safety of the room, I would just give him

13    the information that he needs.

14             THE COURT:  All right.  David, can you give me a date

15    in mid September, 30 days from today.

16             THE DEPUTY CLERK:  Yes.  Just a second.

17             (Pause)

18             THE COURT:  David Gonzalez.

19             THE DEPUTY CLERK:  Judge, can you hear me?  This is

20    David.

21             THE COURT:  Yes.  I want a date 30 days from today in

22    mid September as to when we'll get a report from Ms. Shroff.

23             THE DEPUTY CLERK:  September 16.

24             THE COURT:  All right.  That list ought to include

25    motions as well that both sides want to make, that Ms. Shroff

K8HsSCHc

1  contemplates making.

2          Ms. Shroff, do you contemplate making motions?

3          Mr. Laroche, I cut you off.

4          MR. LAROCHE:  I'm sorry, your Honor.  I just wanted

5  to -- on that front, I think, as I believe we've said before, I

6  don't think we need a terribly long runway to this trial.  And

7  I know during the last conference that the court had, I think,

8  slated potentially January.  I do think, even on this schedule,

9  assuming we can reach an agreement or come to some sort of

10 consensus on when things could move forward, that we still

11 could -- assuming things, you know, there is a lot of variables

12 we get that, assuming things go well, we could still

13 potentially have a January trial.

14          On that front, related to the motions you just raised

15 we'll be prepared to identify, I think, what we expect in terms

16 of pretrial motion practice, and we would not expect it to be

17 close to as long and lengthy as the first trial.

18          THE COURT:  Ms. Shroff, do you have motions, too?

19          I would appreciate your listing them in the listing

20 you're going to make on the 16th of September.

21          MS. SCHROFF:  Your Honor, we make our motions after we

22 see what the governments motions are.  We can list ours, but we

23 would like to be able to reciprocate and see what they are

24 talking about.  If they are going to try a different case, we

25 are going to have to defend it differently.  I would like to

K8HsSCHc

1     see what motions they make.

2           Your Honor, again, as the court has said, there are

3     a lot of things in flux.  But I don't see a January trial date

4     here, and my letter will explain why.

5           THE COURT:  Well, I'm going to have to see the joint

6     submissions on your concerns to make it ex parte.  I want

7     submissions to be made jointly on the 16th of September.  If

8     there is really something you want to add after that, you can

9     reply to those papers.  I'll give you two or three days to

10    reply.  Make the submissions simultaneously.

11          In one of your letters, Ms. Shroff, you suggest that

12    Mr. Schulte hasn't been getting his mail?

13          MS. SCHROFF:  He has not been getting his mail at all.

14    He does not have any of the papers that we sent him since the

15    last trial.  Mr. Lee from the Federal Defenders' office has

16    mailed them to him several times.  Our communications with him

17    is limited in terms of the technology and, you know, having

18    difficulty looking at or talking through issues.

19          I also want to note, your Honor, that it doesn't

20    matter.  We'll address them and we'll keep moving as fast as we

21    can, and we'll update the court and then the court can do what

22    it sees fit.  I mean, your Honor, listen, if our schedule

23    doesn't work, of course the court can assign Mr. Schulte new

24    counsel.  I have no objection to that either.

25          THE COURT:  On what basis would I assign new counsel,

K8HsSCHc

1    Ms. Shroff?

2              MS. SCHROFF:  Your Honor, look, if for any personal

3    reasons that I cannot get a new trial going because of other

4    issues that may be personal to me, if the government insists

5    this case should be tried in January and if you're inclined to

6    give a January trial date, I don't think I will be able to try

7    a case in January given my personal issues.

8              THE COURT:  OK.  We'll cross that bridge when we come

9    to it.

10             MS. SCHROFF:  I frankly don't think it is feasible --

11   look, why don't we do this.  We'll try our best.  We will let

12   the court know where we are with the expert.

13             We will keep moving forward and, you know, we'll do

14   the best we can, and then the court can decide.  But we're

15   certainly willing to do all we can, your Honor, to comply with

16   what the court wants.

17             THE COURT:  Good.  So there won't be a trial in

18   October, November December.  I don't think we can do it by that

19   time.  You know, there are procedures -- you may be aware of

20   this, both the government and Ms. Shroff, Mr. Zas -- about how

21   cases are going to be, because there is limited courtroom space

22   for jury trials.

23             It is not like all the jurors will be impaneled in all

24   the courtrooms.  There is limited space in courtrooms too.  So

25   there is a number of -- I think there is more trials, more

K8HsSCHc

1    people who want trials than the trial space can accommodate at

2    this particular time.

3          The slots for October, November December are filling

4    up.  I'm thinking of a trial in January or February, which is

5    five months from now, which out to be plenty of time for all

6    parties to get ready for the trial.  But I'll make a further

7    determination when I see the parties' papers on September 16.

8          is there anything else that anybody wants to take up?

9          Ms. Shroff?  Yes, Ms. Shroff?

10         MS. SCHROFF:  No, your Honor.  Thank you, actually.  I

11   do not have anything further.  We will be happy to submit our

12   papers on the 16th .

13         THE COURT:  Mr. Laroche?

14         MR. LAROCHE:  Your Honor, the government would just

15   move to exclude time until September 16 under the Speedy Trial

16   Act for all of the reasons we have been discussing, in light of

17   COVID and pretrial preparation that will be necessary.

18         THE COURT:  Ms. Shroff?

19         MS. SCHROFF:  Your Honor, we have no objection.

20   Especially in light of fact that we have a motion pending

21   before the court, time is automatically excluded anyway.  So

22   I don't think the court needs an additional basis, but if you

23   need one, we certainly consent to it, your Honor.

24         I remind the court that we briefed our issues, we have

25   a reply due on September 15th and motion practice automatically

K8HsSCHc

1    excludes time under the Speedy Trial Act.

2              THE COURT:  All right.  What is due on September 15?

3    The 16th, isn't it?

4              David, it is the 16th, isn't it?

5              THE DEPUTY CLERK:  Yes, the 16th.  Monday, the 16th.

6              THE COURT:  Of September.

7              THE DEPUTY CLERK:  I believe she's referring to --

8              MS. SCHROFF:  Your Honor, I'm sorry.

9              THE COURT:  When do you want to have the ex parte

10   phone conference?

11             MS. SCHROFF:  Your Honor, could we do it after

12   September 4?

13             Can we pick a date with the court after this call and

14   set it up?

15             THE COURT:  That's three weeks from today, isn't it?

16   I was thinking something either this week or next week.  I

17   prefer this week.

18             MS. SCHROFF:  If the court wants it.

19             THE COURT:  David, give me a date on Thursday or

20   Friday.

21             THE DEPUTY CLERK:  Thursday, September 20, at

22   2:00 p.m.

23             THE COURT:  OK.

24             MS. SCHROFF:  Ed, are you available?

25             MR. ZAS:  Hang on.

K8HsSCHc

| | |
|---|---|
| 1 | MS. SCHROFF:  Your Honor, do you think you could give |
| 2 | us next week Monday? |
| 3 | I know Mr. Zas has three briefs due to the Circuit |
| 4 | this week.  Could we have Monday? |
| 5 | THE COURT:  Monday, the 24th? |
| 6 | MS. SCHROFF:  Yes, please. |
| 7 | THE COURT:  What does it look like, David? |
| 8 | THE DEPUTY CLERK:  Monday, the 24th, at 2:00 p.m. |
| 9 | THE COURT:  All right. |
| 10 | MS. SCHROFF:  Is that good? |
| 11 | MR. ZAS:  Yes.  Thank you. |
| 12 | MS. SCHROFF:  Thank you, your Honor.  I'm hoping |
| 13 | Ms. Colson is still available.  We don't see each other, but |
| 14 | I hope it is still good for all of us. |
| 15 | THE COURT:  Well, I hope Ms. Colson can make it, but |
| 16 | we are going to have the conference anyway. |
| 17 | MS. SCHROFF:  Yes, your Honor. |
| 18 | THE COURT:  If there is nothing else, that concludes |
| 19 | this conference.  The time between now and September 16 will be |
| 20 | excluded in the interest of justice to do so. |
| 21 | That concludes the conference.  Thank you. |
| 22 | (Adjourned) |
| 23 | |
| 24 | |
| 25 | |