

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 21, 2020

**By ECF**

The Honorable Paul A. Crotty
United States District Judge
Southern District of New York
500 Pearl Street, Courtroom 14C
New York, New York 10007

      Re:    *United States v. Joshua Adam Schulte*, S2 17 Cr. 548 (PAC)

Dear Judge Crotty:

      We write in response to the defendant's letters of September 15, 2020, in which the defendant made additional arguments concerning his request for wholesale access to CIA servers and submitted an *ex parte* declaration by Dr. Steven M. Bellovin (the "Server Letter"), and of September 16, 2020, in which the defendant identified potential pretrial filings and objected to setting a trial date (the "Scheduling Letter").

## THE SERVER LETTER

      The Court should order the defendant to file Dr. Bellovin's declaration (the "Second Bellovin Declaration") on the public docket forthwith. The defendant asserts that he is permitted to submit the Second Bellovin Declaration "ex parte to avoid revealing to the government the specific tests he wishes to conduct and the defense's proposed strategy for the retrial." (Server Letter at 2 n.1). That was improper for a number of reasons.

      *First*, the defendant's premise that he is entitled to hide his "defense theory" from the Government is contradicted by black letter law. "Nothing in the Fifth Amendment privilege entitles a defendant as a matter of constitutional right to await the end of the State's case before announcing the nature of his defense, any more than it entitles him to await the jury's verdict on the State's case-in-chief before deciding whether or not to take the stand himself." *Williams v. Florida*, 399 U.S. 78, 85 (1970). In many instances, the defendant is required to provide pre-trial notice of trial strategy, including when the defendant seeks substantive relief, *see, e.g.*, *United States v. Carton*, No. 17 CR 680 (CM), 2018 WL 4360781, at *1–2 (S.D.N.Y. Sept. 6, 2018); or of an asserted defense, including when the defendant intends to argue an alibi, Fed. R. Crim. P. 12.1(a)(2) (requiring defense to provide Government with pre-trial notice of alibi defense, including description of where the defendant claims to be and which witnesses the defendant intends to rely on); insanity, Fed. R. Crim. P. 12.2(a) (requiring defense to give pretrial notice of insanity defense); public authority, Fed. R. Crim. P. 12.3(a) (requiring defense to give pretrial

The Honorable Paul A. Crotty, U.S.D.J.
September 21, 2020
Page 2

notice of a public authority defense, including the name of the agency, the official, and time-period involved and witnesses upon whom the defendant intends to rely); and advice of counsel, *see United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 828 F. Supp. 2d 698, 711 (S.D.N.Y. 2011) (directing defendants to provide notice to the Government of an advice-of-counsel defense in sufficient time to take any disputes to the magistrate judge prior to the final pretrial conference). Indeed, the Court rejected a similar request approximately a year ago, when the defense sought to withhold its notice pursuant to Section 5 of the Classified Information Procedures Act ("CIPA") from the prosecution team based on a purported need to prevent disclosure of the defense theory. (Dkt. 142).

*Second*, the defendant's claim that he is entitled to hide what "tests" Dr. Bellovin wishes to conduct is also squarely at odds with controlling case law because the defendant does not have a "constitutional right to conduct his own search of the [Government's] files to argue relevance." *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987). The Court has repeatedly rejected the defense's request for unfettered access to CIA servers because it would "gut the entire rationale behind CIPA," and instead directed the parties to work together to address any specific defense requests for forensic material. (Dkt. 124, at 12). Submitting the Second Bellovin Declaration *ex parte* runs counter to the Court's direction, and ignores the fact that the Government has repeatedly produced additional forensic material in response to more tailored defense requests.

Moreover, as the Court is aware, this is not the first declaration that Dr. Bellovin has submitted in this case. Rather, during trial, the defense filed publicly an affidavit from Dr. Bellovin (the "First Bellovin Declaration") on the same subject as the *ex parte* declaration and that contained material misstatements. (*See* Dkt. 331 (attaching the First Bellovin Declaration purportedly showing why the Government's "disclosures were deficient")). In response, the Government explained that it had produced particular information Dr. Bellovin claimed had been withheld, and that Dr. Bellovin himself went to the CIA to review it. (Dkt. 332). The Government supported this submission with copies of the classified discovery letters specifically detailing what had been produced. Permitting the defendant to submit the Second Bellovin Declaration *ex parte* strips the Government of the opportunity to address what are likely similarly meritless claims and would prevent the Court from obtaining necessary information and context for the defendant's incredibly broad discovery request.[1]

*Third*, in light of the first two reasons, there is no basis to set aside the presumption against *ex parte* filings. *See Schiller v. City of New York*, Nos. 04 Civ. 7922, 04 Civ. 7921 (RJS), 2008 WL 1777848, at *5 (S.D.N.Y. Apr. 14, 2008) ("a court's reliance on *ex parte*, *in camera* submissions is strongly disfavored," and thus, *ex parte* applications are the exception, not the rule). While there are, of course, exceptions to the main rule against *ex parte* filings, they are "both few and tightly contained" and generally relate to classified information, privileged documents, or

---

[1] If the Court were to reconsider its decision to grant the Government a protective order pursuant to Section 4 of CIPA on the basis of an *ex parte* declaration, the Government also would be unable to determine whether it should seek reconsideration of that order or an interlocutory appeal. *See* 18 U.S.C. App. III § 7.

The Honorable Paul A. Crotty, U.S.D.J.
September 21, 2020
Page 3

documents subject to a statutory scheme, such as the Freedom of Information Act. *See, e.g.*, *Schiller*, 2008 WL 1777848, at *5-7. Thus, the Government has in the past submitted a limited number of *ex parte* filings in this case on the basis of clear statutory authority under CIPA. *See* 18 U.S.C. App. III § 4 (authorizing *ex parte* filings relating to classified information).

The defendant's application, by contrast, is a motion to compel additional discovery, *i.e.*, the entirety of the CIA servers. In such motions, defendants are routinely required to explain why the sought after material qualifies for disclosure under the Federal Rule of Criminal Procedure 16 or the Government's constitutional obligations, including, for example, whether the information is "material to defense" or exculpatory. That necessarily requires the defendant to explain some aspect of his defense. Under these circumstances, "the reason given for filing *ex parte*—disclosure of some supposedly secret defense trial strategy—does not hold water." *Carton*, 2018 WL 4360781, at *1–2 (requiring defendant to file publicly reply brief improperly submitted *ex parte*, rejecting concerns about trial strategy where "representation[s about the defense] has been made repeatedly by counsel in open court" and concluding that "unsealing a brief that contains page after page of discussion about why subpoenaed documents will help prove [the defense theory]— which is what the brief says—does not reveal any heretofore secret trial strategy, as alleged by defense counsel.").

*Finally*, it is inappropriate for the defendant to raise new considerations in the Second Bellovin Declaration at this late stage, depriving the Government of the ability to respond. "Courts 'generally do not consider issues raised in a reply brief for the first time because . . . [the opposing side] may not have an adequate opportunity to respond to it.'" *Canini v. United States*, No. 04 Cr. 283 (PAC), 2012 WL 832443, at *5 (S.D.N.Y. Mar. 12, 2012) (quoting *United States v. Pepin*, 514 F.3d 193, 203 n. 13 (2d Cir. 2008) (alterations in *Canini*)). This is particularly true here given that the defendant and Dr. Bellovin have been fully aware of the extent of Mr. Leedom's access to CIA's computer systems since at least April 2019, when Mr. Leedom spent hours meeting with Dr. Bellovin about the forensics in this case. Without explanation, the defendant has waited more than 15 months since that meeting and more than 6 months since trial to file a declaration identifying wholly new bases to challenge the Government's discovery productions and expert testimony. This is improper and should be rejected by the Court.

Accordingly, the Government respectfully requests that the Court order the defendant to publicly file the Second Bellovin Declaration on the docket, and that the Court grant the Government two weeks from the date the Second Bellovin Declaration is docketed to submit a surreply addressing it.

## **THE SCHEDULING LETTER**

The defendant has not identified any motions or additional pretrial filings that would prevent the Court from setting a trial date of January 25, 2021, as proposed by the Government. Indeed, at least some of the defendant's proposed motions may be resolved without judicial intervention. For example, the defendant indicates that he intends to move "for the production of all Stash files released by WikiLeaks," but that information was produced to the defendant in December 2018.

The Honorable Paul A. Crotty, U.S.D.J.
September 21, 2020
Page 4

      The Government respectfully requests that the Court direct the defendant to comply with its August 17, 2020 order issued at the last conference.  The Court noted during that conference that the defendant had made a number of "general objections" to setting a trial date.  As a result, the Court directed the defendant to file a letter by September 16, 2020 that listed with specificity "all the things that you think have to be accomplished before a trial can go forward." (Tr. at 19).  Instead, the defendant wrote one paragraph referencing concerns raised at an August 14, 2020 *ex parte* conference.  Thus, the defendant should be required to comply with the Court's order to articulate the basis or bases he believes justify indefinitely delaying the trial date.  Doing so will allow the Government to work with the defense to address those issues or litigate them before the Court.

      Respectfully submitted,

      AUDREY STRAUSS
      Acting United States Attorney

By: _____/s/_____
      David W. Denton, Jr.
      Sidhardha Kamaraju
      Matthew Laroche
      Assistant United States Attorneys
      Tel.: 212-637-2744 / 6523 / 2420

Cc: Defense Counsel (via ECF)