1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                          17 CR 548 (PAC)

5   JOSHUA A. SCHULTE,

6              Defendant.                  Telephone Conference

7   ------------------------------x

8                                          New York, N.Y.
                                           November 4, 2020
9                                          9:00 a.m.

10  Before:

11
                        HON. PAUL A. CROTTY,
12
                                           District Judge
13
                              APPEARANCES
14

15  AUDREY STRAUSS
         Acting United States Attorney for the
16       Southern District of New York
    MATTHEW LAROCHE
17  SIDHARDHA KAMARAJU
    DAVID DENTON
18       Assistant United States Attorneys

19  FEDERAL DEFENDERS OF NEW YORK, INC.
         Attorneys for Defendant
20  BY:  SABRINA P. SHROFF
         EDWARD S. ZAS
21       -and-
    DEBORAH A. COLSON

22

23

24

25

                  SOUTHERN DISTRICT REPORTERS, P.C.

1                    (Case called)

2                    MR. LAROCHE:  Good morning, your Honor, Matt Laroche

3    for the government, and I believe David Denton and Sid Kamaraju

4    are also on the line.

5                    THE COURT:  Good morning.

6                    MS. COLSON:  Good morning, your Honor, this is Debra

7    Colson for Mr. Schulte, and Ms. Shroff and Mr. Zas are also on

8    the line.

9                    THE COURT:  Good morning.

10                   MS. SHROFF:  Good morning, your Honor.

11                   THE COURT:  Mr. Schulte, can you hear us?

12                   THE DEFENDANT:  Yes.

13                   THE COURT:  Mr. Laroche, you want to bring me up to

14   date.

15                   MR. LAROCHE:  Yes, your Honor.

16                   I think at this point the government is still

17   requesting a schedule and a trial date.

18                   Just a little background on how we had gotten here.

19   In June, we filed a superseding indictment.  Shortly after

20   that, we had a conference at which we requested a schedule and

21   trial date.  Ms. Colson was also appointed that day.  Defense

22   raised a number of issues at that conference as to why a

23   schedule could not be set, and the Court gave them,

24   essentially, another 30 days to work through some of those

25   issues.

1           We appeared again in August for a conference where we,

2   again, requested a trial and schedule and discussed some

3   alternative SCIF arrangements for defense.  The defense, again,

4   raised issues about setting a trial date, and the Court gave

5   them 30 days to put in a letter about trial scheduling,

6   including potential motions that would be filed prior to that

7   trial.  The parties did that in September.  We have laid out

8   the motions that we think would be filed and the remaining

9   issues that would have to be resolved before trial.

10          I think from our perspective we are at a point now

11  where a schedule would be appropriate and a trial date would be

12  appropriate.

13          And there are two additional points.  One on the

14  SCIFs.  Our understanding is that the old SCIF is available and

15  that Mr. Schulte, if necessary, could be produced to that SCIF.

16  We also understand that the new SCIF arrangement, at least as

17  of a few weeks ago, was ready -- and that if Mr. Hartenstine is

18  on the line, he might have more information -- but that the

19  individual who needs to review that location was going to set

20  up a time to do so.  So it appears that the SCIF arrangement is

21  resolved or will be resolved shortly.

22          We would also note that after the September

23  conference, there have been several successful criminal trials

24  in this district, at least two criminal trials that we are

25  aware of which have gone fine.  So we think based on where we

1   are now, it's appropriate to set a schedule, to set a motion

2   schedule and to set a trial date.  We are still requesting a

3   trial date sometime in early 2021.

4           THE COURT:  Who wants to respond for Ms. Schulte.

5   Ms. Shroff, Ms. Colson, Mr. Zas.

6           MS. COLSON:  Your Honor, I will respond.

7           Your Honor, I first say that we have no wish to

8   unnecessarily delay this trial.  Our client is detained and we

9   have a very strong interest in moving forward.  We also

10  understand that the lack of a firm trial date makes it hard for

11  everyone, including the government, including the Court, to

12  arrange their schedules and to set aside sufficient time to

13  prepare.  So we propose setting a specific trial date today as

14  well.

15          But our proposal differs from the government.  We

16  would like to set a trial date late next summer or early next

17  fall.  We believe that this will give all parties some

18  certainty and a concrete goal to work towards.  But it will

19  also give the defense team the time that we need to provide our

20  client with an effective defense.

21          We don't think that the issues we raised in August,

22  both in court and during or *ex parte* conference with the Court,

23  have been resolved.

24          First, with respect to the SCIF, the government said

25  that that issue has been resolved or will be resolved shortly.

1    At this point we still don't have a space where we can meet

2    safely as a team of three lawyers, along with Mr. Schulte.  The

3    current SCIF is simply not a viable option.  My understanding

4    is that the epidemiologist determined that no more than two

5    people could meet there safely.  We obviously need more than

6    two people on our team, including Mr. Schulte, who is detained

7    and who would have to travel back and forth from the MCC, which

8    is itself a high-risk building.

9         We understand that Mr. Hartenstine is working on a new

10   SCIF, and we appreciate that, but at present we have not heard

11   anything about that.  We did not know that there was a new

12   space that was available, and certainly we haven't heard about

13   the details.

14        Just to be clear, no one on the defense team has been

15   in the SCIF, in any SCIF, since the onset of this pandemic, and

16   I, as the newest member of the team, have not been in the SCIF

17   at all or seen any classified evidence in this case.  So it's

18   simply not feasible for us to be prepared for a trial early

19   next year.

20        The second, your Honor, is the issue with our expert

21   witness.  We detailed the problems we have been having during

22   our *ex parte* conference.  Just to summarize it here, the expert

23   we used at our first trial, Dr. Bellovin, has health issues

24   that prevent him from returning to the SCIF right now.  We have

25   worked hard to locate another expert, and we may have found

1    one.  But the person we have identified is not available to

2    work on the case now.  He has informed us that he may become

3    available sometime in January.  But we have not finalized

4    things with him yet because he is mired in election work and he

5    can't commit to working on this case until after the election

6    is resolved.  In addition, your Honor, this potential expert is

7    not in New York City, so we would have to set up a separate

8    SCIF for him to work out of elsewhere, and we don't know the

9    timing of that.

10            The third issue is our renewed motion for our access

11   to the servers.  If the Court grants us full access or even

12   just more expanded access than we had before, it will take some

13   time for us to review an analyzed the new information.

14   Mr. Schulte will need time with it, our expert will need time

15   with it, and we have to consider that in setting a trial date.

16   So, again, our proposal is to set a trial date but to schedule

17   it on a realistic timeline, which we believe would be late next

18   summer or early next fall.

19            I would just add that, as the Court is aware,

20   Mr. Schulte has already been convicted on two counts.  His

21   exposure on the contempt charge is zero to life.  So he is not

22   likely to get time served on those two counts, even if he is

23   acquitted at a second trial.

24            In addition, no matter what happens at the second

25   trial, there will be yet a third trial after that on the

1    pornography charge.  And I raise this just to say I am not sure

2    Mr. Schulte would even be given priority for a trial early next

3    year over other trial-ready cases, which means that late summer

4    or early fall may be the most realistic choice anyway.

5              THE COURT:  Tell me what it is about the selection of

6    the SCIF that takes so much time.  In your cataloging of why

7    you want a trial date sometime in late summer, you have placed

8    an awful lot of emphasis on the SCIF, and I don't understand

9    why that takes so long.  Can you elaborate on why you believe

10   the SCIF is taking up so much time?

11             MS. COLSON:  Your Honor, the current SCIF cannot hold

12   more than two people, which means that we cannot meet safely as

13   a team of three lawyers and two paralegals along with

14   Mr. Schulte there.

15             The government has just represented --

16             THE COURT:  What were the arrangements at the first

17   trial?

18             Ms. Shroff, what were the arrangements?

19             MS. SHROFF:  Your Honor, for the first trial we had

20   Mr. Schulte come into the SCIF.  Towards trial I believe it was

21   almost three times a week.

22             THE COURT:  How many people were there, Ms. Shroff,

23   from the defense team?

24             MS. SHROFF:  There was always me, there was always

25   John Lee, there was always Achal, most of the time there was Ed

1    Zas.  And there was Mr. Brandon, but he wasn't quite as much of

2    a presence, which, as you know, caused great consternation to

3    Mr. Schulte and led to a whole host of issues.

4              THE COURT:  Are they big enough to accommodate people?

5    The problem is a COVID problem.  Is that correct?

6              MS. SHROFF:  Yes, your Honor.  One is a COVID problem

7    and, two, the bigger problem is if we were to meet that way,

8    the epidemiologist would call it very unsafe.

9              And I did speak with one other person who occasionally

10   goes to a SCIF, and I was told that that person was allowed to

11   leave the door open because he was in the SCIF alone and

12   reviewing the documents in a very secluded corner.  I'm not

13   sure about this.  This is anecdotal.  But any SCIF that we

14   would be put into, it would be absurd to think that I would

15   talk to Mr. Schulte and then I would step out and then Mr. Zas

16   would step in to talk to Mr. Schulte.  It just wouldn't work.

17             THE COURT:  For the first trial you had multiple

18   people in the SCIF, is that correct?

19             MS. SHROFF:  Yes, your Honor.

20             And I forgot to add, and I'm very sorry that I forgot

21   to add, Dr. Bellovin was in the SCIF with us throughout the

22   entire trial.  He was there from day one, from picking of the

23   jury to verdict.  He was there every single day.  Forget about

24   the press.  But he was there with us every single day.

25             In fact, I had dragged a couch from the corridor into

1    the SCIF so -- I don't want to go into that, but there were

2    times when we had to stay there almost all through the night,

3    and we stayed.  At a bear minimum at all times there were at

4    least four people.  I think the government can corroborate that

5    because they came by.

6            THE COURT:  I assume that's correct.  The problem with

7    doing the same thing that we did for the first trial, doing

8    that again, is COVID.

9            MS. SHROFF:  It is COVID, your Honor, and of course we

10   have no expert that will come up to New York right now.

11           I was told last night that they expanded and put

12   California on the no-travel list.  So that also makes life

13   difficult for us.

14           THE COURT:  Mr. Laroche, do you want to respond in any

15   way?

16           MR. LAROCHE:  Sure, your Honor.  I think your Honor's

17   point initially about the SCIF issue, you know -- the SCIF

18   issue is tied to the coronavirus.  It's not clear why a trial

19   in late next year is going to make a difference in terms of the

20   number of folks who might be able to enter the SCIF.  In other

21   words, it doesn't seem to be a basis to wait almost another

22   year for a trial versus setting a trial date sometime early

23   next year when we are prepared to go to trial.

24           Now, with respect to the expert issue, it sounds like

25   this expert is going to become available relatively soon after

1   the election.  That expert is going to have the benefit of an

2   extensive unclassified trial record, including all the

3   forensics which have been declassified, to review, which he can

4   do from anywhere in the country.

5          So I think while we get that there is going to be

6   times where they might have to meet in the SCIF, we are at a

7   materially different position than we were in advance of the

8   first trial because it is very clear what our case is.  There

9   is an extensive trial record that can be reviewed anywhere

10  that's unclassified.

11         So the idea that the SCIF issue should be the holdup

12  for essentially another year, we disagree with.  Again, our

13  case is going to be streamlined.  The theory of the case is not

14  changing.  We are calling fewer witnesses.  It will be a

15  shorter trial.  We simply don't believe that the SCIF issue,

16  which, again, in light of COVID, might not go away in terms of

17  the number of people that can meet with Mr. Schulte at one

18  time, should be a basis to push the trial off for another year.

19         MS. COLSON:  Your Honor, if I may just respond to

20  that.  I think the government has said two separate things

21  about the SCIF issue.  One is that the problems are not going

22  away.  But initially the government said that they had actually

23  made arrangements or helped to make arrangements for a new

24  SCIF.  And that's what we are hoping for, is that arrangements

25  will be made for a new space where we can meet safely as a

1    team, along with Mr. Schulte, to prepare for this trial.

2            When and if those arrangements are made, that will

3    enable us to do the preparations we need to provide Mr. Schulte

4    with an effective defense.  But we do not have that yet, and we

5    have not heard that there is a room or a space available.  We

6    have not heard anything about that.  So we do believe that that

7    is an evolving situation and that hopefully in short order we

8    will have something that will allow us to prepare.

9            Now, with respect to the expert, just to make it

10   clear, we haven't actually retained the expert yet.  He has

11   said that he will talk to us about being retained on the case

12   in January.  So we are hopeful that we will be able to retain

13   him then, but it is not a certainty.  And at that point it will

14   take him some significant time to get up to speed.

15           And with all due respect to Mr. Laroche, who is not a

16   defense lawyer, the new expert cannot solely rely on the trial

17   record.  The government has said that they plan to streamline

18   the case.  They are obviously taking a different approach to

19   the case this time around.  And our defense strategy has

20   changed as a result as well.  And we have detailed some of the

21   changes and our defense strategy in Dr. Bellovin's *ex parte*

22   affidavit to the Court.

23           But as the Court is aware, after reading

24   Dr. Bellovin's affidavit, there is lots of work to be done by

25   the expert for the defense to get prepared, work that was not

1   done by Mr. Bellovin the first time around, but work that needs

2   to be done so that we can shift our strategy in anticipation of

3   the government's shift this time around.

4           MR. LAROCHE:  Your Honor, may I respond briefly?

5           THE COURT:  Yes, Mr. Laroche.

6           MR. LAROCHE:  Mr. Colson is right, I am not a defense

7   lawyer.  I will agree with that.

8           THE COURT:  He is a prosecuting attorney.

9           MR. LAROCHE:  Two points on the SCIF.

10          One, to be clear, it is our understanding that there

11  are now two SCIFs available.  One is the old SCIF that was used

12  in advance of the first trial.  The second one is the one that

13  Mr. Hartenstine talked about in the cell block.  Our

14  understanding is that the old SCIF, the first SCIF, has been

15  reviewed by the epidemiologist and has been approved.  Whether

16  or not that means that 10 members of the defense team can go, I

17  am not sure that's the case.  But, at a minimum, to the extent

18  the defense wants to start meeting with the defendant in the

19  old SCIF, we understand that's available.

20          Now, the new SCIF --

21          THE COURT:  Is there a limit on the capacity of the

22  old SCIF?

23          MR. LAROCHE:  Yeah.  To my understanding -- I am not

24  sure is the short answer.

25          MS. SHROFF:  Two.

1          MR. LAROCHE:  It sounds like, from what Ms. Shroff is

2     saying, that her understanding from the epidemiologist is that

3     there is two.  I am not saying that's wrong because I don't

4     know that it's wrong.  I guess what I am saying is that, at

5     least as of today, there is the potential to meet in a

6     classified setting with the defendant with some portion of the

7     defense team in the old SCIF.

8          With respect to the new SCIF --

9          THE COURT:  That's not satisfactory.  What do we do

10     about that?

11          MR. LAROCHE:  That just gets back to my point of --

12     first, I would like to be able to get more information on that.

13     This is the first I'm hearing that only two people are allowed

14     at once.  I would like to talk to Mr. Hartenstine and see what

15     the status is on what's going on with respect to the old SCIF.

16          The new SCIF, it's our understanding that has been set

17     up in the cell block.  The reason it's been set up in the cell

18     block is because it's easier to produce Mr. Schulte there and

19     that one person could meet with Mr. Schulte at that location as

20     well.  In terms of the SCIF setup, that's our understanding of

21     the state of play right now.  As I said, Mr. Hartenstine might

22     have more information.

23          But for us it gets back to, to the extent there is a

24     limitation on the number of folks who can meet there that is a

25     holdup, that limitation is not necessarily a reason to push the

1    trial a whole another year because there are times in which the

2    team will be able to meet with Mr. Schulte just starting now.

3    So we don't think that that's a basis to prevent setting

4    another trial date until late next year.  At a minimum, right

5    now I think what we could do is set a schedule in terms of

6    motions that would still be on pace for a trial sometime early

7    to mid next year, at the latest, and that seems to be something

8    that we could do as a starting point.

9           MS. SHROFF:  Your Honor, may I be heard again on the

10   SCIF matter just for one minute?

11          THE COURT:  Yes.

12          MS. SHROFF:  I think Mr. Hartenstine went with the

13   epidemiologist, and the epidemiologist was clear that no more

14   than two people should be in a SCIF.

15          Mr. Zas will not go to a SCIF.  In fact, Mr. Zas, I do

16   not believe since February, has been to the Federal Defender's

17   office and has been working fully from home.  I have been

18   working fully from home.  I think Ms. Colson has been sharing

19   her time between home and an office one day a week.

20          Even if the Court were to tell us to go into a SCIF,

21   which I don't think you ever would, the question of utmost

22   importance to Mr. Schulte on a case like this, which

23   distinguishes this case from every other case that Mr. Laroche

24   is talking about, is it is a case entirely of forensic steps.

25          This is not a case like Mr. Saipov's case or any other

1    case that is also languishing, by the way, on which the

2    government has never asked once for a trial date, same

3    prosecutors.

4            But unlike any other trial that has been had,

5    Mr. Schulte's case differs in two ways:  One, he has no

6    priority because he is convicted; and, two, his case is

7    entirely forensic.  To put me in a SCIF with Mr. Schulte and

8    then rotate would serve no purpose because, at a bear minimum,

9    we would need the expert in there.  And no matter what

10   Mr. Laroche says to this Court, we do not have an expert.  We

11   have no expert at this time.  Unless there is a court ordering

12   Dr. Bellovin into that SCIF, we don't have him, and I have no

13   other expert who can give me help on what the government itself

14   has called --

15           THE COURT:  Are you entitled to an expert?

16           MS. SHROFF:  In a case like this, yes.  I'm quite

17   certain I'm entitled to an expert.  I think it would be clear

18   error and ineffective assistance of counsel to try this case

19   without an expert, without a doubt.

20           MR. ZAS:  Your Honor, can I give one more thought?

21           THE COURT:  Yes, Mr. Zas.

22           MR. ZAS:  It's a little bit of a personal thing, but I

23   know that Ms. Shroff has some personal concerns about her

24   family and some health issues.  I have the same with my

25   parents, who are elderly.

16

1          Just in full disclosure, it is not just the matter of

2    the number of people who might have to go to the SCIF or be

3    allowed in the SCIF.  It's not like it's just a casual

4    20-minute thing.  We were spending literally day and night at

5    the SCIF last time.  So it's both the number of hours and it's

6    the number of people.

7          Without an epidemiologist really signing off on some

8    guidelines, I'm just very reluctant myself to put myself in

9    that environment, especially where things stand with the

10   pandemic in these months.  I don't know if things will change

11   next year, but I just wanted to let the Court know that.

12          MR. HARTENSTINE:  Your Honor, this is Daniel

13   Hartenstine.  I'm on the line if it would be helpful to the

14   Court for me to clarify any of the issues relating to the

15   status of the SCIF.

16          THE COURT:  Please go ahead.

17          What about the original SCIF?

18          MR. HARTENSTINE:  Sure, your Honor.  An epidemiologist

19   who was working with the district executive's office on overall

20   courthouse safety issues did view the SCIF and made the

21   recommendation that it be occupied by two people and that we

22   install HEPA filters inside the SCIF.  Meeting that is no

23   problem.

24          In the meantime, I have continued to move forward with

25   the SCIF build-out in the marshal's interview room.

                    THE COURT:  What do you mean it's approved for two

people?  The way I'm doing the counting, there is at least

three people in there.  There is counsel for Mr. Schulte,

Mr. Schulte, and the expert.  There is always at least three

people there.

                    MR. HARTENSTINE:  Correct, your Honor.  The

epidemiologist's concern was that there should be no more than

two occupying the space.

                    THE COURT:  Who would the two be?

                    MR. HARTENSTINE:  That I am not sure.  I guess I would

leave that to --

                    THE COURT:  Mr. Schulte and one attorney?

                    MR. HARTENSTINE:  Mr. Schulte and one attorney,

Mr. Schulte and the expert.  Whatever the defense, you know,

would find beneficial.

                    THE COURT:  That doesn't seem to me very satisfactory.

What's the alternative, Mr. Hartenstine?

                    MR. HARTENSTINE:  The alternative space is an

interview room within the U.S. Marshal's cell block.  This is a

space that provides an actual barrier between the defendant and

his counsel.  Potentially in that space we could accommodate

more people.  Construction has not begun on that space yet.

But I'm told by the two contractors who are handling it, they

expect about a four to six-week time by which that facility

would be complete and ready for activation as a SCIF.

1          MS. SHROFF:  Your Honor, we have told Mr. Hartenstine

2    and we have told this Court, we are not going to go to a SCIF

3    in the jail pens.  We are not having Mr. Schulte get legal

4    advice in the marshal's office in the pen.  We are not doing

5    it.

6          I have told this to Mr. Hartenstine way before there

7    was a pandemic, way before there was COVID, and we are not

8    going to use that SCIF.  I cannot possibly tell Mr. Hartenstine

9    more times than I have, I am not going to that SCIF.  I am not

10   going to sit in the marshal's pen where clients are brought in

11   and out all day.  I am not going to go work there.  I am not

12   going to go sit in, essentially, a jail to provide legal

13   counsel to a person.  I am not doing it.

14         MR. HARTENSTINE:  Your Honor, Ms. Shroff has expressed

15   her concerns to me on numerous occasions, as she says.  All the

16   same, my understanding of your wishes was that I continue to

17   explore the option, which I have.

18         THE COURT:  As to Mr. Laroche's asking that we set a

19   motion schedule now, I think it is best that we set a trial

20   schedule and then at least have a trial schedule and set a

21   motion schedule.

22         What about the speedy trial requirements?  If I set a

23   trial date that's satisfactory to the defendant, is there a

24   problem with the speedy trial time?

25         MS. SHROFF:  Your Honor.  I'm sorry.  We cannot hear

1   you at all.

2          THE COURT:  Let me try again.

3          If we set a schedule that is acceptable to

4   Mr. Schulte, is there a speedy trial argument that you are

5   going to reserve on?

6          MS. SHROFF:  No, your Honor.  We are asking for a

7   longer adjournment, so we would agree to the exclusion of time.

8          THE COURT:  I believe that six months is more than

9   enough time for preparation.  We will set a motion schedule

10  later.  I will schedule trial to begin in the first week in

11  June.

12          David, give me a date in the first week in June.

13          MS. SHROFF:  Your Honor, it won't give us enough time.

14  We will not have an expert.  So I ask, most respectfully, that

15  you at least give us until after -- the earliest we can do is

16  August.  We won't be able to have an expert.  On Friday, I

17  e-mailed the expert, the potential expert, and he absolutely

18  had no room to talk to us until -- even just talk to us until

19  after January.  It would just give rise to a whole host of

20  ineffective assistance claims by Mr. Schulte.

21          MR. LAROCHE:  Your Honor, we disagree.  They said they

22  believe this expert will be available in January.

23          MS. SHROFF:  We did not say that, Mr. Laroche.  Please

24  do not misquote us.

25          THE COURT:  Ms. Shroff, you did say after the

1   election, correct?  The election can't go on forever.

2          MS. SHROFF:  I don't know.

3          THE COURT:  We are going to elect the new president or

4   existing president by the 20th of January.

5          MS. SHROFF:  Your Honor, would you like to speak to

6   our expert?  We'll happily have you speak to him because we are

7   not able to get him to commit to, one, being our expert or,

8   two, starting work on the case.  I'm happy to have you talk to

9   the expert.  Really, I am.

10          For Mr. Laroche to say that we have an expert would be

11   incorrect, unless he has actually moved from being the

12   prosecutor on this case to being part of our defense team.

13          MR. LAROCHE:  Your Honor, that's not what I said.

14   What I said was that the defense has represented several times

15   that this expert would be available to them potentially as

16   early as January or after the election.

17          THE COURT:  I understand that they haven't retained

18   him.  There may be difficulties in the future.

19              I'm setting a trial date for the first week in June.

20              David, give me a date in the first week in June.

21          THE DEPUTY CLERK:  June 7, Monday, June 7.

22          THE COURT:  Which is approximately six months from

23   today.  More than six months.  I'll set a schedule, motion

24   schedule, in a week's time for whatever motions have to be

25   decided.  I will exclude time through the 7th of June 2021.

1                Is there anything else to do today?

2                MR. LAROCHE:  No, your Honor.  Thank you.

3                THE COURT:  Thank you very much.

4                (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25