# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

_David E. Patton_
Executive Director
and Attorney-in-Chief

Southern District of New York
Jennifer L. Brown
Attorney-in-Charge

February 24, 2021

**BY ECF**

Honorable Paul A. Crotty
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:     _United States v. Joshua Adam Schulte_, 17 Cr. 548 (PAC)

Dear Judge Crotty:

On behalf of Mr. Schulte, we file with the Court his pro se Motion to Suppress Evidence Seized From The Metropolitan Correctional Center. Mr. Schulte asks that he be given 30 days to respond to the Government's reply to his motion, as it takes many days for him to receive mail at the MCC-NY.

Thank you for your time and consideration.

Respectfully submitted,

Sabrina P. Shroff, Deborah Colson, Edward S. Zas
_Counsel for Joshua A. Schulte_

CC:     All Counsel of Record
                (via ECF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

       -v-

JOSHUA ADAM SCHULTE,

          *Defendant.*

S2 17 Cr. 548 (PAC)

## MOTION TO SUPPRESS EVIDENCE SEIZED FROM THE
## METROPOLITAN CORRECTIONAL CENTER

Joshua Adam Schulte
#79471054
Metropolitan Correctional Center
10 South, Segregated Housing Unit
150 Park Row
New York, New York 10007

# TABLE OF CONTENTS

I.   TABLE OF AUTHORITIES ................................................................ iii

II.   STATEMENT OF JURISDICTION ............................................... 1

III.   STATEMENT OF THE ISSUE ..................................................... 2

IV.   STATEMENT OF THE CASE ........................................................ 2

  A.   Overview ..................................................................................... 2

  B.   Relevant Background ................................................................. 2

V.   SUMMARY OF ARGUMENTS ........................................................ 6

VI.   THE MCC SEARCH WARRANT VIOLATED THE FOURTH
AMENDMENT .......................................................................................... 7

  A.   Donaldson fabricated evidence, falsified evidence, and perpetuated a fraud
on the court to obtain the MCC search warrant ..................................... 8

    1.   Donaldson falsified the content and purpose of the articles ....................... 8

    2.   Donaldson fabricated evidence to indicate the articles were classified ...... 11

    3.   Donaldson perpetrated a fraud on this court by seeking the seizure of
discovery produced by the government ............................................. 13

  B.   MCC search warrant was so lacking in indicia of probable cause to render
reliance unreasonable .......................................................................... 15

    1.   No probable cause for most alleged crimes ................................... 15

    2.   No probable cause to search for classified information ............................ 16

  C.   MCC search warrant scope was unreasonably overbroad ......................... 18

    1.   Overbroad with regard to the types of information to search ..................... 18

    2.   Overbroad in scope to search 200 residences ............................. 20

  D.   Corrected MCC search warrant ................................................ 22

    1.   Section A: "Overview" ................................................................ 22

    2.   Section B: "Background on Amanat and Schulte's Detention at MCC" .... 22

    3.   Section C: "Schulte's Violation of the Schulte Protective Order and
Disclosure of Classified Information While at MCC" ....................... 22

4.    Section D: "Amanat's Fabrication of Evidence During His Trial" ...........22

5.    Section E: "Schulte and Amanat Arrange to have Cellphones Smuggled into the MCC"................................................................................................23

6.    Section F: "Evidence of Schulte's and Amanat's Illegal Activity Using the Contraband Cellphones" ...........................................................................23

VII.    THE MCC SEARCH WARRANT VIOLATED THE FIRST AMENDMENT...................................................................................................26

A.    Articles 1-7 were critiques of the criminal justice system ..........................26

B.    Articles 8 and 9 did discuss Schulte's case, but were unclassified.............28

C.    The government may not suppress lawful speech as the means to suppress unlawful speech ......................................................................................29

VIII.    DONALDSON'S EXECUTION OF THE MCC SEARCH WARRANT VIOLATED THE FOURTH, FIFTH, AND SIXTH AMENDMENTS ................30

A.    Donaldson recklessly disregarded Attorney-Client Privilege ....................30

B.    Donaldson expanded the already overbroad MCC search to the 9th floor ..34

C.    Donaldson executed a general warrant.........................................................34

IX.    THE MCC SEARCH WARRANT IS VOID UNDER *FRANKS* AND THE GOOD FAITH EXCEPTION IS INAPPLICABLE................................................36

A.    The issuing judge was knowingly and deliberately misled.........................36

B.    The application was so lacking in indicia of probable cause as to render reliance upon it unreasonable ................................................................37

C.    The warrant violated the First Amendment .................................................38

D.    The warrant violated the Sixth Amendment ................................................38

E.    Donaldson violated the terms of the warrant during the search.................40

X.    CONCLUSION ..........................................................................................42

XI.    EXHIBITS ................................................................................................43

# I.    TABLE OF AUTHORITIES

**Cases**

*Arizona v. Grant*,
   556 US 332 (2009) ............................................................................... 18

*Ashcroft v. Free Speech Coalition*,
   535 US 234 (2002) .................................................................... 26, 28, 29

*Ayeni v. Mottola*,
   35 F.3d 680 (2d Cir. 1994) ................................................................... 18

*Bartnicki v. Vopper*,
   532 US 514 (2001) ............................................................................... 29

*Boyd v. United States*,
   116 US 616 (1886) ............................................................................... 35

*Brigham City v. Stuart*,
   547 US 398 (2006) ............................................................................... 21

*Broadrick v. Oklahoma*,
   413 US 601 (1973) ............................................................................... 29

*Camara v. Municipal Court of City and County of San Francisco*,
   387 US 523 (1967) ................................................................................. 7

*Carey v. Population Services Int'l*,
   431 US 678 (1977) ............................................................................... 28

*Carpenter v. United States*,
   138 S. Ct. 2206 (2017) ........................................................................... 7

*Clark v. Buffalo Wire Works Co.*,
   190 F.R.D. 93 (W.D.N.Y. 1999) ......................................................... 32

*Coffin v. United States*,
   156 US 432 (1895) ............................................................................... 16

*Coolidge v. New Hampshire*,
   403 US 443 (1971) ............................................................................... 19

iii

*Davis v. United States,*
    564 US 229 (2011) ............................................................................41

*FCC v. Pacifica Foundation,*
    438 US 726 (1978) ............................................................................28

*Franks v. Delaware,*
    438 US 154 (1978) ..................................................................... passim

*Giordenello v. United States,*
    357 US 480 (1958) ..............................................................................9

*Herring v. United States,*
    555 US 135 (2009) ....................................................................... 36, 38

*Hess v. Indiana,*
    414 US 105 (1973) ............................................................................29

*Illinois v. Gates,*
    462 US 213 (1983) ............................................................................15

*In re 650 Fifth Ave. & Related Props.,*
    830 F.3d 66 (2d Cir. 2016) ..............................................................20

*Jones v. United States,*
    362 US 257 (1960) ..............................................................................9

*Kentucky v. King,*
    563 US 452 (2011) ............................................................................19

*Kingsley Int'l Pictures Corp v. Regents of Univ. of N.Y.,*
    360 US 684 (1959) ............................................................................29

*Kyllo v. United States,*
    533 US 27 (2001) ..............................................................................21

*Lauro v. Charles,*
    219 F.3d 202 (2d Cir. 2000) ............................................................18

*Marron v. United States,*
    275 US 192 (1927) ............................................................................34

iv

*Maryland v. Garrison*,
   480 US 79 (1987)...............................................................................20

*Massiah v. United States*,
   377 US 201 (1964).............................................................................33

*Nat'l City Trading Corp. v. United States*,
   635 F.2d 1020 (2d Cir. 1980) .............................................................39

*Palko v. Connecticut*,
   302 US 319 (1937).............................................................................32

*Payton v. New York*,
   445 US 573 (1980).............................................................................18

*Reno v. Flores*,
   507 US 292 (1993).............................................................................32

*Riley v. California*,
   573 US 373 (2014).............................................................................21

*Silverman v. United States*,
   365 US 505 (1961)......................................................................... 7, 21

*Stanford v. Texas*,
   379 US 476 (1965).............................................................................21

*Stanley v. Georgia*,
   394 US 557 (1969).............................................................................28

*United States v. Awadallah*,
   349 F.3d 42 (2d Cir. 2003) ........................................................... 14, 36

*United States v. Calandra*,
   414 US 338 (1974)...............................................................................9

*United States v. Cordero-Rosario*,
   786 F.3d 64 (1st Cir. 2015)................................................................15

*United States v. Defonte*,
   441 F.3d 92 (2d Cir. 2006) ................................................................32

*United States v. Dzialak*,
　　441 F.2d 212 (2d Cir. 1971) ............................................................... 35

*United States v. Galpin*,
　　720 F.3d 436 (2d Cir. 2013) ............................................................... 18

*United States v. Ganias*,
　　755 F.3d 125 (2d Cir. 2014) ............................................................... 40

*United States v. Ginsberg*,
　　758 F.2d 823 (2d Cir. 1985) ............................................................... 33

*United States v. Griffith*,
　　867 F.3d 1265 (D.C. Cir. 2017) .......................................................... 19

*United States v. Laury*,
　　985 F.2d 1293 (5th Cir. 1993) ............................................................ 17

*United States v. Leary*,
　　846 F.2d 592 (10th Cir. 1988) ............................................................ 37

*United States v. Leon*,
　　468 US 897 (1984) ............................................................... 15, 37, 38

*United States v. Levasseur*,
　　816 F.2d 37 (2d Cir. 1987) ................................................................. 14

*United States v. Longo*,
　　70 F. Supp. 2d 225 (W.D.N.Y. 1999) .................................................. 38

*United States v. Matias*,
　　836 F.2d 744 (2d Cir. 1988) ........................................................ 34, 40

*United States v. Medlin*,
　　842 F.2d 1194 (10th Cir. 1988) .......................................................... 40

*United States v. Mejia*,
　　655 F.3d 126 (2d Cir. 2011) ............................................................... 30

*United States v. Moore*,
　　968 F.2d 216 (2d Cir. 1992) ............................................................... 36

*United States v. Quintien*,
   306 F.3d 1217 (2d Cir. 2002) ...................................................................1

*United States v. Rajaratnam*,
   719 F.3d 139 (2d Cir. 2013) ........................................................... 14, 36

*United States v. Raymonda*,
   780 F.3d 105 (2d Cir. 2015) ..................................................................15

*United States v. Reilly*,
   76 F.3d 1271 (2d Cir. 1996) ........................................... 19, 36, 38, 41

*United States v. Rettig*,
   589 F.2d 418 (9th Cir. 1978) ..................................................................40

*United States v. Shi Yan Liu*,
   239 F.3d 138 (2d Cir. 2000) ..................................................................40

*United States v. Tenzer*,
   213 F.3d 34 (2d Cir. 2000) .......................................................................1

*United States v. Uccio*,
   940 F.2d 753 (2d Cir. 1991) .....................................................................1

*United States v. Ulbricht*,
   858 F.3d 71 (2d Cir. 2017) .....................................................................17

*United States v. West*,
   520 F.3d 604 (6th Cir. 2008) ..................................................................38

*United States v. Williams*,
   592 F.3d 511 (4th Cir. 2010) ..................................................................17

**Statutes**

18 U.S.C § 1030 ................................................................................. 16, 25

18 U.S.C § 1343 ................................................................................. 15, 25

18 U.S.C § 1503 ................................................................................. 15, 25

18 U.S.C § 2252A ............................................................................... 16, 25

18 U.S.C § 401 ................................................................................... 15, 25

18 U.S.C. § 793 .................................................................................. 16, 25

**Constitutional Provisions**

U.S. Const. amend. I ........................................................................ passim

U.S. Const. amend. IV ..................................................................... passim

U.S. Const. amend. V ....................................................................... passim

U.S. Const. amend. VI ..................................................................... passim

**Other Authorities**

*Presumed Guilty: When Innocent People Are Wrongly Convicted*, 1991, Martin
  Yant ................................................................................................... 9

*The Effects of Pre-Trial Detention on Conviction, Future Crime, and Employment:
  Evidence from Randomly Assigned Judges,* 2016, By: Will Dobbiey, Jacob
  Goldinz, and Crystal Yang .................................................................. 9

## II.    STATEMENT OF JURISDICTION

Mr. Schulte filed a motion to suppress evidence seized from the Metropolitan Correctional Center (MCC) on June 18, 2019 that was denied by this court on October 18, 2019. This court has jurisdiction over this successive suppression motion and should consider it. The law of the case doctrine "holds 'that when a court has ruled on an issue, that decision should generally be adhered to by the court in subsequent stages in the same case,' unless 'cogent' and 'compelling' reasons militate otherwise." *United States v. Quintien*, 306 F.3d 1217, 1225 (2d Cir. 2002) (first quoting *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991); then quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)). Reasons not to adhere to a prior decision include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id.* at 1230 (quoting *Tenzer*, 213 F.3d at 39).

This motion raises issues that the original motion did not, and which this court did not consider; for example, this court's denial order stated "[t]he Government had probable cause to execute the search warrant and the Defendant does not challenge that." (Suppression Denial Order, P. 3, Dkt #159). In fact, as this motion will irrefutably prove, FBI Special Agent Jeffrey David Donaldson fabricated evidence, falsified evidence, and perpetrated a fraud on this court by seeking to search and seize documents produced to Mr. Schulte *as official unclassified discovery from the United States Attorney's Office.* Indeed, it would be a ***manifest injustice*** to permit a search warrant that authorized the seizure of official, unclassified discovery to stand. Without review of this motion's merits, Mr. Schulte would be unfairly prejudiced and the Second Circuit Court of Appeals would not have a complete and valid record to review on appeal.

1

### III.   STATEMENT OF THE ISSUE

Whether the MCC Search Warrant drafted by FBI Special Agent Jeffrey David Donaldson on October 2, 2018 violated the First and Fourth Amendments to the United States Constitution, whether the execution of the Search Warrant at MCC on October 3, 2018 violated the Fourth, Fifth, and Sixth Amendments to the United States Constitution, and whether all materials seized as a result of this search should be suppressed.

### IV.   STATEMENT OF THE CASE

#### A.   Overview

Joshua Adam Schulte is awaiting trial in the Southern District of New York on charges that he, *inter alia*, illegally accessed and transmitted classified information belonging to the CIA, possessed child pornography, and violated federal copyright laws by sharing movies and television shows over the internet. While awaiting trial on these charges at MCC, the FBI executed a search of Mr. Schulte's cell seeking discovery produced to Mr. Schulte by the government.

#### B.   Relevant Background

Following the Vault 7 WikiLeaks release on March 7, 2017, the FBI executed search warrants of Mr. Schulte's New York City apartment on March 13th and 14th. Mr. Schulte immediately began cooperating with the government to assist their investigation.

On August 24, 2017, despite continuing cooperation and communication with AUSAs, Mr. Schulte was arrested by a gang of armed FBI agents regarding allegations of possession of child pornography. Mr. Schulte was immediately denied bail by a magistrate judge.

2

On September 13, 2017, District Judge Paul A. Crotty reversed the magistrate's decision, and released Mr. Schulte on the harshest pretrial conditions of 24-hour house incarceration and the ban of all electronic devices including computers and the internet.

Between September and December 2017, while out on bail, Mr. Schulte wrote eight documents—the "Schulte Articles"—about the corrupt and oppressive American "justice" system as a Redress of Grievances.

On December 6, 2017, despite strict house incarceration, Mr. Schulte was arrested as a "fugitive" for allegedly sexually assaulting his girlfriend in 2015. The next day, the government wrote a letter to Judge Crotty notifying the court of Mr. Schulte's arrest and requesting Mr. Schulte's bail be revoked, because, the government alleged, he had violated his bail conditions by using the internet and was now a danger to the community due to the sexual assault arrest.

On December 14, 2017, Mr. Schulte consented to remand, without prejudice, so that he could be extradited to Virginia to be arraigned on sexual assault charges scheduled for the following week. However, immediately following remand, Virginia cancelled the arraignment, dropped its writ, and filed a detainer as the entire goal of these charades was to detain Mr. Schulte indefinitely. 3500 materials released in 2020 showed FBI malfeasance as they directed the Virginia County to convene a grand jury despite the Virginia lead detective's statement that *he had no crime to prosecute*; to this date Mr. Schulte has never been formally charged.

On January 8, 2018, Mr. Schulte again argued for release. This court found that Mr. Schulte "violated the terms of the release conditions by engaging in having his roommate access the computers using very sophisticated methodology".

The court also relied on the Virginia arrest warrant to find that there was "clear danger" and ordered Mr. Schulte remanded.

On March 6, 2018, the Second Circuit Court of Appeals affirmed this court's remand order.

On April 20, 2018, Mr. Schulte's family and friends published the first seven unclassified "Schulte Articles" on Facebook under the pseudonym John Galt.

On May 15, 2018, FBI Special Agent Jeffrey David Donaldson subpoenaed Facebook for the "Schulte Articles" and submitted them for classification review.

On June 18, 2018, Mr. Schulte was superseded on the espionage and copyright infringement charges.

On June 28, 2018, Mr. Schulte submitted a pro se bail application.

On July 17, 2018, the United States Attorney's Office produced the "Schulte Articles" from the Facebook account in unclassified discovery as production #13 after the classification review determined they were *unclassified*.

On October 1, 2018, Mr. Schulte was moved to the Special Housing Unit ("SHU") on the 9th floor of MCC, following an investigation into the use of contraband cellphones. No cell phones or contraband were ever discovered in Mr. Schulte's cell or in Mr. Schulte's possessions.

On October 2, 2018, FBI Special Agent Jeffrey David Donaldson committed outright perjury, fabricated evidence, falsified evidence, and perpetrated a fraud on this court when he filed an application for a search and seizure warrant to seize the "Schulte Articles" that were produced to Mr. Schulte by the United States Attorney's Office in unclassified discovery after Donaldson himself received them

4

from Facebook and knew that they were unclassified. Not knowing that he was authorizing a search warrant to seize legitimate discovery, Judge Crotty signed the fraudulent warrant that day.

During the illegal search, Jeffrey David Donaldson overstepped the bounds of the warrant by searching and seizing Mr. Schulte's legal notebooks and discovery located on the 9th floor of MCC despite the warrant's clear limitation of the 2nd and 7th floors and no stipulation to seize and search legal materials. Donaldson disregarded the clear markings for privilege, read the notebooks, opened envelopes marked as legal mail from the Federal Defenders Office, and opened and read folders designated as planned *pro se* motions.

On October 31, 2018, Mr. Schulte was superseded a second time for allegedly transmitting national defense information from MCC. The basis for this new charge was (1) a privileged narrative document written at the MCC and only ever shared with Counsel, (2) writings in privileged notebooks that were not shared outside counsel, and (3) an email allegedly transmitted (the only alleged transmission of anything) detailing the illegalities of the government's initial search warrants that briefly mentions HICOC in which the government asserts, erroneously, that this *single* unclassified word *already published by WikiLeaks* is somehow "NATIONAL DEFENSE INFORMATION" harmful to the United States of America. Noticeably absent from the superseding indictment were the "Schulte Articles" Donaldson claimed were classified in the MCC search warrant.

On June 18, 2019, Mr. Schulte's counsel filed the initial MCC suppression motion over Mr. Schulte's vehement objections and notwithstanding Mr. Schulte's proposed MCC suppression motion—the first draft of the instant motion

On October 18, 2019, this court denied the suppression motion.

## V.   SUMMARY OF ARGUMENTS

The MCC search warrant violated the Fourth Amendment. The affidavit is facially deficient in probable cause for 5 of the 7 search offenses—it does not include a single fact supporting these crimes. The 6th offense pertaining to a search for classified information is so lacking in indicia of probable cause to render reliance unreasonable—the sole evidence is Donaldson's averment that "at least one" document Schulte wrote at some place and time was "classified"; Donaldson's statement is deliberate perjury because these specific documents were produced to Mr. Schulte in unclassified discovery on July 17, 2018 and were provided to Donaldson by the jailhouse snitch before the search. Finally, the requested search was overbroad and not narrowly tailored as required by law.

The MCC search warrant violated the First Amendment. Even if Donaldson hadn't committed perjury, he failed to identify any specific classified document; rather, Donaldson sought the overbroad seizure of the unclassified "Schulte Articles" written as a Redress of Grievances criticizing the FBI and American justice system—ironically substantiating the grievances therein. The search warrant's authorization to seize legally possessed documents clearly violated the Free Speech Clause of the First Amendment.

Donaldson's execution of the MCC Search violated the Fourth, Fifth, and Sixth Amendments. Incredulously, Donaldson does not recognize attorney-client privilege, and deems himself the arbiter of privilege. Only after Donaldson has searched and penetrated privilege does he request a wall team—too little too late. Finally, Donaldson expanded the already overbroad search without probable cause.

This court should order that the MCC search is void under *Franks v. Delaware*, 438 US 154 (1978), and all fruits from the search should be suppressed.

6

## VI.   THE MCC SEARCH WARRANT VIOLATED THE FOURTH AMENDMENT

The Fourth Amendment provides:

*The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.*

"The 'basic purpose of this Amendment,' our cases have recognized, 'is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.'" *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2017) (quoting *Camara v. Municipal Court of City and County of San Francisco*, 387 US 523, 528 (1967)). At "the very core" of the Fourth Amendment "stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 US 505, 511 (1961).

The MCC search warrant drafted by Special Agent Jeffrey David Donaldson and signed by District Judge Paul A. Crotty on October 2, 2018 (Ex. A for 10/2 search warrant and Ex. B for 10/3 search warrant) violated the Fourth Amendment as its affidavit was facially deficient in probable cause for most "suspected" crimes, completely lacked probable cause for those it was not facially deficient, was outrageously overbroad—and finally, Donaldson fabricated evidence, falsified evidence, and perpetrated a fraud on this court by seeking the seizure of unclassified documents officially produced to Mr. Schulte by the government. The MCC search warrant is the precise search the founding fathers feared and tried to prevent through ratification of the Fourth Amendment.

### A.      Donaldson fabricated evidence, falsified evidence, and perpetuated a fraud on the court to obtain the MCC search warrant

Special Agent Jeffrey David Donaldson committed outright perjury; he fabricated evidence, falsified evidence, and perpetuated a fraud on the court to deliberately deceive Judge Crotty and manipulate him into signing a search warrant to seize a criminal defendant's legally produced unclassified discovery.

### 1.      Donaldson falsified the content and purpose of the articles

*Schulte also indicated that he had written several documents, which he called "articles," that discussed his case (the "Schulte Articles") and which he wanted to be disseminated to the media. It appears from the calls that at least some of the Schulte Articles may have been provided to one or more members of the media.*

The "Schulte Articles", a Redress of Grievances, were posted to Facebook on April 20, 2018; over five months before Donaldson's October 2, 2018 MCC search warrant. Donaldson then issued a subpoena for this Facebook account on May 15, 2018; this subpoena was subsequently produced to Mr. Schulte in unclassified discovery on 8/8/2018 as production #14 (See Exhibit C). The subpoena directs all returns to *Special Agent Jeff D. Donaldson*.

Donaldson perjured himself when he feigned ignorance of the "Schulte Articles" even though he issued a subpoena to Facebook to retrieve them. Although the first 7 articles do not discuss Mr. Schulte's case—they were simply a criticism of the American justice system—Donaldson falsified the contents of these articles and swore the opposite. If Donaldson had been truthful, he would have attached the *unclassified* articles in the warrant for the judge to review:

Article 1, titled *Presumption of Innocence: A Petition for a Redress of Grievances*, sets up the redress of grievances and introduces the Bail Reform Act

of 1984. This article does not discuss Mr. Schulte's case or even remotely discuss classified information (See the full, **<u>unclassified</u>** article as produced in **<u>unclassified discovery</u>** as Exhibit D).

Article 2, titled *Presumption of Innocence: A Loss of Citizenship*, discusses the prison population in the United States and the corrupt criminal justice system. This article does not discuss Mr. Schulte's case or even remotely discuss classified information (See the full, **<u>unclassified</u>** article as produced in **<u>unclassified discovery</u>** as Exhibit E).

Article 3, titled *Presumption of Innocence: Do You Want to Play a Game?* discusses the corrupt criminal justice system including mandatory minimums and its racist origins and coercive effects (references Martin Yant's book *Presumed Guilty: When Innocent People Are Wrongly Convicted*, 1991); plea bargaining, the Bail Reform Act of 1984, the research paper titled *The Effects of Pre-Trial Detention on Conviction, Future Crime, and Employment: Evidence from Randomly Assigned Judges* published in 2016 by Will Dobbiey, Jacob Goldinz, and Crystal Yang; the Good Faith Doctrine; *United States v. Leon*, 468 US 897 (1984); *United States v. Calandra*, 414 US 338 (1974); *Franks v. Delaware*, 438 US 154 (1978), *Jones v. United States*, 362 US 257 (1960); *Giordenello v. United States*, 357 US 480 (1958). This article does not discuss Mr. Schulte's case or even remotely discuss classified information (See the full, **<u>unclassified</u>** article as produced in **<u>unclassified discovery</u>** as Exhibit F).

Article 4, titled *Presumption of Innocence: Detention is Not Punishment* is about the cages and torture the United States Federal Government imposes upon the accused, and how this despicable tyranny is contrary to the Bill of Rights and the concept of justice. This article does not discuss Mr. Schulte's case or even

remotely discuss classified information (See the full, **<u>unclassified</u>** article as produced in **<u>unclassified discovery</u>** as Exhibit G).

Article 5, titled *Presumption of Innocence: Guilty until Proven Wealthy* is about the unconscionable use of bail to prevent the poor from fighting their criminal cases outside of prison. This article discusses attorneys given to the poor who are underfunded and out matched; the coercion of plea deals; the mathematics and probability that incentivize the innocent to plead guilty for crimes they did not commit; the prison industrial complex; the unfair effect of incarceration on their children; specific stories of inmates unjustly persecuted by the corrupt, despicable American criminal "justice" system. This article does not discuss Mr. Schulte's case or even remotely discuss classified information (See the full, **<u>unclassified</u>** article as produced in **<u>unclassified discovery</u>** as Exhibit H).

Article 6, titled *Presumption of Innocence: Can You Afford to Be Accused?* is about the expense of criminal defense and the unfair disadvantage that individuals have against the All-Powerful-Fascist-Police-State. This article does not discuss Mr. Schulte's case or even remotely discuss classified information (See the full, **<u>unclassified</u>** article as produced in **<u>unclassified discovery</u>** as Exhibit I).

Article 7, titled *Presumption of Innocence: A Proposed Solution*, enumerates solutions to this corrupt, appalling criminal "justice" system. This article does not discuss Mr. Schulte's case or even remotely discuss classified information (See the full, **<u>unclassified</u>** article as produced in **<u>unclassified discovery</u>** as Exhibit J).

Upon review of the contents of these articles, no judge would have issued a search warrant to confiscate them—hence Donaldson deliberately concealed them.

Note that these first 7 articles were published under the pseudonym John Galt, and were not intended to be associated with Mr. Schulte at all—and therefore did

not discuss any specifics of his case. This is made abundantly clear in phone conversations that Donaldson reviewed as well as their initial publication in April of 2018 on the *internet*. Nonetheless, Donaldson blatantly falsified information— he feigned ignorance of the articles, feigned ignorance of his subpoena and whether they were "given to members of the media" despite the posting on Facebook, and he claimed these articles addressing issues with the criminal justice system were somehow "classified" or involved sensitive issues with Mr. Schulte's criminal case that he could not reveal to the judge.

### 2.    Donaldson fabricated evidence to indicate the articles were classified

*"The CIA has reviewed the […] Schulte Articles and has determined […] at least one of the Schulte Articles contain classified information."*

Not only did Donaldson lie about knowledge of the articles and falsify their content, but he also lied when he claimed they were classified. After receiving the "Schulte Articles" from the Facebook subpoena, Donaldson provided them to the CIA for a classification review. **The CIA found all 7 were unclassified, and they were produced to Mr. Schulte in unclassified discovery on 7/17/2018 as production #13, JAS_020244-JAS_020920 (See Exhibit K).**

As Exhibit K illustrates, the CIA reviewed articles 1-7 and cleared them as unclassified—they were later produced to Mr. Schulte in unclassified discovery. Thus, Donaldson's request to seize articles 1-7 in the search warrant application was unconstitutional—not only did Donaldson know these articles were unclassified, but he knew Mr. Schulte possessed them because they were produced to Mr. Schulte in unclassified discovery. Donaldson committed perjury and deceived Judge Crotty. So what about articles 8 and 9?

Article 8, titled *Presumption of Innocence: Origins*, describes Mr. Schulte's case and the government's unprecedented persecution of him from day one. This article discusses Mr. Schulte's case in generalities and unclassified, public information. (See the full, **unclassified** article as produced in **unclassified discovery** as Exhibit L).

Article 9, titled *Presumption of Innocence: the Devil's Dishonest, Deplorable, Diabolically Demented Demons*, describes Mr. Schulte's arrest while on bail and how the government fabricates, cherry-picks, manipulates, and spins the truth. It is the only article that was written while Mr. Schulte was at MCC. This article also contains no classified information. (See the full, **unclassified** article as produced in **unclassified discovery** as Exhibit M).

Articles 8 and 9 were produced to Donaldson by the jailhouse snitch Carlos Luna Betance (76143-054). As Donaldson explained in his affidavit (Ex. A, at 12) "The CS Account contains approximately 450 electronic files (including videos and photographs) of the Contraband Cellphones." Indeed, Betance took 449 pictures and videos; within these 449 items includes all of the Schulte Articles in full including articles 8 and 9 (See Exhibit N). These 449 pictures are the same items that Donaldson referenced in his affidavit—there can be no question that he saw them. He also had plenty of time for the CIA to conduct a classification review—which they did. The results? All 449 items—including all 9 "Schulte Articles" were unclassified and produced in **unclassified discovery** on November 1, 2018 as production #15 (Refer back to Exhibit N).

All 9 articles were also posted on WordPress in October 2018. The search warrants to seize the articles from WordPress and the John Smith Google Drive account resulted in the second and third full confiscation of all 9 articles (the

12

government did not shutdown the accounts or demand the published articles to be taken down—and they remain on the internet to this day). These articles were then, once again, produced to Mr. Schulte in **unclassified discovery**—on December 10, 2018 as production #16 (See Exhibit O). It is from this *unclassified* discovery production that these articles have been attached as exhibits here (Ex. D-J are articles 1-7 and Ex. L-M are articles 8-9; note that these productions appear to be a byproduct of OCR and contain spelling and grammatical mistakes as a result).

Finally, once the deception was complete and Donaldson obtained his falsified warrant, the government never charged Mr. Schulte for the "Schulte Articles" nor did they even introduce them at trial—since they were ***unclassified***.

### 3.   Donaldson perpetrated a fraud on this court by seeking the seizure of discovery produced by the government

Donald's search warrant sought the seizure of unclassified discovery produced to Mr. Schulte by the United States Attorney: (Ex A: Att. A, p. 2):

a. *Article 1: "Presumption of Innocence: A petition for a redress of grievances"*

b. *Article 2: "Presumption of Innocence: A loss of citizenship"*

c. *Article 3: "Presumption of Innocence: Do you want to play a game?"*

d. *Article 4: "Presumption of Innocence: Detention is not punishment"*

e. *Article 5: "Presumption of Innocence: Innocent until proven Wealthy"*

f. *Article 6: "Presumption of Innocence: Can you afford to be accused?"*

g. *Article 7: "Presumption of Innocence: A proposed solution"*

h. *Article 8: "Presumption of Innocence: Origins"*

i. *Article 9: "… unalienable Rights, that among these are Life, Liberty, and the pursuit of Happiness"*

Special Agent Jeffrey David Donaldson knew that all 9 articles were unclassified, but deliberately lied and perpetrated a fraud on this court by seeking the seizure of unclassified discovery *produced by the government*. The first 7 articles had even been produced in unclassified discovery three months before the search! Of course Mr. Schulte possessed them—they were given to him by the government! Has there ever been a search warrant to seize a defendant's *discovery* as already produced by the government?

Jeffrey David Donaldson falsified evidence, fabricated evidence, and perpetrated a fraud on the court in his MCC search warrant. He deliberately perjured himself to deceive and manipulate Judge Paul A. Crotty into signing a search warrant on October 2, 2018 to seize unclassified discovery produced to Mr. Schulte by the government on July 17, 2018. Donaldson's actions were outrageous, unconscionable, and undeniably unconstitutional.

If an affidavit includes deliberate falsehoods or statements made with reckless disregard for the truth, and that, "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 US at 156; see also *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013). Moreover, Franks protects against misleading omissions as well as affirmative misstatements. See *United States v. Awadallah*, 349 F.3d 42, 68 (2d Cir. 2003); *United States v. Levasseur*, 816 F.2d 37, 43 (2d Cir. 1987). Accordingly the MCC search is void under *Franks*, and all evidence obtained as a result of the illegal search should be suppressed.

14

**B.     MCC search warrant was so lacking in indicia of probable cause to render reliance unreasonable**

For a warrant to issue, a magistrate must make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit… there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 US 213, 238 (1983); See also *United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir. 2015). The MCC search warrant failed to establish probable cause to search and seize evidence for 6 of the 7 alleged crimes.

**1.     No probable cause for most alleged crimes**

The MCC search warrant authorized a search based on probable cause for 7 offenses, yet failed to list criminal activity at all for 5 of the 7. See *United States v. Cordero-Rosario*, 786 F.3d 64 (1st Cir. 2015) (The affidavit told the magistrate nothing more than that there was an ongoing investigation of the person whose premises were to be searched). *United States v. Leon*, 468 US 897 (1984) (holding that reliance must be objectively reasonable).

The only information in the search warrant application regarding 18 U.S.C § 401 (contempt of court), § 1343 (wire fraud), and § 1503 (obstruction of justice) seems to be that Omar Amanat was arrested and convicted for these offenses (Ex. A: p. 4, section B; p. 9, section D). If a conviction was all that was required to obtain a search warrant at any time, then surely the Fourth Amendment would no longer exist. It would be absurd to believe that the government could search and seize property from a convicted felon at any time for the rest of his life simply because he had previously been convicted. And in fact, there is no case law or precedent in any United States court that suggests this is acceptable.

15

Similarly, the only information in the search warrant application regarding 18 U.S.C § 1030 (unauthorized computer access) and § 2252A (illegal acts related to child pornography) seems to be the fact that Mr. Schulte was indicted for these crimes (Ex. A: p. 4, section B). The absurdity here is even greater since Mr. Schulte is presumed innocent in accordance with the Due Process Clause of the Fifth Amendment. "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin v. United States*, 156 US 432, 453 (1895). It is truly shocking that the government believes an indictment standing alone grants authority to conduct a search at any time and at any place of the accused.

### 2.    No probable cause to search for classified information

The MCC search warrant additionally sought to search and seize evidence of 18 U.S.C. § 793 (unlawful disclosure of classified information) based on the following probable cause (Ex. A at 7-8):

*In or about April 2018, in recorded calls from the MCC, Schulte discussed with members of his family his desire to talk to members of the media about his case. Schulte also indicated that he had written several documents, which he called "articles," that discussed his case (the "Schulte Articles") and which he wanted to be disseminated to the media. It appears from the calls that at least some of the Schulte Articles may have been provided to one or more members of the media.*

*The CIA has reviewed the Pro Se Bail Motion and the Schulte Articles, and has determined that the Pro Se Bail Motion and at least one of the Schulte Articles contain classified information.*

Although we have already established that these statements are outright perjury, if we assume them to be true Donaldson still fails to establish probable cause. Donaldson's affidavit states that "at least one" article "contains classified information"—but *which* one? The document(s) are either classified or they are not—they either violate a statute or they do not; *a warrant cannot seek to seize documents that violate no criminal statute*.

The particularity requirement of the Fourth Amendment requires that a warrant must "specify the items to be seized by their relation to the designated crimes." *United States v. Ulbricht,* 858 F.3d 71, 99 (2d Cir. 2017). Donaldson particularizes the 9 "Schulte Articles" in the warrant, but fails to establish probable cause in the affidavit; Donaldson does not define the relationship between the 9 "Schulte Articles" and the crime of disclosure of classified information—he does not claim that any particular article is classified. This failure results in a failure to establish probable cause to seize *all 9* articles or *any* specific article; *a warrant cannot authorize the carte blanche seizure of documents that violate no law*.

Additionally, because Donaldson fails to specify *which* article is classified, he also fails to establish that this unknown document would reasonably be found at MCC. When and where was this article written—was it while Mr. Schulte was detained at MCC or before? If it was before, then it is unlikely he possesses it at MCC and therefore not objectively reasonable to execute a search of MCC.

Finally, without an explicit statement from the CIA *at least naming* or attaching the classified document, there can be no finding of probable cause—the allegations by Donaldson are "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Laury*, 985 F.2d 1293, 1311 n.23 (5th Cir. 1993).

17

### C.   MCC search warrant scope was unreasonably overbroad

 "[T]he Fourth Amendment's proscription of unreasonable searches and seizures 'not only… prevent[s] searches and seizures that would be unreasonable if conducted at all, but also… ensure[s] reasonableness in the manner and scope of searches and seizures that are carried out.'" *Lauro v. Cha*rles, 219 F.3d 202, 209 (2d Cir. 2000) (quoting *Ayeni v. Mottola*, 35 F.3d 680, 684 (2d Cir. 1994)). Donaldson's search warrant sought a general warrant unlimited in scope—an overbroad warrant that was not narrowly tailored as required by law.

### 1.   Overbroad with regard to the types of information to search

The MCC warrant requests to search "*[a]ny and all notes, documents, records, correspondence, or materials, in any format and medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, other digital data files and web cache information, and handwritten notes)*" (Ex A: Att. A at 2). Although the warrant attempts to particularize the scope by then listing the "Schulte Articles", in order to find "any and all notes…" containing the "Schulte Articles", ***an officer must first conduct a search of "any and all notes"***. This does not actually limit the scope of the search at all, but rather, seems to authorize a general search of everything—overbroad and unsupported by any probable cause. "The chief evil that prompted the framing and adoption of the Fourth Amendment was the 'indiscriminate searches and seizures' conducted by the British 'under the authority of "general warrants."'" *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (quoting *Payton v. New York*, 445 US 573, 583 (1980)); *Arizona v. Grant*, 556 US 332, 345 (2009) ("[T]he central concern underlying the Fourth Amendment [is] the concern about giving police officers unbridled discretion to rummage at will among a person's private effects.").

18

From what probable cause does Donaldson seek to search "Any and all notes"? "Any and all documents"? "Any and all records"? "Any and all correspondence"? "Any and all materials"? Donaldson only provides electronic evidence in the affidavit; Donaldson does not even establish that there are any notes or documents possessed by Mr. Schulte at MCC—not even through his snitch. How can Donaldson request to search items that he doesn't even know exist? See *United States v. Griffith*, 867 F.3d 1265 (D.C. Cir. 2017) (Warrant authorizing officers to search for and seize all cell phones and other electronic devices in defendant's residence was unsupported by probable cause as supporting affidavit offered almost no reason to suspect the defendant owned a cell phone, or that any phone or other device containing incriminating information would be found in apartment). Since Donaldson does not establish that Mr. Schulte even possesses notebooks, let alone that they are likely to contain classified information, Donaldson fails to establish probable cause to search notebooks.

To prevent "general, exploratory rummaging in a person's belongings" and the attendant privacy violations, *Coolidge v. New Hampshire*, 403 US 443, 467 (1971), the Fourth Amendment provides that "a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." *Kentucky v. King*, 563 US 452 (2011). Yet, this is precisely what Donaldson's warrant attempts to authorize—an exploratory rummaging through every document Mr. Schulte may possess without establishing probable cause for such a wide scope. Donaldson's affidavit essentially states "Mr. Schulte may possess some classified information that I cannot identify, so permit me to rummage through his documents until I find something I can use against him in a criminal prosecution." This is unconstitutional. See *United States v. Reilly*, 76 F.3d 1271, 1273 (2d Cir. 1996)  ("A warrant is not a general hunting license…").

"'By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the [particularity] requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.'" *In re 650 Fifth Ave. & Related Props.*, 830 F.3d 66, 99 (2d Cir. 2016) (quoting *Maryland v. Garrison*, 480 US 79, 84 (1987)). Here, the search was unlimited in scope without justification, and therefore unconstitutional; without a more limited scope of what types of documents to search, and their relation to the alleged crime, the search is not narrowly tailored and particularity fails.

## 2.    Overbroad in scope to search 200 residences

Donaldson's affidavit sought the search of two MCC units and "all cells located in those units." Each unit at MCC has 6 tiers, 8 cells per tier, and 2 people per cell for a total of 96 pretrial, presumed innocent inmates per unit. Thus, a search of both MCC Unit 7N and 7S resulted in a search of 192 private residences.

Even more absurd, the warrant sought a search of "the unit 2 law library" which housed the electronic discovery for all 800-1000 MCC inmates. The actual probable cause justifying this expansive search is so minimal to render the scope absurd and unreasonable: (i) "Unit-1 and Unit-2 are on the same floor of the MCC and are connected by a corridor," (ii) "Although inmate from the two units are prohibited from interacting with each other in the corridor between Unit-1 and Unit-2, inmates are, at times, able to meet briefly in that space," and (iii) "Amanat and Schulte also discussed their need to have the Contraband Cellphones with them when they accessed discovery at the Law Library" (Ex. A, p. 11). Do these statements support a search of not only 96 residences in Unit-1, but also 96 *additional* residences in Unit-2 *AND* the search of *every* inmate's electronic

20

discovery? As the text makes clear, "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Brigham City v. Stuart*, 547 US 398, 403 (2006).

Furthermore, the search does not seem to limit the types of documents to just Mr. Schulte's cell. Instead, the overbroad search for "Any and all… documents… in any format and medium…" applied to all 192 residences and all electronic discovery for the ~1000 MCC inmates. Pretrial inmates maintain the Constitution's Fourth Amendment protections. It would be absurd if the courts authorized the search of entire apartment complexes of 200 people based on so little probable cause—why is it any different here?

***

Donaldson's overbroad warrant is precisely the type of general warrant feared by America's founding fathers: "Our cases have recognized that the Fourth Amendment was the founding generation's response to the reviled 'general warrants' and 'writs of assistance' of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity" and that "opposition to such searches was in fact one of the driving forces behind the Revolution itself." *Riley v. California*, 573 US 373, 403 (2014); *Stanford v. Texas*, 379 US 476, 486 (1965) ("[T]he Fourth… Amendment[] guarantee[s]… that no official… shall ransack [a person's] home and seize his books and papers under the unbridled authority of a general warrant…") Indeed, the right of a citizen to retreat into the home and "there be free from unreasonable government intrusion" stands at the core of the Fourth Amendment. *Kyllo v. United States*, 533 US 27, 31 (2001) (quoting *Silverman*, 365 US at 511). It is incontrovertible that Donaldson's MCC search warrant violated the Fourth Amendment to the United States Constitution.

21

### D.      Corrected MCC search warrant

Special Agent Jeffrey David Donaldson's search warrant application is broken down into 6 sections detailing "probable cause" (Ex. A)

#### 1.      Section A: "Overview"

This section is simply and overview and contains no probable cause.

#### 2.      Section B: "Background on Amanat and Schulte's Detention at MCC"

This section simply identifies background information on how Schulte and Amanat were arrested and confined to MCC. Schulte and Amanat are linked as "cellmates" housed in Unit-1 (7-South).

#### 3.      Section C: "Schulte's Violation of the Schulte Protective Order and Disclosure of Classified Information While at MCC"

This section identifies allegations the government made in April 2018. These allegations were already known and addressed by the court. This section also encompasses most of Donaldson's lies and deception. Tellingly, Donaldson does not identify which article was deemed classified—nor does he provide any probable cause that the unknown classified article was written at MCC or that it would be found at MCC. Donaldson does not specify why all 9 articles should be seized. Hence, there is no probable cause. Note that the Pro Se Bail Motion and its alleged classification are irrelevant because the warrant does not seek to seize it.

#### 4.      Section D: "Amanat's Fabrication of Evidence During His Trial"

This section identifies the government's allegations that Amanat fabricated emails during his trial. There is no probable cause identified.

22

5.      **Section E: "Schulte and Amanat Arrange to have Cellphones Smuggled into the MCC"**

This section does not describe what its heading purports. This section states that Amanat paid Betance (the jailhouse snitch) to "store and charge the Contraband Cellphones." It states that "[t]he Contraband Cellphones were smuggled into the MCC and protected from detection through a network of visitors to the facility, inmates, and correctional officers." It does not implicate Schulte or Amanat in the actual smuggling of the contraband. Betance states that "Prior to Schulte's retrieval of the Schulte Cellphone, [Betance] would regularly take screenshots of messages and recorded videos involving the Contraband Cellphones."

The only reference to any of the criminal activity described in the warrant seems to be the contraband cellphones. Section E would support probable cause to believe contraband cellphone(s) exist in Unit-1. But, does the probable cause support a broad search of *hundreds* of cells across *multiple* units? In fact, the last sentence of section E is "[t]he search for the other Contraband Cellphones is ongoing, and has included, among other things, searching multiple cells in Unit-1, including Schulte and Amanat's cell, and cells in proximity to their cell." Schulte and Amanat's cell has already been searched—as well as "multiple" other cells. Without additional evidence or statements to corroborate the snitch's story, there is no probable cause justifying a search of the entire unit—much less other units.

6.      **Section F: "Evidence of Schulte's and Amanat's Illegal Activity Using the Contraband Cellphones"**

Like section E, this section does not describe at all what its heading purports. Donaldson provides 7 pages detailing *legal* use of an *illegal* cellphone. The cellphone is contraband—this has been established. Nothing more. Of the 450

electronic files, the only "illegal activity" Donaldson discovered was the cellphone itself:

### a)     *Affidavit page 13 (contraband cellphone)*

This appears to be a still-shot of Schulte with a contraband cellphone.

### b)     *Affidavit page 14 (contraband cellphone)*

This appears to be a still-shot of Amanat with a contraband cellphone.

### c)     *Affidavit page 15 (contraband cellphone)*

This is a draft technical report written by Schulte for Amanat's case. There is nothing illegal about writing a technical expert report—once again, only the contraband is the illegal activity. (See Schulte's draft expert report as Exhibit P)

### d)     *Affidavit page 16 (contraband cellphone)*

This is a screenshot of Schulte Article 8 (See Exhibit N). This article is unclassified. Additionally, this image explains where Betance "recalled a communication over at least one of the Contraband Cellphones relating to 'Vault 7,' which is the name used by WikiLeaks for the Leak." (Ex. A, p. 11)

### e)     *Affidavit page 17 (contraband cellphone)*

For some reason Donaldson says that "Schulte_Handwritten_Notes.pdf appears to be a reference to the information contained in the Pro Se Bail Motion." It is in fact the Schulte technical report for Amanat (See exhibit P). Donaldson's statement is wholly conclusory and can be ignored.

### f)     *Affidavit page 18 (contraband cellphone)*

For some reason Donaldson identifies "Secure Delete" and "IShredder" as "illegal". Neither application is illegal.

Donaldson identified no illegal activity on the cellphones.

24

\*       \*       \*

The jailhouse snitch Betance provided Donaldson with nearly *four hundred and fifty documents*—yet there was absolutely *ZERO* evidence of any criminal activity in *ANY* of the documents (besides the contraband cellphone itself). However, Donaldson did not want a warrant merely to seize a contraband cellphone—he wanted to execute a general warrant to rummage through all of Mr. Schulte's documents and sniff around. So, Donaldson committed perjury. He simply lied. He sprinkled in crimes that Mr. Schulte and Mr. Amanat were previously convicted or accused without any actual probable cause, and then feigned ignorance of these "Schulte Articles" as if he had never seen any of them before—despite the plain fact that both Donaldson and the CIA already reviewed these documents 5 months before the warrant. Finally, as the coup de grace Donaldson simply fabricated that "at least one of the Schulte Articles was classified." There was no affidavit from the CIA, no specific indication of which article was classified, or about why it was classified—No, just a nice ambiguous touch to give the perception of legitimacy. Yet, none of the "Schulte Articles" were classified. Donaldson knew this, but he lied, he committed outright perjury and perpetrated a fraud on the court to obtain the MCC Search Warrant.

The MCC search warrant violated the Fourth Amendment to the United States Constitution: The affidavit failed to identify any probable cause authorizing a search related to contempt of court, unauthorized computer access, wire fraud, obstruction of justice, or illegal acts related to child pornography; the affidavit lacked sufficient probable cause relating to the unlawful disclosure of classified information and the affidavit contained deliberate falsehoods to bolster this insufficient probable cause; finally, the warrant sought an outrageously overbroad scope not narrowly tailored as required by law.

25

## VII.   THE MCC SEARCH WARRANT VIOLATED THE FIRST AMENDMENT

The First Amendment provides:

*Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.*

The MCC search warrant was an egregious assault on the First Amendment because it sought to limit free speech by seizing Mr. Schulte's Redress of Grievances. FBI Special Agent Jeffrey David Donaldson did not like Mr. Schulte's view of the criminal justice system so he abused his power as federal law enforcement to seize Mr. Schulte's 9 articles, thereby ironically proving the articles right. "As a general principle, the First Amendment bars the government from dictating what we see or read or speak or hear." *Ashcroft v. Free Speech Coalition*, 535 US 234, 245 (2002). Just as "[a] law imposing criminal penalties on protected speech is a stark example of speech suppression," *Id.* at 237, confiscating protected speech is repugnant to the First Amendment and unquestionably unconstitutional.

### A.   Articles 1-7 were critiques of the criminal justice system

As discussed in the previous argument, Mr. Schulte first drafted his Redress of Grievances as 7 articles with the subtitles (i) *A Petition for a Redress of Grievances,* (ii) *A Loss of Citizenship,* (iii) *Do You Want to Play A Game?,* (iv) *Detention is Not Punishment,* (v) *Guilty Until Proven Wealthy,* (vi) *Can You Afford To Be Accused?,* and (vii) *A Proposed Solution*. These 7 articles were drafted between September and December 2017 while Mr. Schulte was out on bail. The articles were later posted to Facebook while Mr. Schulte was at MCC on April 20,

26

2018. Donaldson knew these articles were posted on Facebook because he issued a subpoena for the Facebook page on May 15, 2018 (Ex. C). On July 17, 2018 these subpoena returns were produced to Mr. Schulte in unclassified discovery as production #13 (Ex. K). It is unassailable that Donaldson read the Schulte Articles, and passed them onto the CIA for classification review. The CIA then conducted its review and concluded that the articles were unclassified; otherwise, the articles would have been produced in classified discovery and the government would have charged Mr. Schulte with additional count(s) of unauthorized transmission of NDI.

These 7 articles were critiques of America's criminal justice system: The United States has more incarcerated people than any other country in the world. The government uses its draconian sentencing guidelines along with pretrial "detention"—which is no different from prison—to coerce the innocent into pleading guilty. Regardless of innocence, the actual statistical analysis in most cases favors pleading guilty. Thus, in America, the innocent constantly plead guilty to leave prison. This is downright despicable and repulsive; the very antithesis of justice. While it's true that not all those who plead guilty are innocent, the overwhelming majority are indicted on trumped up charges—street criminals slinging drugs made to look like kingpins. Federal prosecutors excel at cherry-picking data, taking data out-of-context, and deceitfully portraying data to obtain convictions—they play dirty, spinning the truth to win at all costs. This is hardly justice. Indeed, the federal government and its henchmen do not seek justice—they wield unprecedented power to absolutely destroy people. Once these demented demagogues torture and murder enough innocent people, they run for political office claiming "tough on crime". In short, the government manufactures their own criminals to spend their allocated budgets; the United States Government creates monsters so it can fight them, and spends taxpayer dollars to fund this faux "war".

Is this classified? Does the government have the right to silence Mr. Schulte and his opinion? Can the government limit or curtail free speech if it disagrees or dislikes the speech? No, the First Amendment forbids this. "The government 'cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts.' First Amendment freedoms are most in danger when the government seeks to control thought or to justify its laws for that impermissible end. The right to think is the beginning of freedom, and speech must be protected from the government because speech is the beginning of thought." *Ashcroft v. Free Speech Coalition*, 535 US at 253 (quoting *Stanley v. Georgia*, 394 US 557, 566 (1969)). It is also well established that speech may not be prohibited because it concerns subjects offending our sensibilities. See *FCC v. Pacifica Foundation*, 438 US 726, 745 (1978) ("[T]he fact that society may find speech offensive is not a sufficient reason for suppressing it."); See also *Carey v. Population Services Int'l*, 431 US 678, 701 (1977) ("[T]he fact that protected speech may be offensive to some does not justify its suppression.") Donaldson's inclusion of articles 1-7 in his search warrant application of items to seize clearly violated free speech.

### B.     Articles 8 and 9 did discuss Schulte's case, but were unclassified

As discussed in the previous argument, articles 8 and 9 did discuss Mr. Schulte's case, but their content was unclassified. Most importantly, Carlos Betance, the jailhouse snitch, provided Donaldson with articles 8 and 9 *before* Donaldson drafted his search warrant. Donaldson had plenty of time to consult with the CIA to conduct a classification review. This classification review was the same as before—articles 8 and 9 were unclassified, and were produced in unclassified discovery as production #16 on December 10, 2018 (See Exhibit O).

Mr. Schulte has the First Amendment freedom of speech to discuss his case. To limit or curtail this right is unconstitutional. Furthermore, the government

cannot take a preventative measure of limiting free speech to stop future "classified" articles—or seizing the articles pending classification review. The government may not prohibit speech because it increases the chance an unlawful act will be committed "at some indefinite future time." *Hess v. Indiana*, 414 US 105, 108 (1973). See *Bartnicki v. Vopper*, 532 US 514, 529 (2001) ("The normal method of deterring unlawful conduct is to impose an appropriate punishment on the person who engages in it."); *Kingsley Int'l Pictures Corp v. Regents of Univ. of N.Y.*, 360 US 684, 689 (1959) ("Among free men, the deterrents ordinarily to be applied to prevent crime are education and punishment for violations of the law, not abridgment of the rights of free speech.")

### C.    The government may not suppress lawful speech as the means to suppress unlawful speech

"The government may not suppress lawful speech as the means to suppress unlawful speech. Protected speech does not become unprotected merely because it resembles the latter. The constitution requires the reverse. '[T]he possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted.' The Overbreadth doctrine prohibits the government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coalition*, 535 US at 255 (quoting *Broadrick v. Oklahoma*, 413 US 601, 612 (1973)).

Donaldson's search warrant to seize not only lawful free speech critical of the government, but the very *discovery* produced to Mr. Schulte by the government is repugnant to the First Amendment and all that is American.

## VIII.  DONALDSON'S EXECUTION OF THE MCC SEARCH WARRANT VIOLATED THE FOURTH, FIFTH, AND SIXTH AMENDMENTS

The Fifth Amendment provides:

*No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.*

The Sixth Amendment provides:

*In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.*

Special Agent Jeffrey David Donaldson's execution of the MCC search warrant violated the Fourth, Fifth, and Sixth Amendments to the United States Constitution.

### A.    Donaldson recklessly disregarded Attorney-Client Privilege

It is "well settled that individuals retain their attorney-client privilege when incarcerated or detained." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). Donaldson knew that Mr. Schulte faced criminal prosecution according to

30

both his warrant affidavit and status as the case agent since March 2017. However, instead of *at least* requesting a wall-team to review Mr. Schulte's privileged documents, Donaldson took it upon himself to discern privilege. Upon reviewing documents, Donaldson came across multiple notebooks clearly marked as **"ATTORNEY-CLIENT PRIVILEGE"** both on the cover and the inside cover. Notwithstanding these markings, Donaldson began to review these notebooks— reading page-by-page and piercing privilege. Donaldson learned critical defense strategy, defense experts, motions the defense intended to file, discovery review including documents Mr. Schulte marked to discuss with his attorneys, thoughts on plea negotiations, thoughts on progression of the case, legal ideas and noted cases—literally the entire defense theory.

Donaldson even went so far as to *open legal mail* from the Federal Defenders, review folders marked "Legal", and read documents from Mr. Schulte's attorneys. Donaldson also read Mr. Schulte's draft motions to the court, including motions to Dismiss for Prosecutorial Misconduct, Selective Prosecution, and Vindictive Prosecution; Suppression, Rule 16, Compel, *Pro Se*, etc. The defense discovered that Donaldson read all these motions—within legal folders marked "Legal" and within legal mail containing photocopies—because of post-it notes written on these motions bearing Donaldson's handwriting and his classification analysis ("S / TS?", "Discovery", "Top Secret?", etc.). In fact, the *Malware of the Mind* document Donaldson seized (and the government prosecuted Mr. Schulte for possessing) was inside *legal mail* as it was a *photocopy mailed to Mr. Schulte from his attorneys*—who possess the original. There can be no question that Donaldson reviewed every single paper, sentence, and word written by Mr. Schulte and his counsel. After learning all this information and decimating the doctrine of attorney-client privilege, Donaldson sought a warrant for a wall-team to review the

notebooks and redact privilege from the notebooks he already read (Ex. B); too little too late. Although this *"good faith"* is likely the prosecutors reprimanding Donaldson and demanding this new warrant to give the false impression of *"good faith"*, good faith does *not* cure bad faith—at this point, the cat was out of the bag; the request for a wall-team after reading privileged documents was like closing the barn doors *after* all the horses escaped.

Donaldson's belief that the proper due process for determining privilege is for he himself to read it all and then make a determination is unconscionable—it flies in the face of not only the Sixth Amendment but the Due Process Clause of the Fifth Amendment; substantive due process includes those interests that are "implicit in the concept of ordered liberty," *Palko v. Connecticut*, 302 US 319, 325 (1937), which are rights "so rooted in the traditions and conscience of our people as to be ranked as fundamental," *Reno v. Flores*, 507 US 292, 303 (1993). The encrypted channel of privilege between attorney and client is implicit in the concept of ordered liberty, and dates back centuries. Donaldson's blatant disregard for this right is repugnant to the Due Process Clause and the Sixth Amendment.

Furthermore, even if Donaldson lied and claimed not to have seen the conspicuously written notice of privilege (which only could have been missed if Donaldson was deaf and dumb), Donaldson had been forewarned by the Second Circuit that narrative writings and writings in notebooks could be privileged. *United States v. Defonte*, 441 F.3d 92, 96 (2d Cir. 2006) (finding attorney-client privilege would apply to writings from a journal that had been taken from an inmate's cell at the MCC as long as these writings were an outline of what the inmate wished, and ultimately did, discuss with counsel); *Clark v. Buffalo Wire Works Co.*, 190 F.R.D. 93, 96-97 (W.D.N.Y. 1999) (notes client made "in order to inform an attorney about facts from his daily life that he considered to be relevant

to his potential legal remedies" were protected by attorney-client privilege). Hence, there was clear legal precedent indicating that reading journals and notebooks from MCC without *at least* a proper wall-team would demonstrate bad faith.

The Wall-Team eventually redacted over 100 pages of a 164-page notebook Donaldson read (including the first 19 pages), and hundreds of pages from other notebooks. As an example of the pierced privilege, within the 164-page notebook was a note that Mr. Schulte wished to proceed with the child pornography charges first as he was confident he could easily prove his innocence. Donaldson apparently relayed this information to the prosecution who later asked the defense whether it still intended to proceed with these charges first. Donaldson's reckless disregard for attorney-client privilege and the Sixth amendment resulted in *irreparable* harm because there is no way to know all the insights gleaned from Mr. Schulte's privileged documents and how they influenced (and continue to influence) the prosecution.

The government's impermissible seizure of these notebooks combined with its reckless lack of precautions against viewing privileged pages violates the Fourth Amendment, substantive due process of the Fifth Amendment, and the doctrine of attorney-client privilege inherent in the Sixth Amendment. See *United States v. Ginsberg*, 758 F.2d 823, 833 (2d Cir. 1985) ("Unquestionably, government interference in the relationship between attorney and defendant may violate the latter's right to effective assistance of counsel.) (citing *Massiah v. United States*, 377 US 201 (1964)).

**B.    Donaldson expanded the already overbroad MCC search to the 9th floor**

The MCC search warrant authorized a search of "[t]he Subject Premises [as] particularly described as the 7 South Unit, 7 North Unit, including the cells located in those units, and the Education Department's law library on the second floor of the building, located in Metropolitan Correctional Center, 150 Park Row, New York, New York 10007." On October 1, 2018, the MCC packed up and moved Mr. Schulte from 7 South Unit to 9 South Unit pending an investigation into the use of contraband cellphones; Mr. Schulte's property was packed up and brought with him to 9 South Unit (See Exhibit Q). Special Agent Jeffrey David Donaldson drafted the MCC search warrant the next day and then executed the MCC search on October 3, 2018. During the execution of the search, Donaldson took it upon himself to expand the scope of the warrant to include the 9th floor, notwithstanding the explicit limitation on the face of the warrant. Donaldson then searched and seized Mr. Schulte's notebooks located on the 9th floor in violation of the warrant and the Fourth Amendment.

**C.    Donaldson executed a general warrant**

Not only did Donaldson expand the place to search, but he also expanded the items to search. In an oft-quoted passage, the Supreme Court has held that the particularity requirement "makes general searches… impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 US 192, 196 (1927); "A search must be confined to the terms and limitations of the warrant authorizing it." *United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988) (citation omitted).

34

The search warrant specified only the titles of the 9 "Schulte Articles", so Donaldson should have only briefly skimmed documents searching for titles—he was not authorized to fully read every single document. In reality, as we showed in Argument (VIII)(A), Donaldson did just that—he read every single page of every single document and conducted his own classification review of all documents; Donaldson seized all documents and gave them to the CIA to conduct a classification review—in clear violation of the Fourth Amendment.

For example, although the MCC search warrant did not identify "Malware of the Mind" to seize, Donaldson removed it from Mr. Schulte's legal mail and gave it to the CIA to conduct a classification review; although the MCC search warrant did not identify Mr. Schulte's legal notebooks, Donaldson seized and searched them all, and then gave them to the CIA to conduct a classification review. "[T]he law in this area is quite clear… if something is not described in the warrant it cannot be seized." *United States v. Dzialak*, 441 F.2d 212, 216 (2d Cir. 1971).

As the post-it notes show, Donaldson did not simply skim documents searching for titles—he searched for any classified information in direct violation of the search warrant's limitation to 9 *titles*. He then seized all of Mr. Schulte's documents and gave them to the CIA for a thorough review of every single sentence. There was no screening of non-responsive data from responsive— Donaldson simply executed a general warrant to seize all documents and then search all documents for any crime. Donaldson went into Mr. Schulte's home with a warrant to seize 9 specific documents, but indiscriminately seized everything instead. "And enshrined in the Fourth Amendment is the fundamental principle that the Government cannot come into one's home looking for some papers and, without suspicion of broader criminal wrongdoing, indiscriminately take all papers instead." *Boyd v. United States*, 116 US 616, 626-27 (1886).

## IX.   THE MCC SEARCH WARRANT IS VOID UNDER *FRANKS* AND THE GOOD FAITH EXCEPTION IS INAPPLICABLE

"The exclusionary rule serves to deter deliberate, reckless, or grossly negligent [police] conduct." *Herring v. United States*, 555 US 135, 144 (2009). Evidence obtained pursuant to a warrant should be excluded in any of the following circumstances: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992).

### A.   The issuing judge was knowingly and deliberately misled

Donaldson did not inform Judge Crotty that the "Schulte Articles" were written while Mr. Schulte was out on bail, were posed on Facebook, that Donaldson himself had been part of the subpoena to Facebook for the publicly-posted articles, that the CIA reviewed the first 7 articles and found that they were unclassified, and that these articles were produced to Mr. Schulte in unclassified discovery. "Recklessness may be inferred" where false or omitted information was "clearly critical" to assessing the legality of a search. *United States v. Reilly*, 76 F.3d at 1280; (inferring recklessness where affiants "fail[ed] to provide all potentially adverse information" in warrant application); an omission satisfies the *Franks* standard if it was "'designed to mislead,' or… was 'made in reckless disregard of whether [it] would mislead' the magistrate." *Rajaratnam*, 719 F.3d at 154 (quoting *Awadallah*, 349 F.3d at 68).

Donaldson also lied to the judge because all 9 articles were provided to Donaldson by the jailhouse snitch Betance—from which Donaldson provided

choice items in his search warrant affidavit. All 9 articles were deemed unclassified and produced *thrice* to Mr. Schulte in unclassified discovery: once from the 450 items that Betance provided to Donaldson (which again, Donaldson possessed before drafting his affidavit, Ex. N), and then after obtaining them from WordPress where they were published in October 2018, and finally from the email accounts associated with the Contraband Cellphones (Ex. O). Donaldson perjured himself when he claimed "at least one" of the Schulte Articles were classified. He did not identify which article was classified as *NONE* were.

**B.    The application was so lacking in indicia of probable cause as to render reliance upon it unreasonable**

Donaldson's affidavit did not allege *any* criminal conduct for 5 of the 7 alleged crimes and did not establish probable cause to believe the "Schulte Articles" violated any crime; Donaldson did not identify a single classified document to seize nor did he establish that any classified documents would reasonably exist at the MCC. The Good Faith Exception does not apply if a warrant is "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existences unreasonable." *Leon*, 468 US at 923.

Additionally, the warrant was overbroad in its description to search "any and all documents" across nearly 200 private residences without citing any probable cause for such a sweeping search. See *United States v. Leary*, 846 F.2d 592, 606-610 (10th Cir. 1988) (declining to apply the good-faith exception where the warrant swept too broadly in describing the items subject to seizure and search).

Finally, Donaldson's "bare bones" affidavit was deceptively constructed to conceal the truth about the "Schulte Articles" while simultaneously preventing Judge Crotty from validating Donaldson's conclusory statements and ultimately

deceiving the judge. See *United States v. West*, 520 F.3d 604, 610 (6th Cir. 2008) (holding that good faith exception does not apply to bare bones affidavit based entirely on unsubstantiated conclusions). The concern is particularly acute when facts indicate that the "bare-bones description... was almost calculated to mislead." *United States v. Reilly*, 76 F.3d at 1280, aff'd on reh'g, 91 F.3d 331 (2d Cir. 1996). In such circumstances, one *Leon* concern, i.e., that "a reasonably well trained officer would have known" that the challenged warrant was not supported by probable cause, *United States v. Leon*, 468 US at 922 n.23, is reinforced by another, i.e., deception, or at least an apparent intent to deceive.

### C.    The warrant violated the First Amendment

Donaldson's application to seize unclassified documents, which he knew were not in violation of any crime, is an abhorrent assault on the Freedom of Speech guaranteed in the First Amendment. Accordingly, these documents and all fruits of the seizure are void. "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 US at 144. Both are satisfied here.

### D.    The warrant violated the Sixth Amendment

Donaldson recklessly disregarded the Sixth Amendment when he penetrated Attorney-Client Privilege by reading Mr. Schulte's legal documents. Suppression is warranted when evidence is obtained in violation of the Sixth Amendment or the Attorney-Client privilege. See, e.g., *United States v. Longo*, 70 F. Supp. 2d 225, 264 (W.D.N.Y. 1999) ("Where a violation of the attorney-client privilege is demonstrated, the remedy for such a violation is the suppression of evidence derived from the privileged communication.")

38

Normally, "[t]o the extent that files obtained here were privileged, the remedy is suppression and return of the documents in question, not invalidation of the search." *Nat'l City Trading Corp. v. United States*, 635 F.2d 1020, 1026 (2d Cir. 1980). However, this is not a case where privileged documents were intermingled with non-privileged documents *unbeknownst to officers executing the search*—instead, Donaldson knew before even opening the notebooks or reading the legal mail that the documents and notebooks were marked "ATTORNEY-CLIENT PRIVILEGE" and likely contained at least some privileged materials. Thus, the *collateral question* posed to this court is whether the police are arbiters of privilege and possess the authority to review documents marked privilege to determine if they are indeed privileged—or if the Sixth Amendment prohibits this.

If the courts permitted the police to determine privilege then the police could seize and search privileged documents—indeed, the Sixth Amendment would mean nothing if police officers could waltz into a criminal defendant's home at any time and review every single document. The damage to defendants would be catastrophic if the police incorrectly determined privilege–or worse, if the police simply covertly reviewed the privileged documents and utilized the information to further their criminal prosecution; even "good faith" review would necessitate the disclosure of attorney-client privilege as officers reviewed documents. Therefore, the Sixth Amendment must prohibit officers from possessing the power to read documents that are marked privileged to discern actual attorney-client privilege.

The offense here cannot simply be remedied by only suppressing the privileged documents, because the damage results from the officer's belief that he is the arbiter of privilege—and it will continue to happen in the future if this behavior is not categorically condemned and punished. If officers are not punished for reviewing notebooks and documents that bear privilege markings, then that is

precisely what they will continue to do. Finally, no harm results from requesting an independent entity review the potentially privileged documents to discern privilege; this is the only process consistent with the Fifth and Sixth Amendments. Accordingly, all evidence seized from the MCC must be suppressed.

### E.    Donaldson violated the terms of the warrant during the search

Donaldson's expansion of the warrant to include the 9th floor requires suppression. "When items outside the scope of a valid warrant are seized, the normal remedy is suppression and return of those items." *United States v. Matias*, 836 F.2d at 747. See also *United States v. Ganias*, 755 F.3d 125, 137 (2d Cir. 2014) (government may not retain documents outside scope of search warrant "[w]ithout some independent basis for its retention of those documents").

Additionally, Donaldson's widespread seizure of items outside the scope of the MCC warrant—which only outlined the titles of 9 unclassified articles— violated the Fourth Amendment and requires suppression. Wholesale suppression is required when government agents "(1)… effect a widespread seizure of the items that were not within the scope of the warrant and (2) do not act in good faith." *United States v. Shi Yan Liu*, 239 F.3d 138, 140 (2d Cir. 2000) (citations and internal quotation marks omitted); See *United States v. Medlin*, 842 F.2d 1194, 1199 (10th Cir. 1988) ("when law enforcement officers grossly exceed the scope of a search warrant in seizing property [not identified in the warrant], the particularity requirement is undermined and a valid warrant is transformed into a general warrant thereby requiring suppression of all evidence seized under that warrant"); See also *United States v. Rettig*, 589 F.2d 418, 423 (9th Cir. 1978) (ordering blanket suppression where, "as interpreted and executed by the [searching] agents, the warrant became an instrument for conducting a general search").

\*     \*     \*

"Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble." *United States v. Reilly*, 76 F.3d at 1280. The "sole purpose" of the exclusionary rule "is to deter future Forth Amendment violations." *Davis v. United States*, 564 US 229, 236-37 (2011).

FBI Special Agent Jeffrey David Donaldson falsified evidence, fabricated evidence, perpetrated a fraud on the court, and demonstrated malicious and malevolent intent devoid of any morality or respect for the Constitution and laws of the United States of America; he is a morally bankrupt depraved degenerate.

Donaldson's conduct is so reprehensible and contemptible that it easily surpasses the *Franks* threshold; accordingly, the good faith exception is inapplicable and the warrant void.

41

## X.    CONCLUSION

For these reasons, this court should find that FBI Special Agent Jeffrey David Donaldson committed perjury in his affidavit to search the MCC on October 2, 2018; that he violated Joshua Adam Schulte's First, Fourth, Fifth, and Sixth Amendment Constitutional Rights; and that all items seized as a result of the illegal search must be suppressed in accordance with *Franks*.

Dated: New York, New York
        January 1, 2021

Respectfully Submitted,

  /s/    **Joshua Adam Schulte**

Joshua Adam Schulte
# 79471-054
Metropolitan Correctional Center
150 Park Row,
New York, New York 10007

## XI.   EXHIBITS

Exhibit A: MCC Search Warrant Application, 10/2/18

Exhibit B: MCC Search Warrant Application, 10/3/18

Exhibit C: 2018.08.08 Unclassified Discovery Production of Facebook Subpoena

Exhibit D: *"Presumption of Innocence: A Petition for a Redress of Grievances"*

Exhibit E: *"Presumption of Innocence: A Loss of Citizenship"*

Exhibit F: *"Presumption of Innocence: Do You Want to Play a Game?"*

Exhibit G: *"Presumption of Innocence: Detention is Not Punishment"*

Exhibit H: *"Presumption of Innocence: Guilty Until Proven Wealthy"*

Exhibit I: *"Presumption of Innocence: Can You Afford to be Accused?"*

Exhibit J: *"Presumption of Innocence: A Proposed Solution"*

Exhibit K: 2018.07.17 Unclassified Discovery Production containing 7 Articles

Exhibit L: *"Presumption of Innocence: Origins"*

Exhibit M: *"The Devil's Dishonest, Deplorable, Diabolically Demented Demons"*

Exhibit N: 2018.11.01 Unclassified Discovery Production containing Snitch documents including all articles provided to Donaldson before the MCC search

Exhibit O: 2018.12.10 Unclassified Discovery Production of all 9 Schulte Articles from both the John Smith Google Account and the WordPress Account

Exhibit P: 2018.12.10 Production of Schulte's Draft Expert Report for Amanat

Exhibit Q: MCC Property Receipt detailing Mr. Schulte's move to the 9th floor