# EXHIBIT F

# Presumption of Innocence: Do You Want to Play a Game?

The criminal justice system is nothing more than a corrupt, unfair game. Particularly in the federal system, prosecutors are handed everything on a silver platter: confidential informants, video evidence, phone and wiretaps, admission to undercover agents, etc. The FBI and AUSA have had decades to perfect their system against the accused and they are exceptionally good at it. Not due to intelligence, mind you, they simply follow a playbook much like tech support; any slight deviation that forces them to think for themselves typically results in failure. The FBI playbook dates back to J. Edgar Hoover—a man known for transforming the FBI into his personal secret police and using them to covertly and illegally collect evidence and scandalous information to build secret files to intimidate and harass all those he deemed as a threat to his power. Most incredulous were his attempts to undermine the civil rights movement, proposal to suspend the writ of habeas corpus, and even blackmail congressmen, senators, and presidents to maintain his power. Hoover was a conniving. deceptive man who had no respect for the law and only sought power; he was ruthless at imposing his will and the full weight of the federal government on all he judged guilty utilizing any means necessary to destroy. Clearly, an inspirational hero to this depraved bureau that he created and where he is still honored to this day as their headquarters carry on his namesake.

The first huge addition to The Playbook was the invention of mandatory minimum sentencing in the Boggs Act of 1952. Guess what crime Congress found so abhorrent that it justified the necessity to compel all judges to impose a mandatory prison sentence of 2-10 years in prison? Possession of marijuana, That's right, the simple non-violent, victimless crime of possessing marijuana, which today in legal in many states, required the defendant to spend AT LEAST two years in prison. Two years in prison. Two years of your life lost forever because you literally had marijuana in your pocket. This law was passed out of fear to target Mexican immigrants who were bringing it with them across the border. Literally, fear mongering of immigrants and propaganda films released to demonize marijuana and all those who used it prompted its criminality and the inception of mandatory minimum sentencing. This was the building block for the prison industrial complex and modern-day slavery—the cascading effects of which we still feel today; it has had a devastating impact on the poor.

After the implementation of stiff mandatory sentencing, the next major addition to The Playbook was handed over by the Supreme Court in the 1970 Brady v. U.S. decision. The Supreme Court formally recognized plea bargaining which has revolutionized the criminal justice system. With

3 – Presumption of Innocence: Do You Want to Play a Game?

Congress' creation of extremely high mandatory sentencing of 5, 10, 15 year sentences they could now avoid trials altogether by offering less than minimum for a guilty plea—and so began the downfall of trials and trial lawyers; no one would dare risk the potential minimum of 10 years in prison if they could plead out to 3. The Supreme Court itself even recognized this and warned that plea incentives which were sufficiently large or coercive as to over-rule defendants' abilities to act freely, or used in a manner giving rise to a significant number of innocent people pleading guilty, might be prohibited or lead to concerns over constitutionality. Specifically, associate judge Byron White wrote the following in the case opinion:

> This is not to say that guilty plea convictions hold no hazards for the innocent, or that the methods of taking guilty pleas presently employed in this country are necessarily valid in all respects. This mode of conviction is no more foolproof than full trials to the court or to the jury. Accordingly, we take great precautions against unsound results. and we should continue to do so, whether conviction is by plea or by trial. We would have serious doubts about this case if the encouragement of guilty pleas by offers of leniency substantially increased the likelihood that defendants, advised by competent counsel, would falsely condemn themselves.

As to this coercive effect, in the book Presumed Guilty: When Innocent People Are Wrongly Convicted (1991), author Martin Yant discusses the use of coercion in plea bargaining:

> Even when the charges are more serious, prosecutors often can still bluff defense attorneys and their clients into pleading guilty to a lesser offense.
> As a result, people who might have been acquitted because of lack of evidence, but also who are in fact truly innocent, will often plead guilty to the charge. Why? In a word, fear. And the more numerous and serious the charges, studies have shown, the greater the fear. That explains why prosecutors sometimes seern to file every charge imaginable against defendants.

This is exactly what happened with the toxic combination of mandatory sentencing and plea bargaining as is readily apparent in the 98% plea bargain rate that we see today. Additionally, the effect of mandatory sentencing was to taint the justice system. Juries no longer simply decided guilt or innocence of a crime—they now imposed sentencing; however, it is typically not permitted to inform juries which crimes carry mandatory sentencing or for how long! Why is this? If the jury knew the absolute absurdity of some of these mandatory sentences they would have no choice but to engage in jury nullification and find the defendant not guilty. Many Americans don't even know that they possess this powerful check on both Congress and the Judicial system—to find a defendant not guilty based on external factors to the charges, namely, treatment of the defendant, disagreement with the law, disagreement with the

3 – Presumption of Innocence: Do You Want to Play a Game?

sentencing, or really for any reason whatsoever. This powerful tool is purposefully undermined by hiding mandatory minimum sentences.

Ironically, 1984 is the worst year for the American justice system as it brought about the absolute destruction of liberty for the accused. Big Brother obliterated fairness and redefined the "presumption of innocence" as its deceptive doublespeak antithesis. In the Bail Reform Act of 1984, Congress created a preventive detention system for the first time in the history of our great country. In doing so it violated a myriad of Constitutional amendments: It violated the 8th amendment by allowing the excessive bail of infinity to be imposed and the infliction of cruel and unusual punishment on those accused of a crime; It violated the 5th amendment's due process clause which implies "innocent until proven guilty"—a decision by a judge to incarcerate is in direct violation of innocence; It violated the 6th amendment as there is no possible way a fair trial is even possible when the accused is incarcerated throughout the entire pretrial and trial. Not to mention the harm to one's personal and professional reputation, health and well-being, and inability to adequately assist in legal defense. You lose income and the ability to effectively communicate with your attorneys. You lose the notion of fairness as you are brought to your trial in chains from prison. Today, more than 20% of the entire prison population are in pretrial. These 450,000 accused are almost the same total of the entire prison population in 1980 of 500,000. In 2014 the prison population exceeded 2.2 million people. In 1987 these constitutional concerns were raised to the Supreme Court in U.S. v. Salerno. The Supreme Court erroneously upheld the law. In Chief Justice Rehnquist's opinion of the court, he stated "the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." (He
further reterenced his opinion of the court in Bell v. Wolfish). I'm not sure how else the court could view incarceration—a reward? A great vacation? The Supreme Court is made up by man, which is not infallible, and so neither is the court. They have made mistakes in the past, but to uphold the notion of preventive detention for 30 years is a devastating assault on the founding principles of our country of which I'm sure our forefathers are turning in their graves. Justice Thurgood Marshall, a true American hero and ally to the Constitution, vehemently opposed Rehnquist in his dissent:

> **This case brings before the Court for the first time a statute in which Congress declares that a person innocent of any crime may be jailed indefinitely, pending the trial of allegations which are legally presumed to be untrue, if the Government shows to the satisfaction of a judge that the accused is likely to commit crimes, unrelated to the pending charges, at any time in the future. Such statutes, consistent with the usages of tyranny and the excesses of what bitter experience teaches us to call the police state, have long been thought incompatible with the fundamental human rights protected by our Constitution. Today a majority of this Court holds**

3

> **otherwise. Its decision disregards basic principles of justice established centuries ago and enshrined beyond the reach of governmental interference in the Bill of Rights.**

Furthermore, the incredible research paper titled "The Effects of Pre-Trial Detention on Conviction, Future Crime, and Employment: Evidence from Randomly Assigned Judges" was published in 2016 by Will Dobbiey, Jacob Goldinz, and Crystal Yang. Their work is remarkable and their conclusion undeniable:

> This paper estimates the impact of being released before trial on criminal case outcomes, future crime, formal sector employment, and the receipt of government benefits. We find that pre-trial release significantly decreases the probability of conviction, primarily through a decrease in guilty pleas. Pre-trial release mechanically increases pre-trial crime and failures to appear in court, but has no detectable effect on future crime. Finally, we find suggestive evidence that pretrial release increases formal sector attachment both through an increase in formal sector employment and the receipt of tax- and employment-related government benefits. Many of the estimated effects are larger for defendants with no prior offenses in the past year and defendants employed in the year prior to bail. We argue that these results are consistent with (i) pre-trial release strengthening defendants' bargaining position during plea negotiations, and (ii) a criminal conviction lowering defendants' attachment to the formal labor market.

Pre-trial release decreases the probability of pleading guilty by 12% and the probability of being found guilty by 15.6%. Pretrial detention is therefore a contributing factor to the verdict and in direct violation of the 6th amendment's guarantee to a fair trial—of this there is no question.

Where else did the Supreme Court fail us in 1984? The Good Faith Doctrine, which was established in U.S. vs. Leon. Search warrant affidavits were overturned previously due to negligence and incompetence by officers. The Supreme Court thus sought protection for these officers by providing a good faith exception to the exclusionary rule to the 4th amendment. What this means is search warrants in federal court cannot be thrown out because the probable cause is found to be false or an officer was negligent or even incompetent in compiling the affidavit. In fact, a judge can't even rule that based upon the evidence provided in stark contrast to the probable cause that he would not have found probable cause himself to issue the warrant. Essentially, even if the warrant is entirely false as long as the officer tried his hardest then the evidence is still admissible in court. How absurd! The court stated that an officer acting in good faith and within the scope of a search warrant should NOT be subjected to 4th amendment

3 – Presumption of Innocence: Do You Want to Play a Game?

constitutional violations. If the officer had reason to believe their actions were legal then it is legal. Thus, the more ignorant law enforcement officers are, the more they'll be able to get away with. And so, the standard for challenging search warrants in federal court was drastically raised so that you must show the officer outright lied or acted in a reckless disregard for the law. Once again the Constitution's only knight, Thurgood Marshall dissented. He joined Brennan in this dissent:

> Ten years ago, in United States v. Calandra, 414 U. S. 338 (1974), I expressed the fear that the Court's decision "may signal that a majority of my colleagues have positioned themselves to reopen the door [to evidence secured by official lawlessness] still further and abandon altogether the exclusionary rule in search and seizure cases." Since then, in case after case, I have witnessed the Court's gradual but determined strangulation of the rule. It now appears that the Court's victory over the Fourth Amendment is complete. That today's decisions represent the piece de resistance of the Court's past efforts cannot be doubted, for today the Court sanctions the use in the prosecution's case in chief of illegally obtained evidence against the individual whose rights have been violated a result that had previously been thought to be foreclosed. [...]
> Although the Court brushes these concerns aside, a host of grave consequences can be expected to result from its decision to carve this new exception out of the exclusionary rule. A chief consequence of today's decisions will be to convey a clear and unambiguous message to magistrates that their decisions to issue warrants are now insulated from subsequent judicial review. Creation of this new exception for good faith reliance upon a warrant implicitly tells magistrates that they need not take much care in reviewing warrant applications, since their mistakes will, from now on, have virtually no consequence: if their decision to issue a warrant was correct, the evidence will be admitted; if their decision was incorrect but the police relied in good faith on the warrant, the evidence will also be admitted. Inevitably, the care and attention devoted to such an inconsequential chore will dwindle. Although the Court is correct to note that magistrates do not share the same stake in the outcome of a criminal case as the police, they nevertheless need to appreciate that their role is of some moment in order to continue performing the important task of carefully reviewing warrant applications. Today's decisions effectively remove that incentive.

Moreover, the good faith exception will encourage police to provide only the bare minimum of information in future warrant applications. The police will now know that, if they can secure a warrant, so long as the circumstances of its issuance are not "entirely unreasonable," ante at 468 U. S. 923, all police conduct pursuant to that warrant will be protected from further judicial review. The clear incentive that operated in the past to establish probable cause adequately because reviewing courts would examine the magistrate's judgment carefully, see, e.g., Franks v.

5

3 – Presumption of Innocence: Do You Want to Play a Game?

Delaware, 438 U. S. 154, 438 U. S. 169-170 (1978); Jones v. United States, 362 U. S. 257, 362 U. S. 271-272 (1960); Giordenello v. United states, 357 U. S. 480, 357 U. S. 483 (1958), has now been so completely vitiated that the police need only show that it was not "entirely unreasonable" under the circumstances.

What is the purpose of the Bill of Rights? What is the purpose of the Constitution'? Today, these documents have been entirely eroded and are completely meaningless as the judicial branch of the United States of America has failed to uphold the law and protect the fights of the accused against the incursion of Congress' unrelenting pursuit to invalidate them. Incredulously, these indefeasible liberties have been usurped; These inalienable rights stolen. The Supreme Court's reprehensible and unconscionable acceptance of mandatory minimum sentencing, coercive plea bargains, and outright totalitarian pretrial detention renders the entire Constitution and Bill of Rights inert. Rehnquist's contradictory and nonsensical rulings are incomprehensible and should elicit contemptible scorn from all those who hold traditional American values such as liberty and justice for all—His repugnant reign of terror has devastated the court and left America in a state of wretched tyranny as the federal government can freely abduct its own citizens, inhumanely cage them indefinitely, threaten to enslave them for decades, and then coerce them into abdicating their right to a trial and appeal as they plead guilty regardless of their own culpability. This overt treachery against its own people is nothing short of a national embarrassment. Clearly, the American experiment of democracy and a republic has resulted in catastrophic failure.

—John Galt