UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

JOSHUA ADAM SCHULTE,

        *Defendant.*

S2 17 Cr. 548 (PAC)

# MOTION FOR RECONSIDERATION OF PETITION FOR WRIT OF HABEAS CORPUS TO MODIFY CONDITIONS OF CONFINEMENT PURSUANT TO 28 U.S.C. § 2241 AND MOTION FOR RELEASE

Joshua Adam Schulte
Metropolitan Correctional Center
150 Park Row
NY, NY 10007

## TABLE OF CONTENTS

I.   TABLE OF AUTHORITIES ......................................................................................... ii

II.  PRELIMINARY STATEMENT ................................................................................... 1

III. MR. SCHULTE MUST BE RELEASED FROM UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT ........................................................................ 2

    A.  A pretrial petition for habeas corpus is legal and proper before this court .. 2

    B.  Mr. Schulte is illegally tortured in violation of the United States Constitution ......................................................................................................... 4

    C.  Mr. Schulte cannot effectively assist in his own defense while he is tortured ................................................................................................................ 5

    D.  If the government refuses to address these issues then Mr. Schulte must be released on bail pending trial .............................................................................. 7

    E.  Mr. Schulte already tried to address these issues in a civil action ............... 7

    F.  Updates and reiteration of requested confinement modifications ................ 9

        1.  From the FBI (Orig. Mot. III.C) .................................................................. 10

        2.  From the MCC (Orig. Mot. III.B) ............................................................... 10

        3.  Force Compliance with the PLRA (Orig. Mot. IV) .................................. 11

IV.  CONCLUSION ............................................................................................................ 12

# I. TABLE OF AUTHORITIES

**Cases**

*Bell v. Wolfish*,
  441 US 520 (1979) .................................................................................................. 4

*Groysman v. Baird*,
  No. 16 Civ. 4218 (E.D.N.Y. 2016) .......................................................................... 3

*Joshua Adam Schulte v. Attorney General of the United States, et al.*,
  19 Civ. 3346 (S.D.N.Y. 2019) ................................................................................. 8

*Joshua Adam Schulte v. William P. Barr, Attorney General, et al.*,
  No. 19-8871 (2020) .................................................................................................. 9

*Leftridge v. Conn. State Trooper Officer No. 1283*,
  640 F.3d 62 (2d Cir. 2011) ...................................................................................... 8

*McGinnis v. Royster*,
  410 US 263 (1973) .................................................................................................. 6

*Rumsfeld v. Padilla*,
  542 US 426 (2004) .................................................................................................. 3

*Schall v. Martin*,
  467 US 253 (1984) .................................................................................................. 6

*Turner v. Safley*,
  482 US 78 (1987) ............................................................................................ 2, 5, 6

*United States v. Basciano*,
  369 F. Supp. 2d 344 (E.D.N.Y. 2005) ..................................................................... 2

*United States v. Bout*,
  860 F. Supp. 2d 303 (S.D.N.Y. 2012) ..................................................................... 2

*United States v. Felipe*,
  148 F.3d 101 (2d Cir. 1998) .................................................................................... 6

*United States v. Khan*,
  540 F. Supp. 2d 344 (S.D.N.Y. 2007) ..................................................................... 2

*United States v. McGriff*,
  468 F. Supp. 2d 445 (E.D.N.Y. 2007) ..................................................................... 2

*United States v. Millan*,
  4 F.3d 1038 (2d Cir. 1993) ...................................................................................... 4

*United States v. Salerno*,
  481 US 739 (1987) .................................................................................................. 4

## Statutes

28 U.S.C. § 1291 ............................................................................................................. 9
28 U.S.C. § 2241 ..................................................................................................... 1, 3, 7
28 U.S.C. § 2243 ............................................................................................................. 3
Bail Reform Act of 1984 ................................................................................................ 2
Prisoner Litigation Reform Act ............................................................................. 11, 12
Privacy Act ............................................................................................................. 11, 12

## Constitutional Provisions

U.S. Const. amend. I ...................................................................................................... 4
U.S. Const. amend. IV ................................................................................................... 4
U.S. Const. amend. V .................................................................................................... 4
U.S. Const. amend. VI ................................................................................................... 4
U.S. Const. amend. VIII ................................................................................................ 4

## Other Authorities

*Regulating Prisons of the Future: A Psychological Analysis of Supermax and Solitary Confinement* by Craig Haney and Mona Lynch, 23 N.Y.U. Rev. L. & Soc. Change 477, 531 (1997) ............................................................................. 5

## II.     PRELIMINARY STATEMENT

Joshua Adam Schulte filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 to modify unconstitutional conditions of confinement on January 15, 2021. The government responded on January 27, 2021. Mr. Schulte intended to file a Reply, but due to the FBI's interception and deliberate delay of all legal mail (which is one of the critical issues raised in this motion), he did not receive the government's response until February 23, 2021—at which point this Court already issued an order dismissing the motion without prejudice (February 9, 2021), instructing Mr. Schulte to file a separate civil action.

The government's position that Mr. Schulte must file a separate civil action is without precedent; there is no law, statute, rule, or legal precedent that prohibits Mr. Schulte from bringing his petition before this court; to the contrary, there are countless examples that demonstrate that it is necessary and proper to bring a pretrial petition to modify conditions of confinement pursuant to 28 U.S.C. § 2241 before the criminal court of prosecution. Accordingly, Mr. Schulte moves this Court to reconsider his motion.

Alternatively, Mr. Schulte seeks pretrial release in accordance with the Bail Reform Act if the Bureau of Prisons do not cease its unconstitutional torture of Mr. Schulte.

Finally, Mr. Schulte reminds the Court that he already attempted to resolve these issues in a separate civil action that this Court ordered "administratively closed" until the issues therein were moot, thereby effectively denying and preventing Mr. Schulte from resolving these issues civilly.

### III. MR. SCHULTE MUST BE RELEASED FROM UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT

#### A. A pretrial petition for habeas corpus is legal and proper before this court

This Court properly has jurisdiction to entertain this petition for writ of habeas corpus since Mr. Schulte is detained pursuant to the Bail Reform Act, and his conditions of confinement are under the direct supervision and authority of this Court to ensure Mr. Schulte's preparation for trial. "While BOP contends that because [defendant] has not been released on bail, the Court lacks jurisdiction to monitor the conditions of his confinement under the Bail Reform Act of 1984 ("BRA"), 18 U.S.C § 3141-3150, this contention ignores the Court's jurisdiction to entertain a habeas petition challenging the conditions of pretrial confinement." *United States v. McGriff*, 468 F. Supp. 2d 445, 447 (E.D.N.Y. 2007); "The courts of this circuit consistently have held that a habeas petition is the appropriate vehicle for prisoners challenging their placement in pretrial administrative detention and seeking release into general population." (collecting cases) *United States v. Basciano*, 369 F. Supp. 2d 344, 348 (E.D.N.Y. 2005); "The Supreme Court has noted that '[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution' and that '[w]hen a prison... practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights.'" *United States v. Bout*, 860 F. Supp. 2d 303, 305 (S.D.N.Y. 2012) (quoting *Turner v. Safley*, 482 US 78, 84 (1987)); See also *United States v. Khan*, 540 F. Supp. 2d 344 (S.D.N.Y. 2007).

Indeed, this Court has already heard a similar motion: Mr. Schulte's Motion to Vacate Special Administrative Measures (SAMs), filed May 13, 2019 (Dkt.

#92). This SAMs motion is in effect a petition for writ of habeas corpus to modify conditions of confinement pursuant to 28 U.S.C. § 2241. The government did not argue that Mr. Schulte needed to file a separate civil rights action to challenge SAMs, nor did this Court rule so. Hence, Mr. Schulte properly brings this motion before the Court.

The government relied on *Groysman v. Baird*, No. 16 Civ. 4218 (E.D.N.Y. 2016), which was nothing more than a district judge's dismissal for failure to exhaust administrative remedies—literally nothing to do with the issues involved here. The government also referenced *Rumsfeld v. Padilla*, 542 US 426 (2004), which was nothing more than a dismissal of a habeas petition for bringing it in the wrong district—again, completely irrelevant to the issue at hand. Mr. Schulte does not envy the government as defending the MCC's torture of Mr. Schulte is indefensible, but the government's half-hearted attempts to deflect the issue by naming random cases is absurd and embarrassing. This Court should proceed with the clear jurisdiction and power to entertain and grant Mr. Schulte's writ.

Additionally, 28 U.S.C. § 2241 states that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The Court may entertain a petition for a writ of habeas corpus from a person in custody to challenge the legality of his detention on the grounds that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Court has the authority to review the petition and "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled [to such relief]." 28 U.S.C. § 2243. These conditions are met, and this Court should review the merits of Mr. Schulte's petition.

**B.     Mr. Schulte is illegally tortured in violation of the United States Constitution**

It is well-settled that so long as pretrial detention is administrative rather than punitive, it is constitutional. See *United States v. Salerno*, 481 US 739, 746-51 (1987); *Bell v. Wolfish*, 441 US 520, 535-40 (1979); *United States v. Millan*, 4 F.3d 1038, 1042 (2d Cir. 1993). Whether detention is punitive rather than regulatory generally turns on "whether an alternative purpose to which [the defendant] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose." *Wolfish*, 441 US at 538.

Mr. Schulte is a pretrial inmate who legally cannot be punished, let alone tortured. Mr. Schulte is locked in a concrete and steel box the size of a parking space for 24-hours a day, 7 days a week. These conditions of confinement are no different, and often times worse, than the *punishment* imposed upon those convicted of the most heinous crimes of mass murder and terrorism and held at the U.S. Penitentiary Administrative Maximum (ADX) federal prison.

As Mr. Schulte's petition stated, the MCC is violating Mr. Schulte's First, Fourth, Fifth, Sixth, and Eighth Amendments to the United States Constitution— no less than half the entire Bill of Rights—rights supposedly *inalienable*. Some of these violations are barbaric human rights atrocities that should have been righted years ago—there is no reason that the MCC must subject Mr. Schulte to sleep deprivation, exposure to the extreme cold without heat in the winter, no hot water, non-functioning plumbing, filth and rodents, the ban from ever going outside or even looking outside, the ban of medical and dental treatment, denial of access to religious services, the ban of all books, and limited, monitored family contact.

4

It is well-documented that long periods of solitary confinement can have devastating effects on the mental well-being of a detainee. See, e.g., Craig Haney & Mona Lynch, *Regulating Prisons of the Future: A Psychological Analysis of Supermax and Solitary Confinement*, 23 N.Y.U. Rev. L. & Soc. Change 477, 531 (1997) ("Direct studies of the effects of prison isolation have documented a wide range of harmful psychological effects, including increases in negative attitudes and affect, insomnia, anxiety, panic, withdrawal, hypersensitivity, ruminations, cognitive dysfunction, hallucinations, loss of control, aggression, rage, paranoia, hopelessness, lethargy, depression, emotional breakdowns, self-mutilations, and suicidal impulses… There is not a single study of solitary confinement wherein non-voluntary confinement that lasted for longer than 10 days failed to result in negative psychological effects."). Even Supreme Court justices have spoken out about solitary confinement; Justice Anthony Kennedy said "[t]he human toll wrought by extended terms of isolation long has been understood, and questioned, by writers and commentators"; Justice Sonia Sotomayer said "[c]ourts and corrections officers must accordingly remain alert to the clear Constitutional problems raised by keeping prisoners […] in near-total isolation from the living world […] in what comes perilously close to a penal tomb."

### C. Mr. Schulte cannot effectively assist in his own defense while he is tortured

Mr. Schulte asserts that the conditions of his confinement violate his due process rights because they restrict his ability to prepare a defense. In *Turner v. Safley*, 482 US at 87, the Supreme Court clarified what standard of review governs inmates' constitutional claims. To determine whether a prison regulation "burdens fundamental rights," the reviewing court asks whether the regulation is "reasonably related" to legitimate penological objectives, or whether it represents an

5

'exaggerated response' to those concerns." *Id. Turner* outlined a four-factor test for evaluating whether a prison regulation that allegedly violates a constitutional right is reasonably related to a valid correctional objective. The court must consider first whether there is a "valid, rational connection" between the regulation and the legitimate governmental interest used to justify it; second, whether there are alternative means for the prisoner to exercise the right at issue; third, the impact that the desired accommodation will have on guards, other inmates, and prison resources; and fourth, the absence of "ready alternatives." *Id.* at 89-91; accord *United States v. Felipe*, 148 F.3d 101, 110 (2d Cir. 1998).

Where the regulation at issue imposes pretrial, rather than post-conviction restrictions on liberty, the "legitimate penological interests" served must go beyond the traditional objective of rehabilitation or punishment. See *McGinnis v. Royster*, 410 US 263, 273 (1973) ("It would hardly be appropriate for the State to undertake in the pretrial detention period programs to rehabilitate a man still clothed with a presumption of innocence."); cf. *Schall v. Martin*, 467 US 253, 263-64 (1984) (upholding pretrial detention of juvenile delinquents only after a finding of "serious risk" on the ground that it served a legitimate, non-punitive regulatory purpose).

Mr. Schulte's torture is without any penological interest. For what purpose must Mr. Schulte undergo sleep deprivation and the extreme cold? For what purpose must Mr. Schulte live in filth with rodents? For what purpose must Mr. Schulte use non-functioning plumbing and be denied access to hot water? For what purpose is Mr. Schulte banned from the Institution's library and all books? For what purpose is Mr. Schulte banned from television and any form of entertainment? Why is Mr. Schulte banned from going outside or even looking outside? Why must Mr. Schulte be shackled from head-to-foot like Hannibal Lector at all times? He is accused of no violence.

There are easy alternatives for all of these unnecessary hardships—the solution is simply to provide Mr. Schulte with the same conditions that all other MCC pretrial inmates "enjoy". Mr. Schulte asks this Court nothing more than to grant Mr. Schulte the same "privileges" and "amenities" as the rest of the MCC pretrial general population. Mr. Schulte is already tortured in indefinite solitary confinement (the United Nations condemns anything over two consecutive weeks of solitary as barbaric torture), he should at least be afforded the bare essentials that all other inmates enjoy—functional plumbing, books, the law library, radio, and television. Mr. Schulte should be treated as a human being, not a slave.

### D. If the government refuses to address these issues then Mr. Schulte must be released on bail pending trial

Mr. Schulte is currently "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c)(3), because under the Bail Reform Act Mr. Schulte can only be "*detained*," but he is *incarcerated*, punished, and tortured. Mr. Schulte's detention is predicated on the Bail Reform Act and his need to assist in his own defense before trial, but the government's imposition of punishment and torture undermines the law and purpose of his detention. If the government refuses to relieve Mr. Schulte of the punishment and torture imposed upon him in violation of the United States Constitution, the law compels this Court to release Mr. Schulte.

### E. Mr. Schulte already tried to address these issues in a civil action

"On April 12, 2019, Pro Se Plaintiff Joshua Schulte filed a Complaint for Violation of Civil Rights… Subsequently, Plaintiff filed a joint Petition to End Torture and Inhumane Conditions (as an Addendum to the Petition for Writ of Habeas Corpus) and a Petition for Judgment in Torture and Human Rights

7

Atrocities Committed by the United States of America, dated May 30, 2019. Dkt. 7. These petitions 'seek[] an end to torture and inhumane conditions wrought by defendants' and 'damages as part of civil rights litigation… based on clear evidence of torture.'" *Joshua Adam Schulte v. Attorney General of the United States, et al.*, 19 Civ. 3346 (PAC), Dismissal Order, August 14, 2019, Dkt. 11.

Mr. Schulte already tried to file a separate civil action to address these very same issues—nearly two years ago. This Court ruled that Mr. Schulte's civil rights law suit "shall be administratively closed, with leave to reopen following resolution of the underlying criminal proceedings against Plaintiff." *Id.*

Unable to address his civil rights issues, Mr. Schulte filed an appeal with the Second Circuit Court of Appeals, 19-2940. The Court of Appeals dismissed Mr. Schulte's Appeal without consideration on January 30, 2020 (Dkt. 137).

Mr. Schulte then filed for a rehearing, arguing that "[t]he circumstances of this case are not unlike the very case this Court referenced in its denial order, *Leftridge v. Conn. State Trooper Officer No. 1283*, 640 F.3d 62 (2d Cir. 2011): 'In the present case, it appears that the district court intended its […] Order, although not addressing the merits of the case or any issue in it, to be its final decision,' *Id* at 66; 'Even if that were not the court's intent, the […] Order plainly ended [the] case in the district court as a practical matter,' *Id* at 67. Indeed, here as in *Leftridge*, the district court's Order plainly ended the case as a practical matter. The Order administratively closing the case until the conclusion of the criminal case essentially denied all issues challenging pretrial conditions of confinement. Since the Plaintiff could not address his pretrial habeas petitions, it was not only appropriate, but the only judicial mechanism left, to file an appeal. Therefore this Court should reach the same conclusion here as it did in *Leftridge*: 'Accordingly,

8

we view the […] Order as a final decision within the meaning of § 1291. **_We cannot, as a matter of sound jurisprudence, conclude that an aggrieved party has no right to appellate review of a district court order that 'administratively' unconditionally ends the case.'_** *Id.* (emphasis added)." Dkt. 113.

The Second Circuit Court of Appeals was unmoved, and denied Mr. Schulte's petition for rehearing on April 1, 2020.

Mr. Schulte then filed a petition for writ of certiorari with the Supreme Court, *Joshua Adam Schulte v. William P. Barr, Attorney General, et al.*, No. 19-8871; "This question has essentially been answered by this Court in its Collateral Order Doctrine. Yet, the courts of appeals continue to disregard or ignore this critical doctrine, and the Supreme Court should intervene not only in the due process interests of the Petitioner but also to clarify and eliminate gross abuses of power from the lower courts; these courts are wielding 'administrative closures' as a powerful tool to deny due process to the poor and further oppress those with no advocate, who file *pro se*. Until this issue and others like it are resolved, there will continue to be two justice systems in America: one where the rich and powerful are granted due process and one where the poor and oppressed cannot even have the merits of their cases reviewed by any court." The Supreme Court denied Mr. Schulte's petition on October 5, 2020.

Mr. Schulte is under no obligation to spend another $350 to file a successive civil rights law suit, wasting another two years just for a district judge to order the civil rights suit "administratively closed" until the suit is moot. The MCC is torturing Mr. Schulte *now*—there must be a resolution *now*.

### F.   Updates and reiteration of requested confinement modifications

Mr. Schulte requests the following relief. See original Motion for full petition.

9

### 1. From the FBI (Orig. Mot. III.C)

Mr. Schulte moves this Court for an injunction against the FBI to prevent them from intercepting and reading Mr. Schulte's *incoming* mail as Mr. Schulte cannot possibly transmit national defense information by *receiving* mail—especially legal mail, mail from the courts, and mail from U.S. attorneys.

### 2. From the MCC (Orig. Mot. III.B)

Mr. Schulte requests the following, which is nothing more than what all other MCC inmates are provided.

- Toggle-able light switches for his cage
- Replace non-functioning torture sink, toilet, and shower with the normal non-torture alternatives used in the rest of MCC (The MCC provides general population with normal, functioning plumbing and specifically purchases completely different sinks, toilets, and showers that do not work, to torture SAMs inmates—nowhere else does the MCC use these torture devices)
- Heat in the winter and air conditioning in the summer (update: MCC pulled Mr. Schulte out of his cage, and while he was wearing four layers of clothing including sweats, informed him that he was a liar and his cell was a toasty 80 degrees—but the cameras and thermometers would vindicate Mr. Schulte)
- Clean cells (update: MCC providing spray bottles and brush, but still insufficient to clear out mold and other filth—and the MCC is still not cleaning cells between rotations)
- Access to a library and books (electronic access to NYC library would solve the MCC's arbitrary ban of all SAMs inmates from its library)
- Access to outside recreation

- Unblocked windows so Mr. Schulte can look outside
- Same number of monthly phone minutes and visits as rest of MCC, including full-contact, unmonitored family visits (once visitation resumes)
- Access to religious services
- Regular medical and dental visits (update: Mr. Schulte was finally treated for severe dental pain, but MCC's medical team remains insufficient and refuses to conduct reoccurring preventative care and check-ups)
- Power outlet in cell and laptop with full LEXIS NEXUS law library 24/7
- Full-contact, unmonitored legal visits
- TRULINCS email
- Full commissary as rest of MCC (MCC arbitrarily bans all snacks and other foods from commissary as a form of punishment for SAMs inmates)
- TV in cell and radio (General population has access to televisions and radio 24/7 and snitches on the third floor have televisions in their cells as reward)
- No handcuffs and chains when moved on 10S and in the prison—the same as other inmates
- Privacy Act Request fulfilled; full SHU record including recordings from cameras

### 3.   Force Compliance with the PLRA (Orig. Mot. IV)

Finally, Mr. Schulte asks this Court to compel the Bureau of Prisons to properly comply with the Prisoner Litigation Reform Act by updating its grievance system to use its own electronic TRULINCS computer system since it already uses this system to input and respond to the grievances, and to respond to informal requests.

## IV.    CONCLUSION

The Court should reconsider its dismissal of Mr. Schulte's January 15, 2021 Petition for Writ of Habeas Corpus to Modify Conditions of Release Pursuant to 28 U.S.C. § 2241. Upon review of the merits, this Court should rule that the Metropolitan Correctional Center imposed unconstitutional conditions of confinement upon Mr. Schulte, and should order relief from all issues. Alternatively, if the government refuses to relieve the unconstitutional conditions of confinement, then this Court should order Mr. Schulte's release. The Court should compel the MCC to abide by the Privacy Act and produce all prison documents to Mr. Schulte. The Court should order the FBI to stop intercepting mail sent to Mr. Schulte, particularly legal mail and court correspondence. Finally, the Court should find the BOP in violation of the Prisoner Litigation Reform Act, and order it to update its administrative remedy process to electronic format.

Dated: New York, New York
      February 24, 2021

Respectfully submitted,

Joshua Adam Schulte
Metropolitan Correctional Center
150 Park Row
NY, NY 10007