L6F3SCHC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                            17 Cr. 548 (PAC)

JOSHUA ADAM SCHULTE,

            Defendant.                    Conference

------------------------------x
                                          New York, N.Y.
                                          June 15, 2021
                                          2:00 p.m.
Before:

                    HON. PAUL A. CROTTY,
                                        District Judge
                         APPEARANCES

AUDREY STRAUSS
     United States Attorney for the
     Southern District of New York
BY:  DAVID W. DENTON JR.
     Assistant United States Attorney

SABRINA P. SHROFF
     Attorney for Defendant
     -and-
COLSON LAW PLLC
BY:  DEBORAH A. COLSON


Also Present:   Daniel Hartenstine, CISO, Department of Justice
```

1          THE DEPUTY CLERK:  This is the matter of 17 CR 548,
2     United States v. Joshua Schulte.  Counsel for government,
3     please state your appearance.
4          MR. DENTON:  Good afternoon, your Honor.  David Denton
5     for the government.
6          THE COURT:  Mr. Denton.
7          THE DEPUTY CLERK:  Counsel for the defendant.
8          MS. SHROFF:  Good afternoon, your Honor.  On behalf of
9     Mr. Schulte, Sabrina Shroff and Deborah Colson.  I do apologize
10    on behalf of my colleague Mr. Zas.  He could not be here due to
11    medical reasons.
12         THE COURT:  All right.  I hope he gets better soon.
13         MS. SHROFF:  We do too.  Thank you, your Honor.
14         THE COURT:  A word about the protocol.  It depends
15    upon whether everybody's been vaccinated.  Has everybody been
16    vaccinated?
17         Let me tell you what the punchline is.  If you've been
18    vaccinated, we don't have to wear face masks.
19         MS. SHROFF:  I don't believe the defendant has been
20    vaccinated.
21         THE COURT:  We'll wear face masks then.
22         Mr. Denton, when are the new members of your team
23    going to appear?
24         MR. DENTON:  Hopefully imminently, your Honor.  But
25    not today.

1   THE COURT:  All right.  Do you have anything you want
2   to bring up before I get to my agenda?
3   MR. DENTON:  Just one thing, your Honor, we wanted to
4   put on the record.  The government was notified last week that
5   the defendant had filed a pro se mandamus petition in the
6   Second Circuit.  I think the only thing we wanted to put on the
7   record is he raised a question about conducting a *Faretta*
8   hearing in this case, and we just wanted to note that, based on
9   the government's review of the docket in this case, the
10  defendant has not made the sort of unequivocal invocation that
11  would require such a hearing at this time.  But obviously if
12  that changes, we would be happy to address it with the Court.
13  THE COURT:  Ms. Shroff, anything you want to bring up?
14  (Defendant conferring with his counsel)
15  MS. SHROFF:  Thank you, your Honor.  I apologize for
16  the delay in response.
17  I have conferred with Mr. Schulte.  Mr. Schulte
18  advises me that I should advise the Court that the government's
19  position on his request to proceed pro se is inaccurate.  In
20  November of last year, Mr. Schulte asked this Court to allow
21  him to proceed pro se.  And that is the correction Mr. Schulte
22  would like me to make on the record.
23  THE COURT:  What did we do back in November?
24  MS. SHROFF:  Nothing.
25  THE COURT:  What does he want me to do now?

|  |  |
|---|---|
| 1 | MS. SHROFF:  He wishes me to advise you, the Court, most respectfully of course, Mr. Schulte continues to wish to proceed pro se at trial. |
| 4 | THE COURT:  Mr. Schulte -- I missed the last part. |
| 5 | MS. SHROFF:  That Mr. Schulte wishes to proceed pro se at the upcoming trial. |
| 7 | THE COURT:  And what would that do to your position, Ms. Shroff? |
| 9 | MS. SHROFF:  Well, I am assuming, your Honor, that the Court will conduct a *Faretta* inquiry, and should the Court feel that Mr. Schulte is fit to proceed, and represent himself, this Court could assign me, allow me and Ms. Colson to continue as standby counsel for him. |

        MS. SHROFF:  He wishes me to advise you, the Court,
most respectfully of course, Mr. Schulte continues to wish to
proceed pro se at trial.
        THE COURT:  Mr. Schulte -- I missed the last part.
        MS. SHROFF:  That Mr. Schulte wishes to proceed pro se
at the upcoming trial.
        THE COURT:  And what would that do to your position,
Ms. Shroff?
        MS. SHROFF:  Well, I am assuming, your Honor, that the
Court will conduct a *Faretta* inquiry, and should the Court feel
that Mr. Schulte is fit to proceed, and represent himself, this
Court could assign me, allow me and Ms. Colson to continue as
standby counsel for him.
        In the alternative, the Court could relieve us as
counsel completely and allow Mr. Schulte to proceed pro se.
        Of course, it is within the Court's discretion, after
the *Faretta* hearing, to find that Mr. Schulte is in need of a
competency hearing, I mean examination, or that he is not fit
to proceed pro se.
        Those are the options that I see before the Court.
        I was just conferring with Ms. Colson from a distance
and I believe I am right.  Just to sum up, the Court could find
after a *Faretta* hearing --
        THE COURT:  You believe a *Faretta* hearing is
necessary, don't you, Ms. Shroff?

MS. SHROFF:  Well, if Mr. Schulte continues to, continues in his desire to proceed pro se, then yes, a *Faretta* hearing would be necessary.

THE COURT:  Mr. Denton, do you agree?

MR. DENTON:  Assuming that's correct, your Honor, and that it is an unequivocal waiver of his right to counsel and not simply a desire for new counsel, then yes, such a hearing would be required.

MS. SHROFF:  I don't know where Mr. Denton is interjecting new counsel for.  There is no such request.  Mr. Schulte's request is to proceed pro se.

THE COURT:  Well, I'd like to be briefed on the *Faretta* point, whether or not we do need to go forward with a hearing.  Mr. Denton thinks we may not.  You think we have to, Ms. Shroff.  So I'll take briefing on the issue of whether or not a *Faretta* hearing is necessary.

MS. SHROFF:  I'm sorry, your Honor.  Does the United States government believe that a *Faretta* hearing is not necessary?

THE COURT:  Not necessary at this point.

MS. SHROFF:  I just wanted -- I thought Mr. Denton said the opposite, but I want to be clear.

THE COURT:  We have Mr. Denton here so we can ask him.

MR. DENTON:  Your Honor, I think, again, we're in a little bit of a difficult position because this is the first

1  time that the government is hearing the defendant express this
2  desire, other than in the mandamus petition he filed.
3  Obviously, in order to trigger a *Faretta* hearing, the law is
4  clear that the defendant has to make an unequivocal invocation
5  of his right to proceed pro se.  If that is where we are, then
6  yes, a *Faretta* hearing is required.
7            Typically, a *Faretta* hearing comes after a little more
8  discussion than simply one statement at a conference that
9  that's what the defendant would like to do.  So I think it may
10 be appropriate for us to file a letter with the Court and lay
11 out the law on this for you.
12           MS. SHROFF:  I'm not sure -- I apologize, your Honor,
13 I'm not sure how much more clear we can be.  Mr. Schulte has
14 asked me to stand up and correct Mr. Denton that this is the
15 first time he's hearing that Mr. Schulte wishes to proceed pro
16 se.  There is a November filing on PACER that Mr. Schulte asked
17 to go pro se.  Mr. Schulte's in court today.  He has informed
18 the Court that he wishes to proceed pro se.  I'm not sure if
19 more is required from him.
20           THE COURT:  I'd like to be briefed on the point.  I'm
21 not sure whether Mr. Schulte is right or Mr. Denton is right.
22           MS. SHROFF:  So, is the briefing required from the
23 government or from us?
24           THE COURT:  Well, from the government first.
25           MS. SHROFF:  Okay.

        THE COURT:  And then you'd respond to it, I would hope, Ms. Shroff.

        MS. SHROFF:  Certainly, your Honor.

        THE COURT:  I did want to find out about the SCIFs and the experts.  What is your position on SCIFs, Ms. Shroff?

        MS. SHROFF:  Your Honor, I believe I discussed this matter extensively with the CISO in this case.  The SCIF on 9 should be reopened, and Mr. Schulte should have access to it.  I've asked the court information security officer to arrange that.  I have not had much success, I think because of the marshals' backup, not because of the CISO.  But I think everybody is especially inundated with work.  But that's what's holding us back.

        THE COURT:  Mr. Hartenstein?

        MR. HARTENSTINE:  Your Honor, I've had conversation with the U.S. marshals as well.  They continue to have staffing concerns with regard to the production of Mr. Schulte to the SCIF that was used for the first trial.

        In the meantime, we have installed, completed construction of the SCIF located within the marshals' space interview room SCIF, and that is ready for use.  However, there are some complexities involved with the manner of discovery production in this case, such as computer systems.  That would probably present a challenge in the marshals' space.  It is suitable for conversations, as well as sharing documents and

1   information between counsel and defendant.  And I think that
2   what we might be looking at would be a system where the
3   marshals' SCIF could be used whenever possible, whereas the
4   SCIF that was used for the first trial would be for when
5   Mr. Schulte needs to access these computer systems.
6           MS. SHROFF:  Well, your Honor, the case is about
7   computer systems, so Mr. Schulte is going to need the computer
8   system.  And how he proceeds with defending this case is
9   certainly not going to be up to the CISO.
10          So we need a SCIF where he can access the CIA
11  computer, and that's where we are.
12          THE COURT:  Well, I'd like you to tell me exactly what
13  it is you need in the SCIF so we can charge the marshals'
14  office with trying to accommodate your request vis-a-vis the
15  SCIF, and if they can't, explain the reason why.
16          MS. SHROFF:  I spoke to Saleh, and he says we are in
17  queue, and that he will accommodate our request.
18          THE MARSHAL:  I told her we can work on a hybrid as
19  far as whenever he needs computer access, we can try to work on
20  that hybrid and get him on the 9th floor.  But due to
21  constraints of manpower, that's the reason we went out and we
22  had this built on the 4th floor, so if they needed a SCIF, they
23  can use it every day, five days a week.
24          THE COURT:  What's wrong with that SCIF, Ms. Shroff?
25          MS. SHROFF:  There is no CIA computer in there.

1   That's all we need.  It is a CIA leak case from a CIA computer
2   system.  And the CIA computer can't fit on the 4th floor SCIF.
3   So that's --
4              THE COURT:  Can it fit in the 9th floor?
5              THE MARSHAL:  It is actually there now.
6              MS. SHROFF:  Right.
7              THE COURT:  And the problem with the 9th floor SCIF is
8   what?
9              THE MARSHAL:  We have to man it.  We have to -- we
10  would have to have security there to man them while they are
11  using the SCIF.
12             THE COURT:  I thought Mr. Hartenstein was saying
13  something where the FBI was going to provide one man and the
14  marshals would provide one person.
15             MR. HARTENSTINE:  Correct.  That was my understanding,
16  and that was also the arrangement from the first trial and
17  pretrial.
18             MS. SHROFF:  So the FBI's personnel is fine with us,
19  we don't need a marshal person at all.  We certainly do not
20  ever want to impose on Saleh, most of all.  So, we've offered
21  this before several times, for more than a year we have
22  offered, because we are the defense counsel.  Mr. Schulte's
23  handcuffed or leg cuffed actually, he's leg cuffed in the SCIF.
24  There has never been an incident with him at all, ever.  The
25  SCIF is watched through a computer monitor.

1     So, all the United States attorney's office needs to
2 do is to provide us an FBI man who can sit there and man us.
3 Saleh's office does not need to be there at all, other than to
4 bring Mr. Schulte to the CIA computer, which will not fit on
5 the 4th floor and will only fit on the 9th floor.
6     THE COURT:  What's wrong with that, Mr. Denton?
7     MR. DENTON:  Your Honor, with respect to the staffing
8 requirements, we've told defense counsel that the FBI was happy
9 to continue to provide the same manpower that they were
10 providing before.
11     I think the issue is that the defendant is in the
12 custody of the marshals.  And so I'm not entirely sure whether
13 or what sort of arrangement would be required to essentially
14 transfer him to the custody of the FBI for these visits to the
15 SCIF, or whether that's something the marshals would permit.
16     THE COURT:  What did we do in the first trial?
17     MR. DENTON:  It was a split.
18     THE MARSHAL:  It was one and one.
19     THE COURT:  Well, if it is one and one, that was
20 satisfactory, and it's deemed to be satisfactory now.  What is
21 the problem?
22     MS. SHROFF:  May I just be heard for a minute?
23     THE COURT:  Yes.
24     MS. SHROFF:  So the government is wrong about the DoJ
25 custody -- I mean the marshals' custody issue.  The initial

1    SCIF was in the FBI building.  There was never a marshal there.
2    The FBI brought him, I walked over from my office to the FBI
3    SCIF, I sat with him, alone in the FBI SCIF, there was not a
4    marshal in sight at all, ever.  And he was still in marshals'
5    custody, according to the FBI at that time.
6              It is only later that the FBI decided they didn't want
7    us in the FBI building SCIF, so they moved us to the court
8    SCIF.
9              There is zero legitimacy to the argument that
10   Mr. Saleh's staff needs to be present because he's in, quote
11   unquote, marshal custody.  I do not have the dates, but I'm
12   sure Mr. Hartenstine can correct me if I'm wrong.  He was taken
13   for months -- Mr. Denton wasn't on the case at that time.  It
14   was merely Mr. Kamaraju and Mr. Laroche.  For months and months
15   and months and more months, I sat with him alone in the FBI
16   SCIF with no marshal in sight.
17             THE MARSHAL:  I can address that, your Honor.
18             THE COURT:  Yes, please.
19             THE MARSHAL:  I believe when he was taken to the FBI
20   building, he was taken out on a takeout order.  So in other
21   words, we -- they would have to have an order that they're
22   taking custody of the defendant, and that's the only way we
23   would relinquish his custody.  If that's the case, and they
24   want to do that on the 9th floor, they would have to do a
25   takeout order, and they would have him the whole day and we

1    would come back, take him back into custody.
2              THE COURT:  I am trying to see what's wrong with that,
3    Mr. Denton.
4              MR. DENTON:  Your Honor, I think, again, this is the
5    first time that we're considering that as an option.  We had
6    told defense counsel, again, that the FBI was prepared to
7    support the system that was used up to and during trial.  To
8    the extent that there is a sort of proposal for something else,
9    we're happy to have a conversation with the FBI about whether
10   that's something they can support now.
11             THE COURT:  How long will that take?
12             MR. DENTON:  I can try to have the conversation in the
13   next couple of days, your Honor.
14             THE COURT:  And report in a week's time?
15             MR. DENTON:  Sure.
16             THE COURT:  All right.  Ms. Shroff, what about your
17   difficulty in retaining an expert?
18             MS. SHROFF:  So unfortunately, your Honor, we've had
19   no success on that score.  I'm sorry to say, we are doing our
20   best with the expert we previously had, who is -- I don't think
21   he's back physically in New York, and is virtually teaching
22   this semester.  His schedule, he informed us last night we
23   spoke with him, is -- I think Dr. Bellovin is crunched because
24   Columbia University's trying to make up for not having had
25   instruction in the semester before, and he's available to us on

1    a very limited basis.  That's where we are with the expert.
2             THE COURT:  You recognize it's your obligation to
3    obtain an expert, correct?
4             MS. SHROFF:  Absolutely, your Honor.  But, there is
5    only so many people that know a CIA computer.
6             THE COURT:  Right.  The pro se issues, which was next
7    item on my topic, is going to be taken up by Mr. Denton who
8    will write a letter on the *Faretta* matter.
9             Anything else that anybody wants to bring up?
10            MR. DENTON:  Not from the government, your Honor.
11            MS. SHROFF:  Your Honor, Mr. Schulte asked me to --
12   well, actually, may I bring up two matters, please.
13            THE COURT:  Yes.
14            MS. SHROFF:  One is I wanted to ask the Court that, to
15   the extent that there are pending motions, Mr. Schulte would
16   request that we get some ruling from the Court so that we can
17   move forward on the computer-related issues.  And we had one
18   other motion that we planned to make for additional discovery.
19   But, it's just for a stack of computer files that we don't know
20   if we have previously been given or not.  We will confer with
21   Mr. Denton, and should the need be, involve the Court.
22            THE COURT:  Would you give me a listing of the motions
23   that you have in mind that you need answers on?
24            MS. SHROFF:  Yes, your Honor.  We can send a letter to
25   the Court.

L6F3SCHC

1          THE COURT:  All right.  You'll copy the government on
2    it?
3          MS. SHROFF:  Certainly, your Honor.
4          THE COURT:  Okay.  If there is nothing further, the
5    conference is adjourned.  Thank you very much.
6          MR. DENTON:  Thank you, your Honor.
7          MS. SHROFF:  Thank you, your Honor.
8          (Adjourned)