UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

JOSHUA ADAM SCHULTE,

               *Defendant.*

S3 17 Cr. 548 (PAC)


## MOTION FOR EFFECTIVE SELF-REPRESENTATION


Joshua Adam Schulte
Slave #79471054
Metropolitan Concentration Camp (MCC)
150 Park Row
NY, NY 10007

# TABLE OF CONTENTS

I.    TABLE OF AUTHORITIES.....................................................................ii

II.   STATEMENT OF THE ISSUES ...................................................................1

III.  PRELIMINARY STATEMENT ....................................................................1

IV.   THE FIFTH AND SIXTH AMENDMENTS COMPEL THIS COURT TO
      GRANT MR. SCHULTE ACCESS TO BASIC LEGAL MATERIALS ................4

   A.   The Due Process Clause of the Fifth Amendment compels the Court to
        provide equal access to the pro se criminal defendant ...........................4

      1.   Criminal defense attorneys rely on unfettered access to discovery, legal
           materials, and printers..............................................................5

      2.   The government utilizes unfettered access to discovery, legal materials,
           and printers ............................................................................6

      3.   Every criminal defendant not detained pretrial utilizes unfettered access to
           discovery, legal materials, and printers ..........................................6

      4.   Every other inmate at the MCC has more basic access than Mr. Schulte ....8

   B.   Effective Self-Representation guaranteed by the Sixth Amendment requires
        access to discovery, a law library, and printer.......................................9

      1.   Access to unclassified discovery..................................................9

      2.   Access to a law library ...........................................................10

      3.   Access to a printer ................................................................11

   C.   Proposed Relief ......................................................................11

      1.   24-7 access to unclassified discovery............................................12

      2.   24-7 access to the same virtual law library that the government purchases
           for its prosecutors .................................................................13

      3.   24-7 access to a printer to print case law, motions, and other materials that
           all lawyers rely on for effective representation ................................14

   D.   Failure to grant this motion will unnecessarily delay the trial...................15

V.    CONCLUSION ..............................................................................16

## I.   TABLE OF AUTHORITIES

**Cases**

*Adams v. United States ex rel. McCann,*
   317 US 269 (1942)..................................................................................................2

*Bell v. Wolfish,*
   441 US 520 (1979)..................................................................................................6

*Faretta v. California,*
   422 US 806 (1975)..................................................................................................1

*McGinnis v. Royster,*
   410 US 263 (1973)..................................................................................................7

*McKaskle v. Wiggins,*
   465 US 168 (1984)..................................................................................................2

*Schall v. Martin,*
   467 US 253 (1984)..................................................................................................7

*United States v. Millan,*
   4 F.3d 1038 (2d Cir. 1993) ....................................................................................6

*United States v. Plattner,*
   330 F.2d 271 (2d Cir. 1964) ..................................................................................4

*United States v. Salerno,*
   481 US 739 (1987)..................................................................................................6

**Statutes**

18 U.S.C. § 3142(e)(3) ...................................................................................8

28 U.S.C. § 1654 ...........................................................................................1

**Constitutional Provisions**

U.S. Const. amend. V ........................................................................... passim

U.S. Const. amend. VI ..................................................................... 2, 4, 9, 16

## II.     STATEMENT OF THE ISSUES

Whether a criminal pro se defendant, incarcerated pretrial under Special Administrative Measures (SAMs), has a constitutional right to equal access to legal materials as all other non-SAMs incarcerated criminal pro se defendants.

Whether a criminal pro se defendant, incarcerated pre-trial, has a constitutional right to equal access to legal materials as all other non-incarcerated criminal pro se defendants.

Whether a criminal pro se defendant has a constitutional right to equal access to legal materials as all other criminal defense attorneys.

Whether a criminal pro se defendant has a constitutional right to equal access to legal materials as the government.

## III.     PRELIMINARY STATEMENT

"In the federal courts, the right of self-representation has been protected by statute since the beginnings of our Nation. Section 35 of the Judiciary Act of 1789, 1 Stat 73, 92, enacted by the First Congress and signed by President Washington one day before the Sixth Amendment was proposed, provided that 'in all courts of the United States, the parties may plead and manage their own causes personally or by the assistance of... counsel. ...' The right is currently codified in 28 U.S.C. § 1654." *Faretta v. California*, 422 US 806, 812-13 (1975). "This right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." *Id.* at 819-20.

"The right to assistance of counsel and the correlative right to dispense with a lawyer's help are not legal formalisms. They rest on considerations that go to the substance of an accused's position before the law. The public conscience must be

1

satisfied that fairness dominates the administration of justice. **An accused must have the means of presenting his best defense.** He must have time and facilities for investigation and for the production of evidence. But evidence and truth are of no avail unless they can be adequately presented. **Essential fairness is lacking if an accused cannot put his case effectively in court.**" *Adams v. United States ex rel. McCann*, 317 US 269, 279 (1942) (emphasis added).

"A defendant's right to self-representation plainly encompasses certain specific rights to have his voice heard. The pro se defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law... and to address the court... at appropriate points..." *McKaskle v. Wiggins*, 465 US 168, 174 (1984).

Mr. Schulte waived his right to counsel. This waiver compels the Court to grant Mr. Schulte the ability to *effectively* represent himself. For this court to treat Mr. Schulte differently from other criminal defendants, other defense lawyers, or even different from the government is reprehensible to both the Fifth and Sixth Amendments to the United States Constitution.

Mr. Schulte asserts that his right to effective self-representation guaranteed by the Fifth and Sixth Amendments compel this Court to provide Mr. Schulte with, at the very least, (1) 24-7 access to his unclassified discovery; (2) 24-7 access to a legal library such as the government utilizes that enables the user to search court documents, filings, motions, opinions, annotations, and other essentials that are recognized as imperative for law practice and that the government pays to provide in the furtherance of criminal prosecutions, and in equal format provided to the government for easily searching, copying, and printing; and (3) 24-7 access to a printer to print motions and court filings. Denial of any such basic necessity, of

2

which no criminal defense attorney or federal prosecutor could effectively litigate the case, would effectively deny Mr. Schulte the right to self-representation.

Waiving the right to counsel is a waiver of an experienced, knowledgeable professional for the sake of self-management; it is not to forsake all knowledge, all tools, and all access. A certified attorney who represents his client is permitted these basic accesses. Yet, if the attorney represents himself, the government postulates he does not have a right to these same materials—so how could he effectively represent himself? If a well-trained attorney is unable to effectively represent himself, then it is self-evident that such a system essentially prohibits self-representation altogether.

A tradesman without the tools of his trade is as inept as the untrained. A baker without an oven is as inept as one without his training—neither can bake. Mr. Schulte, as a computer engineer, cannot write software without a computer. Similarly, a trained lawyer without access to case law or discovery is unable to represent anyone at all—so how could this Court ever find permissible to treat a pro se defendant in a way that a fully trained lawyer could not even effectively perform? Mr. Schulte is not asking for the moon; he is asking for access to basic knowledge—for a lawyer's tools, since he is now his own lawyer.

Finally, a denial of any of the three basic necessities requested herein would qualify as a collateral order denying "an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial," *United States v. Punn*, 737 F.3d 1, 5 (2d Cir. 2013), the right to *effective* self-representation—which the Supreme Court has clearly established. Accordingly, Mr. Schulte will seek immediate interlocutory appeal if the Court denies Mr. Schulte effective self-representation.

## IV.   THE FIFTH AND SIXTH AMENDMENTS COMPEL THIS COURT TO GRANT MR. SCHULTE ACCESS TO BASIC LEGAL MATERIALS

Mr. Schulte has elected to represent himself. It is often said that "he who is his own lawyer has a fool for a client," and indeed the pro se defendant is usually the clear underdog as his adversary has years of law school and experience practicing law. Therefore, the denial of a critical resource such as basic legal knowledge and access to discovery is debilitating to the defendant. No criminal defense attorney could effectively represent his client if the court denied him access to discovery, prevented him from reviewing case law, or forced him to write every motion by hand. Indeed, despite all his legal training, he could not possibly represent his client. Such an attorney would be declared ineffective, and his client subject to relief. How could it then be possible, for a man untrained in the law and without any experience, to effectively represent *himself* without such access? If a trained attorney would be ineffective without these basic accesses, it must follow that an untrained attorney would be even more ineffective.

### A.   The Due Process Clause of the Fifth Amendment compels the Court to provide equal access to the pro se criminal defendant

"Under the Fifth Amendment, no person may be deprived of liberty without due process of law. Minimum requirements of due process in federal criminal trials are set forth in the Sixth Amendment. They include the right of the accused to be informed personally of the accusation, to be confronted by witnesses against him, and to have compulsory process for obtaining witnesses in his favor. Implicit in both amendments is the right of the accused personally to manage and conduct his own defense in a criminal case." *United States v. Plattner*, 330 F.2d 271, 273-74 (2d Cir. 1964).

4

### 1.   Criminal defense attorneys rely on unfettered access to discovery, legal materials, and printers

Under the Equal Protection guaranteed by the Fifth Amendment, the Constitution compels the Courts to grant equal protection to indigent pro se defendants as it does to criminal defense attorneys. Just as it would be absurd for the Courts to deny a poor man's assigned counsel access to discovery and legal resources, so too is it absurd to deny a poor man who chooses to represent himself with similar access. Under the law, Mr. Schulte must be treated equal to a criminal defense attorney. He is his own attorney, and the law does not provide any exemptions for his ignorance—any failures could cost him his life, and he cannot argue ineffective assistance of counsel.

Defense attorneys assigned to indigent defendants are paid by the Court, and use this money to pay for a legal library such as Westlaw, printers, and access to discovery. Since Mr. Schulte is representing himself, it follows that the Court should pay for Mr. Schulte's access to a similar legal library, printers, and access to discovery. Mr. Schulte did not waive access to basic knowledge—only the expert to interpret this knowledge. No defense attorney files a motion or represents a client without unfettered access to the courts to review filings, motions, and court opinions that are critical in making effective arguments. No defense attorney is forced to write motions by hand, to create trial exhibits by hand, or to forego the use of a computer to review discovery and print documents. Without such access, defense attorneys could not make effective arguments, and could not mount an effective defense. Mr. Schulte is not immune from these same issues, and indeed, is affected more due to his lack of expertise and experience. Accordingly, it logically follows, and is undeniably supported by the Due Process Clause of the Fifth Amendment, that Mr. Schulte, and indeed all pro se defendants, must be

5

granted equal access to the bare minimums that all defense attorneys rely to make effective motions, arguments, and ultimately, effective defenses.

### 2.    The government utilizes unfettered access to discovery, legal materials, and printers

Even if defense attorneys did not rely on a legal library to file effective motions, make effective arguments, and mount effective defense strategies, the government clearly relies on these materials to prosecute the pro se defendant. The government is not limited to one hour per week to review Mr. Schulte's discovery. The government is not limited to one hour per week to review case law. The government is not forced to write each motion by hand. The government pays for a multitude of services so it can effectively prosecute those it accuses. Hence, it logically follows, and is undeniably supported by the Due Process Clause of the Fifth Amendment, that Mr. Schulte, and indeed all pro se defendants, must be granted equal access to the bare minimums that the government itself employs to mount effective prosecutions.

### 3.    Every criminal defendant not detained pretrial utilizes unfettered access to discovery, legal materials, and printers

It is well-settled that so long as pretrial detention is administrative rather than punitive, it is constitutional. See *United States v. Salerno*, 481 US 739, 746-51 (1987); *Bell v. Wolfish*, 441 US 520, 535-40 (1979); *United States v. Millan*, 4 F.3d 1038, 1042 (2d Cir. 1993). Whether detention is punitive rather than regulatory generally turns on "whether an alternative purpose to which [the defendant] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose." *Wolfish*, 441 US at 538.

6

Where the regulation at issue imposes pretrial, rather than post-conviction restrictions on liberty, the "legitimate penological interests" served must go beyond the traditional objective of rehabilitation or punishment. See *McGinnis v. Royster*, 410 US 263, 273 (1973) ("It would hardly be appropriate for the State to undertake in the pretrial detention period programs to rehabilitate a man still clothed with a presumption of innocence."); cf. *Schall v. Martin*, 467 US 253, 263-64 (1984) (upholding pretrial detention of juvenile delinquents only after a finding of "serious risk" on the ground that it served a legitimate, non-punitive regulatory purpose).

The government cannot arbitrarily grant the right to self-representation to some, and deny it to others—based solely on the crimes alleged in an indictment. The Due Process Clause of the Fifth Amendment compels equal treatment under the law—all pretrial pro se defendants must be granted equal access to effectively defend themselves. Indeed, if Mr. Schulte were not incarcerated, he would have 24-7 access to a law library, 24-7 access to his unclassified discovery, and 24-7 access to a printer. This Court cannot punish him and deny him this basic access merely because he is detained pre-trial—Mr. Schulte did not choose to be wrongly accused of a crime nor did he choose to be detained pretrial; no man can prevent the government from wrongly accusing him and incarcerating him pretrial. How, then, is it just to punish him for the government's mistakes?

Every other criminal defendant can use legal resources to prepare for trial— except defendants deemed a "flight risk" or a "danger to the community"—these defendants, who are typically facing the longest prison sentences, are arbitrarily denied equal access in violation of the Due Process Clause of the Fifth Amendment. How can it possibly be fair and proper, that a defendant charged with a 0-6 month misdemeanor is granted the ability to access basic legal knowledge to defend himself, but the defendant charged with life or even the death sentence is

7

denied equal access? Indeed, no innocent person chooses to be wrongfully accused of a crime, let alone accused of a crime that "shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3). A criminal defendant incarcerated pretrial is already facing staggering odds at winning trial in addition to the oppressive conditions of confinement that are no different from those found guilty and sentenced to prison. Indeed, it seems that in America there is no presumption of innocence at all—upon indictment, the United States Federal Government can incarcerate and torture anyone it so desires and deny that person his humanity and his ability to defend himself. This is not justice—the Fifth Amendment prohibits the government from treating people unequally, and it must provide equal access to basic legal knowledge and discovery to those detained pretrial just as it does to those released pending trial; otherwise, the denial of equal access is punishment imposed arbitrarily to prevent a fair trial.

### 4.   Every other inmate at the MCC has more basic access than Mr. Schulte

While every other MCC inmate has 24-7 access to their discovery, library, and virtual legal library, Mr. Schulte is restricted to one hour per day, Monday-Thursday, IF the SHU Lieutenant feels like taking him. Most weeks, that's 2 hours total divided between reviewing unclassified discovery and reviewing materials on the restricted law library—and NO access to the MCC's library itself. The remaining 166 hours each week, Mr. Schulte is tortured in an American concentration camp. Mr. Schulte is subject to harsher conditions than every state imposes upon death row inmates and even harsher than the conditions imposed at the Federal super-max. Mr. Schulte is tortured, not because of any conviction—indeed a jury of his peers *failed* to find guilt beyond reasonable doubt of the MCC

8

charges—but rather, because Mr. Schulte has been accused of a crime and the United States Attorney General directed the MCC to torture Mr. Schulte pursuant to the unconstitutional Special Administrative Measures. See *MOTION TO VACATE SPECIAL ADMINISTRATIVE MEASURES AND INDEFINITE SOLITARY CONFINEMENT AS UNCONSTITUTIONAL*.

However, Mr. Schulte's SAMs do not mention anything about self-representation, access to his unclassified discovery, access to the law library, or access to printers. Accordingly, Mr. Schulte's restricted accesses are arbitrary, and not based on any penological interest—for what basis does the prison seek to curb Mr. Schulte's accesses? There is no reason, save to hinder his ability to represent himself, prepare for trial, and ultimately prove his innocence in this broken criminal "justice" system. Accordingly, Mr. Schulte must be granted equal access to materials as all other MCC incarcerated inmates.

## B.   Effective Self-Representation guaranteed by the Sixth Amendment requires access to discovery, a law library, and printer

### 1.   Access to unclassified discovery

Even if Mr. Schulte were not representing himself, he should be permitted 24-7 access to his unclassified discovery. For what penological interest is there to deny him access? It is also clear that this access is critical for effective self-representation. If he is only permitted one hour per week to review his discovery, it will take years for him to review all of his discovery. In fact, as of 2021, Mr. Schulte has not been able to fully review all of the unclassified discovery in his case—even over a year after his first trial. Must Mr. Schulte spend another three years and forego the right to a speedy trial just so he can prepare his best defense? By limiting Mr. Schulte's accesses, the Courts undermine Mr. Schulte's ability to

present his best defense at trial or effectively represent himself through every stage of the criminal procedure.

## 2.    Access to a law library

There can be no question that in 2021, every lawyer in the United States relies heavily upon access to an electronic law library. How in the world is Mr. Schulte supposed to file motions without access to a law library? How would he even know what motions to file? How would he be able to effectively argue anything when the government has full access and can cite cases while Mr. Schulte cannot? Furthermore, while the MCC's law library may well be sufficient for those represented by counsel, it is clearly inadequate for lawyers. The MCC's limited law library does not allow Mr. Schulte to review dockets of other cases, filings, or even motions from other cases. The most basic form of learning is imitating or reviewing what others have done. It is absolutely critical for a lawyer to review filings in similar cases to see what worked and what did not. It is also absolutely critical for a novice like Mr. Schulte to review other cases to see how to properly draft motions, what arguments are effective, what a winning motion looks like and what a losing motion looks like—he cannot even decide whether or not it would be worth the effort to file the motion or if the issue he wishes to challenge has already been resolved. It's called *practicing law,* and it is built upon case precedent— which can only be found within the law library. Furthermore, Mr. Schulte has time limitations on when he can file motions, when he can file Reply Briefs, appeals, etc. There is absolutely no chance that he can properly keep the imposed deadlines while simultaneously drafting the best possible motion under these extreme access restrictions. Ultimately, Mr. Schulte cannot present his best defense or effectively represent himself without 24-7 access to a full law library.

### 3.   Access to a printer

It is obvious that hand-written documents are far inferior to typed documents. This Court does not force the government to write all motions by hand, and cannot deny Mr. Schulte equal access to a printer. No lawyer hand-writes motions to the Court, and it would be ineffective to do so. If this Court forces Mr. Schulte to draft intrinsically inferior documents then it is self-evident that this is ineffective. Indeed, forcing Mr. Schulte to write motions by hand is extremely prejudicial because all his motions would inherently be much more difficult to read, and therefore hinder his ability to effectively represent himself. Even if this Court pretends it is not prejudiced by hand-written documents, a jury most assuredly would be. How is a jury going to respond to the government's effective case with its nicely printed exhibits compared with Mr. Schulte's hand-written exhibits? Mr. Schulte will be severely prejudiced at trial, and his defense will be ineffective. And for what purpose? Mr. Schulte already has a laptop—what penological interest is there to prevent a pre-trial pro se defendant from printing what he's already typed?

Furthermore, Mr. Schulte is arbitrarily denied access to pens, and must write with ink cartridges that severely pain his wrists—especially after prolonged use. Mr. Schulte cannot write long motions by hand due to this disability, and would therefore be denied effective representation.

### C.   Proposed Relief

Although a jury did not find Mr. Schulte guilty of the MCC espionage counts, he remains on SAMs in indefinite solitary confinement—which is not only cruel and unusual torture, but also restricts Mr. Schulte's accesses unnecessarily and arbitrarily without any legitimate penological interest. The government cannot

11

torture Mr. Schulte in indefinite solitary confinement and also complain when Mr. Schulte requests equal access to basic materials that all other MCC inmates maintain—the government must either stop torturing Mr. Schulte or provide Mr. Schulte with equal access in his torture cage.

There are multiple different solutions. The easiest would simply be to grant Mr. Schulte the presumption of innocence guaranteed by the Constitution. However, since the Constitution clearly no longer exists nor is it protected by any branch of government, the next easiest solution is to simply grant Mr. Schulte the ability to fully utilize the laptop recently purchased and provided to him. He already has a laptop. Provide him with the software and hardware to obtain access to the basic knowledge and tools that every lawyer requires for his practice.

### 1.    24-7 access to unclassified discovery

Every pro se defendant who is not incarcerated, every criminal defense attorney, every prosecutor, and indeed every MCC pretrial detainee has 24-7 access to his discovery. Mr. Schulte is denied this access because the MCC does not permit electrical outlets in his cage to charge his laptop and provide power to his discovery drives. Additionally, Mr. Schulte's laptop does not have a CD/DVD player to review discovery that the government produces in electronic CD/DVD form. All other MCC inmates in general population have access to electrical outlets not only to power their own laptops and discovery drives, but also for hot water, ice machines, and televisions—amenities denied Mr. Schulte. Mr. Schulte is arbitrarily denied access to electrical outlets for his own laptop and discovery drives despite all other MCC inmates having such access. Furthermore, during the four hours per week allotted to Mr. Schulte for discovery and case law review, the MCC moves Mr. Schulte into a cage with electrical outlets so that he can power his

laptop and discovery drives—so why not just provide these in his torture cage? The denial to Mr. Schulte is arbitrary and not reasonably related to any penological goal or even remotely suggested in his SAMs. This court should order the MCC to provide electrical outlets in Mr. Schulte's cage, a CD/DVD burner, and all discovery drives.

Note that the government's proposal to provide drives without external power is untenable. Mr. Schulte's discovery includes forensic images of large capacity drives that require external power. If the large forensic images were split across multiple drives, the forensic software would require all these drives to be connected at once, but Mr. Schulte only has one external USB port and therefore could not facilitate the use of multiple smaller drives simultaneously. In the case that the government provided a USB hub so that multiple drives could connect into Mr. Schulte's sole external USB slot, the power drain of multiple drives simultaneously connected would exhaust the laptop's battery within an hour or so—crippling him from discovery review. No, there is no solution other than to provide Mr. Schulte with external power so he can properly review his discovery. The government chooses to seclude Mr. Schulte in solitary confinement without due process, so it must choose to either provide him power in his torture cage or move him into general population where all other inmates have such access.

## 2. 24-7 access to the same virtual law library that the government purchases for its prosecutors

The government alleges in its July 22nd letter that Mr. Schulte currently can "schedule" use of a computer in his housing unit to conduct legal research. This could not be further from the truth. In reality, there is no "scheduling." The SHU Lieutenant takes Mr. Schulte when she feels like it, and has informed Mr. Schulte

that he has no right to discovery or case law review. Mr. Schulte does not get
"approximately an hour per day," but two measly hours per week. This is
unacceptable especially since all other MCC inmates have 24-7 access; thus, even
if Mr. Schulte did have one hour per day, this is still 23 hours arbitrarily less than
every other MCC inmate. The government chooses to seclude Mr. Schulte in
solitary confinement without due process, so it must choose to either provide him
with 24-7 access or move him into general population where all other inmates have
such access.

Additionally, the MCC's law library is insufficient as it only provides
limited access, and does not permit access to motions and other critical legal
materials. No, the government must provide Mr. Schulte access to the same virtual
law library that they purchase for prosecuting Mr. Schulte, and they must do so
through Mr. Schulte's laptop. The government should then mail Mr. Schulte the
updates on a CD/DVD every month so Mr. Schulte has access to the latest rulings
and cases.

### 3.   24-7 access to a printer to print case law, motions, and other materials that all lawyers rely on for effective representation

The government erroneously claims that Mr. Schulte can make requests to
print. First of all, the printing the MCC refers is printing from the law library—not
printing from Mr. Schulte's laptop. Hence, this obviously does not include printing
motions and exhibits. Additionally, the MCC does not actually print anything. Mr.
Schulte requested multiple documents to print over the past three years, and the
MCC never printed anything. Not once in the entire time Mr. Schulte has been
tortured at this concentration camp has anything been printed for him.

Accordingly, this Court should order the government to provide Mr. Schulte a printer in his cage so he can print documents.

**D.      Failure to grant this motion will unnecessarily delay the trial**

If this Court refuses to grant Mr. Schulte's relief and the Court of Appeals refuses to hear the interlocutory appeal or denies it, Mr. Schulte's trial will be delayed by several years. Since Mr. Schulte is permitted access to legal materials and discovery for 2 hours total per week, one hour for each, he will have a very difficult time filing motions. During the one hour allotment per week, Mr. Schulte must search, and then type any cases or citations from the law library computer into his laptop. He is also prevented from running simple queries, cannot print, and cannot save his state between weekly visits.

As of today, Mr. Schulte plans at least 10 more pretrial motions. Assuming a conservative estimate of 8 hours of law review to draft the motion and 8 hours of law review to draft the Reply—it will require 160 hours of law review. Normally, this would take less than a week; however, since each hour of law review occurs only once per week, that's 160 weeks required for 10 motions, or approximately 3 years. This time does not include the time it will take to then write each motion by hand, which may take months since Mr. Schulte can only manage several pages each day before intense pain cripples him. This also does not include the time required for the planned classified motions, responses to government motions, or even trial preparation. Hence, arbitrary limitations that hinder Mr. Schulte's effective representation will unnecessarily delay this trial.

## V.   CONCLUSION

Effective self-representation cannot exist if the courts deny pro se defendants equal access to bare essentials that all attorneys require for effective representation.

This court should find that Mr. Schulte, as a pro se pretrial defendant, is entitled access to his unclassified discovery, a legal library, and a printer in accordance with the Fifth and Sixth Amendments to effectively manage, prepare, and conduct his own defense just as the government, defense attorneys, and all free pro se pretrial defendants have.

Dated: New York, New York
      August 2, 2021

Respectfully submitted,

Joshua Adam Schulte
Slave #79471054
Metropolitan Concentration Camp (MCC)
150 Park Row
NY, NY 10007

16