UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

JOSHUA ADAM SCHULTE,

                *Defendant.*

S3 17 Cr. 548 (PAC)

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL DISCOVERY

Joshua Adam Schulte
Slave #79471054
Metropolitan Concentration Camp (MCC)
150 Park Row
NY, NY 10007

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ..................................................................1

II.   PRODUCTION OF ELECTRONIC DISCOVERY ......................................2

   A.   SRV02 Server................................................................................2

   B.   SC01 Desktop................................................................................2

III.  PUBLIC DISCLOSURE NEGATES PRIVILEGE ........................................3

   A.   Access to publicly disclosed classified information is protected speech
guaranteed by the First Amendment as there is no longer any legitimate reason
for prior restraint................................................................................3

   B.   Minimal Harm Argument................................................................5

   C.   The government's position is arbitrary and absurd....................................6

   D.   Impermissible punishment of free speech and hardship for Mr. Schulte .....8

IV.   SC01 CAN EASILY BE PRODUCED WITHOUT ILLEGAL MATERIALS
10

V.    CONCLUSION ................................................................................11

# I.    PRELIMINARY STATEMENT

Mr. Schulte's opening memorandum demonstrated that the government has yet to produce in discovery the Hyper-V Windows Server QNY_56_SC48_SRV02 ("SRV02 Server") seized from Mr. Schulte's apartment on March 15, 2017. Mr. Schulte also demonstrated that this server, the QNY09_SC01_desktop ("SC01 Desktop"), and the WikiLeaks Vault 7 publication have yet to be produced in unclassified discovery. The government argued in its opposition motion that "[w]hat the Motion to Compel really seeks is to require the [g]overnment to produce these records in an unclassified setting, arguing that classified records have lost their classified status by virtue of publication by WikiLeaks and that child pornography can be removed from hard drives in order to provide the remainder in unclassified, non-secure form" (Opp.[1] at 19-20). In fact, to date Mr. Schulte and his attorneys have never reviewed the "SRV02 Server," and Mr. Schulte requests the Court to order the government to produce it or otherwise show Mr. Schulte's attorneys where this server is in the SCIF. But yes, Mr. Schulte also requests the production of *public* classified materials in unclassified format, but not because they have lost their classification status—they have lost their *states-secret privilege* and are now protected speech.

---

[1] "Opp." refers to the government's Omnibus Opposition to the Defendant's *Pro Se* Motions. "Opening Mem." refers to Mr. Schulte's Opening Motion, Dkt. 475.

## II.    PRODUCTION OF ELECTRONIC DISCOVERY

The government does not dispute that SRV02, SC01, and the WikiLeaks Vault7/Vault8 releases are proper Rule 16 discovery.

### A.    SRV02 Server

The government claims that the defendant falsely asserts that the government never produced SRV02 in the SCIF. Why would Mr. Schulte file a motion to compel if he already had the materials requested? Mr. Schulte is always chained to the floor like a rabid dog in the SCIF, and does not have access to anything except what his lawyers place in front of him (Schulte Decl. ¶ 1). ***Mr. Schulte, to this very day, has never reviewed SRV02.*** Mr. Schulte's attorneys have repeatedly told him the server is not in the SCIF. Most recently, on September 10, 2021, his attorneys did another check of the SCIF and told him there was no SRV02 server (Schulte Decl. ¶ 2). Thus, we reach an impasse. As the government does not seem interested in resolving this matter, the Court should compel the government to work with standby counsel to ascertain whether or not this server exists at the SCIF, and if not, to notify the Court and promptly produce it.

### B.    SC01 Desktop

The government proffers the same argument for SC01 desktop. Once again, to this day Mr. Schulte has never seen the SC01 desktop. He is chained to the floor like a rabid dog in the SCIF, and does not have access to anything except what his lawyers place in front of him. Mr. Schulte was specifically told that since the government asserts the SC01 Desktop contains child pornography, it cannot be produced anywhere except in the prosecutor's offices. As such, ***Mr. Schulte has never reviewed this critical piece of evidence.***

2

### III.   PUBLIC DISCLOSURE NEGATES PRIVILEGE

In addition to the production of the SRV02 Server, Mr. Schulte additionally seeks production of this server and the *public* WikiLeaks disclosures in unclassified discovery. The government incorrectly states that Mr. Schulte's argument is that classified materials publicly released must be declassified; no, Mr. Schulte argues that classified materials publicly released lose any *states-secrets-privilege* and must be considered free speech. The critical difference is Mr. Schulte views the documents' status to be irrelevant; it matters not whether the government classifies the documents as "SUPER DUPER TOP SECRET" or unclassified, as once they hit the public domain and are disseminated across the internet, they immediately become protected speech such that the American people can freely discuss and access all documents with impunity. Thus, Mr. Schulte seeks to compel the government to produce public documents that are otherwise accessible from the internet *by literally everyone else in the world* in unclassified discovery.

**A.    Access to publicly disclosed classified information is protected speech guaranteed by the First Amendment as there is no longer any legitimate reason for prior restraint**

Once the government loses control over classified documents that are published publicly, access and discussion of those documents become protected speech guaranteed by the First Amendment. "Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutionality." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963); see also *Near v. Minnesota*, 283 U.S. 697 (1931). The government "thus carries a heavy burden of showing justification for the imposition of such a restraint." *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971).

The Supreme Court clearly upheld the First Amendment when the government sought to enjoin the *New York Times* and the *Washington Post* from publishing the "Pentagon Papers" in *New York Times Co. v. United States*, 403 U.S. 713 (1971), thereby firmly establishing precedent that published classified information is protected speech and cannot be enjoined by the government. "To find that the President has 'inherent power' to halt the publication of news by resort to the courts would wipe out the First Amendment and destroy the fundamental liberty and security of the very people the [g]overnment hopes to make 'secure.' No one can read the history of the adoption of the First Amendment without being convinced beyond any doubt that it was injunctions like those sought here that Madison and his collaborators intended to outlaw in this Nation for all time. The word 'security' is a broad, vague generality whose contours should not be invoked to abrogate the fundamental law embodied in the First Amendment. The guarding of military and diplomatic secrets at the expense of informed representative government provides no real security for our Republic…" *Id.* at 719 (Black, J., concurring). It would be fallacious to believe that the Supreme Court upheld the right of the press to publish classified materials it obtained, but prohibited the very people who read such publications from accessing it.

And the reason for this is obvious—the government's entire purpose for prior restraint of classified information is to keep that information secret to safeguard national security. This is the foundation to the *states-secrets-privilege*, and the government has a compelling interest in protecting state secrets. However, once the government loses control of this information and it is published, the government can no longer protect this information and the *states-secrets-privilege* ceases to exist. Anyone with internet access can then review this information, and therefore, it morphs into protected speech.

4

The government's only response to this argument is to change the argument so that they can defeat it. The government's reliance on *Wilson v. Central Intelligence Agency*, 586 F.3d 171 (2d Cir. 2009) is inapposite and ridiculous. In *Wilson*, the Second Circuit found that Valerie Plame could not use her own unauthorized disclosure of classified information as a reason to *publish* that same information due to her signed Secrecy Agreement. Mr. Schulte does not seek to *publish* anything, and regardless, his Secrecy Agreement with the CIA would not preclude him from republishing the classified files on server SRV02 that were disclosed by Edward Snowden from the *NSA*.

Mr. Schulte's argument is not *Wilson's* argument that the CIA's prevention of Mrs. Wilson from publishing classified information is unlawful prior restraint. Mr. Schulte's argument is that restricting Mr. Schulte's *access to publicly disclosed documents on the internet* is unlawful prior restraint. Mr. Schulte can call his mother and ask her to print and mail him the very documents the government seeks to restrict Mr. Schulte from accessing. This is beyond absurd.

## B.    Minimal Harm Argument

By restricting access to the classified materials, the government literally achieves and gains nothing. These documents are public. Anyone can access them. Therefore, the government's argument for prohibiting the production of public classified information is moot—the information is already public and no longer controlled by the government. What possible harm could result from the government giving Mr. Schulte open access to the same documents that *literally every person in the world can access*? By restricting Mr. Schulte's access to the SCIF, he is the only person in the entire country with such restricted access—the remainder of the United States and world population need only type a URL into a web browser and view these documents.

"In sum, information related to the national defense typically cannot qualify as such if it is in the public domain; it must be closely held by the government." *United States v. Rosen*, 445 F. Supp. 2d 602 (E.D. V.A. 2006). Since the government's production of public classified documents to Mr. Schulte cannot possibly harm national security, there is literally *no* harm in doing so.

### C.    The government's position is arbitrary and absurd

The government's position to restrict Mr. Schulte's access to public internet documents is both arbitrary and absurd. As to arbitrariness, the government does not actually compel any other defendant to review their discovery in this manner. If the government universally applied its position that public classified information contaminates and prevents the production of proper Rule 16 discovery, then every person who has ever visited a website with any publicly disseminated classified information would be unable to access their discovery outside a SCIF. This includes journalists, blogs, and mainstream newspapers like the *New York Times* and the *Washington Post*, as well as articles that discuss the content of the publicly disclosed information. Defendants accused of drug crimes, tax crimes, or even misdemeanors would be unable to access their discovery. Furthermore, these defendants would be forced to retain or otherwise be appointed attorneys with a security clearance. This would encumber criminal defendants and delay criminal proceedings unnecessarily—since the information the government purports to protect is publicly accessible. This position is absurd and indefensible.

For example, while Mr. Schulte was incarcerated at the MCC, other inmates showed him previously classified documents produced in their *unclassified discovery* (also without any protective order). Inmates accused of Hobbs Act robbery, money laundering, and wire fraud all had classified information from the

internet in their discovery. Did the government classify their forensic images, produce them only in classified discovery, and force them to review that discovery at the SCIF? Did the government require their attorneys to possess a security clearance to review the "classified" public documents? Of course not. Their cases did not involve classified information, and it would be quite a hassle for the government to enforce this position upon them. Thus, the government's ever-shifting position as to the treatment of publicly disclosed classified information is arbitrary as in Mr. Schulte's case the government severely restricts access, but in all other cases the government could not care less.

The government's position is also absurd. As to the SRV02 Server, the government found 9 Snowden documents in a backup of a laptop that Mr. Schulte used at a CIA-sponsored training of SANS 610: Reverse Engineering Malware. This has literally nothing to do with Mr. Schulte's alleged involvement in the Vault7 release nor did the government even use this information at trial. The documents appear in web browser cache, and were not directly saved. Additionally, it is unclear whether or not the review of those files was a direct result of the public SANS 610 class regarding reverse engineering malware, or whether the CIA simply did not clean the laptop before providing it to Mr. Schulte.

Moreover, those 9 documents are still on the internet, and have been since *The Guardian* published them in 2013—nearly a decade ago. Mr. Schulte can call his mother and ask her to print these documents and mail them to him in his torture cage at the MCC. This Court can go online and review these documents. If Mr. Schulte were granted the presumption of innocence he could also access these documents from the internet. Yet, the government refuses to produce a massive server with at least 5,497,558,138,880 bytes of critical defense documents because these same 9 ***PUBLICLY ACCESSIBLE*** files exist on that server. This is absurd.

### D.      Impermissible punishment of free speech and hardship for Mr. Schulte

As an initial matter, the imposition of severe restrictions on discovery results in the impermissible punishment of free speech in violation of the First Amendment. Mr. Schulte is imposed sanctions, not because he violated any law, but because he dared to listen to the free press. "Secrecy in government is fundamentally anti-democratic, perpetuating bureaucratic errors. Open debate and discussion of public issues are vital to our national health. On public questions there should be 'uninhibited, robust, and wide-open' debate." *New York Times Co. v. United States*, 403 U.S. at 724 (quoting *New York Times Co. v. Sullivan*, 376 US 254, 269-70) (Douglas, J. dissenting). By punishing Mr. Schulte for interest in open debate and discussing public issues vital to the nation's health, the government violates the First Amendment. Indeed, such open hostility to the free press may well dissuade people from engaging in free speech for fear that, should the government falsely condemn them of a crime, they will be severely restricted in how and where they can review their discovery and defend themselves.

The end result of the government's restriction of publicly disclosed classified information achieves only hardship for Mr. Schulte and gains nothing for the government but this hardship. Due to the government's absurd position, Mr. Schulte has never reviewed the SRV02 Server. If the government simply produced this server in unclassified discovery four years ago, Mr. Schulte might have had something closer to a fair trial. Instead, Mr. Schulte faced a trial in which he never reviewed all the critical discovery in his case. Introduction of files from the SRV02 Server would have negated the government's entire attack of Mr. Schulte's home devices and their false claims that he was somehow contacting and transferring data to WikiLeaks.

Finally, this arduous restriction will force Mr. Schulte to spend countless hours at the SCIF reviewing unclassified documents. He will have to forego the time spent reviewing classified documents, and instead, literally waste SCIF time. Mr. Schulte will not be ready for trial any time soon, and will be forced to request additional days of SCIF access.

## IV.   SC01 CAN EASILY BE PRODUCED WITHOUT ILLEGAL MATERIALS

The government claims that "it is impossible to ensure the deletion of all classified and contraband records from the devices without a complete review of all of the data, including deleted files and slack space." This is an interesting argument since the government already executed a general warrant and literally reviewed every single byte of data from Mr. Schulte's computers. If there were classified or otherwise illicit files, they surely would have found them and charged Mr. Schulte with a crime. Thus, while the government has exhausted its search of Mr. Schulte's devices scouring it for anything it could possibly find to prosecute Mr. Schulte, it simultaneously claims it does not have the "resources" to create a forensic image without the illicit materials it found. Even assuming that there exist files the government did not find, which is highly unlikely especially considering the extent the government must have searched in order to find the 9 Snowden documents from the web browser cache of a laptop backup in the backup drive, that is the government's sole responsibility. Can the government hold a suspect's computer where it found no illegal materials based on this same logic—that perhaps there are illicit files the government cannot find? Of course not. It is the government's duty to properly review the forensics, conduct an investigation, and identify any and all illicit items.

SC01 contains approximately 303,576 files and 2,000,370,000,000 bytes (~2TiB). The government has identified *a single file*, a virtual machine, that allegedly contains child pornography. The remaining 303,575 files are untainted by this virtual machine. The government can easily produce to Mr. Schulte a forensic image without this single file. Or, at the very least, the government should simply copy all untainted files for Mr. Schulte's review.

## V.   CONCLUSION

The Court should compel the government to produce SRV02, the WikiLeaks Vault 7 Publication, and SC01 to the defendant so he can properly review discovery and prepare for his second upcoming trial. The government can easily provide SRV02 and the Vault 7 Publication since the information it purports to protect is already on the Internet and public knowledge; and the government can easily replicate SC01 without the offending material. These three electronic productions are essential to Mr. Schulte's defense and would unfairly prejudice him if he were unable to review these documents.

Dated: New York, New York
       September 13, 2021

Respectfully submitted,

Joshua Adam Schulte
Slave #79471054
Metropolitan Concentration Camp (MCC)
150 Park Row
NY, NY 10007

11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-v-

JOSHUA ADAM SCHULTE,

                *Defendant.*

S3 17 Cr. 548 (PAC)

---

## DECLARATION OF JOSHUA ADAM SCHULTE IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL DISCOVERY

Joshua Adam Schulte declares under penalty of perjury:

1. Ever since I have used the Court SCIF on the 9th floor, I have always been chained to the floor; my attorneys would bring me materials to review. During this time, my attorneys have never brought me either SRV02 or SC01. My attorneys informed me that these materials were *never produced to us from the government*, despite multiple requests for them to do so. I have never seen the forensic images or reviewed any content from these two devices.

2. After consulting with standby counsel on Friday, September 10, 2021, they conducted another full sweep of all the filing cabinets, concealed containers, and other locations within the SCIF—searching once again for SRV02 and SC01. They did not find either.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
      September 13, 2021

                                                 Joshua Adam Schulte