L7E1SCHH

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

UNITED STATES OF AMERICA,

        v.                        17 Cr. 548 (PAC)

JOSHUA ADAM SCHULTE,

              Defendant.          Faretta Hearing

------------------------------x

                                New York, N.Y.
                                July 14, 2021
                                2:32 p.m.

Before:

                    HON. PAUL A. CROTTY,

                                District Judge

                      APPEARANCES

AUDREY STRAUSS
     United States Attorney for the
     Southern District of New York
BY:  MICHAEL D. LOCKARD, ESQ.
     Assistant United States Attorney

SABRINA P. SHROFF, ESQ.
     Attorney for Defendant

COLSON LAW PLLC
     Attorneys for Defendant
BY:  DEBORAH A. COLSON, ESQ.

ALSO PRESENT:  DANIEL HARTENSTINE, CISO Officer
                 MATTHEW MULLERY, CISO Officer

L7E1SCHH

1              (Case called)

2              THE DEPUTY CLERK:  Counsel for the government, please

3      state your appearance.

4              MR. LOCKARD:  Good afternoon, your Honor.  This is

5      Michael Lockard for the government.

6              THE COURT:  Good afternoon.

7              THE DEPUTY CLERK:  For the defendant?

8              MS. SHROFF:  Good afternoon, your Honor.  This is

9      Sabrina Shroff and Deborah Colson on behalf of Mr. Schulte, who

10     is present to my left.

11             I would just like an opportunity to tell the Court

12     that Mr. Zas is no longer able to work on this case.  He is

13     medically out of commission.

14             THE COURT:  Oh.

15             MS. SHROFF:  And I wanted to let the Court know.

16             THE COURT:  If it's serious, I hope he gets better

17     soon.

18             MS. SHROFF:  We do too, your Honor.  Thank you.  And I

19     will make sure to let him know.  But he is completely out of

20     pocket, and I've informed Mr. Schulte of that.

21             THE COURT:  All right.  Well, we're here as a result

22     of a joint request of the parties to conduct a *Faretta* hearing.

23     The purpose of today's hearing is to determine whether

24     Mr. Schulte may proceed pro se in his criminal case, which is

25     currently scheduled for trial in October of this year.  The

L7E1SCHH

1    Sixth Amendment provides for counsel, and that duty to provide

2    counsel can be fulfilled by self-representation, which is what

3    the Supreme Court decided in the *Faretta* case.

4    Self-representation is possible for a criminal defendant.  So

5    we're going to go through the procedures to qualify Mr. Schulte

6    for self-representation.  And we'll start by swearing

7    Mr. Schulte in.

8              THE DEPUTY CLERK:  Mr. Schulte, please rise.

9              (Defendant sworn)

10             THE COURT:  Please be seated.

11             Mr. Schulte, you have the right to counsel; that is,

12   you have a right to have a lawyer represent you in these

13   proceedings.  You may waive your right to counsel and represent

14   yourself, but only if you meet certain requirements.  In

15   particular, if you want to represent yourself, you must make a

16   request to do so that is clear and unequivocal, and not for the

17   purposes of delay or manipulation; it has to be knowing,

18   intelligent, and voluntary; and, finally, it has to be timely.

19             First, if you want to represent yourself, you must say

20   so clearly and unequivocally.  If you do not make it clear that

21   you want to represent yourself, then you will be represented by

22   a lawyer.  There is, in other words, a presumption that you'll

23   be represented by a lawyer, and the only way to overcome that

24   presumption is if you express your contrary desire clearly.

25             Second, your request for self-representation must be

L7E1SCHH

1    knowing, intelligent, and voluntary; in other words, before you

2    decide what you want to do, you must understand the

3    consequences of your decision.  I want you to know what is at

4    stake here.  Although you need not be a lawyer, or have the

5    skill and experience of a lawyer, in order to decide to

6    represent yourself, you must be aware of the dangers and

7    disadvantages of proceeding without one.

8         I'm now going to try to explain to you the

9    difficulties and dangers of self-representation.  If I say

10   something that you do not understand, please let me know and I

11   will try to explain it to you it again.  It is important that

12   you understand the choice you are going to be making.

13        First of all, you are facing nine very serious

14   charges, including one count of illegal gathering of national

15   defense information, in violation of 18 U.S.C. 793(b); three

16   counts of illegal transmission or attempted transmission of

17   unlawfully possessed national defense information, in violation

18   of 18 U.S.C. 793(e); two counts of unauthorized access to

19   computers, in violation of 18 U.S.C. Sections 1030(a)(1) and

20   (a)(2); two counts of causing transmission of a harmful

21   computer program information coded command, in violation of 18

22   U.S.C. Section 1030(a)(5); and one count of obstruction of

23   justice, in violation of 18 U.S.C. Section 1503.  The maximum

24   term of imprisonment for all nine counts is 85 years'

25   imprisonment.  Pretrial, trial, and post-trial proceedings can

L7E1SCHH

be complex.  They involve legal work and require intermittent

familiarity with the Federal Rules of Criminal Procedure and

the Federal Rules of Evidence.  They're usually better done by

a lawyer, especially a lawyer specializing in criminal defense,

than a layperson, because the lawyer is especially trained to

do them and has special knowledge of, and experience with, the

substantive and procedural rules of law and of this court.

Obviously there will be serious consequences if your defense is

mishandled here.

It is almost always a good idea for a defendant in a

criminal case to have a lawyer.  Nevertheless, the choice of

whether to continue with your lawyer or to proceed pro se is

entirely yours, so long as you make it in a knowing,

intelligent, and voluntary fashion, with the proper

understanding of what is at stake.  I'm only trying to ensure

that you make an informed decision.  The decision you make is

your own.

Third and finally, timeliness.  If you make a choice

today, it will be timely, because we are still in the pretrial

phase of the case.  But I warn you for the future that you do

not have a right to manipulate this Court.  You should think

hard before making a decision because it will have ongoing

significance for you.  For example, if you choose to have a

lawyer, then later ask to represent yourself, if I conclude

that you are acting in bad faith in trying to delay, I may deny

L7E1SCHH

1    your request.  On the other hand, if you choose to represent

2    yourself, you do not have an absolute right to withdraw your

3    request for self-representation and have subsequent counsel

4    appointed at a later point.  This is an important moment in the

5    case, and you have an important decision to make.  If you

6    decide to represent yourself, I will appoint what is called

7    standby counsel to assist you.  You will still control the

8    presentation of your case, but you will have a lawyer to

9    explain to you the details of the courtroom protocol and the

10   rules of evidence and procedure.  The standby lawyer will be

11   there to help you, to consult with you about investigating the

12   facts and the law, to identify possible defenses, and to

13   suggest appropriate motions to file.  Standby counsel is there

14   to assist but will not be permitted to interfere with your

15   control of the case, with few exceptions.  You do not have a

16   right to reject the standby counsel, and, as I say, I've

17   decided to appoint one for you, if you decide to proceed pro

18   se.  So if you represent yourself, you will have standby

19   counsel.  Even with standby counsel, however, you will still

20   largely control the presentation of your motions to me and your

21   case to the jury.  For example, you will have a right to

22   control the organization and the content of your own defense,

23   to make motions, to argue points of law, and to address the

24   Court.  Standby counsel may not interfere with your control of

25   the case.  You ultimately retain final authority over the case.

L7E1SCHH

1    Of course, you will have to do all those things within the

2    limits set by the rules of courtroom procedure, evidence, and

3    decorum.

4         This is not to say, however, that standby counsel is

5    prohibited from acting at all.  He or she may assist you to

6    ensure your compliance with the basic rules of courtroom

7    protocol and procedure.  If you do not waive your right to

8    counsel, and are represented by a lawyer, then the lawyer will

9    conduct your defense.

10        To sum up then, you have a right to be represented by

11   a lawyer, and you have a right to represent yourself.  If you

12   are represented by a lawyer, then it is the lawyer, and not

13   you, who will conduct the defense.  Conversely, if you

14   represent yourself, you will be able to perform the lawyer's

15   core functions, but you will not necessarily be allowed to

16   direct special appearances by counsel when it is convenient for

17   you.  Standby counsel will be available to help you overcome

18   routine procedural or evidentiary obstacles and matters of

19   courtroom protocol, again, without undermining your actual

20   control over the presentation of your defense.  You do not,

21   however, have a right to hybrid representation, where you and

22   the lawyer act as co-counsel in the conduct of your defense.

23   If you elect to place standby counsel in an active role or if

24   you do not object when that happens, you could lose your right

25   to represent yourself, at a minimum, if you do that.  Any

L7E1SCHH

1    further participation by the lawyer will be presumed to be with

2    your permission, and you will not be able to complain about it

3    later.

4         Now if you represent yourself, I am not going to treat

5    you any different than any other defendant, and the Court of

6    Appeals is not going to treat your case any differently.  In

7    other words, if you make a decision to represent yourself, and

8    you make mistakes, you're not going to be able to come back and

9    complain about the mistakes to the Court of Appeals.  You will

10   have accepted responsibility for your mistakes, and it will not

11   be a basis for you to appeal your conviction.

12        There are some other things that you should know.  If

13   you do choose to represent yourself, you must understand that

14   it does not give you license to abuse the dignity of the

15   courtroom or a license to violate the relevant rules of

16   procedural and substantive law.  You must always abide by

17   courtroom protocol and maintain proper decorum.  And you may

18   not improperly disrupt the proceedings.  You must, for example,

19   follow the rules of evidence.  You must obey my rulings even if

20   you disagree with them, knowing that you have preserved your

21   objection for review by an appellate court.  This includes the

22   rulings that I have already made in this case.

23        In particular, this case involves a substantial amount

24   of classified information.  I have made and will make rulings

25   about what classified information can be disclosed in your

L7E1SCHH

defense.  I caution you that if in representing yourself you

disclose classified information that I have not authorized, you

may be subject to additional penalties if you deliberately

engage in serious and obstructionist misconduct.  I will

terminate your self-representation.  If I am forced to do so,

then standby counsel will take over the defense for you.

          If you have any questions now, I'll be happy to answer

them at this time.

          In a moment, I'll ask you questions so that I can

learn more about your background, education, job experience,

and familiarity in the American legal system.  In order to

determine whether your decision today is made knowingly,

intelligently, and voluntarily, I will also inquire about any

recent or regular use of alcohol, narcotics, or prescription

medications to assure myself that your judgment today is not

clouded.  I will then hear your decision and make my own

determination and findings about whether you have knowingly,

intelligently, voluntarily, and unequivocally waived your right

to counsel.

          Mr. Schulte, do you have any questions thus far?

          THE DEFENDANT:  Sort of.  Actually, I have a list of

things that I wanted to go over, most of which can be done

after, but there were four issues I wanted to bring up before

we proceeded, if that's all right.

          THE COURT:  Go ahead.

L7E1SCHH

1          THE DEFENDANT:  First and foremost, you previously

2     denied my request for basic legal knowledge that all lawyers

3     have access to -- a virtual legal library such as Westlaw or

4     LexisNexis.  I wish to discuss this critical issue again

5     because (1) I no longer have lawyers, which was the basis for

6     the denial, and (2) it was incorrect in the motion that I had

7     the same access that other MCC inmates do.  In fact, I do not.

8     Every other MCC inmate has 24/7 access to a limited LexisNexis,

9     and I only get access Monday through Thursday for one hour, and

10    only if the SHU lieutenant feels like taking me.  For example,

11    yesterday I didn't have access.  Most weeks I get maybe two

12    days, and that's not going to work.  So I wanted to bring this

13    up, just as anyone else who would be representing themselves

14    could have access to LexisNexis or Westlaw, a full, full copy

15    that allows them to read motions that are filed in other cases,

16    where they can know what and how the motions should be filed

17    and what types of motions to file, the ability to copy and

18    paste or print, and basic access like this.

19          THE COURT:  Let me see if I understand, Mr. Schulte.

20          THE DEFENDANT:  Yeah.

21          THE COURT:  You're saying now that you're going to

22    represent yourself, you want to have access to legal materials

23    in order to enable you to fulfill your role and

24    responsibilities as counsel to yourself.

25          THE DEFENDANT:  That's correct.

L7E1SCHH

1          THE COURT:  Okay.  All right.  What's next?

2          THE DEFENDANT:  The next one is similarly, similarly,

3    access to my own classified discovery.  As of now, it's the

4    same thing with access to the legal library.  I only --

5    everyone else at MCC has 24/7 access to their discovery.  I'm

6    only granted access Monday through Thursday for one hour, if

7    the SHU lieutenant feels like granting me access.  Most weeks I

8    only get two days, which is two hours a week, basically.  So I

9    barely have time to -- and I have to divide that time between

10   the discovery and access to the law library itself.  So --

11         THE COURT:  It's pretty much the same objection as

12   your first objection, isn't it?

13         THE DEFENDANT:  It's just -- it's a different thing.

14   It's access to my discovery.  So the first thing is access to

15   the legal materials, like case law or filed motions; and the

16   second thing is the actual discovery that the government

17   produced to me, having 24/7 access to that so I can actually,

18   in the same effect, effectively work on my case.

19         And then the third thing is, similarly, an ability to

20   print.  So for example, the government obviously can write very

21   long motions and print them and give them to you.  Before I'd

22   been able to do that, but without my lawyers, the MCC does not

23   allow me a printer.  Now the SCIF has a printer that I maybe

24   could use, if the Court allows it, or some other way to be able

25   to print motions to give to the Court.

L7E1SCHH

```
1          And the last issue is, as you know, I haven't had
2    access to the SCIF at all since the trial, so this whole --
3    over a year, and so I haven't had any access to the SCIF, and I
4    will need access to it to defend myself in this case.
5          THE COURT:  All right.
6          THE DEFENDANT:  So before we started out with one day
7    a week, and then it gradually went to two and then three before
8    trial.  It's going to be similar I think would work here too.
9    So I just want to make sure that these -- these are just I
10   think basic access to legal knowledge that every other lawyer
11   has access to and access to discovery that every other lawyer
12   has access to.  I'm just requesting very simple, basic accesses
13   before we are able to -- I mean, I'm not saying that we should
14   delay the rest of the inquiry.  I'm just saying this is what I
15   will need to be able to represent myself, and I think
16   there's -- I don't -- there's some couple cases that I cited,
17   but basically from the Supreme Court, that basically says that
18   not only should you have access, you have a right to
19   self-representation but you have a right to effective
20   self-representation and, you know, to everything that a lawyer
21   would -- would have access to, so --
22         THE COURT:  All right.  We'll work on those.
23         THE DEFENDANT:  Okay.
24         THE COURT:  Going on to Phase Two of the inquiry about
25   whether or not you can represent yourself:
```

L7E1SCHH

1          I understand that you speak, read, and write English;

2     is that correct, Mr. Schulte?

3          THE DEFENDANT:  Yes.

4          THE COURT:  And you're aware that you have a Sixth

5     Amendment right to counsel?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Are you aware that you also have a Sixth

8     Amendment right to represent yourself?

9          THE DEFENDANT:  Yes.

10          THE COURT:  While you have a right to represent

11     yourself, the Court must decide for itself whether your waiver

12     of your right to counsel is knowing, intelligent, voluntary,

13     and unequivocal.  Do you understand this?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Would you tell me what your full name is,

16     please.

17          THE DEFENDANT:  Joshua Adam Schulte.

18          THE COURT:  And what's your date of birth,

19     Mr. Schulte?

20          THE DEFENDANT:  9/25/88.

21          THE COURT:  And could you describe your education.

22          THE DEFENDANT:  I went to the University of Texas at

23     Austin, graduated with a degree in electrical computer

24     engineering.

25          THE COURT:  And could you describe your work

L7E1SCHH

1    experience.

2              THE DEFENDANT:  I worked at IBM as a software

3    developer; then I worked at the National Security Agency as

4    assistant administrator; and then I worked at the Central

5    Intelligence Agency as a software engineer.

6              THE COURT:  All right.  Did you ever study law in the

7    United States or any other country?

8              THE DEFENDANT:  No.

9              THE COURT:  Have you ever represented yourself in any

10   legal proceedings?

11             THE DEFENDANT:  Maybe.  The -- there was a Virginia --

12             (Ms. Shroff conferring with the defendant)

13             THE DEFENDANT:  A state proceeding.

14             THE COURT:  And what was the subject matter of the

15   state proceeding in Virginia?

16             THE DEFENDANT:  It was the protective order that's

17   been brought up in this case.

18             THE COURT:  All right.  And you appeared as counsel in

19   that matter?

20             THE DEFENDANT:  I was representing myself, yeah.

21             THE COURT:  Okay.  How long did that proceeding last?

22             THE DEFENDANT:  I'm not sure.  It was very short.  It

23   got -- it got thrown out based on jurisdiction -- or venue, I

24   mean.

25             THE COURT:  Okay.  Lasted less than a month, two

L7E1SCHH

1    months?

2              THE DEFENDANT:  Yeah.  It was very short.

3              THE COURT:  Okay.  And it dealt with a protective

4    order, correct?

5              THE DEFENDANT:  What's that?

6              THE COURT:  It dealt with a protective order?

7              THE DEFENDANT:  The protective order, yes.

8              THE COURT:  Okay.  Would you agree with me that the

9    protective order matter is substantially different than the

10   nature and purpose of this proceeding?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Are you feeling well enough to proceed

13   with this case?

14             THE DEFENDANT:  Yes.

15             THE COURT:  You haven't had any medications or alcohol

16   in the last 24 hours, have you?

17             THE DEFENDANT:  I take some medication daily for heart

18   issues and sleeping issues.

19             THE COURT:  Okay.  Does that affect your ability to

20   think?

21             THE DEFENDANT:  No.

22             THE COURT:  All right.  I'm now going to advise you

23   specifically about the charges for which you've been indicted

24   and the possible penalties for those charges.

25             You've been indicted by a grand jury on multiple

L7E1SCHH

criminal charges.  I've already determined that you request

and, with the consent of the government, that those charges

should be severed into two separate trials.  The charges you

are facing in the first trial, which will proceed on

October 25, 2021, alleges a variety of crimes of espionage,

computer misuse, and obstruction of justice.  After that trial,

you will still face additional charges pertaining to receipt,

possession, and transportation of child pornography and

criminal copyright violations.  In the event that I determine

today that you can represent yourself at the first trial, I

will hold another hearing later to determine whether you still

want to represent yourself in the proceedings in the second set

of charges.

         The charges you are facing in the first trial are one

count of illegal gathering of national defense information, in

violation of 18 U.S.C. 793(b); three counts of illegal

transmission or attempted transmission of unlawfully possessed

national defense information, in violation of 18 U.S.C. 793(e);

one count of unauthorized access to computers in order to

obtain national defense information, in violation of 18 U.S.C.

1030(a)(1); two counts of causing transmission of harmful

computer program, information, code, or command, in violation

of 18 U.S.C. Section 1030(a)(5); and one count of obstruction

of justice, in violation of 18 U.S.C. Section 1503.  Each of

these counts carries a maximum term of 10 years' imprisonment,

L7E1SCHH

1    a maximum term of supervised release of three years, a maximum

2    fine of $250,000 or twice the gross pecuniary gain or loss from

3    the offense, and a $100 mandatory special assessment.

4          You are also facing one count of unauthorized access

5    to computers in order to obtain information from an agency of

6    the United States, in violation of 18 U.S.C. 1030(a)(2).  This

7    carries a maximum term of five years' imprisonment, a maximum

8    term of supervised release of three years, a maximum fine of

9    $250,000 or twice the gross pecuniary gain or loss from the

10   offense, and a $100 mandatory special assessment.

11         The maximum term of imprisonment for all nine counts

12   is 85 years.

13         Do you understand the charges for which you are

14   indicted and the maximum penalties for those charges?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Do you understand your sentence will be in

17   part governed by the United States Sentencing Guidelines?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Have you discussed the sentencing

20   guidelines with an attorney?

21         THE DEFENDANT:  I think the government has -- whatever

22   the filing is where they discussed it, I've read that.

23         THE COURT:  All right.  Do you understand that in

24   determining your sentence, the Court must consider the

25   sentencing guidelines even though they are not binding?

L7E1SCHH

1          THE DEFENDANT:  Yeah.

2          THE COURT:  If you choose to represent yourself, you

3     must stand by yourself.  The Court cannot advise you how to

4     present your case, nor can I help you with your case.  Do you

5     understand this?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you understand that self-representation

8     may conflict with your Fifth Amendment right to remain silent

9     because you may have to speak in the course of representing

10    yourself?  Do you understand that?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Are you familiar with the Federal Rules of

13    Evidence?

14         THE DEFENDANT:  Yes.

15         THE COURT:  What's the basis of your familiarity?

16         THE DEFENDANT:  My just knowledge of reading through

17    the -- I have a copy of it I can access through the legal

18    materials.

19         THE COURT:  All right.  Would you say the same is true

20    with respect to the Federal Rules of Criminal Procedure?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Do you recognize that a lawyer, an

23    attorney, may be better able to deal with issues relating to

24    trial, post-trial motions, sentencing, appeal, and other

25    matters?

L7E1SCHH

1          THE DEFENDANT:  Yeah.

2          THE COURT:  Do you understand that if you choose to

3    represent yourself, you do not have the absolute right to

4    request that counsel be appointed after that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  It's kind of a one-way ratchet, you know.

7    If you're deciding to represent yourself, you can't go back.

8    You understand that?

9          THE DEFENDANT:  Right.  I mean, provided that I am

10   actually able to represent myself.  For example, if some of

11   these things are not met and I'm not -- for example, if I don't

12   have access to my discovery, I can't represent myself, right?

13         THE COURT:  I know you'd have an objection, but you'd

14   be able to represent yourself.

15         THE DEFENDANT:  What's that?

16         THE COURT:  You'd have an objection, but you're able

17   to represent yourself.

18         THE DEFENDANT:  I mean, yeah, if I didn't have access

19   to my discovery, I couldn't represent myself.  I'd have some

20   kind of issue.  Either I'd have -- it would probably be

21   interlocutory appeal, but if the Court of Appeals said, oh, you

22   can't have access to your discovery, I wouldn't be able to

23   represent myself.  I wouldn't be able to continue.

24         THE COURT:  If you don't have access to your

25   materials, nobody can represent you.

L7E1SCHH

1        THE DEFENDANT:  Yeah.

2        THE COURT:  Is that right?

3        THE DEFENDANT:  I think so, yeah.

4        THE COURT:  All right.  Just so we understand one

5   another, if you choose to represent yourself, you do not have

6   the absolute right to request that counsel be appointed after

7   that.

8        THE DEFENDANT:  Right.

9        THE COURT:  You understand that?

10        THE DEFENDANT:  Yes.

11        THE COURT:  Okay.  Do you understand that I'm going to

12   appoint a lawyer to act as standby counsel --

13        THE DEFENDANT:  Yeah.

14        THE COURT:  -- for you?  And do you understand that

15   standby counsel cannot advocate for you?

16        THE DEFENDANT:  Yes.

17        THE COURT:  Do you understand that if you do choose to

18   represent yourself, you must understand that it does not give

19   you the license to abuse the dignity of the courtroom or

20   license to violate the relevant rules of procedural and

21   substantive law?  Do you understand that?

22        THE DEFENDANT:  Yes.

23        THE COURT:  Do you understand that you must obey my

24   rulings even if you disagree with them, knowing that you have

25   preserved your objections for review by the appellate court?

L7E1SCHH

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand that if you do choose to

3   represent yourself, that does not automatically entitle you to

4   revisit rulings that I've already made in this case?  Do you

5   understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  This case involves a substantial amount of

8   information that has been classified in the interest of

9   national security.  The use of classified information in court

10  proceedings is governed by a statute called the Classified

11  Information Procedure Act, or CIPA.  Do you understand that if

12  you do choose to represent yourself, you may only use

13  classified information that is specifically authorized after

14  following the procedures spelled out in that act and that if

15  you disclose classified information without being authorized by

16  the Court, you may be subject to additional penalties?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Do you understand that an experienced

19  criminal defense lawyer is almost always more qualified to

20  conduct a defendant's legal defense than is the defendant

21  himself?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Do you understand that if you represent

24  yourself and make mistakes, you would not be able to use those

25  mistakes as a basis for an appeal of your conviction or

L7E1SCHH

1   sentence --

2              THE DEFENDANT:  Yes.

3              THE COURT:  -- or claim that you received ineffective

4   assistance of counsel?  Do you now waive any claims of

5   ineffective assistance of counsel relating to your

6   representation of yourself?

7              THE DEFENDANT:  Right, yes.

8              THE COURT:  In light of the penalties you may suffer

9   if you were found guilty, in light of all the difficulties of

10  representing yourself, do you still want to represent yourself

11  and give up your right to be represented by counsel?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Are you making this waiver decision

14  voluntarily?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Has anyone made any threats to you in

17  order to get you to waive this right?

18             THE DEFENDANT:  No.

19             THE COURT:  Has anyone made any promises or

20  inducements or other benefits to get you to waive this right?

21             THE DEFENDANT:  No.

22             THE COURT:  I wish to warn you that representing

23  yourself at trial is generally unwise and that in the Court's

24  view, you would be better represented by an experienced

25  criminal defense attorney.  Do you understand that?

L7E1SCHH

1              THE DEFENDANT:  Yes.

2              THE COURT:  All right.  So you wish to waive your

3     right to counsel and proceed on your own, Mr. Schulte?

4              THE DEFENDANT:  I do.

5              THE COURT:  Okay.  All right.  Does the government

6     have any questions they want me to ask?

7              MR. LOCKARD:  Yes, your Honor.  I would like to

8     address the defendant's comments about his access to legal

9     databases and unclassified discovery and office supplies.  And

10    the reason I want to address those is because the defendant's

11    waiver of his right to the government sounds equivocal right

12    now relating to those matters; in other words, it appears that

13    the defendant is saying he would like to waive his right to

14    counsel if his access can be enlarged.  The government submits

15    that the defendant's access to things like unclassified

16    discovery and electronic legal databases is limited.  It is

17    limited for good reason, including that he is subject to an

18    order of detention issued by this Court, he is subject to

19    special administrative measures that have been imposed by the

20    Attorney General and that have been upheld and modified by this

21    Court, for reasons of prison safety and operations.  And if the

22    defendant does proceed pro se, I'm sure that the MCC can work

23    to try and find a reasonable accommodation.  If the defendant

24    chooses to go pro se, the government submits that he must do so

25    knowingly, voluntarily, and intelligently, understanding that

L7E1SCHH

1    there are going to be restrictions and that he chooses to

2    proceed pro se notwithstanding those restrictions.

3              THE DEFENDANT:  I mean --

4              THE COURT:  Mr. Schulte, just so I clarify my comments

5    to you, you understand that there are national security

6    interests involved here and we had rulings on those things?  I

7    don't believe that either you can give your consent to

8    representing yourself while saying, this is contingent upon my

9    having access to materials that I've been denied access to

10   previously.  So if you want to have an unequivocal response, it

11   has to be:  I'm going to make my decision accepting the fact

12   that I may not get all the information I want and I may be

13   denied access to information.  I was going to tell you that you

14   have to make a motion to get all this material and information

15   and you'd get a ruling on that, an excepted ruling, but you'd

16   be making that motion after you had demonstrated that your wish

17   to proceed on your own is unequivocal, and not subject to your

18   determination as to the adequacy of government information that

19   you're seeking.

20             THE DEFENDANT:  I mean, Judge, there's a -- there's a

21   few things that have to be established first before I can even

22   make a motion, for example, right?  I wasn't talking about

23   classified information.  The SCIF is one thing, but in order

24   for me to represent myself, to even file a motion to get more

25   access, I need something as simple as a printer to print the

L7E1SCHH

1   motion.  How else do I file a motion with this Court, or if I

2   don't have access to -- I'm talking about my unclassified

3   discovery.  There's no reason -- there's no legitimate,

4   penological interest in denying me access to my unclassified

5   discovery.  If I don't have access to this, how can I represent

6   myself?  I mean, sure, I can represent myself and then file --

7   try to file motions.  If this Court denies it and I'm not

8   allowed simple accesses, and the Court of Appeals denies that

9   as well, then I wouldn't be able to proceed.  I mean, this

10   would end real quickly.  So all I'm saying is, I'm just asking

11   for very basic -- the very basics to even file the motion to

12   obtain this information.

13              (Ms. Shroff conferring with the defendant)

14              THE DEFENDANT:  All right.  So basically, even if I

15   wasn't representing myself, I still should have access to this

16   unclassified discovery.  There's no -- the government -- I

17   mean, the MCC is just playing games, not allowing me access to

18   basic discovery materials.  I mean, the point of me being

19   incarcerated is not, you know -- it's because the Court has

20   ruled that I'm a danger to the community, right?  But the whole

21   point is to allow me to prepare my defense, you know, and the

22   MCC is essentially saying, we can't allow his defense to get in

23   the way of the punishment that we're dealing out here.  And

24   that's not right.  There's no reason I shouldn't have access to

25   my unclassified discovery all the time so I can be working on

L7E1SCHH

1    my case all the time, aside from one hour a week.  Like,

2    that's -- that's just absurd.  There's no way I can properly,

3    effectively represent myself without the bare essentials.

4    That's all I'm requesting here is just the bare essentials, and

5    then from there, anything above that, then I can make motions

6    to the Court and we can go from there.  But if I can't even

7    make a basic motion to the Court, I don't even have access to

8    the bare essential knowledge or the bare essential discovery,

9    then I -- there's no way for me to effectively represent

10   myself.

11              THE COURT:  Well, I don't think that's an unequivocal

12   response.  You have to accept the rules as they exist.

13              THE DEFENDANT:  I can accept.  I'm just -- so for

14   example, your question on where you state that you can't go

15   back to having counsel represent you, right, when you make this

16   decision, so when you're asking me that question, I'm saying,

17   if I don't have access to these things, though -- do you

18   understand what I'm saying?  If I don't have access to bare

19   essentials, then I can't represent myself and I have to go back

20   to counsel.

21              THE COURT:  If you don't get information like that,

22   how could professional counsel, a lawyer, represent you?

23              THE DEFENDANT:  Exactly.  Your remark there was how

24   can anyone represent you, and the answer is no one can

25   represent you, so I'm just saying that exact same thing.  I'm

L7E1SCHH

```
1    waiving my right to counsel, but if I don't get access to the

2    bare essentials that any -- that a lawyer would have access to

3    to represent, like you said, then I wouldn't be able to

4    represent myself and I'd have to fall back to my attorneys.

5              (Ms. Shroff conferring with the defendant)

6              THE COURT:  But your attorney would be under the same

7    disability as you are, Mr. Schulte.

8              THE DEFENDANT:  Unless you -- unless you -- the

9    attorney's -- unless you -- they had different access.  You see

10   what I'm saying?  So my attorneys right now, they have 24/7

11   access to my unclassified discovery, so there's no restriction

12   on them.  I'm just talking about unclassified discovery here.

13   They have access to print --

14             (Ms. Shroff conferring with the defendant)

15             THE DEFENDANT:  Okay.  So I guess, going back to the

16   government, what is the -- what would be the government's issue

17   with allowing me 24/7 access to unclassified discovery?

18   There's no -- theres no -- nothing to do with classified

19   information there.  There shouldn't -- what is the government's

20   issue with that?

21             THE COURT:  I'm not aware that that's a restriction

22   that exists with you today.  Is that an existing condition?

23             THE DEFENDANT:  That's what I'm -- that's the whole

24   point I'm talking about here.  I'm not talking about classified

25   information.  I'm talking about unclassified.  The unclassified
```

L7E1SCHH

1   discovery, I don't have access to.  I don't have -- I only

2   have --

3           THE COURT:  You're telling me you don't have access to

4   the information?

5           THE DEFENDANT:  When I was able to go to the SCIF, I

6   could review the unclassified discovery and the classified

7   information at the SCIF, but when I went back to the prison,

8   they restrict that and I rarely have access to unclassified

9   discovery.

10          THE COURT:  Well, I thought we worked out the

11  difficulties with the access to the SCIF.

12          THE DEFENDANT:  The SCIF is something completely

13  different, so we haven't -- we haven't really discussed that,

14  and my -- I'm not -- there's nothing I'm talking about that's

15  related to the SCIF or classified information now.  That's

16  something that, like you said, we can discuss motions or we can

17  figure out later.  I'm talking about unclassified, not

18  classified at all, unclassified discovery.

19          (Ms. Shroff conferring with the defendant)

20          MS. SHROFF:  Your Honor, may I explain to the Court

21  what he's talking about?

22          THE COURT:  Yes.

23          MS. SHROFF:  So the government has put the discovery

24  in the case, which is neither classified nor any more subject

25  to a protective order, and also has the 3500 material -- all of

L7E1SCHH

```
1    this was used at trial -- on a laptop.  The laptop is at the
2    MCC.  Mr. Schulte is not given that laptop to work with as many
3    hours as he would like.  So the laptop is at the MCC.  It's
4    sitting at the MCC.  They just won't give it to him.  So what
5    he's telling the Court is, please can you help him get that
6    laptop into his cell so that he can work with it.  And I think
7    he's trying to tell the Court that the government has not
8    articulated any reason why they should not have reached out to
9    the MCC already to make sure he has access to that laptop
10   because that laptop has 3500 material, government exhibits that
11   were used at the first trial, the transcript of the first
12   trial.  These are all things that are very much in the public
13   domain.  So basically all he's saying, I think, is, you should
14   let my cell be my law library and let me have my unclassified
15   discovery so I may sit there and work with it.  I think that
16   the government's argument here that his statement is not
17   unequivocal -- that's a double negative -- or is equivocal is
18   the statement that he's trying to sort of clarify as to why
19   it's not an equivocal statement, because what he's asking for
20   is the bare basics.  And perhaps, since Mr. Schulte is adamant
21   about proceeding pro se, as a pro se lawyer, he should consult
22   with opposing counsel, who is Mr. Lockard here, and the two of
23   them should work out the discovery dispute.  And I think the
24   government is under an obligation to do so.  Because he wishes
25   to proceed as his own counsel and they have to confer with him.
```

L7E1SCHH

1           THE COURT:  Mr. Lockard, what do you have to say?

2           MR. LOCKARD:  Your Honor, the government believes that

3    the defendant's attempts to waive his right to counsel, as

4    things stand right now, has clearly been equivocal because his

5    attempt to waive has been, "I want to represent myself but,"

6    which is the very definition of equivocal.

7           THE COURT:  He's also saying materials that are in the

8    public domain, I can't get access to those, and it raises the

9    question, if it's true they are in the public domain, what's

10   the objection to his having copies of what's already public?

11          MR. LOCKARD:  I would address that in this way, which

12   is:  Standing here today at this hearing, I don't know that the

13   defendant's description of his access to the discovery

14   materials is accurate.  He acknowledges that he has at least

15   some access.  He says he would like more.  And I think the

16   purpose of today's proceeding is to determine whether he is

17   unequivocally proceeding pro se, knowing that he can request

18   modifications to his access to discovery.  Those requests may

19   or may not be granted.  This is the first time I have heard

20   these objections about access to discovery.  So just to answer

21   why the government hasn't contacted the MCC, because I heard

22   this a few minutes ago for the first time.  I don't know that

23   we can resolve those today, but I think what we can resolve

24   today is whether the defendant is unequivocally waiving his --

25          THE COURT:  Whether he's self-represented or not

L7E1SCHH

1   self-represented, doesn't he have an independent right to have

2   access to the discovery materials?

3            MR. LOCKARD:  He does, your Honor.  And the reason why

4   I'm not able to make a specific comment on his access is

5   because I don't know if his representations about access to it

6   are accurate.  We would have to talk to the MCC.  I know that

7   there are in fact Rule 16 protective orders, there are 3500

8   protective orders.  I can't say that there is a body of

9   materials that he can and should have access to in electronic

10  format 24/7.  These are all things that we can make a

11  good-faith effort to address.  But for today's purposes, the

12  question is, can the defendant --

13           THE COURT:  Or we can continue today's hearing.

14           MR. LOCKARD:  That's true.

15           THE COURT:  And that's what I have in mind to do, so

16  that you can work out these what I would call preliminary

17  matters.  And in my experience, this is the kind of thing where

18  the government has always made the production of materials so

19  that the defendants can have them.  And I don't know why.

20  Maybe it's something lost in the interstices of prior discovery

21  demands that would bar his getting access to this information,

22  but as I sit here right now, I'm not aware of it.

23           MR. LOCKARD:  No, and as the Court observed earlier,

24  Mr. Schulte had access to those materials during the

25  preparation for his prior trial.  I'm not sure what changed,

L7E1SCHH

1    but that's something we can explore and try to address.

2            THE COURT:  How long would that take?

3            MR. LOCKARD:  We can certainly contact MCC about it

4    immediately.  We can discuss it with defense counsel.  I would

5    optimistically say within probably a couple of days or by early

6    next week.

7            THE COURT:  Why don't we schedule a meeting for --

8    what day is today?  Wednesday?  Wednesday next week.

9            THE DEPUTY CLERK:  2:30 next week, next Wednesday, the

10   21st.

11           THE COURT:  Okay.  The parties will meet and confer

12   about Mr. Schulte's request about having access to this

13   information.  I'm proceeding on the premise that even if he's

14   not seeking to represent himself, he'd be entitled to have

15   access to this information.

16           Do you want to say something, Mr. Schulte?

17           THE DEFENDANT:  Yeah.  If they want to agree to a good

18   faith -- working through this with a good-faith effort to

19   resolve it, my -- so here's my -- let me just tell you what my

20   concern is, okay?  This is -- this is -- this is my concern.

21   My concern is, if I -- if I agree and waive this, right, and

22   then later on, the government doesn't give me access to my

23   unclassified materials and I can't represent myself and I come

24   back to the Court and say, listen -- and I filed -- or I talked

25   to the Court and the Court, for whatever reason, disagrees and

L7E1SCHH

1    then I -- I say, listen, I can't represent myself, and then the

2    Court would say, well, you agreed here that you can't go back

3    to having counsel represent you.

4              THE COURT:  Well, that doesn't sound very unequivocal

5    to me.  It sounds like you're hedging your bets.

6              THE DEFENDANT:  It's not --

7              (Ms. Shroff conferring with the defendant)

8              THE DEFENDANT:  All right.  The government has

9    acknowledged that even if they have a good faith -- an

10   obligation to act in good faith, so as long as that is agreed

11   to, then I waive.  I mean, I think that we should have time

12   upcoming next week to sit down and address some of these

13   issues, but that doesn't -- shouldn't get in the way of the

14   waiver.

15             THE COURT:  I think you have the cart before the

16   horse.

17             THE DEFENDANT:  Yeah, I don't think it should get in

18   the way --

19             THE COURT:  You've got to waive and it's got to be

20   unequivocal, and then if it's waived, if you do waive and it's

21   unequivocal, then you get to represent yourself.  It's not as

22   though you get a little taste of what you want and then you

23   make up your mind, well, now I want to represent myself, I've

24   gotten some information.

25             THE DEFENDANT:  It's not like that at all, but for

L7E1SCHH

1   example, if I went to file a motion with you, Judge, how can I

2   do that?  If I can't print anything, I can't -- right?  Do you

3   see?  How can I even begin?  How do I --

4        THE COURT:  You can't file any motions without access

5   to a printer.  I understand that.

6        THE DEFENDANT:  I mean, it's very limited to what I

7   can write by hand and the fact that I'm not even given pens,

8   I'm just given ink cartridges.  I can only write a couple

9   pages.  And I -- I developed an issue with my hand.  I can't

10  write.  The government gets to type 40 pages and give that to

11  you.  I'm limited if I am -- if I'm only able to write, it

12  makes no sense if I have a laptop and I can type it out.  All

13  I'm asking is a basic printer so I can give you the motion,

14  right?  That's all I'm asking is very basic things to even

15  begin, right?  I want to be able to -- if you're going to rule

16  against me on some of these issues, then I should at least be

17  able to file the motion to give to you.  I'm not trying to

18  hedge, I'm not trying to play any games here; I just want to

19  make sure -- I don't want to have some situation where I waive

20  and then I'm denied access to everything, I have no access to

21  discovery, unclassified discovery, I have no access to

22  anything, right?  The Court decides that, what can I do?  By

23  what you said earlier, no one could, not even my -- not even

24  lawyers could represent you without -- without unclassified

25  discovery, right?  That's what you said.  And so I don't want

L7E1SCHH

1    to be in that situation where somehow I'm stuck, I can't go

2    back, and the Court doesn't allow me basic access.  Does this

3    make sense or --

4              THE COURT:  I understand your point, but my point is,

5    you have to waive and the waiver has to be unequivocal, and

6    you're saying that it's not unequivocal.

7              THE DEFENDANT:  All I'm saying, as long as the

8    government has acknowledged they have a good-faith effort to

9    resolve this, then that's good enough for me and I would waive.

10             THE COURT:  The government is proceeding on a

11   good-faith basis.

12             THE DEFENDANT:  Okay.  Then I -- then I waive.

13             THE COURT:  I think I'm going to ask that we meet

14   again next week on Wednesday, 2:30.  In the meantime, I'm

15   directing Ms. Shroff, who is still counsel to Mr. Schulte, to

16   meet with the government and see if they can't thrash out these

17   differences so that Mr. Schulte has access to the information

18   he needs to make whatever motions he thinks is appropriate, and

19   makes an intelligent and knowing waiver of his rights to --

20             THE DEFENDANT:  Is that all four, all the four issues

21   that I raised, or are we just talking about the one?  The

22   discovery, the legal library, the printer, the SCIF, are you

23   talking about all four of those or are we just talking about

24   one?

25             THE COURT:  I'm talking about all four.

L7E1SCHH

1          THE DEFENDANT:  Okay.

2          THE COURT:  So what you're going to be discussing is

3    what access to documents would you have.

4          (Ms. Shroff conferring with the defendant)

5          THE COURT:  All right?

6          THE DEFENDANT:  Okay.

7          THE COURT:  We'll meet then next week.

8          In the meantime, Ms. Shroff should meet with

9    Mr. Lockard or Mr. Denton, see if you can't --

10          (Defendant conferring with Ms. Shroff)

11          THE COURT:  Finished?

12          MS. SHROFF:  Your Honor, Mr. Schulte points out

13    that -- well, I'll resolve that with Mr. Lockard, but

14    Mr. Schulte points out that he at least seeks to learn if he

15    would have an appeal based on the government's position now

16    that they don't have the obligation to provide him with certain

17    basics, that's number one, but also, that --

18          THE COURT:  He wants my advice on whether he can take

19    an appeal?

20          MS. SHROFF:  I don't -- no, I think --

21          THE COURT:  I don't think that's appropriate.

22          MS. SHROFF:  No, no.  I understand that, your Honor.

23    But I do think that the government should make some effort to

24    have Mr. Schulte present during the conversations with me, and

25    I will reach out to Mr. Lockard to see if that can be

L7E1SCHH

1    accommodated.

2                THE COURT:  Well, if he can accommodate it, if he

3    wants to accommodate it, that's fine.  If not, we'll have the

4    conference on Wednesday.

5                MS. SHROFF:  Okay.

6                THE COURT:  But it doesn't sound to me like this is an

7    unequivocal request.

8                MS. SHROFF:  Well, your Honor, the problem is, the

9    government is saying that it's an unequivocal request, but the

10   government is also not treating Mr. Schulte as actual counsel.

11   So they should confer with Mr. Schulte because Mr. Schulte has

12   instructed us -- at least me and Ms. Colson -- that he does not

13   wish for us to act on his behalf because he wishes to go pro

14   se.  So I understand the Court's conundrum.  I understand our

15   conundrum.  I'm going to do my best to solve it.  How about

16   that?

17               THE COURT:  I don't see you have much choice.

18               MS. SHROFF:  Thank you, your Honor.  I will do my best

19   here.

20               THE COURT:  All right.  Next Wednesday, 2:30.

21   Anything else?

22               MS. SHROFF:  No, your Honor.  Thank you.

23               THE COURT:  All right.  As it stands right now, I

24   think this motion cannot be granted.

25               All right.  We'll see you next week.
                                    o0o