UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

JOSHUA ADAM SCHULTE,

*Defendant.*

S3 17 Cr. 548 (PAC)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR EFFECTIVE SELF-REPRESENTATION**

Joshua Adam Schulte
Slave #79471054
Metropolitan Concentration Camp (MCC)
150 Park Row
NY, NY 10007

**TABLE OF CONTENTS**

I. TABLE OF AUTHORITIES ........................................................................ ii

II. PRELIMINARY STATEMENT ...................................................................... 1

III. THE FIFTH AND SIXTH AMENDMENTS COMPEL THIS COURT TO GRANT MR. SCHULTE ACCESS TO BASIC LEGAL MATERIALS ................ 2

A. The government fails to respond to Mr. Schulte's argument that a well-trained defense attorney could not represent himself unless granted the tools of his trade ........................................................................ 3

B. The right to self-representation ceases to exist if the government coerces the incarcerated pretrial detainee to forego access to the requisite knowledge ..... 4

1. Mr. Schulte's reasons for self-representation ........................................ 4

2. The importance for access to knowledge ............................................... 6

3. Refusing to provide pretrial detainees access to basic knowledge coerces them to abandon self-representation thereby nullifying that right ..................... 7

C. The Due Process Clause compels the courts to treat *pro se* criminal defendants as if they were criminal defense attorneys, free *pro se* defendants, or the government ........................................................................ 7

1. If Mr. Schulte possessed the resources, the government accedes that he could pay for the materials he seeks ......................................................... 8

2. The Court should pay for access to bare essentials just as it pays for other resources required by an indigent defendant ............................................. 8

3. Mr. Schulte cannot be prejudiced by virtue of his pretrial detention .......... 9

4. At the bare minimum, Mr. Schulte should be granted equal access under the law to the same resources afforded all other MCC inmates ....................... 11

D. Requested relief is reasonable and necessary ........................................ 11

1. 24-7 access to discovery ....................................................................... 12

2. 24-7 access to the same virtual law library that the government purchases for its prosecutors ........................................................................ 12

3. 24-7 access to a printer to print case law, motions, and other materials that all lawyers rely on for effective representation ......................................... 13

E. Mr. Schulte's increased limitations on access to his discovery and the law library, and the resulting prejudice ........ 14

IV. CONCLUSION ........ 15

## I. TABLE OF AUTHORITIES

**Cases**

*Adams v. United States ex rel. McCann*, 317 US 269 (1942) ........ 2

*Bolling v. Sharpe*, 347 US 497 (1954) ........ 7

*Faretta v. California*, 422 US 806 (1975) ........ 5

*Lewis v. Casey*, 518 US 343 (1996) ........ 2

*Schneider v. Rusk*, 377 US 163 (1964) ........ 7

*United States v. Plattner*, 330 F.2d 271 (2d Cir. 1964) ........ 4

*Weinberger v. Wiesenfela*, 420 US 636 (1975) ........ 7

**Statutes**

18 U.S.C. § 3142(e)(3) ........ 10

**Constitutional Provisions**

U.S. Const. amend. V ........ passim

U.S. Const. amend. VI ........ 1, 2, 15

U.S. Const. amend. XIV ........ 7

## II. PRELIMINARY STATEMENT

Mr. Schulte's opening memorandum demonstrated that his right to effective self-representation guaranteed by the Fifth and Sixth Amendments compel this Court to provide Mr. Schulte with, at the very least, (1) 24-7 access to his unclassified discovery; (2) 24-7 access to a legal library such as the government utilizes that enables the user to search court documents, filings, motions, opinions, annotations, and other essentials that are recognized as imperative for law practice and that the government pays to provide in the furtherance of criminal prosecutions, and in equal format provided to the government for easily searching, copying, and printing; and (3) 24-7 access to a printer to print motions and court filings. Denial of any such basic necessity, of which no criminal defense attorney or federal prosecutor could effectively litigate the case, would effectively deny Mr. Schulte the right to self-representation.

In response, the government argues "the discovery review and legal resources available to the defendant already are sufficient for his trial preparation and participation. Moreover, the relief the defendant seeks would violate prison security protocols. The motion should be denied." (Opp.[1] at 34). However, this is clearly untrue. I doubt very much that the government would consent to trial preparation without the aid of basic legal materials such as access to legal research, discovery, and other resources of their trade. The law accords that Mr. Schulte must be treated no different than the government, other defense attorneys, or other pretrial *pro se* defendants afforded the presumption of innocence.

[1] "Opp." refers to the Government's Omnibus Opposition to the Defendant's *Pro Se* Motions. "Opening Mem." refers to Mr. Schulte's Opening Motion, Dkt. 490.

## III. THE FIFTH AND SIXTH AMENDMENTS COMPEL THIS COURT TO GRANT MR. SCHULTE ACCESS TO BASIC LEGAL MATERIALS

The government relies almost entirely upon case law established in civil cases about the rights of convicted felons to legal resources to file civil complaints. Accord *Lewis v. Casey*, 518 US 343 (1996). Furthermore, the government invents arguments that Mr. Schulte never argued so it can defeat them. For example, the government argued "Similarly, the Sixth Amendment does not require the [g]overnment to provide a defendant resources so the defendant can pay for private counsel." Opp. at 37. Mr. Schulte never requested private counsel nor argued the government should pay for private counsel. Finally, Mr. Schulte disagrees with the government's rebuke for incorrectly referencing *Adams v. United States ex rel. McCann*, 317 US 269, 279 (1942). The precise paragraph states: "The right to assistance of counsel and the correlative right to dispense with a lawyer's help are not legal formalisms. They rest on considerations that go to the substance of an accused's position before the law. The public conscience must be satisfied that fairness dominates the administration of justice. An accused must have the means of presenting his best defense. He must have time and facilities for investigation and for the production of evidence. But evidence and truth are of no avail unless they can be adequately presented. Essential fairness is lacking if an accused cannot put his case effectively in court. But the Constitution does not force a lawyer upon a defendant. He may waive his Constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open." The Supreme Court by no means restricted an accused's right to fairness; whether assisted by counsel or self-represented, *ALL* are guaranteed the presentment of the best and most effective defense, via, *inter alia*, time and facilities for investigation and production of evidence.

### A. The government fails to respond to Mr. Schulte's argument that a well-trained defense attorney could not represent himself unless granted the tools of his trade

The government offers no response at all to Mr. Schulte's argument that the waiver of counsel is a waiver of representation by an attorney, *not* the waiver of all knowledge, all tools, and all access. Mr. Schulte further asserted that a well-trained defense attorney could not represent himself unless granted the legal materials of his trade. See Opening Mem. at 3-4:

> Waiving the right to counsel is a waiver of an experienced, knowledgeable professional for the sake of self-management; it is not to forsake all knowledge, all tools, and all access. A certified attorney who represents his client is permitted these basic accesses. Yet, if the attorney represents himself, the government postulates he does not have a right to these same materials—so how could he effectively represent himself? If a well-trained attorney is unable to effectively represent himself, then it is self-evident that such a system essentially prohibits self-representation altogether.
>
> A tradesman without the tools of his trade is as inept as the untrained. A baker without an oven is as inept as one without his training—neither can bake. Mr. Schulte, as a computer engineer, cannot write software without a computer. Similarly, a trained lawyer without access to case law or discovery is unable to represent anyone at all—so how could this Court ever find permissible to treat a *pro se* defendant in a way that a fully trained lawyer could not even effectively perform? Mr. Schulte is not asking for the moon; he is asking for access to basic knowledge—for a lawyer's tools, since he is now his own lawyer.

> No criminal defense attorney could effectively represent his client if the court denied him access to discovery, prevented him from reviewing case law, or forced him to write every motion by hand. Indeed, despite all his legal training, he could not possibly represent his client. Such an attorney would be declared ineffective, and his client subject to relief. How could it then be possible, for a man untrained in the law and without any experience, to effectively represent *himself* without such access? If a trained attorney would be ineffective without these basic accesses, it must follow that an untrained attorney would be even more ineffective.

Accordingly, unless Mr. Schulte is granted access to basic legal materials, he cannot effectively represent himself.

## B. The right to self-representation ceases to exist if the government coerces the incarcerated pretrial detainee to forego access to the requisite knowledge

The courts advise appointment of counsel "because of his special skill and training in the law." *United States v. Plattner*, 330 F.2d 271, 276 (2d Cir. 1964); clearly this does not encompass *access* to knowledge and resources. The attorney leverages his *experience* and *training*, not his access to knowledge and resources. To deny a *pro se* defendant access to knowledge and resources is to deny the right of self-representation altogether.

### 1. Mr. Schulte's reasons for self-representation

The entire purpose of self-representation is for self-management of the case—to do all that a lawyer normally would himself. Mr. Schulte seeks this because he believes he has no choice. Mr. Schulte's awful experiences with lawyers has taught him that he can only trust and rely upon himself.

The defense lawyers who accept cases for < $100,000 are blood-sucking parasites who feign interest in the case and motivation to do all that is necessary. But, once paid, they do nothing but ask for more money—they drop their charms and expose themselves for the consciencеless beasts that they are. The attorneys who cannot prevail in their own legal practice and must resort to representing the poor through appointments take on too many cases to be effective. Their time is divided by such a large caseload to effectively spend zero time on each case. They selectively choose only the easiest motions to file, if any, and do the bare minimum to avoid claims of ineffectiveness. They don't have the client's best interest at heart, but only their own. It is only the expensive attorneys that offer the most effective and best services. They limit their caseloads, and dedicate their time and attention to each client. They also appear to be the most intelligent and least likely to make the egregious and incompetent mistakes of the other two classes.

If Mr. Schulte possessed the resources to hire the best lawyers to represent him, he would gladly do so—Mr. Schulte enjoys self-representation as much as one enjoys a dentist visit for a root canal; he would *love* to leave his case to an effective attorney, trust his best judgment, and do nothing else but relax. However, Mr. Schulte cannot do so because he does not have the resources. The American legal system favors they wealthy—only they can afford to be accused of a crime. So, in lieu of trusting his case in the hands of the incompetent, negligent, and distracted, he feels there is no choice to him except to represent himself. Indeed, "[t]his right to [self-representation] is given directly to the accused; for it is he who suffers the consequences if the defense fails." *Faretta v. California*, 422 US 806, 819-20 (1975). No one else is as motivated by the consequences of failure than Mr. Schulte—and with no resources to hire the best attorneys, he would much rather take that burden upon himself and go down swinging.

The purpose of this is not to whine and complain as that avails nothing—one must play the hand one is dealt. Instead, Mr. Schulte makes clear he seeks to rely upon his own experience and training in logic and the ability to learn. However, this decision presupposes the *access to the knowledge to adequately learn.*

**2. The importance for access to knowledge**

In that respect Mr. Schulte is luckier than most. Born with the innate abilities of persistence, strong work ethic, and intelligence beyond the point to vices of arrogance, narcissism, and self-righteous indignation, according to CIA psychologists, Mr. Schulte is able to learn and adapt. But what good is an IQ in the 99th percentile when you cannot access the basic knowledge to learn? How is any *pro se* defendant expected to possess *a priori* knowledge of case law and criminal procedure?

The best parallel to this situation is the option afforded college students between in-class lectures and self-learning. For instance, Mr. Schulte is unable or unwilling to learn in a classroom environment through lectures. In college, Mr. Schulte rarely attended classes in lieu of self-learning from simply reading the textbook and showing up for the midterm and final (which is why his worst grades were from the required liberal arts classes that mandated and graded attendance). Representation by counsel is essentially the option of relying upon an instructor, a knowledgeable person, and the option of self-learning is to forego this knowledgeable person for the sake of self-management and self-learning. Now, it would be both impossible and absurd to require those who forego the knowledgeable person to proceed without the textbook—the knowledge. This guarantees that person failure. Hence, the government guarantees failure for those who choose self-representation by refusing to provide them with the same basic

knowledge and resources that they use. Accordingly, without access to knowledge, the government coerces the pretrial detainee to forego self-representation.

**3. Refusing to provide pretrial detainees access to basic knowledge coerces them to abandon self-representation thereby nullifying that right**

It is self-evident then, that the denial of basic knowledge coerces the pretrial detainee into retaining an attorney and ultimately nullifying his right to self-representation. That right to self-representation is meaningless if the government and courts coerce defendants into abandoning that right due to insufficient resources. Indeed, if this Court adopts the government's position that the right to self-representation does not encompass equal access to basic legal materials then he will have no choice but to request assignment of counsel.

**C. The Due Process Clause compels the courts to treat *pro se* criminal defendants as if they were criminal defense attorneys, free *pro se* defendants, or the government**

The government contends that "[t]he defendant's claim of a 'right to equal access' has no basis, and the Legal Assistance Motion cites none." Opp. at 38. As Mr. Schulte explains in his Opening Mem., the "right to equal access" argument is predicated on the Due Process Clause of the Fifth Amendment's "equal protection" guarantee. Although, unlike the Fourteenth Amendment, the Fifth does not contain an equal protection clause, "it does forbid discrimination that is 'so unjustifiable as to be violative of due process.'" *Schneider v. Rusk*, 377 US 163, 168 (1964) (quoting *Bolling v. Sharpe*, 347 US 497, 499 (1954). The standards for analyzing equal protection claims under either amendment are identical. See *Weinberger v. Wiesenfela*, 420 US 636, 638 n. 2 (1975).

**1. If Mr. Schulte possessed the resources, the government accedes that he could pay for the materials he seeks**

The government accedes that Mr. Schulte can pay for the resources he requests himself, but opposes the Court or government paying. The government essentially states that the American criminal justice system is a pay-to-play fraud, where only the wealthy can properly navigate the system. This is a direct violation of the Due Process Clause of the Fifth Amendment—Mr. Schulte is no less a human than the richest man in the world in the lens of the United States Constitution. It is absurd to believe that Mr. Schulte cannot have access to basic materials merely because he cannot afford them. This only reinforces the notion that it's far better to be rich and guilty than poor and innocent in this pay-to-play criminal "*just us*" system. Accordingly, just as the courts pay for resources an indigent defendant cannot purchase, Mr. Schulte asks the Court to pay for any required resources necessary for self-representation.

**2. The Court should pay for access to bare essentials just as it pays for other resources required by an indigent defendant**

As Mr. Schulte argued in his Opening Mem. at 5-6:

> Defense attorneys assigned to indigent defendants are paid by the Court, and use this money to pay for a legal library such as Westlaw, printers, and access to discovery. Since Mr. Schulte is representing himself, it follows that the Court should pay for Mr. Schulte's access to a similar legal library, printers, and access to discovery. Mr. Schulte did not waive access to basic knowledge—only the expert to interpret this knowledge. No defense attorney files a motion or represents a client without unfettered access to the courts to review filings, motions, and court opinions that are critical in

making effective arguments. No defense attorney is forced to write motions by hand, to create trial exhibits by hand, or to forego the use of a computer to review discovery and print documents. Without such access, defense attorneys could not make effective arguments, and could not mount an effective defense. Mr. Schulte is not immune from these same issues, and indeed, is affected more due to his lack of expertise and experience. Accordingly, it logically follows, and is undeniably supported by the Due Process Clause of the Fifth Amendment, that Mr. Schulte, and indeed all pro se defendants, must be granted equal access to the bare minimums that all defense attorneys rely to make effective motions, arguments, and ultimately, effective defenses.

**3. Mr. Schulte cannot be prejudiced by virtue of his pretrial detention**

It would be unconstitutional punishment to impose restrictions on Mr. Schulte's access to basic legal materials merely because he is detained pretrial. Mr. Schulte did not choose to be falsely charged with a crime nor did he choose to be incarcerated pretrial; for the government to rely upon its own decision to impose harsh conditions of confinement upon Mr. Schulte as justification for denying him access to basic legal materials, and ultimately, the right to self-representation altogether, is absurd and unconstitutional. See Opening Mem., at 7-8:

> The government cannot arbitrarily grant the right to self-representation to some, and deny it to others—based solely on the crimes alleged in an indictment. The Due Process Clause of the Fifth Amendment compels equal treatment under the law—all pretrial pro se defendants must be granted equal access to effectively defend themselves. Indeed, if Mr. Schulte were

not incarcerated, he would have 24-7 access to a law library, 24-7 access to his unclassified discovery, and 24-7 access to a printer. This Court cannot punish him and deny him this basic access merely because he is detained pre-trial—Mr. Schulte did not choose to be wrongly accused of a crime nor did he choose to be detained pretrial; no man can prevent the government from wrongly accusing him and incarcerating him pretrial. How, then, is it just to punish him for the government's mistakes?

Every other criminal defendant can use legal resources to prepare for trial—except defendants deemed a "flight risk" or a "danger to the community"—these defendants, who are typically facing the longest prison sentences, are arbitrarily denied equal access in violation of the Due Process Clause of the Fifth Amendment. How can it possibly be fair and proper, that a defendant charged with a 0-6 month misdemeanor is granted the ability to access basic legal knowledge to defend himself, but the defendant charged with life or even the death sentence is denied equal access? Indeed, no innocent person chooses to be wrongfully accused of a crime, let alone accused of a crime that "shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3). A criminal defendant incarcerated pretrial is already facing staggering odds at winning trial in addition to the oppressive conditions of confinement that are no different from those found guilty and sentenced to prison. Indeed, it seems that in America there is no presumption of innocence at all—upon indictment, the United States Federal Government can incarcerate and torture anyone it so desires and deny that person his humanity and his ability to defend himself. This is not justice—the Fifth Amendment prohibits the government from treating people

unequally, and it must provide equal access to basic legal knowledge and discovery to those detained pretrial just as it does to those released pending trial; otherwise, the denial of equal access is punishment imposed arbitrarily to prevent a fair trial.

**4. At the bare minimum, Mr. Schulte should be granted equal access under the law to the same resources afforded all other MCC inmates**

Finally, the government completely sidesteps Mr. Schulte's access relative to other inmates at the MCC. Under the Equal Protection guaranteed by the Fifth Amendment, the Constitution compels the courts to grant equal protections to criminal defendants. However, every other inmate at the MCC has significantly more basic rights than Mr. Schulte. Since the prison imposes these restrictions on Mr. Schulte arbitrarily, and without any legitimate penological interest, these restrictions are unconstitutional. Every other MCC inmate has 24-7 access to their discovery, library, and virtual legal library, whereas Mr. Schulte is significantly restricted as a SAMs inmate despite no such restriction in his SAMs. While the government argues that providing Mr. Schulte access to "electrical outlets in his cell and charging cables violates prison security protocols," Opp. at 40, the government fails to explain those "security protocols," or that *all other inmates at the MCC have such access*. Accordingly, Mr. Schulte's restricted accesses are arbitrary, and not based on any penological interest—for what basis does the prison seek to curb Mr. Schulte's accesses? There is no reason, save to hinder his ability to represent himself, prepare for trial, and ultimately prove his innocence.

**D. Requested relief is reasonable and necessary**

Mr. Schulte's requests are far from unreasonable.

**1. 24-7 access to discovery**

Mr. Schulte asks for 24-7 access to his discovery. As stated in the Opening Mem. and again here, Mr. Schulte previously had access to electrical outlets when he was in general population as well as 24-7 access to his discovery. Now that he is designated "SAMs," the prison claims he cannot have access to electrical outlets due to "security" concerns, but never identify such concerns. Mr. Schulte's SAMs do not restrict his access to electrical outlets, and in fact, it is extremely hard to imagine how access to electrical outlets could possibly harm the national security of the United States. Furthermore, when the MCC moves Mr. Schulte to the "law library," he is provided direct access to electrical outlets. Mr. Schulte is presumed innocent, and regardless of how many times the government falsely trumpets that he "tried to release classified information from prison," this assertion is beyond ludicrous. Accordingly, the government must comply with this demand and either release Mr. Schulte back into general population or provide him with electrical outlets so that he has 24-7 access to his discovery like everyone else.

**2. 24-7 access to the same virtual law library that the government purchases for its prosecutors**

Mr. Schulte asks this Court to provide him access not only to written opinions of the courts as he currently has through the BOP's LexisNexis portal, but also access to the filed motions and other critical materials that defense attorneys and prosecutors utilize. With the advent of technology, it is extremely easy to provide all knowledge and resources at the tip of the fingers; especially since these technological advances are now ubiquitous, and no lawyer in the country foregoes such access, the ubiquity and necessity requires that Mr. Schulte have equal access.

As to how access is provided, Mr. Schulte believes it is not the BOP that must provide access, although this would be the simplest solution. The BOP provides access to a limited LexisNexis portal for all inmates; however, the vast majority of inmates have no interest and never use it for anything, and a few require even greater access. Accordingly, the BOP should simply develop a custom license through LexisNexis such that all inmates default to no access until requested. Inmates can then request for greater access if required. Until the BOP develops such a policy to provide the requisite access, the Court should pay for the service. Indeed, it should be the district courts who are responsible for providing and paying for access to digital legal libraries since the needs and Constitutional protections for pretrial detainees are far greater than for the convicted.

Finally, however the service is purchased, it should be provided on Mr. Schulte's laptop for 24-7 access along with the ability to copy/paste, search, print, and other advanced functionality only available if provided by laptop.

### 3.    24-7 access to a printer to print case law, motions, and other materials that all lawyers rely on for effective representation

The government once more ignores Mr. Schulte's argument. Despite the government's claims that he "can print by making a request to his unit manager," Opp. at 41, this is simply false. While the MCC has finally provided Mr. Schulte with access to a printer (after filing his Opening Mem.), that ability to print is restricted to the MCC's law library. Mr. Schulte cannot simply unplug the printer, connect it to his laptop, and print—the printer is attached in a locked cabinet outside Mr. Schulte's reach, and the MCC plainly defines that Mr. Schulte cannot print anything from his laptop. Mr. Schulte does not recall the MCC ever permitting any inmates to print from their laptops in general population either.

Accordingly, the government should provide the requested access or the Court should pay for a printer and paper.

**E. Mr. Schulte's increased limitations on access to his discovery and the law library, and the resulting prejudice**

The defense additionally seeks to update the Court about access to the law library resources at the MCC. First of all, despite the government's promise to produce all of his discovery on individual drives that do not require external power, the government has failed to do so. Accordingly, Mr. Schulte can only review the bulk of the forensic materials from the 10S "law library." This "law library" is a small cage, approximately 3X3, that has a computer and power outlets. In order to supplement access to this computer to review case law, Mr. Schulte has been forced to forego his one-hour-per-day "recreation." The recreation cage has a television and is *expansive*—almost the size of a New York City bedroom—which is expansive for a man treated less than an animal, and locked in a cage the size of a parking space for the last 4 years of his life. In any case, Mr. Schulte has been forced to forego this "recreation" luxury to spend the needed time in the "law library," especially because he is not permitted access to his legal materials on SCIF days. The MCC only moves 10 South inmates to "recreation" or "law library" in the morning; since Mr. Schulte is at the SCIF on Monday and Tuesday morning, he is not allowed "recreation" or "law library" during those days. Thus, he has been forced to forego "recreation" on the remaining days to cram law library access.

## IV. CONCLUSION

Effective self-representation cannot exist if the courts deny *pro se* defendants equal access to bare essentials that all attorneys require for effective representation.

This court should find that Mr. Schulte, as a *pro se* pretrial defendant, is entitled access to his unclassified discovery, a legal library, and a printer in accordance with the Fifth and Sixth Amendments to effectively manage, prepare, and conduct his own defense just as the government, defense attorneys, and all free *pro se* pretrial defendants have.

Dated: New York, New York
September 20, 2021

Respectfully submitted,

Joshua Adam Schulte
Slave #79471054
Metropolitan Concentration Camp (MCC)
150 Park Row
NY, NY 10007

Josh Schulte #79471054
MCC
150 Park Row
NY, NY 10007

ATTN: Judge Crotty, 17 cr. 548 (PAC)
Pro Se Intake Office
United States District Court
500 Pearl Street
NY, NY 10007

RECEIVED
SDNY PRO SE OFFICE
2021 SEP 29 PM 2:09