UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA

   - v. -　　　　　　　　　　　　　　　　　　S3 17 Cr. 548 (PAC)

JOSHUA ADAM SCHULTE,

           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

# GOVERNMENT'S OPPOSITION
# TO DEFENDANT'S *PRO SE* MOTION TO SUPPRESS EVIDENCE

 

AUDREY STRAUSS
United States Attorney
Southern District of New York

David W. Denton, Jr.
Michael D. Lockard
Assistant United States Attorneys
   *- Of Counsel -*

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum in opposition to the *pro se* motion filed by the defendant, Joshua Adam Schulte ("Schulte" or "defendant"), to suppress evidence recovered from his cellphone (the "Cellphone"). (D.E. 497) (the "Motion"). The defendant argues that evidence from the Cellphone should be suppressed because it the Cellphone was seized without a warrant. As discussed below, however, even if the defendant's recitation of the facts were correct, the Cellphone was searched pursuant to a judicially authorized warrant, and its initial seizure was justified by exigent circumstances created by the defendant's planned international travel and his awareness that law enforcement considered him a suspect in the investigation and was executing a search of his apartment. The Motion should be denied without any need for a hearing.

**BACKGROUND**

The charges in this case stem from the defendant's theft of classified documents and records (the "Classified Information") from the Central Intelligence Agency ("CIA") and his transmission of that classified information to WikiLeaks for publication. Between March 7 and November 17, 2017, WikiLeaks made 26 separate disclosures of classified CIA information (together, the "Leaks"). The Leaks contained, among other things, highly sensitive CIA information, including detailed descriptions of certain tools used by CIA operators. The Leaks' impact on the CIA's intelligence gathering activities and the national security of the United States was catastrophic.

Immediately after the first publication from the Leaks on March 7, 2017, an investigation began into who stole the Classified Information and the scope of the theft. The defendant was quickly identified as a likely suspect. Among other reasons, the investigation identified a particular backup server as the likely location from which the Leak information was stolen, and

the defendant was believed to be one of only a small number of system administrators for that server in March 2016, the timeframe associated with the theft according to the most recent timestamps on the stolen Leak files. (Ex. 1 ¶¶ 9-12). The defendant's name did not appear to have been included in the Leak information available on March 7, 2017, though other names did. (*Id.* ¶ 12(b)). Investigators also learned that the defendant planned to leave the United States on an international flight departing March 16, 2017, and retuning a few days later. (*Id.* ¶ 21).

Among other investigative steps, the FBI applied for a series of warrants to search the defendant's apartment in Manhattan and electronic accounts maintained by him. In the early afternoon of March 13, 2017, the Honorable Barbara Moses, United States Magistrate Judge, issued a warrant to search the defendant's apartment without notice to the defendant (Ex. 2), and a covert search was conducted that same afternoon. (Ex. 3 ¶ 8). After the covert search, in the early morning hours of March 14, 2017, Judge Moses issued warrants to search the defendant's electronic accounts (Ex. 4) to conduct an overt search of the defendant's apartment. (Ex. 5). Records for the defendant's Google account showed that the defendant used the Cellphone to access Google services, which in turn were used to communicate with others about the Leaks after they became public. (Ex. 6 ¶¶ 23-24). The defendant's Google search history, provided on March 14 in response to the electronic accounts warrants, showed multiple searches relating to the deletion of data. (Ex. 7 ¶¶ 28, 30).

On March 15, 2017—the day before the defendant's scheduled international flight, and after the FBI obtained the above-described information showing the defendant's apparent use of the Cellphone to communicate about the Leaks and his online searches relating to deleting data—FBI agents approached and interviewed the defendant in a voluntary, non-custodial setting. (Ex. 8 at 1). During that interview, the defendant consented to the interviewing agents'

2

viewing the Cellphone in his presence, but did not consent to imaging the phone. (*Id.* at 3). The defendant was served with a grand jury subpoena to appear before the grand jury on March 17, 2017, and with a subpoena requiring him to present the Cellphone to the grand jury "forthwith." (Exs. 9, 10; Ex. 8 at 3). The defendant stated that he did not understand what the documents meant, and was informed he could seek legal counsel if he chose. (*Id.* at 3). The defendant was also asked if he would voluntarily surrender his passport, but he refused. *Id.* The defendant alleges that the Cellphone was seized from him, and not voluntarily surrendered. (Mot. at 3, 4).[1]

The defendant was advised that his apartment would be searched, and agreed to return to the apartment with the interviewing agents and unlocked the door. (Ex. 8 at 3). The defendant asked if the computers and electronics in his apartment would be imaged. (*Id.*).

In the early morning hours of March 16, 2017, Judge Moses issued a warrant to search the Cellphone. (Ex. 11). The Cellphone, however, was locked and law enforcement could not search it, despite the search warrant. (Ex. 12 ¶ 13(b) n.4).

On March 20 and 21, 2021, the defendant, accompanied by his attorneys, was interviewed by the Government and law enforcement agents at the U.S. Attorney's Office. At the interview on March 21, 2021, the defendant, in the presence of counsel, consented to a search of the Cellphone and entered his password to unlock it. (*Id.* ¶ 13(b)). When the Cellphone was unlocked, however, it rebooted, and FBI was able to obtain only a logical copy of the Cellphone rather than a complete forensic image. (*Id.* ¶ 13(c)). In August 2019, the FBI was able to unlock the Cellphone using a partial password discovered during the investigation. (*Id.* ¶ 13(d)). On September 9, 2019, the Honorable James L. Cott, United States Magistrate Judge, issued a new

---

[1] The Government does not concede the defendant's description of events. However, because the Motion should be denied even if the defendant's description were correct, this memorandum assumes the defendant's version *arguendo*.

3

warrant to search the Cellphone. (Ex. 13). The FBI searched the Cellphone pursuant to that warrant. The Cellphone contains, among other things, images of an individual identified as Victim-1 in the Government's prior filings.

## DISCUSSION

### I.     The Motion to Suppress Should Be Denied

In his Motion to Suppress, the defendant argues that evidence obtained from the Cellphone should be suppressed because the "forthwith" subpoena with which he was served on March 15, 2017, did not authorize a seizure of the Cellphone; that he did not voluntarily surrender the phone in response to the subpoena, but rather it was seized from him; and, accordingly, the search and seizure of the phone was without a warrant in violation of the Fourth Amendment. (Mot. at 4-11).

For purposes of this Motion, the Government assumes, but does not concede, that the Cellphone was seized from the defendant on March 15, 2017. The Motion, however, still must be denied. The Cellphone was not *searched* without a warrant. The initial search of the Cellphone in 2017 was entirely lawful based both on Judge Moses' warrant (Ex. 11) and the defendant's consent; and the later search in 2019 was authorized by Judge Cott's warrant. (Ex. 13). The initial *seizure* of the Cellphone, though warrantless, was temporary and lasted only so long as required to obtain the initial warrant that issued hours later.

"Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Supreme Court has interpreted the Fourth Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." *United States v. Martin*, 157 F.3d

4

46, 53 (2d Cir. 1998) (alterations omitted) (quoting *United States v. Place*, 462 U.S. 696, 701 (1983)). As the Supreme Court has explained:

> Different interests are implicated by a seizure than by a search. A seizure affects only the person's possessory interests; a search affects a person's privacy interests. Recognizing the generally less intrusive nature of a seizure, the Court has frequently approved warrantless seizures of property, on the basis of probable cause, for the time necessary to secure a warrant, where a warrantless search was either held to be or likely would have been held impermissible.

*Segura v. United States*, 468 U.S. 796, 806 (1984) (citations omitted). Court have approved, for example, the warrantless seizures, pending obtaining a warrant, of an apartment, *id*. at 810-14; mail packages, *Martin*, 157 F.3d at 54, *see also United States v. Okparaeka*, 17 Cr. 225 (NSR), 2018 WL 3323822, at *6-7 (S.D.N.Y. July 5, 2018); locked safes, *Malapanis v. Regan*, 335 F. Supp. 2d 285, 289-91 (D. Conn. 2004); and laptop computers, *United States v. Dzionara-Norsen*, 19 Cr. 6131 (FPG) (MWP), 2020 WL 1897179, at *8-10 (W.D.N.Y. Apr. 17, 2020) (magistrate report and recommendation), *adopted by* Decision and Order, 19 Cr. 6131 (FPG) (MWP), Dkt. No. 76 (W.D.N.Y. June 18, 2020).

The seizure of the defendant's Cellphone in this case was permitted by these principles. The defendant's incredibly serious espionage and hacking offenses became publicly known on March 7, 2017, when WikiLeaks published the first set of classified documents and information stolen by the defendant 10 months earlier. Law enforcement responded immediately and the investigation proceeded rapidly, resulting in a covert search of the defendant's apartment on March 13, a search of his electronic accounts on March 14, and an overt search of the defendant's apartment on March 15, 2017.

From this investigation, law enforcement knew, among other things, that the defendant had international travel plans on March 16. Moreover, the defendant's Google search history,

5

provided on March 14 in response to the electronic accounts warrants, showed multiple searches relating to the deletion of data. (Ex. 7 ¶¶ 28, 30). As described above, law enforcement also had probable cause to believe the Cellphone contained evidence of the criminal activity under investigation. (*Supra* at 6; Ex. 6 ¶¶ 23-24). Based on the FBI's March 15, 2017 interview of the defendant, the defendant knew of the investigation and appeared to believe (correctly) he was a suspect in that investigation, knew the FBI was searching his apartment and other electronic devices and media, and refused to surrender his Cellphone or his passport. Under these circumstances, the FBI was justified in temporarily seizing the Cellphone based on the existence of probable cause and the risk of flight or the destruction of evidence.

That probable cause supported the seizure of the Cellphone is readily shown by the fact that, mere hours later, Judge Moses issued a warrant to search it. (Ex. 11). The short delay of only a few hours in order to obtain that warrant was plainly reasonable under the circumstances. *See Segura*, 468 U.S. at 812 (seizure of apartment until the following day to obtain a warrant was not unreasonable under the circumstances); *Martin*, 157 F.3d at 54 (11 days between seizing a package and obtaining a search warrant was not unreasonable under the circumstances). When the Cellphone ultimately was searched, those searches were authorized by the March 2017 warrant (Ex. 11), the defendant's consent (Ex. 12 ¶ 13(b)), and the 2019 warrant. (Ex. 13). Accordingly, the seizure and search of the Cellphone was reasonable and comported with the requirements of the Fourth Amendment. The defendant's Motion to Suppress evidence obtained from the Cellphone should be denied.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny the Motion to Suppress.

Dated: October 1, 2021
      New York, New York

AUDREY STRAUSS
United States Attorney

By:    /s/
David W. Denton, Jr. / Michael D. Lockard
Assistant United States Attorneys
(212) 637-2744 / -2193

To:    Joshua Adam Schulte (by hand, via MCC Legal Department)
        Standby Counsel of Record (by ECF)