L9FGschC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

UNITED STATES OF AMERICA,

            v.                              17 Cr. 548 (PAC)

JOSHUA ADAM SCHULTE,

                                       Conference
              Defendant.

------------------------------x

                                  New York, N.Y.
                                  September 15, 2021
                                  4:00 p.m.

Before:

                    HON. PAUL A. CROTTY,

                                    District Judge

                        APPEARANCES

AUDREY STRAUSS
     United States Attorney for the
     Southern District of New York
MICHAEL LOCKARD
DAVID DENTON
     Assistant United States Attorney

JOSHUA ADAM SCHULTE, Pro Se

SABRINA P. SHROFF
DEBORAH AUSTERN COLSON
     Attorneys for Defendant

Also Present:

DAN HARTENSTINE, CISO Officer

L9FGschC

1                    (In open court)

2                    THE DEPUTY CLERK:  Your Honor in the matter of 17 Cr.

3        54, United States of America v. Joshua Adam Schulte.

4                    Counsel for the government, please state your

5        appearance.

6                    MR. LOCKARD:  Good afternoon, your Honor.  Michael

7        Lockard and David Denton for the government.

8                    THE COURT:  Good afternoon.

9                    MR. DENTON:  Good afternoon, your Honor.

10                   MR. SCHULTE:  Josh Schulte here, pro se.  Good

11       afternoon.

12                   MS. SHROFF:  Good afternoon, your Honor.  Sabrina

13       Shroff and Deborah Colson for Mr. Schulte, who is seated to my

14       left and Ms. Colson's right.

15                   THE COURT:  Does the government want to bring up

16       anything?

17                   MR. LOCKARD:  Your Honor, the only item that the

18       government had raised for the Court's attention is the question

19       of the defendant's delivery of correspondence to the

20       government, which is addressed in our September 3rd letter.

21       I'm happy to discuss it with the Court.

22                   THE COURT:  Yes, please.

23                   MR. LOCKARD:  So your Honor, this is, in some ways, a

24       relatively simple issue, but at the same time also does involve

25       some important considerations, given that it involves

L9FGschC

communications and correspondence by an inmate who is subject
to SAMs because of his unlawful disclosure of classified
information.

        The background of the problem, as the Court knows, is
that the defendant is under SAMs and is now also pro se.  So he
no longer has the assistance of counsel to communicate on his
behalf with the government.  And the SAMs mean that his
communications from the prison are subject to monitoring and
restrictions under the special administrative measures.  And so
the question has arisen, how does the defendant write to the
government.

        Now, of course, the defendant can use the mail, which
he has access to.  He can mail things through the postal
service.  Because of the review and procedures involved with
his prison mail, that can be delayed, which we recognize.  And
so we have proposed a number of alternatives to the defendant
and to standby counsel for him to convey correspondence to the
government, which we think are secure, reliable and also
minimally burdensome to everybody involved.  Standby counsel
has rejected that proposal, and that's outlined in their
September 10th letter.  There's not really any explanation for
why those proposals have been rejected.  But I'm happy to
outline them again for the Court and the reason why the
proposals we think are appropriate.

        THE COURT:  Would you do that, please.

L9FGschC

1            MR. LOCKARD:  Yes, your Honor.

2            So number one, if the defendant has correspondence for

3       the government, standby counsel can scan it and email it to us.

4       Standby counsel or a cleared paralegal is physically with the

5       defendant twice a week during his SCIF visits.  Standby counsel

6       has been filing scanned written letters and motions by ECF.  I

7       think they have filed about ten or eleven letters and motions

8       on his behalf, so it's something that's happening anyway.  And

9       we think that that is a safe and minimally burdensome

10      alternative to the US mail.  Or correspondence can be delivered

11      to the US attorney's offices.  One St. Andrew's is staffed

12      24/7, and it is always open to receive mail.  We also have an

13      office in the courthouse on the fifth floor, which we do not

14      typically use for the receipt of mail, but given these

15      particular circumstances, we agree that that's a place where

16      mail can be delivered, as long as it is staffed.  Typically, an

17      administrative personnel or a security officer will be at the

18      desk and can hold onto correspondence so that we can come get

19      it.  Or fourth, if standby counsel or the defendant has

20      physical custody of correspondence, they can let us know, and

21      if somebody is available, we will send someone to come pick it

22      up in person.

23           What we think is not appropriate is for the hallway

24      outside the courthouse SCIF to essentially be used as a mail

25      drop.  That area is not under US attorney's office control.  It

L9FGschC

```
 1    is not secure.  It is accessible by noncleared personnel.  It

 2    is accessible by members of the general public at times.

 3    Prospective jurors, at times, have access to that floor.  We

 4    don't think it's appropriate to have documents or

 5    correspondence left there, especially under these circumstances

 6    and given the issues in this case.

 7              THE COURT:  So you have proposed several alternatives?

 8              MR. LOCKARD:  Yes, your Honor.

 9              THE COURT:  And Mr. Schulte and his team have declined

10    to accept any of them; is that correct?

11              MR. LOCKARD:  The counterproposal has been to use the

12    hallway as a mail drop area.

13              THE COURT:  Mr. Schulte?

14              MS. SHROFF:  In fairness to Mr. Schulte, that issue is

15    standby counsel's issue.

16              THE COURT:  Ms. Shroff, go ahead, then.

17              MS. SHROFF:  Thank you, your Honor.  I just want to

18    make sure that we're all on the same page as to what we're

19    talking about, right.  We are not talking about anything that

20    has come out of the SCIF or has gone into the SCIF.  Once a

21    document -- as the government well knows and has conflated this

22    issue here -- once a document enters the SCIF, according to the

23    court information security officer, that document becomes

24    presumptively classified.

25              To make sure a simple letter to the government about
```

L9FGschC

1   nonclassified matters is delivered to the government without

2   making it presumptively classified, the only way for

3   Mr. Schulte to do that is to make sure that that letter does

4   not enter the SCIF.

5           So throughout this case, there has been a chair

6   outside the SCIF -- and I'm not sure if the Court has seen

7   where the SCIF is located -- it is not located where the jurors

8   come in.  It is guarded by an anteroom that has an FBI agent

9   and a very, very nice United States marshal service marshal

10  named Gary who sits in the anteroom.  It is opposite that

11  entrance room that is the chair on which there is a big plastic

12  bin.  In that plastic bin over the course of this case, we

13  leave our cell phones there because they cannot enter the SCIF,

14  we leave our documents that we don't want to have become

15  presumptively classified outside, we leave our bags outside, we

16  leave most of our possessions outside, including, sometimes,

17  our shoes and, most importantly, our cell phones.  So sometimes

18  you will see outside of that SCIF door, there will be two

19  phones belonging to Ms. Colson, two phones belonging to me, two

20  phones belonging to Asha.  That's six phones outside.  That

21  area is actually monitored by the court security staff, because

22  sometimes the court security staff leaves us little notes that

23  say, don't forget your phone.  It's definitely monitored.

24          The proposal to the government was this, Mr. Schulte,

25  before he enters the SCIF, will drop off that letter in that

L9FGschC

box so that he doesn't bring the letter into the SCIF.  And
nothing in that box will ever receive any piece of paper that
Mr. Schulte has created within the SCIF.  Anything created
within the SCIF or brought into the SCIF, standby counsel will
deal with.

What we don't want to do is become fact witnesses
between the government and Mr. Schulte.  We do not want to
coordinate between the government and Mr. Schulte.  So we had a
proposal for the government.  The government and Mr. Schulte
should have a phone call; a phone call every month, every two
weeks, every week, that's up to the two of them.  The call will
be placed by the person who is within the SCIF, and then
Mr. Schulte and the government can speak at a set time so that
the government's insistence that Mr. Schulte make arrangements
with them so they can then go get an FBI agent to listen to the
call, all of that is pre-planned and it's a set meeting so we
don't have to waste time and energy.

When Mr. Schulte has any correspondence for the
government, we have specifically told them that he will let
them know.  But the government refuses to pick up a call from
Mr. Schulte unless we give them advanced notice of the call.
So my suggestion was, just have a weekly call, then the problem
is solved.  I put that in my letter to the Court.  You have a
weekly call.  Mr. Schulte will let Mr. Lockard know there's
mail.  Mr. Lockard's staff, who goes to that building ten times

L9FGschC

1    a day, if not more, can simply stop on the ninth floor, pick up

2    the mail and leave.

3          In the alternative, we will drop it off on the fifth

4    floor.  But we will not be responsible for calling Mr. Lockard

5    and telling Mr. Lockard to go to the fifth floor to pick up the

6    mail, because that's a --

7          THE COURT:  You will do that for the ninth floor but

8    not the fifth floor?

9          MS. SHROFF:  Well, I said, we will go from the ninth

10   floor to the fifth floor.  I don't know why they can't go from

11   the fifth floor to the ninth.  If it's not burdensome for me,

12   it's not burdensome for them.

13         Let me just say one more thing, your Honor.  We're not

14   in the SCIF every time Mr. Schulte is in the SCIF.  It's

15   extremely tough for us.  We are rotating our schedules some

16   days.  So some days Ms. Colson covers from 10:00 to 12:00.  I

17   cover from 12:00 to 2:00, Asha steps in from 2:00 to 2:30.  Our

18   schedules are not such that we can block off chunks of days and

19   just sit in the SCIF.  It's impossible for us.

20         THE COURT:  Mr. Lockard, what do you have to say?

21         MS. SHROFF:  One last thing, your Honor.  We went and

22   hired a contract paralegal.  We haven't even asked the Court to

23   give us the money nunc pro tunc, to be honest with you, we have

24   been so stressed out trying to get coverage in the SCIF,

25   because that is also another problem, the days keep moving, the

L9FGschC

1     jury selection days keep changing.  So we hired this gentleman

2     who works for another company.  He does not have an office.  He

3     does not have email access for us.  He's not able to go use his

4     office's services to scan and email to Mr. Lockard.

5              So this has never been an issue with Mr. Kamaraju and

6     Mr. Laroche.  We did this all the time.  Somebody came, knocked

7     on the SCIF door, we had a conversation, we gave them stuff.

8     Or we met in the middle of the street between here and One

9     St. Andrew's.  To the extent we are there, we can do this.  But

10    if the contract paralegal is there, he doesn't have a way to do

11    that.  And the best he can do is to tell Mr. Lockard to send

12    somebody from his staff from the fifth floor to the ninth floor

13    to pick it up.  And if Mr. Hartenstine would give us

14    permission --

15              THE COURT:  Thank you.

16              MS. SHROFF:  Thank you.

17              THE COURT:  Mr. Lockard?

18              MR. LOCKARD:  Yes, your Honor.  Very briefly, the

19    problem that Ms. Shroff has identified, this issue with

20    documents becoming presumptively classified is actually not a

21    problem.  That is not true.  Documents do not become

22    presumptively classified because they have been taken into a

23    SCIF.

24              Mr. Hartenstine can discuss SCIF security issues with

25    the Court, he's here.  But our understanding is that to

L9FGschC

1    preserve and protect the integrity of the data in the SCIF, the

2    court information security officer doesn't want the defendant

3    to bring material from outside in because then it's hard to

4    tell if the same documents are coming out or if material from

5    inside the SCIF is coming out.  That's really the question.

6            MS. SHROFF:  Then wouldn't it make sense for him to

7    leave the document outside and not take it in?  Mr. Hartenstine

8    is the one who told me that if you take a document inside the

9    SCIF, it becomes presumptively classified --

10           THE COURT:  Ms. Shroff, let's proceed in an orderly

11   fashion.  I'm listening to Mr. Lockard now.  You will have the

12   opportunity to respond.

13           MS. SHROFF:  I thought he was done, I'm sorry.

14           THE COURT:  He was in mid sentence.

15           MR. LOCKARD:  Thank you, your Honor.

16           So that is not a problem.  It is not a problem for the

17   defendant to have correspondence taken with him into the SCIF

18   and then have us come get it or have standby counsel deliver it

19   in one of the, as I have said, minimally burdensome ways that

20   we have identified.

21           Number two, the idea that we're only talking about

22   nonclassified materials, that's based entirely on whatever

23   self-classification decisions the defendant makes, which we

24   don't think is an effective or reliable or secure way to handle

25   documents.  The defendant has access to classified information

L9FGschC

in the SCIF.  He has access to classified information in his
head and can include classified information in a letter that he
leaves in the hallway.

And then this is, I think, sort of not even really
relevant to the issue, but Ms. Shroff's reference to past
practice is talking about in-person delivery from the US
attorney's office to defense counsel and vice versa, which is
one of the methods that we have proposed.  We will, if someone
is available, send somebody to collect it in person.  But we
think that there are security and reliability problems with
leaving documents or correspondence unattended in a courthouse
hallway.

THE COURT:  Ms. Shroff?

MS. SHROFF:  Your Honor, we did not have hand-to-hand
exchanges with past team members.  We left the documents in
that bin for a note for Mr. Kamaraju.  Mr. Kamaraju may have
knocked and had talked to us or vice versa, but we had none of
these issues with the prior team, that's one.

Number two, I sent my September 10th letter, which
discusses how a document comes to be presumptively classified
to Mr. Hartenstine, and I didn't hear any objection from
Mr. Hartenstine describing it that way, and I believe I got
that information from him.

But we don't police what Mr. Schulte writes or doesn't
write.  We've had several conversations with the CISO about

L9FGschC

1    this.  We have no way of knowing what Mr. Schulte -- we are not

2    the police of Mr. Schulte in the SCIF.  That's our point to

3    both the CISO and the government.  We do not watch what he's

4    doing.  We're not there as the police.  If Mr. Schulte writes a

5    letter, we don't necessarily have any ability --

6                THE COURT:  Well, I haven't seen the September 10th

7    letter.  What I'm going to propose now is --

8                MS. SHROFF:  Your Honor, I think it was ECF filed with

9    the Court.

10               THE COURT:  It may have very well been.  I haven't

11   seen the letter, though.  That's a point of fact.  What I'm

12   going to ask you to do, both sides, is submit what your best

13   proposal is and I will determine which proposal I'm going to

14   adopt and it will be binding on both sides, whatever I adopt.

15   So today is the 15th, you are to submit the document by the

16   22nd, a week's time for you to prepare the letter, and I will

17   rule on it promptly.  We will resolve this issue.

18               MS. SHROFF:  Your Honor, I will be out of the country

19   on the 22nd, but I'm sure somebody else can finish and put the

20   letter in.

21               THE COURT:  Mr. Lockard, do you have anything else you

22   want to raise?

23               MR. LOCKARD:  No, your Honor, not for the government.

24               THE COURT:  Mr. Schulte?

25               MR. SCHULTE:  Yes, I had several issues I wanted to

L9FGschC

1    discuss.

2              THE COURT:  All right.

3              MR. SCHULTE:  The first one is, in one of the motions

4    for production of discovery, the home server and home desktop,

5    the government responded -- and I have replies that I don't

6    think have been filed yet -- but it's an issue that I think

7    needs to be addressed right away.  Essentially, the government

8    is saying these two servers have already been produced and are

9    in the SCIF.  And my standby counsel has always said that's not

10   the case.  And on September 10th, I told them the government's

11   response.  They did a look of the SCIF.  She's right here, she

12   can tell you.  Neither of those computers are in the SCIF, they

13   haven't been, I have never reviewed them in the five years the

14   government has had them.  So I mean, we can go back and forth

15   and say --

16             THE COURT:  Mr. Schulte, have you replied?  You say

17   you have made a motion for this, the government has responded;

18   have you replied?

19             MS. SHROFF:  Your Honor, maybe I can shortcut this for

20   a second.  As I understand it, there were some computers that

21   were in the SCIF and then the cabinet -- I don't know what the

22   word is -- maybe it broke or had to be reconfigured or

23   something.  So I think those computers are now somewhere in the

24   CISO's possession.  Is that correct?

25             MR. HARTENSTINE:  Your Honor, so this incident

L9FGschC

1    occurred immediately before the first trial, in which one of

2    the cabinets, the safe within the SCIF that was used to house

3    the computer with the alleged child pornography on it was

4    stored in this safe.  And the FBI had the combination to the

5    safe.  And the FBI had the comibination to the safe.  The

6    arrangement was that if the defense needed access, they would

7    contact the FBI and request that the FBI come and open the safe

8    and give them access, because my understanding is that that's

9    policy with regard to custody of child pornography.

10          When this lock was attempted to or someone attempted

11   to open the lock, it malfunctioned -- it hasn't been used in a

12   while -- which is a common problem with those.  And since we

13   were quickly approaching trial, I took custody of the hard

14   drive, and it remains in my custody now.  It's in the Court's

15   SCIF in a drawer designated for use by the CISOs.

16          MS. SHROFF:  So we can solve this problem by getting

17   the computers from whichever SCIF it is in and getting them to

18   the SCIF that Mr. Schulte uses.  Of course, Mr. Schulte has no

19   way to watch that data without the presence of the FBI, so I

20   think the government is going to have to make some

21   arrangements.

22          And we would ask, your Honor, that whoever is entering

23   a closed room with either Ms. Colson and I be vaccinated.  It

24   is my understanding that not everybody on the government's

25   prosecution team is vaccinated.  And we would very much

L9FGschC

appreciate it if people who are actually vaccinated worked with

us in close proximity.

MR. SCHULTE:  Just to be clear, that was only the one

computer.  The server 02 or a different server, that was never

there, right, that was something else?

MR. HARTENSTINE:  That's correct.

MR. SCHULTE:  So that was never there and it's not in

the SCIF currently, server 02, so there's the issue of this

server as well.  That's also not at the SCIF, standby counsel

has confirmed that.

THE COURT:  This computer is in the SCIF related to

child pornography charges?

MR. SCHULTE:  No, no.  Basically, the government is

alleging that this server has the Snowden documents on it that

were released publicly.  And because this public website was

viewed, therefore the whole server was classified, and now it

can't be produced to me in unclassified discovery.  However,

it's never been produced in the SCIF.  My standby counsel

cannot find it.

THE COURT:  The state of the record, Mr. Schulte, is

you moved for release of this information, the government has

responded, and you have yet to reply or you don't need to

reply?  Do you want to reply?

MR. SCHULTE:  I asked the Court for October 1st to

reply because they had an omnibus response.  And so I asked the

L9FGschC

1    Court until October 1st to file replies to all of them.  I gave

2    six replies to --

3           THE COURT:  Is October the 1st enough?  Because I'm

4    more than happy to give you October the 1st for your reply.

5           MR. SCHULTE:  Yeah, I think I gave standby counsel

6    like four or five of them yesterday, so they were unable to

7    file them yet.  But most of them should be filed by next week.

8           I just wanted to bring this to the attention of the

9    Court, knowing that, yes, there's a reply, I have a declaration

10   in there about this.  But with trial approaching, I just wanted

11   to make sure that the Court knows that this discovery has never

12   been reviewed at all by me in five years.  And I was hoping

13   that there could be a quicker response either from the

14   government or something to resolve this now, rather than

15   waiting for the motion practice.  Because the government said

16   in their response, basically, that it's not true, that these

17   servers are there.  But they didn't reach out to me or try and

18   actually resolve the issue, they just said, it's not true.

19   Like I said, my standby counsel checked and none of these

20   computers are in the SCIF.

21          MS. SHROFF:  Your Honor, what Mr. Schulte is saying,

22   as far as I know, is correct.  Which is why on Docket No. 502

23   of the Court's docket, I suggested that the government and

24   Mr. Schulte have at least a weekly call so that they can

25   meet-and-confer about discovery-related issues, resolve them,

L9FGschC

1    rather than all of us having to bother the Court.  This was the

2    whole point of my telling the government, I gave them literally

3    12 step-by-step things that if they agree to do with a pro se

4    defendant, things would go smoother.  And the first one on that

5    is that the government and Mr. Schulte have a weekly or a

6    bimonthly call so that they can discuss discovery-related

7    issues and resolve them within themselves.

8              THE COURT:  What's next, Mr. Schulte?

9              MR. SCHULTE:  The next issue I was hoping that we

10   could resolve, the other SCIF issue.  Now, I think it's been

11   brought up to the Court, just about the fact that during the

12   SCIF time, I am chained to the floor.  That makes it unable for

13   me to review, for example, one of the desktop computers that's

14   set up there with a specific forensic environment that was set

15   up by our expert or the ability to take items from the filing

16   cabinets and stuff like this.  And during my, whatever, three

17   years or however long it's been with the SCIF, I have had no

18   problems with the marshals or anything.  And I'm leg cuffed

19   anyways, just like I am now.  So I was just hoping that I could

20   just not be chained to the floor to have some free movement

21   around in the SCIF to be able to do things.  And the government

22   responded basically saying, it's a security issue.  But like I

23   said, I think it's more secure in the SCIF than it is here

24   even.

25             THE COURT:  What is the security issue, Mr. Lockard?

L9FGschC

1          MR. LOCKARD:  Your Honor, this is an issue that I

2     believe is also addressed in the supplemental protective order

3     that the Court issued on consent of the parties back in

4     December of 2018.  And this particular restraint issue, it's

5     our understanding, was actually at the request of the marshals.

6     The security concern is a concern that the marshals have also

7     expressed to us.  And it is their security assessment that,

8     while the defendant's hands are unrestrained while he's in the

9     SCIF -- which is actually a departure from the ordinary

10    security protocols that they follow -- when he's in the

11    presence of non-marshals or non-law enforcement personnel, he

12    should be leg chained and secured to the floor.  And that's the

13    response that we got from the marshals when we raised this with

14    them.

15          THE COURT:  We'll check to see whether that's still

16    the marshals' position.

17          MR. LOCKARD:  Thank you, your Honor.

18          MS. SHROFF:  Your Honor, I just wanted to be clear.

19    Mr. Schulte is not asking for the leg chains to come off.

20          THE COURT:  He's asking for further lengths of the

21    chain.

22          MS. SHROFF:  No, they chain him at the ankles, so he

23    remains chained at the ankles.  And then they take the middle

24    part of that chain and nail it to the ground.

25          THE COURT:  He wants more chain links?

L9FGschC

1          MS. SHROFF:  He just wants to not be nailed to the

2     ground.  He doesn't mind his feet being chained to each other.

3     He's okay -- he's not okay -- but he understands that --

4          THE COURT:  Another alternative would be to put more

5     links in the chain; correct?

6          MS. SHROFF:  No, but he would still be chained to the

7     ground.  Unless the more links would be to the chain to the

8     ground.  Yes, that would work.

9          MR. SCHULTE:  So my understanding is the issue that

10    the marshals have is that they're afraid for Sabrina Shroff in

11    there being attacked by me; is that what the marshals' concern

12    is?

13         THE COURT:  I don't know what the marshals' concern

14    is.  We'll find out.

15         MR. SCHULTE:  Okay.  Go ahead.

16         The next issue I wanted to bring up is I'm hoping

17    that -- so there's two more issues I want to bring up.  So for

18    example, if I need resources from the Court for something to be

19    purchased -- so for example, the government has said that they

20    consent to this, the laptop they provided me doesn't have a CD,

21    DVD drive -- these things are like $10 -- the external DVD so I

22    can review these discovery disks.  And the government says they

23    consent to that, if it's purchased, that's fine, then they can

24    provide it to me.  For things like this, do I need to request

25    this through the Court or what's the process for that?  And

L9FGschC

1    will the Court approve that?

2            THE COURT:  I suggest you talk to your standby counsel

3    who is fully aware of how you get funding for necessary

4    supplies.

5            MS. SHROFF:  Your Honor, we're happy to.  We have been

6    dealing with the supply issue.  We've gotten him toner, paper,

7    whatever it is that he needs for the SCIF.

8            MR. SCHULTE:  So I should talk to them and they're

9    able to purchase this?

10           THE COURT:  Right.

11           MR. SCHULTE:  On the same issue, I wanted to know what

12   the Court's process is -- and this may be the same answer,

13   then -- for filing if I have classified filings and ex parte

14   filings for the Court, I guess I just work through them?

15           THE COURT:  That's what standby counsel is there for.

16           MS. SHROFF:  Your Honor, we would like to be heard on

17   the filing of classified information if we could.

18           THE COURT:  All right.

19           MS. SHROFF:  We did have an issue come up.  We filed

20   in excess of caution that the government might take the

21   position that some information was classified, we notified the

22   CISO, we checked, and then we filed the document in a redacted

23   format.  We informed the CISO that we disagreed with the

24   classification position taken by the CIA.  We told the CISO to

25   get us an answer within 14 days, which is the time frame the

L9FGschC

1    Court had set before.  Fourteen days have come and gone.  We've

2    gotten no response.  So there is a built in delay at each turn,

3    and the delay is what is causing a problem.

4              THE COURT:  We'll get you a response.

5              MS. SHROFF:  Thank you.

6              THE COURT:  Mr. Schulte?

7              MR. SCHULTE:  I think I only have two things left.

8    One of the last things is I wanted to bring up to the Court

9    that some of the motions that I'm filing, the government is --

10   in accordance with the local criminal rule 49.1(b) they are

11   supposed to only have 14 days to either respond or to ask the

12   Court for more time.  And on the motions so far, the government

13   has just been ignoring the deadline.

14             The most recent motions, the bail motion and cell

15   phone suppression, I think -- according to my standby

16   counsel -- they haven't responded.  I think the deadline has

17   already expired.  So I just wanted to bring this up and ask the

18   Court to remind the government that this is the local rules for

19   this district and just to make sure that they are abiding by

20   this.

21             THE COURT:  Mr. Lockard?

22             MR. LOCKARD:  Your Honor, as the Court knows, the

23   defendant has filed a number of motions, not according to any

24   particular schedule, spread out over an extended period of

25   time.

L9FGschC

1          THE COURT:  Spread out over 65 days.

2          MR. LOCKARD:  Yes, your Honor, at least.  And we have

3    filed a non-notice response to at least six or seven of those

4    motions.  Anything that was filed since that time, we'll

5    respond to.  And we can respond to it any time the Court would

6    like to set.  We do think it would be appropriate at some point

7    to talk about a motions deadline.  But I think just for today's

8    purposes, we will commit to responding to any outstanding

9    motions in a reasonable timeline, including any deadline the

10   Court would like to set.

11         THE COURT:  How about the deadline set forth in the

12   local rules?

13         MR. LOCKARD:  Yes, your Honor.

14         MR. SCHULTE:  And then the very last thing I just

15   wanted to bring up is the Court issued an order for the MCC to

16   have VTC calls with my family at the 1st of each month.  And

17   that's been happening all the way until this month.  I was

18   scheduled for September 3rd, and they didn't do anything.  And

19   then I was informed, oh, that the MCC decided all of a sudden

20   that they're going to offer family visits now and so they don't

21   have to abide by the Court's order anymore.  I don't think

22   that's the way it works.  So I just wanted to bring this up.

23   And I think that they should at least -- I mean, my VTC was

24   scheduled for September 3rd and just they decide that day not

25   to do it, so I just wanted to ask the Court to --

L9FGschC

1          THE COURT:  Why don't you write a letter bringing that

2     to my attention?

3          MR. SCHULTE:  Okay, you want me to write you a letter.

4     I can do that.

5          Standby counsel has told me they called MCC with no

6     response.

7          THE COURT:  Mr. Schulte, where are you housed now?

8          MR. SCHULTE:  Actually, that's a good question.  I

9     actually have something else to write on that.  I'm still at

10    MCC.  But actually, they have informed me that in the middle of

11    October or middle to end of October -- so basically when this

12    trial is supposed to begin -- the prison is shutting down and

13    they're supposed to be moving us.  And they say they'll come

14    and take all of our property, including my legal work and

15    laptops, up to two weeks before they move us.  And once we're

16    moved, it will take up to two weeks before we receive any

17    property.  So we're looking at a month delay, potentially,

18    where I'm unable to do anything, have no discovery or anything,

19    while they move me from the MCC when it's closed.  So this

20    could be an issue.

21         THE COURT:  It could be an issue.  Mr. Lockard, I hope

22    it's not an issue.

23         MR. LOCKARD:  Your Honor, we will reconfirm with the

24    BOP.  But we were advised -- I think our office was advised

25    this week -- that Mr. Schulte will not be moved from the MCC

L9FGschC

1    and that a portion of the MCC will remain open for, among other

2    things, in custody defendants and witnesses and Mr. Schulte.

3    So it's our expectation he will not be moved.

4              THE COURT:  Are you finished, Mr. Schulte?

5              MR. SCHULTE:  Yes.

6              THE COURT:  I have some questions for the parties.

7              First of all, Mr. Schulte, are you still requesting an

8    adjournment?

9              MR. SCHULTE:  Yes, especially in light of the issue

10   that we just discussed about I haven't been able to review

11   these computers at all.  And then I also filed yesterday a

12   notification to the Court of a *Brady* violation -- I have a copy

13   here for the Court, if it wants to see it -- and requesting the

14   information that was withheld during the first trial in

15   violation of *Brady*.  And then reminding the Court the

16   significance of the outstanding motion for forensic crime

17   scene, as alleged by the government, the CIA workstation, EX6I

18   server that were the government's case in chief at trial.  And

19   so I don't know if it was actually filed yesterday.  They said

20   no, they'll file it today, I guess they said.

21             THE COURT:  To respond to my question, you are still

22   requesting an adjournment?

23             MR. SCHULTE:  That's correct, yes.

24             THE COURT:  What about the government?

25             MR. LOCKARD:  Your Honor, at this time, the government

L9FGschC

1    does not oppose the defendant's request for an adjournment.

2    And we expect to provide the Court with additional information

3    on that position in the near future.

4                THE COURT:  Do you have a date in mind, Mr. Schulte?

5                MR. SCHULTE:  Well, Judge, the servers -- it depends

6    on the outcome of some of these motions.  So for example, the

7    unclassified server, if the government's position is going to

8    be that because of the Snowden documents, I have to review it

9    in the SCIF, either I'm going to have to add more SCIF days to

10   review unclassified discovery, or it's going to take a lot

11   longer before I can get to trial.  And the outstanding motion

12   for the forensics as well.  So due to this, there's no real

13   timeframe that I have until some of these issues are resolved.

14               THE COURT:  Now, under my tabulation, I tabulate --

15   subject to the government's correction -- the government has

16   filed opposition to seven outstanding motions; is that correct?

17               MR. LOCKARD:  Yes, your Honor.

18               THE COURT:  And you, Mr. Schulte, have requested until

19   October 1 to reply?

20               MR. SCHULTE:  That is correct.  But I expect --

21               THE COURT:  Just a minute, I'm more than happy to give

22   you the time.

23               MR. SCHULTE:  I'm sorry.

24               THE COURT:  I'm more than happy to give you the time.

25               MR. SCHULTE:  Okay.

L9FGschC

| | |
|---|---|
| 1 | THE COURT:  Is that all the time you need?  Do you |
| 2 | want more time? |
| 3 | MR. SCHULTE:  I'm sorry, how much time? |
| 4 | THE COURT:  How much time beyond October 1? |
| 5 | MR. SCHULTE:  I was just about to say, I finished most |
| 6 | of them.  My standby counsel has most of them.  And by next |
| 7 | week, it should be finished.  I shouldn't need any more time |
| 8 | than October 1st. |
| 9 | MS. SHROFF:  I just need one moment with Mr. Schulte. |
| 10 | I think he's forgotten one thing. |
| 11 | THE COURT:  Okay. |
| 12 | (Conferring) |
| 13 | MR. SCHULTE:  Standby counsel wanted me to remind the |
| 14 | Court, in addition to the seven responses that the government |
| 15 | filed in this omnibus response, my counselor had previously |
| 16 | filed motions that have been pending before I began |
| 17 | representing myself.  And those motions are still pending.  So |
| 18 | there's essentially two sets of motions; the motions that were |
| 19 | filed before I was pro se that are still pending, and then the |
| 20 | motions that were filed since I've been pro se, which the |
| 21 | government has responded to, and I should reply by next week. |
| 22 | THE COURT:  Could you give us a list of those motions, |
| 23 | Ms. Shroff? |
| 24 | MS. SHROFF:  I did, your Honor.  I'm happy to resubmit |
| 25 | them to chambers, if you'd like. |

L9FGschC

1          THE COURT:  No.  If you submitted them, we'll find

2     them.

3          MS. SHROFF:  Thank you.

4          THE COURT:  We'll start to work on the motions and the

5     replies on the motions made, as soon as we receive the replies.

6     We'll tend to those promptly.  And I expect from each side by

7     the 22nd a proposal on dealing with communications, phone

8     calls, document deliveries, document access and so forth.  I'll

9     get the proposal from each side, and I'll rule.

10         MS. SHROFF:  Your Honor, could I, with the Court's

11    permission, just resubmit the proposal of September 10th which

12    is Docket No. 502?

13         THE COURT:  You don't have to do that.  It's probably

14    upstairs.

15         MS. SHROFF:  Thank you.

16         THE COURT:  I just haven't seen it.

17         MS. SHROFF:  That's okay, your Honor.  Sorry about

18    that.

19         THE COURT:  Is there anything else to take up?

20         MR. SCHULTE:  No, not from me.

21         THE COURT:  Mr. Lockard?

22         MR. LOCKARD:  No.  Thank you, your Honor.

23         THE COURT:  The matter is adjourned then.  Thank you.

24         (Adjourned)

25