UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
:
UNITED STATES OF AMERICA,                       :
:
-v-                                             :
:    17 Cr. 548 (PAC)
JOSHUA ADAM SCHULTE,                            :
:
Defendant.                     :    **MEMORANDUM & ORDER**
:
---------------------------------------------------------------X

Defendant Joshua Schulte ("Schulte") moves for various forms of relief regarding his ability to effectively prepare his own *pro se* defense, including "24-7 access" to unclassified discovery, legal research resources, and other materials and infrastructure relevant to the mechanics of legal representation. *See* Def. Mot., ECF No. 490.[1] For the reasons set forth below, Schulte's motion is **GRANTED** in limited respects, but for the most part **DENIED**.

## BACKGROUND

a. **Schulte's *Pro Se* Status**

On July 26, 2021, the Court granted Schulte's motion to discharge legal counsel and represent himself against a variety of charges stemming from his alleged theft and disclosure to Wikileaks of classified CIA information. *See* ECF No. 485. During the extensive *Faretta* hearings undertaken prior to this ruling, the Court warned Schulte that, should he choose to proceed *pro se*, his status as a detainee subject to Special Administrative Measures ("SAMs"), discussed *infra*, would impact his self-representation:

> Let me give you one more word of caution here, Mr. Schulte. The fact of the matter

---

[1] The Government submitted its response in its omnibus opposition memorandum at ECF No. 499 (pp. 34–41) and Schulte filed his reply at ECF No. 522.

> is that a professional attorney would not face the problems you're facing because you're incarcerated. And we can try to modify those conditions as we go along, but the fact of the matter is that you're always going to be at a deficit vis-à-vis retained or appointed counsel, who does not carry the burden of being incarcerated. And you are incarcerated. That causes certain problems in the preparation. If you want to represent yourself, that's fine. But you can't modify all of the conditions that are inhibiting you right now.

July 22, 2021 Tr. 8–9, ECF No. 483; *see also Faretta v. California*, 422 U.S. 806 (1975). The Court then granted Schulte's motion only after Schulte clarified that it was unequivocal—and not contingent on several initial conditions closely tracking the relief sought in the instant motion. *See* July 14, 2021 Tr. 10–12, ECF No. 511. These purported conditions included: (1) increased access to unclassified discovery; (2) increased access to legal materials; (3) the use of a printer; and (4) access to the Sensitive Compartmented Information Facility ("SCIF"). *See id.* Eventually disavowing any such conditions at the Court's insistence, Schulte proceeded to "knowingly, voluntarily, and unequivocally" waive his right to counsel. *Wilson v. Walker*, 204 F.3d 33, 37 (2d Cir. 2000) (internal quotation marks and citations omitted).

### b. Classified Materials and the SAMs

Since October 26, 2018, Schulte's movement, communications, and access to technology have been constrained by SAMs imposed and enforced by the Attorney General and Bureau of Prisons ("BOP"). *See* SAMs Order 3–4, ECF No. 127. The SAMs were a direct byproduct of Schulte's willful disclosures of classified materials in violation of, *inter alia*, this Court's protective orders (for which Schulte has subsequently been convicted)—not as a punishment, but as an administrative measure to prevent further harmful disclosure of CIA secrets. *See id.*

Schulte has subsequently exhausted—and re-exhausted—seemingly every possible judicial avenue to try to rid himself of these restrictions. The Court has twice denied his motions

to vacate the SAMs, each time finding that there is an ongoing, present "danger that [Schulte] will disclose classified information." *Id.* at 7.[2] Meanwhile, Schulte has also filed a bevy of habeas petitions and other ongoing civil actions regarding his conditions of confinement, and seeking injunctive relief substantially overlapping with that sought in the instant motion.[3] The habeas petition before this Court was administratively stayed pending the outcome of these criminal proceedings. *See Schulte v. Att'y Gen. of U.S.*, No. 19-cv-3346 (PAC), ECF No. 11 (S.D.N.Y. Aug. 14, 2019). A second habeas petition was dismissed last year by Judge Oetken. *See Schulte v. Barr*, No. 20-cv-9244 (JPO), ECF No. 5 (S.D.N.Y. Dec. 7, 2020). Undeterred, Schulte has filed additional habeas petitions as motions in the instant action, each of which the Court has denied without prejudice. *See* ECF Nos. 453, 526. The SAMs remain in effect.

## DISCUSSION

Apart from the right, in and of itself, to conduct one's own defense, a criminal defendant's decision to proceed *pro se* does not create new underlying protections. *See McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984) ("The *pro se* defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in *voir dire*, to question witnesses, and to address the court and the jury at appropriate points in the trial."). To the contrary, it represents the *waiver* of one such protection:

---

[2] Schulte's first motion to vacate was denied with two minor exceptions inapplicable to the instant motion. *See* ECF No. 127. The second motion was denied outright. *See* ECF No. 527.

[3] In addition to his habeas actions, Schulte has brought at least thirteen actions in the Southern District pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq. Twelve such actions are before this Court and stem from Schulte's time at MCC, while the thirteenth is before Judge Gardephe and stems from his time at FCI, Schuylkill. Among the twelve actions before this Court, at least three seek injunctive relief pertaining to SAMs-based restrictions on Schulte's ability to litigate *pro se*. *See* Case Nos. 21-cv-4800 (PAC), 21-cv-5168 (PAC), 21-cv-5722 (PAC).

the Sixth Amendment right to the assistance of counsel. *See Faretta*, 422 U.S. at 807.

For his part, Schulte argues that his decision to voluntarily discharge counsel and proceed *pro se* "compels the Court to grant [him] the ability to *effectively* represent himself." Def. Mot. 2, ECF No. 490 (emphasis in original). He insists that "[f]or this court to treat Mr. Schulte differently from other criminal defendants, other defense lawyers, or even different from the government is reprehensible to both the Fifth and Sixth Amendments to the United States Constitution." Def. Mot. 2. In his briefing, he expends significant energy comparing his accommodations to those of other detainees and other *pro se* criminal defendants.

While Schulte is certainly entitled to adequate means to represent himself, *see Lewis v. Casey*, 518 U.S. 343, 351 (1996), there are distinct limitations. Schulte *is* differently situated from other criminal defendants (represented and *pro se* alike) for several reasons, each of which were well-known to Schulte when he chose to discharge his competent and experienced counsel. *First*, these criminal proceedings implicate a considerable volume of classified materials whose disclosure is governed—both in terms of content and discovery procedures—by the Classified Information Procedures Act, 18 U.S.C. App. 3, employee confidentiality agreements between Schulte and the CIA, and this Court's protective orders. *Second*, in large part due to his disregard for those protective orders, Schulte is subject to SAMs that significantly restrict his movement, communications, and access to technology and information.

The Court has held in numerous Orders—and reiterates today—that Schulte's self-representation is not a backdoor out of the SAMs. *See, e.g.*, ECF Nos. 513, 514, 515, 527. Although the Court is cognizant of the inherent tension pitting the national security interests guarded by the SAMs against Schulte's interest in self-representation, it notes that the parties, the CISO, and the Court have spent countless hours conferring and, in many instances, resorting to

4

motion practice to chart a just and workable course through the web of confidentiality complexities and SAMs constraints inherent to these proceedings. As a result, Schulte has been afforded a suite of accommodations, including, *inter alia*, regular SCIF hours for classified discovery; access to legal research and unclassified discovery; special provisions expediting legal mail and correspondence from the Government; equipment, hardware, and other resources necessary to prepare his defense from the MCC; and standby counsel's assistance in briefing, arguing, corresponding, and filing. These accommodations resemble those that other courts have authorized for *pro se* criminal defendants subject to SAMs. *See, e.g., United States v. Moussaoui*, 591 F.3d 263, 267–70 (4th Cir. 2010), *as amended* (Feb. 9, 2010); *United States v. Subasic*, No. 5:09-cr-00216, ECF Nos. 970, 978 (E.D.N.C. 2011). The Court thus dismisses the suggestion that, after granting Schulte leave to defend himself in spite of the Court's cautionary words, it would now be unjust to deny him anything less than "24-7 access" to trial preparation resources, and respite from the SAMs. *See* Def. Mot. 12–14.

Such demands notwithstanding, however, Schulte's motion brushes upon several seemingly reasonable requests. These include *increased*—but certainly not "24-7"—access, on the cusp of trial, to unclassified discovery materials, legal research, a printer, and other necessary accommodations. *See* Def. Mot. 12–15. The Government and the BOP have themselves acknowledged "the possibility of additional increases as required for trial preparation needs." Gov. Letter 1, ECF No. 482.

Although the Court recently granted Schulte's request to adjourn the October 25, 2021 trial date, it expects to set a new date in November, and anticipates that trial will take place in

early 2022.[4] The time is therefore ripe for the parties to revisit Schulte's trial preparation accommodations.

## CONCLUSION

Thus, for the reasons stated, the Court denies Schulte's specific requests for relief, but partially grants his motion in the following limited respect:

After a new trial date is set, the parties are to meet and confer as to Schulte's heightened trial preparation needs regarding unclassified discovery, SCIF access, legal research, access to a printer and other hardware, and other resources reasonably necessary for trial preparation—all accommodations Schulte currently has access to, but for which increased access may, per the Government and BOP, be possible as trial approaches.

The Clerk of Court is directed to terminate this motion at ECF No. 490.

Dated: New York, New York
October 12, 2021

SO ORDERED

*[signature]*

HONORABLE PAUL A. CROTTY
United States District Judge

---

[4] Schulte threatens in the instant motion that, should the Court fail to grant him the precise relief he seeks, trial "will be delayed by several years" and that, at least as of early August, he plans to file "at least 10 more pretrial motions." Def. Mot. 56. Schulte, of course, has the discretion to divide his *pro se* efforts and resources as he sees fit, including pursuing further discovery relief, interlocutory appellate review, habeas petitions, and other civil actions. However, absent extraordinary circumstances, once a new trial date is set, the Court does not intend to adjourn again.