UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-v-

JOSHUA ADAM SCHULTE,

            *Defendant.*

---

S3 17 Cr. 548 (PAC)

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS EVIDENCE FROM WARRANTLESS SEIZURE OF CELL PHONE

Joshua Adam Schulte
Slave #79471054
Metropolitan Concentration Camp (MCC)
150 Park Row
NY, NY 10007

**TABLE OF CONTENTS**

I.   TABLE OF AUTHORITIES.................................................................. ii

II.  PRELIMINARY STATEMENT.......................................................................1

III. THE WARRANTLESS SEIZURE AND SEARCH OF MR. SCHULTE'S
CELLPHONE VIOLATED THE FOURTH AMENDMENT..................................2

   A.   The Court should not consider the Opposition Motion ...............................2

   B.   A "forthwith" grand jury subpoena *duces tecum* executed immediately as a
   search warrant violates the Fourth Amendment.....................................................3

   C.   The March 16 search warrant is unconstitutional due to the poisonous tree
   doctrine, and should not be considered since it was never produced in discovery 3

   D.   Mr. Schulte never consented for the government to seize his cellphone......4

      1.  Mr. Schulte emphatically refused to turn over his cellphone to the FBI
      during the March 14 interview ..............................................................................5

      2.  The FBI's acknowledged inability to unlock the cellphone clearly illustrate
      that Mr. Schulte did not provide them with a password and did not consent to a
      search ......................................................................................................................6

   E.   Mr. Schulte's consent to disable security measures cannot constitute
   consent to search, and even if it did, this "consent" was already tainted by the
   FBI's unlawful seizure of the cellphone.................................................................6

   F.   The fact that the FBI believe someone to be guilty who refuses to consent
   to the seizure of his cellphone does not constitute exigent circumstances.............7

   G.   A warrantless search & seizure of a cellphone is unconstitutional...............9

   H.   Suppression is warranted to discourage lawless FBI conduct ....................10

IV.  CONCLUSION ........................................................................................11

# I.  TABLE OF AUTHORITIES

## Cases

*Birchfield v. North Dakota*,
   136 S. Ct. 2160 (2016)..................................................................................8

*Bumper v. North Carolina*,
   391 U.S. 543 (1968).....................................................................................4

*Harris v. O'Hare*,
   770 F.3d 224 (2d Cir. 2014) .........................................................................8

*In re Nwamu*,
   421 F. Supp. 1361 (S.D.N.Y. 1976) .............................................................3

*Johnson v. United States*,
   333 U.S. 10 (1948).......................................................................................2

*Linkletter v. Walker*,
   381 U.S. 618 (1965)...................................................................................10

*Mapp v. Ohio*,
   367 U.S. 643, 655 (1961)...........................................................................10

*Riley v. California*,
   573 U.S. 373 (2014).....................................................................................9

*Schneckloth v. Bustamonte*,
   412 U.S. 218 (1973)..................................................................................4, 5

*Terry v. Ohio*,
   392 U.S. 1 (1968)......................................................................................2, 10

*Union Pac. R. Co. v. Botsford*,
   141 U.S. 250 (1891).....................................................................................2

*United States v. Camou*,
   773 F.3d 932 (9th Cir. 2014) ........................................................................9

*United States v. Ceballos*,
   812 F.2d 42 (2d Cir. 1987) ........................................................................6, 7

*United States v. Kirk Tang Yuk,*
  885 F.3d 57 (2d Cir. 2018) ...................................................................................9

*United States v. Vasquez,*
  638 F.2d 507 (2d Cir. 1980) ................................................................................6

*Veronica School Dist. 47J v. Acton,*
  515 U.S. 646 (1995).............................................................................................2

*Weeks v. United States,*
  232 U.S. 383 (1914)...........................................................................................10

*Welsh v. Wisconsin,*
  466 U.S. 740 (1984).............................................................................................8

*Wong Sun v. United States,*
  371 U.S. 471 (1963).............................................................................................3

## Rules

Fed. R. Crim. P. 16 ..................................................................................................3

Local Crim. R. 49.1(b).............................................................................................2

## Constitutional Provisions

U.S. Const. amend. IV .................................................................................2, 3, 9, 10

## II.   PRELIMINARY STATEMENT

Mr. Schulte's opening memorandum demonstrated that FBI Special Agents Jeffrey David Donaldson, John Evanchec, and John Hui, among others, executed a warrantless search and seizure of Mr. Schulte's cellphone under the guise of a "forthwith" grand jury subpoena *duces tecum*. After Mr. Schulte blatantly refused to turn over his cellphone to the FBI, they physically seized it under color of authority.

In response, the government does not challenge the unconstitutional seizure of Mr. Schulte's cellphone, but instead argues that "its initial seizure was justified by exigent circumstances created by the defendant's planned international travel and his awareness that law enforcement considered him a suspect in the investigation and was executing a search of his apartment." Opp.[1] at 1. However, planned international travel and the FBI's belief someone is guilty do not create exigent circumstances; regardless, the Supreme Court already considered and rejected this argument in *Riley v. California*, 573 U.S. 373 (2014). The Supreme Court could not have been more clear: "Our answer to the question of what police must do before searching a cell phone seized… is accordingly simple—get a warrant." *Id.* at 403.

This seizure and subsequent search are despicable acts of tyranny and oppression reprehensible to the United States Constitution. The Federal Bureau of Investigation acted as the Nazi's Gestapo, committing armed robbery in broad daylight. Accordingly, the seizure of the cellphone is void, as are all fruits of the poisonous tree.

---

[1] "Opp." refers to the Government's Opposition to the Defendant's *Pro Se* Motion to Suppress Evidence, Dkt. 525. "Opening Mem." refers to Mr. Schulte's Opening Motion, Dkt. 497.

## III.   THE WARRANTLESS SEIZURE AND SEARCH OF MR. SCHULTE'S CELLPHONE VIOLATED THE FOURTH AMENDMENT

"Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing… reasonableness generally requires the obtaining of a judicial warrant." *Veronica School Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995). Such a warrant ensures that the inferences to support a search are "drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14 (1948). "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Terry v. Ohio*, 392 US 1, 9 (1968) (quoting *Union Pac. R. Co. v. Botsford*, 141 U.S. 250, 251 (1891)).

### A.   The Court should not consider the Opposition Motion

Mr. Schulte filed the suppression motion on August 31, 2021. Dkt. 495. In accordance with Local Crim. R. 49.1(b), "[a]ny opposing papers shall be filed and served within 14 days after service of the motion papers." The government did not request an extension and did not file its opposition until October 1, 2021, Dkt. 525; 1 month and 1 day later, or 31 total days later. Thus, their opposition is *17 days late*. The government offers no excuse for the untimeliness of their opposition motion except, it seems, that they are the government, and may do as they please. This untimeliness is unprecedented and should not be excused simply because the government is lazy. This court even reminded the government of its obligation under Local Rule 49.1(b) at the September 15, 2021 court appearance. Accordingly, the court should not consider the government's opposition motion.

2

### B.    A "forthwith" grand jury subpoena *duces tecum* executed immediately as a search warrant violates the Fourth Amendment

The government does not contest that the FBI seized Mr. Schulte's cellphone pursuant to a "forthwith" grand jury subpoena *duces tecum*. That seizure was incontrovertibly unconstitutional. See *In re Nwamu*, 421 F. Supp. 1361 (S.D.N.Y. 1976) (seizure pursuant to a "forthwith" grand jury subpoena *duces tecum* violates the Fourth Amendment and is unconstitutional). The subsequent searches of the cellphone were all fruit of the poisonous tree because they derived from the unlawful seizure and possession of the cellphone. It is well-settled that evidence obtained pursuant to an unlawful seizure or search must be suppressed as the fruit of the poisonous tree. See, e.g., *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963). This doctrine precludes the admission of primary, secondary, or derivative evidence. See *id.* Accordingly, suppression is required.

### C.    The March 16 search warrant is unconstitutional due to the poisonous tree doctrine, and should not be considered since it was never produced in discovery

The March 16, 2017 search warrant is unconstitutional because it is derived from the government's unconstitutional seizure of Mr. Schulte's cellphone on March 15, 2017. The subsequent search conducted pursuant to this search warrant is therefore fruit of the poisonous tree and must be suppressed.

Additionally, this is the very first time the government ever produced this search warrant to the defense. See Opp. at Ex. 6. Since the discovery deadline has long since expired—nearly two years ago—the government's late "production" of this discovery through an exhibit in its opposition motion should be rejected as a sanction for violation of Fed. R. Crim. P. 16; see Fed. R. Crim. P. 16(d)(2)(C).

**D.     Mr. Schulte never consented for the government to seize his cellphone**

"[W]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973) (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)). After discovering that his seizure of Mr. Schulte's cellphone pursuant to a "forthwith" grand jury subpoena *duces tecum* was unconstitutional, Special Agent Jeffrey David Donaldson and the FBI fabricated evidence and falsely claimed that Mr. Schulte "consented" to a search of his cellphone on March 21, 2021.

In reality, the government discovered that Mr. Schulte's cellphone was configured to securely self-delete upon entry of a wrong password, upon cellphone signal, or upon internet access. The government then informed Mr. Schulte that, unless he deactivated these security measures, they would charge him with a crime for tampering with evidence, obstruction of justice, etc. The government frightened him with threats until he agreed *to disable the security mechanisms*, but *NOT* to search his cellphone. After disabling the security mechanisms, the FBI greedily took the phone and tried to do an image, but once the screen locked, the password feature re-enabled, and the FBI were unable to unlock the phone, *BECAUSE MR. SCHULTE DID NOT DISABLE THE LOCK OR CONSENT TO AN IMAGE*. This is further corroborated by Mr. Schulte's adamant refusal to consent to the search of his cellphone on March 15, 2021; why would Mr. Schulte bluntly and repeatedly refuse consent to search, but then docilely accept at the next meeting with the FBI? It makes no sense. The government is lying. See Schulte Declaration.

4

Finally, there is no possible way consent can be voluntary and not coerced when the FBI seize and *continue to hold* the object they seek "consent" to seize. Whether consent to a search "was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. at 227 (internal quotation marks omitted). For the FBI to obtain voluntary consent after unlawful seizure, they clearly must, at the very least, return the object, and ask for consent while ensuring the defendant understands he can refuse and walk away with the object. Since this did not occur there is no possibility of voluntary consent.

Regardless, *Mr. Schulte did **NOT** consent*. Although the burden of proof is on the government to show that Mr. Schulte provided consent to search, Mr. Schulte can definitively prove that he did not give consent to search.

### 1. Mr. Schulte emphatically refused to turn over his cellphone to the FBI during the March 14 interview

The fact that Mr. Schulte emphatically refused to turn over his cellphone to the FBI during the March 14 interview and even demanded the FBI produce a search warrant clearly establishes his refusal to consent. See Opening Mem. at 2 ("Agent Donaldson then repeatedly asked Mr. Schulte for consent to image his phone and to relinquish his passport. Mr. Schulte repeatedly declined both… Mr. Schulte further declined to relinquish his cell phone and repeatedly stated that he did not understand the documents, but as the FBI did not have a search warrant he adamantly declined to relinquish his cell phone."). The government's position that Mr. Schulte changed his mind after the government unlawfully seized his cellphone is absurd and baseless.

### 2.     The FBI's acknowledged inability to unlock the cellphone clearly illustrate that Mr. Schulte did not provide them with a password and did not consent to a search

Mr. Schulte never gave the FBI the password to his cellphone, because he never consented to a search. This is confirmed by the statement, "[w]hen the Cellphone was unlocked, however, it rebooted, and the FBI was able to obtain only a logical copy of the Cellphone rather than a complete forensic image." Opp. at 3. If Mr. Schulte unlocked his cellphone or allowed it to be imaged, then a reboot would not have stopped the FBI from performing an image—they could just unlock the phone and try again. This clearly shows that the FBI did not know the password, and was not authorized to unlock the phone. This is further confirmed by the next statement, that "[i]n August 2019, the FBI was able to unlock the Cellphone using a partial password discovered during the investigation." *Id.* If Mr. Schulte consented to a search, why did they not have his password? Because Mr. Schulte never gave the FBI his password or consented to a search.

### E.     Mr. Schulte's consent to disable security measures cannot constitute consent to search, and even if it did, this "consent" was already tainted by the FBI's unlawful seizure of the cellphone

As discussed above, the FBI's unlawful seizure of Mr. Schulte's cellphone was unconstitutional, thereby tainting any subsequent searches. Furthermore, the government's threats of federal prosecution tainted Mr. Schulte's consent to lift those security mechanisms. See *United States v. Ceballos*, 812 F.2d 42, 50 (2d Cir. 1987) (holding that defendant's consent to search following an unlawful arrest did not become so attenuated as to dissipate the taint associated with the arrest); see also *United States v. Vasquez*, 638 F.2d 507, 528 (2d Cir. 1980) ("[T]he

6

government must show that the subsequent consent was sufficiently an act of free will to purge the primary taint of the unlawful invasion.") (internal quotation marks omitted). The government "bears the burden of proving a break in the causal chain." *Ceballos*, 812 F.2d at 50. Absent a showing of attenuation, courts must exclude the tainted evidence. Mr. Schulte's consent to lift the security measures of his cellphone was coerced, and not an act of free will to purge the primary taint.

Regardless, Mr. Schulte never consented for the FBI to search his cellphone.

## F.     The fact that the FBI believe someone to be guilty who refuses to consent to the seizure of his cellphone does not constitute exigent circumstances

Finally, like a fish flapping hopelessly out of water, the government asserted that exigent circumstances authorized the FBI to execute a warrantless seizure of Mr. Schulte's cellphone. As an initial matter, this argument must be rejected without consideration, because the FBI did not attempt a warrantless seizure of Mr. Schulte's cellphone pursuant to exigent circumstances, but rather, relied upon a "forthwith" grand jury subpoena *duces tecum*. The government cannot now claim that the FBI did not execute a search warrant pursuant to that subpoena—as they clearly stated in the FBI 302s (See Opp. Mem. at Ex. A). Indeed, at the time of the warrantless seizure of Mr. Schulte's cellphone on March 15, 2017, the FBI did not believe any exigent circumstances existed that authorized them to execute a warrantless seizure. That the FBI were caught with their hand in the cookie jar and executed an illegal seizure pursuant to a subpoena does not give them leave to modify their seizure and now claim it was based on exigent circumstances. The government's argument is obviously a bad faith last-ditch effort to save face and salvage the FBI's unconscionable and irrefutably unconstitutional behavior.

Regardless, the exigent circumstances exception is a limited one, *Welsh v. Wisconsin*, 466 U.S. 740, 749 (1984), and inapplicable here. The Supreme Court recognized exigent circumstances where, for instance, police "need to provide urgent aid," or where they are "in hot pursuit of a fleeing suspect," or where they "fear the imminent destruction of evidence." *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2173 (2016). And importantly, "the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." *Harris v. O'Hare*, 770 F.3d 224, 234 (2d Cir. 2014).

"Based on the FBI's March 15, 2017 interview of the defendant, the defendant knew of the investigation and appeared to believe (correctly) he was a suspect in that investigation, knew the FBI was searching his apartment and other electronic devices and media, and refused to surrender his Cellphone or his passport. Under these circumstances, the FBI was justified in temporarily seizing the Cellphone based on the existence of probable cause and the risk of flight or the destruction of evidence." Opp. at 6. First of all, the FBI knew weeks ahead of time that Mr. Schulte already knew he was considered a suspect and had booked a trip to Mexico for March 16, 2017 long before the WikiLeaks disclosures. Secondly, the government cannot use its own interview where it informed the defendant of its intent to search his apartment as a basis for exigency. Next, they cannot seize a cellphone based on "risk of flight"—for that they should arrest Mr. Schulte. Finally, there was no reason to believe Mr. Schulte would destroy evidence if he had not already done so. The FBI had plenty of time to apply for a search warrant as they applied for multiple warrants on March 13th and 14th. The simple fact that they did not have probable cause to seize Mr. Schulte's cellphone combined with their belief of his guilt and his refusal to consent for the FBI to seize his cellphone come nowhere close to the heavy burden required for exigent circumstances.

### G.    A warrantless search & seizure of a cellphone is unconstitutional

In *Riley v. California*, 573 U.S. 373 (2014), the Supreme Court considered the authority of the police to conduct a search of a person's cellphone when seized incident to the arrest of the person. As the Supreme Court recognized, the prevailing rule was that the police could conduct a search of ordinary personal effects that were found on an arrestee's person without the need to apply for a search warrant. *Id.* at 382-385. But the Court observed that "[m]odern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse." *Id.* at 393. The Court went on to describe the immense storage capacity of modern cellphones and how people commonly use them to store vast amounts of highly personal information. *Id.* at 393-397.

All these extraordinary characteristics led the Supreme Court to conclude that "[o]ur answer to the question of what police must do before searching a cell phone seized incident to arrest is accordingly simple—get a warrant." *Id.* at 403. The same rule has been applied to the search of cellphones seized under other exceptions to the Fourth Amendment's warrant requirement. See *United States v. Kirk Tang Yuk*, 885 F.3d 57, 79 & n.11 (2d Cir. 2018) ("plain view" exception); *United States v. Camou*, 773 F.3d 932, 943 (9th Cir. 2014) (automobile exception).

Mr. Schulte was not arrested on March 15, 2017—but if he had been, the FBI could not have seized and searched his cellphone incident to that arrest. However, the FBI somehow believed that they could seize Mr. Schulte's cellphone, not only without a search warrant, but without even an arrest warrant. This is preposterous. It is incontrovertible that the FBI's seizure of Mr. Schulte's cellphone was an egregious assault on the Fourth Amendment and all resulting evidence must be suppressed as fruits of the poisonous tree.

9

## H.      Suppression is warranted to discourage lawless FBI conduct

"Ever since its inception, the rule excluding evidence seized in violation of
the Fourth Amendment has been recognized as a principal mode of discouraging
lawless police conduct. See *Weeks v. United States*, 232 U.S. 383 (1914). Thus its
major thrust is a deterrent one, see *Linkletter v. Walker*, 381 U.S. 618, 629-35
(1965), and experience has taught that it is the only effective deterrent to police
misconduct in the criminal context, and that without it the constitutional guarantee
against unreasonable searches and seizures would be a mere 'form of words.'"
*Terry v. Ohio*, 392 U.S. at 12 (quoting *Mapp v. Ohio*, 367 U.S. 643, 655 (1961)).
Accordingly, suppression is warranted to safeguard the Fourth Amendment and
discourage abominable terrorism of American citizens through Gestapo tactics.

10

## IV.   CONCLUSION

For these reasons, this Court should find the warrantless seizure of Mr. Schulte's cellphone unconstitutional, and order all evidence derived from the cellphone suppressed. Indeed, the FBI acted as the Gestapo, a domestic terrorist organization oppressing a citizen at the point of a gun—and robbing him point blank. These ***Federal Terrorists*** are no better than common crooks, but even worse so, acting under the color of authority on behalf of the United States Federal Government. There is no greater example of tyranny, oppression, and proof that the United States Constitution exists today in name only, raped by all those charged to protect it.

Dated: New York, New York
October 14, 2021

Respectfully submitted,

Joshua Adam Schulte
Slave #79471054
Metropolitan Concentration Camp (MCC)
150 Park Row
NY, NY 10007

11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

JOSHUA ADAM SCHULTE,

          *Defendant.*

S3 17 Cr. 548 (PAC)

## DECLARATION OF JOSHUA ADAM SCHULTE IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS EVIDENCE FROM THE WARRANTLESS CELLPHONE SEIZURE

Joshua Adam Schulte declares under penalty of perjury:

1. I never consented to a search and seizure of my cellphone

2. At the March 21, 2021 proffer session, the Assistant United States Attorney and the FBI officers informed me that my cellphone was configured to self-delete upon entry of an incorrect password, upon connection to a wifi network, or upon connection to the cellular network. They further explained that if this happened, they would charge me with obstruction of justice, tampering with evidence, and potentially other federal charges. They frightened me and coerced me into removing these security measures from my cellphone under threat of criminal prosecution. After watching me disable these security measures, the FBI immediately seized the cellphone from my hand before I could relock the cellphone, and ran out of the room to perform a forensic image. I did not unlock the cellphone for the FBI to perform a forensic image, I did not give the FBI my password, and I certainly did not consent to a search of my cellphone.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York

October 14, 2021

Joshua Adam Schulte

2