

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 2, 2021

**VIA ECF**

Honorable Jesse M. Furman
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

    Re:   *United States v. Joshua Adam Schulte*,
             S3 17 Cr. 548 (JMF)

Dear Judge Furman:

      The Government respectfully submits this letter pursuant to the Court's Order, dated October 18, 2021, directing the Government to address (1) proposed procedures and timing for classification review of filings in this case; (2) what if any explanation for specific classification decisions the Government may be able to disclose to the defendant; and (3) what if any proactive guidance the Government may be able to provide to the defendant and standby counsel to aid them in determining which defense filings should undergo classification review prior to public docketing. (D.E. 561).

      With respect to classification review procedures, the Government, after consultation with the Central Intelligence Agency ("CIA"), which is the Original Classification Authority ("OCA") for the vast majority of the classified information at issue in this case, proposes as follows:

- Going forward, the OCA will complete classification reviews of defense filings within 21 days from the date that a filing is made available to the Government, except as described below.
    - If the filing is provided directly to the U.S. Attorney's Office, the U.S. Attorney's Office will provide it directly to the OCA for evaluation immediately.
    - If the filing is provided to the Classified Information Security Officer ("CISO") but not also provided to the U.S. Attorney's Office at the same time, the 21 days will begin when the CISO provides the filing to either the U.S. Attorney's Office or to the OCA, whichever comes first. In connection with the implementation of these proposed protocols, we will ask the CISO to provide such filings to this Office and/or the OCA as soon as possible.
    - To the extent a classification review is completed more quickly than 21 days, the Government will provide the results promptly upon completion.

- In light of the voluminous nature of many of the defendant's recent filings, it is possible that the classification review of unusually lengthy documents or multiple filings made within a short period of time will take longer than 21 days. If the OCA believes that it will take longer than 21 days to review a particular document, the Government will promptly inform the Court as to the reasons for the anticipated delay, along with a proposal for the adjusted timing of completion of the review.
- Once a classification review has been completed, the Government will provide the Court and the defendant with a redacted copy of the filing. The redactions will serve to identify the classified material therein.
- Filings that the Court authorizes to be made *ex parte*, *in camera*, and/or under seal pursuant to sections of the Classified Information Procedures Act ("CIPA") that authorize such procedures will be reviewed for overall classification status, but the specific classified information will not be separately marked or redacted for unclassified filing, consistent with the treatment of prior filings pursuant to CIPA in this case.
- Court Orders will be given priority for classification review, within the 21 days proposed above or on such other schedule as the Court may direct. The Government will mark the specific classified information in Court Orders pursuant to CIPA so that they may be publicly filed.
- With respect to retrospective classification reviews, once the parties have determined the volume of material to be reviewed following the process set forth by the Court (*see* D.E. 561 at 2), the Government will propose a timeline for that review to be completed.

Several considerations underlie the Government's proposed procedures and timeline. As background, the classification of national security information is governed by the standards set forth in Executive Order 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009). A classification review typically requires input from the OCA's Office of General Counsel, classification experts, and subject-matter experts familiar with the particular classified information at issue. The ultimate classification determination must be approved by supervisors in each of those three components. In this case, there are certain individuals in each of those components familiar with the matter and who are able to conduct that review promptly upon request, but it is nevertheless a determination that requires deliberation, consensus, and supervisory approval within and among those components, which can be a time-consuming process. After consultation with those components, and based on the rate and length of the defendant's filings over the course of this case, the Government believes that a standing deadline of 21 days is a reasonable period for classification reviews. As proposed above, to the extent that certain filings present a larger volume or more complex issues that require longer review, the Government will promptly notify the Court and provide an estimate of when that particular review will be completed. And to the extent that the classification review for certain filings can be completed more quickly than 21 days, the Government will provide the results upon completion.

With respect to filings that the Court permits to be made pursuant to provisions of CIPA that allow for *ex parte*, *in camera*, and/or under seal proceedings, the Government submits that it is not necessary to identify the specific classified information within a particular filing, only whether or not the filing itself should be marked as classified. Various provisions of CIPA contemplate that the proceedings will not be conducted publicly. *See, e.g.*, 18 U.S.C. App. 3 § 4 (describing Government motion as made "in the form of a written statement to be inspected by

the court alone"); § 6(a) (requiring any hearing regarding the use, relevance, or admissibility of classified information to "be held *in camera* if the Attorney General certifies to the court . . . that a public proceeding may result in the disclosure of classified information"); *cf. United States v. Collins*, 720 F.2d 1195, 1199 (11th Cir. 1983) (holding that notice pursuant to CIPA § 5 "must be particularized, setting forth specifically the classified information which the defendant reasonably believes to be necessary to his defense"). The Security Procedures Established Pursuant to PL 96-456, 94 Stat. 2025, by the Chief Justice of the United States for the Protection of Classified Information ("CIPA Security Procedures") acknowledge this by delineating filings pursuant to Sections 2, 4, 5, 6, 7, and 8 of CIPA as materials to be handled pursuant to the specified security procedures. *See* CIPA Security Procedures § 7(a); *see also id.* § 9 ("Upon the request of the government, the court may direct that any document containing classified information shall thereafter be protected in accordance with § 7 of these procedures."). Accordingly, while the Government will portion-mark the sections of Government filings to indicate which sections contain classified information, and will also undertake a classification review to determine that any defense CIPA filings do in fact contain classified material—a virtual certainty given their subject—and at what level of classification (*i.e.*, Top Secret, Secret, or Confidential), the Government does not propose to undertake the additional step of identifying each individual item of classified information contained in filings that the Court permits the parties to make pursuant to provisions of CIPA providing for *ex parte*, *in camera*, and/or under seal proceedings.[1] The Government will continue to provide public notice of all classified submissions, including those made *ex parte*, through appropriate docket filings. The Government will also mark and redact the specific classified information in any Court Orders pursuant to CIPA so that they may be publicly filed.

To the extent that the defendant seeks not just to know whether particular information is classified or not, but instead demands to know the underlying basis for specific classification decisions, he is not entitled to that information. Why the disclosure of information could be expected to cause the level of damage to national security that corresponds to its level of classification, *see* E.O. 13,526 § 1.2, itself implicates sensitive national security concerns that the defendant is in no position to contest in these proceedings. (*See* D.E. 559 at 2 (arguing that defendant can "challenge when the government over-classifies materials or mishandles classified information by improperly classifying materials")).

CIPA itself defines classified information by reference to the Executive's prerogative to make classification determinations: "'Classified information', as used in this Act, means any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security." 18 U.S.C. App. 3 § 1. There is no authority

---

[1] To the extent that any CIPA filings by the parties contemplate or require public hearings, and as otherwise directed by the Court, the Government will also mark and redact those submissions for unclassified filing. *See, e.g.*, D.E. 260 at 2 (directing public filing regarding motion for witness protections pursuant to CIPA § 6 to "provide notice to the public to ensure an opportunity to challenge court closure from persons other than the litigants").

for the proposition that once members of the Executive Branch have determined that certain material is classified under the doctrine of national security, the Court can challenge that classification when presented with the material in a court of law. Indeed, to hold otherwise would open every case involving classified information under the Classified Information Procedures Act to numerous (and undoubtedly lengthy) min[i]-trials in which the Judiciary—not the Executive Branch—becomes the arbiter of this Country's national security. That clearly is not the Court's function in a CIPA case.

*United States v. Aref*, No. 04 Cr. 402, 2007 WL 603510, at *1 (N.D.N.Y. Feb. 22, 2007), *aff'd*, 533 F.3d 72 (2d Cir. 2008); *see also United States v. Moussaoui*, 65 F. App'x 881, 887 (4th Cir. 2003) ("Implicit in this assertion is a request for us to review, and perhaps reject, classification decisions made by the executive branch. This we decline to do"); *United States v. Smith*, 750 F.2d 1215, 1217 (4th Cir. 1984) ("It is apparent, therefore, that the government pursuant to the authority mentioned in section 1 may determine what information is classified. A defendant cannot challenge this classification. A court cannot question it."), *vacated on other grounds on reh'g en banc*, 780 F.2d 1102 (4th Cir. 1985); *United States v. Zazi*, No. 10 Cr 60, 2011 WL 2532903, at *2 (E.D.N.Y. June 24, 2011) ("[A]s Section 1 of CIPA recognizes, classification is an executive decision, one that courts are ill-suited to second-guess.").

The two provisions of CIPA that do contemplate the Court's consideration of whether disclosure of classified information would be harmful to national security, Sections 4 and 6, expressly permit the Government to submit that information to the Court *ex parte*. *See* 18 U.S.C. App. 3 § 4 (authorizing Government motion "in the form of a written statement to be inspected by the court alone"); § 6(c)(2) (requiring affidavit certifying that "disclosure of classified information would cause identifiable damage to the national security of the United States and explaining the basis for the classification of such information" be examined "in camera and ex parte" upon request of the Government); *cf.* Fed. R. Crim. P. 16(d) (authorizing party seeking to restrict discovery "to show good cause by a written statement that the court will inspect ex parte"). And even if the Court authorizes a defendant, pursuant to CIPA § 6, to use classified information in his defense, CIPA does not additionally empower the Court to alter what the OCA has determined to be its proper classification. *See* 18 U.S.C. App. 3 § 8(a) (providing that materials "containing classified information may be admitted into evidence without change in their classification status"). Rather, the declassification of information, or the assessment that classification was made incorrectly, is controlled by provisions of E.O. 13,526. *See, e.g.*, *id.* § 1.8 (addressing classification challenges); § 3 (addressing declassification); § 5.3 (establishing Interagency Security Classification Appeals Panel).

Through the proposed classification review procedures, the Government will identify for the defendant what information is classified by marking those specific portions of the non-CIPA documents that contain classified information and by providing the defendant with portion-marked copies of any Government CIPA filings other than those the Court authorizes to be made *ex parte*. The Government further notes that there is already extensive guidance as to what information is classified in the Court's previous classified rulings on various aspects of the CIPA § 6 motions in this case, including both written orders and at the extensive hearings conducted to address numerous specific exhibits. Should the defendant seek further advice on whether

particular information is classified, the Government will endeavor to provide proactive guidance upon request, subject to the caveat that a final determination necessarily entails a more complex assessment of the information in the context of the final document in which it appears. Because such conferrals would likely entail the discussion of classified information and cannot be addressed in an unclassified setting, if the defendant wishes to request such guidance, he should, through standby counsel, request to schedule a secure call from the courthouse SCIF with the Government.

    In sum, going forward, the OCA will complete classification reviews in the normal course within 21 days, and the Government will notify the Court if a particular review requires a longer period. With respect to CIPA filings that the Court permits to be made *ex parte, in camera*, and/or under seal, the Government will portion-mark the relevant sections of Government filings, and the OCA will determine the overall classification status of any defense filings. With respect to Court Orders and any other filings, the OCA will additionally mark and redact the specific classified information, if any, identified therein. The Government will also attempt to provide such guidance as it can to the defendant regarding any questions about whether certain information is in fact classified, but the Government cannot provide the defendant with any further explanation regarding the basis for any particular classification determination.

    Respectfully submitted,

    DAMIAN WILLIAMS
    United States Attorney

by: \_\_\_\_\_*/s/*_____
    David W. Denton, Jr. / Michael D. Lockard
    Assistant United States Attorneys
    (212) 637-2744 / -2193

cc: Standby counsel (by ECF)
    Joshua Adam Schulte (by hand via BOP Legal Department)