UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                    :

UNITED STATES OF AMERICA               :

                                   :

    - v. -                        :        S3 17 Cr. 548 (JMF)

                                   :

JOSHUA ADAM SCHULTE,         :

                                   :

            Defendant.        :

                                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


# GOVERNMENT'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANT'S *PRO SE* MOTION TO SUPPRESS EVIDENCE

                                             DAMIAN WILLIAMS
                                             United States Attorney
                                             Southern District of New York

David W. Denton, Jr.
Michael D. Lockard
Assistant United States Attorneys
  *- Of Counsel -*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................................................................2

BACKGROUND .............................................................................................................................. 3

DISCUSSION.................................................................................................................................. 3

    I.   Applicable Law............................................................................................................. 3

        A.  The Fourth Amendment................................................................................. 3

        B.  Good Faith ..................................................................................................... 5

    II.  The Motion to Suppress Should Be Denied.................................................................. 6

        A.  *Smith* Does Not Require Suppression ............................................................ 7

        B.  The Cellphone Has Independent Evidentiary Value....................................... 10

        C.  Law Enforcement's Good-Faith Reliance on the Facially
            Valid Second Warrant Was Objectively Reasonable...................................... 12

CONCLUSION............................................................................................................................. 14

# TABLE OF AUTHORITIES

Page

## Cases

*Davis v. United States*, 564 U.S. 229 (2011) ............................................................. 5

*Illinois v. McArthur*, 531 U.S. 326 (1983) ..............................................................6

*In re: Application for Search Warrant*, 527 F.3d 179 (D. Conn. 2020) ...................................... 8, 9

*Malapanis v. Regan*, 335 F. Supp. 2d 285 (D. Conn. 2004) ........................................... 3

*Segura v. United States*, 468 U.S. 796 (1984) ................................................................. 2

*United States v. Burgard*, 675 F.3d 1029 (7th Cir. 2012) .................................................7

*United States v. Corbett,* 2021 WL 4480626 (E.D.N.Y. 2021) ................................................ 4, 11

*United States v. Delva*, 858 F.3d 135 (2d Cir. 2017) ...................................................... 9

*United States v. Dzionara-Norsen,* 2020 WL 1897179 (W.D.N.Y. 2020) ................................... 3

*United States v. Ganias*, 824 F.3d 199 (2d Cir. 2016) ......................................................... 5, 7, 12

*United States v. Green,* 2021 WL 1877236 (W.D.N.Y. 2021) .......................................... 4, 8, 11

*United States v. Hightower*, 950 F.3d 33 (2d Cir. 2020) ................................................. 4

*United States v. Howe*, 545 F. App'x 64 (2d Cir. 2013) ................................................. 3

*United States v. Leon*, 468 U.S. 897 (1984) ................................................................. 5

*United States v. Martin*, 157 F.3d 46 (2d Cir. 1998) ................................................. 2, 3

*United States v. Okparaeka,* 2018 WL 3323822 (S.D.N.Y. 2018) ............................................... 3

*United States v. Place*, 462 U.S. 696 (1983) ..................................................................2

*United States v. Smith*, 967 F.3d 198 (2d Cir. 2020) .............................. 2, 3, 4, 6, 7, 8, 9, 10, 12

*United States v. Sparks*, 806 F.3d 1323 (11th Cir. 2015) ......................................................... 6-7

*United States v. Thomas*, 757 F.2d 1359 (2d Cir. 1985) ......................................................... 12

## Rules

Federal Rule of Criminal Procedure 41 ......................................................................... 8

**PRELIMINARY STATEMENT**

The Government respectfully submits this supplemental memorandum to address the

Court's order to show cause why evidence obtained pursuant to a warrant from a cellphone (the

"Cellphone") seized from the defendant, Joshua Adam Schulte ("Schulte" or "defendant"),

should not be suppressed. (Nov. 8, 2021 Tr. at 49-50). At the November 8, 2021 pretrial

conference, the Court denied the defendant's *pro se* motion to suppress evidence from the

Cellphone (D.E. 497) (the "Motion"), rejecting the defendant's argument "that the cellphone was

unlawfully seized in the first instance pursuant to the forthwith subpoena and that the search

must be suppressed as a fruit of that unlawful procedure" (Nov. 8, 2021 Tr. at 46), and finding

that "the agents' initial seizure was justified by exigent circumstances, and within hours the

agents obtained a warrant from Magistrate Judge Moses both ratifying the seizure and

authorizing the search" (*id.* at 48). However, the Court ordered the Government to show cause

why "the delay that followed the Magistrate Judge Moses warrant, namely, the fact that the

government held the phone in its possession for close to two years before it ultimately conducted

the search" should not result in the suppression of the results of the later warrant based on the

Second Circuit's holding in *United States v. Smith*, 967 F.3d 198, 206 (2d Cir. 2020). (Nov. 8,

2021 Tr. at 49).

The results of the search of the Cellphone should not be suppressed. First, the search here

does not implicate the Second Circuit's decision in *Smith*, which considered the delay between a

law enforcement officer's probable cause-based seizure of an electronic device and obtaining a

search warrant for that device. Here, the Court already has found that the initial March 16, 2017

warrant authorizing the seizure and search of the Cellphone (the "First Warrant") was obtained

promptly following the probable cause-based seizure of the Cellphone, in compliance with

*Smith*. The Government's continued custody of the Cellphone *after* obtaining the First Warrant

2

was reasonable and lawful based on the authority of the warrant, the independent evidentiary value of the phone itself, and law enforcement's ongoing efforts to identify the defendant's passwords that would permit the unlocking and full search of the phone.

Second, even if the Court were to find that the Government's continued custody of the Cellphone was unreasonable notwithstanding the First Warrant, law enforcement relied in good faith on the facially valid warrant to search the phone issued on September 9, 2019 (the "Second Warrant"), based on an application that disclosed the relevant facts to the magistrate judge.

## BACKGROUND

The relevant background is set forth in the Government's memorandum in opposition to the Motion (D.E. 525) ("Opp. Br."), which is incorporated by reference. To the extent that additional background facts are relevant to this supplemental memorandum, they are set forth below.

## DISCUSSION

I.      **Applicable Law**

A.      **The Fourth Amendment**

"Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Supreme Court has interpreted the Fourth Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." *United States v. Martin*, 157 F.3d 46, 53 (2d Cir. 1998) (alterations omitted) (quoting *United States v. Place*, 462 U.S. 696, 701 (1983)).

As the Supreme Court has explained:

> Different interests are implicated by a seizure than by a search. A
> seizure affects only the person's possessory interests; a search
> affects a person's privacy interests. Recognizing the generally less
> intrusive nature of a seizure, the Court has frequently approved
> warrantless seizures of property, on the basis of probable cause, for
> the time necessary to secure a warrant, where a warrantless search
> was either held to be or likely would have been held
> impermissible.

*Segura v. United States*, 468 U.S. 796, 806 (1984) (citations omitted). Courts have approved, for

example, the warrantless seizures, pending obtaining a warrant, of an apartment, *id.* at 810-14;

mail packages, *Martin*, 157 F.3d at 54, *see also United States v. Okparaeka*, 17 Cr. 225 (NSR),

2018 WL 3323822, at *6-7 (S.D.N.Y. July 5, 2018); locked safes, *Malapanis v. Regan*, 335 F.

Supp. 2d 285, 289-91 (D. Conn. 2004); and laptop computers, *United States v. Howe*, 545 F.

App'x 64 (2d Cir. 2013) (summary order) and *United States v. Dzionara-Norsen*, 19 Cr. 6131

(FPG) (MWP), 2020 WL 1897179, at *8-10 (W.D.N.Y. Apr. 17, 2020) (magistrate report and

recommendation), *adopted by* Decision and Order, 19 Cr. 6131 (FPG) (MWP), Dkt. No. 76

(W.D.N.Y. June 18, 2020).

In *Smith*, the Court of Appeals observed that "[p]olice investigations commonly involve

an initial seizure of a person's property for purposes of conducting a search of the contents

within it. If the police have probable cause to believe that the property contains contraband or

evidence of a crime and if it is necessary to seize or secure the property immediately to prevent

its destruction or disappearance, the Fourth Amendment allows the police to seize or secure the

property without a warrant provided that they follow up by applying to a judge for a warrant to

search the property's contents." 967 F.3d at 205. The *Smith* court outlined "four factors [that] are

generally relevant to whether the police have waited an unreasonable amount of time before

seeking a warrant." *Id.* at 206. Those factors are: "[1] the length of the delay, [2] the importance

of the seized property to the defendant, [3] whether the defendant had a reduced property interest

4

in the seized item, and [4] the strength of the state's justification for the delay." *Id*. (brackets in original). *Smith* held that "the length of delay" has "independent weight" separate from the reason for the delay, and that "a delay of one month or more is ordinarily too long for an officer to apply for a warrant." *Id*. at 207, 213. The court also noted that "the existence of probable cause had bearing on [the defendant's] possessory interest" in the seized property, but that "the police's interest was delimited by the obligation to seek a search warrant without unreasonable delay." *Id*. at 208-09.

In *Smith*, the evidentiary value of the tablet computer that was the subject of the warrantless seizure "turned solely on what the police might find from a search of its contents," and the court noted that there was no evidence that it "had independent evidentiary value that would have justified the police's retention." *Id.* By contrast, where an item *does* have independent evidentiary value, the possessory interest in the return of the item is substantially diminished. *See, e.g., United States v. Corbett,* No. 20-CR-213 (KAM), 2021 WL 4480626, at *6 (E.D.N.Y. Sept. 30, 2021) (noting that the fact that "the phones have an International Mobile Equipment Identity number that can be used to tie the Devices to phone records or online accounts, and the owners' possession of the Devices may therefore be physical evidence linking them to those records or accounts" reflects "independent investigatory value"); *United States v. Green*, No. 1:18-CR-121 RJA (MJR), 2021 WL 1877236, at *7 (W.D.N.Y. Feb. 3, 2021) (noting that "[the defendant's] possession of multiple cell phones at one time and six different cell phones over the course of five days is, in and of itself, probative of his involvement in drug trafficking or other illegal activities").

### B.      Good Faith

"[T]he exclusionary rule is a judicially-created mechanism of safeguarding against unreasonable searches and seizures—violations of the Fourth Amendment—primarily through its

deterrent effect." *United States v. Hightower*, 950 F.3d 33, 36 (2d Cir. 2020) (per curiam). "For this reason, the exclusionary rule applies only if the police have violated the Constitution deliberately, recklessly, or with gross negligence, or if a constitutional violation is the product of recurring or systemic negligence." *Smith*, 967 F.3d at 211.

Suppression is not warranted "when the police act with an objectively reasonable good-faith belief that their conduct is lawful." *Davis v. United States*, 564 U.S. 229, 238 (2011). "[S]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness." *United States v. Leon*, 468 U.S. 897, 922 (1984). The Court of Appeals has explained that, even where a warrant is obtained based on an unconstitutional prior action, if the agents "had no significant reason to believe that their predicate act was indeed unconstitutional, and the issuing magistrate was apprised of the relevant conduct, so that the magistrate was able to determine whether any predicate illegality precluded issuance of the warrant," the agents' reliance on the resulting warrant is "objectively reasonable." *United States v. Ganias*, 824 F.3d 199, 223 (2d Cir. 2016) (en banc).

## II.     The Motion to Suppress Should Be Denied

There is no basis to suppress the fruits of the Second Warrant based on the delay between the First Warrant and the Second Warrant. First, for the reasons explained below, the fact that law enforcement promptly obtained the First Warrant takes this case out of the ambit of the *Smith* decision, which was predicated on law enforcement's failure to seek a warrant reasonably promptly after the warrantless seizure of an electronic device. Here, the First Warrant authorized the continued seizure of the Cellphone and the Government's continued custody of it was not warrantless. Second, even though law enforcement was not able to execute the *search* authorized by the First Warrant, the Cellphone nonetheless retained independent evidentiary value aside from its contents based on its device identifiers, which connected the physical Cellphone to

6

electronic communications and online activities by the defendant and tended to prove that the

defendant was the individual who caused those communications and activities. Third, law

enforcement's good-faith reliance on the Second Warrant, which was issued by a magistrate

judge who was apprised of the relevant history, was objectively reasonable.

>       A.       *Smith* Does Not Require Suppression

In *Smith*, while executing an arrest for driving while intoxicated, a New York State

Trooper found an electronic tablet device with a photograph on the screen indicative of possible

sex crimes in the defendant's car, and also learned the defendant was a registered sex offender.

The Trooper notified a State police officer and secured the device. *Smith*, 967 F.3d at 202-03.

Approximately 31 days later, the State police officer obtained a warrant to search the device,

where he found videos and images of child pornography. *Id*. at 203. The district court denied a

motion to suppress, finding that the seizure was reasonable, and the Court of Appeals affirmed

on a different basis, holding that the delay between the seizure and obtaining the search warrant

was unreasonable but that the search was conducted in objectively reasonable, good-faith

reliance on a facially valid warrant. *Id*. at 205-13.

In reviewing the application of the Fourth Amendment to a warrantless seizure of

evidence for the purpose of obtaining a search warrant, the Court of Appeals noted that "[t]he

Supreme Court has upheld temporary restraints where needed to preserve evidence until police

could obtain a warrant, and has never held unlawful a temporary seizure that was supported by

probable cause and was designed to prevent the loss of evidence while the police diligently

obtained a warrant in a reasonable period of time." 967 F.3d at 205 (cleaned up, quoting *Illinois*

*v. McArthur*, 531 U.S. 326, 334 (1983)). Looking to other Circuits, the Court of Appeals

described the rationale for the reasonable diligence requirement as "avoid[ing] interfering with a

continuing possessory interest for longer than reasonably necessary, in case the search reveals no

evidence (or permissibly segregable evidence) of a crime and the item has no independent evidentiary value and is not otherwise forfeitable," and avoiding "prevent[ing] the judiciary from promptly evaluating and correcting improper seizures." *Id*. at 205 (citing *United States v. Sparks*, 806 F.3d 1323, 1340 (11th Cir. 2015), and *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012)).

The analysis in *Smith* was thus expressly focused on the reasonableness of the period of delay between a warrantless seizure of a device and obtaining a warrant to search the device. It does not consider or address the reasonableness of maintaining custody of property where, as in this case, a neutral magistrate already had issued a warrant authorizing its seizure and search. This distinction is illuminated by the *Smith* court's discussion of the four factors bearing on the reasonableness of delay in obtaining a warrant. For example, with respect to the length of the delay, the court reasoned that "[i]f police have seized a person's property for the purpose of applying for a warrant to search its contents, it is reasonable to expect that they will not ordinarily delay a month or more before seeking a search warrant." *Id*. at 206-07. In this case, after seizing the Cellphone, law enforcement obtained a warrant authorizing its seizure and search within hours, a plainly reasonable period of time. With respect to the third factor— whether the defendant had a reduced property interest in the seized item—the court noted that a person's possessory interests in a device are somewhat lessened by reasonable suspicion to believe it holds evidence of a crime, and more so by probable cause to believe it holds evidence of a crime. *Id*. at 209. But the "existence of probable cause diminished [the defendant's] interest in the tablet only so long as it was reasonable for the police to wait before obtaining a warrant to search its contents." *Id*. The issuance of a warrant further reduces the owner's possessory interest and authorizes law enforcement to lawfully seize the property, as the First Warrant did here. See

also *United States v. Ganias*, 824 F.3d 199, 210-21 (2d Cir. 2016) (suggesting, without deciding, that the Fourth Amendment does not require that law enforcement return or destroy remaining electronic data after electronic media has been reviewed for records within the scope of a search warrant).

Moreover, while *Smith* is inapposite because the continuing seizure at issue in this case was authorized by the First Warrant, even if the *Smith* analysis applied to the retention of the Cellphone between the time of the First Warrant and the Second Warrant, the *Smith* factors support the reasonableness of that retention. With respect to the length of the delay, the period of two and a half years is long, but that factor is outweighed by the other factors. First, the importance of the seized property to the defendant was, here, significantly reduced. The defendant had multiple other cellphones in addition to the Cellphone (Opp. Br. Ex. 7 ¶¶ 40-44), never requested the return of the Cellphone or moved for its return under Rule 41(g), and was detained beginning in December 2017 and, accordingly, could not lawfully possess the Cellphone after that time in any event. *See Smith*, 967 F.3d at 208 (the defendant's access to alternative electronic devices and failure to request the return of the seized device "adequately support the district court's conclusion that the second factor . . . weighs in the Government's favor"); *Green*, 2021 WL 1877236, at *6 ("[The defendant's] continued inability to possess or use the cell phones while incarcerated significantly diminishes the importance of their prompt return."); *In re: Application for Search Warrant*, 527 F. Supp. 3d 179, 185 (D. Conn. 2020) (importance of seized property to the owner diminished where "the target has been criminally charged and remains detained pending trial" and the target did not request return of the property). Second, the defendant here had a significantly reduced property interest in the Cellphone not only because probable cause existed that it held evidence of criminal offenses, but also by virtue

9

of the First Warrant, which authorized law enforcement to seize the Cellphone. Third, the delay

between the First Warrant and the Second Warrant is readily explained by the fact that the

Cellphone was locked and password protected, and the FBI was unable to conduct a complete

search of its contents as authorized by the First Warrant until continued investigation enabled the

FBI to deduce the password. (Opp. Br. Ex. 12 ¶ 13). It was entirely reasonable for the

Government to retain custody of an electronic device, the seizure and search of which had been

authorized by a warrant, while law enforcement continued to explore avenues of obtaining the

password information that would enable a complete search of the device as authorized by that

warrant. Promptly after discovering the correct password, and in an abundance of caution in light

of the passage of time following the First Warrant, the Second Warrant was sought and obtained.

(*Id*. ¶ 13(d), (e)). Accordingly, *Smith* does not control here because the continuing seizure of the

Cellphone was not warrantless, but even if *Smith* applied, its analysis weighs in favor of the

reasonableness of the Government's retention of the Cellphone for the period of time between

the First and Second Warrants.

      **B.**     **The Cellphone Has Independent Evidentiary Value**

      Another factor not present in *Smith* that justified the Government's retention of the

Cellphone is that it has independent evidentiary value. Property that has been lawfully seized,

with or without a warrant, may be retained when it has evidentiary value independent of

evidence that may be discovered from a further search. *See, e.g.,* U*nited States v. Delva,* 858

F.3d 135, 149 (2d Cir. 2017) (objects in plain view whose incriminating character is apparent

may be seized without a warrant); *Smith*, 967 F.3d at 208-09 (noting that there was no evidence

that the seized tablet "had independent evidentiary value that would have justified the police's

retention"). Here, the Cellphone had (and continues to have) independent evidentiary value

10

because the device identifier is probative of the defendant's use of accounts and participation in communications relevant to the charged offenses.

On March 13, 2017, the Honorable Barbara C. Moses, United States Magistrate Judge, issued warrants to search various electronic accounts subscribed to the defendant, including his Google accounts. (Ex. 1). As described in the affidavit submitted in support of those warrants, after the WikiLeakas leaks of classified materials began to be released on March 7, 2017, the defendant used communications applications on his Google account, including Google Voice, and the telephone number associated with the Google account to communicate with former colleagues at the CIA. (Ex. 1 ¶¶ 26-27). On March 7, 2017, the day of the first Leak, 149 text messages were sent to former CIA colleagues of the defendant using the Google Voice feature associated with the defendant's Google account. (*Id.* ¶ 27(a)). In his communications with former colleagues, the defendant, among other things, asked about the status of the investigation into the Leaks; solicited opinions about who the leaker was; and conveyed his false opinions about who the leaker was and what his or her motivation was. (*Id.* ¶ 26). The defendant falsely denied in these communications that he was involved but indicated he believed he was a suspect in the investigation. (*Id.*).

The Cellphone's device identifiers were listed among the identifying features of the telephone associated with the defendant's Google account. (Opp. Br. Ex. 6 ¶ 24). These identifiers include the device's unique IMEI number. (*Id.* ¶ 3). The IMEI number and its association with the defendant's Google account is evidence that the defendant was, in fact, the person who made the relevant communications using Google Voice. Those communications are probative of the defendant's guilt. Among other things, these communications are evidence of the defendant's high level of interest in the Leaks and the resulting investigation, indicating his

concern that his culpability for the conduct would be discovered; and evidence of the defendant's

attempts to deflect interest from himself to another theory of who committed the theft of the

classified information and their motivation for doing so. The IMEI number and its association

with the defendant's Google account is similarly evidence that the defendant's other online

activities relevant to the charged offenses—including internet searches relating to detection of

USB device insertion, large data copying tools, data wiping tools and techniques, WikiLeaks,

"moles," how to create temporary email accounts, and services for anonymous internet access

(Opp. Br. Ex. 7 ¶¶ 17, 19-20, 28, 33-35, 36(b))—was done by the defendant. *See Corbett*, 2021

WL 4480626, at *6 (noting investigative value of IMEI number tying a physical device to online

accounts); *Green*, 2021 WL 1877236, at *7 (noting probative value of defendant's possession of

multiple cell phones). Evidence of the defendant's Google activity is probative of his guilt, and

evidence of that activity was introduced at the prior trial. (GX3002 (stipulation concerning

admissibility of, among other things, records from the defendant's Google account)).

Accordingly, FBI's continued retention of the Cellphone was reasonable on the separate basis of

the Cellphone's independent evidentiary value.

      **C.**    **Law Enforcement's Good-Faith Reliance on the Facially Valid Second Warrant Was Objectively Reasonable**

Even if the Court were to conclude, arguendo, that FBI's continued retention of the

Cellphone based on the First Warrant until the time of the Second Warrant was unreasonable

under the Fourth Amendment, the record is clear that law enforcement relied in good faith on the

Second Warrant and that reliance was objectively reasonable. The facts relevant to the initial

seizure and retention of the Cellphone were disclosed in the affidavit submitted in support of the

Second Warrant: that the Cellphone was seized on March 15, 2017, and "has been in the FBI's

control since that day;" that a warrant to search the Cellphone issued on March 16, 2017; that the

12

prior effort to search the Cellphone resulted in only a partial and incomplete search because of its password protection; and that the FBI had, after continued investigation, been able to determine the password. (Opp. Br. Ex. 12 ¶ 13(a)-(e) & n.4). Magistrate Judge Pitman was thus aware of those facts when evaluating the request for the warrant. *See Ganias*, 824 F.3d at 223 ("the issuing magistrate was apprised of the relevant conduct, so that the magistrate was able to determine whether any predicate illegality precluded issuance of the warrant"); *see also United States v. Thomas*, 757 F.2d 1359, 1368 (2d Cir. 1985) (finding good-faith reliance on a warrant where officers did not reasonably know an investigative step was unconstitutional and revealed that investigative step to the magistrate judge).

While the *Smith* court found that the search at issue was unreasonable because of the police's delay in obtaining a warrant after the seizure of the defendant's device, the court nonetheless found that the police relied in good faith on the warrant and that such reliance was objectively reasonable in light of the absence of clear law indicating that the 31-day delay was unreasonable. *Smith*, 967 F.3d at 212. As the court observed, "this is not an area of Fourth Amendment law that has reduced itself to bright-line rules" and "precedent ran both ways" at the time of the relevant search. *Id*. The Second Circuit's decision in *Smith* had no effect on the reasonableness of the FBI's reliance on the Second Warrant because that warrant issued in September 2019, ten months before the *Smith* decision issued. The Government is aware of no decision predating the Second Warrant that would make reliance on the Second Warrant objectively unreasonable. To the contrary, the case law discussed above, including the Second Circuit's decision in *Ganias*, issued in 2016, would have supported the FBI's conclusion that the Cellphone could lawfully be retained in reliance on the First Warrant.

13

Accordingly, even if the Court were to find the Second Warrant constitutionally infirm based on retaining the Cellphone between the First Warrant and the Second Warrant, the results of the search should not be suppressed because law enforcement relied in good faith on the Second Warrant.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny the Motion to Suppress.

Dated:  November 22, 2021
        New York, New York

DAMIAN WILLIAMS
United States Attorney

By: _____/s/_____
    David W. Denton, Jr. / Michael D. Lockard
    Assistant United States Attorneys
    (212) 637-2744 / -2193

To:  Joshua Adam Schulte (by mail)
     Standby Counsel of Record (by ECF)