



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 1, 2021

**VIA ECF**

Honorable Jesse M. Furman
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

     Re:    *United States v. Joshua Adam Schulte,*
             **S3 17 Cr. 548 (JMF)**

Dear Judge Furman:

     The Government respectfully submits this letter pursuant to the Court's Order, dated November 22, 2021 (D.E. 613), directing the Government to respond to the defendant's classified letter (notice filed at D.E. 612) seeking to "challenge the CIA's classification" of an earlier letter. As the Government has previously noted (*see* D.E. 573), the Classified Information Procedures Act ("CIPA") expressly commits the determination of what information is classified to the appropriate Executive Branch agencies, and provides no mechanism for the defendant to contest those decisions. This criminal prosecution is not a venue for the defendant's challenges to classification determinations committed to the Executive Branch. The defendant's motion should be denied.[1]

     CIPA itself defines classified information by reference to the Executive's prerogative to make classification determinations: "'Classified information', as used in this Act, means any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security." 18 U.S.C. App. 3 § 1. Those classification determinations are made "by the United States Government" pursuant to the standards set forth in Executive Order 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009). There is no authority

     for the proposition that once members of the Executive Branch have determined that certain material is classified under the doctrine of national security, the Court

---

[1] On November 29, 2021, the Government received a copy of a second classified letter motion by the defendant seeking to challenge the classification review of a different filing by the defendant (for which no notice yet appears on the public docket). For the same reasons set forth in this letter, this motion should be denied as well.

can challenge that classification when presented with the material in a court of law. Indeed, to hold otherwise would open every case involving classified information under the Classified Information Procedures Act to numerous (and undoubtedly lengthy) min[i]-trials in which the Judiciary—not the Executive Branch—becomes the arbiter of this Country's national security. That clearly is not the Court's function in a CIPA case.

*United States v. Aref*, No. 04 Cr. 402, 2007 WL 603510, at *1 (N.D.N.Y. Feb. 22, 2007), *aff'd*, 533 F.3d 72 (2d Cir. 2008); *see also United States v. Moussaoui*, 65 F. App'x 881, 887 (4th Cir. 2003) ("Implicit in this assertion is a request for us to review, and perhaps reject, classification decisions made by the executive branch.  This we decline to do"); *United States v. Smith*, 750 F.2d 1215, 1217 (4th Cir. 1984) ("It is apparent, therefore, that the government pursuant to the authority mentioned in section 1 may determine what information is classified.  A defendant cannot challenge this classification.  A court cannot question it."), *vacated on other grounds on reh'g en banc*, 780 F.2d 1102 (4th Cir. 1985); *United States v. Collins*, 720 F.2d 1195, 1198 n.2 (11th Cir. 1983) ("It is an Executive function to classify information, not a judicial one."); *United States v. Zazi*, No. 10 Cr 60, 2011 WL 2532903, at *2 (E.D.N.Y. June 24, 2011) ("[A]s Section 1 of CIPA recognizes, classification is an executive decision, one that courts are ill-suited to second-guess."); *United States v. Musa*, 833 F. Supp. 752, 755 (E.D. Mo. 1993) ("The determination whether to designate information as classified is a matter committed to the executive branch.  This Court will not consider whether the government may have unnecessarily designated matters as classified which, in reality, do not affect the national security." (internal citations omitted)).[2]

The Security Procedures Established Pursuant to PL 96-456, 94 Stat. 2025, by the Chief Justice of the United States for the Protection of Classified Information ("CIPA Security Procedures") make clear that the Executive's exclusive power to make classification determinations applies equally to letters, motions, and other filings, specifically incorporating the definition of classified information from CIPA § 1.  *See* CIPA Security Procedures § 7(a) ("These security procedures apply to any classified information, as the term is defined in Section 1(a) of the Act, that is in the custody of the court. This includes, but is not limited to, any pleadings or other filings created in connection with the proceedings.").  Neither CIPA itself, nor the CIPA Security Procedures, allows the defendant to contest the Executive's classification decisions.  Indeed, even if the Court authorizes a defendant, pursuant to CIPA § 6, to use classified information in his defense, CIPA does not additionally empower the Court to alter what the classifying authority has determined to be its proper classification.  *See* 18 U.S.C. App. 3 § 8(a) (providing that materials "containing classified information may be admitted into evidence without change in their classification status"); *see also* S. Rep. No. 823, 96th Cong., 2d

---

[2] The defendant's citation to circumstances outside of criminal cases governed by the CIPA process are inapposite.  (*See* D.E. 604 at 2-3).  "The procedures of CIPA contrast sharply with those of [the Freedom of Information Act]," *Am. C.L. Union v. Dep't of Just.*, 681 F.3d 61, 72 n.9 (2d Cir. 2012), and the handling and treatment of classified information in criminal cases is governed by the actual rules set forth in CIPA and the CIPA Security Procedures, not by analogy to civil process.

Sess. 4, at 10 (1980), reprinted in 1980 U.S.C.C.A.N. 4294, 4304 (noting that CIPA § 8 "recognizes that classification is an executive, not a judicial function").

Rather, procedures for reviewing classification determinations and for the declassification of information are set forth in Executive Order 13,526. *See, e.g., id.* § 1.8 (addressing classification challenges); § 3 (addressing declassification procedures generally); § 3.5 (addressing review of requests for declassification); § 5.3 (establishing Interagency Security Classification Appeals Panel). The Order expressly provides that "[i]t is presumed that information that continues to meet the classification requirements under this order requires continued protection," and, while authorized officials may determine that the public interest in the disclosure of information may outweigh the need for its protection, these provisions create no "substantive or procedural rights subject to judicial review." *Id.* § 3.1(d).

There are sound reasons why these authorities commit classification determinations to the Executive Branch. The Supreme Court has recognized that "what may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context," because "bits and pieces of data may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself." *C.I.A. v. Sims*, 471 U.S. 159, 178 (1985) (cleaned up); *see also United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989) ("Things that did not make sense to the District Judge would make all too much sense to a foreign counter-intelligence specialist who could learn much about this nation's intelligence-gathering capabilities from what these documents revealed about sources and methods.").

In addition, the defendant is not entitled to disclosure of the reasons underlying the classifying authority's determination that unauthorized disclosure of particular information would cause damage to the national security of the United States, because those reasons themselves implicate national security concerns. *See Sims*, 471 U.S. at 179 ("It is conceivable that the mere explanation of why information must be withheld can convey valuable information to a foreign intelligence agency.").

Accordingly, because CIPA commits to the Executive Branch the determination of what information in a criminal case is classified, and the CIPA Security Procedures prescribe the handling of court filings by reference to that determination, the defendant's motions to dispute those classification determinations should be denied. To the extent that the defendant's letter refers to additional classified information that he intends to disclose in his defense at trial, the Government will address the relevance and admissibility of information for which the defendant gives proper notice pursuant to CIPA § 5 in its response pursuant to CIPA § 6. Further, to the extent the defendant claims that classification determinations were made for improper purposes, there is no evidence to support that unfounded assertion. The Honorable Paul A. Crotty previously addressed this issue, precluding "testimony concerning [the defendant's allegations of] deliberate misclassification of documents to hinder Schulte's ability to defend himself," while allowing general testimony regarding whether "documents and information are pervasively overclassified." (D.E. 256 at 6). The Government bears the burden of proving the defendant's

guilt of all elements of the charged offenses, including relevant state of mind, and expects to do so through competent evidence.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____/s/_____
David W. Denton, Jr. / Michael D. Lockard
Assistant United States Attorneys
(212) 637-2744 / -2193

cc: Standby counsel (by ECF)
    Joshua Adam Schulte (by mail)