UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                                          :
UNITED STATES OF AMERICA,                                 :
                                                          :
            -v-                                           :        17-CR-548 (JMF)
                                                          :
JOSHUA ADAM SCHULTE,                                      :        ORDER
                                                          :
                        Defendant.                        :
                                                          :
-------------------------------------------------------------------X

JESSE M. FURMAN, District Judge:

        The Court has received four letters from Defendant, dated October 27-29, 2021,

respectively.  *See* Attachment A.  These letters request various relief and were sent prior to

the last pretrial conference on November 8, 2021.  Given subsequent developments in this

case, the Court has determined that these letters are now moot.

        SO ORDERED.

Dated: December 3, 2021
       New York, New York                    _____
                                                      JESSE M. FURMAN
                                                   United States District Judge

# Attachment A

BY HAND

October 27, 2021

District Judge Jesse M. Furman
SDNY
500 Pearl Street
NY, NY 10007

RE: United States v. Joshua Adam Schulte, S3 17. Cr. 548 (JMF)

Dear Judge Furman:

I write to request permission for leave to file a successive Fed. R. Crim. P. 29 Motion for Judgment of Acquittal. My assigned attorneys originally filed a motion for judgment of acquittal on May 15, 2020, Dkt 347, the government filed its opposition on June 19, 2020, Dkt. 410, and no reply was issued. Judge Crotty never ruled on the motion, and now the case is reassigned.

I move for leave to file a successive Rule 29 Motion due to ineffective assistance of counsel and the fact that Judge Crotty never ruled on the original. Thus, since the Court is now reassigned and must read the transcripts and motions anyway, there is literally no harm in filing a successive motion to replace the original.

My assigned attorneys were ineffective—they filed a simple boilerplate generic Rule 29 Motion despite my repeated requests for an extensive motion based on the trial evidence and forensic analysis. I even wrote my own motion during trial to be filed as the Rule 29 motion. My attorneys were unimpressed with my motion, and instead, filed their 5-minute generic motion instead. They didn't even bother to file a reply motion to the government's opposition. Due to my assigned attorney's poor performance and actual conflict-of-interest, I am now pro se. Accordingly, I ask the Court's permission to file my Rule 29 motion to replace the original that was written by my ineffective counsel. The motion is already completed, but may require a few weeks of touchup—depending on when MDC feels like giving me access to a law library.

10/27/21

Respectfully submitted,

Joshua Adam Schulte

Josh Schulte #74471054
MDC
P.O. Box 329002
Brooklyn, NY 11232

NEW YORK NY 100
4 NOV 2021 PM 6 L

FOREVER / USA

Attn: Judge Furman, Case 17 cr 548 (SWF)
Pro Se Intake Office
United States District Court
500 Pearl Street
NY, NY 10007

USMP3
SDNY

10007-133608

October 28, 2021

BY HAND
District Judge Jesse M. Furman
500 Pearl St.
NY, NY 10007

RE: United States of America v. Joshua Adam Schulte 17-cr-548

Dear Judge Furman:

I write in reply to the government's bewildering October 26, 2021 letter, Dkt 567, in response to my September 10, 2021 CIPA 5 motion.

<u>The government's Illegal Attempts to Retend Unclassified Submissions Are Classified</u>

The government's request that the Court "admonish" me for disclosing classified information, Id. at 4, is perplexing considering the government's own admission that the allegedly classified motion is "currently undergoing classification review" Id at 1 n.1. But I'm glad the government brought this up, and the Court should not let it go. The one-and-a-half page, 430-word motion is as far from classified as you can possibly get. <u>I URGE THIS COURT TO READ THE MOTION AND ADMONISH THE GOVERNMENT FOR PRETENDING IT IS SOMEHOW CLASSIFIED.</u> In no alternate universe is the motion even remotely classified — and the fact that the government is "still reviewing" the one-and-a-half page, 430-word document after <u>48 DAYS</u> clearly indicates that something is very wrong here. Additionally, the government does not even mention the one-page letter I wrote asking why the government illegally mishandled classified information by claiming the motion was classified which the government also illegally "classified" although it also is "pending classification review." Judge Crotty previously ruled that the government has only 14 days to conduct a classification review, and I ask this court to adopt and reinforce this same process. <u>This Court should compel the government to complete its classification review and release its findings forthwith</u>

10/28/21 Letter
P.2

## CIPA 5 Notice for Declassification of Specific Public Content

Onto the substance, the government incorrectly claims that I argued the content of the underlying MCC counts were unclassified because the material was already on the internet; to the contrary, my CIPA 5 motion very clearly requested declassification of this material. The government states this precisely in its next sentence: the purpose of my CIPA 5 motion is "for the 'declassification' of certain public Wikileaks Vault 7 documents intended for use as exhibits in my upcoming motion to dismiss the MCC counts of the third superseding indictment for violation of the First Amendment and for use at trial provided the Court denies that motion."

The government's argument then quickly descends into utter nonsense, claiming there were "classified exhibits" at my trial; THERE WERE NO "CLASSIFIED EXHIBITS" AT MY TRIAL. This would violate my right to a public trial and would be extremely prejudicial. At no point, EVER, did the government introduce "classified exhibits." There is no Order, either classified or unclassified, that authorizes any classified exhibits — nor does the government even pretend to reference any such Order. The government's mention of GX1 makes no sense either — GX1 was the laptop the FBI used to download the Vault 7/8 data from the internet. Tr. 144. Furthermore, Wikileaks GX 2-16 are all public. The government released those exhibits to the public, and even sent me a copy at my cage in MCC. These exhibits were all declassified by the government and are now unclassified. What is the government talking about???

## THE COURT SHOULD GRANT MY CIPA 5 MOTION

At my first trial the government declassified portions of the Wikileaks Vault 7/8 release that it intended to introduce at trial. I merely ask the Court for the same opportunity. At trial, I intend to prove conclusively that the

information the government claims to be NDI is unclassified, and that, in any case, I never transmitted or attempted to transmit it.

Additionally, as I outlined in my Motion to Dismiss the MCC Counts for Violation of the First Amendment and Attorney-Client Privilege, even if everything the government alleges were true, a jury, and this Court, would have no choice but to acquit me. And the reason for that is simple: The government charges me with transmission and attempted transmission of NDI. "Rather than limiting the subject matter scope of the phrase 'information relating to the national defense,' or restricting it to tangible material, courts have carefully cabined the phrase's scope in two ways. First, courts have limited the term by requiring that the information be <u>closely held by the government</u>. This requirement was recognized by the Supreme Court in <u>Gorin v. United States</u>, 312 U.S. 19, 28 (1941), and served as the basis for Judge Hand's decision in <u>United States v. Heine</u>, 151 F.2d 813 (2d Cir. 1945), in which he reversed Heine's conviction under the predecessor to § 794 because the information about airplane production Heine delivered to the Germans was <u>publicly available</u>." <u>United States v. Rosen</u>, 445 F. Supp. 2d 602, 620 (E.D. Va 2006), aff'd, 557 F.3d at 192 (4th Cir. 2009) (emphasis added). So, while the government can classify the entire internet if it so desires, a conviction for <u>NDI</u> requires the information to be "closely held." Since the material the government pretends I transmitted or attempted to transmit was public over a year before the alleged "crime," the material is <u>NOT</u> closely held by the government — it was literally on the internet; classification status is ~~completely~~ completely irrelevant. Accordingly, this Court must acquit me. Otherwise, the First Amendment would cease to exist — the government could arrest literally every reporter, journalist, blogger, or Joe Shmoe for simply discussing classified information released on the internet. Thus, the government's entire MCC case violates the First Amendment and is an incredible case of First suppression in that the government has never before indicted someone for

discussing public news. Finally, the Supreme Court already confirmed that the media has the right to publish classified information it obtains, and by correlation, the American people have the right to read and discuss this material in the news. See the "Pentagon Papers Case", New York Times Co. v. United States, 403 U.S. 713 (1971).

Hence, it is paramount to my defense to show the jury that all the information the government claims I transmitted was already on the internet and not "closely held" by the government; hence, the material is NOT NDI by definition. My CIPA 5 motion should therefore be granted as declassification of this material is fundamental to my defense.

Respectfully submitted,

Joshua Adam Schulte

Josh Schulte #74471054
MDC
P.O. Box 32400Z
Brooklyn, NY 11232

JGMP3
SDNY

NEW YORK NY 100
4 NOV 2021 PM 10 L

ATTN: Judge Furman, Case 17-Cr-548 (JMF)
Pro Se Intake Office
United States District Court SDNY
500 Pearl Street
NY, NY 10007

10007-131608



BY HAND

Joshua Adam Schulte, pro se

October 29, 2021

Judge Jesse M. Furman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

RE: United States v. Joshua Adam Schulte, S3 17 Cr. 548 (JMF)

Dear Judge Furman:

I just wanted to update the Court that I still do not have access to the law library or my discovery. See letter dated October 22, 2021, Ex. A. At our last pretrial conference in September I warned Judge Crotty that it may take 2-4 weeks for me to receive my discovery if and when I was moved to the MDC. Judge Crotty agreed that this was a problem that needed a solution. The government lied to Judge Crotty and assured him that the MCC would not shut down and I would not move. Just as I anticipated, the BOP prepared a special concentration camp for SAMs inmates, but completely neglected building any law library or discovery review. The MDC executive staff literally asked why I needed such things. To this date, Friday, October 29, 2021, the MDC has refused to create a law library for me to review discovery and do legal research. Thus, I have been effectively unable to work on my case at all for the past 7½ weeks. I ask the Court to order the MDC to create a law library for me to do legal research and review discovery.

Some of these issues could be mitigated when the government finally provides me with an external USB CD/DVD drive and blank CDs so I can mail the Court typed letters and motions from my laptop. Judge Crotty previously consented and allowed this since I do not have access to a printer

(and I hope this Court also allows this). However, I have been waiting since at least August for the government to provide me the external CD/DVD drive and blank CDs. I ask the Court to compel the government to quickly provide these resources that I may restart my work.

Respectfully submitted,

10/29/21

Joshua Adam Schulte

*[signature]*

P.S.  I was also unable to review any classified discovery the entire week due to SCIF cancellations.

EXHIBIT A

Joshua Adam Schulte, *pro se*

October 22, 2021

**BY HAND**

Judge Jesse M. Furman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

RE: ***United States v. Joshua Adam Schulte***, S3 17 Cr. 548 (JMF)

Dear Judge Furman:

I write to update the Court regarding ongoing issues and outstanding requests/motions.

Most importantly, since my move from the MCC to MDC on Sunday-Monday 17-18, I have been unable to review my discovery or access the law library. The MDC currently does not provide me any access to my discovery hard drive that requires external power nor does it provide me any access to the law library to review case law to file motions/replies/etc. I called the government (along with standby counsel) and left a voicemail regarding this issue. To prevent additional unnecessary delays, I ask the Court to order the MDC to provide me with at least 4 hours per day for discovery review and law library access.

Next, due to this delay, I am unable to write and file a reply brief to the government's October 21, 2021 opposition brief. I ask the Court to grant me an open extension to file this reply brief pending resolution of the first issue.

A.      Pending classification review

I note for the Court that three motions and one letter are still pending classification review. My Petition for Writ of Habeas corpus and Motion for Bail (Dkt. 544) was initially filed August 24, 2021, but two months later it has yet to be filed in a redacted format and the government has yet to notify me in writing which part(s) are allegedly classified and why. Additionally, my motion to dismiss the MCC Counts for violation of the First Amendment, filed October 8, 2021, has yet to be publicly docketed in redacted format and the government has yet to notify me in writing which part(s) are allegedly classified and why. The third motion, my CIPA 5 motion, filed

*United States v. Schulte*, S3 17 Cr. 548 (JMF); October 22, 2021 letter from *pro se* defendant

September 10, 2021, was filed publicly but removed due to alleged "classified" information. I then filed a letter requesting how the government could possibly claim this motion to be classified, and the government classified and removed that letter as well. Neither has been publicly filed in redacted format nor has the government notified me what part(s) are classified or why. Judge Crotty previously allotted only two weeks for the government to conduct its classification review, so I ask the Court to compel the government to finish this review, file the redacted versions on the public docket, and notify me of the alleged classified information so that I can challenge it.

> B.      Outstanding motions for the government to respond

Currently, there are at least three outstanding motions that the government has yet to respond; the first is the aforementioned CIPA 5 motion, the second is the motion to dismiss the MCC Counts for violation of the First Amendment, and the third is the motion for internet access. Judge Crotty previously reminded the government of its obligation under Local Crim. R. 49.1(b), that, "[a]ny opposing papers shall be filed and served within 14 days after service of the motion papers." I ask the Court to once again remind the government of this obligation to respond within 14 days or, at least, request an extension with the Court.

> C.      Outstanding motions for the Court

I also wanted to update the Court with the pending motions that have been fully briefed. The Motion to Suppress Evidence Seized from the MCC, Dkt. 455, and Motion to Suppress Evidence Seized from Warrantless Seizure of Cellphone, Dkt. 497, have been fully briefed and are now before the Court.

> D.      Outstanding requests for the Court

Finally, I want to note for the Court a few outstanding requests.

First, the Court has yet to respond to my *Brady* Violation Letter dated September 14, 2021, Dkt. 505. I notified the Court that the government hid critical forensic information from me during the first trial in violation of *Brady*, and requested the Court order the government to turn over this information in discovery and to provide additional *Brady* material consistent with clearly established law.

Second, the Court entered an Order on December 9, 2020 ordering social VTCs. Dkt. 443. Since then the MCC scheduled social VTCs the first Friday of each month. On Friday, September 3, 2021, the MCC informed me they decided to permit visitation again and therefore I would no longer have any VTCs. However, the Court's Order does not authorize the MCC to cancel such VTCs. Accordingly, the MCC should file a motion in the Court in accordance with federal criminal procedure to cancel the social VTCs. Since the MCC did not notify me ahead of time that they would re-open social visits nor that they were going to cancel social VTCs, the Court should order the MCC to schedule a makeup social VTC. The same issue occurred during the Month of October. Even though I have been transferred to the MDC, this order should still be in effect, or at the very least, there should be two makeup social VTCs. I also note for the Court that other inmates continue to receive their social VTCs.

Next, I ask the Court to permit me physical contact social visits just like all other MDC general population inmates, and the ability to visit with multiple people at once—also just like all other MDC general population inmates. There is no legitimate penelogical interest to arbitrarily forcing me to visit with both my parents separately, nor is there any legitimate penelogical interest to arbitrarily deny me physical contact during my social visits. I ask the Court to order the MDC to permit me full contact visits with multiple family members at once.

Respectfully submitted,

Joshua Adam Schulte

3

Josh Schulte #74471054
MDC
P.O. Box 329002
Brooklyn, NY 11232

ATTN: Judge Jesse M. Furman, Case 17-cr-548
Pro Se Intake Office
United States District Court SDNY
500 Pearl Street
NY, NY 10007

U.S.A
SDNY

NEW YORK, NY 10
2 NOV 2021

FOREVER / USA

FOREVER / USA

10007-315555

Joshua Adam Schulte, pro se
October 29, 2021

BY HAND
Judge Jesse M. Furman
U.S. District Judge
SDNY
500 Pearl St.
NY, NY 10007

RE: United States v. Joshua Adam Schulte, S3 17 cr 548 (JMF)

Dear Judge Furman:

I write to request assistance from the Court to help optimize SCIF days for discovery review. Unfortunately, due to my pro se status, I have very limited means for coordinating with the U.S. Marshals and MDC. ~~[struck out]~~ ~~[struck out]~~, therefore, I must involve the Court. Currently, ~~twice each month~~ twice each week I am transported to the Southern District of NY Courthouse for review of classified and unclassified discovery at the Courthouse SCIF—or at least, that is the general idea, but over 50% of all SCIF days are cancelled (and not made up). The overwhelming majority of the discovery in this case remains classified, and subject to viewing restrictions. Additionally, the overwhelming majority of the unclassified discovery seized from my home electronics is also subject to viewing restrictions at the SCIF due to the 9 Snowden documents identified in browser cache in a virtual machine on my primary server, SRVO2, and child pornography identified in a virtual machine on a desktop computer, SCO1. Accordingly, SCIF access is critical to my defense.

When I was detained at MCC, the U.S. Marshals generally arrived at the MCC around 8:30 AM to transport me to the courthouse. I was then placed in a holding cell for around 90 minutes until the SCIF time began at 10:00 AM, and remained in the SCIF until 2:30 PM. The Marshals then brought me right back to MCC.

Now that I am detained at MDC, the overhead has increased by approximately 1000%. For my first SCIF session on Friday, October 22, 2021, the MDC woke me up at 4:00 AM to prepare for the Marshals to transport me to the courthouse. MDC then continually reminded me of my scheduled departure for 5:00 AM at 4:30, 5:00, 5:30, 6:00, and 6:30. I was finally moved from my cage at

at the MDC shortly after 6:30 AM. The Marshals picked me up near 7:00 AM, and after 15-20 minutes of travel, I arrived at the Courthouse by 7:20 AM. I then remained in the holding cell for around 2 hours and 40 minutes until the SCIF time began at 10:00 AM. After the SCIF finished at 2:15 PM, I was moved back into the holding cell for a little over an hour until around 3:30 PM. I was then driven back to MDC, and arrived there at 3:50 PM. Since the MDC refuses to accept inmates between 3-4 and then holds count from 4-5, we were stuck waiting outside MDC until 5PM. However, due to my SAMs status, the MDC could not take me since there were currently four inmates still waiting in R&D. Thus, we were forced to wait, and were subsequently skipped over in line as van after van arrived to drop off additional non-SAMs inmates. We waited outside MDC for three hours until 6:40 PM. After transition from the Marshals to the BOP, I was finally returned to my MDC cage at 6:55 PM; over 12 hours since pickup, 15 hours since the MDC woke me up and told me to prepare for departure. I was also informed that, going forward, the Marshals would come for me at 5:00 AM. I asked my standby counsel to please intervene and contact the Marshals, MDC, and government to work out a less idiotic solution, but ~~████████~~ nothing was done.

Indeed, at 5:00 AM on Thursday, October 28, 2021, I was picked up and transported by the Marshals. At 10:00 AM, I was informed that the SCIF was cancelled again—I woke up at 5:00 AM (the Marshals woke up at 2:00 AM), came all the way to the Courthouse, waited 5 hours in a holding cage—only to find out the SCIF day was cancelled. It took another 90 minutes before I returned to my MDC cage; in total, nearly 7 hours and a completely wasted day all for nothing. The reason over 50% of my SCIF days are cancelled and the reason they are continually moved is because the ceremonial courtroom on the 9th floor of the courthouse must be empty to transport me across the floor and into the SCIF. But, many days, such as that Thursday, judges decide to use the courtroom

without informing the Marshals, so when the Marshals begin to move me to the SCIF, they cannot do so. My entire SCIF day is then cancelled.

Hence, from now on I will spend approximately 10 hours each SCIF day waiting in a cage to spend 4 hours of discovery review at the SCIF — or 7 hours to spend 0 now or for the trial. This is a 1000% increase and not sustainable now or for the trial. The primary reason for this delay is my SAMs status, which precludes me from movement with general population, and requires the Marshals to allocate multiple resources just to transport me separately. Just as it would be absurd and unconstitutional for the government to impose harsh conditions on pretrial inmates for discovery review, these harsh, arbitrary, and absurd conditions will ultimately make it impossible for me to properly review discovery and present the best possible defense. For example, if the government required that I travel to Virginia to view my classified discovery then surely the Court would find that intolerable — yet, it would take less time to travel to Virginia, review my discovery, and return to MDC than the current overhead to travel a mere 15 minutes. I therefore ask the Court to facilitate intervention to help me optimize the SCIF days to minimize unnecessary overhead.

There are a multitude of solutions, and the current 10-hour delay is literally the worst possible option. I ask the Court to compel the government to devise appropriate solutions since it is their arbitrary designation of me as a SAMs inmate that is the problem. Indeed, if the government cannot devise a reasonable solution then the Court should compel construction of a new SCIF at the MDC. The ideal solution would simply be for the Marshals to pick me up from the MDC between 8-10, and return me after the SCIF finishes between 2-3, just as occurred while I was at MCC — the travel distance between the two prisons is literally 15-20 minutes. If the issue is with the MDC, then the Court should compel the MDC to accommodate this arrangement. If the issue is with the Marshals, then I ask the Court to request an optimal

SCIF timeframe from the Marshals; we should move the SCIF later, from 11-3:30, 12-4:30, etc, ~~1:30~~ if this time works best for the Marshals, or else, we should move the SCIF earlier, from 9-1:30, 8-12:30, 7-11:30, if this time works best for the Marshals. Alternatively, I also note for the Court that the Marshals constructed a new SCIF in their facilities that was originally built for my use, but because it was too small to host the primary CIA forensics, it was never used. Since this SCIF does not require Marshals personnel, then I ask, if I must remain in a cage for multiple hours before or after normal SCIF time, that I use the internal Marshals SCIF to review other classified discovery during this time—in lieu of completely wasting it in a cage where I have access to no discovery, no paperwork, and cannot do anything at all.

As for the >50% SCIF cancellation rate, this fault rests entirely with the courts in this district for failing to establish protocol and notify the Marshals of their intention to use the ceremonial courtroom. Since this court does not have the authority to order other district courts to schedule use of that courtroom, I simply ask the court to order the Marshals to take me through the public spaces to the SCIF. This is literally the only solution other than construction of a new SCIF at MDC.

Respectfully submitted,

Joshua Adam Schulte

Josh Schulte #74471054
MDC
P.O. Box 329002
Brooklyn, NY 11232

NEW YORK NY 100
4 NOV 2021  PM 10 L

ATTN: Judge Furman,  case 17 cr 548 (JMF)
Pro Se Intake Office
United States District Court
500 Pearl Street
NY, NY 10007

10007-131608