Joshua Adam Schulte, *pro se*

December 3, 2021

**BY HAND**

Judge Jesse M. Furman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      RE: *United States v. Joshua Adam Schulte*, S3 17 Cr. 548 (JMF)

Dear Judge Furman:

      I write in response to the government's November 29, 2021 letter regarding ongoing MDC confinement conditions.[1] As an initial matter, the government claims the Court has no jurisdiction to monitor pretrial conditions of confinement; this notion that the government repeatedly asserts is simply false. In *Bell v. Wolfish*, 441 U.S. 520 (1979), the Supreme Court held that since a pretrial detainee has not been convicted, the Due Process Clause does not permit prison officials to subject him to "punishment." *Id.* at 537, n. 16. In considering whether prison officials subject a prisoner to punishment:

> *A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]. Thus, if a particular condition or restriction of pre-trial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment". Conversely,* <u>*if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the*</u>

---

[1] I note for the Court that I did not receive this letter from the government, but after receiving two-week delayed letters from the government, asked standby counsel to print me an updated docket and all associated filings (See previous day's letter from 12/2/21).

*United States v. Schulte*, S3 17 Cr. 548 (JMF); December 3, 2021 letter from *pro se* defendant

> ***governmental action is punishment that may not constitutionally be inflicted upon detainees.***

*Id.* at 538-39 (emphasis added). Conditions of confinement that are imposed arbitrarily without any legitimate governmental objective violate substantive due process guaranteed by the Fifth Amendment. The Constitution also bars imposition of cruel and unusual punishment as ratified in the Eighth Amendment. Thus, to ensure that Mr. Schulte is not unlawfully punished or subject to arbitrary conditions of confinement, the district court has full oversight. No district court or court of appeals has ever ruled that unconstitutional pretrial conditions of confinement must be challenged through a separate civil case—to the contrary, the district courts of this Circuit have all consistently held the opposite. "While BOP contends that because [defendant] has not been released on bail, the Court lacks jurisdiction to monitor the conditions of his confinement under the Bail Reform Act of 1984 ("BRA"), 18 U.S.C § 3141-3150, this contention ignores the Court's jurisdiction to entertain a habeas petition challenging the conditions of pretrial confinement." *United States v. McGriff*, 468 F. Supp. 2d 445, 447 (E.D.N.Y. 2007); "The Supreme Court has noted that '[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution' and that '[w]hen a prison... practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights.'" *United States v. Bout*, 860 F. Supp. 2d 303, 305 (S.D.N.Y. 2012) (quoting *Turner v. Safley*, 482 US 78, 84 (1987)); See also *United States v. Khan*, 540 F. Supp. 2d 344 (S.D.N.Y. 2007). Moreover, the time it takes to mount a civil challenge will far exceed the time spent in pretrial detention, ultimately mooting the civil challenge. Thus, without direct Court oversight, the government and its prisons can violate Constitutional rights with impunity.

And these conditions of confinement are not merely limited to conditions that directly impact the criminal case. If the MDC decided that all black pretrial detainees could only watch black-and-white televisions while white inmates were permitted colored televisions, then this clearly has no bearing on the inmates' criminal cases, but would the Court refuse to intervene? If the MDC decided that all pretrial detainees accused of drug crimes could not have any family visits, then this clearly has no bearing on the inmates' criminal cases, but would the Court refuse to intervene? Likewise, the government and the MDC is currently discriminating against

2

*United States v. Schulte*, S3 17 Cr. 548 (JMF); December 3, 2021 letter from *pro se* defendant

me and the other 4 SAMs inmates—the government loathes us as it accuses us of crimes against the government itself. Thus, in its blinding, bitter hatred, it discriminates against us and imposes arbitrary, cruel and unusual torture upon us in a custom-built concentration camp. This Court is compelled by the United States Constitution to address these conditions—including the lesser, "petty" torments.

The government largely blames the confinement conditions on Special Administrative Measures (SAMs), however the SAMs do not authorize these conditions of confinement—the SAMs do not charge the BOP with 24/7 surveillance inside the torture cages; the SAMs do not charge the BOP to install *BRIGHT* 24/7 lights in the torture cages; the SAMs do not charge the BOP to remove lights from the torture cages so inmates cannot toggle the lights themselves; the SAMs do not charge the BOP to remove plastic chairs from the units; the SAMs do not charge the BOP to remove the basketball goal from the recreation area; the SAMs do not charge the BOP to reduce inmate phone minutes by 90%; the SAMs do not charge the BOP to deny SAMs inmates access to the regular institution's library without an alternative. These are decisions that the BOP and the MDC made to torment and torture SAMs inmates. My SAMs are instituted to protect the national security of the United States and merely direct the BOP to segregate me from other inmates. So, aside from this SAMs directive, <u>I should be treated like every other general population inmate</u>. Thus, any special conditions of confinement must relate to the SAMs goal—the national security interests of the United States; however, the conditions that the BOP imposes are not reasonably related to this goal or any other legitimate penological interest, and the Court should order the torment ceased immediately.

## I.   Torture imposed that directly impacts the criminal case

The government and the MDC did not adequately respond to any of these issues.

### A.   Sleep Deprivation

First of all, the MDC severely misrepresented the intensity and brightness of the torture lights; while they are *dimmer* than the bright normal lights, they are just as bright as the regular lights from the previous cells in MCC—you could easily just leave those lights on and not need any other lights during the day.

3

*United States v. Schulte*, S3 17 Cr. 548 (JMF); December 3, 2021 letter from *pro se* defendant

The MDC's explanation of the need to install 24-7 torture lights is absurd. The MDC fail to notify the Court that these torture lights were removed at MCC by Warden M. Licon-Vitale after hunger strikes—they clearly are *NOT* necessary. Furthermore, MDC failed to notify the Court that torture lights are not installed in general population nor do they inform the Court that the MDC cameras are equipped with night-vision such that no extra light is necessary; Regardless, the MDC does not explain why it even needs 24-7 cameras to begin with—the SAMs do not require it, and there is absolutely no legitimate governmental objective to subject me to 24-7 recording (see section G). Since the SAMs do not even remotely suggest 24-7 torture lights, and since the government outlines no legitimate governmental objective to install them, particularly as related to the SAMs national security objective, their use clearly violates the Due Process Clause of the Fifth Amendment as well as the cruel and unusual clause of the Eighth Amendment—they are imposed arbitrarily, without due process, and subject me to cruel and unusual punishment—sleep deprivation. The Court should order the MDC to remove the torture lights forthwith.

MDC does not even address the constant banging on the doors by the COs at night. There is absolutely no reason that MDC officers need to make more rounds at night than they do with general population. And most critically, there is absolutely no reason they should bang the doors loudly as they do their rounds. The MDC's imposition of constant COs banging on our doors at night plainly violates the Fifth and Eighth Amendments—they are imposed arbitrarily, without due process, and subject me to cruel and unusual punishment—sleep deprivation. The Court should order the MDC to set regular round schedules *equal with general population*, and to install rubber padding on the cage's door's window-lid *as existed at MDC* to prevent loud banging throughout the night.

B. Starvation

The MDC's dismissal of the food issue is absurd—there are 24-7 cameras so the Court can easily watch the footage on the days I outlined to clearly see that I was not fed. Furthermore, the trays *are* different from general population—they are significantly smaller. I know this from experience when I was incarcerated in general population at MDC, and from commentary from MDC COs and Lieutenants who have told me directly that our food trays are

4

*United States v. Schulte*, S3 17 Cr. 548 (JMF); December 3, 2021 letter from *pro se* defendant

different than general population. This is in direct contradiction to the government's affidavit. Regardless, it does not change the fact that the food is significantly less than the portions we received at MCC. Ever since the government started torturing me in its solitary confinement concentration camps, I have lost approximately 50 pounds from 165 to 115. If, at 115 pounds I am still starving after eating one of MDC's mini-torture-meals, then *CLEARLY* the food is inadequate. Furthermore, the MDC does not provide the fruits, condiments, and other extras that they provide to general population. As long as the MDC asserts the meals are the same as general population, or are otherwise a sufficient source of nutrition and energy, then a hearing is necessary to discern the truth; I should have the ability to demonstrate the truth.

    C.    Exposure to the extreme cold

The MDC does not really address this issue, but simply states what the regulations require. Once again we reach an impasse, and I ask the Court to order the MDC to install thermometers in the torture cages that can record temperatures—at the very least, this should keep the MDC honest and ensure they follow their own regulations for temperature.

    D.    Constant sound played through speakers

Shortly after I filed my first letter about MDC torture conditions, the MDC installed speakers right outside all the SAMs units, and now plays loud sounds 24/7. The only thing MDC is missing now is a gas chamber before it is officially recognized as a Nazi concentration camp. There are just no words to describe how inhumane and barbaric this it. Since there is no legitimate governmental objective to installing torture speakers that blast loud sounds 24/7, it is done arbitrarily in violation of the Due Process Clause of the Fifth Amendment; it is also cruel and unusual punishment in violation of the Eighth Amendment. The Court should order the MDC to cease and desist playing loud sounds through the speakers to torture SAMs inmates, forthwith.

*United States v. Schulte*, S3 17 Cr. 548 (JMF); December 3, 2021 letter from *pro se* defendant

## II. Psychological torment imposed that indirectly impacts the case

### A. MDC permits only one hour of law library and discovery access per day

MDC once again alleges that I am given 10 hours of law library access per week. As I have previously explained, I am allotted only *one hour* each day for access to the law library, but I do not get access to the law library on SCIF days since this allotment is only for the morning. Accordingly, I get only 3 hours each week; however, if I agree to forego my one hour of recreation, then I can get double—6 hours each week. I should not have to forego recreation so I can work on my case, and regardless, 6 measly hours pales in comparison to the 168 hours that general population inmates get. My restricted access is arbitrary, and I ask the Court to provide funds that I can purchase an offline law library to be installed on my laptop.

### B. MDC removed light switches from the cells so the lights cannot be toggled

The MDC does not explain how SAMs compels them to remove light switches from our torture cages. MDC general population has access to light switches to toggle lights at their leisure. My SAMs were imposed for national security reasons—is the MDC saying that national security compels them to remove light switches from my torture cage? Since there is no legitimate governmental objective to removing light switches, it is done arbitrarily in violation of the Due Process Clause of the Fifth Amendment. The Court should order the MDC to return our light switches forthwith so we can toggle lights ourselves.

### C. The MDC replaced comfortable chairs with a short concrete "stool"

MDC's statement that I have a "stationary stool" is laughable at best. The MDC merely poured a concrete slab on the floor. This cylindrical concrete "stool" is too short and does not even reach the table nor does it have a back. I spend my days working on my bed or on the floor because I have no chair and desk to comfortably sit and work. The MDC fails to inform the Court that general population inmates are given cheap, plastic chairs to use in their cells. What in my SAMs could possibly compel the MDC to remove these plastic chairs? Does the MDC claim that giving me a plastic chair endangers the national security of the United States? Since there is no legitimate governmental objective to removing the plastic char, this action is done

arbitrarily in violation of the Due Process Clause of the Fifth Amendment. The Court should order the MDC to return our plastic chairs forthwith, that we may actually sit down.

D. The MDC does not provide televisions in the cells. All other *sentenced* control units in the BOP are given televisions.

The statement that "MDC Brooklyn's facility department is aware and responded that this is an ongoing project and in the works" is insufficient. This was the official MCC response the entire 3 years I was held at the concentration camp there. The MDC does not deny that all control units in the BOP are given televisions nor do they deny the fact that sentenced inmates are given televisions. Since general population has access to televisions as well as *sentenced* inmates and even <u>*sentenced SAMs inmates*</u>, there is literally no reason to deny us access to televisions except to make pretrial detention worse than regular prison to coerce guilty pleas. As there is no legitimate governmental objective to denying me access to television, this denial is done arbitrarily in violation of the Due Process Clause of the Fifth Amendment. The Court should order the MDC to provide televisions to SAMs inmates within 30 days.

E. The MDC bans all SAMs inmates from its libraries

MDC does not even respond to the library issue. While MDC acknowledges there is a law library to be shared between inmates in the general population, MDC does not acknowledge the regular library that is also shared between inmates in the general population. My SAMs do not require the MDC to deny me access to regular books nor to law library books. Sentenced inmates have access to libraries to read books, yet, somehow, pretrial inmates are banned from books? This is absurd. Since there is no legitimate governmental objective to denying me equal access to books, this denial is done arbitrarily in violation of the Due Process Clause of the Fifth Amendment. The Court should order the MDC to provide books (both regular and law library) to SAMs inmates (either through the institution's library, a new, separate but equal library for SAMs inmates, or through eReaders with access to New York City's public library as most prisons are now doing) within 30 days.

F.  The MDC imposes commissary restriction as punishment

While the MDC claims that SAMs inmates at MDC have access to more commissary than at MCC, it does not respond to the issue—<u>that the commissary is arbitrarily restricted</u>. What possible reason could the MDC have for restricting my commissary? My SAMs? Does the MDC claim that giving me access to milk chocolate endangers the national security of the United States while dark chocolate does not? It is absurd. Since there is no legitimate governmental objective in denying me *full access* to MDC's commissary, then this restriction is arbitrary, in violation of the Due Process Clause of the Fifth Amendment. The Court should order the MDC to provide equal commissary on equal number of days as general population forthwith.

G.  The MDC installed two 24/7 cameras equipped with night vision

The MDC does not explain at all the necessity of installing two cameras equipped with night vision for 24/7 audio and video surveillance. This type of monitoring is absolutely absurd, completely unnecessary, and in direct violation of multiple civil rights—SAMs do not even remotely suggest such a radical civil rights violation. In addition to violating the Due Process Clause of the Fifth Amendment for arbitrariness, it also constitutes a particularly invasive continual search in violation of the Fourth Amendment, violates the Sixth Amendment for infringement upon my right to a complete defense as the government is able to see everything I do and say as I work on my case, and violates my Ninth Amendment right to privacy when I use the toilet and shower. No other pretrial detainees are subjected to this type of monitoring nor has any court ever declared such a thing Constitutional. Accordingly, the Court should order the MDC to remove all cameras and cease and desist all audio and video recording immediately.

H.  The MDC arbitrarily restricts phone minutes

The MDC does not respond to the arbitrarily reduced 90% phone minutes. 90% reduction is literally an arbitrary amount. Since there is no legitimate governmental objective to the 90% reduction, this action is done arbitrarily in violation of the Due Process Clause of the Fifth Amendment. The Court should order the MDC to provide SAMs inmates with equal calling minutes as general population forthwith.

*United States v. Schulte*, S3 17 Cr. 548 (JMF); December 3, 2021 letter from *pro se* defendant

    I.    The MDC arbitrarily restricts our social visits

The MDC does not respond to the arbitrary denial to in-person contact visits with multiple people at once. Since there is no legitimate governmental objective to the denial of full-contact social visits with multiple people at once, this action is done arbitrarily in violation of the Due Process Clause of the Fifth Amendment. The Court should order the MDC to provide SAMs inmates with full-contact social visits with multiple individuals simultaneously, forthwith.

    J.    The MDC removed the basketball goal from our recreation yard

The MDC did not respond to the removal of the basketball goal from the SAMs' Unit. Shooting basketballs does not endanger the national security of the United States. Since there is no legitimate governmental objective to the removal of the basketball goal from the recreation court, this action is done arbitrarily in violation of the Due Process Clause of the Fifth Amendment. The Court should order the MDC to replace the basketball goal forthwith.

    K.    The MDC arbitrarily shackles me for all movement

The MDC did not respond to how the national security of the United States depends upon my constant shackling within the prison. My SAMs are not due to violence, I do not even stand accused of violence, nor have I had any disciplinary infractions while at the MDC. Since general population inmates are never shackled for prison movement, there is no legitimate governmental objective to the MDC's constant shackling of me for prison movement, in violation of the Due Process Clause of the Fifth Amendment. The Court should order the MDC to treat me as a general population inmate during internal moves, and cease and desist the shackling forthwith.

    L.    The MDC arbitrarily imposes solitary confinement

My SAMs do not actually require the MDC to impose solitary confinement. Since the MDC is using a converted regular unit to house us, it is designed for us to move about freely. There is no reason the MDC cannot treat its SAMs unit as it does for other special housing units, where they are free to move about in the regular unit but otherwise segregated from the rest of the prison—as they do for snitches and other control units. Accordingly, indefinite solitary confinement is overkill. Since there is no legitimate governmental objective to solitary

9

confinement as opposed to unit segregation, this action is done arbitrarily in violation of the Due Process Clause of the Fifth Amendment. The Court should order the MDC to end solitary confinement and convert its SAMs unit into a regular, segregated control unit.

### III.     Petty torments imposed arbitrarily

#### A.     MDC replaced normal sinks using dials with push-dials

The MDC does not even respond to the necessity of replacing the normal general population sinks with special torture sinks that require you to hold down a dial to dispense water; how does making it impossible to watch your hands necessary to safeguard the national security? Since there is no legitimate governmental objective to replacing normal sinks with impossible-to-use sinks, this action is done arbitrarily in violation of the Due Process Clause of the Fifth Amendment. The Court should order the MDC to revert its sinks to the normal general population sinks within 30 days.

#### B.     MDC replaced normal porcelain toilets with seat-less toilets

The MDC does not even respond to the necessity of replacing the normal general population toilets with special seat-less stainless steel toilets; how does removing a toilet seat safeguard the national security? Since there is no legitimate governmental objective to replacing normal toilets with seat-less stainless steel toilets, this action is done arbitrarily in violation of the Due Process Clause of the Fifth Amendment. The Court should order the MDC to revert its toilets to the normal general population toilets within 30 days.

#### C.     MDC replaced normal showers using dials with a single timer-button

The MDC does not even respond to the necessity of replacing the normal general population showers with special single timer-button showers with no temperature control; how does denying me access to hot showers safeguard the national security? Since there is no legitimate governmental objective to replacing normal showers with single timer-button showers with no temperature control, this action is done arbitrarily in violation of the Due Process Clause of the Fifth Amendment. The Court should order the MDC to revert its sinks to the normal general population sinks within 30 days.

*United States v. Schulte*, S3 17 Cr. 548 (JMF); December 3, 2021 letter from *pro se* defendant

D.   The MDC blocks the outside view

The MDC does not even respond to the necessity of blocking out the windows that are normally unobstructed in general population; how does obstructing the windows safeguard the national security? Since there is no legitimate governmental objective to obstructing the windows, this action is done arbitrarily in violation of the Due Process Clause of the Fifth Amendment. The Court should order the MDC to revert its windows to the normal general population windows within 30 days.

E.   The MDC removed lockers so commissary and clothes must be stored on the floor.

The MDC does not even respond to the necessity of removing lockers provided to general population and forcing floor storage; how does removing locker storage safeguard the national security? Since there is no legitimate governmental objective to removing the lockers, this action is done arbitrarily in violation of the Due Process Clause of the Fifth Amendment. This Court should order the MDC to return the lockers to the SAMs torture cages within 30 days.

***

These 21 issues are completely unrelated to SAMs; SAMs does not impose these restrictions. Since general population at the MDC and all pretrial BOP detainees are granted the same treatment and "amenities" I seek here, this Court should grant my requested relief to revert the arbitrarily imposed torment. Otherwise, the judiciary greenlights the BOP and executive branch to torture whomsoever it pleases in violation of the very foundations of a Republic. Is this inmate charged with crimes against the government? Yes? Then bring him to the concentration camp in New York City and torture him.

Respectfully submitted,

Joshua Adam Schulte