UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v-<br><br>JOSHUA ADAM SCHULTE,<br>        *Defendant.* | S3 17 Cr. 548 (JMF) |

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR INTERNET ACCESS

Joshua Adam Schulte
Slave #79471054
Metropolitan Detention Center (MDC)
P.O. Box 329002
Brooklyn, NY 11232

## TABLE OF CONTENTS

I. INTERNET ACCESS AS A PRO SE CRIMINAL DEFENDANT ................... 1

   A. The Due Process Clause of the Fifth Amendment compels the Court to provide internet access to the pro se criminal defendant ......................................... 1

      1. The government utilizes unfettered internet access during its prosecution .. 2

      2. Every criminal defendant not detained pretrial can access the internet ........ 2

   B. The Sixth Amendment compels the Court to provide internet access to the *pro se* criminal defendant .............................................................................. 3

      1. Every criminal defense attorney can access the internet .............................. 4

      2. Since Mr. Schulte is his own attorney, he must be granted equal access to manage, prepare, and conduct his own defense ................................................ 4

   C. The internet is ubiquitous ................................................................................ 4

   D. The internet is the critical equalizer for self-representation, without which there can be no self-representation ................................................................. 5

II. ALL PRETRIAL DETAINEES ARE ENTITLED INTERNET ACCESS ..... 7

III. CONCLUSION ................................................................................................ 10

## I. INTERNET ACCESS AS A PRO SE CRIMINAL DEFENDANT

While the government largely ignores the majority of Mr. Schulte's arguments, they claim that Mr. Schulte's ban of the internet is a legitimate condition of his 5-year indefinite pretrial detention, and that, although the government relies heavily upon the internet, there is no due process right to equal access nor is there a right for *pro se* defendants. The government's arguments should be rejected and the Court should order that Mr. Schulte should be treated no different from other *pro se* defendants who are granted the presumption of innocence, released pretrial, and permitted access to the internet for their defense.

### A. The Due Process Clause of the Fifth Amendment compels the Court to provide internet access to the pro se criminal defendant

The government argues that the Due Process Clause of the Fifth Amendment does not compel the Court to give Mr. Schulte equal access to resources as the government; however, it cites cases to the contrary. See Opp. at 22. "The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and ***opportunity to meet it.***' All that is necessary is that the procedures be tailored, in light of the decision to be made, to 'the capacities and circumstances of those who are to be heard,' to ***insure they are given a meaningful opportunity to present their case.***" *Mathews v. Eldridge*, 424 U.S. 319, 348-49 (1976). Can the government meet its Due Process obligation by refusing to provide Mr. Schulte access to a law library? Access to his discovery? How could he have a meaningful opportunity to present his case otherwise? The same is true of the internet today. The internet is not only ubiquitous, but it is a critical asset. The internet is the Great Equalizer, the equivalent of the gun in a knife fight—it provides the user with indispensable knowledge that is critical to the case both at the pretrial and trial phase. To prevent a *pro se* defendant from accessing the internet is to prevent him from self-representation altogether.

1

"The right to assistance of counsel and the correlative right to dispense with a lawyer's help are not legal formalisms. They rest on considerations that go to the substance of an accused's position before the law. The public conscience must be satisfied that fairness dominates the administration of justice. An accused must have the means of presenting his best defense. He must have time and facilities for investigation and for the production of evidence. But evidence and truth are of no avail unless they can be adequately presented. Essential fairness is lacking if an accused cannot put his case effectively in court." *Adams v. United States ex rel. McCann*, 317 US 269, 279 (1942).

### 1. The government utilizes unfettered internet access during its prosecution

The government has unfettered internet access, and undoubtedly uses this access in every case it tries. Indeed, ironically, the government's casual reliance upon the internet is evident in the government's opposition. The government references the BOP website as if Mr. Schulte can visit the site and validate the reference. See Opp. at 20. This is precisely the reason Mr. Schulte must be granted access to the internet—the materials, references, and documents accessible from the internet are crucial to effective litigation in the 21st century; it is impossible to effectively represent a client without access to the internet at every stage of the criminal procedure. Indeed, the modern-day trial is absolutely dependent upon technology and the internet. In accordance with the Due Process Clause of the Fifth Amendment, since the government is provided internet access, the defendant must also have equal access to the internet. Otherwise, the resulting pretrial and trial are fundamentally unfair.

### 2. Every criminal defendant not detained pretrial can access the internet

Every other criminal defendant can use the internet to prepare for trial—except defendants deemed a "flight risk" or a "danger to the community"—these defendants, who are

2

typically facing the longest prison sentences, are arbitrarily denied equal access to the internet in violation of the Due Process Clause of the Fifth Amendment. How can it possibly be fair and proper, that a defendant charged with a 0-6 month misdemeanor is granted the ability to access the internet to defend himself, but the defendant charged with life or even the death sentence is denied equal access? Indeed, no innocent person chooses to be wrongfully accused of a crime, let alone accused of a crime that "shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3). A criminal defendant incarcerated pretrial is already facing staggering odds at winning trial in addition to the oppressive conditions of confinement that are no different from those found guilty and sentenced to prison. Indeed, it is abundantly clear that in America there is no presumption of innocence at all—upon indictment, the United States Federal Government can incarcerate and torture anyone it so desires and deny that person his humanity and his ability to defend himself. This is not justice—the Fifth Amendment prohibits the government from treating people unequally, and it must provide equal access to the internet to those detained pretrial just as it does to those released pending trial; otherwise, the denial of internet access is punishment imposed arbitrarily to prevent a fair trial.

### B. The Sixth Amendment compels the Court to provide internet access to the *pro se* criminal defendant

"A defendant's right to self-representation plainly encompasses certain specific rights to have his voice heard. The *pro se* defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law... and to address the court... at appropriate points..." *McKaskle v. Wiggins*, 465 US 168, 174 (1984).

3

### 1. Every criminal defense attorney can access the internet

Mr. Schulte's defense team had unfettered access to the internet during its defense—they used the internet throughout pretrial and trial as does every modern-day defense attorney.

### 2. Since Mr. Schulte is his own attorney, he must be granted equal access to manage, prepare, and conduct his own defense

"Under the Fifth Amendment, no person may be deprived of liberty without due process of law. Minimum requirements of due process in federal criminal trials are set forth in the Sixth Amendment. They include the right of the accused to be informed personally of the accusation, to be confronted by witnesses against him, and to have compulsory process for obtaining witnesses in his favor. Implicit in both amendments is the right of the accused personally to manage and conduct his own defense in a criminal case." *United States v. Plattner*, 330 F.2d 271, 273-74 (2d Cir. 1964).

As a *pro se* defendant, Mr. Schulte has the right to personally manage and conduct his own defense in a criminal case. This right extends to the use of the internet in the management and preparation for trial, and the right to put forth a complete defense—otherwise, the defense is incomplete, and the right to self-representation is entirely eviscerated.

### C. The internet is ubiquitous

Internet access is ubiquitous in the modern era. At some point in history, access to books and legal materials became ubiquitous and necessary for incarcerated defendants. At some point in history, access to an electronic law library became ubiquitous and necessary for incarcerated defendants. Now, internet access is ubiquitous and necessary for incarcerated defendants. As of 2017, 87.27% of the entire United States population used the internet. And on average, users spent 22.5 hours online per week. Pretrial detainees must have web access.

4

### D. The internet is the critical equalizer for self-representation, without which there can be no self-representation

To deny a *pro se* defendant access to the internet is to deny knowledge and effectively deny the right to self-representation. *Pro se* defendants begin at a disadvantage, and to deny access to the internet only widens that handicap. Through internet access, Mr. Schulte would have access to PACER and the ability to easily manage his own case, file motions, review previous filings, etc. The internet provides vast troves of legal data for pro se defendants to process and learn from. The internet provides open commentary from the entire world—resources where lawyers across the country can assist. The internet provides the pro se defendant with direct access to experts and the ability to find experts. The internet is a powerful research tool that can enable effective and efficient self-representation. The internet can provide powerful training and coursework in the law. The internet is paramount for pretrial motions; for reviewing successful motions and incorporating their arguments, for reviewing failed motions and what to avoid, for researching and providing external sources as well as caselaw. The internet is crucial for trial preparation—there is not a single lawyer in the United States in 2021 who does not depend on the internet for trial preparation. The internet can be leveraged for crowd funding and crowd sourcing. The internet is necessary to contact witnesses and conduct investigations—how does the Court propose Mr. Schulte conduct his Constitutionally-protected right to investigate? The internet is necessary to obtain information to assist in cross-examination. The internet is necessary to contact, create exhibits, leverage cloud-based software solutions and data analytics to prepare and execute a defense at trial, to contact advocacy groups and organize potential amicus briefs, find useful quotes from literature and popular culture for use with the jury, spell-correct, thesaurus, and reviewing/editing documents, among countless other uses.

5

These are just a few examples of the disparities between the criminal defendant who can utilize the internet and the one who cannot. Truly, it is impossible to enumerate all the precise advantages the internet grants to the criminal defendant—especially without access to the internet to do so. Denying a criminal defendant access to the internet today is like denying a criminal defendant access to law books or a law library a decade ago—except the cost of internet access is miniscule relative to the cost of furnishing a library with books. **In essence, a denial of internet access creates an insurmountable disadvantage that ultimately results in the inability for effective self-representation.**

You cannot put a price on knowledge. The internet provides access to the sum of all human knowledge, and therefore is the Great Equalizer—the difference between a *pro se* defendant who can tap into this wealth of knowledge and the one who cannot is the difference between life and death; the internet can provide the knowledge a criminal defendant needs to win his case and rebut the presumption of guilt that is the American "justice" system to regain his livelihood and ultimately his life.

There can be no question that Mr. Schulte's defense, preparation for trial, and ultimate performance at trial would be radically different if he could utilize the internet than if not. Mr. Schulte did not choose to be falsely accused of a crime, did not choose to be falsely labeled a "danger to the community," and certainly did not choose to be denied the presumption of innocence and tortured indefinitely in an American concentration camp. The government cannot deliberately sabotage Mr. Schulte's case and undermine his ability to present a complete defense based on the circular logic that it believes Mr. Schulte to be guilty in the first place, and therefore, inapplicable for internet access. Justice prevents this.

6

## II. ALL PRETRIAL DETAINEES ARE ENTITLED INTERNET ACCESS

The incredible resources and ubiquity of the internet compel the government to provide access to all incarcerated pretrial detainees—not just those who choose to represent themselves. The government claims that the BOP's prohibition on internet access by inmates is "reasonably related to legitimate penological interests." Opp. at 24. The government and the BOP use this as a catchall provision in denying pretrial detainees access to anything. However, this is clearly overkill—what stops the BOP from monitoring internet access? Or even offloading to other agencies and personnel for monitored internet access? What legitimate penological interest exists in preventing Mr. Schulte from legal research and other online resources?

Independent from the needs of self-representation is the First Amendment right of access to the internet. While the government claims this right is divorced from Mr. Schulte's pretrial detention, it clearly is not—Mr. Schulte has a right to broadcast to the American people what it's like to be tortured in an American concentration camp; what it's like to starve to death; to freeze in the winter; to be humiliated and physically assaulted daily; to be tortured so badly that you pray each night for death.

Could the Nazis have maintained power throughout World War II if their concentration camp slaves could broadcast to the world? How long would the German people stand by and allow their government to commit genocide? Advances in technology and the media have altered the course of human history, not just in the advances in lifestyle, but also in the evolution of society and advancement of civil rights. If those persecuted through the Nazi's Holocaust could have accessed Facebook or other social media and broadcast their treatment, then there is no doubt that human history would be drastically different today.

7

What is the difference between the Nazi's Auschwitz and New York City's MCC and MDC? How does the public know? What stops the United States from building concentration camps, torturing, and murdering the innocent? By restricting pretrial detainees from recording their torture and broadcasting it to the world, the government successfully hides its immoral and undeniably unconstitutional holocaust of those it accuses of a crime. The United States is no different from Nazi Germany, and the American people are just as duped and completely unaware of their government's crimes against humanity. And so, the American public remain largely ignorant of what it's like to be accused of a crime in this country—most people simply assume the legal system is just, because that's how the public schools indoctrinated us; without direct evidence to the contrary, few listen to the civil rights activists calling for drastic prison reform. The mainstream media helps the government conceal its crimes against humanity, and refuses to report on prison conditions—especially conditions imposed upon pretrial detainees. Most in America would be appalled to learn that there is no presumption of innocence and that the Constitution many fight to protect has long ago been raped and discarded. The United States Government is relentless in its persecution of those it accuses of crimes—denying any who dare to be indicted not only the "inalienable" Constitutional guarantees but also basic humanity.

Mr. Schulte has the First Amendment right to record, document, and distribute across the internet his torture at the Metropolitan Concentration Camp—New York City's very own Auschwitz. Mr. Schulte has been subjected to conditions of confinement worse than those imposed upon death row inmates in every state in the union. These conditions of confinement are no different, and often times worse, then the *punishment* imposed upon those convicted of the most heinous crimes of mass murder and terrorism and held at the U.S. Penitentiary Administrative Maximum (ADX) federal prison. Mr. Schulte is held in indefinite solitary

8

confinement that has been condemned by the United Nations as a form of torture and well-documented by psychiatrists as causing permanent psychological damage. Stuart Grassian, *Psychiatric Effects of Solitary Confinement*, 22 Wash. U.J.L. & Pol'y 325, 327 (2006).

Mr. Schulte is locked in a steel and concrete cage the size of a parking space. The small window is blacked out so he receives no outside light, and in fact has never seen the sun or the outside in over three years—he is not permitted outside recreation, he is not even permitted to turn off the light in his cage; instead, he is subjected to 24-7 bright lights and sleep deprivation. Mr. Schulte is not permitted heat in the winter, and exposed to the extreme cold without sufficient provisions. Mr. Schulte is denied access to books, television, and all forms of entertainment—he is forced into a state of constant "idleness," prohibited from assisting in his own defense or doing anything productive. He is subject to mental decay where his years of experience and training as a computer engineer become nothing, and his life becomes a living hell. And these are just a few of the hardships imposed upon a man the law declares to be innocent. "Freedom" is the fatuous jingle of our civilization. But only those deprived of it have the barest inkling of what it really is.

Today, the United States Government is a corrupt, fascist police state no different from the Nazis. Mr. Schulte has the First Amendment right to expose the United States of its hypocrisy—to expose the United States Government as the greatest threat to the Constitution and truly, the greatest terrorist organization that this world has ever seen. If Mr. Schulte could show the world what it's like to live in perpetual punishment in an American concentration camp—to expose the last 30 years as what historians will come to name the ***Great American Holocaust***—then perhaps the people would call out for change or revolution to form a new, limited government with the constitutional guarantees that this one simply pretends to offer. Truly, if

9

George Washington and the founding fathers could see the insidious, diabolical government that their experiment in democracy had become, they would call out for the second American Revolution to overthrow the tyranny and oppression that the British Crown never steeped so low to create. There has never been such a monumental evil, cloaked in legitimacy, its hypocrisy shrouded in secrecy as it forever upholds a façade of "justice" and "democracy."

Mr. Schulte has the First Amendment right to levy these charges and redress of grievances to the government and for the American people to see, publicly, these charges. As long as the government is permitted to cover-up its human rights atrocities and bury the substantial evidence from ever seeing the light of day, free speech is thwarted and democracy undermined. For it is easy to permit free speech that the government desires, but difficult to allow free speech that condemns the government. It would be absurd to believe the founding fathers accepted the former, but not the latter. Mr. Schulte and all pre-trial inmates must be granted the First Amendment access to the internet that they may speak out, expose, and condemn this vile, treacherous government—the rest is left to the people to decide for themselves what course of action to take.

### III.  CONCLUSION

For the foregoing reasons, the Court should order that Mr. Schulte is entitled access to the internet in accordance with the First, Fifth and Sixth Amendments.

Dated: New York, New York
      December 9, 2021

Respectfully submitted,

Joshua Adam Schulte

*[signature]*