UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-v-

JOSHUA ADAM SCHULTE,

        *Defendant.*

S3 17 Cr. 548 (JMF)

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S SUPPLEMENTAL CELLPHONE SUPPRESSION MOTION

Joshua Adam Schulte
Slave #79471054
Metropolitan Detention Center (MDC)
P.O. Box 329002
Brooklyn, NY 11232

# TABLE OF CONTENTS

I.  TABLE OF AUTHORITIES ................................................................................. ii

II.  PRELIMINARY STATEMENT ..................................................................... 1

III.  CELLPHONE MUST BE SUPPRESSED IN ACCORDNACE WITH *SMITH* ........................................................................................................... 1

IV.  EVEN IF THE GOVERNMENT EXECUTED THE MARCH 16, 2017 SEARCH WARRANT, IT STILL MUST BE SUPPRESSED ................................. 5

   A.  A search warrant does not authorize indefinite seizure of a device .............. 5

   B.  The government's failure to produce the initial search warrant necessitates suppression ................................................................................................... 5

   C.  The March 16, 2017 search warrant violated the Fourth Amendment ......... 7

V.  THE GOOD FAITH EXCEPTION DOES NOT APPLY ............................... 9

VI.  CONCLUSION ............................................................................................. 10

# I. TABLE OF AUTHORITIES

**Cases**

*Brady v. Maryland*,
　373 U.S. 83 (1963)..................................................................................................7

*Riley v. California*,
　573 U.S. 373 (2014).............................................................................................1, 3

*United States v. Burgaro*,
　675 F.3d 1029 (7th Cir. 2012) ................................................................................2

*United States v. Christie*,
　717 F.3d 1156 (10th Cir. 2013) ..............................................................................2

*United States v. Hightower*,
　950 F.3d 33 (2d Cir. 2020) (per curiam) ................................................................9

*United States v. Martin*,
　157 F.3d 46 (2d Cir. 1998) .....................................................................................1

*United States v. Pangburn*,
　983 F.2d 449 (2d Cir. 1993) ...................................................................................6

*United States v. Smith*,
　967 F.3d 198 (2d Cir. 2020) ..........................................................................passim

*United States v. Sparks*,
　806 F.3d 1323 (11th Cir. 2015) ..............................................................................2

**Rules**

Fed. R. Crim. P. 16 ................................................................................................7, 10

Fed. R. Crim. P. 41(f)(1)(C) ...........................................................................1, 6, 7, 10

Fed. R. Crim. P. 41(g)............................................................................................3, 7

**Constitutional Provisions**

U.S. Const. amend. IV ...................................................................................4, 7, 9, 10

## II. PRELIMINARY STATEMENT

The defendant respectfully submits this supplemental reply to address the Court's order and the government's subsequent memorandum ("Supp. Opp.") to show cause why evidence obtained pursuant to a warrant from a cellphone should not be suppressed. Contrary to the government's assertions, the search here *does* implicate the Second Circuit's decision in *United States v. Smith*, 967 F.3d 198 (2d Cir. 2020), because the government never actually executed the search. Accordingly, the government essentially held the cellphone based on "exigency" for over 30 months before applying for and executing a search warrant. Since no reasonably well-trained law enforcement officer could rely upon exigent circumstances to detain a cellphone for 30 months, especially in light of *Riley v. California*, 573 U.S. 373 (2014), the good faith exception does not apply, and the cellphone should be suppressed. Alternatively, if the Court finds that the government's possession of the phone was based upon the March 16, 2017 search warrant, then the Court should order suppression based upon the same test outlined in *Smith*; alternatively, the Court should order suppression based upon violation of Fed. R. Crim. P. 41(f)(1)(C); alternatively, the Court should permit Mr. Schulte to file a suppression motion challenging the March 16th warrant since it was only recently provided to the defense and not yet challenged.

## III. CELLPHONE MUST BE SUPPRESSED IN ACCORDNACE WITH *SMITH*

"[E]ven a seizure based on probable cause is unconstitutional if police act with unreasonable delay in securing a warrant." *Smith*, 967 F.3d at 205 (quoting *United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998)). The *Smith* court explained why the police may not unreasonably delay in seeking a warrant: "We demand expediency in obtaining a search warrant to search seized evidence in order to avoid interfering with a continuing possessory interest for longer than reasonably necessary, in case the search reveals no evidence (or permissibly

1

segregable evidence) of a crime and the item has no independent evidentiary value and is not otherwise forfeitable." *Id.* (quoting *United States v. Sparks*, 806 F.3d 1323, 1340 (11th Cir. 2015)). "Moreover, 'unnecessary delays also undermine the criminal justice process in a more general way: they prevent the judiciary from promptly evaluating and correcting improper seizures.'" *Id.* (quoting *United States v. Burgaro*, 675 F.3d 1029, 1033 (7th Cir. 2012)). "What, after all, is 'reasonable' about police seizing an individual's property on the ground that it potentially contains relevant evidence and then simply neglecting for months or years to search that property to determine whether it really does hold relevant evidence needed for trial or is totally irrelevant to the investigation and should be returned to its rightful owner?" *Id.* (quoting *United States v. Christie*, 717 F.3d 1156, 1162 (10th Cir. 2013) (Gorsuch, J.)).

Here, the government relied upon "exigency" to seize Mr. Schulte's cellphone without a warrant on March 15, 2017, but ultimately did not execute the search for over 30 months until September 9, 2019. The government's claims that it somehow executed the March 16, 2017 search warrant should be rejected as the government itself acknowledged that it did not actually execute the search warrant, Dkt. 625 at 1 ("We believe the affidavit was not produced earlier because the search of the cellphone pursuant to the warrant was unsuccessful"); the September 9, 2019 search warrant would have been unnecessary if the earlier warrant was executed. Additionally, this Court has already found that the government did not execute the March 16, 2017 search warrant, Dkt. 592 at 1 ("To the extent that Schulte seeks leave to file a motion to suppress the March 16, 2017 search warrant, ECF No. 587, at 2, the request is DENIED as moot *because the March 16, 2017 search warrant was never executed*, see ECF No. 525-12, at 9 n.4.") (emphasis added). Regardless, should the Court determine the government did somehow execute the March 16, 2017 search warrant, the search must still be suppressed. See IV.

2

Turning now to *Smith*. The Second Circuit outlined "four factors [that] are generally relevant to whether the police have waited an unreasonable amount of time before seeking a warrant." *Id.* at 206. Those factors are "[1] the length of the delay, [2] the importance of the seized property to the defendant, [3] whether the defendant had a reduced property interest in the seized item, and [4] the strength of the state's justification for the delay." *Id.*

As to the first factor, the 30-month delay is unconscionable. There is not a single case that even comes close to this delay, and as the Second Circuit stated in *Smith*, "[w]e give independent weight to the length of delay, and we conclude that a month-long delay well exceeds what is ordinarily reasonable. The first factor (length of delay) weighs substantially in favor of Smith." *Id.* at 207. In light of the Second Circuit's description of a month-long delay as "well exceed[ing] what is ordinarily reasonable," multiplying that by 30 would arrive at the inevitable conclusion that, the first factor standing alone carries the entire analysis; the delay is unreasonable and therefore unconstitutional. The Court need not look to any additional factors.

As to the second factor (importance of the seized property to the defendant), Mr. Schulte's cellphone is of utmost importance; it ranks highest due to the immense storage capacity and amount of personal data stored. The Second Circuit recognized this analysis, confirming with the Supreme Court's decision in *Riley v. California*, *supra*. *Id.* at 207-08. The government claims that Mr. Schulte "had multiple other cellphones in addition to the Cellphone," Supp. Opp. at 9; however, the government seized all of Mr. Schulte's electronic devices when they searched his apartment on March 15, 2017, so this is essentially false. The government also claims that Mr. Schulte never moved for the return of his cellphone under Fed. R. Crim. P. 41(g); however, as will be discussed in IV.B, the government never provided Mr. Schulte a receipt of the March 16, 2017 search warrant, and since Mr. Schulte is not telepathic, he did not know the government

3

seized his cellphone pursuant to a search warrant, but, regardless, both Mr. Schulte and his attorneys repeatedly asked for the return of his cellphone. See FBI 302 from initial Suppression Motion. Finally, the government's claims that Mr. Schulte was incarcerated is false—he was not arrested until August 24, 2017. That's over 5 months where he had a strong possessory interest in the cellphone. Accordingly, the second factor weighs substantially in favor of Mr. Schulte.

As to the third factor (reduced property interest), the cellphone was owned by Mr. Schulte; he did not consent to the seizure of the cellphone nor did he consent to a search of its contents when the FBI repeatedly asked his permission before they snatched it from his hands anyway. "This case is unlike those where courts have found that a defendant has a diminished property interest because the defendant or a co-owner consented to the initial seizure, or because the defendant later consented to a search after the property's seizure, or because the property had been otherwise voluntarily relinquished to a third party." *Id.* Mr. Schulte did nothing to reduce his property interest by means of consent or voluntarily relinquishing control of his cellphone. Accordingly, the third factor weighs in Mr. Schulte's favor.

As to the fourth factor (the strength of the state's justification for the delay), the government alleges "that the cellphone was locked and password protected." Supp. Opp. at 10. However, does the government truly believe it has unlimited authority to seize and maintain property until/IF it finds the key/password?

"All in all, the balance of these relevant factors weighs in favor of a conclusion that [the government's] delay in seeking a search warrant for [defendant]'s seized [item] was unreasonable under the Fourth Amendment." *Id.* at 211. Accordingly, the cellphone must be suppressed (the government's proposed additional "factor" is addressed in IV.C.).

## IV. EVEN IF THE GOVERNMENT EXECUTED THE MARCH 16, 2017 SEARCH WARRANT, IT STILL MUST BE SUPPRESSED

### A. A search warrant does not authorize indefinite seizure of a device

"The analysis in *Smith* expressly focused on the reasonableness of the period of delay between a warrantless seizure of a device and obtaining a warrant to search the device. It does not consider or address the reasonableness of maintaining custody of property where, as in this case, a neutral magistrate already had issued a warrant authorizing its seizure and search." Supp. Opp. at 8. The magistrate did not authorize the government to seize Mr. Schulte's cellphone indefinitely, nor could he or any search warrant. While the government claims that the analysis in *Smith* is inapposite to the current situation, the caselaw clearly undermines this argument.

As explained in III, the Second Circuit's entire rationale behind its four-factor test is based upon avoiding interference with a continuing possessory interest for longer than reasonably necessary. Indeed, there is literally no difference between (1) the government seizing a device and not obtaining a search warrant for 30 months, and (2) the government seizing a device, obtaining a search warrant, but not executing the search for 30 months. Accordingly, the *Smith* test applies to this situation as well. Mr. Schulte has a strong possessory interest in his cellphone that was not voluntarily reduced; he required access to his personal and private data that the government seized; the 30-month delay in searching the device is unreasonable and unconscionable. Accordingly, the government's 30-month delay is unconstitutional.

### B. The government's failure to produce the initial search warrant necessitates suppression

"Receipt. The officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken

5

or leave a copy of the warrant and receipt at the place where the officer took the property." Fed. R. Crim. P. 41(f)(1)(C).

In *United States v. Pangburn*, 983 F.2d 449 (2d Cir. 1993), the Second Circuit found that "[v]iolations of Rule 41 alone should not lead to exclusion unless (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." *Id.* at 455. If the government claims they somehow conducted a search, then the decision to *never* notify Mr. Schulte of the search severely prejudices him in that the search never occurred and the government continued to retain his property indefinitely. Additionally, the fact that the government never provided Mr. Schulte a copy of the March 16, 2017 search warrant must be considered an intentional and deliberate disregard of Rule 41; the executing agents knew the law required them to provide Mr. Schulte a receipt—as did the federal prosecutors. However, the government failed to provide Mr. Schulte a copy of the warrant *even after the discovery deadline expired.* This leaves the Court with only two possible inferences: (1) the government deliberately disregarded Fed. R. Crim. P. 41(f)(1)(C); or, the most likely scenario: (2) the government never executed the March 16, 2017 search warrant, and therefore, deliberately decided not to provide Mr. Schulte with a copy of the warrant until Mr. Schulte challenged the government's warrantless seizure of his cellphone, at which point, the government changed its mind and decided it *did* execute the March 16, 2017 search warrant.

The result, either way, is that <u>the government deliberately decided not to produce the March 16, 2017 search warrant to Mr. Schulte</u>. The defense notes for the Court that, in the event of the latter scenario, any and all discussions of the March 16, 2017 search warrant by the FBI and federal prosecutors, including internal discussions, is now discoverable—the government is

6

obligated to provide Mr. Schulte these internal emails, text messages, or other notes, as they are "evidence of intentional and deliberate disregard of a provision in the Rule," and required under Fed. R. Crim. P. 16 and *Brady v. Maryland*, 373 U.S. 83 (1963). Thus, in the event the Court decides the government did somehow execute the March 16, 2017 search warrant, before the Court determines that the government's exclusion of the search warrant is *not* deliberate, it should first order the government to search for, and produce, any and all records pertaining to the government's decision to withhold producing the March 16, 2017 search warrant in discovery.

Finally, even if the Court determines the government did not deliberately violate Fed. R. Crim. P. 41(f)(1)(C), the search warrant should still be suppressed due to the additional violation of Fed. R. Crim. P. 16. Not only was Mr. Schulte prejudiced in his inability to move for return of his cellphone in accordance with Fed. R. Crim. P. 41(g), but the government failed in its discovery obligations. We just went through an entire trial—and the government never once produced the search warrant. Had Mr. Schulte been found guilty, Mr. Schulte never would have known about the government's March 16, 2017 search warrant. This is unconscionable.

Since the government deliberately disregarded Fed. R. Crim. P. 41 and severely prejudiced Mr. Schulte in its unlawful seizure of his cellphone while deceitfully concealing this fact from Mr. Schulte, in violation of Fed. R. Crim. P. 16, the cellphone should be suppressed.

**C.     The March 16, 2017 search warrant violated the Fourth Amendment**

In the event the Court is unpersuaded by III, IV.A, and IV.B, and accepts the government's argument that it executed the March 16, 2017 search warrant, the Court should entertain a suppression motion for that warrant, as it violated the Fourth Amendment in failing to establish probable cause, failing to establish the necessary nexus between the crime and the seizure of the cellphone, and was insufficiently particular and overbroad in its scope to seize any

7

and all electronic data from the cellphone. Mr. Schulte never filed a suppression motion for this search warrant as it was not produced until in response to Mr. Schulte's initial cellphone suppression motion (Mr. Schulte initially sought to suppress evidence from the *warrantless* seizure of the cellphone as he did not know the government ever applied for a search warrant).

Finally, while this reply is neither the time nor the place to challenge the March 16, 2017 search warrant, it is relevant to note some of the probable cause as referenced by the government in its argument that the cellphone "had independent evidentiary value." Supp. Opp. at 10. First of all, the Court should reject the government's adaptation to the Second Circuit's *Smith* test—if the Second Circuit considered this an element of its test then it would have included it. There is absolutely no caselaw that supports the government's claim that they can modify tests developed by the judiciary when it suits their argument. Regardless, the government's claim that Mr. Schulte's cellphone held independent evidentiary value is absurd and wholly without merit.

The government claims Mr. Schulte's cellphone contains "independent evidentiary value" and is evidence of his guilty because "after the WikiLeaks leaks of classified materials began to be released on March 7, 2017, the defendant used communications applications on his Google account, including Google Voice, and the telephone number associated with the Google account to communicate with former colleagues at the CIA." Supp. Opp. at 11. However, that Mr. Schulte would be interested in leaks from his former office is obvious—his interest in 5 years of work do not in any way contribute to probable cause—nor do "149 text messages" sent to former CIA colleagues who he text messaged regularly and stayed in close contact.[1] Indeed,

---

[1] If Mr. Schulte had not contacted any of his former colleagues and coworkers, then the government would have argued this probative of his guilt since he usually text-messaged and called former colleagues daily. It is literally a lose-lose situation in which the government will always lie and fabricate some "evidence" of guilt no matter what Mr. Schulte does.

8

Agent Donaldson deliberately deceives the magistrate judge as 149 text messages is below Mr. Schulte's daily average, and the overwhelming majority of the text messages literally have nothing to do with the leaks. Moreover, Mr. Schulte never solicited opinions about who the leaker was, but responded to requests from others. Mr. Schulte denied his involvement after a colleague directly asked him. Special Agent Donaldson's lies and deceitful affidavit in support of the unconstitutional search and seizure of Mr. Schulte's Google account will be addressed in that suppression motion. Regardless, any evidence regarding Mr. Schulte's Google account can be directly obtained from Google: his text messages, Google searches, and literally every other "evidence" cited by the government was directly sought in the Google warrant. The cellphone's IMEI number is completely irrelevant as Google logs all activity from the cellphone anyway. Accordingly, Mr. Schulte's cellphone contained absolutely no independent evidentiary value.

### V.     THE GOOD FAITH EXCEPTION DOES NOT APPLY

"[T]he exclusionary rule is a judicially-created mechanism of safeguarding against unreasonable searches and seizures—violations of the Fourth Amendment—primarily through its deterrent effect." *United States v. Hightower*, 950 F.3d 33, 36 (2d Cir. 2020) (per curiam). "For this reason, the exclusionary rule applies only if the police have violated the Constitution deliberately, recklessly, or with gross negligence, or if a constitutional violation is the product of recurring or systemic negligence." *Smith*, 967 F.3d at 211.

Suppression is warranted here because no reasonably well-trained officer could possibly believe that the 30-month delay between the "exigent" confiscation of the cellphone and the ultimate search was justifiable or Constitutional. While the Second Circuit applied the good-faith exception in *Smith*, finding that "[a]lthough an objectively reasonable officer in [the Agent]'s position should have realized that by waiting a month he was perilously near the constitutional

9

line, we are not convinced that an objectively reasonable officer would have known that the delay amounted to a violation of the Fourth Amendment," *Id.* at 212-13, a reasonably well-trained officer absolutely should have known that 30X that amount—***30 months of delay***—far exceeded the Constitutional threshold. Accordingly, the good-faith exception does not apply.

Alternatively, in the event the Court accepts the government's claims of executing the March 16, 2017 search warrant, the FBI and federal prosecutors should have known they had an obligation under Fed. R. Crim. P. 41 and Fed. R. Crim. P. 16 to produce the search warrant to Mr. Schulte; this deliberate violation of the federal rules foregoes the good-faith exception and demands suppression.

## VI.  CONCLUSION

This Court should find that the government's 30-month delay in obtaining a search warrant was unconstitutional, consistent with the Second Circuit's decision in *United States v. Smith*. Alternatively, the Court should find the government's 30-month delay in searching the cellphone was likewise unconstitutional, consistent with *Smith*. Alternatively, the Court should find that the government's failure to produce the March 16, 2017 search warrant in discovery was unconstitutional as it violated both Fed. R. Crim. P. 41(f)(1)(C) and Fed. R. Crim. P. 16. Finally, should the Court determine that the government *did* execute the March 16, 2017 search warrant, and subsequently relied upon it for the continued confiscation of the cellphone, then the Court should permit Mr. Schulte leave to file a motion to suppress the unconstitutional March 16, 2017 search warrant.

Dated: New York, New York

December 14, 2021

Respectfully submitted,

Joshua Adam Schulte

10