Joshua Adam Schulte, *pro se*

December 16, 2021

**BY HAND**

Judge Jesse M. Furman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    RE: *United States v. Joshua Adam Schulte*, S3 17 Cr. 548 (JMF)

Dear Judge Furman:

    I write in accordance with your Order for a pre-conference summary before the December 20, 2021 conference. As an initial matter, I ask the Court if it can allow audio call-ins as my family likes to attend the conferences, but are unable to do so due to COVID-19 and other issues.

I.    MDC

    A.    Conditions of Confinement

        1.    Torture imposed that directly impacts the criminal case

    The MDC is currently torturing me with 24/7 constant bright lights and sleep deprivation, 24/7 exposure to the extreme, freezing cold, 24/7 starvation, and 24/7 exposure to loud noises blasted through speakers outside my torture cage. This torture is unconscionable.

        2.    Psychological torment imposed that indirectly impacts the case

    The following arbitrary punishment is imposed upon me for no reason—my SAMs do not authorize this punishment nor is it related to the SAMs objective regarding national security: (1) arbitrary 98.21% reduction in law library time from 168 hours a week to 3 measly hours; (2) arbitrary removal of light switches in the torture cages; (3) arbitrary removal of the cheap, plastic chairs in the torture cages; (4) arbitrary removal of televisions; (5) arbitrary ban from the law library; (6) arbitrarily restricted commissary; (7) arbitrary installation of two 24/7 audio/visual/night vision cameras; (8) arbitrary 90% reduction in phone minutes from 300 minutes per month to 30; (9) arbitrarily restricted social visits from unmonitored, contact,

*United States v. Schulte*, S3 17 Cr. 548 (JMF); December 16, 2021 letter from *pro se* defendant

multi-person visits to monitored, no contact, single person visits; (10) arbitrary removal of basketball goal; (11) arbitrary shackles for prison movement; (12) arbitrary imposition of barbaric solitary confinement.

      3.    Petty torments imposed arbitrarily

The following petty torments are imposed upon me for no reason—my SAMs do not authorize these torments nor are they related to the SAMs objective regarding national security: (1) arbitrary replacement of normal sinks with special torment sinks that require you to push and hold down the "dial" to dispense water, making it impossible to wash your hands or do any two-hand requisite washing; (2) arbitrary replacement of normal porcelain toilets, including the toilet seat, with special torment stainless steel toilets with no toilet seats; (3) arbitrary replacement of normal showers, including dial for adjusting water temperature, with special torment showers with no temperature control and timed buttons for the water; (4) arbitrary blackout of the small windows so you cannot see outside; (5) arbitrary removal of lockers so you cannot store property or commissary.

      B.    Legal mail, Court Correspondence, and Filings

          1.    Incoming Court Correspondence and Legal Mail

The MDC delays all incoming legal and Court correspondence. This delay typically exceeds 30 days. Judge Crotty previously denied my request to order the MDC to deliver all legal and Court correspondence within 2 days on the single condition that the government email all filings to the MDC so that I receive the mail within 1-2 days. The government recently stopped this, and once again, I am seeing significant delays receiving mail; I ask the Court to order the government to resume this process of providing mail directly to MDC Legal for prompt delivery to me.

          2.    Outgoing Court Correspondence and Legal Mail

The Court only recently received several filings from October 27, 2021—delayed by over 30 days. I also have issues with MDC actually accepting outgoing legal mail. For example, yesterday, December 15, 2021, I tried to mail my Opposition of Defendant's Motion to Dismiss

*United States v. Schulte*, S3 17 Cr. 548 (JMF); December 16, 2021 letter from *pro se* defendant

in the civil docket 20-CV-2795.[1] I asked the Corrections Officers and Lieutenants from 8:00 A.M. to 8:00 P.M. to please take my outgoing legal mail. They refused to do so as did the Unit Team. Since I am in solitary confinement, I cannot otherwise file documents or do anything myself; however, the MDC Unit Team rarely, if ever, makes rounds to collect outgoing mail—or do anything. Thus, the only chance you have to send mail or ask the Unit Team for assistance is when you have a social call or visit.

Accordingly, considering the time it takes for MDC Unit Team to do their job and (1) collect legal mail and (2) send legal mail, it is impossible for me to meet any deadlines at all if I mailed documents to the Court.

    3.    CD/DVD proposed electronic filing through MDC Legal

Due to the foregoing problems receiving and sending mail, I ask the Court to (1) order the government to return to its process of emailing filings and Court Orders to the MDC for immediate delivery to me; (2) Order the government to provide me with DVDs for electronic filing; (3) order the MDC to collect DVDs when I make a request to the Corrections Officer, to be emailed directly to the government/standby counsel for immediate electronic filing; (4) order the MDC to otherwise record the date/time it collects mail from me, the date/time when it actually delivers it to the mail, and (continue) recording the date/time when I receive mail.

Without this process or a similar process, there is absolutely no way for me to file documents with the Court and meet Court deadlines.

    C.    Recent SCIF issues

    1.    Delayed arrival to the SCIF

Over the past three weeks, the MDC has blatantly disregarded this Court's Order, and has not produced me to the Marshals until ~11AM and I have not arrived at the SCIF until 11:30-12:00. This delay causes significant issues not just for me, but also for the Marshals, FBI, and standby counsel. I have been trying to resolve this issue outside of the Court, but now ask

---

[1] I note this for the record; in case the Civil Court does not receive my Opposition Motion in time, at least I have it on the record here that I made multiple attempts to mail the document.

the Court to weigh in—the MDC largely attribute the problem to a recent trial and other ongoing issues in the morning. However, this week they were able to reach a compromise and produced me by 8:00 and I was able to arrive at the SCIF and start by 9:00 A.M.

I simply ask the Court to standardize the time so everyone is on the same page. As the MDC claims to have "legitimate" issues with the Court's 8:00 AM standing order, I simply ask the Court to order the MDC to have me ready to produce to the Marshals at 8:00 A.M.—thus the Marshals do not have to show up until this time. The SCIF should then start between 8:30-9:00 A.M. depending on traffic and other issues—thus the Marshals, FBI, and standby counsel have a 30-minute window instead of the 4-5 hour window, and do not have to show up until this time. This seems to be a fair compromise.

2. Delayed arrival from the SCIF to MDC

The other major ongoing issue is the MDC refuses to honor the first-come-first-serve rule-of-thumb that is used on Court returns to the MDC. Instead, due to my "SAMs," the MDC designates that I must go last. Ordinarily, this may not seem to be a major issue, however, it ends up forcing the Marshals and I to wait 6-8 hours. Since we are continually thrust to the end of the line, the staggered approach of the other Court returns typically render us waiting an extreme amount of time. For example, Friday, December 3, 2021, we arrived at the MDC at approximately 4:00 P.M. There were no other cars. By the time the MDC finished count and opened at 5:00 P.M., there was one van in line—so they jumped us. 35 minutes later when that van was finished, there were two others. 50 minutes later there were two others. 50 minutes later there was another van; and so on, and so on—until it was finally our turn—at 9:30 P.M. Thus, we waited 5 and a half hours with no food, water, or ability to use the bathroom. This is the average wait—the worst was approximately 8 hours. It would literally be faster to travel to Virginia, review the discovery there, then return to the MDC; this is absurd. This is absurd for both me, who is chained and severely restricted during this time, and for the Marshals, who now dread taking me back to the MDC.

I simply ask the Court to either (1) order the MDC to honor the simple first-come-first-serve rule-of-thumb that they enforce for all other Court returns; and/or (2) prioritize our

*United States v. Schulte*, S3 17 Cr. 548 (JMF); December 16, 2021 letter from *pro se* defendant

arrival first as it takes us merely 5 minutes to process through the MDC since I am only one person.

II.   Government

    A.   Missing or Incomplete Discovery

        1.   Missing Google emails (Gmail)

As I informed the government weeks ago, *Production 4 - 2017.10.24\# 3 - 2017.03.14 Google SW Returns\JAS_019518. MBox Data\* is missing the Google emails file, joshschulte1@gmail.com.Gmail.Content.mbox. Instead, the government provided a dump from its own analysis tool under Email\ which only includes a very small subset of the emails—those "bookmarked" by the government. The output from the analysis tool within the Email\ directory clearly references the missing Google emails file. See, e.g. Bookmark_bk_ID105001(3668).html:

class="bkmkColRight bkmkValue">980638-20170314-4/**joshschulte1@gmail.com.Gmail.Content.mbox**»entry #2242333663.eml»mime part 2.eml

The Court should order the government to provide the missing gmail file, **joshschulte1@gmail.com.Gmail.Content.mbox**

        2.   Missing Verizon FiOS Subpoenas and returns

As I informed the government weeks ago, the government failed to provide the subpoena and subpoena returns from Verizon FiOS in discovery. While the government does provide *Production 14 - 2018.08.08\Subpoena Returns\VerizonVerizonFIOS\*, Verizon returns no data, and requests the FBI provide them additional information. However, the updated subpoena and subpoena returns **are never provided**. Additionally, the production before 14 provides a Verizon 2703(d) with no context, no subpoena, and no full returns (*Production 13 - 2018.07.17\1. Production\09 Verizon 2703(d)*).

The Court should order the government to provide all missing Verizon FiOS subpoena and subpoena returns.

*United States v. Schulte*, S3 17 Cr. 548 (JMF); December 16, 2021 letter from *pro se* defendant

    3.    Missing forensic discovery productions 6, 9, and 12

As I informed the government weeks ago, the MDC lost my large external discovery drive that contained productions 6, 9, and 12. The government repeatedly tells the Court that it would replace all of my large external hard drives that require external power with smaller form factor drives, yet it does not do so. Prior to the MDC losing this discovery drive, it lost the power cable to the drive, and despite multiple requests to obtain a new cable, the government simply ignored all my requests. Accordingly, I have been unable to review forensic discovery productions 6, 9, and 12 for approximately two years—since the first trial failed in a hung jury.

    4.    Request for discovery indexes

I requested the government provide updated final discovery indexes, complete with the discovery production number, date, and a list of materials included therein; both for unclassified and classified discovery. I believe this is necessary to ensure everyone is on the same page, especially considering the government's failure to produce several warrants in discovery. The government never responded, and I ask the Court order the government to provide these indexes.

    5.    Unable to access forensic discovery in the SCIF

I am unable to access QNY09_SC01_RAID5/partition_2 from one of the child pornography discovery drives recently provided to me in the SCIF. It appears to be encrypted or otherwise unreadable and inaccessible from the forensics tools provided. The government should produce this discovery in decrypted, readable format. Additionally, the government does not allege this drive contains either child pornography or classified materials—the Court should order the government to explain why it is included as part of the child pornography materials.

I am also unable to extract SC1_1/root/volume for forensic review, and ask the Court to order the government to extract and provide a copy of this file.

    B.    Brady

I originally wrote the Court about the government's continual refusal to turn over forensic reports and analysis by the CIA's Advanced Forensics Division (AFD) on September 14, 2021. The government responded in its November 11, 2021 letter claiming no such reports

exist. I then wrote to the Court on November 18, 2021 referencing the clear and convincing evidence that these reports *DO* exist. The government continues to hide critical forensic data along with exculpatory analysis from the CIA.

    1.    AFD references from Lync Messages

"Couple things: 1. AFD previously assessed it was not possible that the info Wiki had to have come from a backup. As of Friday, that was walked back. The error they thought was in the backup script was not actually there. As such, there was a backup of the Atlassian products on the FIle Share that every DevLAN user had access to. Bottom line: subject pool is every DevLAN user now. This may be significant in terms of PC for future warrants."

The references to AFD assessments clearly indicate that there is some reports and/or forensic analysis indicating that "there was a backup of the Atlassian products on the File Share that every DevLAN user had access to." This was a major contention at trial as the government experts testified the opposite—that no one could have accessed the backups but me. Since the defense was prohibited from conducting a forensic examination, we had no ability to challenge this false assessment. However, here is seems clear that AFD reports indicate the exact opposite of what the government's experts testified to at trial.

    2.    AFD references from FBI 302s

There are multiple references in FBI 302s indicating that the CIA's AFD is the primary party conducting the WikiLeaks forensics investigation. Where a forensics investigation occurs, there is a paper trial, be it electronic or actual paper. The government cannot honestly claim there are no AFD reports when they were the primary entity charged with forensic examination and analysis of the WikiLeaks release.

    3.    Personal knowledge from the CIA

Finally, I have personal knowledge of AFD from working at the CIA; I have read AFD forensic reports and analysis, and I have direct knowledge that the AFD conducts extensive investigations and delivers extensive reports of its findings to CIA management for each and every leak or other project that they are assigned. These reports exist. The CIA and/or prosecutors are hiding this exculpatory evidence from the defense.

C. Proposed schedule

The government previously provided the Court with a proposed schedule, which the Court adopted, saying that I did not file my own proposal in time. My understanding from the Court's Order was to confer with the government and offer a joint-proposal; after discussing this with the government over the phone, they agreed, and proposed to start with their proposal as a baseline, and then make adjustments from there. I agreed. However, the government did not mail me the proposal until the deadline expired, at which point it filed its own proposal claiming it never received anything from me. This is absurd. Had I known the government would behave in such a way, I would have simply filed my own proposal and ignored the government. I ask the Court to consider my proposal now—which is a modest adjustment to the government's proposal.

The government did not propose a CIPA Section 4 deadline, CIPA Section 10 deadline, or pretrial motions deadline. As we did at the first trial, I ask that the government provide its Section 10 notice before my Section 5.

| | |
|---|---|
| Notices pursuant to CIPA Section 4 by the defendant: | January 28, 2022 (by leave of Court) |
| Notices pursuant to CIPA Section 10 by the government: | January 28, 2022 |
| Pretrial Motions Deadline: | January 28, 2022 (by leave of Court) |
| Notice pursuant to CIPA Section 5 by the defendant: | February 18, 2022 |
| Motion pursuant to CIPA 6(a) by the government: | March 18, 2022 |

The rest is the same as the existing schedule.

D. Calls and contact with the government

I have informed both the government and standby counsel that I wish to deal directly with the government on all matters, and I do not wish standby counsel to speak for me or act on my behalf with the government. However, the government still routinely emails standby counsel—which further illustrates my need for internet access—that I never see and cannot possibly respond.

Moreover, the government insists that all phone calls and conversations with me must be recorded and monitored by the FBI so they can bait me into saying something "classified" or

*United States v. Schulte*, S3 17 Cr. 548 (JMF); December 16, 2021 letter from *pro se* defendant

otherwise incriminating to supersede me with more bogus charges. This is absolutely reprehensible. I have a Fifth Amendment right to silence and a Fifth and Sixth Amendment right to both a complete defense and to represent myself. Thus, I refuse to adhere to the government's inconceivable trap—it certainly does not behave this way for defense attorneys, so why should I be coerced in this manner?

We therefore reach an impasse. The government wants to send simple emails and facilitate communication through standby counsel; however, I am pro se and want to deal directly with the government. Yet, the government refuses to permit me internet access and refuses to speak with me without conducting a bad-faith, unacceptable trap. So, how do I speak with the government?

    E.    Electronic Docket and Transcripts

The government provided me an electronic docket up to Dkt. 561. I ask the Court to order the government to provide me the additional docket entries, in similar electronic format, each month. The first can be delivered in January, from Dkt. 562 up to the current entry; then the first week of each following month.

I also ask the Court to order the government to provide me a copy of the transcripts when the government receives them.

III.    Motions

    A.    Fully Briefed

I will be prepared to argue the fully briefed motions if requested by the Court: (1) Motion for Bail, (2) Motion to Dismiss Counts Three and Four, (3) Letter Motion to Dismiss Count Three, (4) Motion for Internet Access, and (5) Motion to Suppress Cellphone. I also ask the Court, if at all possible, if it could issue rulings and Orders separately from the conference (i.e. in addition to ruling at the conference, provide an official Order).

I also ask, if at all possible, to discuss my motion regarding the government's mishandling of classified information by falsely claiming that obvious unclassified material is somehow classified. By ceding unilateral authority to the government with no oversight, it

9

*United States v. Schulte*, S3 17 Cr. 548 (JMF); December 16, 2021 letter from *pro se* defendant

makes it utterly impossible for me to identify their arbitrary unclassified material as classified; it also gives them the authority to classify "the" or otherwise claim every document I file to be classified, and in violation of federal law.

    B.    Rollover of motions from first trial

I also continue to request the Court to officially rollover all motions from the first trial—to either permit me to refile them or accept and endorse Judge Crotty's prior Rulings.

    C.    Three additional motions and pretrial motions deadline

I asked the Court for permission to file the following additional motions on December 3, 2021.

    1.    CIPA 4 Motion for Access to allegedly stolen backups

The government alleges that I stole the Confluence and Stash backups from the CIA, and distributed them to Wikileaks. I need to file a CIPA 4 motion with the Court for access to the allegedly stolen backups as well as all other Stash and Confluence backups maintained by the CIA so my expert can conduct a timing analysis.

This motion has never before been requested as the previous CIPA 4 motion for access to the alleged forensic crime scene—the FS01, ESXi, and my CIA workstation—would have also included the backups.

This motion is critical to my defense. The government cannot have its cake and eat it too—it cannot claim that I gave a Stash and Confluence backup to Wikileaks, but refuse to provide the backups so my expert can refute this claim and testify before a jury that the **Wikileaks materials are not even derived from the backup**. The defense is under no obligation to accept the government's allegations to be true—either the allegation that I committed any crime or the allegation that the Wikileaks material derived from this specific backup. I need this material to present a complete defense.

Furthermore, I need access not only to the allegedly stolen backups, but to all Stash and Confluence backups so my expert can testify to the backup that the material was actually derived—**which will post-date my departure from the CIA, excluding me as a possible suspect**.

*United States v. Schulte*, S3 17 Cr. 548 (JMF); December 16, 2021 letter from *pro se* defendant

The government's expert testified at my previous trial that he conducted a timing analysis by examining **all the Stash and Confluence backups**, and ultimately arrived at the conclusion that the allegedly stolen backups match the data released by Wikileaks. I must have that same opportunity—it isn't enough to merely have access to the allegedly stolen backups; I must be given the same opportunity to review all the CIA Stash and Confluence backup files, conduct a similar timing analysis, and present my findings at trial to rebut the government's theory.

> ***This motion is critical to my defense; without this material I cannot have a fair trial.***

    2.    Motion to preclude government testimony

Second, I ask the Court permission to file a motion to preclude the government from introducing any evidence or testimony derived from the alleged forensic crime scene that it refused to provide me. Once again, the government cannot have its cake and eat it too—it cannot simultaneously claim that I hacked three servers (CFAA charges) and ultimately stole classified information from them and transmitted that data to wikileaks (Espionage charges) while refusing to provide those servers and the forensic crime scene to me and my expert to refute. However, Judge Crotty previously denied my CIPA 4 motion for access to this material and this Court refused to rehear the issue.[2] Now that the issue will not be re-litigated, I simply move for all derived material to be excluded from the upcoming trial. It is absurd to believe the government can deny me access to this critical discovery, yet rely upon it at trial. Ultimately, as occurred at the first trial, my expert will be unable to rebut any government assertions and conclusions derived from the forensic crime scene that he cannot access.

---

[2] I cannot receive a fair trial without the forensic crime scene, and have filed for writ of mandamus with the Second Circuit to order the government to provide this material. See *In Re: Joshua Adam Schulte* 21-2558; I believe the discovery meets the Second Circuit's high bar for a discovery mandamus petition, but if not, I believe the Second Circuit will ultimately vacate any convictions at the upcoming trial and order the government to produce the material in discovery upon remand.

    3.    Motion to suppress attorney-client privileged and/or non-responsive materials from introduction at trial

I also briefed this issue in my December 3, 2021 letter; Malware of the Mind and other attorney-client privileged information confiscated from my attorney-client privileged notebooks should be excluded from trial. Contrary to the government's assertions, this issue was never fully briefed as my former counsel hit a conflict-of-interest and ultimately never briefed the privilege issue before trial. Now that I am *pro se*, there is no longer a conflict-of-interest, and I ask the Court for the opportunity to brief this issue. Additionally, my former counsel never filed a motion to exclude non-responsive materials from the MCC search.

Respectfully submitted,

Joshua Adam Schulte