

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 7, 2022

**BY ECF**

Honorable Jesse M. Furman
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

    Re:    *United States v. Joshua Adam Schulte*,
               S3 17 Cr. 548 (JMF)

Dear Judge Furman:

       The Government respectfully submits this letter pursuant to the Court's orders dated December 21, 2021 (D.E. 650) and January 4, 2022 (D.E. 667). The Metropolitan Detention Center ("MDC") Legal Department has asked the Government to request additional time to respond to matters relating to the MDC due to unanticipated staff unavailability this past week, particularly the unanticipated illness of the staff attorney with whom the Government has principally been working with on matters relating to the defendant. As the Court is also aware, the recent COVID-19 surge has impacted operations at the MDC. We expect to be able to provide the Court with an update on matters relating to the MDC in approximately a week, depending on when the unanticipated absence ends. Accordingly, we respectfully request an extension until January 19, 2022 to report on matters relating to the MDC, and will report sooner if able.

1. **Missing discovery productions 6, 9, and 12.**

       With the Court's permission, the Government will report on efforts to locate the hard drive containing previously produced discovery productions 6, 9, and 12 on or before January 19, 2022. If MDC is unable promptly to locate the hard drive containing these productions, the Government will provide the defendant a replacement copy.

2. **Whether the Government has completed its discovery review and whether it has identified any other materials subject to Rule 16 that have not been produced, see ECF No. 625.**

       The Government has completed its discovery review. That review has included a review of prior discovery productions; legal process issued in connection with the underlying investigation, including grand jury subpoenas, applications for pen registers/trap-and-trace

devices, and search warrants; and records received in response to that legal process in the possession of the Government or the FBI. In the course of that review, the Government identified certain materials that we could not confirm had previously been produced, described below. The Government does not intend to use these materials, which were obtained from legal process served on third parties, in its case-in-chief at trial, *see* Fed. R. Crim. P. 16(a)(1)(E)(ii), and the materials do not appear to be material to the preparation of the defense, *id.* 16(a)(1)(E)(i). Nonetheless, we have produced them to the defendant in an abundance of caution.

1. Two applications for search warrants, in addition to the March 17, 2017 warrant to search the defendant's cellphone that has been discussed by the parties and the Court, which were referenced in the Government's letter of December 3, 2021 (D.E. 625). The two additional search warrant applications were from March and May 2017 for prospective GPS location information on cellphones believed to be associated with the defendant. The FBI does not have any data responsive to these two warrants in its possession.

2. Grand jury subpoena responses from mailing and shipping companies, communications providers, and a cryptocurrency exchange platform.

3. Results of pen registers/trap-and-trace devices on various IP addresses, telephone numbers, email addresses, and a social media account between approximately March 2017 and January 2018, which have been produced, and the results of an order pursuant to Title 18, United States Code, Section 2703(d) (historical non-content information) with respect to an IP address, which are being prepared for production and will be produced shortly.

3. **The defendant's request for an extracted copy of the SC1_1 root volume,** *see* **ECF No. 643.**

The Government has confirmed that the digital evidence item referred to as "SC1_1" is a decrypted version of the encrypted RAID5 partition on the defendant's home computer, SC01.

The FBI has confirmed that SC1_1/root/volume can be extracted. The Government and FBI are exploring the options of providing the defendant with an extracted copy or providing him with software that will permit him to perform the extraction. The Government notes that all data obtained from SC01 that was used at trial or that formed the basis of expert testimony at the trial has been separately produced, and the defendant does not contest his access to those materials. The Government also has previously produced directory listings of certain virtual machines, directories, and files from the defendant's home computer, including a file listing of the RAID5 partition. *See* Bates numbers JAS_020238-JAS_020243.

4. **MDC mail delays, including specifically (1) whether there is a more efficient method to deliver mail to MDC inmates who are proceeding *pro se* and (2) how many such people are currently detained at MDC.**

With the Court's permission, the Government will report on potential options to increase the speed of delivery of mail regarding this case to the defendant or before January 19, 2022. As noted at the last conference, the Government has continued to promptly mail all filings and Court

orders to the defendant in envelopes marked from the U.S. Attorney's Office and identified as legal mail, pursuant to guidance from the MDC, in an effort to expedite delivery.

We have been informed by MDC that the facility does not track the *pro se* status of inmates. The Government understands that the defendant is the only inmate currently subject to Special Administrative Measures ("SAMs") who is representing himself *pro se*. If helpful to the Court, the Government can attempt to canvass the U.S. Attorney's Offices for the Southern and Eastern Districts of New York to identify additional *pro se* defendants at the MDC.

5. **A revised proposal for classification reviews, which also addresses Defendant's request for disclosure of the classification block on documents that undergo classification review.**

The Government's proposal for classification reviews is included in the proposed revisions to the CIPA protective order, which is enclosed with this letter (at paragraph 23). Consistent with the Court's guidance at the December 20, 2021 conference, the proposed review procedure adopts a graduated approach based on the length of the classified submission. As noted at the conference, the complexity of a classification review depends not only on the length of the submission but also on the amount and nature of the classified information. For that reason, the Government may on occasion be required to seek additional time to complete a review, which it will do promptly as the need may arise. The proposed procedure also seeks to account for attachments to filings, some of which may not require classification review (including classified discovery the defendant has not received authorization to disclose under CIPA) but others of which may and, for that reason, are counted towards the page limits.

The Government does not object to providing the defendant with the classification block on future filings that are deemed classified, subject to the redaction of the unique employee identification number contained therein.

6. **Arrangements can be made to provide Defendant access to the law library on days when he works in the SCIF or if there are other means to provide him at least ten hours of law library time per week.**

With the Court's permission, the Government will report on this matter on or before January 19, 2022. Based on discussions with the MDC shortly after the December 20, 2021 conference, the Government understands that the MDC intended to implement this request and to track the defendant's usage of available law library time, and the Government will report on the status of that implementation.

7. **Proposed edits to the protective orders pertaining to classified information in this case, as discussed in the Court's November 12, 2021 Order,** *see* **ECF No. 585.**

Enclosed with this letter is a redline version of the August 16, 2018 CIPA protective order (D.E. 61) reflecting (a) the Government's proposed edits and (b) proposed edits by standby counsel to which the Government agrees, as well as a clean version. The Government's proposed update principally updates certain provisions to reflect the fact that the defendant has

waived his right to counsel and that former defense counsel are now standby counsel; incorporates the provisions of the supplemental CIPA protective order entered on December 12, 2018 (D.E. 75) which sets forth SCIF security protocols; and incorporates provisions for classification review of classified filings and the defendant's participation in telephone calls with the Government from the SCIF.

Standby counsel and the defendant have objected to some of the Government's proposed edits and have proposed other edits to which the Government objects, as follows:

a. In the final sentence of the last paragraph on page 1, the defendant objects to the clause "and is necessary to protect the national security and to conform the procedures governing the storage, handling, and control of classified information in this matter to the defendant's pro se status and the appointment of standby counsel." The defendant argues the clause is not necessary. The Government submits it is accurate and reflects the purpose of the revised order.

b. In paragraph 2(b)(iv), standby counsel proposes to delete "or reasonably should know" from the definition of "Classified information." ("Any information, regardless of its origin, that the defense knows or reasonably should know contains classified information . . . ."). The Government objects to deleting this phrase, which has been included in the CIPA protective order since August 2018 and which was previously entered on consent. *See* D.E. 59, 61. It is also consistent with standby counsel's independent legal obligation to exercise reasonable diligence in identifying classified information to which they have been given access. Standby counsel are not responsible for conducting classification reviews, but are responsible for not disclosing classified information.

c. In the final sentence of paragraph 9, standby counsel proposes to delete "Government counsel" and insert "the CISO." ("If there is any question as to whether information is classified, the defense and the Defendant must handle that information as though it is classified unless Government counsel confirms that it is not classified."). Standby counsel argues that this is the CISO's responsibility.

This sentence has been included in the CIPA protective order since August 2018 on consent. In addition, outside the context of classified filings (which are governed by paragraphs 20 and 21), it is appropriate for Government counsel to address issues of potential classification with the relevant agency and to convey classification determinations to standby counsel and the Defendant. We have consulted with the CISO, who concurs.

d. In paragraph 12, the defendant proposes to include his expert witness. The Government believes a defense expert witness is addressed by paragraph 17.

e. In paragraph 14, standby counsel proposes to delete the sentence, "Moreover, because the allegations in this case involve breaches of agreements the Defendant entered into regarding the handling of classified information, the Defendant must sign the

    Memorandum of Understanding." This sentence was included in the August 2018 protective order on consent, and the Government believes that the defendant's adherence to the Memorandum of Understanding is appropriately included in the CIPA protective order for the same reasons it was included originally, namely, the defendant's ongoing contractual obligations.

f. In the first sentence of paragraph 20(a), standby counsel proposes inserting "by the defendant or" in front of "standby counsel." ("The document shall be filed by standby counsel under seal with the CISO or an appropriate cleared designee . . . ."). Standby counsel also objects to the Government's proposed sentences, "Standby counsel shall review all proposed filings of the defendant for possible classified information before publicly filing any document. The Defendant's *pro se* status does not affect or relieve in any way standby counsel's independent obligation to ensure that documents or pleadings containing classified information are filed in accordance with the provisions of this Order." Standby counsel argues that it is not within their area of expertise and that the Government instead should be responsible for reviewing the defendant's filings for potential classified information.

    The Government submits that, given the charges in this case and the significant risk of the defendant publicly filing documents that contain classified information, it is appropriate and even necessary for standby counsel to play a role in assuring that classified information is appropriately handled and protected. It is also standby counsel's independent legal obligation, pursuant to the undertakings standby counsel signed in receipt of their security clearances and irrespective of the protective order, to avoid intentionally publicly disclosing classified information by filing documents on ECF. All of the defendant's filings should be made by standby counsel, who should endeavor, consistent with those legal obligations, to serve as a safeguard against the public filing of classified information.

g. In the last sentence of paragraph 20(b), standby counsel proposes inserting "and should do so by accepting delivery outside the designated SCIF. This would allow the government to review the document and assess if it contains any classified information before the document reaches the CISO."

    The Government submits that standby counsel's proposal is confusing, unnecessary, and would inappropriately remove standby counsel's responsibility for properly handling classified information in the defendant's proposed filings. The remainder of paragraph 20(b) sets forth the procedures for filing classified documents: if the defendant or standby counsel know or reasonably should know that a filing contains classified information, it is filed with the CISO, who provides it to the relevant agency for a classification determination. If the document is determined to contain classified information, it is then filed under seal with the CISO, who provides copies to the Court and the Government. There is no reason for the Government to also collect a copy of the filing from the courthouse SCIF.

h.  In renumbered paragraphs 25(b) and (c), standby counsel proposes deleting "FBI and" ("shall be maintained by the FBI and CISO in the Secure Areas" and "in the Secure Areas established by the FBI and CISO . . . ."). As the order describes, the Secure Areas were established by the FBI and the CISO, with the FBI providing and maintaining computer equipment in the Secure Areas for the defendant's use to review classified discovery, *see id.* ¶ 19; and the FBI and USMS assist in monitoring the defendant's use of the SCIF. To the extent any recordings have been declassified, they are no longer subject to the order.

 The defendant objects to renumbered paragraph 25(b) as "redundant, no need for special provisions." The Government does not understand the objection and believes the paragraph is appropriate, and was included in the August 2018 order on consent.

i.  In renumbered paragraph 25(g), standby counsel objects to the final sentence as duplicative. ("As set forth above, the defense and the Defendant shall not disclose classified information, even to an individual with the appropriate security clearance, without following the procedure referenced in paragraph 17."). This sentence was included in the August 2018 protective order on consent and, in light of the nature of the charges, the Government believes that emphasizing the protections for classified information is appropriate.

j.  In renumbered paragraph 25(h), standby counsel objects to the provision as duplicative. ("The defense and the Defendant shall not discuss classified information over any standard commercial telephone instrument or office intercommunication systems, including but not limited to the Internet and email, or in the presence of any person who has not been granted access to classified information by the Court."). The Government believes that, given the nature of the charges and the fact that the Government and defendant have been ordered to hold teleconference calls while the defendant is in the SCIF, the provision specifically addressing telecommunications is appropriate.

k.  In renumbered paragraph 25(j), standby counsel and the defendant object to the provision as inapplicable. ("The defense shall not disclose classified information to the Defendant—other than materials marked 'Provided to JOSHUA ADAM SCHULTE in *United States v. Joshua Adam Schulte*, S3 17 Cr. 548 (JMF)'—absent written permission from the Government."). The defendant also objects to the entirety of paragraph 6.

 The defendant's *pro se* status does not automatically entitle him to access to classified information, and his "Fifth and Sixth Amendment rights are adequately protected by standby counsel's review of [such] classified discovery." *United States v. Moussaoui*, 2002 WL 1987964, at *1 (E.D. Va. Aug. 23, 2002). These provisions may have continued applicability, and the Government can provide additional information in a classified setting.

l.  In renumbered paragraph 26, governing contact with U.S. intelligence agency employees, standby counsel objects to the provision in its entirety, arguing that several employees said that standby counsel could contact them directly. The defendant also objects,

6

arguing that "I contacted these people all the time" and that the provision should apply only to undercover employees.

Any consent individuals may have had with respect to the prior trial do not necessarily apply to further conversations. It remains the case that the "employment and/or affiliation of certain individuals with a U.S. Intelligence Agency and/or their responsibilities at the U.S. Intelligence Agency may constitute classified or highly sensitive facts," ¶ 26; and this paragraph is appropriate to continue to safeguard those sensitivities. *See, e.g.*, renumbered ¶ 26(c) (if such an individual agrees to be contacted or be interviewed, the interview is arranged through the CISO); *see also* Jan. 29, 2020 Order at 9-15 (redacted version filed at D.E. 293).

m.  With respect to renumbered paragraphs 29 through 32, standby counsel objects to these paragraphs on the grounds that "A CIPA protective order has nothing to do with co-ordinating schedules or other matters." The defendant also objects to the provision for the use of restraints. These proposed provisions incorporate the substance of the December 2018 supplemental protective order, modified to reflect the defendant's *pro se* status, and the Court has specifically directed that the proposed CIPA order include any necessary provisions and supersede all prior orders. The security procedures also reflect the requirements of the USMS. *See also* Sept. 15, 2021 Tr. at 18.

n.  With respect to renumbered paragraph 33, the Government has provided the proposed language to the defendant and standby counsel and has received no response. The proposed paragraph addresses (i) concerns that standby counsel has raised at various points regarding whether there was authority under the Court's orders for standby counsel to assist the defendant with dialing in to teleconference calls with the defendant and the Government's corollary concern regarding whether standby counsel was therefore permitting the defendant unmediated access to the SCIF telephone; (ii) standby counsel's objection to notifying the defendant of proposed teleconference dates and times; and (iii) standby counsel's request for 24 hours' notice of any teleconference calls. The proposed paragraph clarifies that standby counsel will ensure that the defendant's access to the SCIF telephone is consistent with the SAMs and protective orders, may notify the defendant of teleconference schedules, and will place the defendant's call into teleconference calls with the Government. The provision also memorializes that the Government will provide a schedule for calls promptly after receiving the defendant's SCIF schedule, which is currently planned on an approximately monthly basis.

8. **Issues raised in D.E. 661.**

The defendant filed two letters on December 29, 2021 (D.E. 661) raising various matters.

1.  Standby counsel responsibilities in the defendant's appeals.  The Government takes no position on this matter.  The Government advises the Court, however, that the defendant filed certificates of service for his most recent Court of Appeals filings representing that he served copies of the filings on the Government "via hand through standby counsel." The defendant in fact placed the Government's service copies in the bin outside the courthouse SCIF, which is

inconsistent with his certificate of service and is not effective service even under the mail delivery order (D.E. 518), which does not apply to the defendant's appellate filings in any event.

2. Discovery issues. The Government has previously responded to the defendant's allegations that materials from Verizon FiOS, Google,[1] and the CIA have been withheld. The relevant records have been produced or are not in the Government's or the FBI's possession, and the requested CIA report does not exist. Additional information can be provided to the Court in a classified setting.

As described above, the digital evidence item SC1_1 is a decrypted version of the encrypted RAID5 partition from the defendant's home computer.

3. Stamps. After receiving the defendant's December 29, 2021 letters, the Government alerted MDC to the defendant's complaint. With the Court's permission, the Government will report on this issue on or before January 19, 2022.

## 9. Additional matters

The Government also wishes to inform the Court of an additional matter. With respect to the court-ordered meet-and-confer telephone calls between attorneys for the Government and the defendant (*see* D.E. 518; Dec. 20, 2021 Tr. at 38-40), the Government advises the Court that the defendant and standby counsel terminated the most recent telephone call, held on January 4, 2022, because the call was recorded, as the Government has repeatedly disclosed and as the Court has approved. *Id.* The Government has offered to continue discussions with standby counsel without the defendant present, which would not be recorded, but standby counsel has not responded. The Government does not seek any Court intervention on this topic, except with respect to the proposed clarifications regarding calls with the defendant in the CIPA protective order; but (1) intends to continue to schedule and be available for calls with the defendant twice per month as ordered by the Court, whether or not the defendant chooses to join or participate; and (2) respectfully requests that the Court consider the defendant's failure to meet and confer in

---

[1] If the defendant cannot locate the produced records, the Government will identify or reproduce them.

responding to matters raised by the defendant that could have been addressed through meeting and conferring before seeking relief from the Court.

                Respectfully submitted,

                DAMIAN WILLIAMS
                United States Attorney

by:     /s/
            David W. Denton, Jr. / Michael D. Lockard
            Assistant United States Attorneys
            (212) 637-2744 / -2193

cc: Standby counsel (by ECF)
    Joshua Adam Schulte (by mail)