

Colson Law PLLC
80 Broad Street, 19th Floor
New York, NY 10004
(212) 257-6455
www.colsonlaw.com

January 31, 2022

By ECF

Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, N.Y. 10007

    Re:    *United States v. Joshua Schulte,* 17 Cr. 548 (JMF)

Dear Judge Furman:

    As directed by this Court's Order dated January 25, 2022 (Dkt. No. 680), standby counsel write to note and explain our objections to the government's proposed changes to the CIPA protective order. Mr. Schulte intends to state his own objections directly to the government and the Court during the upcoming February 14, 2022 status conference.

    The Court has previously received a redline version of the August 16, 2021 protective order, which includes the parties' suggested modifications. *See* attachment to the government's January 7, 2022 submission (Dkt. No. 670). To the extent standby counsel object to the government's proposed changes, we note our objections below.

    *Standby Counsel's objections*

    *Paragraph 9*: The government suggests that Mr. Schulte and standby counsel should be required to handle potentially classified information as if classified whenever such information enters the public domain. We understand our obligation to treat potentially classified information as classified until told otherwise by the equity holder, but respectfully request prompt direction and guidance. Such guidance is especially necessary as the equity holder "declassified" thousands of pages of information when the government decided to prosecute Mr. Schulte.[1]

---

[1] In the past, we have raised questions as to classification that remain unresolved. For example, the equity holder claims that the first name of a CIA employee who had a protective order against Mr. Schulte is classified. This issue was hotly debated before Judge Crotty. Despite the CISO and the government's acknowledgement that: (1) first names are never classified, (2) this particular individual's name was publicly filed in several state and city proceedings in Virginia, and (3) the CIA has never once moved to seal those documents (they would not succeed given the passage of time), the equity holder has yet to respond to the Court's inquiry why this name is deemed "classified."

*Paragraph 20(a)*: In this paragraph, the government suggests that standby counsel should be required to submit Mr. Schulte's classified pleadings or other classified documents to the CISO for filing. We object. Our involvement would add an unnecessary layer to the filing process. Mr. Schulte has agreed to give classified filings directly to the CISO, and the CISO has agreed to accept them from Mr. Schulte in the SCIF.

*Paragraph 20(b)*: In this paragraph, the government makes standby counsel responsible for reviewing Mr. Schulte's filings and flagging them for classified information. We object. We cannot know which information the CIA will claim is classified; as the CIA has repeatedly noted, it has both the responsibility and expertise for making such determinations. Moreover, given the passage of time since Mr. Schulte's first trial, and the fact that he and standby counsel do not always have the same understanding as to the scope of classification, it is the government lawyers and CIA partners who are best positioned to make an initial classification determination. To minimize the risk of a spill and facilitate timely review of filings, the assigned prosecutors or their representatives should be charged with accepting delivery of Mr. Schulte's proposed filings, reviewing them for classification, and using a security cleared electronic mail server to deliver the filings to the CISO and the equity holder. Alternatively, the Court should order the government to provide standby counsel similar access to cleared electronic mail so that the classified filings can be delivered promptly to cleared counsel, the CISO, and the Court.[2]

*Paragraph 25(j)*: In this paragraph, the government proposes that standby counsel should be prohibited, absent permission from the government, from disclosing classified information to Mr. Schulte that is not marked "Provided to JOSHUA ADAM SCHULTE in *United States v. Joshua Adam Schulte,* S3 17 Cr. 548 (JMF)." We are not aware of the existence of any such information; accordingly, we object.

*Paragraph 26*: In this paragraph, the government suggests that Mr. Schulte and standby counsel should be required to use the CISO to facilitate contact with intelligence agency employees, both current and former. We object. The government cites no law prohibiting the defense from contacting such individuals on its own, and Mr. Schulte and standby counsel are aware of their responsibility to hold meetings with intelligence agency employees in the SCIF.

---

[2] In the past, we contacted cleared government counsel and highlighted the portions of a filing that caused us concern. Then they would determine whether to send the filing to the equity holder for further review or file it on the docket. The current process requires us to deliver filings directly to the CISO, who scans the documents and sends them to the equity holder. The equity holder has yet to meet the 14-day deadline for classification review required by Judge Crotty.

*Paragraph 29*: In this paragraph, which was not in the original order, the government proposes that standby counsel or our cleared paralegals be required to "accompany the Defendant at all times when he is in the Secure Area." We object. Standby counsel's role is to assist Mr. Schulte in representing himself. We are not security guards.

The "secure area" consists of one room with a single window that is bolted and covered by a shade. Lifting or moving the shade is prohibited. The room is surveilled with a camera that pans the entire area. The camera is monitored through closed circuit television by two law enforcement agencies—the United States Marshals Service and the Federal Bureau of Investigation—whenever Mr. Schulte is present. Before Mr. Schulte is escorted by the Marshals into the SCIF, an FBI agent must be seated in the room next door with the camera monitor on. Mr. Schulte has never been allowed into the SCIF without this surveillance. Moreover, the moment he enters the room, his foot is chained to the floor by the USMS.

Neither standby counsel nor the paralegals who work on the case have authority to search Mr. Schulte for classified information. The paralegals have no knowledge of the facts, and none has ever been required by the CISO or the government. Nor do they have any ability to provide Mr. Schulte with legal or factual information or advice or the power to monitor his actions.

The government provides no logical reason for its request. Notably, before the courthouse SCIF became available to Mr. Schulte, he was assigned to a SCIF at the FBI office at 26 Federal Plaza. Mr. Schulte was escorted there by the FBI and left alone to work. No one from the defense team was required to sit with him. Nor was there even a camera. An FBI agent sat outside, then escorted him back to the USMS.

We understand our obligations to confer with Mr. Schulte and provide to him all the services outlined by the Court. Requiring our physical presence in the secure area serves no useful function, consumes numerous hours, and exposes us to the risks associated with COVID-19. Notably, Mr. Schulte has elected not to get the COVID vaccine. We are having significant difficulty securing coverage for the existing SCIF shifts and anticipate continued challenges as more shifts are added closer to trial. Accordingly, should the Court require us to sit with Mr. Schulte in the SCIF, we respectfully request that the Court assign a third standby counsel or another cleared paralegal to assist in this task.[3]

*Paragraph 30*: In this paragraph, the government proposes that standby counsel be screened for electronic devices prior to entering the SCIF. We object. Standby counsel should be held to the same standards as the government. We are all lawyers in good standing before this Court.

*Paragraph 32:* In this paragraph, which was not in the original order, the government proposes that Mr. Schulte be held in "full restraints" and "secured to a bolt in the floor" whenever he is in the SCIF. It further proposes that standby counsel sign a "waiver of liability" as we "will be alone and in

---

[3] Should the Court agree, we ask you to consider appointing attorney Shayana Kadidal from the Center for Constitutional Rights. He assisted the defense in advance of Mr. Schulte's first trial, has met Mr. Schulte on numerous occasions, and has the requisite security clearance. We have conferred with him, and he is willing to accept the appointment.

close proximity" to Mr. Schulte during our SCIF shifts. We object. The restraints are heavy and uncomfortable for Mr. Schulte, and they serve no useful purpose. If the Court permits Mr. Schulte to work in the SCIF without restraints, standby counsel has no objection to signing waivers of liability as we have no concerns about being "alone and in close proximity" to him.

*Paragraph 33*: In this paragraph, which was not in the original order, the government notes that it intends to record its telephone calls with Mr. Schulte. Mr. Schulte has sought a stay from the Court of Appeals of this Court's order allowing the government to record him, and has advised standby counsel that he declines to participate in any further calls with the government until receiving a ruling on his appeal.

Thank you for your consideration.

Respectfully submitted,

/s/

Deborah Colson
Sabrina Shroff
*Standby Counsel for Mr. Schulte*

cc: Joshua A. Schulte
    Government Counsel