Joshua Adam Schulte, *pro se*

April 1, 2022

**BY HAND**

Judge Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

RE: *United States v. Joshua Adam Schulte*, S3 17 Cr. 548 (JMF)

Dear Judge Furman:

For the past two months there have been many difficulties—the government confiscated my DVD drive to prevent me from communicating with standby counsel or filing letters in this Court, the MDC confiscated my laptop and then smashed the laptop's power cable, the BOP invoked a national lockdown, which prevented me from reviewing discovery, the government and BOP played ping-pong with me, making false statements to the Court regarding printing motions and letters, and finally, the government confiscated the laptop for over a week as it tried to install a printer driver. Accordingly, herein I combine the past two months' worth of letters, including proposed discussions at the previous pretrial conference. I ask the Court to consider these requests timely submitted as I otherwise could not file them.

A.      **Government's January 19, 2022 letter regarding mail delays, Dkt. 676 at 3**

The government claimed that "mail typically spends approximately one day or less at each stage and it appears that legal mail typically reaches the defendant within approximately one week of its arrival at the MDC mailroom." I asked the government to provide the MDC data it used for this conclusion as the signed receipts delivered to me from the MDC do not match the government's conclusions. The government declined to provide the data, so now I ask the Court to order the government to provide it—it's absurd to believe they can make conclusions to the Court that are subsequently relied on by the Court in its own determinations, yet the defense cannot review the same material and provide its own conclusions.

*United States v. Schulte*, S3 17 Cr. 548 (JMF); April 1, 2022 letter from *pro se* defendant

**B.    Court's January 26th Order denying request for new standby counsel, Dkt. 683**

I wanted to note for the Court that it relied upon old, incorrect information regarding calling both former attorneys to testify at the upcoming trial. Due to the conflict-of-interest, my attorneys invoked privilege and never publicly revealed the issues surrounding Malware of the Mind and multiple other attorney-client privileged documents; these documents, particularly Malware of the Mind, were witnessed by only one attorney—Sabrina Shroff—as she was the only assigned attorney at the time of those documents. This fact was never previously revealed except in *ex parte* letters and hearings with Judge Crotty. Accordingly, I had no option to call multiple attorneys, and very much intend to call Sabrina Shroff at trial. It is, of course, the Court's prerogative to wait until the day before trial to replace standby counsel—although that would put me at a severe disadvantage. Alternatively, the Court could suppress the attorney-client privileged Malware of the Mind or order severance/bifurcation of the MCC Counts, both of which are motions currently pending before the Court.

**C.    January 30th Docket Entry incorrect, Dkt. 686**

This entry should contain the unclassified CIPA 5 Notice. See Ex. A.

**D.    Court's February 7th Order regarding sealing judicial documents, Dkt. 697**

I object to the government's redactions in its February 4th letter, Dkt. 694, as the redactions themselves do not involve classified information (the unredacted letter was publicly mailed to me). Furthermore, I object to sealing judicial documents such as the motion referenced in the aforementioned letter. Judicial documents have a strong First Amendment right of public access, and the fact that it was previously publicly docketed strongly undermines indefinite sealing. This Court should order the redactions and motion unsealed and docketed.

**E.    Court's February 8th Order denying request to file cellphone suppression motion, Dkt. 701**

I move for reconsideration of the Court's denial of my motion for leave to file a cell phone suppression motion, Dkt. 701. I first note that the BOP lockdown, confiscation of my laptop, and confiscation of my DVD drive delayed this reconsideration motion. Second, I note for the Court that this is the first motion for reconsideration since alerting the Court to new information—namely, that the government *did* execute a limited search of the cellphone

2

*United States v. Schulte*, S3 17 Cr. 548 (JMF); April 1, 2022 letter from *pro se* defendant

pursuant to the warrant, and subsequently relied upon that information in its arrest warrant and criminal complaint. No further reconsideration requests will be filed.

The Court first found my letter motion untimely; however, I filed the request before the pretrial motions deadline. See Dkt. 681. Additionally, that request involved new information; the Court previously found that the cell phone warrant "was not executed" and therefore any motion to suppress would be "academic." However, after reviewing the government's discovery productions, I found that the search warrant was relied upon—and therefore the renewed request was based entirely upon **_new facts previously unknown to the Court_**.

The government now acknowledges it conducted a search and relied upon that search in the criminal complaint, but claims it was a "consent" search. Yet, I did not consent, Dkt. 560 at 8 ("Mr. Schulte never consented for the government to seize his cellphone"), and the Court previously <u>denied the government's argument</u>. Regardless, the Court cannot accept the government's argument where there is clear contention—that is the point of a motion. Moreover, the government's subsequent search warrants and searches of the cellphone were not attenuated to dissipate the initial taint, and all are derived from the initial seizure pursuant to the first warrant; accordingly, if the first search warrant is declared unconstitutional, all of these derived searches are fruit of the poisonous tree and must also be suppressed. I contest all of the government's arguments, and the issues must be resolved through motion practice, not merely defaulted in the government's favor—a clear abuse of power and discretion.

My right to file a suppression motion is clear and indisputable; if the Court refuses to allow me to file a suppression motion, then this issue will not be preserved on appeal, thereby requiring me to file a petition for writ of mandamus—of which there can be no question that the Court of Appeals will order this Court to allow me to file this motion, as required by Fed. R. Crim. P. 12. I note for the Court that this will undoubtedly delay trial as I will be forced to move for a stay of trial pending resolution of the mandamus petition, and considering the time it takes for the Court of Appeals to assess and rule, it may take 6 months or more. Thus, instead of wasting everyone's time and delaying trial, I urge the Court to allow me to file the motion **_so it may be preserved on appeal_**.

F.    **SC1 Drive**

This issue was discussed in numerous letters and during several pretrial conferences, of which the Court ordered the parties to confer. I finally spoke to the government and we reached an understanding (although not an agreement).

To make this easier to understand, I've included pictures of the discovery production here. See Ex. B. QNY09_SC01_HDD01, 02, 03, and 04 are four different hard drives. Hard drives 2, 3, and 4 are combined to create QNY09_SC01_RAID5. It is this logical device that the government alleges contains child pornography. However, the completely separate device QNY09_SC01_HDD01 is a 500GB SSD. See Ex. C. It is not part of the RAID5 at all, and the government does not allege it contains any child pornography or classified materials. However, it is still produced in the SCIF.

The government claims that since it is "part of the same forensic production," i.e. QNY09_SC01, and since it was connected to a computer to which drives containing child pornography were also attached, it therefore must be provided in the restricted SCIF.

This makes no sense, however, and since the drive contains no illegal materials, I ask the Court to order the government to provide it in unclassified discovery (this is not related to the Court's prior ruling related to my request to filter illicit files from QNY09_SC01_RAID5 as this request involves a drive with *no illicit files*). The government's argument makes no sense because "QNY09_SC01" is an arbitrary designation, as is the government's second argument— the fact that the drive was connected to a computer which also contained other drives with illicit materials; is every external hard drive or flash drive that was connected to the computer also "contaminated"? The government produced them as unclassified. What about the other computers and NAS that were networked with that computer? What about the internet, to which the computer was connected? It is simply arbitrary to claim the unclassified drive with no illicit materials must be provided in a restricted environment for no other reason than it was once next to an illicit drive. Indeed, once I am acquitted, and request return of all my electronics, can the government refuse to return this drive based upon this same logic? Of course not—it must return the drive, so why make it so difficult to review it pretrial?

### G.    U.S. Marshals Policies

In *Bell v. Wolfish,* 441 U.S. 520 (1979), the Supreme Court held that since a pretrial detainee has not been convicted, the Due Process Clause does not permit prison officials to subject him to "punishment." *Id.* at 537, n. 16. *"[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees."* Id. at 539. Thus, any policy by the U.S. Marshals must conform to *Bell v. Wolfish*, and must be assert a *legitimate* governmental interest.

#### 1.    Discussions over SCIF floor chain

At one of the previous court appearances, the Court intended to discuss the current practice of chaining me to the floor with the U.S. Marshals; this floor chain is arbitrary and not related to any legitimate governmental objective, especially considering the 24/7 monitoring of both the FBI and U.S. Marshals—which is stricter than court appearances where there is no floor chain. What is the status of those discussions?

#### 2.    Food/drink in the SCIF

The Court previously deferred my request for food and drink in the SCIF to the Marshals. I move for reconsideration of that decision; the policy of denying me food or drink (even water) in the SCIF is not based on any legitimate governmental objective. The SCIF is completely different from typical U.S. Marshals custody, and thus, the default policy simply does not apply. This is not a case where I am in Court or in a Marshals holding pen, but rather, I am working directly with un-incarcerated attorneys in the Courthouse. Those attorneys bring in food and drink for themselves—how can the U.S. Marshals possibly claim to regulate and deny me access to this food and drink? What is the governmental objective? It causes no extra work for the Marshals, the food and drink is either in a sealed bag or purchased from the cafeteria—what is the difference between this and the food provided by the prison?; both Marshals and FBI are already watching 24-7 and conduct strip searches after the SCIF in accordance with the protective order. Moreover, FBI policy permitted this when I worked in their SCIF. Accordingly, there is simply no reason to deny me access to food and drink. Applying the Marshals default policy without examination of the particular situation is not satisfactory.

*United States v. Schulte*, S3 17 Cr. 548 (JMF); April 1, 2022 letter from *pro se* defendant

### H.   MDC reprisal and Unit Manager Bullock

I first wish to notify the Court of reprisal from the BOP for my previous letter calling out unit team for its fraud upon the Court. When I returned from the SCIF on March 18, 2022, at around 3:30 PM unit manager Bullock stopped to say "the camera caught you messing with that TV" and to "watch yourself." I told him I did not understand and requested clarification, but he immediately turned around and left. Since there is no TV in my torture cage and I have not "messed" with anything, I took this as a vague threat, and confirmed this interpretation when I found my torture cage completely trashed. No other torture cages on the unit were searched and trashed—in fact, this was the very first time the MDC ever trashed my cage. Thus, I simply want to ensure this typical bullying, retaliatory BOP behavior is noted on the official record.

#### 1.   Bullock's refusal to provide legal calls

Since I notified the Court of MDC's fraud, each time I ask for a legal call, Bullock tells me I will get it, but refuses to provide it. For example, Tuesday and Wednesday, March 22 – March 23, I repeatedly asked him no less than five times each day. Each time he told me "it's coming." Bullock revels in this form of pocket veto, and it recurs each and every week. Despite filing multiple administrative remedies for legal calls, Bullock claims none exist. According to BOP federal regulations, "[s]taff shall allow the pretrial inmate, upon the inmate's request, to telephone the inmate's attorney as often as resources of the institution allow." 28 CFR § 551.17(c). I ask the Court to order the MDC to provide me legal calls.

#### 2.   Bullock refuses to fix the VTC

Next, the MDC refuses to fix the VTC—even the attorney VTCs. I had a legal VTC on March 16, but the attorneys could not hear me at all. We had to end the VTC without any communication. They contacted Bullock to inform him of the problem, and I filed administrative remedies. I also had two family VTCs, one on March 9th and the other on March 23rd—and both times had the exact same issue. I again filed administrative remedies, but to no avail. According to BOP federal regulations, "[t]he warden shall provide the opportunity for pretrial inmate-attorney visits on a 7-day-a-week basis." 28 CFR § 551.17(a). I ask the Court to order the MDC to fix its VTC so that I can engage in meaningful communication with both attorneys and family.

*United States v. Schulte*, S3 17 Cr. 548 (JMF); April 1, 2022 letter from *pro se* defendant

3.      MDC not providing recreation

Despite requesting recreation all week, the MDC refused to provide me recreation. I was told by MDC that "this is prison;" and they do not have to take me to the law library or recreation—it is simply a favor they do if they have time. MDC told me if I wanted to go to the law library or recreation then I shouldn't have been arrested. This is in stark contradiction to BOP federal regulations, which state that "[y]ou will receive the opportunity to exercise outside your individual quarters at least five hours per week, ordinarily on different days in one-hour periods." 28 CFR § 541.31(g). Once again, MDC did not respond to any administrative remedies, and I ask the Court to order the MDC to take me to recreation each day.

**I.      Printer placement**

The MDC first provided the printer outside my torture cage, and ran the USB cable into my cage for me to use. The next day, the MDC administrative staff came to my torture cage to inquire about the printer. They then began to talk amongst themselves, at which point one of them slammed the window-door in my face; this is a typical occurrence, as those with absolute power enjoy displaying their dominance—they also do not seem to realize that it is not the eyes that feed audio signals to the brain, and I could continue to hear their conversation. MDC executive staff stated that it was much too easy for me to print from my torture cage, and thus moved the printer right outside the law library for the sole purpose of making it more difficult for me to print. I note for the Court that the printer setup is the exact same—it is right outside the law library, with the USB cable snaked under the door as it was when it was outside my torture cage. The MDC also bans any other inmate from using the printer as the sign on the printer notifies the officers that no other inmates may use the printer except for me.

Placing the printer outside the law library makes it difficult to print because the MDC do not take me to law library each day (it is particularly difficult on the weekends and SCIF days), and I am only brought in the mornings (preventing any changes done during the day—which is the primary time I work on my drafts). Thus I may not be able to meet court deadlines. Considering that the government's sole objective of removing the printer to outside the law library is literally to obstruct my ability to print, it is not a legitimate objective. I ask the Court to order the MDC to provide the printer outside my torture cage as it was originally provided.

*United States v. Schulte*, S3 17 Cr. 548 (JMF); April 1, 2022 letter from *pro se* defendant

### J.      Move April 13, 2022 status conference

MDC previously scheduled my phone calls and social visits for Mondays so my family did not have to take off an extra day to visit me; however, Unit Manager Bullock cancelled all the *already-scheduled* Monday visits/social calls and moved them to Wednesdays just to inconvenience my family. Accordingly, I ask the Court to move the Wednesday status conference to any other day.

### K.      Unclassified Protective Order, Dkt. 732

I asked the government to provide a list of all documents subject to the unclassified protective order. They informed me that they did not keep a list, and would not provide any list. I ask the Court to order the government to provide a list of documents produced under the unclassified protective order so that I am aware of their status.

### L.      BOP Officer Nedgine Santana's Fraud on the Court

Nedgine Santana perpetrated a fraud on the Court in her affidavit submitted by the government on March 9, 2022, Dkt. 732-1. I ask the Court to order the government to provide the audio of the recorded conversation, which may be introduced at trial depending on the government's case. I also ask whether the Court or the government intends to do anything about it, or does the law not apply to government employees?

### M.      MDC printer as substitute for DVD drive inadequate

I used a DVD drive in this case for 5 years to communicate documents with counsel, my expert, and the Court. When the most recent DVD drive malfunctioned, I requested a new one, but the government refused to provide it—claiming it was not "allowed" by the BOP. After informing the government that my previous DVD drive was the same type, the government commanded the BOP to confiscate it. I was no longer able to write letters and motions to the Court or correspond with my expert and standby counsel. Through the subsequent months of February and March, the government played games, pretending I could print from the MDC, when in fact I could not—as clearly demonstrated by the paper & pen filings. The MDC even perpetuated a fraud on this Court when it claimed a fictitious conversation took place and that I "agreed" I could use a service that I've been banned from for over four years.

*United States v. Schulte*, S3 17 Cr. 548 (JMF); April 1, 2022 letter from *pro se* defendant

The government's shenanigans are inexcusable, and resulted in a loss of two months—I was unable to file letters with the Court, unable to communicate with my expert, and unable to communicate trial strategy with standby counsel. The government did not even allow me to continue using the DVD drive until a solution was reached or provide me with any alternative. Moreover, the government's assertion that a DVD drive was not "authorized" by the BOP is clearly false since I previously used a BOP computer system to burn DVDs; regardless, the quoted BOP policy did not apply to personal laptops. It was not the BOP who objected to the DVD drive, but the government.

Additionally, the government's solution, while adequate for filing letters and motions with the Court, is inadequate for other communications. As I stated in numerous letters to the Court, e.g. 2/23/22, Dkt. 722 at 2, 3/11/22, Dkt. 736:

> I require an electronic transfer system; printing alone will not suffice, because I cannot print video demonstratives I've created for use at trial; I cannot print forensics, forensic artifacts, and other binary files that would ultimately be tens of thousands of useless printed papers. I need a way to transfer my notes, documents, motion drafts, demonstrative videos, technical research, analysis, and countless other documents to my standby counsel, forensic expert, and for filing in this Court.

I need some mechanism to prepare and send documents electronically—both to my forensic expert (and possibly standby counsel) pretrial and for electronic exhibits at trial. The government's concerns about the unclassified protective order are unfounded considering that there have been no issues in the 5 years I've used the DVD drive and the fact that the government's current solution, a printer, makes it *easier* to distribute protective order documents; thus this clearly is not a legitimate concern. And as previously stated, the BOP policy clearly does not apply to personal laptops; regardless, any ban of DVD drives is arbitrary as there is no legitimate governmental objective. I ask the Court to order the government to provide me with a DVD burner or other mechanism for electronic file transfer. I note for the Court that I spoke to the government on the phone about this, and they told me I could simply use paper exhibits, and that I could not use the computer during trial to show my exhibits.

*United States v. Schulte*, S3 17 Cr. 548 (JMF); April 1, 2022 letter from *pro se* defendant

### N.    Adjournment of trial to retain lost two months

I ask the Court for a two-month adjournment to make up for these lost two months. Not only was I unable to communicate documents with counsel, but the MDC refused to take me to the law library during the nearly month-long national BOP lockdown, the laptop was confiscated for over two weeks, then rendered unusable since the BOP broke the charger—which took another month to address. And finally, the government confiscated the laptop *again* for a <u>week</u> as it tried to install a mere printer driver (How many government employees does it take to work a printer?). The government directly caused this loss of time, and I ask the Court to restore it.

I also ask the Court to prevent these issues in the future. I first ask the Court to order the MDC to take me to law library each and every day regardless of whether or not the institution is on "lockdown." I am already locked down each and every day, requiring a Lieutenant to move me—there is no difference to this procedure whether or not the rest of the institution is locked down (in fact it is much easier to take me when the rest of the institution is locked down as the lieutenants are clearly not doing anything else). Next, in the case that the government ever needs to do something with the laptop, I ask the Court to order the government to come to MDC to perform the task, and therefore minimize the resultant delay and harm to the laptop in shipping.

### O.    Failure to receive government's CIPA 6(a) motion and request for deadline extension

According to the Court's schedule, the government's CIPA 6(a) motion was due Friday, March 18, 2022. The government filed this as a classified motion on the 18th. Dkt. 745. The Court gave me three weeks until April 8, 2022 to file a response. However, neither the government nor the CISO provided this motion to me in the SCIF *for over two weeks* until April 1, 2022 at 11:30 A.M. Additionally, due to the increased page limit, the substance, and my inability to work on the response outside the SCIF, I request an additional three weeks, for a total of six weeks. Six weeks from the receipt of the CIPA 6 motion would be May 13, 2022.

Respectfully submitted,

Joshua Adam Schulte

10

# EXHIBIT A

Joshua Adam Schulte, *pro se*

January 28, 2022

**BY HAND**

Judge Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

RE: *United States v. Joshua Adam Schulte*, S3 17 Cr. 548 (JMF)

Dear Judge Furman & Prosecution Team:

Section 5 provides, in pertinent part:

If a defendant reasonably expects to disclose or to cause the disclosure of classified information in any manner in connection with any trial or pretrial proceeding involving the criminal prosecution of such defendant, the defendant, shall, within the time specified by the court, or where no time is specified, within thirty days prior to trial, notify the attorney for the United States and the court in writing. Such notice shall include a brief description of the classified information.

Included herein is my CIPA Section 5 supplemental notice of the information that I reasonably expect to disclose or cause to be disclosed at trial. Note that I preserve my previous CIPA Section 5 notice, and all information disclosed therein, and file this notice to supplement the original Section 5 notice. As with the original notice, I note that as trial approaches I may need to augment this CIPA 5 disclosure. To the extent that the Court orders redactions, substitutions, compels additional discovery, the production of additional discovery, or any other updates that impact trial strategy, I reserve the right to further augment this CIPA 5 notice.

# UNCLASSIFIED HALFSHEET

# EXHIBIT B

easystore (F:) > Discovery >

| Name | Date modified | Type | Size |
|------|---------------|------|------|
| QNY09_SC01_HDD01 | 11/2/2021 3:58 PM | File folder | |
| QNY09_SC01_HDD02 | 11/2/2021 4:40 PM | File folder | |
| QNY09_SC01_HDD03 | 11/2/2021 7:30 PM | File folder | |
| QNY09_SC01_HDD04 | 11/2/2021 10:30 PM | File folder | |
| QNY09_SC01_RAID5 | 11/2/2021 3:58 PM | File folder | |
| SC1_1 | 10/29/2021 5:32 PM | File folder | |
| Linux Mint.vdi | 5/1/2016 12:50 PM | VDI File | 104,859,64... |

easystore (F:) › Discovery › QNY09_SC01_HDD02 ›

| Name | Date modified | Type | Size |
|---|---|---|---|
| WD-WCAW35659178_WDC WD1003FBYX-01Y7B1 | 11/2/2021 7:30 PM | File folder | |

easystore (F:) > Discovery > QNV09_SC01_HDD03 >

| Name | Date modified | Type | Size |
|------|---------------|------|------|
| S1D94NL5_ST1000DM003-1CH162 | 11/2/2021 10:29 PM | File folder | |

easystore (F:) > Discovery > QNV09_SC01_HDD04 >

| Name | Date modified | Type | Size |
| --- | --- | --- | --- |
| Z4Y4SWRE_ST1000DM003-1ER162 | 11/3/2021 1:47 AM | File folder | |

# EXHIBIT C

easystore (F:) › Discovery › QNY09_SC01_HDD01 ›

| Name | Date modified | Type |
|---|---|---|
| S21HNXAG647836L_Samsung SSD 850 EVO 500GB | 11/2/2021 4:40 PM | File folder |