UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

    - v. -

JOSHUA ADAM SCHULTE,

              Defendant.

S3 17 Cr. 548 (JMF)


**GOVERNMENT'S MEMORANDUM OF LAW
IN OPPOSITION TO THE DEFENDANT'S MOTION TO SUPPRESS**


DAMIAN WILLIANS
United States Attorney
Southern District of New York

David W. Denton, Jr.
Michael D. Lockard
Assistant United States Attorneys,
*Of counsel*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ............................................................................................................... 2

    I.   The Defendant's Arrest, Bail, and Bail Revocation ...................................... 2

    II.  The Defendant's Attempted Media Campaign Involving the Disclosure
        of Protected Discovery and Classified Information ...................................... 3

            A.  The John Galt Facebook Page .......................................................... 3

            B.  The Newspaper Articles ................................................................... 3

            C.  The Schulte Article ......................................................................... 4

    III. The Defendant's Prior Motions to Suppress Evidence Based on
         Asserted Attorney-Client Privilege ............................................................. 6

    IV. The Defendant's New Motion ..................................................................... 8

DISCUSSION ................................................................................................................... 9

    A.  Relevant Law ......................................................................................... 10

    B.  The Schulte Article Is Not A Privileged Attorney-Client Communication ............... 11

CONCLUSION ................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Berall v. Teleflex Medical Inc.*, 2021 WL 5989936 (S.D.N.Y. 2021) ........................................... 13

*Business Integration Svcs. v. AT&T Corp.*, 251 F.R.D. 121 (S.D.N.Y. 2008) ............................ 11

*Desouza v. Park West Apts.*, 2018 WL 625010 (D. Conn. 2018)................................................. 13

*Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58 (S.D.N.Y. 2010)................................................. 12

*In re Horowitz*, 482 F.2d 72 (2d Cir. 1973) ................................................................................. 11

*Schaeffler v. United States*, 806 F.3d 34 (2d Cir. 2015) ............................................................. 10

*United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464 (2d Cir. 1996).............................. 10

*United States v. Ray*, 2022 WL 842254 (S.D.N.Y. 2022) ..................................................... 11, 13

*United States v. Schwimmer*, 892 F.2d 237 (2d Cir. 1989)........................................................ 10

*von Bulow v. von Bulow*, 811 F.2d 136 (2d Cir. 1987)......................................................... 11, 13

## PRELIMINARY STATEMENT

The Government submits this memorandum of law in opposition to the defendant's March 25, 2022, motion ("Motion") to suppress an article authored by him titled "'. . . unalienable rights, that among those are Life, Liberty, and the pursuit of Happiness' by Joshua Schulte" (the "Schulte Article").[1] Schulte argues that the Schulte Article is a "seized Attorney-Client Privileged Email" (Mot. 1) that the Government obtained from a search of a laptop owned by Schulte's cousin and one-time roommate. (*Id*. 4). Schulte's claim about the provenance of the Schulte Article is wrong and his assertion of attorney-client privilege unfounded. The Schulte Article was produced by Schulte's cousin, through counsel, in response to a subpoena calling for non-privileged documents. It is not a confidential communication and was not prepared, or shared with Schulte's cousin, for the purpose of receiving legal advice. Rather, the Schulte Article on its face appears to consist of the first four chapters of a screed against the CIA, the FBI, and the criminal justice system intended for publication—similar to other articles authored by the Schulte which were, in fact, published on social media by other family members.

Moreover, despite the fact that the Schulte knew that the Schulte Article had been disclosed when it was produced in discovery in 2018, and despite the fact that Schulte extensively litigated other claims of attorney-client privilege, he never sought to suppress the Schulte Article or to recover possession of it from his cousin or from the Government. Thus, even any arguable attorney-client privilege with respect to the article has been destroyed by Schulte's failure to maintain its purported confidentiality. The Motion should be denied.

---

[1] The defendant refers to this document as "The Email." (Mot. 1). As described below, the document is not an email.

# BACKGROUND

The background of Schulte's theft and transmission of classified information from the CIA, the resulting investigation, the charges, and the procedural history of this matter are discussed extensively in other filings. Here, the Government will summarize only the background relevant to the Motion.

## I. The Defendant's Arrest, Bail, and Bail Revocation

Schulte was initially arrested on August 24, 2017, based on a criminal Complaint alleging child pornography crimes, and ordered detained. (D.E. 4). An indictment was returned on September 6, 2017. (D.E. 6). At his arraignment, Schulte was released on conditions, including a prohibition against "possessing or using a computer, computer network and/or internet access unless specifically approved by Pretrial Services." (D.E. 8). On September 18, 2017, the Court entered a discovery protective order (D.E. 11 (the "Protective Order")) that prohibits disclosing protected materials outside the defense team. On August 16, 2018, the Court entered the Classified Information Protective Order that, *inter alia*, prohibits Schulte and defense counsel from disclosing classified information to anyone except the Court and government personnel holding the appropriate clearances and a need-to-know. (D.E. 61 at 5).

On December 14, 2017, following his arrest on state sexual assault charges in Virginia, Schulte's bail was revoked. (D.E. 22). Schulte moved to reinstate his bail, which the Court denied. (D.E. 26). The Court found that Schulte violated his conditions of release, including restrictions on internet access by having others access the internet on his behalf. (Jan. 8, 2018 Tr. at 16). The Court of Appeals affirmed the detention order. (D.E. 33).

2

II.     **The Defendant's Attempted Media Campaign Involving the Disclosure of Protected Discovery and Classified Information**

Following Schulte's initial arrest, he engaged in a campaign to publicly promote false claims of having been framed by the Federal Bureau of Investigation ("FBI") and CIA, principally by disclosing and attempting to disclose protected search warrant materials and by publishing self-authored "articles" advancing his false narrative.

A.     **The John Galt Facebook Page**

In or about April 2018, Schulte had phone calls from prison, which were recorded, with his family members in which Schulte discussed his desire to talk to members of the media about his case, and in which Schulte indicated that he had written several "articles" discussing his case that he wanted disseminated to the media. (Ex. 1 ¶ 11(a)). Schulte acknowledged the information's protected status on the phone call. (*Id.*). On or about April 20, 2018, a Facebook page named "John Galt's Legal Defense Fund" posted seven "articles" titled "Presumption of Innocence," with the description: "The American Judicial System is unjust and needs a major overhaul. Read the following articles." (Exhibit 2 at JAS_020323-JAS_020326).

B.     **The Newspaper Articles**

That same month, Schulte had a phone call from prison with an individual who appeared to be a member of the media, in which Schulte discussed information contained in a search warrant affidavit produced in discovery pursuant to the Protective Order. (Ex. 1 ¶ 11(b)). On May 15, 2018, the *Washington Post* and the *New York Times* published articles about this case in which both publications indicated that their reporters had learned information contained in at least one search warrant affidavit. (*Id*. ¶ 11(c); Trial Tr. 2467-68, GX829). The next day, on or about May 16, 2018, the John Galt's Legal Defense Fund Facebook page posted a link to a GoFundMe site with the description: "Click here to support Galt Criminal Justice Reform organized by John Galt." (Ex. 2

3

at JAS_020322). Schulte, however, was upset that his family failed to post the versions of the articles that he had intended to publish. (GX801, 806, 809).

### C.     The Schulte Article

Following the publication of the *Washington Post* and *New York Times* articles, among other things, on May 21, 2018 a grand jury subpoena was issued to Shane Presnall, Schulte's cousin and previously Schulte's roommate.[2] (Ex. 3). The subpoena called for the production of, among other things, any search warrants or search warrant affidavits relating to Schulte; communications concerning the search warrants or search warrant affidavits; and "Any and all documents created by Joshua Adam Schulte to be posted on Facebook and/or GoFundMe, including but not limited to articles '8, 9, and 10.'" (*Id.* at 2). The subpoena instructed: "This subpoena does not call for the production of any documents protected by a valid claim of privilege, although any responsive document over which privilege is being asserted must be preserved. Any documents withheld on the grounds of privilege must be identified on a privilege log with descriptions sufficient to identify their dates, authors, recipients, and general subject matter." (*Id.*). On or about August 6, 2018, Presnall, through counsel, produced documents responsive to the subpoena and an index. The index described Articles 1 through 7 by Joshua Schulte, which corresponded to the articles published on the John Galt's Legal Defense Fund Facebook page in April 2018; as well as an "Article 8 by Joshua Schulte" and the Schulte Article described as "Article entitled '. . .unalienable Rights, that among these are Life. Liberty and the pursuit of Happiness' by Joshua Schulte." (Ex. 4; *id*. at JAS_021890-JAS_021902). The latter two articles had not yet been published on Facebook. The Schulte Article has four chapter headings, including

---

[2] It appears that Presnall lived with the defendant for a few months from sometime after August 2017 until sometime prior to May 2018.

"Chapter 1: The confrontation," "Chapter 2: my last experience at the CIA and my reason(s) for resigning," "Chapter 3: Hell," and "Chapter 4: The Red Pill." As with his other articles, the primary thesis of Schulte Article is that the defendant is innocent and he is the victim of lawless, dishonest agents and a criminal justice system uninterested in civil liberties or truth.

Prior to serving the subpoena on Presnall, FBI agents him. (Ex. 5). At that time, Presnall stated that he was unfamiliar with Schulte's articles, numbered one through ten, some of which appeared on the John Galt's Legal Defense Fund Facebook page. Presnall stated that he possessed or may possess Schulte's handwritten notes related to his case. Presnall refused to answer further questions. (*Id.* at 2). Later, on or about January 13, 2020, Presnall was interviewed again by an FBI agent and two Assistant United States Attorneys, in the presence of his counsel and pursuant to a proffer agreement. (Ex. 6). During this interview, Presnall stated that he moved in with Schulte in late 2017 when Presnall started a new unpaid internship at a political consulting firm located in New York. (*Id.* at 2-3). Schulte started writing a number of articles about his situation in order to get them to the press to publicize Schulte's claims about the prosecution and, Schulte hoped, cause an outrage and force the case to be thrown out. Schulte drafted these articles by hand, and Presnall and Schulte would type them up on a computer. Schulte told Presnall that he was not allowed to use any electronic devices, like the computer used to type the articles, because of his bail conditions. Schulte also used the computer to access the internet. (*Id.* at 3).

After Schulte's bail was revoked and one of his former counsel was relieved, that attorney delivered documents from the case to Schulte's father, who then delivered them to Presnall at Schulte's former apartment. Schulte wanted to get the documents to the press as part of his effort to manufacture public outrage. Schulte wanted a relative of another inmate Schulte met in prison—

securities fraudster Omar Amanat[3]—to deliver the court documents to media contacts. Presnall left the documents in the refrigerator, gave a key to the apartment to Amanat's cousin, and moved out of the apartment. Amanat's cousin later confirmed to Presnall that he had collected the documents. Presnall delivered Schulte's notebook to his new attorneys. (*Id*. at 3-4).

During a meeting with Schulte at the prison, Schulte told Presnall that Schulte's attorneys did not want him to share his articles and search warrant materials with the media. This did not deter Schulte and Presnall began contacting reporters on Schulte's behalf. Presnall sent various reporters a photograph of the first page of one of the search warrant affidavits, Schulte's articles, images of business cards from the FBI agents who had interviewed Presnall in May 2018, and other materials.

Based on a preliminary determination that the the Schulte Article contained classified information, the Schule Article and other documents produced in response to the subpoena were produced to Schulte in classified discovery on or about November 12, 2018, pending classification review. (Ex. 7). The Schulte Article did in fact contain classified information (Ex. 4 at JAS_021890, 021891, 021893, 021894, 021897021900), and an unclassified version omitting classified information was produced to Schulte on or about February 25, 2019. (*Id.*).

## III.   The Defendant's Prior Motions to Suppress Evidence Based on Asserted Attorney-Client Privilege

On October 2, 2018, the Honorable Paul A. Crotty issued a warrant authorizing the search of Schulte's cell at the MCC, among other locations. (D.E. 120, Ex. F). The warrant was based on, among other things, evidence that Schulte had provided discovery materials to a reporter in

---

[3] *See United States v. Amanat*, 15 Cr. 536 (PGG); Ex. 1 ¶¶ 9-10. Amanat fabricated email evidence in connection with his trial, and it appears that Schulte was working on a purported export report to support the authenticity of the fabricated emails. *Id.* ¶¶ 12 & 15(c)(i).

violation of the Court's discovery protective order and was using contraband cellphones at MCC for unmonitored communications with unknown third parties and to disseminate documents. (*Id*. ¶¶ 11-15). During the execution of the search, law enforcement agents identified certain notebooks and notepads in Schulte's cell, which resulted in a second warrant that also implemented wall procedures to address potentially attorney-client privileged communications that might be reflected in those documents. (D.E. 120, Ex. G). A wall team of prosecutors reviewed those documents and provided the trial prosecutors with copies having material determined to be privileged reacted. The redacted documents contained classified information and information about electronic and social media accounts and efforts to disseminate classified information and protective discovery materials, leading to further search warrants. (D.E. 120, Exs. H, I, J).

On June 18, 2019, Schulte moved to suppress, *inter alia*, the results of the MCC searches, arguing that (1) the search exceeded the scope of the warrants, (2) the searching agents reviewed attorney-client privileged materials while executing the searches, and (3) the wall review procedures were inadequate. (D.E. 98). Schulte also argued that certain materials in the redacted versions of his notebooks was privileged and those materials should be suppressed. (*Id*.).

By order dated October 18, 2019, the Court denied Schulte's motion to suppress the results of the MCC searches. (D.E. 159). The Court found that the notebooks were not privileged in their entirety, but contained intermingled privileged, non-privileged, and irrelevant material. (D.E. 5-6). The Government agreed not to introduce at trial the specific materials with respect to which Schulte asserted privilege. (*Id*. at 8).

Prior to the trial held from February 3 through March 9, 2020, Schulte objected to the admissibility of evidence from his MCC notebooks on the grounds that (1) it was privileged and (2) Schulte might have an argument that he was given ineffective advice regarding the notebooks.

(D.E. 242 at 23-27).[4] The Court directed the Government to identify the particular portions of the MCC notebooks intended to be introduced at trial. (D.E. 252). The Government did so by letter dated January 21, 2020, in which the Government also noted that the Schulte Article was another exhibit the Government may use at trial. (D.E. 257 at 6, 14 n.4, 15). Ultimately, several exhibits derived from Schulte's MCC notebooks were admitted into evidence. (GX801, 806, 809, 812).

Schulte did not assert that the Schulte Article was privileged in any of his prior motions to suppress or to exclude purported attorney-client privileged materials, despite the fact that, prior to trial, portions of the article had been identified as a Government trial exhibit and marked GX813.

## IV.    The Defendant's New Motion

In the Motion, Schulte argues that the Schulte Article should be suppressed because it is an attorney-client privileged email between himself and his former counsel. (Mot. 1-2).[5] Schulte argues that Presnall received a copy of the Schulte Article from Schulte's attorneys solely for the purpose of printing it for Schulte's review. (*Id*. at 3-4). Schulte claims that Presnall was "employed as a paralegal to assist Mr. Schulte in reviewing his discovery and facilitating communication." (*Id*. at 2). According to Schulte, Presnall "assisted Mr. Schulte in any and all non-legal requests as a paralegal" and was paid in "room and board." (*Id.* at 2, 7, 8, 9). Schulte argues that he needed to

---

[4] The defendant also asserted an advice-of-counsel defense to charges that he violated the protective order or disclosed and attempted to disclose classified information while at the MCC. (D.E. 128, 147, 150, 177, 220, 231). Following extensive proceedings to address the issue, the Court directed the defendant to disclose to the Government the communications upon which he intended to rely in support of an advice-of-counsel defense and precluded the defense if those communications were not disclosed. (D.E. 248). The communications were never disclosed to the Government and the defendant's deadline to do so is April 12, 2022. (D.E. 754).

[5] Schulte provided emails regarding the Schulte Article to the Court *ex parte*. (Mot. Ex. A). While the Government does not have a copy of that Exhibit, we previously were provided a printed copy of an email chain by the defendant's former counsel, now standby counsel, regarding the Schulte Article that may reflect the contents of the Exhibit. A copy of that email chain is available for the Court's review if helpful to addressing the Motion.

use Presnall to communicate by email because Schulte himself was prohibited by his bail conditions from using a computer or the internet. (*Id*. at 4; *see also* D.E. 8). Schulte use of Presnall to circumvent his bail conditions was one of the bases for the later revocation of Schulte's bail. (D.E. 21 at 2).

Schulte asserts that the Schulte Article was recovered during a consensual search of Presnall's laptop (*id*. at 4, 9), though, as described above, it was produced by Presnall through his attorney in response to a subpoena that called for only non-privileged records.

Schulte admits that he intended to publish, and in fact did publish through other family members, several of his other articles (*id.* at 3-4), though neither the Schulte Article nor Article 8 were published on Facebook.

## DISCUSSION

Schulte's arguments rely on his own unsworn, conclusory, self-serving, and self-evidently untrue assertions about the Schulte Article and the manner in which it was obtained by the Government. The Motion falls far short of meeting Schulte's burden of demonstrating that the privilege applies.

The record shows that the Presnall was not a paralegal and was not employed by Schulte or by Schulte's counsel. Presnall's interview statements, his counsel's disclosure of the article in response to a subpoena calling for non-privileged documents, and Schulte's other consistent contemporaneous conduct all demonstrate that the document is not privileged. The record also shows that Presnall's involvement in the Schulte Article was not for the purpose of obtaining or receiving legal advice, but was for the purpose of carrying out Schulte's extra-legal strategy of attempting to litigate his case in the media rather than in the courthouse. Schulte fails to establish either the confidentiality element or the legal-advice element of the privilege.

Finally, even if the privilege might otherwise apply, Schulte's failure to assert the privilege or to attempt to protect the supposed confidentiality of the Schulte Article for over three years after he learned it had been provided to the Government by Presnall's counsel both supports the conclusion that the document was never privileged at all, and that any putative privilege has in any event been waived.

## A.    Relevant Law

The burden to establish that information is privileged unequivocally rests with the defendant. *See United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989). "To invoke the attorney-client privilege, a party must demonstrate that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). Thus, the privilege does not attach to communications between two or more persons that do not enjoy an attorney-client relationship. *Schwimmer*, 892 F .2d at 243 ("The relationship of attorney and client, a communication by the client relating to the subject matter upon which professional advice is sought, and the confidentiality of the expression for which the protection is claimed, all must be established in order for the privilege to attach."). Additionally, it is settled that even where an attorney-client relationship does exist, disclosure of a privileged communication to a third party waives privilege as to that communication. *See Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015) (privilege "is generally waived by voluntary disclosure of the [privileged] communication to another party").

Where a party asserts privilege over a document that already has been disclosed, through inadvertence or otherwise, courts typically assess several factors: "(1) the reasonableness of the precautions to prevent inadvertent disclosure, (2) the time taken to rectify the error, (3) the extent

10

of the disclosure, (4) an overarching issue of fairness and the protection of an appropriate privilege which must be judged against the care or negligence with which the privilege is guarded." *Business Integration Svcs. v. AT&T Corp.*, 251 F.R.D. 121, 130 (S.D.N.Y. 2008) (cleaned up); *see also United States v. Ray*, 20 Cr. 110 (LJL), 2022 WL 842254, at *3 (S.D.N.Y. Mar. 20, 2022).

### B.    The Schulte Article Is Not A Privileged Attorney-Client Communication

Schulte makes several factual assertions underpinning his claim of privilege that are unsupported and untrue. Schulte's burden of demonstrating the applicability of the privilege "is not, of course, discharged by mere conclusory or ipse dixit assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed." *von Bulow v. von Bulow*, 811 F.2d 136, 146 (2d Cir. 1987) (citation omitted).

First, there is no question that the Schule Article was shared with Presnall, a third party who was not an attorney representing Schulte. Even if the email Schulte describes (Mot. Ex. A) was privileged when shared with counsel, the law is "clear that subsequent disclosure to a third party by the party of a communication with his attorney eliminates whatever privilege the communication may have originally possessed." *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973). Schulte attempts to evade this consequence by repeatedly arguing that Presnall was a paralegal and member of the defense team. (Mot. at 2, 7, 8, 9). This contention is false. Neither Presnall nor his counsel have ever claimed he was a paralegal. Schulte's former counsel, similarly, have not claimed that Presnall was a paralegal under their supervision. To the contrary, the record shows that Presnall was simply Schulte's cousin and one-time-roommate. *See von Bulow*, 811 F.2d at 146-47 (rejecting claim that an individual acted as a paralegal as unsupported by the record). Indeed, Schulte principally used Presnall to violate his bail conditions and the Protective Order, contrary to Schulte's attorneys' advice (Ex. 6 at 3-4), a role directly contrary to the claim of

11

privilege.[6]  Schulte's attempt to invoke the label "paralegal" does not bring Presnall within the scope of the attorney-client relationship any more than Schulte's writing "attorney client privilege" on a notebook bestows privilege on its contents. *See* D.E. 159 at 5-6; *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 72 (S.D.N.Y. 2010) ("The standard [for extension of the privilege to third party communications] is whether the third-party agent is supervised directly by an attorney and whether the communications were intended to remain confidential."). That Schulte shared the Schulte Article with someone outside the attorney-client relationship shows that the article was not confidential and, accordingly, not privileged.

Second, Schulte repeatedly and conclusorily asserts that the Schulte Article was "originally drafted and emailed to defense council [sic] for the sole purpose of defense." (Mot. at 6). This assertion, too, is unsupported by anything other than Schulte's unsworn and uncorroborated statement. Presnall's counsel, who was conservative regarding potential privilege issues (Mot. Ex. B), clearly did not understand the Schulte Article to be privileged and produced it to the Government. (Ex. 4). Presnall's description of Schulte's articles also does not support Schulte's assertion. Presnall recalled that Schulte started writing a number of articles about his situation whose purpose was get them the articles to the press and released to the public to inform everyone what Schulte claimed to be going through and cause an outrage, with the goal of forcing the case to be thrown out. Schulte drafted these articles by hand, and Schulte and Presnall would type them

---

[6] The defendant's contentions that he had to violate the bail conditions in order to assist in his own defense (Mot. at 2, 7-8) are irrelevant to the Motion. They are also false: nothing in the bail conditions prevented the defendant from meeting with his counsel or from using mail delivery services to exchange unclassified documents concerning his case with counsel. Moreover, the Schulte Article was not part of discovery during the time the defendant was on bail, and his discovery-access related arguments are beside the point. Finally, to the extent that the defendant's counsel sent any documents received from Schulte to a third party at Schulte's request, that would merely demonstrate that the breach of confidentiality was instigated by Schulte.

up on a computer. (Ex. 6 at 3). The Second Circuit has "decline[d] [a privilege proponent's] invitation to extend the attorney-client privilege to a manuscript which she *intends* to publish. To accept such an invitation would serve poorly the teaching that 'the investigation of truth and the enforcement of testimonial duty demand the restriction, not the expansion of the privilege." *Von Bulow*, 811 F.2d at 147 (emphasis in original, cleaned up). Similarly here, evidence of the defendant's intention to publish the Schulte Article in whole or in part removes it from any privilege.

Finally, even if the Schulte Article were arguably subject to a claim of privilege, Schulte's failure to protect that purported privilege for more than three years would defeat the assertion. Schulte argues that he reasonably sought to maintain the confidentiality of the Schulte Article because he never emailed the article directly to Presnall and because it was shared it with Presnall only because of Schulte's bail conditions prohibiting him from accessing computers. (Mot. at 8-9). Whether Schulte directly emailed the Schulte Article to Presnall is immaterial; the relevant fact is that Presnall, a third party, had it because Schulte wanted him to have it. Regardless, even if the Schulte Article had been entitled to privileged status prior to Presnall's disclosure to the Government, the defendant failed to protect the privilege for more than the three years after that disclosure was made known to him (*see* Ex. 7) and despite engaging in substantial privilege litigation concerning other documents in 2019 and 2020. *See, e.g.*, *Ray*, 2022 WL 842254 at *4 (no inadvertent waiver of attorney-client privilege where, *inter alia*, "the time it took [the proponent] to rectify the error was extremely short"); *Berall v. Teleflex Medical Inc.*, 10 Civ. 5777 (LAP), 2021 WL 5989936, at *4 (S.D.N.Y. Dec. 17, 2021) (finding privilege waived where, *inter alia*, "[i]nordinate delay occurred" where the proponent "did not attempt to rectify the privileged disclosures" in a prior administrative proceeding); *Desouza v. Park West Apts.*, No. 3:15-CV-

01668 (MPS), 2018 WL 625010, at *3 (D. Conn. Jan. 30, 2018) (finding privilege waived by disclosure where, *inter alia*, the proponent "waited over a month" before filing a motion to strike without "any explanation for the substantial delay"). Schulte's failure to promptly seek to rectify the disclosure of a document he now claims to be privileged both contradicts his new privilege claim and demonstrates that any claim has been waived.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court enter an order denying the Motion.

Dated: New York, New York
       April 7, 2022

                                           DAMIAN WILLIAMS
                                           United States Attorney

                                    by:    _____/s/_____
                                           David W. Denton, Jr. / Michael D. Lockard
                                           Assistant United States Attorneys
                                           (212) 637-2744 /-2193

cc:    Joshua Adam Schulte (by mail)
       Standby counsel (by ECF)