**EXHIBIT 2**

Presumption of Innocence: A petition for a redress of grievances

BANG! BANG! BANG! I awoke with a start. It's still dark outside and my phone reads 5:30AM. BANG! BANG! BANG! I jump up and just as I reach out for my apartment door I see the lock unlock, the door open, and immediately 10-12 men in full bulletproof vests, guns, and siege equipment burst into my apartment and throw me against the wall. "FREEZE!" they yell. "Turn around and put your hands behind your back." It's safe to say that I'm no longer groggy nor do I remember anything about the pleasant dream I most likely had before I was awoken. I feel the adrenaline shoot through my body and I'm more alert than I've ever been as I survey the intruders in my apartment. I obey every command. They search my apartment hoping to find some contraband. Eventually one of them grabs clothes from my closet and tells me to get dressed. I am not permitted to use my cell phone or do anything except dress. They congratulate each other as they lead me to their vehicles outside. It's a cold, crisp morning—no one around to witness the unusual scene taking place before me. As I sit in the back of the car I wonder the true necessity of breaking into someone's residence in the early morning with 10 armed agents who know full well that I am not a threat. Perhaps it's just protocol? Or is there some more nefarious purpose such as an attempt at intimidation? Somehow I doubt Paul Manafort or any wealthy individual suspected of a crime is treated this way. Once we reach our destination, the agents lead me around like a prized dog—they beam with pride as if I were a huge accomplishment. I'm fingerprinted and my picture is taken several times throughout the morning, but eventually I'm turned over to the U.S. Marshalls at the courthouse. The Marshalls have a stricter protocol and in addition to handcuffs affixed to a chain around my waist to keep my hands in front of me, my ankles are also uncomfortably cuffed as well. These ankle cuffs make it extremely difficult to walk forward, and I do so at a slow pace. I'm led to what looks like a holding area with several cells the size of a small room. The Marshalls remove my handcuffs, but leave the ankle shackles as they direct me into one of the cells with several other arrestees. It's still relatively early, but everyone just keeps to themselves. There are long concrete benches that are about as comfortable to sit on as they look. The first few people grab rolls of toilet paper from the toilet at the back of the cell and use them as pillows as they lay across the benches, but eventually the room starts to fill up so they sit up. The best position though is leaning up against the bars at the front of the cell. Regardless, the entire room is freezing as large AC units near the back blow at full strength and everyone in the cell either has their hands inside their shirt or are doing something to try not to freeze to death. Large stretches of time pass as many people come and go. There is no clock or any schedule that we are told so everyone just sits patiently waiting their turn. If you are wealthy then your attorney will meet with you to discuss the charges and game plan, but if not, you are assigned a public defender who you typically won't meet until the first appearance. Eventually it's my turn and I'm led out before a magistrate judge.

For most people this is the first time that the official complaint is presented before you. Note that the complaint and all evidence against you are obviously not shared with you beforehand. You

are not entitled to discovery until after arraignment. The government does not provide evidence for you nor does your attorney—the point here is you don't start off on an even footing at all at your first appearance. "The purpose of this proceeding is to inform you of certain rights that you have, to inform you of the charges against you, to consider whether counsel should be appointed for you, and to decide under what conditions, if any, you should be released. You have the right to remain silent. You're not required to make any statements. Even if you have made any statements to the authorities, you need not make any further statements. Anything you do say can be used against you. You have the right to be released either conditionally or unconditionally pending trial unless I find that there are no conditions or combination of conditions that would reasonably assure your presence in court and the safety of the community. You have the right to be represented by counsel during all court proceedings, including this one, and during all questioning by the authorities. If you cannot afford an attorney, I will appoint one to represent you."

The purpose of your first real hearing is to determine bail in accordance with the 8th amendment: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Therefore, I am here to determine what bail will be set that I must pay to assure the court that I will show up to future court dates. This very concept seems odd—the notion that I must pay money or go to prison. Oh and there's an added stipulation—the Bail Reform Act of 1984 legalized pretrial detention of the accused on the basis of "flight risk" or a "danger to society" for the first time in the history of the country. This strange concept, which clearly seems at odds with the presumption of innocence, was only introduced in this country 30 years ago. Somehow, this law was determined to be consistent with the 8th amendment and bail set at infinity was in fact not excessive at all. This law was determined consistent with the 5th amendment and the due process clause, overruling the Court of Appeals who ruled it categorically prohibited pretrial detention. The Supreme Court ruled that The Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest. This law was determined consistent with the 6th amendment guarantee of a right to a fair trial.

Why would I worry though? I am granted a presumption of innocence by law and due process through the Bill of Rights. Today is the first time I have ever seen these charges or ever been charged with this before. "The government seeks detention and believes the defendant is both a flight risk and a danger to society." My stomach drops. The crime I am charged with is in fact a non-violent, victimless crime. However, it is argued that since I am accused of a crime then it is possible that I could commit violent crimes. It is argued that after being accused of a crime then it is much more likely that if I am allowed to leave court then I will either attempt to flee the country without a passport or I will immediately commence violence on others. The bail argument continues for hours but it seems like days. How can this be happening? How can a judge actually sit there mulling over sending me to prison? Please tell me a presumption of innocence really does exist and isn't just some buzz word thrown around in legal arguments

without any true meaning. Finally, the judge quiets both sides and states that he has made a decision. The judge states that the evidence presented by the government in the complaint is so strong, and that since my lawyer could not adequately rebut their argument of dangerousness his viewpoint is that there is no way I am innocent. I am immediately remanded. My case begins with a guilty verdict and denial of all civil rights.

JAS_020296

### Presumption of Innocence: A loss of citizenship

"… nor be deprived of life, liberty, or property, without due process of law." The declaration of guilt and revocation of the Bill of Rights upon accusation of a crime is incompatible with American values and yet I am led away in chains. Nevermind the legality or constitutional controversy—Freedom has always been a hallmark of American society. We believe ourselves to be a free nation and our Constitution a shining example of democracy to the rest of the world. Yet, over 20% of our 2.2 million incarcerated are in pretrial. 20% of our prison population has not been convicted of a crime.

And so I am led back to the holding cell. We wait the remainder of the day until everyone has been to court. At the end of the night, the Marshalls herd us to a bus and drive us from the courthouse to the detention center. On arrival, those of us who are new are separated so that we can complete the entry paperwork and processing and change from our street clothes to the standard prison-issue uniform. People are generally cordial as they reunite with old prison friends or family members who have always been in the system. There is a general interest in helping new people to the federal system: You're on your own. Best advice people give is that your public "pretender" will not work on your case or do anything on your behalf unless you specifically tell them to do so. The prisoners recount stories of past cases and ineffective counsel, but the top advice is to eventually plead out. Mandatory minimum sentencing is set so high that to risk trial is to risk 10+ years. The federal prosecutors will always offer pleas of only a fraction of the mandatory and so regardless of your innocence or case potential everyone always pleads guilty just to avoid the ridiculously high sentences. We are eventually fed for the first time with sandwiches as we finalize processing. In addition to the uniform, you are given bedsheets (no pillow), a cup, spork (only one you get so don't lose it!), toothbrush and paste, bar of soap, towel, and a roll of toilet paper. Everyone enters the prison onto the temporary holding floor into one of several 120-man blocks. On our way up, the guard leaves us in the elevator for several minutes and two of the other inmates joke about taking off, but remind each other that it's definitely a violation. This conversation perfectly illustrates the prison mindset; most people don't want any trouble, and instead, seek to minimize confrontations of violence or anything that could lead to a violation and added time. That said, prison, including these detention centers, are definitely an entirely different society. I sometimes marvel at the economic ingenuity and sociological principles that dictate behavior. The prison monetary system is built on food from the commissary and certain non-perishable food items that retain their intrinsic value. People hustle their prison trades such as tailors, cooks, manufacturers of certain items, drug trade, etc. The biggest social "no-no" so-to-speak is to call someone a "bitch" or for you to "punk" someone to make them appear like a bitch. This will almost always lead to a confrontation if not a straight fight. Alphas sometimes probe for weakness, and if you don't stand-up for yourselves then that may well lead to incessant bullying where you may lose food or other possessions or privileges. Keep in mind that many people here are convicted murderers, rapists, or potentially anything. Some are even facing life sentences ("lifers") with literally nothing to lose. Oh, right—

they wont ask you until a month after your processing, once you sit down with the unit team, but you are actually given the option to either be put here in general population or the hole, AKA solitary confinement. Your choice, though.

Another big rule to protect yourself in federal prison is to never discuss your case with anyone. Any detail you give people and they can and will jump on your case. People are vultures and will do anything to help their own situation. You give detail, they go to your prosecutor, give minor details you told them in combination with invented details, and now their sentencing is reduced and you gain a conspiracy charge or a confidential informant against you on your case. The federal prosecutors know this happens and most of the time the information is bogus, but they eat it up anyway. Any scenario that encourages disloyalty, dissention, and "snitching" is a powerful psychological tool. Some inmates proactively go around asking everyone about their case to try and jump in, so just don't tell anyone anything. It's sad especially when false or bogus information leads to continued bail denial or increased charges, but dishonesty and deception have always been the M.O. of the FBI ever since J. Edgar Hoover and his illegal attempts of harassment, intimidation, and blackmail against perceived threats to his influence including Martin Luther King, Jr and U.S. presidents. His treachery and abuse of power running the FBI are matched only by the Gestapo. Today, the FBI is an inept, deceitful organization with incredible power to destroy lives. Congress has given them and U.S. attorneys powerful new tools from mandatory sentences enacted in the Boggs Act of 1952 to plea bargaining asserted in Brady v. United States in 1970 to the inception of preventive detention in the Bail Reform Act of 1984. The government is so now so efficient at mass incarceration that the sky is the limit. The prison industrial complex is a robotic behemoth, devoid of empathy, that seeks punishment over rehabilitation and condemns entire generations to slavery.

Anyway, we finally get settled into our cells and meet our assigned cellmate ("celly"). They segregate the 2-bunk cells by race. Hopefully, your celly isn't violent, psychotic, dealing drugs, or in possession of a knife or anything. Ultimately, you are held responsible for what may be found in his locker or even his actions. As we settle in, we are given half a mattress and no pillow, enjoy! Pillows ae actually considered contraband and are banned. The mattresses are either cut in half due to lack of resources or used by the inmates to make the illegal pillows. Oh, right, speaking of a lack of resources—if you don't have a commissary account or can't hustle a jailhouse trade then you will likely go hungry; You will have to rush to be at the front of the chow line, then get in the seconds line while you scarf down your meal standing up and pray there is extra, because the prison food is not only unpleasant but incredibly lacking such that everyone typically pays extra for food from the commissary. Ah, I finally meet my new celly. He's in for bankruptcy. He's a nice guy who's on medication for a mental illness and is partially deaf and disabled. He admits to the crime as many inmates do, and also similarly states he did it simply to get sent back to prison on purpose. He was starving, living in the streets with no government assistance. He had to make a choice to either die in the streets or commit a crime; no, not a choice as there really is no decision to be made. He is simply one of the many that

society has completely failed. It was in this moment that I almost cried for the first time in prison. I truly, deeply felt so bad for him and the others as I looked around. Most were uneducated who have known nothing else than a life of crime and prison since childhood. I had been extraordinarily lucky to be born into privilege. I was lucky to possess the intelligence, communication skills, and determination that many here were lacking. The government preys upon the poor and the weak. It was in this moment that I realized I could not let this continue. I felt an incredible wave of emotion as I had an epiphany—this is my true calling in life. This is what I was sent here to do. I will bring this "justice" system crumbling to its knees.

Presumption of Innocence: Do you want to play a game?

The criminal justice system is nothing more than a game. Particularly in the federal system, prosecutors are handed everything on a silver platter: confidential informants, video evidence, phone and wiretaps, admission to undercover agents, etc. The FBI and AUSA have had decades to perfect their system against the accused and they are exceptionally good at it. Not due to intelligence, mind you, they simply follow a playbook much like a tech support. Any slight deviation that forces them to think for themselves typically results in failure. The FBI playbook dates back to J. Edgar Hoover—a man known for transforming the FBI into his personal secret police and using them to covertly and illegally collect evidence and scandalous information to build secret files to directly intimidate and harass all those he deemed as a threat to his power. Most incredulous were his attempts to undermine the civil rights movement, proposal to suspend the writ of habeas corpus, and even blackmail congressmen, senators, and presidents to maintain his power. Hoover was a conniving, deceptive man who had no respect for the law and only sought power; he was ruthless at imposing his will and the full weight of the federal government on all he judged guilty utilizing any means necessary to destroy. Clearly, an inspirational hero to the bureau that he created and where he is today still honored as the name of their headquarters.

The first huge addition to The Playbook was the invention of mandatory sentencing in the Boggs Act of 1952. Guess what crime that Congress found so abhorrent that it justified the necessity to compel all judges to impose a mandatory prison sentence if convicted of 2-10 years in prison? Possession of marijuana. That's right, the simple non-violent, victimless crime of possessing marijuana, which today is legal in many states, required the defendant to spend AT LEAST two years in prison. Two years in prison. Two years of your life lost forever because you literally had marijuana in your pocket. This law was passed out of fear to target Mexican immigrants who were bringing it with them across the border. Literally, fearmongering of immigrants and propaganda films released to demonize marijuana and all those who used it prompted its criminality and the inception of mandatory sentencing. This was the building block for the prison industrial complex and modern-day slavery, the cascading effects of which we still feel today; it has had a devastating impact on the poor.

After the implementation of stiff mandatory sentencing, the next major addition to The Playbook was handed over by the Supreme Court in the 1970 Brady v. U.S. decision. The Supreme Court formally recognized plea bargaining which has revolutionized the criminal justice system. With Congress' creation of extremely high mandatory sentencing of 5, 10, 15 year sentences they could now avoid trials altogether by offering less than minimum for a guilty plea—and so began the downfall of trials and trial lawyers; no one would dare risk the potential minimum of 10 years in prison if they could plead out to 3. The Supreme Court itself even recognized this and warned that plea incentives which were sufficiently large or coercive as to over-rule defendants' abilities to act freely, or used in a manner giving rise to a significant number of innocent people pleading guilty, might be prohibited or lead to concerns over constitutionality. Specifically, associate judge Byron White wrote the following in the case opinion: "This is not to say that

JAS_020300

guilty plea convictions hold no hazards for the innocent, or that the methods of taking guilty pleas presently employed in this country are necessarily valid in all respects. This mode of conviction is no more foolproof than full trials to the court or to the jury. Accordingly, we take great precautions against unsound results, and we should continue to do so, whether conviction is by plea or by trial. We would have serious doubts about this case if the encouragement of guilty pleas by offers of leniency substantially increased the likelihood that defendants, advised by competent counsel, would falsely condemn themselves." As to this coercive effect, in the book Presumed Guilty: When Innocent People Are Wrongly Convicted (1991), author Martin Yant discusses the use of coercion in plea bargaining:

> Even when the charges are more serious, prosecutors often can still bluff defense attorneys and their clients into pleading guilty to a lesser offense.

> As a result, people who might have been acquitted because of lack of evidence, but also who are in fact truly innocent, will often plead guilty to the charge. Why? In a word, fear. And the more numerous and serious the charges, studies have shown, the greater the fear. That explains why prosecutors sometimes seem to file every charge imaginable against defendants.

This is exactly what happened with the toxic combination of mandatory sentencing and plea bargaining as is readily apparent in the 97% plea bargain rate that we see today. Additionally, the effect of mandatory sentencing was to taint the justice system. Juries no longer simply decided guilt or innocence of a crime—they now imposed sentencing; however, it is typically not permitted to inform juries which crimes carry mandatory sentencing or for how long! Why is this? If the jury knew the absolute absurdity of some of these mandatory sentencing they would have no choice but to engage in jury nullification and find the defendant not guilty. Many Americans don't even know that they possess this powerful check on both Congress and the Judicial system—to find a defendant not guilty based on external factors to the charges, namely, treatment of the defendant, disagreement with the law, disagreement with the sentencing, or really for any reason whatsoever.

Ironically, 1984 is the worst year for the American justice system as it brought about the absolute destruction of liberty for the accused. Big Brother obliterated fairness as the "presumption of innocence" we so naively associate with American justice was written into law whose description was entirely antithetical to the concept as some sort of deceptive double-speak. In the Bail Reform Act of 1984, Congress created a preventive detention system for the first time in the history of our great country. In doing so it violated a myriad of Constitutional amendments. It violated the 8th amendment by allowing the excessive bail of infinity to be imposed and the infliction of cruel and unusual punishment on those accused of a crime. It violates the 5th amendment's due process clause which implies "innocent until proven guilty" and a decision by a judge to incarcerate is in direct violation of innocence. The creation of this process of imprisoning people without a trial also very clearly violated the 6th amendment; There is no

possible way a fair trial is even possible when the accused is incarcerated throughout the entire trial. Not to mention the harm to one's personal and professional reputation, health and well-being, and inability to adequately assist in your own defense. You lose income and the ability to effectively communicate with your attorneys. You lose the notion of fairness as you are brought to your trial in chains from prison. Today, more than 20% of the entire prison population are in pretrial. These 450,000 accused is almost the same total of the entire prison population in 1980 of 500,000. In 2014 the prison population exceeded 2.2 million people. In 1987 these constitutional concerns were raised to the Supreme Court in U.S. v. Salerno. The Supreme Court erroneously upheld the law. In Chief Justice Rehnquist's opinion of the court, he stated "the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." (He further referenced his opinion of the court in Bell v. Wolfish). I'm not sure how else the court could view incarceration—a reward? A great vacation? The Supreme Court is made up by man, which is not infallible, and so neither is the court. They have made mistakes in the past, but to uphold the notion of preventive detention for 30 years is a devastating assault on the funding principles of our country of which I'm sure our forefathers are turning in their graves. Justice Thurgood Marshall seemed to vehemently oppose Rehnquist as well in his dissent:

> This case brings before the Court for the first time a statute in which Congress declares that a person innocent of any crime may be jailed indefinitely, pending the trial of allegations which are legally presumed to be untrue, if the Government shows to the satisfaction of a judge that the accused is likely to commit crimes, unrelated to the pending charges, at any time in the future. Such statutes, consistent with the usages of tyranny and the excesses of what bitter experience teaches us to call the police state, have long been thought incompatible with the fundamental human rights protected by our Constitution. Today a majority of this Court holds otherwise. Its decision disregards basic principles of justice established centuries ago and enshrined beyond the reach of governmental interference in the Bill of Rights.

Furthermore, the incredible research white paper titled "The Effects of Pre-Trial Detention on Conviction, Future Crime, and Employment: Evidence from Randomly Assigned Judges" was published in 2016 by Will Dobbiey, Jacob Goldinz, and Crystal Yang. Their work is remarkable and their conclusion undeniable:

> This paper estimates the impact of being released before trial on criminal case outcomes, future crime, formal sector employment, and the receipt of government benefits. We find that pre-trial release significantly decreases the probability of conviction, primarily through a decrease in guilty pleas. Pre-trial release mechanically increases pre-trial crime and failures to appear in court, but has no detectable effect on future crime. Finally, we find suggestive evidence that pre-trial release increases formal sector attachment both through an increase in formal sector employment and the receipt of tax- and employment-related government benefits. Many of the estimated effects are larger for defendants with

no prior offenses in the past year and defendants employed in the year prior to bail. We argue that these results are consistent with (i) pre-trial release strengthening defendants' bargaining position during plea negotiations, and (ii) a criminal conviction lowering defendants' attachment to the formal labor market.

Pre-trial release decreases the probability of pleading guilty by 12% and the probability of being found guilty by 15.6%. Pretrial detention is therefore a contributing factor to the verdict and in direct violation of the 6th amendment's guarantee to a fair trial.

Where else did the Supreme Court fail us in 1984? The Good Faith Doctrine, which was established in U.S. vs. Leon. Search warrant affidavits were overturned previously due to negligence and incompetence by officers. The Supreme Court thus sought protection for these officers by providing a good faith exception to the exclusionary rule to the 4th amendment. What this means is search warrants in federal court cannot be thrown out because the probable cause is found to be false or an officer was negligent or even incompetent in compiling the affidavit. In fact, a judge can't even rule that based upon the evidence provided in stark contrast to the probable cause that he would not have found probable cause himself to issue the warrant. Essentially, even if the warrant is entirely false as long as the officer tried his hardest then the evidence is still admissible in court. How absurd! The court stated that an officer acting in good faith and within the scope of a search warrant should NOT be subjected to 4th amendment constitutional violations. If the officer had reason to believe their actions were legal then it is legal. Thus, the more ignorant law enforcement officers are, the more they'll be able to get away with. And so, the standard for challenging search warrants in federal court were drastically raised so that you must show the officer outright lied or acted in a reckless disregard for the law. I once again find myself in good company, as once again, Thurgood Marshall dissented. He joined Brennan in this dissent:

> Ten years ago, in United States v. Calandra, 414 U. S. 338 (1974), I expressed the fear that the Court's decision "may signal that a majority of my colleagues have positioned themselves to reopen the door [to evidence secured by official lawlessness] still further and abandon altogether the exclusionary rule in search and seizure cases."

> Id. at 414 U. S. 365 (dissenting opinion). Since then, in case after case, I have witnessed the Court's gradual but determined strangulation of the rule. It now appears that the Court's victory over the Fourth Amendment is complete. That today's decisions represent the piece de resistance of the Court's past efforts cannot be doubted, for today the Court sanctions the use in the prosecution's case in chief of illegally obtained evidence against the individual whose rights have been violated -- a result that had previously been thought to be foreclosed.

> […]

Although the Court brushes these concerns aside, a host of grave consequences can be expected to result from its decision to carve this new exception out of the exclusionary rule. A chief consequence of today's decisions will be to convey a clear and unambiguous message to magistrates that their decisions to issue warrants are now insulated from subsequent judicial review. Creation of this new exception for good faith reliance upon a warrant implicitly tells magistrates that they need not take much care in reviewing warrant applications, since their mistakes will, from now on, have virtually no consequence: if their decision to issue a warrant was correct, the evidence will be admitted; if their decision was incorrect but the police relied in good faith on the warrant, the evidence will also be admitted. Inevitably, the care and attention devoted to such an inconsequential chore will dwindle. Although the Court is correct to note that magistrates do not share the same stake in the outcome of a criminal case as the police, they nevertheless need to appreciate that their role is of some moment in order to continue performing the important task of carefully reviewing warrant applications. Today's decisions effectively remove that incentive.

Moreover, the good faith exception will encourage police to provide only the bare minimum of information in future warrant applications. The police will now know that, if they can secure a warrant, so long as the circumstances of its issuance are not "entirely unreasonable," ante at 468 U. S. 923, all police conduct pursuant to that warrant will be protected from further judicial review. The clear incentive that operated in the past to establish probable cause adequately because reviewing courts would examine the magistrate's judgment carefully, see, e.g., Franks v. Delaware, 438 U. S. 154, 438 U. S. 169-170 (1978); Jones v. United States, 362 U. S. 257, 362 U. S. 271-272 (1960); Giordenello v. United States, 357 U. S. 480, 357 U. S. 483 (1958), has now been so completely vitiated that the police need only show that it was not "entirely unreasonable" under the circumstances

And so, the Bill of Rights has eroded as the power and scope of the federal government has grown. The destruction of the justice system in the United States is relatively recent, and people simply don't fully understand what has happened. From the creation of mandatory sentencing to plea bargains to preventive detention and the good faith exception, the federal government has become as efficient at overriding liberty and incarcerating people as the machines were at obliterating Zion and the human race in the Matrix. Their emotionless pursuit for fuel to their system is devoid of all humanity.

Presumption of Innocent: Detention is not punishment

Prison is not exciting. Most people have no concept prison. Up until my first arrest I also had no real concept of prison or the justice system. Like most of you I assumed that justice was blind and that those who whined about inequality and injustices were simply the guilty that did the crime, but were unwilling to do the time. I hope that by now you are at least questioning these preconceived notions about what is going on in our justice system. My motivation for writing this redress of grievances is to present the information to you, to hopefully change minds, and ultimately ignite a civil rights movement to restore these civil liberties that congress and the courts have pilfered; we have been blind and content as our rights have eroded. I will step up and demand change. I will fight for the poor and uneducated who have been nameless, forgotten victims to the system for generations. Kalief Browder, anyone? Though, I cannot do it alone.

The hardest part of prison is time. Time is what makes prison, prison. A single day in prison feels like weeks. Endless time without much to occupy it with. You do have options—You can lay on your half-mattress cot all day, but that gets hard because eventually your celly needs to shit and you don't particularly want to return immediately after. Oh right, prison isn't summer camp if that isn't clear—you have a toilet and sink in your cell. The cell consists of a small room with metal bunk beds, a metal desk and slide-out seat, lockers, toilet, sink, and a small window with bars across it. Like everything in prison, cells with the best views will cost you. If for some reason you want to be able to wake up each morning and peer across the New York Harbor at the Statue of Liberty and Manhattan then you will likely need to pay for that privilege. Once you have the cell you want, you can decorate it with magazine cutouts, pictures, or anything you can find to try and make it feel like home. In detention centers, people in pretrial are there for the extended-stay who either try to find other pretrials they like to be their cellmates or they ride out the various short-term newcomers hoping that the unit will fall below capacity and maybe they could get the cell to themselves. As a visitor, you are essentially staying in someone's home and so you abide and respect their house rules. You will always get the top bunk and the worse locker to store your scant belongings. Some inmates me even have special rules for using the toilet. One of my cellmates kept a special covering around the lid and had it closed at all times to either be used as an extra seat or used for prepping food to be cooked. If I ever needed to urinate then I was instructed to open the lid and sit backwards on the toilet. I would then reach up my shorts for my penis and pull it outside my underwear and pee like that to avoid splatter or making too much noise at night. He even produced his own scented spray if you needed to take a dump. For privacy, the prison convention is to throw your towel over the window imbedded in the door and then shut the door so no one could peek into the cell.

Outside laying on your cot and shitting, you have the option of sitting out in the common area on the most uncomfortable metal seats in the world, but careful—some seats are designated for the people who run the prison and even if they are not currently sitting there you would obviously not be permitted to use their seat. Prisons in the federal system are run almost entirely by the prisoners. There is one officer in a unit of 120 who oversees that the rules are followed and keeps

JAS_020305

the peace, but the orderlies clean, cook, and provide all upkeep to the unit. Anyway, once you have found a seat then you can choose to watch one of the 4 TVs which are split between Telemundo and BET. There is no sound, but you can purchase a device that allows you to tune to one of the channels and listen to the audio. You can choose to play a dice, domino, or card game with the other inmates, but be careful because gambling is commonplace. If you aren't careful and end up owing someone money that you can't pay back in prison or have someone pay on your behalf outside of prison then you will die. So, best to avoid gambling unless you are incredibly lucky. You can choose to enter the small prayer room that is shared amongst the various religions and sit on the provided concrete slab to pray. The most devout religious group is Muslims. Sure, there are many people who claim to be Muslim or Jewish for the allegedly better food, but you will usually see the same 5-7 people in this room all the time or reciting the Adhan, the Islamic call to worship, throughout the day and night. Aside from the prayer room, you can power walk around the unit as a form of exercise. You can choose to walk "outside" to a basketball court where one of the walls has high window-like ventilation to the outside world. Now, you can't actually see anything but you do get the fresh air. In here, depending on the time-of-day you can participate in basketball, soccer, racquetball, smoking, or a dice game. You can also just stand around and just take in the fresh air.

If you are lucky enough to have someone put money into your commissary account then you may be able to purchase some puzzle books or notebooks. Actually, there are some bare necessities you must purchase: shower shoes. If you try to shower without purchasing shower shoes then you will almost certainly contract MRSA or some other skin-eating staph bacteria. Prison is crawling with infections especially staphylococcus so you need to be on your A-game with hygiene: Wash your hands frequently, buy extra soap, and never touch your face. With commissary you can also use the phone for 15-minute intervals every few hours at a cost of $3.50 and a maximum of 20 15-minute phone calls per month. You can create an internal prison email account to send and receive emails at a minutely charged rate. Note that all these email and phone conversations are recorded and can be used against you regardless even if you are speaking to your lawyer. All people you communicate with must first be vetted and approved. Yeah, did you think that pretrial confinement was only a violation of the 5th, 6th, and 8th amendments? Let's hit the first amendment: In prison you are most certainly not granted freedom of speech. Anything and everything you say or write is closely monitored. They do read all your hand-written notes, emails, etc. You have no right to assemble and damn sure no right or even possibility to petition the government for a redress of grievances. You don't have rights in prison—you aren't even separated as pretrial from convicted murderers who are sent here for punishment, and yet, somehow this is not punishment for you? Your neighbor or the person sitting across from you is here because he has been convicted of a crime. He is here to be punished. He has all the same privileges, or rather, lack of privileges, denial of civil liberties, and exact same conditions as you. Yet, you are not here for punishment. "Contradictions do not exist. Whenever you think that you are facing a contradiction, check your premises. You will find that one of them is wrong." I'm sure everyone is wondering about checking your twitter and

JAS_020306

facebook, but no, you have no internet access nor can you check-in to prison on facebook or send tweets. You may well have just been abducted from your home and remanded into custody and no one would even know. People will text, call, email, FB and private message you asking WTF you're doing, but alas, you're too preoccupied enjoying a Rehnquist vacation to respond. Do (did) you have a job, own a business, or have bills to pay? Fired. Bankruptcy. Scheduled appointments and a life to live? Not anymore! You've been accused of a crime, why would you think otherwise? If you want to attempt to avoid bankruptcy or need someone to handle your finances then you need to find a really trustworthy person and grant them power-of-attorney. Let's hope that you have this person's phone number memorized and you don't just rely on your cellphone for storing people's numbers because you may find yourself in quite the pickle. Do you have two-factor authentication or extra security for your bank accounts and email? Hmm, that's going to be a huge problem too. If you are able to find an honorable, trustworthy person who can dedicate huge swaths of their time to you then all you can do is hope that they do a good job, because from this point onward you have no contact with the outside world in any capacity. You are helpless. You are hopeless. You are alone.

The government is not paying your rent or mortgage. The government will not reimburse you at all in any way whatsoever. You are accused of a crime therefore you are no longer even considered a U.S. citizen no do you have any rights. You can't vote even though you've never been convicted of a crime. No first amendment rights. What about the 2nd? LOL. 4th? Your room and locker are searched at any time for any reason and anything can be confiscated and/or used against you. 5th, 6th, 8th? Denied. In fact, it's easier to list the few amendments from the Bill of Rights that are NOT violated by pretrial detention: 3, 7, 9/10.

I cannot capture the true essence of prison in words. I cannot capture how it feels to be thrown in prison without conviction of a crime; it's as if I'm in a dream. The world I knew where justice and honor existed were a delusion. I've been lied to and believed I lived in a world that never actually existed. I chose the blue pill, but the red pill was shoved down my throat and I awoke in a world I never imagined I could ever possibly find myself. The feeling and experience are so profound that it is unrelatable, and I think this is part of the reason no one cares about criminal justice reform. Only those who have been abused and violated by the system truly know the extent of the problem. We are subhuman, treated like animals, no, worse than animals. Meanwhile, the rest of America go about their daily rituals, content with their own lives and completely unaware of what is happening in our country. Unaware of Kalief Browder. Unaware of the much tamer yet commonplace experience that I have endured.

Endless time.

Your case may last years and in fact many people had 2-3+ year cases and still going. Over two years in this mindless, inescapable torture. It truly is torture. The prosecution, meanwhile, loves pretrial detention. They argue it for every case regardless if they even believe the individual should actually be detained simply for the chance to torture and exert maximum pressure on the

accused to plead guilty. They will attempt to slow-roll and keep your case going as long as possible. Do you think they care if you are innocent or actually have a solid case? Do you think they care if it destroys your life, your family, and bankrupts you? Even if you are ultimately found innocent you must try to pick up the pieces to your life and return to the world. They destroy all in their wake.

Presumption of Innocence: Innocent until proven Wealthy

"The defendant with means can afford to pay bail. He can afford to buy his freedom. But the poorer defendant cannot pay the price. He languishes in jail weeks, months, and perhaps even years before trial. He does not stay in jail because he is guilty. He does not stay in jail because any sentence has been passed. He does not stay in jail because he is any more likely to flee before trial. He stays in jail for one reason only – he stays in jail because he is poor." – President Lyndon Johnson, at the signing of the Bail Reform Act of 1966

Each year the U.S. imprisons more than half a million individuals who have never been convicted of a crime, largely because they are unable to post bail. Can you even imagine sitting in prison simply because you aren't wealthy enough? How is this fair? How is this American? Since pretrial release has a direct positive correlation with the probability of a successful trial then wealth becomes a criterion of guilt or innocence and a direct factor in all criminal proceedings. There is also a staggering divide in the available attorneys for the wealthy and the poor. If you are rich then you can afford the top-notch O.J. representation. If not then you are assigned a random attorney who earns far less than any private attorney or firm. These public defenders often have many more clients than private attorneys and thus divide their time into much smaller chunks per client. These attorneys are hit or miss; some may well use your case as a bargaining chip for other of his cases when negotiating with the prosecution, some may be completely incompetent or horrible and incompatible with you, etc. Think about it, if you had unlimited resources who would you hire? Who would you want to take your cause considering the result may mean life in prison?

Presumption of Innocence: Can you afford to be accused?

Federal indictments against you are prohibitively expensive. I would not recommend the experience. Regardless of the outcome your life is forever changed. If you owned a home or had a 401k or any life savings before the indictment, you will have none of them after. The cost of legal defense pre-indictment will run you $30,000-$50,000 conservatively. The cost of legal defense during pretrial will run you an additional $60k-$150k. The cost of a trial will run you from $100,000 to $250,000+. The total I have spent so far through pretrial is $150,000. I've also spent an additional ~$18,000 on rent and other miscellaneous expenses. I've lost my job, health insurance, friends, my reputation, and an entire year of my life—and this is only the beginning.

After some time in prison my attorney re-argued bail and I was released with the following restrictions: 24-hour home incarceration under strict pre-trial supervision, surrender all passports and agree not to obtain any new passports, avoid all contract directly or indirectly with any victims or witnesses, not possess a firearm, submit to GPS location monitoring, refrain from possessing a computer, any electronic device, or accessing the internet. They even went so far as to ban my Roku, Amazon echo, fitbit, and HD Homerun, but allow my Smart TV. It was argued that my background in the tech industry could have an impact or interfere in the case including pretrial's ability to monitor my access. My understanding is the only additional condition of release that I did not get was private security detail to immediately shoot me if I violated any condition.

I was told that since I was under house incarceration that I was banned from even opening my apartment door—I could not take out the trash down the hall, use the fitness room in my apartment, use the apartment deck, shop for groceries, attend mass, or even vote in the upcoming election. The only reason I could leave was for court appearances or attorney visits which had to be approved at least 48 hours in advance. Recall that all these restrictions have been imposed on me simply because I was accused of a crime.

The ability to leave prison was a huge improvement. I could finally write and call family and my attorney without restrictions. The big problem though is trying to figure out how to live when I can't buy food, take out trash, or use the internet. Today, everything is done online so it's incredibly difficult when the court specifically bans you from it. They could easily monitor access, but the prosecution loves making your life difficult so anything they can do to make you miserable, uncomfortable, and stressed they will do. They didn't actually believe I was a danger to society but they lied and argued it because they know prison breaks people. They didn't need to restrict me to house incarceration with no internet access, but they know it makes it difficult for me to assist on my case; I can only contact my attorneys by phone, I have to schedule meetings two days in advance, I can't see any computer-related evidence against me because most of it is too voluminous to actually print, and for the stuff we can print I have to pay to print it and then I can't easily search it. I can't do research on the law or for specifics on my case, I can't look up my charges or past cases, and in fact I actually have less access under home

JAS_020310

incarceration then I did in prison because prison offered a single terminal for the law library which provided various legal documents in electronic format. I am literally in the dark and relying entirely on my attorney. Banning computer and internet access when both can be easily monitored by pretrial services serves only one purpose: To violate my 6th amendment right to a fair trial by preventing the person with the most knowledge and insight on my case from fully engaging and working on it. I mean, I've been fired and I'm banned from working so I could at least be delving into the discovery and assisting my attorney on prioritizing and deciphering the data yet the court specifically bans me from doing so. All I can do each day is write notes by hand and flip through the TV while hoping and praying my attorney does a good job. What fairness is this? The level of frustration is insurmountable.

In addition to the inability to work on my case or use minimum entertainment services such as Netflix or Amazon prime to distract me, the lack of internet forces financial constrains as well: I have to call a trustworthy individual and give them my email and password as well as logins for credit card services, my USAA login, etc. I need to have them pay my rent monthly on my behalf as well as credit cards and other loan payments and any other recurring payments. I need to make sure my bank accounts have adequate funds as well so I have to direct the liquidation of my retirement accounts and other assets to cover all my expenses. I have to arrange to cancel my gym membership—which typically requires you to do so in person and cancel Netflix and any and all possible memberships that I can possibly think to do. Talking and coordinating with people is also extremely difficult because I have to explain that I cannot do this over the internet or email or text.

It's a heavy burden for those who help you and tensions run high when I try to walk them through the various logins and maneuver sites without seeing what they are doing all the while relying on my memory from several months before I was even in prison. Not to mention the fact that my online security is far less reliant on passwords that can be easily stolen or intercepted, but instead on two-factor authentication and other methods which make it almost impossible for others to access any of my accounts especially considering my cell phone was confiscated. I have to call and cancel my various medical and dental appointments because I am no longer permitted to attend and no longer have insurance anyway. I have to purchase my medication out-of-pocket now and get it delivered somehow. Oh, and since I no longer have insurance I'm now breaking the law and need to figure out how to attain insurance—but how? I can't access the internet to do research or presumably sign up on the Obamacare exchanges. In fact, now that I am banned from working and have all these expenses, I need to figure out how to get on government assistance if I even can? I've never been on welfare or anything like that in the past, but how do I continue living if the government forced me at the point of a gun to remain in my apartment for 24-hours a day and bans me from working? The government has reduced a man who has been earning an honest wage and contributing to society both in taxes and charity to now beg for government assistance. How is all of this even legal at all?? Anyway, I'd like to research into unemployment, welfare, and Medicaid, but how can I do so? Can I even apply for these programs without the

internet? The government has made me some completely helpless that I must depend on others for literally everything including all the basic necessities of life. I ask my attorneys how the government can do this and how people pay for this? They tell me that most people can't even afford this month or two that I've bought myself outside prison. Most people can't even post bail. Most people never make it this far to encounter these problems. Once again money plays a key factor in our justice system. Time and time again if the system proves anything it's that you are guilty until proven wealthy. I'm told that at least I'm out. Yeah, but at what cost? And for how long? What happens when I've sold everything and I have debt to my eyeballs and can't take out another loan? What happens then? Sure, it's a huge improvement to be out of prison but the added stress and anxiety is unbearable. It takes a huge toll on my health too because now I can't exercise by court order or even get any fresh air at all. My body aches and pains as a result and I lose weight and all the muscle I had before as at one point I worked out daily for years. My resting heart rate rises from a 60bpm average to over 100bpm average. Human beings were not meant to be confined to a 700 square foot apartment for months any more than they were meant to be confined in prison. I feel that something is wrong physically, but what can I do really? No insurance, no money, no permission to leave, and no ability to do research or try to utilize online resources. My physical body and psychological state-of-mind are stretched to a breaking point. This is the price you must pay when accused of a crime in the United States of America.

Well, at least I'm out of prison and my 8th amendment rights are no longer infringed. We still have issues with the 6th amendment and my ability to see evidence against me, work on my case in any context, or have a fair trial at all due to these issues. There's still a 5th amendment issue with regards to depravation of life, liberty, and property without due process of law—these restrictions on me are in no way legal, feasible, or moral. 4th? Pretrial services can walk in my residence unannounced at any time and seize anything they deem is a violation of my conditions of release and then immediately have me remanded. Obviously, my 2nd amendment right is completely trampled—it literally and specifically states in my bail that I am banned from possession of any firearm. I really don't think you can find a more absolute and blatant example of a direct and obvious violation of my civil liberties, because you need not infer anything. Recall that I am only accused of a crime, and a non-violent and victimless crime at that which did not involve a firearm or any weapon. Why ban firearms? Why home incarceration at all actually? The violation of my first amendment is actually just as blatant and self-evident. In the description for the home detention program it specifically states that you are permitted to leave your residence for religious services. Under home incarceration, the program I am under, it states a 24-hour-a-day lockdown and is completely devoid of a religious services exemption. I am banned by law from practicing my religion. Does anyone actually still think that I have civil liberties?

I am prohibited from free speech—I own internet-capable devices, but I cannot have them at my residence or even use the internet to practice free speech even though I still pay for it. How do I communicate these notes that I'm even writing? In fact, this is the second time that I have written

all this by hand. My first attempt was while I was in prison, but they don't let you take anything out with you. It's been several months since I've been out and I doubt I'll ever see those notes again so all my writing was done in vain. Will anyone ever read these notes or know what I have gone through? Will anyone know how broken our justice system is? All I want to do is scream at the top of my lungs how broken our justice system is. I want people to hear me, to listen, to make their own judgements about whether they think this is fair. But, I can't type these notes. I can't contact the Washington Post or New York Times to see if they would be interested—and who knows if they would even care? Nobody actually cares about the criminal justice system. It gets no air time. It gets no consideration. No one actually goes through their day thinking about criminal justice reform except those of us who know what is going on. I'm sure there are some organizations out there who may care, but I don't know anything about them. I can't do my own research and see if someone like me has already published something like this to no avail. No, I'm sure all of this is just a mental errand. It's just a way that I keep sane. I have to tell someone my plight because I can't stand the injustice of it all and so this notebook will do. I'm not even a writer anyway and I'm sure this is all hot garbage and un-printable. The last time I wrote a paper longer than a couple pages was most likely high school English. I can't even send this or some scaled down version to my congressional representative or Senator to beg for help not that they would likely do anything since Congress is exactly why I'm in this predicament. Nope, I'm still helpless, hopeless, and completely alone.

Presumption of Innocence: A proposed solution

The purpose of this redress of grievances is to illustrate to the American people that our criminal justice system is incredibly broken; there does not exist a presumption of innocence, fairness, or justice. The judges and officers of the court up to the Supreme Court itself should be ashamed. They have failed to safeguard the Constitution and have, in fact, assisted in the erosion of our civil liberties. They have failed to protect vulnerable citizens. They have failed to properly utilize the checks and balances of the federal government to enforce the fundamental principles of a Republic: The rule of the majority, but the protection of those in the minority through law. Even though the poor and those accused of crimes are in the minority, the courts are supposed to protect them and prevent Congress from passing laws that specifically target them. The Constitution and rule of law is what separates us from oppressive governments and is the reason for our revolution 250 years ago. Instead, the law has been perverted and twisted into an offensive tool used aggressively to target and destroy many lives. Our perception of law, order, and peace keepers has been corrupted into a system focusing on punishment and incarceration. We have lost human dignity and compassion as we heartlessly send human lives through the meat grinder that is the prison industrial complex. Sorry Ben Franklin, but we were unable to keep the Republic you gave us.

This despicable "justice system" in conjunction with the prison industrial complex and our desire to punish over rehabilitate has created a destructive system of mass incarceration that guarantees repeat offenders and dooms entire generations to this inevitable cycle of enslavement. Those people directly affected see this corrupt and unfair system which consequently completely undermines the notion of justice, law, and order as these disenfranchised people will not recognize the authority or authenticity of the law. And how could you expect them to? It should be clear why we have this contentious atmosphere between police and minorities. The police are the face of the legal system, but the true failure lies with the lawyers, judges, and politicians who have created a caste system where the lives of the poor truly do not matter; they are but fodder and fuel to drive this system. America, the time for reform is upon us.

I humbly ask the American people to step up and challenge our government to fix these disgraceful problems afflicting the justice system. Rise up, the second Civil Rights Movement is upon us. Become a part of history that will resonate throughout time. Do you have the same passion and resolve as the Americans from the 1960s? The courage? We the people have the power to force changes upon our government.

1.) Preventive Detention and Bail Reform: Regardless of your political views, I think that we can all agree that there SHOULD exist a presumption of innocence and a desire to treat the accused fairly and in accordance with the Constitution as envisioned by our forefathers. Surely, YOU would want to be treated fairly. And clearly, a federal judge declaring a defendant guilty upon his arrest is incompatible with a presumption of innocence In fact; the entire concept of bail— that a defendant must pay money for the privilege to leave prison and assist in his own defense is

JAS_020314

abhorrent. Is there anything more corrupt than to demand a bribe for prison release? Are we truly afraid that in 2017 someone may not show up to court and the government couldn't track them down? Also, I'd think you would agree that forcing a defendant to live in an apartment he cannot afford and banning him from purchasing food, attending mass, going to the gym, working, or opening his apartment door for any reason is not compatible with a presumption of innocence either. Now is banning someone from a computer especially in this day and age where internet access is critical for paying bills and very basic communication. All of these things are, in fact, punishments. They very idea of punishing the accused before a trial is contrary to the concept of "innocent until proven guilty". It is un-American. I therefore propose the following amendment:

> Abolishment of bail. Every American citizen accused of a crime has a presumption of innocence and therefore cannot be incarcerated unless convicted of a crime. No exceptions. Release conditions such as surrendering passports, GPS monitoring, and restricted travel can be applied to people accused of a violent crime or those who have previously evaded court. Strict home incarceration can only be applied in the most extreme of circumstances where someone has been accused of mass murder or acts of terror which would call their mental state into question, but all costs must be covered by the government.

This is just an example, but the key here is not allowing any wiggle room for pretrial detention; lawyers will take advantage of any law allowing restrictions. My proposal also restricts the use of extreme bail conditions except for special cases. I think it's reasonable to assume those accused of mass murder or acts of terror may not be in a right state-of-mind psychologically and thus may continue such acts against themselves or others. We must be careful, though. The federal government is not pre-crime: Concerns that someone might commit another crime cannot override his liberty. Today, judges fear releasing an individual who then commits a crime against someone—they fear the new headlines and the threat to their judgeship so they decide to override the rights of the accused since this is the safe option; there are no headlines and no one cares if an innocent man is thrown in prison as long as he's been accused of a crime. Judges fear the majority and override the rights of the minority in face of that fear. This needs to stop. As a free society we must allow individuals to make their own choices. If an accused released on pretrial commits murder then that is a tragedy, but it is no one's fault but the accused. The emotional attempt to justify and infringe upon the rights of the accused and his free choice based on the fear that he would choose to harm someone in the future is antithetical with a free society and the very concept of liberty.

2.) Mandatory sentencing and Prison Reform: The justice system should focus on rehabilitation. Mandatory sentencing clearly focuses on punishment and guaranteeing the prison industrial complex. Recall the court's assessment in Brady v. United States in 1970 regarding plea bargaining and the fear of large or coercive incentives that could over-rule the defendant's ability to act freely or give rise to a significant number of innocent people pleading guilty. Mandatory sentencing provides this and directly over-rules defendant's abilities to act freely as is clearly

evident in the 97% plea rate. Mandatory sentencing also undermines the entire system of justice since it couples the trial verdict with sentencing which has never happened in the history of US law. Judges exist to judge the particular person, crime, and circumstance since all cases differ. Mandatory sentencing effectively ties the judge's hands and completely undermines justice. We must categorically reject mandatory sentencing.

Incarceration at all should be much more limited—non-violent offenses especially should not result in jail time. What of victimless crimes? How can something with no victim even be labeled a crime at all? Our current sentencing guidelines are far too harsh and only destroy lives of both the convicted and the convicted's family and children. Prison is truly cruel torture that should only be used if absolutely necessary. I mean, what is the point? What is the point of sending a man to prison for 10 years for robbing a bank when he did so without violence, was caught 15 minutes later, and all money was promptly returned to the bank? This is what happened to one of my cellmates. 15 minutes after his crime it was literally nullified as if nothing happened and yet he has to serve an entire decade in prison. Tell me, truly, what benefit to society is this? How does this help society or this man? Prison and prison sentencing are far too harsh when we should be focusing on rehabilitation instead. We should be helping these people—psychologists and support groups and support programs to help people get back on track and become contributing members of society. Now, obviously, I'm not saying that we don't need prisons at all. Clearly, some crimes certainly warrant punishment and we do want to dissuade crime with punishment, but that shouldn't be our primary focus.

Consider this, in an article published by the Justice Policy Institute titled "Finding Direction: Expanding Criminal Justice Options by Considering Policies of Other Nations" in April of 2011, they found that the U.S. uses prison in response to offenses more often than comparison nations. Of adults sentenced between 1995 and 2000, the Unites States sentenced 70% of them to prison compared to 33.8% in Canada, 9.2% in England and Wales, 7.2% in Finland, and 7.5% in Germany. The other countries primarily used fines as punishment, but also utilized this notion of "warnings" that does not even exist in the United States. Clearly, they are trying to help and uplift their people instead of focusing on "tough on crime" and complete and utter destruction of those who commit a crime. Not surprisingly, in addition to using prison as punishment 2-7X as often as the comparison nations, we also sentence people to prison terms 3X longer. Controlling for the specific crime, the United States sentenced people 4X longer than Finland, England, and Wales. The average sentence length for all crimes in the United States is over 5 years. The average for all other countries aside from Australia is measured in months (less than a year). The Justice Policy Institute concludes the following:

> When comparison nations do give a sentence of incarceration, the sentence is usually shorter than in the U.S. In the U.S., many believe that longer prison sentences remove people from the community so that they cannot engage in illegal behavior, and that the threat of severe punishment would deter this participation, thus protecting public safety.

However, countries with lower prison populations and shorter prison sentences do not necessarily have higher rates of victimization or reported crime.

The lack of evidence that there is a measurable, consistent correlation between public safety and incarceration across comparison nations indicates that there is opportunity to consider that less incarceration and shorter sentences might yield similar public safety results without the expense or negative impact to people and communities.

U.S. research shows little to no correlation between time spent in prison and recidivism rates. So, these longer sentences do not serve to reduce crime or assist society at all; all they do is keep people in a cycle of slavery and poverty. In fact, similar to the teacher-student ratio and the relationship between class size and achievement, the ratio between prison terms and crime is likely also parabolic; at some point beyond the vertex, the increased sentence length begins to have the contradictory effect of encouraging future crime not to mention this effect on the defendant's family and friends. We are certainly well beyond this vertex. Land of the free indeed.

Let's put an end to prison as a default and most common form of sentencing. Ironically, society's move away from an eye-for-an-eye and quick punishment justice such as stockade or even whippings to long-term incarceration is considerably less moral and just. Our preference to lock people in cages like animals for decades is pure torture, but somehow civilized in comparison to simply beating a man and releasing him. Which would you prefer? Let's take my cellmate convicted of bank robbery—do you believe perhaps a fine or something besides a prison sentence would have been better? Do you think he would rather be beaten or serve a decade in prison? This concept of prison is peculiar too, isn't it? Let's take hundreds of convicted and accused people and throw them together for decades. Surely they would never dare to discussing committing future crimes or perfecting their methods to avoid getting caught in the future or networking to meet and plan with other convicts. Brilliant. I propose the following amendment:

No mandatory sentencing requirements are constitutional. The justice system must focus on rehabilitation: Psychologists and support staff must be provided to all accused in addition to their legal counsel. All prisons must be run directly by the government and cannot be contracted to private companies. The prison population must be capped at 250 prisoners per 100,000 citizens (.25% of the population). No first time non-violent offense can ever result in jail time, and the use of warnings and fines are preferred over prison.

We must put an end to mandatory sentencing and the prison industrial complex. We must considerably reduce our prison population and sentencing guidelines.

3.) The Good Faith Exception and Warrants: It is contrary to due process and the guarantee of life, liberty, and property for the federal government to confiscate private property without and recourse of the ability to contest the judge's decision of the existence of probable cause. The notion that you should have blind trust in the government is entirely counter to the founding

principles of this country. We should be able to immediately view any evidence presented for probably cause and be able to challenge it in court. The process for discovery in criminal cases must also be streamlined. It should not be acceptable that evidence is kept until right before trial. I'm not even comfortable accepting that the responsible for determining what evidence should and should not be turned over to the defense is the prosecutor.

> Any and all warrants including for search and seizure can be immediately challenged in court and the probable cause and all evidence used to assert probable cause is immediately discoverable. The good faith exception to the exclusionary rule is rejected; if the judge finds that probable cause did not exist and/or that he would not have approved the warrant then the warrant must be immediately thrown out. The government must promptly turn over all evidence collected in federal cases. The prosecution no longer has the discretion of determining what can be turned over—All evidence including notes by the prosecutors and police officers must be handed over.

4.) Payment and reimbursement: The concept of "innocent until proven guilty" also clearly aligns with the government paying all associated expenses up until conviction.

> The government must pay all expenses incurred during a criminal trial excluding any outside attorney, but including the necessary hiring of experts. If arrest results in firing then the government must pay the individual what his wages would have been including benefits such as health insurance, etc. If the case is thrown out or the accused is found not-guilty on all charges then he must be entirely compensated for all expenses including outside attorneys and his time.

These or similar amendments are absolutely critical in laying a foundation for criminal justice reform and restoring civil liberties that Congress and the Courts have eroded over the years. These proposed solutions will not solve all the problems, but they do tackle some of the most prominent civil rights issues that many of us so naively thought were already guaranteed by law.

If the American people can come together on these issues then we can force Congress to take immediate action. Only together can we keep the government at bay and forever break the wheel that has been crushing us for years. Until these civil rights are properly restored then the American people should take the following actions:

- All convened Grand Juries decline all indictments
- All juries utilize jury nullification in trials where defendants have been denied these liberties including pretrial detention, charges resulting in mandatory sentences, questionable warrants, and absurd prison sentence guidelines

Only then will there be motivation for change.



(Screengrab #1 (Home), https://www.facebook.com/John-Galts-Legal-Defense-Fund-225303401359184/)

06-28-2018

JAS_020319



(Screengrab #2 (About), https://www.facebook.com/pg/John-Galts-Legal-Defense-Fund-225303401359184/about/?ref=page_internal)

06-28-2018

JAS_020320



(Screengrab #3 (Photos), https://www.facebook.com/pg/John-Galts-Legal-Defense-Fund-225303401359184/photos/?ref=page_internal)

06-28-2018

JAS_020321



(Screengrab #4 (Posts), https://www.facebook.com/pg/John-Galts-Legal-Defense-Fund-225303401359184/posts/?ref=page_internal)

06-28-2018

JAS_020322



(Screengrab #4a (Posts), same hyperlink, 06-28-2018)



(Screengrab #4b (Posts), same hyperlink, 06-28-2018)

JAS_020324



(Screengrab #4c (Posts), same hyperlink, 06-28-2018)

JAS_020325



(Screengrab #4d (Posts), same hyperlink, 06-28-2018)



(Screengrab #5 (Community), https://www.facebook.com/pg/John-Galts-Legal-Defense-Fund-225303401359184/community/?ref=page_internal)

06-28-2018



(Screengrab #6 ((Hyperlink from Screen Grab#1 for GoFundMe page)) https://www.gofundme.com/galt-criminal-justice-reform)

06-28-2018

JAS_020328