UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

JOSHUA ADAM SCHULTE,

Defendant.

S3 17 Cr. 548 (JMF)

# JOSHUA ADAM SCHULTE'S MOTION IN LIMINE

Joshua Adam Schulte
Slave #79471054
Metropolitan Detention Center (MDC)
P.O. Box 329002
Brooklyn, NY 11232

# TABLE OF CONTENTS

I.   TABLE OF AUTHORITIES.............................................................................. iii

II.   PRELIMINARY STATEMENT ......................................................................1

III.   THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM
TAINTING THE JURY WITH DELIBERATE, FANTASTICAL LIES
REGARDING THE MCC COUNTS ........................................................................2

  A.   The government's debauchery at the first trial .............................................3

  1.   The government's fraudulent Opening Statement ........................................3

  2.   The government's abandoned "theories" at Summation ..............................3

  B.   The Trial Evidence ........................................................................................5

  1.   The "Information War" ..................................................................................5

  2.   The "promise" to reporters............................................................................6

  3.   The MCC Selective Prosecution ..................................................................6

  C.   The Court should preclude, or at least limit, deliberate lies, fabrication, and
false statements intended to inflame and taint the jury ........................................7

  1.   The Court should suppress, preclude, or at least limit the government's
  reference to an "information war" ....................................................................8

  2.   The Court should suppress, preclude, or at least limit the government's
  reference to the "$50 Billion" statement ..........................................................9

  3.   The Court should preclude the government from falsely claiming that Mr.
  Schulte intended to "send more classified secrets to Wikileaks from MCC".....9

  4.   The Court should preclude the government from falsely claiming that Mr.
  Schulte promised to give classified information to reporters or anyone...........10

  5.   The Court should preclude the government from falsely claiming that Mr.
  Schulte setup social media accounts to "post classified articles" .....................10

  6.   The Court should preclude the government from claiming Mr. Schulte
  wrote a "detailed battle plan" to "destroy evidence and leak classified
  information"..........................................................................................................10

  7.   The Court should preclude the government from falsely claiming the
  "heroic" FBI saved the day by "preventing" or "stopping" other disclosures..10

IV.   THE COURT SHOULD PRECLUDE OTHER INADMISSIBLE
EVIDENCE..................................................................................................11

   A.    The IRC Chat "Logs" are inadmissible.....................................................11

     1.   The IRC Chat Logs are not a byproduct of a legitimate logging Client or
Utility.......................................................................................................11

     2.   The IRC Chat "Logs" are not responsive to the initial search warrant.......12

   B.    Evidence obtained from defense requests inadmissible.............................13

V.     MISCELLANEOUS REQUESTS ...............................................................14

   A.    The Court should Order the public trial recorded for audio and video.......14

   B.    The Court should not close the courtroom or implement witness
"protection" mechanisms for CIA witnesses..........................................14

   C.    The Court should allow Mr. Schulte to provide a laptop to the jury and
introduce the publicly accessible WikiLeaks website, online news articles, and
blogs about the WikiLeaks Vault 7/8 disclosure.....................................15

VI.   CONCLUSION ..........................................................................................16

# I.   TABLE OF AUTHORITIES

**Cases**

*Packingham v. North Carolina,*
   137 S. Ct. 1730 (2017)................................................................................14

*Reno v. American Civil Liberties Union,*
   521 US 844 (1997)........................................................................................14

*United States v. Gagliardi,*
   506 F.3d 140 (2d Cir. 2007) ......................................................................11

*United States v. Tin Yat Chin,*
   371 F.3d 31 (2d Cir. 2004) ........................................................................11

**Rules**

Fed. R. Evid. 401 ...............................................................................................7

Fed. R. Evid. 403 ...............................................................................................7

Fed. R. Evid. 901(a)........................................................................................11

## II.   PRELIMINARY STATEMENT

Mr. Schulte moves to preclude the government from introducing deliberate lies, falsifying evidence, and fabricating evidence to inflame and taint the jury at the retrial, and to preclude the introduction of other inadmissible evidence.

At the first trial, the government refused to behave honorably and allow Mr. Schulte a fair trial. Instead of relying upon facts and arguing based on those facts, they played dirty, manipulating the alleged MCC misconduct to introduce privileged, non-responsive, and/or otherwise inadmissible statements from Mr. Schulte's notebooks to fabricate a fantasy in which Mr. Schulte was the son of Satan himself, declaring an "information war" to leak important classified information from prison to harm the United States government. The government concocted this alternate reality from the ether, not only without a shred of evidence to support it, but in direct contradiction of the very evidence they introduced at trial. The government boldly lied throughout its opening statement to taint the jury, and then completely abandoned their fantasy at closing since the evidence did not even come close to what they claimed. This Court should not permit any inflammatory, dirty deceit at the retrial—it should suppress, preclude, or limit the introduction of the MCC notebooks and other fraudulent talking points.

Additionally, the government introduced IRC Chat "Logs" that were not true log files, but literally existed solely to facilitate manipulation of a Statistics Program to display fabricated messages falsely attributed to other users—and all as a joke.

Finally, the government broke the established wall to steal the defense expert's work product to use against Mr. Schulte at trial. Since the government refused to turn over the necessary files, and, instead, required the defense to request specific files, the government cannot introduce this stolen data at the retrial.

1

### III.   THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM TAINTING THE JURY WITH DELIBERATE, FANTASTICAL LIES REGARDING THE MCC COUNTS

Mr. Schulte wrote in attorney-client privileged notebooks his intention to engage in an "information war" for the hearts and minds; Mr. Schulte sought to fight against the government's unconscionable lies about him with the truth—the truth about the criminal justice system and the government's reprehensible witch hunt to pin him as the scapegoat for a crime it could not solve. The government, ever watchful for anything it can misconstrue to deceive a jury, took this statement and ran with it—uttering it no less than 41 times throughout trial, twisting it to invent their false fantasy that Mr. Schulte somehow intended his "information war" to release *classified* information. Furthermore, although this statement was written in notebooks in late 2018, long after the Wikileaks disclosures, the government pretended this to be Mr. Schulte's motivation and rationale behind the Wikileaks disclosures. This fabricated fantasy is not based upon any evidence, and the government ultimately abandoned this narrative in its summation.

The government cannot win in a fair trial, so it stoops to play dirty by deliberately deceiving the jury, fabricating and falsifying evidence, and twisting the truth until it no longer resembles it. A trial is not a theater or book fair for the government to present its latest fiction—this is supposed to be about finding the truth.

This Court cannot allow the government to introduce such prejudicial, inflammatory, utter nonsense as a sacrificial pawn that it cannot prove, and indeed, <u>plans to completely abandon in summation</u>. A trial is supposed to be a battle for the truth—but how is it fair or ethical for lawyers to boldly lie and invent fantastical narratives with absolutely no anchor to reality—to knowingly lie and falsify evidence with the intention to provoke and taint the jury, then completely abandon this lie at summation? This is dirty play with no place in a courtroom.

2

A.    **The government's debauchery at the first trial**

1.    **The government's fraudulent Opening Statement**

*He did it to start what he in his own words called "an information war," a war against the CIA he felt had wronged him. His information war didn't stop there. He continued to wage it even after the FBI arrested him for stealing those top secret files. From jail, he got an encrypted cell phone, leaked more classified information, and plotted a campaign to send even more CIA secrets to WikiLeaks.* (Tr. Opening 15);

*Why did he do it? Why did Joshua Schulte start an information war? Because he was angry. You'll learn that in 2015 and 2016, Schulte started having problems at work...* (Tr. Opening 17);

*But the evidence will show that when that didn't work and Schulte was arrested and put in jail to stand trial, he decided to escalate his information war. He got an encrypted cell phone in jail, **started writing a report, promising to give them classified information**. He created accounts on social media **to post articles he had written that had more secrets in them**.*

*And after this judge specifically told him not to, he sent more sensitive material from the government to a reporter. In notebooks he kept in jail, he wrote a detailed battle plan for the next campaign in his information war. But before Schulte could launch that new campaign, the FBI caught him in the act. They searched the prison. They found his secret phone. **They found his written plan to destroy evidence and leak secrets**, and they put a stop to it, **preventing Schulte from spilling even more of our most preciously guarded intelligence.** (Tr. Opening 22).*

2.    **The government's abandoned "theories" at Summation**

The government started strong, weaving an intricate fantasy and promising much; but by the end of the trial, the jury was left wanting. There was no report written with classified information, there was no promise to reporters to give them classified information, there was no

3

"battle plan" to release classified information, there was no plan to destroy evidence and leak secrets—there was no intention or specific mention of classified information anywhere.

In the end, the government had to tamp down the jury's expectation in its summations as they did not prove anything they claimed in the opening. While they were still able to introduce several fraudulent talking points, they ended up abandoning most claims from the opening:

> *By August, he gets that encrypted cell phone, the Samsung cell phone. He declares his information war.* (Tr. 2835 Summation).

> *By September, he has set up his Twitter account, and near the end of the month, he emails the reporter classified information about the network infrastructure, and he was also planning to post tweets that contained more classified information and an article that he wrote that contained more classified information. And the only thing that stopped him from doing that was the FBI. The FBI searched the MCC on October 3 and stopped his plans.* (Tr. 2836 Summation).

> *So the next day, after he gets this cell phone, he declares his information war. This is, again, more evidence that he was **not trying to clear his name. <u>It's more evidence that he was trying to harm</u>**. He was prepared to harm the government. **He's prepared to do that by, in his own words, an information war.*** (Tr. 2837 Summation)

> *And the truth in this case is the defendant tried to do it all over again from prison, repeating that same pattern of anger, escalation, retaliation, and lies. Declaring an information war. Sending classified information to a reporter. He was doing all those things over again.* (Tr. 2863 Summation).

Where was the declaration of the information war for the Wikileaks counts? Where was the promise to give classified information? What were the "plans" that the heroic FBI stopped? Where was his detailed "battle plan" to "destroy evidence" and "leak secrets"?

4

The government relied upon the MCC counts to lie, deceive, inflame, and taint the jury. The government went into the trial with the intent to fabricate and falsify evidence, knowing they could lie throughout opening arguments, deceive and taint the jury, then abandon their nonsense at summation—since they are not permitted to lie in summation.

### B.     The Trial Evidence

The government introduced no evidence that Mr. Schulte ever used the phrase "information war" before August 14, 2018; they introduced no evidence that this was the motivation or justification for their allegations that he committed the Wikileaks offenses.

Furthermore, the government introduced no evidence that Mr. Schulte ever promised to give anyone classified information—not to a reporter, not to anyone. Nor did he ever plan or intend to do so. The government introduced no evidence that Mr. Schulte even knew the obscure statements alleged to be NDI were even classified let alone NDI.

#### 1.     The "Information War"

*The way is clear. I will setup a wordpress of joshschulte.wordpress.com*
*presumptionofinnocence.wordpress.com. From here, I will stage my information war:*

*Facebook I will rename, simply "Who is John Galt?"*
*From FB, I will post links to the articles and the blogs as I write them.*
*The presumption of innocence blog will only contain my 10 articles 1-10, ending on the*
*presumption of innocence. I will post each of them on the FB and delete the previous*
*articles*

The "information war" is very clearly defined to be the unclassified Redress of Grievances titled "Presumption of Innocence." How is writing a redress of grievances about the corrupt criminal justice system and the *presumption of innocence* possibly incriminatory? Between which lines does the government see "RELEASE CLASSIFIED INFORMATION TO DESTROY GOVERNMENT!"?

5

All planned content was ultimately published to joshschulte.wordpress.com and presumptionofinnocence.wordpress.com. The government seized these materials, **but did not present the articles or content at trial**—preferring to ignore the truth and invent its own baseless upside-down fantasy.

### 2.    The "promise" to reporters

The email that promises a reporter an exclusive about "high ranking officials" has nothing to do with classified information—but rather "Russian Oligarchs business ties and wire transfers involving hundreds of millions of dollars to Donald Trump's closest advisors and law firms including Giuliani and Marc Kasowitz firms." GX 812. It is absurd to attribute this to Mr. Schulte as it is obvious from the email where the content originates, and equally obvious that Mr. Schulte has no basis for any of this knowledge—which, regardless, has absolutely nothing to do with classified information or obstructing the investigation; the despicable, deliberate lie that Mr. Schulte promised "classified" information to anyone has absolutely no basis in fact. The prosecutors should be fiction writers.

### 3.    The MCC Selective Prosecution

The government and the CIA executed a general warrant at the MCC, seized every single document Mr. Schulte ever wrote; after close scrutiny and examination of each and every word, the government claimed to discover random, obscure instances of supposedly "classified" information interspersed in large documents that were not even remotely related to classified information. These inadvertent "disclosures" would normally be considered, at most, very minor "spills" if they were attributed to literally anyone else—but because the government and the CIA are out for blood, they decided to selectively prosecute him. No other individual in the history of the United States has ever been prosecuted for such minor, inadvertent, and undeniably irrelevant "disclosures" *that were already published on the internet over 18 months before Mr. Schulte*

6

*allegedly wrote them*. The MCC Charges are all a bad joke; just an excuse to torture Mr. Schulte in solitary confinement for refusing to let the government win and daring to not falsely condemn himself as most other indicted slaves eventually do.

### C.     The Court should preclude, or at least limit, deliberate lies, fabrication, and false statements intended to inflame and taint the jury

The MCC notebooks are not only privileged and non-responsive to the MCC search warrant, but they are also inadmissible as the government solely intends to introduce them for impermissible purposes; the government intends to fabricate and falsify evidence at trial, to invent a fantasy alternate reality, and to take Mr. Schulte's words and statements out-of-context to rile up, inflame, and taint the jury. In reality, the pages the government intends to introduce at trial are simply not relevant to the "attempt" thought crime charges.

Indeed, the government intends to conflate two completely separate events. On the one hand, Mr. Schulte's "information war" for the hearts and minds, to demonstrate the lies and corruption of the justice system, where he specifically defines this "war" to include only his Redress of Grievances—documents the CIA determined to be unclassified. And on the other hand, random, inadvertent, obscure, supposedly "classified" information contained within *unpublished* vast documents labeled "attorney-client privileged."

"Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Furthermore, relevant evidence must be excluded "if its probative value is substantially outweighed by… unfair prejudice… confusing the issues… [and/or] misleading the jury." Fed. R. Evid. 403. None of the entries from the MCC Notebooks are relevant to the MCC Charges except for the alleged "Fake tweet" that contains the publicly disclosed Bartender

"NDI." Moreover, to the extent that any of the entries from the MCC Notebooks are relevant, this Court should exclude them due to their inflammatory prejudice, the government's intent to confuse the jury, and the government's intent to deliberately deceive and mislead the jury. Ultimately, the Court should order all MCC Notebooks excluded from trial. Additionally, the Court should suppress or preclude the following fraudulent talking points.

### 1.   The Court should suppress, preclude, or at least limit the government's reference to an "information war"

The Court should preclude the government from ever uttering the phrase "information war" because it is irrelevant and the government intends to twist this phrase into the crux of their case—that Mr. Schulte somehow intended to wage war against the United States to specifically leak classified information and harm it—not withstanding his definition of the "information war." The Court simply cannot allow the government to take this phrase out-of-context and twist its meaning to the literal opposite of its definition—solely to confuse and mislead the jury.

In the case the Court allows the government to spew its utter nonsense, it should, at the very least, limit this to the actual definition of the "information war"—the unclassified Redress of Grievances.

### a)   *The government cannot attribute conduct and statements predating "information war" to be a product of that "campaign"*

The "information war" comment occurred on August 14, 2018. "Malware of the Mind" predates it by over 6 months; The Email predates it by 18 months; and even the $50 Billion statement predates it.

Accordingly, the government cannot attribute any of these alleged thought crimes or any other statements or actions that predated "information war" to be a product of that "campaign." Nor can it claim the alleged Wikileaks disclosures, which occurred years before, are a product of

8

this "information war." Indeed, it should be precluded from claiming that "*when Schulte was*

*arrested and put in jail to stand trial, he decided to **escalate** his information war*".

> b) **The government cannot claim that the "information war" is**
> **"evidence that Mr. Schulte was _NOT_ trying to clear his name"**

The "information war" was literally centered around Mr. Schulte's innocence claims to

clear his name. The government cannot twist this a full 180 and falsely claim that the

"information war" was evidence that Mr. Schulte "was NOT trying to clear his name". The entire

purpose of the information war—the unclassified Redress of Grievances—was literally to clear

his name.

> **2.     The Court should suppress, preclude, or at least limit the**
> **government's reference to the "$50 Billion" statement**

The Court should preclude the government from ever uttering the "$50 Billion" statement

because it is irrelevant and the government intends to confuse and mislead the jury by twisting

this phrase into evidence that Mr. Schulte <u>wanted to disclose classified information</u>. The "$50

Billion" was a verbatim conversation with his attorney in which Mr. Schulte literally sought any

and all *legal* actions he could take *after he was acquitted of the false crimes*. It does not discuss

disclosing any information to anyone. Finally, as stated above, the "$50 Billion" statement

predated and was completely unrelated to the "information war" comment. The government

cannot use these separate comments to reinforce each other.

> **3.     The Court should preclude the government from falsely claiming that**
> **Mr. Schulte intended to "send more classified secrets to Wikileaks from**
> **MCC"**

There is not a shred of evidence that Mr. Schulte ever intended to send any classified

information or any information at all to WikiLeaks from the MCC. The government cannot make

such inflammatory, false accusations.

**4.     The Court should preclude the government from falsely claiming that Mr. Schulte promised to give classified information to reporters or anyone**

There is not a shred of evidence that Mr. Schulte ever promised to give classified

information to reporters or anyone for that matter. The government cannot make such

inflammatory, false accusations.

**5.     The Court should preclude the government from falsely claiming that Mr. Schulte setup social media accounts to "post classified articles"**

The only information ever posted to the social media accounts were unclassified.

Accordingly, the government cannot claim that Mr. Schulte setup the social media accounts

specifically to post "classified articles."

**6.     The Court should preclude the government from claiming Mr. Schulte wrote a "detailed battle plan" to "destroy evidence and leak classified information"**

There is no "detailed battle plan" to "destroy evidence and leak classified information."

The government cannot make such inflammatory, false accusations.

**7.     The Court should preclude the government from falsely claiming the "heroic" FBI saved the day by "preventing" or "stopping" other disclosures**

There are no documents, be they classified or unclassified, that were ever intended for

publication that the FBI thwarted. Indeed, the unclassified redress of grievances were published

on the internet ***after*** the FBI seized the cellphone and isolated Mr. Schulte. There is not a single

shred of evidence that Mr. Schulte ever intended to publish any additional information—nor is

there any evidence that seizing the cellphone and isolating Mr. Schulte could even stop any

additional disclosures.

## IV.    THE COURT SHOULD PRECLUDE OTHER INADMISSIBLE EVIDENCE

### A.    The IRC Chat "Logs" are inadmissible

The Internet Relay Chat (IRC) "Logs" the government introduced at the first trial, and

plans to introduce at the re-trial are inadmissible. "The requirement of authentication... is

satisfied by evidence sufficient to support a finding that the matter in question is what its

proponent claims." Fed. R. Evid. 901(a). Generally, a document is properly authenticated if a

reasonable juror could find in favor of authenticity. *United States v. Tin Yat Chin*, 371 F.3d 31,

38 (2d Cir. 2004). "The standard for authentication is one of 'reasonable likelihood.'" *United*

*States v. Gagliardi*, 506 F.3d 140 (2d Cir. 2007) (citation omitted).

### 1.    The IRC Chat Logs are not a byproduct of a legitimate logging Client or Utility

Most messaging clients, such as AOL Instant Messenger, Yahoo! Messenger, Jabber, etc.

offer built-in logging. Most services-based messaging programs, such as Apple Chat, Google

messaging, SMS, MMS, etc. also offer logging that is maintained by the provider. IRC does

not—it is a very old protocol that can be setup on individual servers and maintained by those

individuals.

The cryptm.org IRC service was not installed with any logging. Instead, individual users

wrote programs, called IRC Bots, that, *inter alia*, logged messages to text files. The individual

users of cryptm.org then competed to upload their individual logs to cryptm.org to feed into an

IRC Chat Statistics Program, that displayed statistics such as most messages sent, kicks, bans,

and displayed random previous messages. However, the log files were publicly housed on the

server, and every user had access to modify the log files to add or change the messages to

influence the Statistics Program. This was permissible on the server as it was not a serious

11

endeavor but simply for fun. **Indeed, the purpose of the IRC Chat Logs was to manipulate the Statistics Program into displaying inaccurate messages falsely attributed to other users.**

Additionally, IRC allows users to change their "nicknames" so any individual user can send messages as any "nickname." Accordingly, there is no guarantee that any of the unadulterated messages were actually sent by any individual person.

The government cannot identify which programs generated which logs, which users modified which logs, what additions or modifications were introduced to the logs, which messages were unadulterated, or which of the unadulterated messages were actually sent by any individual user. The IRC Chat "Logs" were not intended to maintain legitimacy nor were they intended for introduction in a court of law; there is no custodian of record, there is no authentication of users, there is no authenticity of the messages, there is absolutely no legitimacy to the chat logs whatsoever. They are not even really "logs." Accordingly, the IRC Chat "Logs" are inadmissible.

> **2.    The IRC Chat "Logs" are not responsive to the initial search warrant**

Additionally, even if the government were able to somehow authenticate the IRC Chat "Logs," these "logs" are not responsive to the initial search warrant. That search warrant sought to search Mr. Schulte's electronics for evidence of NDI related to the Vault 7 Wikileaks disclosure released in March 2017. The government was required to sort the electronic records into responsive and non-responsive records. The government, however, simply executed a general warrant, seized every bit of data, and searched it all for anything it could use against Mr. Schulte. The IRC Chat "Logs," purportedly from 2009-2012 contain no NDI nor are they even remotely responsive to the initial search warrant. Accordingly, the Court should suppress these "logs".

### B.    Evidence obtained from defense requests inadmissible

Although the government charges Mr. Schulte with CFAA and Espionage Offenses for allegedly using his CIA Workstation to "hack" the ESXi Server to access the Confluence VM to steal Backups from the FS01 Server, it refused to provide forensic images for any of these computers and servers. In no other case in the history of the United States has the government ever accused a defendant of computer crimes, relied upon forensic examinations of those computers in its case-in-chief, but simultaneously refused to produce them to the defense.

Over the next several months following Judge Crotty's Order allowing the government to hide the relevant forensic images from the defense, Dkt 124, the defense continued to object to this lack of access, and submitted several *ex parte* letters and declarations from the defense's expert explaining the relevance and necessity of obtaining and examining these servers.

In lieu of a forensic examination, the government demanded that the defense magically determine which specific files it thought were relevant, provide a relevance explanation, and then it would consider producing the file(s). The defense thus had no choice but to reveal defense strategy directly to the government in order to obtain access to materials it could not otherwise access.

On January 13, 2020, the defense filed a letter requesting the "access time" metadata for the Altabackups Screenshots. After examining the defense's letter, the government conducted its own search, and found additional evidence that it determined to be central to its own case. The government then provided this evidence to the defense as GX 1207-27 and 1207-30.

If not for the January 13, 2020 request, the government would not have been alerted to these files, and would never have introduced GX 1207-27 and 1207-30 at trial.

13

Accordingly, since the government hid the relevant, critical forensic images from the defense, and forced the defense to reveal defense strategy and privileged information to obtain access to specific data, the Court should suppress introduction of the fruits of any such disclosures, including GX 1207-27 and 1207-30.

## V.   MISCELLANEOUS REQUESTS

### A.   The Court should Order the public trial recorded for audio and video

The Sixth Amendment provides that "*[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial.*" In the 21st Century, audio/video recording is mainstream—everything is recorded and provided to the public. Indeed, at the first trial, the Court ordered an audio/video feed to the press room in the courthouse. Mr. Schulte does not request the Court stream the trial live, but merely record that stream for later publication or even as a revenue stream for the courts as it does transcripts. There is simply no legitimate reason not to record the trial, and the modern definition of "public" has evolved to encompass the internet. "While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the 'vast democratic forums of the Internet' in general, *Reno v. American Civil Liberties Union*, 521 US 844, 868 (1997), and social media in particular." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017).

### B.   The Court should not close the courtroom or implement witness "protection" mechanisms for CIA witnesses

Mr. Schulte notes for the Court that he intends to challenge the courtroom closure and witness "protection" mechanisms imposed at the first trial, but these challenges are included in the CIPA 6 opposition as those restrictions were supposedly implemented through CIPA.

14

**C.** **The Court should allow Mr. Schulte to provide a laptop to the jury and introduce the publicly accessible WikiLeaks website, online news articles, and blogs about the WikiLeaks Vault 7/8 disclosure**

Finally, Mr. Schulte moves to introduce public websites, including news organizations (*New York Times*, *Washington Post*), the WikiLeaks website, blogs and other articles, to illustrate that the MCC Charges are predicated on public materials not "closely held" by the government. Mr. Schulte would not introduce this evidence for the truth of the content itself, but rather, simply to challenge the government's assertion that the material is "closely held." The predicate argument regarding whether public information is "closely held" is further discussed in the CIPA 6 opposition.

## VI.    CONCLUSION

For these reasons, the Court should order the government precluded from introducing the MCC Notebooks at trial, as well as fraudulent, prejudicial, misleading, and confusing talking points. The Court should also order the government precluded from introducing the illegitimate IRC Chat "Logs." Finally, the Court should order the trial recorded, keep the courthouse open without implementing any witness security procedures, and allow Mr. Schulte to introduce public content from the internet to challenge the government's assertion that the MCC Count Content was "closely held."

Dated: New York, New York

April 22, 2022

Respectfully Submitted,

  /s/   **Joshua Adam Schulte**

Joshua Adam Schulte
Slave # 79471-054
Metropolitan Detention Center
P.O. Box 329002
Brooklyn, NY 11232

16