UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
          :
UNITED STATES OF AMERICA,         :
          :
      -v-          :        17-CR-548 (JMF)
          :
JOSHUA ADAM SCHULTE,         :        <u>OPINION AND ORDER</u>
          :
      Defendant.        :
          :
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      In this case, familiarity with which is presumed, Defendant Joshua M. Schulte, a former CIA employee, is charged with stealing and leaking national defense information ("NDI") to Wikileaks, as well as disclosing and attempting to disclose NDI while incarcerated at the Metropolitan Correctional Center ("MCC"). *See* ECF No. 405, Counts 1-2, 5-9 ("Wikileaks Counts"), Counts 3-4 ("MCC Counts").[1] A first trial ended in a conviction on two counts and a mistrial on the others; retrial is scheduled for June 14, 2022. On January 28, 2022, Defendant filed five pretrial motions: to suppress evidence, to sever the MCC Counts from the Wikileaks Counts, to compel the production of evidence, and to preclude the Government from introducing certain evidence. *See* ECF No. 765 ("Def.'s Omnibus Mem."). On March 24, 2022, Defendant filed a sixth pretrial motion to suppress an allegedly privileged document. *See* ECF No. 772 ("Def.'s Suppression Mem."). This Opinion addresses four of these motions, namely all but the third and fourth motions in the omnibus filing, which the Court will address separately.

---

[1]     Defendant was also charged with possession of child pornography and criminal copyright infringement. Those charges were severed from the charges at issue here, and trial on those charges will proceed separately. *See* ECF No. 117.

**A. Motion to Suppress Document Produced by Shane Presnall**

The Court begins with Defendant's more recent, standalone motion to suppress. Defendant moves to suppress a document he authored, which discusses his original interview with the FBI and the subsequent search of his apartment, on the ground that it is protected by attorney-client privilege. *See* Def.'s Suppression Mem. The Government contends that the document contains classified information and seeks to introduce it at trial as evidence in support of the MCC Counts. *See id.* at 5.

**1. Relevant Background**

The parties' arguments turn in part on the provenance of the document at issue, so some background is warranted. The document was contained in an email Defendant sent to his original attorneys on March 20, 2017, shortly after he was first interviewed by the FBI and before he was arrested. *Id.* at 1-2. According to Defendant, the document was prepared at his attorney's direction. *Id.* at 1. On October 25, 2017, after Defendant was released on bail, Defendant's original attorney forwarded the email to Shane Presnall, Defendant's cousin, who was then living with Defendant. *Id.* at 3. According to Defendant, Presnall performed various tasks for him, including printing documents to review, because Defendant was barred from using a computer as a condition of bail. *Id.* at 2-3.

On May 21, 2018, after Defendant returned to prison as a result of violating his bail conditions, the Government issued a subpoena to Presnall seeking various documents, including "[a]ny and all documents created by Joshua Adam Schulte to be posted on Facebook and/or GoFundMe, including but not limited to articles '8, 9, and 10.'" ECF No. 758-3, at 3. The subpoena stated that it did "not call for the production of any documents protected by a valid claim of privilege." *Id.* According to the Government, Presnall was subpoenaed because the

Government suspected Defendant of trying to share confidential information through interviews and articles criticizing the criminal justice system and his prosecution, which he had drafted and asked his family to post online. *See* ECF No. 758 ("Gov.'s Suppression Opp'n"), at 3-4; Def.'s Suppression Mem. 3-4.

On August 6, 2018, Presnall produced through counsel nine documents that he referred to as articles, including seven that had already been posted online, an eighth titled "Article 8 by Joshua Schulte," and the ninth, the document at issue here. *See* ECF No. 758-4 ("Presnall Production"). Presnall's production did not indicate that the document had come from an email. Moreover, unlike the original email, which bears the header "My Story," *see* Def.'s Suppression Mem. 1, 3, the document produced by Presnall was titled, ". . . unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness." Presnall Production 41-53. On August 27, 2018, Presnall, through counsel, turned over the laptop that he had used in Defendant's apartment when assisting Defendant. Def.'s Suppression Mem. 4. The Government agreed to segregate potentially privileged materials, including communications with Defendant's original attorney, when searching the laptop. *Id.*; *id.* at Ex. B. Defendant speculates that the document also could have been obtained through a search of a laptop, via the email sent from Defendant to his attorney and from his attorney to Presnall, *see id.* at 4, but there is no support in the record for the argument that the Government obtained the document from a source other than Presnall, pursuant to the subpoena.

The document identified by Presnall as "article 9" was determined to contain classified information and produced to Defendant in classified discovery on November 12, 2018. Gov.'s Suppression Opp'n. 6. It was produced again in unclassified discovery, with the classified information redacted, on February 25, 2019. *Id.* According to Defendant and his counsel, they

3

first learned that the Government intended to rely on the document in the first trial via a Bill of Particulars dated April 29, 2019. Def.'s Suppression Mem. 5; *see also* ECF No. 748 ("Mar. 28, 2022 Conf. Tr."), at 22-24. At that point, Defendant's counsel indicated that they intended to file a motion to suppress on the ground that the document was privileged; in response, the Government indicated that it did not plan to introduce the document after all and the issue was not litigated. Mar. 28, 2022 Conf. Tr. 23.

## 2. Analysis

The parties dispute many issues related to this background, including whether the document was originally created to seek legal advice, whether Presnall was acting as a paralegal or agent of Defendant's attorney when he was emailed the document, and whether Presnall waived any privilege by producing the document in response to the subpoena. *See* Def.'s Suppression Mem. 6-9; Gov.'s Suppression Opp'n 11-13.[2] But ultimately, the Court need not resolve these questions. Assuming, without deciding, that the document was privileged when it was created, and that the privilege was not vitiated by either Presnall's receipt of the document or his disclosure of it to the Government, the privilege was nonetheless waived when Defendant failed to assert it for more than six months *after* learning that the Government had obtained the document. *See* Mar. 28, 2022 Conf. Tr. 23-25; *see also* ECF No. 771 ("Def.'s Suppression Reply"), at 7.

For starters, the Court agrees with the Government that the appropriate legal test for waiver here is that used in cases of inadvertent disclosure by a party. *See* Gov.'s Suppression Opp'n 10-11; *see, e.g.*, *United States v. Hatfield*, No. 06-CR-0550 (JS), 2010 WL 183522, at *9

---

[2] The Court notes that some of Defendant's arguments are directed not to whether the document is privileged, but to whether it is admissible or relevant to the MCC Counts. These arguments are not a basis for finding privilege.

(E.D.N.Y. Jan. 8, 2010) (concluding that the court should apply the inadvertent disclosure test to determine "how promptly a party must raise privilege claims when a third party commits an unauthorized production of that party's privileged documents"). "To determine whether an inadvertent disclosure waived the privilege, courts in this Circuit balance four factors: [1] the reasonableness of the precautions to prevent inadvertent disclosure, [2] the time taken to rectify the error, [3] the scope of the discovery and the extent of the disclosure, [and 4] overreaching issues of fairness." *Berall v. Teleflex Med. Inc.*, No. 10-CV-5777 (LAP), 2021 WL 5989936, at *4 (S.D.N.Y. Dec. 17, 2021) (cleaned up). Here, all four factors support a finding of waiver.

First, Defendant apparently knew that Presnall had access to the document — whether or not he asked his prior attorney to send it to Presnall — and nonetheless did not ask Presnall to keep it confidential. Second, and most significant, Defendant failed to assert that the document was privileged for more than six months after becoming aware that the Government had the document. *See* Mar. 28, 2022 Conf. Tr. 23-25; *see also Bank Brussels Lambert v. Chase Manhattan Bank, N.A.,* No. 93-CV-5298 (LMM) (RLE), 1996 WL 944011, at *5 (S.D.N.Y. Dec. 19, 1996) (six-month delay in asserting the privilege after receiving notice of the involuntary disclosure constituted waiver); *Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.,* 96-CV-2064 (RWS), 1996 WL 668862, at *5 (S.D.N.Y. Nov. 19, 1996) (finding waiver where counsel waited a month before requesting return of the privileged documents); *United States v. de la Jara*, 973 F.2d 746, 750 (9th Cir. 1992) (holding that the defendant waived privilege as to a seized document by failing to assert privilege for six months prior to its introduction a trial). Moreover, even when the Defendant *did* assert privilege over the document, it was not through a motion to the Court, and Defendant took no steps to secure the document's return from the Government. *See* Mar. 28, 2022 Conf. Tr. 23-25; *In re Grand Jury (Impounded)*, 138 F.3d 978, 981-82 (3d

Cir. 1998) (finding waiver where the defendant timely asserted privilege over a seized document to the government, but did not file a motion to suppress for nearly four months); *United States v. Ary*, 518 F.3d 775, 784 (10th Cir. 2008) ("Some courts have held that asserting protection solely to the government is insufficient and that invocation of judicial intervention is required.").

In examining the third factor, Courts typically look to the number of documents produced in discovery to see whether the production was likely to be inadvertent, *see, e.g.*, *Berall*, 2021 WL 5989936, at *5, which has little relevance here. That said, Presnall's decision to produce the document as one of only nine "articles" in response to the subpoena — a subpoena that explicitly excluded any privileged documents, no less — certainly suggests that he, at least, did not understand the document to be privileged. Finally, where, as here, a party failed to timely assert privilege when the document was first produced, the fourth factor, fairness, counsels in favor of finding waiver. *See Hatfield*, 2010 WL 183522, at *9 ("[T]o the extent that [Defendant's] delay caused the Government to rely on these privileged documents in preparing its prosecution, suppressing them now [would be] unfair."). In short, if the document at issue was ever privileged at all, Defendant's actions during the litigation waived the privilege. Accordingly, his motion to suppress the document on the basis of privilege must be and is denied.

B. **Motion to Suppress Google, Github, and Reddit Search Warrant**

Defendant's first motion in his omnibus filing — to suppress evidence obtained via the Government's March 14, 2017 Warrant directed to Google, Github, and Reddit, *see* Def.'s Omnibus Mem. 1-29 — is also denied, substantially for the reasons set forth in the Government's opposition memorandum of law, *see* ECF No. 761 ("Gov.'s Omnibus Opp'n"), at 6-26. To begin with, Defendant previously moved for relief on this issue prior to his first trial, making many of the same arguments he advances here, *see* ECF No. 109, at 40-45, and that

motion was denied, *see* ECF No. 168.  To be sure, Judge Crotty's prior opinion did not explicitly address Defendant's arguments as to Google, Github, and Reddit.  But that alone is not a sufficient basis for reconsideration.  *See Ediagbonya v. United States*, No. 18-CV-3882 (VSB), 2021 WL 4226400, at *3 (S.D.N.Y. Sept. 15, 2021) ("[A]ny arguments Plaintiff made that were not expressly rejected in the Opinion and Order were rejected implicitly." (cleaned up)).

In any event, Defendant's motion also fails on its own terms.  For starters, Defendant disclaims ownership of the Reddit account at issue, Def.'s Omnibus Mem. 6, and thus lacks standing to challenge that aspect of the warrant, *see United States v. Watson*, 404 F.3d 163, 166 (2d Cir. 2005).  As for Google and Github, the Court need not address at length Defendant's principal arguments — that the warrant fails to establish a nexus between the alleged offenses and the accounts or that the warrant was insufficiently particular and overbroad — because, even if he were correct, the good faith exception would bar suppression.  *See United States v. Ganias*, 824 F.3d 199, 220-21 (2d Cir. 2016) (holding that courts "need not resolve the ultimate question" of whether there was a Fourth Amendment violation if the good faith exception applies).

Defendant contends that the good faith exception does not apply for two reasons, neither of which is persuasive.  First, the warrant application here is not "so lacking in indicia of probable cause" as to render belief in its existence unreasonable, as Defendant argues.  Def.'s Omnibus Mem. 26 (citing *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992)).  Defendant relies on *United States v. Griffith*, 867 F.3d 1265 (D.C. Cir. 2017), but the situation there was wholly different.  The Court in *Griffith* held that a warrant to search a suspect's home for his cell phone and other electronic devices was not supported by probable cause, and the good faith exception did not apply, where the warrant application "offered almost no reason to suspect that Griffith in fact owned a cell phone, or that any phone or other device containing incriminating

7

information would be found in his apartment." *Id.* at 1268.  Here, by contrast, the warrant application did contain information connecting Defendant's electronic devices to the crime alleged: The warrant application explicitly connected the Wikileaks leak to Defendant's Google account (namely, he used it to contact former CIA colleagues to discuss the leak, *see* Def.'s Omnibus Mem. Ex. A, at 26-27) and to Defendant's Github account (namely, it contained code that referenced computer applications that were referenced in the information released by Wikileaks, *see id.* ¶¶ 28-29).  *Cf. Moore*, 968 F.2d at 222 (holding that the application was not lacking in indicia of probable cause where it was "not a 'bare bones' affidavit, but rather contained many objective facts").  Defendant further argues that the application must separately establish probable cause for each category of data produced by Google, relying on *United States v. Morton*, 984 F.3d 421, 429 (5th Cir. 2021), *reh'g en banc granted, opinion vacated*, No. 19-10842, 2021 WL 1990794 (5th Cir. May 18, 2021).  *See* Def.'s Omnibus Mem. 23-24.  But *Morton* has been vacated by the Fifth Circuit and, in any event, is not the law of this Circuit.

       Defendant's second argument — that the warrant is "so facially deficient that reliance upon it is unreasonable," Def.'s Omnibus Mem. 26 (citing *Moore*, 968 F.2d at 222) — is equally unpersuasive.  Defendant argues that the warrant fails to define with particularity the information sought, Def.'s Omnibus Mem. 22-24, but the warrant in fact lists specific categories of information sought, defined in relation to the subject offenses described in the warrant, *see* Def.'s Omnibus Mem. Ex. A, at 38-40.  Similar warrants have been upheld by courts in this District, so the warrant here was plainly not facially deficient.  *See, e.g.*, *United States v. Saipov*, No. 17-CR-722 (VSB), 2019 WL 3024598, at *3-*5 (S.D.N.Y. July 11, 2019).

### C. Motion for Severance or Bifurcation

Defendant's next motion — for severance or bifurcation of the MCC Counts, *see* Def.'s Omnibus Mem. 29-40 — is also denied, again substantially for the reasons set forth in the Government's opposition memorandum of law, *see* Gov.'s Omnibus Opp'n 26-33. Defendant argues that the two sets of charges are improperly joined under Rule 8(a) of the Federal Rules of Criminal Procedure and that, even if properly joined, they should be severed under Rule 14 because he is prejudiced by their joinder. Neither argument is persuasive.

With respect to the first contention, the Court previously held that the MCC counts and Wikileaks counts are "logically linked" and would "require much of the same evidence." ECF No. 147, at 3 & n.4. Defendant offers no bases to revisit that conclusion. That is sufficient to justify joinder pursuant to Rule 8(a). *See* Fed. R. Crim. P. 8(a) ("The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character . . . or are connected with or constitute parts of a common scheme or plan."); *see also, e.g.*, *United States v. Page*, 657 F.3d 126, 129 (2d Cir. 2011).

Defendant's request for severance pursuant to Rule 14 fails for much the same reason. "[A] defendant who seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in substantial prejudice." *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994) (internal quotation marks omitted). Defendant argues that trying the MCC Counts along with the Wikileaks Counts will prejudice him because it will (1) reveal to a jury that he was incarcerated prior to trial, (2) cause the jury to confuse his defenses as to the two sets of Counts, and (3) force him to decide whether to testify in his own defense as to both sets of Counts or as

9

to neither.[3]  Def.'s Omnibus Mem. 33-40.  But each of these arguments was previously addressed by the Court, *see* ECF No 147, at 5-6, and Defendant offers no reason to revisit those decisions.  With respect to Defendant's testimony, it is true that "prejudice may develop when an accused wishes to testify on one but not the other of two joined offenses which are clearly distinct in time, place and evidence."  *United States v. Sampson*, 385 F.3d 183, 190-91 (2d Cir. 2004).  But to merit severance for that reason, "a particularized showing must be made concerning the testimony the defendant wishes to give and his reasons for remaining silent on the joined counts."  *United States v. Werner*, 620 F.2d 922, 930 (2d Cir. 1980)).  Defendant has not offered such a showing.  *Cf. Sampson*, 385 F.3d at 187 (concluding that severance was justified where the defendant "pointed to an affidavit which provided the *specific* testimony he wanted to give regarding the incident giving rise to [one set of the] counts" (emphasis added)).

To the extent trying the two sets of Counts together does create some risk of prejudice for Defendant, the Court finds that "less drastic measures than severance, such as limiting instructions, . . . will suffice to cure any risk of prejudice."  *Page*, 657 F.3d at 129 (internal quotation marks omitted) (cleaned up).  For the same reasons, Defendant's request for a bifurcated trial is denied.

D.     **Motion to Suppress Documents Seized from MCC**

Finally, Defendant contends that the Court should suppress all documents seized from the MCC that (1) are not one of the documents identified by name in the October 2, 2018 Warrant,

---

[3]     Defendant also contends that the charges should be severed or bifurcated so that trial on the MCC Counts can proceed prior to June 14, 2022, the scheduled trial date in this case.  Def.'s Omnibus Mem. 33; Def.'s Omnibus Reply 8.  But that contention is meritless.  Even if the charges were severed, trial on the MCC Counts could not proceed sooner, let alone materially so.

10

*see* ECF No. 758-1, because they are non-responsive, or (2) are attorney-client privileged, *see* Def.'s Omnibus Mem. 52-65.  For the reasons that follow, this motion is also denied.

To begin with, Defendant's argument that the seized documents are not responsive to the warrant solely because they are not one of the "9 specific documents" listed by title in the warrant, Def.'s Omnibus Mem. 53, borders on frivolous.  Contrary to Defendant's argument, the warrant clearly authorized the search and seizure of a broad array of documents, including "[a]ny and all notes, documents, records, correspondence, or materials . . . pertaining to the unauthorized retention, gathering, and transmission of classified documents or materials, and the unauthorized removal and retention of classified documents or materials."  ECF No. 758-1, Attachment A, § III.A ¶ 6.  The warrant went on to list, "*in particular*, the documents bearing the . . . titles" of the articles drafted by Defendant, *id.* ¶ 6(a)-(i) (emphasis added).  But it is baseless to argue that the list of specific examples limits the preceding broad language.

Defendant's claim that certain documents are privileged, Def.'s Omnibus Mem. 53, does not survive scrutiny either.  "The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice."  *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011).  "The burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it."  *United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997).  The Court will address Defendant's claims as to each document in turn.

- **"Malware of the Mind"**

Defendant contends that this document, *see* Def.'s Omnibus Mem., Exs. E-1, E-2, E-3, which he wrote in narrative form, was written "exclusively for his attorneys," Def.'s Omnibus

Mem. 57. He further contends that he mailed it to counsel with a request for advice about the document and that a copy was ultimately mailed back to him by counsel, with comments. *Id*. Defendant also relies on an affidavit, drafted to support this motion, which states that the document was "drafted for, and only ever transmitted to, my attorneys, for the express and sole purpose of aiding my criminal defense." Def.'s Omnibus Mem. Ex. D, ¶ 6. Accordingly, Defendant asserts that the entire document is privileged. Notably, however, when the Government identified portions of this document as evidence it intended to rely on in the first trial, *see* ECF No. 257 at 13-14, Defendant did not assert that they were protected by attorney-client privilege despite asserting that other seized documents were privileged, *see* ECF No. 282.[4]

To begin with, Defendant's conclusory assertion that the document was written "exclusively for his attorneys" is hard to credit. The document is addressed "[t]o my fellow engineers and the tech industry," Def.'s Omnibus Mem. Ex. E-1, at 3, and Defendant acknowledges that he intended to "rewrite" it, presumably for public dissemination, Def.'s Omnibus Mem. Ex. D ¶ 5. Similarly, Defendant provides nothing more than his own self-serving statement that the document was created for the purpose of seeking legal advice. That is, he proffers no evidence to corroborate the claim, such as a contemporaneous cover letter or even a declaration from counsel.[5] Defendant's burden to establish the privilege "[can]not, of course,

---

[4] Judge Crotty's order as to the admissibility of this document in the first trial following the parties' letters is admittedly somewhat ambiguous. In response to the parties' submissions, Judge Crotty held that "the selections from the MCC Notebooks are admissible." ECF No. 288. That language does not unambiguously encompass "Malware of the Mind," which the parties did not refer to as part of the MCC Notebooks. That said, given that the Government was permitted to introduce excerpts from the article at the first trial, it can be inferred that Judge Crotty's ruling applied to it as well. *See* Gov.'s Omnibus Opp'n 50-51; *id.* at Ex. G (excerpts admitted at trial).

[5] Defendant asserts that commentary from his attorneys "can be found on the government's seized photocopy," Def.'s Omnibus Mem. Ex. D, ¶ 2, but he does not explain where (if anywhere) that commentary is included in the record on this motion.

[be] discharged by mere conclusory or ipse dixit assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed." *von Bulow v. von Bulow*, 811 F.2d 136, 146 (2d Cir. 1987) (citation omitted).

Ultimately, however, the Court once again need not decide whether the document was privileged in the first instance. Even it if was, the Court concludes — as it did with respect to the document produced by Presnall — that any privilege was waived by Defendant's failure to assert it prior to the first trial. Indeed, the analysis is much the same. Defendant was aware that the Government had seized "Malware of the Mind," and was put on notice no later than November 2019 by the Government's motion *in limine* prior to the first trial that the Government intended to rely on it. *See* ECF No. 195 at 31 (moving to introduce "a draft 'article' in which Schulte criticized the FBI's investigation and included classified information about Schulte's training at the CIA (the 'Malware Article')"). In response, Defendant asserted that "[s]ubstantial portions of [his] prison writings, including" "Malware of the Mind," are protected by attorney-client and work product privilege. ECF No. 242, at 23. He did not, however, press the theory raised here, that he sent a draft of the article to his attorneys to seek legal advice and, based on that advice, decided not to publish it. More significant, when the Government identified specific pages of "Malware of the Mind" on which it intended to rely in the first trial, ECF No. 257, at 13-14, Defendant did not contend that "Malware of the Mind" was privileged, despite arguing that other documents on which the Government intended to rely *were* privileged, *see generally* ECF No. 282. Accordingly, to the extent the document was ever privileged, Defendant waived the privilege. *See de la Jara*, 973 F.2d at 750 (noting that courts "will deem the privilege to be waived if the privilege holder fails to pursue all reasonable means of preserving the confidentiality of the privileged matter"). Put simply, Defendant did not pursue "all reasonable

13

means of preserving the confidentiality" of "Malware of the Mind," resulting in a waiver of privilege — to the extent it ever existed. *See In re Grand Jury (Impounded)*, 138 F.3d at 981; *Ary*, 518 F.3d at 784-85.

- **Notebook Excerpts**

That leaves the excerpts from Defendant's notebooks. *See* Def.'s Omnibus Mem., Exs. C, F, G, H. To begin with, Defendant's argument that the excerpts are privileged because the notebooks were labeled as such, Def.'s Omnibus Mem. 61-62, was previously rejected by the Court, *see* ECF No. 159, at 5, and Defendant provides no basis for revisiting that decision. Moreover, as with "Malware of the Mind," Defendant now asserts that certain parts of the notebooks are attorney-client privileged, but he did not do so when the Government indicated its intent to rely on them at the first trial. *See* ECF No. 257 at 9-11; ECF No. 282. In fact, Defendant previously identified *portions* of some of the same pages as privileged without asserting that the parts he now moves on were privileged. *See* ECF No. 282, at 3 (arguing, in reference to the page containing the "ask Wikileaks" statement, that "the beginning of the page is clearly part of a legal motion that Mr. Schulte was drafting . . . . This is privileged information or work product and is therefore not admissible"); *id.* at 4 (referring to the "$50 billion" statement, Defendant argued "the bottom half of the page," i.e. not the part referring to $50 billion, "memorialized attorney-client communication and should be deemed privileged").

At any rate, any assertion of privilege over these statements, whether previously or now, is unfounded because they do not appear to seek legal advice or to be for the purpose of pursuing a defense. Defendant contends that his strategy of releasing articles *was* a legal strategy, *see* Def.'s Omnibus Mem. 63-64, but "[a] media campaign is not a litigation strategy," *Haugh v.*

14

*Schroder Inv't Mgmt. North America Inc.*, No. 02-cv-7955 (DLC), 2003 WL 21998674, at *3 (S.D.N.Y. Aug. 25, 2003).

*   *   *   *

For the foregoing reasons, the first, second, and fifth motions in Defendant's omnibus filing and his motion to suppress the article produced by Presnall are DENIED.

The Clerk of Court is directed to terminate ECF No. 772.

SO ORDERED.

Dated: April 29, 2022
      New York, New York

_____
JESSE M. FURMAN
United States District Judge