

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 29, 2022

**BY ECF**
Honorable Jesse M. Furman
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

      Re:    *United States v. Joshua Adam Schulte*,
              S3 17 Cr. 548 (JMF)

Dear Judge Furman:

      The Government respectfully submits this letter in response to the defendant's submission, dated April 26, 2022, attaching a redacted copy of the affidavit of Dr. Steven Bellovin, dated April 22, 2022 (the "Bellovin Affidavit"), in support of the defendant's motion to compel additional classified discovery in this matter. (D.E. 787). Attached to this letter are declarations from Patrick Leedom and Michael Berger, the two experts who testified as Government witnesses in the previous trial in this case, and who the Government expects to call at the upcoming retrial. In addition, as set forth below, the Court should require the defense to provide the Government with an unredacted copy of the Bellovin Affidavit and afford the Government the opportunity to respond to the currently redacted portions. Ultimately, as even the unredacted portions of the Bellovin Affidavit make clear, the defendant has failed to show that the production of additional classified discovery is warranted.

     **I.**    **The Court Should Order the Defense to Produce an Unredacted Version of the Bellovin Affidavit.**

      The Government objects to being provided only a redacted version of the Bellovin Affidavit. The only justification offered for these redactions is that "those portions [would] reveal defense strategy." (D.E. 787 at 1). That is no basis for withholding purported expert opinions offered in support of the defendant's motion to compel classified discovery. "Nothing in the Fifth Amendment privilege entitles a defendant as a matter of constitutional right to await the end of the [Government]'s case before announcing the nature of his defense, any more than it entitles him to await the jury's verdict on the [Government]'s case-in-chief before deciding whether or not to take the stand himself." *Williams v. Florida*, 399 U.S. 78, 85 (1970). It is commonplace for a defendant to be required to disclose some aspects of trial strategy before trial, including when the defendant seeks substantive relief, *see, e.g.*, *United States v. Carton*, No. 17 Cr. 680 (CM), 2018 WL 4360781, at *1–2 (S.D.N.Y. Sept. 6, 2018); or raises an asserted defense, *see, e.g.*, Fed. R. Crim.

P. 12.1(a)(2); 12.2(a); 12.3(a). In this case, the Court rejected a similar request by the defense to withhold its notice pursuant to Section 5 of the Classified Information Procedures Act ("CIPA") from the prosecution team based on a purported need to prevent disclosure of the defense theory. (*See* D.E. 142).

Moreover, the specific circumstances of this case warrant affording the Government the opportunity to respond to the entirety of the Bellovin Affidavit. As described below, the unredacted portions of the Bellovin Affidavit contain material misstatements regarding the analysis conducted by the Government's expert witnesses, both of whom described their analysis in detail in pretrial expert disclosures and during their prior public testimony; as well as the nature of the discovery that has been made available to the defense expert and the conditions under which that discovery was made available. Indeed, this is not the first time Dr. Bellovin has submitted an affidavit with material misstatements to the Court. During the previous trial in this case, the defense filed an affidavit from Dr. Bellovin on the same subject as the April 22 Bellovin Affidavit, which inaccurately claimed that the Government had not made certain data available. (*See* D.E. 331 (attaching the prior Bellovin affidavit purportedly showing why the Government's "disclosures were deficient")). In response, the Government explained that it had in fact produced the particular information Dr. Bellovin erroneously claimed had been withheld. (D.E. 332).

Although Dr. Bellovin now acknowledges that the material he previously claimed was withheld was, in fact, made available to him (*see* Bellovin Aff. ¶¶ 16, 32), the Bellovin Affidavit contains new errors that should give the Court additional pause about considering Dr. Bellovin's representations without affording the Government the opportunity to respond. For example, in Paragraph 36, Dr. Bellovin declares that "Mr. Leedom did not verify that Mr. Schulte's private key corresponded to the public key file, and I was not able to do it myself because I lacked access to machine-readable and processable copies of the files purported to be Mr. Schulte's private and public SSH keys." Not only did Mr. Leedom in fact verify the defendant's keypair, he testified about having done so at the trial at which Dr. Bellovin was present. (*See* Trial Tr. 990:23-25; 991:1-4 ("[A] key fingerprint is a way to identify—it's a unique identifier for a specific public-private key pair, and we know this to be the defendant's public-private key that's on his Ubuntu virtual machine . . . [because] I've calculated the fingerprint and compared it, and it matches.")). And not only did Dr. Bellovin and the defendant have access to the actual alphanumeric code of Schulte's private and public SSH keys, they were introduced as public exhibits at trial. (*See* GX 1209-16 (public key on ESXi server); 1207-7 (public key on Apr. 16, 2016 backup of Confluence virtual machine); 1203-9 (private key on defendant's DEVLAN computer)). Similarly, with respect to the analysis conducted by Mr. Berger to determine the timing of the Stash and Confluence data contained in the Leaks, Dr. Bellovin falsely asserts that "Mr. Berger relied on all backups to note each day particular files were modified, and which were the versions ultimately released by WikiLeaks." (Bellovin Aff. ¶ 17). As disclosed in Mr. Berger's pretrial expert report and his public trial testimony, the version control features of the Stash and Confluence databases allowed him to analyze data from two particular backups—one each of Stash and Confluence—to conduct his timing analysis, rather than using all of the backups. (Tr. 1351-64).

Other aspects of the Bellovin Affidavit, if not entirely incorrect, are at least misleading. For example, the Bellovin Affidavit asserts that "I was given just several hours at a CIA facility to examine a *redacted* version of a few backup files." (Bellovin Aff. ¶ 16). As described in Mr.

Leedom's declaration, extensive Stash and Confluence data was made available to Dr. Bellovin at the CIA, data that is amply sufficient for an expert to test the Government's expert analysis. (Leedom Decl. ¶¶ 5-11). The only redactions to the files made available to Dr. Bellovin were to the usernames of CIA employees in "commit logs" (*i.e.*, the record of specific changes to the source code repository) for the Stash projects provided on the standalone computer. Nor was there any limitation on the time or extent of Dr. Bellovin's analysis of the material on the standalone computer. Although the CIA had arranged for Dr. Bellovin to have as much time as he needed to examine that material, Dr. Bellovin only briefly examined the standalone computer in December 2019 and departed early in the day after informing the CIA that he would need to conduct more research and to schedule another session. Neither he nor the defense team ever asked to schedule another session; the standalone computer has remained available for further review since, but no request to review it has ever been made.[1]

## II. The Defendant Has Not Shown that Additional Classified Discovery Is Warranted.

With respect to the substance of the Bellovin Affidavit that is unredacted, the Affidavit merely reiterates the same demand for "equal access to the mirror images" (D.E. 787 Ex. 1 at 11 and *passim*) that Judge Crotty twice rejected. (D.E. 124; 514).[2] The Court recognized both the defendant's interest in "the disclosure of *relevant* forensic evidence" and the Government's interest in "protecting against the flow of classified information pertaining to national security." (*Id.* at 3). The parties have "collaborated in identifying and exchanging . . . an unprecedented volume of classified discovery" (*id.*), but given the significant national security interests against disclosing highly sensitive and irrelevant data and the application of the CIPA framework, the defendant is not entitled to "comprehensive DEVLAN access." (*Id.*). The Court has recognized that those rulings also "invite Mr. Schulte to make more tailored requests and Mr. Schulte purports that he is. Namely, access to the CIA's Stash and Confluence backups that were allegedly stolen and transmitted to WikiLeaks." (Apr. 13, 2022 Tr. at 49:11-12).[3] There does not appear to be any

---

[1] There is also little if any prejudice to the defendant from disclosing the full Bellovin Affidavit. If the defendant intends to call Dr. Bellovin to testify, the defendant would be required to produce the Bellovin Affidavit, along with Dr. Bellovin's prior *ex parte* submissions, to the Government pursuant to Federal Rule of Criminal Procedure 26.2 no later than May 13, 2022. (D.E. 767 at 2). To date, the defense has not produced any reports, notes, or other material of any kind from Dr. Bellovin, relying only on an expert disclosure submitted by counsel prior to the last trial in this matter.

[2] The Government also notes that the defendant has filed a petition for a writ of mandamus in the Second Circuit regarding the Court's most recent denial of his request for access to the complete "mirror images." *See In re Joshua Adam Schulte*, No. 21-2558 (2d Cir. 2021). The Second Circuit has not ordered the Government to respond to this petition, and the case was submitted to a motions panel (together with the defendant's myriad other appeals) on March 9, 2022.

[3] The Bellovin Affidavit also suggests that the defendant was somehow prejudiced by the fact that the Government did, in fact, produce additional discovery responsive to previous tailored requests for information, such as for the last-accessed times on the backup files that the defendant stole,

Case 1:17-cr-00548-JMF   Document 791   Filed 04/29/22   Page 4 of 6

Page 4

dispute that the Government has already produced to the defendant and to his expert the March 3, 2016 backups that the Government alleges were stolen and transmitted to WikiLeaks, first on December 10, 2018, and again on the standalone computer made available to Dr. Bellovin in November 2019.[4]

In addition, with respect to Confluence in particular, as Mr. Berger's declaration makes clear, the Government's previous collective productions of the March 2, 3, and 4, 2016 Confluence backups provide ample basis for the defendant's expert to test Mr. Berger's specific conclusion that it was the March 3, 2016 Confluence backup that was stolen. (Berger Decl. ¶¶ 12 & 18). Not only did the Government produce those backups, the Government also produced the April 25, 2016 Confluence backup (the one used by Mr. Berger to run the queries that formed the basis for his conclusions about Confluence, and the most recent version available to the Government). The Government produced it on December 10, 2018, and the defense confirmed by letter dated September 29, 2016 that they had received this backup and did not raise any issues with the Government's production of those files. Mr. Berger's expert report, which was produced together with his expert notice prior to the previous trial in this matter, makes clear that the only materials he relied on for his conclusions about Confluence were the April 25, 2016 backup of the SQL database and the copies of the material disclosed by WikiLeaks (Berger Decl. ¶¶ 7-11 & 13-17), contrary to the Bellovin Affidavit's assertion that Mr. Berger must have relied on "a mirror image of the FS01 server" (Bellovin Aff. ¶ 18). Mr. Berger also testified about his queries of the April 25, 2016 Confluence SQL database at trial. (*See* Trial Tr. 1358:11-14; 1362:3-5). Even though the information that the Government has already produced is more than sufficient to test Mr. Berger's conclusions, the Government is also now making an unredacted copy of that April 25, 2016 Confluence backup (the 20160425_Confluence_Files forensic case was redacted consistent with the approach approved by the Court in its ruling on the Government's motion pursuant to Section 4 of CIPA) available together with the other material on the standalone computer at the CIA for Dr. Bellovin to review upon request. Thus, not only has the defense long had access to the previous disclosures that provide sufficient information to assess Mr. Berger's conclusions as explained in Mr. Berger's declaration, the defense now has access to the exact same material that Mr. Berger used to conduct his analysis.

---

because the fact that he had to make such requests revealed defense strategy. (*See* Bellovin Aff. ¶¶ 22-23). Nothing supports the defendant's contention that the Government's good faith compliance with the Court's directive that the parties cooperate on the production of more specific information the defendant believed relevant somehow warrants revisiting the Court's CIPA rulings in this case. Moreover, any discovery demand in any case, even one not involving highly sensitive classified information, necessarily implicates the same potential for highlighting information the defense deems significant, but neither due process nor Rule 16 mandates that this be remedied by turning over all information in the Government's possession.

[4] To the extent the Court would find it helpful, the Government can also provide the Court the classified discovery letters sent to the defense detailing the specifics of the Government's various productions in this matter.

While the Government continues to be prepared to comply with tailored requests from the defense, the Bellovin Affidavit is not in furtherance of any "more tailored" request—it simply repeats the assertion that nothing short of the complete mirror images will do. There does not, however, appear to be any dispute (nor could there be) that the complete mirror images "contain[] significant amounts of classified information entirely unrelated to Schulte's work at the CIA and the charges he stands accused of." (D.E. 514 at 2). The Court should not indulge the defendant's effort to transform the Court's expressed desire for additional clarity on what material has been made available to the defendant and his expert into a wholesale reconsideration of issues that the Court has considered and rejected.

It also appears from the unredacted portions of the Bellovin Affidavit that the purported basis for Dr. Bellovin's demand for complete mirror images is the speculative possibility that he might find information that the Government's experts missed. That hypothesis is not a basis for ordering further disclosure. It is black-letter law that "'classified information is not discoverable on a mere showing of theoretical relevance.'" *United States v. Mostafa*, 992 F. Supp. 2d 335, 338 (S.D.N.Y. 2014) (quoting *United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989)); *see also United States v. Abu-Jihaad*, 630 F.3d 102, 142 n.35 (2d Cir. 2010) (same). Even outside the classified information context, a defendant does not have a "constitutional right to conduct his own search of the [Government's] files to argue relevance." *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987). On the contrary, "[w]ith respect to items that the Government does not intend to use in its case-in-chief and that were not obtained from the defendant, it is a defendant's burden to make a prima facie showing that the documents sought are material to preparing the defense." *United States v. Parnas*, No. 19 Cr. 725 (JPO), 2021 WL 2981567, at *8 (S.D.N.Y. July 14, 2021) (cleaned up). "'Materiality means more than that the evidence in question bears some abstract logical relationship to the issues in the case. There must be some indication that pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor.'" *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991) (quoting *United States v. Ross*, 511 F.2d 757, 762-63 (5th Cir. 1975)). The defendant "'must offer more than the conclusory allegation that the requested evidence is material.'" *United States v. Weigand*, No. 20 Cr. 188 (JSR), 2020 WL 5105481, at *11 (S.D.N.Y. Aug. 31, 2020) (quoting *United States v. Urena*, 989 F. Supp. 2d 253, 261 (S.D.N.Y. 2013)); *see also United States v. Akasha*, No. 14 Cr. 716 (VM), 317 F. Supp. 3d 786, 794 (S.D.N.Y. 2018) (denying motion to compel where defendants "fail[ed] to make a prima facie showing that the documents they seek from the Government would be material to any non-frivolous defense to their prosecution"). In particular, when the defendant seeks information in support of "an argument in response to the prosecution's case in chief, there is a perceptible symmetry [in Rule 16] between documents 'material to the preparation of the defendant's defense,' and, in the very next phrase, documents 'intended for use by the government as evidence in chief at the trial.'" *United States v. Armstrong*, 517 U.S. 456, 462 (1996) (quoting former version of Rule 16).

As the declarations of Mr. Leedom and Mr. Berger make clear, Dr. Bellovin has access to the information necessary to test the conclusions of the Government's experts and to cross-examine them about their methodology. The Government has consistently been willing in good faith to address tailored requests for additional disclosure, but the Bellovin Affidavit is in no sense in support of a tailored request. The Bellovin Affidavit's conjecture that there might be additional material that was overlooked is no basis for the Court to "authorize the wholesale sifting of


Page 6

haystacks of irrelevant, sensitive national security information based on the speculative, theoretical hope of discovering an as-yet-undisclosed needle of relevance. . . [T]o do so would be to undermine the fundamental purpose of CIPA." (D.E. 514 at 5).

    Respectfully submitted,

    DAMIAN WILLIAMS
    United States Attorney

by: _____/s/_____
    David W. Denton, Jr./Michael D. Lockard
    Assistant United States Attorneys
    (212) 637-2744/-2193

cc:   Standby Counsel (by ECF)
      Joshua Adam Schulte (by mail)

Enclosures