

█████████

**U.S. Department of Justice**
*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 19, 2022

**By Hand (CLASSIFIED SUBMISSION)**
**By ECF (Redacted)**
The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Street
New York, New York 10007

               Re:    <u>United States v. Joshua Adam Schulte</u>, S3 17 Cr. 548 (JMF)

Dear Judge Furman:

      █ The Government writes to request that the Court rule *in limine* on the admissibility of testimony from at least forty-eight witnesses who the Government understands have received subpoenas from the defendant pursuant to Federal Rule of Criminal Procedure 17. The defendant proposes to call an extraordinary number of current and former employees of the Central Intelligence Agency ("CIA"), including, among others, ████████████████████████████ ████████, the former principal attorney for the CIA component where the defendant worked, and the former Director of the CIA and Secretary of State (whose testimony was previously precluded by Judge Crotty). The Government understands the defendant's proposed witness list would also include at least ████ covert CIA officers as well as a number of additional overt officers working in sensitive roles at the CIA, for whom the Government would seek certain witness protections, consistent with the Court's orders regarding such safeguards. By contrast, the Government intends to call only between nine and eleven witnesses *in total*, including only three current and one former CIA employees. Because many of the defendant's proposed witnesses previously or currently work in particularly sensitive positions, ██████████████████████████ advance ruling on the admissibility of their testimony is necessary to avoid undue disruption of their critical intelligence work by making the complex arrangements necessary to, for example, repatriate covert officers for testimony. For the vast majority of witnesses the defendant has subpoenaed, it appears that (i) their testimony would not meet the minimum thresholds of personal knowledge and relevance required by Federal Rules of Evidence 401 and 602, and (ii) to the extent relevant and admissible, their testimony would be cumulative, confusing, or inflammatory, and should therefore be excluded under Rule 403. While the Government believes that the Court can and should preclude the testimony of some of these witnesses now (including the three identified above and discussed further below), more information is necessary for the parties to address the complex evidentiary issues presented by the proposed defense witness testimony. Accordingly,

█████████

Hon. Jesse M. Furman
May 19, 2022
Page 2

the Government respectfully requests that the Court (i) preclude the defense from calling the three witnesses referenced above, and (ii) order the defendant to make an offer of proof as to the substance and basis for admissibility of the testimony from the remaining witnesses subject to subpoena, so the Court can rule on the admissibility of the proposed testimony.

### I. ▮ Background

▮ In advance of the previous trial in this matter, the Government learned that at least 69 current or former CIA employees had reported being served with subpoenas by the defense to testify at trial to the CIA's Office of General Counsel as required by 32 C.F.R. § 1905.4(a), including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Erin ▮▮▮▮, the former principal attorney for the CIA component where the defendant worked; and Michael Pompeo, the former Director of the CIA and then-serving Secretary of State. On February 13, 2020, the Government moved to preclude the defendant from calling these three individuals and for the Court to compel the defendant to make an individualized proffer as to the testimony of the remaining witnesses so that the Court could determine whether they had firsthand knowledge of the proffered subject, whether the proffered testimony was relevant, whether the probative value of the proffered testimony meets the requirements of Rule 403, and whether the testimony of all of the numerous proposed defense witnesses (of whom the Government is aware) was necessary, or whether some number should be precluded as cumulative. (*See generally* D.E. 323). In response to the Government's letter, the defense withdrew the subpoenas for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and otherwise narrowed the list of potential witnesses to approximately a dozen other individuals that the defense asked the Government to make available for trial testimony, but maintained the subpoena for Sec. Pompeo. (*See* D.E. 325). On February 21, 2020, the Court granted the Government's motion to preclude Sec. Pompeo's testimony, concluding that the "Defendant has failed to show any facts related to this case of which Secretary Pompeo has first-hand knowledge," and that other purported bases for his testimony were "off base" and "irrelevant." (*See* D.E. 330 at 3). The Government arranged for the more limited set of proposed defense witnesses to be brought to New York and made available to testify at trial; the defense ultimately elected not to call any of the subpoenaed witnesses at trial.

### II. ▮ Applicable Law

▮ As set forth in detail in the Government's Motions *in limine* (*see* D.E. 780 at 35-39), the defendant's rights under the Sixth Amendment and Rule 17 to subpoena witnesses do not afford him "an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence. The Compulsory Process Clause provides him with an effective weapon, but it is a weapon that cannot be used irresponsibly." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). As the proponent of the testimony of the subpoenaed witnesses, the defendant "bear[s] the burden of demonstrating the admissibility" of the testimony, *United States v. Camacho*, 353 F. Supp. 2d 524, 535 (S.D.N.Y. 2005) (noting that "[t]his general principle applies to all questions of admissibility that arise under the Federal Rules of Evidence"), by a preponderance of the evidence, *see Bourjaily v. United States*, 483 U.S. 171, 175 (1987) ("The preponderance standard ensures that before admitting evidence, the court will have found it more

likely than not that the technical issues and policy concerns addressed by the Federal Rules of Evidence have been afforded due consideration."). To make such a showing as to the proposed testimony, the defendant should "inform[] the court of its substance by an offer of proof," Fed. R. Evid. 103, so the Court can "decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible," Fed. R. Evid. 104(a).

■ Even if the proposed witness's testimony is admissible in the abstract, it may still be precluded due to "the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. "The exclusion of evidence is generally appropriate when the evidence merely repeats evidence already admitted." 2 Weinstein's Federal Evidence § 403.06 (2019). Although "the Sixth Amendment guarantees a defendant the right to have compulsory process for obtaining witnesses in his favor, at the same time a defendant . . . must show the witness would have provided favorable evidence which was neither cumulative nor irrelevant." *United States v. Desena*, 287 F.3d 170, 176 (2d Cir. 2002) (internal quotation marks and citations omitted); *see also United States v. Ginsberg*, 758 F.2d 823, 831 (2d Cir. 1985) (defendant must show that witness's testimony is "not merely cumulative to the testimony of available witnesses"). "If the court could properly have excluded proffered testimony on the ground that the evidence was collateral, its refusal to subpoena witnesses who were to give that testimony cannot be deemed error." *United States v. Scopo*, 861 F.2d 339, 345 (2d Cir. 1988).

### III. ■ Discussion

■ The Government understands that the defendant has served at least 48 current or former CIA employees with subpoenas to testify in this case. That number reflects those recipients who have informed the CIA's Office of General Counsel of the subpoenas, as required by 32 C.F.R. § 1905.4(a), as of May 17, 2022.[1] As referenced above, these include subpoenas for (1) ■ a covert officer in CCI ■ (2) Erin ■ the former Chief Counsel for the Center for Cyber Intelligence ("CCI"); and (3) Michael Pompeo, the former Director of the CIA and Secretary of State. As to these three individuals, the record is clear now that their testimony is inadmissible and should be precluded. For the remaining subpoenaed witnesses, the Government recognizes that some of them (such as those whom the Government called as witnesses in the previous trial in this matter) may have relevant testimony to offer, although the Government expects that their testimony would, in many respects, be cumulative of testimony by the witnesses who are already being called at trial. For many of the witnesses, however, it is unclear that they even have any relevant personal knowledge to which they could testify. Thus the Court should require the defendant to identify, sufficiently in advance of trial to permit the necessary logistical arrangements to be made, a reasonable number of witnesses who he realistically expects to call at trial, and make an individualized proffer as to each witness's

---

[1] ■ The Government does not know the precise number of subpoenas that the defendant has issued, because the Government is only aware of the subpoenas issued to individuals who have reported receiving them to the CIA's Office of General Counsel.

testimony. Based on that proffer, the Court can determine whether the defendant's proposed witnesses have firsthand knowledge of the proffered subject, whether the proffered testimony is relevant, whether the probative value of the proffered testimony meets the requirements of Rule 403, and whether the testimony of all of the numerous proposed defense witnesses (of whom the Government is aware) is necessary, or whether some number should be precluded as cumulative.

**A.** ▓▓▓▓▓▓

▓▓▓▓▓▓ is a covert CIA officer working in CCI.[2] ▓▓▓▓▓▓ The defendant has made no proffer of the relevance of ▓▓▓ testimony in connection with this retrial. In advance of the previous trial, however, in a letter to the Court dated November 19, 2019, the defendant set forth the purported relevance of ▓▓▓ testimony. His proffer on its face demonstrates the inadmissibility of ▓▓▓ testimony:

> Mr. Schulte and ▓▓▓▓▓▓ The jury should hear that ▓▓▓ was a high up CIA employee whose position according to the CIA was sensitive. That management never took ▓▓ aside and warned ▓▓ about Mr. Schulte, ▓▓▓▓▓▓ is relevant.

▓▓▓▓▓▓

Moreover, the remainder of the defendant's proffer demonstrates the irrelevance of any testimony from ▓▓▓. Whether or not CIA managers chose to "warn" ▓▓▓ about Mr. Schulte has no bearing on *his* conduct, for which *he* is on trial. Nor is there any relevance to the sensitivity of ▓▓▓ position in a different group, which did not involve the use of DEVLAN, the Atlassian suite, or any other system at issue in this case. In addition, it would plainly be impermissible for the defendant to call ▓▓▓ to testify as to statements the defendant made to ▓▓ because it is axiomatic that "[w]hen the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." *United States v. Yousef*, 327 F.3d 56,

---

[2] ▓▓▓▓▓▓

153 (2d Cir. 2003) (quoting *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982)). Accordingly, the Court should rule that ▓▓▓ testimony is inadmissible.

**B.** ▓▓ **Erin** ▓▓▓▓

▓▓ Erin ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ who served from 2017 until 2021 as Chief Counsel for CCI, the victim of the defendant's crimes, and previously served as a CCI attorney responsible for, among other things, the Engineering Development Group where the defendant worked. As such, her communications about matters related to this case are privileged and inadmissible. *See* Fed. R. Evid. 501, 502. The defendant has also failed to suggest any purported relevance to her testimony in connection with this retrial. Inferring, however, from the defendant's September 9, 2019 notice (the "Section 5 Notice") pursuant to Section 5 of the Classified Information Procedures Act ("CIPA"), the defendant sought to introduce an FBI report of an interview of Ms. ▓▓▓ by asserting that Ms. ▓▓▓ "[t]ells the FBI that 'those who attended the off-site conference did not have access to the information that was leaked on WikiLeaks.' FBI does not ask to check or verify who was at work by asking for badge records." (Section 5 Notice at Row 104). The defendant omits that the report noted only that those individuals "did not have access to the information that was leaked on WikiLeaks *at the offsite*," which the defendant did not attend, and which ran only from March 8 to 10, 2016, more than a month before the Government alleges the defendant to have stolen the national defense information at issue in this case. While this information is irrelevant, to the extent it is admissible, it can only be testified to by a witness with firsthand knowledge, rather than through an attorney who merely reported information regarding her understanding of the access of others to the FBI. Nor are the investigative steps taken by the FBI with regard to other individuals relevant to the jury's consideration of the defendant's conduct. As the Government has asked the Court to instruct the jury (and as is standard in this District), particular investigative measures are not required. The defendant is not entitled to a sideshow about who suggested what leads to the FBI, particularly when he proposes to do so through an attorney for the victim of the charged offenses. Accordingly, the Court should preclude the testimony of Ms. ▓▓▓.[3]

**C.** ▓▓ **Michael Pompeo**

▓▓ Sec. Pompeo served as the Director of the CIA from January 23, 2017 until April 26, 2018, and subsequently as the Secretary of State. Sec. Pompeo had no role at the CIA at any time when the defendant was an employee there, and as a result has no relevant testimony to offer with respect to any of the defendant's actions at the CIA for which he is on trial. Although Sec. Pompeo was serving as Director of the CIA on March 7, 2017, when WikiLeaks began the public disclosure of the classified national defense information stolen by the defendant on April 20, 2016, as the Court previously concluded, there are no "facts related to this case of which Secretary Pompeo has

---

[3] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

first-hand knowledge." (D.E. 330 at 3). Sec. Pompeo was not a user of DEVLAN, a network administrator within the CIA more broadly, or an investigator involved in the first-hand review of evidence related to the defendant's theft. While Sec. Pompeo was undoubtedly kept informed about the consequences of the defendant's crimes and the CIA's response to secure its systems going forward, he—like virtually all similarly situated high-ranking government officials—received that information through briefings and summaries provided by others, which is quintessential inadmissible hearsay, rather than through first-hand knowledge of the facts.

For these reasons, the Court previously granted the Government's motion to preclude Sec. Pompeo's testimony. The "general practice of refusing to reopen what has been decided," *United States v. Birney*, 686 F.2d 102, 107 (2d Cir. 1982), counsels strongly against revisiting that conclusion "unless cogent and compelling reasons militate otherwise," *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (internal quotation marks omitted). The Court's previous conclusion that Sec. Pompeo is not a percipient witness to relevant facts of consequence in this case is dispositive—he did not have that knowledge in February of 2020, and could not have acquired it since then. Accordingly, his testimony cannot meet the most basic threshold of Rule 602, and the Court should adhere to the previous conclusion precluding his testimony.

As with ▮ and ▮, the Court should preclude Sec. Pompeo's testimony.

### D. ▮ Remaining Witnesses

As to the remaining witnesses about which the Government is aware, the Court should order the defendant to identify by June 1, 2022 a reasonable number of witnesses that he realistically expects to call at trial and make a proffer of each witness's anticipated testimony and the basis for its admissibility, consistent with Federal Rules of Evidence 103 and 104, sufficient to allow the Government to make specific objections and for the Court to rule as soon as possible. *See* 1 Weinstein's Federal Evidence § 103.22 (2019) ("In addition to making a sufficient offer of proof, the proponent of evidence must convince the trial court that the evidence is actually admissible. Counsel must be prepared to explain and substantiate the theory under which it is claimed that the evidence is admissible.").

In addition to the prerequisites of the Rules of Evidence, in the normal course, applicable regulations would also require the defendant to make such a proffer. *See* 32 CFR 1905.4(d) ("If oral or written testimony is sought by a demand in a case or matter in which the CIA is not a party, a reasonably detailed description of the testimony sought . . . by the party seeking the testimony or by the party's attorney must be furnished to the CIA Office of General Counsel."). Courts have routinely concluded that similar regulations oblige a defendant to "demonstrate his need for that evidence" through the testimony of agency employees, and that it would be "material and favorable to his defense," and that such regulations do not impinge on his Sixth Amendment rights. *United States v. Guild*, 341 Fed. Appx. 879, 886 (4th Cir. 2009) (O'Connor, J.) (citing *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951); *United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982)); *see also generally United States v. Rosen*, 520 F. Supp.

2d 802 (E.D. Va. 2007) (discussing application of *Touhy* regulations and a defendant's obligation to make a proffer of materiality in espionage case).

■ In view of the unique nature of this case, the Government and the CIA have adopted, and continue to pursue, a streamlined approach to defense requests to call CIA witnesses whose likely relevant testimony is apparent without waiving the requirements of the generally applicable regulations. For a large number of the subpoenaed witnesses, however, the Government understands them to have little or no direct involvement in the underlying circumstances at issue in this case, warranting particularly careful consideration as to whether the testimony of such witnesses is actually based on the individual's personal knowledge of relevant facts. At least as important, however, testimony from the dozens of witnesses the defendant has subpoenaed would almost certainly result in "confusing the issues, misleading the jury, undue delay, wasting time, [and] needlessly presenting cumulative evidence." Fed. R. Evid. 403.

■ Nor is the defendant relieved of the basic requirements of the Federal Rules of Evidence because of the procedures put in place in this case requiring that defense requests for pretrial interviews of CIA witnesses be submitted through the CISO. (*See* D.E. 739 ¶ 28). While it may not be in exactly the form he would prefer, the defendant does have the ability to request pretrial interviews of CIA employees (*see* D.E. 796), which those employees in turn have the right to grant or deny. There is no question, however, that a subpoena pursuant to Rule 17 does not require witnesses to confer with the defense in advance of trial—its sole purpose is to compel a witness's appearance and testimony in court. *See* Wright & Miller, 2 Fed. Prac. & Proc. Crim. § 272 (4th ed. 2022) ("Rule 17(a) permits the issuance of subpoenas only to compel attendance at formal proceedings such as hearings and trials. It may not be used to compel prospective witnesses to attend pre-trial interviews. . . ." (collecting cases)). The fact that the defendant may be unable to speak with witnesses before trial—because they refuse his requests for such interviews, made through a process designed to ensure that he can in fact make such requests—does not absolve him from the need to proffer the admissibility of the evidence he seeks to admit pursuant to the rules of evidence. (*See* 5/3/22 Classified Tr. at 117-23 (defendant arguing that "because [of] the restrictions imposed by the government, we are not really able to begin this process . . . to determine who is going to testify specifically to what or if the testimony is helpful")).

■ The Court should order the defendant to satisfy his obligation to demonstrate the admissibility of each individual's proposed testimony now. In order to arrange for testimony from an extraordinary number of witnesses serving in sensitive national security positions ■ ■, the Government must follow unique procedures necessary to ensure CIA officers' safe transportation to, and participation in, this public trial. In addition, ■ the witnesses' travel arrangements must also include sufficient time for any testing, quarantine, or other delay caused by the continuing requirements in place to address the COVID-19 pandemic. Delaying adjudication of the admissibility of each individual witness's testimony would force the Government to impose upon dozens of serving officers the burden of being rapidly extracted from their sensitive positions only to have the Court potentially rule later that testimony from (at least some of) them is unnecessary, inadmissible, or both. Such a result would render the entire exercise unnecessary

and needlessly harm national security. To the extent that the defendant wishes to, as the defense did before the previous trial, narrow his list of potential witnesses to a reasonable number and make a proffer of their testimony that would at least plausibly suggest its admissibility, the Government and the CIA are prepared to, once again, make arrangements for those individuals to be available to testify if the defendant wishes to call them.[4] Based on the best current estimates of the time necessary to make arrangements for witnesses to arrive safely in New York, the Government would respectfully request that any such narrowing be completed by June 1, 2022.

Accordingly, the Government respectfully requests that the Court preclude the testimony of ▮▮▮ and Erin ▮▮▮ adopt the Court's prior ruling precluding the testimony of Michael Pompeo; and order the defendant to make promptly an individualized showing as to why the testimony of a reasonable number of the remaining witnesses he has subpoenaed is relevant and admissible.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____/s/_____
David W. Denton Jr. / Michael D. Lockard
Assistant United States Attorneys
(212) 637-2744 / 2193

Cc: Joshua Adam Schulte (by hand and mail)
Defense Counsel (by hand and ECF)

---

[4] The Government of course reserves its right to object to any particular testimony that would be inadmissible, but to the extent that the defendant identifies a more reasonable number of witnesses whose proximity to the events at issue in this case at least suggests that they would have personal knowledge of relevant facts, the Government is prepared to undertake the steps necessary to make them available.