UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

JOSHUA ADAM SCHULTE,

        *Defendant.*

S3 17 Cr. 548 (JMF)

# MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S PROPOSED JURY INSTRUCTIONS

Joshua Adam Schulte
Slave #79471054
Metropolitan Detention Center (MDC)
P.O. Box 329002
Brooklyn, NY 11232

## TABLE OF CONTENTS

I. TABLE OF AUTHORITIES .................................................................................. ii

II. OBJECTIONS TO GOVERNMENT PROPOSED INSTRUCTIONS ........... 1

   A. Request No. 2: CIA Witnesses .................................................................... 1

   B. Request No. 3: Redaction of Evidentiary Items .......................................... 2

   C. Request No. 4: Defendant's Self-Representation ....................................... 2

   D. Request No. 5: False Exculpatory Statements ............................................ 3

   E. Request No. 6: Clandestine Behavior .......................................................... 4

   F. Request No. 7: Summary of Indictment ...................................................... 4

   G. Request No. 8: Counts One Through Four: Purpose of the Statute ............. 5

   H. Request No. 9: Count One ........................................................................... 5

   I. Request No. 11: National Defense Information .......................................... 5

   J. Request No. 12: Knowledge and Intent ....................................................... 6

   K. Request No. 13-16: "reason to believe" scienter ......................................... 6

   L. Request No. 16: Willfully ............................................................................ 7

   M. Request No. 18: Counts Five Through Eight: Purpose of the Statute ......... 8

   N. Request No. 19-23: Count Five ................................................................... 8

   O. Request No. 20: Count Five: First Element—Unauthorized Access ........... 8

   P. Request No. 33: Count Nine: Purpose of the Statute .................................. 9

   Q. Request No. 35: Count Nine: First Element—Pending Proceeding ............ 9

   R. Request No. 35: Count Nine: Second Element—Knowledge ..................... 9

   S. Request No. 37: Count Nine: Third Element—Acted to Obstruct or Impede 9

III. CONCLUSION ................................................................................................. 10

I.     TABLE OF AUTHORITIES

**Cases**

*Bryan v. United States*,
 524 U.S. 184 (1998) ......................................................................................................7, 8

*Cheek v. United States*,
 498 U.S. 192 (1991) ...........................................................................................................7

*Ratzlaf v. United States*,
 510 U.S. 135 (1994) ...........................................................................................................7

## II. OBJECTIONS TO GOVERNMENT PROPOSED INSTRUCTIONS

Mr. Schulte respectfully submits this memorandum in opposition to the government's proposed jury instructions. Mr. Schulte's Requests to Charge are more accurate and far less prejudicial than those proposed by the government; the government seemingly requests the Court order the jury to convict Mr. Schulte. Mr. Schulte specifically objects to the following requests.

### A. Request No. 2: CIA Witnesses

Mr. Schulte objects to the second paragraph on page 7, particularly the second and third sentences: "The disclosure of these witnesses' true names and what they look like could potentially compromise their work at the CIA. That is why these precautions were taken, but you should not weigh it differently because they testified using a pseudonym [*if applicable* or used their first name only]."

The reason is not necessary, and it introduces prejudice to the defense. Mr. Schulte proposes, instead, the following instruction:

> You have also heard testimony from a number of witnesses who were either currently or previously employed by the Central Intelligence Agency, which I will refer to by its initials as the CIA. Some of these witnesses testified either by using a made-up name—a "pseudonym"—or just their first name. As with law enforcement officials, these witnesses do not deserve any more or less consideration, or greater or lesser weight than that of any other witness due to their employment with the CIA. You should not let any feelings you have about the CIA in general affect your assessment of their testimony or of the charges in this case.

1

### B. Request No. 3: Redaction of Evidentiary Items

Mr. Schulte objects to the phrasing of the government's request because it is both false and extremely prejudicial. There are multiple redactions in the evidence due to privilege, and many redactions or substitutions have nothing to do with national defense. Regardless, informing the jury that the redactions were necessary to "protect national security interests" is highly prejudicial. Instead, the court should simply adopt the phrasing of this instruction that was previously agreed upon and entered by Judge Crotty at the first trial. See, e.g. Dkt. 345 at 22 ("L. Redaction of Evidentiary Items"):

> We have, among the exhibits received in evidence, some documents that are redacted. "Redacted" means that part of the document was taken out.
>
> You are to concern yourself only with the part of the item that has been admitted into evidence. You should not consider any possible reason why the other part of it has been deleted.

There is simply no reason to lie to the jury or to inform them why items have been redacted or substituted; it is not necessary for their deliberation.

### C. Request No. 4: Defendant's Self-Representation

Mr. Schulte objects to the phrasing of the government's request, and instead, the Court should issue the same instructions as it did at the Avenatti trial:

> A criminal defendant has a constitutional right under the Sixth Amendment to the United States Constitution to represent himself. The defendant's decision to exercise that right and represent himself has no bearing on whether he is guilty or not guilty, and it must not affect your consideration of the case. You are not to draw any inferences from the defendant's decision to exercise his right to represent himself.

2

### D. Request No. 5: False Exculpatory Statements

Mr. Schulte objects to this highly prejudicial instruction. The government tried to introduce this at the first trial, which was opposed by the defense (Dkt. 342), and ultimately rejected by Judge Crotty (Dkt. 345). The government offers no legitimate reason why this decision should be reconsidered. Mr. Schulte raises the same objections:

> Even assuming a factual predicate for a "false exculpatory" instruction exists on this record, the Court should exercise its broad discretion not to give it. *See, e.g., Fernandez v. Fitzgerald*, 711 F.2d 485, 486 n.1 (2d Cir. 1983) (noting that "we have never held it error not to give the charge," and that "there are those who believe it is better to leave matters of this sort to argument of counsel") (citing, *e.g., United States v. Robinson*, 475 F.2d 376, 384 (D.C. Cir. 1973)). *See also United States v. Glenn*, 312 F.3d 58, 69 (2d Cir. 2002) (reiterating that "falsehoods told by a defendant in the hope of extricating himself from suspicious circumstances are insufficient proof on which to convict where other evidence of guilt is weak and the evidence before the court is as hospitable to an interpretation consistent with the defendant's innocence as it is to the Government's theory of guilt") (quoting *United States v. Johnson*, 513 F.2d 819, 824 (2d Cir. 1975)).
>
> If the Court nevertheless concludes that a "false exculpatory" instruction is appropriate, the defense requests the model "Sand" charge, which is more balanced and fair than the government's proposed charge. *See* Leonard B. Sand, *Modern Federal Jury Instructions—Criminal*, Instruction 6-11.

3

### E. Request No. 6: Clandestine Behavior

Mr. Schulte objects to the "Clandestine Behavior" instruction. Once again, Judge Crotty did not issue any similar instruction at the first trial as it is extremely prejudicial and misleading. The Court should not issue such an instruction.

### F. Request No. 7: Summary of Indictment

Mr. Schulte objects to the government's lengthy summary naming statutes and detail of the government's allegations. The Court should take Judge Crotty's approach, and leave the detail to each individual charge. See, e.g. Dkt. 345 at 21-22 ("A. Summary of Indictment"). Mr. Schulte proposes the following adaptation from Judge Crotty's instruction:

> The Defendant, Joshua Schulte, has been charged in a nine-count Indictment. The Indictment in this case is not evidence. It merely describes the charges made against the Defendant. It is a set of accusations. It may not be considered by you as evidence of the guilt of the Defendant. Only the evidence or lack of evidence decides that issue.
>
> The Indictment charges that in or about 2016, the defendant allegedly took national defense information from CIA computer systems without authorization and transmitted that information to WikiLeaks, which posted the information online in 2017, specifically Counts 1, 2, 5, 6, 7, and 8. Those charges, the WikiLeaks charges, account for 6 of the counts in the Indictment. The Indictment further charges Mr. Schulte with Counts 3 and 4, of unlawful disclosure and attempted disclosure of national defense information while he was in the Metropolitan Correctional Center, or MCC, a federal detention center. Finally, the Indictment charges Mr. Schulte with Counts 9, relating to obstruction of justice during the FBI's investigation. The Government must prove all the charges in the Indictment beyond a reasonable doubt.

4

### G. Request No. 8: Counts One Through Four: Purpose of the Statute

Mr. Schulte objects to the government's extremely prejudicial instruction related to the purported purpose of the statute. There was no similar prejudicial instruction at the first trial (Dkt. 345), and this Court should not allow the government to introduce such irrelevant, prejudicial instructions at the retrial. The government's purported belief for the purpose of a statute is not relevant nor helpful for a jury in determining Mr. Schulte's guilt or innocence.

### H. Request No. 9: Count One

The parties differ regarding the language and number of elements for Count One. The Court should reject the government's language, and adopt Mr. Schulte's language.

### I. Request No. 11: National Defense Information

The parties differ regarding the definition of "National Defense Information." The Court should reject the government's language, and adopt Mr. Schulte's language. Specifically, the last sentence of paragraph two is both false and highly prejudicial: "This includes matters relating to the nation's intelligence capabilities such as how a U.S.-intelligence agency carried on its work and information related to the development of important intelligence-gathering techniques." This statement directs the jury to the conclusion that the WikiLeaks material is National Defense Information. Intelligence capabilities including how an agency "carried on its work" may not necessarily be NDI. This statement was never included in Judge Crotty's instructions (Dkt. 345), and should be rejected by the Court—it is up to the jury to determine whether or not the material is NDI.

Mr. Schulte also objects to sentence four and five of paragraph 3: "The fact that information has entered the public domain without the authorization of the United States Government, however, does not by itself mean that the information is not closely held. In

5

considering whether information is 'closely held,' your focus should be on what, if any, actions the United States Government has taken to protect the information." These sentences direct the jury to the government's own conclusion regarding NDI. However, this definition is incorrect, or at the very least, misleading to the jury. The jury must make its own determination whether materials publicly available are "closely held" by the government. These sentences were not originally included in Judge Crotty's definition of NDI (Dkt. 345 at 24-25).

### J. Request No. 12: Knowledge and Intent

The Court should adopt Mr. Schulte's jury instruction regarding knowledge and intent. Mr. Schulte specifically objects to the government's confusing definition of knowledge and intent, particularly paragraphs 1-3. The Court must clearly define knowledge and intent as defined by Judge Crotty (Dkt. 345 at 25-26): "The government is required to prove that the defendant acted with criminal intent—that is, that he acted in bad faith and with a deliberate purpose either to disregard or disobey the law... I emphasize that you must determine whether or not the defendant had the intent that the information *would* be used against the United States, not just that it *could* be so used."

### K. Request No. 13-16: "reason to believe" scienter

The indictment charges Mr. Schulte with a violation of the "documents" clause of 18 U.S.C. § 793(d), which does not require the government to prove the "reason to believe" scienter. This charging decision *may* affect the jury instructions, depending upon the government's case at trial. Thus, after the government rests, Mr. Schulte may move for additional jury instructions.

6

L.  **Request No. 16: Willfully**

Mr. Schulte objects to the government's definition of "willfully." Specifically, Mr. Schulte objects to the last two sentences of the last paragraph on page 26: "However, in determining whether a defendant has acted willfully, it is not necessary for the Government to establish that the defendant was aware of the specific law or rule that his conduct may be violating. But the defendant must have acted with the intent to do something the law forbids."

The government misstates the Supreme Court in *Bryan v. United States*, 524 U.S. 184 (1998). There, the Supreme Court noted that, "[a]s a general matter, when used in the criminal context, a 'willful' act is one undertaken with a 'bad purpose.' In other words, in order to establish a 'willful' violation of a statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'" *Id.* at 191-192 (quoting *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994)). However, the Supreme Court noted the example of *Cheek v. United States*, 498 U.S. 192 (1991), in which it decided the jury must find that the defendant was <u>aware of the specific provision of the tax code the he was charged with violating</u>. *Id.* at 201 (emphasis added). Similarly, in *Ratzlaf*, the Supreme Court concluded that the jury had to find that the defendant knew his structuring of cash transactions to avoid a reporting requirement was unlawful. See 510 U.S, at 138, 149. The Supreme Court specifically distinguished these cases because of the danger of ensnaring individuals engaged in apparently innocent conduct. As a result, the Supreme Court "held that these statutes 'carv[e] out an exception to the traditional rule' that ignorance of the law is no excuse and require that the defendant have knowledge of the law." *Bryan*, 524 U.S. at 194-195.

Accordingly, the *Bryan* court actually asserts the ***exact opposite*** of what the government claims. The government not only must prove beyond reasonable doubt that Mr. Schulte "acted

7

with an evil-meaning mind, that is to say, that he acted with knowledge that his conduct was unlawful," *Id.* at 193, but because "[t]he danger of convicting individuals engaged in apparently innocent activity," *id.*, that is, discussing or disclosing national, public news, requires that the government also prove beyond reasonable doubt that Mr. Schulte "was aware of the specific provision" of the law prohibiting the transmission of national defense information, and knew that the information he was transmitting or attempting to transmit contained national defense information.

### M.     Request No. 18: Counts Five Through Eight: Purpose of the Statute

See, *supra* G. The government's purported belief for the purpose of a statute is not relevant nor helpful for a jury in determining Mr. Schulte's guilt or innocence.

### N.     Request No. 19-23: Count Five

The Court should adopt Mr. Schulte's five element instruction instead of the government's four element instruction.

### O.     Request No. 20: Count Five: First Element—Unauthorized Access

The Court should adopt Mr. Schulte's jury instruction regarding unauthorized access. The government's does not make any sense as they define "exceeds authorized access" twice, the second of which appears to be the definition of "no access." Additionally, Mr. Schulte specifically objects to the last sentence of the request, spilling over from page 29 to 30: "Once permission has been revoked, technological gamesmanship or the enlisting of a third party to aide in access will not excuse liability." This sentence was not originally approved by Judge Crotty or used at the first trial. See, e.g. Dkt. 345 at 35-36. Moreover, the sentence is false or misleading. If an individual requests access because he honestly believes he should have access or was granted access, then this would not constitute a violation of the CFAA. Furthermore,

8

sending an email request for access additionally does not violate the CFAA. Thus, the Court should not issue this misleading and confusing instruction.

### P.  Request No. 33: Count Nine: Purpose of the Statute

See, *supra* G. The government's purported belief for the purpose of a statute is not relevant nor helpful for a jury in determining Mr. Schulte's guilt or innocence.

### Q.  Request No. 35: Count Nine: First Element—Pending Proceeding

Mr. Schulte objects to the last two sentences of request 35. The Court should, instead, use Mr. Schulte's proposed instruction or Judge Crotty's at the first trial. See, e.g. Dkt. 345 at 51. Mr. Schulte and most individuals have no idea when a proceeding commences with respect to grand juries or other criminal prosecutions. The Court should not establish the government's required proof in its own instructions; it is for the government to prove beyond reasonable doubt that a proceeding existed.

### R.  Request No. 35: Count Nine: Second Element—Knowledge

Mr. Schulte also objects to the final two sentences of request 35. It is not for the Court to establish the government's required proof. The government must prove that Mr. Schulte knew of the grand jury or other proceeding.

### S.  Request No. 37: Count Nine: Third Element—Acted to Obstruct or Impede

Mr. Schulte objects to the long and prejudicial definition of this element. Instead, the Court should rely once again on Judge Crotty's simply jury instruction. See, e.g. Dkt. 345 at 51-52.

### III.    CONCLUSION

For these reasons, the Court should adopt Mr. Schulte's Proposed Jury Instructions. Alternatively, the Court should adopt Mr. Schulte's counter-proposals or other objections included herein.

Dated: New York, New York

    May 20, 2022

Respectfully Submitted,

**/s/    Joshua Adam Schulte**

Joshua Adam Schulte
Slave # 79471-054
Metropolitan Detention Center
P.O. Box 329002
Brooklyn, NY 11232