UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                     :

UNITED STATES OF AMERICA,           :

                                    :

      -v-                      :           17-CR-548 (JMF)

                                    :

JOSHUA ADAM SCHULTE,             :         OPINION AND ORDER

                                    :

                  Defendant.     :

                                    :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       In this case, familiarity with which is presumed, Defendant Joshua M. Schulte, a former

employee of the Central Intelligence Agency, is charged with stealing national defense

information ("NDI") and transmitting it to Wikileaks as well as disclosing and attempting to

disclose NDI while detained pending trial at the Metropolitan Correctional Center ("MCC").  *See*

ECF No. 405 ("S3").  A first trial before Judge Paul A. Crotty ended in a conviction on two

counts and a mistrial on the others; retrial is scheduled for June 13, 2022.

       In advance of the retrial, Defendant filed supplemental notices pursuant to Section 5 of

the Classified Information Procedures Act ("CIPA"), 18. U.S.C. app. 3, on January 28, 2022

("Third Notice"), and February 7, 2022 ("Fourth Notice"), which incorporate by reference the

Section 5 Notices he filed prior to the first trial on September 19, 2019 ("First Notice"), and

October 4, 2019 ("Second Notice").[1]  The Government now moves, pursuant to Section 6(a) of

---

[1]     In Defendant's April 25, 2022 memorandum of law in opposition to the Government's
CIPA Section 6(a) motion, and during the May 3, 2022 sealed hearing on the motion, Defendant
identified additional categories of classified evidence he seeks to introduce at trial not addressed
in his previous Notices.  On May 6, 2022, Defendant filed a supplemental Classified Information
Procedures Act ("CIPA") Section 5 Notice as to these categories of information.  *See* ECF No.
798.  On May 17, 2022, the Government filed a motion pursuant to CIPA Section 6(a) with
respect to this supplemental notice; Defendant has until May 27, 2022, to file a response.  *See*

CIPA, for an order (1) adopting the CIPA Section 6 rulings made by Judge Crotty prior to the first trial and (2) excluding as irrelevant and inadmissible the additional classified information the Defendant has indicated his intent to rely on at the second trial. *See* Government's Section 6(a) Motion, dated March 18, 2022 ("Gov.'s Mem."). Defendant opposes the Government's motion. *See* Defendant's Opposition to the Government's Section 6(a) Motion, dated April 25, 2022 ("Def.'s Opp'n."). At the Court's direction, the Government also filed a reply. *See* Government's Reply Memorandum, dated May 2, 2022 ("Gov.'s Reply"). The Court held a sealed hearing on these issues on May 3, 2022. *See* May 3, 2022 Sealed Transcript ("Sealed Tr.").[2] For the reasons that follow, the Government's motion is GRANTED in part and DENIED in part.[3]

## APPLICABLE LEGAL STANDARDS

CIPA sets forth procedures governing the use of classified information at trial. "If a defendant reasonably expects to disclose or to cause the disclosure of classified information in any manner," he must — pursuant to Section 5 of the statute — "notify the attorney for the United States and the court in writing." 18 U.S.C. app. 3 § 5. The notice must include "a brief description of the classified information" to be used. *Id.* That said, "'[a] brief description' is not to be translated as 'a vague description.'" *United States v. Collins*, 720 F.2d 1195, 1199 (11th Cir. 1983). To the contrary, "[t]he Section 5(a) notice requires that the defendant state, *with*

---

*id.*; ECF No. 822. For the moment, therefore, the Court intimates no view on these categories of evidence.

[2]      At present, all of the foregoing documents are under seal pending classification review.

[3]      On May 11, 2022, the Court issued a bottom-line Order ruling on one of the arguments made by the Government in its motion, with an opinion to follow explaining the reasons for that ruling. *See* ECF No. 800. This is the opinion.

*particularity*, which items of classified information entrusted to him he reasonably expects will be revealed by his defense in this particular case." *Id.* (emphasis added).

Upon receipt of a Section 5 notice, the Government "may," pursuant to CIPA Section 6(a), "request the court to conduct a hearing to make all determinations concerning the use, relevance, or admissibility of classified information that would otherwise be made during the trial or pretrial proceeding." 18 U.S.C. app. 3 § 6(a).  Finally, "[u]pon any determination by the court authorizing the disclosure of specific classified information," the Government may move to avoid the disclosure either by admitting relevant facts that the information to be disclosed would tend to prove or by providing the defendant with a summary of such information.  *Id.* § 6(c).

Significantly, CIPA "does not alter the existing standards for determining relevance or admissibility." *United States v. Wilson*, 586 F. Supp. 1011, 1013 (S.D.N.Y. 1983); *see also United States v. Passaro*, 577 F.3d 207, 220 (4th Cir. 2009).  Thus, at the Section 6(a) stage, as here, a district court may prohibit the disclosure of classified information only if the "generally applicable evidentiary rules of admissibility" call for exclusion.  *United States v. Wilson*, 750 F.2d 7, 9 (2d Cir. 1984).  Under those standards, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  "Evidence need not be conclusive in order to be relevant." *United States v. Schultz*, 333 F.3d 393, 416 (2d Cir. 2003).  "Although relevant evidence is generally admissible, '[i]rrelevant evidence is *not* admissible.'" *United States v. Aiyer*, No. 20-CR-3594, 2022 WL 1296806, at *16 (2d Cir. May 2, 2022) (quoting Fed. R. Evid. 402).  Finally, even if evidence is relevant, it may be inadmissible "if its probative value is substantially outweighed by a danger of one or more of the following: unfair

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## DISCUSSION

Together, Defendant's Third and Fourth Notices seek to introduce four categories of evidence. First, Defendant broadly seeks reconsideration of Judge Crotty's prior CIPA decisions, which prohibited Defendant from using certain classified information during the first trial and adopted security protocols for certain CIA witnesses. Second, Defendant seeks to introduce evidence tending to show that the information he is accused of communicating and attempting to communicate from the MCC in Counts Three and Four of the Third Superseding Indictment was publicly available on the Internet at the time he is accused of communicating it. Third, Defendant provides notice that, should he testify at trial, he intends to testify that, by virtue of his employment at the CIA, he was privy to various categories of highly classified information that he did not leak. Finally, should he testify, Defendant seeks to introduce evidence that the CIA uses a specific computer program.

The Court will address each category in turn.

## A. Prior CIPA Rulings

The Court begins with the question of whether to adopt the CIPA decisions that Judge Crotty made before the first trial, as the Government requests. *See* Gov.'s Mem. 25. Defendant's Third Notice incorporates by reference his First and Second Notices and invites the Court to broadly reconsider Judge Crotty's CIPA decisions. Third Notice 1. That said, he takes specific exception to only one of Judge Crotty's rulings — namely, the adoption, after giving the press and public an opportunity to be heard, of certain security protocols for witnesses from the CIA, some of which amounted to a partial courtroom closure. *See* Def.'s Opp'n 2; ECF No. 293;

4

*see also* ECF Nos. 260, 263.  In response to Defendant's Notice and the Government's motion, the Court entered an Order on April 26, 2022, directing the Government to file a classified supplemental declaration from an appropriate official regarding the continuing necessity of the protocols as to each witness and giving members of the press and public an opportunity to be heard on the matter.  *See* ECF No. 786.[4]

Upon review of the parties' submissions, including the Government's supplemental submissions, the Court adopts all of Judge Crotty's CIPA rulings, including his ruling adopting security protocols for witnesses from the CIA.  The Court's decision is not based merely on adherence to the law of the case — although, as the Government demonstrates, that is reason enough to support it.  *See* Gov.'s Mem. 25.  Indeed, that doctrine "does not constitute a limitation on the court's power but merely expresses the general practice of refusing to reopen what has been decided."  *United States v. Birney*, 686 F.2d 102, 107 (2d Cir. 1982).  Instead, after reviewing the prior rulings in detail, the Court concludes that they are the product of a thorough and careful CIPA process.  Defendant offers, and the Court finds, no basis to revisit them.

**B.  Newly Noticed Evidence**

With that, the Court turns to the new categories of classified evidence that Defendant proposes to introduce at trial.  The first category — evidence tending to show that the information Defendant is accused of communicating and attempting to communicate from the MCC in Counts Three and Four of the Third Superseding Indictment was publicly available at the time — is by far the most involved and, thus, requires the most discussion.

---

[4]      No member of the press or public filed a written objection by the May 13, 2022 deadline. Nor did any member of the press or public ask to be heard at the May 18, 2022 status conference, when the Court invited public comment on the issue.  Nevertheless, after that hearing, Inner City Press filed a letter objecting to the proposed partial closure.  *See* ECF No. 812.

### 1.  National Defense Information Evidence

Defendant's Third and Fourth Notices seek to admit evidence showing that the information in the documents and notes he is accused of communicating and attempting to communicate from the MCC in Counts 3 and 4 was publicly available, and therefore those documents cannot have been "relating to the national defense" within the meaning of 18 U.S.C. Sections 793(e) and 2.  *See* Third Notice 1-3; Fourth Notice; S3 Counts 3-4.  Defendant argues that such evidence is relevant and admissible because, if the information he is accused of communicating was already public, that is a complete defense.  *See* Def.'s Opp'n 4-11.  The Government counters that the argument Defendant seeks to make is not legally relevant because information that is unlawfully leaked continues to be information "relating to the national defense," unless and until the Government makes it publicly available.[5]  *See* Gov.'s Reply 1-4. In the Court's view, neither side has it quite right.

As a threshold matter, it is important to note that the parties' disagreement — fundamental though it is — does not actually concern the relevance or admissibility of the classified evidence noticed by Defendant, which is the primary concern of CIPA Section 6(a). Indeed, the Government *itself* intends to offer at trial the evidence at issue, albeit perhaps in classified form.  *See* Gov.'s Mem. 29.  Instead, the real issues are what form the evidence can take — namely, whether it can be filed in some public form — and what arguments Defendant can make based on the evidence.  These are less issues for resolution under CIPA Section 6(a) than they are issues for resolution under CIPA Section 6(c) and in the jury instructions.  In any

---

[5]      In a related vein, the Government moves *in limine* to preclude Defendant from arguing that the information at issue "lost its protected status as a result of the unauthorized publications" by WikiLeaks.  ECF No. 780, at 24.  Although the Court's ruling here goes a long way toward resolving that motion *in limine*, the Court will formally reserve judgment on the motion.

event, given the importance of the issue and the fact that it will guide the Court's resolution

under CIPA Section 6(c), the Court will address the issue here.

Counts 3 and 4 charge Defendant with violating Section 793(e), which prohibits

communicating, transmitting, or delivering to any person not entitled to receive it "any

document, writing, . . . or note relating to the national defense," or attempting to do so.  18

U.S.C. § 793(e).  Whether a specific document or piece of information is "relating to the national

defense" is a question for the jury, not the court.  As the Court explained in *Gorin v. United*

*States*, 312 U.S. 19 (1941), which involved a predecessor statute to Section 793:

> The function of the court is to instruct as to the kind of information which is
> violative of the statute and of the jury to decide whether the information secured
> is of the defined kind.  It is not the function of the court, where reasonable men
> may differ, to determine whether the acts do or do not come within the ambit of
> the statute.  The question of the connection of the information with national
> defense is a question of fact to be determined by the jury as negligence upon
> undisputed facts is determined.

*Id.* at 32; *see United States v. Soblen*, 301 F.2d 236, 239 (2d Cir. 1962); *United States v.*

*Drummond*, 354 F.2d 132, 151 (2d Cir. 1965) ("[I]t was for the jury to decide whether the

documents defendant conspired to transmit were . . . documents 'relating to the national

defense.'").  Accordingly, it is generally for the jury, subject to proper instructions on the law, to

determine whether information is "relating to the national defense."

As various courts have observed, however, Section 793 "unfortunately provide[s] no

guidance on the question of what kind of information may be considered related to or connected

with the national defense."  *United States v. Squillacote*, 221 F.3d 542, 576 (4th Cir. 2000); *see*

*also New York Times Co. v. United States*, 403 U.S. 713, 754 (1971) (Harlan, J., dissenting)

(referring to Section 793 as "a singularly opaque statute"); *United States v. Rosen*, 445 F. Supp.

2d 602, 613 (E.D. Va. 2006) (noting that "[o]ver the years, numerous commentators have

criticized [Section 793] as excessively complex, confusing, indeed impenetrable"), *as amended*,

No. 05-CR-225, 2006 WL 5049154 (E.D. Va. Aug. 16, 2006), *aff'd*, 557 F.3d 192 (4th Cir. 2009).  In *Gorin*, the Supreme Court interpreted the term broadly to "refer[] to the military and naval establishments and the related activities of national preparedness."  *Gorin*, 312 U.S. at 28 (interpreting a predecessor statute to Section 793); *see also United States v. Hung*, 629 F.2d 908, 918 (4th Cir. 1980) ("Congress intended 'national defense' to encompass a broad range of information and rejected attempts to narrow the reach of the statutory language.").  To address constitutional vagueness and First Amendment concerns that such a broad term would raise, however, "courts have carefully cabined the phrase's scope . . . by requiring that the information be closely held by the government."  *Rosen*, 445 F. Supp. 2d at 620.

In *Gorin,* for example, the Supreme Court held that Section 793's predecessor did not apply "[w]here there is no occasion for secrecy" as to the information the defendant was charged with leaking.  312 U.S. at 28.  Similarly, in *United States v. Heine*, 151 F.2d 813 (2d Cir. 1945), the Second Circuit reversed a conviction under the same statute where the defendant had gathered the information at issue — about the American aviation industry — from publicly available sources such as magazines and newspapers.  "'Information relating to the national defense,' whatever else it means," Judge Learned Hand wrote, "cannot . . . include" information that the Government "made public" or that it "never thought it necessary to withhold at all."  *Id.* at 816.[6]  Since *Heine*, courts have routinely applied the "judge-made" requirement that

---

[6]     The predecessor statute interpreted in *Gorin* and *Heine* contained a scienter requirement that figured in the Courts' analyses in those cases, which is similar to that in the "information" prong of Section 793(e).  *Compare* 50 U.S.C. § 32 (repealed) (requiring that the conduct be "with intent or reason to believe that it is to be used to the injury of the United States or to the advantage of a foreign nation"), *with* 18 U.S.C. § 793(e) (requiring that communication of "information relating to the national defense" be "information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation").  As discussed below, Defendant here is charged under the "documents" prong of Section 793(e), which does not contain the same scienter requirement.  Even so, courts have applied *Heine* and

information "relating to the national defense" must be "closely held" in order to fall within the ambit of the statute. *United States v. Abu-Jihaad*, 600 F. Supp. 2d 362, 386 (D. Conn. 2009) (Kravitz, J.); *accord United States v. Abu-Jihaad*, 630 F.3d 102, 135-36 (2d Cir. 2010) ("*Abu-Jihaad II*"); *Squillacote*, 221 F.3d at 576-77; *United States v. Morison*, 844 F.2d 1057, 1071-72 (4th Cir. 1988); *Rosen*, 445 F. Supp. 2d at 621.

At some level, whether information is already public is plainly relevant to the question of whether it is "closely held" by the Government. Indeed, courts routinely instruct juries, in determining whether information qualifies as NDI, to consider the public availability of the information in determining whether the "closely held" requirement is satisfied. *See Hung*, 629 F.2d at 918 n.9 (approving the district court's instruction "that transmission of publicly available information did not fall within the statutory prohibitions"); *Morison*, 844 F.2d at 1071-72 (approving an instruction that "the government must prove that the documents or the photographs are closely held in that [they] . . . have not been made public and are not available to the general public"); *cf. Drummond*, 354 F.2d at 151 (rejecting the defendant's argument "that the trial court [erred in] defin[ing] information 'relating to the national defense' only in terms of its availability to the public" because the court also gave instruction on the substance of the term "national defense"). In fact, during the first trial in this very case, Judge Crotty instructed the jury that "[o]nly information relating to our national defense that is not lawfully available to the

---

*Gorin* to charges under the "documents" prong of Section 793(e) in interpreting the phrase "relating to the national defense." *See, e.g.*, *United States v. Hitselberger*, 991 F. Supp. 2d 101, 105 (D.D.C. 2013); *United States v. Drake*, 818 F. Supp. 2d 909, 918 (D. Md. 2011). And the Government here appears to concede that the "closely held" requirement applies as well to the "documents" prong of the statute. *See* Gov.'s Mem. 30.

public at the time of the claimed violation falls within the prohibition of this section."  ECF No.

345, at 24.[7]

Further supporting the conclusion that whether (and to what extent) information is public

is relevant to whether it is NDI, courts have allowed (or not *dis*allowed) defendants to make

arguments similar to the one Defendant seeks to make here.  In *Abu-Jihaad*, for example, the

defendant was accused of leaking a classified document regarding the *Constellation*

battlegroup's transit schedule under Section 793(d), which contains language identical to that in

Section 793(e).  *See Abu-Jihaad*, 600 F. Supp. 2d at 364.  On appeal, the defendant argued that

the information in the document was "publicly available" and, thus, could not be "relating to the

national defense" within the meaning of Section 793.  630 F.3d at 136 n.32.  The Second Circuit

rejected the argument on the ground that the evidence "showed only that some general

information regarding the *Constellation* battlegroup's transit schedule had entered the public

domain."  *Id*.  "[T]he public information adduced by [the defendant] at trial," the Court

continued, "did not preclude any rational jury from concluding that" the documents at issue

"contained information relating to the national defense."  *Id.* (emphasis omitted).  The Court,

however, did not suggest that such evidence was *irrelevant* to the question before the jury, let

alone that the trial court had erred in admitting it.  *See id.*; *see also United States v. Kim*, 808 F.

Supp. 2d 44, 55 (D.D.C. 2011) (rejecting a First Amendment challenge to Section 793 but

concluding that "[t]o the extent that [the defendant] intends to argue that the information he is

charged with leaking was previously disclosed or was not properly classified, *he may do so as

part of his defense*" (emphasis added)).

---

[7]     Notably, the Government concedes that Judge Crotty's instructions correctly defined the meaning of NDI.  *See* Sealed Tr. 33.

The Government argues that, at least in the circumstances of this case, whether information was already public is categorically irrelevant absent evidence that the Government played some role in disclosing the information, but its arguments are unpersuasive.  For starters, the Government misunderstands the gravamen of Defendant's arguments on this issue. Defendant does not seek (or seek only) to use the fact that some or all of the information at issue was publicly available to argue to the jury that his prosecution violates the First Amendment. (To the extent Defendant does seek to make that argument to the jury, the Court agrees with the Government that he may not.  Whether Defendant's prosecution violates the First Amendment is a question of law for the Court, and the Court has already ruled that it does not.  *See* ECF No. 663 at 69-70; Sealed Tr. 21-22; *see also United States v. Schulte*, 436 F. Supp. 3d 747, 752 (S.D.N.Y. 2020) (ECF No. 284)).  Instead, Defendant seeks to use the evidence to argue that the information he is accused of communicating was not NDI, which is an element of the charged crimes that the Government must prove beyond a reasonable doubt.  *See* Fourth Notice; Def.'s Opp'n 5-11.  As discussed above, that is indeed a matter for the jury to decide.[8]

Next, the Government argues that because "closely held" is a "judge-made" limitation on the meaning of NDI, it should apply only where it is necessary to save the statute from being unconstitutional.  Here, the Government contends, the "closely held" limitation is unnecessary because Defendant is a former CIA employee who was lawfully subject to restrictions on what

---

[8]     For similar reasons, the Government's contention that the Court has already resolved this issue, Gov.'s Mem. 29, is not supported by the record.  Indeed, the Court explicitly left the issue open the last time it was raised.  *See* ECF No. 663, at 70 ("I recognize that that leaves unresolved some clear disagreements between the parties — most prominently, whether information that is in the public domain can qualify as national defense information.  I do not need to resolve that disagreement today.").

he could disclose publicly.  Gov.'s Reply 2-4; ECF No. 663, at 69.  But "a statute is not a chameleon.  Its meaning does not change from case to case."  *Carter v. Welles-Bowen Realty, Inc.*, 736 F.3d 722, 730 (6th Cir. 2013) (Sutton, J., concurring); *see also United States v. Santos*, 553 U.S. 507, 522 (2008) (plurality opinion) ("[T]he proposition that one undefined word, repeated in different statutory provisions, can have different meanings in each provision . . . is worlds apart from giving the same word, *in the same statutory provision*, different meanings *in different factual contexts*.").  And in fact, "[i]t is not at all unusual to give a statute's ambiguous language a limiting construction called for by one of the statute's applications, even though other of the statute's applications, standing alone, would not support the same limitation.  The lowest common denominator, as it were, must govern."  *Clark v. Martinez*, 543 U.S. 371, 380 (2005).  That is precisely what courts have done in the case of Section 793(e).

Moreover, even if the Court were inclined to accept the Government's argument as a matter of statutory interpretation — which it is not — the argument suffers from several other flaws.  First, the "closely held" requirement did not develop solely in response to First Amendment challenges, with respect to which a defendant's status as a former government employee might be relevant.  The "closely held" requirement also developed in response to concerns that the statute was unconstitutionally vague.  *See, e.g.*, *Gorin*, 312 U.S. at 23 (involving challenge to the predecessor to Section 793 on the grounds that it was "violative of due process because of indefiniteness"); *Rosen*, 445 F. Supp. 2d at 622 (explaining that the "closely held" requirement permits Section 793 to "avoid[] fatal vagueness and pass[] Due Process muster").  The Government does not cite, and the Court has not found, any authority for the proposition that the issue of whether the statute is unconstitutionally vague should be considered differently as to former government employees.  Separate, but relatedly, numerous

courts have applied the "closely held" requirement in prosecutions of former government employees, even though those defendants likely signed secrecy agreements similar to the agreement signed by Defendant here. *See, e.g.*, *United States v. Kiriakou*, 898 F. Supp. 2d 921, 923 (E.D. Va. 2012).

More substantially, the Government relies on the Fourth Circuit's decision in *Squillacote* for the proposition that "the question of whether information related to the national defense is 'closely held' turns not merely on whether it is, in some form, public, but also whether the Government, explicitly or implicitly, authorized it to become public." Gov.'s Mem. 31 (citing 221 F.3d at 575).[9]  That argument, however, implicitly concedes the relevance of whether the information at issue was public. It also reads too much into *Squillacote*. In that case, a husband and wife were convicted of conspiring to transmit information related to the national defense after passing classified documents to an undercover FBI agent posing as a South African intelligence officer. On appeal, they argued that their convictions should be overturned because the information contained in the documents had been publicly available. "[I]nformation that is available to the public," they contended, "can *never* be considered national defense information." 221 F.3d at 575 (emphasis added). The Court rejected that categorical argument, reasoning that "[w]hile general, unofficial information . . . may be available in public sources, that information is merely speculative, and is no substitute for the government's official estimates." *Id.* at 578.

---

[9]  The Government also relies on a line of cases holding that "evidence of public disclosure does not deprive information of classified status." Gov. Mem. 31 (quoting *Wilson v. C.I.A.*, 586 F.3d 171, 174 (2d Cir. 2009)). But these cases do not speak directly to the issue here because "evidence that information is classified does not, by itself, establish that the information is [relating to the national defense]; evidence that information is classified is, at most, evidence that the government intended that the designated information be closely held. Yet, evidence that information is classified is not conclusive on this point." *United States v. Rosen*, 599 F. Supp. 2d 690, 695 (E.D. Va. 2009) ("*Rosen III*").

Accordingly, "a document containing official government information relating to the national defense will not be considered available to the public (and therefore no longer national defense information) until the official information in that document is lawfully available." *Id.*

Nothing in the Fourth Circuit's decision suggests, let alone holds, that the question of whether information is publicly available is *irrelevant* to the question of whether it is closely held. Instead, the court's decision rested on the proposition that an official confirmation of already public information may nonetheless qualify as "information relating to the national defense." *See id.* That was particularly relevant in the context of *Squillacote*, where the defendants were convicted of leaking classified documents, which "carry with them an imprimatur of legitimacy and authenticity." *Id.* at 576; *see also Rosen*, 445 F. Supp. 2d at 620 ("[T]he Fourth Circuit's decision in [*Squillacote*] does not compel the conclusion that information not officially disclosed, but in the public domain, retains its status as 'information relating to the national defense.' In that case, the Fourth Circuit held that the government's assessment of the reliability of publicly available information — as opposed to the information itself — might itself be information relating to the national defense.")[10]; *cf. United States v. Zubaydah*, 142 S. Ct. 959, 968 (2022) ("[S]ometimes information that has entered the public domain may nonetheless fall within the scope of the state secrets privilege . . . [because official] confirmation or denial of the information . . . could significantly harm national security interests, even if that information has already been made public through unofficial sources."). On the flip side, there may also be cases in which official confirmation of publicly available information is

---

[10]     Defendant contends that *Rosen*'s interpretation of *Squillacote* was affirmed by the Fourth Circuit. Def.'s Opp'n 9. But the Fourth Circuit merely affirmed the *Rosen* court's evidentiary rulings pursuant to CIPA Section 7; it explicitly rejected "the government's attempt to piggyback a pretrial review of the court's interpretation of § 793" as "improper." *United States v. Rosen*, 557 F.3d 192, 199 (4th Cir. 2009) ("*Rosen II*").

*not* national defense information — where, for example, the "information has been so widely circulated and is so generally believed to be true, that confirmation by one in a position to know would add nothing to its weight." *Rosen*, 445 F. Supp. 2d at 621.

To be sure, *Squillacote* and *Rosen* make plain that Defendant is wrong in arguing that information that was publicly available can, as a matter of law, never be "relat[ed] to the national defense." *See* Def.'s Opp'n 8. *Squillacote* properly rejected that argument, reasoning that official confirmation of previously leaked information may constitute NDI in and of itself. 221 F.3d at 576-78. At the same time, *Squillacote* and *Rosen* make plain that the Government is also wrong in contending that the question of whether the information was publicly available is irrelevant because only information made public by the Government ceases to be "closely held." *See id.* at 575-78; *Rosen*, 445 F. Supp. 2d at 620-21. Both sides raise arguments properly put to the jury, which must make the ultimate determination as to whether the information was "closely held." For example, the Government is free to argue, as it does in its motion, *see* Gov.'s Mem. 34, that Defendant communicated information that was not, in fact, publicly available. The Government may also argue that, even if Defendant communicated information that was already generally available, his communication, as a former CIA employee, confirmed the official nature of that information, which was itself NDI. On the other hand, Defendant may argue that the situation here is different than that in *Squillacote* because the information he is accused of communicating in Counts 3 and 4 had, according to him, already been made publicly available through leaked official documents, which may carry their own "imprimatur of legitimacy and authenticity," and thus his communication could not have revealed additional information. *Squillacote*, 221 F.3d at 576. He may also argue, *see* Def.'s Opp'n 5, that the Government had already confirmed the leak in this case by the time the conduct charged in Counts 3 and 4

occurred.  These are all issues for the jury to consider.  But they make clear that the public

availability of the information is, at a minimum, relevant to the question of whether it was

NDI.[11]

One final point remains.  Defendant contends that the evidence he seeks to admit is

relevant not only to the question of whether the information was "closely held," but also to the

question of whether it was "potentially damaging to the United States or useful to an enemy of

the United States."  Def.'s Opp'n 8 (quoting *Rosen*, 445 F. Supp. 2d at 621); *id.* at 10-11.  It is

true that some courts have treated the "potentially damaging" requirement as a second judicially

imposed limitation on "relating to the national defense."  *See, e.g.*, *Rosen*, 445 F. Supp. 2d at 621

("[T]he second judicially imposed limitation on the phrase 'information relating to the national

defense' is the requirement that its 'disclosure would be potentially damaging to the United

States or useful to an enemy of the United States.'"); *Morison*, 844 F.2d at 1071-72 (approving a

jury instruction on "relating to the national defense" stating that the government must prove that

---

[11]    Although not raised by either party, whether the information at issue was already public
may also be relevant to Defendant's *mens rea*.  As discussed below, to convict Defendant of a
violation of Section 793(e), the Government has to prove that he acted "willfully."  18 U.S.C.
§ 793(e).  "'A person acts willfully if he acts intentionally and purposely and with the intent to
do something the law forbids, that is, with the bad purpose to disobey or to disregard the law.'"
*Hitselberger*, 991 F. Supp. 2d at 107 (quoting *Bryan v. United States*, 524 U.S. 184, 190 (1998)).
If Defendant were to testify that he believed in good faith that his disclosure of the information
was not unlawful (namely, that (1) he believed in good faith that the information was already
public and (2) he believed in good faith that information could not be NDI if it was public), and
the jury accepted that testimony, that may constitute a defense.  *Cf. United States v. Alkins*, 925
F.2d 541, 550 (2d Cir. 1991) (holding, in prosecution for mail fraud, that "[a]n honest belief in
the truth of the representations made by a defendant is a good defense, however inaccurate the
statement may turn out to be").  The parties should be prepared to address the issue of whether
Defendant may argue a good faith defense in connection with the jury instructions.

the documents at issue "would be potentially damaging to the United States or might be useful to an enemy of the United States"). This second requirement is similar to the additional scienter requirement imposed in cases charged under the "information" prong, which requires that the information the defendant is charged with communicating is "information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation." 18 U.S.C. § 793(e). But some courts have imposed the "potentially damaging" requirement even in cases charged under the "documents" prong, which lacks the additional scienter requirement. *See Kiriakou*, 898 F. Supp. 2d at 923 ("[I]n prosecutions under both the documents and the information clauses, the government must show that the disclosed NDI 'relate[s] to the national defense,' meaning that it is 'closely held' and that its disclosure 'would be potentially damaging to the United States or might be useful to an enemy of the United States.'"); *cf. Rosen*, 445 F. Supp. 2d at 639-40 (concluding that the "potentially damaging" requirement does not render the scienter requirement in the "information" prong superfluous).

The Government offers no response to Defendant's argument on this score. Nevertheless, several points give the Court pause. First, at least one court in this Circuit has treated "closely held" as the only "judge-made" limitation on "relating to the national defense." *See Abu-Jihaad*, 600 F. Supp. 2d at 386. The same court, interpreting a charge under the "information" prong of Section 793(d) — which contains language identical to that in Section 793(e) — noted that "[a] second limitation on the scope of national defense information is provided by the statute itself . . . the statute requires that the individual who discloses national defense information have 'reason to believe [the information] could be used to the injury of the United States or to the advantage of any foreign nation.'" *Id.* The cited statutory language, however, does not apply to the "documents" prong of Section 793(d) or (e). *See* 18 U.S.C.

17

§ 793(d), (e); *see also Abu-Jihaad II*, 630 F.3d at 136 (describing the limitations on "relating to the national defense" without reference to the "potentially damaging" requirement).  It would seem to follow that the "second limitation" should not be applied to the "documents" prong.  Second, neither of the parties refer to the "potentially damaging" requirement in their proposed jury instruction on the meaning of "relating to the national defense."  *See* ECF No. 778, at 3 (Defendant's proposed instructions); ECF No. 777, at 15-16 (Government's proposed instructions).  Nor did Judge Crotty during the first trial.  *See* ECF No. 345, at 24-25.  Ultimately, the Court need not resolve this issue now, because the information is relevant and admissible in any event.  But the parties should be prepared to address the issue in connection with the jury instructions.

In sum, the fact that information was previously public does not mean, as a matter of law, that it is not NDI.  By the same token, the fact that the information was previously public *is* relevant to whether it is NDI, even if it was made public by someone other than the Government.  Accordingly, the Government's motion to preclude Defendant from offering evidence that the information he is charged with leaking from the MCC was already public is DENIED.  That is not to say that Defendant can offer the specific evidence that he has noticed, let alone in its current form.  But that is a CIPA Section 6(c) question and a question for another day.

## 2.  Evidence of Classified Information Defendant Knows

Next, Defendant provides notice that, should he take the stand, he intends to testify that, by virtue of his employment at the CIA, he was privy to specific, highly sensitive classified information.  Third Notice 3-4.  Defendant argues that such information is relevant and admissible to show that he did not intend to harm the United States through the conduct charged

in Counts 3 and 4.  If he had, the argument goes, he presumably could have and would have released even more harmful information than that he is charged with releasing.

The information Defendant seeks to admit is plainly inadmissible for that purpose.  For starters, an intent to harm the United States is not an element of the crime with which Defendant is charged.  As the Government points out, Counts 3 and 4 are now charged under the "documents" prong of Section 793(e), not the "information" prong.  *See* S3 Count 3 (charging "unauthorized possession of classified documents, writings, and notes"); Count 4 (same).[12]  That is critical because the "information" prong includes a scienter requirement not present in the "documents" prong: that the information the defendant is charged with communicating is "information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation."  18 U.S.C. § 793(e).  In light of this distinction, Courts have concluded that "injury to the United States" is not an element of a charge under the "documents" prong.  *See Hitselberger*, 991 F. Supp. 2d at 106-07 ("[The defendant] incorrectly relies on [cases] . . . interpret[ing] the mens rea requirement in the 'information' clause . . . this additional scienter language is not applicable to the willfulness standard in the 'documents' clause."); *Drake*, 818 F. Supp. 2d at 916-17 ("[O]nly the second 'information' clause [of Section 793(e) requires proof of the 'reason to believe' element."); *Kiriakou*, 898 F. Supp. 2d at 923; *see also New York Times Co.*, 403 U.S. at 740 n.9 (White, J., concurring) ("It seems clear from the [legislative history of Section 793(e)] . . . that in prosecuting for communicating or withholding a

---

[12]     In the Second Superseding Indictment, some of the same conduct was charged under the information prong of Section 793(e).  *See* ECF No. 68 ("S2"), Count 4.  Defendant alleges that it is not permissible for the Government to charge Counts 3 and 4 under the "documents" prong, because he is accused of communicating information stored in his head — albeit by writing that information down.  It will be the Government's burden to prove at trial all elements of the offense, including that Defendant communicated or attempted to communicate "documents, writings, and notes."  *See* S3, Counts 3-4.

'document' as contrasted with similar action with respect to 'information' the Government need not prove an intent to injure the United States or to benefit a foreign nation but only willful and knowing conduct.").

The fact that Section 793(e) requires the Government to prove that a defendant acted "willfully," whether under the "information" prong or "documents" prong, does not make the information Defendant seeks to offer any more admissible. The "willfulness" element of Section 793(e) does not require the Government to prove that Defendant intended to harm the United States. Instead, to satisfy the element, the Government must show only that Defendant "act[ed] intentionally and purposely and with the intent to do something the law forbids, that is, with the bad purpose to disobey or to disregard the law.'" *Hitselberger*, 991 F. Supp. 2d at 107; *see also, e.g.*, *United States v. Morison*, 622 F. Supp. 1009, 1010 (D. Md. 1985) ("*Morison II*") ("The government[] must show a bad purpose to break the law by delivering or retaining the items, but a showing of an underlying purpose to damage the national defense is entirely unnecessary and irrelevant."). The proffered evidence — that Defendant was privy to highly classified evidence that he did not leak — has no relevance whatsoever to that issue.

That said, the Court concludes that the information Defendant seeks to admit — or some version thereof — may be relevant and admissible for another purpose: to rebut the Government's argument that he intended to start an "information war." Gov.'s Mem. 38. That is, although Defendant's motive and intent are not elements of the offense with which he is charged, the Government may open the door to evidence of the sort that Defendant seeks to offer if it argues that Defendant was motivated by a desire to start an "information war" with the United States. If it does, the fact that Defendant was privy to other highly classified information — or even more highly classified information — and did not leak it would tend to rebut the

Government's argument.  *See, e.g.*, *United States v. Whitman*, 771 F.2d 1348, 1351 (9th Cir.

1985) (finding a due process violation where the court barred the defendant's rebuttal evidence

of motive, and reasoning that "[t]he district court was free to exclude evidence of [the

defendant's] motive, but once the government produced evidence from which the jury could

reasonably infer the . . . motive, appellant had the right to rebut this evidence").

To be clear: This does not mean that the *specific* information described in Defendant's

Third Notice is admissible.  In light of this ruling, the Government may elect not to open the

door after all.  And if it does, the particulars of the classified information at issue are almost

certainly unnecessary for Defendant to make the argument that he did not intend to harm the

United States; a stipulation or general testimony that Defendant knew other highly sensitive and

potentially damaging information — without disclosing the particulars — would almost certainly

suffice for Defendant to make the argument he wishes to make.  These are questions for the

CIPA Section 6(c) process, however, with respect to which the Court reserves judgment.

### 3.  **Evidence Regarding CIA's Use of a Computer Program**

Before the first trial, Defendant noticed his intent to offer evidence about a list of topics

under the category of the CIA's use of a particular computer program.  *See* Second Notice 11-12.

Judge Crotty ruled that evidence relating to the CIA's use of the computer program was

generally admissible, subject to certain limitations.  *See* Court's January 31, 2022 Order (sealed),

at 14-16; *see* Gov.'s Mem. 42-43.  In his Third Notice, Defendant once again provides notice that

he seeks to admit evidence related to the computer program at issue.  Third Notice 4.  Defendant

argues that this evidence is relevant and admissible to show that he was using the program due to

his work at CIA, not to leak classified information.  In its motion, the Government objects to this

evidence on the ground that Defendant's new notice is not sufficiently specific and argues that

the Court should adhere to rulings that Judge Crotty made with respect to evidence concerning the computer program prior to the first trial.  Gov.'s Mem. 42-43.  Defendant, for his part, contends that he does intend to adhere to Judge Crotty's rulings and that greater specificity is thus unnecessary.  Def.'s Opp'n. 23.

Upon review of the parties' submissions and Judge Crotty's earlier rulings, the Court concludes that there is no need or basis to deviate from Judge Crotty's previous rulings.  As Judge Crotty ruled, and the parties agree, evidence of the CIA's use of the computer program at issue is generally admissible.  But Defendant may not seek to admit information that was prohibited by Judge Crotty prior to the first trial.  To the extent he seeks to do so, his request is denied, both because he provides no basis to revisit Judge Crotty's ruling and because his Third Notice is insufficiently specific to satisfy the requirements of CIPA Section 5.  *See, e.g.*, *Collins*, 720 F.2d at 1200 (holding that the defendant's Section 5(a) Notice was insufficient under CIPA because it did not specify the classified information sought to be used).

## CONCLUSION

For the foregoing reasons, the Government's motion is GRANTED in part and DENIED in part.  In particular, the Court rules that:

(1) Judge Crotty's CIPA Section 6 rulings made prior to the first trial are adopted;

(2) Evidence tending to show that the information Defendant is accused of communicating in Counts 3 and 4 was publicly available at the time of the conduct charged is admissible;

(3) Although the classified evidence listed in Defendant's Third Notice to demonstrate his knowledge of highly sensitive material is not admissible to show intent to harm the United States, the fact that he knew highly sensitive material and did not leak it would be admissible to rebut any argument that he intended to start an "information war"; and

(4) Evidence regarding the CIA's use of a computer program is generally admissible, but Defendant may not seek to admit information that was prohibited by Judge Crotty in the first trial.

The Court reserves judgment on whether or to what extent the particular evidence that Defendant

seeks to offer at trial may be admitted.  To that end, the Government has filed a motion pursuant

to CIPA Section 6(c) as to the NDI evidence at issue, and Defendant has until **May 27, 2022**, to

respond.  *See* ECF Nos. 800, 822.  With respect to evidence of other classified information may

Defendant know, the Government shall file any motion pursuant to CIPA Section 6(c) by **May**

**31, 2022**, with any response from Defendant due by **June 3, 2022**.

       SO ORDERED.

Dated: May 24, 2022
     New York, New York
                                   JESSE M. FURMAN
                               United States District Judge