

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 27, 2022

**BY ECF**
Honorable Jesse M. Furman
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

Re: *United States v. Joshua Adam Schulte*,
S3 17 Cr. 548 (JMF)

Dear Judge Furman:

Pursuant to the Court's May 23, 2022 Order (D.E. 819), the Government respectfully submits this letter in response to the defendant's supplemental motions *in limine*, filed on May 22, 2022 (D.E. 817), asking the Court to preclude certain specified Government exhibits at trial.

The Government notes that the defendant objects to numerous exhibits as inadmissible under Federal Rules of Evidence 401 and 403, but offers little more than the *ipse dixit* assertion that those rules preclude the exhibits that the Government has marked. The inadequacy of the defendant's objections is reason enough to reject them. But the Government nevertheless responds regarding the specific items to which the defendant objects.

GX 811: Although marked for identification, the Government does not currently intend to offer GX 811 at the upcoming retrial.

GX 820: GX 820 contains both photographs and videos taken by a cooperating witness, Carlos Betances, of the defendant's use of contraband cellphones while detained at the MCC. The defendant's use of the contraband cellphones themselves—and the fact that certain content was on those cellphones—is relevant to the conduct charged in Count Four of the Third Superseding Indictment, *i.e.*, the defendant's attempt to disclose classified information from the MCC. Indeed, contrary to the defendant's suggestion that these exhibits are irrelevant because they include "pictures of documents that the government already exhibits in full" (D.E. 817 at 2), the fact that documents written by the defendant were present on the contraband cellphones is relevant evidence of the defendant's intention to disseminate that information to the outside world. Similarly, the presence of electronic accounts on the contraband cellphones that correspond to writings in the defendant's notebooks is relevant to show that he intended to use the cellphones in furtherance of the plans described in those notebooks. In addition, the screenshots themselves are necessary to illustrate Betances' testimony, and to corroborate his account of the defendant's use of the contraband cellphones. (*See* Trial Tr. 2385-98; 2412-15). Although the Government has marked

all of the screenshots for identification, and will offer them as part of a single collection of photographs that Betances will authenticate as a set, the Government only expects to display a portion of the photographs contained in GX 820 to the jury.

GX 821 and 822: GX 821 and 822 consist of data extracted from one of the defendant's contraband cellphones. Contrary to the defendant's assertion, these exhibits are directly relevant to the defendant's attempt to disseminate classified information from the MCC. For example, GX 821 consists of messages sent using the encrypted app Signal, in which the defendant (who was the actual user of the phone) claimed to be another family member who was seeking to "authorize release of Josh's articles" through the hacking group Anonymous, and falsely stating that the messages were sent from a phone located at the defendant's parents' home. GX 822 includes the defendant's search history, which not only includes numerous searches relevant to the defendant's intended plan to leak classified information, including both direct evidence (such as a search on August 26, 2018 for "send wikileaks message") and circumstantial evidence (such as searches for various apps that would allow covert communication from the contraband cellphones). This evidence is directly relevant to the charged conduct, and should be admitted.

GX 828 and 829: The Government marked these exhibits (consisting of the unclassified protective order, and the transcript of a proceeding in which the defendant was admonished to comply with the terms of that order) in an abundance of caution, but does not presently intend to offer them in its case in chief. In the event, however, that the defendant chooses to testify, and is thus subject to cross-examination regarding his conviction for contempt of court (*see* D.E. 780 at 33-35 (Government's motion *in limine* regarding admissibility of contempt conviction)), or if the defendant argues that he never intended to make any unauthorized disclosures of information from the MCC, thus opening the door to evidence of other such unauthorized disclosures (such as those in violation of the protective order), then the Government may seek to offer these exhibits. Accordingly, although marked for identification, whether the Government seeks to admit them will depend on how the defendant elects to proceed at trial.

GX 801, 806, 809, 813: The defendant asserts that these exhibits, which consist of his own statements, are incomplete and therefore inadmissible. There is no question that the Government is entitled to offer the defendant's own statements as the admissions of a party-opponent. *See* Fed. R. Evid. 801(d)(2). The same is not true, of course, for the defendant: "[w]hen the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982); *accord United States v. Kadir*, 718 F.3d 115, 124 (2d Cir. 2013) ("A defendant may not introduce his own prior out-of-court statements because they are hearsay, and . . . not admissible." (internal quotation marks omitted)). Nor does the so-called "rule of completeness" somehow transform or "render admissible evidence that is otherwise inadmissible." *United States v. Terry*, 702 F.2d 299, 314 (2d Cir. 1983); Fed. R. Evid. 106. Instead, the rule of completeness requires admission of a hearsay statement only when the statement (or a portion thereof) is "*necessary* to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." *United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007) (emphasis added) (quoting *United States v. Castro*, 813 F.2d 571, 575-76 (2d Cir. 1987)). The burden of showing that some additional portion of a statement is necessary to clarify or explain the already-admitted portion of that statement rests with the defendant. *See United States v. Glover*, 101 F.3d 1183, 1190 (7th Cir. 1996) ("[T]he proponent of the additional evidence sought

to be admitted must demonstrate its relevance to the issues in the case, and must show that it clarifies or explains the portion offered by the opponent.").

Accordingly, courts have routinely precluded defendants from offering their own statements, noting that "the rule of completeness is not a mechanism to bypass hearsay rules for any self-serving testimony." *United States v. Gonzalez*, 399 F. App'x 641, 645 (2d Cir. 2010); *see also, e.g.*, *United States v. Jackson*, 180 F.3d 55, 73 (2d Cir. 1999) (affirming trial court's preclusion of portion of tape that included defendant's "own self-serving statements"); *United States v. Bumagin*, 136 F. Supp. 3d 361, 375 (E.D.N.Y. 2015) ("Defendant is precluded from cross-examining the Government's witnesses in an effort to elicit exculpatory statements made by Defendant because such statements are inadmissible hearsay.").

The defendant's generalized assertions that the entirety of the notebooks are necessary does not meet the standard of specificity required to warrant introduction under Rule 106. Moreover, to the extent the defendant asserts that "all redacted pages for privilege" should be admitted, it is unclear whether the defendant refers to the blacked-out pages or the actual content, but the Government notes the prosecution team does not have, and has not had, access to the underlying materials, which were redacted by a wall team before being released to the prosecution team.

Similarly, although the defendant continues to refer to GX 813 as "The Email," the Government does not intend to introduce "cherrypicked pages" from the email version of the document that the defendant produced. Rather, GX 813 is the document in the form that it was produced to the Government by Shane Presnall, with redactions applied to protect the classified information contained therein.

GX 1301 to 1305: The defendant's generalized assertions that these exhibits are "meaningless" is incorrect. All of these exhibits pertain to accounts set up by the defendant for the purpose of disseminating his writings while incarcerated. GX 1301 consists of records from Automattic, the parent company of WordPress, regarding the defendant's use of his Google account to register the "presumption of innocence" blog referenced in his prison notebooks as the place from which the defendant would "stage [his] information war." (*See* GX 809 at 3). In addition to generally establishing his ownership of the blog, specific entries in the exhibits correspond to dates on which the defendant made incriminating statements in his prison notebooks, further corroborating his intent to disclose his writings containing national defense information through that forum. The same is true of GX 1302 (records of the defendant's account on Buffer, an app that allows for management of social media accounts and scheduling of social media posts, showing the account created in September 2018); 1303 (records of the defendant's "freejasonbourne@protonmail.com" account, including emails with a reporter and emails showing that the defendant used that account to register various social media accounts while in prison); 1304 (records from Twitter of the defendant's @freejasonbourne Twitter account, which was referenced in his prison notebooks as the handle above one of the defendant's draft tweets that included national defense information, *see* GX 809 at 9); and 1305 (records from the defendant's Google account, including searches in 2018 regarding methods of encrypted communication).

GX 1405: The defendant merely reiterates the argument advanced in his original motions *in limine*, which is incorrect for the reasons set forth in the Government's response. (*See* D.E. 805 at 10-12).

GX 1616: The defendant is charged in Count Nine with having obstructed justice by lying to the FBI, including that the defendant "stated that he had not kept a copy of an email he sent to the Office of Inspector General containing false allegations of security issues at the CIA." (D.E. 405 ¶ 9(b)). The fact that a copy of the email was recovered from the defendant's home is obviously probative of the falsity of the defendant's statement that he did not retain it.

GX 1617, 1618, 1619: GX 1617 consists of printed copies of emails regarding the defendant's complaints about a fellow officer with whom he worked and, subsequently, about the way in which the defendant's management responded to the situation. GX 1618 consists of handwritten notes made by the defendant (ostensibly in preparation for a Virginia court proceeding) that document his statements regarding "management blowback," "retaliation," and the defendant's view of the removal of his administrator access to certain CIA systems. GX 1619 consists of various documents written by the defendant regarding his application for a protective order against his co-worker.[1] The fact that the defendant chose to print copies of the emails before leaving the CIA, retain the handwritten notes even after the hearing did not occur, transport the entire collection of documents with him when he moved to New York, and not only kept them in his apartment, but in fact stored them in the headboard of his bed (*see* Trial Tr. 2253-60), is probative not only of the substance of the documents, but of the defendant's intense sense of personal aggrievement that the Government intends to argue was among the reasons why he committed the crimes charged in this case.

GX 1621: This exhibit consists of CIA emails reconstructed from shredded documents found in the defendant's New York apartment. In particular, it includes emails sent to and by the defendant regarding the security investigation of his complaint against a co-worker. As with the unshredded documents, the fact that the defendant chose to print these documents and bring them to his home in New York after moving from Virginia is probative of the state of anger that he felt about his treatment. To the extent that the defendant wishes to argue that the fact that he shredded them somehow undercuts that motive, he is free to do so, but it does not render the evidence irrelevant.

GX 1622: The fact that the defendant retained a diplomatic passport after resigning from the CIA, despite being unauthorized to do so, is both probative of his handling of sensitive CIA material and is relevant to steps taken by the FBI in their investigation of the defendant. (*See* Trial Tr. 2219-20).

GX 1623-1644: Photographs taken during the search of the defendant's apartment are relevant to give context to where particular evidence items were found by the FBI. (*E.g.*, GX 1642 (photograph of headboard where GX 1617-19 were recovered)).

GX 2001, 2002, 2003: In these three prison calls from 2018, the defendant spoke with his parents, a reporter, and another individual regarding his complaints about retaliation from his

---

[1] The defendant's assertion that these documents are privileged is entirely unsupported, and would in any event be waived by his failure to assert privilege in a timely fashion, especially given that these documents were offered in evidence at the last trial. (Trial Tr. 2260-61; *cf.* D.E. 789 at 4-6 (discussing standard for timely invocation of privilege)).

management, his (false) claims to have made reports about vulnerabilities of DEVLAN, and the defendant's claims regarding inaccuracies in a search warrant affidavit (which was subject to the unclassified protective order at the time).  The fact that the defendant was communicating this information to third parties is probative of his intent to disseminate sensitive CIA information while incarcerated, of the defendant's ongoing relationship with and providing information to a reporter, and of his falsely exculpatory narrative of his own conduct.  While the Government does not believe that there is any additional prejudice resulting from the inclusion of the introduction to the call that identifies it being made from prison—the jury will hear evidence of the defendant's incarceration in connection with the other evidence of his prison conduct—and the timing of the calls after the defendant's detention is relevant to the chronology of his actions, if the Court deems it necessary to excerpt that introduction, the Government is prepared to do so.

For the foregoing reasons, the Government respectfully submits that the defendant's supplemental motions *in limine* should be denied.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____/s/_____
David W. Denton, Jr./Michael D. Lockard
Assistant United States Attorneys
(212) 637-2744/-2193

cc: Standby Counsel (by ECF)
Joshua Adam Schulte (by mail)