UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

JOSHUA ADAM SCHULTE,

*Defendant.*

S3 17 Cr. 548 (JMF)

# JOSHUA ADAM SCHULTE'S RESPONSE TO GOVERNMENT MOTION PURSUANT TO SECTION 6(c) OF THE CLASSIFIED INFORMATION PROCEDURES ACT

Joshua Adam Schulte
Slave #79471054
Metropolitan Detention Center (MDC)
P.O. Box 329002
Brooklyn, NY 11232

# TABLE OF CONTENTS

I. TABLE OF AUTHORITIES ................................................................................... ii
II. PRELIMINARY STATEMENT ............................................................................. 1
III. THE COURT SHOULD ORDER DECLASSIFICATION OR
APPROPRIATE SUBSTITUTIONS CONSISTENT WITH CIPA ......................... 1
   A. Previous litigation surrounding classified exhibits ........................................ 1
   B. CIPA does not authorize courtroom closures ................................................ 2
      1. CIPA § 6(c) does not allow the government to close the trial ....................... 2
      2. Even if CIPA allowed courtroom closure, the defense would not have
substantially the same ability to make their defense ............................................. 4
      3. Even if the defense were "substantially the same," the government could
simply invoke CIPA to close every NDI trial ........................................................ 5
   C. The Sixth Amendment precludes wholesale courtroom closure................... 6
      1. Analysis of Constitutional challenge ............................................................. 6
      2. Constitutional standard for courtroom closure............................................... 7
   D. The Court should likewise not allow the government to introduce
"classified exhibit" GX 1 to only the parties, Court and jury ............................... 9
IV. CONCLUSION ................................................................................................... 10

## I.  TABLE OF AUTHORITIES

**Cases**

*Bell v. Jarvis*,
  236 F.3d 149 (4th Cir. 2000) ................................................................................7, 8

*Globe Newspaper Co. v. Superior Court*,
  457 U.S. 596 (1982) ................................................................................................8

*In re Knight Publishing Co.*,
  743 F.2d 231 (4th Cir. 1984) ..................................................................................8

*In re Washington Post*,
  807 F.2d 383 (4th Cir. 1986) ..................................................................................8

*McGurk v. Stenberg*,
  163 F.3d 470 (8th Cir. 1998 .....................................................................................9

*Neder v. United States*,
  527 U.S. 1 (1999) .....................................................................................................9

*Press-Enterprise Co. v. Superior Court of California*,
  464 U.S. 501 (1984) ............................................................................................7, 8

*Sherman v. Smith*,
  89 F.3d 1134 (4th Cir. 1996) ..................................................................................9

*United States v. Pelton*,
  696 F. Supp. 156 (D. Md. 1986) .........................................................................3, 6

*United States v. Rosen*,
  487 F. Supp. 2d 703 (E.D. Va. 2007) .............................................................. passim

*Waller v. Georgia*,
  467 U.S. 39 (1984) ..........................................................................................7, 8, 9

## Statutes

Classified Information Procedures Act ("CIPA"), 18 U.S.C. app. 3, § 5 ................. 10

Classified Information Procedures Act ("CIPA"), 18 U.S.C. app. 3, § 6(a) .............. 6

Classified Information Procedures Act ("CIPA"), 18 U.S.C. app. 3, § 6(c) ... passim

Classified Information Procedures Act ("CIPA"), 18 U.S.C. app. 3, § 8(b) ............. 2

Classified Information Procedures Act ("CIPA"), 18 U.S.C. app. 3, §§ 1-16 passim

## Constitutional Provisions

U.S. Const. amend. I ............................................................................................. 6, 7

U.S. Const. amend. VI .......................................................................................... passim

## Other Authorities

Akhil Amar,
  Sixth Amendment First Principles, 84 Geo. L.J. 641 (1996) ................................ 7

## II. PRELIMINARY STATEMENT

The government argues in its CIPA § 6(c) motion ("Gov. Mot.") that the Court should simply introduce the WikiLeaks information as classified exhibits to the Court, the parties, and the jury, but deny the public access, and in fact, close the courtroom during any examinations that involve these exhibits or otherwise rely upon the "silent witness rule." This is precisely what the government sought to do in *Rosen*, and which Judge Ellis expressly denied. For the same reasons explained by Judge Ellis, the Court should not close the courtroom, as this is not a permissible "substitution" pursuant to CIPA § 6(c) nor is it constitutional.

## III. THE COURT SHOULD ORDER DECLASSIFICATION OR APPROPRIATE SUBSTITUTIONS CONSISTENT WITH CIPA

### A. Previous litigation surrounding classified exhibits

The government "declassified" specific documents from the Vault 7 WikiLeaks disclosure that it wanted to introduce at trial. See exhibits GX 2 – 16. The government also sought to introduce the entire WikiLeaks disclosure as classified exhibit GX 1, a laptop from which an FBI agent downloaded the WikiLeaks disclosure *from the internet*. See Tr. 140-141:

> Q. And how did you download the leak once you were there?
>
> A. I went to the -- used an internet browser, went to the WikiLeaks website first. Didn't really see a quick way to download all the -- the large volume of information, so WikiLeaks had also provided a torrent website, which is essentially just -- it was about 15 hyperlinks that connected to zip files to download the bulk of the information that they released.

Mr. Schulte objected to the introduction of GX 1 before the first trial. See Dkt. 292:

> In response to the government's classified submission earlier today, and for the reasons cogently stated by Judge Ellis in *United States v. Rosen*, 487 F. Supp. 2d 703, 707-21 (E.D. Va. 2007), the defense continues to object to any trial exhibits (including, especially, documents that have long been publicly available on WikiLeaks.org) being shown to the jury in one form but disclosed to the public in a different form (or withheld from the public altogether). Allowing the government to proceed in the manner it

1

proposes would not only violate CIPA, but would deny Mr. Schulte his constitutional rights to a fair and public trial.

The Court allowed the government to introduce the classified GX 1 to the jury, but not the public, over Mr. Schulte's objections. Dkt. 297 at 1-2.

### B. CIPA does not authorize courtroom closures

As noted by defense counsel before the first trial, Judge Ellis carefully examined a similar proposal here in *United States v. Rosen*, 487 F. Supp. 2d 703 (E.D. Va. 2007). Judge Ellis concluded that the government's wholesale use of the silent witness rule, coded testimony, and redacted recordings in order to disclose classified information relating to national defense effectively closed the defendant's trial to the public, which procedure was not "substitution" authorized by CIPA § 6(c), and did not afford defendants substantially same opportunity to present their defense as specific classified information.

#### 1. CIPA § 6(c) does not allow the government to close the trial

CIPA § 6(c) allows the government to move that in lieu of disclosing classified information at trial, a "substitution" be used, which could take the form of a summary of the information or a presumably sanitized statement of facts the classified statement would tend to prove. Importantly, no substitutions can be used unless there is a judicial finding that the substitution provides defendants with "substantially the same ability to make his defense as would disclosure of the specific classified information." Consistent with this, CIPA § 8(b) also permits introduction and use at trial of redacted versions of classified materials unless "the whole ought in fairness to be considered."

However, "neither § 6(c) nor § 8(b) explicitly authorize or state that "substitutions" may be made available to the public and the jury on different terms. CIPA is at best silent on this issue. Yet, this silence should not be construed as implicitly authorizing the government's

2

proposal. To the contrary, it seems clear that CIPA envisions that 'substitutions,' if not unfair to defendants, will be used at a public trial in identical form for both the jury and the public. While it is true, as reflected in CIPA's legislative history, that "Congress expected trial judges to fashion creative solutions in the interests of justice for classified information problems," there is no evidence that Congress expected this creativity to extend to adopting procedures that effectively close the trial to the public." *Rosen* at 710. See, e.g. *United States v. Pelton*, 696 F. Supp. 156, 157 (D. Md. 1986) ("The court does not agree with the government that CIPA provides a statutory basis for the proposed closure... There is nothing in the legislative history to suggest that the government may close all or part of a public trial.").

"Indeed, given the strong presumption in the law that trials will be open and the evidence will by fully aired in public, CIPA's silence about whether "substitutions" and "excisions" can be made available to the public and jury on different terms should be interpreted as prohibition in doing so. Closing a trial, even partially, is a highly unusual result disfavored by the law. A statute, even one regulating the use of classified information, should not be construed as authorizing a trial closure based on Congress' mere silence or use of ambiguous language. Rather, because a trial closure implicates important constitutional rights, CIPA should not be read to authorize closure absent a clear and explicit statement by Congress in the statutory language." *Rosen* at 710.

"In short, CIPA only authorizes the use of substitutions to avoid disclosure of classified information *to the public and the jury*, provide defendant's right to present a defense is not impaired; this authority is not the authority to close a trial to the public." *Id.* (emphasis in original).

3

### 2. Even if CIPA allowed courtroom closure, the defense would not have substantially the same ability to make their defense

"Even assuming, *arguendo*, that the CIPA provision allowing 'substitutions' might be stretched to encompass the government's proposed procedure, there is no doubt that the procedure would not pass muster under CIPA's fairness requirements. Where, as here, a central issue in the case is whether the government's alleged NDI is indeed genuinely NDI, and the proposed procedure would amount to a wholesale use of the silent witness rule to cover all of the alleged NDI, it cannot be said that the procedure affords defendants 'substantially the same ability to make [their] defense as would disclosure of the specific classified information.' CIPA § 6(c)." *Id.* at 710-711.

While the *Rosen* court specifically considered the "silent witness rule," the government's similar proposal here or even an alternative complete courtroom closure would not provide Mr. Schulte with "substantially the same ability to make his defense." Regardless of whether the "silent witness rule" is employed or the entire courtroom is shutdown each time one of the "classified exhibits" must be discussed, the result is the same—extreme prejudice against the defendant, as these procedures clearly endorse the government's position and convey to the jury the sensitivity of the very information the defense is trying to question. Ellis notes in *Rosen*, "it is apparent that defendants intend at trial to rebut the government's claim that certain material is NDI by having witnesses compare the alleged NDI to contemporaneous public domain material. Once again, the proposed procedure would unfairly impact defendant's ability to establish this defense. In this context, the silent witness rule, applied across the board as the government proposes here, essentially robs defendants of the chance to make vivid and drive home to the jury their view that the alleged NDI is no such thing, as essentially similar material was abundant in the public domain. Importantly, in this respect, it is hard to see how defendants could effectively

4

show, via the silent witness rule, that the details of differences between public source material and the alleged NDI are neither minor nor trivial." *Rosen* at 711.

Mr. Schulte intends to show at trial that the absurd, ridiculous, and malicious prosecution against him for the MCC Counts is laughably insane because the very material allegedly transmitted or "attempted" was publicly available on the internet—released on WikiLeaks and discussed in every major newspaper across the country. To drive Mr. Schulte's point home, and effectively defend himself, he intends to navigate to the WikiLeaks website and other public websites from the courtroom (or otherwise exhibit articles from the internet). If the courtroom must be shut down and cleared before he can even exhibit an article from the *New York Times*, then he loses much of the punch of his argument—he cannot effectively show that the details of differences between public source material and the alleged NDI are neither minor nor trivial.

### 3.   Even if the defense were "substantially the same," the government could simply invoke CIPA to close every NDI trial

Even if the government somehow established that the defense would not be "substantially" prejudiced or harmed by closing the trial, then CIPA would essentially morph into a tool for the government to close every single NDI trial to the public. Assuming, *arguendo*, that the defense is not prejudiced by introducing the full classified documents to the jury and closing the trial, if we re-evaluate the first set of CIPA § 6(c) substitutions from the first trial, then this argument would equally apply to each and every classified document. Accordingly, the government can simply apply this argument to every classified document, arguing that, since there is no prejudice to the defense, they need not ever propose substitutions, since they can simply close the trial. The ultimate conclusion reached is a contradiction—that CIPA authorizes the nullification of the defendant's Sixth Amendment right to a public trial.

### C. The Sixth Amendment precludes wholesale courtroom closure

Even if CIPA's language can be stretched to cover the government's proposed procedure, that procedure nonetheless fails as a violation of the defendant's Sixth Amendment right to a public trial and the public's First Amendment right to a trial open to public scrutiny. Thus, even if the procedure passed muster under CIPA, constitutional analysis is nonetheless required. This follows because the proposed procedure effectively excludes the public from essential portions of the trial.

Nor is there any doubt that the portions of the trial that would be closed to the public are critical portions of the trial. It is clear that the government's proposal precludes the public from hearing and evaluating the evidence on a crucial and contested element of the case, namely, whether the information at issue is NDI and whether the defendant knew it to be such. Moreover, the quality and quantity of material the government proposes to exclude from public view is significant. Testimony about the putative NDI at issue constitutes all of the alleged transmissions and "attempted transmission" in two counts of the indictment—the entire MCC counts. Notably, as the government stated at the CIPA § 6(a) hearing, the government's proposed procedure would treat even certain related public domain documents, including news reports, as if they were classified documents. In short, in the circumstances of this case the government's proposal is clearly equivalent to sealing essential aspects of the trial. See *Pelton*, 696 F. Supp. at 157 ("[T]he court agrees... that the playing of the tapes to only the court, counsel, defendant, and the jury is a form of 'closure,' and may be permitted only in rare cases.").

#### 1. Analysis of Constitutional challenge

"The analysis of defendants' constitutional argument properly begins with the recognition that defendants and the public have a fundamental right to a trial open to the public. The right to

6

a public trial contributes to just adjudication, stimulates public confidence in the judicial system, and ensures that the public is fairly apprised of the proceedings in cases of public concern. A public trial contributes to just adjudication in several ways: (1) requiring witness' testimony to be public deters perjury; (ii) requiring a judge's rulings to be made in public deters partiality and bias; and (iii) requiring prosecutors to present their charges and evidence publicly deters prosecutorial vindictiveness and abuse of power. In these ways, the presence of the public encourages accurate fact-finding and wise use of judicial prosecutorial discretion, thereby contributing to public confidence that justice has prevailed at trial." *Rosen* at 715. See *Bell v. Jarvis*, 236 F.3d 149, 164-65 (4th Cir. 2000); see also Akhil Amar, Sixth Amendment First Principles, 84 Geo. L.J. 641, 678-80 (1996) (citing, *inter alia*, Blackstone, Hale, and Wigmore). "In short, justice must not only be done, it must be seen to be done." *Rosen* at 715-716.

### 2. Constitutional standard for courtroom closure

"Given the important interests at stake, it is now well-settled that defendants in criminal cases and the public both have a right to a trial open to public scrutiny. See *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510 (1984) (public's First Amendment right); *Waller v. Georgia*, 467 U.S. 39, 44-45 (1984) (defendant's Sixth Amendment right). It is also well-settled that the standard governing whether the public trial right has been infringed is the same whether the right is asserted by the press under the First Amendment or by a defendant under the Sixth Amendment. *Waller*, 467 U.S. at 46-47. Under this constitutional standard, a trial is presumptively open, and may be closed only if certain criteria are met. These criteria are set forth in Press-Enterprise and its progeny, as follows: (1) an 'overriding interest' must exist to close the trial, (2) the closure is no broader than necessary to protect that interest, (3) the court considers reasonable alternatives to closure, and (4) the court makes specific findings on the

7

record concerning the existence of the overriding interest, the breadth of the closure, and the unavailability of alternatives to facilitate appellate review. *Press-Enterprise*, 464 U.S. at 510; see also *Bell* 236 F.3d at 166. As the proponent of closing the proceedings, the government bears a 'weighty' burden to establish that closure is permissible. *Press-Enterprise*, 464 U.S. at 509-10. Decisions to close trials must be made on a case by case basis, with attention to the facts and circumstances of each case; statutes per se requiring closure in certain circumstances are impermissible. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 611 n.27 (1982). Finally, before trials may be closed, the public must be given notice and an opportunity to be heard. *In re Knight Publishing Co.*, 743 F.2d 231, 234-35 (4th Cir. 1984). An erroneous denial of a public trial is a structural error not amenable to harmless error analysis. *Bell*, 236 F.3d at 165 (citing cases). *Rosen* at 716.

Since the government has not even set forth the appropriate argument under *Press-Enterprise / Waller* detailing the criteria required therein, it fails to establish the necessity to close the courtroom and override Mr. Schulte's Sixth Amendment right to a public trial.

In any case, the courtroom closure for the entirety of the MCC Counts is not narrowly tailored (factor 2), and there are reasonable alternatives such as complying with CIPA § 6(c) by proposing substitutions or summaries (factor 3). As for the first factor, the overriding interest, *Press-Enterprise* and *In re Washington Post* require a judicial inquiry into the legitimacy of the asserted national security interest, and specific findings, sealed if necessary, about the harm to national security that would ensue if the request to close the trial is not granted. See *Press-Enterprise*, 464 U.S. at 510; *In re Washington Post*, 807 F.2d 383, 391-92 (4th Cir. 1986) (rejecting the government's argument that courts should defer to Executive Branch assertions that trial closures are necessary for national security reasons, and stating that a proceeding cannot be

8

closed merely because the case implicated CIPA at an earlier stage). Moreover, the government's *ipse dixit* is insufficient whether it appears by way of classified status, or the bald assertions of counsel that information is damaging to national security. Thus, granting that national security concerns can justify appropriately tailored trial closures, the government nonetheless bears the burden of demonstrating, as a factual matter, that harm to national security would result from failing to close the trial; a burden the government can never overcome as the WikiLeaks disclosures have been publicly accessible from the internet for over 5 years—there is absolutely no demonstrable harm that can result in downloading the documents off the public internet and displaying them in a courtroom.

Accordingly, even if the Court finds that CIPA authorizes the courtroom closure, it must nonetheless reach the conclusion that the government failed short of establishing the necessity for the courtroom closure that overrides Mr. Schulte's Sixth Amendment right to a public trial.

### D.     The Court should likewise not allow the government to introduce "classified exhibit" GX 1 to only the parties, Court and jury

Finally, the Court should undertake a review of the government's introduction of classified GX 1 to a closed courtroom. For the same reasons identified and explained herein, the Court should reach the same conclusion—that neither CIPA nor the Sixth Amendment permit the government to close the courtroom to introduce the WikiLeaks content. The violation of the constitutional right to a public trial is a structural error, not subject to harmless error analysis. See *Neder v. United States*, 527 U.S. 1, 8 (1999); *Waller*, 467 U.S. at 49-50, n.9; *Sherman v. Smith*, 89 F.3d 1134, 1138 (4th Cir. 1996); see also *McGurk v. Stenberg*, 163 F.3d 470, 473 (8th Cir. 1998) (noting that the prejudice component of the Strickland analysis may be presumed true if the nature of the deficient performance is that of a structural error).

## IV.   CONCLUSION

This Court should find that CIPA does not authorize courtroom closures. Alternatively, the Court should determine that the Sixth Amendment precludes the courtroom closure. The Court should order that the WikiLeaks materials, both the entirety previously provided to the jury as GX 1, and the specific proposed pages from Mr. Schulte's CIPA § 5, must be produced in open court to the Court, parties, jury, and public.

Dated: New York, New York

May 27, 2022

Respectfully Submitted,

/s/   **Joshua Adam Schulte**

Joshua Adam Schulte
Slave # 79471-054
Metropolitan Detention Center
P.O. Box 329002
Brooklyn, NY 11232