**SABRINA P. SHROFF**
ATTORNEY AT LAW

80 BROADWAY, 19TH FLOOR
NEW YORK, NEW YORK 10004
TELEPHONE: (646) 763-1490

May 30, 2022

By ECF

Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, N.Y. 10007

Dear Judge Furman,

    We write as standby counsel for *pro se* defendant Joshua Schulte in response to the Court's order of May 25, 2022, directing that, by May 31, Mr. Schulte: (1) respond to the government's preclusion arguments as to the three named CIA witnesses, and (2) provide detailed proffers as to the other defense witnesses who are current or former employees of the CIA. (Dkt No. 826). The Court directed Mr. Schulte to provide to the Court the subject matter of the witnesses' testimony and the basis for admissibility, including the witnesses' source of knowledge.

    Mr. Schulte is unable to meet the Court's May 31 deadline as he does not have a SCIF day on Monday, May 30 and because two of his three standby counsel will be in an un-related SCIF on May 31. For this reason, we ask the Court to accept this letter on Mr. Schulte's behalf and allow him an opportunity to further address these issues on June 2, or at the pretrial conference on June 3.

1. The Three Named Witnesses

    As to the three named witnesses, Mr. Schulte seeks to call Secretary of State Michael Pompeo, and does not intend to call the other two witnesses.

    Secretary Pompeo was Director of the CIA in May 2017 when WikiLeaks began disclosing Vault 7 and Vault 8. As noted in prior briefings to the Court, Mr. Pompeo was immediately debriefed about the WikiLeaks disclosure and specifically informed that Mr. Schulte was an early suspect. He was also told that Mr. Schulte had a disciplinary history. Further, less than a week after the disclosure, Secretary Pompeo approved the substance of the first search warrant application, authorizing the FBI to make various statements therein, at least some of which later proved untrue.

    As such, Secretary Pompeo took an active role in the investigation against Mr. Schulte and has non-hearsay information that is relevant to the charges. Mr. Schulte also seek to inquire of Secretary Pompeo whether he directed his staff to consider charges against Mr. Schulte to the exclusion of anyone else or contrary to existing exculpatory evidence.

Further, while the government has sought to establish the grave harm caused by the leak, just months after it allegedly occurred, Secretary Pompeo championed WikiLeaks' publication of the stolen DNS emails on social media. This disconnect, too, is ripe for examination.

Finally, as recently as September 2021, Secretary Pompeo continued to voice his views on the prosecution of leaks from WikiLeaks, *see* https://nationalpost.com/news/trump-pompeo-and-cia-agents-discussed-kidnapping-assassinating-assange-in-revenge-for-vault-7-leak. Secretary Pompeo's evolving stance on the prosecution of leaks is relevant to the issues at trial. Accordingly, Mr. Schulte asks this Court to deny the government's application to preclude Secretary Pompeo's testimony.

2. Remaining Witnesses

As to the remaining witnesses, Mr. Schulte recognizes that it is somewhat unusual to subpoena such a large group. The large group is a consequence of the uniqueness of the subpoena process in this case in that neither Mr. Schulte nor his standby counsel were allowed to approach the witnesses directly. Given the fundamental unfairness of that process, he had no alternative.

As the government acknowledges, the Sixth Amendment provides a defendant a fundamental right to offer the testimony of witnesses in his favor. This right is cabined only by the Rules of Evidence requiring that the witnesses have personal knowledge of relevant facts. Fed.R.Evid. 401 and 602.

In a typical criminal case, Mr. Schulte would have had his investigator approach and interview potential witnesses absent the involvement or knowledge of the government. A recalcitrant witness could have been educated to the facts and had his/her mind changed. Here, however, standby counsel and Mr. Schulte were barred from approaching any of the CIA witnesses. Instead, the CIA sent each of the witnesses a form email, notifying them of the trial date and asking whether they would agree to be interviewed by standby counsel for Mr. Schulte. Not surprisingly, the vast majority of CIA employees told the lawyer for the CIA that they did not wish to speak or meet with standby counsel. Some failed to respond altogether. No reasons were given.

Accordingly, Mr. Schulte has no choice but to evaluate how the trial plays out and lay eyes on the witnesses in the courthouse before deciding whether to call them to the stand. At the first trial, the government produced several of the witnesses noticed by Mr. Schulte who, at the last minute, chose to speak to counsel.

In light of the constraints and unfairnesses detailed above, Mr. Schulte respectfully requests that the Court reconsider its ruling ordering him to provide detailed proffers as to each of the CIA witnesses. Should the Court decline to reconsider, Mr. Schulte seeks an adjournment until June 2 to submit his response.

First, as noted above, while Mr. Schulte is usually brought to the SCIF on Mondays, because Monday, May 30 is a holiday, he does not have another SCIF day until Thursday, June 2. Second, he has not had sufficient time to review the 3500 material. Third, Ms. Shroff and Ms. Colson are traveling to Washington in early June to interview the several witnesses who have agreed to speak to us, and Mr. Schulte will be better able to make informed decisions as to those witnesses after the interviews occur.

                                          Respectfully submitted,

                                          /s/Sabrina Shroff
                                          Deborah Colson
                                          Shayana Kadidal
                                          *Standby Counsel to Mr. Schulte*

May 31, 2022

By ECF

Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, N.Y. 10007

Dear Judge Furman,

We write as standby counsel for *pro se* defendant Joshua Schulte in response to the Court's order of May 25, 2022, directing that, by May 31, Mr. Schulte: (1) respond to the government's preclusion arguments as to the three named CIA witnesses, and (2) provide detailed proffers as to the other defense witnesses who are current or former employees of the CIA. (Dkt No. 826). The Court directed Mr. Schulte to provide to the Court the subject matter of the witnesses' testimony and the basis for admissibility, including the witnesses' source of knowledge.

Mr. Schulte is unable to meet the Court's May 31 deadline as he does not have a SCIF day on Monday, May 30 and because two of his three standby counsel will be in an un-related SCIF on May 31. For this reason, we ask the Court to accept this letter on Mr. Schulte's behalf and allow him an opportunity to further address these issues on June 2, or at the pretrial conference on June 3.

    1. The Three Named Witnesses

As to the three named witnesses, Mr. Schulte seeks to call Secretary of State Michael Pompeo, and does not intend to call the other two witnesses.

Secretary Pompeo was Director of the CIA in May 2017 when WikiLeaks began disclosing Vault 7 and Vault 8. As noted in prior briefings to the Court, Mr. Pompeo was immediately debriefed about the WikiLeaks disclosure and specifically informed that Mr. Schulte was an early suspect. He was also told that Mr. Schulte had a disciplinary history. Further, less than a week after the disclosure, Secretary Pompeo approved the substance of the first search warrant application, authorizing the FBI to make various statements therein, at least some of which later proved untrue.

As such, Secretary Pompeo took an active role in the investigation against Mr. Schulte and has non-hearsay information that is relevant to the charges. Mr. Schulte also seek to inquire of Secretary Pompeo whether he directed his staff to consider charges against Mr. Schulte to the exclusion of anyone else or contrary to existing exculpatory evidence.

Further, while the government has sought to establish the grave harm caused by the leak, just months after it allegedly occurred, Secretary Pompeo championed WikiLeaks' publication of the stolen DNS emails on social media. This disconnect, too, is ripe for examination.

Finally, as recently as September 2021, Secretary Pompeo continued to voice his views on the prosecution of leaks from WikiLeaks, *see* https://nationalpost.com/news/trump-pompeo-and-cia-agents-discussed-kidnapping-assassinating-assange-in-revenge-for-vault-7-leak. Secretary Pompeo's evolving stance on the prosecution of leaks is relevant to the issues at trial. Accordingly, Mr. Schulte asks this Court to deny the government's application to preclude Secretary Pompeo's testimony.

2. Remaining Witnesses

As to the remaining witnesses, Mr. Schulte recognizes that it is somewhat unusual to subpoena such a large group of individuals. Because neither Mr. Schulte nor his standby counsel were allowed to approach the witnesses directly. Given the fundamental unfairness of that process, he had no alternative but to proceed in this manner.

As the government acknowledges, the Sixth Amendment provides a defendant a fundamental right to offer the testimony of witnesses in his favor. This right is cabined only by the Rules of Evidence requiring that the witnesses have personal knowledge of relevant facts. Fed.R.Evid. 401 and 602.

In a typical criminal case, Mr. Schulte would have had his investigator approach and interview potential witnesses absent the involvement or knowledge of the government. A recalcitrant witness could have been educated to the facts and had his/her mind changed. Here, however, standby counsel and Mr. Schulte were barred from approaching any of the CIA witnesses. Instead, the CIA sent each of the witnesses a form email, notifying them of the trial date and asking whether they would agree to be interviewed by standby counsel for Mr. Schulte. Not surprisingly, the vast majority of CIA employees told the lawyer for the CIA that they did not wish to speak or meet with standby counsel. Some failed to respond altogether. No reasons were given.

Accordingly, Mr. Schulte has no choice but to evaluate how the trial plays out and lay eyes on the witnesses in the courthouse, before deciding whether to call them to the stand. At the first trial, the government produced several of the witnesses noticed by Mr. Schulte who, at the last minute, chose to speak to counsel.

In light of the constraints and unfairnesses detailed above, Mr. Schulte respectfully requests that the Court reconsider its ruling ordering him to provide detailed proffers as to each of the CIA witnesses. Should the Court decline to reconsider, Mr. Schulte seeks an adjournment until June 2 to submit his response.

First, as noted above, while Mr. Schulte is usually brought to the SCIF on Mondays, because Monday, May 30 is a holiday, he does not have another SCIF day until Thursday, June 2. Second, he has not had sufficient time to review the 3500 material. Third, Ms. Shroff and Ms. Colson are traveling to Washington in early June to interview the several witnesses who have agreed to speak to us, and Mr. Schulte will be better able to make informed decisions as to those witnesses after the interviews occur.

    We thank the Court for its time and consideration of this matter.

    Respectfully submitted,

    /s/
Sabrina Shroff
Deborah Colson
Shayana Kadidal
*Standby Counsel to Mr. Schulte*