UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

S3 17 Cr. 548 (JMF)

JOSHUA ADAM SCHULTE,

Defendant.

## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
## THE DEFENDANT'S MOTION FOR RECONSIDERATION

DAMIAN WILLIANS
United States Attorney
Southern District of New York

David W. Denton, Jr.
Michael D. Lockard
Assistant United States Attorneys,
*Of counsel*

## TABLE OF CONTENTS

Page

DISCUSSION .................................................................................................................1

I.  The Motion For Severance Should Be Denied Again ........................................... 1

A.  Relevant Background ..................................................................................... 1

B.  Relevant Law .................................................................................................. 4

C.  Argument ........................................................................................................ 6

II. The Defendant's Motion To Suppress The Malware Article Should Be Denied Again ..... 9

A.  Relevant Background ..................................................................................... 9

B.  Argument ...................................................................................................... 11

CONCLUSION ............................................................................................................ 15

The Government respectfully submits this memorandum of law in opposition to the defendant's, Joshua Adam Schulte's, motions for reconsideration, filed May 16, 2022 (the "Motion") of the Court's order dated April 29, 2022 (D.E. 789, the "Order") (1) denying the defendant's prior motion (D.E. 765, the "Prior Motion") to sever or bifurcate counts charging offenses arising from the defendant's disclosure and attempted disclosure of classified information from the Metropolitan Correctional Center ("MCC") in 2018 (Order at 9-10); and (2) denying the defendant's prior motion to suppress his "Malware of the Mind" article seized from his cell at the MCC (*id.* at 11-14). The defendant's original motions, which the Court denied, were themselves requests for reconsideration of the Court's prior orders. (*See* D.E. 147 (the "Severance Decision"), 159 (the "MCC Suppression Decision"), & 288 (the "Cell Documents Decision").

The defendant's new Motion represents his third bite at the apple, and seeks to do precisely what the "strict" standards for motions for reconsideration prohibit: to "relitigate[e] old issues, present[] the case under new theories, [and] secur[e] a rehearing on the merits." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). The Motion again falls far short of satisfying the strict standard for reconsideration and should be denied.

## DISCUSSION

## I.     The Motion For Severance Should Be Denied Again

### A.     Relevant Background

#### 1.     The Defendant's First Motion For Severance

An underlying Second Superseding Indictment, S2 17 Cr. 548 (JAS) (D.E. 68), charged the defendant with offenses arising out of his unlawful manipulation of CIA computers, his theft of the Stolen Information, and his transmission of the Stolen Information to WikiLeaks in April and May of 2016; offenses arising out of his obstruction of the investigation of the Leaks; and

offenses arising out of his violations of the Protective Order and his transmission and attempted transmission of classified information while at the MCC.

Prior to the February 2020 trial, the defendant moved to sever counts relating to his transmission and attempted transmission of classified information while at the MCC in 2018 from the counts relating to his theft of classified information from the CIA and transmission to WikiLeaks in 2016, arguing that his trial counsel suffered a conflict with respect to the MCC counts, that severance was appropriate to prevent juror confusion and avoid prejudice resulting from evidence of the defendant's incarceration, and that the defendant wanted to testify in his defense with respect to the WikiLeaks counts, but not the MCC counts.[1] (D.E. 128). The severance motion was denied. (Severance Decision).

## 2.     The Defendant's First Motion for Reconsideration

The Third Superseding Indictment charges the defendant with offenses arising from his theft of classified information from CIA computer systems in April 2016 and his transmission of that stolen information to WikiLeaks (Count One, Two, and Five through Eight) (the "WikiLeaks Counts"). The Third Superseding Indictment also charges the defendant with obstruction of justice arising from his attempt to obstruct the investigation of the Leaks from approximately March and June 2017, 18 U.S.C. § 1503 (Count Nine) and with the MCC Counts (Counts Three and Four) arising out the defendant's transmission and attempted transmission of unlawfully possessed national defense information between July and October 2018 while detained at the MCC.

---

[1] Counts in the Second Superseding Indictment charging copyright and child pornography offenses were severed without objection. (D.E. 117).

On January 24, 2022, the defendant again moved to sever the MCC Counts from the WikiLeaks Counts. (D.E. 765 at 29-40). The defendant argued that "there is no factual overlap" between the MCC Counts and the WikiLeaks Counts (*id*. at 30, 32); the two groups of counts are not based on the same act or transaction or a common scheme or plan (*id*. at 31); the defendant's defenses to each group is "substantially different" (*id*. at 32); joinder of the groups of counts would prejudice him by introducing evidence of his incarceration (*id*. at 34, 35-36); and the defendant intended to testify in his defense with respect to the WikiLeaks Counts but not the MCC Counts (*id*. at 34, 39-40).

The Court denied the motion for reconsideration. (Order at 9-10). The Court found that "the MCC counts and Wikileaks counts are 'logically linked' and would 'require much of the same evidence.'" (*Id*. at 9 (quoting Severance Decision at 3 & n.4)). This "is sufficient to justify joinder under Rule 8(a)." *Id*. The Court also rejected the defendant's motion for severance under Rule 14, finding that each of the grounds the defendant advanced "was previously addressed by the Court" and the defendant "offers no reason to revisit those decisions." (*Id*. at 10). The Court noted that "prejudice may develop when an accused wishes to testify on one but not the other of two joined offenses which are clearly distinct in time, place, and evidence" (*id*. (quoting *United States v. Sampson*, 385 F.3d 183, 190-91 (2d Cir. 2004))); but the defendant had not offered the required "particularized showing" and, in any event, "less drastic measures than severance, such as limiting instructions, . . .would suffice to cure any risk of prejudice." (*Id*.).

### 3.    The Defendant's Second Motion for Reconsideration

On May 16, 2022, the defendant again sought reconsideration of the Court's orders denying severance. The Motion includes an affidavit that was offered *ex parte*, and which purports to provide a particularized showing of the specific testimony he wants to give regarding the WikiLeaks Counts. (Mot. at 10).

3

B.      **Relevant Law**

A motion for reconsideration

> is not a vehicle for relitigating old issues, presenting the case under
> new theories, securing a rehearing on the merits, or otherwise taking
> a second bite at the apple.  The standard for granting a motion for
> reconsideration is strict.  A motion will be granted only where the
> movant identifies an intervening change of controlling law, the
> availability of new evidence, or the need to correct a clear error or
> prevent manifest injustice.

*United States v. Blondett*, 16 Cr. 387 (JMF), 2022 WL 549707, at *1 (S.D.N.Y. Feb. 23, 2022)

(cleaned up). "[R]econsideration will generally be denied unless the moving party can point to

controlling decisions or data that the court overlooked—matters, in other words, that might

reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transport

Corp.*, 70 F.3d 255, 257 (2d Cir. 1995).

Joinder under Federal Rule of Criminal Procedure 8(a) is appropriate where the counts

"are of the same or similar character, or are based on the same act or transaction, or are

connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a); *see also

United States v. Rivera*, 546 F.3d 245, 253 (2d Cir. 2008). Counts that have a "sufficient logical

connection" to each other can be tried together, *United States v. Ruiz*, 894 F.2d 501, 505 (2d Cir.

1990), as can those "where the same evidence may be used to prove each count," *United States v.

Blakney*, 941 F.2d 114, 116 (2d Cir. 1991). The Second Circuit has "interpreted Rule 8(a) as

providing a liberal standard for joinder of offenses." *United States v. Wilson*, 512 F. App'x 75,

76-77 (2d Cir. 2013).

Rule 14(a) provides that "[i]f the joinder of offenses or defendants in an indictment, an

information, or a consolidation for trial appears to prejudice a defendant or the government, the

court may order separate trials of counts, sever the defendants' trials, or provide any other relief

that justice requires." Fed. R. Crim. P. 14(a). The decision to grant or deny severance under Rule

4

14 is "committed to the sound discretion of the trial judge." *United States v. Spinelli*, 352 F.3d 48, 54 (2d Cir. 2003). That the counts at issue are "sufficiently logically linked" and would require much of the same evidence weighs against severance. *United States v. Page*, 657 F.3d 126, 129 (2d Cir. 2011). It is not enough to demonstrate that separate trials would increase the chances of the defendant's acquittal, *see United States v. Burke*, 700 F.2d 70, 83 (2d Cir. 1983); rather, the defendant "must show prejudice so severe as to amount to a denial of a constitutionally fair trial." *United States v. Serpoosh*, 919 F.2d 835, 837 (2d Cir. 1990); *see also United States v. Walker*, 142 F.3d l 03, 110 (2d Cir. 1998) ("A defendant seeking severance must show that the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials.").

"Prejudice may develop when an accused wishes to testify on one but not the other of two joined offenses which are clearly distinct in time, place and evidence." *Sampson*, 385 F.3d at 191 (cleaned up). Because of "the unfavorable appearance of testifying on one charge while remaining silent on another, and the consequent pressure to testify as to all or none, the defendant may be confronted with a dilemma: whether, by remaining silent, to lose the benefit of vital testimony on one count, rather than risk the prejudice (as to either or both counts) that would result from testifying on the other." *Id*. The defendant must, however, "present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of economy and expedition in judicial administration against the defendant's interest in having a free choice with respect to testifying." *Id*. (cleaned up). The defendant "must make a 'convincing showing that he has both

important testimony to give concerning one count and strong need to refrain from testifying on the other." *United States ex rel. Tarallo v. LaVallee*, 433 F.2d 4, 6 (2d Cir. 1970).

### C.    Argument

Because the defendant's new explanation of what testimony he purportedly wishes to offer regarding the WikiLeaks Counts and his strong reasons for not wishing to testify regarding the MCC Counts was submitted *ex parte*, the Government cannot respond to his new argument. The defendant's increasing reliance on *ex parte* submissions is improper and deprives the Government of the ability to respond to his argument. In *Sampson*, for example, the defendant's description of his proposed testimony was not submitted *ex parte*, and the Government objects to the defendant's *ex parte* submission here.

In addition, it is improper for a defendant to raise new arguments in support of reconsideration that were available to him on the original motion. The defendant must "point to controlling decisions or data that the court *overlooked*," *Shrader*, 70 F.3d at 257, not formulate new arguments that were never presented in the first place. Motions for reconsideration "may not advance new facts, issues or arguments not previously presented to the Court, nor may [they] be used as vehicle[s] for relitigating issues already decided by the Court." *United States v. Baldeo*, No. S1 13 Cr. 125 (PAC), 2015 WL 252414, at* 1 (S.D.N.Y. Jan. 20, 2015), *aff'd*, 615 F. App'x 26 (2d Cir. 2015). The defendant's second motion for reconsideration fails this standard.

However, even without the defendant's explanation, the Government respectfully submits that the defendant's motion readily should be denied. First, "the considerations of economy and expedition in judicial administration" weigh heavily against severance. Unlike in *Sampson*, the proposed severed groups of counts are not "clearly distinct in time, place and evidence." To the contrary, the WikiLeaks Counts and MCC Counts are heavily overlapping in evidence. Evidence of the defendant's work at the CIA and his theft and transmission of highly classified CIA data is

relevant to a myriad of issues with respect to the MCC Counts. It is relevant to prove that the documents, writings and notes the defendant transmitted and attempted to transmit from the MCC related to the national defense; that the defendant willfully transmitted and attempted to transmit his documents, writings and notes relating to the national defense to third parties not entitled to receive them; and that classified information the defendant transmitted and attempted to transmit from the MCC was learned by him while at the CIA, and was not derived from the Leaks or media reporting on the Leaks. Evidence relating to the WikiLeaks Counts showing the defendant's motive for stealing and transmitting classified CIA information in 2016—a result of his anger towards the CIA, his claims of unfair treatment, and his desire to punish—is relevant to show the defendant's motive for his transmission and attempted transmission of classified CIA information from the MCC, also as a result of his anger towards the criminal justice system, his claims of unfair treatment, and his desire to punish. Moreover, evidence that the defendant in fact stole and transmitted CIA information in 2016 shows that his claims in 2018 of being falsely accused, including his attempts to impersonate CIA and FBI officers falsely exculpating himself, were false statements that show his consciousness of guilt. Evidence of the defendant's state of mind with respect to the WikiLeaks Counts also contradicts any innocent state-of-mind argument the defendant might attempt to offer in defense of the MCC Counts.

The converse is also true: evidence of the defendant's persistent disclosure and attempted disclosure of national defense information from the MCC as a result of anger and in an attempt to retaliate against those the defendant believed to be responsible for wronging him is relevant evidence of his similar anger and attempts to coerce and—in his own contemporaneous word— "punish" the CIA through related leaks in 2016. In short, severing the WikiLeaks Counts and MCC Counts would not result in two distinct trials, but rather would result in two largely

7

duplicative trials with almost entirely overlapping witnesses and exhibits.  Even if the cumbersome procedure of bifurcation were applied instead of severance, and if the Government were further precluded from offering evidence relating to the defendant's conduct at the MCC in connection with the WikiLeaks Counts, the Government expects that two witnesses would testify regarding the MCC Counts who would not testify regarding the WikiLeaks Counts and either three or four witnesses who would testify regarding the WikiLeaks Counts would be recalled to testify again regarding the MCC Counts (including several CIA witnesses).

Second, denying the defendant's severance request would not prejudice him.[2] The defendant's claimed reason for not wanting to testify with respect to the MCC Counts is the cross-examination he would face. (Prior Mot. at 40). But the defendant would face the same scope of cross-examination regardless of whether the MCC Counts and WikiLeaks Counts are tried together or separately. The defendant's MCC conduct is relevant to his motive, knowledge and intent in committing the offenses charged in the WikiLeaks Counts and to his identity as the person who committed the offenses, *see* Fed. R. Evid. 404(b); it involves specific instances of the defendant's conduct relevant to his truthfulness, *see* Fed. R. Evid. 608(b); and his conduct at the MCC includes his prior statements concerning the events at issue in the WikiLeaks Counts, *see* Fed. R. Evid. 613. Moreover, the defendant would be cross-examined about his conviction for contempt as a result of disclosing discovery materials covered by the Protective Order from the MCC. (D.E. 780 at 33-35). The "strong reasons" for the defendant to refrain from testifying regarding the MCC Counts thus also apply to his decision to testify, or not, with regard to the

---

[2] As noted above, the defendant's motion for reconsideration relies on *ex parte* argument. To the extent that argument repeats or expands on his prior arguments, he has not shown any prejudice. To the extent he advances new argument, the *ex parte* submission should be provided to the Government so that it can respond.

WikiLeaks Counts, and the requested severance would not change his calculus. For the same reasons, bifurcation would not be an appropriate remedy—regardless of when the defendant testifies, he would still be subject to cross-examination about his conduct at the MCC, and the Government would be entitled to offer evidence of his MCC conduct both as direct evidence of the WikiLeaks charges and to impeach his testimony.

In sum, the significant costs to judicial economy and burdens on witnesses from holding two largely similar trials substantially outweigh the putative prejudice to the defendant.

## II.   The Defendant's Motion To Suppress The Malware Article Should Be Denied Again

The Motion also seeks reconsideration of the Court's order denying suppression of specific documents (*see* Mot. at 10-11, identifying the Malware Article and MCC Notebook pages referring to the defendant's Information War and his plan to damage U.S. foreign relations if not paid $50 billion) based on his repetition of arguments that the articles are not responsive to the relevant search warrants (*id*.), and that they are attorney-client privileged communications (*id*. at 12-17).

### A.   Relevant Background

#### 1.   The Defendant's Prior Motions to Suppress and to Exclude

The extensive history of the defendant's prior motions to suppress evidence seized from the MCC or to exclude that evidence at trial is recounted in the Government's opposition to the defendant's omnibus pretrial motions. (D.E. 761 at 49-51). The Court denied the defendant's motions to suppress the MCC evidence, including the Malware Article and the Notebooks, based on his challenges to the warrants (MCC Suppression Decision); and denied various assertions of attorney-client privilege with respect to portions of the contents of the Notebooks (Cell

Documents Decision).[3] The Court ruled that the unredacted portions of the documents seized from the MCC offered by the Government were admissible at trial. *Id.*

In his Prior Motion, the defendant again sought to suppress or exclude the Malware Article and the admitted portions of the MCC Notebooks on the grounds that they were purportedly outside the scope of the warrant (Prior Mot. at 57, 61, 62, 64 & 65); and were purportedly privileged. (*Id*. at 56, 57-61, 62-65). The Court again denied the defendant's motions. (Order at 9-15). With respect to the motion to suppress, the Court rejected the defendant's interpretation of the warrants and held that the documents were responsive. (*Id*. at 9-10). With respect to the defendant's new assertions of privilege, the Court held that, even if the Malware Article had been privileged (an assertion the Court noted was "hard to credit," *id.* at 12), any privilege was waived as a result of the defendant's failure to timely assert it. *Id.* at 13-14. With respect to the excerpts from the MCC Notebooks, the Court held that the defendant failed to carry his burden of demonstrating that they were ever privileged. *Id*. at 14-15. The Court also noted that the defendant had previously asserted privilege over materials that appeared on the very same pages as the newly challenged excerpts, but failed to claim privilege over those excerpts. *Id*. at 14.

### 2.    The Defendant's New Motion for Reconsideration

In his latest attempt to suppress the Malware Article and Notebook pages, the defendant makes a new argument about the scope of the relevant warrants (Mot. at 10-12); raises a new

---

[3] As described in the Government's omnibus opposition, the seized MCC evidence was reviewed by a Wall Team in order to redact potentially attorney-client privileged information (D.E. 761 at 47-49) and, in response to the defendant's assertion of privilege over additional portions of the Notebooks, the Government agreed to apply further redactions. (*Id*. at 50). The defendant did not assert privilege over the remaining unredacted portions of the Notebooks or the Malware Article, despite the fact that those exhibits were identified as proposed exhibits at trial and discussed during pretrial CIPA § 6(c) proceedings. (*Id*. at 50-51).

argument about the purportedly privileged status of the Malware Article based on an excerpt of a sealed, *ex parte* proceeding that has never previously been disclosed to the Government (*id.* at 12-15); and repeats his prior arguments about the purportedly privileged status of the Notebook pages. (*Id.* at 15-17).

    **B.    Argument**

    The Motion represents the latest in a very long line of challenges the defendant has raised to evidence seized from the MCC, but it breaks no new ground and raises no persuasive arguments, and fails to satisfy the "strict standards" for reconsideration.

    With respect to the scope of the warrants, the defendant now argues simply that particular documents "do not pertain to NDI." (*Id.* at 11). The defendant once again mischaracterizes the warrants, which authorized the seizure of any documents and materials "pertaining to the unauthorized retention, gathering, and transmission of classified documents or materials, and the unauthorized removal and retention of classified documents and materials." (MCC Suppression Dec. at 5; Order at 11). The Malware Article and Notebooks plainly pertain to the defendant's actions and intent regarding his dissemination and attempted dissemination of classified materials. (*See generally* D.E. 761 at 54; 805 at 1-10). Moreover, even if particular pages of the Notebooks did not contain writings responsive to the warrants, the Notebooks as a whole plainly do, and thus their seizure was authorized and any evidence contained within them cannot be suppressed on that basis. MCC Suppression Dec. at 5 ("Thus, to the extent the notebooks found in Schulte's cell contained relevant evidence they are undoubtedly in the scope of the warrant."); *see also, e.g.*, *United States v. Messalas*, 17 Cr. 339 (RRM), 2020 WL 4003604, at *7 (E.D.N.Y. Jul. 14, 2020) (denying motion to suppress individual pages contained in notebook containing responsive materials). Finally, the defendant's contention that the warrants do not establish probable cause to search for and seize paper records (Mot. at 11) is (a) an improper new

argument that cannot be raised in a motion for reconsideration and (b) frivolous. The probable cause established by the MCC Warrant affidavit is in no way limited to electronic records and, among other things, specifically describes a handwritten *pro se* bail motion written by the defendant that contained classified information. (D.E. 761 Ex. E ¶ 11(e)-(h)).

The defendant's Motion also points to nothing undermining the Court's rejection of his late-breaking efforts to assert privilege over documents previously introduced at trial. As the Court correctly noted, "any privilege was waived by Defendant's failure to assert it prior to the first trial." (Order at 13). All of the exhibits the defendant now claims are privileged were marked as Government exhibits and introduced at the February 2020 trial. (GX801, 806, 809). Despite extensive privilege assertions and litigation prior to the trial, no privilege was asserted over the admitted portions of these exhibits. (D.E. 761 at 49-51). "Accordingly, to the extent the document[s were] ever privileged, Defendant waived the privilege." (Order at 13 (citing *United States v. de la Jara*, 973 F.2d 746, 750 (2d Cir. 1992)); *see also Berall v. Teleflex Medical Inc.*, 10 Civ. 5777 (LAP), 2021 WL 5989936, at *4 (S.D.N.Y. Dec. 17, 2021) (finding privilege waived where, *inter alia*, "[i]nordinate delay occurred" where the proponent "did not attempt to rectify the privileged disclosures" in a prior administrative proceeding); *Desouza v. Park West Apts.*, No. 3:15-CV-01668 (MPS), 2018 WL 625010, at *3 (D. Conn. Jan. 30, 2018) (finding privilege waived by disclosure where, *inter alia*, the proponent "waited over a month" before filing a motion to strike without "any explanation for the substantial delay").

The defendant argues that he did not waive his current privilege assertions because he made them prior to the February 2020 trial in his motions *in limine* and a pretrial letter. (Mot.at 13 (citing D.E. 242, 282)). These filings already were addressed in prior briefing (*see* D.E. 761 at 50) and the Court did not overlook them. Rather, the defendant mischaracterizes the record. In

connection with motions *in limine*, the defendant made general assertions of privilege with

respect to the Malware Article and Notebooks (D.E. 242 at 23-24), which the Court addressed by

directing the Government to identify particular portions it intended to offer. (D.E. 252 & 256 at

3). The Government did so (D.E. 257), and the defendant then identified specific portions of the

proposed exhibits over which he claimed attorney-client or work-product privilege, in addition to

making certain relevance and prejudice arguments. (D.E. 282). These particularized objections

were made only to the Notebooks, and not to the Malware Article; and did not include any of the

Notebook excerpts he now challenges. (*Id*. at 3-5).

       With respect to the Malware Article, the defendant also argues that the transcript of an *ex

parte* proceeding about a purported attorney-conflict issue shows that he previously asserted

privilege over the article (Mot. at 13-15), but this transcript excerpt does not support his

contention.[4] The excerpt contains no assertion of privilege over the Malware Article. Instead,

there is an assertion of privilege over former counsel's handling of a copy of the article in

connection with the assertion that former counsel might be fact witnesses at trial. (*Id*. at 14).

Indeed, not only is there an absence of any assertion of privilege over the content of the Malware

Article, but the description of the article does not support a privilege finding: former counsel said

that the article is "something that Mr. Schulte prepared himself at the prison," and then "[a]t

some point he gave the original of that document to a paralegal." (*Id*.). There is no contention

that the defendant wrote the article at counsel's request or instruction, or that it was written

exclusively for the purpose of obtaining legal advice. The defendant's non-privileged article,

addressed to "my fellow engineers in the tech industry" and clearly intended for disclosure to

---

[4] The Motion purports to quote from a portion of the *ex parte* transcript, and also appears to attach a lengthier portion of the transcript that was not provided to the Government at the time or as part of the defendant's motion. (Mot. at 13-15).

third parties (*see, e.g.*, D.E. 805 at 2-7) does not become retroactively privileged because he later gave it to his lawyers, who then returned it to him. *See Valassis Comms. v. News Corp.*, 17 Civ. 7378 (PKC), 2018 WL 4489285, at *2 (S.D.N.Y. Sep. 19, 2018) ("The attorney-client privilege does not extend to preexisting documents that a client sends to the client's lawyer." (citing *In re Grand Jury Subpoenas*, 959 F.2d 1158, 1163, 1165 (2d Cir. 1992))).

Moreover, any representations or arguments that former counsel previously made on an *ex parte* basis are not equivalent to the actual assertion of privilege to the Government, an attempt to recover the document from the Government, or any effort to exclude it from evidence. To the contrary, there was never any such assertion or attempt to preclude in connection with the prior trial. In short, even if the Malware Article or particular Notebook excerpts were ever privileged—which they plainly were not—any privilege was long since waived.

The defendant's renewed attempt to establish that the Notebook excerpts are privileged is unpersuasive and unsupported, in addition to being too late. (*Id*. at 15-17). There is no evidence, other than the defendant's unsworn and uncorroborated assertions in the Motion, that these documents were prepared exclusively for the purpose of obtaining legal advice, and the content of the records themselves belie this assertion. (*See* D.E. 805 at 2-7). These documents do not reflect "an outline of what the inmate wished to, and ultimately did, discuss with counsel." (Mot. at 16). They instead reflect the defendant's non-privileged actions and plans to disclose information to third parties, which the defendant, in fact, did through his Facebook page and encrypted email accounts, and which he planned to continue to do through his illicit email and social media accounts had he not been interrupted by the search of his cell and the seizure of the Contraband Cellphones.

14

The Motion does nothing to alter the Court's prior conclusion that his attempt to assert privilege is late and unsupported, and should be denied.

## CONCLUSION

For the foregoing reasons, the Motion should be denied.

Dated: May 31, 2022
New York, New York

DAMIAN WILLIAMS
United States Attorney

by: _____/s/_____
David W. Denton, Jr. / Michael D. Lockard
Assistant United States Attorneys
(212) 637-2744 /-2193

cc:    Joshua Adam Schulte (by hand, via MDC Legal Department)
Standby counsel (by ECF)