~~(SECRET//NOFORN)~~



**U.S. Department of Justice**
*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 19, 2022

**FILED WITH CLASSIFIED**      ~~SEALED, CLASSIFIED SUBMISSION~~
**INFORMATION SECURITY OFFICER**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Street
New York, New York 10007

      Re:   **United States v. Joshua Adam Schulte,**
             **S3 17 Cr. 548 (JMF)**

Dear Judge Furman:

~~(S//NF)~~ The Government writes pursuant to the Court's order, dated May 11, 2022 (D.E. 800, the "Order"), concluding that "evidence tending to show that the information in the 'documents, writings, and notes' Defendant is charged with communicating and attempting to communicate in Counts 3 and 4 of the Third Superseding Indictment was publicly available at the time of the charged conduct is not categorically irrelevant or inadmissible," and directing the Government to "file any motion pursuant to [Classified Information Procedures Act] Section 6(c) with respect to this category of evidence." For the reasons set forth below, the Government respectfully moves, pursuant to Sections 6(c) and 8(a) of CIPA, that the Court allow the introduction of certain WikiLeaks pages described in the defendant's Third and Fourth Section 5 Notices[1] as classified exhibits at trial.

~~(S//NF)~~ In addition, in accordance with CIPA Section 6(c)(2), the Government is also submitting *in camera* and *ex parte*, and subject to handling restrictions applicable to documents of the respective levels of classification, the classified declarations of (i) ████████████████████████████████████████; and (ii) ████████████████████████████████, explaining how the disclosure of certain classified information would cause identifiable damage to the national security of the United States, providing additional detail about

---

[1] (U) This letter adopts the defined terms set forth in the Government's initial motion pursuant to Section 6(a) of CIPA.

~~(SECRET//NOFORN)~~

(SECRET//NOFORN)

Hon. Jesse M. Furman
May 19, 2022
Page 2 of 6

the nature of that damage, and explaining the concomitant basis for the classification of such information.

## I. (U) Background

(S//NF) The defendant's Third Section 5 Notice identified ▮▮▮▮▮▮▮▮ of the Classified Information disseminated by WikiLeaks as relevant to his argument that the national defense information the defendant is charged with disclosing and attempting to disclose was no longer "closely held." The defendant's Fourth Section 5 Notice ▮▮▮▮▮▮▮▮ of the Classified Information (collectively, the "WikiLeaks Materials"). As the Court previously approved (D.E. 297), the Government intends to introduce the entirety of the Leaks (which include the WikiLeaks Materials) as a classified exhibit at trial stored on a secure laptop.

(S//NF) At the May 3, 2022 hearing pursuant to CIPA Section 6(a), the Court noted that the WikiLeaks Materials would already be in evidence and questioned why the defendant "couldn't use what's already in evidence without compromising classified information to make the same argument." (5/3/22 Classified Tr. at 51). The Court further inquired whether "one answer here [would be] to admit these as Government's [classified] Exhibits 1A, 1B, 1C, 1D, have the documents themselves basically just separated from their source, and Mr. Schulte can then more easily direct the jury's attention to them and make whatever arguments he wants to make," and the Government indicated that such a course would be acceptable. (*Id.* at 62). The Court also indicated that the defendant may be entitled to a stipulation that the WikiLeaks Materials were publicly available during the relevant time period. (*Id.* at 66).

## II. (U) Applicable Law

(U) Under CIPA, the Court must in the first instance "make all determinations concerning the use, relevance, or admissibility of classified information," pursuant to Section 6(a). Once the Court makes a "determination . . . authorizing the disclosure of specific classified information," pursuant to CIPA Section 6(c)(1), the specific classified information is not automatically itself admissible. Rather, the Government is afforded the opportunity to provide "a statement admitting relevant facts that the specific classified information would tend to prove; or the substitution for such classified information of a summary of the specific classified information." 18 U.S.C. App.

---

[2] (S//NF) The defendant also included in his Third Section 5 Notice "all the 'classified' information and exhibits contained in [the defendant's] Motion to Dismiss the MCC Counts for Violation of the First Amendment." (Third Sec. 5. Not. at 3). These exhibits appear to be either (i) duplicative of Government exhibits already available for use at trial; (ii) specific WikiLeaks pages already identified by the defendant in the Third and Fourth Section 5 Notices; or (iii) irrelevant or otherwise inadmissible materials. (*See* Gov't 6(a) Mot. at 18 n.8). Accordingly, this motion only addresses the specific WikiLeaks pages identified by the defendant in the Third and Fourth Section 5 Notices. The Government's opposition to the defendant's apparent intention to introduce as-yet unspecified press coverage of the Leaks is set forth in the Government's unclassified response to the defendant's motions *in limine*. (*See* D.E. 805 at 14-15).

3 § 6(c)(1). If the Government's proposed substitutions or summaries "provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information," the use of the substitutions or summaries is mandatory—the Court "shall grant" the Government's motion. *Id.*

(U) CIPA requires only that the proposed substitutions and/or summaries "provide the defendant with *substantially* the same ability to make his defense." *Id.* (emphasis added). "[T]he statute contemplates that the Court will permit a substitution even if it is not the exact means through which the defendant prefers to introduce the evidence." *United States v. Libby*, 467 F. Supp. 2d 20, 25 (D.D.C. 2006). Although "section 6(c) does not preclude presentation of the defendant's story to the jury," it nevertheless "allows some restriction on the manner in which the story will be told." *United States v. Collins*, 603 F. Supp. 301, 304 (S.D. Fla. 1985). Rather, "the standard of substantiality . . . is one which requires, in the context of CIPA, substitutions which provide the gist of the defense in virtual entirety although not necessarily the minutia." *Id.* at 305. Accordingly, "[t]he substitution need not be of 'precise, concrete equivalence,' and the 'fact that insignificant tactical advantages could accrue to the defendant by the use of the specified classified information should not preclude the court from ordering alternative disclosure.'" *United States v. Sedaghaty*, 728 F.3d 885, 905 (9th Cir. 2013) (quoting H.R. Rep. No. 96-1436, at 12-13). On the contrary, "[t]he court may find that a 6(c) alternative proposed by the government will provide the defendant with his defense, even though the defendant might rather threaten his prosecutor with the disclosure of more detail." *United States v. Juan*, 776 F.2d 256, 259 (11th Cir. 1985); *see also Libby*, 467 F. Supp. 2d at 35 ("While the defendant might prefer his words of choice over those of the government, that is not the standard under Section 6(c) of the CIPA."). Once the Court has been presented with a summary or substitution that places the defendant in "substantially" the same place to make his chosen argument, no further inquiry is required. *See, e.g., Libby*, 467 F. Supp. 2d at 25 ("[T]he Court must focus exclusively on whether the redacted or substituted version of the classified information the government proposes the defendant use provides the defendant with substantially the same defense."). CIPA does not permit, much less require, the Court to undertake an independent analysis of whether harm would result to the Government from the disclosure of the classified information. *See generally El-Masri v. United States*, 479 F.3d 296, 305 (4th Cir. 2007) ("The courts, of course, are ill-equipped to become sufficiently steeped in foreign intelligence matters to serve effectively in the review of secrecy classifications . . ." (quoting *United States v. Marchetti*, 466 F.2d 1309, 1318 (4th Cir. 1972))). "Whether or not an alternative would be sufficient for the protection of the national interest in the security of classified information is not to be determined by the court. What may appear to the court to be innocuous may be dangerously revealing to those more informed. The government is the party to propose Section 6(c) alternatives." *Juan*, 776 F.2d at 258-59.

(S//NF) Finally, Section 8 of CIPA expressly allows classified information to be entered into evidence without declassifying it. 18 U.S.C. App. 3 § 8(a) ("Writings, recordings, and photographs containing classified information may be admitted into evidence without changing their classification status."). The unlawful dissemination of classified information, such as in the Leaks, does not strip that information of its classification. *See* Executive Order 12356, § 1.3(a) (classified information "shall not be declassified automatically as a result of any unofficial

(SECRET//NOFORN)

Hon. Jesse M. Furman
May 19, 2022
Page 4 of 6

publication or inadvertent or unauthorized disclosure"). As set forth in ▮▮▮▮▮ Declarations, the CIA has certified that the information that the Government seeks to protect through this motion remains classified and would cause identifiable damage to the national security of the United States if further disclosed or acknowledged.

### III. (U) Discussion

(S//NF) In response to the Court's Order, the Government proposes that ▮▮▮▮▮ the WikiLeaks Materials identified in the defendant's Third and Fourth Section 5 Notices be extracted from ▮▮▮▮▮ (other documents from the Leaks that have been declassified are already denominated GX 2-16). The Government will prepare printed copies of these exhibits that can be made available to the jury pursuant to the necessary handling procedures. In this way, the defendant will be able to advance the argument that the Court deems permissible regarding the public availability of the national defense information the defendant is charged with disclosing and attempting to disclose.[3] To the extent permissible,[4] the defendant is free to argue with specificity that the classified information contained on a certain page of, for example, GX 812, is the same as the classified information contained on a certain page of whatever denominated page of ▮▮▮▮▮ he thinks supports his argument, and he can invite the jury to make the specific

---

[3] (S//NF) To be clear, the defendant's assertion that the material he is charged with *attempting* to disclose was contained in the WikiLeaks Materials, or anywhere in the Leaks at all, is false. For example, the defendant repeatedly planned to disclose that ▮▮▮▮▮ Moreover, as of the date that the defendant attempted to leak the connection between ▮▮▮▮▮ no such connection had been drawn publicly. The Government respectfully encourages the Court to review the material that the defendant is charged with attempting to disclose, particularly GX 809, which by its very nature belies the defendant's assertion that he was hewing closely to the material that had already been made public.

[4] (S//NF) The specific parameters of the permissible use of these exhibits may depend on the scope of the Court's reasoning in the forthcoming opinion, since the purpose for which the exhibits are relevant will inform the appropriate scope of testimony and arguments necessary to give the defendant "substantially the same ability to make his defense," 18 U.S.C. App. 3 § 6(c)(1)(B), without compromising information that remains classified and protected. (*See* 5/3/22 Classified Tr. at 58 ("[T]here is the objective, *This isn't National Defense Information because it was publicly available*, I'm not sure you need to take the stand to make that argument if that is a proper argument and I'm going to think about that, versus the *I believed in good faith that this wasn't National Defense Information*. I think there is no way to make that, to inject that argument in the trial unless you take the stand.").

(SECRET//NOFORN)

Hon. Jesse M. Furman
May 19, 2022
Page 5 of 6

comparison in that way without having to publicly disclose in open court the classified information contained therein.[5]

(U) To the extent that it is necessary or appropriate for the defendant to testify or examine witnesses about the public availability of the material, he can do so as well, without compelling the unnecessary disclosure of classified information. As the Fourth Circuit explained in *United States v. Zettl*:

> [T]he witness would not disclose the information from the classified document in open court. Instead, the witness would have a copy of the classified document before him. The court, counsel and the jury would also have copies of the classified document. The witness would refer to specific places in the document in response to questioning. The jury would then refer to the particular part of the document as the witness answered. By this method, the classified information would not be made public at trial but the defense would be able to present that classified information to the jury.

(U) 835 F.2d 1059, 1063 (4th Cir. 1987); *see also United States v. Rosen*, 520 F. Supp. 2d 786, 796 (E.D.Va. 2007) (describing similar procedure as "giv[ing] effect to Congress' express intent in enacting CIPA that federal district judges 'must be relied on to fashion creative and fair solutions to these problems,' *i.e.*, the problems raised by use of classified information in trials" (quoting S. Rep. 96-823, *reprinted in* 1980 U.S.C.C.A.N. 4294)). Whether it would be proper for any witness other than the defendant to testify about any identity between the WikiLeaks Materials and the material the defendant is charged with disclosing and attempting to disclose in Counts Three and Four depends on the scope of the Court's opinion, and whether the Court determines that the fact of unlawful public disclosure is relevant to any element of the offenses charged other than the defendant's willfulness, but in either event, this procedure will allow the defendant to put his case before the jury.

(S//NF) In that regard, the Government's proposed procedure does not entail any limitation on the public's right of access beyond that inherent in the admission of GX 1 as a classified exhibit, which the Court previously approved. If anything, allowing the defendant to make his argument with the additional specificity provided by individually denominating the WikiLeaks Materials as particular exhibits expands the public's ability to understand the defendant's arguments about whether he willfully disclosed and attempted to disclose closely held national defense information. The Government's proposal thus amounts to less of a closure than the simple bulk admission of the Leaks as a single classified exhibit, even if the specifics of the individual classified pages remain appropriately withheld. Accordingly, adopting the Government's proposal does not require

---

[5] (U) Although the Government believes that the public availability of the Leaks will be made clear by the testimony regarding how GX 1 was downloaded, to the extent necessary, the Government would also be prepared to stipulate that, during the time periods charged in Counts Three and Four of the Third Superseding Indictment, ▮▮▮▮▮▮▮▮ had been publicly posted by WikiLeaks.

(SECRET//NOFORN)

Hon. Jesse M. Furman
May 19, 2022
Page 6 of 6

any separate, additional analysis of the factors set forth in *Waller v. Georgia*, 467 U.S. 39, 46 (1984).

(S//NF) The defendant's principal objection to the Government's proposal, as originally posited during the Section 6(a) hearing, was that he would prefer to present his defense through demonstration, and that this procedure would complicate the presentation of his defense. (*See, e.g.*, 5/3/22 Classified Tr. at 64). These restrictions do not uniquely prejudice the defendant, however. The Government will face equal challenges in making the opposite argument—that the proposed exhibits *do not* contain the information that the defendant disclosed and attempted to disclose. Thus whatever awkwardness there may be from the Government's proposed procedure, it accrues equally to both sides.

(U) Nor is the defendant entitled to present classified information however he wants simply because he believes it in his strategic advantage to do so. Within the framework provided by CIPA, the Court must balance the defendant's tactical desires with the need to protect classified information. The Government's proposal does just that—the jury will be denied no relevant information, and the defendant is free to make his argument that the enumerated exhibits of the WikiLeaks Materials had already disclosed the same information he is charged with disclosing and attempting to disclose in Counts Three and Four. The fact that the defendant would prefer to belabor the point through word-for-word comparison does not support the wholesale disclosure of classified information—the Government's proposal gives him "substantially the same ability to make his defense." 18 U.S.C. App. 3 § 6(c)(1)(B). Accordingly, the Court should grant the Government's motion to admit the ▮▮▮▮ from the WikiLeaks Materials as individually-numbered classified exhibits derived from GX 1, which will separately be received in evidence.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____/s/_____
David W. Denton Jr. / Michael D. Lockard
Assistant United States Attorneys
(212) 637-2744 / 2193

Cc: Defendant and Standby Counsel (by CISO)

(SECRET//NOFORN)