```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
UNITED STATES OF AMERICA,                                               :
                                                                        :
                        -v-                                             :      17-CR-548 (JMF)
                                                                        :
JOSHUA ADAM SCHULTE,                                                    :      MEMORANDUM OPINION
                                                                        :           AND ORDER
                        Defendant.                                      :
                                                                        :
------------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

In this case, familiarity with which is presumed, Defendant Joshua A. Schulte, a former employee of the Central Intelligence Agency ("CIA"), is charged with stealing national defense information ("NDI") and transmitting it to Wikileaks as well as disclosing and attempting to disclose NDI while detained pending trial at the Metropolitan Correctional Center ("MCC"). *See* ECF No. 405 ("S3"). A first trial before Judge Paul A. Crotty ended in a conviction on two counts and a mistrial on the others; retrial before the undersigned began on June 13, 2022.

In advance of retrial, the Government moved publicly to admit the entirety of the material Defendant is accused of leaking to WikiLeaks, as well as a classified log file, as classified exhibits — a motion that Judge Crotty had granted prior to the first trial. *See* ECF No. 846-2, at 2[1] ("Gov.'s 2022 Letter"); *see also* ECF No. 846-1 ("Gov.'s 2020 Letter") (the Government's

---

[1] The Government's letter states that it "intends to introduce" the material as classified. As the Court pointed out at the classified hearing held on June 3, 2022, the Government requires the Court's permission to do so. Accordingly, the Court construes the Government's letter as a motion *in limine* to admit these materials in classified form.

motion prior to the first trial); ECF No. 297 (granting the motion before the first trial).[2]  Under the Government's proposal, the classified exhibits would be viewable by the Court, the jury, and the parties, but not by the public.  *See* Gov.'s 2020 Letter 1-2.  Defendant objected to that proposal, as he did before the first trial.  *See* ECF No. 832 ("Def.'s Opp'n"); ECF No. 292 (Defendant's opposition to the Government's motion prior to the first trial).  On June 15, 2022, the Court granted the Government's renewed motion for reasons to be explained in a later opinion.  *See* ECF No. 863.  This is that opinion.[3]

## DISCUSSION

The Government's motion implicates two areas of law, each of which warrants some discussion.  To begin, the Classified Information Procedures Act ("CIPA") sets forth procedures governing the use of classified information at trial.  It describes a process by which a defendant must inform the Government of any classified evidence he seeks to use at trial.  *See* 18 U.S.C. app. 3 § 5.  The Court then determines its admissibility and, if admissible, the Government may propose substitutions or stipulations to be admitted in lieu of the classified material, as long as

---

[2] The Order granting the Government's motion before the first trial stated that an opinion would follow.  No such opinion appears on the docket and neither party was able to point the Court to an opinion that was filed in classified form or under seal.

[3] In its motion, the Government also sought to admit certain parts of the leaked information that Defendant sought to use — to show that the information he is accused of leaking from the MCC was already publicly available, and thus not national defense information — as classified exhibits.  *See* Gov.'s 2022 Letter.  Defendant opposed that motion.  *See* Def.'s Opp'n.  That issue presents a difficult question, as it implicates the fairness to Defendant of requiring him to rely on classified exhibits.  Ultimately, however, the issue was mooted by (1) the Government's decision not to rely on certain of Defendant's communications and attempted communications, rendering the question of the public availability of that information irrelevant, *see* Gov.'s June 7, 2022 Classified Letter 6; and (2) the Government's motion in the alternative, pursuant to Section 6(c) of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. app. 3, to admit a stipulation in lieu of some of the classified information, which was granted, *see* ECF No. 863.  Accordingly, the Court need not and does not address that portion of the Government's motion, or the Defendant's opposition.

they "provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information." *Id.* § 6.  Finally, Section 8(a) of CIPA permits the introduction of classified evidence without changing its classification status.  *Id.* § 8(a).

CIPA does not, however, speak directly to the permissibility of the approach the Government proposes here.  For one thing, the Government is proposing special treatment of its own exhibits rather than Defendant's, which is the concern of CIPA Section 6.  Moreover, the Government seeks not a traditional substitution or stipulation, but a process whereby the evidence is provided only to the jury, the parties, and the Court, but not to the public.  Nor is it clear that Section 8(a), which permits the Government to admit exhibits without changing their classification status, permits the Government to withhold those exhibits from the public.  *See United States v. Pelton*, 696 F. Supp. 156, 157 (D. Md. 1986) ("[Section 8(a)] merely delays an executive decision on the future classification status of the information until after trial, when a full evaluation can be made on whether the information has been so compromised during trial that it could no longer be regarded as classified." (internal quotation marks omitted)).

Defendant argues that because CIPA does not explicitly permit such an approach, it is prohibited.  *See* Def.'s Opp'n 2-3.  But the Court is not persuaded.  Granted, CIPA does not appear to license the Government's proposal.  But nor does the statute prohibit it.  Indeed, in one of the only published decisions to consider the issue, the court concluded that although the approach the Government proposes "is [not] merely a species of redaction or substitution authorized by CIPA § 6(c)," it is not foreclosed by CIPA either.  *See United States v. Rosen*, 520 F. Supp. 2d 786, 797 (E.D. Va. 2007) (*Rosen II*).  As the *Rosen* Court reasoned, "CIPA is neither exhaustive nor explicitly exclusive with respect to the presentation of classified testimony or documents at trial.  It follows that CIPA cannot be said to exclude the use of [a procedure similar

3

to the Government's proposal here] at trial." *Id.* at 796; *see also United States v. Zettl*, 835 F.2d 1059, 1063 (4th Cir. 1987) (adopting a similar approach to handling certain classified exhibits in the absence of defense objection). The Court agrees with that conclusion.

What then, is the appropriate standard to apply to the Government's proposal? Separate and apart from CIPA, Courts have developed principles for determining whether a partial closure of a criminal trial to the public is justified under the First and Sixth Amendments. *See, e.g.*, *Press-Enter. Co. v. Superior Ct. of California, Riverside Cnty.*, 464 U.S. 501 (1984) (analyzing a public trial right asserted by the press); *Waller v. Georgia*, 467 U.S. 39 (1984) (analyzing a public trial right asserted by a defendant). The *Rosen* Court concluded that a proposal like the Government's, although not explicitly addressed by CIPA, should be analyzed under these principles "because [it] effects a partial closure of the trial." *Rosen II*, 520 F. Supp. 2d at 797-98; *see also United States v. Pelton*, 696 F. Supp. 156, 157 (D. Md. 1986) (reaching the same conclusion). Under that analysis, "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Waller*, 467 U.S. at 48; *accord Moss v. Colvin*, 845 F.3d 516, 520 (2d Cir. 2017).[4]

---

[4] Defendant's opposition relies heavily on an earlier decision in *Rosen*, which rejected a proposal to partially close the courtroom for "all classified material in both the government's case and the defense case." *United States v. Rosen*, 487 F. Supp. 2d 703, 708 (E.D. Va. 2007) (*Rosen I*). The *Rosen* court rejected that proposal because, as it stated in the later opinion (approving the more limited proposal), such a procedure, although permissible under some circumstances, "may not be used excessively." *Rosen II*, 520 F. Supp. 2d at 797. That requirement is consistent with the *Waller* test, which requires that the proposed closure "must be no broader than necessary." *Waller*, 467 U.S. at 48.

The Court agrees that *Waller* and *Press-Enterprise* provide the appropriate analytical framework for considering the Government's proposal. There is no question that the Government's proposal amounts to a partial closure of the courtroom, as it results in evidence being visible to the Court, the parties, and the jury, but not the public. Moreover, courts have found that the procedural requirements for justifying closure "are fully applicable in the context of closure motions based on threats to national security." *In re Washington Post Co.*, 807 F.2d 383, 392 (4th Cir. 1986). Accordingly, the Court must decide whether the use of the classified exhibits as the Government proposes is justified under *Waller*.

First, "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced if the courtroom is not closed." *Moss*, 845 F.3d at 520 (internal quotation marks omitted). The Government argues that this factor is satisfied because the leaked information and the log file remain classified and public disclosure of either document will cause harm to national security. *See* Gov.'s 2020 Letter 3-4. As to the log file, the classified information contained in the file has never been released, and the Government represents that release would reveal the "details of a voluminous amount of unrelated network activity" on the CIA's classified network. *See* Gov.'s 2020 Letter 5. The Government, in support of its renewed motion, also filed two classified declarations explaining how further disclosure of the leaked information, in particular, could be harmful. *See* Gov.'s 2022 Letter 4. First, the declarations explain that calling attention to particular aspects of the leaked information, through argument or the questioning of witnesses, would cause additional incremental harm beyond that created by the original disclosure. Second, the declarations explain that requiring the government to publicly acknowledge what portions of the leak are actually classified documents would create additional harm not created by the original leak.

It is indisputable that the Government has a "'compelling interest' in withholding national security information from unauthorized persons." *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988) (citing *Snepp v. United States*, 444 U.S. 507, 509, n.3 (1980)).  In the case of the log file — information that has never been disclosed to the public — the Government's interest in withholding the information from unauthorized persons is pellucid and would plainly be prejudiced if it were admitted into evidence publicly.  *See* Gov.'s 2022 Letter 4.  Moreover, the Government represents that disclosing the file publicly would reveal substantial amounts of unrelated classified network activity.  *See* Gov.'s 2020 Letter 5; Gov.'s Oct. 11, 2019 Classified CIPA Section 6(a) Motion, at 41; *cf. C.I.A. v. Sims*, 471 U.S. 159, 180 (1985) (stating that "it is the responsibility of the Director of Central Intelligence, not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether the disclosure of information may lead to unacceptable risk"); *El-Masri v. United States*, 479 F.3d 296, 305 (4th Cir. 2007) ("In assessing the risk that such a disclosure might pose to national security, a court is obliged to accord the 'utmost deference' to the responsibilities of the executive branch.").

Whether the Government has an overriding interest with respect to the leaked information is a closer question because the information the Government seeks to protect has already been disclosed to the public via the leak.  That said, the Court is persuaded by the Government's classified declarations that additional harm would result if the leaked information were admitted into evidence in unclassified form.  In particular, admitting the information as evidence in unclassified form could cause harm by drawing attention to particular elements of the information or contextualizing information through the questioning of witnesses.  "[T]he significance of one item of information may frequently depend upon knowledge of many other items of information, and what may seem trivial to the uninformed, may appear of great moment

to one who has a broad view of the scene and may put the questioned item of information in its proper context." *El-Masri*, 479 F.3d at 305 (internal quotation marks omitted) (cleaned up). That concern is particularly prominent here, where the information leaked is not a single document, but a large volume of data, and publicly examining witnesses about certain aspects of the information might draw attention to those aspects that would otherwise go unnoticed in the broader leak.

Additionally, although this prosecution is, in essence, an official acknowledgement that *some* of the leaked information is genuine, the Government has never officially acknowledged whether all or only portions (and if the latter, which portions) of the leaked information came from the CIA. *Cf. Wolf v. C.I.A.*, 473 F.3d 370, 378 (D.C. Cir. 2007) (holding, in the FOIA context, that "the fact that information exists in some form in the public domain does not necessarily mean that official disclosure will not cause harm"); *United States v. Killingbeck*, 616 F. App'x 14, 16 (2d Cir. 2015) (summary order) (partial closure of the trial justified by continuing harm caused to victims of child pornography by displaying it publicly during trial). For both reasons, the Court concludes that the Government has "an overriding interest that is likely to be prejudiced" if the exhibits are not admitted in classified form as the Government proposes. *Moss*, 845 F.3d at 520 (2d Cir. 2017).

Second, "the closure must be no broader than necessary to protect that interest." *Waller*, 467 U.S. at 48. On this front, it is significant that the Government seeks to admit only two exhibits as classified. The log file, although voluminous, is only a small part of the evidence on which the Government relies. Moreover, the Government has declassified particular portions that will be available to the public at trial. *See* Gov.'s 2020 Letter 5. The leaked information is certainly more substantial in size, scope, and significance at trial, but — importantly — the

7

information is, in fact, already available to the public. Indeed, the Government represents that its witness will testify that the classified exhibit itself was downloaded from the Internet. *See* Gov.'s 2022 Letter 5 n.5. The factors identified in *Waller* are intended to protect the defendant, "that the public may see he is fairly dealt with and not unjustly condemned." *Waller*, 467 U.S. at 46. In the unusual circumstances presented here, that purpose is fulfilled because the public actually has access to the leaked information (or, at least, what remains of it online), even if it is admitted in classified form at trial. Moreover, the Government has declassified portions of the leak for use at trial; the remainder, which remains classified but available to the jury, has little significance to the issues in dispute in this trial. Accordingly, the Court concludes that the closure the Government proposes is "no broader than necessary." *Id.* at 48.

Third, "the trial court must consider reasonable alternatives to closing the proceeding." *Id.* Under this prong of the test, "trial courts are required to consider alternatives to closure even when they are not offered by the parties." *Presley v. Georgia*, 558 U.S. 209, 214 (2010). As the Government makes clear, a traditional CIPA substitution or stipulation is not an option here as to either exhibit. The log file is simply too voluminous and technical to redact in its entirety. *See* Gov.'s 2020 Letter 2; Gov.'s Oct. 11, 2019 Classified CIPA Section 6(a) Motion, at 41-42. As for the leaked information, it is plain that a stipulation or redaction would be impossible given the enormous quantity of information in the leak. Moreover, the Government's declarations explain that any redaction would be ineffective because the public could determine what was redacted merely by cross-referencing the public version.

The fourth *Waller* factor requires that the Court "make findings adequate to support the closure." 467 U.S. at 48. Here, the Government's submissions, including the classified declarations, provide an adequate basis to conclude that closure is appropriate. *See, e.g.*, *Moss*,

845 F.3d at 521 (explaining that the "record [should be] sufficiently detailed such that a reviewing court can glean that the trial court considered and rejected alternatives and, in turn, can determine whether the closure order was properly entered" (internal quotation marks omitted)).

Finally, the *Rosen* Court concluded that, although *Press-Enterprise* and *Waller* do not "require an explicit finding that a trial closure is fair to defendants, it is appropriate to reject [a closure] that is unfair to defendants." *Rosen II*, 520 F. Supp. 2d at 798. *Rosen* further concluded that a proposal like the Government's could cause unfairness to a defendant, particularly when the partial closure is applied to the defendant's exhibits, because of "the awkwardness of presentation [of the classified exhibits] and resulting jury confusion," "counsel's inability to explore fully and argue about the facts" shown by the classified exhibit, and, as to espionage charges, "the prejudice from employing a procedure that suggests to the jury that the information being discussed is a closely-held government secret when the jury itself must decide that very issue." *Rosen II*, 520 F. Supp. 2d at 798. To the extent that the Court must consider fairness to Defendant, it concludes that the Government's proposal is not unfair under the circumstances. For one thing, as noted above, the Government's motion seeking a partial closure of Defendant's exhibits has already been mooted, and the Government now seeks a closure only as to its own exhibits. Moreover, Defendant does not appear to dispute that the leaked information is national defense information, at least as to the WikiLeaks counts and, thus, there is no prejudice from suggesting as much to the jury via its treatment at trial. (Moreover, any prejudice can be cured through appropriate limiting instructions.) In addition, excerpts of both classified exhibits will be admitted publicly at trial. Finally, both parties will have to contend with the awkwardness of examination and cross-examination using classified exhibits.

## CONCLUSION

For the foregoing reasons, the Government's motion is GRANTED. The Government may admit the log file and leaked information as classified exhibits at trial, available only to the parties, the jury, and the Court.

SO ORDERED.

Dated: June 22, 2022
      New York, New York

_____
JESSE M. FURMAN
United States District Judge