UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                                                                    :
UNITED STATES OF AMERICA,                                           :
                                                                    :
                                                                    :
          -v-                                                       :          17-CR-548 (JMF)
                                                                    :
JOSHUA ADAM SCHULTE,                                                :          ORDER
                                                                    :
                              Defendant.                            :
                                                                    :
--------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Attached is the draft jury charge to be considered at the charge conference to be held

today at 4 p.m. in Courtroom 15A of the Daniel Patrick Moynihan U.S. Courthouse.

      As noted, summations will begin tomorrow at 9 a.m. in Courtroom 15A.  Courtroom 20B

of the Daniel Patrick Moynihan U.S. Courthouse will be used as an overflow courtroom.

      SO ORDERED.

Dated: July 6, 2022
      New York, New York                                      
                                              JESSE M. FURMAN
                                      United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X
                                             :

UNITED STATES OF AMERICA,                     :

                                             :         17 Cr. 548 (JMF)

  -v-                                        :

                                           :

JOSHUA ADAM SCHULTE,                    :

                                         :

                         Defendant.       :

                                           :

----------------------------------------------------------------------X

## JURY CHARGE

July 6, 2022

# Table of Contents

I. GENERAL INTRODUCTORY INSTRUCTIONS .................................................. 1

1    Role of the Court and the Jury ................................................................. 2

2    The Parties ............................................................................................... 2

3    The Defendant's Self-Representation ....................................................... 2

4    Conduct of Counsel and Mr. Schulte ....................................................... 3

5    Presumption of Innocence and Burden of Proof ...................................... 4

6    Proof Beyond a Reasonable Doubt .......................................................... 4

7    Direct and Circumstantial Evidence ......................................................... 5

8    What Is and What Is Not Evidence ........................................................... 6

9    Credibility of Witnesses ........................................................................... 8

10   Law Enforcement and Government Witnesses .......................................... 9

11   Expert Witnesses ................................................................................... 10

12   Cooperator Testimony ............................................................................ 11

13   Preparation of Witnesses ....................................................................... 13

14   Uncalled Witnesses ............................................................................... 13

15   Number of Witnesses and Uncontradicted Testimony ............................ 14

16   Evidence of the Defendant's Custody .................................................... 14

17   False Exculpatory Statements ................................................................ 15

18   Stipulations ........................................................................................... 16

19   Limited Purpose Evidence ...................................................................... 16

20   Charts and Summaries ........................................................................... 16

21   Creation and Use of Recordings ............................................................ 17

22   Transcripts of Video Recordings ........................................................... 17

23   Particular Investigative Techniques ....................................................... 17

24   Persons Not on Trial ............................................................................. 18

25   Searches and Seizures ........................................................................... 18

26   The Defendant's Testimony ................................................................... 19

II. SUBSTANTIVE INSTRUCTIONS ............................................................... 19

27   The Indictment ...................................................................................... 19

28   Count One: Illegal Gathering of NDI — Elements ................................. 22

Count One — First Element: Taking Information ................................................... 22

Count One — Second Element: NDI ................................................................... 23

Count One — Third Element: Purpose, Knowledge and Intent ............................... 25

Counts Two and Three: Illegal Transmission of Unlawfully Possessed NDI — Elements ...... 26

Counts Two and Three — First Element: Possession ........................................... 27

Counts Two and Three — Second Element: NDI ................................................. 28

Counts Two and Three — Third Element: Transmission........................................ 28

Count Four: Attempted Illegal Transmission of Unlawfully Possessed NDI .......................... 29

Count Five: Unauthorized Access to a Computer to Obtain Classified Information —
Elements ................................................................................................... 31

Count Five — First Element: Unauthorized Access ............................................. 32

Count Five — Second Element: Knowledge........................................................ 33

Count Five — Third Element: Protected Information............................................ 34

Count Five — Fourth Element: Willful Communication........................................ 34

Count Six: Unauthorized Access of a Computer to Obtain Information from a Department or
Agency of the United States — Elements ......................................................... 35

Count Six — First Element: Unauthorized Access .............................................. 35

Count Six — Second Element: Intentional Conduct............................................. 36

Count Six — Third Element: U.S. Government Information.................................... 37

Counts Seven and Eight: Causing Transmission of a Harmful Computer Program, Information,
Code, or Command — Elements .................................................................... 37

Counts Seven and Eight — First Element: Unauthorized Transmission of a Computer
Program..................................................................................................... 38

Counts Seven and Eight — Second Element: Intent to Cause Damage or Deny Service ......... 39

Counts Seven and Eight — Third Element: Causing Damage ................................. 39

Counts Seven and Eight — Fourth Element: Harmful Consequences ...................... 40

Count Nine: Obstruction of Justice — Elements ................................................ 40

Count Nine — First Element: Official Proceeding ............................................... 41

Count Nine — Second Element: Knowledge ...................................................... 41

Count Nine — Third Element: Corruptly Acted to Obstruct or Impede .................... 42

Venue....................................................................................................... 44

iii

1    Motive.................................................................................................................... 45

2    Variance in Dates.................................................................................................. 46

     **III. CONCLUDING INSTRUCTIONS**.................................................................. 46

3    COVID-19 Protocols ........................................................................................... 46

4    Selection of the Foreperson ................................................................................ 46

5    Right to See Exhibits and Hear Testimony ........................................................ 47

6    Juror Note-Taking ............................................................................................... 48

7    Bias or Sympathy as Juror .................................................................................. 48

8    Duty to Deliberate .............................................................................................. 49

9    Return of the Verdict .......................................................................................... 50

10   Closing Comments .............................................................................................. 51

# I. GENERAL INTRODUCTORY INSTRUCTIONS

Members of the jury, you have now heard all of the evidence in the case and the closing

arguments.  It is my duty at this point to instruct you as to the law.  My instructions to you will be in

three parts.

*First*, I will give you general instructions — for example, about your role as the jury, what you

can and cannot consider in your deliberations, and the burden of proof.

*Second*, I will describe the law that you must apply to the facts as you find them to be established

by the evidence.

*Finally*, I will give you some instructions for your deliberations.

I am going to read my instructions to you.  It is not my favorite way to communicate — and not

the most scintillating thing to listen to — but there is a need for precision, and it is important that I get

the words just right, and so that is why I will be reading.

Because my instructions cover many points, I have given you a copy of my instructions to follow

along.  Please limit yourself to following along; that is, do *not* read ahead in the instructions.  If you find

it easier to listen and understand while you are following along with me, please do so.  If you would

prefer, you can just listen and not follow along.  Either way, you may take your copy of the instructions

with you into the jury room so you can consult it if you want to re-read any portion of the charge to

facilitate your deliberations.

For now, listen carefully and try to concentrate on the substance of what I'm saying.  You should

not single out any instruction as alone stating the law; rather, you should consider my instructions as a

whole when you retire to deliberate in the jury room.

Role of the Court and the Jury

You, the members of the jury, are the sole and exclusive judges of the facts.  You must weigh and consider the evidence without regard to sympathy, prejudice, or passion for or against any party.  It is your duty to accept my instructions as to the law and to apply them to the facts as you determine them. If either party has stated a legal principle differently from any that I state to you in my instructions, it is my instructions that you must follow.

The Parties

In reaching your verdict, you must remember that all parties stand equal before a jury in the courts of the United States.  The fact that the Government is a party and the prosecution is brought in the name of the United States does not entitle the Government or its witnesses to any greater consideration than that accorded to any other party.  By the same token, you must give it no less deference.  The Government and the defendant, Joshua Schulte, stand on equal footing before you.

It would be improper for you to consider, in reaching your decision as to whether the Government sustained its burden of proof, any personal feelings you may have about the defendant's race, national origin, religious beliefs, sex, or age.  All persons are entitled to the same presumption of innocence and the Government has the same burden of proof with respect to all persons.

The Defendant's Self-Representation

A criminal defendant has a constitutional right under the Sixth Amendment to the United States Constitution to represent himself.  The defendant's decision to exercise that right and represent himself has no bearing on whether he is guilty or not guilty, and it must not affect your consideration of the case.

1  You are not to draw any inferences from the defendant's decision to exercise his right to represent

2  himself.

3  **Adapted from *United States v. Avenatti*, 19 Cr. 374 (JMF) (S.D.N.Y. 2022); *United States v.***

4  ***Williams*, 09 Cr. 101 (RMB) (S.D.N.Y. 2011); Third Circuit Pattern Criminal Jury Instructions,**

5  ***Modern Federal Jury Instructions-Criminal*, 1.18; Eighth Circuit Pattern Criminal Jury**

6  **Instructions, *Modern Federal Jury Instructions-Criminal*, 2.23; Ninth Circuit Pattern Criminal**

7  **Jury Instructions, *Modern Federal Jury Instructions-Criminal*, 1.15.**

8

9  Conduct of Counsel and Mr. Schulte

10      The personalities and the conduct during trial of both counsel and Mr. Schulte are not in any way

11  at issue.  If you formed opinions of any kind about the personalities or conduct during trial of any of the

12  lawyers in the case or Mr. Schulte, favorable or unfavorable, whether you approved or disapproved of

13  their behavior, those opinions should not enter into your deliberations.

14      In addition, remember that it is the duty of each side to object when the other side offers

15  testimony or other evidence that the objector believes is not properly admissible.  Therefore, you should

16  draw no inference from the fact that there was an objection to any testimony or evidence.  Nor should

17  you draw any inference related to the weight or importance of any testimony or evidence from the fact

18  that I sustained or overruled an objection.  Simply because I have permitted certain testimony or

19  evidence to be introduced does not mean that I have decided on its importance or significance.  That is

20  for you to decide.

21

1    <u>Presumption of Innocence and Burden of Proof</u>

2         The defendant has pleaded not guilty to the charges against him.  As a result of that plea of not

3    guilty, the burden is on the Government to prove guilt beyond a reasonable doubt.  This burden never

4    shifts to a defendant for the simple reason that the law never imposes upon a defendant in a criminal

5    case the burden or duty of testifying, or calling any witness, or locating or producing any evidence.

6         Furthermore, the law presumes the defendant to be innocent of the charges against him.  The

7    presumption of innocence was in his favor when the trial began, continued in his favor throughout the

8    entire trial, remains with him even as I speak to you now, and persists in his favor during the course of

9    your deliberations in the jury room, unless and until the Government proves beyond a reasonable doubt

10   that he committed one of the charged crimes.

11

12   <u>Proof Beyond a Reasonable Doubt</u>

13        The question that naturally arises is, "What is a reasonable doubt?"  A reasonable doubt is a

14   doubt based on your reason, your judgment, your experience, and your common sense.  It is a doubt that

15   a reasonable person has after carefully weighing all the evidence.  It is a doubt founded in reason and

16   arising out of the evidence in the case — or the lack of evidence.

17        Proof beyond a *reasonable* doubt does not mean proof beyond all *possible* doubt.  It is

18   practically impossible for a person to be absolutely and completely convinced of any disputed fact that,

19   by its very nature, cannot be proved with mathematical certainty.  The Government's burden is to

20   establish guilt beyond a *reasonable* doubt, not all *possible* doubt.

21        If, after a fair and impartial consideration of all the evidence, you can candidly and honestly say

22   that you are not satisfied with the guilt of the defendant, that you do not have an abiding belief of the

23   defendant's guilt — in other words, if you have such a doubt as would reasonably cause a prudent

4

1   person to hesitate in acting in matters of importance in his or her own affairs — then you have a

2   reasonable doubt, and in that circumstance it is your duty to acquit.

3          On the other hand, if, after a fair and impartial consideration of all the evidence, you can

4   candidly and honestly say that you do have an abiding belief of the defendant's guilt, such a belief as a

5   prudent person would be willing to act upon in important matters in the personal affairs of his or her

6   own life, then you have no reasonable doubt, and in that circumstance it is your duty to convict.

7

8   <u>Direct and Circumstantial Evidence</u>

9          There are two types of evidence that you may properly use in deciding whether the defendant is

10   guilty or not guilty of the crimes with which he is charged.

11          One type of evidence is called direct evidence.  Direct evidence of a fact in issue is presented

12   when a witness testifies to that fact based on what he or she personally saw, heard, or otherwise

13   observed through the five senses.  The second type of evidence is circumstantial evidence.

14   Circumstantial evidence is evidence that tends to prove a disputed fact indirectly by proof of other facts.

15          There is a simple example of circumstantial evidence that is often used in this courthouse.

16   Assume that when you came into the courthouse this morning, the sun was shining and it was a nice day

17   outside.  Also assume that the courtroom shades were drawn and you could not look outside.  Assume

18   further that as you were sitting here, someone walked in with an umbrella that was dripping wet, and

19   then, a few moments later, somebody else walked in with a raincoat that was also dripping wet.

20          Now, because you could not look outside the courtroom and you could not see whether it was

21   raining, you would have no direct evidence of that fact.  But, on the combination of facts that I have

22   asked you to assume, it would be reasonable and logical for you to conclude that it was raining.

1   That is all there is to circumstantial evidence.  You infer on the basis of your reason, experience,

2   and common sense from one established fact the existence or the nonexistence of some other fact.

3   The matter of drawing inferences from facts in evidence is not a matter of guesswork or

4   speculation.  An inference is a logical, factual conclusion that you might reasonably draw from other

5   facts that have been proved.  It is for you, and you alone, to decide what inferences you will draw.

6   Many material facts, such as a person's state of mind, are not easily proved by direct evidence.

7   Usually such facts are established by circumstantial evidence and the reasonable inferences you draw.

8   Circumstantial evidence may be given as much weight as direct evidence.  The law makes no distinction

9   between direct and circumstantial evidence.  The law simply requires that before convicting a defendant,

10  you must be satisfied of the defendant's guilt beyond a reasonable doubt, based on all of the evidence in

11  the case.

12

13  What Is and What Is Not Evidence

14  What, then, is the evidence in the case?

15  The evidence in this case is (1) the sworn testimony of the witnesses, (2) the exhibits received

16  into evidence, and (3) any stipulations made by the parties.  Anything else is not evidence.  For example,

17  the questions posed to a witness are not evidence: It is the witnesses' answers that are evidence, not the

18  questions.  I remind you also that if you understand Spanish, you may not rely on any testimony that was

19  given in Spanish; the English translation of any testimony that was given in Spanish is the evidence that

20  you may consider during your deliberations.

21  In addition, exhibits marked for identification but not admitted by me are not evidence; nor are

22  materials brought forth only to refresh a witness's recollection.  Moreover, testimony that has been

23  stricken or excluded by me is not evidence and may not be considered by you in rendering your verdict.

1    Along these lines, we have, among the exhibits received in evidence, some documents that are

2    redacted, and some documents where words were substituted over the redaction.  "Redacted" means that

3    part of the document was taken or blacked out.  You are to concern yourself only with the part of the

4    document that has been admitted into evidence, including any substitution.  You should not consider any

5    possible reason why the other part of it has been deleted or blacked out, or why there might be a

6    substitution.

7    Arguments by the lawyers and the defendant are also not evidence.  What you heard during the

8    opening statements and summations is merely intended to help you understand the evidence and reach

9    your verdict.  If your recollection of the facts differs from the parties' statements, you should rely on

10   your recollection.  If a party made a statement during his or her opening or summation and you find that

11   there is no evidence to support the statement, you should disregard the statement.

12   In that regard, let me remind you: Because the defendant decided to act as his own lawyer, you

13   heard him speak at various times during the trial, including in opening and closing argument.  I want to

14   remind you that when the defendant spoke during those parts of the trial, he was acting as a lawyer in

15   the case, not as a witness, and thus his words are not evidence.  The *only* evidence in this case is the

16   testimony of witnesses under oath and exhibits admitted into evidence.

17   Finally, any statements that I may have made during the trial or during these instructions do not

18   constitute evidence.  At times, I may have admonished a witness or directed a witness to be responsive

19   to questions or to keep his or her voice up.  At times, I may have asked a question myself.  Any

20   questions that I asked, or instructions that I gave, were intended only to clarify the presentation of

21   evidence and to bring out something that I thought might be unclear.  You should draw no inference or

22   conclusion of any kind, favorable or unfavorable, with respect to any witness or any party in the case, by

23   reason of any comment, question, or instruction of mine.  The rulings I have made during the trial and

1    these instructions are no indication of my views of what your decision should be.  Nor should you infer

2    that I have any views as to the credibility of any witness, as to the weight of the evidence, or as to how

3    you should decide any issue that is before you.  That is entirely your role.

4    **Adapted from *United States v. Avenatti*, 19 Cr. 374 (JMF) (S.D.N.Y. 2022); *United States v.***

5    ***Williams*, 09 Cr. 101 (RMB) (S.D.N.Y. 2011); Third Circuit Pattern Criminal Jury Instructions,**

6    ***Modern Federal Jury Instructions-Criminal*, 1.18; Eighth Circuit Pattern Criminal Jury**

7    **Instructions, *Modern Federal Jury Instructions-Criminal*, 2.23; Ninth Circuit Pattern Criminal**

8    **Jury Instructions, *Modern Federal Jury Instructions-Criminal*, 1.15.**

9

10   Credibility of Witnesses

11          How do you evaluate the credibility or believability of the witnesses?  The answer is that you use

12   your common sense.  There is no magic formula by which you can evaluate testimony.  You may use the

13   same tests here that you use in your everyday life when evaluating statements made by others to you.

14   You may ask yourselves: Did the witness impress you as open, honest, and candid?  How responsive

15   was the witness to the questions asked on direct examination and on cross-examination?

16          If you find that a witness intentionally told a falsehood, that is always a matter of importance you

17   should weigh carefully.  On the other hand, a witness may be inaccurate, contradictory, or even

18   untruthful in some respects and entirely believable and truthful in other respects.  It is for you to

19   determine whether such inconsistencies are significant or inconsequential, and whether to accept or

20   reject all of the testimony of any witness, or to accept or reject only portions.

21          You are not required to accept testimony even though the testimony is uncontradicted and the

22   witness's testimony is not challenged.  You may reject it because of the witness's bearing or demeanor,

1   or because of the inherent improbability of the testimony, or for other reasons sufficient for you to

2   conclude that the testimony is not worthy of belief.

3          In evaluating the credibility of the witnesses, you should take into account any evidence that a

4   witness may benefit in some way from the outcome of the case.  Such an interest in the outcome creates

5   a motive to testify falsely and may sway a witness to testify in a way that advances his or her own

6   interests.  Therefore, if you find that any witness whose testimony you are considering may have an

7   interest in the outcome of this trial, you should bear that factor in mind when evaluating the credibility

8   of his or her testimony, and decide whether to accept it with great care.

9          Keep in mind, though, that it does not automatically follow that testimony given by an interested

10  witness is to be disbelieved.  There are many people who, no matter what their interest in the outcome of

11  the case may be, would not testify falsely.  It is for you to decide, based on your own perceptions and

12  common sense, to what extent, if at all, the witness's interest has affected his or her testimony.

13

14  <u>Law Enforcement and Government Witnesses</u>

15         You have heard testimony from law enforcement witnesses and witnesses who are current or

16  former employees of the Central Intelligence Agency ("CIA") and Federal Bureau of Investigation

17  ("FBI").  The fact that a witness may be employed as a law enforcement official or government

18  employee does not mean that his or her testimony is necessarily deserving of more or less consideration

19  or greater or lesser weight than that of an ordinary witness.  It is your decision, after reviewing all the

20  evidence, whether to accept the testimony of any law enforcement witness or government witnesses, as

21  it is with every other type of witness, and to give to that testimony the weight you find it deserves.

22         I have allowed some of the CIA witnesses to testify either by using a made-up name — a

23  pseudonym — or just their first names.  That is because disclosure of these witnesses' true or full names

9

1   could potentially compromise their work at the CIA.  You should weigh the testimony of these witnesses

2   just as you would any other witness, and not weigh it differently because they testified using a

3   pseudonym or used a first name only.  Moreover, you should not consider the fact that I allowed these

4   witnesses to testify in this way as an expression of my opinion as to any of the facts of this case.  Again,

5   it is your job and your job alone to decide the facts of this case.

6   **Adapted from _United States v. Schulte_, 17 Cr. 548 (PAC) (S.D.N.Y. 2020).**

7

8   <u>Expert Witnesses</u>

9       You have heard testimony from expert witnesses.  As I previously explained, an expert witness is

10  someone who, by education or experience, has acquired learning or experience in a specialized area of

11  knowledge.  Such a witness is permitted to express his or her opinions on matters about which he or she

12  has specialized knowledge and training.  The parties may present expert testimony to you on the theory

13  that someone who is experienced in the field can assist you in understanding the evidence or in reaching

14  an independent decision on the facts.

15       Your role in judging credibility applies to experts as well as other witnesses.  In weighing an

16  expert's opinion, you may consider the expert's qualifications, education, and reasons for testifying, as

17  well as all of the other considerations that ordinarily apply, including all the other evidence in the case.

18  If you find the opinion of an expert is based on sufficient data, education, and experience, and the other

19  evidence does not give you reason to doubt his or her conclusions, you would be justified in placing

20  reliance on his or her testimony.  However, you should not accept witness testimony simply because the

21  witness is an expert.  The determination of the facts in this case rests solely with you.

22  **Adapted from _United States v. Lopez-Cabrera_, S5 11 Cr. 1032 (PAE) (S.D.N.Y. 2014); Sand,**

23  **_Modern Federal Jury Instructions - Criminal_, Instr. 7-21.**

10

1

2 <u>Cooperator Testimony</u>

3      You have heard testimony from one witness — Carlos Betances — who testified that he pleaded

4 guilty to criminal conduct and is now cooperating with the Government.

5      Experience will tell you that the Government sometimes must rely on the testimony of so-called

6 cooperaring witnesses.  The Government must take its witnesses as it finds them and sometimes must

7 use such testimony in a criminal prosecution, because otherwise it would be difficult or impossible to

8 detect and prosecute wrongdoers.  For these very reasons, the law allows the use of testimony from

9 cooperating witnesses.  Indeed, under federal law, the testimony of a cooperating witness may be

10 enough in itself for conviction, if the jury believes that the testimony establishes guilt beyond a

11 reasonable doubt.

12      You may not draw any conclusions or inferences of any kind about the guilt of the defendant on

13 trial from the fact that Mr. Betances pleaded guilty to other charges.  The decision of that witness to

14 plead guilty was a personal decision that witness made about his own guilt.  It may not be used by you in

15 any way as evidence against or unfavorable to the defendant.

16      Additionally, because of the interest a cooperator may have in testifying, you should scrutinize

17 his testimony with special care and caution.  You may consider the fact that a witness is a cooperator as

18 bearing upon his credibility.  Like the testimony of any other witness, accomplice witness testimony

19 should be given such weight as it deserves in light of the facts and circumstances before you, taking into

20 account the witness's demeanor and candor, the strength and accuracy of the witness's recollection, his

21 background, and the extent to which his testimony is or is not corroborated by other evidence in the

22 case.  You may consider whether a cooperating witness has an interest in the outcome of the case, and if

23 so, whether that interest has affected his testimony.

11

1       You heard testimony about an agreement between the Government and the cooperating

2  witnesses.  I must caution you that it is no concern of yours why the Government made an agreement

3  with a particular witness.  You may, however, consider the effect, if any, that the existence or terms of

4  the agreement have on the witness's credibility.  A witness who hopes to obtain leniency may have a

5  motive to testify as he believes the Government wishes, or he may feel that it is in his interest to

6  incriminate others.  As with any witness, your responsibility is to determine whether any such motive or

7  intent has influenced the witness's testimony and whether the witness has told the truth, in whole or in

8  part.

9       In sum, in evaluating the testimony of a cooperating witness, you should ask yourselves the

10  following questions:  Would the accomplice benefit more by lying or by telling the truth?  Was any part

11  of his testimony potentially made up because he believed or hoped that he would receive favorable

12  treatment from the Government by testifying falsely or as he believed the Government wanted?  Or did

13  he believe that his interests would be best served by testifying truthfully?  If you believe that the witness

14  was motivated by hopes of personal gain, was the motivation one that would cause him to lie, or was it

15  one that would cause him to tell the truth?  Did this motivation color his testimony?  It does not follow,

16  however, that simply because a person has admitted to participating in one or more crimes, he is

17  incapable of giving a truthful version of what happened.

18       If you think that the testimony was false, you should reject it.  However, if, after a cautious and

19  careful examination of an accomplice witness's testimony, you are satisfied that the witness told the

20  truth, you may accept his testimony as credible and act upon it accordingly.

21       As with any witness, let me emphasize that the issue of credibility need not be decided in an all-

22  or-nothing fashion.  If you find that a witness has been untruthful in some respect, you may, but are not

23  required to, reject the witness's testimony in its entirety.  Even if you find that a witness testified falsely

1    in one part, you still may accept his testimony in other parts.  How much of a witness's testimony to

2    accept, if any, is a determination entirely for you, the jury.

3    **Adapted from *United States v. Marquez-Alejandro*, 16 Cr. 387 (JMF) (S.D.N.Y. 2022); *United States***

4    ***v. Lopez-Cabrera*, S5 11 Cr. 1032 (PAE) (S.D.N.Y. 2014); Sand, *Modern Federal Jury Instructions -***

5    ***Criminal*, Instr. 7-5; *see United States v. Vaughn*, 430 F.3d 518, 523-34 (2d Cir. 2005).**

6

7    <u>Preparation of Witnesses</u>

8          You have heard evidence during the trial that witnesses discussed the facts of the case and their

9    testimony with the lawyers before the witnesses appeared in court.  Although you may consider this fact

10   when you are evaluating a witness's credibility, it is common for a witness to meet with lawyers before

11   testifying so that the witness can be aware of the subjects he or she will be questioned about, focus on

12   the subjects, and have the opportunity to review relevant exhibits before being questioned about them.

13   In fact, it would be unusual for a lawyer to call a witness without such consultation.  As always, the

14   weight you give to the fact or the nature of these issues and what inferences you draw from them are

15   matters completely within your discretion.

16

17   <u>Uncalled Witnesses</u>

18         There are people whose names you have heard during the course of the trial but who did not

19   appear here to testify.  I instruct you that each party had an equal opportunity, or lack of opportunity, to

20   call any of these witnesses.  Therefore, you should not draw any inferences or reach any conclusions as

21   to what they would have testified to had they been called.  Their absence should not affect your

22   judgment in any way.

1    You should, however, remember my instruction that the law does not impose on a defendant in a

2    criminal case the burden or duty of calling any witness or producing any evidence.  The burden of proof

3    remains at all times with the Government.

4

5    <u>Number of Witnesses and Uncontradicted Testimony</u>

6    The fact that one party called more witnesses or introduced more evidence does not mean that

7    you should necessarily find the facts in favor of the side offering the most witnesses and the most

8    evidence.  By the same token, you do not have to accept the testimony of any witness who has not been

9    contradicted or impeached, if you find the witness to be not credible.  After examining all the evidence,

10   you may decide that the party calling the most witnesses has not persuaded you because you do not

11   believe its witnesses, or because you do believe the fewer witnesses called by the other side.

12   Again, you should also keep in mind that the burden of proof is always on the Government.  The

13   defendant is not required to call any witnesses or offer any evidence, since he is presumed to be

14   innocent.  On the other hand, the Government is not required to prove each element of the offense by

15   any particular number of witnesses.  The testimony of a single witness may be enough to convince you

16   beyond a reasonable doubt of the existence of the elements of the charged offenses — if you believe that

17   the witness has truthfully and accurately related what he or she has told you.  The testimony of a single

18   witness may also be enough to convince you that reasonable doubt exists, in which case you must find

19   the defendant not guilty.

20

21   <u>Evidence of the Defendant's Custody</u>

22   You have heard evidence that the defendant was in custody at one point.  You may consider

23   this evidence as evidence of the defendant's whereabouts at these points in time.  However, you may not

14

1  consider a defendant's being in custody as evidence that the defendant you are considering is of bad

2  character or has a propensity to commit crime.

3  **Adapted from *United States v. Lopez-Cabrera*, S5 11 Cr. 1032 (PAE) (S.D.N.Y. 2014); *United States***

4  ***v. Marquez-Alejandro*, 16 Cr. 387 (JMF) (S.D.N.Y. 2022).**

5

6  False Exculpatory Statements

7  You have heard testimony that the defendant made certain statements outside the courtroom in

8  which the defendant claimed that his conduct was consistent with innocence and not with guilt.  The

9  Government claims that these statements, in which the defendant exonerated or exculpated himself, are

10  false.  If you find that the defendant gave a false statement in order to divert suspicion from himself, you

11  may — but are not required to — infer that the defendant believed that he was guilty.

12  Under many circumstances, it is reasonable to infer that an innocent person would not find it

13  necessary to invent or fabricate an explanation or statement tending to establish his or her innocence.

14  On the other hand, there may be reasons, fully consistent with innocence, that would cause a person to

15  give a false statement showing their innocence.

16  You may not rely on this evidence alone to support a finding of guilt.  Whether a defendant's

17  statement does or does not point to consciousness of guilt and the significance, if any, to be attached to

18  any such evidence are matters for you, the jury, to decide.

19  **Adapted from Sand, *Modern Federal Jury Instructions-Criminal*, Instrs. 6-11; *see United States v.***

20  ***Strother*, 49 F.3d 869, 877 (2d Cir. 1995).**

21

1    Stipulations

2         Stipulations were entered into relating to various facts in this case.  A stipulation is an agreement

3    between parties as to what certain facts were or what the testimony would be if certain people testified

4    before you.  The stipulations are the same for your purposes as the presentation of live testimony.  You

5    should consider the weight to be given such evidence just as you would any other evidence.

6

7    Limited Purpose Evidence

8         If certain testimony or evidence was received for a limited purpose, you must follow the limiting

9    instructions I have given.

10

11   Charts and Summaries

12        The Government has presented exhibits in the form of charts and summaries.  As you'll recall,

13   some of the charts and summaries were not admitted into evidence, but were shown to you as "aids" —

14   to make the other evidence more meaningful and to help you in considering the evidence.  Others were

15   admitted into evidence as exhibits.  I admitted these charts and summaries in place of, or in addition to,

16   the underlying documents that they represent in order to save time and avoid unnecessary

17   inconvenience.  They are no better than the testimony or the documents upon which they are

18   based.  Therefore, you are to give no greater consideration to these charts or summaries than you would

19   give to the evidence upon which they are based.  It is for you to decide whether they correctly present

20   the information contained in the testimony and in the exhibits on which they were based.

21   **Adapted from Sand, *Modern Federal Jury Instructions-Criminal*, Instrs. 5-12 and 5-13; *United***

22   ***States v. Ansah*, 19 Cr. 752 (JMF) (S.D.N.Y. 2021); *United States v. Ho*, 984 F.3d 191, 209-10 (2d**

1    **Cir. 2020);** *United States v. Blackwood*, **366 F. App'x 207, 212 (2d Cir. 2010);** *see* **Fed. R. Evid.**

2    **1006.**

3

4    Creation and Use of Recordings

5         Video recordings of certain incidents have been admitted in evidence.  I instruct you that the

6    creation of these recordings was entirely lawful and that these recordings were properly admitted in

7    evidence.  Of course, it is for you to decide what weight, if any, to give to this evidence.

8    **Adapted from** *United States v. Dupigny*, **S1 18 Cr. 528 (JMF) (S.D.N.Y. 2020);** *United States v.*

9    *Sepulveda*, **18 Cr. 363 (RJS) (S.D.N.Y. 2019).**

10

11   Transcripts of Video Recordings

12        The Government has been permitted to give you transcripts containing the Government's

13   interpretation of what can be heard on some of the video recordings that have been received as evidence.

14   Those were given to you as an aid or guide to assist you in watching the recordings.  As I have told you,

15   they are not in and of themselves evidence — except for the few spots in which the transcript reflects a

16   substitution for something that was redacted, or removed, from the recording, in which case you should

17   treat the substitution and not the recording as the evidence.  You alone should make your own

18   interpretation of what appears on the recordings based on what you heard.  If you think you heard

19   something differently than appeared on the transcript, then what you heard is controlling.

20   **Adapted from** *United States v. Dupigny*, **S1 18 Cr. 528 (JMF) (S.D.N.Y. 2020);** *United States v.*

21   *Almonte*, **16 Cr. 670 (KMW) (S.D.N.Y. 2017).**

22

23   Particular Investigative Techniques

1    You have heard reference to certain investigative techniques that were used or not used by the

2    Government in this case.  There is no legal requirement that the Government prove its case through any

3    particular means.  While you are to carefully consider the evidence adduced by the Government, you are

4    not to speculate as to why the Government used the techniques it did, or why it did not use other

5    techniques.

6

7    Persons Not on Trial

8    You may not draw any inference, favorable or unfavorable, toward the Government or the

9    defendant from the fact that any person was not named as a defendant in this case, and you may not

10   speculate as to the reasons why other people are not on trial before you now.  Those matters are wholly

11   outside your concern and have no bearing on your function as jurors in deciding the case before you.

12

13   Searches and Seizures

14   You have heard testimony about evidence that was seized and about various searches, including

15   searches of electronic devices and electronic service providers.  Evidence obtained from those searches

16   was properly admitted in this case and may be properly considered by you.  Indeed, such searches are

17   entirely appropriate law enforcement actions.  You also heard testimony about evidence that was labeled

18   "attorney-client privileged."  As I instructed you at the time, that evidence was also properly admitted.

19   Whether you approve or disapprove of how the evidence was obtained should not enter into your

20   deliberations because I instruct you that the Government's use of the evidence is lawful. You must,

21   therefore, regardless of your personal opinions, give this evidence full consideration along with all the

22   other evidence in the case in determining whether the Government has proved the defendant's guilt

18

1    beyond a reasonable doubt.  Once again, however, it is for you to decide what weight, if any, to give to

2    this evidence.

3

4    <u>The Defendant's Testimony</u>

5         The defendant did not testify.  Under our Constitution, a defendant is presumed innocent and has

6    no obligation to testify or to present any other evidence because, as I have told you, it is the

7    Government's burden to prove the defendant guilty beyond a reasonable doubt.  That burden remains on

8    the Government throughout the entire trial and never shifts to the defendant.  A defendant is never

9    required to prove that he is innocent.

10        You may not attach any significance to the fact that the defendant did not testify.  No adverse

11   inference against the defendant may be drawn by you because the defendant did not take the witness

12   stand.  You may not consider this in any way in your deliberations in the jury room.

13   **Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF) (S.D.N.Y. 2021).**

14

15                    **II. SUBSTANTIVE INSTRUCTIONS**

16      That concludes my introductory instructions.  Let me now turn to the charges.

17   <u>The Indictment</u>

18        Mr. Schulte is formally charged in an Indictment.  As I instructed you at the outset of this case,

19   the Indictment is a charge or accusation.  It is not evidence.

20        The Indictment (a copy of which you will have in the jury room during your deliberations)

21   contains nine charges, or "counts," against the defendant.  Each count accuses the defendant of

22   committing a different crime.  You must, as a matter of law, consider each count, and you must return a

1   separate verdict for each count in which the defendant is charged.  Your verdict on one count should not

2   control your decision as to any other count.

3          Counts One, Two, Five, Six, Seven, and Eight charge the defendant with various crimes relating

4   to the alleged misuse of computers and theft of information from the CIA in the spring of 2016 and

5   subsequent disclosure of such information to the WikiLeaks organization.

6          Specifically, Count One charges the defendant with illegal gathering of national defense

7   information or "NDI."  Specifically, it charges that, on or about April 20, 2016, the defendant, without

8   authorization, copied backup files of certain electronic databases (what I will refer to as the "Backup

9   Files") housed on a classified computer system maintained by the CIA (namely "DEVLAN").

10         Count Two charges the defendant with illegal transmission of unlawfully possessed documents,

11  writings, or notes containing NDI.  Specifically, it charges that, between April and May 2016, the

12  defendant, without authorization, retained copies of the Backup Files and communicated them to a third

13  party not authorized to receive them, the organization WikiLeaks.

14         Count Five charges the defendant with unauthorized access to a computer to obtain classified

15  information.  Specifically, it charges that, between April 18 and April 20, 2016, the defendant accessed a

16  computer without authorization and exceeded his authorized access to obtain the Backup Files and

17  subsequently transmitted them to WikiLeaks without authorization.

18         Count Six charges the defendant with unauthorized access to a computer to obtain information

19  form a department or agency of the United States.  Specifically, it charges that, on or about April 20,

20  2016, the defendant, accessed a computer without authorization or in excess of his authorized access,

21  and copied the Backup Files.

1      Count Seven charges the defendant with causing transmission of a harmful computer command.

2    Specifically, it charges that, on or about April 20, 2016, the defendant transmitted commands on

3    DEVLAN to manipulate the state of the Confluence virtual server on DEVLAN.

4      Count Eight charges the defendant with causing transmission of a harmful computer command.

5    Specifically, it charges that, on or about April 20, 2016, the defendant transmitted commands on

6    DEVLAN to delete log files of activity on DEVLAN.

7      Counts Three and Four charge the defendant with crimes relating to the unlawful disclosure or

8    attempted disclosure of NDI while he was in the Metropolitan Correctional Center ("MCC"), the federal

9    jail.

10     Count Three charges that, in or about September 2018, the defendant had unauthorized

11   possession of documents, writings, or notes containing NDI related to the internal computer networks of

12   the CIA, and willfully transmitted them to a third party not authorized to receive them.

13     Count Four charges that, between July and September 2018, the defendant had unauthorized

14   possession of documents, writings, and notes containing NDI related to tradecraft techniques,

15   operations, and intelligence gathering tools used by the CIA, and attempted to transmit them to a third

16   party or parties not authorized to receive them.

17     Finally, Count Nine charges the defendant with obstruction of justice.  Specifically, it charges

18   that between March and June 2017, the defendant made certain false statements to agents of the FBI

19   during their investigation of the WikiLeaks leak.

20     I will explain each count in turn.  I remind you that you must consider each count separately and

21   return a separate verdict on each count.

22   **Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF) (S.D.N.Y. 2021); *United States v. Castillo*,**

23   **19 Cr. 784 (GHW) (S.D.N.Y. 2021); *United States v. Cheng Le*, 15 Cr. 38 (AJN) (S.D.N.Y. 2015);**

1    ***United States v. Balkany*, 10 Cr. 441 (DLC) (S.D.N.Y. 2010); Sand, *Model Federal Jury***

2    ***Instructions-Criminal*, Instrs. 39A.50, 44.01.**

3

4    Count One: Illegal Gathering of NDI — Elements

5           I will begin with Count One, which charges the defendant with illegal gathering of NDI.

6           In order to find the defendant guilty of Count One, the Government must prove the following

7    three elements beyond a reasonable doubt:

8           *First*, that on or about April 20, 2016, the defendant copied, took, made, or obtained a

9    sketch, photograph, photographic negative, blueprint, plan, map, model, instrument, appliance,

10   document, writing, or note;

11          *Second*, that the information in that material was connected to the national defense; and,

12          *Third*, that the defendant acted with the purpose of obtaining information respecting the national

13   defense and with the intent or with reason to believe that the information was to be used to the injury of

14   the United States, or used to the advantage of a foreign country.

15          Let me elaborate on each of these three elements.

16   **Adapted from *United States v. Schulte*, 17 Cr. 548 (PAC) (S.D.N.Y. 2020).**

17

18          Count One — First Element: Taking Information

19          The first element that the Government must prove beyond a reasonable doubt for purpose of

20   Count One is that the defendant copied, took, made, or obtained a sketch, photograph, photographic

21   negative, blueprint, map, model, instrument, appliance, document, writing, or note.  The Indictment

22   specifically charges that, on or about April 20, 2016, the defendant copied without authorization the

23   Backup Files housed on the classified DEVLAN computer system maintained by the CIA.

1    If you find that the Government has proved beyond a reasonable doubt that the defendant copied

2    the Backup Files, you next should consider the second element.

3    **Adapted from _United States v. Schulte_, 17 Cr. 548 (PAC) (S.D.N.Y. 2020); Modern Federal Jury**

4    **Instructions ¶ 29-10 (2019).**

5

6        Count One — Second Element: NDI

7    The second element that the Government must prove beyond a reasonable doubt for purpose of

8    Count One is that the material the defendant is accused of taking is national defense information or NDI,

9    which is to say that it is directly and reasonably connected with the national defense.

10    The term "national defense" is a broad term that refers to United States military establishments,

11    intelligence, and to all related activities of national preparedness.

12    To qualify as NDI, the Government must prove that the material is "closely held" by the United

13    States Government.  In determining whether material is closely held, you should consider whether the

14    material at issue was already in the public domain; information typically cannot qualify as NDI if it is

15    already in the public domain.  But where information is in the public domain, the fact that the

16    information comes from the United States Government or the fact that the United States Government

17    considers the information to be accurate or inaccurate may itself be NDI.

18    Thus, where information has been made public by the United States Government itself, it is not

19    closely held and cannot be NDI.  Similarly, where information has been made public by someone other

20    than the United States Government, and the United States Government confirms that the information

21    came the United States Government, it is not closely held and cannot be NDI.  But the United States

22    Government's assessment of the reliability or unreliability of publicly available information — as

23    opposed to the information itself — can itself be closely held information relating to the national

1    defense.  In such instances, it is the confirmation of the accuracy or inaccuracy of material in the public

2    domain, and not the public domain material itself, that can qualify as information relating to the national

3    defense.  The distinction between a confirmation of information relating to the national defense already

4    in the public domain that can be NDI and one that cannot depends on whether the confirmation itself

5    could potentially harm the national security.

6          All of that said, if information has been so widely circulated and is so generally believed to be

7    true or to have come from the United States Government that confirmation that it came from the United

8    States Government would add nothing to its weight, it is not closely held even if there has been no

9    official confirmation by the United States Government.

10         In determining whether material is "closely held," you may consider whether it has been

11   classified by appropriate authorities and whether it remained classified on the dates pertinent to the

12   indictment.  Although you may consider whether information has been classified in determining whether

13   it has been closely held, I caution you that the mere fact that information is classified does not mean that

14   the information qualifies as NDI.

15         Whether the information is connected with the national defense is a question of fact that you, the

16   jury, must determine, following the instructions that I have just given you about what those terms mean.

17   **Adapted from _United States v. Schulte_, 17 Cr. 548 (PAC) (S.D.N.Y. 2020); _United States v._**

18   **_Squillacote_, 221 F.3d 542, 578 (4th Cir. 2000) ("[A] document containing official government**

19   **information relating to the national  defense will not be considered available to the public (and**

20   **therefore no longer national defense information) until the official information in that document is**

21   **lawfully available."); _United States v. Rosen_, 445 F. Supp. 2d 602, 620-21 (E.D. Va. 2006); Modern**

22   **Federal Jury Instructions ¶ 29-11 (2019).**

1

2     <u>Count One — Third Element: Purpose, Knowledge and Intent</u>

3         The third element that the Government must prove beyond a reasonable doubt for purpose of

4 Count One is that the defendant acted for the purpose of obtaining information respecting the national

5 defense and with the intent or with reason to believe that the information was to be used to the injury of

6 the United States, or used to the advantage of a foreign country.  In considering whether or not the

7 defendant had the intent or reason to believe that the information would be used to the injury of the

8 United States or to provide an advantage to a foreign country, you may consider the nature of the

9 documents or information involved.  I emphasize that to convict the defendant of Count One you must

10 find that the defendant had the intent or reason to believe that the information *would* be used against the

11 United States, not just that it *could* be so used.  The Government does not have to prove that the intent

12 was both to injure the United States *and* to provide an advantage to a foreign country.  The statute reads

13 in the alternative.  Further, the country to whose advantage the information would be used need not

14 necessarily be an enemy of the United States.  The statute does not distinguish between friend and foe.

15         If you find beyond a reasonable doubt, therefore, that the defendant acted for the purpose of

16 obtaining information respecting the national defense and acted with the intent or with reason to believe

17 that the information would be used to injure the United States or to provide an advantage to a foreign

18 country, the third element of the offense is satisfied.

19 **Adapted from *United States v. Schulte*, 17 Cr. 548 (PAC) (S.D.N.Y. 2020); Modern Federal Jury**

20 **Instructions ¶ 29-12 (2019).**

21

1   <u>Counts Two and Three: Illegal Transmission of Unlawfully Possessed NDI — Elements</u>

2         Let me turn, then, to Counts Two and Three, each of which charges the defendant with illegal

3   transmission of certain unlawfully possessed NDI.  Although I will explain them together, I remind you

4   that you must consider them separately and return a separate verdict on each count.

5         In order to find the defendant guilty of Count Two or Count Three, the Government must prove

6   the following three elements beyond a reasonable doubt:

7         *First*, that, on or about the dates charged in the Indictment, the defendant had unauthorized

8   possession of, access to, or control over a document, writing, plan, instrument, or note;

9         *Second*, that the information in that material was connected to the national defense; and,

10        *Third*, that, on or about the dates in the Indictment, the defendant willfully communicated,

11  delivered, or transmitted (or caused to be communicated, delivered, or transmitted) the document,

12  writing, plan, instrument, or note to a person who was not entitled to receive it.

13        Again, let me elaborate on each of these three elements.

14  **Adapted from *United States v. Schulte*, 17 Cr. 548 (PAC) (S.D.N.Y. 2020); Modern Federal Jury**

15  **Instructions ¶ 29-21 (2019).  *See also* 18 U.S.C. § 793(e) (applying to disclosure of "any document,**

16  **writing, . . . or note relating to the national defense, or information relating to the national defense**

17  **which information the possessor has reason to believe could be used to the injury of the United**

18  **States" (emphasis added)); *New York Times Co. v. United States*, 403 U.S. 713, 740 n.9 (1971)**

19  **(White, J., concurring) ("'The phrase "which information the possessor has reason to believe**

20  **could be used to the injury of the United States or to the advantage of any foreign nation" would**

21  **modify only "information relating to the national defense" and not the other items enumerated in**

22  **the subsection.'" (quoting S. Rep. No. 2369, pt. 1, 81st Cong., 2d Sess., 8-9 (1950))); *United States v.***

1     ***Drake*, 818 F. Supp. 2d 909, 916–17 (D. Md. 2011) ("[O]nly the second 'information' clause**

2     **requires proof of the 'reason to believe' element.").**

3

4      Counts Two and Three — First Element: Possession

5       The first element that the Government must prove beyond a reasonable doubt for purpose of

6 Counts Two and Three is that, on or about the dates charged in the count at issue, the defendant had

7 unauthorized possession of, control over, or access to, the documents, writings, plans, instruments, or

8 notes in question.

9       In the case of Count Two, the Indictment charges that, between April and May 2016, the

10 defendant, without authorization, retained documents, writings, plans, instruments, and notes in the form

11 of copies of the Backup Files.

12       In the case of Count Three, the Indictment charges that, in or about September 2018, the

13 defendant, without authorization, possessed documents, writings, and notes pertaining to internal

14 computer networks of the CIA, including DEVLAN.  In particular, Count Three is based on the

15 following passage on page 3 of Government Exhibit 812 — and the following passage alone:

16        "In reality, two groups — EDG and COG and at least 400 people had access.  They don't
17        include COG who was connected to our DEVLAN through HICOC, an intermediary
18        network that connected both COG and EDG. . . . There is absolutely NO reason they
19        shouldn't have known this connection exists.  Step one is narrowing down the possible
20        suspects and to completely disregard an ENTIRE GROUP and HALF the suspects is
21        reckless.  All they needed to do was talk to ONE person on Infrastructure branch or
22        through ANY technical description / diagram of the network."

23       The word "possession" is a commonly used and commonly understood word.  Basically it means

24 the act of having or holding property or the detention of property in one's power or command.  It may

25 mean actual physical possession or constructive possession.  A person has "constructive" possession of

26 something if he knows where it is and can get it any time he wants, or otherwise can exercise control

27 over it.  A person has "unauthorized" possession of something if he is not entitled to have it.

1   **Adapted from *United States v. Schulte*, 17 Cr. 548 (PAC) (S.D.N.Y. 2020); Modern Federal Jury**

2   **Instructions ¶ 29-22 (2019).**

3

4        <u>Counts Two and Three — Second Element: NDI</u>

5        The second element that the Government must prove beyond a reasonable doubt for purpose of

6   Counts Two and Three is that the documents, writings, plans, instruments, or notes at issue are NDI,

7   which is to say that they are related to the national defense of the United States.  I have already

8   instructed you about this element in connection with Count One, and you should follow that instruction

9   with respect to Counts Two and Three as well.

10       In deciding whether this second element is satisfied with respect to Count Three, however, you

11   may consider only the passage quoted above from page 3 of Government Exhibit 812.

12   **Adapted from *United States v. Schulte*, 17 Cr. 548 (PAC) (S.D.N.Y. 2020).**

13

14        <u>Counts Two and Three — Third Element: Transmission</u>

15       The third element that the Government must prove beyond a reasonable doubt for purpose of

16   Counts Two and Three is that, on or about the dates charged in the count at issue, the defendant willfully

17   communicated, delivered, or transmitted (or caused to be communicated, delivered, or transmitted) the

18   document, writing, plan, instrument, or note to a person who was not entitled to receive it.  "Person" in

19   this context includes not only an individual, but also a company or entity.

20       In the case of Count Two, the Indictment charges that, between April and May 2016, the

21   defendant caused the Backup Files to be communicated, delivered, and transmitted to WikiLeaks.  In the

22   case of Count Three, the Indictment charges that, in or about September 2018, the defendant transmitted

1    the documents, writings, and notes at issue to a third party that the United States had not authorized to

2    receive that information.

3          An act is done "willfully" if it is done voluntarily and intentionally and with the specific intent to

4    do something the law forbids, that is to say, with a bad purpose either to disobey or disregard the law.  In

5    determining whether a defendant has acted willfully, however, it is not necessary for the Government to

6    establish that the defendant was aware of the specific law or rule that his conduct may be violating.

7          Additionally, the Government need not prove that the defendant actually delivered the

8    information himself — it is enough to prove that he caused the act to be done.

9          In deciding whether a person was entitled to receive information, you may consider all the

10    evidence introduced at trial, including any evidence concerning the classification status of the document

11    or testimony concerning limitations on access to the document.

12    **Adapted from *United States v. Schulte*, 17 Cr. 548 (PAC) (S.D.N.Y. 2020); Modern Federal Jury**

13    **Instructions ¶ 29-25 (2019); *see Bryan v. United States*, 524 U.S. 184, 195 (1998) ("As a general**

14    **matter, when used in the criminal context, a 'willful' act is one undertaken with a bad purpose.  In**

15    **other words, in order to establish a 'willful' violation of a statute, the Government must prove that**

16    **the defendant acted with knowledge that his conduct was unlawful." (cleaned up)).**

17

18    <u>Count Four: Attempted Illegal Transmission of Unlawfully Possessed NDI</u>

19          Let me turn, then, to Count Four, which charges the defendant with attempted illegal

20    transmission of unlawfully possessed NDI.  The Indictment charges that, between July and October

21    2018, the defendant, without authorization, possessed documents, writings, and notes regarding

22    tradecraft techniques, operations, and particular intelligence-gathering tools used by the CIA and that he

23    attempted to transmit such documents, writings, and notes to third parties whom the United States had

not authorized to receive that information.  In particular, Count Four is based on the following passages

in Government Exhibits 801 and 809 — and the following passages alone:

- Government Exhibit 801, page 3: "Which brings me to my next point — Do you know what my speciality was at the CIA?  Do you know what I did for fun?  Data hiding and crypto.  I designed and wrote software to conceal data in a custom-designed file system contained with the drive slackspace or hidden partitions.  I disguised data.  I split data across files and file systems to coneal the crypto—analysis tools could NEVER detect random or pseudo-random data indicative ot potential crypto.  I designed and wrote my own crypto—how better to foll bafoons like forensic examiners ad the FBI than to have custom software that doesn't fit into their 2-week class where they become forensic 'experts.'"

- Government Exhibit 809, page 8: "[tool from vendor report] — Bartender for [redacted] [vendor]."

- Government Exhibit 809, page 10: "Additionally, [Tool described in vendor report] is in fact Bartender.  A CIA toolset for [operators] to configure for [redacted] deployment."

- Government Exhibit 809, page 11: "[@vendor] discussed [tool] in 2016, which is really the CIA's Bartender tool suite.  Bartender was written to [redacted] deploy against various targets.  The source code is available in the Vault 7 release."

For Count Four, you should follow the instructions I previously gave you with respect to Counts

Two and Three.  To be clear, in deciding whether whether the second element, concerning national

defense information or NDI, is satisfied, you may consider only the foregoing passages.

Count Four differs from Counts Two and Three, however, in one important way: For purposes of

Count Four, you may find the defendant guilty if you find that the Government has proved beyond a

reasonable doubt that the defendant *attempted* to illegally transmit NDI.

To prove the charge of *attempted* illegal transmission of NDI, the Government must prove each

of the following two elements beyond a reasonable doubt:

*First*, the defendant intended to commit the crime of illegally transmitting NDI; and

*Second*, the defendant did some act that was a substantial step in an effort to bring about or

accomplish the crime.

1       Mere intention to commit a specific crime does not amount to an attempted crime.  In order to

2   convict the defendant of an attempt to illegally transmit NDI, you must find beyond a reasonable doubt

3   that he intended to commit the crime charged, and that he took some action which was a substantial step

4   toward the commission of that crime.

5       In determining whether the defendant's actions amounted to a substantial step toward the

6   commission of the crime, it is necessary to distinguish between mere preparation on the one hand, and

7   the actual doing of the criminal deed on the other.  Mere preparation, which may consist of planning the

8   offense, or of devising, obtaining or arranging a means for its commission, is not an attempt, although

9   some preparations may amount to an attempt.  The acts of a person who intends to commit a crime will

10  constitute an attempt when the acts themselves clearly indicate an intent to commit the crime, and the

11  acts are a substantial step in a course of conduct planned to culminate in the commission of the crime.

12  **Adapted from *United States v. Schulte*, 17 Cr. 548 (PAC) (S.D.N.Y. 2020); Modern Federal Jury**

13  **Instructions ¶ 29-25 (2019).**

14

15  Count Five: Unauthorized Access to a Computer to Obtain Classified Information — Elements

16      Let me turn, then, to Count Five, which charges the defendant with unauthorized access to a

17  computer to obtain classified information.

18      In order to find the defendant guilty of Count Five, the Government must prove the following

19  four elements beyond a reasonable doubt:

20      *First*, that, between April 18 and April 20, 2016, the defendant either accessed a computer

21  without authorization or accessed a computer with authorization, but exceeded his authority in accessing

22  the information in question;

23      *Second*, that the defendant knowingly accessed that computer;

1       *Third*, that the defendant obtained information protected against unauthorized disclosure for

2    reasons of national defense or foreign relations and that the defendant had reason to believe that the

3    information could be used to the injury of the United States or to the advantage of a foreign nation; and

4       *Fourth*, that the defendant willfully communicated, delivered, transmitted, *or* caused to be

5    communicated, delivered, or transmitted *or* attempted to communicate, deliver or transmit or cause to be

6    communicated, delivered or transmitted, the information to a person who was not entitled to receive it.

7       Now let me elaborate on each of these four elements.

8    **Adapted from *United States v. Schulte*, 17 Cr. 548 (PAC) (S.D.N.Y. 2020).**
9

10       Count Five — First Element: Unauthorized Access

11       The first element that the Government must prove beyond a reasonable doubt for purpose of

12    Count Five is that the defendant either (1) accessed a computer without authorization or (2) accessed a

13    computer with authorization, but exceeded his authority in accessing the information in question.  The

14    Indictment charges that, between April 18 and April 20, 2016, the defendant accessed a computer

15    without authorization or exceeded his authorized access on a computer to obtain the Backup Files.

16       In this case, the Indictment charges both that the defendant did not have authorized access to the

17    computer at issue and that the defendant, while authorized to access the computer, exceeded his

18    authority in accessing the information in question.  You need not find both to be true in order to find this

19    element satisfied beyond a reasonable doubt.

20       To prove that the defendant exceeded his authority, the Government must prove beyond a

21    reasonable doubt that the defendant had access to the computer and used that access to obtain or alter

22    information in the computer that the defendant was not entitled to obtain or alter.  Note that an

23    individual does not exceed authorized access when he accesses a computer to obtain information he is

24    authorized to access — even if he does so for an improper purpose.

1    **Adapted from _United States v. Schulte_, 17 Cr. 548 (PAC) (S.D.N.Y. 2020); Modern Federal Jury**

2    **Instructions ¶ 40A-4 (2019).**

3

4        Count Five — Second Element: Knowledge

5        The second element that the Government must prove beyond a reasonable doubt for purpose of

6    Count Five is that the defendant acted knowingly in accessing the computer without authorization _or_

7    outside the scope of his authority.

8        "Knowingly" means to act voluntarily and deliberately, rather than mistakenly or inadvertently.

9    The question of whether a person acted knowingly is a question of fact for you to determine, like any

10   other fact question.  The question involves one's state of mind.

11       Direct proof of knowledge is almost never available.  It would be a rare case when it could be

12   shown that a person wrote or stated that as of a given time in the past he committed an act with

13   knowledge.  Such proof is not required.  The ultimate fact of knowledge, though subjective, may be

14   established by circumstantial evidence, based upon a person's outward manifestations, his words, his

15   conduct, his acts and all the surrounding circumstances disclosed by the evidence and the rational or

16   logical inferences that may be drawn from them.

17       The Government can also meet its burden of showing that a defendant had actual knowledge of

18   the accessing of a computer without authorization if it establishes beyond a reasonable doubt that he

19   acted with deliberate disregard of whether he was so authorized, or with a conscious purpose to avoid

20   learning the nature and scope of his authorization.  Alternatively, the Government may satisfy its burden

21   of proving knowledge by establishing beyond a reasonable doubt that the defendant acted with an

22   awareness of the high probability that he was acting without authorization, unless the defendant actually

23   believed that he had authorization to access a computer in the manner described in the Indictment.  This

1    guilty knowledge, however, cannot be established by demonstrating that the defendant was merely

2    negligent or foolish.

3    **Adapted from *United States v. Schulte*, 17 Cr. 548 (PAC) (S.D.N.Y. 2020); Modern Federal Jury**

4    **Instructions ¶ 40A-5 (2019).**

5

6    <u>Count Five — Third Element: Protected Information</u>

7    The third element that the Government must prove beyond a reasonable doubt for purpose of

8    Count Five is that the defendant obtained information protected against unauthorized disclosure for

9    reasons of national defense or foreign relations with the intent to use such information against the

10    interests of the United States or to the advantage of a foreign nation.

11    The United States may determine that information requires protection against unauthorized

12    disclosure for reasons of national defense or foreign relations either by Executive Order or by statute.

13    This element requires the Government to prove that, at the time the defendant obtained the

14    protected information, he had reason to believe that the information could be used against the interests

15    of the United States or to the advantage of a foreign nation.

16    **Adapted from *United States v. Schulte*, 17 Cr. 548 (PAC) (S.D.N.Y. 2020); Modern Federal Jury**

17    **Instructions ¶ 40A-6 (2019).**

18

19    <u>Count Five — Fourth Element: Willful Communication</u>

20    The fourth element that the Government must prove beyond a reasonable doubt for purpose of

21    Count Five is that the defendant willfully communicated, delivered, transmitted, or caused to be

22    communicated, delivered, or transmitted or attempted to communicate, deliver or transmit the protected

1    information obtained to a person who was not entitled to receive it.  I have already explained what

2    "willfully" means and you should apply those instructions here as well.

3    **Adapted from *United States v. Schulte*, 17 Cr. 548 (PAC) (S.D.N.Y. 2020); Modern Federal Jury**

4    **Instructions ¶ 40A-7 (2019).**

5

6    Count Six: Unauthorized Access of a Computer to Obtain Information from a Department or Agency of

7    the United States — Elements

8         Count Six charges the defendant with unauthorized access to a computer to obtain information

9    from a department or agency of the United States.

10        In order to find the defendant guilty of Count Six, the Government must prove the following

11   three elements beyond a reasonable doubt:

12        *First*, that, on or about April 20, 2016, the defendant either accessed a computer without

13   authorization or accessed a computer with authorization, but exceeded his authority in accessing the

14   information in question;

15        *Second*, that the defendant acted intentionally; and

16        *Third*, that the defendant obtained information from a department or agency of the United States.

17        Once again, I will elaborate on each of these three elements.

18   **Adapted from *United States v. Schulte*, 17 Cr. 548 (PAC) (S.D.N.Y. 2020); Modern Federal Jury**

19   **Instructions ¶ 40A-10 (2019).**

20

21        Count Six — First Element: Unauthorized Access

22        The first element that the Government must prove beyond a reasonable doubt for purpose of

23   Count Six is that the defendant either (1) accessed a computer without authorization or (2) accessed a

1    computer with authorization, but exceeded his authority in accessing the information in question.  The

2    Indictment charges that, on or about April 20, 2016, the defendant accessed a computer without

3    authorization and exceeded his authorized access on a computer to copy the Backup Files.

4            I have already instructed you about this element in connection with Count Five, and you should

5    follow that instruction with respect to Count Six as well.

6    **Adapted from *United States v. Schulte*, 17 Cr. 548 (PAC) (S.D.N.Y. 2020); Modern Federal Jury**

7    **Instructions ¶ 40A-11 (2019).**

8

9            <u>Count Six — Second Element: Intentional Conduct</u>

10          The second element that the Government must prove beyond a reasonable doubt for purpose of

11    Count Six is that the defendant acted intentionally in accessing the computer without authorization *or*

12    outside the scope of his authority.

13          "Intentionally" means to act deliberately and purposefully.  That is, the defendant's acts must

14    have been the product of the defendant's conscious objective rather than the product of a mistake or

15    accident.

16          The question of whether a person acted intentionally is a question of fact for you to determine,

17    like any other fact question.  The question involves one's state of mind.  Direct proof of intent is almost

18    never available.  It would be a rare case when it could be shown that a person wrote or stated that as of a

19    given time in the past he committed an act intentionally.  Such proof is not required.  The ultimate fact

20    of intent, though subjective, may be established by circumstantial evidence, based upon a person's

21    outward manifestations, his words, his conduct, his acts and all the surrounding circumstances disclosed

22    by the evidence and the rational or logical inferences that may be drawn from them.

1    **Adapted from _United States v. Schulte_, 17 Cr. 548 (PAC) (S.D.N.Y. 2020); Modern Federal Jury**

2    **Instructions ¶ 40A-5 (2019).**

3

4    Count Six — Third Element: U.S. Government Information

5    The third element that the Government must prove beyond a reasonable doubt for purpose of

6    Count Six is that the defendant obtained the information from any department or agency of the United

7    States.  The CIA is a department or agency of the United States.  But it is for you to determine if the

8    Government has proved beyond a reasonable doubt that, without authorization, the defendant obtained

9    information contained in a computer of the CIA.

10   **Adapted from _United States v. Schulte_, 17 Cr. 548 (PAC) (S.D.N.Y. 2020); Modern Federal Jury**

11   **Instructions ¶ 40A-14 (2019).**

12

13   Counts Seven and Eight: Causing Transmission of a Harmful Computer Program, Information, Code, or

14   Command — Elements

15   Let me turn, then, to Counts Seven and Eight, each of which charges the defendant with causing

16   the transmission of a harmful computer program, information, code or command.  Once again, although

17   I will explain these two counts together, I remind you that you must consider them separately and return

18   a separate verdict on each count.

19   In order to find the defendant guilty of Count Seven or Count Eight, the Government must prove

20   the following four elements beyond a reasonable doubt:

21   _First_, that, on or about April 20, 2016, the defendant knowingly caused the unauthorized

22   transmission of a program, information, code, or command to a protected computer;

1    *Second*, that the defendant caused the transmission of the program, information, code, or

2    command with the intent to damage or deny services to a computer or computer system;

3          *Third*, that the defendant thereby caused damage; and

4          *Fourth*, that the defendant's actions resulted in damage to a computer system used by or for an

5    entity of the United States Government in furtherance of the administration of justice, national defense,

6    or national security.

7          Now let me elaborate on each of these four elements.

8    **Adapted from *United States v. Schulte*, 17 Cr. 548 (PAC) (S.D.N.Y. 2020); Modern Federal Jury**

9    **Instructions ¶ 40A-31 (2019).**

10

11          <u>Counts Seven and Eight — First Element: Unauthorized Transmission of a Computer Program</u>

12          The first element that the Government must prove beyond a reasonable doubt for purpose of

13    Counts Seven and Eight is that the defendant knowingly caused the unauthorized transmission of a

14    program, information, code, or command to a protected computer.

15          In the case of Count Seven, the Indictment charges that the defendant transmitted commands on

16    DEVLAN to manipulate the state of the Confluence virtual server on DEVLAN, including by

17    (1) reverting the virtual server to a "snapshot," or past version of the system as it appeared on April 16,

18    2012; (2) restoring the system to a snapshot the defendant created on April 20, 2016; and (3)

19    subsequently deleting that snapshot, thus erasing the records of his activities on the system.

20          In the case of Count Eight, the Indictment charges that the defendant transmitted commands on

21    DEVLAN to delete log files of activity on DEVLAN.

22          This element requires that the Government prove that the defendant's transmission of the

23    computer program, information, code, or command was unauthorized.  Under the statute, this means that

1  the transmission occurred without the permission of the person or entity who owns or is responsible for

2  the computer receiving the transmitted program, information, code, or command.

3        This element also requires that the Government prove that the defendant transmitted the

4  program, information, code, or command to a "protected computer."  As relevant to this case, this means

5  that the Government must prove that the computer was exclusively for the use of the United States

6  Government.

7        Finally, this element requires that the Government prove that the defendant transmitted the

8  program, information, code, or command knowingly.  I previously instructed you about the meaning of

9  "knowingly" and you should apply those instructions here as well.

10  **Adapted from _United States v. Schulte_, 17 Cr. 548 (PAC) (S.D.N.Y. 2020); Modern Federal Jury**

11  **Instructions ¶ 40A-32 (2019).**

12

13        Counts Seven and Eight — Second Element: Intent to Cause Damage or Deny Service

14        The second element that the Government must prove beyond a reasonable doubt for purpose of

15  Counts Seven and Eight is that the defendant caused the transmission of the program, information, code,

16  or command at issue with the intent to cause damage, as I will define that term for you.

17        To act with "intent" means to act intentionally — that is, deliberately and purposefully.  In other

18  words, the defendant's acts must have been the product of the defendant's conscious objective, rather

19  than the product of a mistake or accident.

20  **Adapted from _United States v. Schulte_, 17 Cr. 548 (PAC) (S.D.N.Y. 2020); Modern Federal Jury**

21  **Instructions ¶ 40A-33 (2019).**

22

23        Counts Seven and Eight — Third Element: Causing Damage

1    The third element that the Government must prove beyond a reasonable doubt for purpose of

2 Counts Seven and Eight is that by transmitting the program, information, code, or command at issue, the

3 defendant caused damage. "Damage" means any impairment to the integrity or availability of data, a

4 program, a system, or information.

5 **Adapted from _United States v. Schulte_, 17 Cr. 548 (PAC) (S.D.N.Y. 2020); Modern Federal Jury**

6 **Instructions ¶ 40A-34 (2019).**

7

8    Counts Seven and Eight — Fourth Element: Harmful Consequences

9    The fourth element that the Government must prove beyond a reasonable doubt for purpose of

10 Counts Seven and Eight is that the defendant's actions disrupted a computer system used by or for any

11 government agency in furtherance of the administration of justice, national defense or national security.

12 **Adapted from _United States v. Schulte_, 17 Cr. 548 (PAC) (S.D.N.Y. 2020); Modern Federal Jury**

13 **Instructions ¶ 40A-35 (2019).**

14

15 Count Nine: Obstruction of Justice — Elements

16    Finally, Count Nine charges the defendant with obstruction of justice.

17    In order to find the defendant guilty of Count Nine, the Government must prove the following

18 three elements beyond a reasonable doubt:

19    _First_, that, between March and June of 2017, there was a proceeding pending before a federal

20 court or grand jury;

21    _Second_, that the defendant knew of the proceeding; and

22    _Third_, that the defendant corruptly acted to obstruct or impede, or endeavored to obstruct or

23 impede the proceeding.

1      Let me elaborate on each of these three elements.

2   **Adapted from *United States v. Schulte*, 17 Cr. 548 (PAC) (S.D.N.Y. 2020); *United States v.***

3   ***Kaufman*, 13 Cr. 411 (JMF) (S.D.N.Y. 2013); Modern Federal Jury Instructions ¶ 46-3 (2019).**

4

5      Count Nine — First Element: Official Proceeding

6      The first element that the Government must prove beyond a reasonable doubt for purpose of

7   Count Nine is that, between March and June of 2017, there was a proceeding pending before a federal

8   grand jury or a federal court.  A grand jury proceeding commences, at a minimum, when a grand jury

9   subpoena is issued in connection with a grand jury investigation.  The grand jurors need not have heard

10  testimony or taken a role in the decision to issue a subpoena.

11  **Adapted from *United States v. Schulte*, 17 Cr. 548 (PAC) (S.D.N.Y. 2020); Modern Federal Jury**

12  **Instructions ¶ 46-4 (2019); *United States v. Kaufman*, 13 Cr. 411 (JMF) (S.D.N.Y. 2013); *see also***

13  ***United States v. Simmons*, 591 F.2d 206, 210 (3d Cir. 1979) ("[A]n investigation by a law**

14  **enforcement agency ripens into a pending grand jury investigation for purposes of § 1503 when**

15  **officials of such agency apply for, and cause to be issued, subpoenas to testify before a sitting**

16  **grand jury.").**

17

18      Count Nine — Second Element: Knowledge

19      The second element that the Government must prove beyond a reasonable doubt for purpose of

20  Count Nine is that the defendant knew that such a proceeding was in progress when he corruptly acted to

21  obstruct or impede the proceeding (as I will explain those terms to you in a moment).

22      I previously instructed you about the defendant's knowledge in connection with Count Five, and

23  you should follow those instruction with respect to Count Nine as well.

41

1   **Adapted from** *United States v. Schulte*, **17 Cr. 548 (PAC) (S.D.N.Y. 2020);** *United States v.*

2   *Kaufman*, **13 Cr. 411 (JMF) (S.D.N.Y. 2013); Modern Federal Jury Instructions ¶ 46-5 (2019).**

3

4   <u>Count Nine — Third Element: Corruptly Acted to Obstruct or Impede</u>

5   The third element that the Government must prove beyond a reasonable doubt for purpose of

6   Count Nine is that the defendant did corruptly obstruct or impede, or corruptly endeavor to obstruct or

7   impede the proceeding at issue.

8   The word "corruptly" means simply having the improper intent or purpose of obstructing justice.

9   To establish that the defendant acted with corrupt intent, the Government also must prove that there

10   existed a "nexus" or connection between the defendant's conduct and the grand jury proceeding.  That

11   is, the Government must prove some relationship in time, causation, or logic between the defendant's

12   action and the grand jury proceeding, so that the defendant's conduct may be said to have the natural

13   and probable effect of interfering with that proceeding.

14   The term "endeavor" is designed to reach all conduct that is aimed at influencing, intimidating,

15   or impeding the conduct of the proceeding.  Success of the endeavor is not an element of the crime.

16   Thus, it is sufficient to satisfy this element if you find that the defendant knowingly acted in a way that

17   obstructed or had the natural and probable effect of obstructing justice from being duly administered.

18   Here, the Indictment alleges that the defendant corruptly obstructed or impeded, or corruptly

19   endeavored to obstruct or impede, a grand jury proceeding by making certain statements to the FBI.  In

20   particular, the Indictment charges that the defendant made the following false or misleading statements

21   to special agents of the FBI:

22       1.  He denied having any involvement in unlawfully disclosing the Backup Files;

2.  He stated that he had not kept a copy of an email he sent to the Office of Inspector General containing false allegations of security issues at the CIA;

3.  He denied having any classified materials in his apartment;

4.  He denied ever taking information from the CIA and transferring it to an unclassified network;

5.  He denied ever making DEVLAN vulnerable to the theft of data;

6.  He denied housing information from the CIA on his home computer; and

7.  He denied ever removing any classified information from the CIA and taking it home.

The Government need not prove that the statements to the FBI were actually false or misleading if it otherwise proves beyond a reasonable doubt that the defendant gave answers in a corrupt endeavor to influence, obstruct, or impede the grand jury investigation by giving such statements to the FBI.

That said, false or misleading statements alone do not provide a basis for an obstruction of justice conviction unless the statements had the natural and probable effect of impeding the due administration of justice.  Thus, where the allegation is that the defendant endeavored to influence, obstruct, or impede the grand jury's investigation by making false or misleading statements to the FBI, the Government must prove beyond a reasonable doubt that the defendant knowingly gave false or misleading answers in his statements to the FBI *and* that he knew that those false statements were likely to obstruct the grand jury proceeding.  It is not enough for the Government to prove that the defendant had the impression that statements he made to the FBI would be conveyed to the grand jury; the Government must prove beyond a reasonable doubt that the defendant knew that his conduct was likely to obstruct the proceeding — for instance, by proving that the defendant knew that it was likely that his allegedly false or misleading statements made to the FBI would be conveyed to the grand jury.

1    I remind you that, to find the defendant guilty on Count Nine, the Government must prove

2    beyond a reasonable doubt that the defendant knew that a grand jury proceeding was in progress when

3    he corruptly acted to obstruct or impede the proceeding.  Unless and until the defendant knew there was

4    a grand jury proceeding in progress, he could not, by definition, have acted corruptly to obstruct or

5    impede, or corruptly endeavored to obstruct or impede, the proceeding.  For that reason, I instruct you

6    that you may not find this element of Count Nine satisfied based on the defendant's conduct, including

7    any statement he may have made, *before* he was served with a grand jury subpoena.

8    Finally, you need not find that a corrupt intent was the only purpose for the defendant's actions,

9    so long as you find that he acted, at least in part, with that improper purpose.  You may consider all the

10   evidence and surrounding circumstances in determining whether the defendant acted corruptly.

11   **Adapted from *United States v. Schulte*, 17 Cr. 548 (PAC) (S.D.N.Y. 2020); *United States v.***

12   ***Kaufman*, 13 Cr. 411 (JMF) (S.D.N.Y. 2013); Modern Federal Jury Instructions ¶ 46-6 (2019); *see***

13   ***also United States v. Aguilar*, 515 U.S. 593, 599 (1995) ("[I]f the defendant lacks knowledge that his**

14   **actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct.");**

15   ***United States v. Triumph Cap. Grp., Inc.*, 544 F.3d 149, 167 (2d Cir. 2008) ("[T]he inquiry is**

16   **whether the defendant knew his statements were *likely* to be presented to the grand jury.").**

17

18   Venue

19   In addition to all the elements of each of the charges that I have just described for you, for three

20   of the counts — specifically, Counts Three, Four, and Nine — you must also decide whether any act in

21   furtherance of the crime charged occurred within the Southern District of New York.  (You do not need

22   to consider this issue, which is called venue for purposes of Counts One, Two, Five, Six, Seven, or

44

1   Eight.  The Government and the defendant have agreed to venue here on those counts, even though the

2   conduct involved occurred in Virginia.)

3          The Southern District of New York includes, among other places, Manhattan.  The Government

4   need not prove that the crimes charged in Counts Three, Four and Nine were committed in this District

5   or that the defendant himself was present here.  It is sufficient to satisfy this element if any act in

6   furtherance of the crimes charged in the count you are considering occurred in the Southern District of

7   New York.

8          I should note that on this issue — and this issue alone — the Government need not prove venue

9   beyond a reasonable doubt, but only by a mere preponderance of the evidence.  Thus, the Government

10  has satisfied its venue obligations if you conclude that it is more likely than not that any act in

11  furtherance of the crime charged in the count you are considering occurred in the Southern District and

12  that it was reasonably foreseeable to the defendant that the act would take place in the Southern District

13  of New York.  If you find that the Government has failed to prove this venue requirement with respect to

14  any of Counts Three, Four, and Nine, then you must acquit the defendant on that Count.

15  **Adapted from _United States v. Schulte_, 17 Cr. 548 (PAC) (S.D.N.Y. 2020).**

16

17  <u>Motive</u>

18         Proof of motive is not a necessary element of the crimes with which the defendant is charged.

19  Proof of motive does not establish guilt.  Nor does the lack of proof of motive establish that a defendant

20  is not guilty.  If the Government has proved the defendant's guilt beyond a reasonable doubt, it is

21  immaterial what the motive for the crime or crimes may be, or whether any motive has been shown at

22  all.  The presence or absence of motive is, however, a circumstance that you may consider as bearing on

23  the defendant's intent.

45

1    **Adapted from *United States v. Kaufman*, 13 Cr. 411 (JMF) (S.D.N.Y. 2013); Sand, *Modern Federal***

2    ***Jury Instructions-Criminal*, Instr. 6-18.**

3

4    Variance in Dates

5           It does not matter if the evidence you heard at trial indicates that a particular act occurred on a

6    different date.  The law requires only a substantial similarity between the dates alleged in the Indictment

7    and the dates established by the evidence.

8    **Adapted from Sand, *Modern Federal Jury Instructions-Criminal*, Instr. 3-12 and 3-13; *United***

9    ***States v. Ansah*, 19 Cr. 752 (JMF) (S.D.N.Y. 2021).**

10

11   

**III. CONCLUDING INSTRUCTIONS**

12   COVID-19 Protocols

13          In a few minutes, you are going to go into the jury room and begin your deliberations.  During

14   your deliberations, please continue to adhere to the safety protocols that we have used throughout the

15   trial, including social distancing and masking.  We have taken those precautions, on the advice of our

16   medical experts, to ensure that everyone remains safe and healthy during trials.  In addition, people have

17   different levels of anxiety and risk tolerance when it comes to COVID-19.  By adhering to the protocols,

18   you not only ensure that everyone remains safe and healthy, but also respect the fact that your fellow

19   jurors may or may not have the same level of comfort with the current situation that you have.

20

21   Selection of the Foreperson

22          After you retire to begin your deliberations, your first task will be to select a foreperson.  The

23   foreperson has no greater voice or authority than any other juror but is the person who will communicate

1    with me when questions arise and when you have reached a verdict and who will be asked in open court

2    to pass your completed Verdict Form to me.  Notes should be signed by the foreperson and should

3    include the date and time they were sent.  They should also be as clear and precise as possible.  Any

4    notes from the jury will become part of the record in this case.  So please be as clear and specific as you

5    can be in any notes that you send.  Do not tell me or anyone else how the jury stands on any issue until

6    after a unanimous verdict is reached.

7

8    <u>Right to See Exhibits and Hear Testimony</u>

9         All of the exhibits will be given to you near the start of deliberations.  The bulk of the

10   documentary evidence will be provided to you in electronic form, in files which can be pulled up on a

11   screen in the jury room.  Government Exhibits 1 and 1203-28 will be provided on separate laptops, and

12   cannot be pulled up on the screen in the jury room.  In addition, you will also be provided with a list of

13   all the exhibits that were received into evidence.  When you retire to deliberate, my staff with provide

14   you with information on how to access this evidence in the jury room.

15        If you prefer to view any evidence here in the courtroom or if you want any of the testimony

16   submitted to you or read back to you, you may also request that.  Keep in mind that if you ask for

17   testimony, however, the court reporter must search through her notes, the parties must agree on what

18   portions of testimony may be called for, and if they disagree, I must resolve those disagreements.  That

19   can be a time-consuming process.  So please try to be as specific as you possibly can in requesting

20   portions of the testimony, if you do.

21        Again, your requests for testimony — in fact, any communication with the Court — should be

22   made to me in writing, signed by your foreperson with the date and time, and given to one of the Court

23   Security Officers.

1

2   <u>Juror Note-Taking</u>

3       If any one of you took notes during the course of the trial, you should not show your notes to, or

4   discuss your notes with, any other jurors during your deliberations.  Any notes you have taken are to be

5   used solely to assist you.  The fact that a particular juror has taken notes entitles that juror's views to no

6   greater weight than those of any other juror.  Finally, your notes are not to substitute for your

7   recollection of the evidence in the case.  If, during your deliberations, you have any doubt as to any of

8   the testimony, you may — as I just told you — request that the official trial transcript that has been

9   made of these proceedings be submitted or read back to you.

10

11  <u>Bias or Sympathy as Juror</u>

12      All of us, no matter how hard we try, tend to look at others and weigh what they have to say

13  through the lens of our own experience and background.  We each have a tendency to stereotype others

14  and make assumptions about them.  Often, we see life and evaluate evidence through a clouded filter

15  that tends to favor those like ourselves.  You must do the best you can to put aside such stereotypes, for

16  all litigants and witnesses are entitled to a level playing field.

17      Indeed, under your oath as jurors, you are not to be swayed by bias or sympathy.  You are to be

18  guided solely by the evidence in this case, and as you sift through the evidence, the crucial question that

19  you must ask yourselves for each count is:  Has the Government proved each element beyond a

20  reasonable doubt?

21      It is for you and you alone to decide whether the Government has proved that the defendant is

22  guilty of the crimes charged, solely on the basis of the evidence and subject to the law as I have

23  instructed you.

1    It must be clear to you that once you let prejudice, bias, or sympathy interfere with your thinking,

2    there is a risk that you will not arrive at a true and just verdict.

3    If you have a reasonable doubt as to the defendant's guilt with respect to a particular count, then

4    you must render a verdict of not guilty on that particular count.  On the other hand, if you should find

5    that the Government has met its burden of proving the guilt of the defendant beyond a reasonable doubt

6    with respect to a particular count, then you should not hesitate because of sympathy or any other reason

7    to render a verdict of guilty on that count.

8    I also caution you that, under your oath as jurors, you cannot allow to enter into your

9    deliberations any consideration of the punishment that may be imposed upon the defendant if he is

10   convicted.  The duty of imposing a sentence in the event of conviction rests exclusively with the Court,

11   and the issue of punishment may not affect your deliberations as to whether the Government has proved

12   the defendant's guilt beyond a reasonable doubt.

13

14   Duty to Deliberate

15   The most important part of this case, members of the jury, is the part that you as jurors are now

16   about to play as you deliberate on the issues of fact.  I know you will try the issues that have been

17   presented to you according to the oath that you have taken as jurors.  In that oath you promised that you

18   would well and truly try the issues joined in this case and a true verdict render.

19   As you deliberate, please listen to the opinions of your fellow jurors, and ask for an opportunity

20   to express your own views.  Every juror should be heard.  No one juror should hold the center stage in

21   the jury room and no one juror should control or monopolize the deliberations.  If, after listening to your

22   fellow jurors and if, after stating your own view, you become convinced that your view is wrong, do not

23   hesitate because of stubbornness or pride to change your view.  On the other hand, do not surrender your

1   honest convictions and beliefs solely because of the opinions of your fellow jurors or because you are

2   outnumbered.

3       Your verdict must be unanimous.  If at any time you are not in agreement, you are instructed that

4   you are not to reveal the standing of the jurors, that is, the split of the vote, to anyone, including me, at

5   any time during your deliberations.

6

7   <u>Return of the Verdict</u>

8       We have prepared a Verdict Form for you to use in recording your decisions, a copy of which is

9   attached to these instructions.  Do not write on your individual copies of the Verdict Form.  My staff

10  will give the official Verdict Form to Juror Number One, who should give it to the foreperson after the

11  foreperson has been selected.

12      You should draw no inference from the questions on the Verdict Form as to what your verdict

13  should be.  The questions are not to be taken as any indication that I have any opinion as to how they

14  should be answered.

15      After you have reached a verdict, the foreperson should fill in the Verdict Form and note the date

16  and time, and you should all sign the Verdict Form.  The foreperson should then give a note — **<u>not</u>** the

17  Verdict Form itself — to the Court Security Officer outside your door stating that you have reached a

18  verdict.  Do not specify what the verdict is in your note.  Instead, the foreperson should retain the

19  Verdict Form and hand it to me in open court when I ask for it.

20      I will stress again that each of you must be in agreement with the verdict that is announced in

21  court.  Once your verdict is announced in open court and officially recorded, it cannot ordinarily be

22  revoked.

1

2    Closing Comments

3          Finally, I say this, not because I think it is necessary, but because it is the custom in this

4    courthouse to say it: You should treat each other with courtesy and respect during your deliberations.

5          All litigants stand equal in this room.  All litigants stand equal before the bar of justice.  All

6    litigants stand equal before you.  Your duty is to decide between these parties fairly and impartially, and

7    to see that justice is done.

8          Under your oath as jurors, you are not to be swayed by sympathy or prejudice.  You should be

9    guided solely by the evidence presented during the trial and the law as I gave it to you, without regard to

10   the consequences of your decision.  You have been chosen to try the issues of fact and reach a verdict on

11   the basis of the evidence or lack of evidence.  If you let sympathy or prejudice interfere with your clear

12   thinking, there is a risk that you will not arrive at a just verdict.  You must make a fair and impartial

13   decision so that you will arrive at the just verdict.

14         Members of the jury, I ask your patience for a few moments longer.  It is necessary for me to

15   spend a few moments with the parties and the court reporter at the side bar.  I will ask you to remain

16   patiently in the jury box, without speaking to each other, and we will return in just a moment to submit

17   the case to you.  Thank you.

51

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                     :

UNITED STATES OF AMERICA,           :

                                            :          17 Cr. 548 (JMF)

    -v-                                  :

                                            :

JOSHUA ADAM SCHULTE,           :          <u>VERDICT FORM</u>

                                          :

                    Defendant.        :

                                            :
------------------------------------------------------------------X

***All Answers Must Be Unanimous***

**<u>Count One</u>: Illegal Gathering of NDI (2016)**

    Not Guilty _____          Guilty _____

**<u>Count Two</u>: Illegal Transmission of Unlawfully Possessed NDI (2016)**

    Not Guilty _____          Guilty _____

**<u>Count Three</u>: Illegal Transmission of Unlawfully Possessed NDI (2018)**

    Not Guilty _____          Guilty _____

**<u>Count Four</u>: Attempted Illegal Transmission of Unlawfully Possessed NDI (2018)**

    Not Guilty _____          Guilty _____

**<u>Count Five</u>: Unauthorized Access to a Computer to Obtain Classified Information (2016)**

    Not Guilty _____          Guilty _____

**<u>Count Six</u>: Unauthorized Access to a Computer to Obtain Information from a Department or Agency of the United States (2016)**

    Not Guilty _____          Guilty _____

**<u>Count Seven</u>: Causing Transmission of a Harmful Computer Program, Information, Code, or Command (Manipulation of the State of the Confluence Virtual Server) (2016)**

    Not Guilty _____          Guilty _____

**<u>Count Eight</u>: Causing Transmission of a Harmful Computer Program, Information, Code, or Command (Deletion of Log Files) (2016)**

Not Guilty _____          Guilty _____

**Count Nine: Obstruction of Justice (2017)**

Not Guilty _____          Guilty _____


*After completing the Verdict Form, please sign your names in the spaces provided below, fill in the date and time, and inform the Court Security Officer that you have reached a verdict.*


_____          _____
Foreperson


_____          _____


_____          _____


_____          _____


_____          _____


_____          _____


Date and Time:          _____


*Once you have signed the Verdict Form, please give a note — NOT the Verdict Form itself — to the Court Security Officer stating that you have reached a verdict.*


2