Joshua Adam Schulte, *pro se*

July 6, 2022

Judge Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

RE: *United States v. Joshua Adam Schulte*, S3 17 Cr. 548 (JMF)

Dear Judge Furman:

I write the Court regarding jury instructions.

A.   National Defense Information

The Court noted in its Order entered May 24, 2022, that the "Defendant contends that the evidence he seeks to admit is relevant not only to the question of whether the information was "closely held," but also to the question of whether it was "potentially damaging to the United States or useful to an enemy of the United States." Dkt. 825 at 16. The Court noted that the "[g]overnment offers no response." Id. at 17.

Case precedent and legislative history makes it clear that the government must prove beyond reasonable doubt that the information at issue not only be "closely held," but also relate to the national defense—i.e. be potentially damaging to the United States if leaked. If the government maintained recipes for hot chocolate, and kept those under lock-and-key, could the government charge an individual for leaking that recipe under the Espionage Act? The information at issue must be "potentially damaging to the United States or useful to an enemy of the United States" to qualify as NDI.

As the Court notes, this argument was made in the defendant's 6(a) opposition at 8 (*United States v. Rosen*, 445 F. Supp. 2d 605, 620 (E.D. Va. 2006), aff'd, 557 F.3d 192 (4th Cir. 2009)):

> "This important requirement is implicit in the purpose of the statute and assures that the government cannot abuse the statute by penalizing citizens for discussing information the government has no compelling reason to keep confidential. As the Supreme Court has instructed, the statute only applies to information for which there is

*United States v. Schulte*, S3 17 Cr. 548 (JMF); July 6, 2022 letter from *pro se* defendant

> an 'occasion for secrecy,' and there is no 'occasion for secrecy' unless disclosure of the information the government seeks to protect implicates an important government interest such as the national security." *Id.* See *Gorin*, 342 U.S. at 28.

The following language from the same opinion (*Id.* 638) is also relevant:

> It must be emphasized, however, that this conclusion rests on the limitation of [section] 793 to situations in which national security is genuinely at risk; without this limitation, Congress loses its justification for limiting free expression. It was for this reason that the concurrences of Judge Wilkinson and Judge Phillips in Morison insisted on the need for a jury instruction limiting "information relating to the national defense" to information "potentially damaging to the United States or... useful to an enemy of the United States." See Morison, 844 F.2d at 1084 (Wilkinson, J., concurring) (emphasis added); id. at 1086 (Phillips, J., concurring). As Judge Wilkinson pointed out, use of this limiting instruction avoids "the possibility that the broad language of this statute would ever be used as a means of publishing mere criticism of incompetence in and corruption in the government." Id. at 1084. For this reason, "the espionage statute has no applicability to the multitude of leaks that pose no conceivable threat to national security, but threaten only to embarrass one or another high government official." Id. at 1085 (Wilkinson, J., concurring). Thus, the requirement that the information potentially damage the United States properly "confine[s] prosecution [under [section] 793] to cases of serious consequence to our national security." Id. (Wilkinson, J., concurring).

In essence, the Courts require the information to be potentially damaging to the United States so it does not infringe upon the First Amendment. This definition of NDI has nothing to do with which prong of the statute I'm charged—it is the definition of NDI itself.

B.  Proposed NDI Jury Instruction

The second element that the Government must prove beyond a reasonable doubt is that the document, writing, or note was connected with the national defense of the United States. The Government must prove that the item was directly and reasonably connected with the national defense.

The term "national defense" is a broad term that refers to United States military and naval establishments and to all related activities of national preparedness. The item need not be classified under security criteria as long as you determine that the item has a reasonable and direct connection with our national defense. On the other hand, the fact that an item was classified does not automatically mean that the item was connected with the national defense.

To qualify as national defense information, the prosecution must prove that the information was potentially damaging to the United States or useful to an enemy of the United States.

To qualify as national defense information, the prosecution must also show that it was closely held by the United States Government. In determining whether material is "closely held," you

may consider whether it has been classified by appropriate authorities, whether it remained classified on the dates pertinent to the Indictment, and whether the Government took adequate steps to keep the information confidential. I caution you here that not all classified information is National Defense Information.

You should also consider whether the information was previously made public by the United States Government or by someone other than the United State Government. When information is lawfully available to the public or to a foreign government, it is not "closely held," and does not qualify as national defense information, even if the Government still considers the information to be classified.

Adapted from Sand, Instruction 29-11; Gorin v. United States, 312 U.S. 19 (1941); United States v. Soblen, 301 F.2d 236, 239 n. 2 (2d Cir. 1962); United States v. Rosen, 445 F. Supp. 2d 602, 620-21 (E.D. Va. 2006); United States v. Hung, 629 F.2d 908, 918 n. 9 (4th Cir. 1980); United States v. Schulte, 2022 WL 1639282, at *5; United States v. Schulte, 17 CR 548 (JMF), ECF No. 825 Opinion and Order by Hon. Jesse M. Furman at 16-19

### C. Willfully Element

I also note for the Court that my request with respect to "willfully."

In *Bryan v. United States*, 524 U.S. 184 (1998), the Supreme Court noted that, "[a]s a general matter, when used in the criminal context, a 'willful' act is one undertaken with a 'bad purpose.' In other words, in order to establish a 'willful' violation of a statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'" *Id.* at 191-192 (quoting *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994)). However, the Supreme Court noted the example of *Cheek v. United States*, 498 U.S. 192 (1991), in which it decided the jury must find that the defendant was <u>aware of the specific provision of the tax code the he was charged with violating.</u> *Id.* at 201 (emphasis added). Similarly, in *Ratzlaf*, the Supreme Court concluded that the jury had to find that the defendant knew his structuring of cash transactions to avoid a reporting requirement was unlawful. See 510 U.S, at 138, 149. The Supreme Court specifically distinguished these cases because of the danger of ensnaring individuals engaged in apparently innocent conduct. As a result, the Supreme Court "held that these statutes 'carv[e] out

*United States v. Schulte*, S3 17 Cr. 548 (JMF); July 6, 2022 letter from *pro se* defendant

an exception to the traditional rule' that ignorance of the law is no excuse and require that the defendant have knowledge of the law." *Bryan*, 524 U.S. at 194-195.

The government not only must prove beyond reasonable doubt that Mr. Schulte "acted with an evil-meaning mind, that is to say, that he acted with knowledge that his conduct was unlawful," *Id.* at 193, but because "[t]he danger of convicting individuals engaged in apparently innocent activity," *id.*, that is, discussing or disclosing national, public news, requires that the government also prove beyond reasonable doubt that Mr. Schulte "was aware of the specific provision" of the law prohibiting the transmission of national defense information, and knew that the information he was transmitting or attempting to transmit contained national defense information.

Respectfully submitted,

Joshua Adam Schulte