Joshua Adam Schulte, *pro se*

July 6, 2022

**BY HAND**

Judge Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

RE: *United States v. Joshua Adam Schulte*, S3 17 Cr. 548 (JMF)

Dear Judge Furman:

I write the Court pursuant to the specific Rule 29 motion with respect to the NDI counts.

A.      Count Nine: Obstruction of Justice

After reviewing the Court's Order dated today, Mr. Schulte agrees that the trial evidence does not support a conviction for obstruction, and should not even reach the jury.

B.      Unanimous

Mr. Schulte also requests that the Court order a unanimous decision as to Count Four—particularly, agreement as to which "attempted" transmissions that support the verdict.

C.      NDI

The government charges Mr. Schulte with transmitting "documents" rather than "information," and therefore must prove so at trial. However, the trial evidence only supports, at most, a finding that Mr. Schulte transmitted "information." Mr. Schulte believes their case reflects an attempt to constructively amend the indictment by charging Mr. Schulte with the unlawful transmission of "information" while simply cutting the "reason to believe" scienter from the required elements (or otherwise resulting in a fatal variance from the indictment).

An indictment is constructively amended if either the "proof at trial or the trial court's jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment." *United States v. Milstein*, 401 F.3d 53, 65 (2d Cir. 2005). This occurs "when the

*United States v. Schulte*, S3 17 Cr. 548 (JMF); July 6, 2022 letter from *pro se* defendant

trial evidence or the jury charge operates to broaden the possible bases for conviction from that which appeared in the indictment." *United States v. Rigas*, 490 F.3d 208, 225 (2d Cir. 2007). A variance occurs "when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *United States v. Thomas*, 274 F.3d 655, 670 (2d Cir. 2001). Unlike a constructive amendment claim, "a defendant must demonstrate prejudice to prevail on a variance claim." *Id.*

D.    "Reason to believe" scienter

At the first trial, the government charged a generic violation of 18 U.S.C. § 793(d) which required the government to prove beyond a reasonable doubt that Mr. Schulte had a reason to believe the NDI he transmitted could be used to the injury of the United States or to the advantage of another country ("reason to believe" scienter). The government itself proposed these jury instructions. See, e.g. Dkt. 196 at 47 ("Request No. 37. Counts two-four: elements"). The Court then approved these jury instructions. See, e.g. Dkt. 345 at 26-27 (Count Two: Elements (Illegal Transmission of Unlawfully Possessed National Defense Information). After the first trial ended in a hung jury, the government superseded Mr. Schulte in S3 and specifically charged him with the unlawful transmission of "documents" instead of information; the corresponding clause of the Espionage Act does not require the "reason to believe" scienter.

1.    By charging Mr. Schulte with a single clause of § 793(d), the government opens the door to a fatal variance, constructive amendment, and/or adverse jury instruction

To rid itself of this pesky "reason to believe" element, the government superseded Mr. Schulte to charge him with the unlawful transmission of "tangible documents" rather than "intangible information." The government pretends there are no consequences for this decision—that it can simply reap the rewards of charging a specific clause of the statute and ignore the

2

"reason to believe" element. However, the government is gravely mistaken. By its own actions, it has now brought the issue of whether or not the material is "information" or "documents" to the forefront of the trial; since the material is "information," this constitutes a constructive amendment and/or fatal variance in the indictment since the transmission of "information" requires an additional element that the government not only failed to prove, but did not even present to the grand jury.

2.    As a matter of law, "information" includes both tangibles and intangibles

The government is incorrect in asserting that "information" refers only to "intangibles." "The phrase 'information relating to the national defense' is not defined by the statute, and therefore, as with any issue of statutory interpretation, the appropriate place to begin the analysis is with the plain meaning of the statute's words and the context in which they are used." *United States v. Rosen*, 445 F. Supp. 2d 614, 620 (E.D. Va. 2006), aff'd, 557 F.3d 192 (4th Cir. 2009); see also *United States v. Groce*, 398 F.3d 679, 681 (4th Cir. 2005). "The word 'information' is a general term, the plain meaning of which encompasses knowledge derived both from tangible and intangible sources." *Rosen* at 614. See, e.g., The American Heritage College Dictionary 698 (1993) (defining information as "knowledge derived from study, experience, or instruction" and "knowledge of a specific event or situation; intelligence.").

Moreover, the legislative history also confirms this definition of "information." The phrase "information relating to the national defense which the possessor has reason to believe could be used to the injury of the United States or to the advantage of a foreign nation" was added in 1950 to fix a potential loophole. See generally Edgar and Schmidt, Espionage Statutes, 73 Column. L. Rev. at 1021-31, 1050. "This formulation was not new, but was derived from similar language in section 2 of the Espionage Act, the predecessor to 18 U.S.C. 794. As used in

*United States v. Schulte*, S3 17 Cr. 548 (JMF); July 6, 2022 letter from *pro se* defendant

that provision, the term 'information related to the national defense' was understood to apply to information existing in both tangible and intangible form, and it is reasonable to conclude that the 1950 drafters intended to adopt the same meaning." *Rosen* at 616. Accordingly, "construing the term 'information' as including both tangible and intangible information is consistent with the plain meaning of the term and supported by the legislative history." *Id.*

> 3.    Electronic information is by definition "intangible"

The word 'intangible' is a general term, meaning simply "incapable of being touched" (The American Heritage College Dictionary). Electronic data is incapable of being touched, and therefore, by definition, is intangible. Since the government charges Mr. Schulte with the unlawful transmission of "documents" instead of "information" for the electronic CIA backup file, which is by definition "intangible information," this constitutes a fatal variance and/or a constructive amendment of the indictment, requiring the jury to acquit Mr. Schulte.

> 4.    Writing intangible information into notebooks retains its status as "information"

The fact that Mr. Schulte wrote intangible information from his head in notebooks does not necessarily transform that information into "documents relating to national defense," but they could easily still be considered "information." The distinction turns on whether or not the "document" is an official classified document. "All classified documents are clearly marked with a classification level and are often marked classified or unclassified at the paragraph level. For this reason, a person possessing such a document can easily determine: (i) whether the possession is authorized, (ii) which portions of the information the government is attempting to keep secret, and (iii) who else is entitled to receive the document. In contrast, a conversation about classified information, even one accompanied by a generic warning that 'this information

*United States v. Schulte*, S3 17 Cr. 548 (JMF); July 6, 2022 letter from *pro se* defendant

is classified,' is not likely to appraise the listener of precisely which portions of the information

transmitted in the conversation are classified, or whether a more general description of the

information retains its classification status such that it is sufficiently closely held and potentially

damaging to the United States to violate the statute." *Rosen* at 624.

> 5.   The government failed to establish that the materials at issue were "documents" as opposed to intangible "information"

The Court should grant the Rule 29 motion with respect to counts 2, 3, and 4; but,

particularly counts 3 and 4 that involved intangible information for which there is no trial

evidence to support that this information was communicated to Mr. Schulte with clear

classification markings (as opposed to orally, or even communicated to Mr. Schulte that the

information was classified at all).

> 6.   Due to the indictment and the government's proposed jury instructions, the Court must also instruct the jury regarding "information"

In the alternative, the Court should issue the following jury instruction regarding Counts

Two through Four:

> The government charges the defendant with the transmission or attempted transmission
>
> of "any document, writing… or note relating to the national defense." If the jury, instead,
>
> finds that the defendant transmitted or attempted to transmit "information relating to the
>
> national defense," then the jury must acquit the defendant.
>
> In making this determination, the jury should rely upon the following definitions:
>
> "information relating to the national defense" encompasses knowledge derived both from
>
> tangible and intangible sources.

*United States v. Schulte*, S3 17 Cr. 548 (JMF); July 6, 2022 letter from *pro se* defendant

"document, writing, or note[s] relating to the national defense" encompasses only tangible sources.

"intangible" means incapable of being touched, whereas "tangible" means it is capable of being touched.

Electronic data is intangible by definition.

"Information relating to the national defense" becomes "document[s] relating to the national defense" only when they are official government documents that allow the possessor to easily determine (i) whether the possession is authorized, (ii) which portions of the information the government is attempting to keep secret, and (iii) who else is entitled to receive the document.

Respectfully submitted,

Joshua Adam Schulte