UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                        :

UNITED STATES OF AMERICA,               :

                                                      :

                -v-                         :              17-CR-548 (JMF)

                                                      :

JOSHUA ADAM SCHULTE,               :              <u>ORDER</u>

                                                      :

                         Defendant.          :

                                                        :
-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        Attached to this Order is the final jury charge that was delivered to the jury on the record.

        SO ORDERED.

Dated: July 8, 2022
      New York, New York

                                            JESSE M. FURMAN
                                   United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                :

UNITED STATES OF AMERICA,            :

                                             :            17 Cr. 548 (JMF)

  -v-                                     :

                                             :

JOSHUA ADAM SCHULTE,          :

                                           :

                            Defendant.     :

                                             :
------------------------------------------------------------------------X

**JURY CHARGE**

July 2022

## Table of Contents

**I. GENERAL INTRODUCTORY INSTRUCTIONS** ................................................................ 1

| | | |
|---|---|---|
| 1 | Role of the Court and the Jury .......................................................................... | 2 |
| 2 | The Parties ............................................................................................................ | 2 |
| 3 | The Defendant's Self-Representation ................................................................... | 2 |
| 4 | Conduct of Counsel and Mr. Schulte .................................................................. | 3 |
| 5 | Presumption of Innocence and Burden of Proof ................................................. | 3 |
| 6 | Proof Beyond a Reasonable Doubt ....................................................................... | 4 |
| 7 | Direct and Circumstantial Evidence .................................................................... | 5 |
| 8 | What Is and What Is Not Evidence ...................................................................... | 6 |
| 9 | Credibility of Witnesses ....................................................................................... | 8 |
| 10 | Law Enforcement and Government Witnesses ..................................................... | 9 |
| 11 | Expert Witnesses .................................................................................................. | 10 |
| 12 | Cooperator Testimony .......................................................................................... | 10 |
| 13 | Preparation of Witnesses ...................................................................................... | 12 |
| 14 | Uncalled Witnesses .............................................................................................. | 13 |
| 15 | Number of Witnesses and Uncontradicted Testimony ......................................... | 13 |
| 16 | Evidence of the Defendant's Custody .................................................................. | 14 |
| 17 | False Exculpatory Statements ............................................................................... | 14 |
| 18 | Stipulations ........................................................................................................... | 15 |
| 19 | Limited Purpose Evidence .................................................................................... | 15 |
| 20 | Charts and Summaries ........................................................................................... | 15 |
| 21 | Creation and Use of Recordings .......................................................................... | 16 |
| 22 | Transcripts of Video Recordings .......................................................................... | 16 |
| 23 | Particular Investigative Techniques ..................................................................... | 16 |
| 24 | Persons Not on Trial ............................................................................................. | 17 |
| 25 | Searches and Seizures ........................................................................................... | 17 |
| 26 | The Defendant's Testimony .................................................................................. | 18 |

**II. SUBSTANTIVE INSTRUCTIONS** ......................................................................... 18

| | | |
|---|---|---|
| 27 | The Indictment ..................................................................................................... | 18 |
| 28 | Count One: Illegal Gathering of NDI — Elements .............................................. | 20 |

Count One — First Element: Taking Information ........................................... 21

Count One — Second Element: NDI ............................................................ 21

Count One — Third Element: Purpose, Knowledge and Intent ..................... 23

Counts Two and Three: Illegal Transmission of Unlawfully Possessed NDI — Elements ...... 24

Counts Two and Three — First Element: Possession ..................................... 24

Counts Two and Three — Second Element: NDI .......................................... 25

Counts Two and Three — Third Element: Transmission................................ 26

Count Four: Attempted Illegal Transmission of Unlawfully Possessed NDI ......................... 27

Count Five: Unauthorized Access to a Computer to Obtain Classified Information — Elements ............................................................................................. 29

Count Five — First Element: Unauthorized Access ..................................... 29

Count Five — Second Element: Knowledge................................................. 30

Count Five — Third Element: Protected Information ................................... 31

Count Five — Fourth Element: Willful Communication ............................... 32

Count Six: Unauthorized Access of a Computer to Obtain Information from a Department or Agency of the United States — Elements .......................................... 32

Count Six — First Element: Unauthorized Access ...................................... 32

Count Six — Second Element: Intentional Conduct .................................... 33

Count Six — Third Element: U.S. Government Information.......................... 34

Counts Seven and Eight: Causing Transmission of a Harmful Computer Program, Information, Code, or Command — Elements ................................................... 34

Counts Seven and Eight — First Element: Unauthorized Transmission of a Computer Program........................................................................................ 35

Counts Seven and Eight — Second Element: Intent to Cause Damage or Deny Service ......... 36

Counts Seven and Eight — Third Element: Causing Damage........................ 36

Counts Seven and Eight — Fourth Element: Harmful Consequences ............ 36

Count Nine: Obstruction of Justice — Elements ......................................... 37

Count Nine — First Element: Official Proceeding ...................................... 37

Count Nine — Second Element: Knowledge ............................................... 37

Count Nine — Third Element: Corruptly Acted to Obstruct or Impede ................... 38

Venue.......................................................................................................... 40

iii

1    Motive ............................................................................................................. 41

2    Variance in Dates ............................................................................................ 41

        **III. CONCLUDING INSTRUCTIONS** .......................................................... 42

3    COVID-19 Protocols ....................................................................................... 42

4    Selection of the Foreperson ............................................................................ 42

5    Right to See Exhibits and Hear Testimony ..................................................... 42

6    Juror Note-Taking ........................................................................................... 43

7    Bias or Sympathy as Juror .............................................................................. 44

8    Duty to Deliberate .......................................................................................... 45

9    Return of the Verdict ...................................................................................... 45

10  Closing Comments .......................................................................................... 46

# I. GENERAL INTRODUCTORY INSTRUCTIONS

Members of the jury, you have now heard all of the evidence in the case and the closing arguments.  It is my duty at this point to instruct you as to the law.  My instructions to you will be in three parts.

*First*, I will give you general instructions — for example, about your role as the jury, what you can and cannot consider in your deliberations, and the burden of proof.

*Second*, I will describe the law that you must apply to the facts as you find them to be established by the evidence.

*Finally*, I will give you some instructions for your deliberations.

I am going to read my instructions to you.  It is not my favorite way to communicate — and not the most scintillating thing to listen to — but there is a need for precision, and it is important that I get the words just right, and so that is why I will be reading.

Because my instructions cover many points, I have given you a copy of my instructions to follow along.  Please limit yourself to following along; that is, do *not* read ahead in the instructions.  If you find it easier to listen and understand while you are following along with me, please do so.  If you would prefer, you can just listen and not follow along.  Either way, you may take your copy of the instructions with you into the jury room so you can consult it if you want to re-read any portion of the charge to facilitate your deliberations.

For now, listen carefully and try to concentrate on the substance of what I'm saying.  You should not single out any instruction as alone stating the law; rather, you should consider my instructions as a whole when you retire to deliberate in the jury room.

Role of the Court and the Jury

You, the members of the jury, are the sole and exclusive judges of the facts.  You must weigh and consider the evidence without regard to sympathy, prejudice, or passion for or against any party.  It is your duty to accept my instructions as to the law and to apply them to the facts as you determine them.  If either party has stated a legal principle differently from any that I state to you in my instructions, it is my instructions that you must follow.


The Parties

In reaching your verdict, you must remember that all parties stand equal before a jury in the courts of the United States.  The fact that the Government is a party and the prosecution is brought in the name of the United States does not entitle the Government or its witnesses to any greater consideration than that accorded to any other party.  By the same token, you must give it no less deference.  The Government and the defendant, Joshua Schulte, stand on equal footing before you.

It would be improper for you to consider, in reaching your decision as to whether the Government sustained its burden of proof, any personal feelings you may have about the defendant's race, national origin, religious beliefs, sex, or age.  All persons are entitled to the same presumption of innocence and the Government has the same burden of proof with respect to all persons.


The Defendant's Self-Representation

A criminal defendant has a constitutional right under the Sixth Amendment to the United States Constitution to represent himself.  The defendant's decision to exercise that right and represent himself has no bearing on whether he is guilty or not guilty, and it must not affect your consideration of the case.

1   You are not to draw any inferences from the defendant's decision to exercise his right to represent

2   himself.

3

4   <u>Conduct of Counsel and Mr. Schulte</u>

5     The personalities and the conduct during trial of both counsel and Mr. Schulte are not in any way

6   at issue.  If you formed opinions of any kind about the personalities or conduct during trial of any of the

7   lawyers in the case or Mr. Schulte, favorable or unfavorable, whether you approved or disapproved of

8   their behavior, those opinions should not enter into your deliberations.

9     In addition, remember that it is the duty of each side to object when the other side offers

10   testimony or other evidence that the objector believes is not properly admissible.  Therefore, you should

11   draw no inference from the fact that there was an objection to any testimony or evidence.  Nor should

12   you draw any inference related to the weight or importance of any testimony or evidence from the fact

13   that I sustained or overruled an objection.  Simply because I have permitted certain testimony or

14   evidence to be introduced does not mean that I have decided on its importance or significance.  That is

15   for you to decide.

16

17   <u>Presumption of Innocence and Burden of Proof</u>

18     The defendant has pleaded not guilty to the charges against him.  As a result of that plea of not

19   guilty, the burden is on the Government to prove guilt beyond a reasonable doubt.  This burden never

20   shifts to a defendant for the simple reason that the law never imposes upon a defendant in a criminal

21   case the burden or duty of testifying, or calling any witness, or locating or producing any evidence.

22     Furthermore, the law presumes the defendant to be innocent of the charges against him.  The

23   presumption of innocence was in his favor when the trial began, continued in his favor throughout the

1   entire trial, remains with him even as I speak to you now, and persists in his favor during the course of

2   your deliberations in the jury room, unless and until the Government proves beyond a reasonable doubt

3   that he committed one of the charged crimes.

4

5   <u>Proof Beyond a Reasonable Doubt</u>

6          The question that naturally arises is, "What is a reasonable doubt?"  A reasonable doubt is a

7   doubt based on your reason, your judgment, your experience, and your common sense.  It is a doubt that

8   a reasonable person has after carefully weighing all the evidence.  It is a doubt founded in reason and

9   arising out of the evidence in the case — or the lack of evidence.  A reasonable doubt is not caprice or

10  whim.  It is not speculation or suspicion.

11         Proof beyond a *reasonable* doubt does not mean proof beyond all *possible* doubt.  It is

12  practically impossible for a person to be absolutely and completely convinced of any disputed fact that,

13  by its very nature, cannot be proved with mathematical certainty.  The Government's burden is to

14  establish guilt beyond a *reasonable* doubt, not all *possible* doubt.

15         If, after a fair and impartial consideration of all the evidence, you can candidly and honestly say

16  that you are not satisfied with the guilt of the defendant, that you do not have an abiding belief of the

17  defendant's guilt — in other words, if you have such a doubt as would reasonably cause a prudent

18  person to hesitate in acting in matters of importance in his or her own affairs — then you have a

19  reasonable doubt, and in that circumstance it is your duty to acquit.

20         On the other hand, if, after a fair and impartial consideration of all the evidence, you can

21  candidly and honestly say that you do have an abiding belief of the defendant's guilt, such a belief as a

22  prudent person would be willing to act upon in important matters in the personal affairs of his or her

23  own life, then you have no reasonable doubt, and in that circumstance it is your duty to convict.

1

2    <u>Direct and Circumstantial Evidence</u>

3           There are two types of evidence that you may properly use in deciding whether the defendant is

4    guilty or not guilty of the crimes with which he is charged.

5           One type of evidence is called direct evidence.  Direct evidence of a fact in issue is presented

6    when a witness testifies to that fact based on what he or she personally saw, heard, or otherwise

7    observed through the five senses.  The second type of evidence is circumstantial evidence.

8    Circumstantial evidence is evidence that tends to prove a disputed fact indirectly by proof of other facts.

9           There is a simple example of circumstantial evidence that is often used in this courthouse.

10   Assume that when you came into the courthouse this morning, the sun was shining and it was a nice day

11   outside.  Also assume that the courtroom shades were drawn and you could not look outside.  Assume

12   further that as you were sitting here, someone walked in with an umbrella that was dripping wet, and

13   then, a few moments later, somebody else walked in with a raincoat that was also dripping wet.

14          Now, because you could not look outside the courtroom and you could not see whether it was

15   raining, you would have no direct evidence of that fact.  But, on the combination of facts that I have

16   asked you to assume, it would be reasonable and logical for you to conclude that it was raining.

17          That is all there is to circumstantial evidence.  You infer on the basis of your reason, experience,

18   and common sense from one established fact the existence or the nonexistence of some other fact.

19          The matter of drawing inferences from facts in evidence is not a matter of guesswork or

20   speculation.  An inference is a logical, factual conclusion that you might reasonably draw from other

21   facts that have been proved.  It is for you, and you alone, to decide what inferences you will draw.

22          Many material facts, such as a person's state of mind, are not easily proved by direct evidence.

23   Usually such facts are established by circumstantial evidence and the reasonable inferences you draw.

1    Circumstantial evidence may be given as much weight as direct evidence.  The law makes no distinction

2    between direct and circumstantial evidence.  The law simply requires that before convicting a defendant,

3    you must be satisfied of the defendant's guilt beyond a reasonable doubt, based on all of the evidence in

4    the case.

5

6    <u>What Is and What Is Not Evidence</u>

7            What, then, is the evidence in the case?

8            The evidence in this case is (1) the sworn testimony of the witnesses, (2) the exhibits received

9    into evidence, and (3) any stipulations made by the parties.  Anything else is not evidence.  For example,

10   the questions posed to a witness are not evidence: It is the witnesses' answers that are evidence, not the

11   questions.  I remind you also that if you understand Spanish, you may not rely on any testimony that was

12   given in Spanish; the English translation of any testimony that was given in Spanish is the evidence that

13   you may consider during your deliberations.

14           In addition, exhibits marked for identification but not admitted by me are not evidence; nor are

15   materials brought forth only to refresh a witness's recollection.  Moreover, testimony that has been

16   stricken or excluded by me is not evidence and may not be considered by you in rendering your verdict.

17           Along these lines, we have, among the exhibits received in evidence, some documents that are

18   redacted, and some documents where words were substituted over the redaction.  "Redacted" means that

19   part of the document was taken or blacked out.  You are to concern yourself only with the part of the

20   document that has been admitted into evidence, including any substitution.  You should not consider any

21   possible reason why the other part of it has been deleted or blacked out, or why there might be a

22   substitution.

1    Arguments by the lawyers and the defendant are also not evidence.  What you heard during the

2   opening statements and summations is merely intended to help you understand the evidence and reach

3   your verdict.  If your recollection of the facts differs from the parties' statements, you should rely on

4   your recollection.  If a party made a statement during his or her opening or summation and you find that

5   there is no evidence to support the statement, you should disregard the statement.

6    In that regard, let me remind you: Because the defendant decided to act as his own lawyer, you

7   heard him speak at various times during the trial, including in opening and closing argument.  I want to

8   remind you that when the defendant spoke during those parts of the trial, he was acting as a lawyer in

9   the case, not as a witness, and thus his words are not evidence.  The *only* evidence in this case is the

10   testimony of witnesses under oath and exhibits admitted into evidence.

11    Finally, any statements that I may have made during the trial or during these instructions do not

12   constitute evidence.  At times, I may have admonished a witness or directed a witness to be responsive

13   to questions or to keep his or her voice up.  At times, I may have asked a question myself.  Any

14   questions that I asked, or instructions that I gave, were intended only to clarify the presentation of

15   evidence and to bring out something that I thought might be unclear.  You should draw no inference or

16   conclusion of any kind, favorable or unfavorable, with respect to any witness or any party in the case, by

17   reason of any comment, question, or instruction of mine.  The rulings I have made during the trial and

18   these instructions are no indication of my views of what your decision should be.  Nor should you infer

19   that I have any views as to the credibility of any witness, as to the weight of the evidence, or as to how

20   you should decide any issue that is before you.  That is entirely your role.

21

7

1   <u>Credibility of Witnesses</u>

2   How do you evaluate the credibility or believability of the witnesses?  The answer is that you use

3   your common sense.  There is no magic formula by which you can evaluate testimony.  You may use the

4   same tests here that you use in your everyday life when evaluating statements made by others to you.

5   You may ask yourselves: Did the witness impress you as open, honest, and candid?  How responsive

6   was the witness to the questions asked on direct examination and on cross-examination?

7   If you find that a witness intentionally told a falsehood, that is always a matter of importance you

8   should weigh carefully.  On the other hand, a witness may be inaccurate, contradictory, or even

9   untruthful in some respects and entirely believable and truthful in other respects.  It is for you to

10  determine whether such inconsistencies are significant or inconsequential, and whether to accept or

11  reject all of the testimony of any witness, or to accept or reject only portions.

12  You are not required to accept testimony even though the testimony is uncontradicted and the

13  witness's testimony is not challenged.  You may reject it because of the witness's bearing or demeanor,

14  or because of the inherent improbability of the testimony, or for other reasons sufficient for you to

15  conclude that the testimony is not worthy of belief.

16  In evaluating the credibility of the witnesses, you should take into account any evidence that a

17  witness may benefit in some way from the outcome of the case.  Such an interest in the outcome creates

18  a motive to testify falsely and may sway a witness to testify in a way that advances his or her own

19  interests.  Therefore, if you find that any witness whose testimony you are considering may have an

20  interest in the outcome of this trial, you should bear that factor in mind when evaluating the credibility

21  of his or her testimony, and decide whether to accept it with great care.

22  Keep in mind, though, that it does not automatically follow that testimony given by an interested

23  witness is to be disbelieved.  There are many people who, no matter what their interest in the outcome of

1    the case may be, would not testify falsely.  It is for you to decide, based on your own perceptions and

2    common sense, to what extent, if at all, the witness's interest has affected his or her testimony.

3

4    <u>Law Enforcement and Government Witnesses</u>

5           You have heard testimony from law enforcement witnesses and witnesses who are current or

6    former employees of the Central Intelligence Agency ("CIA") and Federal Bureau of Investigation

7    ("FBI").  The fact that a witness may be employed as a law enforcement official or government

8    employee does not mean that his or her testimony is necessarily deserving of more or less consideration

9    or greater or lesser weight than that of an ordinary witness.  It is your decision, after reviewing all the

10   evidence, whether to accept the testimony of any law enforcement witness or government witnesses, as

11   it is with every other type of witness, and to give to that testimony the weight you find it deserves.

12          I have allowed some of the CIA witnesses to testify either by using a made-up name — a

13   pseudonym — or just their first names.  That is because disclosure of these witnesses' true or full names

14   could potentially compromise their work at the CIA.  You should weigh the testimony of these witnesses

15   just as you would any other witness, and not weigh it differently because they testified using a

16   pseudonym or used a first name only.  Moreover, you should not consider the fact that I allowed these

17   witnesses to testify in this way as an expression of my opinion as to any of the facts of this case.  Again,

18   it is your job and your job alone to decide the facts of this case.

19

1    <u>Expert Witnesses</u>

2         You have heard testimony from expert witnesses.  As I previously explained, an expert witness is

3    someone who, by education or experience, has acquired learning or experience in a specialized area of

4    knowledge.  Such a witness is permitted to express his or her opinions on matters about which he or she

5    has specialized knowledge and training.  The parties may present expert testimony to you on the theory

6    that someone who is experienced in the field can assist you in understanding the evidence or in reaching

7    an independent decision on the facts.

8         Your role in judging credibility applies to experts as well as other witnesses.  In weighing an

9    expert's opinion, you may consider the expert's qualifications, education, and reasons for testifying, as

10   well as all of the other considerations that ordinarily apply, including all the other evidence in the case.

11   If you find the opinion of an expert is based on sufficient data, education, and experience, and the other

12   evidence does not give you reason to doubt his or her conclusions, you would be justified in placing

13   reliance on his or her testimony.  However, you should not accept witness testimony simply because the

14   witness is an expert.  The determination of the facts in this case rests solely with you.

15

16   <u>Cooperator Testimony</u>

17        You have heard testimony from one witness — Carlos Betances — who testified that he pleaded

18   guilty to criminal conduct and is now cooperating with the Government.

19        Experience will tell you that the Government sometimes must rely on the testimony of so-called

20   cooperating witnesses.  The Government must take its witnesses as it finds them and sometimes must

21   use such testimony in a criminal prosecution, because otherwise it would be difficult or impossible to

22   detect and prosecute wrongdoers.  For these very reasons, the law allows the use of testimony from

23   cooperating witnesses.  Indeed, under federal law, the testimony of a cooperating witness may be

1    enough in itself for conviction, if the jury believes that the testimony establishes guilt beyond a

2    reasonable doubt.

3           You may not draw any conclusions or inferences of any kind about the guilt of the defendant on

4    trial from the fact that Mr. Betances pleaded guilty to other charges.  The decision of that witness to

5    plead guilty was a personal decision that witness made about his own guilt.  It may not be used by you in

6    any way as evidence against or unfavorable to the defendant.

7           Additionally, because of the interest a cooperator may have in testifying, you should scrutinize

8    his testimony with special care and caution.  You may consider the fact that a witness is a cooperator as

9    bearing upon his credibility.  Like the testimony of any other witness, accomplice witness testimony

10    should be given such weight as it deserves in light of the facts and circumstances before you, taking into

11    account the witness's demeanor and candor, the strength and accuracy of the witness's recollection, his

12    background, and the extent to which his testimony is or is not corroborated by other evidence in the

13    case.  You may consider whether a cooperating witness has an interest in the outcome of the case, and if

14    so, whether that interest has affected his testimony.

15           You heard testimony about an agreement between the Government and the cooperating

16    witnesses.  I must caution you that it is no concern of yours why the Government made an agreement

17    with a particular witness.  You may, however, consider the effect, if any, that the existence or terms of

18    the agreement have on the witness's credibility.  A witness who hopes to obtain leniency may have a

19    motive to testify as he believes the Government wishes, or he may feel that it is in his interest to

20    incriminate others.  As with any witness, your responsibility is to determine whether any such motive or

21    intent has influenced the witness's testimony and whether the witness has told the truth, in whole or in

22    part.

23           In sum, in evaluating the testimony of a cooperating witness, you should ask yourselves the

following questions:  Would the accomplice benefit more by lying or by telling the truth?  Was any part of his testimony potentially made up because he believed or hoped that he would receive favorable treatment from the Government by testifying falsely or as he believed the Government wanted?  Or did he believe that his interests would be best served by testifying truthfully?  If you believe that the witness was motivated by hopes of personal gain, was the motivation one that would cause him to lie, or was it one that would cause him to tell the truth?  Did this motivation color his testimony?  It does not follow, however, that simply because a person has admitted to participating in one or more crimes, he is incapable of giving a truthful version of what happened.

If you think that the testimony was false, you should reject it.  However, if, after a cautious and careful examination of an accomplice witness's testimony, you are satisfied that the witness told the truth, you may accept his testimony as credible and act upon it accordingly.

As with any witness, let me emphasize that the issue of credibility need not be decided in an all-or-nothing fashion.  If you find that a witness has been untruthful in some respect, you may, but are not required to, reject the witness's testimony in its entirety.  Even if you find that a witness testified falsely in one part, you still may accept his testimony in other parts.  How much of a witness's testimony to accept, if any, is a determination entirely for you, the jury.

Preparation of Witnesses

You have heard evidence during the trial that witnesses discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court.  Although you may consider this fact when you are evaluating a witness's credibility, it is common for a witness to meet with lawyers before testifying so that the witness can be aware of the subjects he or she will be questioned about, focus on the subjects, and have the opportunity to review relevant exhibits before being questioned about them.

1  In fact, it would be unusual for a lawyer to call a witness without such consultation.  As always, the

2  weight you give to the fact or the nature of these issues and what inferences you draw from them are

3  matters completely within your discretion.

4

5  Uncalled Witnesses

6       There are people whose names you have heard during the course of the trial but who did not

7  appear here to testify.  I instruct you that each party had an equal opportunity, or lack of opportunity, to

8  call any of these witnesses.  Therefore, you should not draw any inferences or reach any conclusions as

9  to what they would have testified to had they been called.  Their absence should not affect your

10  judgment in any way.

11       You should, however, remember my instruction that the law does not impose on a defendant in a

12  criminal case the burden or duty of calling any witness or producing any evidence.  The burden of proof

13  remains at all times with the Government.

14

15  Number of Witnesses and Uncontradicted Testimony

16       The fact that one party called more witnesses or introduced more evidence does not mean that

17  you should necessarily find the facts in favor of the side offering the most witnesses and the most

18  evidence.  By the same token, you do not have to accept the testimony of any witness who has not been

19  contradicted or impeached, if you find the witness to be not credible.  After examining all the evidence,

20  you may decide that the party calling the most witnesses has not persuaded you because you do not

21  believe its witnesses, or because you do believe the fewer witnesses called by the other side.

22       Again, you should also keep in mind that the burden of proof is always on the Government.  The

23  defendant is not required to call any witnesses or offer any evidence, since he is presumed to be

1    innocent.  On the other hand, the Government is not required to prove each element of the offense by

2    any particular number of witnesses.  The testimony of a single witness may be enough to convince you

3    beyond a reasonable doubt of the existence of the elements of the charged offenses — if you believe that

4    the witness has truthfully and accurately related what he or she has told you.  The testimony of a single

5    witness may also be enough to convince you that reasonable doubt exists, in which case you must find

6    the defendant not guilty.

7

8    Evidence of the Defendant's Custody

9         You have heard evidence that the defendant was in custody at one point.  You may consider

10   this evidence as evidence of the defendant's whereabouts at these points in time.  However, you may not

11   consider the fact that the defendant was in custody as evidence that he is of bad character or has a

12   propensity to commit crime.

13

14   False Exculpatory Statements

15        You have heard testimony that the defendant made certain statements outside the courtroom in

16   which the defendant claimed that his conduct was consistent with innocence and not with guilt.  The

17   Government claims that these statements, in which the defendant exonerated or exculpated himself, are

18   false.  If you find that the defendant gave a false statement in order to divert suspicion from himself, you

19   may — but are not required to — infer that the defendant believed that he was guilty.

20        Under many circumstances, it is reasonable to infer that an innocent person would not find it

21   necessary to invent or fabricate an explanation or statement tending to establish his or her innocence.

22   On the other hand, there may be reasons, fully consistent with innocence, that would cause a person to

23   give a false statement showing their innocence.

1    You may not rely on this evidence alone to support a finding of guilt.  Whether a defendant's

2    statement does or does not point to consciousness of guilt and the significance, if any, to be attached to

3    any such evidence are matters for you, the jury, to decide.

4

5    Stipulations

6    Stipulations were entered into relating to various facts in this case.  A stipulation is an agreement

7    between parties as to what certain facts were or what the testimony would be if certain people testified

8    before you.  The stipulations are the same for your purposes as the presentation of live testimony.  You

9    should consider the weight to be given such evidence just as you would any other evidence.

10

11   Limited Purpose Evidence

12   If certain testimony or evidence was received for a limited purpose, you must follow the limiting

13   instructions I have given.

14

15   Charts and Summaries

16   The Government has presented exhibits in the form of charts and summaries.  As you'll recall,

17   some of the charts and summaries were not admitted into evidence, but were shown to you as "aids" —

18   to make the other evidence more meaningful and to help you in considering the evidence.  Others were

19   admitted into evidence as exhibits.  I admitted these charts and summaries in place of, or in addition to,

20   the underlying documents that they represent in order to save time and avoid unnecessary

21   inconvenience.  They are no better than the testimony or the documents upon which they are

22   based.  Therefore, you are to give no greater consideration to these charts or summaries than you would

1   give to the evidence upon which they are based.  It is for you to decide whether they correctly present

2   the information contained in the testimony and in the exhibits on which they were based.

3

4   <u>Creation and Use of Recordings</u>

5       Some video recordings have been admitted in evidence.  I instruct you that the creation of these

6   recordings was entirely lawful and that these recordings were properly admitted in evidence.  Of course,

7   it is for you to decide what weight, if any, to give to this evidence.

8

9   <u>Transcripts of Video Recordings</u>

10      The Government has been permitted to give you transcripts containing the Government's

11  interpretation of what can be heard on some of the video recordings that have been received as evidence.

12  Those were given to you as an aid or guide to assist you in watching the recordings.  As I have told you,

13  they are not in and of themselves evidence — except for the few spots in which the transcript reflects a

14  substitution for something that was redacted, or removed, from the recording, in which case you should

15  treat the substitution and not the recording as the evidence.  You alone should make your own

16  interpretation of what appears on the recordings based on what you heard.  If you think you heard

17  something differently than appeared on the transcript, then what you heard is controlling.

18

19  <u>Particular Investigative Techniques</u>

20      You have heard reference to certain investigative techniques that were used or not used by the

21  Government in this case.  There is no legal requirement that the Government prove its case through any

22  particular means.  While you are to carefully consider the evidence adduced by the Government, you are

1   not to speculate as to why the Government used the techniques it did, or why it did not use other

2   techniques.

3

4   <u>Persons Not on Trial</u>

5          You may not draw any inference, favorable or unfavorable, toward the Government or the

6   defendant from the fact that any person was not named as a defendant in this case, and you may not

7   speculate as to the reasons why other people are not on trial before you now.  Those matters are wholly

8   outside your concern and have no bearing on your function as jurors in deciding the case before you.

9

10  <u>Searches and Seizures</u>

11         You have heard testimony about evidence that was seized and about various searches, including

12  searches of electronic devices and electronic service providers.  Evidence obtained from those searches

13  was properly admitted in this case and may be properly considered by you.  Indeed, such searches are

14  entirely appropriate law enforcement actions.  You also heard testimony about evidence that was labeled

15  "attorney-client privileged."  As I instructed you at the time, that evidence was also properly admitted.

16         Whether you approve or disapprove of how the evidence was obtained should not enter into your

17  deliberations because I instruct you that the Government's use of the evidence is lawful. You must,

18  therefore, regardless of your personal opinions, give this evidence full consideration along with all the

19  other evidence in the case in determining whether the Government has proved the defendant's guilt

20  beyond a reasonable doubt.  Once again, however, it is for you to decide what weight, if any, to give to

21  this evidence.

22

17

1    <u>The Defendant's Testimony</u>

2        The defendant did not testify.  Under our Constitution, a defendant is presumed innocent and has

3    no obligation to testify or to present any other evidence because, as I have told you, it is the

4    Government's burden to prove the defendant guilty beyond a reasonable doubt.  That burden remains on

5    the Government throughout the entire trial and never shifts to the defendant.  A defendant is never

6    required to prove that he is innocent.

7        You may not attach any significance to the fact that the defendant did not testify.  No adverse

8    inference against the defendant may be drawn by you because the defendant did not take the witness

9    stand.  You may not consider this in any way in your deliberations in the jury room.

10

11                            **II. SUBSTANTIVE INSTRUCTIONS**

12        That concludes my introductory instructions.  Let me now turn to the charges.

13    <u>The Indictment</u>

14        Mr. Schulte is formally charged in an Indictment.  As I instructed you at the outset of this case,

15    the Indictment is a charge or accusation.  It is not evidence.

16        The Indictment (a copy of which you will have in the jury room during your deliberations)

17    contains nine charges, or "counts," against the defendant.  Each count accuses the defendant of

18    committing a different crime.  You must, as a matter of law, consider each count, and you must return a

19    separate verdict for each count in which the defendant is charged.  Your verdict on one count should not

20    control your decision as to any other count.

21        <u>Counts One, Two, Five, Six, Seven, and Eight</u> charge the defendant with various crimes relating

22    to the alleged misuse of computers and theft of information from the CIA in the spring of 2016 and

23    subsequent disclosure of such information to the WikiLeaks organization.

1      Count One charges the defendant with illegal gathering of national defense information or

2  "NDI."  Specifically, it charges that, on or about April 20, 2016, the defendant, without authorization,

3  copied backup files of certain electronic databases (what I will refer to as the "Backup Files") housed on

4  a classified computer system maintained by the CIA (namely "DEVLAN").

5      Count Two charges the defendant with illegal transmission of unlawfully possessed documents,

6  writings, or notes containing NDI.  Specifically, it charges that, between April and May 2016, the

7  defendant, without authorization, retained copies of the Backup Files and communicated them to a third

8  party not authorized to receive them, the organization WikiLeaks.

9      Count Five charges the defendant with unauthorized access to a computer to obtain classified

10  information.  Specifically, it charges that, between April 18 and April 20, 2016, the defendant accessed a

11  computer without authorization and exceeded his authorized access to obtain the Backup Files and

12  subsequently transmitted them to WikiLeaks without authorization.

13      Count Six charges the defendant with unauthorized access to a computer to obtain information

14  from a department or agency of the United States.  Specifically, it charges that, on or about April 20,

15  2016, the defendant, accessed a computer without authorization or in excess of his authorized access,

16  and copied the Backup Files.

17      Count Seven charges the defendant with causing transmission of a harmful computer command.

18  Specifically, it charges that, on or about April 20, 2016, the defendant transmitted commands on

19  DEVLAN to manipulate the state of the Confluence virtual server on DEVLAN.

20      Count Eight charges the defendant with causing transmission of a harmful computer command.

21  Specifically, it charges that, on or about April 20, 2016, the defendant transmitted commands on

22  DEVLAN to delete log files of activity on DEVLAN.

19

1    <u>Counts Three and Four</u> charge the defendant with crimes relating to the unlawful disclosure or

2    attempted disclosure of NDI while he was in the Metropolitan Correctional Center ("MCC"), the federal

3    jail.

4    <u>Count Three</u> charges that, in or about September 2018, the defendant had unauthorized

5    possession of documents, writings, or notes containing NDI related to the internal computer networks of

6    the CIA, and willfully transmitted them to a third party not authorized to receive them.

7    <u>Count Four</u> charges that, between July and September 2018, the defendant had unauthorized

8    possession of documents, writings, and notes containing NDI related to tradecraft techniques,

9    operations, and intelligence gathering tools used by the CIA, and attempted to transmit them to a third

10   party or parties not authorized to receive them.

11   Finally, <u>Count Nine</u> charges the defendant with obstruction of justice.  Specifically, it charges

12   that between March and June 2017, the defendant made certain false statements to agents of the FBI

13   during their investigation of the WikiLeaks leak.

14   I will explain each count in turn.  I remind you that you must consider each count separately and

15   return a separate verdict on each count.

16

17   <u>Count One: Illegal Gathering of NDI — Elements</u>

18   I will begin with Count One, which charges the defendant with illegal gathering of NDI.

19   In order to find the defendant guilty of Count One, the Government must prove the following

20   three elements beyond a reasonable doubt:

21   *First*, that on or about April 20, 2016, the defendant copied, took, made, or obtained a

22   sketch, photograph, photographic negative, blueprint, plan, map, model, instrument, appliance,

23   document, writing, or note;

1      *Second*, that the information in that material was connected to the national defense; and,

2      *Third*, that the defendant acted with the purpose of obtaining information respecting the national

3   defense and with the intent or with reason to believe that the information was to be used to the injury of

4   the United States, or used to the advantage of a foreign country.

5      Let me elaborate on each of these three elements.

6

7   <u>Count One — First Element: Taking Information</u>

8      The first element that the Government must prove beyond a reasonable doubt for purpose of

9   Count One is that the defendant copied, took, made, or obtained a sketch, photograph, photographic

10   negative, blueprint, map, model, instrument, appliance, document, writing, or note.  The Indictment

11   specifically charges that, on or about April 20, 2016, the defendant copied without authorization the

12   Backup Files housed on the classified DEVLAN computer system maintained by the CIA.

13      If you find that the Government has proved beyond a reasonable doubt that the defendant copied

14   the Backup Files, you next should consider the second element.

15

16   <u>Count One — Second Element: NDI</u>

17      The second element that the Government must prove beyond a reasonable doubt for purpose of

18   Count One is that the material the defendant is accused of taking is national defense information or NDI,

19   which is to say that it is directly and reasonably connected with the national defense.

20      The term "national defense" is a broad term that refers to United States military establishments,

21   intelligence, and to all related activities of national preparedness.

22      To qualify as NDI, the Government must prove that the material is "closely held" by the United

23   States Government.  In determining whether material is closely held, you may consider whether the

1 material at issue was already in the public domain; information typically cannot qualify as NDI if it is

2 already in the public domain.  But where information is in the public domain, the fact that the

3 information comes from the United States Government or the fact that the United States Government

4 considers the information to be accurate or inaccurate may itself be NDI.

5    Thus, where information has been made public by the United States Government itself, it is not

6 closely held and cannot be NDI.  Similarly, where information has been made public by someone other

7 than the United States Government, and the United States Government confirms that the information

8 came from the United States Government, it is not closely held and cannot be NDI.  But the United

9 States Government's assessment of the reliability or unreliability of publicly available information — as

10 opposed to the information itself — can itself be closely held information relating to the national

11 defense.  In such instances, it is the confirmation of the accuracy or inaccuracy of material in the public

12 domain, and not the public domain material itself, that can qualify as information relating to the national

13 defense.  The distinction between a confirmation of information relating to the national defense already

14 in the public domain that can be NDI and one that cannot depends on whether the confirmation itself

15 could potentially harm the national security.

16    All of that said, if the particular information at issue has been so widely circulated and is so

17 generally believed to be true or to have come from the United States Government that confirmation that

18 it came from the United States Government would add nothing to its weight, it is not closely held even if

19 there has been no official confirmation by the United States Government.

20    In determining whether material is "closely held," you may consider whether it has been

21 classified by appropriate authorities and whether it remained classified on the dates pertinent to the

22 indictment.  Although you may consider whether information has been classified in determining whether

1  it has been closely held, I caution you that the mere fact that information is classified does not mean that

2  the information qualifies as NDI.

3       In deciding this issue, you should examine the information, and also consider the testimony of

4  witnesses who testified as to its content and significance, and who described the purpose and the use to

5  which the information could be put.

6       Whether the information is connected with the national defense is a question of fact that you, the

7  jury, must determine, following the instructions that I have just given you about what those terms mean.

8

9       Count One — Third Element: Purpose, Knowledge and Intent

10      The third element that the Government must prove beyond a reasonable doubt for purpose of

11  Count One is that the defendant acted for the purpose of obtaining information respecting the national

12  defense and with the intent or with reason to believe that the information was to be used to the injury of

13  the United States, or used to the advantage of a foreign country.  In considering whether or not the

14  defendant had the intent or reason to believe that the information would be used to the injury of the

15  United States or to provide an advantage to a foreign country, you may consider the nature of the

16  documents or information involved.  I emphasize that to convict the defendant of Count One you must

17  find that the defendant had the intent or reason to believe that the information *would* be used to the

18  injury of the United States, not just that it *could* be so used.  The Government does not have to prove

19  that the intent was both to injure the United States *and* to provide an advantage to a foreign country.

20  The statute reads in the alternative.  Further, the country to whose advantage the information would be

21  used need not necessarily be an enemy of the United States.  The statute does not distinguish between

22  friend and foe.

1    If you find beyond a reasonable doubt, therefore, that the defendant acted for the purpose of

2  obtaining information respecting the national defense and acted with the intent or with reason to believe

3  that the information would be used to injure the United States or to provide an advantage to a foreign

4  country, the third element of the offense is satisfied.

5

6  Counts Two and Three: Illegal Transmission of Unlawfully Possessed NDI — Elements

7    Let me turn, then, to Counts Two and Three, each of which charges the defendant with illegal

8  transmission of certain unlawfully possessed NDI.  Although I will explain them together, I remind you

9  that you must consider them separately and return a separate verdict on each count.

10    In order to find the defendant guilty of Count Two or Count Three, the Government must prove

11  the following three elements beyond a reasonable doubt:

12    *First*, that, on or about the dates charged in the Indictment, the defendant had unauthorized

13  possession of, access to, or control over a document, writing, plan, instrument, or note;

14    *Second*, that the information in that material was connected to the national defense; and,

15    *Third*, that, on or about the dates in the Indictment, the defendant willfully communicated,

16  delivered, or transmitted (or caused to be communicated, delivered, or transmitted) the document,

17  writing, plan, instrument, or note to a person who was not entitled to receive it.

18    Again, let me elaborate on each of these three elements.

19

20    Counts Two and Three — First Element: Possession

21    The first element that the Government must prove beyond a reasonable doubt for purpose of

22  Counts Two and Three is that, on or about the dates charged in the count at issue, the defendant had

24

1   unauthorized possession of, control over, or access to, the documents, writings, plans, instruments, or

2   notes in question.

3          In the case of Count Two, the Indictment charges that, between April and May 2016, the

4   defendant, without authorization, retained documents, writings, plans, instruments, and notes in the form

5   of copies of the Backup Files.

6           In the case of Count Three, the Indictment charges that, in or about September 2018, the

7   defendant, without authorization, possessed documents, writings, and notes pertaining to internal

8   computer networks of the CIA, including DEVLAN.  In particular, Count Three is based on the

9   following passage on page 3 of Government Exhibit 812 — and the following passage alone:

10         "In reality, two groups — EDG and COG and at least 400 people had access.  They don't
11         include COG who was connected to our DEVLAN through HICOC, an intermediary
12         network that connected both COG and EDG. . . . There is absolutely NO reason they
13         shouldn't have known this connection exists.  Step one is narrowing down the possible
14         suspects and to completely disregard an ENTIRE GROUP and HALF the suspects is
15         reckless.  All they needed to do was talk to ONE person on Infrastructure branch or
16         through ANY technical description / diagram of the network."

17         The word "possession" is a commonly used and commonly understood word.  Basically it means

18   the act of having or holding property or the detention of property in one's power or command.  It may

19   mean actual physical possession or constructive possession.  A person has "constructive" possession of

20   something if he knows where it is and can get it any time he wants, or otherwise can exercise control

21   over it.  A person has "unauthorized" possession of something if he is not entitled to have it.

22

23         Counts Two and Three — Second Element: NDI

24         The second element that the Government must prove beyond a reasonable doubt for purpose of

25   Counts Two and Three is that the documents, writings, plans, instruments, or notes at issue are NDI,

26   which is to say that they are related to the national defense of the United States.  I have already

1   instructed you about this element in connection with Count One, and you should follow that instruction

2   with respect to Counts Two and Three as well.

3          In deciding whether this second element is satisfied with respect to Count Three, however, you

4   may consider only the passage quoted above from page 3 of Government Exhibit 812.

5

6          <u>Counts Two and Three — Third Element: Transmission</u>

7          The third element that the Government must prove beyond a reasonable doubt for purpose of

8   Counts Two and Three is that, on or about the dates charged in the count at issue, the defendant willfully

9   communicated, delivered, or transmitted (or caused to be communicated, delivered, or transmitted) the

10  document, writing, plan, instrument, or note to a person who was not entitled to receive it.  "Person" in

11  this context includes not only an individual, but also a company or entity.

12         In the case of Count Two, the Indictment charges that, between April and May 2016, the

13  defendant caused the Backup Files to be communicated, delivered, and transmitted to WikiLeaks.  In the

14  case of Count Three, the Indictment charges that, in or about September 2018, the defendant transmitted

15  the documents, writings, and notes at issue to a third party that the United States had not authorized to

16  receive that information.

17         An act is done "willfully" if it is done voluntarily and intentionally and with the specific intent to

18  do something the law forbids, that is to say, with a bad purpose either to disobey or disregard the law.  In

19  determining whether a defendant has acted willfully, however, it is not necessary for the Government to

20  establish that the defendant was aware of the specific law or rule that his conduct may be violating.

21         Additionally, the Government need not prove that the defendant actually delivered the

22  information himself — it is enough to prove that he caused the act to be done.

26

1    In deciding whether a person was entitled to receive information, you may consider all the

2    evidence introduced at trial, including any evidence concerning the classification status of the document

3    or testimony concerning limitations on access to the document.

4

5    <u>Count Four: Attempted Illegal Transmission of Unlawfully Possessed NDI</u>

6    Let me turn, then, to Count Four, which charges the defendant with attempted illegal

7    transmission of unlawfully possessed NDI.  The Indictment charges that, between July and October

8    2018, the defendant, without authorization, possessed documents, writings, and notes regarding

9    tradecraft techniques, operations, and particular intelligence-gathering tools used by the CIA and that he

10   attempted to transmit such documents, writings, and notes to third parties whom the United States had

11   not authorized to receive that information.  In particular, Count Four is based on the following passages

12   in Government Exhibits 801 and 809 — and the following passages alone:

13   • Government Exhibit 801, page 3: "Which brings me to my next point — Do you know
14     what my specialty was at the CIA?  Do you know what I did for fun?  Data hiding and
15     crypto.  I designed and wrote software to conceal data in a custom-designed file system
16     contained with the drive slackspace or hidden partitions.  I disguised data.  I split data
17     across files and file systems to conceal the crypto—analysis tools could NEVER detect
18     random or pseudo-random data indicative of potential crypto.  I designed and wrote my
19     own crypto—how better to fool bafoons like forensic examiners ad the FBI than to have
20     custom software that doesn't fit into their 2-week class where they become forensic
21     'experts.'"

22   • Government Exhibit 809, page 8: "[tool from vendor report] — Bartender for [redacted]
23     [vendor]."

24   • Government Exhibit 809, page 10: "Additionally, [Tool described in vendor report] is in
25     fact Bartender.  A CIA toolset for [operators] to configure for [redacted] deployment."

26   • Government Exhibit 809, page 11: "[@vendor] discovered [tool] in 2016, which is really
27     the CIA's Bartender tool suite.  Bartender was written to [redacted] deploy against
28     various targets.  The source code is available in the Vault 7 release."

1          For Count Four, you should follow the instructions I previously gave you with respect to Counts

2    Two and Three.  To be clear, in deciding whether the second element, concerning national defense

3    information or NDI, is satisfied, you may consider only the foregoing passages.

4          Count Four differs from Counts Two and Three, however, in one important way: For purposes of

5    Count Four, you may find the defendant guilty if you find that the Government has proved beyond a

6    reasonable doubt that the defendant *attempted* to illegally transmit NDI.

7          To prove the charge of *attempted* illegal transmission of NDI, the Government must prove each

8    of the following two elements beyond a reasonable doubt:

9          *First*, the defendant intended to commit the crime of illegally transmitting NDI; and

10         *Second*, the defendant did some act that was a substantial step in an effort to bring about or

11   accomplish the crime.

12         Mere intention to commit a specific crime does not amount to an attempted crime.  In order to

13   convict the defendant of an attempt to illegally transmit NDI, you must find beyond a reasonable doubt

14   that he intended to commit the crime charged, and that he took some action which was a substantial step

15   toward the commission of that crime.

16         In determining whether the defendant's actions amounted to a substantial step toward the

17   commission of the crime, it is necessary to distinguish between mere preparation on the one hand, and

18   the actual doing of the criminal deed on the other.  Mere preparation, which may consist of planning the

19   offense, or of devising, obtaining or arranging a means for its commission, is not an attempt, although

20   some preparations may amount to an attempt.  The acts of a person who intends to commit a crime will

21   constitute an attempt when the acts themselves clearly indicate an intent to commit the crime, and the

22   acts are a substantial step in a course of conduct planned to culminate in the commission of the crime.

23

1    <u>Count Five: Unauthorized Access to a Computer to Obtain Classified Information — Elements</u>

2         Let me turn, then, to Count Five, which charges the defendant with unauthorized access to a

3    computer to obtain classified information.

4         In order to find the defendant guilty of Count Five, the Government must prove the following

5    four elements beyond a reasonable doubt:

6         *First*, that, between April 18 and April 20, 2016, the defendant either accessed a computer

7    without authorization or accessed a computer with authorization, but exceeded his authority in accessing

8    the information in question;

9         *Second*, that the defendant knowingly accessed that computer;

10        *Third*, that the defendant obtained information protected against unauthorized disclosure for

11   reasons of national defense or foreign relations and that the defendant had reason to believe that the

12   information could be used to the injury of the United States or to the advantage of a foreign nation; and

13        *Fourth*, that the defendant willfully communicated, delivered, transmitted, *or* caused to be

14   communicated, delivered, or transmitted *or* attempted to communicate, deliver or transmit or cause to be

15   communicated, delivered or transmitted, the information to a person who was not entitled to receive it.

16        Now let me elaborate on each of these four elements.

17

18        <u>Count Five — First Element: Unauthorized Access</u>

19        The first element that the Government must prove beyond a reasonable doubt for purpose of

20   Count Five is that the defendant either (1) accessed a computer without authorization or (2) accessed a

21   computer with authorization, but exceeded his authority in accessing the information in question.  The

22   Indictment charges that, between April 18 and April 20, 2016, the defendant accessed a computer

23   without authorization or exceeded his authorized access on a computer to obtain the Backup Files.

29

1    In this case, the Indictment charges both that the defendant did not have authorized access to the

2    computer at issue and that the defendant, while authorized to access the computer, exceeded his

3    authority in accessing the information in question.  You need not find both to be true in order to find this

4    element satisfied beyond a reasonable doubt.

5    To prove that the defendant exceeded his authority, the Government must prove beyond a

6    reasonable doubt that the defendant had access to the computer and used that access to obtain or alter

7    information in the computer that the defendant was not entitled to obtain or alter.  Note that an

8    individual does not exceed authorized access when he accesses a computer to obtain information he is

9    authorized to access — even if he obtains the information for an improper purpose.

10

11    <u>Count Five — Second Element: Knowledge</u>

12    The second element that the Government must prove beyond a reasonable doubt for purpose of

13    Count Five is that the defendant acted knowingly in accessing the computer without authorization *or*

14    outside the scope of his authority.

15    "Knowingly" means to act voluntarily and deliberately, rather than mistakenly or inadvertently.

16    The question of whether a person acted knowingly is a question of fact for you to determine, like any

17    other fact question.  The question involves one's state of mind.

18    Direct proof of knowledge is almost never available.  It would be a rare case when it could be

19    shown that a person wrote or stated that, as of a given time in the past, he committed an act with

20    knowledge.  Such proof is not required.  The ultimate fact of knowledge, though subjective, may be

21    established by circumstantial evidence, based upon a person's outward manifestations, his words, his

22    conduct, his acts and all the surrounding circumstances disclosed by the evidence and the rational or

23    logical inferences that may be drawn from them.

1    The Government can also meet its burden of showing that a defendant had actual knowledge of

2    the accessing of a computer without authorization if it establishes beyond a reasonable doubt that he

3    acted with deliberate disregard of whether he was so authorized, or with a conscious purpose to avoid

4    learning the nature and scope of his authorization.  Alternatively, the Government may satisfy its burden

5    of proving knowledge by establishing beyond a reasonable doubt that the defendant acted with an

6    awareness of the high probability that he was acting without authorization, unless the defendant actually

7    believed that he had authorization to access a computer in the manner described in the Indictment.  This

8    guilty knowledge, however, cannot be established by demonstrating that the defendant was merely

9    negligent or foolish.

10

11    <u>Count Five — Third Element: Protected Information</u>

12    The third element that the Government must prove beyond a reasonable doubt for purpose of

13    Count Five is that the defendant obtained information protected against unauthorized disclosure for

14    reasons of national defense or foreign relations with reason to believe such information could be used

15    against the interests of the United States or to the advantage of a foreign nation.

16    The United States may determine that information requires protection against unauthorized

17    disclosure for reasons of national defense or foreign relations either by Executive Order or by statute.

18    This element requires the Government to prove that, at the time the defendant obtained the

19    protected information, he had reason to believe that the information could be used against the interests

20    of the United States or to the advantage of a foreign nation.

21

1      <u>Count Five — Fourth Element: Willful Communication</u>

2      The fourth element that the Government must prove beyond a reasonable doubt for purpose of

3      Count Five is that the defendant willfully communicated, delivered, transmitted, or caused to be

4      communicated, delivered, or transmitted or attempted to communicate, deliver or transmit the protected

5      information obtained to a person who was not entitled to receive it.  I have already explained what

6      "willfully" means and you should apply those instructions here as well.

7

8      <u>Count Six: Unauthorized Access of a Computer to Obtain Information from a Department or Agency of</u>

9      <u>the United States — Elements</u>

10      Count Six charges the defendant with unauthorized access to a computer to obtain information

11      from a department or agency of the United States.

12      In order to find the defendant guilty of Count Six, the Government must prove the following

13      three elements beyond a reasonable doubt:

14      *First*, that, on or about April 20, 2016, the defendant either accessed a computer without

15      authorization or accessed a computer with authorization, but exceeded his authority in accessing the

16      information in question;

17      *Second*, that the defendant acted intentionally; and

18      *Third*, that the defendant obtained information from a department or agency of the United States.

19      Once again, I will elaborate on each of these three elements.

20

21      <u>Count Six — First Element: Unauthorized Access</u>

22      The first element that the Government must prove beyond a reasonable doubt for purpose of

23      Count Six is that the defendant either (1) accessed a computer without authorization or (2) accessed a

1    computer with authorization, but exceeded his authority in accessing the information in question.  The

2    Indictment charges that, on or about April 20, 2016, the defendant accessed a computer without

3    authorization and exceeded his authorized access on a computer to copy the Backup Files.

4         I have already instructed you about this element in connection with Count Five, and you should

5    follow that instruction with respect to Count Six as well.

6

7         Count Six — Second Element: Intentional Conduct

8         The second element that the Government must prove beyond a reasonable doubt for purpose of

9    Count Six is that the defendant acted intentionally in accessing the computer without authorization *or*

10   outside the scope of his authority.

11        "Intentionally" means to act deliberately and purposefully.  That is, the defendant's acts must

12   have been the product of the defendant's conscious objective rather than the product of a mistake or

13   accident.

14        The question of whether a person acted intentionally is a question of fact for you to determine,

15   like any other fact question.  The question involves one's state of mind.  Direct proof of intent is almost

16   never available.  It would be a rare case when it could be shown that a person wrote or stated that, as of

17   a given time in the past, he committed an act intentionally.  Such proof is not required.  The ultimate fact

18   of intent, though subjective, may be established by circumstantial evidence, based upon a person's

19   outward manifestations, his words, his conduct, his acts and all the surrounding circumstances disclosed

20   by the evidence and the rational or logical inferences that may be drawn from them.

21

1    Count Six — Third Element: U.S. Government Information

2    The third element that the Government must prove beyond a reasonable doubt for purpose of

3    Count Six is that the defendant obtained the information from any department or agency of the United

4    States.  The CIA is a department or agency of the United States.  But it is for you to determine if the

5    Government has proved beyond a reasonable doubt that, without authorization, the defendant obtained

6    information contained in a computer of the CIA.

7

8    Counts Seven and Eight: Causing Transmission of a Harmful Computer Program, Information, Code, or

9    Command — Elements

10   Let me turn, then, to Counts Seven and Eight, each of which charges the defendant with causing

11   the transmission of a harmful computer program, information, code or command.  Once again, although

12   I will explain these two counts together, I remind you that you must consider them separately and return

13   a separate verdict on each count.

14   In order to find the defendant guilty of Count Seven or Count Eight, the Government must prove

15   the following four elements beyond a reasonable doubt:

16   *First*, that, on or about April 20, 2016, the defendant knowingly caused the unauthorized

17   transmission of a program, information, code, or command to a protected computer;

18   *Second*, that the defendant caused the transmission of the program, information, code, or

19   command with the intent to damage or deny services to a computer or computer system;

20   *Third*, that the defendant thereby caused damage; and

21   *Fourth*, that the defendant's actions resulted in damage to a computer system used by or for an

22   entity of the United States Government in furtherance of the administration of justice, national defense,

23   or national security.

1    Now let me elaborate on each of these four elements.

2

3    <u>Counts Seven and Eight — First Element: Unauthorized Transmission of a Computer Program</u>

4    The first element that the Government must prove beyond a reasonable doubt for purpose of

5    Counts Seven and Eight is that the defendant knowingly caused the unauthorized transmission of a

6    program, information, code, or command to a protected computer.

7    In the case of Count Seven, the Indictment charges that the defendant transmitted commands on

8    DEVLAN to manipulate the state of the Confluence virtual server on DEVLAN, including by

9    (1) reverting the virtual server to a "snapshot," or past version of the system as it appeared on April 16,

10   2016; (2) restoring the system to a snapshot the defendant created on April 20, 2016; and (3)

11   subsequently deleting that snapshot, thus erasing the records of his activities on the system.

12   In the case of Count Eight, the Indictment charges that the defendant transmitted commands on

13   DEVLAN to delete log files of activity on DEVLAN.

14   This element requires that the Government prove that the defendant's transmission of the

15   computer program, information, code, or command was unauthorized.  Under the statute, this means that

16   the transmission occurred without the permission of the person or entity who owns or is responsible for

17   the computer receiving the transmitted program, information, code, or command.

18   This element also requires that the Government prove that the defendant transmitted the

19   program, information, code, or command to a "protected computer."  As relevant to this case, this means

20   that the Government must prove that the computer was exclusively for the use of the United States

21   Government.

35

1    Finally, this element requires that the Government prove that the defendant transmitted the

2    program, information, code, or command knowingly.  I previously instructed you about the meaning of

3    "knowingly" and you should apply those instructions here as well.

4

5    Counts Seven and Eight — Second Element: Intent to Cause Damage or Deny Service

6    The second element that the Government must prove beyond a reasonable doubt for purpose of

7    Counts Seven and Eight is that the defendant caused the transmission of the program, information, code,

8    or command at issue with the intent to cause damage, as I will define that term for you.

9    To act with "intent" means to act intentionally — that is, deliberately and purposefully.  In other

10   words, the defendant's acts must have been the product of the defendant's conscious objective, rather

11   than the product of a mistake or accident.

12

13   Counts Seven and Eight — Third Element: Causing Damage

14   The third element that the Government must prove beyond a reasonable doubt for purpose of

15   Counts Seven and Eight is that by transmitting the program, information, code, or command at issue, the

16   defendant caused damage.  "Damage" means any impairment to the integrity or availability of data, a

17   program, a system, or information.

18

19   Counts Seven and Eight — Fourth Element: Harmful Consequences

20   The fourth element that the Government must prove beyond a reasonable doubt for purpose of

21   Counts Seven and Eight is that the defendant's actions disrupted a computer system used by or for any

22   government agency in furtherance of the administration of justice, national defense or national security.

23

1    <u>Count Nine: Obstruction of Justice — Elements</u>

2        Finally, Count Nine charges the defendant with obstruction of justice.

3        In order to find the defendant guilty of Count Nine, the Government must prove the following

4    three elements beyond a reasonable doubt:

5        *First*, that, between March and June of 2017, there was a proceeding pending before a federal

6    court or grand jury;

7        *Second*, that the defendant knew of the proceeding; and

8        *Third*, that the defendant corruptly acted to obstruct or impede, or endeavored to obstruct or

9    impede the proceeding.

10        Let me elaborate on each of these three elements.

11

12        <u>Count Nine — First Element: Official Proceeding</u>

13        The first element that the Government must prove beyond a reasonable doubt for purpose of

14    Count Nine is that, between March and June of 2017, there was a proceeding pending before a federal

15    grand jury or a federal court.  A grand jury proceeding commences, at a minimum, when a grand jury

16    subpoena is issued in connection with a grand jury investigation.  The grand jurors need not have heard

17    testimony or taken a role in the decision to issue a subpoena.

18

19        <u>Count Nine — Second Element: Knowledge</u>

20        The second element that the Government must prove beyond a reasonable doubt for purpose of

21    Count Nine is that the defendant knew that such a proceeding was in progress when he corruptly acted to

22    obstruct or impede the proceeding (as I will explain those terms to you in a moment).

1      I previously instructed you about the defendant's knowledge in connection with Count Five, and

2    you should follow those instruction with respect to Count Nine as well.

3

4    <u>Count Nine — Third Element: Corruptly Acted to Obstruct or Impede</u>

5      The third element that the Government must prove beyond a reasonable doubt for purpose of

6    Count Nine is that the defendant did corruptly obstruct or impede, or corruptly endeavor to obstruct or

7    impede the proceeding at issue.

8      The word "corruptly" means simply having the improper intent or purpose of obstructing justice.

9    To establish that the defendant acted with corrupt intent, the Government also must prove that there

10   existed a "nexus" or connection between the defendant's conduct and the grand jury proceeding.  That

11   is, the Government must prove some relationship in time, causation, or logic between the defendant's

12   action and the grand jury proceeding, so that the defendant's conduct may be said to have the natural

13   and probable effect of interfering with that proceeding.  Where the discretionary actions of a third party

14   are required to obstruct the grand jury proceeding, the nexus requirement is satisfied if it was

15   foreseeable to the defendant that the third party would act on the defendant's conduct in such a way as to

16   obstruct the proceeding.

17     The term "endeavor" is designed to reach all conduct that is aimed at influencing, intimidating,

18   or impeding the conduct of the proceeding.  Success of the endeavor is not an element of the crime.

19   Thus, it is sufficient to satisfy this element if you find that the defendant knowingly acted in a way that

20   obstructed or had the natural and probable effect of obstructing justice from being duly administered.

21     Here, the Indictment alleges that the defendant corruptly obstructed or impeded, or corruptly

22   endeavored to obstruct or impede, a grand jury proceeding by making certain statements to the FBI.  In

38

1   particular, the Indictment charges that the defendant made the following false or misleading statements

2   to special agents of the FBI:

3       1.   He denied having any involvement in unlawfully disclosing the Backup Files;

4       2.   He stated that he had not kept a copy of an email he sent to the Office of Inspector

5          General containing false allegations of security issues at the CIA;

6       3.   He denied having any classified materials in his apartment;

7       4.   He denied ever taking information from the CIA and transferring it to an unclassified

8          network;

9       5.   He denied ever making DEVLAN vulnerable to the theft of data;

10       6.   He denied housing information from the CIA on his home computer; and

11       7.   He denied ever removing any classified information from the CIA and taking it home.

12   The Government need not prove that the statements to the FBI were actually false or misleading if it

13   otherwise proves beyond a reasonable doubt that the defendant gave answers in a corrupt endeavor to

14   influence, obstruct, or impede the grand jury investigation by giving such statements to the FBI.

15         That said, false or misleading statements alone do not provide a basis for an obstruction of

16   justice conviction unless the statements had the natural and probable effect of impeding the due

17   administration of justice.  Thus, where the allegation is that the defendant endeavored to influence,

18   obstruct, or impede the grand jury's investigation by making false or misleading statements to the FBI,

19   the Government must prove beyond a reasonable doubt that the defendant knowingly gave false or

20   misleading answers in his statements to the FBI *and* that he knew that those false statements were likely

21   to obstruct the grand jury proceeding.  It is not enough for the Government to prove that the defendant

22   had the impression that statements he made to the FBI would be conveyed to the grand jury; the

23   Government must prove beyond a reasonable doubt that the defendant knew that his conduct was likely

1  to obstruct the proceeding — for instance, by proving that the defendant knew that it was likely that his

2  allegedly false or misleading statements made to the FBI would be conveyed to the grand jury.

3         I remind you that, to find the defendant guilty on Count Nine, the Government must prove

4  beyond a reasonable doubt that the defendant knew that a grand jury proceeding was in progress when

5  he corruptly acted to obstruct or impede the proceeding.  Unless and until the defendant knew there was

6  a grand jury proceeding in progress, he could not, by definition, have acted corruptly to obstruct or

7  impede, or corruptly endeavored to obstruct or impede, the proceeding.  For that reason, I instruct you

8  that you may not find this element of Count Nine satisfied based on the defendant's conduct, including

9  any statement he may have made, *before* he had knowledge of an ongoing grand jury proceeding.

10        Finally, you need not find that a corrupt intent was the only purpose for the defendant's actions,

11 so long as you find that he acted, at least in part, with that improper purpose.  You may consider all the

12 evidence and surrounding circumstances in determining whether the defendant acted corruptly.

13

14 Venue

15        In addition to all the elements of each of the charges that I have just described for you, for three

16 of the counts — specifically, Counts Three, Four, and Nine — you must also decide whether any act in

17 furtherance of the crime charged occurred within the Southern District of New York.  (You do not need

18 to consider this issue, which is called venue, for purposes of Counts One, Two, Five, Six, Seven, or

19 Eight.  The Government and the defendant have agreed to venue here on those counts, even though the

20 conduct involved occurred in Virginia.)

21        The Southern District of New York includes, among other places, Manhattan.  The Government

22 need not prove that the crimes charged in Counts Three, Four and Nine were committed in this District

23 or that the defendant himself was present here.  It is sufficient to satisfy this element if any act in

1   furtherance of the crimes charged in the count you are considering occurred in the Southern District of

2   New York.

3          I should note that on this issue — and this issue alone — the Government need not prove venue

4   beyond a reasonable doubt, but only by a mere preponderance of the evidence.  Thus, the Government

5   has satisfied its venue obligations if you conclude that it is more likely than not that any act in

6   furtherance of the crime charged in the count you are considering occurred in the Southern District and

7   that it was reasonably foreseeable to the defendant that the act would take place in the Southern District

8   of New York.  If you find that the Government has failed to prove this venue requirement with respect to

9   any of Counts Three, Four, and Nine, then you must acquit the defendant on that Count.

10

11   <u>Motive</u>

12          Proof of motive is not a necessary element of the crimes with which the defendant is charged.

13   Proof of motive does not establish guilt.  Nor does the lack of proof of motive establish that a defendant

14   is not guilty.  If the Government has proved the defendant's guilt beyond a reasonable doubt, it is

15   immaterial what the motive for the crime or crimes may be, or whether any motive has been shown at

16   all.  The presence or absence of motive is, however, a circumstance that you may consider as bearing on

17   the defendant's intent.

18

19   <u>Variance in Dates</u>

20          It does not matter if the evidence you heard at trial indicates that a particular act occurred on a

21   different date.  The law requires only a substantial similarity between the dates alleged in the Indictment

22   and the dates established by the evidence.

23

1        ### III. CONCLUDING INSTRUCTIONS

2    <u>COVID-19 Protocols</u>

3        In a few minutes, you are going to go into the jury room and begin your deliberations.  During

4    your deliberations, please continue to adhere to the safety protocols that we have used throughout the

5    trial, including social distancing and masking.  We have taken those precautions, on the advice of our

6    medical experts, to ensure that everyone remains safe and healthy during trials.  In addition, people have

7    different levels of anxiety and risk tolerance when it comes to COVID-19.  By adhering to the protocols,

8    you not only ensure that everyone remains safe and healthy, but also respect the fact that your fellow

9    jurors may or may not have the same level of comfort with the current situation that you have.

10

11   <u>Selection of the Foreperson</u>

12       After you retire to begin your deliberations, your first task will be to select a foreperson.  The

13   foreperson has no greater voice or authority than any other juror but is the person who will communicate

14   with me when questions arise and when you have reached a verdict and who will be asked in open court

15   to pass your completed Verdict Form to me.  Notes should be signed by the foreperson and should

16   include the date and time they were sent.  They should also be as clear and precise as possible.  Any

17   notes from the jury will become part of the record in this case.  So please be as clear and specific as you

18   can be in any notes that you send.  Do not tell me or anyone else how the jury stands on any issue until

19   after a unanimous verdict is reached.

20

21   <u>Right to See Exhibits and Hear Testimony</u>

22       All of the exhibits will be given to you near the start of deliberations.  The bulk of the

23   documentary evidence will be provided to you in electronic form, in files which can be pulled up on a

1    screen in the jury room.  Government Exhibits 1 and 1203-28 will be provided on separate laptops and

2    cannot be pulled up on the screen in the jury room.  In addition, you will also be provided with a list of

3    all the exhibits that were received into evidence.  When you retire to deliberate, my staff with provide

4    you with information on how to access this evidence in the jury room.

5           If you prefer to view any evidence here in the courtroom or if you want any of the testimony

6    submitted to you or read back to you, you may also request that.  Keep in mind that if you ask for

7    testimony, however, the court reporter must search through her notes, the parties must agree on what

8    portions of testimony may be called for, and if they disagree, I must resolve those disagreements.  That

9    can be a time-consuming process.  So please try to be as specific as you possibly can in requesting

10   portions of the testimony, if you do.

11          Again, your requests for testimony — in fact, any communication with the Court — should be

12   made to me in writing, signed by your foreperson with the date and time, and given to one of the Court

13   Security Officers.

14

15   Juror Note-Taking

16          If any one of you took notes during the course of the trial, you should not show your notes to, or

17   discuss your notes with, any other jurors during your deliberations.  Any notes you have taken are to be

18   used solely to assist you.  The fact that a particular juror has taken notes entitles that juror's views to no

19   greater weight than those of any other juror.  Finally, your notes are not to substitute for your

20   recollection of the evidence in the case.  If, during your deliberations, you have any doubt as to any of

21   the testimony, you may — as I just told you — request that the official trial transcript that has been

22   made of these proceedings be submitted or read back to you.

23

1    <u>Bias or Sympathy as Juror</u>

2         All of us, no matter how hard we try, tend to look at others and weigh what they have to say

3    through the lens of our own experience and background.  We each have a tendency to stereotype others

4    and make assumptions about them.  Often, we see life and evaluate evidence through a clouded filter

5    that tends to favor those like ourselves.  You must do the best you can to put aside such stereotypes, for

6    all litigants and witnesses are entitled to a level playing field.

7         Indeed, under your oath as jurors, you are not to be swayed by bias or sympathy.  You are to be

8    guided solely by the evidence in this case, and as you sift through the evidence, the crucial question that

9    you must ask yourselves for each count is:  Has the Government proved each element beyond a

10   reasonable doubt?

11        It is for you and you alone to decide whether the Government has proved that the defendant is

12   guilty of the crimes charged, solely on the basis of the evidence and subject to the law as I have

13   instructed you.

14        It must be clear to you that once you let prejudice, bias, or sympathy interfere with your thinking,

15   there is a risk that you will not arrive at a true and just verdict.

16        If you have a reasonable doubt as to the defendant's guilt with respect to a particular count, then

17   you must render a verdict of not guilty on that particular count.  On the other hand, if you should find

18   that the Government has met its burden of proving the guilt of the defendant beyond a reasonable doubt

19   with respect to a particular count, then you should not hesitate because of sympathy or any other reason

20   to render a verdict of guilty on that count.

21        I also caution you that, under your oath as jurors, you cannot allow to enter into your

22   deliberations any consideration of the punishment that may be imposed upon the defendant if he is

23   convicted.  The duty of imposing a sentence in the event of conviction rests exclusively with the Court,

1   and the issue of punishment may not affect your deliberations as to whether the Government has proved

2   the defendant's guilt beyond a reasonable doubt.

3

4   <u>Duty to Deliberate</u>

5   The most important part of this case, members of the jury, is the part that you as jurors are now

6   about to play as you deliberate on the issues of fact.  I know you will try the issues that have been

7   presented to you according to the oath that you have taken as jurors.  In that oath you promised that you

8   would well and truly try the issues joined in this case and a true verdict render.

9   As you deliberate, please listen to the opinions of your fellow jurors, and ask for an opportunity

10  to express your own views.  Every juror should be heard.  No one juror should hold the center stage in

11  the jury room and no one juror should control or monopolize the deliberations.  If, after listening to your

12  fellow jurors and if, after stating your own view, you become convinced that your view is wrong, do not

13  hesitate because of stubbornness or pride to change your view.  On the other hand, do not surrender your

14  honest convictions and beliefs solely because of the opinions of your fellow jurors or because you are

15  outnumbered.

16  Your verdict must be unanimous.  If at any time you are not in agreement, you are instructed that

17  you are not to reveal the standing of the jurors, that is, the split of the vote, to anyone, including me, at

18  any time during your deliberations.

19

20  <u>Return of the Verdict</u>

21  We have prepared a Verdict Form for you to use in recording your decisions, a copy of which is

22  attached to these instructions.  Do not write on your individual copies of the Verdict Form.  My staff

1   will give the official Verdict Form to Juror Number One, who should give it to the foreperson after the

2   foreperson has been selected.

3          You should draw no inference from the questions on the Verdict Form as to what your verdict

4   should be.  The questions are not to be taken as any indication that I have any opinion as to how they

5   should be answered.

6          After you have reached a verdict, the foreperson should fill in the Verdict Form and note the date

7   and time, and you should all sign the Verdict Form.  The foreperson should then give a note — **not** the

8   Verdict Form itself — to the Court Security Officer outside your door stating that you have reached a

9   verdict.  Do not specify what the verdict is in your note.  Instead, the foreperson should retain the

10  Verdict Form and hand it to me in open court when I ask for it.

11         I will stress again that each of you must be in agreement with the verdict that is announced in

12  court.  Once your verdict is announced in open court and officially recorded, it cannot ordinarily be

13  revoked.

14

15  <u>Closing Comments</u>

16         Finally, I say this, not because I think it is necessary, but because it is the custom in this

17  courthouse to say it: You should treat each other with courtesy and respect during your deliberations.

18         All litigants stand equal in this room.  All litigants stand equal before the bar of justice.  All

19  litigants stand equal before you.  Your duty is to decide between these parties fairly and impartially, and

20  to see that justice is done.

21         Under your oath as jurors, you are not to be swayed by sympathy or prejudice.  You should be

22  guided solely by the evidence presented during the trial and the law as I gave it to you, without regard to

23  the consequences of your decision.  You have been chosen to try the issues of fact and reach a verdict on

1    the basis of the evidence or lack of evidence.  If you let sympathy or prejudice interfere with your clear

2    thinking, there is a risk that you will not arrive at a just verdict.  You must make a fair and impartial

3    decision so that you will arrive at the just verdict.

4          Members of the jury, I ask your patience for a few moments longer.  It is necessary for me to

5    spend a few moments with the parties and the court reporter at the side bar.  I will ask you to remain

6    patiently in the jury box, without speaking to each other, and we will return in just a moment to submit

7    the case to you.  Thank you.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
UNITED STATES OF AMERICA,                                         :
                                                                  :            17 Cr. 548 (JMF)
   -v-                                                            :
                                                                  :
JOSHUA ADAM SCHULTE,                                              :            <u>VERDICT FORM</u>
                                                                  :
                  Defendant.                       :
                                                                  :
------------------------------------------------------------------X

***All Answers Must Be Unanimous***

**<u>Count One</u>: Illegal Gathering of NDI (2016)**

   Not Guilty _____      Guilty _____

**<u>Count Two</u>: Illegal Transmission of Unlawfully Possessed NDI (2016)**

   Not Guilty _____      Guilty _____

**<u>Count Three</u>: Illegal Transmission of Unlawfully Possessed NDI (2018)**

   Not Guilty _____      Guilty _____

**<u>Count Four</u>: Attempted Illegal Transmission of Unlawfully Possessed NDI (2018)**

   Not Guilty _____      Guilty _____

**<u>Count Five</u>: Unauthorized Access to a Computer to Obtain Classified Information (2016)**

   Not Guilty _____      Guilty _____

**<u>Count Six</u>: Unauthorized Access to a Computer to Obtain Information from a Department or Agency of the United States (2016)**

   Not Guilty _____      Guilty _____

**<u>Count Seven</u>: Causing Transmission of a Harmful Computer Program, Information, Code, or Command (Manipulation of the State of the Confluence Virtual Server) (2016)**

   Not Guilty _____      Guilty _____

***Continue on the Next Page***

**Count Eight**: Causing Transmission of a Harmful Computer Program, Information, Code, or Command (Deletion of Log Files) (2016)

Not Guilty _____          Guilty _____

**Count Nine**: Obstruction of Justice (2017)

Not Guilty _____          Guilty _____

*After completing the Verdict Form, please sign your names in the spaces provided below, fill in the date and time, and inform the Court Security Officer that you have reached a verdict.*

_____          _____
Foreperson

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

Date and Time: _____

*Once you have signed the Verdict Form, please give a note — NOT the Verdict Form itself — to the Court Security Officer stating that you have reached a verdict.*

2