M6dWsch1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                          17 Cr. 548 (JMF)

 5   JOSHUA ADAM SCHULTE,

 6              Defendant.
                                            Trial
 7   ------------------------------x

 8                                          New York, N.Y.
                                            June 13, 2022
 9                                          10:15 a.m.

10   Before:

11
                          HON. JESSE M. FURMAN,
12
                                            District Judge
13
                               APPEARANCES
14
     DAMIAN WILLIAMS
15        United States Attorney for the
          Southern District of New York
16   BY:  DAVID W. DENTON JR.
          MICHAEL D. LOCKARD
17        Assistant United States Attorneys

18

19   JOSHUA A. SCHULTE, Defendant Pro Se

20

21   SABRINA P. SHROFF
     DEBORAH A. COLSON
          Standby Attorneys for Defendant
22
     Also Present:  Charlotte Cooper, Paralegal Specialist
23

24

25
```

M6dWsch1

1          THE COURT:  We've already appeared in the classified

2     setting, but since this is the beginning of our public setting

3     today, in the matter of United States v. Schulte, 17 Cr. 548,

4     counsel, would you state your appearances for the record, and

5     Mr. Schulte.

6          MR. DENTON:  Good morning, your Honor.  David Denton

7     and Michael Lockard for the government, and with us is

8     Paralegal Charlotte Cooper.

9          THE COURT:  Good morning to you.

10         Mr. Schulte.

11         MR. SCHULTE:  Josh Schulte, appearing *pro se*.

12         MS. SHROFF:  Good morning, your Honor.  Standby

13    counsel Deborah Colson and Sabrina Shroff.

14         THE COURT:  All right.  Good morning.

15         We have a few things to cover before we bring the jury

16    pool up here.

17         One thing you'll notice is that Ms. Smallman is not

18    here.  Unfortunately, I anticipate that that will be true for

19    the next five to ten days -- you can probably figure out what

20    the situation is there -- but we will have to make do.  It will

21    make things a little bit more complicated, but thankfully,

22    Mr. Lee here has agreed to step in, at least for today and

23    maybe the coming next few days.  I don't think he is cleared,

24    so keep that in mind if there are any issues of that sort.

25         In terms of covering things that need to be addressed

M6dWsch1

1    here, first, Mr. Schulte's letter on Friday requesting an

2    adjournment after jury selection, that request is denied.

3    First, the fact that Mr. Schulte did not anticipate how hard it

4    is to prepare for trial, let alone how hard it is for a *pro se*

5    litigant, is obviously not a basis for adjournment.  He was

6    warned about the drawbacks of proceeding *pro se* and chose to go

7    *pro se* notwithstanding those, and the fact that trials are hard

8    to prepare for is not a reason to grant an adjournment trial,

9    nor is the fact that he assumed incorrectly what order the

10   government would call its witnesses in this trial.  That

11   happens in all sorts of trials, and if anything, he just had

12   more information going into this trial than most litigants do

13   going into trial.  And finally, I had previously denied the

14   request for an adjournment based on the laptop and medication

15   issues, and nothing Mr. Schulte said in his letter Friday

16   persuades me that that requires reconsideration.

17         That would be enough to deny the application, but for

18   the sake of the record, I feel compelled to say a few other

19   things.

20         First, Mr. Schulte has known about this trial date and

21   that it was a firm date for over six months, since it was set

22   on December 6, 2021.  Moreover, I initially set an earlier date

23   but granted his request to delay it by approximately a month

24   not based on the need to prepare but based on the availability

25   of his expert.

M6dWsch1

1          Second, I have gone through what I can only describe

2    as extraordinary lengths to ensure that Mr. Schulte has what he

3    needs to prepare for trial and really above and beyond what the

4    law entitles him to.  I arranged for him to have more SCIF

5    time, more time in the Sand law library, and so on.  As you

6    know, I've regularly communicated both with the MDC directly

7    and the United States Marshal, something that I have done in no

8    other case to date, and I have basically gone to extreme

9    lengths to ensure that most of his requests are granted,

10   subject to some policy issues and security-type issues.  But

11   the bottom line is I have done what I can to ensure that he is

12   able to prepare for trial.

13          Third, the supposed problems at the MDC would weigh

14   more heavily in the balance if Mr. Schulte hadn't been

15   complaining on a regular basis about such things.  First, that

16   record and what I've heard from the MDC casts some doubt on

17   Mr. Schulte's claims, but more importantly, even if they are

18   accurate, to the extent there have been such problems,

19   Mr. Schulte has long been on notice to make the best use of his

20   time and ensure that he doesn't leave his preparations to the

21   last minute, given the possibility of such problems.  And

22   finally, and perhaps most importantly, Mr. Schulte has not made

23   the best use of his time.  Since I was reassigned this case,

24   Mr. Schulte has filed a staggering number of motions and other

25   applications.  By my rough count or my law clerk's rough count,

M6dWsch1

1    close to 100 motions have been filed since I got this case last

2    fall and that I don't even think includes relatively minor

3    requests.  The vast majority of those motions were filed by

4    Mr. Schulte, and while some of them raised colorable, if not

5    significant, issues, most did not.  Indeed, many -- I did not

6    try to count -- simply reraised arguments that had been

7    considered and rejected by one or both of Judge Crotty and me.

8    After that, Mr. Schulte's 17-some-odd appeals that he has

9    filed, notwithstanding the lack of a final judgment, which, by

10   the way, is why I have continued to proceed despite those

11   appeals and the 15 or so civil cases that Mr. Schulte has filed

12   in this district alone, it is little wonder that Mr. Schulte

13   has not had enough time to finish his preparations for trial.

14           To be clear, I'm not faulting, let alone punishing,

15   Mr. Schulte for availing himself of the Court to seek

16   appropriate relief.  Candidly, his litigation strategy writ

17   large has bordered on abuse of the court system.  My point is

18   simply having made the choice to spend his finite time in the

19   manner in which he has that he has to live with the

20   consequences of those choices.  So bottom line is we have had

21   this trial date for six-plus months.  It is a firm date.  Once

22   we have a jury, we will proceed expeditiously, and the request

23   for a two-day adjournment after we have a jury is denied.

24           Second, just to make a record, I did communicate with

25   the MDC last week concerning some of the issues that

M6dWsch1

Mr. Schulte has raised.  I was assured at least on the weekdays

last week that the computer in the Sand library was up and

running and had been checked.  I was also told that Mr. Schulte

was provided with a grooming kit, and he appears indeed to have

groomed himself today.  So I assume that that is accurate.  He

also did receive, obviously, civilian clothing, since he is

dressed accordingly today.

          Mr. Schulte, one note, at times, your mask has dipped

below your nose and I have not necessarily called you on it or

enforced it, but I would encourage you to ensure that it

doesn't going forward.  I don't think you want the jury to

think that you're not abiding by the rules, and I don't want to

call you out in front of the jury.  So if you can just make

sure you have your mask up, that would be great.

          I did speak to the U.S. Marshal as well and, on that

front, would say a few things.  One, I was told that the

marshals would allow Mr. Schulte to keep his papers and laptop

during breaks and in the mornings when he gets to the

courthouse.  So that request has been granted.  I think there

were a few other issues there, all of which, I think all those

requests have been granted as well.  But I guess the few things

that I want to discuss is the approaching of witnesses and

approaching of sidebars.

          Mr. Schulte's request for permission to approach the

witness, I'm going to deny that.  Again, I think to the extent

M6dWsch1

1    that we can figure out procedures so that nobody really needs

2    to approach the witness, that would be ideal.  If that means

3    putting binders on the witness box at the start of the

4    witness's testimony with their 3500 so that we can simply

5    direct them to things, that would be ideal.  In any event, if

6    anyone needs to approach, I'll let standby counsel approach on

7    Mr. Schulte's behalf.  So he should just request permission for

8    standby counsel to approach, and standby counsel can do that

9    for him.  But given the security issues involved and the

10   witnesses going before the jury, and so on and so forth, that

11   request is denied, and I think we can come up with an adequate

12   substitute.

13          By contrast, at my urging, the marshals have OKed

14   Mr. Schulte attending sidebars.  He will be accompanied by a

15   U.S. Marshal, obviously dressed in civilian clothes.  I would

16   request that one standby counsel and one of the marshals

17   approach with Mr. Schulte.  I think given the number of people

18   who would be at sidebar, they will simply blend in and there

19   wouldn't be any issues on that score.  But with that proviso,

20   Mr. Schulte will be permitted to approach for sidebars.

21          Obviously, Mr. Schulte, if there are any issues

22   whatsoever, that permission will not only be revoked, but it

23   may have other consequences.  So I'm trusting, given that you

24   have been on best behavior, in my presence, at least, that

25   there will be no issues -- security issues or threat issues --

M6dWsch1

1    but suffice it to say I will swiftly deal with any problems of

2    that sort, so I trust that there won't be any.

3              On Friday, the parties conveyed to me that they had

4    reached agreement on witness-related issues, at least as

5    concerned the witnesses that the government had been most

6    concerned about.

7              Any reason to put anything on the record about that

8    other than the fact of the agreement?

9              MR. DENTON:  Your Honor, I would say we've reached an

10   agreement with respect to the category of witnesses the

11   government identified as most sensitive.

12             Standby counsel conveyed that they would be working

13   with the defendant to narrow that list.  We were advised this

14   morning that that has been done.  After the classified

15   conference, we asked standby counsel to provide us with that

16   narrowed list.  Ms. Shroff said she would get to it if the

17   Court issues an order to that effect, so we would ask that the

18   Court order the defendant to convey his narrowed request to the

19   government so that we can start letting people know.

20             THE COURT:  All right.

21             Mr. Schulte or Ms. Shroff.

22             MS. SHROFF:  Your Honor, I haven't been able to speak

23   to Mr. Schulte in the SCIF today, so I haven't been able to

24   narrow anything since Friday.  We told them we would work on

25   it, and we are.  And by the end of the day, we hopefully we

M6dWsch1

1   have narrowed it.  If I had the narrower lift now, I would give

2   it to them.

3           THE COURT:  Great.  As soon as you do, please give it

4   to them, and if there are any issues that I need to resolve,

5   then you'll let me know.

6           I had a few other things on my list of items to raise,

7   but I don't think they'll take more than a few minutes.  So for

8   that reason, unless the parties have any concerns with my doing

9   so, I would probably let the jury department know that they can

10  begin to assemble the jurors and send them up.

11          Anything?

12          MR. DENTON:  Just logistically, your Honor, with

13  respect to challenges for cause, before we get to that, does

14  the Court intend to do that at sidebar, or mechanically, how

15  would the Court like to proceed?

16          THE COURT:  For the most part, I will call 36 jurors

17  by name based on the randomized list that we'll get from the

18  jury department.  18 of them will be in the jury box.  The

19  other 18 will be in the front rows back there.  I will proceed,

20  beginning with juror No. 1 and go through, and frankly, most

21  people who should be excused for cause I will simply excuse

22  because it will be obvious to me.  At various junctures during

23  the process, I would anticipate giving you guys an opportunity

24  either to make additional applications of that sort or requests

25  to follow up with jurors of that sort.  That will either be

M6dWsch1

1    done during a break, when no one is here, or it will be done at

2    sidebar.

3          MR. DENTON:  That's fine, your Honor.  We'll wait for

4    the invitations.

5          THE COURT:  OK.

6          Mr. Schulte, any questions about that?

7          MR. SCHULTE:  I don't think so.

8          I just wanted to raise or discuss a couple of logistic

9    issues with -- that you had mentioned before -- the marshals

10   and MDC.

11         THE COURT:  All right.  But before you do that, why

12   don't we just let the jury department know that we will be

13   ready whenever folks are sent up so we can get started.

14         MR. SCHULTE:  OK.

15         THE COURT:  I'm going to ask before the jurors come up

16   that anyone up here, if you could move to the far back of the

17   courtroom, to please make room for the jury pool in the front,

18   I'd be grateful.

19         Second, to keep going down my list, I mentioned this

20   in the classified hearing but said I would reiterate it here to

21   make a record.  I have granted the government's motion to admit

22   Government Exhibit 1 and whatever number exhibit the log files

23   are, the two exhibits the government sought so introduce as

24   classified exhibits at trial.  I am granting that motion both

25   under Section 8 of CIPA, and I find, based on my evaluation of

M6dWsch1

1    the *Lawlor* factors, that that proposal is adequate or justified

2    as a limited courtroom closure.  I will issue an opinion on

3    that issue in due course.

4         There is one remaining issue with respect to the

5    defense use of some classified information that remains

6    unresolved, and I think I'll want resolution on that before I

7    issue an opinion, since I may have to address that as well, but

8    the government has to report back to me on that score in short

9    order.

10        There were some issues raised by Mr. Schulte

11   concerning stipulations.  This is Dkt. No. 854.  I've already

12   ruled with respect to the stipulations that were admitted in

13   the first trial; to the extent that they were admitted at the

14   first trial, they're admissible here.  It would definitely be

15   better if Mr. Schulte signed new versions of them that omitted

16   any reference to his lawyers, but if he's not willing or able

17   to do that, then the burden is on the government to propose

18   some sort of appropriate substitute.  But Mr. Schulte raised in

19   that letter that there were some issues.

20        I want to be clear.  That is a separate issue from any

21   stipulations that Mr. Schulte is proposing.  I'm certainly

22   happy to discuss those, but at the end of the day, the

23   government's not required to stipulate to things, particularly

24   if it doesn't agree with what is set forth in the stipulation.

25   And if the government doesn't stipulate, Mr. Schulte is going

M6dWsch1

1    to have to call whatever witnesses he thinks are appropriate to

2    address those issues.

3              Mr. Denton, where do the stipulations stand?

4              MR. DENTON:  Your Honor, I think we let Mr. Schulte

5    know that we also view them as separate issues.  We do have

6    redacted versions that are available of the old stipulations,

7    if necessary, but we are hoping that he will sign the new ones

8    today.

9              With respect to his stipulations, I think there are a

10   number of them that we're in agreement on and will be able to

11   finalize.  However, there are a number of them that proposed

12   offering a significant number of exhibits that the government

13   believes would be inadmissible, like thousands of instant

14   message chats between FBI agents who are testifying witnesses

15   or the defendant's own statements.  And so I think, you know,

16   insofar as the defendant is asking us to stipulate to

17   authenticity, we may have, either in writing or at a

18   conference, some practice before the Court *in limine* on whether

19   those are going to be admissible before we can reach

20   stipulations on them.

21             THE COURT:  OK.  A couple of suggestions.

22             First of all, Mr. Schulte, I do think these are

23   separate issues, and again, I think the cleanest and best way

24   to handle the prior stipulations is to sign new ones, reserving

25   your rights to challenge my prior ruling on that front, and I

M6dWsch1

1    would order to you that sooner rather than later.  Otherwise,

2    some redacted versions of the prior stipulations will be

3    admitted.

4              As for your proposed stipulations, I guess I would

5    just ask that you guys work those things out sooner rather than

6    later so that Mr. Schulte knows if there are witnesses that he

7    needs to subpoena or call, that he has adequate amount of time

8    to do that.  And second, Mr. Denton, to the extent that you

9    have issues with respect to relevance or admissibility that are

10   separate from authenticity, I would urge you to at least

11   stipulate as to authenticity so that Mr. Schulte knows he

12   doesn't need to call a custodian or witness to testify to

13   authenticity, and then we can litigate questions of

14   admissibility and relevance and the sort.  But to the extent

15   that Mr. Schulte needs adequate time to know what witnesses,

16   custodians he needs to call, I think it's fair to ask that you

17   sort these things out sooner rather than later.

18             Does that make sense?

19             MR. DENTON:  Yes, your Honor.

20             I think that with the exception of the Michael memo

21   that we talked about, we're not going to need any custodians on

22   any of the more ministerial things in this case.

23             THE COURT:  All right.  But I want you to let him know

24   sooner rather than later so that he can use his time wisely.

25             Mr. Schulte, any questions on that?

M6dWsch1

1          MR. SCHULTE:  No.  I mean I think I spoke with the

2     government earlier, and they have already responded to my

3     stipulations.  I think, you know, we're -- like he said, we're

4     in agreement on many things, and some things are just related

5     to authenticity versus admissibility, and I think we're

6     essentially finished with that.  So I'm hoping by the end of

7     the day to have all that finished.  And there shouldn't be an

8     issue.

9          THE COURT:  Great.  Bottom line is you guys should try

10    and sort these things out.  To the extent that you need to

11    raise issues with me, either disputes over stipulations or,

12    more to the point, the admissibility of evidence relating to

13    the stipulations, it's up to you to raise those in a timely

14    fashion.

15         One minor note.  We have plenty of time on this, but

16    since it's on my list of things to mention, we've already

17    discussed at the final pretrial conference Mr. Schulte's

18    testimony if he elects to testify, that that will be done in

19    some sort of Q&A, where he drafts the questions for standby

20    counsel.  My summer intern actually helpfully raised the

21    question of how to handle objections if Mr. Schulte has

22    objections to questions that are posed on cross or to respond

23    to objections that the government raises on direct, so I thank

24    her for that.

25         The short answer is that Mr. Schulte is representing

M6dWsch1

himself, so he will raise objections and respond to objections

notwithstanding the fact that he's in the witness box.  So

that's how we will handle that.

         Mr. Schulte, that covers my list.  You had said that

you had one or two things as well.

         MR. SCHULTE:  Yeah.  So, I mean the first thing is I

just wanted to put on the record that, you know, I object to

that.  I think it's going to be very prejudicial if, and not

feasible if I'm testifying and having to deal with the

objections.

         And then there's one other thing I wanted to put on

the record too.  The 3500 materials the government provided

very late on Friday that were dated 5/25, standby counsel asked

twice for these materials.  I haven't yet been able to review

them because they came in so late.  So those two things I just

wanted to put on the record first.

         And then my only -- I had two questions.  One of the

marshals, one of the issues was transport.  I've heard, you

know, different things from the marshals.  I just want

clarification.  Some said that it shouldn't be an issue to have

my legal work with me.  Sometimes we sit in front of MDC for

three or four hours.  It would be nice to be able to actually

work on the case on the laptop.  So I'm not sure what -- like I

said, I've heard a couple different things, so I just wanted to

get, try and get clarification on that issue.

M6dWsch1

```
1          And then the MDC, I was trying to see if the Court

2     could help me either get an order or something that before I

3     leave in the morning I'm able to connect my laptop and print

4     some documents, since I don't have access to the printer

5     directly from my cell, when I'm working on things, updating my

6     cross.  I know that the Court has said to have paper copies

7     available as well as electronics, so I don't have any way to

8     print that except if I'm leaving in the morning, but the MDC

9     don't allow me to use the printer when I'm coming in the

10     morning.  So I'm just hoping to resolve this so that I am able

11     to have paper copies of things as well, updated paper copies as

12     well as electronic copies.

13          THE COURT:  All right.  I'll get in touch with both

14     MDC and the marshal on those.  Those seem like reasonable

15     requests, subject to any policy or security issues that I may

16     be unaware of.  I'll see if those can be honored.

17          With respect to your objection or concern about your

18     testimony and the objections, I understand, but given that you

19     are representing yourself, I think it's important to draw the

20     line between those things and make clear to the jury that

21     you're handling your own defense, and I think that's the best

22     way to handle it.  Again, recognizing my discretion in these

23     matter, your concerns are overruled or objections are

24     overruled.

25          With respect to 3500, I'm not sure there was an
```

M6dWsch1

1    application made.  Obviously, the government, I presume,

2    complied with its deadline with respect to what was in its

3    possession.  It is always the case in trials that there are

4    additional materials that are produced on a rolling basis as

5    the government comes into possession of them.

6            Mr. Denton, do you want to address that in any way?

7            MR. DENTON:  Yes, your Honor.

8            There were a set of notes taken during the interim

9    between when we made the 3500 production and now, and we

10   provided them to the defendant on Friday.

11           THE COURT:  All right.  To the extent that the

12   deadline to produce 3500 was several weeks ago, that's a long

13   window.  Is there a reason that you waited until Friday?

14           MR. DENTON:  Some of them we had to obtain.  I don't

15   think there was a particular reason, your Honor.  I think we

16   were just providing them in a collated set.  It wasn't a large

17   amount of material.

18           THE COURT:  All right.  Well, given that the vast

19   majority was produced well before trial and indeed that this is

20   the second trial, it doesn't strike me that that's an issue

21   that requires relief, but so be it.  I don't know if there's a

22   specific application.  I will certainly remind the government

23   of its obligations to produce these things in a timely fashion

24   to avoid the need for any continuance or adjournment, but at

25   the moment there's no such request.

M6dWsch1

1            Mr. Schulte.

2            MR. SCHULTE:  Yes.  I guess I'm just putting it on the

3     record and asking, you know, next -- you know, for the

4     government to be more expeditious if it encounters more

5     material.

6            THE COURT:  All right.  I just asked the government to

7     do that myself, so I think they've gotten the message.

8            My deputy, who is not here but nevertheless is

9     handling some things from afar, advises that the press has

10    requested a feed to the press room.  I think that that was OK,

11    given the precautions that will be in place for the three

12    witnesses; it's audio only.

13           Are there any issues on that score?

14           MR. DENTON:  I think that was done last time, your

15    Honor, but to the extent that it's already being sent to an

16    overflow room, I don't think there's any issue with it being

17    sent to the press as well.

18           THE COURT:  All right.  Agreed.  I think it's just a

19    matter of location, and I don't think they would be privy to

20    anything that a member of the public wouldn't be privy to or

21    they wouldn't be privy to if they were here or in the overflow

22    room.

23           Mr. Denton, do you know when you would anticipate the

24    witness testifying this week who would be subject to the most

25    extreme precautions?

M6dWsch1

1          MR. DENTON:  It is possible that he would take the

2     stand at the very end of the day tomorrow.  I think it is more

3     likely that he will be on Wednesday.

4          THE COURT:  OK.  Anything else from either side before

5     we commence jury selection in a few minutes?

6          MR. DENTON:  Not from the government, your Honor.

7          MR. SCHULTE:  No, I don't think so.

8          THE COURT:  All right.

9          Looking at one final note that I forgot to mention, I

10    did request -- and I gather this was done, but I haven't seen

11    it yet -- that the podium be moved back a few feet in courtroom

12    15A so that, No. 1, no juror can see what's on the screen and,

13    No. 2, Mr. Schulte can more easily go back and forth between

14    the defense table and the podium.  So I just wanted to mention

15    that.

16          All right.  I will await the jury pool, and we'll get

17    started when they get up here.

18          MR. DENTON:  If I may, your Honor, while we're

19    waiting?

20          THE COURT:  Yes.

21          MR. DENTON:  With respect to the podium, will we be

22    able to center it for purposes of opening statements and then

23    move it back, or is it fixed and the marshals want it to remain

24    where it is?

25          THE COURT:  It's fixed.  That's less to do with the

M6dWsch1

1   marshals than it is to do with the fact that it's wired and

2   connected to all sorts of things.

3           I actually don't know if in 15A there's a global

4   podium that can be moved to be in front of the jury box as

5   there is in some courtrooms.  I can check on it, but I guess

6   unless and until I say otherwise, you should assume that you'll

7   have to address the jury from the fixed podium.

8           MR. DENTON:  Thank you, your Honor.

9           THE COURT:  It's not ideal, but it's better than the

10  Covid courtrooms.

11          MR. DENTON:  That's certainly true.

12          THE COURT:  All right.

13          MS. SHROFF:  Your Honor, may Mr. Schulte just consult

14  with Mr. Fisher for five minutes before the jury comes?  He

15  just has a question, and Mr. Fisher was on the first trial too.

16  He's from the Federal Defenders.

17          THE COURT:  He can talk for a couple of minutes, but

18  when the jury is here, we're going to get going.

19          MS. SHROFF:  Of course.  Thank you, your Honor.

20          THE COURT:  Counsel, please take your seats.

21          (Continued on next page)

22

23

24

25

M6D5sch2

1          THE COURT:  You may be seated.  It appears that all

2   the prospective jurors have left the courtroom.

3          So let's discuss first jury selection.  We have at

4   present, by my count, 34 qualified jurors.  We need to fill

5   seat 19 first thing tomorrow and then resume with 36.  We have

6   gone through 65 jurors so we have only five.  Assuming they're

7   all here and remaining in the pool I will keep my fingers

8   crossed that we don't need to go through any extra.

9          Yes, Mr. Schulte?  Microphone, please.

10          MR. SCHULTE:  33 we never finished questioning.

11          THE COURT:  You are correct -- no, not correct about

12   that.  I think we did.  She is the woman who came up at the

13   end.

14          MR. SCHULTE:  We didn't go through the personal

15   questions list.

16          THE COURT:  You are totally correct about that.  Thank

17   you for pointing that out.  So we will need to do that

18   tomorrow.  But since that's not a function of qualifying I will

19   treat her as a qualified juror.  But, thank you for reminding

20   me.

21          So again, I think we have 34 qualified, we need to

22   fill 19 and 36.  Hopefully the remaining jurors will let us do

23   that.  If not, we will get some extra jurors and start over but

24   let's hope that doesn't come to that.

25          Anything to discuss on that front?  Any follow up on

M6D5sch2

1    any of the 34?  Any related motions to strike anything

2    jury-selection related.

3              Mr. Denton?

4              MR. DENTON:  Not with respect to jury selection, your

5    Honor.

6              THE COURT:  Mr. Schulte, anything else relating to

7    jury selection?

8              MR. SCHULTE:  Just one second?

9              (pause)

10             MR. SCHULTE:  No, we do not have anything.

11             THE COURT:  Anything unrelated to jury selection,

12   Mr. Denton?

13             MR. DENTON:  Yes, your Honor.

14             We just wanted to flag something for the Court that we

15   expect will come up at various points.  As we just saw and has

16   happened frequently --

17             THE COURT:  Will you use the microphone a little

18   better?

19             MR. DENTON:  Is that better?

20             THE COURT:  Yes.

21             MR. DENTON:  We frequently had instances in which

22   there have been pauses for the defendant to confer with standby

23   counsel, sometimes audibly.  We have taken a look and just wand

24   to be mindful of the admonitions in McAskill about not

25   undermining the appearance that the defendant is directing his

M6D5sch2

1    own defense.  It seems like the law on that really focuses on

2    the unsolicited activities of standby counsel but defendant can

3    direct his defense and his team however he wants.  So we just

4    wanted to flag, I expect that there may come points where

5    outside of the presence of the jury we just ask the Court to

6    allocute the defendant about his satisfaction with the role

7    being played by standby counsel and the fact that their input

8    is solicited and desired by him, just to protect that record

9    down the road.

10            THE COURT:  There are two separate issues here, one is

11   the Mr. Schulte on his defense.  First, standby counsel is

12   accurately involved but from my observation it would appear

13   that is with Mr. Schulte's consent and invitation and in that

14   regard is not inconsistent with him controlling his defense.

15   It is pretty clear to me based on the flood of filings and

16   other such things that Mr. Schulte is driving the boat here.

17   But I certainly have no objection, I am sure Mr. Schulte

18   doesn't, to just confirm every once in a while that that is in

19   fact the case.

20        There is a separate issue which is the audibility of any

21   consultation.  Candidly, Ms. Shroff in particular, at times

22   during pretrial conferences that has been whispering things or

23   not so much communicating things to Mr. Schulte that even I

24   have been able to hear it at a distance.  I have largely

25   ignored that and allowed it even though at times I think it has

1    made the court reporter's job more difficult but I do want to

2    underscore that in front of the jury that can't happen.

3    Obviously, any communications from either side within the trial

4    teams can't be audible to the jury because that's not

5    appropriate for them to hear so I trust that everybody will

6    understand and adhere to that and make sure that their

7    communications are genuine whispers even with the masks so that

8    the jury can't overhear anything that they shouldn't overhear.

9        With respect to the first issue, Mr. Schulte, again, it is

10   my observation that you are actively availing yourself of

11   standby counsel's advice but is it fair to say that you agree

12   that you are running the ship and controlling your own defense

13   and that their advice is solicited rather than unsolicited?

14        MR. SCHULTE:  Yes, that's correct; especially for the

15   jury selection, I really need their assistance.  I have

16   actively requested a lot of assistance in being able to -- they

17   have lots of experience and I want to be able to use that

18   experience so I have been -- everything going on is me

19   requesting assistance in picking jurors and things of that

20   nature.

21        THE COURT:  Very good.

22        Mr. Denton, anything else on that or otherwise?

23        MR. DENTON:  No, your Honor.

24        THE COURT:  To the extent that we can discuss it in

25   this setting, anything that you can share -- I know you have

M6D5sch2

1    been in the courtroom most of the day but any developments on

2    the 6(c) front that we might be able to share?

3        MR. DENTON:  Only to say that as of our one break the

4    wheels were actively turning.  I don't know where that's gotten

5    us to in the last four hours but we will find out and try and

6    keep the wheels turning.

7        THE COURT:  Very good.

8        Mr. Schulte, anything else unrelated to jury selection

9    from you?

10        MR. SCHULTE:  Yes.  Just a couple things.

11        Before I asked for like a kind of dress rehearsal for

12    how these things would go, but anticipating tomorrow most

13    likely the direct and first cross will occur and whenever I

14    anticipate doing my cross-examination I would anticipate using

15    the laptop to bring up the exhibits and so we are just kind of

16    working out how exactly that's going to work.

17        We have a cable over here and we are in contact with

18    someone trying to get another cable, but unless the Court is

19    aware, this computer or the computer at the podium is also used

20    for putting the exhibits on or how does the Court anticipate if

21    I can just use my own laptop to connect to display the

22    exhibits, if that's acceptable?  I just want to work all of

23    this out now before there is any issues.

24        THE COURT:  First of all, I was in contact with the

25    marshal last week and he told me that -- I had made the request

M6D5sch2

1    that you be produced to 15(a) at 4:00 to do a run-through.  Did

2    that not happen?

3              MR. SCHULTE:  No.  That never happened.

4              THE COURT:  OK.  Sorry to hear that.  I don't know if

5    that was a marshal issue or separate issue.  I know you were

6    trying to get various things done that day.  The short answer

7    is I don't involve myself in those things but it is up to the

8    parties to do it.  But, in general, the computers connect with

9    the system through wiring at counsel table.  And the monitor --

10   first of all, we are not in this courtroom for trial, it is

11   15A, but to say in general, set up there the monitor on the

12   podium is a display monitor and usually someone at counsel

13   table controls the computer and calls up whatever it is the

14   person conducting the examination wants to call up and then it

15   is displayed on the monitor.  If it is not in evidence it

16   cannot be displayed to the jury, it can only be deployed to the

17   witness and counsel and me.  Once it is admitted, however, you

18   can ask for it to be published and displayed to the jury.  I

19   don't know.  There are two separate issues here, one is

20   connecting to the system.  I certainly don't have the

21   appropriate wires but I want to make sure that you do but

22   that's something that hopefully you and standby counsel can

23   sort out and get sorted out before tomorrow.

24             Second, who is going to operate the machine while you

25   are conducting an examination.  I mean, I would hope and assume

M6D5sch2

1  that standby counsel could do that or figure out someone who

2  might be able to assist you in doing that.  The alternative is

3  for you to be able to do it yourself by going back and forth

4  but there is only so much of that I can tolerate because that's

5  justs going to make cross-examination intolerably long.

6          (Continued on next page)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

M6dWsch2

1    MR. SCHULTE:  My hope was that I wanted to be able to

2  do it both myself.  I think they're looking to see if there's a

3  cable long enough that I can just bring the laptop here, pull

4  up the exhibits as I do the cross.  So obviously I'm not going

5  back and forth.  But I just wanted to check and make sure that

6  the Court would be OK with us getting wires for that, or then

7  if that doesn't work, for me to be here as I'm doing the cross.

8    I anticipated that I will be pulling the exhibits up

9  as I'm doing the cross, and I just wanted to make sure that

10  this is acceptable and that we can try and get a wire that runs

11  across the floor.  I mean I know it's a different courtroom but

12  at the same time a setup so that I can do both.

13    THE COURT:  If you are able to procure a wire and we

14  can do it in a way that would render it safe and convenient to

15  do it that way, I'm certainly open to it.

16    The other option is if the wire can only reach to the

17  end of counsel table and there isn't too much of it, I could

18  allow you to just go back and forth when you want to call up an

19  exhibit.  But my strong preference is that if we can't rig it

20  and wire it so that you can take your laptop to the podium,

21  then standby counsel, at your direction, can call something up.

22  That does not intrude on your conducting your defense.  Just as

23  government counsel, I assume, will call upon their paralegal to

24  call up an exhibit at the appropriate time, you'd say, I'll ask

25  standby counsel to please show Defendant's Exhibit 1, and they

M6dWsch2

1    can then follow it up.  There's no reason that you need to be

2    the one that does that, and if it requires you going back and

3    forth between the podium and counsel table, that's just not

4    going to work.

5              Again, if you can procure a wire that's long enough

6    and reaches and do it that way, that's great.  Let's do it that

7    way, and if it's based on the podium and is convenient, I think

8    that I'm OK with that, assuming it doesn't pose problems.  But

9    if not, I think the best solution is going to be for counsel to

10   do it at your direction, or if it's only a few instances, then

11   you might be able to go back and forth, but that can't be an

12   every-question sort of thing.

13             MR. SCHULTE:  OK.

14             And so then my last question was just if there's any

15   way that the Court can check in with MDC so that tomorrow when

16   I leave I have my cross, opening, everything updated and

17   printed, so that I can print it before I leave the MDC, just to

18   make sure I have paper copies of everything.

19             THE COURT:  I will certainly do my best.

20             MR. SCHULTE:  Thank you.

21             THE COURT:  Government, which of you intends to open?

22             MR. DENTON:  I will, your Honor.

23             THE COURT:  And do you have any prediction of how long

24   your opening will be?

25             MR. DENTON:  20 minutes, tops, maybe a little less.

M6dWsch2

1          THE COURT:  OK.

2          Mr. Schulte, do you anticipate giving an opening

3     statement?

4          MR. SCHULTE:  Yes, I do.

5          THE COURT:  How long do you predict yours would be?

6          MR. SCHULTE:  About the same.

7          THE COURT:  All right.  Very good.

8          We'll pick up where we left off with the jury

9     selection.  I assume that we'll be done with that at some point

10    in the morning, hopefully not too late.  And we'll then need to

11    reconvene in 15A, and I'll give preliminary instructions.  So I

12    would assume that you will be opening tomorrow and starting

13    with witnesses.  That's certainly what I would expect if I were

14    in your shoes.

15         I would hope that the government can give me a report

16    in the morning on the 6(c) issues.  If we need to reconvene in

17    a classified setting, then we can make appropriate arrangements

18    for that to happen at some point tomorrow.

19         Anything else that we need to discuss before we break

20    for the day?

21         MR. DENTON:  Just two, your Honor.

22         First, on the point the defendant was making about the

23    exhibits, I think technically one of the reasons why we

24    typically keep the laptops down at the end of counsel table is

25    because that is where the sort of separate device that controls

M6dWsch2

1     the publishing goes.  I think that's something we would have a

2     little concern about Mr. Schulte trying to run from the witness

3     stand -- from witness podium, but we just wanted to flag that

4     that's a separate piece that has to be addressed here so that

5     things are not shown to the jury that are not in evidence.

6              I think the second thing with respect to that is it

7     may be worth taking up tomorrow together with our report on the

8     6(c), but just whether it makes sense to have argument,

9     briefing, or both, with respect to the government's objections

10    to various defense exhibits that have been produced to us now.

11             THE COURT:  All right.  Is now not the time to discuss

12    any of those?

13             MR. DENTON:  We understand Mr. Schulte's got an

14    updated set of exhibits for us.  And so once we're able to get

15    those, we'll take a look, and we can certainly either let the

16    Court know what we expect in the morning or just come right out

17    and have a plan for it.

18             THE COURT:  Great.  So definitely think about it.  I

19    certainly want those issues raised in a timely fashion so that

20    we're not having argument when the jury's sitting in the box.

21             MR. DENTON:  Understood, your Honor.

22             THE COURT:  All right.

23             Mr. Schulte, anything remaining for you?  Otherwise,

24    we'll call it quits for the evening.

25             MR. SCHULTE:  No, nothing further.

M6dWsch2

1          THE COURT:  All right.  I want everyone in here by

2    nine so that we can take up whatever issues we have as the

3    jury's coming together.  I trust that while I told them to be

4    here by nine, not everyone will be here promptly at nine, so

5    we'll have a few minutes.  The bottom line is I'll see you at

6    nine tomorrow morning.

7               Have a good evening.

8               (Adjourned to June 14, 2022, at 9:00 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25