M785sch1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                          17 Cr. 548 (JMF)

5   JOSHUA ADAM SCHULTE,

6              Defendant.
                                          Trial
7   ------------------------------x

8                                         New York, N.Y.
                                          July 8, 2022
9                                         9:00 a.m.

10  Before:

11
                       HON. JESSE M. FURMAN,
12
                                          District Judge
13                                        -and a Jury-

14                         APPEARANCES

15  DAMIAN WILLIAMS
         United States Attorney for the
16       Southern District of New York
    BY:  DAVID W. DENTON JR.
17       MICHAEL D. LOCKARD
         Assistant United States Attorneys
18

19  JOSHUA A. SCHULTE, Defendant *Pro Se*

20

21  SABRINA P. SHROFF
    DEBORAH A. COLSON
         Standby Attorneys for Defendant
22

23  Also Present:  Charlotte Cooper, Paralegal Specialist

24

25

M785sch1

1           (Trial resumed; Jury not present)

2           THE COURT:  Good morning.  I hope everyone is well and

3      well rested.  My deputy has gone to check on the jury.

4      Anything to discuss before they come from the government.

5           MR. DENTON:  Just, your Honor, with respect to the

6      laptop issue that we were discussing yesterday, the laptops are

7      marked but part of the process of setting them up so what we

8      have done is taken one and essentially covered up the

9      classification sticker for it so that that's not visible so

10     that way the jury will not see anything that has that marking

11     on it other than what is on the exhibit that is in evidence.

12          THE COURT:  All right.

13          Mr. Schulte, have you seen that and any issues there?

14          MR. SCHULTE:  I haven't seen it yet, no.

15          THE COURT:  Can you show it to Mr. Schulte?

16          MR. SCHULTE:  So the only suggestion that I have is

17     the yellow sticker on the top, if we just marked what the

18     exhibit was and put the CD actually into the computer and just

19     give it to them like that so they don't see the actual CD or

20     anything but it is all loaded up on the computer for them.

21     They don't have to put it in or anything.

22          THE COURT:  Mr. Lockard?

23          MR. LOCKARD:  I don't think we want to mark the laptop

24     as an exhibit because then we lose the laptop.

25          THE COURT:  Also, it didn't come in as an exhibit.

1          MR. LOCKARD:  It didn't come in as an exhibit.

2          THE COURT:  Can I see the laptop and the exhibit?  And

3    does the jury need power cords for these things?  Do they have

4    power cords?

5          Have the parties compiled the physical exhibits that

6    were admitted at trial?

7          MR. LOCKARD:  We have.

8          THE COURT:  So just describing this, the disk itself

9    is the exhibit, it is marked "top secret" but, as noted, to the

10   extent that it came into evidence that way that is the way it

11   should go to the jury.  The laptop, there is a post-it note

12   taped over what I assume is similar marking and, otherwise, no

13   visible sign of anything relating to classification.  Given

14   that, I think there is no prejudice and this is an acceptable

15   way for it to go to the jury and I think we already discussed

16   Government Exhibit 1, it should go as it came into evidence and

17   there was no objection to any stickers that were on it at the

18   time so that is the way it will go to the jury.

19         Anything else that we need to discuss?

20         MR. DENTON:  Not from the government, your Honor.

21         THE COURT:  Mr. Schulte?

22         MR. SCHULTE:  No.

23         THE COURT:  OK.  Any issues with redactions to the

24   transcript or are we good on that front?

25         MR. DENTON:  No additional redactions, your Honor.  I

M785sch1

1    think we are still trying to make sure that we can implement,

2    particularly the substitution that the Court approved with the

3    court reporters, but that's an execution issue rather than a

4    substantive one.

5         THE COURT:  Well, let's try to make sure that that

6    gets done expeditiously so that the transcripts are released

7    publicly if they're not already.

8         I will find out what is going on with our jury and

9    then we will get started.

10        (pause)

11        THE DEPUTY CLERK:  Jury entering.

12        (Continued on next page)

13

14

15

16

17

18

19

20

21

22

23

24

25

M785sch1

1              (Jury present)

2              THE COURT:  You may be seated.

3              Good morning.  Welcome back, ladies and gentlemen.  I

4    hope you had a good afternoon and evening.  And, thank you for

5    being here, yet again, on time.

6              As you know, the moment has come for me to give you

7    your instructions as to the law.  As you probably saw, I left a

8    copy of the instructions for you on your chairs.  You may

9    follow along, as I will repeat in a moment.  For the moment, do

10   not turn ahead but, if you would like, you may turn to page 1

11   as I begin at this time.

12             Members of the jury, you have now heard all of the

13   evidence in the case and the closing arguments.  It is my duty

14   at this point to instruct you as to the law.  My instructions

15   to you will be in three parts.

16             First, I will give you general instructions, for

17   example, about your role as the jury, what you can and cannot

18   consider in your deliberations and the burden of proof.

19             Second, I will describe the law that you must apply to

20   the facts as you find them to be established by the evidence.

21             Finally, I will give you some instructions for your

22   deliberations.

23             I am going to read my instructions to you.  It is not

24   my favorite way to communicate and not the most scintillating

25   thing to listen to, but there is a need for precision and it is

1    important that I get the words just right and so that is why I

2    will be reading.

3         Because my instructions cover many points, I have

4    given you a copy of my instructions to follow along.  Please

5    limit yourself to following along, that is, do not read ahead

6    in the instructions.  If you find it easier to listen and

7    understand while you are following along with me, please, do

8    so.  If you would prefer, you can just listen and not follow

9    along.  Either way, you may take your copy of the instructions

10   with you into the jury room so you can consult it if you want

11   to reread any portion of the charge to facilitate your

12   deliberations.

13        For now, listen carefully and try to concentrate on

14   the substance of what I am saying.  You should not single out

15   any instruction as alone stating the law.  Rather, you should

16   consider my instructions as a whole when you retire to

17   deliberate in the jury room.

18        You, the members of the jury, are the sole and

19   exclusive judges of the facts.  You must weigh and consider the

20   evidence without regard to sympathy, prejudice --

21        [phone chime]

22        Somebody has a phone.  Please make sure it is off.

23   And that is as good a moment to say, as any, when you retire to

24   deliberate, please, turn your phones off.  Make sure they're

25   not with you during breaks.  You are obviously welcome to check

1    them, but I think to ensure that your deliberations are

2    uninterrupted, make sure your phones are off and away.

3         Continuing at the top of page 2:

4         You must weigh and consider the evidence without

5    regard to sympathy, prejudice, or passion for or against any

6    party.  It is your duty to accept my instructions as to the law

7    and to apply them to the facts as you determine them.  If

8    either party has stated a legal principle differently from any

9    that I state to you in my instructions, it is my instructions

10   that you must follow.

11        In reaching your verdict, you must remember that all

12   parties stand equal before a jury in the Courts of the United

13   States.  The fact that the government is a party and the

14   prosecution is brought in the name of the United States does

15   not entitle the government or its witnesses to any greater

16   consideration than that accorded to any other party.  By the

17   same token, you must give it no less deference.  The government

18   and the defendant, Joshua Schulte, stand on equal footing

19   before you.

20        It would be improper for you to consider, in reaching

21   your decision as to whether the government sustained its burden

22   of proof, any personal feelings you may have about the

23   defendant's race, national origin, religious beliefs, sex, or

24   age.  All persons are entitled to the same presumption of

25   innocence and the government has the same burden of proof with

M785sch1

respect to all persons.

A criminal defendant has a constitutional right under the Sixth Amendment to the United States Constitution to represent himself.  The defendant's decision to exercise that right and represent himself has no bearing on whether he is guilty or not guilty and it must not affect your consideration of the case.  You are not to draw any inferences from the defendant's decision to exercise his right to represent himself.

The personalities and the conduct during trial of both counsel and Mr. Schulte are not, in any way, at issue.  If you formed opinions of any kind about the personalities or conduct during trial of any of the lawyers in the case or Mr. Schulte, favorable or unfavorable, whether you approved or disapproved of their behavior, those opinions should not enter into your deliberations.

In addition, remember that it is the duty of each side to object when the other side offers testimony or other evidence that the objector believes is not properly admissible. Therefore, you should draw no inference from the fact that there was an objection to any testimony or evidence.  Nor should you draw any inference related to the weight or importance of any testimony or evidence from the fact that I sustained or overruled an objection.  Simply because I have permitted certain testimony or evidence to be introduced does

not mean that I have decided on its importance or significance. That is for you to decide.

The defendant has pleaded not guilty to the charges against him.  As a result of that plea of not guilty, the burden is on the government to prove guilt beyond a reasonable doubt.  This burden never shifts to a defendant for the simple reason that the law never imposes upon a defendant in a criminal case the burden or duty of testifying, or calling any witness or locating or producing any evidence.

Furthermore, the law presumes the defendant to be innocent of the charges against him.  The presumption of innocence was in his favor when the trial began, continued in his favor throughout the entire trial, remains with him even as I speak to you now, and persists in his favor during the course of your deliberations in the jury room unless and until the government proves, beyond a reasonable doubt, that he committed one of the charged crimes.

The question that naturally arises is, What is a reasonable doubt?  A reasonable doubt is a doubt based on your reason, your judgment, your experience, and your common sense. It is a doubt that a reasonable person has after carefully weighing all the evidence.  It is a doubt founded in reason and arises out of the evidence in the case or lack of evidence.  A reasonable doubt is not caprice or whim, is not speculation or suspicion.

M785sch1

1    Proof beyond a reasonable doubt does not mean proof

2    beyond all possible doubt.  It is practically impossible for a

3    person to be absolutely and completely convinced of any

4    disputed fact that, by its very nature, cannot be proved with

5    mathematical certainty.  The government's burden is to

6    establish guilt beyond a reasonable doubt, not all possible

7    doubt.

8    If, after a fair and impartial consideration of all

9    the evidence you can candidly and honestly say that you are not

10   satisfied with the guilt of the defendant, that you do not have

11   an abiding brief of the defendant's guilt -- in other words, if

12   you have such a doubt as would reasonably cause a prudent

13   person to hesitate in acting in matters of importance in his or

14   her own affairs -- then you have a reasonable doubt and in that

15   circumstance it is your duty to acquit.

16   On the other hand, if after a fair and impartial

17   consideration of all the evidence you can candidly and honestly

18   say that you do have an abiding belief of the defendant's

19   guilt, such a belief as a prudent person would be willing to

20   act upon in important matters in the personal affairs of his or

21   her own life, then you have no reasonable doubt and in that

22   circumstance it is your duty to convict.

23   There are two types of evidence that you may properly

24   use in deciding whether the defendant is guilty or not guilty

25   of the crimes with which he is charged.  One type of evidence

is called direct evidence.  Direct evidence of a fact in issue

is presented when a witness testifies to that fact based on

what he or she personally saw, heard, or otherwise observed

through the five senses.  The second type of evidence is

circumstantial evidence.  Circumstantial evidence is evidence

that tends to prove a disputed fact indirectly by proof of

other facts.

There is a simple example of circumstantial evidence

that is often used in this court house.  Assume that when you

came into the court house this morning the sun was shining and

it was a nice day outside -- as it actually was.  Also

assume -- as is actually the case -- that the courtroom shades

were drawn and you could not look outside.  Assume further that

as you were sitting here someone walked in with an umbrella

that was dripping wet and then, a few moments later, someone

else walked in with a raincoat that was also dripping wet.

Now, because you could not look outside the courtroom

and you could not see whether it was raining, you would have no

direct evidence of that fact.  But, on the combination of facts

that I have asked you to assume, it would be reasonable and

logical for you to conclude that it was raining.

That is all there is to circumstantial evidence.  You

infer on the base of your reason, experience and common sense

from one established fact the existence or nonexistence of some

other fact.

M785sch1

1          The matter of drawing inferences from facts in
2    evidence is not a matter of guesswork or speculation.  An
3    inference is a logical factual conclusion that you might
4    reasonably draw from other facts that have been proved.  It is
5    for you, and you alone, to decide what inferences you will
6    draw.
7          Many material facts, such as a person's state of mind,
8    are not easily proved by direct evidence.  Usually, such facts
9    are established by circumstantial evidence and the reasonable
10   inferences you draw.  Circumstantial evidence may be given as
11   much weight as direct evidence.  The law makes no distinction
12   between direct and circumstantial evidence.  The law simply
13   requires that before convicting a defendant, you must be
14   satisfied of the defendant's guilt beyond a reasonable doubt
15   based on all the evidence in the case.
16         What, then, is the evidence in the case?  The evidence
17   in this case is, one, the sworn testimony of the witnesses;
18   two, the exhibits received into evidence; and three, any
19   stipulations made by the parties.  Anything else is not
20   evidence.  For example, the questions posed to a witness are
21   not evidence, it is the witness' answers that are evidence, not
22   to the questions.  I remind you also that if you understand
23   Spanish, you may not rely on any testimony that was given in
24   Spanish.  The English translation of any testimony that was
25   give in Spanish is the evidence you may consider during your

M785sch1

1    deliberations.

2           In addition, exhibits marked for identification but

3    not admitted by me are not evidence, nor are materials brought

4    forth only to refresh a witness' recollection.  Moreover,

5    testimony that has been stricken or excluded by me is not

6    evidence and may not be considered by you in rendering your

7    verdict.

8           Along these lines we have, as you know, among the

9    exhibits received in evidence, some documents that are redacted

10   and some documents where words were substituted over the

11   redaction.  Redacted means that part of the document was taken

12   or blacked out.  You are to concern yourself only with the part

13   of the document that has been admitted into evidence including

14   any substitution.  You should not consider any possible reason

15   why the other part of it has been deleted or blacked out, or

16   why there might be a substitution.

17          Arguments by the lawyers and the defendant are also

18   not evidence.  What you heard during the opening statements and

19   summations is merely intended to help you understand the

20   evidence and reach your verdict.  If your recollection of the

21   facts differs from the parties' statements, you should rely on

22   your recollection.  If a party made a statement during his or

23   her opening or summation and you find that there is no evidence

24   to support the statement, you should disregard the statement.

25          In that regard, let me remind you:  Because the

M785sch1

1    defendant decided to act as his own lawyer you heard him speak

2    at various times during the trial including in opening and

3    closing arguments.  I want to remind you that when the

4    defendant spoke during those parts of the trial, he was acting

5    as a lawyer in the case, not as a witness, and thus his words

6    are not evidence.  The only evidence in this case is the

7    testimony of witnesses under oath and exhibits admitted into

8    evidence.

9            Finally, any statements that I may have made during

10   the trial or during these instructions do not constitute

11   evidence.  At times I may have admonished a witness or directed

12   a witness to be responsive to questions or to keep his or her

13   voice up.  At times, I may have asked a question myself.  Any

14   questions that I asked or instructions that I gave were

15   intended only to clarify the presentation of evidence and to

16   bring out something that I thought might be unclear.  You

17   should draw no inference or conclusion of any kind, favorable

18   or unfavorable, with respect to any witness or any party in the

19   case by reason of any comment, question, or instruction of

20   mine.  The rulings I have made during the trial and these

21   instructions are no indication of my views of what your

22   decision should be, nor should you infer that I have any views

23   as to the credibility of any witness, as to the weight of the

24   evidence, or as to how you should decide any issue that is

25   before you.  That is entirely your role.

M785sch1

1          How do you evaluate credibility or believability of

2     the witnesses?  The answer is that you use your common sense.

3     There is no magic formula by which you can evaluate testimony.

4     You may use the same tests here that you use in everyday life

5     when evaluating statements made by others to you.  You may ask

6     yourselves:  Did the witness impresses as open, honest, and

7     candid?  How responsive was the witness to the questions asked

8     on direct examination and on cross-examination?

9          If you find that a witness intentionally told a

10    falsehood that is always a matter of importance you should

11    weigh carefully.  On the other hand, a witness may be

12    inaccurate, contradictory, or even untruthful in some respects

13    and entirely believable and truthful in other respects.  It is

14    for you to determine whether such inconsistencies are

15    significant or consequential, and whether to accept or reject

16    all of the testimony of any witness or to exempt or reject only

17    portions.

18         You are not required to accept testimony even though

19    the testimony is uncontradicted and the witness' testimony is

20    not challenged.  You may reject it because of the witness'

21    bearing or demeanor, or because of the inherent improbability

22    of the testimony, or for other reasons sufficient for you to

23    conclude that the testimony is not worthy of belief.

24         In evaluating the credibility of the witnesses, you

25    should take into account any evidence that a witness may

M785sch1

1   benefit in some way from the outcome of the case.  Such an

2   interest in the outcome creates a motive to testify falsely and

3   may sway a witness to testify in a way that advances his or her

4   own interests.  Therefore, if you find that any witness whose

5   testimony you are considering may have an interest in the

6   outcome of this trial, you should bear that factor in mind when

7   evaluating the credibility of his or her testimony and decide

8   whether to accept it with great care.

9        Keep in mind, though, that it does not automatically

10  follow that testimony given by an interested witness is to be

11  disbelieved.  There are many people who, no matter what their

12  interest in the outcome of the case may be, would not testify

13  falsely.  It is for you to decide, based on your own

14  perceptions and common sense to what extent, if at all, the

15  witness' interest has affected his or her testimony.

16       You have heard testimony from law enforcement

17  witnesses and witnesses who are current or former employees of

18  the Central Intelligence Agency -- or CIA -- and Federal Bureau

19  of Investigation -- or FBI.  The fact that a witness may be

20  employed as a law enforcement official or government employee

21  does not mean that his or her testimony is necessarily

22  deserving of more or less consideration or greater or lesser

23  weight than that of an ordinary witness.  It is your decision,

24  after reviewing all the evidence, whether to accept the

25  testimony of any law enforcement witness or government

M785sch1

witnesses as it is with every other type of witness, and to give that testimony the weight you find it deserves.

I have allowed some of the CIA witnesses to testify either using a made up name -- pseudonym -- or just their first names.  That is because disclosure of these witnesses' true or full name could potentially compromise their work at the CIA. You should weigh the testimony of these witnesses just as you would any other witness and not weigh it differently because they testified using a pseudonym or used the first name only. Moreover, you should not consider the fact that I allowed these witnesses to testify in this way as an expression of my opinion as to any of the facts of this case.  Again, it is your job, and your job alone, to decide the facts of this case.

You have heard testimony from expert witnesses.  As I previously explained, an expert witness is someone who, by education or experience, has acquired learning or experience in a specialized area of knowledge.  Such a witness is permitted to express his or her opinions on matters about which he or she has specialized knowledge and training.  The parties may present expert testimony to you on the theory that someone who is experienced in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

Your role in judging credibility applies to experts as well as other witnesses.  In weighing an expert's opinion, you may consider the expert's qualifications, education, and

M785sch1

reasons for testifying, as well as all of the other

considerations that ordinarily apply including all the other

evidence in the case.  If you find the opinion of an expert is

based on sufficient data, education, and experience, and the

other evidence does not give you a reason to doubt his or her

conclusions, you would be justified in placing reliance on his

or her testimony.  However, you should not accept witness

testimony simply because the witness is an expert.  The

determination of the facts in this case rests solely with you.

You have heard testimony from one witness, Carlos

Betances, who testified that he pleaded guilty to criminal

conduct and is now cooperating with the government.

Experience will tell you that the government sometimes

must rely on the testimony of so-called cooperating witnesses.

The government must take its witnesses as it finds them and

sometimes must use such testimony in a criminal prosecution

because, otherwise, it would be difficult or impossible to

detect and prosecute wrongdoers.  For these very reasons, the

law allows the use of testimony from cooperating witnesses.

Indeed, under federal law the testimony of a cooperating

witness may be enough in itself for a conviction if the jury

believes that the testimony establishes guilt beyond a

reasonable doubt.

You may not draw any conclusions or inferences of any

kind about the guilt of the defendant on trial from the fact

M785sch1

1    that Mr. Betances pleaded guilty to other charges.  The

2    decision of that witness to plead guilty was a personal

3    decision that witness made about his own guilt.  It may not be

4    used by you in any way as evidence against or unfavorable to

5    the defendant.

6          Additionally, because of the interest a cooperator may

7    have in testifying, you should scrutinize his testimony with

8    special care and caution.  You may consider the fact that a

9    witness is a cooperator is bearing upon his credibility.  Like

10   the testimony of any other witness, accomplice witness

11   testimony or cooperator testimony should be given such weight

12   as it deserves in light of the facts and circumstances before

13   you, taking into account the witness' demeanor and candor, the

14   strength and accuracy of the witness' recollection, his

15   background, and the extent to his which testimony is or is not

16   corroborated by other evidence in the case.  You may consider

17   whether a cooperating witness has an interest in the outcome of

18   the case and, if so, whether that interest has affected his

19   testimony.

20         You heard testimony about an agreement between the

21   government and the cooperating witness -- that should just be

22   singular, witness.  I should caution you it is not concern of

23   yours why the government made an agreement with a particular

24   witness.  You may, however, consider the effect, if any, that

25   the existence or terms of the agreement have on the witness'

M785sch1

credibility.  A witness who hopes to obtain leniency may have a

motive to testify as he believes the government wishes, or he

may feel that it is in his interest to incriminate others.  As

with any witness, your responsibility is to determine whether

any such motive or intent has influenced the witness' testimony

and whether the witness has told the truth, in whole or in

part.

        In sum, in evaluating the testimony of a cooperating

witness, you should ask yourselves the following questions:

Would the cooperating witness -- that should say -- benefit

more by lying or by telling the truth?  Was any part of his

testimony potentially made up because he believed or hoped that

he would receive favorable treatment from the government by

testifying falsely or as he believed the government wanted?  Or

did he believe that his interests would be best served by

testifying truthfully?  If you believe that the witness was

motivated by hopes of personal gain, was the motivation one

that would cause him to lie?  Or was it one that would cause

him to tell the truth?  Did this motivation color his

testimony?  It does not follow, however, that simply because a

person has admitted to participating in one or more crimes, he

is incapable of giving a truthful version of what happened.

        If you think that the testimony was false, you should

reject it.  However, if after a cautious and careful

examination of a cooperating witness' testimony you are

M785sch1

satisfied that the witness told the truth, you may accept his

testimony as credible and act upon it accordingly.

As with any witness, let me emphasize that the issue

of credibility need not be decided in an all-or-nothing

fashion.  If you find that a witness has been untruthful in

some respect you may, but are not required to, reject the

witness' testimony in its entirety.  Even if you find that a

witness testified falsely in one part, you may still accept his

testimony in other parts.  How much of a witness' testimony to

accept, if any, is a determination entirely for you, the jury.

You have heard evidence during the trial that

witnesses discussed the facts of the case and their testimony

with the lawyers before the witnesses appeared in court.

Although you may consider this fact when you are evaluating a

witness' credibility, it is common for a witness to meet with

lawyers before testifying so that the witness can be aware of

the subjects he or she will be questioned about, focus on the

subjects, and have the opportunity to review relevant exhibits

before being questioned about them.  In fact, it would be

unusual for a lawyer to call a witness without such

consultation.  As always, the weight you give to the fact or

the nature of these issues and what inferences you draw from

them are matters completely within your discretion.

There are people whose names you have heard during the

course of the trial but who did not appear here to testify.  I

M785sch1

1    instruct you that each party had an equal opportunity, or lack

2    of opportunity, to call any of these witnesses.  Therefore, you

3    should not draw any inferences or reach any conclusions as to

4    what they would have testified to had they been called.  Their

5    absence should not affect your judgment in any way.  You

6    should, however, remember my instruction that the law does not

7    impose on a defendant in a criminal case the burden or duty of

8    calling any witness or producing any evidence.  The burden of

9    proof remains at all times with the government.

10          The fact that one party called more witnesses or

11   introduced more evidence does not mean that you should

12   necessarily find the facts in favor of the side offering the

13   most witnesses and the most evidence.  By the same token, you

14   do not have to accept the testimony of any witness who has not

15   been contradicted or impeached if you find the witness to be

16   not credible.  After examining all the evidence, you may decide

17   that the party calling the most witnesses has not persuaded you

18   because you do not believe its witnesses, or because you do

19   believe the fewer witnesses called by the other side.

20          Again, you should also keep in mind that the burden of

21   proof is always on the government.  The defendant is not

22   required to call any witnesses or offer any evidence since he

23   is presumed to be innocent.  On the other hand, the government

24   is not required to prove each element of the offense by any

25   particular number of witnesses.  The testimony of a single

M785sch1

witness may be enough to convince you beyond a reasonable doubt
of the existence of the elements of the charged offenses -- if
you believe that the witness has truthfully and accurately
related what he or she has told you.  Testimony of a single
witness may also be enough to convince you that reasonable
doubt exists, in which case you must find the defendant not
guilty.

You have heard evidence that the defendant was in
custody at one point.  You may consider this evidence as
evidence of the defendant's whereabouts at these points in
time.  However, you may not consider the fact that the
defendant was in custody as evidence that he is of bad
character or has a propensity to commit crime.

You have heard testimony that the defendant made
certain statements outside the courtroom in which the defendant
claimed that his conduct was consistent with innocence and not
with guilt.  The government claims that these statements, which
the defendant exonerated or exculpated himself, are false.  If
you find that the defendant gave a false statement in order to
divert suspicion from himself you may, but are not required to,
infer that the defendant believed that he was guilty.

In many circumstances it is reasonable to infer that
an innocent person would not find it necessary to invent or
fabricate an explanation or statement tending to establish his
or her innocence.  On the other hand, there may be reasons

M785sch1

fully consistent with innocence that would cause a person to give a false statement showing their innocence.  You may not rely on this evidence alone to support a finding of guilt.  Whether a defendant's statement does or does not point to consciousness of guilt and the significance, if any, to be attached to any such evidence are matters for you, the jury, to decide.

Stipulations were entered into relating to various facts in this case.  A stipulation, as I previously told you, is an agreement between parties as to what certain facts were or what the testimony would be if certain people testified before you.  Stipulations are the same for your purposes as the presentation of live testimony.  You should consider the weight to be given such evidence just as you would any other evidence.

If certain testimony or evidence was received for a limited purpose, you must follow the limiting instructions I have given.

The government has presented exhibits in the form of charts and summaries.  As you recall, some of the charts and summaries were not admitted into evidence but were shown to you as aids to make the other evidence more meaningful and to help you in considering that evidence.  Others were admitted into evidence as exhibits.  I admitted these charts and summaries in place of or in addition to the underlying documents that they represented in order to save time and avoid unnecessary

M785sch1

inconvenience.  They are no better than the testimony or the

documents upon which they are based.  Therefore, you are to

give no greater consideration to these charts or summaries than

you would give to the evidence upon which they are based.  It

is for you to decide whether they correctly present the

information contained in the testimony and in the exhibits on

which they were based.

     Some video recordings have been admitted in evidence.

I instruct you that the creation of these recordings was

entirely lawful and that these recordings were properly

admitted in evidence.  Of course, it is for you to decide what

weight, if any, to give this evidence.

     The government has been permitted to give you

transcripts containing the government's interpretation of what

can be heard on some of the video recordings that have been

received as evidence.  Those were given to you as an aids or

guide to assist you in watching recordings.  As I have told

you, they are not in and of themselves evidence, except for the

few spots in which the transcript reflects a substitution for

something that was redacted or removed from the recording, in

which case you should treat the substitution and not the

recording as the evidence.  You, alone, should make your own

interpretation of what appears on the recordings based on what

you heard.  If you think you heard something differently than

appeared on the transcript, then what you heard is controlling.

M785sch1

1          You have heard reference to certain investigative

2     techniques that were used or not used by the government in this

3     case.  There is no legal requirement that the government prove

4     its case through any particular means.  While you are to

5     carefully consider the evidence adduced by the government, you

6     are not to speculate as to why the government used the

7     techniques it did or why it did not use other techniques.

8          You may not draw any inference, favorable or

9     unfavorable, toward the government or the defendant, from the

10    fact that any person was not named as a defendant in this case,

11    and you may not speculate as to the reasons why other people

12    are not on trial before you now.  Those matters are wholly

13    outside your concern and have no bearing on your function as

14    jurors in deciding the case before you.

15         You have heard testimony about evidence that was

16    seized and about various searches including searches of

17    electronic devices and electronic service providers.  Evidence

18    obtained from those searches was properly admitted in this case

19    and may be properly considered by you.  Indeed, such searches

20    are entirely appropriate law enforcement actions.  You also

21    heard testimony about evidence that was labeled attorney-client

22    privilege.  As I instructed you at the time, that evidence was

23    also properly admitted.

24         Whether you approve or disapprove of how the evidence

25    was obtained should not enter into your deliberations because I

M785sch1

1    instruct you that the government's use of the evidence is

2    lawful.  You must, therefore, regardless of your personal

3    opinions, give this evidence full consideration along with all

4    the other evidence in the case in determining whether the

5    government has proved the defendant's guilt beyond a reasonable

6    doubt.  Once again, however, it is for you to decide what

7    weight, if any, to give this evidence.

8           The defendant did not testify.  Under our

9    Constitution, as I have told you, a defendant is presumed

10   innocent and has no obligation to testify or to present any

11   other evidence because, as I have told you, it is the

12   government's burden to prove the defendant guilt beyond a

13   reasonable doubt.  That burden remains on the government

14   throughout the entire trial and never shifts to the defendant.

15   A defendant is never required to prove that he is innocent.

16          You may not attach any significance to the fact that

17   the defendant did not testify.  No adverse inference against

18   the defendant may be drawn by you because the defendant did not

19   take the witness stand.  You may not consider this in any way

20   in your deliberations in the jury room.

21          That concludes my introductory instructions, let me

22   now turn to the charges.

23          Mr. Schulte is formally charged in an indictment.  As

24   I instructed you at the outset of this case, the indictment is

25   a charge or accusation, it is not evidence.  The indictment --

M785sch1

a copy of which you will have in the jury room during your

deliberations -- contains nine charges or counts against the

defendant.  Each count accuses the defendant of committing a

different crime.  You must, as a matter of law, consider each

count and you must return a separate verdict for each count in

which the defendant is charged.  Your verdict on one count

should not control your decision as to any other count.

        Counts One, Two, Five, Six, Seven and Eight charge the

defendant with various crimes relating to the alleged misuse of

computers and theft of information from the CIA in the spring

of 2016 and subsequent disclosure of such information to the

WikiLeaks organization.

        Count One charges the defendant with illegal gathering

of national defense information, or "NDI."  Specifically, it

charges that on or about April 20th, 2016, the defendant,

without authorization, copied backup files of certain

electronic databases -- what I will refer to as the backup

files -- housed on a classified computer system maintained by

the CIA, namely DevLAN.

        Count Two charges the defendant with illegal

transmission of unlawfully possessed documents, writings, or

notes containing NDI or "national defense information."

Specifically, it charges that between April and May 2016, the

defendant, without authorization, retained copies of the backup

files and communicated them to a third-party not authorized to

M785sch1

1    receive them, the organization WikiLeaks.

2            Count Five charges the defendant with unauthorized

3    access to a computer to obtain classified information.

4    Specifically, it charges that between April 18 and April 20,

5    2016, the defendant accessed a computer without authorization

6    and exceeded his authorized access to obtain the backup files

7    and subsequently transmitted them to WikiLeaks without

8    authorization.

9            Count Six charges the defendant with unauthorized

10   access to a computer to obtain information from a department or

11   agency of the United States.  Specifically, it charges that on

12   or about April 20th, 2016, the defendant accessed a computer

13   without authorization or in excess of his authorized access and

14   copied the backup files.

15           Count Seven charges the defendant with causing

16   transmission of a harmful computer command, specifically it

17   charges that on or about April 20th, 2016, the defendant

18   transmitted commands on DevLAN to manipulate the state of the

19   Confluence virtual server on DevLAN.

20           Count Eight charges the defendant with causing

21   transmission of a harmful computer command.  Specifically, it

22   charges that on or about April 20th, 2016, the defendant

23   transmitted commands on DevLAN to delete log files of activity

24   on DevLAN.

25           Counts Three and Four charge the defendant with crimes

M785sch1

1   relating to the unlawful disclosure or attempted disclosure of,

2   again, NDI or national defense information, while he was in the

3   Metropolitan Correctional Center, or "MCC," the federal jail.

4        Count Three charges that in or about September 2018,

5   the defendant had unauthorized possession of documents,

6   writings, or notes containing NDI related to the internal

7   computer networks of the CIA and willfully transmitted them to

8   a third-party not authorized to receive them.

9        Count Four charges that between July and September

10  2018, the defendant had unauthorized possession of documents,

11  writings, and notes containing NDI related to tradecraft

12  techniques, operations, and intelligence-gathering tools used

13  by the CIA and attempted to transmit them to a third-party or

14  parties not authorized to receive them.

15       Finally, Count Nine charges the defendant with

16  obstruction of justice.  Specifically, it charges that between

17  March and June 2017 the defendant made certain false statements

18  to agents of the FBI during their investigation of the

19  WikiLeaks leak.

20       I will explain each count in turn and it is the more

21  detailed instructions that you should follow and control.  I

22  will also remind you that you must consider each count

23  separately and return a separate verdict on each count.

24       I will begin with Count One which charges the

25  defendant with illegal gathering of NDI -- which just to remind

M785sch1

1    you again, is national defense information.

2          In order to find the defendant guilty of Count One,

3    the government must prove the following three elements beyond a

4    reasonable doubt.

5          First, that on or about April 20th, 2016, the

6    defendant copied, took, made, or obtained a sketch, photograph,

7    photographic negative, blueprint plan, map, model, instrument,

8    appliance, document, writing, or note;

9          Second, that the information in that material was

10   connected to the national defense; and

11         Third, that the defendant acted with the purpose of

12   obtaining information respecting the national defense and with

13   the intent or with reason to believe that the information was

14   to be used to the injury of the United States or used to the

15   advantage of the foreign country.

16         Let me elaborate on each of these three elements.

17         The first element that the government must prove

18   beyond a reasonable doubt for purpose of Count One is that the

19   defendant copied, took, made or obtained a sketch, photograph,

20   photographic negative, blueprint, map, model, instrument,

21   appliance, document, writing, or note.  The indictment

22   specifically charges that on or about April 20th, 2016, the

23   defendant copied, without authorization, the backup files

24   housed on the classified DevLAN computer system maintained by

25   the CIA.

M785sch1

1          If you find that the government has proved beyond a

2    reasonable doubt that the defendant copied the backup files,

3    you should next consider the second element.

4          The second element that the government must prove

5    beyond a reasonable doubt for the purpose of Count One is that

6    the material the defendant is accused of taking is national

7    defense information, or "NDI," which is to say that it is

8    directly and reasonably connected with the national defense.

9          The term "national defense" is a broad term that

10   refers to United States military establishments, intelligence,

11   and to all related activities of national preparedness.

12         To qualify as NDI, the government must prove that the

13   material is closely held by the United States government.  In

14   determining whether material is closely held, you may consider

15   whether the material at issue was already in the public domain;

16   information typically cannot qualify as NDI if it is already in

17   the public domain.  But where information is in the public

18   domain, the fact that the information comes from the United

19   States government, or the fact that the United States

20   government considers the information to be accurate or

21   inaccurate may, itself, be NDI.

22         Thus, where information has been made public by the

23   United States government itself, it is not closely held and

24   cannot be NDI.  Similarly, where information has been made

25   public by someone other than the United States government, and

M785sch1

1    the United States government confirms that the information came

2    from the United States government, it is not closely held and

3    cannot be NDI.  But,the United States government's assessment

4    of the reliability or unreliability of publicly available

5    information, as opposed to the information itself, can itself

6    be closely held information relating to the national defense.

7    In such instances, it is the confirmation of the accuracy or

8    inaccuracy of material in the public domain and not the public

9    domain material itself that can qualify as information relating

10   to the national defense.  The distinction between a

11   confirmation of information relating to the national defense

12   already in the public domain that can be NDI and one that

13   cannot depends on whether the confirmation itself could

14   potentially harm the national security.

15        All of that said, if the particular information at

16   issue has been so widely circulated and is so generally

17   believed to be true or to have come from the United States

18   government that confirmation that it came from the United

19   States government would add nothing to its weight, it is not

20   closely held even if there has been no official confirmation by

21   the United States government.

22        In determining whether material is closely held, you

23   may consider whether it has been classified by appropriate

24   authorities and whether it remained classified on the dates

25   pertinent to the indictment.  Although you may consider whether

M785sch1

1    information has been classified in determining whether it has

2    been closely held, I caution or remind you that the mere fact

3    that information is classified does not mean that the

4    information qualifies as NDI.

5            In deciding this issue, you examine the information

6    and also consider the testimony of witnesses who testified as

7    to its content and significance and do describe the purpose and

8    the use to which the information could be put.

9            Whether the information is connected with the national

10   defense is a question of fact that you, the jury, must

11   determine following the instructions that I have just given you

12   about what those terms mean.

13           The third element that the government must prove

14   beyond a reasonable doubt for the purpose of Count One is that

15   the defendant acted for the purpose of obtaining the

16   information respecting the national defense and with the intent

17   or with reason to believe that the information were to be used

18   to the injury of the United States or used to the advantage of

19   a foreign country.

20           In considering whether or not the defendant had the

21   intent or reason to believe that the information would be used

22   to the injury of the United States or to provide an advantage

23   to a foreign country, you may consider the nature of the

24   documents or information involved.  I emphasize that to convict

25   the defendant of Count One you must find that the defendant had

M785sch1

the intent or reason to believe that the information would be used to the injury of the United States, not just that it could be so used.  The government does not have to prove that the intent was both to injure the United States and to provide an advantage to a foreign country.  The statute reads in the alternative.  Further, the country to whose advantage the information would be used need not necessarily be an enemy of the United States.  A statute does not distinguish between friend and foe.

If you find beyond a reasonable doubt, therefore, that the defendant acted for the purpose of obtaining information respecting the national defense and acted with the intent or with reason to believe that the information would be used to injure the United States or to provide an advantage to a foreign country, the third element of the offense is satisfied.

Let me turn then to Counts Two and Three, each of which charges the defendant with illegal transmission of certain unlawfully possessed NDI.  Although I will explain them together, I remind you that you must consider them separately and return a separate verdict on each count.

In order to find the defendant guilty of Count Two or Count Three, the defendant -- the government, excuse me -- must prove the following three elements beyond a reasonable doubt:

First, that on or about the dates charged in the indictment, the defendant had unauthorized possession of,

M785sch1

access to, or control over a document, writing, plan,

instrument, or note;

Second, that the information in that material was

connected to the national defense; and

Third, that on or about the dates in the indictment,

the defendant willfully communicated, delivered or transmitted,

or caused to be communicated, delivered, or transmitted, the

document, writing, plan, instrument, or note to a person who is

not entitled to receive it.

Again, let me elaborate on each of these three

elements.

The first element that the government must prove

beyond a reasonable doubt for purposes of Counts Two and Three

is that on or about the dates charged in the count at issue,

the defendant had unauthorized possession of, control over, or

access to the documents writings, plans, instruments, or notes

in question.

In the case of Count Two, the indictment charges that

between April and May 2016, the defendant, without

authorization, retained copy -- excuse me, retained documents,

writings, plans, instruments, and notes in the form of copies

of the backup files, as I have defined that term earlier.

In the case of Count Three, the indictment charges

that in or about September 2018, the defendant, without

authorization, possessed documents, writings, and notes

M785sch1

pertaining to internal computer networks of the CIA including

DevLAN.  In particular, Count Three is based on the following

passage on page 3 of Government Exhibit 812 and the following

passage alone:

          "In reality, two groups -- EDG and COG -- and at least

400 people, have access.  They don't include COG who is

connected to our DevLAN through Hickok, an intermediary network

that connected both COG and EDG.  There is absolutely no reason

they shouldn't have known this connection exists.  Step one is

narrowing down the possible suspects and to completely

disregard an entire group and half the suspects as reckless.

All they needed to do was talk to one person on infrastructure

branch or through any technical description/diagram of the

network."

          For purposes of this first element, the word

"possession" is a commonly used and commonly understood word.

Basically it means the act of having or holding property or the

detention of property in one's power or command.  It may mean

actual physical possession or constructive possession.  A

person has constructive possession of something if he knows

where it is and can get it any time he wants or otherwise can

exercise control over it.  A person has unauthorized possession

of something if he is not entitled to have it.

          The second element that the government must prove

beyond a reasonable doubt for purposes of Counts Two and Three

M785sch1

is that the documents, writings, plans, instruments, or notes

at issue are NDI, which is to say that they are related to the

national defense of the United States.  I have already

instructed you about this element in connection with Count One

and you should follow that instruction with respect to Counts

Two and Three as well.

In deciding whether the second element is satisfied

with respect to Count Three, however, you may consider only the

passage quoted above from page 3 of Government Exhibit 812.

The third element that the government must prove

beyond a reasonable doubt for purpose of Counts Two and Three

is that on or about the dates charged in the Count at issue,

the defendant willfully communicated, delivered, or

transmitted, or caused to be communicated, delivered, or

transmitted, the document, writing, plan, instrument, or note

to a person who is not entitled to receive it.  "Person" in

this context includes not only an individual but also a company

or entity.

In the case of Count Two, the indictment charges that

between April and May 2016 the defendant caused the backup

files to be communicated, delivered, and transmitted to

WikiLeaks.

In the case of Count Three, the indictment charges

that in or about September 2018, the defendant transmitted the

documents, writings and notes at issue to a third-party that

M785sch1

the United States had not authorized to receive that

information.

An act is done willfully if it is done voluntarily and

intentionally with a specific intent to do something the law

forbids, that is to say with a bad purpose either to disobey or

disregard the law.  In determining whether a defendant has

acted willfully, however, it is not necessary for the

government to establish that the defendant was aware of the

specific law or rule that his conduct may be violating.

Additionally, the government need not prove that the

defendant actually delivered the information himself, it is

enough that he proved caused the acts to be done.

In deciding whether a person was entitled to receive

information you may consider all the evidence introduced at

trial, including any evidence concerning the classification

status of the document or testimony concerning limitations on

access to the document.

Let me turn then to Count Four, which charges the

defendant with attempted illegal transmission of unlawfully

possessed NDI.  The indictment charges that between July and

October 2018, the defendant, without authorization, possessed

document, writings, and notes regarding tradecraft techniques,

operations, and particular intelligence-gathering tools used by

the CIA, and that he attempted to transmit such documents,

writings, and notes to third-parties whom the United States had

M785sch1

1    not authorized to receive that information.  In particular,

2    Count Four is based on the following passages in Government's

3    Exhibits 801 and 809 and the following passages alone.

4    Government Exhibit 801, page 3:

5         "Which brings me to my next point -- do you know what

6    my speciality was at the CIA?  Do you know what I did for fun?

7    Data hiding and crypto.  I designed and wrote software to

8    conceal data in a custom-designed file system contained well

9    the drive slackspace or hidden partitions.  I disguised data.

10   I split data across file and file stills to conceal the

11   crypto-analysis tools could never detect random or

12   pseudo-random data indicative of potential crypto.  I designed

13   and wrote my own crypto -- how better to fool buffoons like

14   forensic examiners at the FBI than to have custom software that

15   doesn't fit into their two-week class where they become

16   forensic 'experts.'"

17        Government Exhibit 809, page 8, there is a

18   substitution:  "[tool from vendor report] - Bartender for

19   [redacted]" -- and then substitution -- "[vendor]."

20        Government Exhibit 809, page 10:  "Additionally" --

21   again a substitution -- "[Tool described in vendor report] is

22   in fact Bartender.  A CIA toolset for" -- substitution --

23   [operators] to configure for [redacted] deployment."

24        Government 809, page 11:  Substitution --

25   "[@vendor] discovered [tool] in 2016, which is really the CIA's

M785sch1

Bartender tool suite.  Bartender was written to [redacted]
deploy against various targets.  The source code is available
in the Vault 7 release."

        For Count Four you should follow the instructions I
previously gave you with respect to Counts Two and Three.  To
be clear, in deciding whether the second element concerning
national defense information or NDI is satisfied, you may
consider only the foregoing passages.

        Count Four differs from Counts Two and Three, however,
in one important way.  For purposes of Count Four, you may find
the defendant guilty if you find that the government has proved
beyond a reasonable doubt that the defendant attempted to
illegally transmit NDI.  To prove the charge of attempted
illegal transmission of NDI, the government must prove each of
the following two elements beyond a reasonable doubt:

        First, the defendant intended to commit the crime of
illegally transmitting NDI; and

        Second, the defendant did some act that was a
substantial step in an effort to bring about or accomplish the
crime.

        Mere intention to commit a specific crime does not
amount to an attempted crime.  In order to convict the
defendant of an attempt to illegally transmit NDI, you must
find, beyond a reasonable doubt, that he intended to commit the
crime charged and that he took some action which was a

M785sch1

1       substantial step toward the commission of that crime.

2                In determining whether the defendant's actions

3       amounted to a substantial step toward the commission of the

4       crime, it is necessary to distinguish between mere preparation

5       on the one hand and the actual doing of the criminal deed on

6       the other.  Mere preparation, which may consist of planning the

7       offense or devising, obtaining, or arranging a means for its

8       commission is not an attempt, although some preparations may

9       amount to an attempt.  The acts of a person who intends to

10      commit a crime will constitute an attempt when the acts

11      themselves clearly indicate an attempt to commit the crime and

12      the acts are a substantial step in a course of conduct planned

13      to culminate in the commission of the crime.

14               Let me turn then to Count Five, which charges the

15      defendant with unauthorized access to a computer to obtain

16      classified information:

17               In order to find the defendant guilty of Count Five,

18      the government must prove the following four elements beyond a

19      reasonable doubt:

20               First, that between April 18th and April 20th, 2016,

21      the defendant either accessed a computer without authorization

22      or accessed a computer with authorization but exceeded his

23      authority in accessing the information in question;

24               Second, that the defendant knowingly accessed that

25      computer;

M785sch1

1            Third, that the defendant obtained information

2    protected against unauthorized disclosure for reasons of

3    national defense or foreign relations and that the defendant

4    had reason to believe that the information could be used to the

5    injury of the United States or to the advantage of a foreign

6    nation.

7            (Continued on next page)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

M78Wsch2                    Charge

1          THE COURT:  And fourth, that the defendant willfully

2    communicated, delivered, transmitted, or caused to be

3    communicated, delivered or transmitted, or attempted to

4    communicate, deliver or transmit or cause to be communicated

5    delivered or transmitted, the information to a person who was

6    not entitled to receive it.

7          Now let me elaborate on each of these four elements.

8          The first element that the government must prove

9    beyond a reasonable doubt for purpose of Count Five is that the

10   defendant either (1) accessed a computer without authorization

11   or (2) accessed a computer with authorization but exceeded his

12   authority in accessing the information in question.  The

13   indictment charges that, between April 18 and April 20, 2016,

14   the defendant accessed a computer without authorization or

15   exceeded his authorized access on a computer to obtain the

16   backup files.

17         In this case, the indictment charges both that the

18   defendant did not have authorized access to the computer at

19   issue and that the defendant, while authorized to access the

20   computer, exceeded his authority in accessing the information

21   in question.  You need not find both to be true in order to

22   find this element satisfied beyond a reasonable doubt.

23         To prove that the defendant exceeded his authority,

24   the government must prove beyond a reasonable doubt that the

25   defendant had access to the computer and used that access to

M78Wsch2                    Charge

1    obtain or alter information in the computer that the defendant

2    was not entitled to obtain or alter.  Note that an individual

3    does not exceed authorized access when he accesses a computer

4    to obtain information he is authorized to access -- even if he

5    obtains the information for an improper purpose.

6           The second element that the government must prove

7    beyond a reasonable doubt for purpose of Count Five is that the

8    defendant acted knowingly in accessing the computer without

9    authorization or outside the scope of his authority.

10          "Knowingly" means to act voluntarily and deliberately,

11   rather than mistakenly or inadvertently.  The question of

12   whether a person acted knowingly is a question of fact for you

13   to determine, like any other fact question.  The question

14   involves one's state of mind.

15          Direct proof of knowledge is almost never available.

16   It would be a rare case when it could be shown that a person

17   wrote or stated that, as of a given time in the past, he

18   committed an act with knowledge.  Such proof is not required.

19   The ultimate fact of knowledge, though subjective, may be

20   established by circumstantial evidence, based upon a person's

21   outward manifestation, his words, his conduct, his acts and all

22   the surrounding circumstances disclosed by the evidence and the

23   rational or logical inferences that may be drawn from them.

24          The government can also meet its burden of showing

25   that a defendant had actual knowledge of the accessing of a

M78Wsch2                      Charge

computer without authorization if it establishes beyond a

reasonable doubt that he acted with deliberate disregard of

whether he was so authorized, or with a conscious purpose to

avoid learning the nature and scope of his authorization.

Alternatively, the government may satisfy its burden of proving

knowledge by establishing beyond a reasonable doubt that the

defendant acted with an awareness of the high probability that

he was acting without authorization, unless the defendant

actually believed that he had authorization to access a

computer in the manner described in the indictment.  This

guilty knowledge, however, cannot be established by

demonstrating that the defendant was merely negligent or

foolish.

          The third element that the government must prove

beyond a reasonable doubt for purpose of Count Five is that the

defendant obtained information protected against unauthorized

disclosure for reasons of national defense or foreign relations

with reason to believe such information could be used against

the interests of the United States or to the advantage of a

foreign nation.

          The United States may determine that information

requires protection against unauthorized disclosure for reasons

of national defense or foreign relations either by executive

order or by statute.

          This element requires the government to prove that, at

M78Wsch2                    Charge

1    the time the defendant obtained the protected information, he

2    had reason to believe that the information could be used

3    against the interests of the United States or to the advantage

4    of a foreign nation.

5          The fourth element that the government must prove

6    beyond a reasonable doubt for purpose of Count Five is that the

7    defendant willfully communicated, delivered, transmitted, or

8    caused to be communicated, delivered or transmitted, or

9    attempted to communicate, deliver or transmit the protected

10   information obtained to a person who was not entitled to

11   receive it.  I have already explained what "willfully" means

12   and you should apply those instructions here as well.

13         Count Six charges the defendant with unauthorized

14   access to a computer to obtain information from a department or

15   agency of the United States.

16         In order to find the defendant guilty of Count Six,

17   the government must prove the following three elements beyond a

18   reasonable doubt:

19         First, that, on or about April 20, 2016, the defendant

20   either accessed a computer without authorization or accessed a

21   computer with authorization, but exceeded his authority in

22   accessing the information in question;

23         Second, that the defendant acted intentionally; and

24         Third, that the defendant obtained information from a

25   department or agency of the United States.

M78Wsch2                          Charge

1                Once again, I will elaborate on each of these three

2       elements.

3                The first element that the government must prove

4       beyond a reasonable doubt for purpose of Count Six is that the

5       defendant either (1) accessed a computer without authorization

6       or (2) accessed a computer with authorization, but he exceeded

7       his authority in accessing the information in question.  The

8       indictment charges that, on or about April 20, 2016, the

9       defendant accessed a computer without authorization and

10      exceeded his authorized access on a computer to copy the backup

11      files.

12               I have already instructed you about this element in

13      connection with Count Five, and you should follow that

14      instruction with respect to Count Six as well.

15               The second element that the government must prove

16      beyond a reasonable doubt for purpose of Count Six is that the

17      defendant acted intentionally in accessing the computer without

18      authorization or outside the scope of his authority.

19               "Intentionally" means to act deliberately and

20      purposefully.  That is, the defendant's acts must have been the

21      product of the defendant's conscious objective rather than the

22      product of a mistake or accident.

23               The question of whether a person acted intentionally

24      is a question of fact for you to determine, like any other fact

25      question.  The question involves one's state of mind.  Direct

1    proof of intent is almost never available.  It would be a rare

2    case when it could be shown that a person wrote or stated that,

3    as of a given time in the past, he committed an act

4    intentionally.  Such proof is not required.  The ultimate fact

5    of intent, though subjective, may be established by

6    circumstantial evidence, based upon a person's outward

7    manifestations, his words, his conduct, his acts and all the

8    surrounding circumstances disclosed by the evidence and the

9    rational or logical inferences that may be drawn from them.

10          The third element that the government must prove

11   beyond a reasonable doubt for purpose of Count Six is that the

12   defendant obtained the information from any department or

13   agency of the United States.  The CIA is a department or agency

14   of the United States.  But it is for you to determine if the

15   government has proved beyond a reasonable doubt that, without

16   authorization, the defendant obtained information contained in

17   a computer of the CIA.

18          Let me turn, then, to Counts Seven and Eight, each of

19   which charges the defendant with causing the transmission of a

20   harmful computer program, information, code or command.  Once

21   again, although I will explain these two counts together, I

22   remind you that you must consider them separately and return a

23   separate verdict on each count.

24          In order to find the defendant guilty of Count Seven

25   or Count Eight, the government must prove the following four

M78Wsch2                    Charge

1   elements beyond a reasonable doubt:

2           First, that, on or about April 20, 2016, the defendant

3   knowingly caused the unauthorized transmission of a program,

4   information, code or command to a protected computer;

5           Second, that the defendant caused the transmission of

6   the program, information, code or command with the intent to

7   damage or deny services to a computer or computer system;

8           Third, that the defendant thereby caused damage; and

9           Fourth, that the defendant's actions resulted in that

10  damage to a computer system used by or for an entity of the

11  United States government in furtherance of the administration

12  of justice, national defense, or national security.

13          Now let me elaborate on each of these four elements.

14          The first element that the government must prove

15  beyond a reasonable doubt for purpose of Counts Seven and Eight

16  is that the defendant knowingly caused the unauthorized

17  transmission of a program, information, code or command to a

18  protected computer.

19          In the case of Count Seven, the indictment charges

20  that the defendant transmitted commands on DevLAN to manipulate

21  the state of the Confluence virtual server on DevLAN, including

22  by (1) reverting the virtual server to a "snapshot," or past

23  version of the system as it appeared on April 16, 2016; (2)

24  restoring the system to a snapshot the defendant created on

25  April 20, 2016; and (3) subsequently deleting that snapshot,

M78Wsch2                    Charge

1  thus erasing the records of his activities on the system.

2          In the case of Count Eight, the indictment charges

3  that the defendant transmitted commands on DevLAN to delete log

4  files of activity on DevLAN.

5          This element requires that the government prove that

6  the defendant's transmission of the computer program,

7  information, code or command was unauthorized.  Under the

8  statute, this means that the transmission occurred without the

9  permission of the person or entity who owns or is responsible

10  for the computer receiving the transmitted program,

11  information, code or command.

12          This element also requires that the government prove

13  that the defendant transmitted the program, information, code

14  or command to a "protected computer."  As relevant to this

15  case, this means that the government must prove that the

16  computer was exclusively for the use of the United States

17  government.

18          Finally, this element requires that the government

19  prove that the defendant transmitted the program, information,

20  code or command knowingly.  I previously instructed you about

21  the meaning of "knowingly," and you should apply those

22  instructions here as well.

23          The second element that the government must prove

24  beyond a reasonable doubt for purpose of Counts Seven and Eight

25  is that the defendant caused the transmission of the program,

M78Wsch2                    Charge

1   information, code or command at issue with the intent to cause

2   damage, as I will define that term for you.

3        To act with "intent" means to act intentionally --

4   that is, deliberately and purposefully.  In other words, the

5   defendant's acts must have been the product of the defendant's

6   conscious objective, rather than the product of a mistake or

7   accident.

8        The third element that the government must prove

9   beyond a reasonable doubt for purpose of Counts Seven and Eight

10  is that by transmitting the program, information, code or

11  command at issue, the defendant caused damage.  "damage" means

12  any impairment to the integrity or availability of data, a

13  program, a system, or information.

14        The fourth element that the government must prove

15  beyond a reasonable doubt for purpose of Counts Seven and Eight

16  is that the defendant's actions disrupted a computer system

17  used by or for any government agency in furtherance of the

18  administration of justice, national defense, or national

19  security.

20        Finally, Count Nine charges the defendant with

21  obstruction of justice.

22        In order to find the defendant guilty of Count Nine,

23  the government must prove the following three elements beyond a

24  reasonable doubt:

25        First, that, between March and June of 2017, there was

M78Wsch2                    Charge

1   a proceeding pending before a federal court or grand jury;

2               Second, that the defendant knew of the proceeding; and

3               Third, that the defendant corruptly acted to obstruct

4   or impede, or endeavored to obstruct or impede, the proceeding.

5               Let me elaborate on each of these three elements.

6               The first element that the government must prove

7   beyond a reasonable doubt for purpose of Count Nine is that,

8   between March and June of 2017, there was a proceeding pending

9   before a federal grand jury or a federal court.  A grand jury

10  proceeding commences, at a minimum, when a grand jury subpoena

11  is issued in connection with a grand jury investigation.  The

12  grand jurors need not have heard testimony or taken a role in

13  the decision to issue a subpoena.

14              The second element that the government must prove

15  beyond a reasonable doubt for purpose of Count Nine is that the

16  defendant knew that such a proceeding was in progress when he

17  corruptly acted to obstruct or impede the proceeding (as I will

18  explain those terms to you in a moment).

19              I previously instructed you about the defendant's

20  knowledge in connection with Count Five, and you should follow

21  those instructions with respect to Count Nine as well.

22              The third element that the government must prove

23  beyond a reasonable doubt for purpose of Count Nine is that the

24  defendant did corruptly obstruct or impede, or corruptly

25  endeavor to obstruct or impede, the proceeding at issue.

M78Wsch2                    Charge

1          The word "corruptly" means simply having the improper

2     intent or purpose of obstructing justice.  To establish that

3     the defendant acted with corrupt intent, the government also

4     must prove that there existed a "nexus," or connection, between

5     the defendant's conduct and the grand jury proceeding.  That

6     is, the government must prove some relationship in time,

7     causation, or logic between the defendant's action and the

8     grand jury proceeding so that the defendant's conduct may be

9     said to have the natural and probable effect of interfering

10    with that proceeding.  Where the discretionary actions of a

11    third party are required to obstruct the grand jury proceeding,

12    the nexus requirement is satisfied if it was foreseeable to the

13    defendant that the third party would act on the defendant's

14    conduct in such a way as to obstruct the proceeding.

15         The term "endeavor" is designed to reach all conduct

16    that is aimed at influencing, intimidating, or impeding the

17    conduct of the proceeding.  Success of the endeavor is not an

18    element of the crime.  Thus, it is sufficient to satisfy this

19    element if you find that the defendant knowingly acted in in a

20    way that obstructed or had the natural and probable effect of

21    obstructing justice from being duly administered.

22         Here, the indictment alleges that the defendant

23    corruptly obstructed or impeded, or corruptly endeavored to

24    obstruct or impede, a grand jury proceeding by making certain

25    statements to the FBI.  In particular, the indictment charges

that the defendant made the following false or misleading

statements to Special Agents of the FBI:

       1.  He denied having any involvement in unlawfully

disclosing the backup files;

       2.  He stated that he had not kept a copy of an email

he sent to the office of inspector general containing false

allegations of security issues at the CIA;

       3.  He denied having any classified materials in his

apartment;

       4.  He denied ever taking information from the CIA and

transferring it to an unclassified network;

       5.  He denied ever making DevLAN vulnerable to the

theft of data;

       6.  He denied housing information from the CIA on his

home computer; and

       7.  He denied ever removing any classified information

from the CIA and taking it home.

       The government need not prove that the statements to

the FBI were actually false or misleading if it otherwise

proves beyond a reasonable doubt that the defendant gave

answers in a corrupt endeavor to influence, obstruct, or impede

the grand jury investigation by giving such statements to the

FBI.

       That said, false or misleading statements alone do not

provide a basis for an obstruction of justice conviction unless

1    the statements had the natural and probable effect of impeding

2    the due administration of justice.  Thus, where the allegation

3    is that the defendant endeavored to influence, obstruct, or

4    impede the grand jury's investigation by making false or

5    misleading statements to the FBI, the government must prove

6    beyond a reasonable doubt that the defendant knowingly gave

7    false or misleading answers in his statements to the FBI and

8    that he knew that those false statements were likely to

9    obstruct the grand jury proceeding.  It is not enough for the

10   government to prove that the defendant had the impression that

11   statements he made to the FBI would be conveyed to the grand

12   jury; the government must prove beyond a reasonable doubt that

13   the defendant knew that his conduct was likely to obstruct the

14   proceeding -- for instance, by proving that the defendant knew

15   that it was likely that his allegedly false or misleading

16   statements made to the FBI would be conveyed to the grand jury.

17        I remind you that, to find the defendant guilty on

18   Count Nine, the government must prove beyond a reasonable doubt

19   that the defendant knew that a grand jury proceeding was in

20   progress when he corruptly acted to obstruct or impede the

21   proceeding.  Unless and until the defendant knew there was a

22   grand jury proceeding in progress, he could not, by definition,

23   have acted corruptly to obstruct or impede, or corruptly

24   endeavored to obstruct or impede, the proceeding.  For that

25   reason, I instruct you that you may not find this element of

1    Count Nine satisfied based on the defendant's conduct,

2    including any statement he may have made, before he had

3    knowledge of an ongoing grand jury proceeding.

4         Finally, you need not find that a corrupt intent was

5    the only purpose for the defendant's actions, so long as you

6    find that he acted, at least in part, with that improper

7    purpose.  You may consider all the evidence and surrounding

8    circumstances in determining whether the defendant acted

9    corruptly.

10        In addition to all the elements of each of the charges

11   that I have just described for you, for three of the counts --

12   specifically, counts three, four, and nine -- you must also

13   decide whether any act in furtherance of the crime charged

14   occurred within the Southern District of New York.  (you do not

15   need to consider this issue, which is called venue, for

16   purposes of counts one, two, five, six, seven, or eight.  The

17   government and the defendant have agreed to venue here on those

18   counts, even though the conduct involved occurred in Virginia.)

19        The Southern District of New York includes, among

20   other places, Manhattan.  The government need not prove that

21   the crimes charged in counts three, four, and nine were

22   committed in this district or that the defendant himself was

23   present here.  It is sufficient to satisfy this element if any

24   act in furtherance of the crimes charged in the count you are

25   considering occurred in the Southern District of New York.

M78Wsch2                      Charge

1          I should note that on this issue -- and this issue

2    alone -- the government need not prove venue beyond a

3    reasonable doubt, but only by a mere preponderance of the

4    evidence.  Thus, the government has satisfied its venue

5    obligations if you conclude that it is more likely than not

6    that any act in furtherance of the crime charged in the count

7    you are considering occurred in the Southern District and that

8    it was reasonably foreseeable to the defendant that the act

9    would take place in the Southern District of New York.  If you

10   find that the government has failed to prove this venue

11   requirement with respect to any of counts three, four, and

12   nine, then you must acquit the defendant on that count.

13         Proof of motive is not a necessary element of the

14   crimes with which the defendant is charged.  Proof of motive

15   does not establish guilt.  Nor does the lack of proof of motive

16   establish that a defendant is not guilty.  If the government

17   has proved the defendant's guilt beyond a reasonable doubt, it

18   is immaterial what the motive for the crime or crimes may be,

19   or whether any motive has been shown at all.  The presence or

20   absence of motive is, however, a circumstance that you may

21   consider as bearing on the defendant's intent.

22         It does not matter if the evidence you heard at trial

23   indicates that a particular act occurred on a different date.

24   The law requires only a substantial similarity between the

25   dates alleged in the indictment and the dates established by

M78Wsch2                    Charge

1    the evidence.

2              In a few minutes, you are going to go into the jury

3    room and begin your deliberations.  During your deliberations,

4    please continue to adhere to the safety protocols that we have

5    used throughout the trial, including social distancing and

6    masking.  We have taken those precautions, on the advice of our

7    medical experts, to ensure that everyone remains safe and

8    healthy during trials.  In addition, people have different

9    levels of anxiety and risk tolerance when it comes to COVID-19.

10   By adhering to the protocols, you not only ensure that everyone

11   remains safe and healthy, but also respect the fact that your

12   fellow jurors may or may not have the same level of comfort

13   with the current situation that you have.

14             After you retire to begin your deliberations, your

15   first task will be to select a foreperson.  The foreperson has

16   no greater voice or authority than any other juror but is the

17   person who will communicate with me when questions arise and

18   when you have reached a verdict and who will be asked in open

19   court to pass your completed verdict form to me.  Notes should

20   be signed by the foreperson and should include the date and

21   time they were sent.  They should also be as clear and precise

22   as possible.  Any notes from the jury will become part of the

23   record in this case.  So please be as clear and specific as you

24   can be in any notes that you send.  Do not tell me or anyone

25   else how the jury stands on any issue until after a unanimous

M78Wsch2                    Charge

1    verdict is reached.

2              All of the exhibits will be given to you near the

3    start of deliberations.  The bulk of the documentary evidence

4    will be provided to you in electronic form, in files which can

5    be pulled up on a screen in the jury room.  Government Exhibits

6    1 and 1203-28 will be provided on separate laptops and cannot

7    be pulled up on the screen in the jury room.  In addition, you

8    will also be provided with a list of all the exhibits that were

9    received into evidence.  When you retire to deliberate, my

10   staff will provide you with information on how to access this

11   evidence in the jury room.

12             If you prefer to view any evidence here in the

13   courtroom or if you want any of the testimony submitted to you

14   or read back to you, you may also request that.  Keep in mind

15   that if you ask for testimony, however, the court reporter must

16   search through her notes, the parties must agree on what

17   portions of testimony may be called for, and if they disagree,

18   I must resolve those disagreements.  That can be a

19   time-consuming process.  So please try to be as specific as you

20   possibly can in requesting portions of the testimony, if you

21   do.

22             Again, your requests for testimony -- in fact, any

23   communication with the Court -- should be made to me in

24   writing, signed by your foreperson, with the date and time, and

25   given to one of the court security officers.

M78Wsch2                      Charge

1          If any one of you took notes during the course of the

2     trial, you should not show your notes to, or discuss your notes

3     with, any other jurors during your deliberations.  Any notes

4     you have taken are to be used solely to assist you.  The fact

5     that a particular juror has taken notes entitles that juror's

6     views to no greater weight than those of any other juror.

7     Finally, your notes are not to substitute for your recollection

8     of the evidence in the case.  If, during your deliberations,

9     you have any doubt as to any of the testimony, you may -- as I

10    just told you -- request that the official trial transcript

11    that has been made of these proceedings be submitted or read

12    back to you.

13          All of us, no matter how hard we try, tend to look at

14    others and weigh what they have to say through the lens of our

15    own experience and background.  We each have a tendency to

16    stereotype others and make assumptions about them.  Often, we

17    see life and evaluate evidence through a clouded filter that

18    tends to favor those like ourselves.  You must do the best you

19    can to put aside such stereotypes, for all litigants and

20    witnesses are entitled to a level playing field.

21          Indeed, under your oath as jurors, you are not to be

22    swayed by bias or sympathy.  You are to be guided solely by the

23    evidence in this case, and as you sift through the evidence,

24    the crucial question that you must ask yourselves for each

25    count is:  Has the government proved each element beyond a

1    reasonable doubt?

2            It is for you and you alone to decide whether the

3    government has proved that the defendant is guilty of the

4    crimes charged, solely on the basis of the evidence and subject

5    to the law as I have instructed you.

6            It must be clear to you that once you let prejudice,

7    bias, or sympathy interfere with your thinking, there is a risk

8    that you will not arrive at a true and just verdict.

9            If you have a reasonable doubt as to the defendant's

10   guilt with respect to a particular count, then you must render

11   a verdict of not guilty on that particular count.  On the other

12   hand, if you should find that the government has met its burden

13   of proving the guilt of the defendant beyond a reasonable doubt

14   with respect to a particular count, then you should not

15   hesitate because of sympathy or any other reason to render a

16   verdict of guilty on that count.

17           I also caution you that, under your oath as jurors,

18   you cannot allow to enter into your deliberations any

19   consideration of the punishment that may be imposed upon the

20   defendant if he is convicted.  The duty of imposing a sentence

21   in the event of conviction rests exclusively with the Court,

22   and the issue of punishment may not affect your deliberations

23   as to whether the government has proved the defendant's guilt

24   beyond a reasonable doubt.

25           The most important part of this case, members of the

1    jury, is the part that you as jurors are now about to play as

2    you deliberate on the issues of fact.  I know you(L) try the

3    issues that have been presented to you according to the oath

4    that you have taken as jurors.  In that oath you promised that

5    you would well and truly try the issues joined in this case and

6    a true verdict render.

7            As you deliberate, please listen to the opinions of

8    your fellow jurors, and ask for an opportunity to express your

9    own views.  Every juror should be heard.  No one juror should

10   hold the center stage in the jury room, and no one juror should

11   control or monopolize the deliberations.  If, after listening

12   to your fellow jurors, and if, after stating your own view, you

13   become convinced that your view is wrong, do not hesitate

14   because of stubbornness or pride to change your view.  On the

15   other hand, do not surrender your honest convictions and

16   beliefs solely because of the opinions of your fellow jurors or

17   because you are outnumbered.

18           Your verdict must be unanimous.  If at any time you

19   are not in agreement, you are instructed that you are not to

20   reveal the standing of the jurors -- that is, the split of the

21   vote -- to anyone, including me, at any time during your

22   deliberations.

23           We have prepared a verdict form for you to use in

24   recording your decisions, a copy of which is attached to these

25   instructions.  Do not write on your individual copies of the

M78Wsch2                     Charge

verdict form.  My staff will give the official verdict form to

juror No. 1, who should give it to the foreperson after the

foreperson has been selected.

        You should draw no inference from the questions on the

verdict form as to what your verdict should be.  The questions

are not to be taken as any indication that I have any opinion

as to how they should be answered.

        After you have reached a verdict, the foreperson

should fill in the verdict form and note the date and time, and

you should all sign the verdict form.  The foreperson should

then give a note -- not the verdict form itself -- to the court

security officer outside your door stating that you have

reached a verdict.  Do not specify what the verdict is in your

note.  Instead, the foreperson should retain the verdict form

and hand it to me in open court when I ask for it.

        I will stress again that each of you must be in

agreement with the verdict that is announced in court.  Once

your verdict is announced in open court and officially

recorded, it cannot ordinarily be revoked.

        Finally, I say this not because I think it is

necessary but because it is the custom in this courthouse to

say it:  You should treat each other with courtesy and respect

during your deliberations.

        All litigants stand equal in this room.  All litigants

stand equal before the bar of justice.  All litigants stand

1    equal before you.  Your duty is to decide between these parties

2    fairly and impartially and to see that justice is done.

3            Under your oath as jurors, you are not to be swayed by

4    sympathy or prejudice.  You should be guided solely by the

5    evidence presented during the trial and the law as I gave it to

6    you, without regard to the consequences of your decision.  You

7    have been chosen to try the issues of fact and reach a verdict

8    on the basis of the evidence or lack of evidence.  If you let

9    sympathy or prejudice interfere with your clear thinking, there

10   is a risk that you will not arrive at a just verdict.  You must

11   make a fair and impartial decision so that you will arrive at

12   the just verdict.

13           Members of the jury, I ask your patience for a few

14   moments longer.  It is necessary for me to spend a few moments

15   with the parties and the court reporter at sidebar.  I will ask

16   you to remain patiently in the jury box, without speaking to

17   each other, and we will return in just a moment to submit the

18   case to you.

19           Thank you.

20           (At sidebar)

21           THE COURT:  All right.  Any objections to the

22   instructions as delivered?

23           From the government.

24           All prior objections are obviously preserved.

25           MR. DENTON:  No, your Honor.

M78Wsch2                    Charge

1          THE COURT:  Mr. Schulte.

2          MR. SCHULTE:  Just for the record, renew the

3    objections I made during the jury charge.

4          THE COURT:  As stated, all those are preserved.

5          Very good.  Return to your seats, and I'll excuse the

6    alternates and submit the case to the jury.

7          (In open court)

8          THE COURT:  All right.  Thank you for your patience,

9    ladies and gentlemen.

10          So, this is the moment where I advise two of you that

11    you're actually alternate jurors and unless we lose a juror

12    during deliberations, you will not be called upon to

13    deliberate, at least at this time.  That is juror Nos. 13 and

14    14.  Now, I don't know if this is welcome or unwelcome news,

15    but you are both alternates, and for that reason, in a moment

16    I'm going to let you go.  But I want to stress that you're not

17    excused at this time from jury service.  That is because it is

18    possible that during deliberations one of the other 12 jurors

19    may be unavailable to continue, and in that case, you may be

20    called upon to join and deliberate with them.  And for that

21    reason, all of the instructions that I have given you to date

22    continue to apply until the jury reaches a verdict; that is to

23    say, do not discuss the case and even though you will not be

24    deliberating for the moment at least, you should not discuss

25    the case with anyone in any way, shape or form.  You should not

M78Wsch2

communicate about the case.  You should do not do any research
about the case, and you should continue to keep an open mind.

        We will contact you in the event that the jury does
reach a verdict to advise you of that fact and that you are at
that time formally excused, at which time the restrictions that
I just mentioned will no longer's apply to you.

        Again, I don't know if telling you that you're
alternates is welcome or unwelcome news, but I want to assure
you that you've played a critical role in this process.  As you
saw, we lost two jurors during the course of this trial, so
having alternates is a very important and critical part of the
process to ensure that, once we start a trial, we can get it to
its completion.  And as I said earlier, it may be that you're
called upon to serve and to deliberate.  So for that reason,
you're still playing a necessary and important part.  So let me
thank you on behalf of the parties, on behalf of the Court, on
behalf of the justice system for the role that you have played.

        Again, let me remind you that you are not formally
excused, so all the restrictions do continue to apply, and we
will contact you as soon as that changes, if that changes.  And
with that, I'll ask you to follow Ms. Smallman to the jury room
so that you can retrieve your belongings, and then you are free
to go even if you're not formally excused.

        I'll ask the rest of you to remain where you are while
Ms. Smallman does that.  Unfortunately, given the distance of

M78Wsch2

1    the jury room from the courtroom, it will take a few more

2    minutes than it normally does in pre-Covid times, but bear with

3    us and we'll get you off to the jury room in short order.

4            In the meantime, I'll take care of some business.

5    I'll ask the court security officer who will secure the jury's

6    deliberations to step forward so that I can administer the

7    oath.

8            (Court security officer sworn)

9            THE COURT:  Thank you very much.

10           While we wait, let me give you some scheduling,

11   logistical-type information.

12           I mentioned to you yesterday that we would provide you

13   with lunch order forms.  I understand that you've all completed

14   that.  I've directed that lunch be delivered to the jury room

15   at approximately 12:15.  I leave it up to you whether you want

16   to eat at that time or some other time.  It's up to you.  I

17   also leave it up to you to decide whether you want to

18   deliberate during your lunch or take a break from your

19   deliberations.

20           One thing I want to stress is that you should not

21   deliberate -- you may not deliberate -- unless all 12 of you

22   are participating and there.  So if somebody decides, for

23   example, to go off on their own to eat lunch, you should cease

24   your deliberations.  Bottom line is, hopefully, you can all

25   decide those sorts of issues yourselves.

M78Wsch2

1            I mentioned that we'll be ending today either when you

2    reach a verdict or 3:00, whichever is earlier.  If you have not

3    reached a verdict, you should anticipate that I will bring you

4    back to the courtroom a couple minutes before three just so

5    that I can give you some instructions before everyone leaves

6    for the weekend.  But otherwise, we will await word from you.

7            I've already told you if you have any questions or

8    communications, you should send those to us by note, written,

9    signed by your foreperson.

10           With that, please remain where you are, and as soon as

11   Ms. Smallman gives me the word, I will send you off to the jury

12   room to begin your deliberations.

13           A minute or two after you get there, we will provide

14   the physical exhibits to you, and I mentioned already that my

15   staff will show you how to use the computer systems to access

16   the documentary exhibits, which will be available

17   electronically.  So, with that, please wait patiently and we

18   will send you on your way in a moment.

19           All right.  Ms. Smallman is back already.  Wonderful.

20           I'll have Ms. Smallman give the official verdict form

21   to juror No. 1.

22           She already has, apparently.  Terrific.

23           And with that, ladies and gentlemen, you are formally

24   excused to begin your deliberations.  As I said, in a minute or

25   two, we will bring the physical exhibits to you, and

M78Wsch2

1      Ms. Smallman or someone else will show you how to use the

2      computer system.

3             Good luck, and you may retire to deliberate at this

4      time.

5             Thank you.

6             (At 10:40 a.m., the jury retired to deliberate upon a

7      verdict).

8             THE COURT:  You may be seated.

9             All right.  First, I would ask the government to just

10     begin going through the transcript and I think making

11     redactions of the things that you think would need to be

12     redacted in the event that the jury were to request any

13     portions of the transcript.  I think I've started doing that

14     because when there are requests it just speeds the process

15     along, I think.  So if you can make a preliminary determination

16     and then when we need to, you can share it with Mr. Schulte,

17     that would be ideal and I think will save some time in the

18     event that we get any such requests.  If you're able to show it

19     to Mr. Schulte before the request, all the better, but at least

20     begin the process.

21            If you can give the physical exhibits to my law clerk,

22     we'll get those down to the jury.  Do we have them?

23            All right.  Anything to discuss?

24            From the government.

25            MR. DENTON:  No, your Honor.

```
 1              THE COURT:  From Mr. Schulte.

 2              MR. SCHULTE:  No.

 3              THE COURT:  All right.  In that case, I assume that

 4    most, if not all, of you are not going very far.  In my

 5    experience, it's not unusual that we'll get a note relatively

 6    quickly, even if it's about something fairly easily for us to

 7    settle.  For that reason in particular, I won't ask that you

 8    remain in the courtroom, but don't go very far.  Certainly

 9    Mr. Schulte is not going very far, but everyone else, if you

10    can just make sure that we have your cell phone numbers and

11    that you are relatively close so that if we get a note and we

12    need to summon you, you can be back relatively quickly, that

13    would be ideal.  So if we don't already have your cell phone

14    numbers, please make sure that you give them to my law clerk.

15              And with that, I will see you whenever I see you.

16              I guess -- sorry -- before I step down, if we don't

17    get a note by 2:45, please be here at 2:45.  As you heard, my

18    plan is to bring the jury in to excuse them for the weekend.

19    So if you're here at 2:45, we'll get them up just a couple

20    minutes before three.

21              Any questions?

22              MR. DENTON:  No, your Honor.

23              MR. SCHULTE:  No.

24              THE COURT:  All right.  See you when I see you.

25              Thank you.     (Recess pending verdict)
```

M785sch3                    Deliberations

1              A F T E R N O O N   S E S S I O N

2                          2:00 p.m.

3         THE COURT:  All right.  Good afternoon.  Welcome back.

4         As I think you may know, we have actually received two

5    notes, one of which was non-substantive so I didn't convene

6    everyone.  But, today, at 12:22 p.m. we received a note:  "We,

7    request a black marker for charting."  Signed by the -- well,

8    by one of the jurors, I presume the foreperson.

9         And then today, dated today at 1:00 p.m. received a

10   second note stating:  "The jury requests transcript of witness

11   no. 3, Leedom testimony."  Signed by the foreperson.  I

12   hesitated on the first one because the signature appears

13   different on the two so I don't know what to make of that.

14   But, in any event, that's what I have received.  I will mark

15   them Court Exhibits 1 and 2.  Eventually we will docket them.

16        I took the liberty of sending a marker in in response

17   to their first note and did not, as I said, bother to convene

18   everyone for that purpose.

19        I gather that the government has provided to

20   Mr. Schulte a proposed redaction of Mr. Leedom's testimony.  I

21   quickly looked through it and it looked good to me but

22   Mr. Schulte, have you had a chance to review it?

23        MR. SCHULTE:  I have.  I had two requested

24   modifications.

25        THE COURT:  OK.

M785sch3                    Deliberations

1          MR. SCHULTE:  The first is on page 1019, lines 4

2      through 5.  I think that just completes the redactions already

3      there.

4          THE COURT:  All right.  I actually caught the line 4

5      one myself.  I think that's correct, as long as we haven't

6      printed it, we may as well add the remainder of 4 and 5.

7          Any objection?

8          MR. DENTON:  No.  That's fine, your Honor.

9          THE COURT:  And second?

10         MR. SCHULTE:  The second one is on page 983, and the

11     government redacted 7 and 8 but the question and answer already

12     came in before the objection and there was no move to strike so

13     I think that's in evidence.

14         THE COURT:  Well, I think since I sustained the

15     objection, the implicit direction to the jury is to disregard

16     the answer so I disagree.

17         Mr. Denton?

18         MR. DENTON:  We agree, your Honor.

19         THE COURT:  So I think that's right with the

20     modification to 1019 I think we are good to go.

21         Ms. Cooper, are you on top of this?  If you can modify

22     1019, apply the redactions and then e-mail it to Ms. Smallman,

23     I think we can at least quickly load it on to the jury's system

24     and we will notify them, I think we should probably print a few

25     copies as well, just to give them maximum flexibility.

M785sch3                      Deliberations

1           While that is happening, one other question for you;

2    speaking with Mr. Hartenstine, whether we need a CISO present

3    next week should the jury's deliberations continue.  Given it

4    is 2:08, I think it is likely.  I am curious of your views.  He

5    and I spoke and I think the only scenario in which I see the

6    need to have any sort of classified hearing is if there is a

7    jury note with respect to one or the other of the two

8    classified exhibits.  That strikes me as a very low probability

9    but not impossible.  Mr. Hartenstine said in the event we did

10   need to hold a classified hearing, it is ideal that a CISO

11   would be present but we could proceed even in the absence of

12   one.

13           So, given that, I think it is probably OK to take our

14   chances and proceed without one, though he may decide to send

15   someone anyway but curious to hear your thoughts or if you have

16   any reason, aside from what I have thought about, to have

17   someone present.

18           Mr. Denton?

19           MR. DENTON:  Your Honor, I think as far as a hearing

20   goes, we agree.  In the unlikely event that we need to do

21   something on short notice, everyone involved has been through

22   this enough times now that we can manage that process without

23   having someone physically here.

24           The only other possibility that comes to mind is

25   whether they need any sort of, I guess, technical assistance

1  with either of the two classified exhibits.  I don't see any

2  reason why that's not something that the Court or the Court's

3  staff could handle and it wouldn't necessarily have to be a

4  CISO to deal with that.  That's just the only other possibility

5  that occurs to us.

6              THE COURT:  Mr. Schulte?

7              MR. SCHULTE:  I don't take a position one way or the

8  other.  Whatever you think is best.

9              THE COURT:  So I will talk to Mr. Hartenstine and we

10  will decide, but my guess is we can probably take our chances

11  and spare them more time in New York if they're eager to be

12  spared of New York.

13              I think what I would propose to do is actually write a

14  short note to the jury explaining that we got their note, that

15  we have loaded the testimony on their system, and that we are

16  also printing copies but, in the meantime, it is immediately

17  available to them.

18              Any objection to my doing that?

19              MR. DENTON:  No, your Honor.

20              MR. SCHULTE:  No.

21              THE COURT:  Great.  So give me a moment, I will draft

22  something, I will read it to you, and then we will proceed.

23              In the meantime, Ms. Cooper, you can let us know when

24  you have accomplished your tasks?

25              MR. DENTON:  Your Honor, how many hard copies of the

1  testimony would you like to send back?

2          THE COURT:  I don't have a strong view.  Why don't we

3  say six.

4          MR. DENTON:  Nice round number.

5          (pause)

6          MR. LOCKARD:  The revised redaction has been emailed

7  and Ms. Smallman should have it shortly.

8          (pause)

9          THE COURT:  Here is what I would propose, a note that

10  says the following with today's date on my letterhead:

11          To the members of the jury:  We received your note

12  requesting the testimony of Mr. Leedom.  We have uploaded a

13  copy of the transcript (redacted to remove anything that is not

14  evidence) on the electronic system.  We are in the process of

15  making six physical copies of the transcript for you as well.

16  Thank you, Judge Furman.

17          Any objection to that?

18          MR. DENTON:  Not from the government, your Honor.

19          THE COURT:  Mr. Schulte?

20          MR. SCHULTE:  I think that's fine.  I think maybe just

21  adding something that if they want more paper copies they

22  should just request that.

23          THE COURT:  I think that is implicit.  I don't want to

24  suggest to them that they should.  They know they can always

25  ask for anything, really, so I will leave it at that.

M785sch3                      Deliberations

1          I think I will add a line:  Thank you for your

2     patience.  So that they know we are trying.

3          The government will get the six copies to us as soon

4     as possible, if you can before 2:45, obviously, and if not, we

5     will have them for when the jury begins on Monday.

6          Anything to discuss before we adjourn until later in

7     the hour?

8          MR. DENTON:  No, your Honor.

9          THE COURT:  Mr. Schulte?

10          MR. SCHULTE:  No.

11          THE COURT:  All right.  So, again, be back in the

12     courtroom in half an hour and I will see you shortly

13     thereafter.

14          Thanks.

15          (recess pending verdict)

16          THE COURT:  It is 2:54.  Anything to discuss before we

17     bring the jury up and excuse them for the weekend?

18          MR. DENTON:  Not from the government, your Honor.

19          MR. SCHULTE:  No.

20          THE COURT:  While we do that let me say, if you

21     haven't already, I would continue the process of redacting the

22     rest of the transcript.  I regret not saying earlier today that

23     I would begin with Leedom, I sort of had a sense that that

24     would be the most likely portion that they would request.  On

25     the same principle, I might continue with Berger.  But, in any

M785sch3                    Deliberations

1    event, given that you have the weekend I would think that the

2    government can probably finish the entirety of the transcript

3    and give it to Mr. Schulte first thing on Monday morning so

4    that we are ready to provide them with anything else that they

5    request.

6               Good?

7               MR. DENTON:  Will do, your Honor.

8               THE COURT:  Terrific.  All right.  We will get the

9    jury and go from there.

10              Just so you know, my practice and plan is to tell them

11   that they don't need to appear here Monday morning, that they

12   can report directly to the jury room, and once all 12 are

13   present then they can resume their deliberations.  So, for that

14   reason, you don't need to be here at 9:00 a.m. as well, as long

15   as you are relatively close by and we know how to reach you,

16   then that should suffice.

17              All right?  Good.

18              (pause)

19              THE DEPUTY CLERK:  Jury entering.

20              (Jury present)

21              THE COURT:  You may be seated.

22              Welcome back, ladies and gentlemen.  It is now 3:00 on

23   the dot so, as promised, I brought you back to let you go for

24   the weekend.  Let me give you some instructions.

25              First -- and I don't know how to rank the foremost but

1    certainly up there in importance -- don't discuss the case.

2    All right?  Don't discuss the case with anyone, and that

3    includes with each other, subject to what I will say in a

4    moment.  That is to ensure that you continue to keep an open

5    mind, it is to ensure that you don't get exposed to anything

6    beyond the evidence in this case.  The bottom line is for all

7    the same reasons that I have told you throughout the case.  So

8    over the weekend, again I hope you are seeing friends and

9    family.  Regardless, whatever the temptations may be don't talk

10   about the case.  All right?  You may say that you are serving

11   as a juror in a criminal case.  Don't even say that you have

12   reached the point of your deliberations.  Don't say anything

13   beyond that.  All right?  Don't discuss the case, at all.

14        You also shouldn't discuss the case with one another

15   until Monday when all 12 of you are present.  I told you

16   earlier that you may not deliberate about the case, you may not

17   discuss the case unless you are deliberating, and in order to

18   deliberate that requires all 12 of you.  So, for that reason,

19   you shouldn't discuss the case with one another either in the

20   event that you see each other either outside the courtroom or

21   when you are waiting for your fellow jurors on Monday morning;

22   wait until all 12 of you are there.

23        So don't discuss the case, don't talk about the case,

24   don't communicate about the case, don't do any research about

25   the case or anyone involved in it.  All of those rules continue

M785sch3                    Deliberations

1    to apply and you should certainly continue to keep an open mind

2    since it is important to hear from your fellow jurors and

3    deliberate as a selective whole.

4            On Monday you will resume your deliberations Monday,

5    beginning hopefully by 9:00.  To that end, please be in the

6    jury room by 8:45.  You do not need to come here to resume your

7    deliberations.  As long as all 12 of you are present, then you

8    may resume your deliberations so you should go directly to the

9    jury room.

10           What I would like you to do is at 9:00 confirm to the

11   Court Security Officer, who is securing your deliberations,

12   that all 12 of you are present, and also provide the Court

13   Security Officer with your lunch order forms since we will get

14   those in and get lunch delivered to you probably around the

15   same time so you can plan accordingly.  But, I will not make

16   you come to the courtroom before you resume your deliberations,

17   you can do that as soon as all 12 of you are present, but I

18   stress that you should not do so until all 12 of you are

19   present.

20           I think that is all I need to tell you.  Ms. Smallman

21   is nodding her head which means I am doing well.  With that, I

22   wish you a restful, good, and enjoyable weekend.  I will bring

23   you up to the courtroom either when we receive another note

24   from you on Monday, if you have another note, or at the end of

25   the day, which will be 5:00 on Monday.  So, again, if you

M785sch3                          Deliberations

1    haven't reached a verdict or you don't have a note that would

2    lead me to bring you to the courtroom, I will bring you up at

3    the end of the day.

4           I should say, we received your two notes earlier, one

5    requesting a marker, the other requesting Mr. Leedom's

6    testimony.  We gave you the marker; hopefully you are satisfied

7    on that front.  Obviously, if there is anything else of that

8    sort that you need, let us know.  And, at this point I

9    understand that you have received Mr. Leedom's testimony both

10   in electronic form on the system in the jury room and also some

11   additional copies for you as well.  Hopefully that satisfies

12   your requests on that score.

13          So, with that, I wish you a wonderful, relaxing rest

14   of the weekend and we will see you at some point on Monday, and

15   again, please be in the jury room 8:45, there should be

16   breakfast for you, and when all 12 of you are present, give

17   those forms to the CSO -- the Court Security Officer -- and you

18   may resume your deliberations.

19          Thank you very much and have a wonderful weekend.

20          (Jury not present)

21          THE COURT:  You may be seated.

22          Anything anyone needs to discuss?

23          MR. DENTON:  No, your Honor.

24          MR. SCHULTE:  No.

25          THE COURT:  All right.  I wish everybody a relaxing,

M785sch3                        Deliberations

1   restful weekend as well and I will see you at some point on

2   Monday.  As noted, you don't need to be here at 9:00 but make

3   sure you are nearby and reachable.  Have a wonderful weekend.

4            Thank you.

5            (Adjourned to July 11, 2022, at 9:00 a.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25