M7cWsch1

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                            17 Cr. 548 (JMF)

JOSHUA ADAM SCHULTE,

            Defendant.
                                          Trial
------------------------------x

                                          New York, N.Y.
                                          July 12, 2022
                                          10:45 a.m.

Before:

                    HON. JESSE M. FURMAN,

                                          District Judge
                                          -and a Jury-

                         APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  DAVID W. DENTON JR.
     MICHAEL D. LOCKARD
     Assistant United States Attorneys


JOSHUA A. SCHULTE, Defendant Pro Se


SABRINA P. SHROFF
DEBORAH A. COLSON
     Standby Attorneys for Defendant

Also Present:  Charlotte Cooper, Paralegal Specialist
```

1           (Trial resumed; jury not present)

2           THE COURT:  You may be seated.

3           Good morning.  Good to see everyone.

4           As you may know, I think you've gotten copies, we
5  received another note this morning from the jury, dated today,
6  9:45 a.m., signed by the foreperson, stating as follows:

7           "Jury has question to judge.  Can you clarify pg. 28,
8  lines 18-22.  Jury is uncertain as to what it means.  Also, the
9  jury requests the transcripts of Berger."

10          Sort of predicted that one and, therefore, hope it's
11 ready to go.  I'll mark this Court Exhibit 4, with my response
12 to the last note being Court Exhibit 3.

13          I shared with you a draft proposed answer to the first
14 part of the question.  As you can see from the proposed answer,
15 I presume that they are referring to the jury instructions.
16 Otherwise, it's sort of impossible to imagine what page 28,
17 lines 18 to 22 otherwise refers to.  And assuming that is
18 correct, it is a reference to the mere preparation portion of
19 the attempt instruction.

20          The draft that I gave you is based, as you can see, on
21 a relatively recent Second Circuit decision that fleshes out
22 the meaning of "substantial step."  I thought that that would
23 be helpful rather than simply repeating what I've already
24 instructed the jury, which comes from Sand but wouldn't provide
25 much guidance if I simply repeated it.

1              First, on the easier front, are we set to go with
2     Berger?  Is that ready to go?
3              MR. DENTON:  Yes, your Honor.  We're all in agreement.
4     Ms. Cooper is going to forward to chambers the electronic copy,
5     and we have six hard copies of the redacted transcript here as
6     well.
7              THE COURT:  Great.  Once you do that, we'll load it up
8     and then someone can bring the printed copies down while we
9     work through the other portion.
10             Mr. Schulte, just to confirm, are you on board with
11    the Berger part of this?
12             MR. SCHULTE:  Yes, that's right.
13             THE COURT:  Great.
14             As to the other part, thoughts, comments, as to my
15    proposal or otherwise?
16             Mr. Denton.
17             MR. DENTON:  Your Honor, obviously, I think the jury's
18    note is a bit inscrutable, what they're requesting
19    clarification on.  We have no objection to the Court's
20    proposal.  It's obviously an accurate statement of the law and
21    a good effort to clarify it.  I think we have a couple of, I
22    would characterize them as linguistic suggestions with respect
23    to lines 26 and 27, which I'm happy to address now.  Or I don't
24    know if Mr. Schulte has substantive objections that would make
25    sense to address first.

1          THE COURT:  All right.  Let me check with him first
2  before we start wordsmithing.  May as well make sure we're all
3  on the same page.
4          Mr. Schulte.
5          MR. SCHULTE:  Yes.  I think we had some substantive
6  changes that we would request, but if there's any way that the
7  Court could give us five minutes to continue consulting with
8  Mr. Zas from appeals.
9          THE COURT:  Sure.  I'll stay on the bench since
10  there's no need for me to step down.  And I'll give you a few
11  minutes.  The sooner the better.  Let me know when you're ready
12  to go.
13          MR. SCHULTE:  OK.  I think we're finished.
14          THE COURT:  OK.  Why don't we start with you, since it
15  sounds like the government's comments are more of the
16  wordsmithing variety.
17          MR. SCHULTE:  Yeah.  So, our first suggested change is
18  starting at lines 18 to 19, the "Put differently, a defendant
19  may" sentence we think basically makes it more confusing there.
20  So we would suggest taking that sentence out.
21          THE COURT:  Can you explain what you think is
22  confusing about it?  It comes pretty much verbatim from *Pugh*.
23          MR. SCHULTE:  Yeah, I think -- and we were looking at
24  the opinion here.  But I think the big issue is that the
25  majority of the language here is defining "substantial step"

and going into detail about that. And then, here, we introduce a new permutation, "significant step," and how that relates to substantial step just seems to add, you know, confusion there. Whereas, this sentence is basically trying to rephrase the previous sentence. So we think that the previous -- the first sentence there explains it sufficiently, that this addition here of this sentence we just think is -- maybe adds to confusion, is not necessary.

THE COURT: Mr. Denton.

MR. DENTON: Your Honor, I think we do think that the sentence is valuable and, frankly, maybe the most directly responsive to what appears to be confusing the jury. To the extent that there's any concern about the jury perceiving "significant steps" as somehow a defined term of different meaning, I don't think we would have any objection to changing it to "other steps" necessary to carry it out.

THE COURT: OK. I think I'm going to leave it as is. I think it's an important proposition -- namely, that they understand that the substantive crime may well be very far off and many things may remain to be done before it's committed, but that doesn't necessarily mean that it's not an attempt. And I recognize that "substantial" and "significant" are sort of similar, but different, terms, but I'm not inclined to think that it's confusing, since it's referring to what remains to be done and not what was done. And in that sense, I think it

actually makes sense to distinguish the two.  I think it's an accurate statement of the law.  I haven't heard anyone suggest otherwise and I think it's important to leave in.

Next.

MR. SCHULTE:  Then on the next paragraph, we have a couple suggestions.  The first one is line 23.  We just suggest changing it to follow the language from the decision, which is taking out "was done" on 23, the first word there "was done," to "has already been done" and then changing, in the middle of the sentence there, "remained to be done" to just "remains to be accomplished."  Minor, I think it's a minor kind of change there.

THE COURT:  OK.

Mr. Denton.

MR. DENTON:  I like the Court's parallel construction, but I'm not going to object to quoting from the Second Circuit, so I don't think we have a strong view.

THE COURT:  All right.  I'll change "was" to "has already been" and "remained" to "remains" and "done" to "accomplished."

Anything aside from those changes, Mr. Schulte?

MR. SCHULTE:  Yes.  And then beginning with "additionally --"

(Defendant conferred with standby counsel)

MR. SCHULTE:  So, starting with "additionally," we

1    would --

2              (Defendant conferred with standby counsel)

3              MR. SCHULTE:  Yeah.  We suggest the change there,

4    after "additionally," as "Additionally, the substantial step

5    itself need not be criminal, but it must be one necessary to

6    the consummation of the crime," and then continuing off,

7    where -- and then it says "and be of such a nature that a

8    reasonable observer, viewing it in context, could conclude

9    beyond a reasonable doubt that it was undertaken in accordance

10   with a design to violate the statute."

11             THE COURT:  All right.  If I understood correctly,

12   it's just proposing a change to the beginning of the sentence.

13             MR. SCHULTE:  Yes, that's correct.  And then the rest

14   of it follows the --

15             THE COURT:  So can you repeat exactly what you propose

16   to change?

17             MR. SCHULTE:  Yeah.  So, starting with, "in order for

18   behavior to be punishable as an attempt, it need not be

19   incompatible with innocence, yet it" -- so changing that to

20   this:  "Additionally, the substantial step itself need not be

21   criminal, but it must be one necessary to the consummation of

22   the crime."

23             (Defendant conferred with standby counsel)

24             MR. SCHULTE:  Yeah, essentially just taking out that

25   sentence, "in order for behavior to be punishable as an

1   attempt, it need not be incompatible with innocence."  It's,
2   like, a double negative and confusing there, so kind of
3   rewording that so --
4            THE COURT:  OK.  "Additionally, the substantial step
5   itself need" --
6            MR. SCHULTE:  "Not."
7            THE COURT:  "Substantial step need not itself be
8   criminal, but it" -- keep going.
9            MR. SCHULTE:  "But it must be one necessary to the
10  consummation of the crime."
11           THE COURT:  And then continue as it's here?
12           MR. SCHULTE:  Yes.  Yes.
13           THE COURT:  OK.
14           Mr. Denton, far be it for me to improve on the
15  language of the Second Circuit, but I think Mr. Schulte's point
16  is somewhat well-taken.  It's a double negative.  It's not
17  ideal.
18           MR. DENTON:  I think we don't have a strong view, your
19  Honor.  Again, I'm not going to object to the Court leaving it
20  as the quote, but I see the logic as well.
21           THE COURT:  OK.
22           All right.  Mr. Schulte, anything else?  I'll adopt
23  that suggestion.
24           MR. SCHULTE:  No.  I think that's it.
25           THE COURT:  OK.

     Mr. Denton, I don't know if that moots your suggestion, but what's your thought?

     MR. DENTON:  No, your Honor.  We pick up with the second half of that sentence, on lines 26 and 27, and just to give the Court our proposal, we would suggest that line 26, starting at line 26, it read "of such a nature that, viewing it in context, you conclude beyond a reasonable doubt that it was undertaken in accordance with an intent to commit the crime."

     I think two motivating thoughts there, the first being kind of take it out of the sufficiency sense and frame it that this is a decision that the jury must make beyond a reasonable doubt, not that a reasonable observer could make.  There may not be much daylight there, but phrasing it as an instruction to them seems directive.

     And then similarly, to avoid any suggestion that "design to violate the statute" has any daylight from "intent to commit the crime," which the Court has instructed them about, again, just sort of adopting that form of words again.

     THE COURT:  All right.  I think both those points are well-taken, and since I don't think I referred earlier to the statute, it may cause confusion to do that.  So can you just tell me that again more slowly, Mr. Denton, and then I'll hear from Mr. Schulte -- "may be of such a nature."

     MR. DENTON:  "That, viewing it in context, you conclude beyond a reasonable doubt that it was undertaken in

1   accordance with an intent to commit the crime."

2   THE COURT: Mr. Schulte.

3   MR. SCHULTE: Just one second. We're just reviewing.

4   (Defendant conferred with standby counsel)

5   MR. SCHULTE: We think that the change is fine. We
6   just ask at the end -- or at the beginning just to include
7   again the requirement that there must be proof beyond a
8   reasonable doubt of the element; the element must be proven
9   beyond a reasonable doubt.

10  THE COURT: I think that's what Mr. Denton's proposal
11  does.

12  MR. SCHULTE: Yes. I think it just -- just the line
13  after it, just to be clear with the jury that, you know, this
14  element must be proven beyond a reasonable doubt, or something
15  to this effect.

16  THE COURT: OK. I'm not inclined to think it's
17  necessary to repeat that again. It's certainly been repeated
18  *ad nauseam* to the jury already, and looking at this
19  instruction, it's now stated twice -- once in the beginning,
20  stating what the elements of an attempt are; and then once
21  again at the end, in accordance with Mr. Denton's suggestion.
22  So I don't think that's necessary.

23  All right. Any other comments, suggestions? If not,
24  I think we have the makings of an answer.

25  MR. DENTON: Nothing else from the government, your

1   Honor.
2              THE COURT:  Mr. Schulte.
3              MR. SCHULTE:  No, nothing further.
4              THE COURT:  OK.  Let me just print what I think is the
5   final version of this and provide it to you to look over one
6   last time, and then I do intend to bring them up and read this
7   to them.  But I will also give them copies to take with them,
8   as we did the main instructions.
9              All right.  Any final objections, suggestions?
10             Mr. Denton.
11             MR. DENTON:  No, your Honor.
12             THE COURT:  Mr. Schulte.
13             MR. SCHULTE:  No.
14             THE COURT:  OK.  Why don't we get the jury, and in the
15  meantime, we'll print 12 additional copies of this.  And I will
16  give it to them orally and to follow along as well.
17             (Jury present)
18             THE COURT:  Good morning.  I hope you're all well.
19  Welcome back.
20             We received your most recent note, asking for
21  clarification of page 28, lines 18 to 22, and for the
22  transcripts of Mr. Berger's testimony.  You've probably already
23  received the latter.  It's both loaded onto the electronic
24  system, and again, we provided you with six printed copies as
25  well.

In reference to the first part, you asked me to clarify page 28, lines 18 to 22. I assume you mean page 28, lines 18 to 22 of the jury instructions, which addresses the need to distinguish -- for purposes of Count Four, which charges the defendant with attempted illegal transmission of unlawfully possessed national defense information, or NDI -- between mere preparation, on the one hand, and the actual doing of a criminal deed, on the other.

As I instructed you -- and by the way I'll give you copies of what I'm reading now to take with you back to the jury room.

As I instructed you, to find that the defendant is guilty of Count Four, you must find that the government has proved beyond a reasonable doubt that (1) the defendant had the intent to commit the crime of illegally transmitting NDI (the elements of which I explained to you in connection with Counts Two and Three); and (2) the defendant engaged in conduct amounting to a substantial step towards the commission of the crime.

For the defendant to have taken a "substantial step," he must have engaged in more than mere preparation, but may have stopped short of the last act necessary for the actual commission of the substantive crime. Put differently, a defendant may be convicted of attempt even where significant steps necessary to carry out the substantive crime are not

1  completed.  A substantial step is conduct planned to culminate
2  in the commission of the substantive crime being attempted.
3  　　　　　In evaluating whether the defendant took a substantial
4  step, you may give weight to that which has already been done
5  as well as that which remains to be accomplished before
6  commission of the substantive crime.  Additionally, the
7  substantial step need not itself be criminal, but it must be
8  one necessary to the consummation of the crime and be of such a
9  nature that, viewing it in context, you conclude beyond a
10 reasonable doubt that it was undertaken in accordance with an
11 intent to commit the crime.
12 　　　　　I hope that answers your question.
13 　　　　　As I noted, we will give you a copy of what I just
14 read to take with you to the jury room.  And with that, I would
15 happily excuse you to resume your deliberations.
16 　　　　　Thank you very much.
17 　　　　　(At 11:30 a.m., jury deliberations resumed)
18 　　　　　THE COURT:  You may be seated.
19 　　　　　All right.  Anything else from the government?
20 　　　　　MR. DENTON:  We'll take any predictions on which
21 witness to have ready next.  Otherwise, I think we're all set,
22 your Honor.
23 　　　　　THE COURT:  All right.  Well, I told you to have them
24 all ready, so hopefully that won't be necessary.  But I'll stay
25 on the prediction game for the moment.

1           Mr. Schulte, anything from you?
2           MR. SCHULTE: No. I just wanted to say that we are in
3   the process of reviewing the government's counterproposals for
4   the rest of the stuff in the SCIF, and hopefully, we should be
5   done with that soon.
6           THE COURT: Counterproposals, meaning the redactions?
7           MR. SCHULTE: Yes, that's right. We gave the
8   government our proposals the other day, and we're just going
9   through to check, verify those. If there's any contention,
10  we'll let the Court know.
11          THE COURT: Great. That would be terrific, just to
12  zero in on whatever is in contention in the event that we get
13  another note.
14          As I said yesterday, I'll either see you when we get
15  another note or at 4:45, whichever is earlier.
16          And with that, we are adjourned. Thank you.
17          (Recess pending verdict)

1           THE COURT:  Good afternoon.  We obviously haven't
2    gotten any further notes since this morning's.  We are bringing
3    them up to discharge them for the day.
4           Anything to discuss?
5           MR. DENTON:  No, your Honor.
6           THE COURT:  Mr. Schulte?
7           MR. SCHULTE:  No.
8           THE COURT:  All right.  The wait continues.
9           (Jury present)
10          THE COURT:  Good afternoon, ladies and gentlemen.
11   Welcome back.  It is 4:59 so that brings us to the close of
12   today's deliberations.  I am glad to hear that breakfast
13   arrived this morning.  We will try to assure it does again
14   tomorrow and keep our fingers crossed.  Otherwise, same drill
15   tomorrow.
16          So, please be back in the jury room by 8:45.  I
17   know -- I think today and maybe yesterday one or two of you
18   arrived a bit late.  I know that happens.  It's New York City.
19   Public transportation doesn't always work the way we want it,
20   there is traffic, I get it, but obviously if you can be there
21   no later than 9:00, by 8:45 ideally, it will ensure that you
22   can resume deliberations promptly and make the most of the full
23   day.  And so, out of respect for one another, if you can make
24   every effort you can, I would appreciate it.
25          With that, same instructions apply.  Don't discuss the

1    case with anyone except all 12 of you when you are reassembled
2    tomorrow morning, at which point you can begin your
3    deliberations -- resume your deliberations.  Don't do any
4    research about the case, continue to keep an open mind until
5    you resume your deliberations, and then, obviously, listen to
6    one another.
7            With that, I wish you a very pleasant evening and we
8    will see you at some point tomorrow.  Thank you very much and
9    have a great evening and see you tomorrow.
10           (jury not present)
11           THE COURT:  All right.  I assume nothing to discuss,
12   so same drill tomorrow.  I will see you at some point either
13   when we get a note or 4:45, whichever comes first.
14           Have a pleasant evening and until then, thank you.
15           (Adjourned to July 13, 2022 at 9:00 a.m.)