M7D5sch1

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                          17 Cr. 548 (JMF)

JOSHUA ADAM SCHULTE,

            Defendant.
                                        Trial
------------------------------x

                                        New York, N.Y.
                                        July 13, 2022
                                        9:00 a.m.
Before:

                HON. JESSE M. FURMAN,

                                        District Judge
                                        -and a Jury-

                        APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  DAVID W. DENTON JR.
     MICHAEL D. LOCKARD
     Assistant United States Attorneys


JOSHUA A. SCHULTE, Defendant Pro Se


SABRINA P. SHROFF
DEBORAH A. COLSON
     Standby Attorneys for Defendant

Also Present:  Charlotte Cooper, Paralegal Specialist
```

1           (Trial resumed)
2           THE COURT:  Good afternoon.
3           Mr. Denton, you are solo today?
4           MR. DENTON:  We are working on technical issues
5    downstairs, your Honor.  I think Mr. Lockard and Ms. Cooper
6    will be joining us shortly.
7           THE COURT:  Can we proceed without them?
8           MR. DENTON:  Yes, your Honor.
9           THE COURT:  As I think you know, we got another note
10   dated today, 12:12 p.m. signed by the foreperson, stating as
11   follows:  "The jury needs help finding the subpoena about the
12   federal proceedings.  Can you pinpoint this for us?  It may
13   help also if we had FBI agent Evanchec's testimony."
14          My understanding is that the parties are in agreement
15   about redactions to the Evanchec transcript.  I would construe
16   this as a request for that, even though it is a little bit more
17   of a tentative statement that would help and would therefore
18   propose that we give it to them.
19          Any objection to that, Mr. Denton?
20          MR. DENTON:  No, your Honor.  We propose doing that.
21          THE COURT:  Mr. Schulte?
22          MR. SCHULTE:  No.
23          THE COURT:  No objection, that is?
24          MR. SCHULTE:  No objection.
25          THE COURT:  Am I correct that the parties are in

1  agreement about the redactions to that portion of the
2  transcript?
3      MR. DENTON:  Yes, your Honor.
4      MR. SCHULTE:  Yes.
5      THE COURT:  So I am told that Ms. Cooper is in the
6  process of trying to finalize that and will get it to us as
7  promptly as possible; is that correct?
8      MR. DENTON:  Yes, your Honor.  It is being printed now
9  and she should be e-mailing it to chambers shortly.
10     THE COURT:  Great.  So that leaves the first part
11 which states, as I said, that they need helping finding the
12 subpoena about the federal proceedings.  I would prefer if the
13 note were a little bit clearer but I would construe this to be
14 a question asking for help in finding grand jury subpoena that
15 underlies or is relevant to Count Nine.  I think, correct me if
16 I am wrong, but the subpoena or subpoenas, I think there were
17 two of them served on Mr. Schulte at the end of that first
18 interview.  I don't believe that the subpoenas themselves are
19 in evidence, there was simply testimony about them, so I guess
20 the question is how you think we should respond to that
21 question.
22     Mr. Denton?
23     MR. DENTON:  So, your Honor, I think our proposal
24 would be that the Court should, much as you did with respect to
25 the substantial step instruction, tell them I assume you are

referring to this grand jury subpoena, inform them that that subpoena itself is not in evidence, and advise them that testimony regarding the subpoena is in the transcript that we are providing at pages 210 and 310.

THE COURT:  And are you sure that that is the entirety of the testimony?

MR. DENTON:  I think that's one of the things Mr. Lockard is double-checking but that was what we were able to confirm, I don't think there is anywhere else.

Mr. Schulte?

MR. SCHULTE:  So I think our viewpoint is simply to respond to the note and say that no federal subpoena was introduced into evidence and then just leave it at that.  I think it is for the jury to, if they want to then review the transcript to find relevant places I think it is better to leave that to the jury unless they're specifically asking for us to pull that, which I don't think they are.

THE COURT:  So, first of all, at least searching for "subpoena" in the trial transcript, I think the only references to those subpoenas were pages 210 and 310, which Mr. Denton mentioned.

So, I think that something more along the lines of what Mr. Denton proposes is appropriate here, just because I think everybody is in agreement that the question pertains to the grand jury subpoenas but the question is not particularly

precise.  So, "can you pinpoint this for us," that could be reference to the subpoenas themselves in which case the accurate answer would be that they're not in evidence; or it could be testimony about the subpoenas or any evidence about the subpoenas, in which case the transcript pages would be relevant information.  So, I think it makes sense to do both.

Let me draft some proposed language and then we can go from there.

I guess one question that I may as well pose as I draft this one option would be for me to send a written note to the jury answering both of these questions with the physical copies of the Evanchec testimony, rather than bringing them up here to answer it.

Any thoughts on that, Mr. Denton?

MR. DENTON:  That would be fine with the government, your Honor.

THE COURT:  Mr. Schulte?

MR. SCHULTE:  Just a minute?  If we can just review for a second here?

THE COURT:  Sure.

(Defendant and standby counsel conferring)

MR. SCHULTE:  After reviewing the note and the transcript, we think that the two questions are not really -- may not necessarily be related and so it may be best just to give them the transcripts and allow them to review it.  But, to

1    the degree the Court wishes to pinpoint certain testimony, we
2    think that 210 and 310 are the relevant ones for Evanchec.  But
3    our view is just that it is not really what the note asks for
4    so we just wanted to state that.
5             THE COURT:  I disagree, just because it does say can
6    you pinpoint this for us.  So I would rather, where possible
7    and appropriate, I think I would prefer to answer and provide
8    what the jury is asking for.
9             Do you have a view on whether I simply send a note
10   with the Evanchec testimony that answers this portion of their
11   question versus bringing them up to answer it?  I would propose
12   sending just a written note so that we don't have to interrupt
13   their deliberations and bring them up here.
14            Do you have a view on that?
15            MR. SCHULTE:  Yes.  That's fine.
16            THE COURT:  Let me draft something for both of you to
17   consider and we will go from there.
18            (Pause)
19            THE COURT:  I have a draft response that Ms. Smallman
20   will print out and provide to both sides and we will go from
21   there.
22            (Pause)
23            THE COURT:  Are we almost ready?
24            MR. DENTON:  Your Honor, the government is fine with
25   the Court's proposal.

1        THE COURT:  Mr. Schulte?

2        MR. SCHULTE:  I think we just request a minor

3    modification.

4        After the first sentence ending with "testimony of

5    agent Evanchec," just moving up the last part first to say:  As

6    to the first part of your note, the subpoenas themselves were

7    not introduced into evidence, period, and then say the next

8    part, with this note I am providing you with six copies...

9        THE COURT:  As noted, I am going to reference his

10   testimony about the subpoena since I --

11       MR. SCHULTE:  Yes.

12       THE COURT:  So your proposal would be to move that up?

13       Can I ask you a question?  I'm not saying your

14   approach is any better or worse than mine but is there any

15   problem with doing it this way?

16       MR. SCHULTE:  I think the concern was just trying to

17   make sure and answer their questions in the same order.  It is

18   not like this is any worse or better, I just think it is maybe

19   more clear just to answer the first question first and then go

20   from there.  I think it is more semantics but it's --

21       THE COURT:  I think I'm going to leave it as is then,

22   since the second part references the transcript it makes sense

23   to indicate first that they're being provided with the

24   transcript which, in any event, they will know since it will be

25   handed to them with the note.  So, given that, I will send this

1    down to the jury with the transcript which I see is here, I
2    will mark the jury's note -- I think is Court Exhibit 6, and
3    then my response would be Court Exhibit 7.
4               Anything else to discuss?
5               MR. DENTON:  Not from the government, your Honor.
6               THE COURT:  Mr. Schulte?
7               MR. SCHULTE:  No.
8               THE COURT:  Ms. Smallman, do you need another copy?
9               All right.  I will see you at 4:45, if not before.
10   Thank you very much.  Enjoy your afternoon.
11              (Recess pending verdict)
12              THE COURT:  As I think you may know, we received
13   another note, dated today, that states:  "We, the jury, have
14   found a verdict on all nine counts."
15              So we will get the jury up here and proceed from
16   there.  This should go without saying but obviously, whatever
17   the verdict may be, I expect everybody to behave professionally
18   and appropriately and don't expect there to be any outbursts of
19   any sort.  Again, I hope that goes without saying.  And,
20   whatever the verdict may be, we will deal with whatever needs
21   to follow.
22              (Jury present)
23              THE COURT:  Welcome back, ladies and gentlemen.
24              We received your note dated today stating you have
25   reached a verdict on all nine counts.  I would ask that the

1   foreperson please hand the verdict form to Ms. Smallman at this
2   time so it can be passed to me.
3              Everybody can be seated.
4              Ladies and gentlemen, I am going to read your verdict
5   out loud.  After I do so I will ask each of you if what I have
6   read is, in fact, your verdict.
7              With that, with respect to Count One, which charges
8   the defendant with illegal gathering of national defense
9   information, the jury finds the defendant guilty.
10             With respect to Count Two, which charges illegal
11  transmission of unlawfully possessed NDI, the jury finds the
12  defendant guilty.
13             With respect to Count Three, which charges the
14  defendant with illegal transmission of unlawfully possessed
15  NDI, the jury finds the defendant guilty.
16             With respect to Count Four, charging attempted illegal
17  transmission of unlawfully possessed NDI, the jury finds the
18  defendant guilty.
19             With respect to Count Five, which charges unauthorized
20  access to a computer to obtain classified information, the jury
21  finds the defendant guilty.
22             With respect to Count Six, unauthorized access to a
23  computer to obtain information from a department or agency of
24  the United States, the jury finds the defendant guilty.
25             With respect to Count Seven, causing transmission of a

1  harmful computer program, information, code, or command, the
2  jury finds the defendant guilty.
3          With respect to Count Eight, charging the same
4  offense, with respect to the deletion of log files, the jury
5  finds the defendant guilty.
6          And, with respect to Count Nine, charging obstruction
7  of justice, the jury finds the defendant guilty.
8          The verdict form appears to have been signed by all 12
9  jurors dated today, 3:28 p.m.
10         Juror no. 1, is that your verdict?
11         JUROR:  Yes.
12         THE COURT:  Juror no. 2, is that your verdict?
13         JUROR:  Yes.
14         THE COURT:  Juror no. 3, is that your verdict?
15         JUROR:  Yes.
16         THE COURT:  Juror no. 4, is that your verdict?
17         JUROR:  Yes, your Honor.
18         THE COURT:  Juror no. 5, is that your verdict?
19         JUROR:  Yes.
20         THE COURT:  Juror no. 6, is that your verdict?
21         JUROR:  Yes.
22         THE COURT:  Juror no. 7, is that your verdict?
23         JUROR:  Yes.
24         THE COURT:  Juror no. 8, is that your verdict?
25         JUROR:  Yes.

1          THE COURT:  Juror no. 9, is that your verdict?
2          JUROR:  Yes.
3          THE COURT:  Juror no. 10, is that your verdict?
4          JUROR:  Yes.
5          THE COURT:  Juror no. 11, is that your verdict?
6          JUROR:  Yes.
7          THE COURT:  And juror no. 12, is that your verdict?
8          JUROR:  Yes, your Honor.
9          THE COURT:  The Jury is unanimous.
10         Counsel for the government, any reason that I cannot
11   dismiss the jury at this time?
12         MR. DENTON:  No, your Honor.
13         THE COURT:  Mr. Schulte, any reason I cannot dismiss
14   the jury at this time?
15         MR. SCHULTE:  No.
16         THE COURT:  All right.  Ladies and gentlemen, in one
17   moment I will dismiss you, at which time you are free, with one
18   exception, to discuss this case with anyone you would like,
19   which is to say that you are free from the restrictions that I
20   have given you repeatedly, to date.  Give me one moment,
21   though.
22         First, let me give you the one exception, which is
23   that two of the exhibits that were admitted into evidence, as
24   you may know, were or are actually technically still
25   classified, that is to say Government Exhibit 1, which was

given to you on a laptop, and Government Exhibit 1203-28 which was on a CD-ROM and accessible to you on another laptop. Both of those remain classified and were admitted into evidence in their classified form. As to those, to the extent that you did view them during your deliberations, you may not communicate the contents of those exhibits to anyone, including partners, spouses, family members, anyone. Technically, they remain classified and for that reason you may not communicate the substance or contents of those exhibits to anyone.

With that one exception, and it is an important one, you are now free to discuss the case as you see fit. It is possible that members of the press may ask to speak to you. It is possible that the parties may ask to speak to you. Whether you choose to speak to anyone, including members of the press or the parties, is entirely up to you. I would personally encourage you to think twice about it. I think the jury deliberations being sort of a secret part of the process is an important part of the American criminal justice system and I think it is good to respect that. At a minimum, I would ask that if you speak to anyone, that you respect the privacy of your fellow jurors. You are welcome to speak about the case, your impressions about the case and your feelings about it, but would think that what happens in the privacy of the jury room should otherwise remain private amongst yourselves. But, again, it is up to you at this point with the one exception I

mentioned earlier.

If you are willing -- I know you have been at this for a while, day four of deliberations, I am sure some, if not all of you are eager to get back to your lives -- if you are willing to wait a few minutes in the jury room, I would love to come speak to you more personally and just thank you a little bit more intimately than I can do here.  I would love to answer any of your questions about the process -- not about the case or about the facts, that's your prerogative here -- but if you are willing to wait a few minutes, I would love to thank you and hear your impressions about jury service and any ways that we can improve it.  If you want to leave, you are welcome to, you don't need to wait for me but, again, if you are willing to wait for a few minutes I would love to thank you more personally.  On that score, let me thank you here.

There is a very famous judge in this district, Edward Weinfeld, who many of us seek to emulate.  He is one of the legendary figures of the bench in this district.  There is one thing that he did that I take issue with -- many of my colleagues do as well -- is he made a practice of not thanking jurors.  It is his view that it is one of the few ways in which people in this country, citizens in this country are called upon to serve, and it is an obligation and therefore you don't require thanks but I disagree with him on that score because I think it is a big deal, even if it is an obligation, still a

1   big deal to do your service, big deal to do it in a case like
2   this that takes as long as this case took.
3        I am not commenting on your verdict but I will say
4   that I think we all have appreciated how much you guys have
5   paid attention, you have been here -- with very, very rare
6   exception -- on time every day, ready to go, and stuck with us
7   and you were patient in accommodating when things took turns
8   that I didn't expect and that generally helped me try to do
9   this in an efficient and timely way so I you thank you for
10  that.  I am sure the parties would join me in thanking you if
11  they could do so.  I thank you on behalf of the court, I thank
12  you on behalf of our justice system, and generally thank you
13  for your service.
14       With that, and again with the request that if you are
15  able and willing and interested in staying a few minutes, just
16  bear with me.  I do need to talk to the parties about a couple
17  matters.  Following your verdict, I would love to greet you
18  more personally in the jury room but with that, you are free to
19  go and you are excused at this time.
20       Thank you.
21       (Jury discharged)
22       THE COURT:  I assume it would be premature to set a
23  sentencing date given that there remain charges that need to be
24  tried.  I also assume that there will be briefing on some of
25  the post-trial motions, I mentioned a few that I reserved

1   judgment on.

2   Mr. Denton, any thoughts about any of that?  Should we
3   schedule status conference for couple weeks out to see where
4   things stand?  I don't know what your intentions are with
5   respect to the open counts -- or Mr. Schulte's are for that
6   matter, but I think it might pay to give everybody a little bit
7   of time to think about that, reflect on it, maybe even talk to
8   one another about it and, depending on what the plan is, we
9   would also need to resolve the question of whether Mr. Schulte
10  is representing himself with respect to those charges or would
11  like counsel.

12  MR. DENTON:  Yes, your Honor.

13  In light of those open issues, I think it does make
14  sense to set a status conference insofar as those pertain
15  principally to the open counts.  I don't think there would be
16  any issue with also setting a motions calendar in parallel to
17  address post-trial motion briefing but we can also defer that
18  for the status conference as well.

19  THE COURT:  Mr. Schulte?

20  MR. SCHULTE:  Yes.  I think postponing that to the
21  status conference and then going from there I think is the best
22  thing.

23  THE COURT:  So why don't I suggest that we reconvene
24  in, let's say, two weeks, and in the interim perhaps you can
25  talk to one another and to the extent that you agree on a

1  briefing schedule that would differ from whatever the rules may
2  provide we can discuss that at the conference and set it up at
3  that time, and also take up issues regarding the open counts
4  including setting, I would think, a motion deadline for those
5  counts figuring out what Mr. Schulte's intentions are with
6  respect to counsel and generally discussing a schedule.
7  　　　　　Does that make sense?
8  　　　　　MR. DENTON:  Yes, your Honor.
9  　　　　　THE COURT:  All right.  So two weeks, why don't we say
10 Tuesday, July 26th, at 3:00 in the afternoon.
11 　　　　　Does that work, Mr. Denton?
12 　　　　　MR. DENTON:  Yes, your Honor.
13 　　　　　THE COURT:  Mr. Schulte and standby counsel?
14 　　　　　MR. SCHULTE:  I think that's fine.
15 　　　　　THE COURT:  I think I have flagged the issues or some
16 of the issues that I think should be discussed at that time but
17 obviously would encourage you to think about anything else that
18 you think we ought to address.
19 　　　　　I think we probably should address exclusion of time
20 with respect to the open counts since trial in this case is now
21 complete.
22 　　　　　Mr. Denton, is there an application on that score?
23 　　　　　MR. DENTON:  Yes, your Honor.  In light of the need
24 for the parties to confer regarding any possibility of a
25 disposition, as well as possible motions and other pretrial

1  litigation, as well as the complexity of the trial of the
2  issues separately presented by those counts, the government
3  would move to exclude time under the Speedy Trial Act until
4  July 26.
5            THE COURT:  Any objection, Mr. Schulte?
6            MR. SCHULTE:  No objection.
7            THE COURT:  I will exclude time under the Speedy Trial
8  Act between today and July 26th.  I find that the ends of
9  justice served by excluding that time outweigh the interests of
10 Mr. Schulte and the public in a speedy trial for the reasons
11 that Mr. Denton stated and I guess, among other things, to
12 discuss somewhat also, Mr. Schulte had filed a letter when I
13 raised the issue of scheduling the next trial that he does
14 anticipate that there would be a need for some CIPA litigation
15 with respect to that so that's another thing that you should
16 think about and perhaps talk to one another before the July
17 26th conference.
18           Mr. Schulte, I should probably speak to the marshal
19 about your SCIF access going forward.  Do you have a view on
20 that in the next two weeks?  Obviously we can discuss that,
21 too, on the 26th, but do you have any need to go to the SCIF
22 between now and July 26th?
23           (Defendant and standby counsel conferring)
24           MR. SCHULTE:  I think perhaps one day being able to go
25 one day next week to review the materials there before the

M7D5sch1

1  status conference would be ideal, if possible.
2              THE COURT:  I think that makes sense and would also
3  enable you to prepare for that conference and discuss, for
4  instance, what, if any CIPA litigation we would anticipate.  So
5  I can call the marshal himself, if that's necessary.  I don't
6  know if the deputies here can take care of that.
7              THE MARSHAL:  Your Honor, I can talk to Matt about it
8  when we get downstairs.
9              THE COURT:  OK.  Great.  So I may reach out, in any
10 event, to thank him for his assistance is getting this trial
11 done and I thank the deputies who were super helpful throughout
12 trial.
13             Anything else from the government?
14             MR. DENTON:  No, your Honor.
15             THE COURT:  Mr. Schulte?
16             MR. SCHULTE:  No.
17             THE COURT:  With that then, we are adjourned.  Thank
18 you very much.
19                                o0o