M7qWschC

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        17 Cr. 548 (JMF)

5   JOSHUA ADAM SCHULTE,

6              Defendant.
                                         Conference
7   ------------------------------x

8                                        New York, N.Y.
                                         July 26, 2022
9                                        3:00 p.m.

10  Before:

11
                        HON. JESSE M. FURMAN,
12
                                         District Judge
13

14                         APPEARANCES

15  DAMIAN WILLIAMS
         United States Attorney for the
16       Southern District of New York
    BY:  MICHAEL D. LOCKARD
17       Assistant United States Attorney

18

19  JOSHUA A. SCHULTE, Defendant Pro Se

20

    SABRINA P. SHROFF
21  DEBORAH A. COLSON
         Attorneys/Standby Attorneys for Defendant
22

23

24

25
```

M7qWschC

```
 1              (Case called)

 2              MR. LOCKARD:  Good afternoon, your Honor.  Michael

 3     Lockard for the government.

 4              MR. SCHULTE:  Josh Schulte, appearing pro se.

 5              MS. SHROFF:  Good afternoon, your Honor.  Sabrina

 6     Shroff and Deborah Colson as standby counsel for Mr. Schulte,

 7     who is seated to my left and to Ms. Colson's right.

 8              THE COURT:  All right.  Good afternoon, everyone.

 9              Mr. Lockard, will Mr. Denton be joining us?

10              MR. LOCKARD:  He will not be joining us today.

11              THE COURT:  All right.

12              So everybody knows the events on our agenda, in

13     advance of this, I did receive a letter from Mr. Schulte,

14     indicating a variety of things, including that he wishes to

15     file a posttrial motion pro se but otherwise wishes to be

16     represented by counsel going forward.

17              I also received a letter from Ms. Colson requesting to

18     be relieved and proposing substitute counsel.

19              I think we should take up the question of the

20     defendant's representation first, since it does have bearing on

21     various other things that we need to deal with and decide

22     today.

23              As I said, Mr. Schulte states in his July 25 letter,

24     ECF No. 885, that he wishes to proceed pro se with respect to

25     his Rule 29 motion but otherwise be represented by counsel.  I
```

1    can't say that I've researched whether that sort of hybrid

2    representation is proper, and my guess is that I would be on

3    firm ground saying no, that he's either *pro se* or not *pro se*,

4    and leaving it at that.  But that being said, there may be an

5    argument for letting Mr. Schulte sort of wrap up his *pro se*

6    representation with respect to the merits of the charges that

7    were just tried and otherwise provide him with counsel.

8              Mr. Lockard, do you have a view?

9              MR. LOCKARD:  No.  I think the options the Court laid

10   out are correct.  I don't think it would be appropriate for

11   Mr. Schulte to be both represented and *pro se* with respect to a

12   particular set of motions, like the Rule 29 motion.  But I

13   think if the Court were inclined to allow him to file his

14   trial-related motions where he was *pro se* in a *pro se* capacity,

15   I think the Court could do that, or I think the Court also

16   could say --

17             THE COURT:  Do you want to use the podium?  I think

18   Ms. Shroff seems to be having trouble hearing you.

19             MR. LOCKARD:  Sure.

20             THE COURT:  And that microphone seems to be giving me

21   trouble.

22             MR. LOCKARD:  Is that better?

23             THE COURT:  Yes.

24             MR. LOCKARD:  I'll do a very brief recap.

25             I think the Court certainly should not permit

M7qWschC

1    Mr. Schulte to be both *pro se* and represented with respect to a
2    set of Rule 29 motions, but if the Court were inclined to allow
3    Mr. Schulte to file his trial-related motions from the trial
4    where he was *pro se* in a *pro se* capacity and allow him to
5    revoke his waiver of his right to counsel with respect to
6    sentencing and other posttrial matters, I think the Court would
7    have that discretion.

8           I think the Court would also have the discretion to
9    say you're *pro se* or not *pro se* and leave it at that.  But I
10   don't think the government has a view one way or the other.

11          THE COURT:  All right.

12          Ms. Shroff or Ms. Colson, do you wish to be heard on
13   this?

14          Mr. Schulte, I think I'm inclined to grant your
15   request and allow you to proceed as you propose.  Again, it's a
16   little bit unusual, and I'm sure I would have authority to do
17   otherwise, but I'm also guessing that I have discretion to do
18   as you propose.  So for the reasons I stated, I'm inclined to
19   grant it.  In light of that, you don't have necessarily need to
20   say anything, but anything you wish to say?

21          MR. SCHULTE:  No.  Thank you.

22          THE COURT:  Ms. Shroff, are you prepared to proceed
23   with those understandings and terms?

24          MS. SHROFF:  That's fine, your Honor.

25          I did just want to just point out to the Court that I

M7qWschC

1    have and we had a call with the government in which I outlined

2    my trial schedule for the next several months.  So I wanted the

3    Court to know of that schedule.

4              THE COURT:  All right.  I understand.  And since

5    there's no trial date yet, I'll take that into account when we

6    set a trial date.  But I don't think that's a reason to deny

7    the request, and given your relationship with Mr. Schulte, your

8    familiarity with the case, I think, certainly there are many

9    good reasons for you to be the person to take things over if

10   I'm going to allow him to proceed with counsel.

11             In light of that, I'll grant the request.

12             Let me just confirm, Mr. Schulte.  I'm not sure that

13   there is a standard allocution, if you will, for a reverse

14   *Faretta*, to go back to having counsel.  But to the extent that

15   you were previously exercising your Sixth Amendment right to

16   represent yourself, I think it makes sense to make sure that

17   you are knowingly and voluntarily revoking that and making a

18   voluntary and knowing decision to proceed with counsel going

19   forward, with the exception of the Rule 29 motion, which I will

20   permit you to handle on a *pro se* basis.

21             No. 1, do you understand that you do have the right,

22   as you exercised it in the most recent trial, to represent

23   yourself going forward?

24             Do you understand that?

25             THE DEFENDANT:  Yes, I do.

M7qWschC

1          THE COURT:  Do you understand you also do have the

2   right to counsel, and if you cannot afford to pay the cost of

3   counsel, counsel would be appointed to represent you free of

4   cost?

5          Do you understand that?

6          THE DEFENDANT:  Yes, I do.

7          THE COURT:  All right.

8          Have you discussed whether to proceed *pro se* or with

9   counsel with standby counsel; is that something you've

10  discussed with them?

11         THE DEFENDANT:  Yes, I did.

12         THE COURT:  And is it your decision to essentially

13  revoke your decision to proceed *pro se* and, with the exception

14  of the Rule 29 motion, to proceed with counsel going forward?

15         THE DEFENDANT:  Yes, it is.

16         THE COURT:  All right.

17         And do you understand that I'm not saying that if you

18  were to change your mind down the line, that I would deny an

19  application to go back to *pro se* status, but I might, which is

20  to say you don't have the right to just sort of willy-nilly go

21  back and forth?  And I certainly wouldn't grant an application

22  if it would delay the proceedings unduly.

23         Do you understand that?

24         THE DEFENDANT:  Yes, I do.

25         I just wanted to note one thing, that I think that my

M7qWschC

1  initial *Faretta* waiver was specific just to this trial.  So I'm

2  not really sure that it's going back and forth.  But I don't

3  anticipate going back for this part.

4          THE COURT:  All right.  Understood.

5          In any event, whether it was specific to this past

6  trial or more general, certainly I'm not going to let you make

7  or do anything that would affect our schedule in a material way

8  and delay trial once we set a trial.

9          Do you understand that?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  OK.

12          Mr. Lockard, do you think there are any additional

13  questions that I should ask of Mr. Schulte?

14          MR. LOCKARD:  No, your Honor.

15          THE COURT:  All right.

16          Mr. Schulte, just for the sake of the record, in the

17  last 48 hours, have you had any drugs, medicine, pills, or had

18  any alcohol?

19          THE DEFENDANT:  Not aside from the regular medication

20  that I take.

21          THE COURT:  All right.

22          And is that medication that you took through the last

23  trial that we had?

24          THE DEFENDANT:  Yes, it is.

25          THE COURT:  Does it affect your thinking at all?

M7qWschC

1              THE DEFENDANT:  No, it does not.

2              THE COURT:  And is your mind clear today?

3              THE DEFENDANT:  Yes, it is.

4              THE COURT:  Do you understand what's happening here

5    today?

6              THE DEFENDANT:  I do.

7              THE COURT:  Are you now or have you recently been

8    under the care of a doctor or mental health professional?

9              THE DEFENDANT:  No.

10             THE COURT:  All right.

11             Do both counsel agree that Mr. Schulte has knowingly

12   and voluntarily waived his right to proceed *pro se*, at least

13   for the time being, and consented to be represented by counsel

14   going forward, with the exception of his Rule 29 motion

15   relating to the recent trial?

16             Mr. Lockard.

17             MR. LOCKARD:  Yes, your Honor.

18             THE COURT:  Ms. Shroff.

19             MS. SHROFF:  Yes, your Honor.

20             THE COURT:  Mr. Schulte, do you agree that you have

21   knowingly and voluntarily waived your right to proceed *pro se*

22   and consented to counsel going forward?

23             THE DEFENDANT:  Yes.

24             THE COURT:  On that basis, I will grant the

25   application and, again, with the exception of the Rule 29

M7qWschC

1    motions, appoint Ms. Shroff and perhaps Ms. Colson -- we'll

2    discuss that next -- going forward with respect to all other

3    matters.

4            That brings me to Ms. Colson's application to be

5    relieved as counsel.  I think we can and should separate that

6    request from the request to appoint Mr. Stern in her place.  As

7    to the request to be relieved, the local rules do require that

8    counsel make a showing of satisfactory reasons to withdraw.

9            Ms. Colson, you offered to provide those reasons.  I'm

10   happy to do that at sidebar if you want to take care of it now,

11   or if you can do it in open court.

12           What are your thoughts?

13           MS. COLSON:  I prefer to do it at sidebar, your Honor.

14           THE COURT:  OK.

15           Any objection from anyone to that?

16           MR. LOCKARD:  No, your Honor.

17           THE COURT:  Why don't counsel approach.

18           And Mr. Schulte, you're welcome to join, or if you

19   wish, I can just hear from Ms. Colson at sidebar.

20           (Defendant conferred with standby counsel)

21           THE DEFENDANT:  Yes.  I don't mind if you speak with

22   her directly.

23           THE COURT:  Mr. Lockard, do you wish to join?

24           I'm also happy to hear from Ms. Colson privately if

25   she thinks there's a basis to do that.

M7qWschC

1           MR. LOCKARD:  If Ms. Colson thinks it's more

2   appropriate to do it *ex parte*, we don't have an objection.

3           MS. COLSON:  I would appreciate that.  Thank you.

4           (Page 11 SEALED)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

M7qWschC

1          (In open court)

2          THE COURT:  Thank you, Ms. Colson, for making more of

3   a record on that.

4          I am going to grant Ms. Colson's request.  I think it

5   is justified under the circumstances, so I will grant her

6   request to withdraw as counsel.  As I said, the request to

7   appoint Mr. Stern is a separate matter, and on that, I have a

8   few thoughts.

9          One is my question, and, Ms. Shroff, I guess this is

10  best directed to you, which is, is it necessary to appoint him?

11  It seems to me that trial, second or third trial in this case

12  is not going to be quite as complicated as the last trial was.

13  I recognize it's not completely a run-of-the-mill child

14  pornography or copyright case, but that being said, nor is it

15  an espionage case, and I wonder whether it's necessary to have

16  two CJA lawyers, or alternatively, if assistance is

17  appropriate, if it might make more sense to allow you to find

18  and ask for associate counsel to be appointed.

19          What's your thoughts on that?

20          MS. SHROFF:  Your Honor, I would appreciate associate

21  counsel.  Mr. Stern is very well qualified, and considering

22  that he is -- well, much smarter than me and somebody that

23  would help me out, I'm happy to take the associate rate and let

24  him have the higher rate.  It's fine.  I don't have -- it's

25  fine, if the Court would allow it.  I would flip, if it's OK

1     with the Court, I don't mind doing it that way.  So it would be

2     fair for the budget if the associate counsel would go to me

3     rather than Mr. Stern, then I would be fine with that.

4              THE COURT:  OK.  I will take that under advisement,

5     but the broader concern I have is that the typical way that

6     this is done is that -- I mean in a typical case, without the

7     need for cleared counsel, it would just go to whoever is on

8     duty, and in that sense, the rules don't permit counsel --

9     well, don't really permit judges, let alone counsel, to

10    handpick who their successors are.  This is not the usual case

11    in the sense that I think it does require someone with

12    clearance, but I also imagine that Mr. Stern isn't the only

13    person who falls in that category.  I guess the question I have

14    is why Mr. Stern as opposed to doing it in some more neutral

15    fashion and figuring out who the next cleared counsel is, or

16    something of that nature.

17             MS. SHROFF:  Your Honor, Mr. Stern was proposed as a

18    counsel to me.  He actually happens to be my mentor for capital

19    work, so I didn't have any reason to say no.  I do know that

20    initially, when this case was in flux, we had generally spoken

21    to Mr. Stern.  At that time he had sort of known about the case

22    and we talked about the case with him, but his trial schedule

23    hadn't worked, and then we had other counsel join the team.

24             I fully understand the Court's position, and I want to

25    be clear, I -- to use an American expression -- don't have a

M7qWschC

1    dog in the fight, but whatever you want to do is fine.  And as

2    I said, I would be happy to take the associate rate.

3            I just want to tell the Court that also to the extent

4    it matters for the CJA budget, for the year from April of 2021

5    until April of 2022, I worked on Mr. Schulte's case but would

6    not be submitting a voucher for any part of that time, because

7    I was with the Federal Defenders office in D.C.  So I'm not

8    allowed to bill on the case, and I wouldn't bill CJA for that

9    time period.  I did do my work, though.  So if you don't see

10   billing, that doesn't mean I didn't work.  I did work, but I

11   just --

12           THE COURT:  I know full well and have no doubt on that

13   score.

14           Ms. Colson, since it sounded from your letter that

15   you'd spoken to Mr. Stern, do you wish to be heard on that

16   particular part of the application?

17           MS. COLSON:  I have, and just to be clear, this was my

18   idea and not Ms. Shroff's.  I thought since I was the one who

19   made an application to withdraw --

20           THE COURT:  Would you bring the microphone a little

21   closer.

22           MS. COLSON:  Just to be clear, your Honor, Mr. Stern

23   was my idea.  It was not Ms. Shroff's.  As she said, she does

24   not have a dog in this fight.  But I proposed Mr. Stern

25   because, since I was the one making application to withdraw, I

M7qWschC

1    thought I would try to make it as easy for the Court as

2    possible, knowing that the Court was likely to need somebody

3    with security clearance.  I did talk to Mr. Stern about it.  He

4    is willing and eager to assist Ms. Shroff with this matter

5    should the Court appoint him.  But again, it was merely a

6    suggestion to try to make things easier for the Court.

7              THE COURT:  All right.  And perhaps you know,

8    Ms. Colson, my understanding and impression is that Mr. Stern

9    has a capital trial scheduled for later this year.  Is that

10   wrong?

11             MS. COLSON:  That is my understanding as well.  I

12   believe that his trial schedule frees up in January.  I know

13   from Ms. Shroff that she has other trials scheduled this fall

14   as well, so their schedules are similar in that regard.

15             THE COURT:  All right.  But I guess my concern is less

16   scheduling trial in this matter than whether Mr. Stern would be

17   able to provide whatever assistance would be needed in

18   connection with motion practice or the like over the course of

19   the fall.  But all right.

20             Well, tell you what.  Again, I have granted Ms.

21   Colson's application to withdraw.  I think I will take under

22   advisement the request to appoint Mr. Stern and speak with the

23   powers that be about what the logistics are on that score and

24   decide what the appropriate course is, whether it's to pick

25   someone in a more neutral fashion or pick Mr. Stern, and what

M7qWschC

1    the appropriate budget would be, mindful of what Ms. Shroff has

2    offered on that front.  So I'll reserve judgment on that.  I

3    anticipate that I will appoint someone else.  Who that is

4    remains to be seen, and also, the trial date that we set may

5    have some bearing on that.  So I'll get back to you on that.

6         Next is Mr. Schulte's request for an extension of his

7    deadline to file Rule 29 motion and Rule 33 motions to

8    September 23.  It's not clear to me why that much time is

9    needed, but Mr. Schulte, do you wish to be heard on that?  Do

10   you want to explain?

11        MR. SCHULTE:  Yes.  I think it was, some of it was

12   delays that were anticipated with respect to counsel, standby

13   counsel, that I wanted to make sure that I got as much

14   assistance from standby counsel as possible to those motions,

15   to this motion, which I provided to them for review.  And due

16   to their schedules, it just seemed -- that was essentially the

17   absolute latest.  I actually hope to file it before that time,

18   but just looking at their schedules and other potential issues,

19   I just wanted to set a date as -- that wouldn't basically have

20   any conflicts.

21        THE COURT:  OK.

22        Mr. Lockard.

23        MR. LOCKARD:  I don't think we have a particularly

24   strong view on it.  I think we would want not necessarily the

25   same amount of time but reflective amount of time to respond to

M7qWschC

1    the motions.

2            I think we would also just raise the issue of setting

3    a page limitation on the filings.

4            THE COURT:  All right.  As I said, I think it's

5    probably a bit of a generous schedule, but I'll grant

6    Mr. Schulte until September 23 to file his motion.  I'll set

7    the page limit at 40 pages.  If that proves to be inadequate, I

8    obviously don't know how many issues you plan to raise or how

9    much space you'll need for them, and you certainly know how to

10   request additional pages.

11           I'll give the government until October 24 to file its

12   response, also not to exceed 40 pages.  And I'll give

13   Mr. Schulte until, let's say, November 14 to file his reply,

14   not to exceed 20 pages.

15           And again, if anyone needs additional pages, you can

16   request it.  I'm unlikely to grant any request for more time

17   given how generous that schedule is, but obviously, if you have

18   a request on that score, I will take it under advisement and

19   consider it.

20           All right.  With that, I guess before we turn to trial

21   on the severed counts and what's needed in connection with

22   that, Mr. Schulte adverted to counsel making a request to

23   proceed directly to sentencing.  I will say it seems

24   unwarranted given the briefing schedule that I just set on Rule

25   29 and Rule 33 motions, since Mr. Schulte hasn't been heard on

M7qWschC

1   that and any motion hasn't been ruled upon; putting aside

2   whether I should wait for the outcome of a third trial, it

3   seems premature to proceed with sentencing.  But do you wish to

4   be heard, Ms. Shroff?

5          MS. SHROFF:  I think the Court is right that it would

6   be premature given that the briefing on the Rule 29 and Rule 33

7   is yet to come, and that would impact on sentencing, especially

8   if it impacts the counts of conviction.  So I think we would

9   hold that request in abeyance until the Court hears argument on

10  the Rule 29 and 33.

11         THE COURT:  All right.  I will do that.  I would say

12  the default is going to be that I will await the outcome of the

13  trial on the remaining charges to proceed with sentencing.  If

14  there's an application to advance it after I resolve the Rule

15  29, then I will take that under consideration.  But bottom line

16  is unless and until I say otherwise, we will wait until all

17  charges are resolved; that is to say, certainly I will

18  entertain any application to do it sooner than that, but I'm

19  not going to do it before the Rule 29 is resolved, at a

20  minimum.

21         All right.  With that, let's turn to trial on the

22  remaining counts.  First, I just want to make sure we're all on

23  the same page.

24         Mr. Lockard, I take it we're talking about Counts

25  Twelve through Fifteen in the S2 indictment; those are the

M7qWschC

1    counts that remain to be tried.  Is that correct?

2              MR. LOCKARD:  I believe that's correct, your Honor.

3              THE COURT:  OK.  How long do you think trial of those

4    counts would take?

5              MR. LOCKARD:  I would, for planning purposes, predict

6    a two-week trial.  It may well be shorter, but for planning

7    purposes, I would say two weeks.

8              THE COURT:  All right.  And do you have a view on how

9    much, if any, CIPA litigation is likely to be needed in

10   connection with a trial of those counts?  I know Mr. Schulte,

11   in his June 2 letter, ECF 841, had indicated his view that

12   there would be a substantial amount of CIPA litigation

13   required.  I will confess to skepticism of some of the reasons

14   that he states, but obviously, there's no application pending,

15   so it's hard to say more than that.

16             MR. LOCKARD:  It's hard for me to say if CIPA

17   litigation is likely.  It seems to me that it is probably not

18   appropriate, but the defendant will file what he files or his

19   counsel; since he is represented in the CP trial, counsel will

20   file what counsel files.

21             THE COURT:  All right.  But I guess the point is it

22   seems like we do need to allow for it; in case they believe

23   that there's a basis for Section 5 notice and the need for

24   classified evidence at trial, I think we need to build that in

25   to the calendar.  Do you agree with that?

1          MR. LOCKARD:  It does seem prudent given what the

2     defendant has said.

3          THE COURT:  All right.  And have you and Ms. Shroff

4     discussed a trial date, given, No. 1, context and, No. 2, the

5     need to build in time for regular motion practice and CIPA

6     motion practice?

7          MR. LOCKARD:  We've discussed it, your Honor.  We have

8     not come to ground on it, and I think Ms. Shroff has indicated

9     that based on her trial schedules, she is essentially

10     unavailable for trial for a period of somewhere between 12 to

11     18 months.  Ms. Shroff can provide more details to the Court

12     and a more accurate estimate to the Court of that timeline than

13     I can today, but given that, I think we did not get into what a

14     pretrial briefing schedule would look like until we had some

15     more clarity on the Court's view about the appropriate trial

16     date.

17          THE COURT:  OK.

18          Ms. Shroff, that was a little longer than I was

19     anticipating hearing, but tell me what the situation is.

20          MS. SHROFF:  Your Honor, would the Court like to hear

21     my trial schedule?

22          THE COURT:  Sure.

23          MS. SHROFF:  I have a trial starting on -- you told me

24     that I (inaudible) Sunday, which is October 30, that is October

25     31, whatever the day right before November is, that's my trial

M7qWschC

1  before Judge Allyne Ross in the Eastern District of New York.

2  It is a two-defendant case, involving the kidnapping of Michael

3  Scott Moore, and that prosecutor on the case is also

4  Mr. Denton.  Even though it's a Southern District case, it's

5  being tried in the Eastern District, and we anticipate a jury

6  questionnaire and we believe that's a three- to four-week

7  trial.

8          After that, and in early February, Ms. Colson and I

9  have a trial before Judge Liman, which is United States v. Cole

10 Bridges.  Subsequent to that, I have a trial.  I think that

11 that schedule, actually, is in flux.  I am trying to get out of

12 the trial group one, but that case is before Judge Caproni.

13         THE COURT:  Which is when?

14         MS. SHROFF:  I'm stuck in an April trial group, but I

15 honestly want to tell the Court that by Friday or by next week,

16 Monday, she will let me know.  She should rule on whether or

17 not we can be out of trial group No. 1.

18         I intend to be on trial in United States v. Manaf in

19 June.  That defendant has been in custody for almost three and

20 a half years.  That case is before Judge Crotty.  And that

21 would take me to, I think, end of June.

22         And after that, I would be free to try Mr. Schulte.

23         THE COURT:  And after that being how long after June?

24         MS. SHROFF:  I think it's a three-week trial.  But to

25 be honest with your Honor, I need an expert for this case.  The

M7qWschC

1    expert that we had contacted before on the child pornography

2    case, I have not been able to get a hold of him and get his

3    schedule.  So my greater concern would be his availability, and

4    of course, we haven't had any opportunity to consult with him.

5           So I know this Court has a very firm preference for

6    setting the trial date now, but do you think we could have some

7    time to figure out who the experts will be and get their

8    schedules in line and write to the Court or come back and do

9    the Rule 29 motions, as that might also give the Court a little

10   bit more clarity on my own trial schedule?

11          The problem right now, as this Court knows, is that

12   since the pandemic has lifted and everybody's back into the

13   swing of trial, everybody's in a race to get everybody tried,

14   and I'm just not sure how this will all shake out, especially

15   the trial before Judge Caproni.

16          THE COURT:  OK.  I hear you, but I also think that

17   probably cuts in favor of scheduling a trial sooner rather than

18   later so that my trial date is on your calendar and your dance

19   card doesn't fill up even more.  I recognize it doesn't sound

20   like there's any chance of a trial any time soon, given your

21   existing schedule.  And although I can't say I'm happy about

22   that, it is what it is.  My inclination would be to set a trial

23   for either mid to late summer or early fall of next year,

24   assuming that, given how much time there is between now and

25   then, you'll be able to find an expert, gives you plenty of

M7qWschC

1   time and in the unlikely event that, despite your due

2   diligence, it isn't the case you can tell me that in the very

3   near future and we can revisit it.  But it seems to me that's

4   the better course than leaving it open and letting schedules

5   fill up even further.

6          MS. SHROFF:  OK.

7          THE COURT:  My inclination would be to set trial for

8   September 11 of 2023.

9          Mr. Lockard, any objection to that?

10          MR. LOCKARD:  The government will be available.

11          THE COURT:  Ms. Shroff.

12          MS. SHROFF:  That's fine, your Honor.

13          THE COURT:  Give me one second.

14          Yes, Mr. Lockard.

15          MR. LOCKARD:  One thought that does occur to me is if

16   a second CJA attorney is going to be appointed to assist both

17   with posttrial issues in the espionage case and with the CP

18   trial, I don't know if that allows additional flexibility in

19   scheduling a trial in advance of September, but it might.  So I

20   thought that I would at least raise the issue.

21          THE COURT:  Well, I don't think it does in the sense

22   that unless Ms. Shroff were off the case, but that's not in

23   terms of adding a counsel.  It wasn't to replace Ms. Shroff; it

24   was to replace Ms. Colson.  So I don't think it really does.

25   Give me one second.  I'm just looking at the calendar for a

M7qWschC

1    moment.

2            All right.  I will set it down for September 11, 2023.

3    That is definitely well beyond what I had planned to do, but in

4    the interest of ensuring continuity of counsel and that Ms.

5    Shroff can do it, I will put it out that far.  I guess it

6    probably is obvious to counsel, but there are some Jewish

7    holidays that might fall within the trial and we won't be

8    sitting on those dates to give you a heads-up, but we'll cover

9    that.

10           More importantly, everybody should understand that is

11   a firm date; that is to say, unless something in the nature of

12   a pandemic comes along, that unless I hear from you in the next

13   few days that that is not feasible for one reason or another --

14   because of your witnesses or what have you -- you should treat

15   that as a firm date and assume that it is not going to move.

16   That means if there's any issue relating to discovery, relating

17   to counsel, relating to anything, it is incumbent upon you to

18   raise it sooner rather than later because the closer we get to

19   that trial date the more likely it is I would deny any

20   application that would affect our ability to begin trial at

21   that time.

22           I think you all understand that when I say that, let

23   me just confirm that everybody does.

24           Mr. Lockard.

25           MR. LOCKARD:  Yes, we understand, your Honor.

M7qWschC

1              THE COURT:  Ms. Shroff.

2              MS. SHROFF:  I do understand, your Honor.

3              THE COURT:  Mr. Schulte.

4              THE DEFENDANT:  Yes.

5              THE COURT:  All right.  I think what I will do is ask

6    counsel -- and if you want to wait until I resolve the question

7    of cocounsel, you may, but I will ask counsel to confer with

8    one another and propose a pretrial schedule, building in a

9    deadline for ordinary motions as well as any deadlines for CIPA

10   litigation.  You did it with respect to the last trial, so you

11   understand the parameters as well as I do, if not better.

12             So why don't you confer with one another and propose a

13   schedule.  Given how much time we have between now and the

14   trial date, I would say build in more time in advance to

15   resolve things earlier than they were resolved this past

16   go-round, since there were some lingering issues, and I would

17   rather have this thing trial ready several months in advance

18   than go down to the wire.

19             In that regard, I would build in extra time to allow

20   for any sort of delays or issues that may prove more

21   complicated than anticipated, but I'll leave it to you in the

22   first instance to make a proposal.

23             Why don't I give you a deadline to submit a proposed

24   schedule.  I'll give you until, let's say, August 17.  Does

25   that work?  And assume that I will resolve the question of

M7qWschC

1    counsel well before then.

2          Mr. Lockard.

3          MR. LOCKARD:  I think that should work, your Honor.

4          THE COURT:  Ms. Shroff.

5          MS. SHROFF:  That should be fine, your Honor.

6          THE COURT:  All right.  And then the last item on my

7    agenda is the question of SCIF access going forward.  There are

8    two issues there.

9          One is the schedule.

10         Mr. Schulte, in his letter, requests SCIF access once

11   a week in connection with preparing for the child pornography

12   charges.  I'm not sure.  That strikes me as a little more than

13   necessary, particularly if we're talking about a trial more

14   than a year out, and I wonder if we can either postpone this

15   until Ms. Shroff has a better sense of the needs here or

16   otherwise.

17         The second is I have been told that -- I mean real

18   estate is obviously precious, being in Manhattan and what have

19   you.  I think the SCIF on the ninth floor has been dedicated to

20   Mr. Schulte for a very long time, and it sounds like if that

21   can be freed up for other cases, that would be very much in the

22   interests of the CISO and the system and those other cases.  So

23   in that regard, query whether, for purposes of the child

24   pornography charges and the copyright charges, obviously, it's

25   necessary to dedicate the entirety of the SCIF or if

M7qWschC

1    Mr. Schulte and counsel can share the SCIF with other parties

2    and we could proceed in that manner.

3              Anyone have thoughts on that?

4              Mr. Lockard.

5              MR. LOCKARD:  Yes, your Honor.

6              So, actually, in our view, we don't expect that the

7    defendant is going to require SCIF access in order to review

8    child pornography-related discovery.  Throughout the trial

9    preparation period for the espionage trial, the defendant's

10   home computer, which is where the CP materials were found, was

11   provided to him in the SCIF but not because it contained

12   classified material, but because, No. 1, he needed access to

13   the home computer because it was relevant to the espionage

14   charges, and No. 2, because we were able to provide it to him

15   in the SCIF in a way that complied with the Adam Walsh

16   protections for providing that material, and it was both a

17   secure and convenient way of doing it for all the parties.

18             That is not how it is done in any other case, and it

19   is not how the government expects to make that material

20   available going forward, especially given the fact that

21   Mr. Schulte is represented in connection with the CP trial.  In

22   the ordinary course and in every other case, those materials

23   are maintained by the FBI.  Counsel and experts are able to

24   visit FBI space and review the materials there in an

25   environment that complies with the required protections.  If

M7qWschC

1   the defendant, which is rare, but if the defendant personally

2   needs access to that material, then he can have access to it by

3   scheduling essentially a production either through the U.S.

4   Attorney's Office or to the courthouse, and we can make it

5   available there.  But we don't expect that it's going to be

6   made available in the SCIF going forward.

7           THE COURT:  OK.  I take it from -- again,

8   Mr. Schulte's June 2 letter, I think it was, and again, I'm

9   skeptical of some of the arguments, he's making a suggestion of

10  why classified information would be necessary in the trial on

11  these charges, but there may well be insofar as the home

12  computer allegedly was used in connection with the espionage

13  charges and may have aspects of it that were classified or are

14  classified.  Are you suggesting that that is not the case?

15          MR. LOCKARD:  I believe there was a very limited

16  amount of classified material on his home electronics.  I

17  believe it was on the home server, not on the home desktop, in

18  other words, a different computer from where the child

19  pornography materials were found.  So again, I think there's no

20  classification issue with respect to that computer, and it was

21  made available in the SCIF because that was the most secure and

22  convenient way to do it in the context of preparing for a trial

23  that did involve a lot of classified discovery.

24          THE COURT:  All right.

25          Mr. Schulte, it's actually Ms. Shroff who is going to

M7qWschC

1   speak on your behalf because you are now represented with

2   respect to these charges.

3        Ms. Shroff, I'll hear from you, but I guess my

4   inclination is to basically let you and the government discuss

5   this and see if you can sort it out and perhaps come to an

6   understanding.  That understanding is likely to be much less

7   access to the SCIF than certainly you had before and perhaps

8   want now, especially given that we're talking about a trial 14

9   months out.  But be that as it may, I think letting you discuss

10  it in the first instance, letting you explain what the reasons

11  are that Mr. Schulte would need SCIF access would be to the

12  government in the first instance and then to me if that would

13  be appropriate, it might make sense to just let the process run

14  its course a little bit, given that there's no urgency here.

15       MS. SHROFF:  I think that's fine, your Honor.  I think

16  I can speak to the government and try and see if we can come to

17  some sort of arrangement.  I think Mr. Lockard may not be quite

18  correct, but I don't want to take up your time.  I'm happy to

19  confer with the government, and should there be a problem, we

20  can come back to the Court.

21       Maybe Mr. Schulte doesn't need the SCIF once every

22  week.  Maybe we might be able to, at least in the initial

23  stages, have it once every two or three weeks and see if we can

24  go from there.  I'm happy to undertake, I would call it the

25  mighty job of having to clean out the SCIF that is on nine, and

M7qWschC

1    I will try and do so as soon as possible.

2              THE COURT:  All right.  I appreciate that.  The CISO

3    says it might require cleaning, if not a wrecking crew, but if

4    you can, I'm sure they'd be grateful to have its use for other

5    cases.  It doesn't sound like that space would be necessary on

6    a regular basis and certainly that it could be shared.

7              MS. SHROFF:  I'm going to require the full rate for

8    that one.

9              THE COURT:  You'll require combat pay, sounds like.

10             Here's what I will do.  Unless there's a need for SCIF

11   access before then, why don't you address this in the August 17

12   submission with the proposed schedule.  Include in that your

13   respective views -- unless there's agreement, your respective

14   views on how much SCIF access is needed.  I would note that I

15   don't know if Mr. Schulte needs SCIF access with respect to his

16   *pro se* preparation of the Rule 29 and Rule 33 motions, but

17   that's something that you ought to consider and, I guess,

18   absorb into that, if he needs access before August 17, some

19   combination of Mr. Schulte's pertaining to the matter on which

20   he's representing himself, or, Ms. Shroff, if you want to, just

21   as a courtesy, speak on his behalf if you have an application

22   on that score, I'll certainly entertain it.  I guess bottom

23   line is unless he needs SCIF access before August 17, why don't

24   you plan to address the needs, if any, in that submission.

25             (Standby counsel conferred with defendant)

1          MS. SHROFF:  Your Honor, I don't think he needs SCIF

2     access until August, but would it be all right if the need be

3     for me to confer with the marshals service and write to the

4     Court if that need does occur.

5          THE COURT:  Yes.  What I'm saying is include in your

6     August 17 submission what the proposal is going forward.  One

7     option also is that it's not going to be a constant between now

8     and September of next year.  It could be that it's this for the

9     next few months or this and then it increases, whatever the

10    needs may be; I'm certainly open to it.  And if the government

11    and you, Ms. Shroff, disagree, you can give me your respective

12    positions and I will resolve the issue.  If there's a need for

13    SCIF access before August 17, you know how and where to find

14    me.  Just make an application and I will take it under

15    advisement.

16         All right.  I don't have anything else on my agenda

17    other than speedy trial.

18         Before I turn to that, Mr. Lockard, anything else that

19    you think we should discuss today?

20         MR. LOCKARD:  No.  That's the only thing on my list,

21    your Honor.

22         THE COURT:  Is there an application for exclusion of

23    time?

24         MR. LOCKARD:  There is, your Honor.

25         Given the need for the parties to address the pretrial

M7qWschC

1    briefing matters as well as prepare for trial, and in light of

2    the other trial calendar of the defendant's counsel, the

3    government requests the exclusion of time until September 11,

4    2023, as outweighing the interests of the defendant and the

5    public in a speedy trial.

6                THE COURT:  Any objection, Ms. Shroff?

7                MS. SHROFF:  No.  No, your Honor.

8                THE COURT:  All right.

9                I will exclude time between today and September 11,

10   2023.  I find that the ends served by excluding that time

11   outweigh the interests of the defendant and the public in a

12   speedy trial, primarily to ensure continuity of renewed

13   counsel, Ms. Shroff, but also given the many open issues that

14   will need to be resolved, the need to set a motion schedule and

15   CIPA schedule and the need for the defendant and counsel to

16   review discovery and consider and prepare any motions that they

17   wish to bring of that sort or any other sort, and beyond that,

18   the need to prepare for any trial that will, I assume, not be

19   as complicated as the last one but probably more complicated

20   than your average child pornography trial.

21               Anything else, Ms. Shroff?

22               MS. SHROFF:  No.  Thank you, your Honor.

23               THE COURT:  Mr. Schulte, to the extent you continue to

24   represent yourself in some capacity, anything else from you?

25               MR. SCHULTE:  No.

M7qWschC

1              THE COURT:  In that case, everybody stay safe and

2      healthy.  Enjoy the rest of your summers.  We are adjourned.

3      Thank you.

4              (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25