Joshua Adam Schulte, *pro se*

September 16, 2022

**BY HAND**

Judge Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

  **RE:** *United States v. Joshua Adam Schulte*, S3 17 Cr. 548 (JMF)

Dear Judge Furman:

  I write the Court in response to the government's letter dated September 12, 2022.

  First, I note for the Court the June 3, 2022 transcript (See Ex. A):
THE COURT: Just to make it explicit, I take it, Mr. Denton, you would represent that no one on the trial team will know anything one way or another about the contents of the laptop, other than the mere fact that it did or didn't work to transfer?

  The government is now well beyond the scope of the search warrant to review the laptop for evidence that it was ever connected to the internet to transfer or receive "contraband." That review takes five seconds and does not require the review of any files other than regular Windows system files. That review is complete: it was not possible for the laptop to ever connect to the internet, and therefore, it has not been connected to the internet. Accordingly, the only material on the laptop was provided by the government or my attorneys.

  The government has never alleged any violations of any rules or regulations concerning use of the laptop. Had they done so, and then I had failed to comply, the government would have good cause for seeking the restrictions it now seeks. Having failed to provide any such notice, the government may not now properly complain that I failed to abide by them. I should not be punished for the failure to follow rules I was never made aware of or did not violate.

  At this point, I cannot agree to the government's "offer" of a replacement laptop as it would not allow me to work on my motions. As an initial matter, all of my case files—my draft Rule 29 motion, my trial notes, my annotated transcripts, <u>my substantial work product is all contained in the very small 15 Gigabyte encrypted partition on the laptop</u>. So at the very least I will need the government to provide this—and if this is the only reason the government cannot

finish its "review" and return the laptop then we are stuck in limbo. The partition was encrypted with Bitlocker, which is vulnerable and can be exploited to reveal the data without "defeating" the encryption. But if this vulnerability cannot be exploited, the encryption is AES-256 which is certified by the U.S. Government for TOP SECRET information—meaning the government can and does send TOP SECRET information across the internet encrypted with AES-256 confident that it can never be decrypted. So, if we wait until the government decrypts the drive—even with the NSA's super computers it will take 10,000 years. So it is not plausible to simply sit and wait that long for the government to decrypt the drive.

Next, the restriction of connecting my discovery drives to the laptop makes no sense. If the government's position is that they produced "contraband" to me in discovery, then that is not my fault. They should correct the issue and notify me what discovery they believe to be "contraband." Otherwise, there is no reason to restrict connecting my external discovery drives to the laptop.

Finally, the restriction of installing software or "altering" the operating system (which is a broad term that may include changing settings like the background wallpaper, timeouts, screensaver, volume, etc.) is also not feasible. One of the major reasons I was provided the laptop was so I can install special software to conduct my own forensic examinations. In fact, on the previous laptop I even installed an entirely new operating system—Linux, to better conduct my review. The government discovered this when they seized the laptop with the previous search warrant, and did not have any issue with it—indeed, they returned the laptop to me and merely requested that I notify them of any substantial changes to the laptop.

Judge Furman, the laptop was provided to me so that I could use my own skills and preferred software to conduct an in-depth review of my discovery. The government permitted this, and there is nothing on the laptop that the government has not previously reviewed pursuant to similar search warrants. It is not fair or just to impose new rules now that the prosecutors are new, and simply to make it more difficult for me to prepare and assist in my own defense. The government previously consented to my use of this laptop (and the previous

laptop) in an extended manner, and I have not violated any prison rules so there is no reason for the government to rescind that prior consent or impose new, arbitrary restrictions.

As the Court noted at the previous conference, the government should be held to a date to either complete the review or return the laptop. It has taken over two months to "review" a laptop with an extremely small 200 Gigabyte internal hard drive, and it has already reached the undeniable conclusion that the laptop was never connected to the internet—it therefore must follow that the only content stored on the laptop **was provided by the government or my attorneys and cannot possibly be contraband or relevant to the terms of the search warrant**.

I ask the Court to set a date and order the government to complete its review and return the laptop or authorize the purchase of a duplicate laptop *with no restrictions that make it extremely difficult to complete my motions and review discovery*—**since it cannot be connected to the internet, what is the possible harm in allowing me to customize the laptop to efficiently and effectively conduct forensic reviews?**

Next, I wanted to address the laptop search warrant itself. I know that the Court has already issued an Order considering this issue, but I have finally been able to review relevant case law that I was not otherwise able to review due to the confiscation of the laptop; it has been incredibly difficult to do so, but I ask the Court to permit me this argument that I was not otherwise able to make, and reconsider its position and order the government to provide the affidavit consistent with the following cases.

"The effect of the Fourth Amendment is to put the courts of the United States and federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers, and effects, against all unreasonable searches and seizures under the guise of the law. This protection reaches all alike, **whether accused of crime or not**, and the duty of giving to it force and effect is obligating upon all entrusted under our Federal system with the enforcement of the laws." *Weeks v. United States*, 232 U.S. 383, 391 (1914) (emphasis added), overruled on other grounds by *Mapp v. Ohio*, 367 U.S. 643, 655-56 (1961). The United States Supreme Court has also recognized that the purpose of the Fourth Amendment warrant

*United States v. Schulte*, S3 17 Cr. 548 (JMF); September 16, 2022 letter from *pro se* defendant

requirement "is to provide the search subject with sufficient information to reassure him of the entry's legality." *Michigan v. Tyler*, 436 U.S. 499, 508 (1978).

"Although the Second Circuit does not appear to have addressed whether there is a Fourth Amendment right to examine a search warrant affidavit, other federal courts have recognized such a right." *United States v. Pink*, 282 F. Supp. 3d 585 (W.D.N.Y. 2017). See *Rinaldi v. City of New York*, No. 13-CV-4881 (LAK) (JLC), 2014 WL 2579931, at *4 (SDNY June 10, 2014) (citing out-of-circuit caselaw in support of notion that Fourth Amendment provides right to inspect affidavit to one who challenges the issuance of the warrant, but noting that the Second Circuit has not addressed the issue directly), report and recommendation adopted, 2014 WL 4626076 (SDNY Sept. 15, 2014); see also *United States v. Hawit*, 15-CR-252 (PKC), 2017 WL 3016794, at *2 n.3 (EDNY July 14, 2017).

In fact, the Fourth Circuit Court of Appeals recognized, in an unpublished opinion, the Fourth Amendment right to examine the search warrant affidavit, but noted that the right is not absolute. *United States v. Oliver*, 2000 WL 263954 (4th Cir. 2000). The *Oliver* Court held that the right to inspect may only be overridden where "the government (1) demonstrates that a compelling governmental interest requires materials to be kept under seal and (2) there is no less restrictive means, such as redaction, available." *Id.* "There is a constitutional right under the Fourth Amendment to examine the affidavit in support of a search warrant after execution… the government, not the target, must demonstrate compelling government interests in keeping the affidavit under seal… in no less restrictive means, such as redaction, as possible." *In Re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d 584 (D. Md. 2004). "Without the right of access to the affidavit on which the search warrant was based, the search subject could never make such a challenge." *Id.* at 588.

Finally, it should be noted that Fed. R. Crim. P. 41(g) expressly provides the Property Owner with a pre-indictment mechanism to challenge the reasonableness of a search. This express authorization would mean nothing at all if the Property Owner could not obtain the underlying affidavit to file such a motion. Furthermore, much of the historical practice surrounding federal search warrants supports the search subject's right to inspect the search

warrant. In the Advisory Committee's notes to the 1972 Amendments to Rule 41(c), it observed that a "person who wishes to challenge the validity of a search warrant has access to the affidavits upon which the warrant was issued." Neither the amendments nor the commentary suggests that the Advisory Committee intended to deny the search subject's right to discover the reason for the search.

Accordingly, the Court should reconsider its previous decision and order the government to provide the search warrant affidavits.

Respectfully submitted,

Joshua Adam Schulte

# EXHIBIT A