M975schC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

              v.                          17 Cr. 548 (JMF)

JOSHUA ADAM SCHULTE,

              Defendant.

------------------------------x

                                       New York, N.Y.
                                       September 7, 2022
                                       3:05 p.m.

Before:

                    HON. JESSE M. FURMAN,

                                       District Judge


                         APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  MICHAEL D. LOCKARD
     Assistant United States Attorney


JOSHUA A. SCHULTE, Defendant *Pro Se*


SABRINA SHROFF
     Attorney for Defendant

CESAR DECASTRO
     Attorney for Defendant

M975schC

1           (Case called)

2           THE DEPUTY CLERK:  Counsel, please state your name for

3     the record.

4           MR. LOCKARD:  Good afternoon, your Honor.  Michael

5     Lockard for the government.

6           MR. SCHULTE:  Josh Schulte appearing pro se.

7           MS. SHROFF:  Good afternoon, your Honor.  On the

8     non-pro se counts for which Mr. Schulte is appearing pro se,

9     Sabrina Shroff.

10          MR. DECASTRO:  Likewise, good afternoon, your Honor.

11    Cesar DeCastro on the non pro se counts.

12          THE COURT:  Good afternoon to everyone.  Welcome back

13    to some of you.  Mr. Decastro, welcome in the first instance to

14    you.  We are obviously in an unclassified setting so just a

15    reminder that folks should be careful on that score, and I

16    don't see any reason or need that we would need to reconvene in

17    a classified setting.  But, if there is anything of that nature

18    that we would need to discuss, this is not the time or place to

19    do it.

20          We are here for two principal purposes, one is to talk

21    through the computer situation and its implications, and the

22    second is to talk, discuss the pretrial schedule with respect

23    to the next trial which I think is scheduled to begin a year

24    from Sunday, if I remember correctly.  So, let's take things in

25    that order.  First, with respect to the computer, I certainly

M975schC

 1   understand and recognize Mr. Schulte's frustrations with

 2   respect to the situation but at least for the moment it is what

 3   it is.  The government obtained a valid search warrant, it is,

 4   pursuant to the terms of that warrant, entitled to review the

 5   laptop, and for reasons I have already explained I am not

 6   prepared to take any action either to halt that review or to

 7   provide a substitute laptop at the moment.  Obviously the

 8   seizure and search may give rise to motion practice down the

 9   line but that's not ripe at the moment and may or may not come

10   to pass.  So, bottom line is at the moment, with the exception

11   of perhaps adjusting the schedule of Mr. Schulte's post-trial

12   motions -- and I certainly understand why it has impacted his

13   ability to prepare those -- I don't see any grounds for me to

14   do anything.

15           I want to caution you, Mr. Schulte, I understand that

16   that is frustrating to you, I understand that you are not happy

17   about the seizure of the laptop, but I will tell you I will not

18   tolerate the sort of language that appeared in the letter that

19   I docketed yesterday.  That is not appropriate for court

20   filing.  You absolutely can forfeit the right to represent

21   yourself.  I recognize you are only representing yourself on a

22   limited front at this point but that is with an exercise of my

23   discretion.  In general, one is permitted to be pro se or not

24   be pro se and I have exercised my discretion to give you the

25   option of continuing pro se for purposes of filing those

M975schC

1    motions but you can give up the right to do that.  If you

2    continue to file things of that nature I will not hesitate to

3    either take away your right to represent yourself or impose

4    sanction, whatever I think is appropriate, but that language

5    does not belong in any Court filing and I expect you to adhere

6    to that going forward.  So, bottom line is for present

7    purposes, unless you can persuade me otherwise, I think the

8    only issue to be discussed is the schedule for post-trial

9    motions.  Because it may have some bearing on that let me start

10   by asking you, Mr. Lockard, what the latest is on the review

11   and if you can give us any sense of where it stands, how much

12   longer it may take, and what has been provided to the defense,

13   what can be provided to the defense, anything of that nature.

14           MR. LOCKARD:  At this time I don't have an estimate on

15   how long the review will take.  So that the Court and defense

16   counsel know that is being conducted by a wall review team, the

17   laptop has been imaged by the FBI computer forensics folks.

18   The wall review is underway.  There are encrypted portions of

19   the laptop hard drive.  It is my understanding that some of

20   those have been decrypted but not all of them have been

21   decrypted and so that's sort of the way things stand at the

22   moment.

23           THE COURT:  And is the inability to tell me more than

24   that a function of the fact that this is being conducted by a

25   wall team and you are on the other side of the wall?  Or

M975schC

1    because there is an inherent unpredictability in how long it

2    will take given the nature of the review?

3              MR. LOCKARD:  I think at this point it is the latter.

4              With that status update, however, the FBI is able to

5    provide defense counsel with a forensic image of the laptop

6    hard drive and we would ask for a one terabyte hard drive to

7    make that copy and provide it to defense counsel.

8              THE COURT:  Can you explain what that entails?

9    Forgive my ignorance, but is that a read-only copy of whatever

10   data is on the laptop to the extent the government has reason

11   to believe that there may be things on the laptop that the

12   defendant shouldn't have access to?  How is that consistent

13   with that concern?  Tell me what that entails and what it would

14   involve.

15             MR. LOCKARD:  Yes, your Honor.

16             So, it is my understanding that it would be -- it

17   would be a forensic image like a discovery copy of other

18   electronic media.  It would be a read-only copy.  We would

19   provide it to defense counsel.  Without knowing more about the

20   substance of the review because of the wall procedures, I can't

21   offer any more insight into other restrictions.  I think we

22   don't have concerns about providing it to defense counsel.  I

23   think at this point the defendant would not have the means to

24   review it himself or to have a copy at the MDC but defense

25   counsel can review it and if there are materials that they

M975schC

would like to provide him then I think that's a conversation

that they could have either with us or with the wall team.

THE COURT:  OK.  And I think you previously indicated

that you provided copies of some materials, transcripts, 3500

and the like.  Is that the case?

MR. LOCKARD:  That's right.  We have provided

essentially a trial record; the transcripts, the exhibits, the

unclassified exhibits, that is, and the unclassified 3500

materials.  And certainly with respect to things like notes on

motions and legal research and drafts of motions, I wouldn't

anticipate that providing copies of those materials to the

defendant would be an issue.

THE COURT:  And that would be in the forensic image

copy?

MR. LOCKARD:  That's correct, your Honor.

THE COURT:  OK.  And if I wanted something more

concrete in terms of how long this process will take, what is

the best way to proceed on that front?  Is it have a submission

from the wall team?  What is the best way to proceed?

MR. LOCKARD:  I would request that we have an

opportunity to talk to the FBI agents or go to wall review and

then maybe report back to the Court either from myself and

Mr. Denton, or if we think it is more appropriate for the wall

team to make the report we could suggest that to the Court.

And if the Court would allow us until, assuming everybody is

M975schC

1    available to have that conversation until Friday or Monday to

2    propose the procedure?

3         THE COURT:  OK.  So why don't you get back to me no

4    later than Monday with an update where the review stands and,

5    in particular, how much longer you anticipate it will take,

6    with the understanding that I am inclined to set a deadline for

7    you to complete it and report back to me if not provide the

8    computer back to Mr. Schulte if there is no basis to keep it

9    from him --

10        MR. LOCKARD:  Understood.

11        THE COURT:  -- at that point.  But I think setting

12   some sort of deadline so this isn't just an abstraction would

13   probably make sense.  If you think there is a reason that that

14   is not feasible or prudent, you can let me know in that letter

15   but I want a more concrete update on what's going on and how

16   much longer it would take.

17        MR. LOCKARD:  Yes, your Honor.

18        THE COURT:  OK?  All right.  So, this situation has, I

19   think, complicated things with respect to Mr. Schulte

20   representing himself versus not because this is sort of a

21   hybrid issue and doesn't solely pertain to post-trial motions

22   but, Mr. Schulte, to the extent that it does implicate the

23   post-trial motions and your ability to prepare those motions,

24   do you wish to be heard on the issue?

25        MR. SCHULTE:  Yes, please.

M975schC

1          MR. LOCKARD:  Your Honor, I'm sorry.  If I can provide

2     one more sort of procedural update on this issue, just for the

3     Court's awareness?

4          THE COURT:  Sure.

5          MR. LOCKARD:  Ms. Shroff had filed a request with the

6     magistrate judge in the Eastern District of New York requesting

7     to be appointed counsel in that court for purposes of

8     challenging or otherwise litigating the search warrant in the

9     Eastern District of New York and that application was granted.

10    So just so the Court is aware that there is the possibility of

11    sort of parallel proceedings here.

12         THE COURT:  OK.  I will hear from Ms. Shroff shortly,

13    but Mr. Schulte, you first.

14         MR. SCHULTE:  So I think there is a couple issues but

15    as for the laptop, I want to first be clear that I have not

16    received any 3500 materials, trial transcripts, I haven't

17    received anything from the government so I still don't have

18    anything.

19         And then, the big thing I want to note for the Court

20    is throughout the trial I was actually drafting the Rule 29 and

21    33 motion and I had lots of notes for that.  So, my draft

22    Rule 29 and 33 motion is on the laptop and I don't have access

23    to that at all or my notes or any of the materials that are on

24    the laptop.  And then I want to note for the Court that once I

25    receive -- or if I even receive these items, based on the setup

M975schC

1     in the SAMs unit, I still won't be able to write a single

2     sentence in the motion and that's because that my draft in the

3     notes exists in Microsoft Office, in Word and the MDC discovery

4     computer does not have Office so I can't even open or review

5     what I have already written or review any of my notes and I

6     obviously can't edit it further either.

7              In the MDC, the discovery computer doesn't allow you

8     to save files so even if they were able to install Office, I

9     still could not save anything on those files.  The computer

10    doesn't allow you to print.  And, you can only either review

11    discovery or the LexisNexis law library, but not both

12    simultaneously.  So, previously I accessed the LexisNexis in

13    the law library and then I pulled up the cases and typed them

14    directly into the laptop and I would later incorporate those

15    into the motion but now I can no longer do so.  And then the

16    final big issue is that that little square room is shared by

17    the entire SAMs unit, it is also used for ETCs, too.  So

18    whenever lawyers have ETCs, then whoever is there gets kicked

19    out.  So, it's not really possible to rely entirely just upon

20    that room where there is also not a bathroom, water, or food,

21    so if you need any of those things then you can't go back.  And

22    this is why laptops are given to the SAMs inmates there, so

23    that they can compensate because general population inmates,

24    through the discovery unit, they have access to additional

25    resources that are not available here.

M975schC

1           The second issue I just wanted to raise for the Court

2     is just with respect to the search warrant, I just had three

3     minor things.  The first, I don't know if the Court is aware

4     because this was before Crotty, but this is actually the third

5     time -- before Judge Crotty, I'm sorry -- this is the third

6     time that the government has actually seized a laptop pursuant

7     to a search warrant for the same exact reasons, claiming

8     contraband.  They seem to do it every year and the previous two

9     times returned not a single rule infraction or nothing like

10    that and it was returned, both those times, so this time

11    shouldn't be any different.

12          The second thing I want to note for the Court is it

13    only take five minutes to verify that the laptop has not been

14    connected to the Internet and not six weeks.  So, according to

15    the search warrant the way it is written, the government does

16    not have the authorization with the general warrant to review

17    every byte on the laptop.  Once it was confirmed it was never

18    connected to the Internet, that's it, it is not possible that

19    any contraband can exist on laptop any longer or that there is

20    any probable cause.

21          The third and final thing, I just want to remind the

22    Court, June 3rd, and we have the transcripts of it, but if the

23    Court will recall on June 3rd, when the laptop broke, we

24    brought it -- and it is on the record -- and the Court informed

25    the government that they were not allowed to search the laptop,

M975schC

1    and anything that they found on the laptop the tech people

2    could not alert the prosecutors to it and the passwords that I

3    gave them had to be destroyed.  None of this happened.  So, in

4    their affidavit, they simply use all this information, even

5    though it is clear on the record, that you, yourself, told the

6    government that they could not do this but they did it anyway.

7            And the final thing for the laptop is I am under 24/7

8    surveillance in my cell.  The only place -- except for the law

9    library gives you some special privacy if you are in the law

10   library using the laptop so it is not review, they don't get to

11   see what you are using on that, but otherwise in the cell

12   everything is 24/7 recorded so there is just -- you know, so I

13   wanted to alert the Court to this.  I'm not sure, because we

14   don't have an affidavit we don't know precisely what is in

15   there, but it seems based on the search warrant that they used

16   information that they can't rely upon so it seems to me that

17   they are simply -- it is a win-win situation for them because

18   even if the best case scenario is that they claim that some

19   discovery that they produced to me is contraband and so now I

20   can't use the laptop.  But one of the search warrants

21   challenged and it shows that they couldn't use these statements

22   in the search warrant anyway to suppress, but the government is

23   still going to oppose and the Court is most likely going to,

24   you know, incline towards government's position there.

25            THE COURT:  Mr. Schulte, none of this is relevant to

M975schC

1    anything that I need to do right now.  First of all, you are

2    repeating things that you submitted to me in writing and in

3    that sense I am already familiar with them and aware of them.

4    Number two, these issues may or may not become ripe in the

5    event that the government finds anything, seeks to use it, and

6    there is need to litigate the propriety of the search warrant

7    and their ability to use it.  But I certainly see no basis at

8    this point and haven't even been asked to do this, to do

9    anything to prevent the government from conducting the review

10   that it is conducting pursuant to a lawful warrant.  So, bottom

11   line is I think the only thing that is relevant at this point

12   in time -- and I will certainly hear from Ms. Shroff in a

13   moment as well -- but the only thing that is relevant right now

14   is what bearing this has on the motion schedule that I

15   previously set.

16          So, Ms. Shroff, anything you want to add from the

17   non-pro se part of this?

18          MS. SHROFF:  Your Honor, I wanted to add a couple of

19   things if I may and I really do not want to belabor the issue

20   of the problems at the MDC.  I know you are fully saturated

21   with that issue, but personally I went to MDC over the long

22   weekend three days in a row.  Out of the three days I managed

23   to see one client on Monday and no other client was brought

24   down for me, I was unable to see, for 800 different reasons

25   that I was given.  I was unable to see Mr. Schulte on Friday,

M975schC

Saturday, and Sunday.  I got to see him I think -- not even on

Monday, I saw him last night.  I was left in the room after the

visit was over from about 8:00 p.m. until 8:40 p.m.  When I got

out -- I sat there for 40 minutes doing absolutely nothing, I

was just left there.  I came out and I emailed Ms. Von Dornum

to inform her of the ongoing problem and the additional problem

is that there are only two rooms and other lawyers in the legal

room, they make us wait for a social visit, it might be

available, and then we can use that room.

I only bring this up because given the way the setup

is, I am personally unable to work with him in a very sort

of -- how should I put it -- time-efficient manner.  I also

tried to resolve this issue about the laptop and the computer

in the SAMs unit so that you wouldn't have to deal with it so I

called MDC legal several times to see if they could give

Mr. Schulte a work station that would just allow him to work on

Rule 29 and 33 and to update any of the issues.  No one got

back to me.  And I also double-checked to see if what

Mr. Lockard's April 30th letter told the Court had in fact

materialized at the MDC and I was unable to find that any

confirmation that Mr. Schulte had received any of this

including the 3500 material in the system.

I just wanted the Court to know the problems with MDC.

THE COURT:  I will, as I have done before, probably

contact them myself to see if I can facilitate any of this, but

M975schC

1    is there anything in the immediate, aside from adjusting the

2    motion schedule, that you think we need to discuss with respect

3    to the computer?

4            MR. SCHULTE:  So, I am told -- and I'm not really sure

5    where Mr. Schulte and his family are -- that in terms of the

6    pending new case that the Court has set a 9/11 trial date of

7    next year, that his parents are contemplating retaining a

8    lawyer.  So that, and my own trial schedule on another matter,

9    has not allowed me to -- I have not focused on it, to be honest

10   with you.  So, I don't have any issues to raise there other

11   than the issue for me is first trying to resolve the problems

12   on the pro se side so that there can be forward progress.

13           THE COURT:  OK.  Well, let me say, number one, you

14   have plenty of time because I have set the trial for next

15   September largely on the basis of your trial schedule so it is

16   a lot further out than I would have otherwise scheduled it and,

17   given that, there should be ample time to prepare.  I also want

18   to be clear, obviously if Mr. Schulte or his family retain

19   counsel and that counsel wants to appear, I will take that up

20   at that time but any new counsel would have to understand that

21   they need to abide by whatever schedule has been set and that

22   that trial date is a firm date.  So, if counsel is not able to

23   do the trial at that time, I do not anticipate granting a

24   motion to substitute counsel.  Having said that, I will take

25   that up if or when it becomes ripe.

M975schC

1          Mr. De Castro, anything you need or want to add to

2     anything of this?  Being the newcomer here.

3          MR. DECASTRO:  Not now, your Honor.  Thank you.

4          THE COURT:  Let me turn back to you, Mr. Lockard, and

5     just ask you, to the extent that you represent that you have

6     provided the trial record, 3500 and the like to Mr. Schulte,

7     how is that, in what form, and where can he find it?  It sounds

8     like he hasn't actually seen it.

9          MR. LOCKARD:  That was on disk, it was mailed directly

10    to him.  So, we can reach out to MDC legal counsel and see if

11    it is locateable somewhere in the SAMs review pipeline but we

12    did mail it directly to him last week.

13          THE COURT:  OK.  Well, this wouldn't be the first time

14    that there were delays on that sort of thing.  Mr. Lockard, I'm

15    going to direct you to contact the MDC after this proceeding to

16    see if you can track that stuff down and, more generally, I

17    think if you can -- and I will reinforce this directly myself,

18    but -- if you, Ms. Shroff and the MDC can talk about whether

19    and to what extent any sorts of accommodations can be made

20    consistent with security concerns and the like, that would

21    enable Mr. Schulte to access any of this stuff and/or begin

22    working on his motions, I think that would make sense.  Now, if

23    it can't be done to everybody's satisfaction then we will take

24    it one step at a time, and obviously you can always bring

25    things up with me.  But, if everybody is OK with something that

M975schC

1    enables Mr. Schulte to begin working on something even before

2    the review of the laptop is done, then all the better.

3           On that score, again, I think the only relevant issue

4    for my purposes right now is the motion schedule.  Strictly

5    speaking right now the motion is due by December 23rd but,

6    obviously, I'm not going to adhere to that deadline given the

7    complications inherent in the computer situation.  My

8    inclination would be to just extend or adjourn that date sine

9    die, that is, without setting a new date, until we have a

10   better handle on what the review will entail and whether and

11   when Mr. Schulte is going to get his laptop back and to then

12   give Mr. Schulte an appropriate amount of time thereafter

13   and/or to see if some sort of other accommodation can be made

14   that would enable Mr. Schulte to work on things in the absence

15   of the laptop.  But it feels to me like there are two options,

16   one is I can just adjourn it sine die and set a deadline when

17   we have a better handle on things, and the second is I can

18   extend it to some other date in the hopes that Mr. Schulte is

19   able to prepare his motions by that date and with the

20   understanding that we may need to revisit it, but I guess my

21   inclination is to wait until we have a better sense of the

22   situation before setting a deadline.

23          Anyone object to proceeding in that way?  Mr. Lockard,

24   I assume you are OK with that.

25          MR. LOCKARD:  That is correct, your Honor.

M975schC

1          THE COURT:  Mr. Schulte?

2          MR. SCHULTE:  That's fine.

3          THE COURT:  Great.  So then the September 23rd

4    deadline is extended sine die.  I will set a new deadline when

5    I have a better sense of the situation, and in that sense the

6    deadline, any motion would be timely if filed by whatever new

7    deadline I set.

8          Anything else to discuss on this front?  Otherwise I

9    will turn to the proposed pretrial schedule for the September

10   11th, 2023 trial.

11         MS. SHROFF:  Your Honor, respectfully, may I ask that

12   the Court set some kind of control date so we have an update on

13   the situation with MDC?  Because MDC can otherwise, we could go

14   months without any resolution.  How about in 30 days?

15         THE COURT:  In how many?

16         MS. SHROFF:  30 days.  I am trying to be -- it is a

17   long time but -- two weeks?  I mean, I'm happy to reach out

18   along with Mr. Lockard or be on an e-mail chain with them or

19   whatever it takes.  I am assuming the Court won't entertain an

20   application to give Mr. Schulte a replacement laptop that is

21   left in the law library, right?

22         THE COURT:  So I have already denied an application to

23   give him a replacement laptop that would basically be treated

24   like the last laptop.  Again, if there is some provision that

25   the MDC is OK with and the government is OK with and I'm OK

M975schC

1   with, I guess what I will do is actually, again, consistent

2   with my direction that Mr. Lockard is to reach out to the MDC

3   immediately, why don't you update me on Monday in the letter

4   that you are going to submit with respect to the ongoing review

5   and tell me what, if any, accommodations MDC can make, whether

6   the discovery materials have been located, anything else that

7   is relevant to Mr. Schulte's ability to work on the motions

8   before he -- in the absence of having his laptop back.  OK?

9          MR. LOCKARD:  Yes, your Honor.  I will just sort of

10  flag the -- in dealing with MDC legal on this issue I am aware

11  that there are some folks who are out of the office given the

12  time of year.  If that's an obstacle to having something

13  concrete by Monday we will let the Court know.

14         THE COURT:  I don't know what the time of year is, it

15  is after Labor Day, everybody should be back and working

16  regularly, but be that as it may, you know how to ask for an

17  extension if you need one.

18         All right, let's talk about the proposed schedule.

19  Ms. Shroff's letter of August 30th at ECF 937 stated that the

20  government had agreed to the briefing schedule "for all but the

21  non-CIPA motions," but I wasn't quite sure what that meant.

22         Mr. Lockard, do you want to enlighten me?

23         MR. LOCKARD:  So, I think there had been -- I think

24  that reflects the fact that there had been some discussions

25  back and forth about what is sort of an optimal briefing

M975schC

schedule.  I think this reflects something that everybody can

live with and I think, upon further reflection after those

conversations, this is also a schedule the government can live

with.  I think our primary goals are to, number one, flesh out

any CIPA issues significantly in advance of trial especially

given the way that CIPA proceedings played out in advance of

the espionage trial to ensure there is ample time to address

whatever issues need to be addressed there, and also to have

other issues or disclosures happen in a way that the defendant

can address them in his CIPA Section 5 notices as appropriate

and sort of eliminate any question of whether he was on notice

of issues he should have raised at that time.

THE COURT:  Very good.  So, with one exception I will

adopt the schedule that you all proposed and that August 30th

letter, the one exception is I am not inclined to think that

you need a full month to file any opposition to motions *in

limine* or requests to charge.  So, rather than the July 7th

deadline I will set a deadline of June 23rd, two weeks after

those initial submissions are filed, and the opposition just to

give me more time to work on getting you answers to any such

things.

The other thing I want to mention, picking up on what

Mr. Lockard mentioned with respect to the CIPA litigation

before the last trial, I don't want that to happen again so I

mentioned, when asking you to set a proposed schedule, it

M975schC

1    should be such that all CIPA issues can be resolved well in

2    advance of trial so we are not dealing with those things either

3    right before trial let alone during trial.  The bottom line is

4    last time around, number one, I don't anticipate there will be

5    as much need for CIPA litigation in this trial.  Maybe that is

6    naive, maybe that's wrong, but my hope is there won't be that

7    much need.  But, be that as it may, there is no schedule in

8    place for that litigation.  I was rather indulgent before the

9    last trial, mindful in small part of Mr. Schulte's pro se

10   status of untimely notices and I'm not going to prejudge the

11   matter now, but suffice it to say that I may deny any

12   applications if they are not made by the relevant deadlines

13   given that you have ample time between now and those deadlines.

14   So, it is incumbent phon you to be mindful of the schedule and

15   adhere to it.

16           All right.  Speedy trial time has already been

17   excluded through September 11th of next year so we don't need

18   to deal with anything on that front.  I will enter an order

19   just memorializing these deadlines and also vacating the

20   briefing schedule with respect to post-trial motions.

21           Anything else that either sides need to raise?

22   Mr. Lockard?

23           MR. LOCKARD:  No; nothing from the government, your

24   Honor.

25           THE COURT:  Ms. Shroff?

M975schC

1              MS. SHROFF:  No, thank you.

2              THE COURT:  Mr. Schulte?

3              MR. SCHULTE:  No.

4              THE COURT:  All right.  So, I would like to see

5    Mr. Hartenstine, if I may, in the robing room, and otherwise we

6    are adjourned.  Thank you.

7                                    o0o