

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 5, 2022

**BY ECF**

Hon. Jesse M. Furman
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

      Re:    United States v. Joshua Adam Schulte,
               S3 17 Cr. 548 (JMF)

Dear Judge Furman:

      The Government respectfully submits this letter motion in support of the continued sealing of the redacted transcripts of various proceedings conducted pursuant to Section 6 the Classified Information Procedures Act ("CIPA") in advance of the June 2022 retrial in this matter, as directed by the Court's memo endorsement dated November 21, 2022 (D.E. 974). For the reasons set forth below, CIPA's mandatory sealing of the records of *in camera* proceedings conducted pursuant to Section 6 supersedes any common law right of access to those records, and neither history, logic, nor the right of attendance at proceedings support a right of access under the First Amendment.

    **I.**    **CIPA's Statutory Sealing Provisions Supersede the Common Law Right of Access.**

      Courts have long recognized "a qualified common law 'right to inspect and copy public records and documents, including judicial records and documents,' which courts administer by balancing the government's interest in confidentiality and privacy against the public's interest in inspection." *In re New York Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 405 (2d Cir. 2009) (quoting *Nixon v. Warner Communications*, 435 U.S. 589, 597 (1978)). In applying that presumption of accessibility for judicial records, however, particular types of materials that would otherwise qualify as "judicial documents" but that "have traditionally been kept secret for important policy reasons" are not subject to disclosure. *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989).

      Like all federal common law, however, the common-law presumption of accessibility of judicial documents "is resorted to [only] in absence of an applicable Act of Congress." *City of Milwaukee v. Illinois*, 451 U.S. 304, 313–14 (1981). In *In re New York Times Co.*, the Second Circuit applied this familiar principle in reversing a district court's order for the disclosure of wiretap applications, holding that "Title III . . . supersedes any arguable common law right" of

access to the records, 577 F.3d at 405, in light of that statute's "manifest congressional intent that wiretap applications be treated confidentially," *id.* at 408.

Here, CIPA expressly provides that the records of *in camera* proceedings under Section 6 should be kept confidential. The hearings conducted in this case under Sections 6(a) and 6(c) of CIPA were appropriately conducted *in camera*, based on the Government's submission of the appropriate certification from the Assistant Attorney General for National Security of the Department of Justice, *see* 18 U.S.C. App. 3 §§ 6(a) ("Any hearing held pursuant to this subsection (or any portion of such hearing specified in the request of the Attorney General) shall be held in camera if the Attorney General certifies to the court in such petition that a public proceeding may result in the disclosure of classified information."); 6(c) ("Any such hearing shall be held in camera at the request of the Attorney General."); pursuant to the delegated authority of the Attorney General, *see id.* § 14. CIPA further provides that "[i]f at the close of an in camera hearing under this Act (or any portion of a hearing under this Act that is held in camera) the court determines that the classified information at issue may not be disclosed or elicited at the trial or pretrial proceeding, the record of such in camera hearing shall be sealed and preserved by the court for use in the event of an appeal." *Id.* § 6(d). In this case, the Court did not approve the disclosure of classified information at trial in this matter, instead either denying the defendant's requests or approving only the admission of stipulations or substitutions in lieu of the underlying classified information. (*See, e.g.*, D.E. 863). Accordingly, pursuant to Section 6(d) of CIPA, "the record of such in camera hearing shall be sealed."

These provisions are consistent with the overarching purpose of CIPA, which "is designed to protect and restrict the discovery of classified information in a way that does not impair the defendant's right to a fair trial." *United States v. Abu-Jihaad*, 630 F.3d 102, 140 (2d Cir. 2010) (cleaned up). With respect to Section 6 in particular, CIPA "ensures that questions of admissibility will be resolved under controlled circumstances calculated to protect against premature and unnecessary disclosure of classified information." *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1364 (11th Cir. 1994). Indeed, unlike the statutory provision for sealing of wiretap applications at issue in *In re New York Times*, which allows for such applications to "be disclosed only upon a showing of good cause," 18 U.S.C. § 2518(8)(b), CIPA's mandatory statutory sealing provisions do not include any authority for the records of *in camera* proceedings to be unsealed based on any finding of necessity or other cause. In short, CIPA establishes a comprehensive statutory scheme designed to ensure the confidentiality of proceedings regarding the discoverability, admissibility, and/or use of classified information in criminal proceedings that displaces the background common-law presumption that might otherwise apply. Because "the statute at issue in the instant case . . . clearly establishes a presumption against disclosure[,] . . . there is no occasion for [the Court] to consider or apply the common law." *In re New York Times*, 577 F.3d at 407 n.3.

## II. The First Amendment Right of Access Does Not Apply to Displace CIPA's Sealing Requirement.

"[I]t is well established that the public and the press have a 'qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.'" *Lugosch v. Pyramid*

*Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir.2004)). But "[t]he First Amendment right of access to criminal proceedings is not absolute." *Matter of New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987). In *In Re New York Times*, the Second Circuit explained the tests to be applied in determining whether the First Amendment right of access attaches to particular documents or proceedings:

> We have previously endorsed two approaches to determine whether the First Amendment right of access extends to particular judicial records. First, the public has a right to gain access to judicial records (1) that "have historically been open to the press and general public," and (2) where "public access plays a significant positive role in the functioning of the particular process in question." *Hartford Courant Co.*, 380 F.3d at 92 (citing *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 8–9 (1986) ("If the particular proceeding in question passes these tests of experience and logic, a qualified First Amendment right of public access attaches." (emphasis added))). Second, we have held that the First Amendment protects access to judicial records that are "derived from or a necessary corollary of the capacity to attend the relevant proceedings." *Hartford Courant Co.*, 380 F.3d at 93.

*In re New York Times*, 577 F.3d at 409. Neither approach supports disclosure of the transcripts of the CIPA proceedings at issue in this case.

*First*, with respect to history and logic, CIPA Section 6 hearings are unique proceedings that exist and are conducted entirely pursuant to that statute, in which public access does not play a significant role. Section 6 authorizes hearings to determine not only whether classified information is admissible, but also whether alternative forms of disclosure would "provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information," 18 U.S.C. App. 3 § 6(c)(1)(B), which are thus entirely a creature of statute, and accordingly have from their inception been subject to the requirements discussed above that, in general, they be held *in camera* and subject to the sealing provisions discussed above. *Cf. In Re New York Times*, 577 F.3d at 410 ("Although wiretaps themselves pre-date wiretap applications, the introduction of wiretap applications is a more modern invention and, since the time of their creation in Title III, have been subject to a statutory presumption against disclosure. Accordingly, we conclude that these wiretap applications have not historically been open to the press and general public.").

Indeed, CIPA's very purpose is to create procedures to implement the "common-law privilege against disclosure of state secrets" in criminal proceedings. *United States v. Aref*, 533 F.3d 72, 78–79 (2d Cir. 2008). The state secrets privilege is a "venerable evidentiary privilege" *id.* at 79, of long history, the import of which requires courts to weigh questions of law "without forcing a disclosure of the very thing the privilege is designed to protect." *United States v. Reynolds*, 345 U.S. 1, 8 (1953). In short, not only is there no history of public access to the records of CIPA proceedings in general, but there is in fact long practice of ensuring that court proceedings do not unnecessarily disclose national security information.

The First Amendment right of access requires, moreover, "both 'logic' *and* 'experience' in establishing the public's and press's qualified First Amendment right of access." *Hartford Courant Co.*, 380 F.3d at 92 (emphasis added). "[P]ublic access plays [no] significant positive

role in the functioning of the" CIPA Section 6 process. *Id.* at 92. The twin judicial determinations made under Section 6—the admissibility of classified information and the adequacy of any substitute for the original information—necessarily depend on the nature of the underlying classified information at issue. Without access to that information, which by definition cannot be made public, *see generally* Security Procedures Established Pursuant to PL 96-456, 94 Stat. 2025, by the Chief Justice of the United States for the Protection of Classified Information; Executive Order 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009); the public cannot evaluate the Court's decisions about the admissibility or form of use of that information. As the Supreme Court has held, "[a]lthough many governmental processes operate best under public scrutiny, it takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly." *Press-Enter. Co. v. Superior Ct. of California for Riverside Cnty.*, 478 U.S. 1, 8–9 (1986). CIPA proceedings by definition are designed to ensure that classified information is not disclosed except where no alternative would suffice to protect the defendant's right to a fair trial—requiring disclosure of the records of those proceedings would obviously frustrate that goal. As one district court has found:

> [E]videntiary determinations regarding classified information are questions of law, the public resolution of which would not materially enhance either the fairness or public perception of the process. In sum, it is clear from the purpose and statutory language providing for the *in camera* procedures of CIPA that public access to the information reviewed by the court (and held to be non-discoverable) as well as the written statements submitted by the United States in support of non-disclosure plays no significant role in the judicial process of determining whether classified information is subject to disclosure to the defense and possible subsequent introduction at trial. In fact, opening this proceeding to the public would negate CIPA's very purpose.

*United States v. Ressam*, 221 F. Supp. 2d 1252, 1259 (W.D. Wash. 2002) (internal citation omitted).

Nor would release of the redacted transcripts present an appropriate alternative. First and foremost, the substantial redactions necessary to remove classified information would essentially preclude the sort of public scrutiny of the Court's decisions that the "logic" prong of the First Amendment right-of-access test is meant to promote. As courts have recognized, "extensive redactions could mislead the public and engender unfounded speculation about the documents' contents." *In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570 (GBD/SN), 2019 WL 3296959, at *6 (S.D.N.Y. July 22, 2019); *see also In re Grand Jury Subpoenas Dated Mar. 2, 2015*, No. 15 Misc. 71 (VEC), 2016 WL 6126392, at *5 (S.D.N.Y. Oct. 19, 2016); c*f., e.g.*, *United States v. Barrack*, No. 21 Cr. 371, D.E. 135, 136 (E.D.N.Y. July 17, 2022) (Cogan, J.) (finding "the government's application [under CIPA § 4] is so interrelated with classified information as to make impracticable the filing of meaningful redacted materials that do not divulge classified information"); *United States v. Zazi*, No. 10 Cr. 60 (JG), 2011 WL 2532903 at *2 n.4 (E.D.N.Y. June 24, 2011) (rejecting the "possibility of directing the government to create a redacted and unclassified version of its submission [under CIPA § 4] for consumption by defense counsel and the public" because "deleting all references to non-discoverable classified information would make the submission incoherent and, thus, functionally useless"). Because redacted transcripts

would not meaningfully improve public scrutiny of the CIPA process (a process expressly designed to limit the public disclosure of classified information), the "logic" analysis does not support their release under the First Amendment.  Second, even transcripts from which specific items of classified information have been redacted would necessarily reveal information CIPA is intended to protect.  The specific issues of law discussed, and the extensive colloquies regarding the suitability of particular substitutions, summaries, and stipulations would reveal, by themselves, the specific type of relief sought by the parties on specific subjects, which would in turn provide significant indications about what classified information was at issue.  These concerns are particularly acute in this case, which concerns the defendant's unlawful public disclosure of national defense information, creating a heightened risk that even redacted transcripts would prompt at a minimum speculation, if not outright disclosure—albeit indirectly—as to the classified information discussed at length in those hearings.  In sum, rather than promoting meaningful public scrutiny of the judicial process, release of the redacted transcripts would only serve to engender speculation about the classified information at issue, which is not a purpose the First Amendment right of access is intended to further.

While it is true that, in general, the First Amendment right of access applies to "documents filed in connection with criminal proceedings," *United States v. Suarez*, 880 F.2d 626, 630-31 (2d Cir. 1989), that conclusion "merely stands for the proposition that a strong showing that logic supports public access may compensate for the absence of a tradition of openness based on the novelty of a process." *United States v. Cohen*, 366 F. Supp. 3d 612, 633 (S.D.N.Y. 2019).  Indeed, notwithstanding the broad right of access protected by the First Amendment, "[n]onpublic proceedings are common throughout the judiciary," *In re New York Times,* 577 F.3d at 410 n.4, including in criminal proceedings.  Neither experience nor logic supports the disclosure of transcripts, even redacted ones, of CIPA Section 6 proceedings under the First Amendment.

*Second*, nor is there a First Amendment right of access to the transcripts of CIPA Section 6 proceedings "derived from or a necessary corollary of the capacity to attend the relevant proceedings," so that "the right to inspect documents derives from the public nature of particular tribunals." *Hartford Courant Co.*, 380 F.3d at 93.  As the Second Circuit has recognized, "there is no First Amendment right of access under the attendance-at-judicial-proceedings approach [when] the relevant proceedings . . . are not public." *In re New York Times*, 577 F.3d at 410.  There is no question that the CIPA proceedings at issue here were properly held *in camera*.  As noted above, the Government submitted the declarations of the Attorney General's designee required by Sections 6(a) and (c) of CIPA, *see* 18 U.S.C. App. 3 §§ 6(a) ("Any hearing held pursuant to this subsection (or any portion of such hearing specified in the request of the Attorney General) shall be held in camera if the Attorney General certifies to the court in such petition that a public proceeding may result in the disclosure of classified information."); 6(c) ("Any such hearing shall be held in camera at the request of the Attorney General."), which mandated that the proceedings be held without access by the public.  Indeed, the Second Circuit has recognized that, in some circumstances, not even the defendant necessarily needs to have access to Section 6 proceedings. *See In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 130 (2d Cir. 2008) (holding that "the matters discussed at the February 2001 CIPA hearings bore no relationship at all to the question of El–Hage's guilt or innocence of the crimes charged," and that "because a fair and just CIPA hearing would not be thwarted by El–Hage's absence from such a hearing, we conclude that the District Court's exclusion of El–Hage from hearings at which classified material was discussed

did not violate El–Hage's due process right to be present at a crucial stage in his trial" (cleaned up)). Thus, because the CIPA proceedings were properly held *in camera* in the first instance, public release of transcripts of those proceedings is not "a necessary corollary of the capacity to attend the relevant proceedings." *Hartford Courant Co.*, 380 F.3d at 93.

### III. Conclusion

CIPA's express sealing provisions supersede the background right-of-access under the common law that operates in the absence of such statutory proscription. And neither experience, nor logic, nor the right of access to proceedings create a First Amendment right of access that displaces the statutory requirement that the records of the *in camera* proceedings in this case be maintained under seal. Accordingly, the Court should continue to seal the transcripts of the CIPA Section 6 proceedings in this case.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____/s/_____
David W. Denton, Jr. / Michael D. Lockard
Assistant United States Attorneys
(212) 637-2744 / -2193

Cc: Defense counsel (by ECF)