

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 5, 2023

**BY ECF**
Hon. Jesse M. Furman
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

      Re:    United States v. Joshua Adam Schulte,
                 S3 17 Cr. 548 (JMF)

Dear Judge Furman:

      The Government respectfully submits this reply to the letter (D.E. 988) filed by intervenor emptywheel LLC ("Intervenor") opposing the Government's motion for continued sealing of the redacted transcripts of certain proceedings in this case conducted pursuant to Section 6 the Classified Information Procedures Act ("CIPA"). Intervenor's submission only glibly asserts in passing a common law right of access to those transcripts, and Intervenor's discussion of the First Amendment right of access fails to engage with the actual governing legal tests for whether such a right exists, resorting instead to generic claims to be interested in what Intervenor believes was discussed at those hearings. The mere fact that someone would like to know information is not a part of the right-of-access analysis, however, and the Government's motion should be granted.

      First, although Intervenor asserts that the Court "should have no problem seeing how [CIPA hearings] fit within the common law" presumption of access (D.E. 988 at 2), Intervenor does not (and cannot) dispute that statutory sealing provisions "supersede[] any arguable common law right" of access to the records, *In re New York Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 405 (2d Cir. 2009). Intervenor instead mistakenly asserts that "CIPA merely provides a protective procedure to guard against the chance that a hearing *may* include classified information" (D.E. 988 at 3). That ignores the explicit sealing requirement of Section 6 of CIPA, which provides that, as is true here, "[i]f at the close of an in camera hearing under this Act (or any portion of a hearing under this Act that is held in camera) the court determines that the classified information at issue may not be disclosed or elicited at the trial or pretrial proceeding, the record of such in camera hearing shall be sealed." 18 U.S.C. App. 3 § 6(d). That requirement is not limited to sealing the classified information discussed at the hearing, nor does it include permissive language authorizing unsealing for good cause or any other reason—the statute's plain terms provide that "the record of such in camera hearing shall be sealed."

      Second, while Intervenor is correct to note that the statutory sealing provisions of CIPA do not, standing alone, supersede the First Amendment right of access (*see* D.E. 988 at 2), neither do the cases Intervenor cites support unsealing nor are those statutory provisions irrelevant to the First Amendment analysis. The Government's motion does not depend on any penumbral CIPA sealing

authority, but rather concerns the sealing of transcripts of proceedings conducted pursuant to CIPA § 6, which section explicitly provides for both in camera proceedings and mandatory sealing as discussed above. By contrast, in several of the cases cited by Intervenor, courts expressly noted that CIPA differentiates between § 6 hearings and other proceedings. *See, e.g.*, *United States v. Moussaoui*, 65 F. App'x 881, 890 (4th Cir. 2003) ("More important, however, is the significant difference in language between sections 6 and 7 of CIPA. Section 6 explicitly requires the district court to hold an in camera hearing if the Attorney General certifies that classified information would be revealed by a public hearing, but § 7 contains no such requirement."); *In re Washington Post Co.*, 807 F.2d 383, 393 (4th Cir. 1986) ("Under § 6 of the Act, the district court may hold an in camera hearing for the purpose of making such advance evidentiary determinations. The Act does not purport to authorize district courts to hold in camera hearings for other purposes.").

Particularly notable is Intervenor's limited quotation from *United States v. Poindexter*, which notes in full that "[w]hile CIPA obviously cannot override a constitutional right of access, *it is indicative of a tradition and common usage in a situation involving sensitive information*." 732 F. Supp. 165, 167 n.9 (D.D.C. 1990) (emphasis added). Thus, CIPA § 6(d)'s statutory sealing provision not only expressly supersedes the background presumption of the common law right of access, it is also relevant to the determination that there is no tradition of access to CIPA § 6 proceedings—*i.e.*, no experience protected by the First Amendment. *Cf. In Re New York Times*, 577 F.3d at 410 (noting wiretap applications are statutory creations protected from disclosure).

Third, Intervenor asserts a First Amendment right of access premised on the assertion that "the Government present[ed] legal arguments about elements of the crime itself," which Intervenor claims both have traditionally been open to the public and are of value to the monitoring of the judicial process. (D.E. 988 at 2). Intervenor's contention that legal arguments the Government may have advanced at the Section 6 hearings are "something that interested persons in the field should know" (*id.* at 3) simply "cuts too wide a swath—taken to its extreme, considerations of logic would always validate public access to any judicial document or proceeding." *United States v. Cohen*, 366 F. Supp. 3d 612, 631 (S.D.N.Y. 2019). Contrary to Intervenor's suggestion that discussion of the elements of an offense "stray[s] far from a simple discussion of evidentiary issues" (D.E. 988 at 3), such discussion is integral to virtually any assessment of the relevance and admissibility of evidence, including that occurring in CIPA § 6 hearings, in which courts "look to what elements must be proven under the statute," *United States v. McCorkle*, 688 F.3d 518, 521 (8th Cir. 2012); *see also United States v. Bailey*, 444 U.S. 394, 416 (1980) (describing need to "limit[] evidence in a trial to that directed at the elements of the crime").

Although "[e]very judicial proceeding, indeed every governmental process, arguably benefits from public scrutiny to some degree, in that openness leads to a better-informed citizenry and tends to deter government officials from abusing the powers of government," such claims "cannot be used as an incantation to open these proceedings to the public. Nor will the mere recitation of these interests open a particular proceeding merely because it is in some way integral to our criminal justice system." *Times Mirror Co. v. United States*, 873 F.2d 1210, 1213 (9th Cir. 1989). Rather, "the value of access must be measured in specifics. Analysis is not advanced by rhetorical statements that all information bears upon public issues; what is crucial in individual cases is whether access to a particular government process is important *in terms of that very process*." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 589 (1980) (Stevens, J., concurring) (emphasis added). As described in the Government's original motion, the unique functions of CIPA § 6 proceedings are to protect information from disclosure and to balance the

defendant's trial rights against the interest of the Government and the public in protecting sensitive national security information from disclosure. Accordingly, "it is clear from the purpose and statutory language providing for the in camera procedures of CIPA that public access . . . plays no significant role in the judicial process of determining whether classified information is subject to disclosure to the defense and possible subsequent introduction at trial. In fact, opening this proceeding to the public would negate CIPA's very purpose." *United States v. Ressam*, 221 F. Supp. 2d 1252, 1259 (W.D. Wash. 2002). Intervenor makes no argument that public access is critical to the CIPA § 6 process, and in fact asserts no interest in that process at all. Intervenor's desire to speculate as to the potential application of the Government's articulation of the elements of an offense to other circumstances has no bearing on the ability of the public to monitor or assess the actual rulings of the Court in the CIPA § 6 hearings to which Intervenor demands access.

Finally, Intervenor is incorrect to assert that the Government has no interest in the sealing of transcripts from which classified information has been redacted. (D.E. 988 at 4-5).[1] Contrary to Intervenor's suggestion that the First Amendment right of access applies regardless of whether the transcripts are "coherent or useful" (*id.* at 5), the question is not whether redacted transcripts are coherent as a matter of language or whether they might be relevant to Intervenor's academic interest. The "logic" prong instead requires that access to the materials play "a significant positive role in the functioning of the particular process in question." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 92 (2d Cir.2004). The fact that the transcripts here have been redacted of any reference to the classified information the admissibility of which was at issue means that their release would not provide any comprehensible ability for the public to assess "the functioning of the particular process in question," *id.*, in terms of the Court's evidentiary rulings under CIPA § 6, but would instead only have the harmful effect on public understanding of "mislead[ing] the public and engender[ing] unfounded speculation about the documents' contents." *In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570 (GBD/SN), 2019 WL 3296959, at *6 (S.D.N.Y. July 22, 2019).

For the foregoing reasons, and those set forth in the Government's original motion, the Court should continue to seal the transcripts of the CIPA § 6 proceedings in this case.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____/s/_____
David W. Denton, Jr. / Michael D. Lockard
Assistant United States Attorneys
(212) 637-2744 / -2193

Cc: All counsel (by ECF)

---

[1] Nothing in the logic, experience, or attendance-at-proceedings tests establishes a First Amendment right of access merely because the information sought is unclassified. The vast majority of relevant jurisprudence concerns unclassified information. The fact that these proceedings concerned classified information is the basis for CIPA's application and bears on the harm attendant to inappropriate disclosure.