M5i3schc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

UNITED STATES OF AMERICA,

          v.                          17 Cr. 548 (JMF)

JOSHUA ADAM SCHULTE,

          Defendant.

------------------------------x

                                    New York, N.Y.
                                    May 18, 2022
                                    3:00 p.m.

Before:

                HON. JESSE M. FURMAN,

                                  District Judge

                      APPEARANCES

DAMIAN WILLIAMS
    United States Attorney for the
    Southern District of New York
DAVID W. DENTON, JR.
MICHAEL D. LOCKARD
    Assistant United States Attorneys

JOSHUA ADAM SCHULTE
    Pro Se Defendant

SABRINA SHROFF
DEBORAH A. COLSON
    Stand-by Counsel

M5i3schc

1         THE DEPUTY CLERK:  United States v. Schulte.  17 CR

2    548.  Counsel, please state your name for the record.

3         MR. DENTON:  Good afternoon, your Honor.  David Denton

4    and Michael Lockard for the government.

5         MR. LOCKARD:  Good afternoon, your Honor.

6         THE COURT:  Good afternoon.

7         THE DEFENDANT:  Josh Schulte, appearing pro se.

8         MS. SHROFF:  Good afternoon, your Honor.  Sabrina

9    Shroff and Deborah Colson as stand-by counsel.

10        THE COURT:  Good afternoon.  Welcome back, everyone.

11   I have a number of items on the agenda, so let's get started.

12        Ms. Shroff, are you ready to proceed?

13        MS. SHROFF:  Yes, yes, I just wanted -- somebody was

14   trying to get in so I wanted to know if the door was closed or

15   not.

16        THE COURT:  The door should not be closed.  I do not

17   think the door is closed, which is a good moment to remind

18   everyone that we are in unclassified setting, so restrict any

19   discussion to unclassified matters.  If we need to reconvene at

20   some later time in a classified setting, we will do so and

21   that's one of the items that I have to discuss.

22        First, I want to just address the MDC related matters

23   and I see I think Ms. Chan is here; is that correct?

24        MS. CHAN:  Yes, your Honor.

25        THE COURT:  Thank you for joining us.  Let me just

M5i3schc

1    first make a record of a few items.

2              On May 11, Mr. Schulte filed a letter stating that he

3    lacked access to the law library and raising various other

4    issues relating to the MDC, requesting certain relief.  Many of

5    these have been sort of recurring type issues.  Stand-by

6    counsel filed a cover letter at the same time stating that

7    Ms. Chan had not helped to resolve those issues.  That's ECF

8    number 801.  I ordered that a representative of the MDC appear

9    at this hearing to address those issues.

10             On May 16, Mr. Schulte filed a second letter stating

11   he still lacks access to the law library, that is ECF number

12   807.

13             Couple things to note.  First, on May 6, I actually

14   took a tour of the MDC, just so everybody is aware, with a

15   colleague.  To be clear, it was not in connection with this

16   case per se, just based on my interest in seeing the conditions

17   at the MDC and various other MDC related matters.  But while I

18   was there, I did request to visit the SAMs unit and did visit.

19   I am told that Mr. Schulte was in the law library at the time.

20   My colleague with whom I visited did actually look into the law

21   library and seemed to see somebody who seemed to indicate that

22   he saw my colleague.  But, I did not look in myself since I did

23   not want to have any ex parte contact with Mr. Schulte.

24             So, I just want to share that, that I have seen where

25   Mr. Schulte has spent a number of the last months.

M5i3schc

1          While there, I did inquire about the second incident

2   involving the law library when Mr. Schulte was not taken out

3   for a while and he was forced, on his account, to urinate in

4   the corner.  I was told that there is a videotape of that

5   incident, and the videotape indicates that per standard

6   operating procedures, that every 30 minutes or so, some

7   corrections staff looked into the window in the law library,

8   even perhaps knocked on it or something to that effect, and

9   Mr. Schulte seemed to acknowledge their presence, and that he

10   never indicated that he needed to leave.

11          I was told that the tape could be preserved in case I

12   wanted it and requested that it be preserved, but no

13   application on that issue has been made, so I have not

14   requested it, do not intend to request it, unless it becomes

15   necessary.  And my sincere hope is those kinds of issues are

16   behind us, and in that sense I will not have the to view that

17   tape.

18          On receiving Mr. Schulte's letter of May 11, I took

19   the liberty of reaching out to an official at the MDC who was

20   recently appointed to serve as something of a liaison with the

21   court to address issues relating to defendants in our cases.

22   That is to say I thought that these matters are important

23   enough that I should try to directly intervene to ensure that,

24   particularly as we approach trial, that we need to ensure that

25   Mr. Schulte has access to whatever it is he is entitled to have

M5i3schc

1    access to, and problems, for instance, relating to the law

2    library, computer, etc., are resolved expeditiously.  I

3    stressed the importance of that to the representative of the

4    MDC, and indicated that it was imperative for my purposes that,

5    particularly as we get closer to trial, these kinds of issues

6    need to be addressed promptly or preemptively.

7         I did share a copy of Mr. Schulte's May 11 letter with

8    the representative of the MDC, and I have gotten a couple --

9    well, some information back in connection with them.  In

10   particular, what I have been advised is, first of all, the

11   representative of the MDC did confirm that he or she went to

12   the law library at some point in the last couple days and tried

13   to use the computer, and I guess there are two different parts

14   of the computer system.  As I understand it, one is sort of the

15   discovery part and the other is the portion that allows for

16   communications, e-mail and the like.  And I gather that one of

17   those was down, the other was operational.  And that it did

18   require that the computer be reset, and once it was reset, they

19   were both operational.  But it does corroborate Mr. Schulte's

20   complaint that to some extent there have been issues on that

21   front.

22        What I discussed with the representative of the MDC

23   is, going forward, a way of minimizing any of these sorts of

24   problems and asked if it was possible for there to be a daily

25   check of the computer in the law library between now and trial

M5i3schc

1    or now through the end of trial, and was told that that would

2    likely happen.  That in all likelihood there could be at least

3    one check every weekday going forward to ensure that things are

4    working, and if not working, then addressed promptly.

5         I was also told that if there are any issues, that

6    Mr. Schulte should be able to raise them with his unit officer

7    and unit team staff, and a message will be or has been conveyed

8    to them that in the event that there are any such issues, that

9    they need to promptly address them.

10        Ms. Chan, do you want to step up to the microphone and

11   just confirm those things which are the probably the most

12   significant things for my purposes?

13        MS. CHAN:  Yes, your Honor.  I'm confirming that we

14   have spoken with the unit team and they agreed they would check

15   the computer Monday through Friday, and if there is any issues,

16   they will promptly let the computer services know, and/or the

17   trust fund staff know about the issues, but, to the extent

18   possible, they will check on it every day and report it

19   promptly if there were issues.

20        THE COURT:  Very good.  And the representation has

21   been made to me that a record will be made of those checks, so

22   that in the event that I need to verify or confirm that the

23   checks have been made and that things are working, that there

24   is a record of that.  So can you represent that?

25        MS. CHAN:  Yes, your Honor.

M5i3schc

1          THE COURT:  Okay.  On this subject, anything that you

2     want to raise, Mr. Schulte, with respect to the computer in

3     particular?  Hopefully this will address any issues going

4     forward.  I certainly understand your frustration to the extent

5     there have been issues in the last few weeks.  I would note,

6     again, that you seem to have no trouble filing things on a

7     fairly regular and lengthy basis.  But be that as it may, I

8     certainly want to make sure between now and trial there are no

9     problems or they're addressed promptly.  So, I have tried to do

10    that.

11          Anything you want to say?

12          THE DEFENDANT:  On that issue, I think, for example, I

13    needed an extension -- most of the law library stuff, looking

14    up the case laws from the parties' briefs and stuff, but it

15    sounds like this should resolve the issue.

16          Like I said in the letter, basically it went 10, 15

17    days with the computer off.  If someone's going to be checking

18    it every day, I think that should be sufficient.

19          I also want to bring to the Court's attention that the

20    main reason I think this had to come to the Court is I did go

21    through my unit team and filed, I filed something like 60

22    administrative remedies BP-8s over the last two months and not

23    a single one has been answered.  Now, the last few days I will

24    acknowledge that the MDC has stepped up. like I said, they

25    turned the computer on, they finally answered a couple BP-8s in

M5i3schc

1     the last few days.

2              But the whole point of the administrative remedy

3     system is resolving these issues so it doesn't need to go to

4     the court system.  As far as that goes, I want to raise that

5     and make sure if, going forward, my administrative remedies are

6     able to be answered, I don't think we should have any issues at

7     this level.

8              THE COURT:  Well, my hope is that as to the computer

9     there is no need for administrative remedies at all.  And with

10    my more active engagement in dealing directly with the MDC,

11    that I will ensure there is no problem.  And if there are

12    problems, they are addressed promptly.

13             I would invite you, given we are close to trial, and

14    given that this does implicate your ability to prepare defense,

15    which is the narrow area of issues relating to the MDC that I

16    indicated I believe I do have jurisdiction to address, that if

17    you are not getting adequate attention from the unit staff, and

18    that these issues are recurring, that you bring that promptly

19    to my attention and I will certainly act accordingly.  And

20    regardless, I will be in touch with representatives from the

21    MDC to ensure that things are proceeding smoothly.

22             On the subject of the administrative remedies, I was

23    told that you have filed something in the nature of 60 some

24    odd.  I think part of it may be the sheer magnitude or number

25    of those you've filed.  I am told staff won't act on an

M5i3schc

administrative remedy if it is a duplicate after a prior

administrative remedy, because your remedy or recourse is to

appeal any action or lack of action with respect to the first,

not to bring a second.  And that is to ensure that you process

through the system as you're supposed to and not simply reraise

the same issues.  Which, Ms. Chan, I don't know if you have

anything to say on that.  I think other than issues implicating

the computer and the like, I think these are largely beyond my

purview.  Am I correct in that?

MS. CHAN:  Correct.

THE COURT:  With respect to several other items that

Mr. Schulte averted to in his first letter, I don't think

they're really within my purview.  But just quickly, my

understanding is that there was some issues with respect to the

commissary, particularly during institutional lockdowns and the

like, but that the commissary is fully stocked and Mr. Schulte

has made various purchases from commissary.  And that that is

hopefully not an issue as well.

Again, to the extent that Mr. Schulte raises issues

with respect to his ability to mail things to court, there has

been no shortage of filings so I have not seen any evidence to

support that.

With respect to legal calls, I am told he made two

requests for legal calls.  One on April 22 that was granted.

Unit team staff attempted to place calls, but counsel was

M5i3schc

1      apparently unavailable during any of the attempts.  And that

2      another request was made on May 11.  That request was granted

3      and an hour long call was actually conducted.  So, it doesn't

4      seem there is a problem there.

5              With respect to printer paper, I am told that there is

6      a sufficient supply of paper there and that Mr. Schulte need

7      only notify staff that when he needs additional paper and it

8      will be added to the printer for him.  And I will certainly

9      make sure that is among the things I follow up on as we

10     approach trial.

11             And I was told that, I don't think there have been any

12     issues from the institution standpoint with respect to social

13     visits and calls, but that really is beyond my purview.

14             Ms. Chan, anything you want to say with respect to any

15     of those categories or items beyond what I just said?

16             MS. CHAN:  No, your Honor.

17             THE COURT:  Anything else, Mr. Schulte, with respect

18     to this case and your ability to access whatever you are

19     entitled to and should access or does that hopefully address

20     it?

21             THE DEFENDANT:  I think you addressed it so hopefully

22     going forward there is no more, shouldn't be anymore issues.

23             THE COURT:  All right.  That is certainly my hope.

24             THE DEFENDANT:  Thanks for helping resolve these

25     matters.

M5i3schc

1      THE COURT:  All right.  No problem.  I'm here to

2   serve.

3      Ms. Chan, I thank you for being here.  You are welcome

4   to stick around, but I think that exhausts the issues that you

5   were here for.

6      I just want to underscore what I have said directly to

7   your colleague, that I need these issues to go away and avoid

8   these sorts of distractions between now and the end of trial

9   just to ensure that Mr. Schulte has the ability to prepare for

10  trial, given whatever resources he's entitled to, and to the

11  extent there are problems, I need them promptly addressed.  So

12  if I haven't made it clear, I do intend to be more directly and

13  proactively involved in ensuring that.

14     MS. CHAN:  Yes, your Honor.  I understand, and I'll

15  make sure to convey that to my staff.

16     THE COURT:  Thank you very much and I appreciate your

17  being here.

18     Next item on my agenda is I received a sealed letter

19  from the defendant regarding some newly produced discovery.

20  Per an order that I entered the government has filed a response

21  on May 16.  That response includes two exhibits, one of which

22  is classified.

23     Let me address the substance and also the sealing of

24  those documents.  First, upon review of the submissions,

25  Mr. Schulte's motion to compel production of additional

M5i3schc

1    materials and to remove the materials that were produced by the

2    government in that most recent production, those requests are

3    denied substantially for the reasons stated by the government

4    in its May 16 letter.  As stated there, there is no basis to

5    believe that any of the materials or the witness at issue in

6    the materials are material -- that's in a different sense of

7    that word -- let alone exculpatory.  In arguing otherwise,

8    Mr. Schulte engages in rank speculation, mischaracterizes the

9    contents of the materials, or takes things out of context.

10         In any event, the issue for me at the moment is not to

11    decide whether any of those materials or testimony from that

12    witness would be admissible at trial.  That may or may not be a

13    request for another day.

14         For today's purposes, it suffices to say that there's

15    no merit to the motion to compel the production of anything

16    beyond what the government has already disclosed.  I'm

17    persuaded that the government has satisfied its discovery

18    obligations with respect to the materials at issue.  Nor at

19    this point in time is there any basis to remove the materials

20    from the ambit of the protective order.

21         The third form of relief that Mr. Schulte sought was

22    funds to hire an expert in connection with the materials that

23    were disclosed.  If a proper request is made on that front, I

24    am certainly open to granting it.  I will at least consider it.

25    So I would direct stand-by counsel to confer with Mr. Schulte

M5i3schc

1    and to make a proper request through e-voucher indicating what

2    the request is and how much is being sought.

3              All right, Mr. Schulte?

4              THE DEFENDANT:  Stand-by counsel will submit that

5    request for you.

6              THE COURT:  Great.  So I will look for that.

7              And then, second, as I indicated, is a question of

8    whether and to what extent the two letters and the government's

9    exhibits should be filed publicly.  The letters themselves and

10   Exhibit B to the government's letter are not classified.  That

11   said, there is a solid basis to seal, given that the issues

12   pertain to ongoing investigations.  That being said, I think

13   redacted versions can and should be filed on the docket.

14   Redactions may be substantial, but there are certainly portions

15   that can and should be public, given the presumption in favor

16   of public access.

17             Mr. Denton, I think the best course here is to have

18   you file a redacted versions of both your submission as well as

19   the defendant's submission, since it is really your equities

20   that justify sealing, and would ask you to do that no later

21   than let's say Monday.  And I would review the redactions.  If

22   I take issue with any of them, I'll let you know, but

23   otherwise, assuming the redactions are narrowly tailored for

24   reasons that justify sealing that would satisfy the public

25   access to those documents.  Does that all work with you?

M5i3schc

1              MR. DENTON:  Two questions, your Honor.  First, just

2    from a timing perspective, could we ask to have until Wednesday

3    of next week?  Because we need to coordinate with another

4    office and another investigative team who may have views on

5    this.

6              THE COURT:  Yes.

7              MR. DENTON:  And then my second question is, your

8    Honor, do you want us to just file the redacted versions on the

9    docket once we've settled on them or do you want us to submit

10   them to chambers in soft copy first?

11             THE COURT:  The former.  That is to say you make your

12   best effort to narrowly tailor the redactions to the

13   justifications for sealing.  I will take a look at whatever you

14   filed.  If I have any issues with redactions, since I do have

15   the unredacted copies, I will issue an order and give you

16   further direction.  But if you do your job well, I will leave

17   it as is and approve the redactions.

18             MR. DENTON:  Understood, your Honor.

19             THE COURT:  Anything from you, Mr. Schulte, on that

20   issue?

21             THE DEFENDANT:  I think just on the Exhibit A that

22   they marked as a classified exhibit.  If they can do a

23   classification review and have an unclassified redacted version

24   of that as well.

25             THE COURT:  I think it should be handled in accordance

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

M5i3schc

1    with the protective order which calls for a classification

2    review, unless there is some reason not to do that here,

3    Mr. Denton.

4         MR. DENTON:  We certainly can, your Honor.  That's

5    fine.

6         THE COURT:  Great.

7         Next item is at ECF number 798.  I entered an order

8    directing the government to respond to an earlier filed letter

9    by the defendant, classified letter, concerning a certain

10   exhibits.  I've reviewed the government's response dated

11   May 17, 2022, also classified, and persuaded and find it

12   sufficient to justify the way that issue has been handled.  So

13   I do not intend to take any further action on that, and would

14   just remind everybody of the importance of adhering strictly to

15   the terms of the protective order in this case and the handling

16   of classified evidence.  And I will leave it at that in this

17   setting.

18        Next item on my agenda is a motion for reconsideration

19   that the defendant filed with respect to my opinion and order

20   denying his omnibus motion and later motion to suppress.  That

21   is the opinion and order filed on April 29 at ECF number 789.

22   The motion is pending classification review, so it is not yet

23   docketed.

24        Again, I would just note that to the extent

25   Mr. Schulte complains he doesn't have enough time to prepare

M5i3schc

1    things, the sheer number and nature of the filings somewhat

2    belie that.  But, be that as it may, it is well settled that a

3    motion for reconsideration is not a vehicle for relitigating

4    old issues, presenting the case under new theories, securing a

5    rehearing on the merits or otherwise taking a second bite at

6    the apple.  Rather, the standard for granting a motion for

7    reconsideration is strict, and reconsideration will generally

8    be denied unless the moving party can point to controlling

9    decisions or data that the court overlooked.

10         That is all a quote from *Analytical Surveys, Inc. v.*

11   *Tonga Partners LP*, 684 F.3d 36, 52 (2d Cir. 2012), cleaned up

12   in various ways.

13         Measured against that standard, at least two aspects

14   of the motion are meritless and denied.  In particular,

15   Mr. Schulte provides no basis for reconsideration of my ruling

16   with respect to the document obtained from Mr. Presnall or the

17   search of his Google account.  Accordingly, those portions of

18   the motion are denied without the need for any response from

19   the government.

20         There are two other issues raised in his motion.  The

21   first is his request to bifurcate trial on the MCC and

22   espionage counts.  As to that, he submits an ex parte -- I

23   think it is ex parte -- declaration providing a more detailed

24   summary of what he would testify to with respect to the

25   espionage counts alone and his reasons for not wanting to

M5i3schc

1    testify with respect to the MCC counts.  And then the second

2    component of the motion is reconsideration of the denial of his

3    motion to suppress documents that were seized from the MCC.  As

4    to that, he does point to some aspects of the record before the

5    first trial that I may not have considered because they were

6    under seal, which is to say, arguably, materials that I did

7    overlook.

8           On those two issues, without intimating a view on the

9    motion, I think it would make sense for the government to

10   respond, and would ask it to do so.

11          On the issue of bifurcation, I would ask the

12   government to address, number one, whether bifurcation is

13   appropriate at all.  And number two, if the trial were

14   bifurcated, essentially what that would look like.  Presumably,

15   it would require trial of the MCC counts first, insofar as

16   Mr. Schulte says he doesn't wish to testify with respect to

17   those counts, followed immediately by trial on the espionage

18   counts.  I'm not quite sure what that would look like or if

19   that's even a feasible option, but would like the government's

20   views on that.

21          Having said that, my impression is that at least

22   portions of the defense motion, perhaps the exhibits only or

23   maybe the motion as well, were submitted on an ex parte basis

24   so I don't know what the government has, if it is privy to the

25   motion in its entirety.

M5i3schc

1          Mr. Denton?

2          MR. DENTON:  So, your Honor, we have a copy of the

3     motion, the physical text of it.  We have none of the exhibits.

4     So the defendant's declaration about what he would testify

5     about, the ex parte proceedings in advance of the previous

6     trial, none of those were provided to the government.

7          THE COURT:  Okay.  But there were no redactions to the

8     motion itself?

9          MR. DENTON:  No, your Honor.

10         THE COURT:  All right.  So, I think you can

11    meaningfully respond to the motion to suppress portion without

12    the attachment.  I think the relevant portion is excerpted in

13    the motion itself, which you have.

14         With respect to the affidavit declaration of

15    Mr. Schulte's testimony, I think I will leave that ex parte on

16    the theory that he shouldn't have to give you a roadmap or

17    preview of what he would testify to, and I'll make an

18    assessment of whether it is sufficiently specific to meet the

19    requirements of the law.  But would just appreciate your

20    thoughts on the questions of bifurcation notwithstanding your

21    lack of access to the declaration.

22         So, I guess the question is, mindful of the fact there

23    are various other submissions or deadlines coming down the

24    pike, when you would want to respond?  On the one hand, I'm

25    prepared to give you time.  On the other hand, the more time

M5i3schc

1    you take, the more likely a ruling would come on the eve of

2    trial.

3              What's your thought?

4              MR. DENTON:  I'm trying to do the math on the day on

5    the calendar in my head, your Honor.  We were thinking a week

6    from Monday.  Not this coming Monday, but the Monday following.

7              THE COURT:  That would be May 23 -- no, that would be

8    May 30 which is Memorial Day.  So May 31.

9              MR. DENTON:  That sounds right, your honor.

10             THE COURT:  And then Mr. Schulte, to the extent that

11   you wish to file a reply and I were to give you leave to file a

12   reply, how quickly could you file a reply?

13             THE DEFENDANT:  May 31, what day is that?  Tuesday?  I

14   wouldn't receive it until Friday.  And as long as I have the

15   law library over the weekend, then that next Monday.  Unless

16   the government can give it to me at MCC on that Tuesday, then

17   it could be by Friday.

18             THE COURT:  Okay.  So Mr. Denton, seems to me that

19   either serving it on Mr. Schulte at the MDC on that Tuesday, or

20   filing it by the prior Friday so he gets it more quickly, might

21   make more sense.  What's your thought?

22             MR. DENTON:  I think we should be able to do that,

23   your Honor.  Just again, it is still undergoing classification

24   review, but I'm pretty positive we'll be able to respond to

25   those two issues in an unclassified way.  So we'll be able to

M5i3schc

1    docket it and see about a more efficient way to get it to

2    Mr. Schulte.

3              THE COURT:  So to be clear, we are talking about the

4    31st and you'll see to getting a more efficient service.

5              MR. DENTON:  Yes, your Honor.  If we can get it done

6    and get it filed by that Friday, we're certainly looking to try

7    to move things more quickly.  So if we can, we will.  If we

8    need until Tuesday to do it, we'll do whatever we can to try to

9    get Mr. Schulte a copy at the MCC.  Either way, we'll make sure

10   stand-by counsel gets it promptly.  I don't think it will

11   require anybody to be in the SCIF to review or address.

12             THE COURT:  Ms. Shroff?

13             MS. SHROFF:  I would be happy to actually deliver the

14   document, if Mr. Denton can't do that, to the MDC.  The problem

15   is MDC won't let me do it.  I just wanted the Court to know.

16   So if I take a hard copy on that Saturday and go to the SHU to

17   give it to Mr. Schulte, they won't let me give it.  I didn't

18   want you to think we weren't willing to do it.  They won't take

19   it from us.

20             THE COURT:  Okay.  So, here's the deal.  I will give

21   the government until May 31 to file its response with the

22   request that you try to file it by next Friday.  That is sooner

23   than the 31st.  In either case, I want you to do whatever you

24   need to do to ensure that it is actually served on Mr. Schulte

25   by the 31st and no later than the 31st.  All right?

M5i3schc

1          MR. DENTON:  Understood, your Honor.

2          THE COURT:  Mr. Schulte, assuming you get it on the

3    31st, then you said you could file something by that Friday, is

4    that correct?  Friday you are going to be here for the final

5    pretrial conference.

6          THE DEFENDANT:  Yes, so my understanding is that

7    Friday is also a SCIF day too.  But I intend to basically print

8    it from the MCC Thursday, I can give it to the Court either

9    early or during the final pretrial conference on Friday, or I

10   assume that after that I would go to the SCIF and I could give

11   it to stand-by counsel to file on ECF.

12         THE COURT:  So I'll set your deadline as Friday,

13   June 3.  And obviously if something arises that prevents you

14   from being able to meet that deadline, then we'll be together

15   that morning and we can discuss what that means.

16         The sooner that I get these things, the sooner I can

17   give you a ruling, and the less you'll have to scramble at the

18   last minute.

19         The only issue remaining on my agenda is sort of trial

20   related stuff.  Let me go through that.

21         First is Mr. Schulte filed a letter on May 16, this is

22   at ECF number 808, regarding certain trial-related issues.  One

23   is his request that I agree not to declare a mistrial if he or

24   any of the attorneys test positive for COVID during the trial,

25   and that I question jurors on that issue during voir dire.

M5i3schc

1      That request is denied.  I will tell you I don't

2   intend to declare a mistrial if somebody tests positive for

3   COVID.  These days it requires at least five days of quarantine

4   but may not require any more than that.  And I would be much

5   more inclined just to take a break and resume when we can

6   resume and take things as it comes.  But in any event, I think

7   we'll need to deal with things as they arise and assess the

8   circumstances.  And if there are circumstances that would

9   justify a mistrial, then I'll declare a mistrial.  And if there

10  aren't, I won't.  And in either case, I will give both sides an

11  opportunity to be heard on that issue.

12      I certainly do not intend to ask jurors if they're

13  comfortable sitting in a room with someone who has tested

14  positive for COVID.  Among other things, that is not consistent

15  with the court's protocols.  If someone has tested positive for

16  COVID, they will not be in the room.  Again, we'll deal with

17  the issue.  But I am not going to precommitment to not declare

18  a mistrial if there are circumstances that would justify it.

19      Second request is that stand-by counsel be permitted

20  to bring his laptop from the MDC to the courtroom and back

21  during each trial day.

22      I am not going to rule on that now.  But it points to

23  some larger issues here about the protocols surrounding trial,

24  access to resources, ensuring Mr. Schulte can prepare for

25  trial, and has what he needs for trial.  I recognize that there

M5i3schc

are some complicated issues here, some real security issues and

concerns that implicate the MDC, the marshals, the CIA, the

government, etc.  So I think this requires a little bit of

thought and discussion.

My inclination is that the government should confer

with Mr. Schulte, with stand-by counsel, with the MDC, with the

marshals, with anyone else that the government thinks should be

a part of this conversation, and present some sort of trial

plan to me with respect to these kinds of issues.  That is to

say, Mr. Schulte should be forthcoming with respect to what he

anticipates his needs are, and recognizing that there are some

real issues here, I would like a plan as to how those needs can

be met, if at all.  If they can't, then I will take up any

applications.  If they can, then great.

But, it seems like getting everybody in the proverbial

room to discuss these things and come up with a proposal is

probably the first step.

Mr. Denton?

MR. DENTON:  We're happy to try and work on it, your

Honor.  I think we'll be able to discern what kind of the base

rules are that the marshals and the MDC will require us to do

no matter what, and we can certainly try and come up with

something consistent with that.  And if your Honor doesn't find

that satisfactory, we may have to have other conversations at a

higher level to try to get to a better place, but we'll

M5i3schc

1    certainly take the first crack at it.

2              THE COURT:  I would include in that also access to the

3    SCIF, access to the computer, to the printer, paper, I mean,

4    everything of the sort that Mr. Schulte has been raising for a

5    while, but also will presumably raise with you when you confer

6    with him.

7              MR. DENTON:  Am I right, your Honor, it is still the

8    Court's plan to sit until about 3 o'clock each day?

9              THE COURT:  Correct.

10             MR. DENTON:  So I'm hopeful that the SCIF piece of

11   this will be relatively easy because adopting a similar

12   schedule during the last trial, I think we were able to make

13   sure Mr. Schulte got time with his attorneys in the SCIF.  So,

14   again, hopefully that will not be the biggest of our issues.

15             THE COURT:  I'm hopeful all of it is easy.  But, you

16   know, hope springs eternal.

17             Mr. Schulte, any issues with proceeding in that

18   manner?

19             THE DEFENDANT:  My counsel wanted me to check.  Is

20   Friday -- we're sitting on Friday during the trial or not?

21             THE COURT:  Yes.

22             THE DEFENDANT:  We are sitting on Friday.  Okay.

23             As far as the laptop goes, you know, I don't have

24   anything else.  I'm trying to resolve it as best we can.  I do

25   note, though, that my request wasn't that stand-by bring it,

 1    but I bring it with my notebooks with the marshals from the

 2    from prison.

 3              THE COURT:  Whatever the request is, I would like you

 4    to speak with the government.  I know there have been issues in

 5    the past with respect to communications, but I think there is

 6    really no alternative here to you making your desires, requests

 7    and needs known so that the government can try to address them.

 8              THE DEFENDANT:  Right.

 9              THE COURT:  The only way we can address these things

10    is by planning ahead and speaking with the marshals, speaking

11    with MDC, speaking with any other agency or person that has

12    equities here, and trying to work through these issues.  So I

13    need you to be forthcoming with the government about what you

14    would like, and then the government will make a proposal about

15    how we can meet those needs and address them, if at all, and

16    I'll deal with it if we need to deal with it.  All right?

17              THE DEFENDANT:  Sounds good.

18              THE COURT:  Mr. Denton, what I would propose is can

19    you submit something to me no later than June 1st, which is two

20    weeks from today.  And that way, if there are issues we need to

21    address, we can address them that Friday in the final pretrial

22    conference.  Does that work?

23              MR. DENTON:  Yes, your Honor.

24              THE COURT:  Great.

25              Next item is the witness security measures issue.  In

M5i3schc

1    its CIPA Section 6(a) motion the government had asked me to

2    adopt the witness security measures that Judge Crotty had

3    adopted in connection with the first trial, which included a

4    partial courtroom closure for certain witnesses from the CIA.

5    That's ECF number 293, and also ECF numbers 260 and 263.

6           On May 9, pursuant to my order, the government filed a

7    classified supplemental submission identifying the witnesses to

8    whom such measures would apply, and specifying those for whom

9    the courtroom would be partially closed and those who would

10   testify under pseudonyms, if those procedures were adopted.

11          On the same date the government filed classified

12   supplemental declarations from officials regarding the

13   continued necessity for those measures.

14          By order at ECF number 786, I called for any comments

15   or objections from members of the press or public by Friday,

16   May 13.  No such submission was made.

17          Is there anyone present in the courtroom today who

18   wishes to be heard on this issue?  That is to say, not a party,

19   but any member of the press or public?

20          All right.  In that case, I will reserve judgment and

21   issue a ruling on that issue and the other pending Section 6

22   issues as soon as possible, I hope in the next couple days.

23   I've been on trial which has slowed my progress, but hope to

24   have you an opinion shortly.

25          Next item is, well, really I guess the last sort of

M5i3schc

1    topic I wanted to raise is trial-related issues we need to plan

2    for and discuss in advance.  And in particular, having never

3    tried a case with classified evidence at all, let alone of the

4    nature or magnitude here, I just don't have experience with

5    logistics of what that entails.  You all have much more

6    experience on that front than I do, and just wanted to sort of

7    rely on you to issue spot and discuss with me anything that we

8    need to resolve in advance.

9         So, I know, I think the government wanted to raise the

10   handling of 3500 materials, for example.  There was a question

11   that had been put to my chambers with respect to delivering

12   those to me.  I don't know if you want to discuss that now, and

13   then more broadly, if there are issues of that sort that you

14   think we ought to be thinking about discussing either today or

15   on June 3 or how you think we should proceed.

16        MR. DENTON:  Your Honor, the only question with

17   respect to 3500 deals with the volume of material.  The

18   government has produced 3500, including classified 3500, for a

19   large number of individuals, including people who are not going

20   to be called to testify I think probably by either side.  But

21   in the interests of fulsome disclosure, a lot was produced

22   before.  We're producing it again.

23        We were allowed during the last trial to have the

24   classified 3500 binders in the courtroom and sort of remove

25   them back each day.

M5i3schc

1          It struck us that it might make sense for us to

2     prepare binders that were either a set or individually limited

3     to the witnesses who are actually going to testify, so that we

4     were not all carting back literally carts full of classified

5     3500 since it can't be left if had the courtroom or otherwise

6     kind of stored unsecurely.

7          I don't think we have a particular view, and certainly

8     if the defendant wants to sort of bring everything back and

9     forth, we don't have an issue with it.  We are trying to

10    minimize how much we need to make sure we do to sanitize the

11    courtroom each day.

12         THE COURT:  Okay.  So, for starters, I definitely

13    think it would make sense to separate 3500 into testifying

14    witness 3500 and non-witness 3500.  I think that just makes

15    sense no matter what and helps will help organize things for

16    everybody.

17         Ms. Shroff, it looked like you wanted to say

18    something.  I don't know if you have thoughts from the last

19    trial on this front or otherwise.  Or you were just stretching.

20         MS. SHROFF:  No, well, kind of both.  But to be

21    honest, I think we are okay in terms of taking responsibility

22    for bringing in the classified material that Mr. Schulte will

23    need.  Because our SCIF is -- we're lucky -- it is on the ninth

24    floor, so we can go back and forth.  Although we won't have

25    Achal this time, I think we're okay.  To the extent that the

M5i3schc

government has agreed now to give us classified 3500 material

on a disk, we're hoping also to be able to just bring the

classified computer.

        THE COURT:  You actually can't take your mask off

there.  You can if you stand at the podium, I'll allow you, but

go ahead.

        MS. SHROFF:  It's fine.  So I think we are going to be

okay.  I don't think we'll have issues.

        But, the one thing I wanted to flag for the Court is,

if Mr. Schulte's doing the cross-examination, and he wants to

either refresh somebody's recollection using the classified

document or he seeks to show the classified document to the

witness for some reason, and the Court permits it, I just

wanted to make sure that the government and we iron out the

method to do that.  That did come up in the last trial.  I'm

happy to take it up with them.  I wanted to flag that for you.

        THE COURT:  That was actually next item on my agenda.

Before we get to that and just closing the loop on this last

issue, sounds like there may be no issue here.  I certainly,

again, think you should separate testifying and non-testifying.

I would encourage you, if it is not too late, to try and

organize the testifying witness 3500 in the order that you

anticipate calling witnesses.  Because seems to me there is no

need to bring all of the 3500 here each day.  My intention

would presumably be to just bring the 3500 materials that

M5i3schc

1    relate to the witnesses that are likely to testify on a given

2    day.  So presumably it would only be a binder or two.  Maybe

3    that is underestimating things and it is more complicated.  My

4    guess is we'll have to address it.

5           Unfortunately our SCIF is not in this building, but

6    we'll discuss with the CISO, there might be measures along

7    those lines we can use to make our lives easier during trial.

8           MR. DENTON:  I think for essentially all of the

9    witnesses, there is both unclassified and classified 3500.  So,

10   again, however the Court wants us to organize hard copies or

11   anything like that, whatever we can do, we're happy to do it.

12   Obviously if we put the classified and the unclassified in one

13   binder, the whole thing has to get treated as if classified.

14   We're happy to do whatever is logistically simplest here.

15          THE COURT:  I would think, Mr. Schulte, Ms. Shroff are

16   open to your suggestions that separating classified and

17   unclassified makes sense so that the unclassified can be kept

18   in here or in the robing room or wherever, that we don't need

19   to concern ourselves with that, not to mention increasing the

20   volume of materials that would have to be stored in a SCIF.

21   Then having only classified 3500 in binders and again

22   separating testifying from non-testifying.

23          Mr. Schulte, does that make sense?

24          THE DEFENDANT:  Yes, that makes sense to us.

25          THE COURT:  Great.

M5i3schc

1          In terms of the issue that Ms. Shroff had raised, it

2     was again the next issue on my agenda, which is having never

3     done this myself, I didn't know what the answer to that

4     question is.  I would assume that to some extent the CIPA

5     Section 5 and 6 process is intended to try to address those

6     issues as much as possible.  But, trials not being scripted

7     affairs, there have to be situations that arise where witness

8     testifies to something, and the defendant wishes to either

9     refresh recollection or impeach, and the material at issue is

10    classified.

11         I would think to the extent that could have been

12    anticipated before trial, it presumably may be too late to do

13    it, given the Section 5 and Section 6 process, but if there is

14    good cause, that is to say, if Mr. Schulte couldn't have raised

15    it earlier because it something that wasn't reasonably

16    anticipatable, how does that situation get handled?

17         MR. DENTON:  So I think there's the formal answer and

18    the practical answer.

19         The formal answer is that I think it is Section 8(c)

20    of CIPA provides essentially for objections to questions that

21    would elicit classified information not previously approved to

22    be disclosed, and for the Court to kind of make a ruling on the

23    spot.  It is designed to, at least to some degree, anticipate

24    the uncertainty that trials will entail.  So I think a certain

25    amount of flexibility is necessary here.

M5i3schc

1          The practical answer, and I think this was very much

2     true during the last trial, the global rulings with respect to

3     topic areas that Judge Crotty made and that the Court adopted

4     cover most of the ground here.  And I think we did not have a

5     lot of situations in which there was disagreement about whether

6     sort of particular areas of cross-examination were fair game or

7     not under that.  Even to the extent that a particular piece of

8     3500 had not specifically been noticed, the 3500 is not itself

9     coming into evidence.  If the question is on a topic area

10    that's sort of covered by the Court's global rulings, we were

11    generally able to resolve that and I'm optimistic we would be

12    able to again here.

13          THE COURT:  Mr. Schulte, or Ms. Shroff, again,

14    recognizing you have more experience here than I do, any

15    concerns, thoughts?

16          THE DEFENDANT:  No, I think, you know, what he

17    represented, we were able to resolve most of these issues

18    pretty straightforward during the last trial, so I don't

19    anticipate any issues at this trial.

20          THE COURT:  Okay.  Great.

21          Anything else that you think should be on my radar

22    with respect to -- obviously, I don't need your advice with

23    respect to trial practice generally.  But, in a case with the

24    kind of evidence here if there is other issues that we have not

25    already address or you haven't put on my radar, I am relying on

M5i3schc

1  you to do it since you have more experience here, not only

2  generally, but with this case in particular.

3          So, I don't know if there are issues you want to raise

4  now, or issues you want to put on my radar for the final

5  pretrial conference on June 3.

6          There is also a difference between the last trial and

7  this one, namely that Mr. Schulte is representing himself, and

8  therefore will obviously need to be making his way around the

9  courtroom and will be examining witnesses himself and so on and

10  so forth.  Mr. Denton, I think you had raised this at the last

11  pretrial conference as an issue that warranted discussion, so I

12  don't know if you want to flesh that out or if you have any

13  particular things you want to flag.

14          MR. DENTON:  So, I think the only thing, your Honor,

15  deals actually with how we would handle any issues pertaining

16  to classified information, which I think otherwise would be

17  handled at sidebar or in the robing room.  Again, I think we

18  obviously defer to the marshals on what's required as far as

19  the kind of the discrete security arrangements, but I would

20  imagine that moving the defendant to a sidebar will be a little

21  more of a challenge than coming up with a way for him to

22  question witnesses.  Depending on what we do in front of the

23  jury versus excusing the jury.

24          I think the only thing I would say is that we would

25  need some forum in which we could address issues pertaining to

M5i3schc

1    classified information that the defendant could participate in,

2    which is going to require him leaving his seat probably.

3         THE COURT:  So, meaning the primary issue is concern

4    with respect to the marshals being with him and not being

5    conspicuous?

6         MR. DENTON:  Exactly, your Honor.  I think to the

7    extent he has to be escorted up to the sidebar or escorted to

8    the robing room, we may need to apply a little theatricality to

9    make sure that does not convey the wrong impression to the

10   jury.

11        THE COURT:  I have to say, in the abstract I'm not

12   particularly concerned about it.  The marshals during trial are

13   dressed in business attire, and I think to most jurors, they're

14   no -- they can't distinguish between marshals and lawyers and

15   just assume everybody is lawyers.  And if everybody comes up

16   together, including stand-by counsel, my guess is the jury will

17   have no idea who is who and that can be done in a fairly

18   inconspicuous manner.

19        I've tried a number of cases over the last eight

20   months where jury selection was done in the jury assembly room

21   downstairs where the jury was all present, and the defendants

22   came in, even defendants in custody came in, in the company of

23   marshals, and it was quite clear that it was not apparent that

24   they were in the custody or escorted by the marshals.

25        I'll discuss it with the marshal, but my instinct is

M5i3schc

this is probably a legitimate concern and something we should

make sure is on everybody's radar, but probably not something

that would be a major problem.

          The other thing is that the jury is likely to be using

a jury room on a different floor for their deliberations.  So

we do have the jury room here available.  I'm thinking not for

purposes of our decamping there, that would be a little

awkward, but we could excuse the jury there for breaks that

warrant excusing them from the courtroom but not necessarily

escorting them to their permanent residence.  But I'll think

through these things.

          Mr. Schulte or Ms. Shroff, do you have any thoughts or

concerns on that front?

          MS. SHROFF:  Your Honor, I had been under the

impression that the marshals would not feel a need to accompany

Mr. Schulte to the sidebar.  Of course you can check with the

marshals, but that's my understanding from informally having

spoken to them.  But I don't want to speak for them here.  That

is, that was my understanding.  And I don't know if the sidebar

issue will be one where -- the marshals are all cleared, right?

So that's the other thing that just popped into my head.  I

don't know what level of clearance each person has.  If that's

going to be an issue, then you may want to have, respectfully,

I'm suggesting that conversation as well.

          And I doublechecked, they are not going to cuff Mr.

M5i3schc

1   Schulte on the feet, so that's not an issue.  I think we should

2   be okay.

3           THE COURT:  Okay.  I will call the marshal himself and

4   just talk through some of these issues and find out what their

5   concerns, if any, are and how they propose to handle these

6   things.  I assume that -- well, I'll also check on the

7   classification issue.  Obviously there are cleared marshals,

8   those, for instance, who accompany him in classified hearings.

9   So, I think it probably does make sense to have cleared

10  marshals for purposes of trial since issues may arise.

11          Does that make sense, Mr. Denton?

12          MR. DENTON:  Yes, your Honor.  And I think our view on

13  this is really only to flag the issue.  I don't think that we

14  have a particular dog in this fight as far as how the Court and

15  the marshals want to arrange this.  Whatever works for you all

16  is fine for us.

17          THE COURT:  I'll also talk to the CISO.  The issue

18  that I'm thinking of at the moment is if there is a need to

19  discuss classified evidence, and the courtroom is -- this is

20  the courtroom where we conducted the sealed classified hearing

21  a couple weeks ago.  But, things were done to make the

22  courtroom suitable for that hearing.  I presume that those

23  things couldn't be done immediately, so I wonder where we could

24  have a more detailed conversation about that.  So I think we'll

25  need to think that through.

M5i3schc

1      Did that situation arise in the last trial and how was

2  that handled?

3      MR. DENTON:  I may be misremembering, I can only

4  remember one instance in which we had to have a more serious

5  discussion about the substance of classified information.  But

6  the bulk of the trial, when things came up it was relatively

7  minor and it was the kind of thing that could be done at a

8  general level.

9      I can only think of one instance where we had to have

10  a meaningful discussion about it.  I'm hopeful that's not going

11  to be a significant issue.  If so, I would think we could

12  probably come up with an alternative in either the jury room or

13  the robing room that would be a little easier to sort of

14  sanitize than the whole courtroom.

15      THE COURT:  So why don't you guys talk to each other

16  about that and we'll check with the CISO as well.

17      MS. SHROFF:  We used the jury room, your Honor.  The

18  issue Mr. Denton is recalling that was the substantive issue.

19  We asked for the jury room to be SCIF proved or whatever the

20  phrase would be, and we had it in the jury room.

21      THE COURT:  So, that may be what we would do here.  In

22  any event, I think we should plan ahead for that possibility

23  and hope it doesn't arise.  And clearly the CIPA process is

24  intended to try to vet these things as much as possible in

25  advance.  But I want to be prepared in the event that something

M5i3schc

1    arises during trial and we do need to discuss it in more

2    detail.

3              Anything else trial related or does that cover it?

4              MS. SHROFF:  I had one issue, your Honor.

5              THE COURT:  Okay.

6              MS. SHROFF:  Your Honor, technically, Mr. Schulte's

7    not allowed to talk to anyone who hasn't signed the SAMs.

8    Right.  So, he has witnesses that he now will have to speak to.

9    He has to speak to lawyers who call, who purport to or actually

10   do represent these witnesses.  I don't know if a jury address

11   is something that is barred by the SAMs or not.  I just raise

12   that and maybe I can just talk to the government, but I just

13   wanted to point out that you may get a request to modify the

14   SAMs on Mr. Schulte.

15             THE COURT:  All right.  I think that's a fair

16   question.  And why don't you discuss that among the things that

17   you'll discuss and submit to me no later than two weeks from

18   now.

19             Does that make sense?

20             MR. DENTON:  Yes, your Honor.  My understanding is

21   that no special modification was required for defendants in

22   previous trials who were under SAMs, including one who very

23   briefly represented himself.  That there wasn't sort of a

24   special modification.  To the extent we needed one, that's

25   easy.  I think with respect to the defendant having calls or

M5i3schc

1    contact with anyone else, the right answer is actually not to

2    modify the SAMs but just to make sure those people get and sign

3    the SAMs affirmation, it's a paragraph, it is not a substantial

4    thing, just to acknowledge the circumstances.  They should be

5    aware that all that contact is being monitored.  And that way,

6    if there is anything we need to do to process that, which I

7    wouldn't think we would in the main, we can certainly make sure

8    to commit on our side to doing that as promptly as possible.

9           THE COURT:  Clearly an issue you need to discuss, and

10   maybe there is no issue for me to chime in on.

11          I think a good issue, good example of just the

12   practical issue that warrants thinking through before and

13   making sure everybody is on the same page and again trying to

14   avoid any surprises.  Anything else of that nature, good

15   example of something I'd rather think about ahead of trial than

16   during trial.

17          Continue to think about it.  If you come up with any,

18   I would encourage you to talk to one another and perhaps

19   address it in that June 1st letter.  And regardless, certainly

20   bring it to my attention so we can address it on June 3, if not

21   before.

22          Great.  Other than going through the schedule of

23   things between now and trial, that pretty much exhausts what I

24   wanted to discuss, with the exception of one remaining item

25   that I wanted to raise that I will get to in a moment.  Before

M5i3schc

1    I get to that, anything else from the government?

2              MR. DENTON:  Not today, your Honor.

3              THE COURT:  Mr. Schulte, anything else from you?

4              THE DEFENDANT:  No, nothing else.

5              THE COURT:  So before I go through the schedule, the

6    last issue that I wanted to raise is the question of whether

7    and when and more to the point whether now is the time to set a

8    trial date on the severed charges.  With trial imminent on the

9    espionage and MCC charges, I think it does pay to begin

10   thinking about when we ought to schedule trial on the severed

11   charges so that's on the radar, everyone who needs to know

12   knows, and we start to plan accordingly.

13             Do you guys have any thoughts?  We can also take that

14   up on June 3 if you would prefer to do that.  But I guess

15   bottom line is my inclination would be to set a trial date, and

16   start to turn to that as soon as this trial is over.

17             MR. DENTON:  Your Honor, I think from the government's

18   perspective we would ask to defer that to June 3, just to give

19   us an opportunity to check and make sure that we know what the

20   blackout dates are for any of our essential witnesses.

21             The only thing I would note is that when Judge Crotty

22   held the *Faretta* hearing with respect to the defendant's pro se

23   status, there was an express reservation that that was good for

24   the espionage trial only.  And that to the extent that we then

25   proceeded to a child pornography trial, there would be a second

M5i3schc

1    *Faretta* proceeding if the defendant wanted to continue that

2    way.  We can probably set a trial date notwithstanding that.

3    But that just is one other wrinkle in the post-trial universe.

4            THE COURT:  I appreciate your reminding me of that.

5    I'd certainly forgotten.

6            So I guess my inclination would be to take this up on

7    June 3.  At which point I would hope, number one, the

8    government could tell me how long it would estimate the trial

9    in the other charges would take.  Maybe you know that now, but

10   you can tell me on June 3.  And number two, to set a trial date

11   at that time and to discuss the *Faretta*-type issues if there is

12   anything to discuss there.

13           MS. SHROFF:  Your Honor, I am going to speak for

14   Mr. Schulte just for a minute, your Honor, on the severed

15   counts.

16           I think Mr. Schulte has, there is no, there would be a

17   need for, but there has been no recent, at least from stand-by

18   counsel on this case, there has been no reach out to an expert

19   that Mr. Schulte would have to work with whether he goes pro se

20   or not on those charges.  So I think it might take us a little

21   more than June to pick a trial date.  Would that be possible?

22           THE COURT:  Well, you can do those things between June

23   and a trial date.  I am not talking about giving you a June

24   trial date, obviously.

25           MS. SHROFF:  Oh no.  That would be quite brutal.  So

M5i3schc

1    please don't do that.

2              THE COURT:  I think you have a June trial date already

3    on the other charges, so I just would like to discuss when we

4    are going to have a trial.  If it needs to be sufficiently far

5    out for you to consult with and hire an expert, so be it.  But

6    I think it pays to get it on the radar so everybody can start

7    planning accordingly.

8              I'm giving you fair notice.  That's my intention on

9    June 3.  And whatever planning you need to do between now and

10   June 3, you should do.

11             I guess one question just to clarify, in response to

12   Mr. Denton's comment.  Is it your understanding that for

13   purposes of those counts, Judge Crotty did not actually grant a

14   request to represent Mr. Schulte for him to represent himself?

15   Which is to say is he still represented by counsel with respect

16   to those charges?

17             MS. SHROFF:  My recollection was that he was, that he

18   was only asked about the espionage counts.  I don't think he

19   was ever asked about the severed counts.  And I think that

20   Mr. Schulte would not -- I don't want to speak for him, I'm not

21   really sure by June 3 he will have decided if he is or is not

22   going pro se on those counts.  I confess I have not discussed

23   it with him in quite a while.  And nor have we, just very

24   candidly, focused on the severed counts for quite some time

25   now.

M5i3schc

1          THE COURT:  I think I understand that.  And that's

2     part of why I want to set a trial date.  So everybody, when the

3     time comes very soon, starts to focus on that.

4          So, why don't you plan to be able to address these

5     things on June 3 starting with whether Mr. Schulte is

6     represented by counsel with respect to those counts at present

7     or is not.  In either case, we should confirm what his

8     intentions are on that score just to make sure going forward

9     it's cleared up.  I think in the first instance knowing what

10    the current status is would be helpful, and regardless, my hope

11    and intention would be to set a trial date at that time, even

12    if it is sufficiently far out to ensure that everybody has time

13    to prepare.

14         But, to be candid, I want to get Mr. Schulte out of

15    the MDC and done with his pretrial proceedings as soon as

16    possible.  He's raised speedy trial issues, he's raised any

17    number of issues with respect to MDC.  Whether he is a free man

18    or he is designated somewhere, in either case, I think it is in

19    the interests of justice and his interests and the interests of

20    the court to bring these conclusions as swiftly to an end as

21    possible.  I think that calls for setting a trial date on the

22    outstanding charges.  We'll take that up on June 3.

23         Just to go through the upcoming deadlines beyond those

24    that I've set today, and I will issue an order that

25    memorializes what has been done today, and as with prior

M5i3schc

1    orders, sets out the remaining deadlines.  Just to make sure we

2    are on the same page, I think I have the government's CIPA

3    Section 6(c) filing regarding NDI in response to my recent

4    order on that due tomorrow.  Mr. Schulte's response to the

5    government's motion, 6(a) motion as to his supplemental most

6    recent CIPA Section 5 notice, due May 24.  Mr. Schulte's

7    response to the government's motions in limine and request to

8    charge due by May 20.  His proposed voir dire due by May 23.

9    And his CIPA Section 6(c) response with respect to the NDI

10   evidence due May 26.  In addition, again, to those things that

11   I set during today's conference.

12            Everybody on that same page?

13            MR. DENTON:  Yes, your Honor.

14            THE COURT:  Mr. Denton, do you have a copy of the most

15   recent Section 5 notice pertains one audio recording and one a

16   memorandum.  Do you have copies of that memorandum?

17            MR. DENTON:  Yes, your Honor.  It was attached to the

18   back of the defendant's Section 5 notice, at least the version

19   that we received.

20            THE COURT:  All right.  I will check on that.  If we

21   don't have that, because I don't remember seeing it, but I've

22   definitely seen a lot of things, we'll reach out to you.

23            MR. DENTON:  We can certainly get the Court a copy.

24            THE COURT:  We'll assume that we have it.  If we

25   don't, we'll reach out to you and I definitely would like to

M5i3schc

1    get a copy so I know what the motions pertain to.

2         All right.  Final pretrial conference is June 3 at

3    10 a.m.  I think my inclination is to think that there is no

4    need to schedule a conference between now and that date.  If

5    something arises that warrants reconvening on shorter notice,

6    we can certainly do it.  But I would think everybody has plenty

7    of work to do between now and June 3 as it is, and better to

8    let all of us do that work and reconvene on June 3.

9         I think it makes sense that if there is a need to have

10   any classified hearing provision to be able to do that on that

11   same day.  So, to do what we can do in an unclassified setting,

12   and if there is a need to reconvene in a classified setting to

13   address anything that would be classified, to be able to do

14   that the same day.

15        Anything anyone wishes to say on that?

16        MR. DENTON:  That makes sense to the government, your

17   Honor.

18        THE COURT:  Mr. Schulte?

19        THE DEFENDANT:  Nothing further.

20        THE COURT:  Obviously my hope is that after June 3,

21   there will be no need to reconvene before trial begins on

22   June 13.  But, if there is, we'll reconvene as needed.

23        Just a reminder, per the order that I recently

24   entered, the first day of trial has been moved to Monday,

25   June 13, not the 14th.  And I also gave you a heads up that I

M5i3schc

```
1    will not be sitting on June 22 or 23, nor will I be sitting on
2    June 20 because it is a federal holiday as of last year.  So,
3    the second week of trial will be a little bit short,
4    unfortunately, but such is life.
5              Mr. Denton, any application under the speedy trial
6    clock?
7              MR. DENTON:  Your Honor, I think at the last
8    conference we excluded time until the June 14 trial date.  But
9    to the extent we didn't, we would ask the Court to exclude time
10   between now and June 13.  There are obviously some motions that
11   are pending so I think the speedy trial time is already tolled.
12   It is also obviously we believe in the interest of justice for
13   the preparation of the parties for trial in this matter.
14             THE COURT:  To the extent that time hasn't already
15   been excluded, any objection to excluding time through the date
16   of trial, Mr. Schulte?
17             THE DEFENDANT:  No objection.
18             THE COURT:  I will exclude time between today and
19   June 13.  I find that the ends of justice served by excluding
20   that time outweigh the interests of the defendant and the
21   public in a speedy trial to ensure that I can decide the
22   pending motions, that the parties can finish briefing the not
23   yet fully submitted motions, and both sides have adequate time
24   to prepare for trial and discuss the various issues that we've
25   discussed today.  I think time is indeed automatically excluded
```

M5i3schc

1    by virtue of the pending motions, but in any event, I make

2    those findings.

3            All right.  Thank you all very much.  If I don't see

4    you beforehand, I will see you on June 3.  I certainly hope and

5    pray that things go smoothly between now and then, and the

6    kinds of distractions we've had in the past don't rear their

7    ugly heads.  But, in any event, I'll see you on June 3.

8            Thank you very much.

9            (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25