M6A8SCHC

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        17 Cr. 548 (JMF)

5   JOSHUA ADAM SCHULTE,

6              Defendant.                Conference

7   ------------------------------x
                                         New York, N.Y.
8                                        November 7, 2022
                                         11:15 a.m.
9
    Before:
10
                     HON. JESSE M. FURMAN,
11
                                         District Judge
12
                         APPEARANCES
13
    DAMIAN WILLIAMS
14       United States Attorney for the
         Southern District of New York
15  DAVID DENTON, JR.
    MICHAEL D. LOCKARD
16       Assistant United States Attorneys

17  JOSHUA ADAM SCHULTE, Defendant Pro Se

18  SABRINA P. SHROFF
    CESAR DE CASTRO
19       Standby Attorneys for Defendant

20

21

22

23

24

25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

M6A8SCHC

1              (In open court; case called)

2              THE DEPUTY CLERK:  Counsel, please state your name for

3      the record.

4              MR. DENTON:  Good morning, your Honor.  David Denton

5      and Michael Lockard for the government.

6              THE COURT:  Good morning.

7              MS. SHROFF:  Good morning, your Honor.  Sabrina

8      Shroff, on behalf of Mr. Schulte, on the matter that he is not

9      *pro se* on.

10             MR. DE CASTRO:  Good morning, your Honor.  Cesar de

11     Castro on that same matter.

12             THE COURT:  Good morning to all of you.  And Mr.

13     Schulte is present, I would note as well.

14             So a couple of issues on the agenda.  I guess the

15     primary one being the letters that I received from Mr. Schulte

16     expressing concerns with respect to counsel and a desire for a

17     speedier trial.

18             Ms. Shroff or Mr. De Castro, I don't know if you wish

19     to be heard on those issues, if anything has changed since I

20     received the letters from Mr. Schulte, what your thoughts are.

21             MS. SHROFF:  May I, your Honor?

22             THE COURT:  Yes.

23             MS. SHROFF:  Thank you.

24             Subsequent to Mr. Schulte's writing to the Court, Mr.

25     De Castro and I met with him, including today, just so that Mr.

M6A8SCHC

1    Schulte's position is properly preserved.

2           The issues on the Rule 29 and 33 are impacting how he

3    is perceiving the severed counts that are now before this Court

4    and scheduled for a September trial.

5           THE COURT:  Can you explain that?  If that does not

6    involve divulging confidential communications, I don't

7    understand what the connection is.

8           MS. SHROFF:  Your Honor, in deciding whether or not

9    the September trial date is a tenable trial date for him and

10   whether it should be moved up, part of the problem for him will

11   be how and when he will be able to get his Rule 29 and 33 into

12   place, when the Court would rule on it, after the Court rules

13   on it, whether he would still be able to proceed to sentence on

14   the convicted counts or whether he would still have to wait for

15   sentencing on the convicted counts while he awaits trial on the

16   severed counts.

17          So for Mr. Schulte, and if I just may, I know he is

18   *pro se* on this issue but perhaps he would let me speak so that

19   I can lay this out for the Court, despite the Court's orders

20   and the many efforts, almost all of which have been

21   unsuccessful to date, Mr. Schulte has not received a working

22   typewriter, he has not received his 3500 material from the

23   trial, he has not received the trial transcript, and he has

24   absolutely no discovery available to him at the MDC.

25          Mr. Schulte was told on Friday that he had access now

M6A8SCHC

1    to a typewriter but that the typewriter was broken and was not

2    in a usable -- it was not usable.  I did not know of this on

3    Friday because, although I went to MDC on Friday, another

4    defendant on the 84 Unit was having a meeting and they did not

5    have availability because there is only one room for them to

6    meet with Mr. Schulte.

7           I will tell the Court that I personally, myself, with

8    my own two hands, twice have dropped off into the legal mailbox

9    at the MDC paperwork for Mr. Schulte, which he has to date not

10   received.  The government says that they sent him his

11   discovery, the UPS lost it, and he still does not have it.

12          The bottom line is, for whatever reason, whether it's

13   our fault, MDC's fault, Mr. Schulte to date has none of those

14   items.  So it definitively adds to the stress and frustration

15   of a person being in solitary confinement.  I do not know fully

16   how that impacts and what he wishes to do in terms of the trial

17   date that has already been set, but legal research tells me

18   that I have no way to undo a waiver previously entered.  But I

19   am sure that the government would be open to an earlier trial

20   date if Mr. Schulte and his legal team were ready for an

21   earlier trial date.

22          If the Court wanted to inquire into that, may I please

23   ask that the inquiry be *ex parte* so we can lay out why,

24   regardless of the schedule, that might be untenable?

25          THE COURT:  That might be untenable?

M6A8SCHC

1          MS. SHROFF:  Yes, your Honor.

2          THE COURT:  And what is the "that" in that sentence,

3     advancing the trial?

4          MS. SHROFF:  Right.

5          THE COURT:  OK.  Before we get there, can you just

6     explain -- I certainly understand why emotionally there might

7     be a connection between the disposition of the Rule 29 and Rule

8     33 motion and the new trial, but legally what is the

9     relationship between those two?  In other words, what does the

10    schedule for those motions, let alone when I decide them, have

11    anything to do with when we go to trial on the severed counts?

12         MS. SHROFF:  Depending on how the ruling on the Rule

13    29 and Rule 33, it might impact how Mr. Schulte decides to

14    proceed on the severed counts.  Perhaps a ruling might make him

15    want to explore a plea, perhaps not.  He may want to change his

16    mind and explore a different tactic with the government,

17    depending on how the Rule 29 and Rule 33 is decided.  I don't

18    have a statute or a federal law upon which I would make that

19    association, but certainly it might inform how he proceeds on

20    the severed counts.

21         THE COURT:  OK.  So the upshot is?  I am sort of

22    confused where this all leads us.

23         MS. SHROFF:  So the upshot is this, your Honor.  Mr.

24    Schulte would like to renew, for the Court's consideration, why

25    he should have access, first to what the Court has already said

M6A8SCHC

1    he should have access to.  So his 3500 material, the trial

2    transcripts, the trial exhibits, and most importantly, the

3    final working drafts of his work product that are on the laptop

4    that was seized.  So Mr. Schulte needs access to that.  He has

5    notes in his laptop about the 29 and 33.  He has marked-up

6    transcripts in there.  And he has a draft of the 29 and 33.

7         So at bare minimum, those are the things he needs

8    immediate access to.

9         THE COURT:  And I was under the impression until this

10   morning that those were all sent to him, or many of those had

11   been sent to him.  So I am distressed to hear that they had not

12   arrived even if they were sent.  So we will discuss that.

13        You said at a minimum.  Was there something beyond

14   that?

15        MS. SHROFF:  So then the next step, your Honor, and I

16   know the Court has ruled and I raise this with some

17   trepidation, Mr. Schulte would renew his request to have a

18   laptop on which to work on the Rule 29 and 33, and with the

19   Court's permission, I think he would like to address that

20   directly with the Court.

21        THE COURT:  I think that is very unlikely to be

22   granted, but Mr. Schulte, do you wish to be heard on that?

23        THE DEFENDANT:  Yes.  And just to be clear, it doesn't

24   necessarily have to be a laptop, although that would be the

25   preferred method.  But I think some of the issues I just want

M6A8SCHC

1    to note for the Court that are untenable.  One of them is the

2    exhibits from the government, from the trial, something like 30

3    percent of those exhibits cannot be reviewed on the discovery

4    computer at the MDC, for the reasons that the MDC has already

5    stated, which is that they don't allow those applications to be

6    installed.

7              The other issue is the work product.  The government

8    has said that they will not produce or not allow me to obtain

9    my work product from the laptop, and that work product is also

10   in file formats that is not workable work on that MDC computer.

11             And one of the issues to raise, as she was talking

12   about with respect to the pending trial, is that the discovery

13   for that case, 99 percent of that discovery cannot be reviewed

14   on the MDC computer, which was the reason for the laptop to

15   begin with.

16             I also want to note for the Court, in case it hasn't

17   already been, that they haven't turned over the affidavits for

18   the initial search warrant that is pending now, Rule 41 or soon

19   to be pending Rule 41(g) motion as to that.  But the other

20   issue is that the government has stated that they will not tell

21   us or inform the defense as to what files or what the file name

22   is of the files that they claim to contain CP, and we believe

23   is a violation of the wall team since the wall team informed

24   the government of that information.

25             So those are just some of the issues outstanding with

M6A8SCHC

1    the Rule 29 and 33.  So like I said, if the government doesn't

2    want to provide a laptop, I think that there is also, you know,

3    a law of the case kind of issue with this, because this was

4    brought up before Crotty and the government said he shouldn't

5    be allowed to use the laptop, he should be required to use a

6    typewriter, and the court came back and said, if the government

7    can use the computer, then I can use it to draft motions as

8    well.

9              I think the point is, especially if the government is

10   going to make claims or allegations as to why they won't

11   provide a laptop, then I should at least have a right to review

12   what files they claim to be CP, or in the case that there is no

13   laptop that would be provided to me, some other mechanism where

14   I can use some kind of computer.  I think they have said in

15   e-mails something about setting up something at the court, but

16   they want to monitor me, or some way for me to be able actually

17   access these files and actually be able to at least file this

18   motion.

19             THE COURT:  A few things.

20             First of all, law of the case is irrelevant.  It's a

21   discretionary doctrine, to the extent that it even applies

22   here, and the circumstances have changed.  Unless the entirety

23   of recent events turns out to be a massive misunderstanding and

24   there is no issue and there was no child pornography on the

25   computer, and other things that seem to have been done with the

M6A8SCHC

1    computer turn out to be innocent conduct rather than what they

2    appeared to be, I assure you, you are not getting any laptop,

3    full stop.  That was above and beyond what you are entitled to.

4    It was appropriate before the last trial.  Judge Crotty came to

5    that conclusion.  I agreed with it.  I certainly wasn't going

6    to undo his ruling.  But circumstances have changed.  You now

7    have been convicted at that trial, and more significantly,

8    there is certainly probable cause to believe that you have

9    mishandled and misused the computer and done so in fairly

10   disturbing and problematic ways.

11          So, again, unless the circumstances change materially

12   back in your favor, there is no laptop in your future.  So you

13   should understand that.  The government has not made an

14   application to me to strip you -- not made a motion to argue

15   that you have forfeited your right to proceed *pro se*.

16   Candidly, given the record here, there might be an argument to

17   be made there, but they haven't.  All they have done right now

18   is say they are not willing to give you a laptop, and I am not

19   willing to override them on that.

20          So you have a typewriter available to you.  I will

21   certainly take steps to make sure that you have a working

22   typewriter if that is an issue.  It's the first time I have

23   heard that issue.  I will take steps to address that.  And to

24   the extent that you need other materials, within reason, and

25   certainly consistent with the security issues that are quite

M6A8SCHC

1   clear here, I will try to ensure that you have whatever you

2   need to prepare those motions.  If that isn't enough in your

3   view, you have the option to use counsel.  You don't have to

4   proceed *pro se*.  Proceeding *pro se*, as you were advised by

5   Judge Crotty, as I advised you, as I ruled in connection with

6   several pretrial motions, does not entitle you to resources

7   above and beyond what you would be entitled to as a prisoner

8   without proceeding *pro se*.  So you should understand that and

9   you can make an informed choice.  If you decide that the

10  resources available to you are not sufficient for you to make

11  the motions that you wish to make, you can always reconsider,

12  and I would be happy to let you have lawyers for purposes of

13  making those motions.

14          Having said that, Mr. Denton, Mr. Lockard, I don't

15  know if you can shed any light on the whereabouts of the things

16  that were allegedly sent to Mr. Schulte.  I don't know why they

17  haven't arrived there.  I sort of assumed they had given that I

18  was told weeks ago that they had been sent.  I am happy to take

19  matters into my own hands and get in touch with the MDC once

20  again, but can you tell me what is going on here?

21          MR. DENTON:  Yes, your Honor.  It seems like there's

22  two separate issues.

23          With respect to the material that we sent to Mr.

24  Schulte in the early part of October, it seems to be lost in

25  postal service limbo.  This is not the MDC's fault.  It just

M6A8SCHC

1   never made it there.  Once we figured that out, we sent another

2   set last week, which looks like it is not there yet but should

3   be there, hopefully in the next day or so, and we will

4   certainly stay on top of that.

5           THE COURT:  What is in that package?  Is that 3500

6   material?

7           MR. DENTON:  Exhibits and trial transcripts.

8           THE COURT:  OK.  What about, Mr. Schulte mentioned

9   that there was some exhibits that require a computer to be

10  viewed or reviewed.

11          MR. DENTON:  I don't think that's right, your Honor.

12  I think all of the exhibits that were used at trial are

13  essentially in PDF form, because that's the format we have to

14  use to display them.  The original underlying materials may

15  have been sort of digital forensic files of various kinds, but

16  as used at trial, as offered and admitted, they were, if not

17  exclusively, overwhelmingly in that form and everything else

18  was such that it could be done on a laptop in the courtroom.

19  It didn't require anything particularly sophisticated.

20          THE COURT:  Keep going.

21          MR. DENTON:  With respect to the materials that Ms.

22  Shroff referenced that were provided directly to the MDC, this

23  is the first we are hearing that those were not received, but

24  we are certainly happy to follow up and see if there is any

25  light that can be shed on that.

M6A8SCHC

1           Likewise, with respect to the typewriter, we had been

2      advised that that was made available to Mr. Schulte quite some

3      time ago, I think when we first made the representation to the

4      Court, and that he simply had to request to use it and had not

5      done so.  Again, having one that is broken, we are happy to

6      also follow up on our end as well and make sure that there is a

7      working one available to him.

8           THE COURT:  OK.  Do you want to share what can be

9      shared in this setting with respect to where things stand on

10     the laptop front and the search?

11          MR. DENTON:  Sure, your Honor.

12          With respect to the laptop, again, we are in a little

13     bit of an odd posture because of the wall team.  Our

14     understanding is that the wall team has completed its review of

15     a substantial tranche of the materials and is conferring with

16     an AUSA from our office who has been assigned to provide

17     guidance on that.  I hope that is a harbinger of a disclosure,

18     as required by the warrant, to defense counsel in the near

19     future of what has been identified as non-privileged.

20          Separately, there is an ongoing more technical review,

21     primarily focused on the child sexual abuse materials warrant,

22     to not only identify those files, but also identify related

23     metadata pertaining to the defendant's access of those files.

24     That's something that we have discussed a little more

25     concretely because that warrant allowed information about those

M6A8SCHC

1    files to be shared directly with the prosecution team once it

2    was identified as such.  And I think we are moving quickly on

3    that because we realize that what, if anything, is done with

4    that material may have an impact on ongoing proceedings related

5    to the pending charges so we are moving with all due speed on

6    that issue.

7              THE COURT:  Do you have any estimate of a time frame

8    for either of those things running their course or no?

9              MR. DENTON:  So my understanding, your Honor, is that

10   it's a little bit difficult to tell because part of what they

11   are doing is looking at some of the unallocated space on the

12   laptop, and so figuring out what is there and carving it to

13   make sense of it.  It's not a sort of press play and it runs at

14   a consistent speed; it sort of depends on what's there.  We are

15   meeting with them again this week to follow up on that and just

16   sort of stay on top of the issue as best we can.

17             THE COURT:  Then on a couple of other issues that I

18   think Ms. Shroff and/or Mr. Schulte mentioned.

19             First, to the extent that there is work product on the

20   laptop that the defendant would like in connection with his

21   preparation of motions -- that is, marked-up copies of the

22   transcripts, notes, drafts, anything of that sort -- I take it

23   that's not in the materials that you have sent to the

24   defendant.  Can you confirm that, and if that's correct, can

25   you tell me your views on providing it to him, if there is a

M6A8SCHC

1    means to do that consistent with the security issues as you see

2    them?

3                MR. DENTON:  That is correct, your Honor, that is not

4    part of what we have sent to Mr. Schulte.  Certainly, Mr.

5    Lockard and I and the other members of the prosecution team

6    have no interest in that other than the fact that the child

7    sexual abuse materials being found was what was on the laptop.

8    None of that has been extracted.  The FBI is currently handling

9    the entire laptop consistent with the requirements of Section

10   3509(m), which is what governs sort of procedures for materials

11   containing child sexual abuse materials.  So we have not

12   explored whether there is any possibility of extracting files

13   or somehow treating subsets of that differently.

14               Our understanding, and this was the subject of some

15   litigation on the home computer before the Court previously, is

16   that, as a general matter, the unit is treated as a unit where

17   the child sexual abuse materials were found.  So I think we are

18   working on making an image of the laptop available to defense

19   counsel to review, consistent with those procedures, but we

20   haven't had any discussions about whether there is a viable

21   way, consistent with those restrictions, to extract parts of

22   that data.

23               THE COURT:  I would have thought at this point you

24   could have and should have had those discussions, but we will

25   discuss that in a moment.

M6A8SCHC

1            What about Mr. Schulte's claim that the discovery with

2     respect to the severed counts, the trial for next year, that

3     there is some portion of that that is not reviewable at the

4     MDC?  I assume that includes the alleged child pornography,

5     which obviously, I presume, can't be reviewed at the MDC.  But

6     I don't know if you know what else he is talking about or what

7     the issues are there.

8            MR. DENTON:  I don't, your Honor.  We have

9     communicated to defense counsel that if there are parts of that

10    discovery that they would like us to provide to Mr. Schulte on

11    CDs that can be made read only, which we understand CDs can be

12    used in the discovery machine at the MDC, that we are happy to

13    make those additional copies of what they identify and send

14    them.  I don't know if there is some technical issue with

15    respect to the computer and particular types of files that Mr.

16    Schulte is referencing.  That hasn't been raised with us

17    before.

18            THE COURT:  Thank you.

19            Ms. Shroff, can you elaborate beyond what Mr. Denton

20    referred to as what are the materials that you sent to or

21    submitted to the MDC that have not made their way to Mr.

22    Schulte?

23            MS. SHROFF:  Your Honor, when Mr. Schulte was first

24    arrested in federal court, he was arrested on the child

25    pornography charges.  There was massive discovery on that case.

M6A8SCHC

The discovery was loaded onto external hard drives and provided
to him at the MDC.  We did not load it; it was loaded by the
government.  He has always had it.

Subsequent to a search warrant, there was a search
warrant to search his cell, and when his cell was searched they
took all of the hard drives.  I have asked the government, I
think in an e-mail, that Mr. Schulte receive a copy of the hard
drives that were seized, unless, of course, they claim that
those hard drives also have some kind of prohibited material,
in which case they should tell us where the prohibited material
was found, what the log files are, so that we can move forward.

So the phrase used here a lot is "buckets of
information."  So the one bucket is the stuff on the laptop.
The second bucket is the stuff seized from his cell.  And then,
of course, the last is the contraband that they cannot give us
a copy of.  But the hard drives that were seized from him, from
the MDC cell, if they don't have contraband, they should just
be returned to him.  Or the government is going to have to put
them literally on thousands of CDs so that he can view it at
the MDC.  Because it will literally take thousands of CDs to
put it on the CDs itself.

Just one last thing, and I know he is *pro se* on that
point, but I just want to go back to it because it's an issue
that keeps coming back up.  The government says that they found
child porn on the laptop.  We have asked them to simply give us

M6A8SCHC

1   the names of the log file.  Mr. Schulte claims there isn't such

2   material.  The government claims there is such material.

3           So to the extent, even if, as Mr. Denton has

4   repeatedly pointed out to us that it is not Rule 16 discovery,

5   and we understand that, to the extent Mr. Schulte's access to

6   the laptop was taken away based on that information or those

7   files, couldn't we just get the names of the log files so we

8   can figure out if in fact what Mr. Schulte claims is true?

9   It's part and parcel of the conversation that, if the Court

10  does have conversations with defendants, the colloquy between

11  the Court and Mr. Schulte now.  Unless they are completely

12  wrong, he is not getting the laptop back.  If they are

13  completely wrong and he has a shot at getting the laptop back,

14  could we simply get the log files, please?

15          I have explained to Mr. Schulte how Rule 16 works.  I

16  really have tried.  I promise you I have tried.

17          THE COURT:  It may become Rule 16 material if the

18  government, upon concluding its investigations, determines that

19  it would use it against Mr. Schulte at trial.  So in that

20  regard this issue may become moot.

21          MS. SHROFF:  Right.  But then we will be months into

22  more frustration for Mr. Schulte, who is sitting there thinking

23  there isn't such material on it and they took away my laptop

24  and my lawyer isn't doing anything.

25          THE COURT:  I understand why this entire situation in

M6A8SCHC

1    the last five years is deeply frustrating to Mr. Schulte.  But

2    having been convicted at the first trial, and given the

3    probable cause shown in the warrant, all I could say is right

4    now it certainly appears that Mr. Schulte has brought those

5    frustrations upon himself.

6          Having said that, first I want to ask the question to

7    you that I asked in the first instance, which is, are there

8    materials beyond what Mr. Denton said that were re-sent to Mr.

9    Schulte last week that you have tried to get to Mr. Schulte

10   that have not made their way to him?

11         MS. SHROFF:  Yes, your Honor.  The materials that Mr.

12   Denton and Mr. Lockard sent to us, which included the search

13   warrant and the affidavits underlying the search warrant, I

14   didn't send them to him, I physically put them in the legal

15   mailbox that is at the MDC twice.  One time I mistakenly

16   printed it out on long legal paper, but I said, you know what,

17   he is just going to have to make do.  He said he never got

18   them.  I then printed out a second set.  I took them up to Unit

19   84, showed them to him.  When I went down, I put it back in the

20   legal mailbox.  He still has not received them.

21         Part of the problem, your Honor, is that in Unit 84,

22   unlike MCC when we had legal visits on the SAMs unit, we are

23   not able to pass documents so somebody can read them.  So there

24   is not even that option.  So, yes, he has not received any of

25   the documents produced by the government to me which consists

M6A8SCHC

1     of the search warrant and the underlying affidavits.

2             THE COURT:  Mr. Denton, the log file question or

3     request, even if as a technical legal matter you are not

4     obliged to disclose it, can you explain the government's view

5     on its willingness to disclose that information?

6             MR. DENTON:  Your Honor, I think two things.

7             First of all, obviously the review is ongoing so we

8     are sort of reluctant to produce what essentially would be

9     almost like a bill of particulars related to the child sexual

10    abuse materials.  But I think we are going to do one better.

11    As I said, we are going to make an image of the laptop

12    available to defense counsel to review at the FBI space at 290

13    Broadway so they will be able to see it for themselves.

14            THE COURT:  When do you anticipate doing that?

15            MR. DENTON:  I think defense counsel indicated that

16    they were available on Mondays in the morning.  We were

17    planning to ask if we could do it next Monday.  I don't know if

18    that would work, but that's how soon we expect it to be, as

19    soon as we can make schedules work for everyone involved.

20            THE COURT:  Yes, Ms. Shroff.

21            MS. SHROFF:  We still need the log file.  There may be

22    child porn on the laptop.  We still need to know the log file

23    names.  I am assuming the government will give them to us if

24    they are willing to show us the images or the rest of the

25    material.  But according to our expert, what is needed are the

M6A8SCHC

1    names of the log file.

2              THE DEFENDANT:  I think she is meaning the actual file

3    name of the CP when she says log file; not the actual log file,

4    but the actual CP file name.

5              THE COURT:  Understood.

6              Number one, I would think that if you're shown the

7    actual image, you would be privy to that information.  Number

8    two, I would think if the government is willing to show you the

9    actual image, which presumably entails the file name, that the

10   government would be willing to provide that information to you.

11             There are two separate issues here.  One is

12   discovery-type issues, or discovery issues and access issues

13   pertaining to Mr. Schulte's access to certain information and

14   resources in the jail.  That's number one.  The second is the

15   defendant's representation and trial date.

16             I am not hearing any application to change his

17   representation status as to the severed counts and trial.  If

18   that changes, then I will entertain whatever application is

19   made, but it doesn't sound like there is any application being

20   made on that score.

21             It sounds to me like we are not in a position right

22   now to change the trial date.  If circumstances change on that,

23   I would revisit it.  I told you I was hoping to try it sooner

24   than September 11th of next year myself, but it sounded like

25   between the pretrial litigation that everybody contemplated

M6A8SCHC

1    here, including Classified Information Procedures Act issues,

2    including new motion practice, including the types of issues

3    that we are discussing here today, and also mindful of

4    counsel's trial schedules, that it wasn't really feasible to do

5    it any earlier than next September.  If that has changed, I am

6    certainly willing to revisit it, but it doesn't sound like it

7    has particularly changed.

8            On the first set of issues, I would break that down

9    into two different categories.  One is stuff that the defendant

10   has not been provided access to that he takes issue with.  I

11   haven't heard anything on that list that I am inclined to

12   intervene or take steps about, but if there are concrete

13   requests, I am certainly willing to entertain them.  The second

14   is just the mechanics of getting things to him and making sure

15   they do get to him, if they are things he is entitled to or the

16   government has no objection to him getting.

17           Here is what I propose.  Number one, that the

18   government immediately contact the MDC and try and get to the

19   bottom of why there are things that have been sent to Mr.

20   Schulte by the government and by Ms. Shroff that have not yet

21   gotten there.  I am going to do the same.  There is a newly

22   appointed liaison person at the MDC, and I am happy to make

23   this one of the first items that he has to deal with and ensure

24   that he is familiar with the history and issues in this case

25   more generally.  But the bottom line is I want to get to the

M6A8SCHC

1   bottom of that and ensure that going forward as well, that when

2   things are sent to Mr. Schulte that they actually arrive to Mr.

3   Schulte.  I don't understand what the issue is there, but if we

4   can get to the bottom of that and address that problem, that

5   would be good for everyone.

6           Number two is, anything that has not yet been sent but

7   the defense would like, either through counsel or through Mr.

8   Schulte, I think you guys should confer and try and sort that

9   out.  If it's as simple as arranging to see things on Monday,

10  then great, then there is no issue and no dispute.  If there is

11  a dispute, I think what we should do here is adopt essentially

12  the rule that I have for my civil docket, which is you guys

13  have to meet and confer.  If you fail to resolve it, either

14  side can file a letter not to exceed three pages raising what

15  the issue is and seeking whatever relief you think there is to

16  be sought.  I should be clear, by letter motion, not just by

17  ordinary letter.  The other side can respond within three

18  business days, and then I will resolve the issue promptly,

19  either by written order or by convening some sort of conference

20  like I did here.  There are some practical issues here, and I

21  think that's the best way to work them through.  For the most

22  part, you can and should be able to resolve them without the

23  need to come to me, but if there is a need to come to me, then

24  come to me.

25          Does that all make sense?  Any issues, any objections,

M6A8SCHC

1   any questions, any concerns?

2           Mr. Denton.

3           MR. DENTON:  Your Honor, I think the only thing I

4   would say is, with respect to anything pertaining to the Rule

5   29 or Rule 33 motion, we encountered some issues with standby

6   counsel objecting to us attempting to confer with Mr. Schulte,

7   as directed by the Court.  So I think that works perfectly well

8   for anything relating to the pending charges, or any of the new

9   conduct for which Mr. Schulte is represented, but it may be a

10  little trickier if he has issues he wants to raise on the

11  pending motions.

12          THE COURT:  Can you flesh that out a little bit, what

13  sorts of things that they object to discussing with you?

14          MR. DENTON:  I think that's a question for Ms. Shroff,

15  your Honor.  We set up a call with Mr. Schulte to confer about

16  the schedule for the motions and Ms. Shroff objected to us

17  having called without her physically with Mr. Schulte as

18  opposed to just participating on the line.  As she has noted,

19  that's not possible to arrange at the MDC because of the setup

20  of the attorney-visitor room for the SAMs unit inmates.  We are

21  happy to confer with him by phone with standby counsel on the

22  line, but to the extent that standby counsel is going to object

23  to that procedure, it's just tough for us to confer with him on

24  those issues.

25          THE COURT:  Do you anticipate any need to confer with

M6A8SCHC

1    him at all?  There is a schedule in place for those motions.

2    They are due December 16, and a briefing schedule thereafter.

3    Otherwise, it's just a question of getting things to him that

4    need to be gotten to him.

5         MR. DENTON:  Agreed, your Honor, and we don't

6    anticipate the need.  I am just flagging the issue that has

7    come up before.

8         THE COURT:  Ms. Shroff.

9         MS. SHROFF:  The issue did come up, your Honor.  I did

10   object.  The call was to be placed right after Mr. Schulte was

11   released from suicide watch, where he was put for six days

12   without notice from either the Bureau of Prisons or the United

13   States Attorney's Office, to his family, his counsel, or anyone

14   else.  We hadn't seen Mr. Schulte after he had been released

15   from suicide watch.  In the past, the government has recorded

16   what Mr. Schulte had said.  We were concerned about a

17   spontaneous eruption by Mr. Schulte.  And in light of the fact,

18   and in light of the fact that I was his counsel on the severed

19   counts, I did object.  I offered to have Mr. Schulte brought to

20   the court.  I offered to go to MDC and sit next to Mr. Schulte.

21        THE COURT:  That ship has sailed.  We are past that.

22        MS. SHROFF:  Going forward, to the extent that the

23   government has anything to propose to Mr. Schulte, we will make

24   every effort to make sure his *pro se* voice is heard, of course.

25        THE COURT:  What I am contemplating and foreseeing is

M6A8SCHC

1    just the need for a meet-and-confer with respect to any items

2    that Mr. Schulte needs, whether that is in connection with the

3    severed counts or with respect to the motions, and trying to

4    sort through those things together, without necessarily the

5    need to come to me, and coming to me if there is a need.

6          Can I task you with doing that even to the extent that

7    it pertains to Rule 29 and Rule 33 motions?

8          MS. SHROFF:  Certainly, your Honor.  We would be happy

9    to do that.  We have sent the government as clear e-mails as

10   possible, including enumerating the separate issues we would

11   like resolved.  I think it was on Saturday that Mr. Denton

12   replied, and I replied back to him on Saturday itself setting

13   up a date and time for which to review the material.  I am

14   assuming that the government will make Mr. Schulte also present

15   for that review, and hopefully the review itself will be of

16   great assistance to Mr. Schulte to move things forward.  I

17   think it will work out just fine.

18         THE COURT:  But again, what I am saying is, we are not

19   dealing here with a situation where Mr. Schulte is appearing

20   before a jury and I would be treading on his right to represent

21   himself.  I blessed his request to essentially complete his

22   self-representation with respect to the espionage and related

23   counts by filing the motions.  No one is suggesting that

24   counsel take over that responsibility.  What I am suggesting is

25   that counsel take responsibility for dealing with the logistics

M6A8SCHC

1   surrounding getting him whatever information and materials he

2   needs to prepare those motions.  I don't think that that

3   meaningfully treads on his right to self-representation.

4   Counsel did that in advance of the last trial by facilitating

5   communications and transfer of information and materials as

6   well.  So it's a similar role for that.

7           MS. SHROFF:  It's totally fine, your Honor.

8           THE COURT:  Great.

9           So given that, we will do what I suggested, which is

10  you guys should try and sort out as much of this as possible.

11  If there are concrete issues that remain in dispute, either

12  side can file a letter motion not to exceed three pages, the

13  other side has three business days in which to respond by

14  letter not to exceed three pages, and I will resolve the issue

15  either by written order or by convening some sort of

16  conference.  But my sincere hope is that you guys can work

17  through these things as much as possible.

18          If there are meaningful disputes because the

19  government does not believe that Mr. Schulte is entitled to

20  something, or is not willing to give him access to something,

21  whether that is a resource for information or material, and the

22  defense believes otherwise, then great, bring it to my

23  attention and I will resolve those sorts of disputes.  But I

24  think to the extent that these issues are as much logistics as

25  they are legal, the former can be resolved by you guys, perhaps

M6A8SCHC

1     with some assistance by me vis-a-vis the MDC, but that

2     shouldn't be taking everybody's time and attention.

3              Mr. Schulte, do you have something you wish to say?

4              THE DEFENDANT:  Yes.  With respect to this, if there

5     was any way to resolve a couple of these issues that didn't

6     seem to get all the way resolved.  The first was the material

7     from the laptop or also the discovery drives that were recently

8     seized.  So before I can even start on the Rule 29 motion, I

9     really need my -- I have a complete draft of it.  So if there

10    is any way that they could organize something where me and

11    counsel meet, I can pull off files I want, give it to the wall

12    counsel for review to give to me.  If there is some way that we

13    can do this.  I know the government has said their position

14    seemed to be that I don't get access to any of this.  This is

15    like hours of works, hundreds of pages.

16             THE COURT:  You can talk to Ms. Shroff.  Ms. Shroff or

17    Mr. De Castro -- I didn't mean to leave you out -- can discuss

18    with the government whether that is the prosecution team or the

19    wall team.

20             I would say, just to make it concrete, if you have a

21    draft of the motion, government, I think that's something that,

22    presumably in some form that assures you that there are no

23    security issues, I don't see any reason why Mr. Schulte

24    shouldn't be provided with his work product that facilitates

25    his drafting of the motions here.  So if, hypothetically, there

M6A8SCHC

1    is a draft of the motion sitting on that laptop, I would think

2    that the wall team could obtain it and print it out and provide

3    a hard copy to Mr. Schulte.  I am not proposing that he be

4    given a laptop with the actual electronic version.  I am

5    proposing that it be given to him in some fashion that there is

6    no security issue.  But I would think that that is the kind of

7    thing that can be worked out amongst yourselves, and I include

8    the wall team in that.

9         But, Mr. Schulte, if there is something like that, you

10   should discuss it with your standby counsel with respect to the

11   motions and they can facilitate your getting it within reason.

12   All right?  If there is anything else of that nature, I would

13   say that's going to be my answer and you should start with them

14   and see if you can work it out, and I have already described

15   the means by which I will resolve any disputes.

16        Anything else you wish to say?

17        THE DEFENDANT:  I guess the other thing was just in

18   response to when the government was talking about the ability

19   to review the exhibits, for example, Excel sheets.  There are

20   some Excel documents that are in the discovery.  I can't review

21   those at the MDC.  There's other types of exhibits on there

22   that have large pictures in the PDFs.  Those won't display.  I

23   know I have a due date December 16.  I haven't even been able

24   to, in any meaningful way, begin on that.

25        THE COURT:  I would discuss those with your standby

M6A8SCHC

1    counsel for these purposes too, and if there is some way of

2    getting those materials to you, then so be it.  I would say to

3    the extent that you have a full draft already done on the

4    computer, it's a little hard to see why you would need access

5    to an Excel file; or if there is particular data on an Excel

6    file, perhaps that can be provided to you in some other form or

7    fashion.  So again, talk to them and see if you can sort those

8    things out.

9              Anything else?

10             THE DEFENDANT:  The final thing was I wasn't clear

11   what the government's position was as far as, I had 20

12   terabytes of discovery produced on like five different drives

13   that were all seized.  So is it the government's position that

14   they are not going to provide the discovery again?

15             THE COURT:  I think we discussed this at the

16   conference a few months ago.  I don't see any reason why the

17   discovery beyond what was admitted at trial would be relevant

18   to the Rule 29 --

19             MS. SHROFF:  I'm sorry, your Honor.  He is talking

20   about the discovery that was recently seized, which is for the

21   CP case.

22             Your Honor, if it's possible, we are all here, and I

23   don't want to impose on you, perhaps if we could have ten

24   minutes to meet and confer while the government is here on

25   those issues.  Hopefully they will be resolved; and if not, we

M6A8SCHC

1    can use the procedure you have described and write to you and

2    use the three-day reply rule.  That might help move matters

3    along rather than continue in this manner.

4              THE COURT:  It's certainly fine by me.  Everyone else

5    good with that?

6              Mr. Denton.

7              MR. DENTON:  Sure, your Honor.

8              THE COURT:  Great.

9              So why don't I get off the bench and I will leave you

10   guys to discuss for a few minutes.  I will ask the marshals to

11   indulge that in the interest of a larger efficiency.  And when

12   you're done we will let the marshals know.

13             Anything else we need to discuss today?

14             Mr. Denton.

15             MR. DENTON:  The only thing I would note, your Honor,

16   Ms. Shroff made an allusion that Mr. Schulte is being produced

17   for this potential Monday review of the laptop.  That is not

18   the case.  That is something we told defense counsel can take

19   place for counsel at the FBI offices.  For Mr. Schulte to be

20   able to review any of that, that is something that is going to

21   have to happen in the courthouse and the FBI and marshals are

22   discussing what the appropriate arrangements will be.  We are

23   working on it and we will let defense counsel know once we have

24   got that sorted out.

25             THE COURT:  Understood.  And I would say that's in the

M6A8SCHC

1    bucket of things that you should discuss with one another, and

2    if there is any legal issue or dispute for me, you know how to

3    raise it.

4            Anything else from you, Ms. Shroff?

5            MS. SHROFF:  No, your Honor.  Thank you.

6            THE DEFENDANT:  I have one last thing.  The June 3rd

7    transcripts that were at the classified proceeding, I have been

8    trying to get the classification review and to get the

9    declassified portions of these.  I know the Court set a

10   deadline for when it's supposed to be reviewed and it's well

11   past the deadline.  So if there is any way I can get the

12   unclassified versions of those.

13           THE COURT:  I will check with the SISO about it,

14   unless, Mr. Denton or Mr. Lockard, you have any information on

15   that score.

16           MR. DENTON:  So, your Honor, I note that the various

17   transcripts that the Court had ordered be submitted for review

18   were submitted for review.  I don't know what the status of

19   that is.  I think we did flag at the time that there might be a

20   question about whether even the unclassified portions were

21   appropriately released.  Given the sealing provisions under

22   CIPA, that might be something we have to address.  But I know

23   at least the classification review has been submitted and

24   underway.  I don't know where it is in the process.

25           THE COURT:  Why don't you report back to me by the end

M6A8SCHC

1    of the week just telling me where that stands, and if there is

2    any impediment of them being released, what it is.  Hopefully

3    we will get that done.

4            All right.  Very good.  I will leave you guys to try

5    and make profitable use of the next few minutes within reason.

6            And with that, we are adjourned.

7            Thank you very much.

8            (Adjourned)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25