UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                          :
UNITED STATES OF AMERICA                                  :
                                                          :
            -v-                                           :            17-CR-548 (JMF)
                                                          :
JOSHUA SHULTE,                                            :            MEMORANDUM OPINION
                                                          :                AND ORDER
                        Defendant.                        :
                                                          :
-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        The Court has received two *pro se* motions from Defendant Joshua Schulte, copies of which

are attached as Exhibits A and B.  In the first, Defendant moves to recuse the undersigned on the

ground of "bias and prejudice."  In the second, Defendant moves primarily for access to a laptop

and for leave to file an addendum to his Rule 29 and 33 motion.  The Court construes both motions

to be limited to litigation of the Rule 29 and 33 motion, as to which Defendant is proceeding *pro se*.

Defendant is now represented for all *other* purposes, which includes sentencing on the counts of

conviction and his upcoming trial on child pornography and copyright charges.  Pursuant to the

Court's inherent docket-managing authority, the Court will not consider Defendants' *pro se* motions

with respect to those matters.  *See, e.g.*, *United States v. DiPietro*, No. 02-CR-1237 (SWK), 2007

WL 3130553, at * 1 (S.D.N.Y. Oct. 17, 2007) ("Pursuant to its docket-managing authority, a district

court may reject purported *pro se* motions filed by a represented defendant."); *United States v. de la

Cruz*, No. 06-CR-1091 (SAS), 2007 WL 2325860, at *3 n.46 (S.D.N.Y. Aug. 13, 2007) (noting that

a court has discretion to accept — and, by implication, reject — *pro se* submissions from a

represented criminal defendant).

        Defendant's motion to recuse is DENIED as frivolous.  In general, a showing of bias to

warrant a judge's recusal must be based on "extrajudicial conduct, not conduct which arises in a

judicial context." *Lewis v. Tuscan Dairy Farms, Inc.*, 25 F.3d 1138, 1141 (2d Cir. 1994) (cleaned

up).  "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."

*Liteky v. United States*, 510 U.S. 540, 555 (1994) (citation omitted).  Moreover, because recusal

"necessarily results in a waste of the judicial resources which have already been invested in the

proceeding," *In re Int'l Bus. Machs. Corp.*, 618 F.2d 923, 933 (2d Cir. 1980), a judge is "as much

obliged not to recuse himself when it is not called for as he is obliged to when it is," *In re Drexel

Burnham Lambert, Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988).  In light of these standards,

Defendant's motion — which is based entirely on a select handful of the Court's rulings (some of

which are mischaracterized no less) — is frivolous.  Put simply, his "disagreements with the Court's

rulings and his unsupported accusations of bias are insufficient to warrant recusal." *Kamdem-

Ouaffo v. Balchem Corp.*, No. 17-CV-2810 (PMH), 2023 WL 2266536, at *3 n.4 (S.D.N.Y. Feb.

28, 2023).

Defendant's motion for other relief, including for access to a laptop and for leave to file an

"addendum" to his Rule 29 and 33 motion, is also DENIED.  Defendant's motion proceeds from the

premise that he had a right to the laptop that he was given to prepare for his second trial, at which

he chose to represent himself.  As the Court has noted before, however, that premise is mistaken.

*See, e.g.*, ECF No. 970.  It is well established that "the right to represent oneself in criminal

proceedings, [although] protected by the Sixth Amendment, . . . does not carry with it a right to

state-financed library resources where state-financed legal assistance is available," as it certainly is

here. *Spates v. Manson*, 644 F.2d 80, 84-85 (2d Cir. 1981); *see Tellier v. Reish*, 164 F.3d 619 (2d

Cir. 1998) (unpublished); *Smith v. Hutchins*, 426 F. App'x 785, 789-90 (11th Cir. 2011)

(unpublished); *United States v. Byrd*, 208 F.3d 592, 593 (7th Cir. 2000); *Benjamin v. Kerik*, 102 F.

Supp. 2d 157, 163-64 (S.D.N.Y. 2000).  Instead, any right of access to legal resources owed to

pretrial detainees "is satisfied when the presiding courts merely offer such detainees appointed

counsel or standby counsel." *Stanko v. Patton*, No. 8:06-CV-290, 2007 WL 1309701, at *2-3 (D. Neb. Mar. 28, 2007) (citing cases).  It follows that Defendant, who has had counsel or standby counsel at all times throughout this litigation, has no legal basis to demand the resources he is seeking — resources, the Court notes, that were taken away in the first instance (if not permanently) for good reason.  *See* ECF Nos. 954, 1022.

Separate and apart from the issue of legal entitlement, Defendant does not need the resources he seeks to prepare his reply memorandum of law — which is the only work he has left to do in his *pro se* capacity.  Over the course of this case, Defendant has filed literally dozens of motions and other papers, some prepared on a computer, some prepared on a typewriter, and some (like the two motions addressed here) prepared by hand.  In other words, Defendant has demonstrated that he is entirely capable of responding to the Government's opposition without a laptop.  Nor is there any basis to file an "addendum" to the Rule 29 and 33 motion.  Through multiple extensions, *see* ECF Nos. 888, 962, 986, the Court granted Defendant *six months* to prepare his post-trial motion — a motion that, under the Federal Rules of Criminal Procedure, is ordinarily due within fourteen days of a verdict.  *See* Fed. R. Crim. P. 29(c)(1), 33(b)(2).  Moreover, when finally filed, Defendant's motion was a shocking *seventy-two pages* longer than the forty pages the Court had allotted — yet the Court denied the Government's (well-justified) motion to strike his brief.  *See* ECF No. 996.  In short, Defendant has had ample time and ample pages to make any arguments he wanted to make.  He is welcome to file his reply — **not exceed thirty pages (or it *will* be stricken)**, *see id.* — and that is it.  As a courtesy, the Court grants Defendant an additional two weeks, to **April 13, 2023**, to file that reply.

       SO ORDERED.

Dated: March 23, 2023
     New York, New York

_____
JESSE M. FURMAN
United States District Judge

# EXHIBIT A

Judge Jesse Furman
U.S.D.C. SDNY
40 Foley Square
New York, NY 10007

RECEIVED
SDNY PRO SE OFFICE

RE: US v. Schulte, 17 CR 548 (JMF)

Dear Judge Furman:

In my capacity as pro se with respect to the Fed. R. Crim. P. 29/33 motion, I hereby file two motions necessary for me to complete this motion. Since the MDC refuses to make copies for me, I request the Court to mail me a copy for my records.

The first motion is a motion for access to a laptop, work product, and the ability to file an addendum to my Rule 29/33 motion — requisite resources necessary to ensure preservation of my Rule 29/33 on appeal considering the Court has thus far not allowed me to do so.

But the Court should not yet consider this motion as the second is a motion for your recusal due to bias and prejudice, from deciding the Rule 29/33 motion. Your actions and statements in the record clearly indicate your animosity, bias, and prejudice against me and the extraordinary measures you have undertaken to hinder my ability to represent myself; you also have a clear conflict-of-interest. I have a right to an unbiased judge unhindered by a conflict-of-interest to hear my Rule 29/33 motion and render a fair, unbiased decision. Thus, the Court should decide this motion first and the newly appointed judge should review and consider the remaining.

3/1/23                    Josh Schulte

P. 1/22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

— v —

JOSHUA ADAM SCHULTE,
                    Defendant

S3 17 CR 548 (JMF)


# MOTION FOR RECUSAL


Post-trial motion filed by Joshua Adam Schulte
in pro se capacity on pending Fed. R. Crim. P. 29/33
litigation for U.S.D.J. Jesse Furman to recuse himself
due to incredible bias and prejudice against Mr. Schulte
and for the prosecution

Joshua Adam Schulte, pro se
Slave #79471054
MDC
P.O. Box 329002
Brooklyn, NY 11232

P. 7/22

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT................................... 3

II. STATEMENT OF FACTS.................................. 6

III. RECUSAL FOR BIAS AND PREJUDICE.................. 10

A. Legal Standard...................................... 10

B. This Court must recuse itself for Bias and Prejudice........... 11

   1. Court's Definition of Due Process as "guilty until the government says otherwise" constitutes bias and prejudice.................... 11

   2. Court's bad faith attempts to lie and falsify the record to protect self and ensure deprivations indicates Court's bias, prejudice, and clear vested interest in demonstrating Mr. Schulte's guilt...... 14

   3. Court's refusal to provide materials necessary to complete the Rule 29/33 motion and callous disregard for defendant's disabilities constitutes bias/prejudice... 17

   4. Court's decision to punish Mr. Schulte for actions of government constitutes bias and prejudice.......................... 18

   5. Court's actions in pending CP case constitute bias and prejudice.... 20

IV. CONCLUSION....................................... 22

P.3/22

# I. PRELIMINARY STATEMENT

At the conclusion of trial in 2022, the government noticed that the Court and Mr. Schulte had a mutual respect for one another, and decided to incite the Court with bias and prejudice against Mr. Schulte; as fellow prosecutors, they knew just which buttons to press. Although the government had reviewed Mr. Schulte's discovery laptop at the June 3, 2022 CIPA conference, as directed by the Court and evident by the transcript, the government filed a fraudulent search warrant application in which they claimed the opposite — that they had not done so, in direct contradiction with the transcripts — among countless other lies. In fact, the government has fabricated search warrants to seize and search Mr. Schulte's discovery laptop every single year since 2018. Their goal, then as now, was simply to fabricate probable cause so they could conduct a general search for any excuse to deprive Mr. Schulte of the ability to assist in his own defense while simultaneously inciting the Court against Mr. Schulte. Whether the illegal warrant was later suppressed or not did not factor into the government's schemes because by that point the permanent damage would already be done — and irreversible.

Thus after confirming that it was impossible to connect the laptop to the internet, the government simply expanded the search and eventually claimed to discover child pornography on the laptop — asserting without a single fact, that Mr. Schulte must have copied child pornography from the SCIF onto his laptop. Judge Furman gobbled up the government's lies and immediately declared Mr. Schulte guilty, banning him from the SCIF and laptop as punishment. At several pretrial conferences, Judge Furman disparaged Mr. Schulte as guilty and applied his own notion of Due Process — that Mr. Schulte was guilty and banned from the laptop and SCIF until the government says otherwise — clearly illustrating the Court's animosity, bias, and prejudice against Mr. Schulte. However, it was later revealed through review of the government's own forensic report that there was not a single picture or video of child pornography on the laptop — but rather, thumbnail images generated by the operating system after the government connected the child pornography discovery to the laptop during setup in 2021. As a result, the government could not possibly indict Mr. Schulte since he had no knowledge of the thumbnails, stored

P.4/22

in an inaccessible hidden, system database file, and since the thumbnail generation was caused by the government itself. Yet, since Mr. Schulte was not indicted, the government had no obligation to reveal this to the court, and instead opted to delay while maintaining the charade and playing Judge Furman for a fool—lying to his face and claiming that they were still "investigating" and "reviewing" the laptop over 7 months later even though forensic reviews take less than a week; every previous illegal search and seizure of the laptop lasted no longer than a month between the seizure, completion of the search, and return of the laptop. Since Mr. Schulte was presumed guilty and banned from the laptop and SCIF, the government simply had no incentive to come clean—it could simply delay until after trial, at which point it would have succeeded in its endeavors to ① prevent Mr. Schulte from working on the Rule 29/33 motion or assisting in his own defense at the child pornography trial; ② incite Judge Furman's bias and prejudice against Mr. Schulte; and ③ all-the-while playing Judge Furman for a fool by lying and concealing the truth from him.

After Mr. Schulte began writing to the court about the obvious Due Process issue of presuming him guilty until the government says otherwise and banning him from the laptop and SCIF as punishment, instead of recognizing his own bias and prejudice, Judge Furman doubled-down and actually began lying and falsifying the transcripts—claiming that he had banned the laptop for other reasons—notwithstanding the record evidence and transcripts. Judge Furman is far too proud to admit any mistake, thus creating a conflict-of-interest as the court has a vested interest in helping the government demonstrate Mr. Schulte's guilt to validate and justify the court's initial assumptions and punishments against Mr. Schulte for his guilt as perceived by the court; thus Judge Furman ~~is determined to persecute~~ is filled with animosity, bias, and prejudice against Mr. Schulte and determined to persecute him.

Forced to write the entire Rule 29 motion by hand, without access to a law library, the complete trial record, or any of his extensive drafts and work product, Mr. Schulte began relaying to standby counsel, then writing the court directly, about longstanding

P.5/22

issues and the inability to even begin the Motion without access to his draft, extensive
work product, and access to the trial exhibits — several of which required a laptop to review
since the MDC did not allow the requisite software. Judge Furman extended the deadline
a few times, but never addressed any of Mr. Schulte's complaints and obstacles —
including the lack of a typewriter and law library broken monitor. Extending the deadline
without solving the problems was like building higher levees while continuing to pollute
massive amounts of $CO_2$ into the atmosphere — it was less than helpful; yet Judge Furman,
fueled by his animosity, bias, and prejudice was unmoved by Mr. Schulte's plight and
physical disability, and demanded the impossible — that Mr. Schulte complete the Rule 29
Motion essentially bound, gagged, blindfolded, and thrown in a lion's den. Mr. Schulte was
unable to write a single word. Judge Furman's callous disregard for ensuring Mr.
Schulte had at least the bare minimum requisite resources amounted to a denial of his
right to self-representation. Ultimately the Court's decision to punish Mr. Schulte for the
actions committed by the government, and the Court's attempts to falsify the transcripts and
outright lie demonstrate considerable bias and prejudice. The Court's decision to ban
Mr. Schulte from reviewing his own server relegated to the SCIF by the government and to
ban him from reviewing his unclassified discovery for the upcoming trial are simply
indefensible. Accordingly, an objective and disinterested observer would
reasonably question the Court's impartiality, if not find actual bias and prejudice.

P.6/22

## II. STATEMENT OF FACTS

A week before trial was to begin, the BOP dropped and damaged Mr. Schulte's laptop. See DKT. 838. Defense counsel then immediately purchased a new laptop. Id. At a June 3, 2022 conference, Mr. Schulte moved to postpone trial by a week due to this incident, but the Court wished to further expedite the laptop exchange; thus the government offered to "assist" in swapping the hard drive out of the broken laptop and into the new laptop—at no point did defense counsel seek assistance in repairing the broken laptop. Mr. Schulte wearily agreed under very strict conditions that the government ① only perform a physical hard drive swap, ② not conduct any search, and ③ not alert the prosecutors to any incidental discoveries. There was a colloquy to this effect on the record and admonition by the Court to the government about these conditions. See 6/3/22 open conference and later CIPA conference. Upon receipt of the laptop, the government immediately violated all three conditions by ① attempting to power on the laptop, ② searching the BIOS, ③ logging into the laptop, ④ searching the laptop, and ⑤ notifying the prosecutor of the purported findings: an unprivileged BIOS password and a small encrypted drive on the laptop. The unprivileged BIOS password was configured by the government and merely prevented anyone from accessing the laptop—as an unprivileged account it could not be used to modify any BIOS settings. The encrypted drive was used to store privileged information since the government regularly seized the laptop and copied Mr. Schulte's privileged information—an encrypted drive has been used since 2018 with no prior complaint from the government.

The government then lied to the Courts, claiming not only that the unprivileged BIOS account had not been setup by the government, but also that Mr. Schulte could use the unprivileged account to modify the BIOS—and demanded to conduct a review of the laptop to ensure BOP security compliance. At no point did the government notify the Court that the BIOS settings were irrelevant since the wifi component had been physically disconnected to the motherboard—requiring a special screwdriver, soldering iron, and many other specialized tools and skills. Nonetheless, the Court ordered the

government to conduct the review to ensure compliance with BOP security policy. See 6/3/22 Transcript. The government completed its review and verified that ① the unprivileged BIOS account had indeed been configured by the government; ② no BIOS settings had been modified; ③ the wireless component was still physically disconnected and could not be re-enabled through the BIOS; ④ the laptop had never been connected to the internet. The government thus returned the laptop later that day, leaving the unprivileged BIOS password and encrypted drive — not once did the government claim that either constituted a violation of any laptop policy.

A few weeks after trial, the parties met to discuss the next trial. The court confirmed Mr. Schulte's use of the laptop and gave him several months to work on the Rule 29/33 motion while counsel took on responsibility for handling the next trial. Not long after, the government falsified evidence, fabricated evidence, and perpetrated a fraud on the court in their search warrant affidavit to seize the laptop, which was executed July 26, 2022. Among the most egregious fraud was the government's claim that they had not verified the laptop's BOP compliance at the June 3, 2022 conference notwithstanding both the court's requests to do so and the government's own assertion that they would do so; the government knew there could not possibly be probable cause due to this fact so they simply lied and claimed it didn't happen — knowing that no court would ever uphold the constitution and that they would never face any consequences for doing so. Furthermore, the government downplayed the critical significance of the physically disconnected wifi component, and again lied about the unprivileged BIOS password, falsely alleging that Mr. Schulte configured it, indicating modification of the BIOS through "hacking" despite the fact that it was an unprivileged account with no access to modify the BIOS.

The parties then met for another conference. Neither the court nor the government claimed that Mr. Schulte should not have the laptop anyway or that he had violated any rules or regulations with the laptop. Instead, the court cancelled the Rule 29/33 deadline pending the laptop's return.

The government's search of the laptop should have ended in less than a week.

P. 8/22

Even supposing the fraudulent warrant was legitimate, the government's first search should have been the wifi component because if this component were still physically disconnected, it would have been physically impossible for the laptop to connect to the internet and therefore ended any search based on the crimes and "probable cause" alleged in the warrant. And in fact, Mr. Schulte had not overcome the impossible and re-enabled the wifi component. Yet the search did not end. The BIOS had never been modified and the laptop never connected to the internet. Yet the search did not end. Why? What legal reason remained to continue searching? The government simply dubbed-down and began executing a general warrant to search for evidence of any possible crime as it does for all electronic searches today.

Upon execution of a general search to search for evidence of any possible crime, the government claimed to find child pornography on the laptop in September — after over two full months of an exhaustive, general search. There are, however, no child pornography pictures or videos on the laptop — not one. Instead, as discovered at a later review of the government's completed forensic report of the laptop, which was finalized in September 2022 despite the government's continued lies that it is still "investigating" and "reviewing" the laptop, the government actually found thumbnail images of child pornography generated by the operating system and stored in the hidden, system thumbcache database file — a file that cannot be viewed or accessed by the user. The forensic evidence indicates these thumbnails images were automatically generated by the operating system after the government connected the child pornography discovery drive to the laptop during setup in 2021 — although it never copied any child pornography files onto the laptop, the insertion of a drive with pictures and videos automatically triggered the thumbnail generation — which Mr. Schulte was completely unaware of nor could he access the thumbnails even if he wanted to. Thus, the creation of the child pornography thumbnail cache was a direct result of government actions that the government has thus far refused to acknowledge — as they have no incentive nor legal requirement to do so.

Nonetheless the government began sending the Court secret exparte letters and sought multiple search warrants to seize Mr. Schulte's discovery drives both in the MDC and at the SCIF (which were never reproduced) 5 months later at the writing of the instant

P. 9/22

motion, the government still refuses to reproduce the discovery and thus Mr. Schulte has not had access to any discovery for the upcoming trial since early October and has been unable to review any discovery for the upcoming trial since the laptop's seizure in July— thats 7 months, no discovery or ability to assist in his own defense). The government put forth no legitimate facts for these searches but merely claimed ipse dixit that Mr. Schulte must have stolen child pornography from the SCIF and copied it onto his laptop. This is the critical juncture at which point Judge Furman stopped acting as a judge and reverted to a prosecutor; at this point Furman believed every lie told to him by the government as the Word of God, and all his actions that followed illustrate his newfound bias and prejudice against Mr. Schulte. He determined that Mr. Schulte must be guilty because the prosecutors said so and immediately banned him from the SCIF and the use of a laptop; he also set the Rule 29/33 deadline.

In subsequent pretrial conferences, the Court voiced his view of Mr. Schulte's guilt and has been increasingly hostile towards Mr. Schulte and has shown callous disregard for Mr. Schulte's disability and inability to work on the motion; but more than that, this court has gone so far as to falsify the transcripts and outright lie. When confronted about Due Process issues, the court lied and claimed it banned the laptop because Mr. Schulte was ~~convicted~~ convicted "violated laptop rules" ~~or~~ because of an "administrative password" or other convenient lies that are clearly not supported by the transcripts. The court has furthermore lied about the "probable cause" indicative of Mr. Schulte's guilt despite the fact that the search warrants never once indicate that Mr. Schulte ever accessed or could have accessed the thumbnail cache, that the files are even the same as those provided in the SCIF, or literally any fact at all ~~except~~ except claiming the files were child pornography. Thus it is clear from the record and supporting evidence that Judge Jesse Furman simply believes Mr. Schulte is guilty based on nothing but government whisperings and secret ex-parte letters.

P.10/22

# III. RECUSAL FOR BIAS AND PREJUDICE

## A. Legal Standard

Recusal motions founded on allegations of "actual bias or prejudice" fall under two different statutes: 28 U.S.C. § 455(b)(1) and 144. Under 28 U.S.C § 144, if a party before a district court "makes" and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of an adverse party... another judge shall be assigned to hear (that) proceeding." 28 U.S.C § 144. "To be legally sufficient under section 144, an affidavit must show 'the objectionable inclination or disposition of the judge' [and] it must give 'fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment.'" Hoffenberg v. United States, 333 F. Supp. 2d 166, 171 (SDNY 2004) (quoting Rosen v. Sugarman, 357 F. 2d 794, 798 (2d Cir. 1966) then quoting Berger v. United States, 255 U.S. 22, 33-35 (1921)). Along similar lines, 28 U.S.C § 455(b) provides, in relevant part, that a judge must disqualify himself "[w]here he has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1).

Finally, 28 U.S.C. § 455(a) is the most broad, requiring recusal "in any proceeding in which his partiality might reasonably be questioned." 28 U.S.C § 455(a). The standard under 455(a) is "whether an objectionable and disinterested observer, knowing and understanding all of the facts and circumstances, could reasonably question the court's impartiality." SEC v. Razmilovic, 738 F.3d 14, 29 (2d Cir. 2013). This objective test "deals exclusively with appearances. Its purpose is the protection of the public's confidence in the impartiality of the judiciary." United States v. Amico, 486 F.3d 764, 775 (2d Cir. 2007) See also In Re Basciano, 542 F.3d 950, 956 (2d Cir. 2008); Chase Manhattan Bank v. Affiliated FM Ins. Co., 343 F.3d 120, 127 (2d Cir. 2003) ("This subsection "governs circumstances that constitute an appearance of partiality, even though actual partiality has not been shown") (citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 860 (1988)). Thus the Second Circuit has observed that "§455(a) provides broader grounds for disqualification than either § 144 or § 455 (b)(1)." Apple v. Jewish Hosp. &

P. 11/22

Med. Ctr., 829 F.2d 326, 333 (2d Cir. 1987).

Here the particular pending matter is the Rule 29/33 motion to which Mr. Schulte is pro se. This motion is filed timely as it is submitted before full briefing has been completed, and would have been filed in November 2022 if not for Mr. Schulte's physical disability that renders him unable to write by hand for significant periods of time. Mr. Schulte submits that the Court should recuse itself from all matters involving Mr. Schulte due to its bias and prejudice since its animosity, bias and prejudice permeates all matters concerning Mr. Schulte.

B. This Court must recuse itself for Bias and Prejudice

1. Courts definition of Due Process as "Guilty until the government says otherwise" constitutes bias and prejudice

The government need only whisper into the Court's ear to establish Mr. Schulte's guilt and impose punishment. Instead of waiting for the "investigation" to complete or giving the defense an opportunity to review the evidence and respond, the Court immediately made assumptions and jumped to conclusions, declared Mr. Schulte guilty, banned him from the SCIF and laptop, and set an untenable Rule 29/33 deadline. See Dkt.

At the November 7, 2022 pretrial conference, the Court stated: "Unless the entirety of recent events turns out to be a massive misunderstanding and there is no issue and there was no child pornography on the computer, and other things that seem to have been done with the computer turn out to be innocent conduct rather than what they appear to be, I assure you, you are not getting any laptop, full stop." Id at 8-9. But of course the Court never required the government to share its findings, allow the defense access to a forensic image, or permit a hearing on the matter whatsoever — so how, exactly, is Mr. Schulte to show the Court that there was in fact no child pornography on the laptop? He's not. Judge Furman expects the government to inform him that they made a mistake — flipping the standard and burden of truth not only from the government to the defendant but essentially nullifying it altogether — Mr. Schulte is presumed guilty until and unless the government says otherwise; Judge Furman's notion of Due Process is repugnant

P. 12/22

to the Constitution, his actions reprehensible.

Judge Furman's rape of the Constitution is particularly problematic here where the government's search warrant affidavits are an outright fraud on the Court — the government itself reviewed Mr. Schulte's discovery laptop at the June 3, 2022 conference, verified that the wireless adapter was still physically disconnected — rendering the BIOS settings irrelevant, but also verified and confirmed that ~~this settings that~~ the government had set the unprivileged BIOS password used by Mr. Schulte. Indeed, the government returned the laptop without changing or deleting that password. Thus the June 3, 2022 transcript — which the Court is free to peruse — clearly refutes the government's own meager "probable cause". Moreover, the government never once claimed that Mr. Schulte violated any laptop rules or regulations during this time.

Judge Furman also said there is certainly probable cause to believe that you have mishandled and misused the computer and done so in fairly disturbing and problematic ways." Id. Yet, once again, this is false — Mr. Schulte never once violated a single rule concerning the laptop. The government knows it is lying and possesses documents demonstrating Mr. Schulte's innocence — such as the government's validation and verification of the laptop's security settings on June 3, 2022 as well as records of the government's initial installation of the laptop when they set the BIOS password and ~~gront~~ gave it to Mr. Schulte. Mr. Schulte can meet and exceed any standard of proof yet the Court raped Mr. Schulte's Due Process rights by simply taking the government's <u>unindicted allegations</u> as the Word of God and refusing any adversarial process. It is clear from the record that Judge Furman is biased and prejudiced in favor of his fellow prosecutors — doing and believing whatever they command — and biased and prejudiced against Mr. Schulte — who is guilty until the government says otherwise notwithstanding the lack of any indictment.

And what about the child pornography "probable cause"? The warrant simply claims that it "found" "Numerous images and videos depicting what Agent-1 assessed to be child pornography." JAS-028200. We now know this is also a lie because the government provided its completed forensic report to the defense in December 2022

and they had not found a single picture or video of child pornography on the laptop, but rather thumbnail images that Mr. Schulte could neither access nor view. And indeed the government never once asserts that Mr. Schulte ever accessed, viewed, or could have accessed or viewed any of the child pornography — because he could not do so. It is illegal to knowingly possess child pornography — it is not illegal to unknowingly possess remnants of child pornography created by the government. Hence, to this date the government has never once provided any probable cause or any minimal burden of proof that Mr. Schulte ever commit a single crime. And indeed, there is no indictment nor will there ever be because the government knows Mr. Schulte commit no crime, but is simply using the Court's blinding animosity, bias, and prejudice to persecute and destroy an innocent man — the prosecutor's creed.

Moreover, it must be noted that neither the Court nor the government relied upon any of the pre-child porn false allegations as reasons to deny Mr. Schulte access to the laptop. At the September 7, 2022 conference, the Court never once mentioned any "mishandling" or "misuse" of the laptop, and instead it was presumed the laptop would be returned. Thus, the only difference between when Mr. Schulte was authorized to have a laptop and use the SCIF is the government's finding of the child pornography inaccessible thumbnail images that it created.

"[G]iven the probable cause shown in the warrant, all I could say is right now it certainly appears that Mr. Schulte has brought these frustrations upon himself" — Jesse Furman, 11/7/22 Tr. at 18. The "probable cause" that does not assert a single fact incriminating Mr. Schulte? The "probable cause" in which the government outright lied and deliberately failed to mention that Mr. Schulte could not possibly access these thumbnail cache images, and that THE GOVERNMENT ITSELF CAUSED TO EXIST.

This is why the founding fathers saw fit to ratify a Bill of Rights including the Fifth Amendment's Due Process guarantee — to ensure that those falsely accused are presumed innocent. Yet here, a case in which a person has not even been indicted, this Court has unconscionably taken the position not only that

P.14/22

Mr. Schulte is presumed guilty but also that he must be punished, and that he has no right to dispute the government's allegations, that he has no right to procedural Due Process to a legitimate adversarial hearing and presentment of facts and arguments FROM BOTH SIDES, that he has no right to substantive Due Process and must be punished immediately and indefinitely, that Mr. Schulte is presumed guilty until the government says otherwise. Accordingly, clearly Jesse Furman's mind is clouded by intense animosity, bias, and prejudice against Mr. Schulte. The Court must recuse itself forthwith.

2. Court's bad faith attempts to lie and falsify the record to protect self and ensure deprivation, indicates Court's bias, prejudice, and clear vested interest in demonstrating Mr. Schulte's guilt

Perhaps even more concerning is the Court's on-the-record falsification of past events and reasons for the laptop ban; particularly, when confronted about his peculiar and absurd notion of Due Process, instead of acknowledging his own bias, he doubled-down and lied. "But circumstances have changed. You now have been convicted at that trial .... But having been convicted at the first trial...." Tr. 11/7/22 at 9,18. The Court repeatedly asserted at the 11/7/22 pretrial conference that he banned the laptop and SCIF in part because Mr. Schulte had been convicted at trial.

The Court's false claims are in stark contradiction with its previous statements and actions. As already demonstrated, there are numerous examples from the record of the Court relying solely upon the government's false allegations to ban the laptop and SCIF, but conspicuously absent from the transcripts is any mention of the recent convictions as justification to deny Mr. Schulte the right to use a laptop and review discovery. After he was convicted, did the Court or the government request the laptop seized due to these convictions? No. What about at the pretrial conference after trial? Nope, not there either—and in fact, the Court explicitly allowed Mr. Schulte to continue using the laptop to complete the Rule 29/33 motions; even after the government executed its illegal, deceitful seizure of the laptop, still neither the Court nor the government said anything about removing the laptop due to convictions. In fact,

P. 15/22

the Court cancelled the pending Rule 29/33 deadline sine die until the government finished its yearly seizure and search of the laptop. See Tr. 9/7/22 at 16. The government and the defense then entered talks about producing a new laptop— and still no mention of the convictions as justification for why Mr. Schulte should not have a new laptop.

And then, after purchase of a new laptop was being finalized, the government started filing new secret ex-parte letters and whispering into the Court's ear that Mr. Schulte was guilty of possessing CP on the illegally seized laptop. The government's allegations were lies, but the Court believed them and instantly cancelled all SCIF days, any new laptop, set a deadline for the Rule 29/33 Motion and compelled Mr. Schulte to use a broken typewriter; all as punishment for possessing CP on the laptop, as falsely alleged by the government. Thus the Court's new ex post facto reasoning that it banned the laptop and SCIF due to convictions is clearly refuted by the record.

But even if this justification were not an outright lie, it would still be extremely unjust and violate Due Process. First and foremost, the convictions are not final until sentencing, and no punishment can be imposed until that time — the Rule 29 motion and other motions could overturn the convictions before sentencing, and Mr. Schulte is not able to appeal any punishments—which would include the laptop ban — until after sentencing; so any imposition of punishment that hinders the Rule 29 Motion are particularly unjust. And what's new Mr. Schulte cannot assist on his appeal in any meaningful way because he was convicted? There is not a single case where a defendant is denied access to his discovery during his appeal simply because he was convicted. Furthermore, the Court did not provide any notice that if Mr. Schulte were convicted, then he could no longer use a laptop to review discovery — if the defense had known so, Mr. Schulte would not have worked so hard on the laptop writing draft motions and trial strategy; but more importantly, the defense would have had good reason to try the CP case FIRST.

The defense made several attempts to do the CP trial first, but the government always opposed it. If the defense had been notified that, upon conviction

for the espionage trial, Mr. Schulte could no longer use a laptop to review discovery or assist in the CP trial, then we would have had a strong case to do the CP trial first. Yet there was no such notification. Furthermore, had the CP trial been conducted first, would the Court then argue Mr. Schulte couldn't use a laptop at the espionage trial?

It's all an exercise in futility in any case, because the record clearly indicates that the convictions at the espionage trial had no bearing on Judge Furman's decision to ban the laptop and SCIF — Judge Furman lied in bad faith to help protect himself and his decision to ban the laptop. Thus not only is Judge Furman exposed as a liar, but he is now in a legitimate conflict-of-interest; Judge Furman is using the convictions as an excuse ex post facto to ban the laptop so now he has a vested interest in ensuring the convictions stand — otherwise his convictions excuse would be exposed as a folly — if indeed Mr. Schulte were not guilty then that excuse would no longer be credible. Hence, Judge Furman absolutely must recuse himself due to this conflict-of-interest as he cannot judge the Rule 29/33 motion impartially.

And these are not Judge Furman's only lies. Judge Furman has begun claiming that there are other vague misuses or misbehavior on the laptop. Of course, the government has never provided specifics of any such incidents; indeed Judge Furman is just parroting whatever the government says like a good loyal dog. So what are these allegations? If the Court is referencing the government's lies in its initial search warrant affidavit — the unprivileged BIOS password and encrypted drive then Judge Furman is lying once again because ever since these "incidents" came to light on June 3, 2022, neither the government nor the Court have claimed they were violations of any laptop rules — and of particular, the Court never once commented about them even after the search of the laptop was executed — only was the alleged CP was "discovered" did these prior "incidents" morph ex post facto into "misbehaviors". And if the Court is referring to some other incident never even reported on the record, then that's even more absurd. Critically, the government has specified no laptop misbehaviors and provided no discovery or access to any forensics indicating

such. (the child pornography thumbnail images were of course caused by the government).
Accordingly, the Courts lies, conflict-of-interest and vested interest in upholding the convictions
clearly indicate bias and prejudice.

3. Court's refusal to provide materials necessary to complete the Rule 29/33 Motion and
   callous disregard for defendant's disabilities constitutes bias and prejudice

Mr. Schulte has never been given the opportunity to file a Rule 29/33 motion
because the government refused to ① provide Mr. Schulte with the complete trial exhibits, ②
a copy of his Rule 29/33 Motion from the laptop seized or seized drives, ③ a copy of his
annotated transcripts and substantial work product held hostage by the government on non-CP
drives, ④ a way to review and record case law from the law library, ⑤ a working law
library (Monitor broken for over 2 months, constantly crashes), ⑥ a working typewriter as
Mr. Schulte cannot write extensively by hand due to a physical disability that the Court
mocks and callously disregards (this & other hand-written motions are written at the
cost of excruciating pain & suffering, are forced to be extremely brief with limited or no
case law, and take many months to complete), ⑦ Mr. Schulte remains unable to pass
drafts or other documents to attorneys as the MDC bans passing legal documents to and
from attorneys, which also also Violates CFPA the CFPA Protective Order because
Mr. Schulte cannot get his work to counsel to validate that the motion is unclassified —
thus Mr. Schulte cannot file any espionage-case related motion or risk violating the
protective order and a contempt of court charge. Mr. Schulte has repeatedly informed the
Court of these issues as well as standby counsel at the MDC — and asked her to relay them
to the Court. But the Court is not interested — the entire Rule 29/33 deadline is
completely arbitrary since there is another trial anyway — the Court initially postponed it
since at T; thus the newly imposed arbitrary deadline only after the alleged CP
discovery clearly indicates it was imposed as a punishment. The Court refuses
to even consider postponing it and scheduling a hearing on the alleged CP to
establish the actual facts which would exonerate Mr. Schulte. The Court cares nothing
for Mr. Schulte's Constitutional rights, his appellate records or Mr. Schulte's

disability. First and foremost for Judge Furman is declaring Mr. Schulte guilty ipso dixt and punishing him ad infinitum. The Court's callous disregard for Mr. Schulte's disability and his refusal to provide all materials necessary to complete the Rule 29/33 Motion constitute not only an outright denial of Mr. Schulte's right to self-representation but clearly indicate the court's bias and prejudice towards Mr. Schulte.

    4. Court's decision to punish Mr. Schulte for actions of government constitutes bias and prejudice

As soon as the government whispered into the Court's ear that Mr. Schulte was guilty, than Judge Furman, a fellow prosecutor, immediately made assumptions and jumped to conclusions that Mr. Schulte was guilty and must be punished. But of course, even if the government actually found child pornography, Mr. Schulte is only guilty if he knowingly possessed it. And of course, this is an adversarial system of justice — the defense must be given a chance to review the evidence and make an argument to a jury (not to mention file a suppression motion of the deliberately fraudulent search warrant) before the Court can pass sentence; the Court bypassed all of this and jumped right to guilt. The defense was able to review the government's final forensic report of the laptop (contrary to the government's repeated lies, the government's forensic review finished in September as its FINAL Report indicated; it does not take more than a week to conduct a forensic review of a small 200GB laptop — certainly not 8 months — which an unbiased judge would undoubtedly recognize) in December and discovered that, contrary to the government's assertion, there is not a single picture or video of CP on the laptop — not one. The government made it seem as if Mr. Schulte was hanging out in prison watching CP all day, but nothing could be further from the truth. What the government actually found was thumbnails of CP generated by the operating system and stored in the hidden system thumbcache database file — a file that cannot be viewed or accessed by the user (this is triggered by the insertion of a drive containing pictures or videos). There is a huge difference between CP on the laptop and inaccessible thumbnails — the latter cannot be knowingly possessed; every court that has

P. 19/22

considered this issue has confirmed that a defendant cannot knowingly possess the hidden, system thumbnail database (contrast with normal cache files from i.e. web browsers which store the media as a regular, accessible file that a defendant CAN knowingly possess).

But perhaps most importantly, the evidence clearly indicated that no drives were ever connected to the laptop other than Mr. Schulte's discovery drives, and that these drives were never connected to SCIF computers. The government claimed Mr. Schulte must have stolen the CP from the SCIF not because there was any evidence for this whatsoever, but because Mr. Schulte otherwise had no access to the CP files. The reason there is no indictment now nor ever is because there actual CP files are not on the laptop or Mr. Schulte's devices, and he connected no drives from the SCIF to his laptop — forensically airtight alibi — indicating thus that Mr. Schulte could never have brought over any files from the SCIF and therefore implicating the government — along with other such evidence.

But first it's critical to establish that the government's wild SCIF theory has always been impossible. When Mr. Schulte first alerted two U.S. Marshals who previously monitored Mr. Schulte in the SCIF about the government's absurd allegations — that they literally fell down in hysterical laughter — that's how idiotic and absurd the government's baseless "theory" is. First as a SDNY inmate, Mr. Schulte is taken to a special RDO. He's strip searched, forced into a full-body scanner like at the airport, and through a metal detector; his paperwork is searched and x-rayed. Then the Marshals conduct an independent search. He's chained from head to toe, then brought to a special cell at the Courthouse. When brought to the SCIF, he's searched again then live monitored by an FBI agent, Marshal, and counsel. Upon completion, the Marshals again conduct searches and the entire process is repeated in reverse. It is simply not possible to take anything from the SCIF nor has the thought ever crossed Mr. Schulte's mind. And finally, Mr. Schulte is monitored and recorded 24/7 in his torture cage so any "smuggled" drive or use of any unauthorized drive would be monitored and recorded — stored at the BOP. The government's wild, baseless claim that Mr. Schulte must have stolen CP from the SCIF is thus akin to claiming Mr. Schulte escaped prison, traveled to Jupiter one night to steal hydrogen and returned the next day unseen — absolutely no part makes a lick of sense.

P. 28/22

So what drive caused Mr. Schulte's laptop to generate the CP thumbnails? Circumstantial evidence indicates that the government inserted a drive containing CP discovery when it initially setup the laptop. Although no CP was copied onto the laptop, the insertion of this drive triggered the operating system to create thumbnails for all the CP and store these thumbnails in its hidden system database file where they've remained unnoticed the past year. Thus once we've eliminated the impossible — that any drive was smuggled from the SCIF and connected to the laptop — what remains no matter how unlikely the government asserts it to be — must be: Namely that the government is responsible. As a result, the government has not indicted Mr. Schulte for any crime, nor will it do so — thus it has no obligation under Brady, or the Fed. R. of Crim. P. to notify the defense or Court of its culpability. Since the court jumped to its conclusions and presumed Mr. Schulte guilty, the government has already accomplished everything it set out to do in the first place — Mr. Schulte cannot participate in his own defense. Thus the government need only tell the Court that it is still "investigating" and run out the clock. And that is precisely what it has done — although the laptop was seized in July and it takes at most a week to conduct a forensic review, to this date — more than 7 months later, it has "not yet" completed its review of the laptop. Nor will it. Thus the Court's imposition of punishment based on the government's own actions constitutes bias and prejudice.

5. Court's actions in pending CP case constitute bias and prejudice

Finally, the Court's laptop and SCIF ban prevent Mr. Schulte from reviewing discovery or assisting in his own defense. The bulk of Mr. Schulte's discovery consists of forensic images that cannot be used without specific software — software that the MDC refuses to allow on its computers. Thus Mr. Schulte has been unable to review any unclass discovery for the upcoming trial since the laptop was confiscated in July; compounding this issue is that the government seized Mr. Schulte's discovery drives in September and has thus far refused to reproduce them — Mr. Schulte has been without discovery since Sept. 2022 and without the ability to review discovery since July 2022. Furthermore, Mr. Schulte spent the last 6 years writing trial

p. 21/22

strategy, preparing forensic testimony and demonstratives, writing ~~xxxxxxxxxxxxxx~~ draft motions, and generating substantial work product—that the government has seized and continues to hold hostage even from devices without any CI. And the bar of the SCIF prevents Mr. Schulte from reviewing the most critical piece of discovery in his case—his primary home server which the government classified due to public internet files from the Guardian; Mr. Schulte sought production of this server in unclassified discovery which the government opposed and the Court denied. This is the single most important piece of discovery to the defense—sine quo non. And regardless, since this server belonged to Mr. Schulte, the government must produce it pursuant to Fed. R. Crim. P. 16(a)(1)(E)(iii). Thus the Court's refusal to make Mr. Schulte's discovery available to him not only renders any verdict null and void, but clearly indicates Judge Furman's bias and prejudice.

P.22/22

## IV. CONCLUSION

Mr. Schulte has demonstrated not only that an objectionable and disinterested observer could reasonably question the Court's impartiality, 28 U.S.C. § 455(a), but also that the Court harbors actual bias and prejudice against Mr. Schulte, 28 U.S.C. § 144 and 455(b)(1). Accordingly this Court must recuse itself at least from the pending Rule 29/33 motion and sentencing in the espionage case, but from the pending CP case and all matters concerning Mr. Schulte. A competent, intelligent unbiased judge such as the unrivaled Judge Rakoff should be appointed.

Dated: Brooklyn New York
Started: Nov. 2022
Completed: February 2023
Finalized and mailed in: 3/1/23
(mailed to CO)

Joshua Adam Schulte
Slave #79471054
MDC
P.O. Box 329002
Brooklyn, NY 11232

Josh Schulte #74411054
MDC
P.O. Box 329002
Brooklyn, NY 11232

RECEIVED
SDNY PRO SE OFFICE

2023 MAR 15 PM 2: 58

ATTN: U.S. v. Schulte S 3 17 cr 548 (JMF)
Pro Se Intake Office
U.S. District Court SDNY
500 Pearl Street
New York, NY 10007



UNITED
SDNY



# EXHIBIT B

P. 1/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

— v —

JOSHUA ADAM SCHULTE,

Defendant

S3 17 CR 548 (JMF)

# MOTION FOR ACCESS TO LAPTOP, OWN WORK PRODUCT, AND ABILITY TO FILE RULE 29 ADDENDUM

Post-trial Motion filed by Joshua Adam Schulte
in pro se capacity on pending Fed. R. Crim. P. 29/33
litigation for access to requisite material for effective
self representation; this motion should be considered
after assignment of unbiased judge pursuant to recusal
(i.e. Recusal Motion first)

Joshua Adam Schulte, pro se
Slave # 79471054
MDC
P.O. Box 329002
Brooklyn, NY 11232

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT........................................ 3

II. STATEMENT OF FACTS.......................................... 4

III. COURT MUST PROVIDE MR. SCHULTE A LAPTOP AND HIS WORK
PRODUCT.................................................. 8

  A. Banning the laptop based on government whisperings and false allegations
violates procedural Due Process............................... 8

  B. Holding Mr. Schulte's work product hostage awaiting government
review violates procedural Due Process.......................... 8

  C. The laptop and work product ban violates substantive Due Process..... 9

    1. Mr. Schulte's disability necessitates laptop..................... 9

    2. Impossible to conduct legal research and incorporate into Motion
without a laptop........................................ 9

    3. Ban of 6 yrs worth of work product unconscionable.............. 10

    4. Laptop required to review complete trial record................. 10

    5. Government's ability to use laptop while Mr. Schulte banned
violates substantive Due Process........................... 10

    6. Court's arbitrary Rule 29/33 deadline before any judicial
procedure related to the laptop ban violates substantive Due Process.... 11

    7. Banning laptop due to government's actions repugnant to
Due Process.......................................... 11

  D. A laptop must be provided to Mr. Schulte in his pending criminal
case anyway........................................... 11

IV. COURT MUST ALLOW MR. SCHULTE TO FILE R. 29 ADDENDUM...... 12

V. ALTERNATIVELY COURT HAS DENIED EFFECTIVE SELF-
REPRESENTATION...................................... 13

VI. CONCLUSION............................................ 14

P. 3/14

## I.   PRELIMINARY STATEMENT

Judge Jesse Furman banned Mr. Schulte from using a laptop or accessing his work product after the government made unfounded false allegations that Mr. Schulte must have somehow stolen child pornography from the SCIF and copied it onto his discovery laptop. In reality, Mr. Schulte has never violated any SCIF or laptop rules — there is no child pornography on the laptop but rather thumbnail images generated by the government's own insertion of the child porn discovery into the laptop during setup. Judge Furman ~~was~~ ~~struck~~ was moved by his bias in favor of the his fellow prosecutors and bias and prejudice against Mr. Schulte. As a result Judge Furman declared Mr. Schulte guilty ipse dixit and immediately banned him from the laptop and his own work product.

Judge Furman's unconscionable decisions based on his own bias and prejudice require his recusal (see Recusal Motion). Judge Furman's ban of the laptop and years of work product violate both procedural and substantive Due Process — it is not due process to declare Mr. Schulte guilty unless the prosecution says otherwise; the government refuses to turn over the laptop and other electronic devices for Mr. Schulte's expert to review — which Mr. Schulte does not even have yet. The government is not required to turn over any Rule 16 or Brady information since there is no indictment nor will there ever be one — essentially the government have exploited the system by playing to Judge Furman's biases, whispering false allegations into his ear, and claiming it is still "reviewing" and "investigating" the laptop over 8 months later. The government has deprived Mr. Schulte of any ability to effectively represent himself and have thus won de facto. There is no need for them to ever complete any investigation since Mr. Schulte is already declared guilty & banned. Thus, the point of Due Process under the 5th Amendment. The Court must provide Mr. Schulte a laptop and work product.

P. 4/14

## II. STATEMENT OF FACTS

A week before trial was to begin, the BOP dropped and damaged Mr. Schulte's laptop. See Dkt. 838. Defense counsel then immediately purchased a new laptop. Id. At a June 3, 2022 Conference Mr. Schulte moved to postpone trial by a week due to this incident, but the Court pushed to further expedite the laptop exchange; thus the government offered to "assist" in swapping the hard drive out of the broken laptop and into the new laptop—at no point did defense counsel seek assistance in repairing the broken laptop. Mr. Schulte hearily agreed under very strict conditions that the government ① only perform a physical hard drive swap, ② not conduct any search, and ③ not alert the prosecutors to any incidental discoveries. There was a colloquy to this effect on the record and admonition by the Court to the government about these conditions. See 6/3/22 open conference and later CIPA conference. Upon receipt of the laptop, the government immediately violated all three conditions by ① attempting to power on the laptop, ② searching the BIOS, ③ logging into the laptop, ④ searching the laptop, and ⑤ notifying the prosecutors of their purported findings—an unprivileged BIOS password and a small encrypted drive on the laptop. The unprivileged BIOS password was confirmed by the government and merely prevented anyone from accessing the laptop—as an unprivileged account it could not be used to modify any BIOS settings. The encrypted drive was used to store privileged information since the government regularly seized the laptop and copied Mr. Schulte's privileged information—an encrypted drive has been used since 2018 with no prior complaint from the government.

The government then lied to the court, claiming not only that the unprivileged BIOS account had not been setup by the government, but also that Mr. Schulte could use the unprivileged account to modify the BIOS—and demanded to conduct a review of the laptop to ensure BOP security compliance. At no point did the government notify the Court that the BIOS settings were irrelevant since the wifi component had been physically disconnected to the motherboard—requiring a special screwdriver, soldering iron, and many other specialized tools and skills.

Nonetheless, the court ordered the government to conduct the review to ensure compliance with BOP security policy. See 6/3/22 Transcript. The government completed its review and verified that (1) the unprivileged BIOS account had been configured by the government; (2) no BIOS settings had been modified; (3) the wireless component was still physically disconnected and could not be re-enabled through the BIOS; (4) the laptop had never been connected to the internet. The government thus returned the laptop later that day, leaving the unprivileged BIOS password and encrypted drive — not once did the government claim that either constituted a violation of any laptop policy.

A few weeks after trial, the parties met to discuss the next trial. The court confirmed Mr. Schulte's use of the laptop and gave him several months to work on the Rule 29/33 motion while counsel took on responsibility for handling the next trial. Not long after, the government falsified evidence, fabricated evidence, and perpetrated a fraud on the court in their search warrant affidavit to seize the laptop, which was executed July 26, 2022. Among the most egregious fraud was the government's claim that they had not verified the laptop's BOP compliance at the June 3, 2022 conference notwithstanding both the court's request to do so and the government's own assertion that they would do so; the government knew there could not be probable cause due to this fact so they simply lied and claimed it didn't happen — knowing that no court would ever uphold the constitution and that they would never face any consequences for doing so. Furthermore, the government downplayed the critical significance of the physically disconnected wifi component, and again lied about the unprivileged BIOS password, falsifying allegations that Mr. Schulte configured it, indicating any alteration of the BIOS through "hacking" despite the fact that it was not a privileged account and could not modify the BIOS.

The parties then met for another conference. Neither the court nor the government claimed that Mr. Schulte should not have the laptop anyway or that he had violated any rules or regulations with the laptop. Instead, the court cancelled the Rule 29/33 deadline pending the laptop's return.

P. 6/14

The government's search of the laptop should have ended in less than a week. Even supposing the fraudulent warrant was legitimate, the government's first search should have been the wifi component because if it were still physically disconnected it would have been physically impossible for the laptop to connect to the internet and therefore ended any search based on the crimes and probable cause in the warrant. And in fact, Mr. Schulte had not overcome the impossible and re-enabled the wifi component, yet the search did not end. The BIOS had never been modified and the laptop never connected to the internet, yet the search did not end. Why? What legal reason remained to continue searching? The government simply doubled-down and began executing a general warrant to search for evidence of any possible crime as it does for all electronic searches today.

In September the government claimed to find child pornography on the laptop. There are, however, no child pornography pictures or videos on the laptop—not one. Instead as discovered at a later review of the government's forensic report of the laptop, which was finalized in September despite the government's continued lies that it is still "reviewing" and "investigating" the laptop, the government actually found thumbnail images of child pornography generated by the operating system and stored in the hidden, system thumbcache database file—a file that cannot be reviewed or accessed by the user. The forensic evidence indicates these thumbnail images were automatically generated by the operating system after the government connected the child pornography discovery drive to the laptop during setup in 2021—although it never copied any child pornography files onto the laptop, the insertion of a drive with pictures and videos automatically triggered the thumbnail generation—which Mr. Schulte was completely unaware of, nor could he access the thumbnails even if he wanted to. Thus, the creation of the child pornography thumbnail cache was a direct result of government actions that the government has thus far refused to acknowledge—as they have no incentive nor legal requirement to do so.

P. 7/14

Nonetheless the government began sending the court secret ex-parte letters and sought multiple search warrants to seize Mr. Schulte's discovery drives both in the MDC and at the SCIF. The government put forth no legitimate facts for these searches but merely claimed ipse dixit that Mr. Schulte must have stolen child porn from the SCIF and copied it onto his laptop. This is the critical juncture at which point Judge Furman stopped acting as a judge and reverted to a prosecutor; at this point Furman believed every lie told to him by the government as the Word of God, and all his actions that followed illustrate his newfound bias and prejudice against Mr. Schulte. He determined that Mr. Schulte must be guilty because the prosecutors said so, and immediately banned him from the SCIF and the use of a laptop; he also set the Rule 29/33 deadline.

Mr. Schulte protested the court's definition of Due Process as "presumed guilty until the prosecution says otherwise," but on deaf ears. The Court told Mr. Schulte he could receive the laptop back only if the government determined it had made a mistake, but simultaneously refused to compel the government to complete its investigation in a timely manner or provide the defense access to the forensic data to engage in a meaningful adversarial litigation of the facts. Mr. Schulte informed the court of multiple impediments, but the Court refused to address any of them. Over the next several months, Mr. Schulte repeatedly told standby counsel of these ongoing limitations, and requested that she notify the court and request both an adjournment of the Rule 29/33 motion and resolution of the issues; however Mr. Schulte had no idea whether standby counsel relayed these requests to the court as ~~xxxxxxxxxxxxxxxx~~ Mr. Schulte did not trust her this he began to write the court himself, which were delayed due to continual mail issues due to SAMs (which Mr. Schulte has tried to get the court to resolve for 5 years). Mr. Schulte was never provided his work product, a working typewriter, the complete trial record, or any other essential resources making it impossible to write a single sentence. Ultimately standby counsel filed the first draft of the Rule 29/33 motion written during trial.

III. Court must provide Mr. Schulte a laptop and his work product

A. Banning the laptop based on government whisperings and false allegations violates procedural Due Process

Mr. Schulte was granted a laptop by Judge Crotty due to the requirements of special software needed to review discovery. The laptop later became necessary for Mr. Schulte to represent himself. The Court cannot now remove the laptop based on nothing but whisperings and false allegations by the government. Just as a Court cannot revoke bail simply because he feels like it, this Court must likewise employ some adversarial ~~its~~ procedure to ensure procedural Due Process guaranteed by the Fifth Amendment. If the government refuses to allow the defense to actually review the laptop, conduct independent tests and submit its own forensic testimony for the Court to review, then the court cannot simply ban the laptop because he used to be a prosecutor and is biased and prejudiced in favor of the government and against Mr. Schulte. The Courts ~~cannot~~ belief that procedural Due process simply entails the government writing secret, ex parte letters, making baseless allegations, and the presumption that Mr. Schulte is guilty until the prosecutor says otherwise is abhorrent to the Constitution. Accordingly, this Court must provide Mr. Schulte with a laptop forthwith —until and unless the government actually shares its secret allegations with the defense, the defense is permitted its own rebuttal and there is some judicial finding based on the presentation of evidence and facts to the court consistent with procedural Due Process guaranteed by the Fifth Amendment.

B. Holding Mr. Schulte's work product hostage awaiting government review violates procedural Due Process

Over the past 6 years Mr. Schulte has used the laptop to create extensive work product and to receive extensive work product from counsel. The government seized multiple hard drives, CDs, DVDs, and notebooks and paper documents that constitute 6 years of work product. None of these electronic devices or paper

documents contain any child pornography—yet the government continues to hold this critical data hostage. This is an outrageous violation of procedural Due Process. The government has essentially stolen all of Mr. Schulte's work product to guarantee their victory—as if an opposing football team confiscated their opponent's uniform, pads, and playbook then demanded that they start the game. Just as none could expect a fair game, it is not possible for Mr. Schulte to effectively represent himself and compete with the government without his work product. It is a violation of procedural Due Process to allow the government to continue holding this work product hostage while it pretends to "investigate" the materials ad infinitum. Accordingly, this Court must order the government to provide Mr. Schulte a copy of his seized drives, CDs, DVDs, hardcopy documents, and the work product from his laptop forthwith.

### C. The laptop and work product ban violates Substantive Due Process
#### 1. Mr. Schulte's disability necessitates laptop

First and foremost, as Mr. Schulte has informed the Court countless times, he has a physical disability that hinders his ability to write by hand. It takes months to do what previously took days—yet the Court does not take this into account when setting a deadline or the extensive pain it causes Mr. Schulte. Mr. Schulte began working on this in October 2022—yet now in January as these sentences are written it is still months away. Without a laptop, Mr. Schulte also cannot edit this—it is all written stream-of-consciousness first draft from a 1-page outline. Mr. Schulte simply cannot afford to physically edit and rewrite multiple drafts—significantly impacting both the quantity and quality. Compare & contrast the total number of words & overall quality with typed/printed motions. Accordingly, Mr. Schulte is not able to effectively represent himself without a laptop.

#### 2. Impossible to conduct legal research and incorporate into motion without laptop

There is no way to compile or markup legal research on the MDC's law library. In the past, Mr. Schulte has had to literally type into the laptop any relevant cases he finds on the law library. He thus has 6 years worth of manually typed relevant case law on his

P. 10/14

laptop and drives that he can no longer use, but it's also impossible to perform any additional legal research—he must write it at by hand, but his disability and limited LL time makes this impossible, supra. As a result this Motion does not contain a single citation—compare with previous typed Motions. This critically weakens Mr. Schulte's argument and the overall quality of the Motion. Accordingly, Mr. Schulte is not able to effectively represent himself without a laptop.

    3. Ban of 6 yrs worth of work product unreasonable

As previously discussed, Mr. Schulte spent the last 6 years generating not only thousands of lines of relevant caselaw from the law library, but also other work product necessary for the Rule 29/33 Motion—his notes ~~&~~ & attorney notes from the first trial, annotated transcripts, planned arguments, outlines, and drafts inter alia. These materials are stored in office formats that cannot be reviewed from the MDC's discovery computer—even if the government ever provided him a copy of his own work product. Accordingly, Mr. Schulte is not able to effectively represent himself without a laptop or access to his work product.

    4. Laptop required to review complete trial record

As Mr. Schulte has repeatedly told the Court, the trial transcripts and exhibits provided by the government cannot be reviewed by the MDC's discovery computer. Several exhibits require office to fully view—and thus Mr. Schulte does not have access to the complete trial record. Accordingly, Mr. Schulte is not able to effectively represent himself without a laptop.

    5. Government's ability to use laptop while Mr. Schulte banned violates Substantive Due Process

The government can use a laptop to easily and effortlessly type its Motion, review, edit, spellcheck, share and otherwise effectively engage in litigation. Yet Mr. Schulte, a tortured slave in an American concentration camp cannot do so. The technical edge by the government affords it a substantial advantage in violation of Substantive Due Process—like giving Mr. Schulte a medieval longsword and the government a glock for a duel. This technological gap ensures Mr. Schulte's defeat. Accordingly

P. 11/14

Mr. Schulte is not able to effectively represent himself without a laptop.

    6. Court's arbitrary Rule 29/33 deadline before any judicial procedure related to the laptop ban violates substantive Due Process

    The Court has declared Mr. Schulte guilty until the government says otherwise. Yet, he has not set any judicial proceeding for the defense to engage in adversarial litigation over the key facts. Once Mr. Schulte proves definitively that it was indeed the government who was responsible for the child porn thumbcache images, the government will have already won since the Rule 29/33 deadline would have long since expired. Thus we arrive at a fundamental unfairness — the Court cannot travel back in time and allow Mr. Schulte the ability to use a laptop in preparing his Rule 29/33 motion after the government's guilt is firmly established. Hence, not only is it a reprehensible violation of procedural Due Process to ban Mr. Schulte from the laptop, but the requirement for Mr. Schulte to proceed without the laptop before a single fact has ever been presented, let alone litigated before the court simultaneously violates substantive Due Process.

    7. Banning laptop due to government's actions repugnant to Due Process

    Finally, the forensics prove beyond any shadow of doubt that it was the government itself that triggered the operating system to generate the thumbnails of child pornography on the laptop. Hence, it is repugnant to substantive Due Process to punish Mr. Schulte for the actions of the government.

    D. A laptop must be provided to Mr. Schulte in his pending criminal case anyway

    Ever since July 27, 2022 when the government illegally seized his laptop, Mr. Schulte has been unable to review his discovery for the pending trial — which was only exasperated by the government's seizure of Mr. Schulte's discovery drives in October — which to this date have never been replaced. However, Mr. Schulte's discovery consists of forensic images and files that cannot be reviewed on MDC's discovery computer (FTK, Office, etc.) which was the original reason Mr. Schulte was provided a laptop in 2018. Thus the court must provide Mr. Schulte a laptop to review discovery anyway.

P.14/14

## IV. COURT MUST ALLOW MR. SCHULTE TO FILE R. 29 ADDENDUM

Since the Court violated Mr. Schulte's Due Process right to a laptop for effective self-representation, it must now provide a laptop, his work product, and allow him the ability to actually file an addendum to his Rule 29/33 filing since he was never able to work on or complete a single sentence. The fact that the courts arbitrary deadline has expired cannot be counted against Mr. Schulte since he informed the court of multiple impediments preventing him from filing the motion as well as to standby counsel. Additionally, Mr. Schulte began work on the instant motion in October 2022 — long before the deadline expired, but has been delayed in filing it due to his physical disability (if he had the laptop it would have been filed in October). Specifically, the following ongoing issues prevented Mr. Schulte from filing a Rule 29/33 motion, and will continue to prevent him from filing any reply: The government refuses to ① provide a complete trial record (several exhibits and transcripts cannot be displayed on MDC discovery computer), ② a copy of Rule 29/33 draft, ③ annotated transcripts and substantial work product from seized electronic devices and hardcopy notebooks, ④ MDC to this very day has not provided a functional typewriter, ⑤ law library down for last several months, ⑥ cannot pass drafts or other documents to attorneys for assistance # and compliance with CIPA protective order (every filing must be reviewed by standby counsel). Mr. Schulte communicated these debilitating issues to standby counsel for referral to the court. None were ever resolved. Hence, Mr. Schulte was unable to write a single sentence and standby counsel merely filed Mr. Schulte's first draft of the Rule 29/33 motion, written during trial and provided to standby counsel after verdict.

Accordingly, the Court must resolve these issues, provide Mr. Schulte a laptop and work product consistent with the Due Process Clause of the Fifth Amendment and allow Mr. Schulte to review the filed Rule 29/33 motion and file an addendum as needed to ensure Mr. Schulte's arguments are properly set forth in the record and preserved on appeal.

## V. ALTERNATIVELY COURT HAS DENIED EFFECTIVE SELF-REPRESENTATION

Alternately, if the Court refuses to abide by the Constitution and his oath thereby — not to the government and his fellow prosecutors, but to the Constitution itself, then let the record show that the Court has denied Mr. Schulte the right to effective self-representation; for how can Mr. Schulte possibly file a Rule 29/33 motion without access to the complete record? Or the law library from which to view that record and research legal authorities? Or his own work product and drafts? Or access to his attorneys for assistance and compliance with the CIPA protective order? The Court has essentially placed Mr. Schulte in the position of filing something potentially classified in violation of the protective order and a contempt of court charge or not filing anything at all. Which he cannot do without access to a laptop anyway.

Accordingly, if the Court refuses to provide Mr. Schulte a laptop, his work product, and an opportunity to actually work on and file a Rule 29/33 addendum, then the Court has denied Mr. Schulte the right to self-representation. It must therefore assign Debra Colson to complete the Rule 29/33 motion practice — and let the record show the Court's bias and prejudice against Mr. Schulte as well as his complete disregard for the Constitution.

P. 14/14

# VI.  CONCLUSION

For these reasons, the Court should provide Mr. Schulte a laptop, access to his own work product, resolve any remaining debilitating issues and actually allow Mr. Schulte to work on and file a Rule 29/33 Motion. Alternatively the Court has denied Mr. Schulte the ability to effectively represent himself and should assign Debra Colson to complete the litigation of the Rule 29/33 motion.

Dated: Brooklyn, New York

Joshua Adam Schulte
Slave # 79471054
MDC
P.O. Box 329002
Brooklyn, NY 11232

Started October 2022
Completed February 2023
Finalized and Mailed on: 3/1/23
(mailed to CO)

Josh Schulte #79471-054
MDC
P.O. Box 329002
Brooklyn, NY 11232

RECEIVED
SDNY PRO SE OFFICE
2023 MAR 10 PM 2:56

ATTN: U.S. v. Schulte, S3 17 cr. 548 (JMF)
Pro Se Intake Office
U.S. District Court SDNY
500 Pearl Street
New York, NY 10007

U.S.A.
SDNY

