

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 10, 2023

**BY ECF**

Hon. Jesse M. Furman
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

      Re:    *United States v. Joshua Adam Schulte*,
              S3 17 Cr. 548 (JMF)

Dear Judge Furman:

      The Government respectfully submits this letter in response to the Court's order, dated March 31, 2023, directing the Government to file a proposed script for the Court's inquiry pursuant to *Faretta v. California*, 422 U.S. 806 (1975), regarding the defendant's apparent request to proceed *pro se* at the upcoming trial of the remaining previously-severed charges in this case. The Government respectfully requests that the Court make certain inquiries of the defendant to enable the Court to make findings on the record as to (1) whether the defendant is competent to waive his right to counsel, *see Indiana v. Edwards*, 554 U.S. 164 (2008), and (2) whether he does in fact intend to waive his right to counsel and does so knowingly, voluntarily, intelligently, and unequivocally, with full awareness that his self-representation will not entitle him to special exceptions either from his conditions of confinement or the procedural rules and orders of the Court. Attached hereto for the Court's consideration is a proposed advice of rights (Exhibit A) and list of questions for the Court's potential colloquy with the defendant (Exhibit B).

    I.      **Applicable Law**

      The Sixth Amendment guarantees a criminal defendant the right to self-representation. *Faretta*, 422 U.S. at 818-21. However, the right to self-representation is not absolute. A defendant may exercise his constitutional right to proceed *pro se* only if the court assures itself that the defendant is competent to stand trial; finds that the waiver of the right to counsel is made voluntarily, knowingly, and intelligently; and finds that the defendant is competent to represent himself at trial. *Id.* at 836; *Edwards*, 554 U.S. at 164; *United States v. Culbertson*, 670 F.3d 183, 193 (2d Cir. 2012); *United States v. Fore*, 169 F.3d 104, 108 (2d Cir. 1999). Further, even where a defendant is competent to stand trial and makes a voluntary, knowing, and intelligent waiver of his right to counsel, "[a] district court 'need not countenance abuse of the right to counsel or the

right to waive it.'" *United States v. Kerr*, 752 F.3d 206, 221 (2d Cir. 2014) (quoting *United States v. Taylor*, 933 F.2d 307, 311 (5th Cir. 1991)). "A defendant has no right to engage in serious and obstructionist misconduct, and a court may deny a defendant's request to proceed *pro se* if it finds that the request is manipulative or abusive in some other way." *United States v. Barnes*, 693 F.3d 261, 271 (2d Cir. 2012) (cleaned up).

### A.     Competency to Stand Trial

Before permitting a defendant to waive the right to counsel, a court must assure itself that the defendant is competent to stand trial. *Godinez v. Moran*, 509 U.S. 389, 400 (1993). Competency to stand trial requires the ability to understand the nature of the proceedings, to consult with counsel, and to assist counsel in preparing a defense. *Drope v. Missouri*, 420 U.S. 162, 171 (1975). The law does not mandate an explicit competency determination in every case in which a defendant seeks to proceed *pro se*. *See Godinez*, 509 U.S. at 401 n.13 ("As in any criminal case, a competency determination is necessary only when a court has reason to doubt the defendant's competence."). Rather, "to make a determination of competency, the district court should consider the behavior, demeanor, and prior psychiatric history of the defendant." *United States v. Turner*, 644 F.3d 713, 721 (8th Cir. 2011). Here, in light of the Court's extensive opportunity to observe the defendant's behavior and competency, the Government respectfully submits that a brief explanation of the charges and inquiry as to the defendant's understanding of them and the nature of the proceedings, as set forth in Exhibit B, will suffice to satisfy this requirement.

### B.     Unambiguous Request to Waive the Right to Counsel

Because self-representation "relinquishes . . . many of the traditional benefits associated with the right to counsel," *Faretta*, 422 U.S. at 835, the right to self-representation does not attach unless it is asserted "clearly and unequivocally," *Wilson v. Walker*, 204 F.3d 33, 37 (2d Cir. 2000). The Court must ensure that the defendant is not "vacillating on the issue," *id.*, and understands that "[e]ven when [a defendant] insists that he is not waiving his *Faretta* rights, a *pro se* defendant's solicitation of or acquiescence in certain types of participation by [standby] counsel substantially undermines later protestations that counsel interfered unacceptably." *McKaskle v. Wiggins*, 465 U.S. 168, 182 (1984). As the Second Circuit has explained:

> The purpose of requiring that a criminal defendant make an "unequivocal" request to waive counsel is twofold. First, unless the request is unambiguous and unequivocal, a convicted defendant could have a colorable Sixth Amendment appeal regardless of how the trial judge rules: if his request is denied, he will assert the denial of his right to self-representation; if it is granted, he will assert the denial of his right to counsel. Second, the requirement of an unambiguous and unequivocal request inhibits any deliberate plot to manipulate the court by alternatively requesting, then waiving counsel.

*Williams v. Bartlett*, 44 F.3d 95, 100-01 (2d Cir. 1994) (cleaned up).

### C. Voluntary, Knowing, and Intelligent Waiver

Finally, the court must also determine that the defendant's waiver of counsel is voluntary, knowing, and intelligent. To that end, the court should engage in an "on-the-record colloquy" with the defendant. *See United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1987). While this colloquy is not required to follow any particular form,

> [t]he court should conduct a "full and calm discussion" with defendant during which he is made aware of the dangers and disadvantages of proceeding *pro se*. The content of that discussion normally includes a discussion of "the nature of the charges, the range of allowable punishments, and the risks of self-representation." . . . The extent of the discussion will depend upon the circumstances of the case.

*Fore*, 169 F.3d at 108 (citations omitted); *see Culbertson*, 670 F.3d at 193 ("Without resort to any particular talismanic procedures, a district court should establish that the defendant understood that he had a choice between proceeding *pro se* or with assigned counsel, understood the advantages of having one trained in the law to represent him, and had the capacity to make an intelligent choice." (internal quotation marks omitted)).

The colloquy should also include a discussion of the limitations of self-representation. For example, the court should establish that the defendant understands, among other things, that: (1) the trial judge "is under no duty to provide personal instruction on courtroom procedure," *see Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 162 (2000); (2) the trial judge may appoint standby counsel if necessary, even over the defendant's objection, *see Faretta*, 422 at 834; *see also Martinez*, 528 U.S. at 162 (noting that standby counsel "may participate in the trial proceedings, even without the express consent of the defendant, as long as participation does not seriously undermine the appearance before the jury that the defendant is representing himself" (internal quotation marks omitted)); (3) "[o]nce a defendant exercises his constitutional right to defend himself and proceed *pro se*, he does not have the absolute right to thereafter withdraw his request for self representation and receive substitute counsel," *see United States v. Merchant*, 992 F.2d 1091, 1094 (10th Cir. 1993); *see also United States v. Solina*, 733 F.2d 1208, 1211-12 (7th Cir. 1984); and (4) a defendant who elects to proceed *pro se* "has no constitutional or statutory right to represent himself as co-counsel with his own attorney," *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989); *see also Schmidt*, 105 F.3d at 90 ("[T]here is no constitutional right to hybrid representation.").

Finally, the colloquy should make clear that the defendant will have to represent himself within the limits of his incarceration, and is not entitled to any special resources or accommodation as a result of his decision to waive his right to counsel. "'[T]he right to represent oneself in criminal proceedings[, although] protected by the Sixth Amendment, . . . does not carry with it a right to state-financed . . . resources where state-financed legal assistance is available.'" Dkt. 970 at 1 (quoting *Spates v. Manson*, 644 F.2d 80, 84-85 (2d Cir. 1981)); *see also, e.g., United States v. Byrd*, 208 F.3d 592, 593 (7th Cir. 2000) (A defendant "has the right to legal help through appointed counsel, and when he declines that help, other alternative rights, like access to a law library, do not spring up."); *Degrate v. Godwin*, 84 F.3d 768, 769 (5th Cir.

1996) (collecting cases noting that "many federal circuit courts have held that a prisoner who knowingly and voluntarily waives appointed representation by counsel in a criminal proceeding is not entitled to access to a law library").

### D. Competency to Proceed *Pro se*

Even where a defendant is competent to stand trial and his waiver of the right to counsel is voluntary, knowing, and intelligent, a court may, but is not required to, reject the defendant's request to proceed *pro se* if the court finds that the defendant lacks the mental capacity to put on a defense at trial. *See Edwards*, 554 U.S. at 176-78. The *Edwards* Court concluded that "the Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so." *Id.* at 177-78; *see id.* at 175-76 (noting that "[i]n certain instances an individual may well be able to satisfy *Dusky*'s mental competence standard, for he will be able to work with counsel at trial, yet at the same time he may be unable to carry out the basic tasks needed to present his own defense without the help of counsel") (citing *McKaskle*, 465 U.S. at 174 (describing trial tasks as including organization of defense, making motions, arguing points of law, participating in voir dire, questioning witnesses, and addressing the court and jury)).

The Second Circuit, along with several other Courts of Appeals, has construed *Edwards* to confer discretion, not to impose a separate duty. In other words, *Edwards* authorizes, but does not require, district courts to reject otherwise valid requests to proceed *pro se* where the record indicates that the defendant, while competent to stand trial, lacks the capacity to put on a defense. *See United States v. Siddiqui*, 699 F.3d 690, 705 (2d Cir. 2012) ("*Edwards* holds that a court may require that trial counsel appear on behalf of a mentally ill defendant, not that it must do so."). Thus, "[t]he matter of whether a defendant must be allowed to represent himself at trial requires answers to two principal questions: whether the defendant is competent to represent himself at trial, and whether the request to proceed *pro se* is genuine." *United States v. Barnes*, 693 F.3d 261, 270 (2d Cir. 2012) (citing *Edwards*, 554 U.S. at 170, 177-78, and *Faretta*, 422 U.S. at 817).

## II. Discussion

On July 14 and 22, 2021, the Honorable Paul A. Crotty held a *Faretta* hearing in this case in connection with the defendant's request to waive his Sixth Amendment right to counsel and proceed *pro se*. Judge Crotty advised the defendant that his request to proceed *pro se* was applicable only to the charges "of crimes of espionage, computer misuse, and obstruction of justice" (the "CIA Leaks Charges") set for trial at that time, and that with respect to the severed "charges pertaining to receipt, possession, and transportation of child pornography and copyright violations," (the "Severed Counts") the Court would "hold another hearing later to determine whether you still want to represent yourself in the proceedings in the second set of charges." (July 14, 2021 Tr. at 16). Though the defendant initially said that his desire to proceed *pro se* with respect to the CIA Leaks Charges depended on the Court's granting certain requests relating to his complaints about access to classified and unclassified discovery and to legal research resources, among other things, the defendant later acknowledged that he was waiving his right to

counsel regardless of the Court's resolution of those matters. (July 22, 2021 Tr. at 3-4). The Court cautioned:

> Let me give you one more word of caution here, Mr. Schulte. The fact of the matter is that a professional attorney would not face the problems you're facing because you're incarcerated. And we can try to modify those conditions as we go along, but the fact of the matter is that you're always going to be at a deficit vis-à-vis retained or appointed counsel, who does not carry the burden of being incarcerated. And you are incarcerated. That causes certain problems in the preparation. If you want to represent yourself, that's fine. But you can't modify all of the conditions that are inhibiting you right now.
>
> * * *
>
> You're entitled to your right of self-representation. That's clear. But the fact of the matter is acting as your self-representative, because you're incarcerated, you bear certain burdens that do not burden retained counsel and appointed counsel. That's the only point.

*Id*. at 8-9. The defendant then responded, "Right." *Id*. at 9. The Court found that the defendant was competent to waive his right to the assistance of counsel and had knowingly, voluntarily, and unequivocally waived that right. (Dkt. 485).

The defendant represented himself throughout the proceedings relating to the CIA Leaks Charges, including at trial in June and July 2022. On July 13, 2022, the defendant was found guilty of one count of illegal gathering of national defense information, in violation of 18 U.S.C. § 793(b); three counts of illegal transmission or attempted transmission of unlawfully possessed national defense information, in violation of 18 U.S.C. § 793(e); one count of unauthorized access to computers in order to obtain national defense information, in violation of 18 U.S.C. § 1030(a)(1); two counts of causing transmission of a harmful computer program, information, code, or command, in violation of 18 U.S.C. §§ 1030(a)(5); and one count of obstruction of justice, in violation of 18 U.S.C. § 1503.[1]

On July 25, 2022, the defendant filed a letter notifying the Court that he wished to continue *pro se* for purposes of filing post-trial motions pursuant to Federal Rules of Criminal Procedure 29 and 33, but that he did "not wish to represent [him]self for the CP charges nor for any other matter concerning the espionage trial—sentencing, appeal, or anything—and I ask that present standby counsel take on these responsibilities." (Dkt. 885). In response to the defendant's request, the Court conducted a modified *Faretta* inquiry on July 26, 2022, to ensure

---

[1] At a previous trial in which the defendant was represented by counsel, he was found guilty on March 9, 2020, of making false statements to law enforcement, in violation of 18 U.S.C. § 1001, and contempt of Court, in violation of 18 U.S.C. § 401(3).

that the defendant's waiver of his right to represent himself was sufficient.  At that inquiry, the Court specifically advised the defendant that he did not have an unlimited right to change his mind about his representation:

> THE COURT: All right.  And do you understand that I'm not saying that if you were to change your mind down the line, that I would deny an application to go back to pro se status, but I might, which is to say you don't have the right to just sort of willy-nilly go back and forth? And I certainly wouldn't grant an application if it would delay the proceedings unduly. Do you understand that?
>
> THE DEFENDANT: Yes, I do.  I just wanted to note one thing, that I think that my initial Faretta waiver was specific just to this trial. So I'm not really sure that it's going back and forth. But I don't anticipate going back for this part.
>
> THE COURT: All right. Understood.  In any event, whether it was specific to this past trial or more general, certainly I'm not going to let you make or do anything that would affect our schedule in a material way and delay trial once we set a trial.  Do you understand that?
>
> THE DEFENDANT: Yes, I do.

(July 26, 2022 Tr. at 6-7).  The Court ultimately granted the defendant's request to have counsel appointed for all purposes relating to the Severed Charges.  (*Id.* at 8-9).

On January 10, 2023, the Court docketed a letter from the defendant requesting "a *Faretta* hearing to proceed pro se."  (Dkt. 991).  Following the termination of one of his counsel, the defendant again submitted a request to proceed *pro se* on March 28, 2023 (Dkt. 1026), and the Court has scheduled a *Faretta* hearing for April 21, 2023 (Dkt. 1031).

If the defendant persists in proceeding *pro se* at that hearing, the Government respectfully submits that it is appropriate for the Court to conduct a colloquy with the defendant that incorporates the areas of inquiry suggested by the Supreme Court and the Second Circuit outlined above.  Such a hearing would determine that the defendant does in fact intend to waive his right to counsel, *see Barnes*, 693 F.3d at 271 ("[E]ven after the right to proceed *pro se* has been clearly and unequivocally asserted, the right may be waived through conduct indicating that one is vacillating on the issue or has abandoned one's request altogether."), and that any such waiver of his Sixth Amendment right to counsel is made knowingly, intelligently, and voluntarily.  Pursuant to the Court's order, the Government has enclosed with this letter a proposed advice of rights, to be read to the defendant prior to direct questioning of him, as well as a proposed list of questions to be asked of the defendant.  Although the defendant was previously advised of these rights and cautions by Judge Crotty prior to proceeding *pro se* with respect to the CIA Leaks Charges, the Government respectfully submits that it is appropriate to reiterate them to the defendant at the upcoming proceeding to ensure that he is fully apprised of the consequences of his decision.

Further, informed by the experience of the defendant's self-representation with respect to the CIA Leaks Charges, the Government respectfully submits that it is appropriate to specifically allocute the defendant regarding (1) the fact that self-representation does not entitle him to any additional resources or special accommodations, and (2) the need to comply with the Court's procedural orders.

With respect to the availability of special resources, the defendant has repeatedly claimed that his decision to represent himself entitles him to additional access to technology, physical spaces (such as the courthouse Secure Compartmented Information Facility ("SCIF")), or prison resources. While the Government and the Court have endeavored to ensure that the defendant is adequately equipped to represent himself, the Court has repeatedly noted that the defendant is not, as of right, entitled to additional resources purely by virtue of his decision to forego representation by counsel. *See, e.g.*, Dkt. 552, 970, 1023. This is particularly true now, where the defendant has been found guilty of serious crimes of espionage and computer misuse, among others. Although the defendant is of course still presumed innocent of the Severed Charges, the conditions of his confinement are no longer governed by the standards applicable to pretrial detainees, but rather are due to his convictions on the CIA Leaks Charges. *See, e.g.*, *Stewart v. Schiro*, No. 13 Civ. 3613 (NGG), 2015 WL 1854198, at *11 (E.D.N.Y. Apr. 22, 2015) (quoting *Berry v. City of Muskogee*, 900 F.2d 1489, 1493 (10th Cir.1990) ("We see no reason to treat incarcerated persons whose guilt has been adjudicated formally but who await sentencing like pretrial detainees, who are detained primarily to ensure their presence at trial and who cannot be punished; and we perceive every reason to treat those awaiting sentencing the same as inmates already sentenced. The critical juncture is conviction, either after trial or, as here, by plea, at which point the state acquires the power to punish.")). While the Government will continue to work to ensure that the circumstances of the defendant's confinement should not arbitrarily or uniquely interfere with his right to represent himself, the defendant also does not have the right to weaponize the Sixth Amendment's guarantee of self-representation as a way to stymie the legitimate interest in both punishing and deterring the misconduct of which he has been found guilty.

Similarly, throughout the pendency of the defendant's self-representation on the CIA Leaks Charges, the defendant has repeatedly ignored the Court's procedural rulings regarding filing deadlines, page limits, and similar matters. (*See, e.g.*, Dkt. 827 (declining to strike motion to disclose classified information even though "the deadline for Defendant to file Section 5 Notices has long since past and it may be impossible at this late stage to litigate the CIPA Section 6 issues raised"); Dkt. 996 (exercising discretion to consider oversized motion despite "Defendant's seemingly willful flouting of the Court-ordered page limitations on his brief")). While the Court retains discretion in the enforcement of these rules, the Government respectfully submits that it is appropriate to advise the defendant that his failure to comply with procedural rules in the future would be a basis for the Court either to strike non-compliant filings or to revoke the defendant's *pro se* status entirely. *See, e.g. United States v. Helbrans*, No. S3 19 Cr. 497 (NSR), 2022 WL 562930, at *1 (S.D.N.Y. Feb. 22, 2022) (discussing revocation of *pro se* status), *reconsideration denied sub nom. United States v. Rosner*, 2022 WL 1004569 (S.D.N.Y. Mar. 30, 2022).

Finally, the Government requests that the Court also appoint standby counsel to assist in the trial of this matter. *Faretta* expressly acknowledged that the Court "may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." 422 U.S. at 834 n.46. Notwithstanding a defendant's invocation of his right to proceed *pro se*, the Court retains the power to "terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct" without offending the defendant's Sixth Amendment rights. *Id*. In addition, the presence of standby counsel is also critical in light of the defendant's asserted need to rely on classified evidence and to make classified filings. Unlike the trial of the CIA Leaks Charges, the Government does not expect that classified information will play much, if any, role in the trial of the severed charges. Given the defendant's convictions of crimes of espionage, including attempting to commit additional crimes of espionage while incarcerated pending trial on the CIA Leaks Charges, the Government submits that it is appropriate for the Court to appoint standby counsel to handle matters regarding classified information going forward. *See, e.g.*, *United States v. Subasic*, No. 09 Cr. 216 (FL), 2011 WL 1930628, at *1 (E.D.N.C. May 19, 2011) ("Although a defendant has a right to conduct his own defense, here principles of national security also come into play that do not permit defendant to have access to classified evidence without some further showing of necessity and without the assistance by standby counsel."); *United States v. Moussaoui*, No. 01 Cr. 455, 2002 WL 1987964, at *1 (E.D. Va. Aug. 23, 2002) ("The United States' interest in protecting its national security information outweighs the defendant's desire to review the classified discovery. We further conclude that Mr. Moussaoui's Fifth and Sixth Amendment rights are adequately protected by standby counsel's review of the classified discovery and their participation in any proceedings held pursuant to the Classified Information Procedures Act."). Concomitantly, the Court should advise the defendant that he will not be entitled to access to classified information merely by virtue of his decision to represent himself. Instead, to the extent that the defendant and standby counsel need to confer about classified matters, they can do so in the secure areas of the U.S. Marshals' facility set up for that purpose, and the defendant should not personally be able to access classified materials themselves or be produced to the courthouse SCIF.

For the foregoing reasons, the Government respectfully requests that the Court conduct a *Faretta* hearing consistent with the proposed advice and inquiry attached as Exhibits A and B.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

By: _____/s/_____
David W. Denton, Jr.
Michael D. Lockard
Assistant United States Attorneys
212-637-2744/-2193

cc: Defense Counsel (by ECF)