UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
UNITED STATES OF AMERICA                                          :
:
              -v-                                                 :     17-CR-548 (JMF)
:
JOSHUA SCHULTE,                                                   :            ORDER
:
                          Defendant.                              :
:
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Earlier today, the Court received the attached letter dated May 29, 2023 (and postmarked June 8), enclosing three motions, from Defendant. The letter and motions are still more of the same — repeating the same grievances that Defendant has made in many other *pro se* submissions and during pretrial conferences, which the Court has either found to be without merit or already addressed (e.g., during the June 15, 2023 pretrial conference and in a Memorandum Opinion and Order entered on June 22, 2023). *See, e.g.*, ECF Nos. 1051, 1062. To the extent that Defendant seeks new relief (e.g., dismissal of the indictment) based on the same grievances, his requests are denied as meritless.

      SO ORDERED.

Dated: June 27, 2023
       New York, New York

                                        JESSE M. FURMAN
                                        United States District Judge

U.S.D.J. Jesse Furman
40 Foley Square
New York, NY 10007

RE: U.S. v Schulte, 17 CR 548 (JMF)    May 29 2023

Attached are three motions. I again request a pretrial conference to address my inability to effectively represent myself. This Court previously denied my right to self-representation on the Rule 29/33 Motion by refusing to provide me with the trial transcripts and records, as is perfectly preserved for the Court of Appeals. And now, I have told the Court for nearly a full year that I have no access to discovery or any other resources necessary for self-representation. This Court, however, is uninterested in impartiality, justice, the Rules of Criminal Procedure, the Constitution, or Supreme Court precedent — it disregards all to treat me as a subhuman thing that must be tortured — due to its extreme hatred, bias, and prejudice. If the Court does not resolve the issues necessary for me to review discovery and prepare for trial in the next few weeks, I will consider it a denial of my right to self-representation and standby counsel will step in — and you can explain your actions to the Court of Appeals.

I note that mail delays, pen & paper shortages continue as unit team does not come by to replace these resources or pickup/dropoff mail except every few weeks.

I also note that I only recently discovered your order denying my Rule 29/33 motions for your recusal and access to a laptop — you never mailed the order to me, I guess assuming I should use telepathy to know these things. Standby counsel summarized it for me and dropped it in the mail for me (19th) last Friday, but because no one delivered mail this past week, I still have not received it. I will be filing a motion for reconsideration once I finally receive the order as it was never previously provided to me — and in the future the Court should ensure I receive its orders.

I was only a little surprised that the Court is no longer pretending to be impartial, but merely acting on behalf of the prosecutors and entering its own arguments against my motions and denying them altogether without providing me an opportunity to respond. The Court's arguments are simply misrepresentations — I am not seeking your recusal due to any orders you've issued, but because you have blatantly ignored the rules of criminal procedure, the Constitution, and established precedent; you refused to provide me the trial record or transcripts in a readable format, you outright lied and claimed to revoke the discovery laptop due to the recent convictions — which you cannot do anyway since I have never been sentenced and still have an upcoming trial — when the record proves that you revoked the laptop only when the government made false allegations against me — stating on the record that I must be guilty and will only receive the laptop back if the government's allegations were false — which they are. I don't think it's too much to ask for a judge to be unbiased, impartial, and not to outright lie when the record itself proves that lie to be what it is; a judge like Judge Gardephe or Judge Rakoff, who can set aside their emotions, whims, and desires and just apply the law as written. In any case, the Court will see my full motion for reconsideration once I receive the order.

And on that same note, the Court's failure to provide me a copy of its order is yet another strong reason that I could not have filed the Rule 29/33 reply — in addition to the lack of pens, paper, record, SCIF transcripts, etc. — that was a dispositive motion seeking access to a laptop or assignment of counsel to file the motion, which effectively stops the clock until an order is entered (and properly delivered).

There's really insufficient time for me to prepare for trial at this point while I still cannot access discovery — the Court should just enter a guilty verdict sua sponte as there's no longer any point to a trial.

5/29/23              Josh Schulte

United States v. Schulte, 17 CR 548 (JMF)

p/2

MOTION TO DISMISS INDICTMENT FOR FAILURE TO PRODUCE DISCOVERY PURSUANT TO FED R. CRIM P. 16

In July 2022, the Court set trial for September 11, 2023. Now, almost June 2023 — a year later and the government has still refused to provide discovery. The only remedy for 12 months of deliberate sabotage is dismissal of the indictment.

Fed. R. Crim. P. 16 requires the government to provide documents and objects that are material to preparing a defense, that the government intends to use in its case-in-chief at trial, or items obtained from or belonging to the defendant. Fed. R. Crim. P. 16(a)(1)(E). Both Mr. Schulte and counsel notified the government that neither Mr. Schulte nor counsel had any discovery for this case in July, August, September, October, November, December, January, February, March, April... but the government refused to produce any discovery. See letters from docket and email correspondence, exhibit A. Then on April 25, 2023 the government finally produced discovery to both Mr. Schulte and counsel — but in an unreadable format. Over 45% of the discovery could not be accessed or reviewed by Mr. Schulte without a laptop, and a similar amount was unavailable to counsel due to corruption. As of this writing, May 26, 2023, neither Mr. Schulte nor counsel have reviewed any discovery for the upcoming trial because it is not available to them.

Moreover, all previous work product concerning the discovery was illegally seized — the government essentially confiscated all trial strategy and defense work product to ensure an unfair advantage at trial. The government asserts that Mr. Schulte must start from scratch with

p2/2

insufficient time remaining and without any ability to access or review the discovery.

Absolutely no work was done on this case by either counsel or Mr. Schulte from July 2022 until present day due to government malfeasance.

Finally, it must be noted that the government also seized all of Mr. Schulte's proposed motion practice, including CIPA motion practice, and withheld discovery throughout the court's imposed pretrial deadlines. The result is extremely prejudicial to the defense as they were unable to file motions or engage in pretrial litigation at all.

Accordingly, due to deliberate government sabotage and prosecutorial misconduct, it is not possible for Mr. Schulte to have a fair trial on September 11, 2023. Since Mr. Schulte and counsel continually notified both the court and the government about these deficiencies, the fault lies squarely with the government. The only appropriate sanction at this late stage, in which both Mr. Schulte and counsel still cannot access discovery and cannot possibly turn back time to file pretrial motions and engage in meaningful pretrial litigation if the government ever decides to turn over discovery, is dismissal of the indictment pursuant to Fed. R. Crim. P. 16(d)(2)(D) and the Fifth and Sixth Amendments. The government has had a year to comply with discovery obligations, and has simply refused to do so.

The record is clear, and the Second Circuit will never affirm any convictions in which the government failed to produce discovery prior to pretrial deadlines or sufficiently before trial given the government had 14 months but refused to do so.

May 26, 2023

Respectfully Submitted,
Josh Schulte, pro se

United States v. Schulte 17 CR 548 (JMF)

P1/4

# MOTION TO DISMISS INDICTMENT FOR PROSECUTORIAL MISCONDUCT

The prosecutors in this case sought to deprive Mr. Schulte of his work product to ensure an unfair advantage at trial and guarantee a fraudulent guilty verdict through prosecutorial misconduct.

The prosecutors (1) violated court orders and illegally searched Mr. Schulte's discovery laptop, (2) relied upon this warrantless, illegal search and falsified information to illegally seize the laptop under false pretenses, (3) exceeded the scope of the illegal warrant, (4) claimed to find child pornography on the laptop when in reality there was no child pornography, but only hidden system thumbnail images that they themselves caused to exist, (5) used this false representation to illegally seize Mr. Schulte's notebooks, CDs, drives, and extensive work product despite no probable cause, (6) then refused to search the devices, but held them hostage, and, most critically, (7) deliberately withheld exculpatory evidence and lied to the court that it was "investigating" despite knowing Mr. Schulte's innocence and not actually investigating anything.

As a result, the court is compelled to dismiss the indictment or at the very least hold an evidentiary hearing in which the defense is entitled discovery of the prosecutor's and FBI's investigatory notes, findings, and all exculpatory evidence.

A. Prosecutorial Misconduct: The government caused the child pornography thumbnail images to be created and then tried to lie and cover up this fact

Upon review of the government's forensic report of the discovery laptop in December 2022 (the report finalized in October 2022), all alleged child pornography files as reported by the government, were actually thumbnail

p2/4

images stored in the Windows internal hidden/system database file thumbcache.db; No child pornography files were ever stored or accessed on the laptop. The thumbcache.db file is not an accessible file except through an indepth forensic examination that Mr. Schulte could not perform as he lacked the necessary tools, and therefore he could not have possibly known about the existence of the database file, nor knowingly possessed it.

Moreover, the forensics conclude that these files were automatically generated BEFORE the laptop was provided to Mr. Schulte — circumstantial evidence strongly indicating it was the result of a discovery drive containing the CP discovery being connected to the laptop.

Despite these clear facts, the prosecutors decided to falsify, and fabricate, and misrepresent the truth to obtain an illegal warrant to seize Mr. Schulte's entire work product — which could not possibly contain any CP. After seizing Mr. Schulte's work product, the government decided not to search any of it since it knew that none of it could possibly contain CP as it knew that the government itself was responsible for the CP thumbnail images. The government admitted this when it eventually sought a new warrant to search the seized devices over 7 months later.

Despite the fact that the investigation was completed, and the government was no longer searching any devices, the prosecutors continued to lie to the Court, claiming the opposite and failing to provide the Court with exculpatory evidence. The government wanted to incite the Court against Mr. Schulte and chose to mislead the Court into believing that Mr. Schulte accessed or possessed CP despite the government knowing this to be false.

And as final confirmation, the government chose neither to supercede, nor raise 404(b) arguments at trial — which it would have done if it had actually found CP on the laptop. Furthermore, Brady would have compelled the government to finally produce the exculpatory evidence if it had superceded or brought 404(b) arguments; but the government's decision to deliberately mislead and lie to the Court while obtaining fraudulent warrants and holding Mr. Schulte's work product hostage still constitutes prosecutorial misconduct

B. Prosecutorial Misconduct: The government illegally seized the laptop ab initio

On June 3, 2022 the Court told the government "that the contents would not be viewed by anyone, but certainly not by anyone associated with the trial team in any way, shape, or form." The government acknowledged this, but then immediately searched the laptop where they claimed to "find" BIOS anomalies and an encrypted drive. It then used the results of these warrantless discoveries as the basis for its search warrant to seize the discovery laptop on July 26, 2022. All alleged "probable cause" could never amount to what it claimed as the government had physically disconnected the wifi adapter — rendering the laptop incapable of accessing any wifi networks with or without the BIOS. The government neglected to explain this critical piece of information and instead opted to falsify evidence, fabricate evidence, and perpetrate a fraud on the court.

After seizing the laptop, the government confirmed that the wifi adapter was still disabled — which should have ended the search; instead, the government executed a general warrant including searching pictures, and videos, and inaccessible hidden/system database files — none of which were "plain view" or relevant for the alleged crimes or probable cause on the face of the warrant.

C. Conclusion

As a result, the government's decision to execute a warrantless search of the laptop and in deliberate contempt of court, then to lie about the laptop's ability to access wifi networks to obtain a fraudulent warrant, then to exceed the scope of the illegal warrant, then to deceive the Court about its findings and attempt to cover up its own role in the creation of the child pornography thumbnail images — to mislead the court into believing a crime took place when in reality the government itself was to blame; then to seize Mr. Schulte's entire work product on these false pretenses but refuse to search the devices as it knew no crime or evidence of a crime could possibly exist on them, then to continually lie to the Court and claim to be investigating when in reality

it was neither searching nor investigating anything as it already knew the government itself was to blame; and to conceal exculpatory evidence and lie to the court all constitute prosecutorial misconduct; altogether it creates a situation in which it is no longer possible for Mr. Schulte to receive a fair trial and must result in the dismissal of the indictment. Alternatively, Mr. Schulte has presented sufficient factual evidence from what he has access to discover for an evidentiary hearing.

Respectfully Submitted,
5/27/23  Josh Schulte, pro se

United States v. Schulte, 17CR548 (JMF)

p/5

## MOTION FOR EFFECTIVE SELF-REPRESENTATION

"The public conscience must be satisfied that fairness dominates the administration of justice. An accused must have the means of presenting his best defense. He must have time and facilities for investigation and for the production of evidence. But evidence and truth are of no avail unless they can be adequately presented. Essential fairness is lacking if an accused cannot put his case effectively in court." Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942). "A defendant's right to self-representation plainly encompasses certain specific rights to have his voice heard. The pro se defendant must be allowed to control the organization and content of his own defense, to make motions, argue points of law.... and to address the court..." McKaskle v. Wiggins, 465 U.S. 168, 174 (1984).

This Court's assumption that pro se defendants have no right to effective self-representation is clearly contradicted by Supreme Court precedent. For the Court to impose arbitrary limits or treat Mr. Schulte differently from other criminal defendants, defense attorneys, or the government is reprehensible to both the Fifth and Sixth Amendments.

First, the Court must provide Mr. Schulte with (1) access to the docket and written record of this case, (2) provide him with opinions and entries with sufficient time to comply with the Rules of Criminal Procedure, (3) provide him with access to his discovery, (4) provide him with access to his own work product, (5) provide him with a means to overcome his disability, and (6) provide him with sufficient time and resources necessary "to make motions, argue points of law," and adequately prepare for trial.

This Court is barred from using pretrial detention as an excuse to deny access to resources normally available to criminal defendants. It is well-settled law that pretrial detention cannot be used to punish, and cannot be arbitrary; if Mr. Schulte could have access to a resource if he were presumed innocent and able to fight his case outside of prison — imagine that, a man granted the actual presumption of innocence as existed in this country from 1776-1984 — this Court cannot deny that same resource.

p2/5

Otherwise, Mr. Schulte would be arbitrarily treated differently from other criminal defendants— those lucky enough not to be presumed guilty and forced to fight from the confines of prison.

This Court is also barred from relying upon recent convictions to deny Mr. Schulte with access to resources as he has not yet been sentenced and no punishment can yet be administered to Mr. Schulte. Moreover, imposing punishment now would inextricably link the pending case with the last case— if the previous case is vacated, then the pending case must also be vacated since punishment was imposed from the previous vacated convictions. There is simply no support from the law or precedent that such a ~~strict~~ restriction is permissible.

A. Access to the docket and written record of this case

Mr. Schulte cannot possibly represent myself without access to the complete docket. The government previously provided an electronic copy monthly via CD. It is no longer doing so. Standby counsel informed Mr. Schulte they do not have the resources to provide the complete docket. So I leave it to the court to find a way to provide the entire docket including updates. I note that the ~~illegible~~ MDC discovery computer is unable to display all pdf documents from the record, requiring a laptop.

B. Access to opinions and entries with sufficient time to comply with Criminal Procedure

Mr. Schulte cannot possibly represent himself without contemporaneous access to orders and docket entries. As an example, the Court apparently ruled on Mr. Schulte's motions for recusal and access to a laptop, but did not send this order to Mr. Schulte— nor did anyone else— as if Mr. Schulte could access the internet or use telepathy. As a result, Mr. Schulte missed the deadlines for rehearing or appeal despite no fault of his own; additionally, this provides another reason the Court cannot blame Mr. Schulte for failing to file a Rule 29/33 reply considering these motions were dispositive.



Regardless, this Court must find a way to provide Mr. Schulte with contemporaneous decisions and litigations. Mr. Schulte has raised the mail delay issue for the past 5 years, but this Court refuses to address the issue. MDC staff do not come by to deliver or pickup mail except once every week, 2 weeks, 3 weeks, etc. — instead holding the mail as it builds up and delivering it all at once, hence allowing them to do less work.

The Court should schedule weekly meeting conferences Mondays & Fridays for Mr. Schulte to deliver his work directly to the Court and receive updates contemporaneously. Or provide its own solution.

C. Access to Discovery

Mr. Schulte cannot possibly represent himself without access to his discovery. No attorney can. Mr. Schulte has notified the Court he requires access to a laptop and the SCIF to review his discovery. The Court has thus far refused to ensure access to discovery.

D. Access to work product

The government seized Mr. Schulte's 6-years-worth of work product in September 2022. It did so under false pretenses, alleging CP on Mr. Schulte's discovery laptop; but the thumbnail images originated BEFORE the laptop was ever provided to Mr. Schulte, indicating NO CP actually existed on the laptop or his discovery drives. The government then did not review any of the materials for over 7 months as it knew none of the materials could possibly contain CP. If the government had actually reviewed the material for 7 months, it would be finished today — instead it claims there is too much to review; which is clearly a problem of its own making. Regardless, the material is clearly Rule 16 and necessary if Mr. Schulte is to be able to prepare for trial. The government cannot seize and hold work product hostage — if it wishes to maintain the originals, that's the government's decision properly litigated in a Rule 41(g) motion, but it must at least provide a copy to Mr. Schulte. There is no analogous case where the government raids an attorney's offices and refuses to provide work product for a client's pending trial.



E. Provide a means to overcome disability

Mr. Schulte cannot possibly represent himself without proper ADA accessibility. As Mr. Schulte has informed the Court, he cannot maintain long hand-written documents. It causes extreme debilitating pain to do so. The Court need only compare Mr. Schulte's electronic filings with his hand filings: the former are many pages, always timely, and contain substantial authorities, while the latter take long periods of time to write, are extremely short, and contain almost no authorities. If a man is in a wheelchair, the Court cannot compel him to walk upstairs any more than the Court can compel Mr. Schulte to disregard his disability. This Court seems to enjoy mocking the disabled, and particularly Mr. Schulte. If Mr. Schulte pushes on with the pain to turn out a half-assembled document, then that is somehow proof that Mr. Schulte does not need any handicap, but if he is unable to meet a deadline then TOO BAD, SO SAD! It's a lose-lose situation in the Furman Court of Mocking the Disabled. It may be entertaining for this Court to mock the disabled, but it violates the Fifth & Sixth Amendments as well as the ADA.

Moreover, how can Mr. Schulte accomplish his Supreme Court certified right to "control the organization and content of his own defense, make motions", etc. without an appropriate handicap? A typewriter is insufficient as he still does not have access to ink, can only use it a very limited time during Monday-Friday, and cannot use it to perform legal research. Only a laptop allows Mr. Schulte to conduct legal research by typing instead of writing. There is no way for Mr. Schulte to effectively represent himself with his disability unless provided access to a laptop — as evidenced by the first trial.

F. Sufficient time and resources

Finally, the only mechanism to provide sufficient time and resources is with access to a laptop. Mr. Schulte had access to a laptop for the previous trial and there is absolutely no legitimate reason he should not be provided one for the upcoming trial especially since the government is not alleging any violation of the previous laptop — it has said it will neither supersede nor raise 404(b) arguments at trial. What does that say about

p/5

the government's allegations? That there is no case, absolutely no leg to stand on.

As for the government's and Court's arguments that Mr. Schulte is not entitled to a laptop due to recent convictions, it must first be noted that this is a baseless excuse. Neither the Court nor government ever made this argument after the first trial. When the government illegally seized the laptop, the Court recognized the importance of the laptop and adjourned the Rule 29/33 motion sine die until the laptop was returned. The government then engaged with the defense on the purchase of a new laptop at which point the government falsely claimed to discover CP on the laptop. The Court then said that if the allegations turned out to be "a mistake" then the laptop would be returned — hence, clearly the convictions never played a role in the court's decision. Moreover, the Court cannot impose punishment until after sentencing, and even then it cannot impose a sentence that would prevent Mr. Schulte from a presumption of innocence and preparing for the upcoming trial.

All that said, the Court previously granted Mr. Schulte the use of a laptop and nothing has changed since then — Mr. Schulte did not violate any laptop conditions, so the deprival is a violation of procedural due process — as if the Court granted Mr. Schulte a laptop and then the day of trial seized it and claimed Mr. Schulte never had a right to the laptop in the first place; regardless if Mr. Schulte does or does not have a right to a laptop, the Court cannot change its mind this late in the game without violating the Due Process Clause of the Fifth Amendment. Mr. Schulte relied upon and used the laptop for 5 years, and all of his work product and trial preparation exists exclusively therein. Mr. Schulte cannot receive a fair trial without the return of his laptop and work product.

CONCLUSION
For these reasons, the Court should grant the requested relief.

Josh Schulte

5/24/23



Josh Schulte #74471054
MDC Box 329002
P.O. Box 329002
Brooklyn, NY 11232

NEW YORK NY
8 JUN 2023 PM

RECEIVED
SDNY PRO SE OFFICE
2023 JUN 12 PM 3:33

ATTN: U.S. v. Schulte 17 cr 548 (JMF)
Pro Se Intake Office
U.S. District Court SDNY
500 Pearl Street
New York, NY 10001

USMP?
SDNY