P. 1/4

U.S.D.J. Jesse Furman
SDNY
40 Foley Square
New York, NY 10007

June 20, 2023

RE: U.S. v. Schulte, 17 CR 548 (JMF)

This will be my final letter outlining this Court's refusal to comply with clearly established law. The Court's June 6th Order was almost entirely false and misleading, but refused to allow me to correct the record at the June 15th hearing. My corrections to these inaccuracies are attached as exhibit A — which I urge the Court to review and correct before I file a petition for writ of Mandamus. I cannot possibly represent myself without resolution. As I only recently received the Court's March 23rd Order, Dkt. 1023, I am also obligated to correct the record with respect to the Rule 29/33 motions, though the Court has demonstrated its unwillingness to hear reason. Those corrections are attached as exhibit B — which I urge the Court to correct before I file a petition for writ of Mandamus. ~~Based on~~ Based on the Court's recent behavior, I doubt it will follow the Constitution, but these corrections are necessary for the record and to demonstrate to the Second Circuit that I have in fact exhausted all possible avenues of reason.

I note that I continue to fail completely to comprehend the Court's unwillingness to hold an evidentiary hearing. If it were me, the government claiming the defendant committed a crime, abused the resources I provided him, and my trust — while the defendant claims the government is playing me for a fool, I would want to know the truth. Indeed, if the government's allegations were true, you would have undisputable authority to sanction or outright deny my right to self-representation and discovery access; but on the other hand, if those allegations are in fact patently false, then your treatment of me has been a <u>Manifest injustice</u>.

If the Court refuses to hold a <u>full</u> evidentiary hearing, there are other simpler and much faster ways to arrive at the truth.

P.1/4

First, the BIOS log should unequivocally resolve the party's disputes about laptop misuse. Second, the government's claim that CP was found on the laptop — not merely thumbcache images that cannot be knowingly possessed — is nearly as simple to resolve: request the government file a simple full and complete file list of all the CP files derived from the source identified in the government's Bill of Particulars and criminal complaint — which is the subject of the pending trial — that were found on the discovery laptop; the court can review the actual files in camera. That's it. If I'm lying the government will file something, if the government is lying and playing you for a fool as I've been telling you this past year, they will not be able to file anything.

The government continually makes the outrageous allegations that CP was smuggled from the SCIF — a literal impossibility, but if it were true then there must exist either a record of a SCIF drive inserted into the discovery laptop or one of my drives inserted into the CP computer — so let the government present that evidence.

These would be simpler and faster than a full evidentiary hearing — so what's stopping you? I don't think you want to know — you are so fully invested in the government's lies that you don't want to believe you may be wrong — you are blinded by your bias and prejudice against me.

Which at least brings me to the mandamus petition. The court can review my preliminary statement to the Second Circuit here in Exhibit C and has this final opportunity to correct itself.

The gross misconduct that this court has engaged in over the past year is truly unprecedented. It unilaterally declared me guilty of possessing CP on my discovery laptop. When I dared to challenge false allegations, the court grew angry and began to madly lash out at me. This court

P.3/4

revoked my access to a discovery laptop based solely on its conclusory assertions that I must be guilty, then deceitfully made up other reasons to try and support the finding — claiming ex post facto to rely on recent convictions, or that I have no right to a laptop and it could have removed it in the middle of trial if it so pleased — but the record clearly shows, and the Court knows beneath its despicable deceit that the only reason is it believes me guilty and must punish me.

Next the Court refused to allow me access to the trial record and my work product to file a Rule 29 Motion; instead, the Court feigns reasonableness by allowing me many months to work on the motion — but without access to the trial record, I would not be able to telepathically access it in any amount of time. When I requested assignment of counsel since I could not complete it, the Court refused.

Then when I requested self-representation in the CP case, the Court scoffed and made clear that I would never get a laptop no matter what. I told the Court the laptop had nothing to do with the pro se request, but was required for me to review my discovery. But that made no difference to this Court — it said no laptop, and BY GOD if it was ever going to allow it — BY GOD if it was ever going to be wrong — as Judge he ~~must~~ must showcase his power and authority to insignificant guilty peons, who are afterall not human beings, but things to push around, dominate and torture in concentration camps.

Despite the clear record before Judge Crotty in which the government tried to find an alternative for 3 months before issuing the laptop, this Court claps his hands over his ears like a petulant child and cries na-na-na! Don't want to hear it! No matter the clear and irrefutable evidence that I've presented, the Court refuses to acknowledge the simple truth: I CANNOT REVIEW ANY DISCOVERY.

P.4y

One of the worst abuses of power committed by this Court is its willful violation of Fed. R. Crim. P. 16(a)(1)(E)(iii) hoping that "harmless error" will save it on appeal. This Court is actually PURPOSEFULLY violating the law IN BAD FAITH assuming that the Second Circuit will apply harmless error review, which is based on good faith reliance on the law; nothing can be more despicable. The Court clearly cares nothing for propriety and has no conscience.

The Court also refuses to compel the government to provide discovery that the government previously provided and acknowledged as Rule 16, instead substituting standby counsel for discovery review — blatantly violating the entire rationale for self-representation.

My attempts to highlight the Court's misconduct and request a return to the law have only backfired — no one is supposed to challenge the moral and personal superiority of judges, who cannot possibly make mistakes or errors in judgment, and this Court has perceived my complaints as a battle, and me as a thing he must dominate and bridle to preserve his superiority; blinded by pride, the court fails to see its own egregious misconduct.

Thus at this point I don't see any resolutions or adequate remedies available but mandamus. I encourage the court to read through the corrected record in exhibits A&B, and resolve these long-standing issues. If not, I provide exhibit C of the mandamus petition I have been preparing over the year and a final opportunity to resolve these issues before I file it and serve the copy to the court.

Respectfully Submitted,

6/20/23   Josh Schulte, pro se

EXHIBIT

A

A1/A8

## OUTSTANDING ISSUES

A. Corrections to June 6, 2023 Order

### 1. Stamps at 2

The court incorrectly states I purchased 20 stamps on March 28, 2023. We were notified on March 10, 2023 that the SAMs unit is not punished enough and therefore can no longer purchase commissary items in violation of federal regulations. I attempted to use our old commissary sheet to purchase 20 stamps, but was blocked at the last minute and never received them. I filed administrative remedies and brought the issue up in my civil case; I never had pens, papers, or stamps from the end of March throughout April.

(restricted)

### 2. Access to discovery at 3

I informed the court by motion that I could not access 95% of the April 2023 unclassified production. I specifically identified the file types, including all forensic images in production 6. I have notified both the government and standby counsel that I cannot access these materials. I have notified the court that I cannot access these materials. To this very date I cannot access these materials.

I cannot possibly make a more tailored request of the work product I need, because I have not memorized the directories and files pertinent to the upcoming trial; regardless, I am not required to do so. I am entitled to access to my entire work product consistent with Fed. R. Crim. P. 16 and the Due Process Clause of the 5ᵗʰ Amendment.

### 3. Access to the PLEX Server at 3

The entirety of the PLEX server is required to be produced to me under Fed. R. Crim. P. 16 due to its seizure from me and the materiality to the defense—it is the defenses not the government that determines what is material for its own case. Providing this only to standby counsel is not

A2/A8

sufficient because I am pro se. It was previously produced to me, and there is no legitimate reason the government cannot do so again.

4. <u>Access to classified discovery</u> at 3

I did file an ex parte letter detailing why the SCIF server is material to the defense. It also contains the IRC chats and is therefore part of the government's case-in-chief. It is material to the defense as outlined in my ex parte letter. And it was seized from me. The government is welcome to produce the server in unclassified format minus the Snowden documents—which I note for the Court that I previously requested but the Court declined my motion. Regardless, it must be produced to me, but has not been.

5. <u>Access to laptop</u> at 3-4

The Court is incorrect—the government's decision after a full year not to bring charges or even file 404(b) submissions severely undermine the government's case. If what the government claimed—that I had CP sitting on the desktop as opposed to thumbcache images I could not control or view—then that's the easiest indictment and conviction in the world.

I have disputed all government allegations regarding the laptop and could easily disprove them at an evidentiary hearing that the government is afraid to undertake and this Court has refused to permit.

My pro se status has nothing to do with my right to the laptop—the electronic discovery, my limitations on SAMs, and my existing work product all require the laptop.

6. <u>Mail delivery</u> at 4

I continue to have significant delays in mail deliveries, especially from my attorneys. 4-6 week delays are frequent. This constitutes a denial of my right to access the Courts. This must be resolved promptly.

A3/A6

7. Speedy Trial at 4

My Speedy Trial and Sixth Amendment speedy trial arguments are not frivolous. ~~[scribbled out text]~~. There was no CIPA in this case, nor ~~was~~ anyone visiting the SCIF before the CIPA deadline.

~~My~~ The Court erroneously asserts I've had 14 months to prepare for trial, but of course I didn't receive my discovery until a month ago. ~~III~~ Also, I am unable to prepare for trial not due to insufficient time, but because I can't review 95% of that discovery, I'm missing the PLEX and SCIF servers, and can't access my work product.

I've requested my right to a speedy trial which this Court has denied. I continue to request it.

B. Remaining at 4-6

I was not provided the laptop because I was pro se, but because I could not otherwise view my discovery as now.

I was never permitted to pass documents to my attorney at the MDC. The MCC allowed all SAMs to pass documents to their attorneys, but the MDC has never allowed it. Thus I never "abused" this non-existent "privilege".

The court's enumeration of its "helping" is all from the first trial — none now.

I would rather prepare for trial than writing to the Court that I cannot prepare for trial. It's up to you which one I do, not me.

I have identified with specificity which items I need.

My requests pertain solely to access to discovery.

I will have no choice but to request assignment of counsel if unable to represent myself due to your denial of my right to self-representation.

A4/AB

B. Outstanding Unresolved Issues

1. Discovery

I possess emails from at least October 2022 where counsel notifies the government that I have no discovery. The government chose not to produce discovery to me for over 10 months. The government falsely claimed the discovery was related to the espionage case and that's why it took sooo long, but this is a deliberate lie as all the discovery for the espionage case was classified and is in the SCIF, and the unclassified discovery was all originally produced pursuant to the CP trial before I was ever indicted on the espionage charges. Regardless, 10 months were wasted while the government chose not to provide the discovery.

I have already outlined for the Court all missing discovery: 95% of 2TB produced discovery unavailable due primarily to inability to access forensic images in production 6; 5 TB SCIF server; 12 TB PLEX server; 3 TB desktop computer.

All this discovery is due me in accordance with Fed. R. Crim. P. 16(a)(1)(E)(iii) (the item was obtained from or belongs to the defendant). This I am under no obligation to prove materiality although it is all material as I have previously briefed the Court. This

This Court's deliberate violation of the law with the deceitful intent of claiming "harmless error" is truly unconscionable; the harmless error doctrine is based upon good faith application of the law, not bad faith willful attempts to violate it.


2. Clarifications on alleged "violations"

a. SCIF violation

I never violated any SCIF rules. The Court granted the government's

A5/A8

search warrant to seize my discovery drives based upon the insertion of a thumbdrive into the SCIF CP computer — which took place in August 2022, over a month AFTER the laptop had already been seized and obviously could not be related to anything found on the laptop. Regardless, despite the government's lies to this Court, there were numerous upwards of 50 thumbdrives in the SCIF, which were all classified and authorized by the CISO for our use. The thumbdrive and laptop were both classified at the exact same level. But most importantly, I had absolutely nothing to do with the insertion of this drive — which was only discovered when the laptop was returned to FBI control. As the FBI agent can confirm, Stanley Cansel used the CP laptop that day and returned it to the safe with a thumbdrive inserted. I am not blaming anyone as I did not see what happened and for all I know that drive may have been in the laptop when the FBI gave us the laptop that day, but to blatantly lie and blame me is clearly negated by the facts. Regardless there was certainly no security violation nor a violation of SCIF rules.

### b. Laptop Violation

I have done nothing but contest the government's lies that I somehow mishandled the laptop, and I have demanded an evidentiary hearing from the day the government made the allegations.

The laptop has two BIOS accounts — privileged and unprivileged; the government configured the BIOS as it saw fit then locked it by setting the privileged BIOS password. This account was never accessed nor was the BIOS ever modified — which would literally take 3 seconds to verify and there can be absolutely ZERO dispute amongst the party's experts once the results are presented. Just a simple, basic BIOS log. The government left the unprivileged accounts which can only view the locked BIOS settings. It should also be noted that

A6/A8

the BIOS settings were never relevant since the government physically disabled the wifi component — which it even admits in the search warrants — and therefore even access to the privileged BIOS account could never have enabled internet access. Previous laptops never configured, locked, nor set BIOS password.

The laptop was never connected to the internet as the forensics show.

Finally, the encryption the government complains about is a basic windows features that was revealed to the government back in 2018 when they first seized the laptop, then again in 2019 when they seized it again; they never once complained, but returned it to me each time. There was never any prohibition of ~~snooping~~ encryption — which I deemed necessary to prevent government snooping. It does not matter what is encrypted since it can only be documents provided by the government, counsel, or created by me. The laptop forensics captured all filenames on the encrypted drive — which ~~can~~ prove to be my work product from this case and all civil cases. I would be more than happy to decrypt the laptop's very small 156 GB drive for the court's perusal to verify all my claims.

3. Mail Delays

The mail delays continue to plague my attempts to represent myself. I routinely receive court orders after court deadlines, don't receive mail from my attorneys for months, and can't engage in simple contemporaneous litigation. Standby counsel dropped off mail for me at the MDC on May 19, 2023 which I did not receive until June 12th. This is frustrating both to counsel and myself; it is untenable. Moreover, the government's justification for reviewing my INCOMING MAIL is that they must review it in case I wrote classified information in it — which is not possible. There is no legitimate governmental objective in reviewing my incoming mail, and 4-6 week delays constitute violations of my right of access to the courts.

A7/
A8

4. Self-Representation Issues

a. Work Product

The Court vastly underestimates the importance of my work product, which is not limited to materials from the laptop but includes my handwritten notes, notebooks, CDs, DVDs, and discovery drives. A more "tailored" request is not possible because I have not memorized the locations of the most critical materials nor does Rule 16 require me to do so.

Specifically, these items are material to my defense because they literally consist of my entire case: not knowing whether I would take the case pro se or not, I created exhibits, demonstratives, direct and cross examinations of witnesses, expert disclosures including my own testimony, motion practice; included in those materials are 6 yrs' worth of discovery review notes, spreadsheets, and attorney correspondence that are all irreplaceable. And just to be clear, these are NOT the espionage trial materials, but the CP trial materials I prepared over the past 6 years.

I note for the court that the government's review would have been completed today if they had actually reviewed it when it was seized a year ago — instead they deliberately waited 10 months until April before they began their review. All this material will also be discoverable in my civil Bivens claims against the government so there is no reason to withhold it.

Finally, in addition to Rule 16 this material constitutes a protected due process property interest derived from both Faretta and Burns v. Smith. Deprivation of this material therefore violates both procedural and substantive Due Process.

b. Providing discovery to standby counsel insufficient substitute

There is absolutely no legal basis nor precedent that suggests the Court can refuse to provide discovery to a pro se defendant, but instead provide it to standby counsel. Faretta requires the Court produce these materials to me.

A8/A8

### c. Laptop and other resources

As already explained to the Court numerous times, the laptop was originally provided to me so that I could review my discovery, and is thus required for that same reason today. However, a laptop or similar resource is also required due to my confinement conditions and disability.

A laptop may very well be the exception rather than the rule in general population — where inmates have 24/7 access to their discovery and substantial law library resources, including weekends. I have no such access under SAMs, but I'm locked down and tortured in a concentration camp 24/7. Thus, under SAMs, the laptop is actually the rule rather than the exception in order to provide equal access to SAMs inmates as general population: Sarpou-laptop; Asimov-laptop; Abdullah-laptop; Alikurmi & El Chayo when they were here-laptop.

There is only one law library with a single computer shared by all SAMs inmates and additionally used in VTCs. There is no bathroom, it is used an hour at a time, cannot be used in afternoons nor on weekends. It's unbearably freezing cold, you must use the typewriter in your lap, you don't always get to go, and once you need to use the bathroom or eat, you cannot must leave and cannot return. Most days you must choose between recreation or law library.

Thus, I am arbitrarily denied equal access to resources based on nothing except the government's SAMs directive; the government cannot impose additional restraints upon me without providing an equilibrium in resources.

Finally, I am not equally situated as other pretrial detainees granted the presumption of innocence and ability to use a laptop in their defense, while at or on bail — I do not argue that the Court must pay, but that the Court must allow me to purchase and use a laptop as I would be able to do so if I were out on bail as is any pretrial detainee presumed innocent.



EXHIBIT

15

BY/B3

## CORRECTIONS TO MARCH 23 ORDER

I did not receive the Courts March 23, 2023 Order until June 12, 2023 as witnessed by my team on that date; they had ~~made~~ dropped it off for me on May 19, 2023 at the MDC. Thus I must now correct the record with respect to that Order.

**A. Inability to work on Rule 29/33 Motion**

The Court claimed that I filed "literally dozens of motions and other papers", "some prepared on a computer", had "six months" to prepare the motion and "was a shocking seventy-two pages longer" than the limit. The Court is beyond merely disingenuous and outright deceitful.

First and foremost, I was never once provided with the trial record and exhibits in an accessible format — the government provided both via CDs but an overall majority could not be viewed on the MDC ~~Revi~~ Discovery Review computer. The pdf files could not be viewed or were extremely difficult to read as the MDC does not offer a pdf viewer, but a general software suite that is terrible. Furthermore, several file types like excel documents could not be opened at all. Some of these issues were emailed to the government to which Mr. Denton responded "The Excel files were admitted as Exhibits in their original format, and we've provided them in the form that they were admitted. We are not going to manipulate/reformat admitted exhibits." I relayed all these difficulties to standby counsel and wrote to the Court. No solutions were identified. The Court could have given me 60 years and I never would have been able to telepathically review the trial record.

Next, the law library computer and typewriter were unavailable during most of this time, and I have a very limited ability to write by hand — hence I had ~~no~~ no way to record any motion

B2/B3

If I ever had access to the trial record. I never filed any typed documents with the Court after the laptop was seized nor any long hand-written documents aside from the motions cited in this order, which took months to write.

The Court also erroneously dismissed my Due Process claims — I have a Constitutional property interest in my own work product, which the Court refused to provide me in violation of both procedural and substantive Due Process.

The CIPA Protective Order also required me to write parts of the Rule 29 motion in the SCIF, judge it against the classification rubric provided therein, and present it to standby counsel for similar review — which I could not do.

Unable to access my Rule 29 draft, work product, the trial transcripts, the trial exhibits, a law library computer for legal research, a typewriter or way to write the motion, or the SCIF to comply with the CIPA Protective Order, I was unable to write a single sentence for my Rule 29 motion. Standby counsel had access to my first draft ~~from~~ I wrote during trial and deliberations ~~and any previous~~ — which pre-dated any Court-imposed limitations, — that it ultimately filed.

B. Inability to work on Reply

The Court's blatant disregard for the Constitution was even worse for the Rule 29 Reply. And this time, I did not have any rough draft written with the laptop that could bail me out.

I still did not have access to my work product, the trial transcripts, or the trial exhibits — but this time I also lacked pens, paper, and stamps. I did not receive the government's opposition until March 31ˢᵗ, which was already beyond the deadline. Prior to receiving the opposition, I had

B3/
/83

filed a letter with the Eastern District of New York in my civil habeas case about these issues. I had no way to notify the Court.

Next, I needed access to the SCIF not only to comply with the CIPA Protective Orders but to access the classified CIPA transcripts to counter some of the government's arguments — which were based on arguments this Court already denied in CIPA hearings. I was unable to access these materials and thus unable to respond to the motion.

The Court's oversight in providing me a copy of its March 23rd Order also contributed as both post-trial motions were dispositive, tolling the clock on the Rule 29 Reply. Since the Court usually allows briefing, I assumed there would be briefing on the motions and could not have used telepathy to determine that the Court outright denied the motion. Indeed although the Court gave me another two weeks in its Order ~~tomorrow~~ this was never communicated to me.

Finally and most egregiously, the Court denied my right to counsel. In my motion for a laptop to complete the Rule 29 Reply, I argued that in the alternative the Court has denied my right to self representation and should appoint counsel to finish the Rule 29 Reply. The Court refused.

EXHIBIT

C

# PRELIMINARY STATEMENT

Mr. Schulte first seeks mandamus review of otherwise unreviewable decisions by the district court with respect to the Fed. R. Crim. P. 29/33 post-trial motions in which the district court (1) denied the defendant right to counsel; (2) denied the defendant the right to self-representation by refusing his requests for access to the trial transcripts, admitted exhibits, repair of the broken law library computer, or a feasible method of timely completion of the motions; (3) denied the Constitutional due process property interest in access to his own work product; (4) compelled the defendant to violate a protective order, risking contempt or additional federal charges; and (5) denied the Constitutional right of access to the courts by refusing access to pens, paper, stamps, and contemporaneous mail. Due to these egregious errors, Mr. Schulte was unable to submit his arguments for review and thus the record will be incomplete on appeal without mandamus.

Next Mr. Schulte seeks mandamus review of otherwise unreviewable decisions by the district court with respect to the pending trial in September in which the district court (1) denied the Constitutional due process property interest in access to his own work product; (2) engaged in willful bad faith attempts to deprive Mr. Schulte of a fair trial, hoping for "harmless error" review on appeal; (3) denied the defendant the right to self-representation by revoking access to previously issued discovery, providing it to standby counsel and requiring him to review the discovery indirectly through standby counsel; and (4) denied the defendant the ability to engage in any pretrial motion practice. Due to these egregious errors, Mr. Schulte will not get a fair trial and the record will be incomplete, and any verdict must be automatically reversed without mandamus.

Finally, Mr. Schulte seeks recusal of the district court for bias and prejudice due to (1) these deliberate, malicious Constitutional deprivations

including his willful violations of federal law in hopes of harmless error review on appeal; (2) his instatements publicly declaring the defendant's guilt; (3) his statements providing prosecutors tips and suggestions for blocking Mr. Schulte from appellate review; and (4) his bad faith ex post facto justifications.

There is no similar case in the history of the United States where a district court abuses his authority so willfully and egregiously to deliberately deprive a defendant of a fair trial; Judge Furman actually declared the defendant guilty of actions without any hearing merely because the prosecutors said so, then conversed with them on how to doctor the record so the defendant could not obtain appellate relief, while directly violating federal law claiming the defendant is not entitled to relief since his actions will be deemed harmless error on appeal. Judge Furman's indefensible actions are so contemptuous, immoral, and in stark contradiction to the oath he swore to the Constitution to not only compel this Court to recuse him, but would easily warrant impeachment.

Josh Schulte #79471054
MDC
P.O. Box 329002
Brooklyn, NY 11232

RECEIVED
SDNY PRO SE OFFICE

2023 JUN 28  PM 3: 35

ATTN: U.S. v. Schulte, 17 CR 548 (JMF)
Pro Se Intake Office
U.S. District Court SDNY
500 Pearl Street
New York, NY 10007

USMS SDNY