UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,                :
                                         :
                                         :
                                         :
       - v -                             :           17 Cr. 548 (JMF)
                                         :
                                         :
JOSHUA ADAM SCHULTE,                     :
                                         :
              Defendant.                 :
-------------------------------------------------------X


# DEFENDANT JOSHUA SCHULTE'S RESPONSE TO THE GOVERNMENT'S MOTIONS *IN LIMINE*


Date:   New York, New York
        August 4, 2023


                                            César de Castro
                                            Shannon McManus
                                            The Law Firm of César de Castro P.C.
                                            111 Fulton Street – 602
                                            New York, NY 10038
                                            (631)-460-3951

                                            *Attorneys for Defendant,*
                                            *Joshua Adam Schulte*

# Table of Contents

***Point I*** ................................................................................................................................. 1

**Dr. Kiper Should Be Permitted to Opine on: (1) the Defendant's Mental State if that Mental State Does Not Constitute an Element of the Crime Charged; and (2) Typical Actions of Those that Possess Child Sexual Abuse Material ("CSAM")**

***Point II*** ................................................................................................................................ 7

**Mr. Schulte's Writings Expressing Frustration About His Legal Situation and the Fact that He Was Imprisoned While Writing Them is Irrelevant and Inadmissible**

***Point III*** ............................................................................................................................ 11

**Mr. Schulte is Permitted to Argue That the Government Has No Evidence That Establishes Who Downloaded the CSAM Materials or When They Were Downloaded From the Internet and that Mr. Schulte Inadvertently Copied Those Files to His Computer Along with 200,000 Other Files**

***Point IV*** ............................................................................................................................ 13

**If the Government Admits Portions of Mr. Schulte's Proffer Statements, the Defense Should be Permitted to Admit Omitted Portions to Prevent Misleading or Confusing the Jury**

***Point V*** ............................................................................................................................. 14

**The Government Should be Precluded for Introducing Any of the CSAM Material Because: (1) the Defense Concedes the Materials Constitute CSAM; and (2) the Materials Grossly and Unfairly Prejudice Mr. Schulte**

## Cases

*Headley v. Tilghman*, 53 F.3d 472 (2d Cir. 1995) ........................................................................ 4

*United States v. Cooper*, No. 19 Cr. 159 (ARR), 2019 U.S. Dist. LEXIS 182576 (E.D.N.Y. Oct. 22, 2019) ................................................................................................................................ 15

*United States v. Gilmore*, 2021 U.S. Dist. LEXIS 173393 (S.D.N.Y. Sep. 13, 2021) ............... 12

*United States v. Kelly*, No. 07 Cr. 374, 2008 U.S. Dist. LEXIS 98988, 2008 WL 5068820 (E.D.N.Y. July 10, 2008) ........................................................................................................ 4

*United States v. McDarrah*, No. 05 Cr. 1182 (PAC), 2007 U.S. Dist. LEXIS 6590 (S.D.N.Y. Jan. 31, 2007) ................................................................................................................... 3, 5

*United States v. McVeigh*, 153 F.3d 1166 (10th Cir. 1998) ................................................. 12, 14

*United States v. Perez*, 387 F.3d 201 (2d Cir. 2004) ................................................................... 9

*United States v. Plaza*, 752 F. App'x 37 (2d Cir. 2018) .............................................................. 3

*United States v. Quattrone*, 441 F.3d 153 (2d Cir. 2006). ................................................... 16, 17

*United States v. Tapia-Ortiz*, 23 F.3d 738 (2d Cir. 1994) ........................................................... 4

*United States v. Vargas*, 279 F. App'x 56 (2d Cir. 2008) ........................................................... 9

*United States v. Wexler*, 522 F.3d 194 (2d Cir. 2008) ................................................................. 4

*United States v. Williams*, 930 F.3d 44 (2d Cir. 2019) ............................................................. 15

## Rules

Federal Rule of Evidence 106 .................................................................................................... 14
Federal Rule of Evidence 401 ................................................................................................. 8,10
Federal Rule of Evidence 402 ................................................................................................ 8, 10
Federal Rule of Evidence 403 ................................................................................................ 8, 16
Federal Rule of Evidence 611 .............................................................................................. 14, 15
Federal Rule of Evidence 704 ...................................................................................................... 3
Federal Rule of Evidence 801 ................................................................................................ 8, 14
Federal Rule of Evidence 803(3) ............................................................................................ 9, 10

## Treatises

WEINSTEIN'S FEDERAL EVIDENCE § 704.06[2][d] ................................................................ 3

**Point I**[1]

**Dr. Kiper Should Be Permitted to Opine on: (1) the Defendant's Mental State if that Mental State Does Not Constitute an Element of the Crime Charged; and (2) Typical Actions of Those that Possess Child Sexual Abuse Material ("CSAM")**

The CSAM at issue in this case was transferred to Mr. Schulte's computer in 2016 along with 200,000 other files. One encrypted folder (as a virtual machine) of those 200,000 bulk transferred files. There it sat for almost a year in a locked, encrypted container. It was sitting on Mr. Schulte's computer for almost an entire year without being opened or even viewed before the government seized it in 2017. In fact, the government's only evidence that anyone viewed the CSAM is when FBI agents searching the computer opened and viewed the CSAM. Mr. Schulte's state of mind when transferring the files is not an element of the charged crime. Therefore, Dr. Kiper should be permitted to testify, based on his forensic findings, regarding the lack of evidence that Mr. Schulte had any knowledge of the contents of one of 200,000 files transferred from a shared server to his personal computer. Put differently, neither Dr. Kiper nor any other expert analyzing the materials seized by the government can conclude that there exist any facts obtained forensically from the computer that can even suggest that Mr. Schulte had knowledge of the contents of the folder containing the CSAM. Accordingly, Dr. Kiper should be permitted to testify as to his well-reasoned and forensically supported conclusions contained within his forensic examination report, as long as he does not opine on the *mens rea* at issue.

Finally, Dr. Kiper should be permitted to testify, based on his approximately 20 years of experience investigating individuals accused of the possession of child pornography regarding

---

[1] The defense does not object to the government's motions *in limine* relating to: (1) Mr. Schulte's previous employment by the Central Intelligence Agency; (2) the admissibility of prior stipulations; and (3) the admissibility of Mr. Schulte's prior convictions if he testifies in his own defense.

1

the common traits of those offenders because it would assist the jury to understand activities outside the normal knowledge of a jury. The defense is entitled to show how Mr. Schulte's alleged actions are so outside the typical actions of anyone with knowledge that they possessed CSAM. Put simply, in his experience, people who download and collect CSAM view it and view it often. Most importantly, in his experience the evidence of that access is almost always captured in a forensic analysis. Furthermore, Dr. Kiper's expertise will assist the jury to understand how the forensics evidence fails to establish that Mr. Schulte copied files to his computer with the requisite knowledge of its contents. This is especially important given the complete lack of evidence regarding the download of these files in the first place. The government has no evidence of who originally downloaded the CSAM files – from where, when, or even how. The government is free to cross examine Dr. Kiper on any of his findings and alternatively, call a rebuttal expert if it is able to locate an expert that disagrees with Dr. Kiper's findings.

Federal Rule of Evidence 702 provides that "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Federal Rule of Evidence 703 provides that:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury

2

> only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Under Federal Rule of Evidence 704, an expert witness is not permitted to opine on a defendant's mental state if that mental state is an element of an offense. *See* FED. R. EVID. 704(b). "The rule does not prevent the expert from testifying to facts or opinions from which the jury could conclude or infer the defendant had the requisite mental state … The plain language of the rule, however, means that the expert cannot expressly 'state the inference,' but must leave the inference, however obvious, for the jury to draw." *United States v. DiDomenico*, 985 F.2d 1159, 1165 (2d Cir. 1993); *see also* WEINSTEIN'S FEDERAL EVIDENCE § 704.06[2][d] (Joseph M. McLaughlin ed., 2d ed. 2009) ("Experts may testify about the meaning of circumstances surrounding a crime in order to help the jury in determining whether the defendant has the requisite intent . . . ."). While the expert witness cannot opine on a defendant's mental state that constitutes an element of the crime, they can opine on a defendant's mental state that is not an element of the crime. *United States v. McDarrah*, No. 05 Cr. 1182 2007 U.S. Dist. LEXIS 6590, at *39 (S.D.N.Y. Jan. 31, 2007) (expert witness in criminal trial permitted to opine on defendant's mental state when defendant attempted to groom an undercover agent).

Expert witnesses have routinely been permitted to testify to the typical behavior of people who commit a number of specialized crimes. *See United States v. Plaza*, 752 F. App'x 37, 42-43 (2d Cir. 2018) (holding that typical behavior of narcotics dealers is a proper subject for expert testimony); *Headley v. Tilghman*, 53 F.3d 472, 475-76 (2d Cir. 1995) (concluding that when defendant admits his presence in drug distribution house but claims it was "happenstance," expert testimony can be used to explain his purported role in the transaction); *United States v. Tapia-Ortiz*, 23 F.3d 738, 741 (2d Cir. 1994) ("Because both defendants argued that the Government's version of events did not suggest criminal activity, the Government was justified

in introducing expert testimony explaining that drug traffickers employ certain techniques . . . in order to avoid detection."; *United States v. Kelly*, No. 07 Cr. 374, 2008 U.S. Dist. LEXIS 98988, 2008 WL 5068820, at *9 (E.D.N.Y. July 10, 2008) ("The courts have deemed prostitution rings and the relationships between prostitutes and pimps to be subjects in which expert testimony may be relevant."). As with all expert witnesses, such testimony is permitted because it "shed[s] light on activities not within the common knowledge of the average juror." *United States v. Wexler,* 522 F.3d 194, 204 (2d Cir. 2008) (internal citations omitted).

In this case, the *mens rea* at issue is whether Mr. Schulte: (a) knowingly received; (b) knowingly possessed; (c) and knew that the material was CSAM. For any mental states that are an element of the crime, under Rule 701, Dr. Kiper is permitted to testify to any facts or opinions on which the jury can draw an inference about Mr. Schulte's mental state. He would not, however, be permitted to "state the inference." *See DiDomenico*, 985 F.2d 1159, 1165; *Grady*, 645 F. App'x 1, 4. Mr. Schulte's state of mind when transferring his files, including the one virtual machine that contained CSAM inside, is not an element of the charged offenses, but is nonetheless relevant because it is evidence that Mr. Schulte did not know what he was transferring in the first place. Dr. Kiper is permitted to opine on whether he located any forensic facts (or as he terms it "user attribution" facts) that could suggest that Mr. Schulte had the requisite knowledge of the content of the files he was transferring in a bulk transfer.

As noted in his report, Dr. Kiper was unable to find any facts from which one could infer Mr. Schulte's intent to move the CSAM files specifically onto his personal computer. Specifically, Dr. Kiper looked for any kind of "user attribution", or actions that show that an action is tied to a specific user, that would show intent to access the CSAM on Mr. Schulte's personal computer. Dr. Kiper's opinion relates to transferring files from one computer to another

4

and Mr. Schulte's mental state when transferring the files is "manifestly not a mental state that constitutes an element of the crime." *McDarrah*, 2007 U.S. Dist. LEXIS 6590, at *39. Accordingly, Dr. Kiper should be permitted to provide his opinion. The government is free to cross examine Dr. Kiper on this finding or even call its own witness to rebut his conclusions. But his opinion on the existence of user attributions is wholly outside the "common knowledge of the average juror" and should be permitted.

Dr. Kiper should also be permitted to testify about his background and experience investigating CSAM cases. Dr. Kiper has "personally worked on dozens of child pornography investigations and examined hundreds of pieces of evidence seized from those who have been charged with receipt, possession, and transportation of child pornography." Expert Disclosure of Dr. J. Richard Kiper at page 1. Not only was Dr. Kiper a Supervisory Special Agent but he was a trainer of the trainers of the FBI's forensic examiners. Dr. Kiper would, based on his experience investigating CSAM cases, the common threads between these cases. In particular, he can describe that almost universally there is forensic evidence of immediate and subsequently frequent access to the materials by the person possessing the CSAM, clearly evincing the user's knowledge of the content of the materials. In his draft report, he concludes:

> [T]he Linux Mint VM was never accessed at all – for more than ten months – between the date it was copied to Schulte's computer to the date it was discovered and seized by the FBI on 03/15/2017. My years of experience with CP investigations inform my opinion that this is not behavior indicative of a child pornographer.

*Id.* at 5. Just as the government often elicits expert testimony regarding the standard actions of people that deal in narcotics or exploit others for human trafficking, Dr. Kiper should be permitted to testify to the *modus operandi* of people that possess, collect, and view CSAM. The government also suggests that Dr. Kiper's opinion on this point is unnecessary because common

5

sense dictates that one who downloads something would want to view it. Of course, by making this argument the government acknowledges that it has no evidence that Mr. Schulte viewed, attempted to view, or intended to view the CSAM contained within a virtual machine. This is precisely why an expert in forensically investigating computers should be permitted to tell the jury what kinds of things he has found in the past twenty years that are indicative of the typical possessor and/or collector of CSAM. Said differently, in a case like this where there is no direct evidence that Mr. Schulte downloaded the materials nor any direct evidence that he even viewed the materials, Dr. Kiper should be permitted to testify how these facts do not fit the ordinary, typical behavior of someone knowingly possessing CSAM.

The government is certainly aware of the typical types of evidence it utilizes in these cases to convince a jury that someone had knowledge of the nature of files and intended to view them. In the complaint charging Mr. Schulte, the government went to great lengths to establish that Mr. Schulte had "knowledge" that he possessed child pornography by citing to Internet Relay Chat ("IRC") evidence and Google searches found on his computer. As Dr. Kiper noted, the complaint is riddled with misleading quotes and misconstrues the context of Mr. Schulte's statements in those chats and completely and recklessly misconstrues the context of his Google searches. In lifting selective portions of chats, it blatantly ignored the evidence that the references to child pornography were jokes, and some of the chats were not even related to child pornography at all. Pages 10-11 of Dr. Kiper's report details how completely misleading and false the government's chat evidence presented in the complaint was. Should the government or the defense introduce the IRC chats, Dr. Kiper should be permitted to explain them and opine on his forensic and expert findings as to whether they comport with his experience with CSAM offenders.

Accordingly, Dr. Kiper should be permitted to opine on all facts leading up to the *mens rea* at issue in the charged offense. All that Dr. Kiper should be precluded from testifying to is whether Mr. Schulte actually had the knowledge that he received or possessed CSAM or whether he actually had knowledge that the material he received, possessed and transferred was CSAM. Likewise, his testimony regarding the typical behavior of offenders that possess CSAM is also admissible. Dr. Kiper's expert testimony would assist the jury and shed light on activities not within the common knowledge of the average juror.

**Point II**

**Mr. Schulte's Writings Expressing Frustration About His Legal Situation and the Fact that He Was Imprisoned While Writing Them is Irrelevant and Inadmissible**

The writings excerpted by the government in its motion *in limine* are inadmissible. These writings are irrelevant and do not constitute admissions. Mr. Schulte's writings stating: (1) how the government claims to have gained access to the CSAM materials; (2) whether Mr. Schulte took issue, without making any admission of any fact, with the government's claim that possession of CSAM is victimless crime; and (3) that he is not a danger to the community *even if* the government's allegations were true, are not relevant to whether he knowingly possessed child pornography with the intent to view it.

Preliminarily, it is clear that the government knows that these statements are not admissions, otherwise, it would have moved for their admissibility under Rule 801. The government incorrectly claims the evidence is relevant and admissible as part of his statement of mind and consciousness of guilt. However, the writings have to be relevant in the first place. Federal Rule of Evidence 401 provides that "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." "Irrelevant evidence is not admissible." FED. R. EVID.

7

402. Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

With respect to evidence relevant to prove a defendant's state of mind, Federal Rule of Evidence 803(3) states;

> A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

With respect to relevant evidence of a defendant's consciousness of guilt, such evidence is admissible if it is probative of guilt; (1) the evidence is offered for a purpose other than to prove the defendant's bad character or criminal propensity; and (2) is relevant and satisfies Rule 403. *See United States v. Perez*, 387 F.3d 201, 209 (2d Cir. 2004). Generally, admissible actions that establish consciousness of guilt relate to flight, jury tampering, and making false statements; overt acts to conceal one's own criminal acts. *See id.* ; *see also United States v. Vargas*, 279 F. App'x 56, 60 (2d Cir. 2008). Thus, the action inherently suggests that the actor knows they did something criminal and is attempting to prevent detection, cover it up, or even atone for it.

Mr. Schulte's statements seized from his notebook are not: (1) relevant because they do not prove or disprove any facts of consequence; (2) evidence of his state of mind because they do not show any motive, intent, or plan to receive, possess, or transport CSAM; and (3) evidence of consciousness of guilt because they do not evince a guilty state of mind, attempt to cover up, evade responsibility, or atone for criminal conduct.

8

First, Mr. Schulte's writings are irrelevant under Rule 401 and, thus, are inadmissible under Rule 402. His writings expressed frustration about his legal situation and have no relation to his guilt or innocence. The fact that he was imprisoned while writing them is completely irrelevant. The excerpts of Mr. Schulte's writings that the government moves to use state: (a) how the government claims to have gained access to the CSAM materials; (b) that he is accused of committing what he says is a victimless crime and incarcerated at the MCC; and (c) that he is not a danger to the community *even if* the government's allegations were true. None of these statements are of any consequence to the issue of whether Mr. Schulte knowingly received, possessed, or transferred CSAM material. His first statement was simply complaining about his counsel. His second two statements are lamenting about the conditions of his confinement. Mr. Schulte is making no admissions about possessing CSAM, and the statements are irrelevant in proving the charged offenses.

Second, the writings are also not admissible under Rule 803. None of these statements were contemporaneous with any of the charged offenses, which the indictment alleges occurred between 2009 and March 2017. All of these statements were written after his arrest. For a statement to express the declarant's motive, intent or plan, it must be for a contemporaneous action or intention. In none of these writings does Mr. Schulte comment on his intent or knowledge or plans back in 2009 to March 2017. It is unclear how these writings after his arrest, have any relation to Mr. Schulte's alleged motive, intent, or plan to receive, possess, or transport CSAM. The issue of import is whether in May 2016, Mr. Schulte had knowledge of the contents of the virtual machine that he that he copied along with 199,999 other files and whether there are any facts from which a jury could infer his knowledge. None of the three statements highlighted in the government's motion *in limine* at p. 15 relate to a consciousness of guilt that he knew that

there was CSAM on his computer.  Admitting after the fact statements that Mr. Schulte considered CSAM offenses a victimless crime would only serve to prove bad character.

Third, the admission of these writings is highly prejudicial and outweighs any probative value they could have.  The first excerpted statement regarding de-encrypting the "CP" material invites speculation.  The writing is not an admission that he "encrypted" anything or at all as to his knowledge that the materials existed before his incarceration.  When Mr. Schulte is writing these materials, he has been charged in a detailed complaint discussing the encrypted materials, Rule 16 materials have been produced, and he has had multiple bail hearings where the government has outlined its evidence and how that evidence was obtained.  With respect to his writing about child pornography being a victimless crime, the government intends to introduce this simply to inflame the jury and unfairly prejudice them against Mr. Schulte.  Likewise, the third excerpted statement is only useful to inflame and unfairly prejudice the jury against Mr. Schulte.  All three excerpted statements are frankly irrelevant.  Any probative value that the government claims is far outweighed by the prejudice to Mr. Schulte.

Accordingly, the Court should deny the government's motion to admit any of Mr. Schulte's writings it seized from his jail cell.  The writings are not relevant, and especially irrelevant to Mr. Schulte's state of mind at the time of the alleged crimes, nor do they evince any consciousness of guilt.  If anything, his writings are evidence of his state of mind that he has been wrongfully accused and is innocent of these crimes.  Furthermore, introduction of his writings would be unduly prejudicial.

## Point III

### Mr. Schulte is Permitted to Argue That the Government Has No Evidence That Establishes Who Downloaded the CSAM Materials or When They Were Downloaded from the internet and that Mr. Schulte Inadvertently Copied Those Files to His Computer Along with 200,000 Other Files

The defense should be permitted to argue that the evidence supports that a third party uploaded CSAM onto the shared server from which Mr. Schulte transferred 200,000 files to his home desktop.  The defense has no intention to argue that a third party "planted" the CSAM files directly onto Mr. Schulte's personal computer.  Mr. Schulte is not presenting an "alternative perpetrator" theory in the standard sense.  But, assuming *arguendo* that the defense's case is based on an alternative perpetrator theory, the Court should permit it.

"Although there is no doubt that a defendant has a right to attempt to establish his innocence by showing that someone else did the crime, a defendant still must show that his proffered evidence on the alleged alternative perpetrator is sufficient, on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the asserted 'alternative perpetrator.' … The Second Circuit Court of Appeals has adopted this approach."  *United States v. Gilmore*, 2021 U.S. Dist. LEXIS 173393, at *6 (S.D.N.Y. Sep. 13, 2021) (*quoting United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir. 1998)).

It is evident from Dr. Kiper's expert disclosure that the defense does not intend to argue that a third party "planted" CSAM on Mr. Schulte's personal computer.  Rather, the argument, supported by the forensic evidence, is that Mr. Schulte indiscriminately copied over 200,000 files and folders from an older server to his personal desktop computer without knowing or ever realizing that any of the files contained CSAM.  He then left the one folder (virtual machine) that contained the CSAM untouched.  This is not an alternative perpetrator defense, but rather an

explanation of how the CSAM was unknowingly transferred by Mr. Schulte from the server to his home computer.

The government argues that "[Mr.] Schulte's speculation of an alternative perpetrator should be precluded unless he establishes a sufficient evidentiary basis—which he has not, and there is no reason to believe he could", without elaborating on why a sufficient evidentiary basis could not be laid. Presuming that the government's motion is based solely on the hypothetical argument that a U.S. intelligence agency planted the CSAM on Mr. Schulte's computer after the fact, we would concede that we do not obtain any forensic basis for this argument nor do we intend to make that argument at trial. However, if the government's claim is that there is no evidence that a third party uploaded the CSAM to the older server, there in fact is such an evidentiary basis, as detailed in Dr. Kiper's expert disclosure.

> These actions resulted in the copying of nearly 100,000 files and folders, including 495 VMs, from the previous computer system. According to the file listing of the destination computer, there were several users with account directories established in its home directory: … These home directory names include "derek," "dschulte," "jack," "john," "josh," "kevin," "mdb," "Michael," "niall," "nort," "sturm," "timmy," and "tor." The /etc/passwd file exported from this Linux system confirms active user accounts corresponding to most of these directories, and also includes accounts for "root," and "irc."

Expert Disclosure of Dr. J. Richard Kiper at page 7.

This argument is not a "nebulous allegation", but a discrete one based on the forensic evidence. *See McVeigh*, 153 F.3d 1166 at 1191. The defense does not intend to present any "alternative perpetrator" theory for which we do not have a sufficient basis. The defense's case is that there is no evidence of who uploaded or downloaded the CSAM to the shared server and that a massive number of files was copied blindly by Mr. Schulte onto his home desktop as a

backup, and never accessed again. This is supported by the forensic evidence and the defense should be permitted to argue it to the trial jury.

## Point IV

### If the Government Admits Portions of Mr. Schulte's Proffer Statements, the Defense Should be Permitted to Admit Omitted Portions To Prevent Misleading or Confusing the Jury

The government seeks to introduce a handful of statements made during unprotected proffer sessions. We admit that some, if not all, are admissible pursuant to Rule 801(d)(2). However, the defense should be permitted to elicit other statements made by Mr. Schulte if the admitted parts are misleading or misconstrue Mr. Schulte's statements.

Federal Rule of Evidence 106 provides: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time." On its face, this rule only applies to written and recorded statements. However, courts have applied Rule 106's principle to oral statements under Federal Rule of Evidence 611(a). *See United States v. Cooper*, No. 19 Cr. 159 (ARR), 2019 U.S. Dist. LEXIS 182576, at *20-21 (E.D.N.Y. Oct. 22, 2019) (" the Second Circuit has recognized that a principle similar to that embodied in the Rule 106 rule of completeness governs when redaction of oral statements is involved.")

Rule 611(a) provides that: "[t]he court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment."

13

When a party introduces incomplete or misleading opposing party statements, the opposing party is permitted to cross examine and elicit relevant omitted parts of the statement to avoid misleading or confusing the jury. The Second Circuit "has expressly recognized as to oral statements that FED. R. EVID. 611(a) both 'empowers and obligates' district courts to require 'a party offering testimony as to an utterance to present fairly the 'substance or effect' and context of that statement,' just as the common law doctrine requires." *United States v. Williams*, 930 F.3d 44, 59 (2d Cir. 2019) (internal citation omitted).

The government identifies a handful of statements made during unprotected proffer sessions. We admit that some, if not all, are admissible pursuant to Rule 801(d)(2), but reserve the right to elicit other statements made by Mr. Schulte pursuant to Rule 611(a), if applicable.

**Point V**

**The Government Should be Precluded from Introducing Any
of the CSAM Material Because: (1) the Defense Concedes the Materials Constitute CSAM;
and (2) the Materials Grossly and Unfairly Prejudices Mr. Schulte**

The government should be precluded from publishing any CSAM materials to the jury. Because the defense concedes that the materials are CSAM and that anybody that views the materials would also conclude that they are CSAM, publishing the materials would only inflame the jury without being probative of Mr. Schulte's guilt or innocence.

Federal Rule of Evidence 403 states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "'Unfair prejudice within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." FED. R. EVID. 403 advisory committee's note. This "may be created by the tendency of the

evidence to … unfairly to excite emotions against the defendant." *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006).

The government should be precluded from showing any CSAM materials to the jury. It is not at issue that the material constitutes CSAM. The defense conceded this fact in its proposed jury instruction and intends to do so at trial. We also concede that any person viewing this material would conclude that the material constitutes CSAM. As such, the probative value of showing the materials to the jury is minimal or nonexistent.

Showing even what the government has described as a "representative sample" of the CP would be highly prejudicial to the defendant. The materials, when shown to the jury, would "unfairly [] excite emotions against the defendant." *Quattrone* at 186. CSAM is abhorrent, and it would be a herculean task for a juror to reach a verdict based on the facts of the case, and not their emotional reaction to seeing CSAM.

Publishing the CSAM would also confuse the jury by implying that there is some contention between the parties surrounding the materials. It is clear that there is no contention that the CSAM was found on Mr. Schulte's computer. What is in contention is the fact that Mr. Schulte knew that the materials were on his computer. There is no evidence that Mr. Schulte ever opened or attempted to open any CSAM on his home computer, and the government is unable to satisfy any elements of the offense that are not already conceded by publishing the CSAM materials to the jury.

Finally, as the government notes in its motion *in limine*, "Any public display of the images would necessarily create the very harm that the Government seeks to avoid". Government's motion *in limine,* p. 9. Because the fact that the material in question is in fact child pornography is not an issue, publishing it to the Court, parties, and jury would

unnecessarily exacerbate the "continuing harms to the victims of CSAM offenses from public displays of the images in which those victims are depicted". *Id.* at 4.

The materials that the government wishes to publish are CSAM, and the defense concedes this point. Publishing it would serve only to inflame the jury, and confuse the jury about the issue in question.

## Conclusion

For the foregoing reasons, five of eight of the government's motions *in limine* should be denied.