UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

    - v. -

JOSHUA ADAM SCHULTE,

               Defendant.

S2 17 Cr. 548 (JMF)

# THE GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE*

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

David W. Denton, Jr.
Michael D. Lockard
Nicholas S. Bradley
Assistant United States Attorneys
    *Of Counsel*

In response to the Court's August 18, 2023 Order (D.E. 1097), the Government respectfully submits this reply in support of its motion *in limine* to restrict the display of a representative sample of child sexual abuse materials ("CSAM") to the jury, the Court, and the parties (D.E. 1088). The Government focuses in particular on (i) the defendant's attempt to preclude any display of CSAM at trial; and (ii) whether there are narrower alternatives to the Government's proposed restrictions.

As explained below, the Second Circuit has rejected attempts to preclude publishing CSAM evidence at trial, particularly when the defendant's knowledge is at issue. Additionally, the Government respectfully submits that its proposed limitation on public viewing of CSAM is appropriately tailored, as any redaction would not obscure the contraband and pornographic nature of the CSAM and would perpetuate harms on the abused victims.

## I. The Court Should Reject the Defense Attempt to Preclude Limited Publication of CSAM Evidence

The defendant's opposition seeks to preclude the limited publication of CSAM evidence at trial under Rule 403, arguing that it "would only inflame the jury without being probative of Mr. Schulte's guilt or innocence." (D.E. 1092 at 14.) The defendant concedes and would apparently stipulate that there were thousands of visual depictions containing CSAM on the defendant's Home Desktop.[1] Despite this admission, the defendant contends the Government cannot prove he knew the CSAM was there, and "[t]here is no evidence that Mr. Schulte ever opened or attempted to open any CSAM on his home computer." (*Id.* at 15.) In other words, any attempt to publish CSAM evidence would not "satisfy any elements of the offense that are not already conceded," and would

---

[1] The defined terms in this reply have the same meaning as set forth in the Government's motions *in limine*. (D.E. 1088.)

therefore inflame and confuse the jury. (*Id.* at 15-16.) The Court should reject this argument for multiple reasons.

First, the Second Circuit has repeatedly rejected attempts by defendants to preclude the introduction of CSAM through stipulations. The Government has a "right to present evidence, rather than accept a stipulation, in order to 'tell [the jury] a story of guiltiness[,] . . . to support an inference of guilt, to convince the jurors that a guilty verdict would be morally reasonable[, and] . . . to point to the discrete elements of a defendant's legal fault." *United States v. Harris*, 548 F. App'x 679, 681 (2d Cir. 2013) (quoting *Old Chief v. United States*, 519 U.S. 172, 187-88 (1997)). The Government can present such evidence "to establish the 'human significance' of the fact and 'to implicate the law's moral underpinnings.'" *United States v. Polouizzi*, 564 F.3d 142, 153 (2d Cir. 2009) (quoting *Old Chief*, 519 U.S. at 187-88).

The Second Circuit has applied this principle multiple times in cases involving CSAM, including where—as here—the defendant's knowledge is at issue. *E.g.*, *Harris*, 548 F. App'x at 681-82 ("While Harris may not have contested that the images were child pornography, the images were still probative of whether Harris *knew* that the images were child pornography given the youth of the minors depicted."); *Polouizzi*, 564 F.3d at 153 ("Although Polizzi did not contest that the images he received and possessed constituted child pornography, the stipulation was not an adequate substitute for the evidence offered. The specific nature and content of the images were relevant to the jury's evaluation of Polizzi's claim that he did not understand the wrongfulness of receiving and possessing those images."); *United States v. Hester*, 674 F. App'x 31, 33 (2d Cir. 2016) (affirming district court decision to show jury two videos and two still images containing CSAM, explaining that "[i]n other cases involving similar crimes, we have held that the admission of images of child pornography was not an abuse of discretion"); *Herndon v. United States*, 359

F. App'x 241, 243 (2d Cir. 2010) ("Even if the stipulation satisfied the child pornography element, the government was still required to prove the knowledge element. The images allowed the jury to determine how likely it was that Herndon knew the images were child pornography.").

This case is no exception. Even if the defendant concedes that CSAM was found on his Home Desktop, the Government must still prove at trial that the defendant knowingly received, possessed, and transported CSAM. (Gov't Proposed Jury Instructions at 9, 12, 17, 19, D.E. 1084.) Here, the defendant intends to argue that the Government cannot meet the knowledge element of the charged offenses. (*E.g.*, D.E. 1092 at 15 ("What is in contention is the fact that Mr. Schulte knew that the materials were on his computer. There is no evidence that Mr. Schulte ever opened or attempted to open any CSAM on his home computer . . . .").) The defendant's attempt to preclude the publication of any CSAM while also claiming ignorance it existed on his Home Desktop finds no support in Second Circuit case law.

Second, contrary to the defendant's claims, the publication of a limited set of CSAM is highly probative of the defendant's knowledge. For starters, it corroborates his previous admission to law enforcement that he kept encrypted pornography on the Home Desktop, and shows that the pornography the defendant encrypted was unlawful child pornography. Displaying samples of CSAM found within folders such as "young," "kids," and "13yo in bath" inside the encrypted data on the Home Desktop provides additional evidence of the defendant's knowledge because it shows how he organized and kept these materials. Furthermore, the identification of CSAM found within encrypted containers accessible from the home directory "josh" on the encrypted virtual machine, using a password from one of the defendant's cellphones, further underscores that the defendant knew the CSAM was on the Home Desktop. *See United States v. Schohn*, 602 F. Supp. 3d 447, 460 (W.D.N.Y. 2022) ("The nature and content of the images were also relevant to and probative

in the jury's evaluation of Defendant's defense that an unidentified individual downloaded the child pornography onto Defendant's computer—in other words, whether the images could have been downloaded in a short period of time, unbeknownst to Defendant."). Moreover, a limited display of files containing CSAM will corroborate forensic evidence indicating that such files were accessed during the relevant time period and were, in fact, CSAM. Finally, publishing such evidence will also support expected testimony about CSAM naming conventions, which reinforces the inference that when the defendant downloaded and accessed those files, he did so knowing they were CSAM. In short, the defendant's concessions do not change the fact that the Government still must carry its burden to prove the knowledge elements of the charged offenses, particularly when the defendant has repeatedly argued in his pretrial submissions and expert disclosures that he was merely the unwitting carrier of CSAM on the Home Desktop. *Polouizzi*, 564 F.3d at 153; *Herndon*, 359 F. App'x at 243; (D.E. 1092 at 15).

Third, the limited display of CSAM to the parties and the jury would not violate Rule 403 by "inflam[ing]" or "confus[ing]" the jury. (D.E. 1092 at 14-15.) As explained above, the Second Circuit has affirmed the display of CSAM at trial, particularly when—as here—the Government identified only a limited selection of such materials to show the jury. *E.g.*, *Polouizzi*, 564 F.3d at 149 (displaying "for a few seconds" each image and "short segments" of each video charged in the indictment, followed by testimony regarding metadata and access); *Hester*, 674 F. App'x at 33 (risk of unfair prejudice minimized when Government selected two videos played for ten seconds each and two still images "out of the more than one thousand files" containing CSAM); *Harris*, 548 F. App'x at 681-82 (discussing display of brief video clip and one still image); *see also Schohn*, 602 F. Supp. 3d at 459 (finding display of 18 images "for a few seconds each" and a 20-second video clip from over 4,000 recovered depictions of CSAM minimized risk of unfair

4

prejudice). Here, the Government proposes to limit its selected display of CSAM to those files that corroborate evidence of the defendant's knowledge of his possession, receipt, and transportation of CSAM. Such materials, while unseemly and disturbing, will be presented in a manner similar to that affirmed in other cases, including through the use of a PowerPoint presentation showing short segments of relevant videos and brief views of images. There is no risk of confusing a properly instructed jury when the defendant has clearly placed his knowledge of the CSAM at issue.

Accordingly, the Court should deny the defendant's attempt to preclude any limited display of CSAM to the parties, the Court, and the jury at trial.

## II. The Government's Proposal Is Appropriately Tailored to Restrict the Unnecessary Display of Contraband CSAM to the Public

The Court directed the Government to address "whether, in lieu of withholding any CSAM admitted at trial from the public altogether, there is a narrower alternative available to address the harms that the Government identifies, namely displaying the material to the public with redactions and/or with blurring of the subjects' facial features." (D.E. 1097 at 2.) The Government respectfully submits that its proposal is appropriately tailored to limit the unnecessary disclosure of contraband CSAM to the public, and that any attempt to redact or otherwise alter the images for public consumption would continue to visit harms upon victims.

As an initial matter, the public interest in viewing CSAM is limited to nonexistent. The Adam Walsh Act, for example, requires such contraband materials to remain in the custody of the Government or the Court. 18 U.S.C. § 3509(m). Additionally, as explained in the Government's motions *in limine*, the Second Circuit has well-recognized limitations on public access that would merely cater "to a morbid craving for that which is sensational or impure." *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995) (internal citation omitted); *United States v. Troup*,

5

2012 WL 3818242, at *7 (N.D. Ill. Aug. 31, 2012) ("There is certainly an interest—both a governmental and a defense interest—in refraining from displaying pornographic images of any kind to the public in the gallery[.]").

Against that backdrop, placing redactions on the published CSAM for the public gallery would not address the Government's well-founded concerns about continued dissemination of CSAM and its ongoing harms to the victims. Even if the Government manipulated the displayed videos or images in a manner that obscured the victims' identifying features, the images would still depict CSAM (or, at the very least, pornography), to which the public has no right to access as a matter of law, and would appeal only to the prurient interest. The public will already receive detailed information about the CSAM materials received into evidence through descriptions of the file names and testimony regarding what certain files depict.

Finally, any redactions would still expose victims to unnecessary and well-recognized trauma from images and videos that depict their sexual abuse as children. Even if the public spectators in the gallery could not directly identify the victims displayed in the CSAM, the victims' abuse will still be replicated for unnecessary public consumption. Unless the redactions made the depictions completely unrecognizable (which, in turn, would reduce the already limited public interest in viewing the materials), the victims' age, gender, state of undress, and the manner of abuse will be made public. The victims would also undoubtedly be able to identify themselves. Such displays, even with redactions, will still visit harms upon the victims by showing the heinous abuse they suffered at the most vulnerable moments in their lives. These recognized harms cannot be ameliorated simply through redaction, and there is a compelling interest in restricting further re-distribution and displays of their abuse in the narrowly tailored manner that the Government proposes.

Accordingly, the Government respectfully requests that the Court grant its request to restrict the display of CSAM during the trial to the jury, the Court, and the parties.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully submits that the Court should grant the relief requested herein.

Dated: New York, New York
August 25, 2023

                                             Respectfully Submitted,

                                             DAMIAN WILLIAMS
                                             United States Attorney for the
                                             Southern District of New York

                              By:      /s/
                                             David W. Denton, Jr.
                                             Michael D. Lockard
                                             Nicholas S. Bradley
                                             Assistant United States Attorneys
                                             (212) 637-2744 / -2193 / -1581