XM6D5schC1                    ~~TOP SECRET~~

1 | UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2 | ------------------------------x

3 | UNITED STATES OF AMERICA,

4 |          v.                        17 Cr. 548 (JMF)

5 | JOSHUA ADAM SCHULTE,

6 |          DEFENDANT.

7 | ------------------------------x

8 |
                                    June 13, 20022
9 |                                 9:10 a.m.

10 |
   Before:
11 |
                        HON. JESSE M. FURMAN,
12 |
                                    District Judge
13 |

14 |                        APPEARANCES

15 | DAMIAN WILLIAMS
         United States Attorney for the
16 |     Southern District of New York
    BY:  DAVID DENTON
17 | BY:  MICHAEL LOCKARD
         Assistant United States Attorneys
18 |
    JOSHUA ADAM SCHULTE, Pro se
19 |
    ALSO PRESENT:  SABRINA SHROFF, Standby counsel for defendant
20 |               DEBORAH COLSON, Standby counsel for defendant
                   DAN HARTENSTINE, CISO
21 |               MATT MULLERY, CISO
                   DANIELLA MEDEL, CISO
22 |

23 |

24 |

25 |

XM6D5schC1                          ~~TOP SECRET~~

1          (Case called)

2          THE COURT:  Good morning.  Welcome back.

3          So let's deal with what we need to deal with in closed

4    session and most of the issues that we need to deal with I

5    think we should deal with in open session when we go upstairs.

6          The main one I think we need to resolve or discuss is

7    Mr. Schulte's filing on Friday concerning whether and to what

8    extent the refined government theory or information still

9    implicates the sort of public dis7closure issues that we have

10   been dealing with.  I entered an order on Friday indicating

11   that I agreed that as to Hickok, I think ███████████████

12   ████████████████████   ████████████████████████  ███████

13   ████████████████████████████████████████████████████████

14   ██████ █ ████████████████████████████████████████████████

15   █████████████████████████████████  precisely the information that

16   the government's claim was not previously disclosed, so it does

17   seem to me that that sufficiently raises the public disclosure

18   issue that if the government is relying on that, as an item of

19   NDI, Mr. Schulte should be able to argue that issue to the

20   jury.  The others I think are a little less clear to me, so I

21   wanted to just discuss them today.

22          Mr. Denton, anything you want to say on that?

23          MR. DENTON:  No, your Honor.  I think we understand

24   the Court's position.  I think our primary concern deals with

25   how that might be used and also what is appropriate to instruct

XM6D5schC1                      ~~TOP SECRET~~

1    the jury on that question.  I think that still does not avoid

2    the legal issue that the Court has to resolve on that question.

3           THE COURT:  OK.  So; first, let's talk about the

4    Hickok pages.  I mean, I think the short answer is that to the

5    extent that the government was moving under 6(a) to preclude

6    Mr. Schulte from using those pages, I am denying that motion

7    because I think that it does raise prior public disclosure

8    issues.  I have explained in my opinion why I thought that that

9    was a valid argument, so given that, I think it is relevant and

10   admissible but I think -- I guess correct me if I am wrong --

11   the only argument under 6(c) that the government has made is,

12   in essence, that they should be filed as classified exhibits.

13   Is that correct?

14          MR. DENTON:  That's correct, your Honor.

15          THE COURT:  So focusing on the Hickok pages first,

16   Mr. Schulte, anything you want to say on that front?

17          MR. SCHULTE:  Regarding the 6(c), the government's

18   motion to submit those classified exhibits?

19          THE COURT:  Yes.

20          MR. SCHULTE:  Yes.  I think the issue, we have kind of

21   litigated it before but I wouldn't be in substantially the same

22   position if I have to -- we have to close the courtroom and all

23   of these Courts are basically instructing the jury that this is

24   sensitive information, that this is NDI.  And the difficulty

25   then in trying to show the jury that this is public information

XM6D5schC1                    ~~TOP SECRET~~

 1   is really undermined by this silent witness rule or whatever
 2   other courtroom closures.  I think to the degree the government
 3   thinks whatever information in this is still classified or NDI,
 4   that they should submit for redactions or substitutions of that
 5   information.  But, overall, I just won't be in substantially
 6   the same position without being able to basically show publicly
 7   that this is the information that's been disclosed.  And then I
 8   also raise that DevLAN is no longer being used.  A lot of these
 9   issues with this information, DevLAN in particular, I don't
10   think the government has shown that there is an extenuating
11   issue to national security or national defense in showing files
12   from the Internet to the jury.
13          THE COURT:  OK.  And Mr. Denton, let's say I agree
14   with Mr. Schulte in that these pages I agree should be or can't
15   be filed as classified exhibits consistent with CIPA.  What's
16   your response then?
17          MR. DENTON:  Well, so I think, your Honor, two things.
18   First of all, the Court's ruling would have to be on some other
19   basis.  Section 8 sets out clearly the authority to file them
20   as classified exhibits, essentially regardless.  I think it
21   would really be a function of the Court ruling on some other
22   basis that they could not be admitted in that way.  Contrary to
23   Mr. Schulte's representation, the government has submitted,
24   *ex parte*, a significant discussion of the harm that would come
25   from public disclosure of this.  I think if the Court were to

XM6D5schC1                    ~~TOP SECRET~~

1    rule that these have to be shown publicly, I think we would

2    have a more serious discussion about whether the government

3    might seek some other relief.

4           THE COURT:  OK.  And I'm not sure I posed this

5    specific question but to the extent that you are relying on

6    Section 8, I mean, how do you square that with Section 6(c),

7    which is to say that if the government could always insist on

8    filing an exhibit in classified form, obviously I assume you

9    would agree that there is a limit to that authority, namely

10   public trial guaranteeing the Sixth Amendment, but how do you

11   square that authority under Section 8 with 6(c), which requires

12   the government to redact or provide a substitute or essentially

13   not rely on it on pain of dismissal in the most extreme

14   circumstances?

15          MR. DENTON:  I think, your Honor, they work together

16   in a couple of different ways.  I think, first of all, the

17   substitution process works when -- essentially, a good example

18   here is the discussion we have had about the Foreign Office

19   West; the fact of a foreign office is relevant.  The specifics

20   of where it is is not relevant to anything.  And so in those

21   circumstances you sort of harmonize the relevance ruling under

22   6(a) with the protection of classified information under 6(c),

23   section 8 provides a mechanism I think for circumstances in

24   which the Section 6 process sort of doesn't cover it or doesn't

25   address it or a substitution is inadequate but the information

XM6D5schC1                    ~~TOP SECRET~~

1  still remains extraordinarily sensitive, that essentially it

2  prevents a defendant from forcing the declassification of

3  information in a circumstance where it's both necessary and

4  admissible but also still remains sensitive.

5          So, I think they work in tandem in that way.

6          THE COURT: OK. And the Bartender and ███████████████

7  issues, anything you want to say in on that score? I think

8  that would be something that might benefit from discussion. It

9  is not clear to me there is prior public disclosure here, but

10 your thoughts on that.

11         MR. DENTON: We do not believe there is, your Honor.

12 I think with respect to Bartender in particular, we intend to

13 elicit the fact that Bartender was -- the tool Bartender was

14 described in the leak and to elicit from witnesses why the

15 additional disclosures of the defendant -- that the defendant

16 attempted to make in his notebooks were uniquely harmful. So I

17 don't think there is any particular reason why these documents

18 would be necessary. They also don't discuss that particular

19 disclosure, the association of that tool with the

20 ████████████████████████████████████████████████████

21 ████████ ████████████████████████████████████████████

22 █████████████████████████████████████████████████████

23         Similarly, with respect to the ███████████████, that is

24 just; not kind of a match for what the defendant is charged

25 with having attempted to disclose about various tradecraft

XM6D5schC1                    ~~TOP SECRET~~

1   techniques.  And, moreover, his personal involvement in that

2   which is an additional layer not discussed anywhere in the

3   leaks.

4            So I think we agree with the Court's analysis on those

5   two points.

6            THE COURT:  OK.

7            Mr. Schulte?

8            MR. SCHULTE:  So the Bartender issue I want to raise

9   that in the CIPA 10 the government also raises or discusses

10  specifics about Bartender, ████████████████████████ ███

11  ███████████████████████████████████████████████ ██

12  ██████████████████████████████████████████████

13  ████████████████████████████████████

14  ████████████████████████████████████           So

15  to the degree that the government's CIPA 10 is noticing that in

16  the charges against me, it is talking specifically about

17  Bartender and how it is used ████████████.  That information

18  is definitely relevant useful because it cites that information

19  directly on these pages.

20           As far as the other information, the government is

21  saying, well, we would stipulate that Bartender was disclosed

22  but that this specific information was not.  So you know, that,

23  again, that really doesn't put me in the same position because

24  I would like to show the jury specifically what information was

25  disclosed about Bartender and then the government is going to

XM6D5schC1                    ~~TOP SECRET~~

1    have their argument as to what they claim is not disclosed, and

2    my argument is going to be for the jury to determine, based on

3    the disclosure already from Bartender, is this not inferred or

4    is this information the government intends to or claims is

5    still NDI or classified, is it so generic enough that this

6    specific type of information render this information no longer

7    not on the same scale or the same magnitude of the information

8    that's been released.  So, it is very important to show the

9    jury what has already been released and then have the jury make

10   that determination as to whether they believe the additional

11   information the government claims was attempted to be disclosed

12   is a part of that information or generic enough that it doesn't

13   really matter because so much of Bartender has already been

14   disclosed.

15        Basically it is a comparison that the jury should make

16   and I think the Court should allow the jury to make that.

17        And then, as for ███████████████, I agree that the

18   ████████████████ is not -- the few examples that I have, though,

19   they're very small examples.  So all I am trying to show is

20   that the ███████████████ that the government is mentioning in the

21   Hour of the Mind is very generic.  All it says is ███████████

22   ███████████████ and it doesn't go into specifics as to something

23   that could provide a vendor or someone to recognize CIA tools.

24   So these small examples here are basically showing more

25   specific examples about ███████████████ and how, for example

XM6D5schC1                    TOP SECRET

1   here, ████████████████████████████████████████

2   ████████████████████████████████████████████

3   ████████████████████████████    So these types of information

4   is a lot more specific as to ████████████████    So what

5   I would like to show the jury is the difference between writing

6   something generically, such as saying, oh, ████████████ or

7   using some kind of generic thing in such a way that no one

8   would be able to use that information to identify any CIA tool,

9   and compare and contrast that with other information that

10  Wikileaks has released that show very specific types of

11  ████████████ and how that information is used.

12          Overall, Judge, I just don't think that the very small

13  types of information that I would like pulled from Wikileaks

14  here is not something that, you know, can't easily be, if there

15  is anything the government claims to be classified or whatever,

16  that stuff can be simply redacted or substituted and these

17  basic examples, easily, can be shown to the jury.

18          THE COURT:  All right.  So the government's motion is

19  granted as to the ████████████ pages under 6(a), and I don't

20  she how this constitutes prior public disclosure and the

21  grounds that Mr. Schulte just proposed for it is actually not

22  even that argumentative than one, namely comparing and

23  contrasting what he said with more specific references to

24  ████████████ and WikiLeaks and prior submissions to me he has

25  noted that the ████████████ is something that is discussed in

XM6D5schC1                    TOP SECRET

1    unclassified documents.  He is certainly free to make that

2    argument and make the argument generally that what was

3    disclosed is not specific enough to constitute National Defense

4    Information, but he doesn't need these pages to make that

5    argument.  So the government's motion under 6(a) is granted

6    with respect to that on the grounds that it is not relevant and

7    admissible.

8           On the Bartender pages I guess, Mr. Denton, my

9    inclination would be to do the following but I want to see if

10   this would pose logistical or procedural problem; would be to

11   preliminarily deny it but subject to reconsideration when you

12   elicit the testimony that you have described, if Mr. Schulte is

13   able to point to things in these pages that constitute prior

14   disclosures of what you say your witnesses will testify to is

15   not disclosed.

16           MR. DENTON:  So can I just have one second, your

17   Honor?

18           THE COURT:  Sure.

19           (pause)

20           THE COURT:  Yes, Mr. Denton?

21           MR. DENTON:  So, your Honor, I think that approach

22   makes sense in the first instance, I just want to add kind of

23   another step that may be appropriate.

24           There is certainly going to be testimony about the

25   components of what the defendant wrote about who used

XM6D5schC1                    TOP SECRET

1   Bartender, what it was for, things you like that; they're part
2   of his writings.  It may be appropriate at some point, either
3   then or as part of the Court's jury instructions, to instruct
4   the jury on what specifically is the NDI that is at issue and
5   that may serve to sort of narrow this and avoid the need for
6   further documents just by clarifying that that testimony is
7   there is explanation and not necessarily part of the NDI that
8   is charged here.

9          THE COURT:  I agree with that.  I think to the extent
10  that the government has narrowed its theory and approach on
11  Counts Three and Four it does make sense to ensure that the
12  jury understands what is the NDI -- alleged NDI at issue so I
13  agree and we should talk about that in advance of what it would
14  be appropriate for me to explain that to the jury.

15         So that, I think, is where I will leave Bartender,
16  which is to say that on its face I'm not persuaded that the
17  pages that Mr. Schulte has pointed to constitute prior
18  disclosures but I will revisit that after the government has
19  elicited the testimony that Mr. Denton has described, and if
20  Mr. Schulte at that point is able to point to something that
21  actually does match, if you will, what the government is
22  alleging to be NDI then I may revisit it and we will deal with
23  it then.

24         That leaves only the Hickok page and, Mr. Denton, I
25  want to think about it for a moment but I want to understand

XM6D5schC1                           TOP SECRET

1   the potential implications if I were to say that Mr. Schulte

2   has to be able to use this as an unclassified exhibit, what

3   that means.  When you say consider other remedies, does that

4   mean you would seek mandamus?  Because that would obviously

5   implicate our proceeding to trial.

6          MR. DENTON:  Your Honor, I hesitate to say this but I

7   think that if not mandamus, an interlocutory appeal as of right

8   under Section 7.

9          THE COURT:  Fair enough.

10         MR. DENTON:  ▌

11  ████████

12

13

14

15

16         THE COURT:  Hold on.  I want to make sure we are all

17  on the same page here.  What I understood Mr. Schulte to be

18  seeking to do at this point would be

19

20

21

22

23

24

25         MR. DENTON:  So I think that was -- we had not

XM6D5schC1                    ~~TOP SECRET~~

1    necessarily understood that, your Honor. ▌ ████████

2    ████████████████████████████████████████████

3    ██████  ██████████████    ████████████████████

4    ██████████████ ▌ ████████████████████      Obviously the

5    sort of conclusion of the section 6 process is that following

6    the Court's rulings, the government sort of consults with the

7    relevant powers that be and up the ladder makes the decision

8    about whether the Court -- whether the government is going to

9    agree to the use of the information in the form the Court has

10   approved, or take some other position and invite the Court to

11   ruling accordingly.  I think it is the Court's position that

12   ████████████████████████████████████  ██  ██████

13   ████████████████████████████      That's a meaningfully

14   different version of that discussion ████████████████

15   ██████████████ .

16         THE COURT:  OK.  Mr. Schulte, maybe I misunderstood

17   what you were asking to do but ▌ ████████████████████

18   ██████  ████████████████████████████████████

19   ██████████  ██████████████████████  ████████

20   ████████████████████████████████████

21         MR. SCHULTE:  So first, Judge, I just wanted to make

22   sure it is on the record that the *ex parte* document the

23   government delivered to the Court we haven't received, so if we

24   could receive that document we may be able to further alleviate

25   whatever the government's concerns are.

XM6D5schC1                     ~~TOP SECRET~~

1            THE COURT:  That request is denied.

2            MR. SCHULTE:  OK.

3            As far as this document, I was mainly just -- the

4    Court asked regarding relevance for 6(a) so I was basically

5    stating how these documents are relevant.  As to only the

6    specific portions, I agree that only the specific portions that

7    are needed are what I would seek to discuss but as far as these

8    are the only ones, I didn't do -- I did basically a review of

9    my cursory examination of the things I thought were most

10   particular and relevant but I haven't actually gone through all

11   of these two or three documents to check every single place so

12   I just, you know, I think if the Court is going to rule on 6(c)

13   I just ask for the opportunity to at least be able to check --

14   go through and check documents to see if there is anything else

15   that may or may not be relevant because that wasn't what I was

16   intending here.

17           THE COURT:  Well, that's what I directed you to do

18   here, so.

19           MR. SCHULTE:  It was about relevance so I thought it

20   was just 6(a).  So I was trying to show the Court why these

21   documents are relevant but I wasn't specifically stating

22   these --

23           THE COURT:  Mr. Schulte, I am quite confident that I

24   directed you to make a filing that specifically referenced

25   where in the leaked information you believe there was any

XM6D5schC1                    TOP SECRET

1   relevant prior disclosure.  So I understood that that -- in

2   other words, I have given you that opportunity.  This was your

3   submission on that and I'm not going to give you another chance

4   to go comb through this and see if there are other areas where

5   you can point to something.  That's what you were directed to

6   do.

7            All right.

8            MR. DENTON:  If I may, your Honor?

9            THE COURT:  Yes.

10           MR. DENTON:  I say this without having consulted with

11  people, but I would also think it would be possible in this

12  circumstance that we might be able to alleviate some of the

13  security concerns by stipulating essentially that pages from

14  WikiLeaks stated X, or included this diagram, or something to

15  that effect ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ also included specific language and

17  identifies it as having been publicly disclosed as part of

18  Vault 7.  So I wanted to flag for the Court that to the extent

19  that I think we see where the Court is going with this, that

20  that's an option that I expect we would discuss seriously.

21           THE COURT:  OK.  So how do you prose that we leave

22  this since I don't know -- I don't anticipate we will be

23  opening today but I presume this is an issue that both sides

24  would want to have an understanding of where it stands before

25  you open.

XM6D5schC1                          ~~TOP SECRET~~

1          MR. DENTON:  Well, so your Honor, I think there is two

2     kind of nested questions.  The first one, which is not

3     something that we have addressed here today but is still out

4     there is the admission of Government Exhibit 1 at large.  I

5     think if we resolve that, then I think --

6          THE COURT:  Let me interrupt you.  I was planning to

7     say this on the record in the public session and I will repeat

8     it there:  That motion is granted.

9          MR. DENTON:  OK.

10         THE COURT:  The Government Exhibit 1 and whatever

11    number exhibit ███████████ is, those two exhibits I'm going to

12    allow to be filed in classified form.  I will actually file an

13    opinion explaining that reasoning, but that is the bottom line

14    ruling and you are now aware of that.

15         What is nested issue 2?

16         MR. DENTON:  So then nested issue 2 is the documents

17    that are within Government Exhibit 1, which is what we are

18    talking about here, I think the answer is the Court needs to

19    rule on the public disclosure issue in a way that then it sort

20    of puts the ball back in the government's court to address

21    that.  I think our position is that it is appropriately handled

22    as a classified exhibit without prejudice to the defendant for

23    all of the reasons discussed in the second *Rosen* opinion.  It

24    seems like we are now talking about a very limited amount of

25    stuff.  If the Court disagree with that, we will certainly work

XM6D5schC1                    ~~TOP SECRET~~

```
 1   as quickly as possible to reach a resolution, or at least tell
 2   the Court whether this is something we expect to resolve in an
 3   evidentiary form or whether there is some other relief we would
 4   seek.  I think we can do that very quickly.
 5           But, I think that's the order of operations here.
 6           THE COURT:  OK.  Well, I want to think about it a
 7   little bit but I think my current inclination, sort of the
 8   direction I am headed and I think it is probably right, is that
 9   the my current inclination is Mr. Schulte should be permitted
10   to use these pages -- and by these pages I want to be clear,
```



```
16                                          I will exclude that on the
17   grounds that it is not relevant and/or is cumulative.  But,
18   bottom line is those        pages or portions thereof, to be more
19   precise, I do think that he can and should be allowed to use in
20   some form.  My current inclination is that there is a
21   meaningful difference between the government submitting --
22   filing the entirety of Government Exhibit 1 in classified form
23   and requiring Mr. Schulte to rely on this in classified form,
24   and in that sense my current inclination is to is say that he
25   needs to be able to use it in an unclassified form.  What form
```

XM6D5schC1          ~~TOP SECRET~~

1    that takes is a different story and really, under CIPA, I think

2    it is the government's motion to make motion under 6(c) for

3    stipulation or redaction, not my burden to propose it to you.

4          So I am giving you the benefit of telling you where I

5    think I am headed.  If you want to make a motion under 6(c) for

6    redaction and/or stipulation that would be an adequate

7    substitute then that may suffice and alleviate the issues for

8    your purposes, but I think the burden is really yours to make

9    that application.

10         MR. DENTON:  Yes, your Honor.  Understood.  I think

11   the main thing that we would just need to address is making

12   sure that we trued up some of the substitutions that have been

13   approved across all of the various documents.  So, for example,

14   ███ has been substituted across all of the documents.  We would

15   not want a disclosure of these documents in a way that

16   essentially unmasks other things that have been substituted in

17   any number of other places by providing an easy reference.  So,

18   message received that this takes some work on the part the

19   government here.  As time permits today and this afternoon, we

20   will do that as efficiently as we possibly can.

21         THE COURT:  OK.  So I guess that means we will need to

22   revisit this, presumably that means in classified session

23   either at the end of today or the beginning of tomorrow but we

24   will see how far we get and we will take it as it comes.

25         Other things that we should discuss here?  One is

XM6D5schC1                         ~~TOP SECRET~~

```
 1    witness names or names that may come up at trial.  The defense
 2    submitted one name that I understand is classified.  I
 3    understand that the government's list also included names that
 4    are technically classified but my understanding had been that
 5    there was no issue with putting them on a list and providing it
 6    to the jury and reading it to the jury with the understanding
 7    that they would be mixed in with other names so I don't know if
 8    the defense name raises unique issues or it is just because it
 9    was provided as a single name but before I added it to our list
10    I wanted to make sure that I was aware of whatever the issues
11    are.
12              MR. DENTON:  So your Honor, I'm not sure what the
13    defense name is.
14              THE COURT:  ████████████████
15              MR. DENTON:  I think, your Honor, it probably falls in
16    the same category as everyone else in that there is not an
17    issue with including them on the list.  It is, again, our very
18    sincere request that the entire list of names not be read out
19    loud, that the jury be allowed to examine it and make an
20    announcement about whether they recognize anyone on it.  I will
21    also note that that list includes the universe of people that
22    the defendant has subpoenaed.  Where we ended on Friday was
23    that the defendant had cut down, significantly, the list of
24    people from the group of 12 the government had identified as
25    particularly sensitive or difficult to move and Ms. Shroff
```

XM6D5schC1                          TOP SECRET

1    represented that the defendant was going to be making efforts

2    to cut the larger group down to a more reasonable number,

3    hopefully by today.  In an abundance of caution we have

4    included everybody on there.  We don't see a need to read to

5    the jury dozens of names of CIA officers who are not going to

6    play a part in this trial.

7              So, again, we have got them on the list but I don't

8    know that we necessarily need all of them.

9              THE COURT:  The problem is that we are picking a jury

10   in about a half an hour so I need to have a list and for it to

11   be finalized.  What do you want me to do with that?

12             MR. DENTON:  Well, I think, your Honor, the defendant

13   give us a more reasonable list of his witnesses.  We can turn

14   around a revised version for the Court basically immediately.

15   I don't think that's an issue but I think this is sort of the

16   defendant's doing here by continuing to push the question of

17   his witness list further and further down the road.

18             THE COURT:  OK.  Are there any witnesses names that

19   can be eliminated from this list?

20             MR. DENTON:  I think the version that we provided the

21   Court on Friday eliminated the names that we had already

22   discussed that have already been eliminated but we don't know

23   where the defendant is on his group of forty-some-odd that

24   remain outstanding.

25             THE COURT:  And ████████████████?

XM6D5schC1                          TOP SECRET

1      MR. DENTON:  Again, I think there is no issue adding

2   it to the extent that is necessary, your Honor.

3      THE COURT:  OK.

4      Mr. Schulte, where do we stand on witnesses,

5   generally?

6      MR. SCHULTE:  So we did -- we cut down the list

7   significantly.  I don't know if the government has received the

8   updated list but I think one of the issues, though --

9      THE COURT:  I think the answer to that is they

10  haven't, so.

11      MR. SCHULTE:  I think one of the issues is these names

12  may come into play on cross or direct so a lot of these names

13  have significant dealings with these situations, so our

14  position is that the people who are relevant and who are

15  involved in these issues should still be read to the jury to

16  see if they know those people.  So that's the defense's

17  position.

18      THE COURT:  And then there was another name that the

19  defense gave which was simply Paula.  I'm not going to ask the

20  jury if they know Paula.  I mean that makes no sense.

21      MR. SCHULTE:  She has been subpoenaed, she is on the

22  list; Paula ███████    I thought she should already be on there

23  but if that's not, that's her name, Paula ██████.

24      THE COURT:  Is she covert or is her name classified?

25      MR. SCHULTE:  She is retired, she is overt.

XM6D5schC1                    ~~TOP SECRET~~

1          THE COURT:  Mr. Denton, do you know?

2          MR. DENTON:  I think that's right, your Honor.

3          THE COURT:  OK.  Well, I'm just going to go with the

4    whole list since -- and I will not read it out loud but I will

5    give the jury a few minutes to read through it.  I will add

6    ████████████████ name and add Paula ████████ name and leave it

7    there.

8          So I don't know if the order has hit the docket or if

9    Mr. Schulte has it but just so you know, 7I have resolved the

10   other remaining CIPA issues as the only outstanding ones were

11   in relation to the May 23rd Section 5 notice.  Bottom line is I

12   think in all respects I have granted the government's

13   applications under that and either stricken the notice or ruled

14   the evidence inadmissible under 6(a) so I don't think there is

15   any further discussion required there and that is a public

16   order that, again, may or may not have hit the docket but it

17   will, you will see it soon if you haven't already.

18         Anything we need to discuss on the Michael memorandum?

19   I think you guys were trying to work out some sort of proposed

20   stipulation there.

21         MR. DENTON:  So I think, your Honor, that is probably

22   the one exhibit that we are going to still need a little time

23   to sort out.  We are working on it.  We have got sort of some

24   stipulation language that we are going back and forth with the

25   equity holders on but I think we will have something in the

XM6D5schC1                    TOP SECRET

1   next day or two by the time it is relevant.

2            THE COURT:  OK.  But that one we have a little time.

3   Is that your view?

4            MR. DENTON:  Certainly from our perspective.  We

5   wouldn't expect it to come up with the first few witnesses in

6   the government's case, your Honor.

7            THE COURT:  Mr. Schulte, is that OK with you?

8            MR. SCHULTE:  Yes.  That's fine.

9            THE COURT:  Any remaining issues on the defense

10  contact with its witness list?  My understanding is, and I

11  don't know if this information was conveyed to you yet, that

12  Michael has declined the request to be interviewed by the

13  defense.  I think there were three others that remained

14  somewhat open.  I don't know where those stand or if we want to

15  go through them quickly or if we can do that in discrete

16  fashion that the government can remain for.

17           Mr. Schulte?  And, to be clear, my understanding is

18  Michael declined this morning so I think that's new

19  information.

20           MR. SCHULTE:  OK.  Is there update -- so I haven't

21  received the updated list.  Counsel said they received an

22  update late Friday but I wasn't -- I don't know what the

23  updates are so I'm not sure what the --

24           THE COURT:  OK.  I would like to get upstairs so I

25  guess Mr. Denton, Mr. Lockard, do you mind stepping out for one

XM6D5schC1                    ~~TOP SECRET~~

1    second so we can talk more openly about what the updates are,

2    if any, and then I will have you back and we can go upstairs.

3            (Pages 25-27 EX PARTE FOR DEFENDANT ONLY by order of

4    the Court)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

XM6D5schC3                              TOP SECRET

```
 1            THE COURT:  You don't need to get cozy because my only
 2     question is if there is anything else that we need to discuss
 3     here.
 4            MR. DENTON:  Just one final observation with respect
 5     to the witnesses, your Honor.
 6            There is a limited subset of the people whom the
 7     defendant has subpoenaed who are covert who are getting names
 8     for trial.  We will update the key that will be available for
 9     the witnesses and the defendant that has all of that on it.
10     The vast majority of7 everybody else falls into the sort of
11     second category in the witness protections in that they would
12     be referred to by their first name only, so we just wanted to
13     emphasize that that's where we expect everybody in the
14     courtroom should be as far as referring to these people during
15     the course of the trial.
16            THE COURT:  OK.  That doesn't have any bearing on the
17     list for the jury though, correct?
18            MR. DENTON:  No, your Honor.
19            THE COURT:  OK.  That's fine.
20            And I remind you that I gather in the first trial it
21     was the witnesses who caused the most problem by not
22     necessarily following or abiding by the substitutions and
23     limitations that we all were -- or you all were supposed to be
24     laboring under, so it is your burden to make sure your
25     witnesses are aware of the name situation and abide by those
```

XM6D5schC3                    ~~TOP SECRET~~

1    limitations.

2            MR. DENTON:  Yes, your Honor.

3            I think, just to be clear, there was one witness who

4    did that during the last trial.  I think, by and large, a lot

5    of the other issues we had to address came up during

6    questioning but, either way, we have made sure all of our

7    witnesses know.  To the extent that the defense calls witnesses

8    we will find an appropriate way to make sure that they are also

9    aware of those limitations.

10           THE COURT:  Mr. Schulte, anything else we need to do

11   down here?

12           MR. SCHULTE:  No.

13           THE COURT:  So then we are adjourned and I will see

14   you upstairs in a few minutes in Courtroom 23A.

15           Thank you.

16                              o0o

17

18

19

20

21

22

23

24

25