N2A5schC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

                v.                          17 Cr. 548 (JMF)

JOSHUA ADAM SCHULTE,

                Defendant.

------------------------------x

                                            New York, N.Y.
                                            February 10, 2023
                                            2:30 p.m.

Before:

                    HON. JESSE M. FURMAN,

                        APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  MICHAEL D. LOCKARD
     Assistant United States Attorney

SABRINA P. SHROFF
CESAR DE CASTRO
     Attorneys for Defendant

XN2A5schC

(Case called)

THE DEPUTY CLERK:  Counsel, please state your name for the record.

MR. LOCKARD:  Good afternoon, your Honor.  Michael Lockard for the government.

MS. SHROFF:  Good afternoon, your Honor.  Sabrina Shroff on behalf of Mr. Schulte, although I preface that Mr. Schulte has asked me to inform the Court to relieve me from further representation.

THE COURT:  I understand.  That is one thing on our agenda today but, at present, you are not relieved.

Yes?

MR. DeCASTRO:  Good afternoon, your Honor.  Cesar DeCastro for Mr. Schulte.  How are you, Judge.

THE COURT:  I am OK.  If I sound sick I apologize for sounding sick, I am recovering from sinus surgery last week. I'm fine, but I sound worse than I am and I apologize for that.

We are here, really, precipitated by a series of letters that I got from Mr. Schulte personally or directly.  A couple quick notes about that.  First of all, if my orders didn't make it clear, I was a little puzzled by what seemed to be a large lag time between the dates of those letters and my receipt of them.  One possibility is that they were backdated. Another possibility is that Mr. Schulte delayed before sending them.  The third is that there was some sort of delays on the

XN2A5schC

part of the MDC and the U.S. Postal Service.  I have been in touch with the MDC and there is a new liaison to the courts at the MDC and I hope that his new position will facilitate resolving issues in this case and beyond.

So, he looked into it, couldn't quite get to the bottom of it because of the number of things that Mr. Schulte mails generally, but bottom line is, going forward, I am hoping that to the extent the MDC is the cause of any delays that those delays will be addressed.

I should note that another reason we are here is Mr. De Castro's motion to withdraw and I will get to that in due course as well.

I will say, Mr. Schulte, that unless and until you represent yourself I do have to counsel you against sending things to me directly, you know, anything that you say can be used against you and to the extent that you are including any information in those letters, for instance, regarding ongoing investigation of your laptop and other electronic media, may or may not be in your interest to be sharing such things.  But, in any event...

Before I turn to the letters, I do want to just ask you, Mr. Lockard, if you can update us in this setting with respect to the status of the laptop and related investigation. I know I obviously got an update from you in writing last month, it has been filed under seal, it was done *ex parte* and I

think that is appropriate, but to the extent that you can share anything in this setting, I would appreciate it.  Let me say that I think there is some merit to Mr. Schulte's increasing frustrations on that score as manifested in his letters to me. I say some, because some of his complaints I don't credit at all.  He complains about presumption of innocence and that he seems to be presumed guilty forgetting that he has, in fact, been found guilty now by two injuries of multiple offenses. And while he takes issue with some of the government's allegations, namely the presence of child sex abuse material on laptop, I don't think there has been any dispute that certain things were not on the laptop that shouldn't have been done. So, in that regard I don't credit all of his complaints but, having said that, it has been, I think, four months since the laptop was seized and there is some merit to his frustration on the face of things and I should say that I am beginning to share it in the sense that the pace of it could affect the case going forward.  There are pretrial motion deadlines coming up, I don't know if the government plans to bring additional charges, I don't know if any of the products of this investigation will result in evidence relevant to the new trial, but all of those are issues that could potentially affect our preparations for the next trial.  So, in that regard, I think it is in everybody's interest to kind of move past this and get to ground on it.

So, again, recognizing that there is wall counsel involved and that there is some sensitivity here, if you can tell me where things stand or share what you can share I would appreciate it.

MR. LOCKARD:  Yes, your Honor, and I will preface my update by saying every issue that the Court just identified are issues that have been present on our mind as well in sort of evaluating and doing our best to push the review where we can. There are challenges to the review, one being, as the court noted, the fact that there are wall review procedures.  Another challenge -- this isn't about the laptop specifically -- but, in general, the volume of electronic media that were seized, particularly in the search of Mr. Schulte's cell at the MDC, is quite large.  Another complication is that there were electronic devices that were seized from the SCIF and had to be treated as presumptively classified until we were able to resolve that issue, all of which is to say there were a number of layers of complexity to the review process.  That said, we are conscious of the trial date, we are conscious of the pretrial deadlines and are doing our best to reach clarity on those issues in time to not affect or minimize the effect on those things.

In terms of the progress of the review of the discovery laptop itself, that review has progressed, it is not yet complete, but I will say that at least a preliminary

XN2A5schC

forensic report has been created and has been made available to defense counsel and to the defendant, both of whom have reviewed it in a setting that is consistent with the Adam Walsh Act procedures.  Defense counsel has requested --

MS. SHROFF:  Your Honor, I'm sorry.  Everybody at this table is having trouble hearing Mr. Lockard, including Mr. Schulte.

THE COURT:  Mr. Lockard, do you want to use the podium there?  It might be easier.  Keep your voice up and speak into the microphone.

MR. LOCKARD:  Is that better?

THE DEFENDANT:  Yes.

MR. LOCKARD:  So, with respect to the review of the laptop, that review is ongoing.  A preliminary forensic report has been created which has been made available for review by defense counsel and by Mr. Schulte, who have in fact reviewed that report.  Defense counsel has requested access to a forensic image of the entire laptop which I believe FBI has been in touch or should shortly be in touch with defense counsel's technical point of contact in order to sort of nail down specifically what would be useful and what can be made available, but we are working towards making that available for defense counsel and for their expert as well.

So, I think those are the perhaps most important aspects of the process so far.

XN2A5schC

THE COURT:  OK.  Well, I had directed the endorsement on your sealed submission that you update me every, I think it is two months, so you have another update coming.  I will want you, in future updates, to tell me when you expect all of this to be wrapped up, whatever that may mean, because I want to make is sure this doesn't derail the upcoming trial or cause other problems.  I recognize you are not the one doing the actual work so if you need to convey to those who are that there is a judge breathing down your neck and I'm not going to be happy if this upsets our apple cart, so to speak, you should definitely convey that.

MR. LOCKARD:  That is a message I am always happy to convey and I know full well that it is in fact very true here, so that message has and will continue to be made.

THE COURT:  Ms. Shroff, since you are main counsel of record do you wish to say anything on it?

MS. SHROFF:  Yes, your Honor, I do.

I wanted to let the Court know that the delay in the review has caused problems for us and problems for us and Mr. Schulte.  The laptop that was made available to us, meaning myself, Mr. De Castro and Mr. Schulte, was only made available in the presence of the case agent, the case agent who is the trial case agent in this case and was in the espionage case. So, each time Mr. Schulte would want to point out something technical on the computer or the laptop itself, the laptop had

XN2A5schC

to be taken out of the room and we would just have to talk about it in sort of, without the machine and the report being there.  We asked the government to allow Mr. Schulte and his expert to have access to that computer, the actual laptop image, not the report generated by the FBI but the actual laptop image, and we agreed to have literally anyone else monitor Mr. Schulte's review of the laptop along with the expert and the government has denied that request.  Of course the Court has the motion pending from Mr. Schulte to relieve me, but as I still remain on the record I wanted to point out that that has been a major point of consternation for him and us and it would cost the government nothing to have a paralegal watch over or somebody else watch over while Mr. Schulte and the expert worked together.  We just ask for an accommodation because it would make things more smooth and it would allow efficient work.

So that is one issue.  And of course, the length of time -- Mr. Schulte is adamant that no review would ever take this long and the delay of four months has sort of put the defense lawyers in the position of trying to explain or justify why an incarcerated defendant does not have access, one, to his own discovery; two, doesn't have access to the discovery nor a method by which to review the discovery even if he had it; and three, of course being deprived of the laptop which he thinks he was unjustly deprived of.

Mr. Lockard, can you just create a record?  There are two different universes of discovery, for lack of a better way of describing it here, one is discovery relating to whatever happened or didn't happen with the laptop, and other electronic media taken in connection with the searches.  That may or may not be relevant in the next trial, that's one of the things I think we need to come to ground on.  The second is discovery for that trial.  To what extent is the review of the laptop and other media affecting the defense's access to Rule 16 discovery with respect to the charges that are to be tried?

MR. LOCKARD:  So, your Honor, focusing specifically on the CSAM materials, which include both the MDC discovery laptop as well as the defendant's home computer that was seized during the search of his apartment in 2017, those materials are available to review in two settings; one setting that applies to defense counsel and expert witnesses or any other member of the defense team, and then another setting that applies for Mr. Schulte.

So, defense counsel experts and any other member of the defense team can view the CSAM materials at a dedicated space at the FBI which is not in-person monitored, I believe there may be a CCTV feed into that room but largely it is a secure room at the FBI where defense counsel and experts can meet and discuss, in confidence, whatever they want to discuss.

With respect to Mr. Schulte's review, his review is

available by production by the marshals to the court house at 500 Pearl Street.  The FBI will bring a copy of the CSAM materials as well as a laptop available to view those materials to one of the proffer rooms and because of the security settings in that area, and because of the nature of the materials there is live monitoring by an agent during the review.  If Mr. Schulte would like to have a conversation with experts or defense counsel or anybody else the agent will step out of the room, but as Ms. Shroff noted, because of the nature of the materials, the agent has to take the laptop with him or her when they leave.

So those are the settings in which the materials are available.  There has been a request to essentially create a wall review procedure or a wall monitoring procedure which the government has been reluctant to do.  It is one thing to set up a wall review when there are existing privileged confidential attorney-client communications that need to be reviewed for the applicability of the privilege as part of a search or other method.  It is another thing to say we want to have non-confidential communications in front of an agent but wall that agent off from the rest of the team.  There have been substantial wall resources already employed in this case so we have been reluctant to create a wall issue where currently there is not a wall issue and that is what we advised defense counsel, and especially in light of the free access that

defense counsel and the expert have to the FBI space, it seemed a burden that was unnecessary and overly burdensome to us.

THE COURT:  Just so I am clear, is there any evidence, any information, any material that would fall within the scope of the government's disclosures and discovery as to the charges to be tried in September to which the defendant and/or counsel do not presently have access because of the ongoing review?

MR. LOCKARD:  Not to my knowledge.

MS. SHROFF:  No, no.  That's clearly, clearly incorrect.  Mr. Schulte has zero access.  This is the whole reason we have had complete breakdown here.  Mr. Schulte has zero access to discovery review.  The BOP has no ability, zero -- zero -- ability to allow him to review a single piece of discovery.  I have made zero progress on this.  There is not a computer that has the correct programs that run, there is not any way for the discovery to be reviewed by Mr. Schulte --

THE COURT:  Let me separate this.  Number one, Ms. Shroff, I take it you have access to all the Rule 16 and other discovery produced vis-à-vis with respect to the charges in September, correct?

MS. SHROFF:  I actually do not and I have told Mr. Lockard that but that's a separate and entirely different issue.  Even if I could send him a copy --

THE COURT:  I'm not talking about him right now, I want to make sure that the defense has access to everything it

is entitled to have.

MS. SHROFF:  Yes.

THE COURT:  It sounds like the answer to that is yes.

MS. SHROFF:  We either have or will have.  The answer is "yes" to that question.

THE COURT:  OK.

MS. SHROFF:  He doesn't.

THE COURT:  Fine.  I think what you need to do is, first of all, it sounds like there is a process in place where the FBI is going to be providing a mirror copy, forensic copy of the laptop and that may provide some of what you are looking for, Ms. Shroff, or what Mr. Schulte is looking for, but I think you need to talk through these things with the government and with the MDC and if there is an application that you want me to consider I'm certainly happy to consider it.  This is the first I am hearing about any of this and it was my understanding and impression, and it certainly sounds like that is correct, that the ongoing review of the laptop has no bearing whatsoever on access to the discovery materials that are needed for purposes of preparing for the September trial.

MS. SHROFF:  One could take that view unless one credits Mr. Schulte's view that he is incapable of preparing for a trial, one, because all of the discovery that he had in his cell was seized and he doesn't have that replaced which the government has said it will replace.  The second problem is

that even if they did replace it, the BOP has informed us that they don't have a method or machine by which he can then access that discovery.  And the third point that Mr. Schulte consistently raises, for which I personally have been able to provide him with no good answer, is that if the government cannot show that he is the one who loaded up any improper contraband onto the laptop why can't he simply not get his laptop back.

THE COURT:  All right.  As I said, I don't think that's the only misconduct that is alleged to have occurred. At a minimum I understand that it is undisputed that there was an encrypted partition created on the laptop and that Mr. Schulte monkied with the administrative privileges that governed the laptop.

THE DEFENDANT:  That's not true.

THE COURT:  Mr. Schulte, I really have to advise you to keep your mouth shut and let your counsel do your speaking on your behalf, at least until you are representing yourself which you are not doing right now.

Now, be that as it may, I have heard nothing that suggests that the defense does not have access to whatever it is entitled to for purposes of preparing for the September trial.  I certainly agree and appreciate that there is a desire to figure out what the situation is with the laptop and that's why I pressed Mr. Lockard on that and I am sure he will make my

pressure on that front known to whoever that needs to get to.
If there are any other issues, and it strikes me that the
issues are very different, if Mr. Schulte is represented, as he
currently is, or if he represents himself, which we will turn
to in a moment, then I need an application, but only after the
defense has conferred with the government and/or the MDC as the
case may be and has tried to sort these things out.  This is
the first I am hearing about any of this.

MS. SHROFF:  That is true.  This is the first the
Court is hearing about it.  We have informed the government
through several e-mails but perhaps it makes more sense, your
Honor, instead of having me speak, because Mr. Schulte has an
application to relieve me as counsel, he would like to have
Ms. Colson reassigned or Mr. De Castro assume full
representation.  I have asked Ms. Colson, she declined because
of her other commitments.  And I don't know which way the Court
wants to conduct that hearing.

THE COURT:  Let me turn to that issue then.  I do
think that that is an important issue that has bearing on many
things.

So let me say, Mr. Schulte has raised two discrete
issues in his letters, one is the issue of a trial date, his
desire for an "immediate trial," and the second is his desire
to represent himself once again.

Now, let me start with the easier of those two, namely

XN2A5schC

the trial date.  Trial date is not moving.  The trial date was set a while ago, it was selected with care based on the complexity of this case and the nature and amount of pretrial litigation that would be necessary, the need to litigate pretrial motions in the ordinary course, the need for CIPA proceedings, some of which may be necessary based on Mr. Schulte's own arguments and defenses.  Those deadlines are fast upon us already; indeed, Section 5 notice I think is two weeks from today, and the reality is that an immediate trial is not just inappropriate, it is absolutely impossible.  Moreover, I have already excluded time under the Speedy Trial Act through the September 11 trial date without objection from the defendant.  So the bottom line is everybody should understand, Mr. Schulte should understand as I think he confirmed when I set the date, that that is a firm date and it is not going to change.  If he represents himself, it is not going to change.  So, if that is one reason that he has articulated a desire once again to represent himself, you ought to think about that and understand that it is not going to have any bearing whatsoever on the trial date.

As for the question of whether he can represent himself I will say, just by way of editorializing, that I was a little surprised only because Mr. Schulte had -- I clearly remember Mr. Schulte stating that if he was convicted on even a single count in the last trial he would consider that a total

XN2A5schC

failure and not endeavor to represent himself again -- and of course he was convicted on every count. But, be that as it may, a criminal defendant obviously has a Sixth Amendment right to represent itself. At the same time, that right is not absolute. See *Indiana v. Edwards*, 554 U.S. 164, 171, 2008. The right may be forfeited by a defendant who "deliberately engages in serious obstruction of misconduct. *Faretta v. California*, 422 U.S. 806, 834, note 46. 1975.

In the absence of more definitive information from the government with respect to the ongoing investigation of the laptop and related materials, it is hard to know if you are in that realm or not but it is certainly a question in my mind as I think I intimated at a conference a few months ago. At the same time, I want to and will proceed with care because it would obviously be reversible error to deny Mr. Schulte's request for a clear and unequivocal request to proceed pro se without a proper basis. Having said that, I want to make a few things clear. First of all, he is not representing himself now and will not represent himself unless and until I agree to make thorough and complete Faretta inquiry. I am happy at the conclusion of this, if Mr. Schulte articulates that he wants to represent himself, to schedule that and we will do that.

Having said that he should understand, if we proceed to a Faretta inquiry, I will ensure that he understands that, again, trial date is firm and the schedule is set, there is not

a lot of play in the joints on that schedule.  So if Mr. Schulte is permitted to and elects to represent himself, he would have to be prepared to adhere to the existing schedule including the reply deadline for his Rule 29 motion and all of the pretrial deadlines that I have set with respect to the next trial date, that is to say, I'm not going to permit Mr. Schulte, if he elects to represent himself, to manipulate the schedule or to think that he is going to buy himself additional time.

Number two, if Mr. Schulte thinks that proceeding pro se is a means to get back the laptop or other privileges that he had before the last trial, regular SCIF time, so on and so forth, he is mistaken.  Perhaps that will happen, particularly if the government's investigation concludes and it is determined that there was no misconduct, but as I have said before, the law is absolutely clear that "the right to represent oneself in criminal proceedings, though protected by the Sixth Amendment, does not carry with it a right to state-financed library resources, or I would add other resources, where state financed legal assistance is available." *Spates v. Manson*, 644 F.2d 80, 84-85 (2d Cir. 1981), see also *Tellier v Reich*, 164 F.3d 619 (2d Cir. 1998), and *Benjamin v. Kerik,* 102 F.Supp.2d, 157, 163-64 (S.D.N.Y. 2000); Instead, any right of access to legal resources owed to pretrial detainees is "satisfied when the presiding courts merely offer such

detainees appointed counsel or standby counsel." *Stanko v. Patton*, 2007 WL, 13409701 at pages 2 to 3, (D.N., March 28, 2007), citing cases.  It follows that even if Mr. Schulte has a constitutional right to represent himself and exercises that right, he does not have the right to a laptop, he does not have the right to any particular time or access to any particular materials in a law library, he does not have the right to any particular access to the SCIF and so forth.  I am not saying that Mr. Schulte wouldn't be given some of those things to enable him to prepare for trial if he elects to represent himself but he may not be, and depending on the outcome of the ongoing investigation certainly may not be or may be limited, and he would have to affirm if he decided to proceed pro se, that he is doing so notwithstanding that fact, notwithstanding the fact that he may or may not get what he thinks he is entitled to or would like or what he had before the last trial.

So, I think that it is very important for Mr. Schulte to understand all of that before making an informed decision about what he would like to do.  If he makes a clear and unequivocal request to proceed prose anyway in light of everything I have just said, as I said, the next step is to schedule a Faretta hearing and we will do that.

So, I don't know if you guys want to discuss that or I don't know if Mr. Schulte wishes to be heard, but why don't you talk to counsel first and I will ask counsel how we should

XN2A5schC

proceed.

THE DEFENDANT:  I was actually going to ask the Court, my understanding was that this was going to be the Faretta hearing today.

THE COURT:  Your understanding was wrong.

THE DEFENDANT:  OK.  And then I also, based on what the Court has said, previously stated with respect to the laptop and several other issues, I think it is important -- it would be important for me to clarify some of these issues, especially if they're going to come into the Court's decision when making -- when evaluating whether to allow --

THE COURT:  I think what I am trying to tell you, Mr. Schulte, is you are not going to have clarity on that right now because until the government's investigation is concluded I'm not prepared to -- I doubt the government is going to consent to you getting what you had before the last trial and I'm not prepared to order that you be given access to those sorts of things without knowing better whether and to what extent you did engage in any misconduct, let alone crime.

So, the short answer is you have to presume that you are not going to have access to any of that stuff going forward and if you want to proceed pro se with that understanding, then that's certainly your right to do, I think, unless you have forfeited it.  So, you are just not going to have that clarity, at least right now.

XN2A5schC

THE DEFENDANT:  That's not what I meant.  I meant a clarification from my end, not about whether I would have resources but clarifying some of these issues that the Court may be considering in determining whether to allow me to represent myself.

I remember that you said at the last hearing you said, essentially, that you believe I violated my right to represent myself because of issues --

THE COURT:  I raised that possibility.  I did not make that finding, I raised that possibility.

THE DEFENDANT:  Yeah.  So, because of all these other issues, I think it is important for me to correct the record or for me to provide clarifications for these issues, especially if the Court is going to be considering that when ultimately deciding whether to allow me to represent myself.  So that's --

THE COURT:  Well, I guess the question is, would you like me to schedule a Faretta hearing where we can do the necessary colloquy, and if you wish to represent yourself I can then make a finding as to whether you are entitled to do that.

Do you want to think about it?  What would you like to do?

THE DEFENDANT:  I was wondering, I was hoping that we could address the attorneys issue first and then look to do the Faretta hearing, or -- I have a Rule 29, 33 issue to bring up as well.

THE COURT:  I don't understand what that means.  What does the attorneys issue mean?

THE DEFENDANT:  I mean he has filed a motion to be relieved and I am moving to relieve Ms. Shroff, so I just think it makes sense to resolve these issues as to what representation I have first before doing the Faretta hearing.

THE COURT:  OK.  Since you mentioned it, what is the Rule 29, Rule 33 issue?  You filed your motion, it is under advisement, the government has until March 2nd, if I remember correctly, to file opposition.

THE DEFENDANT:  The problem was that I was not able to able to work on the Rule 29/33 motion at all, I was never provided with complete trial exhibits.

THE COURT:  Mr. Schulte, your motion is filed.  That's it.  Full stop.  The deadline to file it has past.  If you want to make a record in some other setting as to what opportunity you had or didn't have, I gave you five extra months to file that motion, so.

THE DEFENDANT:  I know.  I am trying to -- I would just like to correct the record about these issues and to make a request to the Court with respect to the reply.

So, just to be clear for the record, that I never had the complete trial exhibits, I never had my draft and annotated transcripts or work product.  MDC never provided me a functional typewriter.  To this day I still don't have one.

And the law library was down for multiple months so I had no way to work on the Rule 29 motion at all.  I was unable, and remain unable, to pass drafts or any documents at all to my attorneys.  At the MCC you could pass documents to attorneys but here at MDC they don't allow that.  And due to all of these delays, I kept trying to -- the point of the postponing the deadline was to try and resolve these issues.  None of them ever got resolved.  I wasn't able to work on -- I wasn't able to write a single sentence to the Rule 29 motion.  What was filed was what I threw together during trial and it was the first draft that I gave to counsel right after the verdict.  All my --

THE COURT:  Mr. Schulte, your motion is filed.  Anything that you had to say with respect to your ability to prepare or lack thereof, you had to say that to me before the deadline passed.  Your motion is filed.  What is filed I will consider.  To the extent that you were able to work on it or not able to work on it is irrelevant at this point.  You have filed it.  I gave you many, many extra months to file it.  You had ample opportunity to request either more time or other relief.

THE DEFENDANT:  I did request that with my attorney.

THE COURT:  OK, and I granted it several times and at some point I said no.  And then you had to file it.  That's the end of the matter.

XN2A5schC

What is your request with respect to the reply?

THE DEFENDANT:  My request is there is no way for me to work on this so there is no way I can work on the reply, so you are basically denying my right to represent myself so I move for the Court to assign someone to handle the Rule 29, 33 motions since I am unable to do it.

THE COURT:  OK.  Mr. Lockard, anything you want to say?

MR. LOCKARD:  No.  I mean, I think it is a confusing request for Mr. Schulte on the one hand to be saying he wants to be relieved of counsel and proceed pro se for this trial and at the same time be asking for the appointment of counsel for his post-trial motions for the trial for which he was pro se. It seems to me that perhaps the best time to address this may be when the government's opposition is filed.  I mean, I can say Mr. Schulte has said a number of things about his ability to prepare his initial motion that are not correct.  I agree with the Court, this is not the forum to address those things. Perhaps Mr. Schulte should file something written encapsulating the nature and basis of his request.

THE COURT:  Well, I think, number one, it is premature.  After getting the government's opposition, if Mr. Schulte has an application he can make it, but I will tell you, Mr. Schulte, that my inclination is to say the following: I have ample authority to deny your request for hybrid

representation and if you go pro se, you are pro se.  If you go with counsel, you go with counsel.  You elected to proceed pro se with respect to the last trial.  You were very specific and explicit in requesting to proceed pro se with respect to this motion.  I think allowing you to file it in a pro se manner but then giving you counsel for reply is, in essence, a request for hybrid representation and I'm not prepared to grant it.  I think it will just confuse the record and muddle things up and I am inclined to say that you are required to file any reply.  You don't have to file a reply, I am happy to decide the motion on the basis of your motion and the government's opposition, but if after getting the government's opposition you have any application, whether that is for appointment of counsel or an extension, you can make an application and I will consider it.

If you are applying for appointment of counsel, you should cite any authority that you think supports the proposition that denying you counsel for purposes of filing the reply would be error, because if it is not error, I'm inclined to leave things as is and leave you pro se for the purposes of that motion.

I guess having done that, let's turn back to the counsel issue because I certainly think that Mr. Schulte's request on that front is fair in the sense that he is entitled to know what the current situation is with his counsel before

deciding whether to give up his right to counsel, if he is entitled to do that.

So, Mr. De Castro, I will turn to you about your motion to be relieved. There is a lot going on here. I don't quite know what order to take this up in, whether if I relieved Ms. Shroff that relieves your -- that changes the situation for you. I am certainly open to suggestions but I guess my question is, is your motion still a live one and do you have any thoughts?

MR. DeCASTRO: I guess what I will say in addition to my letter was just that, to your question, which is if one of us are relieved I suppose then that fixes the problem that I have addressed which is we are going -- counsel are just not working and we are going sideways and not advancing the ball and I don't think that's in Mr. Schulte's interest, not in the Court's interest, it is not in anybody's interest, and I don't see that getting any better.

THE COURT: I guess I'm not quite sure what order to take this up in because I understood Mr. Schulte's desire to get rid of Ms. Shroff to be connected to his desire to proceed pro se. Now it sounds like it may actually be separate and that he would like me to take that question up first.

Yes, Ms. Shroff?

MS. SHROFF: Your Honor, if the Court relieved me, that maybe Mr. Schulte will proceed with Mr. De Castro and life

XN2A5schC

will be good.  It will solve the problem of Mr. Schulte having to go pro se, it will solve Mr. De Castro's problem of having to work with me, it will solve the Court's problem and move the case forward.

THE COURT:  If it were so simple that would certainly make sense to me.  Something tells me that in this case that may or may not be that simple.  But, Mr. De Castro, do you wish to be heard if you think that is the magic solution here?  Do you have a view on whether you are able to handle this without second counsel?  What is your thought on this?

MR. DeCASTRO:  I don't know if there is a magic solution to anything, but if I were to assume representation on this case for September of course I would need assistance, I think, but meaning associate counsel on the case.  I don't -- in terms of this trial I don't think it's terribly complex, the trial itself.  Of course there is the issue of whether Mr. Schulte wants to proceed pro se and that's obviously a different issue but it is up to the Court, I suppose.

THE COURT:  OK.

MS. SHROFF:  Your Honor, the two trials, if I may, the two cases are totally separable.  The child pornography case is a live one.  Whatever the work product that needs to be done on the espionage case is essentially either done or ultimately will just be a sentencing issue, there is nothing more left to do on that case itself.

XN2A5schC

THE COURT:  I recognize and understand that.  There is a long history between you and Mr. Schulte and that was one advantage to having you in the picture and it sounds like that advantage may no longer -- may now be outweighed by disadvantages.

But, in any event, Mr. Schulte, let me put the question to you.  Bracketing the question of self-representation because I think the end result of this is we are not doing that today, is it your desire to relieve Ms. Shroff and to proceed with Mr. De Castro either alone, or if he asks for assistance, with assistance?  But you would have to, at least for now, understand that you would be with Mr. De Castro alone.

THE DEFENDANT:  Yes.  That's correct.

THE COURT:  OK.  So, I guess my inclination is to grant that application on the theory that maybe it does provide us a path forward.  Whether that path is Mr. Schulte deciding that even with that he wishes to represent himself and we would have to go down that road or he is content to live with Mr. De Castro, it seems like maybe this will at least facilitate sorting through the mess that we have here.

So, I guess that's my inclination.  Mr. Lockard, I presume you have no view but do you have a view on this?

MR. LOCKARD:  No, your Honor.

THE COURT:  Ms. Shroff?

XN2A5schC

MS. SHROFF:  May I be relieved, your Honor?

THE COURT:  In a moment, perhaps.

Well, hearing no objection, I will grant the application to relieve Ms. Shroff, who has certainly paid her dues on this case and then some.  Ms. Shroff, I do so with two requirements:  One, that you provide any materials or information that you have in your possession to Mr. De Castro promptly to ensure that he has everything that he would need for purposes of the case; and number two, that you provide him with any assistance he needs to ensure a smooth transition. Given Mr. De Castro has now been on this case for several months and notwithstanding whatever friction there may be, I am hoping that this is not the usual case where somebody is coming in completely anew and starting from ground zero, and for that reason I would think that there will be a more seamless transition even without asking you to facilitate it, but.

MS. SHROFF:  Your Honor, I have told this to the government and I repeat it here, just so that Mr. Schulte has this for the record because he has asked me to tell the Court: My focus from the time I was assigned was on the espionage case.  My focus remained there until the trial -- the second trial was over.  I do not think Mr. De Castro is any farther behind me on the CP case.  Whatever assistance I can provide is fine but my knowledge of that case, it was entirely limited, which is why I think it will be of no consequence to relieve me

XN2A5schC

on that case.

THE COURT:  All right.  Very good.

Then with those two requirements, you are relieved with my thanks.

MS. SHROFF:  Thank you, your Honor.

THE COURT:  Mr. De Castro --

MS. SHROFF:  May I leave?

THE COURT:  You may.

MS. SHROFF:  Thank you.

THE COURT:  Mr. De Castro, I will presume that you are not new to this, that the current deadlines are fine. Obviously, if you want, if you have any issues with them you can let me know in the normal course but I'm not telling you that I will grant any request to change them.  They were, as I said, carefully considered.  What I think we should do in light of the change of circumstances is I'm going to leave it to you and Mr. Schulte to discuss the question of whether he wishes to represent himself or he is content with your representation, which is to say that I will assume that he is content with your representation and that the issues that he has raised related to Ms. Shroff in particular, that those problems are perhaps now resolved.  If that is not the case and that he wishes to represent himself, then you, on his behalf, would recommend -- but he knows how to write to me obviously -- you should make it clear and unequivocal request for him to proceed pro se and we

XN2A5schC

can meet for a Faretta hearing sooner rather than later.  But, again, I want to just remind all of you that the deadlines are set and those deadlines are coming fast upon us and everybody should be mindful that.

All of that is to say I am inclined to leave things as they are and as they were and just ask that you speak with Mr. Schulte about the issue of his representation and if he wishes to raise an issue with me and application then you should let me know.

Second, and relatedly, if you are going to be representing him -- he is not representing himself and you think you need assistance, particularly -- maybe I am wrong, I don't get the sense that the trial in this case would be especially complicated, but I think pretrial litigation is more complicated than your average child pornography case, I would certainly entertain any request on that front.  I would think that perhaps appointing associate counsel rather than co-counsel might be the way to go.  But, in any event, why don't you think about it, you can confer with the CJA case budgeting officer, perhaps, and make any accommodation you think is appropriate.  All right?

MR. DeCASTRO:  Yes, that was my thoughts in terms of the associate counsel versus co-counsel anyway.  The only issue I raise is I do need to reflect on deadlines -- not trial deadline, that's not what I am talking about -- because I'm in

the middle of a trial right now but it actually may end shorter than expected, which is always a happy and scrambling thought but -- so, I may write the Court on that front but I will, of course, confer with the government first.

THE COURT:  OK.  You definitely should and need to.  I think the current schedule is set at Docket no. 940.  If I am not mistaken, I think the upcoming deadline is Section 5 notice which is technically due two weeks from today.

MR. DeCASTRO:  Yes.

THE COURT:  Not meeting with any one of those deadlines has collateral effects down the line.  So just like I discussed with the government in the first instance it is necessary, but also why I am not going to move things, likely because it becomes harder and harder to fit everything in.  I learned the last time that there is at a lot, often, to be done in this setting and for that reason I want to make sure that everybody has an adequate amount of time.  OK?

MR. DeCASTRO:  For sure, Judge.

THE COURT:  Anything else, Mr. Lockard?

MR. LOCKARD:  Not from the government.

(Defendant and counsel conferring)

MR. DeCASTRO:  Nothing further from us, Judge.

THE COURT:  All right.  Thank you very much.  Have a good weekend.  We are adjourned.

o0o